IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CATHY CLEILAND; )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LIFE INSURANCE COMPANY OF )<br>NORTH AMERICA; )<br>CIGNA CORPORATION; )<br>CIGNA HOLDINGS; )<br>TEMPLE-INLAND DISABILITY HEALTH )<br>AND WELFARE PLAN; and )<br>TEMPLE INLAND FOREST PRODUCTS )<br>CORPORATION; )<br>)<br>Defendants. ) | Civil Action No.:<br><br>2:07CV 486 - MEF |

## COMPLAINT

### I. INTRODUCTION

1.  This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a)(1), in order to secure benefits due to the Plaintiff through an Employee Welfare Benefit Plan and/or an Employee Pension Plan, under the terms of which the Plaintiff is a defined beneficiary participant, or otherwise qualified for benefits, and to further enjoin those acts or practices which violate the Defendant's fiduciary duties owed to the Plaintiff as set forth within 29 U.S.C. § 1104. Plaintiff seeks any and all benefits to which she may be entitled should this Court determine she is "disabled", to include long term and short term disability benefits; pension benefits; waiver of premium benefits under disability, life, accidental death and dismemberment or accident policies; and any other available benefits.

1

## II. JURISDICTION

2.     Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132 (e) confers Jurisdiction upon the District Courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined within 29 U. S. C. § 1001, et. seq. Jurisdiction is further appropriate under 28 U.S.C. § 1332(a) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity exists between the parties.

## III. VENUE

3.     Venue is appropriate in that a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this District. Therefore, venue is proper within the Middle District of Alabama pursuant to 29 U.S.C. § 1132(e)(2) given that "the breach took place" within the Middle District of Alabama.

4.     Furthermore, venue is appropriate under 28 U.S.C. § 1391(b)(2) in that the Defendants were doing business in the State of Alabama, and upon information and belief, a substantial part of the events giving rise to the Plaintiff's claims occured within this District.

## IV. PARTIES

5.     Plaintiff, Cathy Cleiland, is a resident citizen of Barbour County, Alabama.

6.     Defendant Life Insurance Company of North America is, upon information and belief, a Pennsylvania corporation with its principal place of business in Pennsylvania.

7.     Upon information and belief, the Defendant Life Insurance Company of North America is a plan "fiduciary" in the employee welfare benefit plan and/or pension plan and is an insurance company authorized to transact the business of insurance in the State of Alabama.

8.     Defendant Life Insurance Company of North America further served as

2

underwriter for the employee welfare benefit plan and/or pension plan and may be served with process by serving CT Corporation System, 2000 Interstate Park Drive, Suite 204, Montgomery, AL 36109.

9. Defendant Cigna Corporation is, upon information and belief, a Delaware corporation whose principal place of business is in Pennsylvania.

10. Upon information and belief, the Defendant Cigna Corporation is a plan "fiduciary" under the employee welfare benefit plan and is an insurance company authorized to transact the business of insurance in the State of Alabama.

11. Defendant Cigna Corporation served as underwriter and/or claims administrator for the employee welfare benefit plan, and may be served with process by serving CT Corporation, 2000 Interstate Park Drive Suite 204, Montgomery, AL 36109.

12. The Defendant Cigna Holdings Inc., exercised authority or control respecting the management or disposition of the plan assets, and is therefore, a "fiduciary" as that term is defined by 29 U.S.C. § 1002(21).

13. Furthermore, the Defendant Cigna Holdings Inc. provides services to the plan(s) at issue, and as such is a "party in interest" as that term is defined by 29 U.S.C. § 1002(14).

14. The Defendant Cigna Holdings Inc. is, upon information and belief, a Delaware Corporation who is a subsidiary of Defendant Cigna, and who may be served with process by serving CT Corporation, 2000 Interstate Park Drive Suite 204, Montgomery, AL 36109.

15. The Defendant Temple-Inland Disability Health and Welfare Plan is an "employee welfare benefit plan" and/or "employee pension plan" as defined within 29 U.S.C. § 1001, et. seq., and may be served with process by serving Temple-Inland Inc. Benefits Administration Committee, Temple-Inland Forest Products Corporation, P.O. Drawer N, 303

South Temple Drive, Diboll, Texas 75941.

16. The Defendant Temple-Inland Forest Products Corporation is, upon information and belief, the named "Plan Administrator" for the Defendant Temple-Inland Disability Health and Welfare Plan and, according to the Plan, may be served with process by serving Temple-Inland Inc. Benefits Administration Committee, Temple-Inland Forest Products Corporation, P. O. Drawer N, 303 South Temple Drive, Diboll, Texas 75941.

## V. STATEMENT OF FACTS

17. In 2002, Plaintiff began experiencing severe and increasing pain in her back and left hip and leg and numbness in her thigh.

18. Plaintiff's pain was due in part to a bulging disc with osteophytes that protruded into the foramen. It was therefore necessary for Plaintiff to undergo back surgery.

19. Plaintiff underwent a lumbar laminectomy on May 21, 2003.

20. Plaintiff's discharge instructions following her laminectomy included no lifting of anything five (5) pounds or heavier for six (6) weeks; no riding in a vehicle for two (2) weeks; and no bending, stooping, pulling or twisting for a period of indefinite duration.

21. On May 27, 2003, Plaintiff notified Defendants of her disability claim via phone call. The report generated in response, identifying her call as intake number 589813409422531, lists her diagnosis as "sprain of back" and acknowledges the surgery performed on May 21, 2003.

22. On June 4, 2003, Plaintiff submitted a Disability Proof of Loss to Defendants. This Proof of Loss indicated that Plaintiff's date of injury was April 25, 2002, caused by a car accident; that the date she was first unable to work was May 14, 2003 and that she anticipated returning to work on July 7, 2003.

23. The June 2003 Proof of Loss form also indicated that Plaintiff's policy number was unknown but that the effective date of her Short Term Disability ("STD") coverage was August 24, 1998.

24. Defendants notified Plaintiff by letter dated May 27, 2003, that they had received her claim for Short Term Disability (STD) benefits but required additional medical records in order to make a determination. Specifically, Defendants stated that they needed "additional medical information from John Hackman."

25. Defendants notified Plaintiff by letter dated June 4, 2003, that they had evaluated her disability claim and determined that she should be able to return to work on June 18, 2003.

26. Defendants' letter also identifies Plaintiff's Short Term Disability policy number as SHD 020035; Temple Inland as the policyholder; and Life Insurance Company of North America as the plan administrator.

27. On June 10, 2003, Plaintiff's neurosurgeon, who performed her laminectomy, provided Defendants with a report and accompanying medical documents indicating that Plaintiff's diagnosis was lumbar radiculitis and that she could not return to work until at least August 13, 2003.

28. Defendants notified Plaintiff by letter dated August 12, 2003, that her disability claim on policy number SHD 020035 had been approved through October 7, 2003.

29. Plaintiff's Long Term Disability policy number is FLK 020104, the effective date is January 1, 1998, and the Policyholder is Temple-Inland Forest Products Corporation.

30. Plaintiff's Long Term Disability ("LTD") policy defines disability as "earning 80% or less of your Indexed Covered Earnings" because of injury or sickness or "if, because of injury or sickness, you are unable to perform all the material duties of your regular occupation."

31. Plaintiff experienced debilitating pain following her laminectomy and therefore had to undergo a second surgery, a re-exploration laminectomy, on July 16, 2003.

32. Defendants notified Plaintiff by letter dated October 2, 2003, that it had received her claim for LTD benefits on policy number FLK 020104 and that they would need additional information from her physicians in order to investigate said claim.

33. Defendants arranged for Plaintiff to appoint Advantage 2000 Consultants, Inc., to assist her with her Social Security disability claim. Plaintiff appointed Advantage 2000 Consultants, Inc., to assist her with her Social Security disability claim in October 2003.

34. Defendants notified Plaintiff by letter dated November 26, 2003, that they had approved her claim for LTD benefits based on Policy FLK 020104 and she would receive a gross benefit of $2500 per month.

35. In or around February 2004, Plaintiff's Social Security disability claim was denied.

36. Plaintiff, through Advantage 2000 Consultants, Inc., appealed this unfavorable social security decision in March 2004.

37. Advantage 2000 Consultants, Inc., notified Plaintiff by letter dated April 15, 2004, that Defendants had authorized it to offer its services in coordinating any potential refund Plaintiff might owe Defendants should she ultimately be awarded Social Security disability benefits.

38. Plaintiff's appeal of her Social Security disability claim denial was ultimately successful and she was awarded Social Security disability benefits.

39. Defendants notified Plaintiff by letter dated June 1, 2004, that it needed updated medical information in relation to her claim for LTD benefits on Policy FLK 20104 and

highlighted the provision of her policy that she "may not be considered totally disabled for any period if [she was] not under the regular care of a licensed physician."

40. Defendants paid Plaintiff disability benefits from November 2003 through July 2005, in an amount totaling $50,000.

41. Once Defendants became aware of Plaintiff's award of social security benefits due to her total disability, they demanded $25,240.66 from her based on an alleged overpayment of benefits.

42. Plaintiff paid $24,600.00 by check in September 2005, an amount equal to the entire amount she was awarded from Social Security for her disability claim, to Defendants based on this alleged overpayment of $25,240.66. Defendants asserted that Plaintiff still owed them $640.66.

43. Defendants notified Plaintiff by letter dated May 18, 2005, that, as her disability claim was nearing the 24 month mark, they would be investigating said claim to determine whether she was eligible for continuing benefits.

44. Plaintiff's policy provides that once "disability benefits have been payable for 24 months, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings."

45. Defendants notified Plaintiff by letter dated June 17, 2005, that they were reviewing her claim for Long Term Disability Benefits on Policy number FLK 20104 and needed additional medical records for their review.

46. Defendants notified Plaintiff by letter dated September 21, 2005, that they were

7

evaluating her claim for long term disability benefits and that they needed additional medical records for their evaluation.

47. Defendants notified Plaintiff by letter dated December 7, 2005, that no additional LTD benefits would be paid on policy FLK 20104 because she did not meet the policy's new Definition of Disability. Defendants' support for its denial of Plaintiff's LTD claim included the erroneous assertion that Kitty from the Center of Pain of Montgomery, one of Plaintiff's attending physician's offices, "stated that they are not disabling" Plaintiff.

48. Defendants' assertion that the Center of Pain of Montgomery did not disable the Plaintiff is wholly erroneous as indicated in the Sworn Statement of Dr. David P. Herrick, pgs 25-30.

49. Furthermore, Kitty is an LPN nurse at the Center of Pain of Montgomery who does not have authority to provide diagnoses of patients. *Id.*

50. Dr. David Herrick, Plaintiff's physician at the Center of Pain of Montgomery, testified that Plaintiff could not stand for four or five hours a day working, that she would require bed rest during the day, that she would also require more than 30 minute breaks during the course of the day, that her medical conditions give rise to lapses in memory and concentration that would render her unreliable in a full time work setting, and that her conditions and diagnoses would render her unreliable in performing a forty-hour workweek. *Id.*

51. Defendants' December 7, 2005 letter acknowledges that Plaintiff's diagnoses include lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain and diabetes. Defendants' letter further acknowledges that they had not obtained information from Plaintiff's primary care physician, Dr. Brett Johnson.

52. Defendants' December 7, 2005 denial letter notified Plaintiff of her right to

8

appeal.

53. Plaintiff notified Defendants by letter dated December 21, 2005, that she was appealing the denial of her benefits.

54. In January 2006, Plaintiff received a demand for $640.66 from a debt collection agency for Life Insurance Company of North America, based on the alleged overpayment of LTD benefits.

55. Defendants notified Plaintiff by letter dated March 10, 2006 that it was upholding its denial of her claim for benefits. This denial exhausted all known administrative remedies.

56. Plaintiff's multiple diagnoses include lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain, diabetes, and sleep apnea.

57. Plaintiff's diagnoses have required her to undergo numerous surgical procedures, including two (2) laminectomies; two (2) diskectomies; and multiple cervical fusions.

58. Plaintiff's multiple diagnoses and resulting past surgeries cause her to be in constant and extreme pain, consistently rated by her as at least 8 out of 10 in severity. Plaintiff's multiple diagnoses and resulting past surgeries also require her to regularly take many medications, including, as was noted in Defendants' appeal process, "chronic narcotic pain medications & high-dose neuroleptic drugs."

59. Despite Plaintiff's complete and total disability and her physicians' submission of medical records supporting such, Defendants determined that Plaintiff was not disabled.

60. Medical records submitted by Plaintiff's physicians clearly dispute the Defendants' findings. Dr. Adam Nortick, Plaintiff's physician at the Center of Pain of Montgomery, submitted a letter to Defendants stating that Defendants' letter "mentioned that Ms. Cleiland had not been complaining of any problems with radiating type pain or numbness.

9

[However,] Ms. Cleiland has clearly indicated on her admission sheets and on the pain diagrams I put down that she has involvement in hands and feet. Ms. Cleiland has persistently been on Neurontin for tingling and numbness."

61. Prior to Plaintiff's disability, she worked as the Human Resource Manager for Temple Inland.

62. Plaintiff's job duties required her to be able to implement critical decision making skills, type and use a computer often, walk distances to speak to employees, and effectively communicate with others.

63. No provision exists in Plaintiff's policies granting discretionary authority over any of her claims to CIGNA.

64. Despite the absence of any provision granting CIGNA discretionary authority over Plaintiff's claims, all correspondence related to Plaintiff's claims was sent to and from CIGNA employees.

65. Plaintiff, by letter dated October 27, 2006 from undersigned Counsel, requested from CIGNA all "relevant" documents to her claim as that term is defined by the Department of Labor, but the Defendants refused, instead producing only portions of the ERISA Record.

66. Plaintiff's counsel again requested all relevant documents by letter dated March 29, 2007.

67. Defendants' response was that they would not provide copies of the Short Term Disability policy or Life Insurance Policy; information provided to SSA by Defendants' agent, Advantage 2000, or Defendants' claims manual.

68. Upon information and belief, Life Insurance Company of North America and CIGNA have entered into an agreement whereby CIGNA administers all of Life Insurance

Company of North America's insurance policies.

69. Upon information and belief, Life Insurance Company of North America has no employees.

## VI. CAUSE OF ACTION
## COUNT I

### (A) ACTION FOR BENEFITS UNDER 29 U.S.C. § 1132(a)(1)(B)

70. Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

71. The Plan is deemed "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined in 29 U.S.C. § 1001, et. seq.

72. Plaintiff is a "participant" and a "beneficiary" in the employee welfare benefit and/or pension plan as those terms are defined under 29 U.S.C. § 1001, et. seq.

73. Plaintiff is disabled under the terms of the employee welfare benefit plan.

74. Plaintiff is disabled under the terms of the employee pension plan.

75. The decision to deny benefits was not supported by substantial evidence.

76. The Defendants denied Plaintiff benefits to which Plaintiff was entitled under the terms of the employee welfare benefit plan/insurance policy(ies) and/or pension plan by refusing to provide or discontinuing payment of benefits.

77. The decision making process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with the Department of Labor regulations.

78. The decision making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

79. The appellate procedures did not provide the Plaintiff a full and fair review.

80. The Defendant's actions were unreasonable and/or arbitrary and capricious and in violation of the terms of the employee welfare benefit plan/insurance policy.

81. As a direct and proximate result of the conduct of the Defendants in failing to provide benefits for the Plaintiff's disability and/or terminating benefits, and in failing to provide a full and fair review of the decision to deny benefits and/or terminate benefits, Plaintiff has been damaged in the amount equal to an amount of benefits to which Plaintiff would have been entitled under the Plan(s), in an amount equal to future benefits payable while the Plaintiff remains disabled under the terms of the Plan(s), and additional damages to be proven in the trial of this matter.

### (B) JOINT AND SEVERAL LIABILITY AS TO ALL DEFENDANTS

82. Should this Court determine that CIGNA is not a defacto administrator "fiduciary" or "party in interest" (as those terms are defined within ERISA), then the Plaintiff would plead in the alternative that CIGNA is a proper party on the basis that CIGNA so dominates its subsidiaries, including LINA, that CIGNA has complete control and domination of its subsidiaries' finances, policy and business practices, and that LINA has no substantial separate existence of its own, and as such CIGNA and LINA, should be held jointly and severally liable for any damages awarded under 29 U.S.C. § 1132(a)(1).

83. LINA has no claims personnel.

84. The personnel who worked on the Plaintiff's claim are CIGNA employees.

85. LINA is are not employing entities, given that all personnel "working for" LINA are CIGNA employees.

86. CIGNA so dominates its subsidiaries, including LINA, that CIGNA has complete control and domination of its subsidiaries' finances, policies and business practices, and LINA has no substantial separate existence of its own.

87. In filings with the Securities and Exchange Commission, CIGNA designates LINA as a wholly owned subsidiary.

88. In filings with the Securities and Exchange Commission, CIGNA lists, as CIGNA income, all of the income received by the wholly owned subsidiary LINA.

89. In filings with the Securities and Exchange Commission, CIGNA designates, as liabilities of CIGNA, the liabilities of LINA.

90. CIGNA is the "ultimate controlling person" as that term is used in the insurance holding act, for LINA.

91. Upon information and belief, the general service agreements between CIGNA and the insurance subsidiary Defendants of CIGNA provide that CIGNA agrees to, under certain circumstances, indemnify its subsidiary insurance corporations for certain acts of CIGNA employees.

92. Upon information and belief, the general service agreements between CIGNA and the subsidiary Defendant insurance companies provides that at all times, the employees performing services for claims arising from the subsidiary insurance company's policies, will remain CIGNA employees.

93. All correspondence sent to Plaintiff from CIGNA stated that "CIGNA' and "CIGNA Group Insurance" are registered service marks and refer to various operating

13

subsidiaries of CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

## COUNT II

### CAUSE OF ACTION FOR FAILURE TO PROVIDE PLAN DOCUMENTS UNDER 29 U.S.C. § 1132(c)

94. Plaintiff adopts and incorporates all of the Paragraphs above as though fully set forth herein.

95. The Defendant Plan Administrator and / or the *de facto* Plan Administrator was requested to provide all relevant documents as well as any documents which form the basis of the Defendants' denial of benefits to the Plaintiff.

96. 29 C.F.R. 2560.503-1 (h) (2) (iii) provides that the Plaintiff is to be provided copies of "all documents, records and other information relevant to claimant's claim for benefits."

97. 29 C.F.R. 2560.503-1 (m) (8) defines "relevant" as it is used in 29 C.F.R. 2560.503-1 (h) (2) (iii), as all documents, records or other information which was "relied upon in the making of the benefit determination" or "was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such documents, record or other information was relied upon in making the benefit determination", and "demonstrates compliance with the administrative process and safeguards required."

98. The Defendant Plan Administrator and / or the *de facto* Plan Administrator, failed ore refused to provide the documents as required pursuant to 29 U.S.C. § 1132 (c) and 29 C.F.R. 2560.503-1 (h) (2) (iii).

99. As an ERISA fiduciary the Defendant Plan Administrator and / or the *de facto* Plan Administrator was responsible for providing timely, accurate and complete information and documents to Plaintiff.

100. Pursuant to 29 U.S.C. § 1132(c), the Defendant Plan Administrator and / or the *de facto* Plan Administrator is liable to Plaintiff for penalties in an amount up to One Hundred Ten Dollars ($110) per day from thirty days after the first request for the claims file and supporting documentation.

### COUNT III

### EQUITABLE ESTOPPEL

101. Plaintiff adopts and incorporates all of the Paragraphs above as though fully set forth herein.

102. Advantage 2000 Consultants, Inc., was retained by CIGNA to represent Plaintiff in her appeal of the Social Security Administration's initial denial of Plaintiff's claim for disability benefits.

103. Advantage 2000 Consultants, Inc., was therefore acting, at all times pertinent, as CIGNA's agent.

104. Advantage 2000 Consultants, Inc. and thereby CIGNA represented and warranted to the Social Security Administration that Plaintiff is disabled.

105. As a result of Defendants' representation, Plaintiff ultimately awarded Social Security benefits due to her disability.

106. As a result of Defendants' representations, Plaintiff was awarded back benefits from Social Security. Defendants then demanded they be given those back benefits. Defendants directly benefited from their representations to Social Security.

107. Defendants are therefore equitably estopped from asserting that Plaintiff is not disabled in this litigation.

## COUNT VII.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the Plaintiff the following relief:

a. Award the Plaintiff past benefits due and payable under the terms of the employee welfare benefit plan/insurance policy(ies) and/or pension plan pursuant to 29 U.S.C. § 1132(a)(1);

b. For a declaratory judgment as to the Plaintiff's entitlement to future benefits and an appropriate order directing the Defendant to pay all similar claims of the Plaintiff in the future pursuant to 29 U.S.C. § 1132 (a)(1);

c. Should the Defendant's pay all past due benefits, Plaintiff requests this Honorable Court enter a declaratory judgment as to the Plaintiff's entitlement to future benefits, along with entering an appropriate order directing the Defendant to pay similar claims to the Plaintiff in the future, or in the alternative, for the Court to remove the Defendant's from their fiduciary roles in the administration of the Plan(s), and to appoint a special master to substitute for those Defendant's, with the special master having the authority to make all determinations as to the Plaintiff's entitlement to future benefits;

d. For a judgment against the Defendant awarding the Plaintiff prejudgment interest, costs and expenses, including the reasonable attorney's fee as permitted under 29 U.S.C. § 1132 (g)(1);

e. For an order enjoining the Defendants from further breaches of fiduciary or co-fiduciary duties, and direct that Defendants exercise reasonable care, skill, prudence, and diligence in the administration of the Plaintiff's claim;

f. For an order finding the Defendants jointly and severally liable for the breaches described herein;

g. For an ordering finding the Defendant CIGNA jointly and severally liable with the Defendants LINA for any award of damages;

h. For an order requiring Defendants to provide the Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under the Plan(s);

i. For a judgment against the Plan Administrator and or *de facto* Plan Administrator in an amount representing up to $110 per day from the date of the original request for documentation until such time as the documents are provided to Plaintiff as required under 29 C.F.R. 2560.503-1(g)(1), and pursuant to 29 U.S.C. § 1132(c)(1);

j. For an order estopping Defendants from asserting that Plaintiff is not disabled, per their representations in Plaintiff's appeal to the Social Security Administration.

k. Such other relief as may be deemed just and proper.

_____
Thomas O. Sinclair
(SIN018)

_____
Jenifer Champ Wallis
(WAL151)

17

**OF COUNSEL:**
Thomas O. Sinclair (SIN018)
Jenifer Champ Wallis (WAL191)
CAMPBELL, WALLER & POER, LLC
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
Phone: (205) 803-0051
Fax:     (205) 803-0053
E-mail: tsinclair@cwp-law.com
E-mail: jwallis@cwp-law.com

## PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:

**Cigna Corporation**
CT Corporation
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

**Cigna Holdings Inc.**
CT Corporation
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

**Life Insurance Company of North America**
CT Corporation
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

**Temple-Inland Disability Health and Welfare Plan**
Temple-Inland Inc. Benefits Administration Committee
Temple-Inland Forest Products Corporation
P.O. Drawer N
303 South Temple Drive
Diboll, TX 75941

**Temple-Inland**
Temple-Inland Inc. Benefits Administration Committee
Temple-Inland Forest Products Corporation
P.O. Drawer N
303 South Temple Drive
Diboll, TX 75941

*Jenifer Champ Wallis*
Of Counsel

18