**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| CATHY CLEILAND, | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **LIFE INSURANCE COMPANY OF NORTH** | ) | **2:07-CV-00486-MEF-SRW** |
| **AMERICA, TEMPLE-INLAND** | ) | |
| **DISABILITY HEALTH AND WELFARE** | ) | |
| **PLAN, and TEMPLE INLAND FOREST** | ) | |
| **PRODUCTS CORPORATION,** | ) | |
| | ) | |
|     **Defendants.** | ) | |

## DEFENDANTS' EVIDENTIARY SUBMISSION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Life Insurance Company of North America ("LINA"), Temple-Inland Disability Health and Welfare Plan and TIN, Inc., formerly known as Temple Inland Forest Products Corporation (collectively "Defendants"), by and through their counsel, hereby give notice of the filing of the following material in support of their contemporaneously filed motion for summary judgment:

1.      Affidavit of Heather Zapf (attached hereto as Exhibit "A")

2.      Affidavit of Cecilia Cornelius (attached hereto as Exhibit "B")

I hereby certify that I currently hold the original signature page for the affidavits referenced along with all formalities associate therewith.

Respectfully submitted by,

/s/ Grace Robinson Murphy
William B. Wahlheim, Jr.
John David Collins
Grace Robinson Murphy

Attorneys for Defendants,
Life Insurance Company of North America,
Temple Inland Disability Health and
Welfare Plan and TIN, Inc.

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas O. Sinclair
Jenifer Champ Wallis

/s/ Grace Robinson Murphy
OF COUNSEL

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| CATHY CLEILAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LIFE INSURANCE COMPANY OF NORTH | ) | CIVIL ACTION NO. : |
| AMERICA, TEMPLE INLAND | ) | 2:07-CV-00486-MEF-SRW |
| DISABILITY HEALTH AND WELFARE | ) | |
| PLAN, and TEMPLE INLAND FOREST | ) | |
| PRODUCTS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF HEATHER ZAPF

COMMONWEALTH OF PENNSYLVANIA          )

COUNTY OF ALLEGHENY          )

BEFORE ME, the undersigned authority in, and for said County and State, this day personally appeared Heather Zapf, who, being first duly sworn, deposes and says as follows:

1.      My name is Heather Zapf. I am currently employed by Life Insurance Company of North America ("LINA") as an Operations Representative. Based upon my position and involvement with LINA and my review of relevant documents, I have personal knowledge of the facts set forth herein. I am over the age of nineteen (19) years and am competent to execute this Affidavit.

2.      LINA maintains records in the ordinary course of business relative to claims for benefits such as the exhibits attached hereto, which records are made at the time of the acts, transactions, occurrences and/or events reflected in the records, or within a reasonable time thereafter, by someone with personal knowledge of such acts, transactions, occurrences and/or

events.  A true and correct copy of the administrative record which LINA maintained on Plaintiff's claim for long-term disability benefits is attached hereto as Exhibit "1".

3.    LINA issued Group Policy FLK-020104 (hereinafter referred to as "Policy") to Temple-Inland Forest Products Corporation.   A true and correct copy of the Policy is attached hereto as Exhibit "2".

4.    TIN, Inc. formerly known as Temple-Inland Forest Productions Corporation is the Plan Sponsor for the Plan and LINA serves as the Claims Administrator with responsibility for adjudicating claims for long-term disability benefits made by participants of the Plan.

FURTHER AFFIANT SAYETH NOT.

Executed on the _31_ day of _January_, 2008.

_Heather Zapf_
Heather Zapf

Sworn to and subscribed before
me on this the _31_ day of
_January_, 2008.

_[signature]_
Notary Public
My Commission Expires: _08/30/2011_

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Michael Dean James, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Aug. 30, 2011
Member, Pennsylvania Association of Notaries

# EXHIBIT 1 TO EXHIBIT A Part 1

## Claim File Summary Information

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | -2332 | **DOB** | 1957 |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Report date: 06/14/2007 10:02:42 AM EST**

LINA/Cleiland 0001

# Employee File

## Employee Information

| | | | | |
|---|---|---|---|---|
| Prefix Name | | First Name | CATHY | MI | K |
| | | Last Name | CLEILAND | Suffix Name | |
| Certholder Code | S - Social Security Number | SSN | | | |
| Date of Birth | | Age | 49 | | |
| Gender | Female | Marital Status | Unknown | SIT State | ALABAMA |

## Address Information

| | | | | | |
|---|---|---|---|---|---|
| Address Line 1 | | | | | |
| Address Line 2 | | | | | |
| City | CLIO | State/Province | ALABAMA | Zip Code | 36017 |
| Country | United States | Other | | | |

## Phone Information

| | | | | |
|---|---|---|---|---|
| Type | | Number | | Ext. |
| Type | | Number | | Ext. |
| Type | | Number | | Ext. |
| Type | | Number | | Ext. |
| E-Mail Address | | | | |

| | | | |
|---|---|---|---|
| Last Changed User | Arlene Wilson | Last Changed Date | 08/27/2004 12:28 PM |

Created:    04/03/2004 06:41 AM

# Primary Claim File

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

## Assignment Information

| | | | |
|---|---|---|---|
| **Team Name** | D-Castellon | **Claim Office** | Dallas |
| **Nurse** | Teresa Lynfoot | **Vocational Rehab** | |
| **Claim Type** | LTD | | |
| **Claim Reopened Reason** | | | |
| **Claim Status Reason** | Denied, Not TD Own Occ | | |
| **Financial Arrangement** | 1 - Fully Insured | | ☑ **In Suit Indicator** |

## Incident Information

| | | | |
|---|---|---|---|
| **Last Day Worked** | 05/13/2003 | **Hours Worked Last Day** | 0 |
| **Benefit Start Date** | 11/10/2003 | **Benefit Term Date** | 11/21/2005 |
| **Benefit Paid Through Date** | 11/21/2005 | **Claim Registered Date** | 10/14/2003 |
| **Received Date** | 10/01/2003 | **STD to LTD Transition Date** | |
| **Any-Occ Date** | 11/10/2005 | **SUTA State** | ALABAMA |
| **Incurred Date** | 05/14/2003 | | |

## Standard Length of Disability Duration (in Days)

| | | | |
|---|---|---|---|
| **Part Time** | **Full Time** | **Red Flag** | ☑ **Does Not Exist** |

## Medical Information

| | | | |
|---|---|---|---|
| **Mental Illness Limit** | 1 - Duration Restricted | **Claim Complexity** | |
| **Primary ICD Code** | 7244 | | |
| **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS | | |
| **Secondary ICD Code** | 25000 | | |
| **Secondary ICD Description** | DM2 UNCOMP NSU | | |
| **Condition** | Illness | | |

## Occupation Information

| | | | |
|---|---|---|---|
| **Occupation Category** | 02 - Professionals | | |
| **Employee ID** | | **Date of Hire** | 08/24/1998 |
| **Job Title** | Professionals | **Work Related?** | |
| **Cause of Loss Description** | 054 - Sickness — Non-Occ | | |

## Key Dates

| | | | |
|---|---|---|---|
| **ERD** | | | |
| **ERD Reason Code** | | | |
| **Provider's Estimated RTW** | 11/10/2005 | **Actual RTW** | |
| **Med Approved Through** | 07/10/2004 | **Proof of Loss Date** | 11/21/2005 |

## SAM Information

LINA/Cleiland 0003

**Pre-SAM Effective Date**                          **SAM Effective Date**
**SAM Review Type**

## Policy / Key Change Information

| | | | |
|---|---|---|---|
| **Rated/Ported Code** | 3 - Pooled | | |
| **Number of Months in Split** | | **Split Transition Date** | |
| **LINA Only** | | | |
| **Policy Symbol** | FLK | **Policy Number** | 0020104 |
| **Suffix** | 001 | **Coverage Code** | 80B |
| **CG Only** | | | |
| **Account Number** | | **Policy Code** | |
| **Major/Minor** | | **Division** | |
| **Sub Minor** | | | |

| | | | |
|---|---|---|---|
| **Last Changed User ID** | Kelli Archacki | **Last Changed Date** | 11/21/2005 05:00 PM |

**Created:**    04/03/2004 08:41 AM

# Med/Voc

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLELAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

## Medical Information

| | | | |
|---|---|---|---|
| **Date Accident Happened or Symptoms First Appeared** | | | |
| **Provider's Estimated RTW Date** | 11/10/2005 | **ERD** | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |
| **Secondary ICD Code** | 25000 | **Secondary ICD Description** | DM2 UNCOMP NSU |
| **Level of Functional Capacity** | | **Actual RTW Date** | |

## Healthcare Connect

| | | |
|---|---|---|
| **Healthcare Connect** | **Early Notice ID** | |
| **CHC Data Source** | **CHC Eligibility Source** | |
| **CHC Medical Product Type** | **CIGNA Behavioral Type** | |
| **CHC Well Aware** | | |

## Treatment Information

| | | |
|---|---|---|
| **Name of Hospital or Clinic** | | |
| **Date Admitted** | **Date Discharged** | |
| **Expected Delivery Date** | **Delivery Method** | |
| **Actual Delivery Date** | **Complications** | |
| **Date of Surgery** | **Type of Surgery** | |

## Vocational Rehab Information

| | | | |
|---|---|---|---|
| **Mandatory Rehab** | | **DOT Description** | Sedentary |
| **Occupational Characteristics** | | | |
| **DOT Occupational Titles1** | 166.117-018 Manager, Personnel | **DOT Occupational Titles2** | |
| **DOT Occupational Titles3** | | **Claimant Educational Background** | |
| **Claimant Work History** | | | |
| **Rehab Accepted Date** | | **Rehab Closed Date** | |
| **Outcome** | | **RTW Category** | |

| | | | |
|---|---|---|---|
| **Last Changed User** | Sugi Komarov | **Last Changed Date** | 05/19/2005 10:22 AM |

**Created:**    04/03/2004 08:41 AM

LINA/Cleiland 0005

# Financial

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

## Compensation Information

| | | | |
|---|---|---|---|
| **Weekly Amount** | $ 990.39 | **Monthly Amount** | $ 4291.67 |
| **Average Weekly Wage (for 8 weeks preceding disability)** | $ 0.00 | **Total Hours Worked per Week** | |

## Benefit Information

| | | | |
|---|---|---|---|
| **Waiting Period** | | **Specify Other** | |
| **Waiting Period Code** | 06 - > 154 Days <= 184 Days | | |
| **Maximum Period** | | **Specify Other** | |
| **Total Benefits Paid Through Amount** | $ 30538.40 | | |
| **Period Code** | 07 - Age 65 | | |

## Contribution Information

| | | | |
|---|---|---|---|
| **STD Effective Date** | | **Buy-Up Effective Date** | |
| **Contribution Taxability** | | **Buy-Up Taxability** | |
| **Tax Contribution** | 0% | **Post-Tax Buy-Up Contribution** | 0% |
| **LTD Effective Date** | | **Employer-Calculated Blended Contribution** | 0% |

## Overpayment Information

| | | | |
|---|---|---|---|
| **Total Amount** | $ 0.00 | **Deduct Amount** | $ 0.00 |
| **Deduct Start Date** | | | |

## Social Security Information

| | | |
|---|---|---|
| **Date of Birth of Youngest Dependent** | | **Spouse Date of Birth** |
| **Reimbursement Agreement Received Date** | | **Authorization Form Received Date** |
| **Vendor Name** | | **Own Representation** |
| **Vendor Referred Date** | | |

## Benefit Segment Index

| Benefit Segment Number | Net Benefit Effective Date | Gross Benefit Amount | Net Benefit Amount |
|---|---|---|---|
| 1 | 11/10/2003 | $ 2500.00 | $ 2500.00 |
| 2 | 03/10/2004 | $ 2500.00 | $ 2500.00 |
| 3 | 07/10/2005 | $ 2500.00 | $ 1236.00 |

LINA/Cleiland 0006

## Benefit Segment Information

| | | | |
|---|---|---|---|
| Benefit Frequency | M - One Month (Standard 30 Day) | Benefit Paid Through Date | 11/21/2005 |
| Compensation Frequency | Monthly | Compensation Amount | $ 4291.67 |
| Integration Method | 01 - Direct Offset | Override | 0 % |
| Calculation Rounding Indicator | A - Basic Amt to Nearer Dollar | Override Amount | $ 0.00 |
| Calculation Basic | 60 % | Basic Amount | $ 2575.00 |
| Benefit Minimum Amount | $ 50.00 | Benefit Maximum Amount | $ 2500.00 |
| Flat Benefit Amount | $ | Gross Benefit Amount | $ 2500.00 |
| Net Benefit Amount | $ 2500.00 | Net Benefit Type | N - Gross or Gross less Offsets |
| Net Benefit Effective Date | 11/10/2003 | | |

### Offset Information

| Offset Type | Status | Effective Date | Term Date | Amount |
|---|---|---|---|---|
| 04 - Primary Disability w/ freeze | G - Initial App in Progress | 10/22/2003 | | $ 0.00 |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

## Benefit Segment Information

| | | | |
|---|---|---|---|
| Benefit Frequency | M - One Month (Standard 30 Day) | Benefit Paid Through Date | 11/21/2005 |
| Compensation Frequency | Monthly | Compensation Amount | $ 4291.67 |
| Integration Method | 01 - Direct Offset | Override | 0 % |
| Calculation Rounding Indicator | A - Basic Amt to Nearer Dollar | Override Amount | $ 0.00 |
| Calculation Basic | 60 % | Basic Amount | $ 2575.00 |
| Benefit Minimum Amount | $ 50.00 | Benefit Maximum Amount | $ 2500.00 |
| Flat Benefit Amount | $ | Gross Benefit Amount | $ 2500.00 |
| Net Benefit Amount | $ 2500.00 | Net Benefit Type | N - Gross or Gross less Offsets |
| Net Benefit Effective Date | 03/10/2004 | | |

### Offset Information

| Offset Type | Status | Effective Date | Term Date | Amount |
|---|---|---|---|---|
| 04 - Primary Disability w/ freeze | L - Denied, Appeal @ or Beyond ALJ | 03/09/2004 | | $ 0.00 |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

## Benefit Segment Information

| | | | |
|---|---|---|---|
| Benefit Frequency | M - One Month (Standard 30 Day) | Benefit Paid Through Date | 11/21/2005 |

| | | | |
|---|---|---|---|
| **Compensation Frequency** | Monthly | **Compensation Amount** | $ 4291.67 |
| **Integration Method** | 01 - Direct Offset | **Override** | 0 % |
| **Calculation Rounding Indicator** | A - Basic Amt to Nearer Dollar | **Override Amount** | $ 0.00 |
| **Calculation Basic** | 60 % | **Basic Amount** | $ 2575.00 |
| **Benefit Minimum Amount** | $ 50.00 | **Benefit Maximum Amount** | $ 2500.00 |
| **Flat Benefit Amount** | $ 0.00 | **Gross Benefit Amount** | $ 2500.00 |
| **Net Benefit Amount** | $ 1236.00 | **Net Benefit Type** | N - Gross or Gross less Offsets |
| **Net Benefit Effective Date** | 07/10/2005 | | |

## Offset Information

| Offset Type | Status | Effective Date | Term Date | Amount |
|---|---|---|---|---|
| 04 - Primary Disability w/ freeze | 03 - SS Award @ ALJ | 06/24/2005 | | $ 1264.00 |
| | | | | $ 0.00 |
| | | | | $ 0.00 |
| | | | | $ 0.00 |
| | | | | $ 0.00 |

| **Last Changed User** | Mark D'Antonio | **Last Changed Date** | 01/31/2007 01:03 PM |
|---|---|---|---|

## Additional Note

| | |
|---|---|
| **Created:** | 08/28/2006 08:49 AM |
| **Creator:** | Amy Halsey |
| **Type:** | General |
| **Subject:** | RSI |
| **Description:** | |
| | RSI reovered 75.00 |

## Additional Note

| | |
|---|---|
| **Created:** | 07/27/2006 12:13 PM |
| **Creator:** | Amy Halsey |
| **Type:** | General |
| **Subject:** | RSI |
| **Description:** | |
| | RSI recovered 75.00 |

## Additional Note

| | |
|---|---|
| **Created:** | 07/05/2006 10:33 AM |
| **Creator:** | Amy Halsey |
| **Type:** | General |
| **Subject:** | RSI |
| **Description:** | |
| | RSI recovered 75.00 |

**Additional Note**

| | |
|---|---|
| **Created:** | 05/25/2006 11:32 AM |
| **Creator:** | Amy Halsey |
| **Type:** | General |
| **Subject:** | RSI |
| **Description:** | |
| | RSI recovered 75.00 |

**Additional Note**

| | |
|---|---|
| **Created:** | 09/21/2005 02:30 PM |
| **Creator:** | Loretta Sottolano |
| **Type:** | General |
| **Subject:** | ORT |
| **Description:** | |
| | Posted $24,600.00 A2K recovery leaving $640.66 o/p. Ck #1099 |

**Created:**     04/03/2004 08:41 AM

LINA/Cleiland 0009

# Eligibility

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

## Decision Information

| | | | |
|---|---|---|---|
| **Core** | | **Date** | |
| **Buy-Up** | | **Date** | |

## Supplemental Information

| | | | |
|---|---|---|---|
| **CIGNA Life Insurance** | | **Life Policy Number** | |
| **Waiver of Premium** | | **Family Monthly Income** | No |
| **Pension Contribution** | | **Total & Permanent Disability** | |
| **Late Submittal** | | **Pension Supplement** | No |
| **Pre-Existing Condition** | 6 - Policy has a PCL -na | **Continuity of Coverage** | |
| **PCL Investigation Begin** | | **PCL Investigation End** | |
| **Date** | | **Date** | |
| **Occupational Provision** | | | |

## Employer Location Information

| | | | |
|---|---|---|---|
| **Location Number** | 09 | **Location** | FOREST PRODUCTS GROUP |
| **Address Line 1** | ATTN: PEGGY SIGLER | | |
| **Address Line 2** | 6 | | |
| **City** | MONROEVILLE | **State/Province** AL | **Zip Code** 36461 |

| | | | |
|---|---|---|---|
| **Last Changed User** | Drusilla Gamez | **Last Changed Date** | 02/03/2004 12:00 AM |

**Created:** 04/03/2004 08:41 AM

## SIU/Appeal

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

### Special Investigation

| | |
|---|---|
| SIU Acceptance Date | SIU Completed Date |

### Appeal Information

Claim Re-opened Date

### First Appeal

| | |
|---|---|
| **Appeal Received Date** | 12/29/2005 |
| **Appeal Acknowledgement Letter Sent Date** | 01/05/2006 |
| **Appeal Resolution Date** | 03/10/2006 |

### Second Appeal

| | |
|---|---|
| **Appeal Received Date** | 01/23/2007 |
| **Appeal Acknowledgement Letter Sent Date** | 02/12/2007 |
| **Appeal Resolution Date** | 03/19/2007 |

| | | | |
|---|---|---|---|
| **Last Changed User** | Drusilla Gamez | **Last Changed Date** | 02/03/2004 12:00 AM |

Created:    04/03/2004 08:41 AM

## Supp Covg

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

### Family Monthly Income

| | | | | |
|---|---|---|---|---|
| **Eligible** | No | **Claim Status** | | |
| **Net Benefit Amount** | $ 0.00 | **Benefit %** | 0.00 % | |
| **Benefit Start Date** | | **Benefit Term Date** | | |
| **Benefit Frequency** | | **Benefit Period Code** | | |
| **Employee Contribution %** | 0.00 % | | | |

### Pension Supplement

| | | | | |
|---|---|---|---|---|
| **Eligible** | No | **Claim Status** | | |
| **Net Benefit Amount** | $ 0.00 | **Benefit %** | 0.00 % | |
| **Benefit Start Date** | | **Benefit Term Date** | | |
| **Benefit Frequency** | | **Benefit Period Code** | | |
| **Employee Contribution%** | 0.00 % | | | |

### Pension Contribution

| | | | | |
|---|---|---|---|---|
| **Eligible** | No | **Taxable** | | |
| **Net Benefit Amount** | $ 0.00 | **Benefit %** | 0.00 % | |
| **Employee Contribution%** | 0.00 % | | | |

### Total & Permanent Disability

| | | | | |
|---|---|---|---|---|
| **Interest Rate** | 0.00 % | **Paid Out As** | | |
| **TPD Rate** | 0.00 % | **TPD Amount** | $ 0.00 | |

### Spouse Information

| | | | | |
|---|---|---|---|---|
| **First Name** | | **MI** | **Last Name** | |
| **SSN** | | | **Date of Birth** | |
| **Is Spouse Employed?** | | | **If Employed** | |

| | | | |
|---|---|---|---|
| **Last Changed User** | Drusilla Gamez | **Last Changed Date** | 02/03/2004 12:00 AM |

**Created:**    04/03/2004 08:41 AM

LINA/Cleiland 0012

# Follow-Up Tasks - Correspondence Task

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**    Free Form Letter

**Comment/Instruction**

DocGen System Notice of Letter Creation.
Reference ~840233~699235~
Role: Attorney
Specialty:
Primary Recipient: SINCLAIR, THOMAS
Company:
Category:
System title: Free Form Letter
Author: JOHNSON, KAROL
Date Sent: Apr 24 2007 1:56PM
User title:
Enclosures Indicator:
CC Indicator:

| | | | |
|---|---|---|---|
| **Last Changed User** | Karol Johnson | **Last Changed Date** | 04/24/2007 01:56 PM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Karol Johnson | **Created:** | 04/24/2007 01:56 PM |

LINA/Cleiland 0013

# Appeal Process

| Name | CATHY CLEILAND | SSN | | DOB | | 05/14/2003 |
|------|----------------|-----|---|-----|---|------------|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | | |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed | |

## Senior Appeals Specialist/STD Gatekeeper

| Appeal Assignee | Noemi Martinez-Landis | Date | 02/13/2007 07:42 AM | User ID | Karol Johnson |
|-----------------|----------------------|------|---------------------|---------|---------------|

## Appeal Assignee

**Detailed Acknowledgement Letter Sent Date**     02/26/2007

**Action Plan/Investigation Results**

vol appeal 48 yof off work since 05/14/03 due to lumbar spine surgery. Cx continues to claim disability due to back pain. Chronic pain s/p lumbar sx on 5/21/03 l4-5 laminectomy, re-exploratory sx 7/16/03, 12/16/03 L4-5 laminectomy and diskectomy w/ L4-5 internal fixation and fusion. Cx is also s/p cervical fusionin 1997, diabetes, and neuropathy. 10/20/05 consult with gastroenterologist, esophagogastroduodenoscopy with balloon dilation and biopsy from 11/15/05, and a letter from Dr. Adam Nortick dated December 19, 2005 indicating Letter from Dr. Nortick cx on neurotin for tingling and numbness, meds stable, ongoing problems. May have unpredicted exacerbations as well as OV notes from 12/14/05-8/23/03. For vol appeal we received Medical opinion form from Dr. Wise 10/13/06 and Dr. Johnson 10/27/06 providing L&Rs of less than sed work. Lumbar MIR 5/17/06 bulging disc 4-5 extending on the left with compression of left L4 nerve root. Cervical epidural steroid injection 4/7/06, 2/6/06, 8/27/03,OV notes from the center for pain indicatng tx 10/24/069/18/06, shoulder Mri confirmed successful injection 10/31/06, Dr. Herrick sworn statement 11/13/06. 3/15/07 L&Rs are not supported for period of time in question and appeal is affirmed.

☑ **Refer to MC/NCM**     Date 03/15/2007 02:17 PM     User ID     Noemi Martinez-Landis

## MC/NCM

**Medical Investigation Results**

Medical records reviewed include, but are not limited to
- 11/10/05 note, Dr. Johnson. Diabetes uncontrolled because glycosylated hemoglobin level was 11.8. BP 150/78. Lungs, heart and abdomen exams normal. Blood sugar 314.
- 12/13/05 note, handwritten, Dr. J. Dental work done week ago today, extreme right side face pain with swelling. No exam recorded.
- 1/12/06 Cervical spine MRI report. No interval change since 12/8/04. Mild spinal stenosis.
- 5/18/06 Lumbar spine MRI report. L4-5 posterior spinal fusion. Moderate L3-4 central canal narrowing. L4-5 disc spacer with bulging into L4-5 left neuroforamen with Left L4 nerve root compression.
- 10/13/06 medical opinion form, Dr. Wise. Restricted because of poorly controlled type 2 diabetes with peripheral neuropathy. No specific measured physical limitations are listed. Restrictions include sitting 8 hrs/d and standing of walking 2 hrs/d, 10-15 minutes at a time. No lifting/carrying restrictions listed. He did not believe she could work 8 hrs/day, 40 hrs/wk. He believed she was cognitively limited because of medication use, but did not provide any cognitive measurements to support this opinion.
- 10/31/06 Right shoulder MRI report. Supraspinatus tendinosis without evidence of full thickness tear.
See Investigation Results below for assessment.
John Mendez, M.D.
ASSESSMENT, 3/14/2007 1107 AM
Based on the additional provide medical records, the original assessment remains unchanged because there is still no documentation of significant measured physical limitations time-concurrent with the denial date to support continuation of work restrictions recommended by treating physicians. Examples of this could include measured range of motion limitations by inclinometry and/or lower extremity significant muscle strength deficits by manual muscle testing.
John Mendez, M.D

☑ **Refer Back To Assignee**     Date 03/14/2007 01:43 PM     User ID     Jo Jacobson

## Recommendation

| **Appeal Assignee Recommendation** | Upheld Original Denial | | | |
|------------------------------------|------------------------|---|---|---|
| *Referred to CAT TL/SCM/TL of Assignee* | Date 03/15/2007 02:17 PM | User ID | Noemi Martinez-Landis | |

LINA/Cleiland 0014

**Decision**

**CAT TL (LTD)/SCM/TL of Assignee(STD) Decision** Upheld Original Denial

If decision = Overturned, route task to the TL of the core team. If decison = Upheld, route task to appeal assignee.

Date   03/19/2007 08:18 AM     User ID     Karol Johnson

**Comments**

decision reviewed

☑  **Appeal Decision Letter Sent**          Date   03/20/2007 09:47 AM     User ID     Noemi Martinez-Landis

**Last Changed User**     Noemi Martinez-Landis          **Last Changed Date**     03/20/2007 10:47 AM

**Status:**     Completed     **Assigned To:**     Noemi Martinez-Landis          **Created:**     02/13/2007 08:42 AM

LINA/Cleiland 0015

# Internal Resource Response

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**\*Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),**
**Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits**

**Referral Type** Medical

**Role** Nurse Case Manager    **Name** Jo Jacobson    ☒ New Nurse/VRC of Record

**Check all that apply for Medical or Vocational**

☒ Symptoms insufficient to support diagnosis

☒ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis

☐ Occupational requirements assessment is needed

☒ Determine Functional Capacity

☒ Projected return to work date is unclear or undetermined

☒ Return to Work Assistance

☐ Internal Transferable Skills Assessment

☐ Claim Complexity Changed

☑ Other    **Specify** Appeals AMD staffing
    **Other**

**Comments**

Vol appeal 48 yof off work since 05/14/03 due to lumbar spine surgery. Cx continues to claim disability due to back pain.
10/20/05 consult with gastroenterologist, esophagogastroduodenoscopy with balloon dilation and biopsy from 11/15/05, and
a letter from Dr. Adam Nortick dated December 19, 2005 indicating Letter from Dr. Nortick cx on neurotin for tingling and
numbness, meds stable, ongoing problems. May have unpredicted exacerbations as well as OV notes from 12/14/05-8/23/03

For vol appeal we received
Medical opinion form from Dr. Wise 10/13/06 and Dr. Johnson 10/27/06 providing L&Rs of less than sed work.
Lumbar MIR 5/17/06 bulging disc 4-5 extending on the left with compression of left L4 nerve root.
Cervical epidural steroid injection 4/7/06, 2/6/06, 8/27/06,
OV notes from the center for pain indicatng tx 10/24/069/18/06, shoulder Mri confirmed successful injection 10/31/06
Dr. Herrick sworn statement 11/13/06

Plan Need to clarify if L&Rs are supported by medical evidence on file from 11/22/05 forward.
NLandis ACM

**Title** Appeals AMD staffing

**Referral Accepted** Yes    **Date** 03/08/2007

**Comments**

3/8 routed to AMD for staffing. AMD Scott Taylor has reviewed previously Jo Jacobson RN, CCM

Medical records reviewed include, but are not limited to
- 11/10/05 note, Dr. Johnson. Diabetes uncontrolled because glycosylated hemoglobin level was 11.8. BP 150/78. Lungs,
heart and abdomen exams normal. Blood sugar 314.
- 12/13/05 note, handwritten, Dr. J. Dental work done week ago today, extreme right side face pain with swelling. No exam

LINA/Cleiland 0016

recorded.
- 1/12/06 Cervical spine MRI report. No interval change since 12/8/04. Mild spinal stenosis.
- 5/18/06 Lumbar spine MRI report. L4-5 posterior spinal fusion. Moderate L3-4 central canal narrowing. L4-5 disc spacer with bulging into L4-5 left neuroforamen with Left L4 nerve root compression.
- 10/13/06 medical opinion form, Dr. Wise. Restricted because of poorly controlled type 2 diabetes with peripheral neuropathy. No specific measured physical limitations are listed. Restrictions include sitting 8 hrs/d and standing of walking 2 hrs/d, 10-15 minutes at a time. No lifting/carrying restrictions listed. He did not believe she could work 8 hrs/day, 40 hrs/wk. He believed she was cognitively limited because of medication use, but did not provide any cognitive measurements to support this opinion.
- 10/31/06 Right shoulder MRI report. Supraspinatus tendinosis without evidence of full thickness tear.
See Investigation Results below for assessment.
John Mendez, M.D.

**Investigation Result**

ASSESSMENT, 3/14/2007 1107 AM
Based on the additional provide medical records, the original assessment remains unchanged because there is still no documentation of significant measured physical limitations time-concurrent with the denial date to support continuation of work restrictions recommended by treating physicians. Examples of this could include measured range of motion limitations by inclinometry and/or lower extremity significant muscle strength deficits by manual muscle testing.
John Mendez, M.D

| Last Changed User | John Mendez | | Last Changed Date | 03/14/2007 12:10 PM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | John Mendez | Created: | 03/08/2007 12:12 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0017

## Internal Resource Referral

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

*\* Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),*
*Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

| | | | | |
|---|---|---|---|---|
| **Title** | Appeals AMD staffing | | | |
| **Referral Type** | Medical | | | |
| **Role** | Nurse Case Manager | **Name** | Jo Jacobson | ☐ New Nurse/VRC of Record |

**Check all that apply for Medical or Vocational**

☐ **Symptoms insufficient to support diagnosis**

☐ **Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis**

☐ **Occupational requirements assessment is needed**

☐ **Determine Functional Capacity**

☐ **Projected return to work date is unclear or undetermined**

☐ **Return to Work Assistance**

☐ **Internal Transferable Skills Assessment**

☐ **Claim Complexity Changed**

☑ **Other**          **Specify Other**   Appeals AMD staffing

**Comments**
Vol appeal 48 yof off work since 05/14/03 due to lumbar spine surgery. Cx continues to claim disability due to back pain.
10/20/05 consult with gastroenterologist, esophagogastroduodenoscopy with balloon dilation and biopsy from 11/15/05, and
a letter from Dr. Adam Nortick dated December 19, 2005 indicating Letter from Dr. Nortick cx on neurotin for tingling and
numbness, meds stable, ongoing problems. May have unpredicted exacerbations as well as OV notes from 12/14/05-8/23/03

For vol appeal we received
Medical opinion form from Dr. Wise 10/13/06 and Dr. Johnson 10/27/06 providing L&Rs of less than sed work.
Lumbar MIR 5/17/06 bulging disc 4-5 extending on the left with compression of left L4 nerve root.
Cervical epidural steroid injection 4/7/06, 2/6/06, 8/27/03,
OV notes from the center for pain indicatng tx 10/24/06,9/18/06, shoulder Mri confirmed successful injection 10/31/06
Dr. Herrick sworn statement 11/13/06

Plan Need to clarify if L&Rs are supported by medical evidence on file from 11/22/05 forward.
NLandis ACM

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | Jo Jacobson | **Last Changed Date** | 03/08/2007 12:12 PM | |
| **Status:** Completed | **Assigned To:** | Jo Jacobson | **Created:** | 03/08/2007 12:11 PM |

LINA/Cleiland 0018

# Follow-Up Tasks - Correspondence Task

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**          Free Form Letter

**Comment/Instruction**

DocGen System Notice of Letter Creation.
Reference ~713832~588145~
Role: Attorney
Specialty:
Primary Recipient: SINCLAIR, THOMAS
Company:
Category:
System title: Free Form Letter
Author: MARTINEZ-LANDIS, NOEMI
Date Sent: Feb 26 2007 12:59PM
User title:
Enclosures Indicator:
CC Indicator:

| | | | |
|---|---|---|---|
| **Last Changed User** | Noemi Martinez-Landis | **Last Changed Date** | 02/26/2007 12:59 PM |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Noemi Martinez-Landis | **Created:** | 02/26/2007 12:59 PM |

LINA/Cleiland 0019

# Appeal Referral

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Core Team Claim Manager

| | |
|---|---|
| **ERISA Indicator** * | ERISA |
| **Financial Arrangement** | 1 - Fully Insured |
| **Appeal Received Date** * | 01/23/2007 |
| **Appeal Acknowledgement Letter Sent Date** * | 02/12/2007 |
| **Original Denial Date** | 12/07/2005 |
| **Reason for Original Denial** * | 9 - Denied, Not TD His Occ |
| **Does new information support re-open of claim?** * | Unable to Evaluate |

**Rationale / Special Handling Instructions (if applicable)**
voluntary appeal. 1st appeal handled by Medha Bharadwaj, ACM.

☑ **Referred to SCM/TL, if required**     Date  02/12/2007 03:21 PM     User ID  Medha Bharadwaj

## SCM/TL

| | |
|---|---|
| **Decision** * | Send to CAT (LTD) |

**If the decision is not to re-open, then re-route the task to the party selected above.**
**Comments**
**If decision is to Re-open, refer to Claim Manager**

| | | | |
|---|---|---|---|
| **Claim Manager Referral Date (Re-opens only)** | | **User ID** | |
| **Centralized Appeals Team / STD Appeals** | 02/13/2007 07:42 AM | **User ID** | Karol Johnson |
| **Gatekeeper Referral Date** | | | |

☑ **Appeal Decision Letter Sent (Re-Opens only)**  **Date**     **User ID**

| **Last Changed User** | Karol Johnson | **Last Changed Date** | 02/13/2007 08:42 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | Karol Johnson | **Created:** | 02/12/2007 04:21 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0020

# Claim Strategy

| Name | CATHY  CLEILAND | SSN | | DOB | |
|------|----------------|-----|--|-----|--|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**    Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**    **Name**

**For Staffings Only – Indicate Resources Present (check all that apply)**

- ☐ **AMD**
- ☐ **NCM**
- ☐ **VRC**
- ☐ **CBH Specialist**
- ☐ **On-Site Psych**
- ☐ **Network Orthopedist**

## Claim Status Information

| | |
|--|--|
| **Status** | Closed |
| **Status Reason** | Denied, Not TD Own Occ |
| **Reopened Reason** | |
| **Second Eye Review Required** | |

☐ **Second Eye Review Complete**    **Date**    **User ID**

**Comments**

## Duration Information

| **Part Time** | **Full Time** | | **Red Flag** | |
|---------------|---------------|--|--------------|--|
| ☐ **Does Not Exist** | | | | |
| **Provider's Estimated RTW Date** | 11/10/2005 | | **Days** | 757 |
| **ERD** | | | **ERD Reason** | |
| **Primary ICD Code** | 7244 | | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |

## Strategy Documentation

**Level of Functional**

LINA/Cleiland 0021

**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| Last Changed User | Mark D'Antonio | Last Changed Date | 01/31/2007 01:04 PM |
|---|---|---|---|

| Status: | Completed | Assigned To: | Mark D'Antonio | Created: | 01/31/2007 01:03 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0022

## Claim Strategy

| Name | CATHY CLEILAND | SSN | : | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

### Update Rationale

**Title**

**Update Rationale**          Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**                                              **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

- ☐ **AMD**
- ☐ **NCM**
- ☐ **VRC**
- ☐ **CBH Specialist**
- ☐ **On-Site Psych**
- ☐ **Network Orthopedist**

### Claim Status Information

| | |
|---|---|
| **Status** | Active |
| **Status Reason** | Own Occ - Receiving Payments |
| **Reopened Reason** | |
| **Second Eye Review Required** | |

☐ **Second Eye Review Complete**     **Date**     **User ID**

**Comments**

### Duration Information

| **Part Time** | **Full Time** | **Red Flag** |
|---|---|---|
| ☐ **Does Not Exist** | | |

| | | | |
|---|---|---|---|
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | 757 |
| **ERD** | | **ERD Reason** | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |

### Strategy Documentation

**Level of Functional**

LINA/Cleiland 0023

**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| Last Changed User | Mark D'Antonio | | Last Changed Date | 01/31/2007 01:02 PM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Mark D'Antonio | Created: | 01/31/2007 01:02 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0024

## Follow-Up Tasks - Correspondence Task

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | ✓ | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**         Free Form Letter

**Comment/Instruction**

DocGen System Notice of Letter Creation.
Reference ~518380~419477~
Role: Attorney
Specialty:
Primary Recipient: SINCLAIR, THOMAS
Company:
Category:
System title: Free Form Letter
Author: BHARADWAJ, MEDHA
Date Sent: Nov 13 2006 2:31PM
User title:
Enclosures Indicator:
CC Indicator:

| | | | |
|---|---|---|---|
| **Last Changed User** | Medha Bharadwaj | **Last Changed Date** | 11/13/2006 02:31 PM |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Medha Bharadwaj | **Created:** | 11/13/2006 02:31 PM |

LINA/Cleiland 0025

## Follow-Up Tasks - Correspondence Task

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY   CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #**  613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**       Free Form Letter

**Comment/Instruction**

DocGen System Notice of Letter Creation.
Reference ~477707~385267~
Role: Attorney
Specialty:
Primary Recipient: SINCLAIR, THOMAS
Company:
Category:
System title: Free Form Letter
Author: JOHNSON, KAROL
Date Sent: Oct 23 2006 2:07PM
User title:
Enclosures Indicator:
CC Indicator:

| | | | |
|---|---|---|---|
| **Last Changed User** | Karol Johnson | **Last Changed Date** | 10/23/2006 02:07 PM |
| **Status:** Completed | **Assigned To:** Karol Johnson | **Created:** | 10/23/2006 02:07 PM |

LINA/Cleiland 0026

## Follow-Up Tasks - Correspondence Task

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**       Free Form Letter

**Comment/Instruction**

DocGen System Notice of Letter Creation.
Reference ~439567~353629~
Role: Claimant
Specialty:
Primary Recipient: CLEILAND, CATHY
Company:
Category:
System title: Free Form Letter
Author: BHARADWAJ, MEDHA
Date Sent: Oct 3 2006 1:10PM
User title:
Enclosures Indicator:
CC Indicator: Y

| | | | |
|---|---|---|---|
| **Last Changed User** | Medha Bharadwaj | **Last Changed Date** | 10/03/2006 01:10 PM |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Medha Bharadwaj | **Created:** | 10/03/2006 01:10 PM |

LINA/Cleiland 0027

# Claim Strategy

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**     Other New Information

**For Walk-up and Nurse Interaction Only**
**Role**                          **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

- [x] **AMD**
- [x] **NCM**
- [ ] **VRC**
- [x] **CBH Specialist**
- [ ] **On-Site Psych**
- [ ] **Network Orthopedist**

## Claim Status Information

| | |
|---|---|
| **Status** | Closed |
| **Status Reason** | Denied, Not TD Own Occ |
| **Reopened Reason** | |
| **Second Eye Review Required** | |

- [ ] **Second Eye Review Complete**     **Date**          **User ID**

**Comments**

## Duration Information

| **Part Time** | **Full Time** | | **Red Flag** |
|---|---|---|---|
| [ ] **Does Not Exist** | | | |

| | | | | |
|---|---|---|---|---|
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | 757 | |
| **ERD** | | **ERD Reason** | | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS | |

## Strategy Documentation

**Level of Functional**

LINA/Cleiland 0028

**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| **Last Changed User** | Amy Halsey | | **Last Changed Date** | 08/28/2006 08:49 AM |
|---|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | Amy Halsey | **Created:** | 08/28/2006 08:49 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0029

# Claim Strategy

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**     Other New Information

### For Walk-up and Nurse Interaction Only

**Role**                                    **Name**

### For Staffings Only - Indicate Resources Present (check all that apply)

- [ ] **AMD**
- [ ] **NCM**
- [ ] **VRC**
- [ ] **CBH Specialist**
- [ ] **On-Site Psych**
- [ ] **Network Orthopedist**

## Claim Status Information

| | |
|---|---|
| **Status** | Active |
| **Status Reason** | Own Occ - Receiving Payments |
| **Reopened Reason** | |
| **Second Eye Review Required** | |

- [ ] **Second Eye Review Complete**     **Date**          **User ID**

**Comments**

Opened to post RSI recovery

## Duration Information

**Part Time**                    **Full Time**                    **Red Flag**

- [ ] **Does Not Exist**

| | | | |
|---|---|---|---|
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | 757 |
| **ERD** | | **ERD Reason** | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |

## Strategy Documentation

LINA/Cleiland 0030

**Level of Functional Capacity**

**Restrictions & Limitations**

**Subjective / Objective Findings / Treatment**

**Outstanding Issues and Follow-up Dates**

**Strategy**

| Last Changed User | Amy Halsey | | Last Changed Date | 08/28/2006 08:48 AM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Amy Halsey | Created: | 08/28/2006 08:48 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0031

# Claim Strategy

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**    Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**    **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

- ☑ **AMD**
- ☑ **NCM**
- ☑ **VRC**
- ☑ **CBH Specialist**
- ☑ **On-Site Psych**
- ☑ **Network Orthopedist**

## Claim Status Information

**Status**    Closed

**Status Reason**    Denied, Not TD Own Occ

**Reopened Reason**

**Second Eye Review Required**

☑ **Second Eye Review Complete**    **Date**    **User ID**

**Comments**

## Duration Information

| **Part Time** | | **Full Time** | | **Red Flag** | |
|---|---|---|---|---|---|
| ☑ **Does Not Exist** | | | | | |
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | | 757 | |
| **ERD** | | **ERD Reason** | | | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS | | |

## Strategy Documentation

**Level of Functional**

LINA/Cleiland 0032

**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| Last Changed User | Amy Halsey | | Last Changed Date | 07/27/2006 12:13 PM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Amy Halsey | Created: | 07/27/2006 12:13 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0033

# Claim Strategy

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**     Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**                                          **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

☐ **AMD**

☐ **NCM**

☐ **VRC**

☐ **CBH Specialist**

☐ **On-Site Psych**

☐ **Network Orthopedist**

## Claim Status Information

| | |
|---|---|
| **Status** | Active |
| **Status Reason** | Own Occ - Receiving Payments |
| **Reopened Reason** | |
| **Second Eye Review Required** | |

☐ **Second Eye Review Complete**     **Date**                    **User ID**

**Comments**

Opened to post RSI recovery

## Duration Information

| **Part Time** | | **Full Time** | | **Red Flag** | |
|---|---|---|---|---|---|
| ☐ **Does Not Exist** | | | | | |
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | | 757 | |
| **ERD** | | **ERD Reason** | | | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS | | |

## Strategy Documentation

LINA/Cleiland 0034

## Internal Resource Referral

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

*\* Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),*
*Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

| | | | | |
|---|---|---|---|---|
| **Title** | Appeals AMD staffing | | | |
| **Referral Type** | Medical | | | |
| **Role** | Nurse Case Manager | **Name** | Jo Jacobson | ☒ New Nurse/VRC of Record |

**Check all that apply for Medical or Vocational**

☐ Symptoms insufficient to support diagnosis

☐ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis

☐ Occupational requirements assessment is needed

☐ Determine Functional Capacity

☐ Projected return to work date is unclear or undetermined

☐ Return to Work Assistance

☐ Internal Transferable Skills Assessment

☐ Claim Complexity Changed

☑ Other          **Specify Other**   Appeals AMD staffing

**Comments**

Vol appeal 48 yof off work since 05/14/03 due to lumbar spine surgery. Cx continues to claim disability due to back pain.
10/20/05 consult with gastroenterologist, esophagogastroduodenoscopy with balloon dilation and biopsy from 11/15/05, and
a letter from Dr. Adam Nortick dated December 19, 2005 indicating Letter from Dr. Nortick cx on neurotin for tingling and
numbness, meds stable, ongoing problems. May have unpredicted exacerbations as well as OV notes from 12/14/05-8/23/03

For vol appeal we received
Medical opinion form from Dr. Wise 10/13/06 and Dr. Johnson 10/27/06 providing L&Rs of less than sed work.
Lumbar MIR 5/17/06 bulging disc 4-5 extending on the left with compression of left L4 nerve root.
Cervical epidural steroid injection 4/7/06, 2/6/06, 8/27/03,
OV notes from the center for pain indicatng tx 10/24/069/18/06, shoulder Mri confirmed successful injection 10/31/06
Dr. Herrick sworn statement 11/13/06

Plan Need to clarify if L&Rs are supported by medical evidence on file from 11/22/05 forward.
NLandis ACM

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | Jo Jacobson | **Last Changed Date** | 03/08/2007 12:12 PM | |
| **Status:** Completed | **Assigned To:** Jo Jacobson | **Created:** | 03/08/2007 12:11 PM | |

LINA/Cleiland 0035

## Follow-Up Tasks - Correspondence Task

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

**Title**  Free Form Letter

**Comment/Instruction**

DocGen System Notice of Letter Creation.
Reference ~713832~588145~
Role: Attorney
Specialty:
Primary Recipient: SINCLAIR, THOMAS
Company:
Category:
System title: Free Form Letter
Author: MARTINEZ-LANDIS, NOEMI
Date Sent: Feb 26 2007 12:59PM
User title:
Enclosures Indicator:
CC Indicator:

| Last Changed User | Noemi Martinez-Landis | Last Changed Date | 02/26/2007 12:59 PM |
|---|---|---|---|

| Status: | Completed | Assigned To: | Noemi Martinez-Landis | Created: | 02/26/2007 12:59 PM |
|---|---|---|---|---|---|

# Appeal Referral

| Name | CATHY  CLEILAND | SSN | | DOB | |
|------|----------------|-----|--|-----|--|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Core Team Claim Manager

| | |
|--|--|
| ERISA Indicator [*] | ERISA |
| Financial Arrangement | 1 - Fully Insured |
| Appeal Received Date [*] | 01/23/2007 |
| Appeal Acknowledgement Letter Sent Date [*] | 02/12/2007 |
| Original Denial Date | 12/07/2005 |
| Reason for Original Denial [*] | 9 - Denied, Not TD His Occ |
| Does new information support re-open of claim? [*] | Unable to Evaluate |

Rationale / Special Handling Instructions (if applicable)
voluntary appeal. 1st appeal handled by Medha Bharadwaj, ACM.

☑  Referred to SCM/TL, if required        Date   02/12/2007 03:21 PM        User ID   Medha Bharadwaj

## SCM/TL

Decision [*]        Send to CAT (LTD)

If the decision is not to re-open, then re-route the task to the party selected above.

Comments

If decision is to Re-open, refer to Claim Manager

| Claim Manager Referral Date (Re-opens only) | | User ID | |
|---|---|---|---|
| Centralized Appeals Team / STD Appeals | 02/13/2007 07:42 AM | User ID | Karol Johnson |
| Gatekeeper Referral Date | | | |

☐  Appeal Decision Letter Sent (Re-opens only)    Date        User ID

| Last Changed User | Karol Johnson | Last Changed Date | 02/13/2007 08:42 AM |
|---|---|---|---|

| Status: | Completed | Assigned To: | Karol Johnson | Created: | 02/12/2007 04:21 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0037

## Claim Strategy

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

### Update Rationale

**Title**

**Update Rationale**        Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**                                **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

- ☑ **AMD**
- ☐ **NCM**
- ☐ **VRC**
- ☑ **CBH Specialist**
- ☑ **On-Site Psych**
- ☑ **Network Orthopedist**

### Claim Status Information

| | |
|---|---|
| **Status** | Closed |
| **Status Reason** | Denied, Not TD Own Occ |
| **Reopened Reason** | |
| **Second Eye Review Required** | |

☐ **Second Eye Review Complete**        **Date**                **User ID**

**Comments**

### Duration Information

| **Part Time** | **Full Time** | **Red Flag** |
|---|---|---|
| ☑ **Does Not Exist** | | |

| | | | |
|---|---|---|---|
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | 757 |
| **ERD** | | **ERD Reason** | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |

### Strategy Documentation

**Level of Functional**

LINA/Cleiland 0038

**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| **Last Changed User** | Mark D'Antonio | | **Last Changed Date** | 01/31/2007 01:04 PM |
|---|---|---|---|---|
| **Status:** Completed | | **Assigned To:** | Mark D'Antonio | **Created:** 01/31/2007 01:03 PM |

LINA/Cleiland 0039

# Claim Strategy

| Name | CATHY CLEILAND | SSN | . | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**  Other New Information

**For Walk-up and Nurse Interaction Only**
**Role**                                         **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**
- ☐ **AMD**
- ☐ **NCM**
- ☐ **VRC**
- ☐ **CBH Specialist**
- ☐ **On-Site Psych**
- ☐ **Network Orthopedist**

## Claim Status Information

| | |
|---|---|
| **Status** | Active |
| **Status Reason** | Own Occ - Receiving Payments |
| **Reopened Reason** | |
| **Second Eye Review Required** | |

☐ **Second Eye Review Complete**      **Date**          **User ID**

**Comments**

## Duration Information

| **Part Time** | | **Full Time** | : | **Red Flag** | |
|---|---|---|---|---|---|
| ☐ **Does Not Exist** | | | | | |
| **Provider's Estimated RTW Date** | 11/10/2005 | | **Days** | 757 | |
| **ERD** | | | **ERD Reason** | | |
| **Primary ICD Code** | 7244 | | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS | |

## Strategy Documentation

**Level of Functional**

LINA/Cleiland 0040

**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| Last Changed User | Mark D'Antonio | | Last Changed Date | 01/31/2007 01:02 PM |
|---|---|---|---|---|
| Status: | Completed | Assigned To: | Mark D'Antonio | Created: | 01/31/2007 01:02 PM |

LINA/Cleiland 0041

## Follow-Up Tasks - Correspondence Task

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**     Free Form Letter

**Comment/Instruction**

DocGen System Notice of Letter Creation.
Reference ~518380~419477~
Role: Attorney
Specialty:
Primary Recipient: SINCLAIR, THOMAS
Company:
Category:
System title: Free Form Letter
Author: BHARADWAJ, MEDHA
Date Sent: Nov 13 2006 2:31PM
User title:
Enclosures Indicator:
CC Indicator:

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | Medha Bharadwaj | **Last Changed Date** | 11/13/2006 02:31 PM | |
| **Status:** Completed | **Assigned To:** | Medha Bharadwaj | **Created:** | 11/13/2006 02:31 PM |

LINA/Cleiland 0042

## Follow-Up Tasks - Correspondence Task

| Name | CATHY  CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**      Free Form Letter

**Comment/Instruction**

DocGen System Notice of Letter Creation.
Reference ~477707~385267~
Role: Attorney
Specialty:
Primary Recipient: SINCLAIR, THOMAS
Company:
Category:
System title: Free Form Letter
Author: JOHNSON, KAROL
Date Sent: Oct 23 2006 2:07PM
User title:
Enclosures Indicator:
CC Indicator:

| **Last Changed User** | Karol Johnson | **Last Changed Date** | 10/23/2006 02:07 PM |
|---|---|---|---|
| **Status:** Completed | **Assigned To:** | Karol Johnson | **Created:** 10/23/2006 02:07 PM |

LINA/Cleiland 0043

## Follow-Up Tasks - Correspondence Task

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

**Title**  Free Form Letter

**Comment/Instruction**

DocGen System Notice of Letter Creation.
Reference ~439567~353629~
Role: Claimant
Specialty:
Primary Recipient: CLEILAND, CATHY
Company:
Category:
System title: Free Form Letter
Author: BHARADWAJ, MEDHA
Date Sent: Oct 3 2006 1:10PM
User title:
Enclosures Indicator:      .
CC Indicator: Y

| Last Changed User | Medha Bharadwaj | Last Changed Date | 10/03/2006 01:10 PM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | Medha Bharadwaj | **Created:** | 10/03/2006 01:10 PM |
|---|---|---|---|---|---|

# Claim Strategy

| | | | | | |
|---|---|---|---|---|---|
| Name | CATHY CLEILAND | SSN | | DOB | |
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**   Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**                                                    **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

☐ **AMD**

☐ **NCM**

☐ **VRC**

☐ **CBH Specialist**

☐ **On-Site Psych**

☐ **Network Orthopedist**

## Claim Status Information

**Status**                  Closed

**Status Reason**           Denied, Not TD Own Occ

**Reopened Reason**

**Second Eye Review Required**

☐ **Second Eye Review Complete**          **Date**                **User ID**

**Comments**

## Duration Information

**Part Time**                        **Full Time**                        **Red Flag**

☐ **Does Not Exist**

**Provider's Estimated RTW Date**    11/10/2005      **Days**      757

**ERD**                                                **ERD Reason**

**Primary ICD Code**    7244           **Primary ICD Description**    LUMBOSACRAL NEURITIS NOS

## Strategy Documentation

**Level of Functional**

LINA/Cleiland 0045

**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| Last Changed User | Amy Halsey | | Last Changed Date | 08/28/2006 08:49 AM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Amy Halsey | Created: | 08/28/2006 08:49 AM |
|---|---|---|---|---|---|

## Claim Strategy

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

### Update Rationale

**Title**                    ,

**Update Rationale**         Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**                                  **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

- ☑ **AMD**
- ☑ **NCM**
- ☐ **VRC**
- ☑ **CBH Specialist**
- ☐ **On-Site Psych**
- ☑ **Network Orthopedist**

### Claim Status Information

**Status**                   Active

**Status Reason**            Own Occ - Receiving Payments

**Reopened Reason**

**Second Eye Review Required**

☐ **Second Eye Review Complete**    **Date**              **User ID**

**Comments**

Opened to post RSI recovery

### Duration Information

**Part Time**                **Full Time**                **Red Flag**

☑ **Does Not Exist**

| | | | |
|---|---|---|---|
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | 757 |
| **ERD** | | **ERD Reason** | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |

### Strategy Documentation

LINA/Cleiland 0047

**Level of Functional Capacity**

**Restrictions & Limitations**

**Subjective / Objective Findings / Treatment**

**Outstanding Issues and Follow-up Dates**

**Strategy**

| Last Changed User | Amy Halsey | | Last Changed Date | 08/28/2006 08:48 AM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Amy Halsey | Created: | 08/28/2006 08:48 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0048

## Claim Strategy

| Name | CATHY  CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

### Update Rationale

**Title**

**Update Rationale**　　　　Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**　　　　　　　　　　　　**Name**

**For Staffings Only – Indicate Resources Present (check all that apply)**

- ☐ **AMD**
- ☐ **NCM**
- ☐ **VRC**
- ☐ **CBH Specialist**
- ☐ **On-Site Psych**
- ☐ **Network Orthopedist**

### Claim Status Information

| | |
|---|---|
| **Status** | Closed |
| **Status Reason** | Denied, Not TD Own Occ |
| **Reopened Reason** | |
| **Second Eye Review Required** | |

☐ **Second Eye Review Complete**　　**Date**　　　　**User ID**

**Comments**

### Duration Information

| **Part Time** | **Full Time** | **Red Flag** |
|---|---|---|
| ☐ **Does Not Exist** | | |

| | | | |
|---|---|---|---|
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | 757 |
| **ERD** | | **ERD Reason** | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |

### Strategy Documentation

**Level of Functional**

LINA/Cleiland 0049

**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| Last Changed User | Amy Halsey | | Last Changed Date | 07/27/2006 12:13 PM |
|---|---|---|---|---|
| Status: | Completed | Assigned To: | Amy Halsey | Created: | 07/27/2006 12:13 PM |

# Claim Strategy

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**    Other New Information

**For Walk-up and Nurse Interaction Only**
**Role**                                          **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

- ☑ **AMD**
- ☑ **NCM**
- ☑ **VRC**
- ☑ **CBH Specialist**
- ☑ **On-Site Psych**
- ☑ **Network Orthopedist**

## Claim Status Information

| | |
|---|---|
| **Status** | Active |
| **Status Reason** | Own Occ - Receiving Payments |
| **Reopened Reason** | |
| **Second Eye Review Required** | |

☑ **Second Eye Review Complete**    **Date**            **User ID**

**Comments**

Opened to post RSI recovery

## Duration Information

| **Part Time** | **Full Time** | **Red Flag** |
|---|---|---|
| ☑ **Does Not Exist** | | |

| | | | |
|---|---|---|---|
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | 757 |
| **ERD** | | **ERD Reason** | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |

## Strategy Documentation

**Level of Functional Capacity**

**Restrictions & Limitations**

**Subjective / Objective Findings / Treatment**

**Outstanding Issues and Follow-up Dates**

**Strategy**

| Last Changed User | Amy Halsey | | Last Changed Date | 07/27/2006 12:12 PM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Amy Halsey | Created: | 07/27/2006 12:12 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0052

# Claim Strategy

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | . | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #**  613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**          Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**                                        **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

- ☐ **AMD**
- ☐ **NCM**
- ☐ **VRC**
- ☐ **CBH Specialist**
- ☐ **On-Site Psych**
- ☐ **Network Orthopedist**

## Claim Status Information

**Status**                        Closed

**Status Reason**           Denied, Not TD Own Occ

**Reopened Reason**

**Second Eye Review Required**

☐ **Second Eye Review Complete**          **Date**                    **User ID**

**Comments**

## Duration Information

**Part Time**                      **Full Time**                      **Red Flag**

☐ **Does Not Exist**

**Provider's Estimated RTW Date**     11/10/2005          **Days**          757

**ERD**                                              **ERD Reason**

**Primary ICD Code**     7244          **Primary ICD Description**     LUMBOSACRAL NEURITIS NOS

## Strategy Documentation

**Level of Functional**

LINA/Cleiland 0053

**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| Last Changed User | Amy Halsey | | Last Changed Date | 07/05/2006 10:34 AM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Amy Halsey | Created: | 07/05/2006 10:34 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0054

# Claim Strategy

| | | | |
|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | **DOB** |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**  Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**  **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

- ☐ **AMD**
- ☐ **NCM**
- ☐ **VRC**
- ☐ **CBH Specialist**
- ☐ **On-Site Psych**
- ☐ **Network Orthopedist**

## Claim Status Information

**Status**  Active

**Status Reason**  Own Occ - Receiving Payments

**Reopened Reason**

**Second Eye Review Required**

☐ **Second Eye Review Complete**   **Date**   **User ID**

**Comments**

Opened to post RSI recovery

## Duration Information

| **Part Time** | **Full Time** | **Red Flag** |
|---|---|---|
| ☐ **Does Not Exist** | | |
| **Provider's Estimated RTW Date** 11/10/2005 | **Days** 757 | |
| **ERD** | **ERD Reason** | |
| **Primary ICD Code** 7244 | **Primary ICD Description** LUMBOSACRAL NEURITIS NOS | |

## Strategy Documentation

LINA/Cleiland 0055

# EXHIBIT 1 TO EXHIBIT A Part 2

**Level of Functional**
**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| Last Changed User | Amy Halsey | | Last Changed Date | 07/05/2006 10:32 AM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Amy Halsey | Created: | 07/05/2006 10:32 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0056

# Claim Strategy

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**          Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**                                        **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

☐ **AMD**

☐ **NCM**

☐ **VRC**

☐ **CBH Specialist**

☐ **On-Site Psych**

☐ **Network Orthopedist**

## Claim Status Information

**Status**                    Closed

**Status Reason**              Denied, Not TD Own Occ

**Reopened Reason**

**Second Eye Review Required**

☐ **Second Eye Review Complete**          **Date**                    **User ID**

**Comments**

## Duration Information

**Part Time**                    **Full Time**                    **Red Flag**

☐ **Does Not Exist**

| | | | |
|---|---|---|---|
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | 757 |
| **ERD** | | **ERD Reason** | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |

## Strategy Documentation

**Level of Functional**

LINA/Cleiland 0057

**Capacity**
**Restrictions & Limitations**
**Subjective / Objective Findings / Treatment**
**Outstanding Issues and Follow-up Dates**
**Strategy**

| Last Changed User | Amy Halsey | | Last Changed Date | 05/25/2006 11:33 AM |
|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Amy Halsey | **Created:** | 05/25/2006 11:33 AM |

# Claim Strategy

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Update Rationale

**Title**

**Update Rationale**    Other New Information

**For Walk-up and Nurse Interaction Only**

**Role**    **Name**

**For Staffings Only - Indicate Resources Present (check all that apply)**

- ☐ **AMD**
- ☐ **NCM**
- ☐ **VRC**
- ☐ **CBH Specialist**
- ☐ **On-Site Psych**
- ☐ **Network Orthopedist**

## Claim Status Information

**Status**    Active

**Status Reason**    Own Occ - Receiving Payments

**Reopened Reason**

**Second Eye Review Required**

☐ **Second Eye Review Complete**    **Date**    **User ID**

**Comments**

Opened to post RSI recovery

## Duration Information

| Part Time | Full Time | Red Flag |
|---|---|---|
| ☐ **Does Not Exist** | | . |
| **Provider's Estimated RTW Date** 11/10/2005 | **Days** 757 | |
| **ERD** | **ERD Reason** | |
| **Primary ICD Code** 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |

## Strategy Documentation

6/14/2007

LINA/Cleiland 0059

**Level of Functional
Capacity**

**Restrictions & Limitations**

**Subjective / Objective Findings / Treatment**

**Outstanding Issues and Follow-up Dates**

**Strategy**

| Last Changed User | Amy Halsey | | Last Changed Date | 05/25/2006 11:31 AM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Amy Halsey | Created: | 05/25/2006 11:31 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0060

## Appeal Process

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

### Senior Appeals Specialist/STD Gatekeeper

| Appeal Assignee | Medha Bharadwaj | Date | 01/06/2006 09:07 AM | User ID | Karol Johnson |
|---|---|---|---|---|---|

### Appeal Assignee

**Detailed Acknowledgement Letter Sent Date**   01/13/2006

**Action Plan/Investigation Results**

48 yof off work since 05/14/03 due to lumbar spine surgery. Cx continues to claim disability due to back pain. Cx paid through 11/21/05 and then denied because l.r not supported to preclude any occ. Cx's previus occ is sedentary. On appeal, cx sent in some medical information. Consisted of 10/20/05 consult with gastroenterologist, notes from her primary care ap, esophagogastroduodenoscopy with balloon dilation and biopsy from 11/15/05, and a letter from Dr. Adam Nortick dated December 19, 2005. I will go ahead and staff with MD at this point. I have completed staffing form and emailed it to MC on 02/23/06. File was staffed with MD, and MD reviewed file. See below for summary and file for complete review. MD stated that the medical documentation does not support the severity of any condition that would preclude cx from performing any full time sedentary occupation from 11/21/05 forward. affirm.

| ☑ Refer to MC/NCM | | Date | 02/23/2006 10:01 AM | User ID | Medha Bharadwaj |
|---|---|---|---|---|---|

### MC/NCM

**Medical Investigation Results**

ASSESSMENT/CONCLUSION A careful review of the file was conducted. Claimant has chronic history of back pain and underwent several lumbar surgeries. Since that time she has been on chronic narcotic pain medications & high-dose neuroleptics drugs. She was paid through 11/21/05. Since that time her diabetes has been under poor control. She underwent esophageal dilatation in mid-November 2005. Her chronic pain appears to be stable & no changes in treatment have occurred. I do not believe, however, that the documents provide sufficient documentation to establish that severity of condition warrants L&Rs or that clinically measurable evidence exists to support deficits which require L&Rs given by the attending physician. In absence of such documentation, I do not believe the documentation supports deficits which require L&Rs which preclude performing sedentary activity during the period 11/21/05 through the present.
Scott C. Taylor, DO
CIGNA Medical Director
Date Completed 3/7/06

| ☑ Refer Back To Assignee | | Date | 03/10/2006 09:33 AM | User ID | Medha Bharadwaj |
|---|---|---|---|---|---|

### Recommendation

| **Appeal Assignee Recommendation** | Upheld Original Denial | | | | |
|---|---|---|---|---|---|
| *Referred to CAT TL/SCM/TL of Assignee* | Date | 03/10/2006 09:34 AM | User ID | Medha Bharadwaj | |

### Decision

**CAT TL (LTD)/SCM/TL of Assignee(STD) Decision** Upheld Original Denial

**If decision = Overturned, route task to the TL of the core team. If decison = Upheld, route task to appeal assignee.**

| | | Date | 03/10/2006 02:05 PM | User ID | Gary Person |
|---|---|---|---|---|---|

**Comments**
Decision reviewed

| ☑ Appeal Decision Letter Sent | | Date | 03/13/2006 12:48 PM | User ID | Medha Bharadwaj |
|---|---|---|---|---|---|

LINA/Cleiland 0061

| Last Changed User | Medha Bharadwaj | | Last Changed Date | 03/13/2006 01:49 PM |

| Status: | Completed | Assigned To: | Medha Bharadwaj | Created: | 01/06/2006 10:04 AM |

LINA/Cleiland 0062

## Phone Contact

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

| | | | | |
|---|---|---|---|---|
| **Title** | Appeal Status | | | |
| **Type** * | Incoming | **Date** | 03/08/2006 08:51 AM | **User ID** | Karol Johnson |
| **First Name** | | | **Last Name** | |
| **Role** | Employee | | **Specify Other** | |
| **Call Reason** * | Claim Status Check | | **Action Taken** | Issue Resolved |

**Call Summary** *

Spoke with claimant on status of claim. Advised her that a decision had not yet been rendered. She indicated in letter of 2/10 that it would be 30 days. We discussed that this is not a firm date. She understood and will wait a while longer before checking again.

| | | | |
|---|---|---|---|
| **Last Changed User** | Karol Johnson | **Last Changed Date** | 03/08/2006 09:53 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Karol Johnson | **Created:** | 03/08/2006 09:53 AM |

LINA/Cleiland 0063

# Internal Resource Response

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

*\*Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),*
*Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

**Referral Type**   Medical

**Role**   Associate Medical Director   **Name**   Scott Taylor   ☒ New Nurse/VRC of Record

### Check all that apply for Medical or Vocational

☐ Symptoms insufficient to support diagnosis

☐ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis

☐ Occupational requirements assessment is needed

☐ Determine Functional Capacity

☐ Projected return to work date is unclear or undetermined

☐ Return to Work Assistance

☐ Internal Transferable Skills Assessment

☐ Claim Complexity Changed

☑ Other     **Specify** appeal medical review **Other**

**Comments**

48 yof off work since 05/14/03 due to lumbar spine surgery. Cx continues to claim disability due to back pain. Cx also has diabetes, sysphagia, and dyspepsia. Cx paid through 11/21/05 and then denied because l.r not supported to preclude any occ. Cx's previus occ is sedentary. On appeal, cx sent in some medical information. Consisted of 10/20/05 consult with gastroenterologist, notes from her primary care pa, esophagogastroduodenoscopy with balloon dilation and biopsy from 11/15/05, and a letter from Dr. Adam Nortick dated December 19, 2005. I staffed with MC and MD and it was determined that complete medical review needed. Need to address whether the medical supports the severity of any condition that would preclude cx from performing in a sedentary capacity from 11/21/05 through present.

| | |
|---|---|
| **Title** | AMD Appeal Review |
| **Referral Accepted** | Yes     **Date** 03/02/2006 |

**Comments**

FILE REVIEW.
DATE STAFFED 3/2/06
CLAIM TYPE - LTD
CLAIM STATUS Any Occupation
EMPLOYER Temple Inland
OCCUPATION Human Resource Manager
WORK DEMANDS - Sedentary
DIAGNOSIS Back pain, dysphagia, diabetes, dyspepsia
INCUR DATE 5/14/03
AGE - 48
CLAIM SYNOPSIS OW since 05/14/03 due to lumbar spine surgery 5/21/03 & 7/16/03. Cx continues to claim disability due to back pain. Was seeing Pain management. Paid through 11/21/05. Then denied because L&Rs did not support preclusion from working any occupation. Previous occupation is sedentary. New information on appeal from 10/20/05 consult with gastroenterologist, notes from her primary care PCP, EGD with balloon dilation & biopsy from 11/15/05, & letter from Dr.

LINA/Cleiland 0064

Adam Nortick of 12/19/05. Need complete medical review.

Back surgery 5/14/03. Denied 11/21/05 due to lack of support. New info from pain management, Internist, & GI.

REFERRAL QUESTION - Does the medical support severity of any condition that would preclude Cx from performing in a sedentary capacity from 11/21/05 through present

PHYSICIANS STATEMENT OF PHYSICAL FUNCTIONAL CAPACITY see review located in chart.

CLAIMANTS STATEMENT OF PHYSICAL ACTIVITY see review located in chart.

LAST CLINICAL NOTE RELEVANT TO MAIN PHYSICAL DIAGNOSIS - see review located in chart.

BRIEF SUMMARY OF RELEVANT MEDICAL INFORMATION PRIOR TO LAST NOTE see review located in chart.

PERTINENT LAB, DIAGNOSTICS & REFERRALS see review located in chart.

PEER CONTACT ATTEMPTS - No provider contact made.

MATERIALS REVIEWED - CIGNA file records reviewed include but are not limited to those found on typed report. Typed report located in claimants chart.

**Investigation Result**

ASSESSMENT/CONCLUSION A careful review of the file was conducted. Claimant has chronic history of back pain and underwent several lumbar surgeries. Since that time she has been on chronic narcotic pain medications & high-dose neuroleptics drugs. She was paid through 11/21/05. Since that time her diabetes has been under poor control. She underwent esophageal dilatation in mid-November 2005. Her chronic pain appears to be stable & no changes in treatment have occurred. I do not believe, however, that the documents provide sufficient documentation to establish that severity of condition warrants L&Rs or that clinically measurable evidence exists to support deficits which require L&Rs given by the attending physician. In absence of such documentation, I do not believe the documentation supports deficits which require L&Rs which preclude performing sedentary activity during the period 11/21/05 through the present.

Scott C. Taylor, DO

CIGNA Medical Director

Date Completed 3/7/06

| Last Changed User | Scott Taylor | | Last Changed Date | | 03/07/2006 04:00 PM |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Scott Taylor | **Created:** | 03/02/2006 11:57 AM |

# Internal Resource Referral

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #**  613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

*\* Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),
Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

**Title**

| | | | | |
|---|---|---|---|---|
| **Referral Type** | Medical | | | |
| **Role** | Associate Medical Director | **Name** | Scott Taylor | ☒ **New Nurse/VRC of Record** |

**Check all that apply for Medical or Vocational**

☒ Symptoms insufficient to support diagnosis

☒ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis

☐ Occupational requirements assessment is needed

☐ Determine Functional Capacity

☒ Projected return to work date is unclear or undetermined

☐ Return to Work Assistance

☒ Internal Transferable Skills Assessment

☐ Claim Complexity Changed

☑ Other                    **Specify Other**    appeal medical review

**Comments**

48 yof off work since 05/14/03 due to lumbar spine surgery. Cx continues to claim disability due to back pain. Cx also has diabetes, sysphagia, and dyspepsia. Cx paid through 11/21/05 and then denied because l.r not supported to preclude any occ. Cx's previus occ is sedentary. On appeal, cx sent in some medical information. Consisted of 10/20/05 consult with gastroenterologist, notes from her primary care ap, esophagogastroduodenoscopy with balloon dilation and biopsy from 11/15/05, and a letter from Dr. Adam Nortick dated December 19, 2005. I staffed with MC and MD and it was determined that complete medical review needed. Need to address whether the medical supports the severity of any condition that would preclude cx from performing in a sedentary capacity from 11/21/05 through present.

| **Last Changed User** | Medha Bharadwaj | **Last Changed Date** | 03/02/2006 11:57 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | Medha Bharadwaj | **Created:** | 03/02/2006 11:56 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0066

## Appeal Referral

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

---

### Core Team Claim Manager

| | |
|---|---|
| **ERISA Indicator** * | ERISA |
| **Financial Arrangement** | 1 - Fully Insured |
| **Appeal Received Date** * | 12/29/2005 |
| **Appeal Acknowledgement Letter Sent Date** * | 01/05/2006 |
| **Original Denial Date** | 12/07/2005 |
| **Reason for Original Denial** * | 9 - Denied, Not TD His Occ |
| **Does new information support re-open of claim?** * | No |

**Rationale / Special Handling Instructions (if applicable)**
Based on the medical data submitted, R/L's are not supported as evidenced by pain management provider not disabling claimant and no new medical to review that would prevent cx from functioning.

☑ **Referred to SCM/TL, if required**     Date  01/05/2006 09:23 AM     User ID  Kelli Archacki

### SCM/TL

| | |
|---|---|
| **Decision** * | Send to CAT (LTD) |

**If the decision is not to re-open, then re-route the task to the party selected above.**

**Comments**

**If decision is to Re-open, refer to Claim Manager**

| | | | |
|---|---|---|---|
| **Claim Manager Referral Date (Re-opens only)** | | **User ID** | |
| **Centralized Appeals Team / STD Appeals** | 01/05/2006 09:40 AM | **User ID** | Sandra Scott |
| **Gatekeeper Referral Date** | | | |

☐ **Appeal Decision Letter Sent (Re-Opens only)**  **Date**     **User ID**

---

| | | | |
|---|---|---|---|
| **Last Changed User** | Karol Johnson | **Last Changed Date** | 01/06/2006 10:04 AM |

---

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Karol Johnson | **Created:** | 01/05/2006 10:23 AM |

LINA/Cleiland 0067

# Claimant Contact

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

## Contact Information

☑ **First Phone Call**
   Result  Left Message - Answering Machine    **Date**  11/30/2005 10:08 AM    **User ID**    Kelli Archacki

☑ **Second Phone Call**
   Result  Left Message - Answering Machine    **Date**  12/01/2005 01:16 PM    **User ID**    Kelli Archacki

☐ **Generate Letter/Fax**    **Date**    **User ID**

☐ **Incoming Call**    **Date**    **User ID**

☐ **Mail Received**    **Date**    **User ID**

**Contact Comments**
334.807.0396

## Interview Documentation

**Primary Diagnosis/Symptoms/Co-Morbid Conditions**
**Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization**
**Functionality/Job Duties/Set Expectations**

## Spouse Information

| | | |
|---|---|---|
| **First Name** | **MI**    **Last Name** | |
| **SSN** | **Date of Birth** | |
| **Is Spouse Employed?** | **If Employed** | |
| **Date of Birth of Youngest Dependent** | | |
| **Other Income Benefits** | | |
| **Comments** | | |

| | | | |
|---|---|---|---|
| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 12/01/2005 02:16 PM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 11/30/2005 11:08 AM |

LINA/Cleiland 0068

# Claim Strategy

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | , |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

## Update Rationale

| | |
|---|---|
| **Title** | Claim Decision |
| **Update Rationale** | Staffing |

**For Walk-up and Nurse Interaction Only**

| **Role** | | **Name** |
|---|---|---|

**For Staffings Only - Indicate Resources Present (check all that apply)**

- ☐ AMD
- ☑ NCM
- ☐ VRC
- ☐ CBH Specialist
- ☐ On-Site Psych
- ☐ Network Orthopedist

## Claim Status Information

| | |
|---|---|
| **Status** | Closed |
| **Status Reason** | Denied, Not TD Own Occ |
| **Reopened Reason** | |
| **Second Eye Review Required** | |

| | **Date** | **User ID** |
|---|---|---|
| ☐ Second Eye Review Complete | | |

**Comments**

## Duration Information

| **Part Time** | **Full Time** | **Red Flag** |
|---|---|---|
| ☐ Does Not Exist | | |

| | | | |
|---|---|---|---|
| **Provider's Estimated RTW Date** | 11/10/2005 | **Days** | 757 |
| **ERD** | | **ERD Reason** | |
| **Primary ICD Code** | 7244 | **Primary ICD Description** | LUMBOSACRAL NEURITIS NOS |

## Strategy Documentation

**Level of Functional**

LINA/Cleiland 0069

**Capacity**

**Restrictions & Limitations**

**Subjective / Objective Findings / Treatment**

**Outstanding Issues and Follow-up Dates**

**Strategy**

3/2/05 lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain, Diabetes, on Methadone 5 mg up to 5 pills/day, Effexor, Klonopin, nausea w/Methadone, muscle spasms legs, not very active, sugars running higher than usual, has fallen down some steps just miscalculated last step, trunk of car fell on back leaning over into trunk, just minor life traumas, more areas marked off in the pain chart than not, pain R upper extremity, L leg, back, life not in total turmoil past few visits, no acute hot joints, no acute localizing weakness, refill Neurontin 800 mg 1 x day, Robaxin 750 mg 3 x day, Phenergan 25 to 1 3 x day, Effexor 75 XR 1 qhs, Protonix mg daily, Klonopin 1 mg qhs, switch to Methadone 10 mg to 1 3 x/day.

8/17/05 cervical degenerative disc disease, cervical stenosis, on Methadone & Neurontin, pain 8, f/u 1 month, fell home, remainder of report largely illegible.

9/17/05 cervical degenerative disc disease, cervical stenosis, on Methadone & Neurontin, pain 9, f/u 1 month, remainder of report largely illegible.

Rx Neurontin 800 mg 1 x day, Robaxin 750 mg 3 x day, Phenergan 25 to 1 3 x day, Effexor 75 XR 1 qhs, Protonix 40 mg daily, Klonopin 1 mg qhs, switch to Methadone 10 mg to 1 3 x/day

Treating once a month w/pain physician.

Functionality DQ drives 50 miles, uses walker times, uses computer once every 2 weeks, watches TV

PAA None noted.

RTW plans Indicates unknown if will RTW.

48 y/o w/hx multiple lumbar surgeries including fusion, cervical surgery, and Diabetes. Based on medical data submitted, R&Ls are not supported as evidenced by no current complaints of any radiating pain, numbness or tingling, no current EMG/NCV testing, medication usage stable for several months, and no current lab values to determine status of glucose. AP's state that they are not disabling her. The information does not support that she is unable to perform a sedentary position which is her previous occupation. Proceeding with closure of claim.

| Last Changed User | Kelli Archacki | | Last Changed Date | 11/21/2005 05:00 PM |
|---|---|---|---|---|
| **Status:** Completed | | **Assigned To:** | Kelli Archacki | **Created:** | 11/21/2005 04:57 PM |

LINA/Cleiland 0070

# Internal Resource Response

| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
|---|---|---|---|---|---|
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

*\*Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),*
*Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

**Referral Type**  Medical

**Role**  Nurse Case Manager          **Name**  Teresa Lynfoot          ☑ New Nurse/VRC of Record

**Check all that apply for Medical or Vocational**

☐ Symptoms insufficient to support diagnosis

☐ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis

☐ Occupational requirements assessment is needed

☐ Determine Functional Capacity

☐ Projected return to work date is unclear or undetermined

☐ Return to Work Assistance

☐ Internal Transferable Skills Assessment

☐ Claim Complexity Changed

☑ Other          **Specify**  Complete medical review
                  **Other**

**Comments**

Cx is 48 yof Human Resources Manager II for Temple Inland. Dx S/P reoperative lumbar spine surgery at L4-5. Please review file based on staffing.

| **Title** | File review | | |
|---|---|---|---|
| **Referral Accepted** | Yes | **Date**  11/14/2005 | |

**Comments**

Date/Reason for Referral NCM to review for R&Ls per staffing. Dr. Johnson, Dr. Harris, Dr. Hadley, & Dr. Hickman medical records reviewed 11/17/05.
Hx Cathy Cleiland, 48 y/o w/hx degenerative disc disease, cervical disc disease
Incurred 5/14/03
Diagnoses Lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain
Co-morbid Diabetes, multiple lumbar surgeries, cervical surgery, MVA, and carpal tunnel release. Currently treating Diabetes.
Providers Dr. Adam Nortick Pain 334-387-7246
MDA/DX 722.5 Lumbar disc degeneration, 722.4 Cervical disc degeneration, 728.8 Myofascial Pain Syndrome. Disability duration beyond guidelines.
CHC/ICMS Notes attached to file.
EAP/LAP/Well Aware EAP
HA Referral N/A
Job Title Human Resources Manager II, w/sitting, walking up and down stairwells, walking across catwalks, walking on cement.
DOT indicates strength sedentary
S/S
5/21/03 Laminectomy L4-5 on L
7/16/03 Re-exploration laminectomy L4-5 L
12/16/03 L4-5 laminectomy, discectomy bilaterally, posterior fusion

LINA/Cleiland 0071

**Investigation Result**

3/2/05 lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain, Diabetes, on Methadone 5 mg up to 5 pills/day, Effexor, Klonopin, nausea w/Methadone, muscle spasms legs, not very active, sugars running higher than usual, has fallen down some steps just miscalculated last step, trunk of car fell on back leaning over into trunk, just minor life traumas, more areas marked off in the pain chart than not, pain R upper extremity, L leg, back, life not in total turmoil past few visits, no acute hot joints, no acute localizing weakness, refill Neurontin 800 mg 1 x day, Robaxin 750 mg 3 x day, Phenergan 25 to 1 3 x day, Effexor XR 1 qhs, Protonix 40 mg daily, Klonopin 1 mg qhs, switch to Methadone 10 mg to 1 3 x/day.
8/17/05 cervical degenerative disc disease, cervical stenosis, on Methadone & Neurontin, pain 8, f/u 1 month, fell home, remainder of report largely illegible.
9/17/05 cervical degenerative disc disease, cervical stenosis, on Methadone & Neurontin, pain 9, f/u 1 month, remainder of report largely illegible.
Rx Neurontin 800 mg 1 x day, Robaxin 750 mg 3 x day, Phenergan 25 to 1 3 x day, Effexor 75 XR 1 qhs, Protonix 40 mg daily, Klonopin 1 mg qhs, switch to Methadone 10 mg to 1 3 x/day
Treating once a month w/pain physician.
Functionality DQ drives 50 miles, uses walker times, uses computer once every 2 weeks, watches TV
PAA None noted.
RTW plans Indicates unknown if will RTW.
NCM/Assessment 48 y/o w/hx multiple lumbar surgeries including fusion, cervical surgery, and Diabetes. Based on medical data submitted, R&Ls are not supported as evidenced by no current complaints of any radiating pain, numbness or tingling, no current EMG/NCV testing, medication usage stable for several months, and no current lab values to determine status of glucose.
Plan NCM will disengage at this time.
TLynfoot, RN, CCM

| Last Changed User | Teresa Lynfoot | | Last Changed Date | 11/17/2005 05:29 PM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Teresa Lynfoot | Created: | 11/14/2005 03:57 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0072

## Internal Resource Referral

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

*\* Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),*
*Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

| | | | | |
|---|---|---|---|---|
| **Title** | File review | | | |
| **Referral Type** | Medical | | | |
| **Role** | Nurse Case Manager | **Name** | Teresa Lynfoot | ☑ **New Nurse/VRC of Record** |

**Check all that apply for Medical or Vocational**

☒ **Symptoms insufficient to support diagnosis**

☐ **Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis**

☐ **Occupational requirements assessment is needed**

☐ **Determine Functional Capacity**

☐ **Projected return to work date is unclear or undetermined**

☐ **Return to Work Assistance**

☐ **Internal Transferable Skills Assessment**

☐ **Claim Complexity Changed**

☑ **Other**         **Specify Other**    Complete medical review

**Comments**

Cx is 48 yof Human Resources Manager II for Temple Inland. Dx S/P reoperative lumbar spine surgery at L4-5. Please review file based on staffing.

| | | | |
|---|---|---|---|
| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 11/14/2005 03:56 PM |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 11/14/2005 03:56 PM |

# Overpayment Recovery

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

| | | | |
|---|---|---|---|
| **CM Team:** | D-Castellon | **Claim Office:** | Dallas |
| **Payee:** | Cathy Cleiland | | |
| **SSN:** | 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 | **DOB:** | 07/11/1957 |

| | | | |
|---|---|---|---|
| **Task Type:** | Payment Due | | |
| **Claim Type:** | LTD | **ORS ID:** | 2980 |

**Batch Comments**

| | | | |
|---|---|---|---|
| **Last Changed User** | Liana Rivas | **Last Changed Date** | 11/11/2005 12:00 AM |
| **Status:** Completed | **Assigned To:** Liana Rivas | **Created:** | 11/09/2005 12:09 PM |

LINA/Cleiland 0074

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**     A/O Date

**Comment/Instruction**

---

| | | | |
|---|---|---|---|
| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 11/10/2005 02:42 PM |

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 06/16/2005 03:29 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0075

## Provider Contact

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

### Contact Information

Title  Dr. Johnson 334.793.9595

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☑ | **First Phone Call** | Result | Successful | Date | 11/02/2005 04:12 PM | User | Kelli Archacki |
| ☐ | **Second Phone Call** | Result | | Date | | User | |
| ☐ | **Generate Letter/Fax** | | | Date | | User | |
| ☐ | **Burden of Proof Letter Sent** | | | Date | | User | |
| ☐ | **Incoming Call** | | | Date | | User | |
| ☐ | **Mail Received** | | | Date | | User | |

Contact Comments:

Called for status of fax. Alicia stated that she would have forwarded it to the other office so recommended I call there. Called the other office and they have no record of fax. Advised to refax it to 334.793.1578, attn medical records.

### Interview Documentation

| | | |
|---|---|---|
| **Provider First Name** | **Provider Last Name** | **Provider Specialty** |
| **Contact First Name** | **Contact Last Name** | **Contact Role** |
| **Primary ICD Code** | **Primary ICD Description** | |
| **Comments** | | |
| **Secondary ICD Code** | **Secondary ICD Description** | |
| **Comments** | | |
| **ICD Code 3** | **ICD Code 3 Description** | |
| **Comments** | | |
| **ICD Code 4** | **ICD Code 4 Description** | |
| **Comments** | | |
| **ICD Code 5** | **ICD Code 5 Description** | |
| **Comments** | | |

### Objective Findings

☐ **Physical Exam Findings**
☐ **Test Results**
☐ **Provider Observations**
Comments

### Treatment Information

| | | |
|---|---|---|
| **Medication (1)** | **Dosage (1)** | **Frequency (1)** |
| **Medication (2)** | **Dosage (2)** | **Frequency (2)** |
| **Medication (3)** | **Dosage (3)** | **Frequency (3)** |

LINA/Cleiland 0076

| Medication (4) | Dosage (4) | Frequency (4) |
|---|---|---|
| Medication (5) | Dosage (5) | Frequency (5) |

**Current Treatment Plan/Provider's Estimated RTW date**

**Treatment Frequency**

**Future Treatment Plan**

☐ **Copy to Med/Voc Folder**  Date of Surgery  Type of Surgery

☐ **Copy to Med/Voc Folder**  Date of Surgery  Type of Surgery

☐ **Copy to Med/Voc Folder**  Date of Surgery  Type of Surgery

**Comments**

**Last Office Visit**

**Next Office Visit**

## Functionality Job/Occ Requirements and RTW

**Claimant Job/Occ Requirements and Expected Duration**

**Additional Information**

## Referral Information

| First Name | Last Name |
|---|---|
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| First Name | Last Name |
|---|---|
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| First Name | Last Name |
|---|---|
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 11/10/2005 12:29 PM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 11/02/2005 05:13 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0077

# Overpayment Recovery

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**CM Team:** D-Castellon      **Claim Office:** Dallas

**Payee:** Cathy Cleiland

**SSN:** **DOB:**

**Task Type:** Payment Due

**Claim Type:** LTD      **ORS ID:** 2980

**Batch Comments**

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | Liana Rivas | **Last Changed Date** | 11/09/2005 12:00 AM | |
| **Status:** Completed | **Assigned To:** | Liana Rivas | **Created:** | 10/20/2005 03:44 AM |

LINA/Cleiland 0078

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**          057 - CURRENT REPETITIVE PAY CYCLE ENDS NEXT PAYMENT

**Comment/Instruction**

057 - CURRENT REPETITIVE PAY CYCLE ENDS NEXT PAYMENT

---

| | | | |
|---|---|---|---|
| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 11/04/2005 01:48 PM |
| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 11/04/2005 01:45 AM |

## Provider Contact

| | | | | | |
|---|---|---|---|---|---|
| Name | CATHY CLEILAND | SSN | | DOB | |
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

### Contact Information

Title  Dr. Harris 334.673.7322

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☑ | First Phone Call | Result | No Answer | Date | 10/27/2005 01:45 PM | User | Kelli Archacki |
| ☑ | Second Phone Call | Result | Successful | Date | 11/02/2005 12:35 PM | User | Kelli Archacki |
| ☐ | Generate Letter/Fax | | | Date | | User | |
| ☐ | Burden of Proof Letter Sent | | | Date | | User | |
| ☐ | Incoming Call | | | Date | | User | |
| ☐ | Mail Received | | | Date | | User | |

Contact Comments:
Attempted to call AP's office for tax id number to process invoice.

### Interview Documentation

| | | |
|---|---|---|
| Provider First Name | Provider Last Name | Provider Specialty |
| Contact First Name | Contact Last Name | Contact Role |
| Primary ICD Code | Primary ICD Description | |
| Comments | | |
| Secondary ICD Code | Secondary ICD Description | |
| Comments | | |
| ICD Code 3 | ICD Code 3 Description | |
| Comments | | |
| ICD Code 4 | ICD Code 4 Description | |
| Comments | | |
| ICD Code 5 | ICD Code 5 Description | |
| Comments | | |

### Objective Findings

☐ Physical Exam Findings
☐ Test Results
☐ Provider Observations
Comments

### Treatment Information

| | | |
|---|---|---|
| Medication (1) | Dosage (1) | Frequency (1) |
| Medication (2) | Dosage (2) | Frequency (2) |
| Medication (3) | Dosage (3) | Frequency (3) |

| Medication (4) | Dosage (4) | Frequency (4) |
|---|---|---|
| Medication (5) | Dosage (5) | Frequency (5) |

**Current Treatment Plan/Provider's Estimated RTW date**

**Treatment Frequency**

**Future Treatment Plan**

| ☐ Copy to Med/Voc Folder | Date of Surgery | Type of Surgery |
|---|---|---|
| ☐ Copy to Med/Voc Folder | Date of Surgery | Type of Surgery |
| ☐ Copy to Med/Voc Folder | Date of Surgery | Type of Surgery |

**Comments**

**Last Office Visit**

**Next Office Visit**

## Functionality Job/Occ Requirements and RTW

**Claimant Job/Occ Requirements and Expected Duration**

**Additional Information**

## Referral Information

| First Name | Last Name |
|---|---|
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| First Name | Last Name |
|---|---|
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| First Name | Last Name |
|---|---|
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| Last Changed User | Kelli Archacki | Last Changed Date | 11/02/2005 01:35 PM |
|---|---|---|---|

| Status: | Completed | Assigned To: | Kelli Archacki | Created: | 10/27/2005 02:45 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0081

## Claimant Contact

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

### Contact Information

| | | | | |
|---|---|---|---|---|
| ☐ | **First Phone Call** | | | |
| | **Result** | **Date** | **User ID** | |
| ☐ | **Second Phone Call** | | | |
| | **Result** | **Date** | **User ID** | |
| ☐ | **Generate Letter/Fax** | **Date** | **User ID** | |
| ☑ | **Incoming Call** | **Date** 09/27/2005 04:03 PM | **User ID** | Kelli Archacki |
| ☐ | **Mail Received** | **Date** | **User ID** | |

**Contact Comments**

### Interview Documentation

**Primary Diagnosis/Symptoms/Co-Morbid Conditions**

**Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization**

**Functionality/Job Duties/Set Expectations**

### Spouse Information

| | | | |
|---|---|---|---|
| **First Name** | | **MI** | **Last Name** |
| **SSN** | | **Date of Birth** | |
| **Is Spouse Employed?** | | **If Employed** | |
| **Date of Birth of Youngest Dependent** | | | |
| **Other Income Benefits** | | | |

**Comments**

Cx called and stated that she had talked to her AP office who stated that they mailed the records on 9/23/05 and they also mailed her medical records back in June, 2005. Told her that we have not received anything but if they mailed the records 9/23/05 we would not have received them by now. Told her I would watch for the records and let her know if we do not receive them. She stated that she has gone to see a Rheumatologist 3-4 weeks ago due to her knees locking. He advised her to get blood drawn and they would do lab work. She has been falling a lot and the AP from the pain clinic set up a sleep study due to this for this week. She cancelled it because she does not feel up to it but plans to reschedule it for next week. Thanked her for the assistance in contacting her AP's office for the records. She stated concern that we would close her claim 10/10/05 if we did not receive the records. Stated I would call her prior to that if we do not receive the information.

| | | | |
|---|---|---|---|
| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 10/04/2005 12:29 PM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 09/27/2005 05:20 PM |

## Follow-Up Tasks - Medical Request

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

**Title**  F/U for medical

**Comment/Instruction**

Requested from AP x2, send letter to Cx

| Last Changed User | Kelli Archacki | Last Changed Date | 09/21/2005 02:12 PM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 09/14/2005 02:01 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0083

## Follow-Up Tasks - Medical Request

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**        2nd request medical

**Comment/Instruction**

| | | | |
|---|---|---|---|
| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 09/14/2005 02:00 PM |

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 08/31/2005 12:45 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0084

## Provider Contact

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

### Contact Information

**Title** Pain Center 334.288.7808

| | | | | | |
|---|---|---|---|---|---|
| ☑ **First Phone Call** | **Result** Left Message - Answering Machine | **Date** 08/23/2005 01:32 PM | **User** Kelli Archacki |
| ☑ **Second Phone Call** | **Result** Left Message - Answering Machine | **Date** 08/25/2005 12:22 PM | **User** Kelli Archacki |
| ☑ **Generate Letter/Fax** | | **Date** 08/31/2005 11:40 AM | **User** Kelli Archacki |
| ☐ **Burden of Proof Letter Sent** | | **Date** | **User** |
| ☐ **Incoming Call** | | **Date** | **User** |
| ☐ **Mail Received** | | **Date** | **User** |

**Contact Comments:**

Left message for call back. Need to know if she has been released to RTW and need office visit notes. Per Cx, only AP seeing at this time.

### Interview Documentation

| | | | | |
|---|---|---|---|---|
| **Provider First Name** | PAIN CENTER | **Provider Last Name** | | **Provider Specialty** |
| **Contact First Name** | KITTY | **Contact Last Name** | | **Contact Role** |
| **Primary ICD Code** | | **Primary ICD Description** | | |
| **Comments** | | | | |
| **Secondary ICD Code** | | **Secondary ICD Description** | | |
| **Comments** | | | | |
| **ICD Code 3** | | **ICD Code 3 Description** | | |
| **Comments** | | | | |
| **ICD Code 4** | | **ICD Code 4 Description** | | |
| **Comments** | | | | |
| **ICD Code 5** | | **ICD Code 5 Description** | | |
| **Comments** | | | | |

### Objective Findings

☐ **Physical Exam Findings**
☐ **Test Results**
☐ **Provider Observations**
**Comments**

### Treatment Information

LINA/Cleiland 0085

| Medication (1) | Dosage (1) | Frequency (1) |
| Medication (2) | Dosage (2) | Frequency (2) |
| Medication (3) | Dosage (3) | Frequency (3) |
| Medication (4) | Dosage (4) | Frequency (4) |
| Medication (5) | Dosage (5) | Frequency (5) |

**Current Treatment Plan/Provider's Estimated RTW date**

**Treatment Frequency**

**Future Treatment Plan**

☐ Copy to Med/Voc Folder    Date of Surgery    Type of Surgery

☐ Copy to Med/Voc Folder    Date of Surgery    Type of Surgery

☐ Copy to Med/Voc Folder    Date of Surgery    Type of Surgery

**Comments**

**Last Office Visit**

**Next Office Visit**

## Functionality Job/Occ Requirements and RTW

**Claimant Job/Occ Requirements and Expected Duration**

**Additional Information**

## Referral Information

| First Name | Last Name |
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| First Name | Last Name |
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| First Name | Last Name |
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| Last Changed User | Kelli Archacki | | Last Changed Date | 08/31/2005 12:40 PM |

| Status: | Completed | Assigned To: | Kelli Archacki | Created: | 08/23/2005 02:33 PM |

LINA/Cleland 0086

## Claimant Contact

| Name | CATHY CLEILAND | SSN | | DOB | |
|------|----------------|-----|--|-----|--|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

### Contact Information

☑ **First Phone Call**

**Result** Successful      **Date** 08/23/2005 01:08 PM    **User ID**    Kelli Archacki

☐ **Second Phone Call**

**Result**      **Date**      **User ID**

☐ **Generate Letter/Fax**    **Date**      **User ID**

☐ **Incoming Call**    **Date**      **User ID**

☐ **Mail Received**    **Date**      **User ID**

**Contact Comments**

334.807.0396

### Interview Documentation

**Primary Diagnosis/Symptoms/Co-Morbid Conditions**

**Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization**

**Functionality/Job Duties/Set Expectations**

### Spouse Information

| **First Name** | | **MI** | **Last Name** |
|----------------|--|--------|---------------|
| **SSN** | | **Date of Birth** | |
| **Is Spouse Employed?** | | **If Employed** | |

**Date of Birth of Youngest Dependent**

**Other Income Benefits**

**Comments**

Called Cx to find out who treating physicians are and which AP is disabling her. She stated that the Center for Pain of Montgomery is disabling her. She has moved to this location a year ago and she has not secured a regular AP, she needs to do that. She is taking pain medications, narcotics and the doctor their told her she would be on them for the rest of her life. Advised her that Kitty from the Pain Center called and stated that they are not disabling her and referred us to her other doctors. Cx stated that she feels that we are trying to get out of paying her and with all that she has been through that is pretty shabby of us. Advised her that per policy we are investigating to determine if she is considered disabled under any occupation. That AP's office stated that they are not disabling her and referred us to her other AP's so I was following up with her to see if there was another AP and to give her a status. Told her I would Kitty back and request the records and we would go from there. She stated that she had an AP for 6 years but he is two hours away and she has not seen him in a year. Thanked her and call ended.

| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 08/23/2005 02:14 PM |
|-----------------------|----------------|----------------------|---------------------|

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 08/23/2005 02:13 PM |
|-------------|-----------|------------------|----------------|--------------|---------------------|

LINA/Cleiland 0087

## Follow-Up Tasks - Medical Request

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**        F/U updated medical

**Comment/Instruction**

Kitty from Dr. Harrick and Nordick's office called and stated that they have not disabled her, referring to other AP's.
334.288.7808

| | | | |
|---|---|---|---|
| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 08/23/2005 02:07 PM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 08/17/2005 05:03 PM |

LINA/Cleiland 0088

## Provider Contact

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

### Contact Information

**Title**  Request for medical

| | | | | |
|---|---|---|---|---|
| ☑ **First Phone Call** | **Result** | **Date** | **User** | |
| ☑ **Second Phone Call** | **Result** | **Date** | **User** | |
| ☑ **Generate Letter/Fax** | | **Date** | **User** | |
| ☑ **Burden of Proof Letter Sent** | | **Date** | **User** | |
| ☑ **Incoming Call** | | **Date** 08/23/2005 01:05 PM | **User** | Kelli Archacki |
| ☑ **Mail Received** | | **Date** | **User** | |

**Contact Comments:**

received call 8/16/05

### Interview Documentation

| | | | |
|---|---|---|---|
| **Provider First Name** | CENTER FOR PAIN | **Provider Last Name** | **Provider Specialty** |
| **Contact First Name** | KITTY | **Contact Last Name** | **Contact Role** |
| **Primary ICD Code** | | **Primary ICD Description** | |

**Comments**

Kitty from Dr. Harrick and Nordick's office called and stated that they have not disabled her, referring to other AP's. 334.288.7808

| | |
|---|---|
| **Secondary ICD Code** | **Secondary ICD Description** |

**Comments**

| | |
|---|---|
| **ICD Code 3** | **ICD Code 3 Description** |

**Comments**

| | |
|---|---|
| **ICD Code 4** | **ICD Code 4 Description** |

**Comments**

| | |
|---|---|
| **ICD Code 5** | **ICD Code 5 Description** |

**Comments**

### Objective Findings

☑ **Physical Exam Findings**

☑ **Test Results**

☑ **Provider Observations**

**Comments**

### Treatment Information

| | | |
|---|---|---|
| **Medication (1)** | **Dosage (1)** | **Frequency (1)** |
| **Medication (2)** | **Dosage (2)** | **Frequency (2)** |

LINA/Cleiland 0089

| Medication (3) | Dosage (3) | Frequency (3) |
| Medication (4) | Dosage (4) | Frequency (4) |
| Medication (5) | Dosage (5) | Frequency (5) |

**Current Treatment Plan/Provider's Estimated RTW date**

**Treatment Frequency**

**Future Treatment Plan**

☐ **Copy to Med/Voc Folder**    Date of Surgery      Type of Surgery

☐ **Copy to Med/Voc Folder**    Date of Surgery      Type of Surgery

☐ **Copy to Med/Voc Folder**    Date of Surgery      Type of Surgery

**Comments**

**Last Office Visit**

**Next Office Visit**

## Functionality Job/Occ Requirements and RTW

**Claimant Job/Occ Requirements and Expected Duration**

**Additional Information**

## Referral Information

**First Name**           **Last Name**
**Specialty**           **Provider Referral Date**
**Number**           **Ext.**
**Remarks**

**First Name**           **Last Name**
**Specialty**           **Provider Referral Date**
**Number**           **Ext.**
**Remarks**

**First Name**           **Last Name**
**Specialty**           **Provider Referral Date**
**Number**           **Ext.**
**Remarks**

| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 08/23/2005 02:07 PM |

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 08/23/2005 02:06 PM |

LINA/Cleiland 0090

# Provider Contact

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Contact Information

**Title** AP not disabling

| | | Result | | Date | | User | |
|---|---|---|---|---|---|---|---|
| ☐ | First Phone Call | Result | | Date | | User | |
| ☐ | Second Phone Call | Result | | Date | | User | |
| ☐ | Generate Letter/Fax | | | Date | | User | |
| ☐ | Burden of Proof Letter Sent | | | Date | | User | |
| ☑ | Incoming Call | | | Date | 08/17/2005 04:04 PM | User | Kelli Archacki |
| ☐ | Mail Received | | | Date | | User | |

Contact Comments:

## Interview Documentation

| Provider First Name | Provider Last Name | Provider Specialty |
|---|---|---|
| Contact First Name | Contact Last Name | Contact Role |
| Primary ICD Code | Primary ICD Description | |

Comments

Kitty from Dr. Harrick and Nordick's office called and stated that they have not disabled her, referring to other AP's. 334.288.7808

| Secondary ICD Code | Secondary ICD Description |
|---|---|
| Comments | |
| ICD Code 3 | ICD Code 3 Description |
| Comments | |
| ICD Code 4 | ICD Code 4 Description |
| Comments | |
| ICD Code 5 | ICD Code 5 Description |
| Comments | |

## Objective Findings

☐ Physical Exam Findings
☐ Test Results
☐ Provider Observations
Comments

## Treatment Information

| Medication (1) | Dosage (1) | Frequency (1) |
|---|---|---|
| Medication (2) | Dosage (2) | Frequency (2) |
| Medication (3) | Dosage (3) | Frequency (3) |

LINA/Cleiland 0091

| Medication (4) | Dosage (4) | Frequency (4) |
| Medication (5) | Dosage (5) | Frequency (5) |

**Current Treatment Plan/Provider's Estimated RTW date**

**Treatment Frequency**

**Future Treatment Plan**

☐ Copy to Med/Voc Folder    **Date of Surgery**    **Type of Surgery**

☑ Copy to Med/Voc Folder    **Date of Surgery**    **Type of Surgery**

☐ Copy to Med/Voc Folder    **Date of Surgery**    **Type of Surgery**

**Comments**

**Last Office Visit**

**Next Office Visit**

## Functionality Job/Occ Requirements and RTW

**Claimant Job/Occ Requirements and Expected Duration**

**Additional Information**

## Referral Information

| First Name | Last Name |
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| First Name | Last Name |
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| First Name | Last Name |
| Specialty | Provider Referral Date |
| Number | Ext. |
| Remarks | |

| **Last Changed User** | Kelli Archacki | | **Last Changed Date** | 08/17/2005 05:04 PM |

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 08/17/2005 05:04 PM |

LINA/Cleland 0092

## Follow-Up Tasks - Medical Request

| Name | CATHY  CLEILAND | SSN | | DOB | |
|------|-----------------|-----|--|-----|--|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

**Title**     2nd request updated medical

**Comment/Instruction**

Kitty from Dr. Harrick and Nordick's office called and stated that they have not disabled her, referring to other AP's.
334.288.7808

| Last Changed User | Kelli Archacki | Last Changed Date | 08/17/2005 05:02 PM |
|-------------------|----------------|-------------------|---------------------|

| Status: | Completed | Assigned To: | Kelli Archacki | Created: | 08/12/2005 01:50 PM |
|---------|-----------|--------------|----------------|----------|---------------------|

LINA/Cleiland 0093

## Follow-Up Tasks - General Follow-Up

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**            90 Day Review for A/O

**Comment/Instruction**

| | | | |
|---|---|---|---|
| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 08/16/2005 09:16 AM |

**Status:**    Completed         **Assigned To:**    Kelli Archacki    **Created:**    06/16/2005 03:28 PM

LINA/Cleiland 0094

## Provider Contact

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

### Contact Information

**Title** Center for Pain 334.288.7808

| | | | | | | |
|---|---|---|---|---|---|---|
| ☑ | **First Phone Call** | **Result** | Left Message - Answering Machine | **Date** 08/09/2005 10:38 AM | **User** | Kelli Archacki |
| ☑ | **Second Phone Call** | **Result** | Left Message - Answering Machine | **Date** 08/11/2005 12:35 PM | **User** | Kelli Archacki |
| ☑ | **Generate Letter/Fax** | | | **Date** 08/12/2005 12:49 PM | **User** | Kelli Archacki |
| ☑ | **Burden of Proof Letter Sent** | | | **Date** | **User** | |
| ☑ | **Incoming Call** | | | **Date** 08/11/2005 02:02 PM | **User** | Kelli Archacki |
| ☑ | **Mail Received** | | | **Date** | **User** | |

**Contact Comments:**

left message for fax number to request medical records. Returned call, fax number is 334.288.8089 - fax request

### Interview Documentation

| **Provider First Name** | **Provider Last Name** | **Provider Specialty** |
|---|---|---|
| **Contact First Name** | **Contact Last Name** | **Contact Role** |
| **Primary ICD Code** | **Primary ICD Description** | |
| **Comments** | | |
| **Secondary ICD Code** | **Secondary ICD Description** | |
| **Comments** | | |
| **ICD Code 3** | **ICD Code 3 Description** | |
| **Comments** | | |
| **ICD Code 4** | **ICD Code 4 Description** | |
| **Comments** | | |
| **ICD Code 5** | **ICD Code 5 Description** | |
| **Comments** | | |

### Objective Findings

☐ **Physical Exam Findings**
☐ **Test Results**
☐ **Provider Observations**
**Comments**

### Treatment Information

| **Medication (1)** | **Dosage (1)** | **Frequency (1)** |
|---|---|---|

**Medication (2)**                          **Dosage (2)**          **Frequency (2)**
**Medication (3)**                          **Dosage (3)**          **Frequency (3)**
**Medication (4)**                          **Dosage (4)**          **Frequency (4)**
**Medication (5)**                          **Dosage (5)**          **Frequency (5)**
**Current Treatment Plan/Provider's Estimated RTW date**
**Treatment Frequency**
**Future Treatment Plan**

☑ **Copy to Med/Voc Folder**    **Date of Surgery**        **Type of Surgery**
☑ **Copy to Med/Voc Folder**    **Date of Surgery**        **Type of Surgery**
☑ **Copy to Med/Voc Folder**    **Date of Surgery**        **Type of Surgery**

**Comments**
**Last Office Visit**
**Next Office Visit**

### Functionality Job/Occ Requirements and RTW

**Claimant Job/Occ Requirements and Expected Duration**
**Additional Information**

### Referral Information

**First Name**                              **Last Name**
**Specialty**                               **Provider Referral Date**
**Number**                                  **Ext.**
**Remarks**

**First Name**                              **Last Name**
**Specialty**                               **Provider Referral Date**
**Number**                                  **Ext.**
**Remarks**

**First Name**                              **Last Name**
**Specialty**                               **Provider Referral Date**
**Number**                                  **Ext.**
**Remarks**

| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 08/12/2005 01:49 PM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 08/09/2005 11:38 AM |
|---|---|---|---|---|---|

LINA/Cleland 0096

## Follow-Up Tasks - General Follow-Up

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**  60 Day Staffing for A/O

**Comment/Instruction**

| | | | |
|---|---|---|---|
| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 07/18/2005 04:04 PM |

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 06/16/2005 03:26 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0097

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | - |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**           30 Day Review for A/O

**Comment/Instruction**

---

| | | | |
|---|---|---|---|
| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 06/17/2005 04:20 PM |

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 06/16/2005 03:26 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0098

## Internal Resource Response

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

*\*Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),*
*Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

| | | | | |
|---|---|---|---|---|
| **Referral Type** | Vocational | | | |
| **Role** | Vocational Rehab Counselor | **Name** | Sugi Komarov | ☒ New Nurse/VRC of Record |

**Check all that apply for Medical or Vocational**

☒ Symptoms insufficient to support diagnosis

☐ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis

☑ Occupational requirements assessment is needed

☐ Determine Functional Capacity

☒ Projected return to work date is unclear or undetermined

☒ Return to Work Assistance

☐ Internal Transferable Skills Assessment

☒ Claim Complexity Changed

☐ Other                                    **Specify Other**

**Comments**

Cx is 47 yof Human Resource Manager for Temple Inland. Dx Lumbar Spinal Instability. Need DOT. JD is tabbed.

**Title**

| | | | |
|---|---|---|---|
| **Referral Accepted** | Yes | **Date** | 05/19/2005 |

**Comments**

**Investigation Result**

see med/voc folder.

| | | | |
|---|---|---|---|
| **Last Changed User** | Sugi Komarov | **Last Changed Date** | 05/19/2005 10:21 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Sugi Komarov | **Created:** | 05/18/2005 04:51 PM |

## Internal Resource Referral

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | , | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

*\* Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),*
*Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

**Title**

**Referral Type**  Vocational

**Role**  Vocational Rehab Counselor  **Name**  Sugi Komarov  ☐ **New Nurse/VRC of Record**

### Check all that apply for Medical or Vocational

☐ **Symptoms insufficient to support diagnosis**

☐ **Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis**

☑ **Occupational requirements assessment is needed**

☐ **Determine Functional Capacity**

☐ **Projected return to work date is unclear or undetermined**

☐ **Return to Work Assistance**

☐ **Internal Transferable Skills Assessment**

☐ **Claim Complexity Changed**

☐ **Other**  **Specify Other**

**Comments**

Cx is 47 yof Human Resource Manager for Temple Inland. Dx Lumbar Spinal Instability. Need DOT. JD is tabbed.

| **Last Changed User** | Kelli Archacki | **Last Changed Date** | 05/18/2005 04:51 PM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | Kelli Archacki | **Created:** | 05/18/2005 04:51 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0100

# Any OCC Investigation

| Name | CATHY  CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

## Investigation Notes

☑ **Any-Occ Investigation Started**    Date  05/18/2005 02:49 PM    User  Kelli Archacki

**Contractual MI Limit**    Yes

**Does a Mental Condition exist on this claim?**    No

**Does a Physical Condition exist on this claim?**    Yes

**Investigation Comments**
Any Occ Date - 11/10/2005

## Any-Occ Communication

☑ **First Phone Call**    Result  Left Message - With Individual    Date  05/18/2005 02:51 PM    User  Kelli Archacki

☑ **Second Phone Call**    Result  Successful    Date  05/18/2005 03:45 PM    User  Kelli Archacki

**Contact Comments**
334.397.4707 Female answered the phone and stated that Cx was not home. Asked when she expected her in, she stated that she did not know but if she sees her she will have her call me. Cx stated that her mother called her and let her know that we were trying to reach her. Advised Cx of the change of definition. Cx stated that she was sure that she would still be approved because of all the medication she has to take. Would her payments continue while we investigate her claim Told her yes. Cx stated that she has not been approved for SSDI yet but she was sure she would be once she has her hearing. Told her I had mailed the DQ and asked that she complete it and send it back as soon as possible. Thanked her and call ended.

☑ **Any-Occ Notification Letter Sent**    Date  05/18/2005 02:52 PM    User  Kelli Archacki

| Last Changed User | Kelli Archacki | Last Changed Date | 05/18/2005 04:47 PM |
|---|---|---|---|

| Status: | Completed | Assigned To: | Kelli Archacki | Created: | 04/03/2004 08:39 PM |
|---|---|---|---|---|---|

# Claim Reassignment

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

| | | | |
|---|---|---|---|
| **Team Name** | D-Castellon | **Claim Manager Name** | Kelli Archacki |
| **Claim Office** | Dallas | | |
| **Comments** | | | |

| | | | |
|---|---|---|---|
| **Last Changed User** | Linda Payne | **Last Changed Date** | 05/11/2005 03:06 PM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Linda Payne | **Created:** | 05/11/2005 03:06 PM |

LINA/Cleiland 0102

## Claim Reassignment

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

| | | | |
|---|---|---|---|
| **Team Name** | D-Roscoe | **Claim Manager Name** | Linda Payne |
| **Claim Office** | Dallas | | |
| **Comments** | | | |

| | | | |
|---|---|---|---|
| **Last Changed User** | Jo Dieterich | **Last Changed Date** | 05/09/2005 09:10 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Jo Dieterich | **Created:** | 05/09/2005 09:10 AM |

LINA/Cleiland 0103

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

| | |
|---|---|
| **Title** | Hearing with A2K |
| **Comment/Instruction** | |
| Still awaiting hearing date as of 4/15/05 | |

| | | | |
|---|---|---|---|
| **Last Changed User** | Yvonne Smith | **Last Changed Date** | 05/06/2005 05:39 PM |
| **Status:** | Completed | **Assigned To:** | Yvonne Smith |
| | | **Created:** | 04/03/2004 11:09 PM |

LINA/Cleiland 0104

## Claim Reassignment

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

| | | | |
|---|---|---|---|
| **Team Name** | D-Ferris | **Claim Manager Name** | Yvonne Smith |
| **Claim Office** | Dallas | | |
| **Comments** | | | |

| | | | |
|---|---|---|---|
| **Last Changed User** | Jo Dieterich | **Last Changed Date** | 01/25/2005 07:48 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Jo Dieterich | **Created:** | 01/25/2005 07:48 AM |

LINA/Cleiland 0105

## Claim Reassignment

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

| | | | |
|---|---|---|---|
| **Team Name** | D-Thomas | **Claim Manager Name** | Doryne Thomas |
| **Claim Office** | Dallas | | |
| **Comments** | | | |

| | | | |
|---|---|---|---|
| **Last Changed User** | Jeffrey Zahren | **Last Changed Date** | 01/14/2005 03:09 PM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Jeffrey Zahren | **Created:** | 01/14/2005 03:09 PM |

LINA/Cleiland 0106

## Claimant Contact

| Name | CATHY  CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

### Contact Information

| | | | | | |
|---|---|---|---|---|---|
| ☐ | First Phone Call | | | | |
| | Result | Date | | User ID | |
| ☐ | Second Phone Call | | | | |
| | Result | Date | | User ID | |
| ☐ | Generate Letter/Fax | Date | | User ID | |
| ☑ | Incoming Call | Date | 01/13/2005 02:47 PM | User ID | Ann Lukasik |
| ☐ | Mail Received | Date | | User ID | |

Contact Comments
S/W Clmt.

### Interview Documentation

Primary Diagnosis/Symptoms/Co-Morbid Conditions
Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization
Functionality/Job Duties/Set Expectations

### Spouse Information

| First Name | | MI | | Last Name | |
|---|---|---|---|---|---|
| SSN | | Date of Birth | | | |
| Is Spouse Employed? | | If Employed | | | |
| Date of Birth of Youngest Dependent | | | | | |
| Other Income Benefits | | | | | |

Comments
Clmt. called indicating she needed to receive a statement indicating her Disability benefits received in 2003 and 2004. She noted she needed this information this afternoon and requested it be faxed to her at 334.808.9125.

| Last Changed User | Ann Lukasik | Last Changed Date | 01/13/2005 02:48 PM |
|---|---|---|---|

| Status: | Completed | Assigned To: | Ann Lukasik | Created: | 01/13/2005 02:48 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0107

## Claim Reassignment

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

| Team Name | P-Swanson | Claim Manager Name | Ann Lukasik |
|---|---|---|---|
| Claim Office | Pittsburgh | | |
| Comments | | | |

| Last Changed User | Kimberly Przybylek | Last Changed Date | 11/29/2004 03:11 PM |
|---|---|---|---|

| Status: | Completed | Assigned To: | Kimberly Przybylek | Created: | 11/29/2004 03:11 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0108

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**    Backflow - Address Change

**Comment/Instruction**

Please change address to -

clio, AL 36017

---

| | | | |
|---|---|---|---|
| **Last Changed User** | Arlene Wilson | **Last Changed Date** | 08/27/2004 12:28 PM |

**Status:**   Completed    **Assigned To:**    Arlene Wilson    **Created:**   08/27/2004 11:53 AM

LINA/Cleiland 0109

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**          Rec'd updated DQ and Auth?

**Comment/Instruction**

Mailed request to clmt on 6/1/04.

---

| | | | |
|---|---|---|---|
| **Last Changed User** | Drusilla Gamez | **Last Changed Date** | 08/02/2004 05:21 PM |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Drusilla Gamez | **Created:** | 06/01/2004 11:54 AM |

LINA/Cleiland 0110

# EXHIBIT 1 TO EXHIBIT A
## Part 3

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**    057 - CURRENT REPETITIVE PAY CYCLE ENDS NEXT PAYMENT
**Comment/Instruction**
057 - CURRENT REPETITIVE PAY CYCLE ENDS NEXT PAYMENT

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | Drusilla Gamez | **Last Changed Date** | 06/10/2004 06:56 PM | |
| **Status:** Completed | **Assigned To:** | Drusilla Gamez | **Created:** | 06/04/2004 01:04 AM |

LINA/Cleiland 0111

## Follow-Up Tasks - General Follow-Up

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | . | **DOB** | . |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**        - REC'D ON/PAA FR: EDDINS? 8943

**Comment/Instruction**

 - REC'D ON/PAA FR: EDDINS? 8943

---

| | | | |
|---|---|---|---|
| **Last Changed User** | Drusilla Gamez | **Last Changed Date** | 04/05/2004 08:41 AM |
| **Status:** Completed | **Assigned To:** Drusilla Gamez | **Created:** | 04/03/2004 11:09 PM |

LINA/Cleiland 0112

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**      - REQUEST UPDATED DQ AND AUTH FROM CLMT 8943

**Comment/Instruction**

- REQUEST UPDATED DQ AND AUTH FROM CLMT 8943

| **Last Changed User** | Drusilla Gamez | **Last Changed Date** | 06/01/2004 10:46 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | Drusilla Gamez | **Created:** | 04/03/2004 11:09 PM |
|---|---|---|---|---|---|

## Phone Contact

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | | **Incident #** 613165 | **Claim Eff Dt-Status** 01/31/2007 - Closed | |

| | | | | | |
|---|---|---|---|---|---|
| **Title** | | | | | |
| **Type** * | Outgoing | **Date** | 08/27/2004 10:56 AM | **User ID** | Drusilla Gamez |
| **First Name** | Cathy | | **Last Name** | Cleiland | |
| **Role** | Employee | | **Specify Other** | | |
| **Call Reason** * | Other | | **Action Taken** | Issue Resolved | |

**Call Summary** *

RTC to clmt. New phone number is 334.397.4707. Clmt wanted to advise a change in her medical condition. She says she is now experiencing double vision and saw Dr. William Bennett - Opthom. and he diagnosed her with Left Cranial Palsy, Bilateral Cataract and Bilateral Cornea Dystrophy.

She says she married on 8/1/04 and then her husband asked for a divorce on 8/8/04. She is now severely depressed and is seeking help for the depression. She says she will let me know when she finds a therapist/counselor.

The phone number for Dr. Bennett is 334.793.2211.

| | | | |
|---|---|---|---|
| **Last Changed User** | Drusilla Gamez | **Last Changed Date** | 08/27/2004 01:28 PM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Drusilla Gamez | **Created:** | 08/27/2004 11:59 AM |

LINA/Cleiland 0114

## Claim Reassignment

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

| Team Name | P-Komaromy | Claim Manager Name | Kimberly Przybylek |
|---|---|---|---|
| Claim Office | Pittsburgh | | |
| Comments | | | |

| Last Changed User | Jeffrey Zahren | Last Changed Date | 07/22/2004 09:51 AM |
|---|---|---|---|

| Status: | Completed | Assigned To: | Jeffrey Zahren | Created: | 07/22/2004 09:51 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0115

## Claim Strategy

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 01/31/2007 - Closed |

### Update Rationale

Title

Update Rationale          New Medical

**For Walk-up and Nurse Interaction Only**

Role                          Name

**For Staffings Only - Indicate Resources Present (check all that apply)**

- ☑ AMD
- ☐ NCM
- ☐ VRC
- ☑ CBH Specialist
- ☐ On-Site Psych
- ☐ Network Orthopedist

### Claim Status Information

Status                    Active
Status Reason             Own Occ - Receiving Payments
Reopened Reason
Second Eye Review
Required

☑ Second Eye Review      Date              User
Complete                                    ID

Comments

### Duration Information

| Part Time | | Full Time | | Red Flag | |
|---|---|---|---|---|---|
| ☑ Does Not Exist | | | | | |
| Provider's Estimated RTW Date | 11/10/2005 | Days | 757 | | |
| ERD | | ERD Reason | | | |
| Primary ICD Code | 7244 | Primary ICD Description | LUMBOSACRAL NEURITIS NOS | | |

### Strategy Documentation

Level of Functional

LINA/Cleiland 0116

**Capacity**

**Restrictions & Limitations**

OV note dated 1/14/04 with Dr. Hadley-Neurosurgeon - 4 weeks out after re-operative lumbar spine surgery at L4-5 with posterior lumbar interbody fusion and internal fixation. On examination, her wound looks good. She has a scab on the bottom but it is not werythematous, not leaking. There is no fullness or fluid here. She can bend and mover her spine and certainly her posture is much better than it was piror to surgery. She cannot yet walk on her heels but can on her toes. Independent testing reveals improved strenght in the extensor hallucis longis and anterior tibialis on the left compared to preoperatively. Will will obtain in four weeks for imaging studies. Need to be involved in PT as outpatient.

**Subjective / Objective Findings / Treatment**

OP report dated 12/16/03 - L4-L5 Laminectomy for decompression. L4-5 diskectomy, bilateral, with L4-5 posterior lumbar interbody fusion, bilateral. Internal fixation L4-L5, bilateral. Autologous bone dorsolateral fusion L4L5, bilateral.

**Outstanding Issues and Follow-up Dates**

Pending DQ and Auth from clmt. Need updated meds from neurosurgeon.

**Strategy**

| Last Changed User | Drusilla Gamez | | Last Changed Date | 06/10/2004 07:04 PM |
|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Drusilla Gamez | **Created:** | 06/10/2004 07:58 PM |

LINA/Cleiland 0117

# Phone Contact

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** 613165 | **Claim Eff Dt-Status** | 01/31/2007 - Closed |

**Title**

| | | | | | |
|---|---|---|---|---|---|
| **Type** * | Incoming | **Date** | 06/01/2004 10:49 AM | **User ID** | Drusilla Gamez |
| **First Name** | Cathy | | **Last Name** | Cleiland | |
| **Role** | Employee | | **Specify Other** | | |
| **Call Reason** * | Claim Status Check | | **Action Taken** | Other | |

**Call Summary** *

Clmt wanted to advise that she will be going to Center for Pain Managment with Dr. David Herrick and their phone number is 334.288.7808. Clmt also advised that she was in intensive care from 05/22/04 - 05/25/04 at Monroe County Hospital in Monroeville, AL. Clmt says she will see Dr. Hadley on June 9, 2004.

| | | | |
|---|---|---|---|
| **Last Changed User** | Drusilla Gamez | **Last Changed Date** | 06/01/2004 10:55 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | Drusilla Gamez | **Created:** | 06/01/2004 11:50 AM |

LINA/Cleiland 0118

## Claim File Summary Information

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Report date: 06/14/2007 9:54:38 AM EST**

LINA/Cleiland 0119

## Employee File

### Employee Information

| | | | | |
|---|---|---|---|---|
| Prefix Name | | First Name | CATHY | |
| | | Last Name | CLEILAND | MI | K |
| Certholder Code | S - Social Security Number | SSN | | Suffix Name |
| Date of Birth | | Age | 49 | |
| Gender | Female | Marital Status | Unknown | SIT State | ALABAMA |

### Address Information

| | | | | |
|---|---|---|---|---|
| Address Line 1 | | | | |
| Address Line 2 | | | | |
| City | CLIO | State/Province | ALABAMA | Zip Code | 36017 |
| Country | United States | Other | | |

### Phone Information

| | | | |
|---|---|---|---|
| Type | Number | | Ext. |
| Type | Number | | Ext. |
| Type | Number | | Ext. |
| Type | Number | | Ext. |
| E-Mail Address | | | |

| | | |
|---|---|---|
| Last Changed User | Arlene Wilson | Last Changed Date | 08/27/2004 12:28 PM |

Created:    04/03/2004 06:41 AM

## Primary Claim File

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

### Assignment Information

| | | | |
|---|---|---|---|
| **Team Name** | D-Constantino | **Claim Office** | Dallas |
| **Nurse** | | **Vocational Rehab** | |
| **Claim Type** | STD | | |
| **Claim Reopened Reason** | | | |
| **Claim Status Reason** | Benefit Period | | |
| **Financial Arrangement** | 2 - ASO (Admin Svcs Only) | | ☐ **In Suit Indicator** |

### Incident Information

| | | | |
|---|---|---|---|
| **Last Day Worked** | 05/13/2003 | **Hours Worked Last Day** | 0 |
| **Benefit Start Date** | 05/14/2003 | **Benefit Term Date** | 11/11/2003 |
| **Benefit Paid Through Date** | 11/11/2003 | **Claim Registered Date** | 05/27/2003 |
| **Received Date** | 05/27/2003 | **STD to LTD Transition Date** | |
| **Any-Occ Date** | | **SUTA State** | ALABAMA |
| **Incurred Date** | 05/14/2003 | | |

### Standard Length of Disability Duration (in Days)

| | | | |
|---|---|---|---|
| **Part Time** | **Full Time** | **Red Flag** | ☐ **Does Not Exist** |

### Medical Information

| | | | |
|---|---|---|---|
| **Mental Illness Limit** | | **Claim Complexity** | |
| **Primary ICD Code** | 847 | | |
| **Primary ICD Description** | BACK SPRAIN NEC & NOS | | |
| **Secondary ICD Code** | | | |
| **Secondary ICD Description** | | | |
| **Condition** | Injury | | |

### Occupation Information

| | | | |
|---|---|---|---|
| **Occupation Category** | 02 - Professionals | | |
| **Employee ID** | | **Date of Hire** | 08/24/1998 |
| **Job Title** | Professionals | **Work Related?** | |
| **Cause of Loss Description** | 182 - Other Accident -- Non-Occ | | |

### Key Dates

| | | | |
|---|---|---|---|
| **ERD** | | | |
| **ERD Reason Code** | | | |
| **Provider's Estimated RTW** | 11/12/2003 | **Actual RTW** | |
| **Med Approved Through** | 11/11/2003 | **Proof of Loss Date** | 06/03/2003 |

### SAM Information

LINA/Cleiland 0121

**Pre-SAM Effective Date**

**SAM Review Type**

**SAM Effective Date**

| **Policy / Key Change Information** |
|---|

**Rated/Ported Code**

**Number of Months in Split**                                    **Split Transition Date**

**LINA Only**

**Policy Symbol**          SHD                    **Policy Number**          0020035

**Suffix**                001                    **Coverage Code**          821

**CG Only**

**Account Number**                              **Policy Code**

**Major/Minor**                                 **Division**

**Sub Minor**

| **Last Changed User ID** | JENNIFER LEAHY | **Last Changed Date** | 10/27/2003 12:00 AM |
|---|---|---|---|

**Created:**    04/03/2004 12:38 PM

LINA/Cleiland 0122

## Med/Voc

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | | **Account #** SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | | **Incident #** 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

### Medical Information

| | | | |
|---|---|---|---|
| **Date Accident Happened or Symptoms First Appeared** | | | |
| **Provider's Estimated RTW Date** | 11/12/2003 | **ERD** | |
| **Primary ICD Code** | 847 | **Primary ICD Description** | BACK SPRAIN NEC & NOS |
| **Secondary ICD Code** | | **Secondary ICD Description** | |
| **Level of Functional Capacity** | | **Actual RTW Date** | |

### Healthcare Connect

| | | |
|---|---|---|
| **Healthcare Connect** | **Early Notice ID** | |
| **CHC Data Source** | **CHC Eligibility Source** | |
| **CHC Medical Product Type** | **CIGNA Behavioral Type** | |
| **CHC Well Aware** | | |

### Treatment Information

| | | |
|---|---|---|
| **Name of Hospital or Clinic** | | |
| **Date Admitted** | **Date Discharged** | |
| **Expected Delivery Date** | **Delivery Method** | |
| **Actual Delivery Date** | **Complications** | |
| **Date of Surgery** | **Type of Surgery** | |

### Vocational Rehab Information

| | | |
|---|---|---|
| **Mandatory Rehab** | **DOT Description** | |
| **Occupational Characteristics** | | |
| **DOT Occupational Titles1** | **DOT Occupational Titles2** | |
| **DOT Occupational Titles3** | **Claimant Educational Background** | |
| **Claimant Work History** | | |
| **Rehab Accepted Date** | **Rehab Closed Date** | |
| **Outcome** | **RTW Category** | |

| | | | |
|---|---|---|---|
| **Last Changed User** | JENNIFER LEAHY | **Last Changed Date** | 10/27/2003 12:00 AM |

**Created:** 04/03/2004 12:38 PM

LINA/Cleiland 0123

## Financial

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | | **Account #** SHD0020035 | | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | | **Incident #** 613165 | | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

### Compensation Information

| | | | |
|---|---|---|---|
| **Weekly Amount** | $ 1000.00 | **Monthly Amount** | $ 4333.33 |
| **Average Weekly Wage (for 8 weeks preceding disability)** | $ 0.00 | **Total Hours Worked per Week** | |

### Benefit Information

| | | | |
|---|---|---|---|
| **Waiting Period** | | **Specify Other** | |
| **Waiting Period Code** | 00 - 0 Days | | |
| **Maximum Period** | | **Specify Other** | |
| **Total Benefits Paid Through Amount** | $ 25.94 | | |
| **Period Code** | 01 - 26 Weeks | | |

### Contribution Information

| | | | |
|---|---|---|---|
| **STD Effective Date** | | **Buy-Up Effective Date** | |
| **Contribution Taxability** | | **Buy-Up Taxability** | |
| **Tax Contribution** | 0% | **Post-Tax Buy-Up Contribution** | 0% |
| **LTD Effective Date** | | **Employer-Calculated Blended Contribution** | 0% |

### Overpayment Information

| | | | |
|---|---|---|---|
| **Total Amount** | $ 0.00 | **Deduct Amount** | $ 0.00 |
| **Deduct Start Date** | | | |

### Social Security Information

| | | |
|---|---|---|
| **Date of Birth of Youngest Dependent** | **Spouse Date of Birth** | |
| **Reimbursement Agreement Received Date** | **Authorization Form Received Date** | |
| **Vendor Name** | **Own Representation** | |
| **Vendor Referred Date** | | |

### Benefit Segment Index

| Benefit Segment Number | Net Benefit Effective Date | Gross Benefit Amount | Net Benefit Amount |
|---|---|---|---|
| 1 | 05/14/2003 | $ 1.00 | $ 1.00 |

### Benefit Segment Information

| | | | |
|---|---|---|---|
| **Benefit Frequency** | W - 7 Day Week | **Benefit Paid Through Date** | 11/11/2003 |

LINA/Cleiland 0124

| | | | |
|---|---|---|---|
| **Compensation Frequency** | Weekly | **Compensation Amount** | $ 1000.00 |
| **Integration Method** | | **Override** | 0 % |
| **Calculation Rounding Indicator** | | **Override Amount** | $ |
| **Calculation Basic** | 0 % | **Basic Amount** | $ |
| **Benefit Minimum Amount** | $ | **Benefit Maximum Amount** | $ |
| **Flat Benefit Amount** | $ | **Gross Benefit Amount** | $ 1.00 |
| **Net Benefit Amount** | $ 1.00 | **Net Benefit Type** | N - Gross or Gross less Offsets |
| **Net Benefit Effective Date** | 05/14/2003 | | |

## Offset Information

| Offset Type | Status | Effective Date | Term Date | Amount |
|---|---|---|---|---|
| 23 - Rehabilitation | T - Expected RTW | 05/14/2003 | | $ 0.00 |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

| | | | |
|---|---|---|---|
| **Last Changed User** | JENNIFER LEAHY | **Last Changed Date** | 10/27/2003 12:00 AM |

**Created:**    04/03/2004 12:38 PM

LINA/Cleiland 0125

# Eligibility

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

## Decision Information

| | |
|---|---|
| **Core** | **Date** |
| **Buy-Up** | **Date** |

## Supplemental Information

| | | |
|---|---|---|
| **CIGNA Life Insurance** | | **Life Policy Number** |
| **Waiver of Premium** | | **Family Monthly Income** |
| **Pension Contribution** | | **Total & Permanent Disability** |
| **Late Submittal** | | **Pension Supplement** |
| **Pre-Existing Condition** | 5 - No Pre-X Limitation on Policy | **Continuity of Coverage** |
| **PCL Investigation Begin** | | **PCL Investigation End** |
| **Date** | | **Date** |
| **Occupational Provision** | | |

## Employer Location Information

| | | | |
|---|---|---|---|
| **Location Number** | 09 | **Location** | FOREST PROD GRP (10206) |
| **Address Line 1** | ATTN: PEGGY SIGLER | | |
| **Address Line 2** | | | |
| **City** | MONROEVILLE | **State/Province** AL | **Zip Code** 36461 |

| | | |
|---|---|---|
| **Last Changed User** JENNIFER LEAHY | **Last Changed Date** | 10/27/2003 12:00 AM |

**Created:**    04/03/2004 12:38 PM

LINA/Cleiland 0126

## SIU/Appeal

| | | | | | |
|---|---|---|---|---|---|
| Name | CATHY CLEILAND | SSN | | DOB | |
| Account Name | TEMPLE INLAND CORPORATE | Account # | SHD0020035 | Incurred Date | 05/14/2003 |
| Claim Manager | Jill Constantino | Incident # | 613165 | Claim Eff Dt-Status | 10/27/2003 - Closed |

### Special Investigation

SIU Acceptance Date                              SIU Completed Date

### Appeal Information

Claim Re-opened Date

### First Appeal

Appeal Received Date
Appeal Acknowledgement
Letter Sent Date
Appeal Resolution Date

### Second Appeal

Appeal Received Date
Appeal Acknowledgement
Letter Sent Date
Appeal Resolution Date

| Last Changed User | JENNIFER LEAHY | Last Changed Date | 10/27/2003 12:00 AM |
|---|---|---|---|

Created:    04/03/2004 12:38 PM

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Assignment

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 5/27/2003 CHAPMAN CHRISTOPHER , UPDATED : 5/27/2003 ANDREW CASSANDRA ,
ASSIGNED : 5/27/2003 TARRYTOWN STD , GENERATE CORRESPONDENCE

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 05/27/2003 12:00 AM |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Assignment

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 5/27/2003 CHAPMAN CHRISTOPHER , UPDATED : 5/27/2003 HEATH ELAINE ,
ASSIGNED : 5/27/2003 ASSIGNMENT TEAM-TARRYTOWN , CONTACT EMPLOYER

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 05/27/2003 12:00 AM |

| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |
|---|---|---|---|---|---|

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**          RTW Management

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 6/4/2003 LEAHY JENNIFER L, UPDATED : 7/16/2003 LEAHY JENNIFER L, ASSIGNED :
7/10/2003 LEAHY JENNIFER L, f/u for medical recrods

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 07/10/2003 12:00 AM |
| **Status:** Completed | **Assigned To:** SYST ID | **Created:** | 07/25/2004 02:38 PM |

LINA/Cleiland 0130

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Medical/Disability Management

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 7/16/2003 LEAHY JENNIFER L, UPDATED : 8/12/2003 LEAHY JENNIFER L,
ASSIGNED : 8/12/2003 LEAHY JENNIFER L, f/u for medical records

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 08/12/2003 12:00 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |

LINA/Cleiland 0131

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**     Referral

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 9/29/2003 LEAHY JENNIFER L, UPDATED : 10/13/2003 GYSIN CINDY , ASSIGNED : 9/30/2003 GYSIN CINDY ,
*

STD has been extended thru 111103 max as of 100203. See doc w/CX on 100203 medical records requested from Dr. Hackman

---

| **Last Changed User** | SYST ID | **Last Changed Date** | 09/30/2003 12:00 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0132

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Assignment

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 10/2/2003 GYSIN CINDY , UPDATED : 10/2/2003 KIRBY KAREN , ASSIGNED : 10/2/2003 KIRBY KAREN , Karen, new claim assignment from Temple.I referred this claim for you to A2K. CGYSIN
•
STD has been extended thru 111103 max as of 100203. See doc w/CX on 100203
medical records requested from Dr. Hackman

| **Last Changed User** | SYST ID | **Last Changed Date** | 10/02/2003 12:00 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |
|---|---|---|---|---|---|

LINA/Cleiland 0133

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Referral

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 10/27/2003 KIRBY KAREN , UPDATED : 10/28/2003 SCHWARTZKOPF GREGG ,
ASSIGNED : 10/27/2003 KIRBY KAREN , Gregg,
Please clarify occ. Is it sedentary? Is there travel involved? What are the material duties? Please print DOT.
Thanks,
Karen
.

Please see DOT in file.

| | | | | | |
|---|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 10/27/2003 12:00 AM | |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |

LINA/Cleiland 0134

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | | **Account #** SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | | **Incident #** 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**      Closure

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 10/2/2003 LEAHY JENNIFER L, UPDATED : 10/27/2003 LEAHY JENNIFER L, ASSIGNED : 10/28/2003 LEAHY JENNIFER L, close thru 111103

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 10/28/2003 12:00 AM |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**       Initial Investigation

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 10/2/2003 KIRBY KAREN , UPDATED : 11/26/2003 TAYLOR BRIDGETT , ASSIGNED :
11/26/2003 TAYLOR BRIDGETT , compliance letter

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 11/26/2003 12:00 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |

LINA/Cleiland 0136

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Financial Management

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 12/5/2003 TAYLOR BRIDGETT ,
ASSIGNED : 12/3/2003 TAYLOR BRIDGETT , issue 1st payment.

---

| **Last Changed User** | SYST ID | **Last Changed Date** | 12/03/2003 12:00 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |
|---|---|---|---|---|---|

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Medical/Disability Management

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 12/1/2003 TAYLOR BRIDGETT , UPDATED : 1/12/2004 TAYLOR BRIDGETT ,
ASSIGNED : 1/19/2004 TAYLOR BRIDGETT , f/u with medical from Dr.Hadley.

| **Last Changed User** | SYST ID | | **Last Changed Date** | 01/19/2004 12:00 AM |
|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |

LINA/Cleiland 0138

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**       Medical/Disability Management

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 1/12/2004 TAYLOR BRIDGETT , UPDATED : 1/27/2004 TAYLOR BRIDGETT ,
ASSIGNED : 1/22/2004 TAYLOR BRIDGETT , f/u with Dr. Hadley.

| **Last Changed User** | SYST ID | **Last Changed Date** | 01/22/2004 12:00 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |
|---|---|---|---|---|---|

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**          Medical/Disability Management

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 1/27/2004 TAYLOR BRIDGETT , UPDATED : 2/13/2004 GAMEZ DRUSILLA ,
ASSIGNED : 2/2/2004 GAMEZ DRUSILLA , f/u with Dr. Hadley for medical documentation.

| **Last Changed User** | SYST ID | **Last Changed Date** | 02/02/2004 12:00 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 07/25/2004 02:38 PM |
|---|---|---|---|---|---|

# Follow-Up Tasks - General Follow-Up

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Financial Management

**Comment/Instruction**

UNILYNX DIARY ==> CREATED : 1/29/2004 TAYLOR BRIDGETT , UPDATED : 2/13/2004 GAMEZ DRUSILLA ,
ASSIGNED : 2/2/2004 GAMEZ DRUSILLA , f/u SSDI with A2K

| **Last Changed User** | SYST ID | **Last Changed Date** | 02/02/2004 12:00 AM |
|---|---|---|---|
| **Status:** Completed | **Assigned To:** SYST ID | **Created:** 07/25/2004 02:38 PM | |

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**    Other

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 5/27/2003 HEATH ELAINE , UPDATED : 5/27/2003 HEATH ELAINE , LEVEL 2*
ICD9 847
SP: UNSPECIFIED
ESTIMATED RETURN TO WORK DATE: 7/7/03

| **Last Changed User** | SYST ID | **Last Changed Date** | 05/27/2003 03:04 PM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 02:09 PM |
|---|---|---|---|---|---|

# Follow-Up Tasks - General Follow-Up

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** 613165 | **Claim Eff Dt-Status** | 10/27/2003.- Closed |

**Title**      Correspondence

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 11/26/2003 TAYLOR BRIDGETT ,
Approval letter cont'd

she is earning 80% or less of his or her Indexed Covered Earnings.
Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or
her regular occupation.

Indexed Covered Earnings:

For the first 12 months Monthly Benefits, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly
Benefits are payable, Indexed Covered Earnings will be an Employeeãs Covered Earnings plus an increase applied on each
anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1. 10% of the Employeeãs Indexed Covered Earnings during the preceding year of Disability; or
2. the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

Termination of Disability Benefits

Benefits will end on the earliest of the following dates:

1. the date the Employee earns 80% or more of his or her Indexed Covered Earnings
2. the date the Insurance Company determines he or she is not Disabled
3. the end of the Maximum Benefit Period
4. the date the Employee dies
5. the date the Employee refuses to participate in rehabilitation efforts as required by the Insurance Company
6. the date the Employee is no longer receiving Appropriate Care

Federal Income Taxes may be deducted from your Long-Term Disability benefits on an entirely voluntary basis. Should you
wish to have all or a portion of your FIT taxes on your LTD benefits withheld from your Long Term Disability check, you
will need to complete a Federal Tax Withholding Form (W-4S), which you may obtain through our office or your local IRS
office, and submit it to our office in order for withholding to commence on future checks. The law requires that you designate
on the Form W-4S the amount you want withheld and this amou

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 11/26/2003 12:27 PM |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0143

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**       Financial Management

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 3/12/2004 GAMEZ DRUSILLA , UPDATED : 3/12/2004 GAMEZ DRUSILLA , ——Original Message——
From: Trudy Wagner [mailto:trudy.wagner@advantage2k.com]
Sent: Tuesday, March 09, 2004 2:12 PM
To: drusilla.gamez@cigna.com
Subject: Claimant: Cathy Cleiland - Administrative Law Judge Hearing - Policy ID #: FLK 20104


03/09/2004 1:59:52 PM
SSN: 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
Policy ID #: FLK 20104
Claimant: Cathy Cleiland - Administrative Law Judge Hearing
Client: CIGNA Group Insurance - Dallas TX FCO / Drusilla Gamez (800) 352-0611 - drusilla.gamez@cigna.com

Drusilla,

We received the signed Hearing Request forms back from Ms. Cleiland and are forwarding them to Social Security. Dan Schulte is the Case Manager handling this claim. If you have any questions, you may reach Mr. Schulte at (800)580-5299 ext. 123.

Also, please send us any medical information you have for Ms. Cleiland.

Thank you,

Trudy Wagner
Claims Unit Assistant
Advantage 2000 Consultants
One Corporate Drive
Swansea, IL 62226
(800)580-5299 x144 (618)212-1144
Fax: (314)894-4891
trudy.wagner@advantage2k.com

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 03/12/2004 01:25 PM |
| **Status:**   Completed | **Assigned To:**   SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0144

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino. | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**      Correspondence

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 5/27/2003 HEATH ELAINE , UPDATED : 5/27/2003 HEATH ELAINE , SENT 1ST
REQUEST FOR ER VERIFICATION:
-----Original Message-----
From: Screening and Creation Team 212
Sent: Tuesday, May 27, 2003 2:06 PM
To: 'psigler@templeinland.com'
Subject: ET/ER VERIFICATION - CATHY CLEILAND

The purpose of this e-mail is to advise you that we have received notification of a disability claim for the following Temple
Inland employee:

Employee Name: CATHY CLEILAND
DOB:
Date claim received by CIGNA: 5/27/03

Last day worked:
Earnings: hourly rate of pay or salary?
Effective date of coverage:

Thank you for your time and prompt attention to this verification.

Screening and Creation Unit
CIGNA Disability Management Solutions
(800) 362-4462, #2

| **Last Changed User** | SYST ID | | **Last Changed Date** | 05/27/2003 03:06 PM |
|---|---|---|---|---|
| **Status:** Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0145

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| Name | CATHY  CLEILAND | SSN | | DOB | |
| Account Name | TEMPLE INLAND CORPORATE | Account # | SHD0020035 | Incurred Date | 05/14/2003 |
| Claim Manager | Jill Constantino | Incident # | 613165 | Claim Eff Dt-Status | 10/27/2003 - Closed |

**Title**        Unilynx Note

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 5/27/2003 CHAPMAN CHRISTOPHER , UPDATED : 5/27/2003 CHAPMAN
CHRISTOPHER , Salary Estimated /Lower Back Surgery (Name Of Surgery Unsure)Pinched Nerve

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 05/27/2003 01:01 PM |
| **Status:** | Completed | **Assigned To:** | SYST ID |

**Created:**        06/20/2004 05:38 AM

LINA/Cleiland 0146

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**    Unilynx Note

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 5/27/2003 CHAPMAN CHRISTOPHER , UPDATED : 5/27/2003 CHAPMAN
CHRISTOPHER , No Policy #

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 05/27/2003 01:04 PM |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0147

## Follow-Up Tasks - General Follow-Up

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**     Correspondence

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 5/27/2003 HEATH ELAINE , UPDATED : 5/27/2003 HEATH ELAINE , ER VERIFICATION
IS AS FOLLOWS:
-----Original Message-----
From: Cumbie, Peggy (TIFPC) [mailto:PCumbie@templeinland.com]
Sent: Tuesday, May 27, 2003 2:14 PM
To: Screening and Creation Team 212
Subject: RE: ET/ER VERIFICATION - CATHY CLEILAND

Peggy Cumbie

-----Original Message-----
From: Screening and Creation Team 212
[SMTP:ScreeningandCreationTeam@cigna.com]
Sent: Tuesday, May 27, 2003 2:06 PM
To: 'psigler@templeinland.com'
Subject: ET/ER VERIFICATION - CATHY CLEILAND

The purpose of this e-mail is to advise you that we have received notification of a disability claim for the following Temple
Inland employee:

Employee Name: CATHY CLEILAND
DOB:
Date claim received by CIGNA: 5/27/03

Last day worked: 05/13/03
Earnings: hourly rate of pay or salary? $51,500
Effective date of coverage: 08/24/98

Thank you for your time and prompt attention to this verification.

Screening and Creation Unit
CIGNA Disability Management Solutions
(800) 362-4462, #2

| **Last Changed User** | SYST ID | | **Last Changed Date** | 05/27/2003 04:31 PM |
|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0148

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | | **Account #** SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | | **Incident #** 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 6/4/2003 LEAHY JENNIFER L, UPDATED : 6/4/2003 LEAHY JENNIFER L, Call to CX
LM for CX to cmb to discuss her claim.

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 06/04/2003 01:23 PM |
| **Status:** Completed | **Assigned To:** | SYST ID | **Created:** 06/20/2004 05:38 AM |

LINA/Cleiland 0149

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**         Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 6/4/2003 LEAHY JENNIFER L, UPDATED : 6/4/2003 LEAHY JENNIFER L, Call to AP
Dr. John Hackman
(334) 834-1663
no answer

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 06/04/2003 01:24 PM |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**     Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 6/4/2003 LEAHY JENNIFER L, UPDATED : 6/4/2003 LEAHY JENNIFER L, Call to ER
Peggy Sigler
(251) 575-4876
Peggy doesn't have home # for Cathy
doesn't know any more than I do about surgery

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 06/04/2003 01:28 PM |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**    Current Case Plan

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 6/4/2003 LEAHY JENNIFER L, UPDATED : 6/4/2003 LEAHY JENNIFER L, TEMPLE INLAND SALARY CONTINUANCE
ATP
2106/10206
PEGGY SIGLER 001/09
LEVEL 2 CLAIM W/SURGERY
45 Y/O HR MANAGER
DOB
DOH 082498
EFF 010199
LDW 051303
DOI 051403
BEG 051403
RTW EST 070703
MAX 111103
LTD FLK 020104
ENROLLED YES

ELIGIBILITY VERIFIED PER FEED & EMAIL FROM ER

Date of surgery confirmed by ER. Unable to get in touch w/AP or CX.

CX had unspecified surgery of L-S spine on 052103. CX indicates OOW 6-7 weeks.

As we don't know particulars about surgery type, approve 4 weeks & send CX contact letter to get APS completed w/specifics. Approve thru 061703.

| **Last Changed User** | SYST ID | | **Last Changed Date** | 06/04/2003 01:30 PM | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0152

# Follow-Up Tasks - General Follow-Up

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** SHD0020035 | Incurred Date · | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**      Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 6/9/2003 LEAHY JENNIFER L, UPDATED : 6/9/2003 LEAHY JENNIFER L, Return call to CX

CX went to E.R. on 060403

has been flat on her back. Having pain in L side, can't get up & down, L leg will not support her body. Stabbing pain. Tried different pain meds & nothing is working unless she takes more than RX calls for.

Pain is terrible when foot hits the floor.

CX has called into AP, may get Medrol dose pack or may go for another MRI.

Pinched nerve L4-L5. Unsure of type of surgery. Partial discectomy or laminectomy, no microsurgery or fusion. Had surgery on 052103.

CX indicates AP told her recovery 10-12 weeks.

CX to call me when she gets update as to treatment plan.

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 06/09/2003 12:12 PM |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**      Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 6/9/2003 LEAHY JENNIFER L, UPDATED : 6/9/2003 LEAHY JENNIFER L, Call to AP
Dr. John Hackman
(334) 834-1663
L4-L5 lumbar laminectomy 052103
NOV 070803.
Spoke w/Cathy
(334)834-1936 is fax

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 06/09/2003 12:50 PM |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0154

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Current Case Plan

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 6/9/2003 LEAHY JENNIFER L, UPDATED : 6/9/2003 LEAHY JENNIFER L, Extension thru 071503
L4-L5 laminectomy 052103
standard duration 8-10 weeks
CX is having comps that include terrible, unrelenting pain that is un-responsive to pain killers.

Approve 8 weeks & request f/u from AP.

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 06/09/2003 12:57 PM |
| **Status:** | Completed      **Assigned To:**      SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0155

# Follow-Up Tasks - General Follow-Up

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**      Current Case Plan

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 6/16/2003 LEAHY JENNIFER L, UPDATED : 6/16/2003 LEAHY JENNIFER L, Claim status
CX also has diabetes for 26 weeks.
CX remains in terrible pain, 1st thing in morning it is unbearable. Needs to put heating pad on her leg.

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 06/16/2003 10:21 AM |
| **Status:** Completed | **Assigned To:** SYST ID | **Created:** | 06/20/2004 05:38 AM |

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**      Current Case Plan

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 7/16/2003 LEAHY JENNIFER L, UPDATED : 7/16/2003 LEAHY JENNIFER L, Extension thru 081203
061003 Extension form indicates RTW approx 081303
ER called today to advise that CX was having addtl surgery today.
extend & f/u for update on this addtl surgery.

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 07/16/2003 10:14 AM |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0157

# Follow-Up Tasks - General Follow-Up

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE | Account # | SHD0020035 | Incurred Date | 05/14/2003 |
| Claim Manager | Jill Constantino | Incident # | 613165 | Claim Eff Dt-Status | 10/27/2003 - Closed |

**Title**   Current Case Plan

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 8/12/2003 LEAHY JENNIFER L, UPDATED : 8/12/2003 LEAHY JENNIFER L, Extension thru 100703
f/u for recovery notes
CX had a recurrence of pain in her L hip & leg, MRI scan showed a large recurrent disc herniation at L4-5 on the left with extruded fragments

CX is in recovery from re-exploration laminectomy at L4-5, left on 071603

AP indicates RTW 100803 which is approx 10 weeks post-op. Standard guidelines 5-10 weeks recovery for light occ. Due to recurrent issue, it is reasonable that CX would need the 10 weeks recovery.

Extend & f/u for recovery

| Last Changed User | SYST ID | | Last Changed Date | 08/12/2003 03:01 PM |
|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0158

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE - | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**       Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 9/29/2003 LEAHY JENNIFER L, UPDATED : 9/29/2003 LEAHY JENNIFER L, Call to CX
LM for X to cmb w/RTW plans

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 09/29/2003 09:30 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0159

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**    Staffing

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 9/29/2003 LEAHY JENNIFER L, UPDATED : 9/29/2003 LEAHY JENNIFER L, summary of 092903 staffing
CX s/p 2 disc surgeries, CX continues w/L4-L5 rediculitis
CX has a RTW of 100803, but CM concerned that this may not occur b/c of extreme pain. If no RTW - please get mobility status, see how symptomatic CX is w/sitting which could be a problem.

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 09/29/2003 11:23 AM |
| **Status:** | Completed | **Assigned To:** SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0160

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 10/2/2003 LEAHY JENNIFER L, UPDATED : 10/2/2003 LEAHY JENNIFER L, Call to CX

CX is in constant pain, hasn't given form to AP for completion

CX is to have more surgery, possible a fusion, or rods.

CX is in tremendous amount of pain, can't get out of bed, can't even sit up in her bed. can only walk if she has pain meds.

Went for pain management for 1 appt, never made 2nd appt b/c 1 1/2 hour drive from home, couldn't even get out of bed to go.

Repeat MRI, disc material is pinching nerve.

f/u visit 111703 for consult on surgery w/surgeon at teaching HSPTL UAB.

Legs are becoming useless.

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 10/02/2003 10:28 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**    Current Case Plan

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 10/2/2003 LEAHY JENNIFER L, UPDATED : 10/2/2003 LEAHY JENNIFER L, Extension thru 111103 max

CX remains OOW in excrutiating pain, will have another surgery, f/u w/surgeon 111703. File already in LTD.

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 10/02/2003 10:30 AM |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** 06/20/2004 05:38 AM |

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**      Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 10/2/2003 LEAHY JENNIFER L, UPDATED : 10/2/2003 LEAHY JENNIFER L, Call to AP
Dr. Hackman
Spoke w/Brenda
confirms protruding disc that was there before, will fax over LOV notes

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 10/02/2003 10:32 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0163

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**  RTW Management

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 10/28/2003 SCHWARTZKOPF GREGG , UPDATED : 10/28/2003 SCHWARTZKOPF GREGG , OWN OCC IDENTIFICATION: Clmt is Manager, Personnel (DOT 166.117-018). It is classified SEDENTARY, lifting to 10# occasionally and primarily performed seated. It involves frequent reaching/ handling/ fingering. Most Personnel Managers work from a particular location, but some do travel between business locations within a region.

| **Last Changed User** | SYST ID | **Last Changed Date** | 10/28/2003 07:57 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |
|---|---|---|---|---|---|

## Follow-Up Tasks - General Follow-Up

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 10/30/2003 KIRBY KAREN , UPDATED : 10/30/2003 KIRBY KAREN , Cathy Dover at er lm what she sent us re Cathy's job does not include the physical demands. A letter was written for Cathy's drs and do we want a copy of that? Returned call and she will fax over.

| **Last Changed User** | SYST ID | **Last Changed Date** | 10/30/2003 01:57 PM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0165

# EXHIBIT 1 TO EXHIBIT A
# Part 4

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**    Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 11/14/2003 TAYLOR BRIDGETT , UPDATED : 11/14/2003 TAYLOR BRIDGETT , Call from cx

Cx called inquiring about the status of her claim. CM explained that we are waiting for the PAA form from Dr. Hackman. CM explained that we will fax the form to Dr. Hackman again this morning. CM requested that cx contact AP's office to expedite the process, cx agreed. Cx also stated that she mailed the DQ, RA, POA on Tuesday 11/11/03 to Tarrytown. CM explained that all mail is being forwarded to Dallas. Call terminated.

| | | | | | |
|---|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 11/14/2003 11:25 AM | |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

6/14/2007

LINA/Cleiland 0166

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | -- |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 11/18/2003 TAYLOR BRIDGETT , UPDATED : 11/18/2003 TAYLOR BRIDGETT , Call from cx.

Cx left message that Dr. Hackman does not complete the PAA form and would recommend cx do an FCE. However, he feels that in cx's condition, she will not be able to complete an FCE. She is scheduled to have more surgery on 12/9/03. CM called Dr. Hackman's office and spoke with Brenda. She verified that Dr. Hackman will not complete the PAA and would recommend FCE; however, cx is not in any condition to do an FCE. She stated that cx cannot sit or stand for long periods and is having another back surgery soon as cx went to see another neurosurgeon. CM thanked Brenda for the information.

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 11/18/2003 12:18 PM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**      Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 11/19/2003 TAYLOR BRIDGETT , UPDATED : 11/19/2003 TAYLOR BRIDGETT , Call to cx.

CM returned cx's phone call. Left message on voice mailbox to return CM's phone call. Name and phone number provided.

| | | | | |
|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 11/19/2003 11:40 AM |
| **Status:** | Completed | **Assigned To:** | SYST ID   **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0168

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**    Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 11/19/2003 TAYLOR BRIDGETT , UPDATED : 11/19/2003 TAYLOR BRIDGETT , Call from cx.

Cx returned CM's phone call. Cx stated that she is scheduled to have pins and screws put in her back (she was unsure of procedure) on 12/9/03, by Dr. Mark Hadley at University of Alabama at Birmingham. He is in the department of surgery, division of Neurosurgery. She was referred to Dr. Hadley by Dr. Hackman. Dr. Hadley's phone number is 205.934.7170 or 205.934.1439. The fax number is 205.934.6507 or 205.975.6081. Cx's fiance's number is         . She can also be reached at that number. CM informed cx that her claim has been approved and that her check will go out in December. CM explained that an approval letter will be mailed detailing the information. CM also informed cx that Dr. Hadley will be contacted to obtain additional information.

| **Last Changed User** | SYST ID | | **Last Changed Date** | 11/19/2003 05:05 PM |
|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0169

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**        Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 11/20/2003 TAYLOR BRIDGETT , UPDATED : 11/20/2003 TAYLOR BRIDGETT , Call from cx.


Cx called inquiring about the Direct Deposit. CM informed cx of the process and informed her that a form will be mailed to her. Cx also provided the type of surgery that she is scheduled to have in December: L4-5 decompression with internal fixation and fusion. CM thanked cx for the information. Call terminated.

---

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 11/20/2003 10:35 AM |

| | | | | | |
|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

# Follow-Up Tasks - General Follow-Up

| | | | | |
|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**          Current Case Plan

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 11/26/2003 TAYLOR BRIDGETT , Cx dx
with recurrent HNP, L4-5, left. Cx had a lumbar laminectomy on May 21, 2003, with a re-exploration laminectomy of L4-5, left
on July 16, 2003. Claim is approved based on medical documentation provided. Plan is to f/u with Dr. Mark Hadley for an
instrumentation of the back in December of 2003.

| **Last Changed User** | SYST ID | **Last Changed Date** | 11/26/2003 10:46 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |
|---|---|---|---|---|---|

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**       Financial Management

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 11/26/2003 TAYLOR BRIDGETT , Request for SS status


-----Original Message-----
From: Taylor, Bridgette T 212
Sent: Wednesday, November 26, 2003 9:55 AM
To: 'Jamie.fonger@advantage2k.com'
Subject: Cathy Cleiland

Hello -

What is the status of Ms. Cleiland's (7/11/57) Social Security application?

Thanks.

A Bridgette Taylor, MS
Case Manager
CIGNA Disability Management Solutions
Phone: 1.800.352.0611 ext.5646
Fax: 1.860.731.3041
E-mail: Bridgette.Taylor@Cigna.com

---

| **Last Changed User** | SYST ID | | **Last Changed Date** | 11/26/2003 10:55 AM |
|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0172

## Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**    Correspondence

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 11/26/2003 TAYLOR BRIDGETT ,
Approval letter

Bridgette Taylor
Case Manager

AGroup Insurance
Life = Accident = Disability
November 26, 2003

Cathy Cleiland

Monroeville, AL 36460

Claimant: Cathy Cleiland
Policy: FLK 020104
Policy Name: Temple Inland
Company: Life Insurance Company of North America

Dear Ms. Cleiland:

Your claim for Long Term Disability (LTD) benefits has been approved. Benefits will begin after the Elimination Period, which
ends on November 10, 2003. Your first check in the amount of $2500.00 represents benefits for the time period of November
10, 2003, through December 9, 2003. Your current gross benefit of $2500.00 per month will be issued at monthly intervals at
the end of each benefit period.

Please refer to the enclosed calculation sheets for further explanation of how your benefit was calculated.

The Gross Disability Benefit for an Employee of Employer Mutual Casualty is the lesser of 60% of an Employeeãs monthly
Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit.

Your LTD benefits may be reduced by any other benefits you (and your dependents, if applicable) receive. Please call us if
you are receiving or should become entitled to receive any income from other sources such as:

= Social Security Disability or Retirement
= Statutory Disability**
= VA
= Workerãs Compensation
= No-Fault
= Employer Pension, etc.
= Any other benefit related to your disability

**If you work in California, Hawaii, New Jersey, New York, Rhode Island, or Puerto Rico, you should be eligible for disability
benefits under Statutory Disability Benefit Plans.

We will continue to evaluate your claim, and will request additional information as needed. To continue receiving benefits, you
must meet the following:

Disability

An Employee is Di

| Last Changed User | SYST ID | | Last Changed Date | 11/26/2003 12:26 PM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | SYST ID | Created: | 06/20/2004 05:38 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0174

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**  Correspondence

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 11/26/2003 TAYLOR BRIDGETT ,
Approval letter cont'd

You may cancel or change your deduction amount at any time by completing another Form W-4S.

If you have any questions in regard to the contractual definitions listed above, please feel free to contact me.

Sincerely,

Bridgette Taylor
Case Manager

| | | | |
|---|---|---|---|
| **Last Changed User** | SYST ID | **Last Changed Date** | 11/26/2003 12:27 PM |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0175

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**    Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 12/1/2003 TAYLOR BRIDGETT , UPDATED : 12/1/2003 TAYLOR BRIDGETT , Call from cx.

Cx called to inquire about when her first check will be issued. CM informed cx that her check will be released this week. Cx again informed CM of surgery scheduled for 12/9/03. Cx stated that she will be at her mom's house until she gets stitches taken out following her surgery, which will be 7-10 days post-op. Cx's mom's phone number is 334.397.4707.

| **Last Changed User** | SYST ID | | **Last Changed Date** | 12/01/2003 11:17 AM |
|---|---|---|---|---|
| **Status:** | Completed | **Assigned To:** | SYST ID    **Created:** | 06/20/2004 05:38 AM |

LINA/Cleiland 0176

# Follow-Up Tasks - General Follow-Up

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY  CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

**Title**       Telephone Call

**Comment/Instruction**

UNILYNX NOTE ==> CREATED : 12/8/2003 TAYLOR BRIDGETT , UPDATED : 12/8/2003 TAYLOR BRIDGETT , Call from cx


Cx called to inform CM that her date of surgery has been changed to December 16, 2003, as her physician had a death in the family and had to reschedule. Cx is now at her mom's house and will be there until after her surgery. CM thanked cx for phone call.


| | | | | |
|---|---|---|---|---|
| **Last Changed User** | SYST ID | | **Last Changed Date** | 12/08/2003 09:22 AM |
| **Status:** | Completed | **Assigned To:** | SYST ID | **Created:** | 06/20/2004 05:38 AM |

# Intake - converted

| | | | | | |
|---|---|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | | **DOB** | |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** | SHD0020035 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Jill Constantino | **Incident #** | 613165 | **Claim Eff Dt-Status** | 10/27/2003 - Closed |

## General

| | |
|---|---|
| Incident Type | Injury |
| Employer Name | TEMPLE INLAND |
| DOI | 05/14/2003 |
| First Day Off | 05/14/2003 |
| Intake Claim Type | Short Term Disability |
| LOB | DIS |
| HMO Code | . |

## Employee

| | |
|---|---|
| SSN | |
| Employee ID | |
| Work Permit Num | 0000000000 |
| Full Name | CLEILAND, CATHY K |
| DOB | 07/11/1957 |
| Age | 45 |
| Gender | FEMALE |
| Marital | SEPARATED |
| Pref Lang | ENGLISH |
| Tax State | AL |
| **Address** | |
| type | Residence |
| Line1 | |
| Line2 | . |
| City | MONROEVILLE |
| County | . |
| State | AL |
| Zip | 36460 |
| Country | US |
| **Address** | |
| type | Work Location |
| Line1 | |
| Line2 | . |
| City | MONROEVILLE |
| County | MONROE |
| State | AL |
| Zip | 36461 |
| Country | US |

## Phone

| | |
|---|---|
| Phone Type | Mobile - Telephone |
| Number | . |
| Ext | . |

LINA/Cleiland 0178

## Phone

| | |
|---|---|
| Phone Type | Office - Telephone |
| Number | |
| Ext | . |

## Email

| | |
|---|---|
| Address | None |
| Address | . |

## Condition

| | |
|---|---|
| Injury Occurance Description | Lower Back Surgery (Name Of Surgery Unsure)Pinched Nerve |
| type | Injury |
| ICD9 | 847 - SPRAIN OF BACK NEC/NOS |
| Condition Fatal | No |
| Date of Death | . |

## Injury

| | |
|---|---|
| Date | 04/24/2002 |
| Time | 07:00:00 AM |
| Injury While Working | No |
| Work Related Conditon | No |
| Claiming WC | No |
| Injury Cause | Car Accident |
| Jurisdiction | Alabama |
| Other WC Claim Num | . |
| Dispute WC | . |
| Why | . |
| **Place Of Injury** | |
| where | Other |
| Loc Desc | . |
| Line1 | . |
| Line2 | . |
| City | . |
| County | . |
| State | . |
| Zip | . |
| Country | . |
| **Witnesses** | |
| Were There Witnesses? | . |
| **Injury Specifics** | |
| Body Part | Low Back Area (Inc: Lumbar and Lumbo-Sacral) |
| Injury Nature | All Other Specific Injury |
| Injury Cause | Injury - Non Occupational |
| Other Med Conditions | . |
| Other Med Conditions Desc | . |
| **Prior Information** | |
| Prior Related Injury | No |
| Prior Injury Date | . |
| Prior Injury Comments | . |

LINA/Cleiland 0179

## Medical

| | |
|---|---|
| Receiving or Scheduled Treatment | Yes |
| Hospitalized | Yes |
| Date Admitted | 05/21/2003 |
| Date Discharged | 05/22/2003 |
| Surgery | Yes |
| Date Performed | 05/21/2003 |
| Verbal Auth | . |
| Restrictions | . |
| Restriction Description | . |
| Medical Instruction | . |
| **Providers** | |
| Name | John Hackman |
| Type | Specialist |
| Med Returns | No |
| Facility Group | . |
| TIN | . |
| Specialty | Surgery, Neurological |
| Address | Business |
| Line1 | Unknown |
| Line2 | . |
| City | MONTGOMERY |
| County | MONTGOMERY |
| State | AL |
| Zip | 36106 |
| Country | US |
| Phone | Office - Telephone 334.834.1663 |
| Phone | Office - Fax Machine 999.999.9999 |
| Treatment Date Description | 05/22/2003 |
| Treatment Notes | Jackson Hospital |

## Employer

| | |
|---|---|
| name | TEMPLE INLAND |
| Company Num | 000000552 |
| Eligibility Loc ID Num | 6045 |
| Eligibility Client Loc Code | 10206 |
| Location ID Num | 000006045 |
| Client Location Code | 10206 |
| **Location** | |
| name | BLDG. PRODUCTS - MONROEVILLE 10206 |
| Line1 | |
| Line2 | . |
| City | MONROEVILLE |
| County | MONROE |
| State | AL |
| Zip | 36461 |
| Country | US |

## Employer Contacts

| | |
|---|---|
| Name | JIM CONVERY |

LINA/Cleiland 0180

| | |
|---|---|
| Type | X |
| **Address** | |
| Address Type | Business |
| Line1 | 248 INDUSTRIAL ROAD |
| Line2 | ; |
| City | LEOMINSTER |
| County | WORCESTER |
| State | MA |
| Zip | 01453 |
| Country | US |
| **Phone** | |
| Phone | 508.537.1701 |
| Phone Type | Office - Telephone |

## Employer Contacts

| | |
|---|---|
| Name | SUPERVISOR JOE PRIDGEN |
| Type | RT |
| **Phone** | |
| Phone | |
| Phone Type | Office - Telephone |

## Policy

## Eligibility Enrollment

| | |
|---|---|
| Product | SC |
| Coverage Code | SC |
| Enrollment Effective Date | 01/01/2003 |
| Enrollment Cancel Date | . |
| Employee Paid Thru Date | . |
| Account Number | . |
| SROID | . |
| SRO Div Suffix | . |
| SRO Cov Eff Date | 01/01/2001 |
| Elected Effective Date | 12/19/1994 |
| Provision Eff Date | 12/19/1994 |
| Elected Benefit PCT | 0 |
| Elected Benefit Count | 0 |
| Product | SC |
| Coverage Code | SC |
| Enrollment Effective Date | 01/01/2003 |
| Enrollment Cancel Date | . |
| Employee Paid Thru Date | . |
| Account Number | . |
| SROID | . |
| SRO Div Suffix | . |
| SRO Cov Eff Date | 01/01/2001 |
| Elected Effective Date | 01/01/2003 |
| Provision Eff Date | 01/01/2001 |
| Elected Benefit PCT | 0 |
| Elected Benefit Count | 0 |

LINA/Cleiland 0181

## Initial Caller

| | |
|---|---|
| RecDate | 05/27/2003 |
| RecTime | 12:49:17 PM |
| Source | Inbound Call |
| Caller Name | CATHY K CLEILAND |
| Phone | |
| Role | Employee |
| Call Reason | Intake |

## Employment

| | |
|---|---|
| Hire | 08/24/1998 |
| Emp Status | ACTIVE |
| Effective Date | 08/24/1998 |
| Union Indicator | No |
| Union Local | . |
| Union Name | . |
| Organization Code | . |
| Organization Name | . |
| Employer Name | TEMPLE INLAND |
| Present Position Start Date | . |
| Nature of Business | Plant |
| Department Name | . |
| Job Title | Human Resource Manager |
| Occupation Class | Professionals |
| Description of Job Duties | Management Employee Relations |

## Wages

| | |
|---|---|
| Full Time | Yes |
| Amount | 2,000.00 |
| Earnings Mode | BI-WEEKLY |
| Bonus | No |
| Date | 08/01/1998 |
| Salary Mode | ANNUAL |
| **Compensation List Types** | |
| List Type | Salary |
| **Other Income** | |
| **Work Schedule** | |
| Shift | Day |
| Start Time | 12:00:00 AM |
| End Time | 04:30:00 PM |
| Mon | x |
| Tue | x |
| Wed | x |
| Thu | x |
| Fri | x |
| Sat | . |
| Sun | . |
| Total Hours | 40 |

LINA/Cleiland 0182

## Return To Work

| | |
|---|---|
| Lost Time Ind | Yes |
| Last Date Worked | 05/13/2003 |
| LDW Paid In Full | Yes |
| Returned To Work | No |
| Exp Return Date | 07/07/2003 |
| Hrs Wkd Last Day | 18 |
| Work Prevention Explanation | . |
| **Lost Time Period** | |
| First Day Off | 05/14/2003 |
| RTW Date | . |
| Duty Type | . |
| Job | . |
| RTW Hours Week | 0 |
| RTW Notes | |

## Notes

| | |
|---|---|
| Notes | CDCHAP05/27/2003 Salary Estimated /Lower Back Surgery (Name Of Surgery Unsure)Pinched Nerve |
| Notes | CDCHAP05/27/2003 No Policy # |

## ER Confirmation

| | |
|---|---|
| Line1 | |
| Line2 | . |
| City | MONROEVILLE |
| County | MONROE |
| State | AL |
| Zip | 36461 |
| Country | US |
| Department Name | . |
| Job Title | Human Resource Manager |
| Occupation Classification | Professionals |
| Description of Job Duties | Management Employee Relations |
| Union Indicator | No |
| Union Number | . |
| Date of Hire | 08/24/1998 |
| Date of Last Earnings Change | . |
| Last Day Worked | 05/13/2003 |
| Hrs Wkd Last Day | 18 |
| Expected RTW Date | 07/07/2003 |
| Full Time | Yes |
| Earnings Mode | 2,000.00 |
| Payment Mode | BI-WEEKLY |
| Compensation Type | Salary |
| First Day Off | 05/14/2003 |
| Coverage Type | STD |
| Policy Number | |
| Policy Effective Date | . |
| Premium Paid Thru Date | . |
| Contribution PCT | 0 |

LINA/Cleiland 0183

| Contribution Method | Pre Tax |
|---|---|

**Other Contacts**

| Name | C C |
|---|---|
| Type | Other |
| **Phone** | |
| Phone | 972.997.8722 |
| Phone Type | Residence - Telephone |

| Last Changed User | Jill Constantino | | Last Changed Date | 04/08/2004 02:01 PM |
|---|---|---|---|---|

| Status: | Completed | Assigned To: | Jill Constantino | Created: | 04/10/2004 07:54 AM |
|---|---|---|---|---|---|

LINA/Cleiland 0184

## Employee

| | |
|---|---|
| **SSN:** | |
| **Employee ID:** | |
| **Work Permit Num:** | |
| **Full Name:** | |
| **DOB:** | |
| **Age:** | |
| **Gender:** | |
| **Marital:** | |
| **Pref Lang:** | |
| **Tax State:** | |
| **Address:** | type: |
| | Line1: |
| | Line2: |
| | City: |
| | County: |
| | State: |
| | Zip: |
| | Country: |
| **Address:** | type: |
| | Line1: |
| | Line2: |
| | City: |
| | County: |
| | State: |
| | Zip: |
| | Country: |
| **Phone Type:** | |
| **Number:** | |
| **Ext:** | |

LINA/Cleiland 0185

# Email

**Address:**

**Address:**

LINA/Cleiland 0186

## Condition

**Injury Occurance Description:**

**type:**

**ICD9:**

**Condition Fatal:**

**Date of Death:**

LINA/Cleiland 0187

## Illness

**Work Related Conditon:**
**First Symptoms Date:**
**Claiming WC:**
**Prior Related Injury:**
**Jurisdiction:**
**Other WC Claim Num:**
**Dispute WC:**
**Why:**
**First Symptoms Location:**
**Illness Cause Desc:**
**Illness Cause:**
**Other Med Conditions:**
**Other Med Conditions Desc:**
**Place Of Injury:**            **where:**
                                **Line1:**
                                **Line2:**
                                **City:**
                                **State:**
                                **Zip:**
                                **Country:**

LINA/Cleiland 0188

# Medical

**Receiving or Scheduled Treatment:**

**Hospitalized:**

**Date Admitted:**

**Date Discharged:**

**Surgery:**

**Date Performed:**

**Verbal Auth:**

**Restrictions:**

**Restriction Description:**

**Medical Instruction:**

**Providers:**

# Employer

|  |  |
|---|---|
| **name:** |  |
| **Company Num:** | Fake Company Num |
| **Eligibility Loc ID Num:** |  |
| **Eligibility Client Loc Code:** |  |
| **Location ID Num:** |  |
| **Client Location Code:** |  |
| **Location:** |  |

|  |  |
|---|---|
| **name:** |  |
| **Line1:** |  |
| **Line2:** |  |
| **City:** |  |
| **County:** |  |
| **State:** |  |
| **Zip:** |  |
| **Country:** |  |

LINA/Cleiland 0190

## Employer Contacts

**Name:**

**Type:** Unknown

**Address:**       **Address Type:**

                     **Line1:**

                     **Line2:**

                     **City:**

                     **County:**

                     **State:**

                     **Zip:**

                     **Country:**

**Phone:**           **Phone:**

                     **Phone Type:**

**Phone:**           **Phone:**

                     **Phone Type:**

LINA/Cleiland 0191

# Policy

LINA/Cleiland 0192

**Eligibility Enrollment**

LINA/Cleiland 0193

# Initial Caller

**RecDate:**
**RecTime:**
**Source:**
**Caller Name:**
**Phone:**
**Role:**
**Call Reason:**

LINA/Cleiland 0194

## Employment

| | |
|---|---|
| **Hire:** | |
| **Emp Status:** | |
| **Effective Date:** | |
| **Union Indicator:** | |
| **Union Local:** | |
| **Union Name:** | |
| **Organization Code:** | |
| **Organization Name:** | |
| **Employer Name:** | |
| **Present Position Start Date:** | |
| **Nature of Business:** | |
| **Department Name:** | |
| **Job Title:** | |
| **Occupation Class:** | |
| **Description of Job Duties:** | |

LINA/Cleiland 0195

## Wages

**Full Time:**

**Amount:**

**Earnings Mode:**

**Bonus:**

**Date:**

**Salary Mode:**

**Compensation List
Types:**

**Other Income:**

**Work Schedule:**                  **Shift:**

                                    **Start Time:**

                                    **End Time:**

                                    **Mon:**

                                    **Tue:**

                                    **Wed:**

                                    **Thu:**

                                    **Fri:**

                                    **Sat:**

                                    **Sun:**

                                    **Total Hours:**

## Return To Work

Lost Time Ind:
Last Date Worked:
LDW Paid In Full:
Returned To Work:
Exp Return Date:
Hrs Wkd Last Day:
Work Prevention
Explanation:
Lost Time Period:

First Day Off:
RTW Date:
Duty Type:
Job:
RTW Hours Week:
RTW Notes:

LINA/Cleiland 0197

## Other Contacts

LINA/Cleiland 0198

# Diary Entries

**Incident Id:** 589813409422531
**Completed Date:** 05/27/2003

UNILYNX DIARY ==> CREATED : 5/27/2003 CHAPMAN CHRISTOPHER , UPDATED : 5/27/2003 ANDREW CASSANDRA , ASSIGNED : 5/27/2003 TARRYTOWN STD , GENERATE CORRESPONDENCE

---

**Incident Id:** 589813409422531
**Completed Date:** 05/27/2003

UNILYNX DIARY ==> CREATED : 5/27/2003 CHAPMAN CHRISTOPHER , UPDATED : 5/27/2003 HEATH ELAINE , ASSIGNED : 5/27/2003 ASSIGNMENT TEAM-TARRYTOWN , CONTACT EMPLOYER

---

**Incident Id:** 589813409422531
**Completed Date:** 07/16/2003

UNILYNX DIARY ==> CREATED : 6/4/2003 LEAHY JENNIFER L, UPDATED : 7/16/2003 LEAHY JENNIFER L, ASSIGNED : 7/10/2003 LEAHY JENNIFER L, f/u for medical recrods

---

**Incident Id:** 589813409422531
**Completed Date:** 08/12/2003

UNILYNX DIARY ==> CREATED : 7/16/2003 LEAHY JENNIFER L, UPDATED : 8/12/2003 LEAHY JENNIFER L, ASSIGNED : 8/12/2003 LEAHY JENNIFER L, f/u for medical records

---

**Incident Id:** 589813409422531
**Completed Date:** 10/02/2003

UNILYNX DIARY ==> CREATED : 10/2/2003 GYSIN CINDY , UPDATED : 10/2/2003 KIRBY KAREN , ASSIGNED : 10/2/2003 KIRBY KAREN , Karen, new claim assignment from Temple.I referred this claim for you to A2K. CGYSIN*STD has been extended thru 111103 max as of 100203. See doc w/CX on 100203medical records requested from Dr. Hackman

---

**Incident Id:** 589813409422531
**Completed Date:** 10/13/2003

UNILYNX DIARY ==> CREATED : 9/29/2003 LEAHY JENNIFER L, UPDATED : 10/13/2003 GYSIN CINDY , ASSIGNED : 9/30/2003 GYSIN CINDY , *STD has been extended thru 111103 max as of 100203. See doc w/CX on 100203medical records requested from Dr. Hackman

---

**Incident Id:** 589813409422531
**Completed Date:** 10/27/2003

UNILYNX DIARY ==> CREATED : 10/2/2003 LEAHY JENNIFER L, UPDATED : 10/27/2003 LEAHY JENNIFER L, ASSIGNED : 10/28/2003 LEAHY JENNIFER L, close thru 111103

---

**Incident Id:** 589813409422531
**Completed Date:** 10/28/2003

UNILYNX DIARY ==> CREATED : 10/27/2003 KIRBY KAREN , UPDATED : 10/28/2003 SCHWARTZKOPF GREGG , ASSIGNED : 10/27/2003 KIRBY KAREN , Gregg,Please clarify occ. Is it sedentary? Is there travel involved? What are the material duties? Please print DOT.Thanks,Karen*Please see DOT in file.

---

**Incident Id:** 589813409422531
**Completed Date:** 11/26/2003

LINA/Cleiland 0199

UNILYNX DIARY ==> CREATED : 10/2/2003 KIRBY KAREN , UPDATED : 11/26/2003 TAYLOR BRIDGETT , ASSIGNED : 11/26/2003 TAYLOR BRIDGETT , compliance letter

---

**Incident Id:** 589813409422531
**Completed Date:** 12/05/2003

UNILYNX DIARY ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 12/5/2003 TAYLOR BRIDGETT , ASSIGNED : 12/3/2003 TAYLOR BRIDGETT , issue 1st payment.

---

**Incident Id:** 589813409422531
**Completed Date:** 01/12/2004

UNILYNX DIARY ==> CREATED : 12/1/2003 TAYLOR BRIDGETT , UPDATED : 1/12/2004 TAYLOR BRIDGETT , ASSIGNED : 1/19/2004 TAYLOR BRIDGETT , f/u with medical from Dr.Hadley.

---

**Incident Id:** 589813409422531
**Completed Date:** 01/27/2004

UNILYNX DIARY ==> CREATED : 1/12/2004 TAYLOR BRIDGETT , UPDATED : 1/27/2004 TAYLOR BRIDGETT , ASSIGNED : 1/22/2004 TAYLOR BRIDGETT , f/u with Dr. Hadley.

---

**Incident Id:** 589813409422531
**Completed Date:** 02/13/2004

UNILYNX DIARY ==> CREATED : 1/27/2004 TAYLOR BRIDGETT , UPDATED : 2/13/2004 GAMEZ DRUSILLA , ASSIGNED : 2/2/2004 GAMEZ DRUSILLA , f/u with Dr. Hadley for medical documentation.

---

**Incident Id:** 589813409422531
**Completed Date:** 02/13/2004

UNILYNX DIARY ==> CREATED : 1/29/2004 TAYLOR BRIDGETT , UPDATED : 2/13/2004 GAMEZ DRUSILLA , ASSIGNED : 2/2/2004 GAMEZ DRUSILLA , f/u SSDI with A2K

---

LINA/Cleiland 0200

## Notes Entries

**Incident Id:** 589813409422531
**Completed Date:** 05/27/2003 1:01:03 PM

UNILYNX NOTE ==> CREATED : 5/27/2003 CHAPMAN CHRISTOPHER , UPDATED : 5/27/2003 CHAPMAN CHRISTOPHER , Salary Estimated /Lower Back Surgery (Name Of Surgery Unsure)Pinched Nerve

---

**Incident Id:** 589813409422531
**Completed Date:** 05/27/2003 1:04:02 PM

UNILYNX NOTE ==> CREATED : 5/27/2003 CHAPMAN CHRISTOPHER , UPDATED : 5/27/2003 CHAPMAN CHRISTOPHER , No Policy #

---

**Incident Id:** 589813409422531
**Completed Date:** 05/27/2003 3:04:04 PM

UNILYNX NOTE ==> CREATED : 5/27/2003 HEATH ELAINE , UPDATED : 5/27/2003 HEATH ELAINE , LEVEL 2*ICD9 847SP: UNSPECIFIEDESTIMATED RETURN TO WORK DATE: 7/7/03

---

**Incident Id:** 589813409422531
**Completed Date:** 05/27/2003 3:06:01 PM

UNILYNX NOTE ==> CREATED : 5/27/2003 HEATH ELAINE , UPDATED : 5/27/2003 HEATH ELAINE , SENT 1ST REQUEST FOR ER VERIFICATION: -----Original Message-----From: Screening and Creation Team 212 Sent:Tuesday, May 27, 2003 2:06 PMTo:'psigler@templeinland.com'Subject:ET/ER VERIFICATION - CATHY CLEILANDThe purpose of this e-mail is to advise you that we have received notification of a disability claim for the following Temple Inland employee:Employee Name: CATHY CLEILANDDOB: ˙        Date claim received by CIGNA: 5/27/03Last day worked:Earnings: hourly rate of pay or salary?Effective date of coverage: Thank you for your time and prompt attention to this verification.Screening and Creation Unit CIGNA Disability Management Solutions(800) 362-4462, #2

---

**Incident Id:** 589813409422531
**Completed Date:** 05/27/2003 4:31:01 PM

UNILYNX NOTE ==> CREATED : 5/27/2003 HEATH ELAINE , UPDATED : 5/27/2003 HEATH ELAINE , ER VERIFICATION IS AS FOLLOWS:-----Original Message-----From: Cumbie, Peggy (TIFPC) [mailto:PCumbie@templeinland.com] Sent: Tuesday, May 27, 2003 2:14 PMTo: Screening and Creation Team 212Subject: RE: ET/ER VERIFICATION - CATHY CLEILANDPeggy Cumbie-----Original Message-----From:Screening and Creation Team 212[SMTP:ScreeningandCreationTeam@cigna.com]Sent:Tuesday, May 27, 2003 2:06 PMTo:'psigler@templeinland.com'Subject:ET/ER VERIFICATION - CATHY CLEILANDThe purpose of this e-mail is to advise you that we have received notification of a disability claim for the following Temple Inland employee:Employee Name: CATHY CLEILAND DOB:        Date claim received by CIGNA: 5/27/03 Last day worked: 05/13/03Earnings: hourly rate of pay or salary? $51,500Effective date of coverage: 08/24/98 Thank you for your time and prompt attention to this verification. Screening and Creation Unit CIGNA Disability Management Solutions (800) 362-4462, #2

---

**Incident Id:** 589813409422531
**Completed Date:** 06/04/2003 1:23:01 PM

UNILYNX NOTE ==> CREATED : 6/4/2003 LEAHY JENNIFER L, UPDATED : 6/4/2003 LEAHY JENNIFER L, Call to CXLM for CX to cmb to discuss her claim.

---

**Incident Id:** 589813409422531
**Completed Date:** 06/04/2003 1:24:03 PM

UNILYNX NOTE ==> CREATED : 6/4/2003 LEAHY JENNIFER L, UPDATED : 6/4/2003 LEAHY JENNIFER L, Call to APDr. John Hackman(334) 834-1663no answer

LINA/Cleiland 0201

Incident Id: 589813409422531

Completed Date: 06/04/2003 1:28:03 PM

UNILYNX NOTE ==> CREATED : 6/4/2003 LEAHY JENNIFER L, UPDATED : 6/4/2003 LEAHY JENNIFER L, Call to ERPeggy Sigler(251) 575-4876Peggy doesn't have home # for Cathydoesn't know any more than I do about surgery

---

Incident Id: 589813409422531

Completed Date: 06/04/2003 1:30:05 PM

UNILYNX NOTE ==> CREATED : 6/4/2003 LEAHY JENNIFER L, UPDATED : 6/4/2003 LEAHY JENNIFER L, TEMPLE INLAND SALARY CONTINUANCEATP2106/10206PEGGY SIGLER 001/09LEVEL 2 CLAIM W/SURGERY45 Y/O HR MANAGERDOB       DOH 082498EFF 010199LDW 051303DOI 051403BEG 051403RTW EST 070703MAX 111103LTD FLK 020104ENROLLED YESELIGIBILITY VERIFIED PER FEED & EMAIL FROM ERDate of surgery confirmed by ER. Unable to get in touch w/AP or CX.CX had unspecified surgery of L-S spine on 052103. CX indicates OOW 6-7 weeks.As we don't know particulars about surgery type, approve 4 weeks & send CX contact letter to get APS completed w/specifics. Approve thru 061703.

---

Incident Id: 589813409422531

Completed Date: 06/09/2003 12:12:03 PM

UNILYNX NOTE ==> CREATED : 6/9/2003 LEAHY JENNIFER L, UPDATED : 6/9/2003 LEAHY JENNIFER L, Return call to CXCX went to E.R. on 060403has been flat on her back. Having pain in L side, can't get up & down, L leg will not support her body. Stabbing pain. Tried different pain meds & nothing is working unless she takes more than RX calls for.Pain is terrible when foot hits the floor.CX has called into AP, may get Medrol dose pack or may go for another MRI.Pinched nerve L4-L5. Unsure of type of surgery. Partial discectomy or laminectomy, no microsurgery or fusion. Had surgery on 052103.CX indicates AP told her recovery 10-12 weeks.CX to call me when she gets update as to treatment plan.

---

Incident Id: 589813409422531

Completed Date: 06/09/2003 12:50:03 PM

UNILYNX NOTE ==> CREATED : 6/9/2003 LEAHY JENNIFER L, UPDATED : 6/9/2003 LEAHY JENNIFER L, Call to APDr. John Hackman(334) 834-1663L4-L5 lumbar laminectomy 052103NOV 070803.Spoke w/Cathy(334)834-1936 is fax

---

Incident Id: 589813409422531

Completed Date: 06/09/2003 12:57:02 PM

UNILYNX NOTE ==> CREATED : 6/9/2003 LEAHY JENNIFER L, UPDATED : 6/9/2003 LEAHY JENNIFER L, Extension thru 071503L4-L5 laminectomy 052103standard duration 8-10 weeksCX is having comps that include terrible, unrelenting pain that is un-responsive to pain killers.Approve 8 weeks & request f/u from AP.

---

Incident Id: 589813409422531

Completed Date: 06/16/2003 10:21:04 AM

UNILYNX NOTE ==> CREATED : 6/16/2003 LEAHY JENNIFER L, UPDATED : 6/16/2003 LEAHY JENNIFER L, Claim statusCX also has diabetes for 26 weeks.CX remains in terrible pain, 1st thing in morning it is unbearable. Needs to put heating pad on her leg.

---

Incident Id: 589813409422531

Completed Date: 07/16/2003 10:14:02 AM

UNILYNX NOTE ==> CREATED : 7/16/2003 LEAHY JENNIFER L, UPDATED : 7/16/2003 LEAHY JENNIFER L, Extension thru 081203061003 Extension form indicates RTW approx 081303ER called today to advise that CX was having addtl surgery today.extend & f/u for update on this addtl surgery.

---

LINA/Cleiland 0202

**Incident Id:** 589813409422531

**Completed Date:** 08/12/2003 3:01:05 PM

UNILYNX NOTE ==> CREATED : 8/12/2003 LEAHY JENNIFER L, UPDATED : 8/12/2003 LEAHY JENNIFER L, Extension thru 100703f/u for recovery notesCX had a recurrence of pain in her L hip & leg, MRI scan showed a large recurrent disc herniation at L4-5 on the left with extruded fragmentsCX is in recovery from re-exploration laminectomy at L4-5, left on 071603AP indicates RTW 100803 which is approx 10 weeks post-op. Standard guidelines 5-10 weeks recovery for light occ. Due to recurrent issue, it is reasonable that CX would need the 10 weeks recovery. Extend & f/u for recovery

---

**Incident Id:** 589813409422531

**Completed Date:** 09/29/2003 9:30:01 AM

UNILYNX NOTE ==> CREATED : 9/29/2003 LEAHY JENNIFER L, UPDATED : 9/29/2003 LEAHY JENNIFER L, Call to CXLM for X to cmb w/RTW plans

---

**Incident Id:** 589813409422531

**Completed Date:** 09/29/2003 11:23:01 AM

UNILYNX NOTE ==> CREATED : 9/29/2003 LEAHY JENNIFER L, UPDATED : 9/29/2003 LEAHY JENNIFER L, summary of 092903 staffingCX s/p 2 disc surgeries, CX continues w/L4-L5 rediculitisCX has a RTW of 100803, but CM concerned that this may not occur b/c of extreme pain. If no RTW - please get mobility status, see how symptomatic CX is w/sitting which could be a problem.

---

**Incident Id:** 589813409422531

**Completed Date:** 10/02/2003 10:28:02 AM

UNILYNX NOTE ==> CREATED : 10/2/2003 LEAHY JENNIFER L, UPDATED : 10/2/2003 LEAHY JENNIFER L, Call to CXf            iCX is in constant pain, hasn't given form to AP for completionCX is to have more surgery, possible a fusion, or rods.CX is in tremendous amount of pain, can't get out of bed, can't even sit up in her bed. can only walk if she has pain meds.Went for pain management for 1 appt, never made 2nd appt b/c 1 1/2 hour drive from home, couldn't even get out of bed to go.Repeat MRI, disc material is pinching nerve.f/u visit 111703 for consult on surgery w/surgeon at teaching HSPTL UAB.Legs are becoming useless.

---

**Incident Id:** 589813409422531

**Completed Date:** 10/02/2003 10:30:00 AM

UNILYNX NOTE ==> CREATED : 10/2/2003 LEAHY JENNIFER L, UPDATED : 10/2/2003 LEAHY JENNIFER L, Extension thru 111103 maxCX remains OOW in excruitating pain, will have another surgery, f/u w/surgeon 111703. File already in LTD.

---

**Incident Id:** 589813409422531

**Completed Date:** 10/02/2003 10:32:04 AM

UNILYNX NOTE ==> CREATED : 10/2/2003 LEAHY JENNIFER L, UPDATED : 10/2/2003 LEAHY JENNIFER L, Call to APDr. HackmanSpoke w/Brendaconfirms protruding disc that was there before, will fax over LOV notes

---

**Incident Id:** 589813409422531

**Completed Date:** 10/28/2003 7:57:00 AM

UNILYNX NOTE ==> CREATED : 10/28/2003 SCHWARTZKOPF GREGG , UPDATED : 10/28/2003 SCHWARTZKOPF GREGG , OWN OCC IDENTIFICATION: Clmt is Manager, Personnel (DOT 166.117-018). It is classified SEDENTARY, lifting to 10# occasionally and primarily performed seated. It involves frequent reaching/ handling/ fingering. Most Personnel Managers work from a particular location, but some do travel between business locations within a region.

---

**Incident Id:** 589813409422531

**Completed Date:** 10/30/2003 1:57:03 PM

LINA/Cleiland 0203

UNILYNX NOTE ==> CREATED : 10/30/2003 KIRBY KAREN , UPDATED : 10/30/2003 KIRBY KAREN , Cathy Dover at er lm what she sent us re Cathy's job does not include the physical demands. A letter was written for Cathy's drs and do we want a copy of that? Returned call and she will fax over.

---

**Incident Id:** 589813409422531
**Completed Date:** 11/14/2003 11:25:02 AM

UNILYNX NOTE ==> CREATED : 11/14/2003 TAYLOR BRIDGETT , UPDATED : 11/14/2003 TAYLOR BRIDGETT , Call from cx Cx called inquiring about the status of her claim. CM explained that we are waiting for the PAA form from Dr. Hackman. CM explained that we will fax the form to Dr. Hackman again this morning. CM requested that cx contact AP's office to expedite the process, cx agreed. Cx also stated that she mailed the DQ, RA, POA on Tuesday 11/11/03 to Tarrytown. CM explained that all mail is being forwarded to Dallas. Call terminated.

---

**Incident Id:** 589813409422531
**Completed Date:** 11/18/2003 12:18:03 PM

UNILYNX NOTE ==> CREATED : 11/18/2003 TAYLOR BRIDGETT , UPDATED : 11/18/2003 TAYLOR BRIDGETT , Call from cx. Cx left message that Dr. Hackman does not complete the PAA form and would recommend cx do an FCE. However, he feels that in cx's condition, she will not be able to complete an FCE. She is scheduled to have more surgery on 12/9/03. CM called Dr. Hackman's office and spoke with Brenda. She verified that Dr. Hackman will not complete the PAA and would recommend FCE; however, cx is not in any condition to do an FCE. She stated that cx cannot sit or stand for long periods and is having another back surgery soon as cx went to see another neurosurgeon. CM thanked Brenda for the information.

---

**Incident Id:** 589813409422531
**Completed Date:** 11/19/2003 11:40:04 AM

UNILYNX NOTE ==> CREATED : 11/19/2003 TAYLOR BRIDGETT , UPDATED : 11/19/2003 TAYLOR BRIDGETT , Call to cx. CM returned cx's phone call. Left message on voice mailbox to return CM's phone call. Name and phone number provided.

---

**Incident Id:** 589813409422531
**Completed Date:** 11/19/2003 5:05:02 PM

UNILYNX NOTE ==> CREATED : 11/19/2003 TAYLOR BRIDGETT , UPDATED : 11/19/2003 TAYLOR BRIDGETT , Call from cx. Cx returned CM's phone call. Cx stated that she is scheduled to have pins and screws put in her back (she was unsure of procedure) on 12/9/03, by Dr. Mark Hadley at University of Alabama at Birmingham. He is in the department of surgery, division of Neurosurgery. She was referred to Dr. Hadley by Dr. Hackman. Dr. Hadley's phone number is 205.934.7170 or 205.934.1439. The fax number is 205.934.6507 or 205.975.6081. Cx's fiance's number is _____. She can also be reached at that number. CM informed cx that her claim has been approved and that her check will go out in December. CM explained that an approval letter will be mailed detailing the information. CM also informed cx that Dr. Hadley will be contacted to obtain additional information.

---

**Incident Id:** 589813409422531
**Completed Date:** 11/20/2003 10:35:00 AM

UNILYNX NOTE ==> CREATED : 11/20/2003 TAYLOR BRIDGETT , UPDATED : 11/20/2003 TAYLOR BRIDGETT , Call from cx. Cx called inquiring about the Direct Deposit. CM informed cx of the process and informed her that a form will be mailed to her. Cx also provided the type of surgery that she is scheduled to have in December: L4-5 decompression with internal fixation and fusion. CM thanked cx for the information. Call terminated.

---

**Incident Id:** 589813409422531
**Completed Date:** 11/26/2003 10:46:05 AM

UNILYNX NOTE ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 11/26/2003 TAYLOR BRIDGETT , Cx dx with recurrent HNP, L4-5, left. Cx had a lumbar laminectomy on May 21, 2003, with a re-exploration laminectomy of L4-5, left on July 16, 2003. Claim is approved based on medical

LINA/Cleiland 0204

documentation provided. Plan is to f/u with Dr. Mark Hadley for an instrumentation of the back in December of 2003.

---

**Incident Id:** 589813409422531

**Completed Date:** 11/26/2003 10:55:04 AM

UNILYNX NOTE ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 11/26/2003 TAYLOR BRIDGETT , Request for SS status --–-Original Message-----From: Taylor, Bridgette T 212 Sent:Wednesday, November 26, 2003 9:55 AMTo:'Jamie.fonger@advantage2k.com'Subject:Cathy CleilandHello -What is the status of Ms. Cleiland's i         ) Social Security application?Thanks.ABridgette Taylor, MSCase ManagerCIGNA Disability Management SolutionsPhone: 1.800.352.0611 ext.5646Fax: 1.860.731.3041E-mail: Bridgette.Taylor@Cigna.com

---

**Incident Id:** 589813409422531

**Completed Date:** 11/26/2003 12:26:03 PM

UNILYNX NOTE ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 11/26/2003 TAYLOR BRIDGETT , Approval letter Bridgette TaylorCase ManagerAGroup InsuranceALife = Accident = DisabilityNovember 26, 2003Cathy Cleilandt                   Monroeville, AL 36460Claimant:Cathy Cleiland Policy:FLK 020104Policy Name:Temple InlandCompany: Life Insurance Company of North America Dear Ms. Cleiland: Your claim for Long Term Disability (LTD) benefits has been approved. Benefits will begin after the Elimination Period, which ends on November 10, 2003. Your first check in the amount of $2500.00 represents benefits for the time period of November 10, 2003, through December 9, 2003. Your current gross benefit of $2500.00 per month will be issued at monthly intervals at the end of each benefit period. Please refer to the enclosed calculation sheets for further explanation of how your benefit was calculated. The Gross Disability Benefit for an Employee of Employer Mutual Casualty is the lesser of 60% of an Employees monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit.Your LTD benefits may be reduced by any other benefits you (and your dependents, if applicable) receive. Please call us if you are receiving or should become entitled to receive any income from other sources such as: =Social Security Disability or Retirement =Statutory Disability** =VA=Workers Compensation =No-Fault =Employer Pension, etc. =Any other benefit related to your disability **If you work in California, Hawaii, New Jersey, New York, Rhode Island, or Puerto Rico, you should be eligible for disability benefits under Statutory Disability Benefit Plans. We will continue to evaluate your claim, and will request additional information as needed. To continue receiving benefits, you must meet the following:Disability An Employee is Di

---

**Incident Id:** 589813409422531

**Completed Date:** 11/26/2003 12:27:01 PM

UNILYNX NOTE ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 11/26/2003 TAYLOR BRIDGETT , Approval letter cont'd she is earning 80% or less of his or her Indexed Covered Earnings.Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation.Indexed Covered Earnings:For the first 12 months Monthly Benefits, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employees Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:1.10% of the Employees Indexed Covered Earnings during the preceding year of Disability; or2.the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.Termination of Disability Benefits Benefits will end on the earliest of the following dates:1.the date the Employee earns 80% or more of his or her Indexed Covered Earnings2.the date the Insurance Company determines he or she is not Disabled3.the end of the Maximum Benefit Period4.the date the Employee dies5.the date the Employee refuses to participate in rehabilitation efforts as required by the Insurance Company6.the date the Employee is no longer receiving Appropriate CareFederal Income Taxes may be deducted from your Long-Term Disability benefits on an entirely voluntary basis. Should you wish to have all or a portion of your FIT taxes due on your LTD benefits withheld from your Long Term Disability check, you will need to complete a Federal Tax Withholding Form (W-4S), which you may obtain through our office or your local IRS office, and submit it to our office in order for withholding to commence on future checks. The law requires that you designate on the Form W-4S the amount you want withheld and this amou

---

**Incident Id:** 589813409422531

**Completed Date:** 11/26/2003 12:27:03 PM

---

LINA/Cleiland 0205

UNILYNX NOTE ==> CREATED : 11/26/2003 TAYLOR BRIDGETT , UPDATED : 11/26/2003 TAYLOR BRIDGETT , Approval letter cont'd You may cancel or change your deduction amount at any time by completing another Form W-4S.If you have any questions in regard to the contractual definitions listed above, please feel free to contact me. Sincerely, Bridgette Taylor Case Manager

**Incident Id:** 589813409422531
**Completed Date:** 12/01/2003 11:17:05 AM

UNILYNX NOTE ==> CREATED : 12/1/2003 TAYLOR BRIDGETT , UPDATED : 12/1/2003 TAYLOR BRIDGETT , Call from cx. Cx called to inquire about when her first check will be issued. CM informed cx that her check will be released this week. Cx again informed CM of surgery scheduled for 12/9/03. Cx stated that she will be at her mom's house until she gets stitches taken out following her surgery, which will be 7-10 days post-op. Cx's mom's phone number is

**Incident Id:** 589813409422531
**Completed Date:** 12/08/2003 9:22:04 AM

UNILYNX NOTE ==> CREATED : 12/8/2003 TAYLOR BRIDGETT , UPDATED : 12/8/2003 TAYLOR BRIDGETT , Call from cx Cx called to inform CM that her date of surgery has been changed to December 16, 2003, as her physician had a death in the family and had to reschedule. Cx is now at her mom's house and will be there until after her surgery. CM thanked cx for phone call.

**Incident Id:** 589813409422531
**Completed Date:** 03/12/2004 1:25:05 PM

UNILYNX NOTE ==> CREATED : 3/12/2004 GAMEZ DRUSILLA , UPDATED : 3/12/2004 GAMEZ DRUSILLA , -----Original Message-----From: Trudy Wagner [mailto:trudy.wagner@advantage2k.com] Sent: Tuesday, March 09, 2004 2:12 PMTo: drusilla.gamez@cigna.comSubject: Claimant: Cathy Cleiland - Administrative Law Judge Hearing - Policy ID #: FLK 2010403/09/2004 1:59:52 PM SSN: Policy ID #: FLK 20104 Claimant: Cathy Cleiland - Administrative Law Judge Hearing Client: CIGNA Group Insurance - Dallas TX FCO / Drusilla Gamez (800) 352-0611 - drusilla.gamez@cigna.com Drusilla, We received the signed Hearing Request forms back from Ms. Cleiland and are forwarding them to Social Security. Dan Schulte is the Case Manager handling this claim. If you have any questions, you may reach Mr. Schulte at (800)580-5299 ext. 123.Also, please send us any medical information you have for Ms. Cleiland. Thank you, Trudy Wagner Claims Unit Assistant Advantage 2000 Consultants One Corporate Drive Swansea, IL 62226 (800)580-5299 x144 (618)212-1144 Fax: (314)894-4891 trudy.wagner@advantage2k.com

LINA/Cleiland 0206

# Employee

|  |  |
|---|---|
| **SSN:** | |
| **Employee ID:** | |
| **Work Permit Num:** | 0000000000 |
| **Full Name:** | CLEILAND, CATHY K |
| **DOB:** | |
| **Age:** | 43 |
| **Gender:** | FEMALE |
| **Marital:** | MARRIED |
| **Pref Lang:** | ENGLISH |
| **Tax State:** | AL |

|  |  |
|---|---|
| **Address:** | **type:** Residence |
| | **Line1:** |
| | **Line2:** |
| | **City:** JACKSON |
| | **County:** |
| | **State:** AL |
| | **Zip:** 36545 |
| | **Country:** US |

|  |  |
|---|---|
| **Address:** | **type:** Work Location |
| | **Line1:** |
| | **Line2:** |
| | **City:** MONROEVILLE |
| | **County:** MONROE |
| | **State:** AL |
| | **Zip:** 36461 |
| | **Country:** US |

|  |  |
|---|---|
| **Phone Type:** | Residence - Telephone |
| **Number:** | |
| **Ext:** | |
| **Phone Type:** | Office - Telephone |
| **Number:** | |
| **Ext:** | |

LINA/Cleiland 0207

# Email

**Address:**

**Address:**

LINA/Cleiland 0208

## Condition

|  |  |
|---|---|
| **Injury Occurance Description:** | Herniated disc in back, causing pain and discomfort, requiring surgery. |
| **type:** | Illness |
| **ICD9:** | 724 - BACK DISORDER NEC & NOS |
| **Condition Fatal:** | N |
| **Date of Death:** | |

LINA/Cleiland 0209

## Illness

**Work Related Conditon:** N
**First Symptoms Date:** 01/01/1901
**Claiming WC:** N
**Prior Related Injury:** N
**Jurisdiction:** Texas
**Other WC Claim Num:**
**Dispute WC:**
**Why:**
**First Symptoms Location:** Home
**Illness Cause Desc:** Unknown
**Illness Cause:** Illness - Non Occupational
**Other Med Conditions:** N
**Other Med Conditions Desc:**
**Place Of Injury:**

      **where:**
      **Line1:**
      **Line2:**
      **City:** JACKSON
      **State:** AL
      **Zip:** 36545
      **Country:** US

LINA/Cleiland 0210

# Medical

| | |
|---|---|
| **Receiving or Scheduled Treatment:** | Y |
| **Hospitalized:** | Y |
| **Date Admitted:** | 05/02/2001 |
| **Date Discharged:** | 05/03/2001 |
| **Surgery:** | Y |
| **Date Performed:** | 05/02/2001 |
| **Verbal Auth:** | |
| **Restrictions:** | |
| **Restriction Description:** | |
| **Medical Instruction:** | |
| **Providers:** | |

| | |
|---|---|
| **Name:** | |
| **Type:** | Hospital |
| **Med Returns:** | N |
| **Facility Group:** | Jackson Hospital |
| **TIN:** | |
| **Specialty:** | Other |
| **Address:** | Business |
| **Line1:** | 1725 Pine Street |
| **Line2:** | |
| **City:** | MONTGOMERY |
| **County:** | MONTGOMERY |
| **State:** | AL |
| **Zip:** | 36106 |
| **Country:** | US |
| **Phone:** | Office - Telephone 334.293.8000 |
| **Name:** | John Hackman |
| **Type:** | Specialist |
| **Med Returns:** | N |
| **Facility Group:** | |
| **TIN:** | |
| **Specialty:** | Surgery, Neurological |
| **Address:** | Business |
| **Line1:** | 1722 Pine Street |
| **Line2:** | Suite 1001 |
| **City:** | MONTGOMERY |
| **County:** | MONTGOMERY |
| **State:** | AL |
| **Zip:** | 36106 |
| **Country:** | US |
| **Phone:** | Office - Telephone 334.834.1663 |
| **Phone:** | Office - Fax Machine 334.834.1936 |

LINA/Cleiland 0211

**Treatment Notes:**
   **Treatment Date** 01/01/1901
      **Description:**
**Treatment Notes:**

LINA/Cleiland 0212

# Employer

|  |  |
|---|---|
| name: | TEMPLE INLAND |
| Company Num: | 000000552 |
| Eligibility Loc ID Num: | 6045 |
| Eligibility Client Loc Code: | 10206 |
| Location ID Num: | 000006045 |
| Client Location Code: | 10206 |
| Location: | |

|  |  |
|---|---|
| name: | BLDG. PRODUCTS - MONROEVILLE 10206 |
| Line1: | P.O. BOX 966 |
| Line2: | |
| City: | MONROEVILLE |
| County: | MONROE |
| State: | AL |
| Zip: | 36461 |
| Country: | US |

LINA/Cleiland 0213

## Employer Contacts

**Name:** EUGENE JONES
**Type:** Unknown
**Address:**
    **Address Type:** Business
    **Line1:** P.O. BOX 1551
    **Line2:**
    **City:** ROME
    **County:** FLOYD
    **State:** GA
    **Zip:** 30162
    **Country:** US

**Phone:**
    **Phone:** 706.236.5529
    **Phone Type:** Office - Telephone

LINA/Cleiland 0214

# Employer Contacts

**Name:** MANAGER JOE PRIDGEN

**Type:** Reported To

**Phone:**

          **Phone:** 334.575.4876

      **Phone Type:** Office - Telephone

LINA/Cleiland 0215

**Policy**

LINA/Cleiland 0216

**Eligibility Enrollment**

LINA/Cleiland 0217

## Initial Caller

|  |  |
|---|---|
| **RecDate:** | 05/08/2001 |
| **RecTime:** | 03:52:52 PM |
| **Source:** | Inbound Call |
| **Caller Name:** | CATHY K CLEILAND |
| **Phone:** |  |
| **Role:** | Employee |
| **Call Reason:** | Intake |

LINA/Cleiland 0218

## Employment

|  |  |
|---|---|
| **Hire:** | 08/24/1998 |
| **Emp Status:** | ACTIVE |
| **Effective Date:** | 08/24/1998 |
| **Union Indicator:** | N |
| **Union Local:** | |
| **Union Name:** | |
| **Organization Code:** | FP |
| **Organization Name:** | FOREST PRODUCTS |
| **Employer Name:** | TEMPLE INLAND |
| **Present Position Start Date:** | 08/24/1998 |
| **Nature of Business:** | Manufacturing |
| **Department Name:** | Human Resources |
| **Job Title:** | Human Resources Manager |
| **Occupation Class:** | Officials and Managers |
| **Description of Job Duties:** | Manage Human Reources |

LINA/Cleiland 0219

# Wages

| | |
|---|---|
| Full Time: | Y |
| Amount: | 48,500.00 |
| Earnings Mode: | ANNUAL |
| Bonus: | N |
| Date: | 08/01/1998 |
| Salary Mode: | ANNUAL |
| Compensation List Types: | List Type: Salary |

Other Income:

Work Schedule:

| | |
|---|---|
| Shift: | Day |
| Start Time: | 07:30:00 AM |
| End Time: | 04:30:00 PM |
| Mon: | x |
| Tue: | x |
| Wed: | x |
| Thu: | x |
| Fri: | x |
| Sat: | |
| Sun: | |
| Total Hours: | 40 |

LINA/Cleiland 0220

# EXHIBIT 1 TO
# EXHIBIT A
# Part 5

Page 15 of 21

## Return To Work

| | |
|---|---|
| **Lost Time Ind:** | Y |
| **Last Date Worked:** | 04/30/2001 |
| **LDW Paid In Full:** | Y |
| **Returned To Work:** | N |
| **Exp Return Date:** | |
| **Hrs Wkd Last Day:** | 8 |
| **Work Prevention Explanation:** | Recovering from surgery |

**Lost Time Period:**

| | |
|---|---|
| **First Day Off:** | 05/01/2001 |
| **RTW Date:** | |
| **Duty Type:** | |
| **Job:** | |
| **RTW Hours Week:** | 0 |
| **RTW Notes:** | |

## Notes

**Notes:** RADAVI05/08/2001 I changed work address. RTW aprox 6 weeks.

**Notes:** RADAVI05/08/2001 EE is Salary. EE is the HR contact. No policy # on JQ.

LINA/Cleiland 0222

# ER Confirmation

|  |  |
|---|---|
| **Line1:** | |
| **Line2:** | |
| **City:** | MONROEVILLE |
| **County:** | MONROE |
| **State:** | AL |
| **Zip:** | 36461 |
| **Country:** | US |
| **Department Name:** | Human Resources |
| **Job Title:** | Human Resources Manager |
| **Occupation Classification:** | Officials and Managers |
| **Description of Job Duties:** | Manage Human Reources |
| **Union Indicator:** | N |
| **Union Number:** | |
| **Date of Hire:** | 08/24/1998 |
| **Date of Last Earnings Change:** | |
| **Last Day Worked:** | 04/30/2001 |
| **Hrs Wkd Last Day:** | 8 |
| **Expected RTW Date:** | |
| **Full Time:** | Y |
| **Earnings Mode:** | 48,500.00 |
| **Payment Mode:** | ANNUAL |
| **Compensation Type:** | Salary |
| **First Day Off:** | 05/01/2001 |
| **Coverage Type:** | STD |
| **Policy Number:** | |
| **Policy Effective Date:** | |
| **Premium Paid Thru Date:** | |
| **Contribution PCT:** | 0 |
| **Contribution Method:** | Pre Tax |

LINA/Cleiland 0223

## Other Contacts

LINA/Cleiland 0224

## Diary Entries

**Incident Id:** 578593343514414
**Completed Date:** 05/10/2001

UNILYNX DIARY ==> CREATED : 5/9/2001 GARRISON ARTHUR R, UPDATED : 7/3/2001 MERRILL BRIAN J, ASSIGNED : 5/9/2001 MERRILL BRIAN J, REGISTER TO SRO.*CLAIM WAS SUCCESSFULLY REGISTERED IN UNILYNX TO SRO. PLEASE VERIFY INFO.

---

**Incident Id:** 578593343514414
**Completed Date:** 05/10/2001

UNILYNX DIARY ==> CREATED : 5/10/2001 ANDREW CASSANDRA , UPDATED : 5/10/2001 ANDREW CASSANDRA , ASSIGNED : 5/10/2001 MERRILL BRIAN J, THE FOLLOWING REGISTRATION REQUEST FAILED DUE TO:E814-PLEASE KEY ICD9 AS 4 POSITIONS

---

**Incident Id:** 578593343514414
**Completed Date:** 05/10/2001

UNILYNX DIARY ==> CREATED : 5/8/2001 DAVIS ROBERT , UPDATED : 5/10/2001 ANDREW CASSANDRA , ASSIGNED : 5/8/2001 TARRYTOWN STD , READY FOR ASSIGNMENT

---

**Incident Id:** 578593343514414
**Completed Date:** 05/14/2001

UNILYNX DIARY ==> CREATED : 5/10/2001 ANDREW CASSANDRA , UPDATED : 5/14/2001 MERRILL BRIAN J, ASSIGNED : 5/10/2001 MERRILL BRIAN J, DISCUSS FILE W/LTD CASE MANAGER

---

**Incident Id:** 578593343514414
**Completed Date:** 05/29/2001

UNILYNX DIARY ==> CREATED : 5/24/2001 HILL CELESTE , UPDATED : 5/29/2001 MERRILL BRIAN J, ASSIGNED : 5/24/2001 MERRILL BRIAN J, CLAIM FORM AND SIGNED AUTH

---

**Incident Id:** 578593343514414
**Completed Date:** 06/06/2001

UNILYNX DIARY ==> CREATED : 5/29/2001 MERRILL BRIAN J, UPDATED : 6/6/2001 MERRILL BRIAN J, ASSIGNED : 5/30/2001 MERRILL BRIAN J, Flup to see if the claimant is rec WC from prior injury

---

**Incident Id:** 578593343514414
**Completed Date:** 06/06/2001

UNILYNX DIARY ==> CREATED : 5/15/2001 MERRILL BRIAN J, UPDATED : 6/6/2001 MERRILL BRIAN J, ASSIGNED : 6/15/2001 MERRILL BRIAN J, Flup for medical. Call AP for the EE Tx plan and comps

---

LINA/Cleiland 0225

## Notes Entries

**Incident Id:** 578593343514414

**Completed Date:** 05/08/2001 4:00:04 PM

UNILYNX NOTE ==> CREATED : 5/8/2001 DAVIS ROBERT , UPDATED : 5/8/2001 DAVIS ROBERT , I changed work address. RTW aprox 6 weeks.

---

**Incident Id:** 578593343514414

**Completed Date:** 05/08/2001 4:05:03 PM

UNILYNX NOTE ==> CREATED : 5/8/2001 DAVIS ROBERT , UPDATED : 5/8/2001 DAVIS ROBERT , EE is Salary. EE is the HR contact. No policy # on JQ.

---

**Incident Id:** 578593343514414

**Completed Date:** 05/11/2001 11:23:00 AM

UNILYNX NOTE ==> CREATED : 5/11/2001 LAMPLEY MARIA , UPDATED : 5/11/2001 LAMPLEY MARIA , MADE INITIAL CALL TO CX TO VERIFY INFO SUBMITTED IN CLAIM SUMMARY. CX WAS AVAILABLE & ALL INFO WAS VERIFIED. ER CONTACT IS SUPERVISOR J. PRIDGEN. EUGENE JONES WORKS @ A DIFFERENT PLANT.

---

**Incident Id:** 578593343514414

**Completed Date:** 05/15/2001 8:02:00 AM

UNILYNX NOTE ==> CREATED : 5/15/2001 MERRILL BRIAN J, UPDATED : 5/15/2001 MERRILL BRIAN J, CASE PLANAGE: 43SEX: Female DX: Herniated disc Surgery: Y (type and date not indicated) Hospitalized:Occupation: Human Resource ManagerDOH: 8/24/98 LDW: 4/30/01 Incur date: 5/1/01Benefits begin date: 5/1/01Bens paid from and Thru:RTW date:Elim: 0/0 Max date: 26 weeks Wkly earnings: Sal contin based on yearsWkly Benefit:Claim Synopsis: EE is a 43 yr old female Human Resource Manager for Temple Inland. EE LDW was 4/30/01. EE indicated the first day off work was 5/1/01. EE stated the AP Dx the EE with a herniated disc that is requiring Sx.Action:Call the AP for medical confirmation.

---

**Incident Id:** 578593343514414

**Completed Date:** 05/15/2001 12:55:05 PM

UNILYNX NOTE ==> CREATED : 5/15/2001 MERRILL BRIAN J, UPDATED : 5/15/2001 MERRILL BRIAN J, Called AP:John HackmanSpoke to BrendaEE had Sx on 5/2/01. Interioir disckectomy and interbody fusoin C-6-7 with bone graft at the illiac crest.Fax attention:334-834-1936

---

**Incident Id:** 578593343514414

**Completed Date:** 05/15/2001 2:33:03 PM

UNILYNX NOTE ==> CREATED : 5/15/2001 MERRILL BRIAN J, UPDATED : 5/15/2001 MERRILL BRIAN J, Decision:EE is a 43 yr old female Human Resource Manager for Temple Inland. Dis for the EE will be 5/1/01. EE had Sx on 5/2/01. Sx for the claimant was a EE had Sx on 5/2/01. Interioir disckectomy and interbody fusoin C-6-7 with bone graft at the illiac crest. Based on the Sx and comps, bens for the claimant will be approved thru 6/17/01.

---

**Incident Id:** 578593343514414

**Completed Date:** 05/29/2001 7:34:02 AM

UNILYNX NOTE ==> CREATED : 5/29/2001 MERRILL BRIAN J, UPDATED : 5/29/2001 MERRILL BRIAN J, Rec the Proof of Loss form:Rec the P of L and the form indicated the claimant injury is WR but with a different ER. EE does indicate that she is not rec any other bens. Will flup with the ER to see if the ER is rec WC from the prior injury.Action:Call EE on 5/30/01 to see if the EE is collecting WC from prior injury

---

**Incident Id:** 578593343514414

LINA/Cleland 0226

**Completed Date:** 06/06/2001 11:51:02 AM

UNILYNX NOTE ==> CREATED : 6/6/2001 MERRILL BRIAN J, UPDATED : 6/6/2001 MERRILL BRIAN J, Called EE:Called EE to see if the claimant is rec WC from her prior company. Called the EE and left message for the EE to call me back. Left name, number and extension for the EE to call me back. Action:Set flup for 6/7/01 to call EE

---

**Incident Id:** 578593343514414
**Completed Date:** 06/06/2001 12:01:00 PM

UNILYNX NOTE ==> CREATED : 6/6/2001 MERRILL BRIAN J, UPDATED : 6/6/2001 MERRILL BRIAN J, Called ER: Peggy SiglerCalled the ER. ER indicated the claimant can be reached at a certain number. The claimant is at her mother's. Mother's #                 .Called the EE at her mother's:Called the EE mother's house and the mother advised the claimant was not there. Advised the mother to have the claimant call me.Called AP: Hackmanneed to speak to brenda. will call back.Called AP back:Spoke to Brenda

---

**Incident Id:** 578593343514414
**Completed Date:** 06/13/2001 9:14:01 AM

UNILYNX NOTE ==> CREATED : 6/13/2001 MERRILL BRIAN J, UPDATED : 6/13/2001 MERRILL BRIAN J, Round Table: 10:45

---

**Incident Id:** 578593343514414
**Completed Date:** 06/18/2001 11:58:04 AM

UNILYNX NOTE ==> CREATED : 6/18/2001 MERRILL BRIAN J, UPDATED : 6/18/2001 MERRILL BRIAN J, Called ER: Peggy SiglerCalled the ER and left message for the ER to call me back . Advised I need to know if the claimant is collecting the WC.

---

**Incident Id:** 578593343514414
**Completed Date:** 06/18/2001 11:59:05 AM

UNILYNX NOTE ==> CREATED : 6/18/2001 MERRILL BRIAN J, UPDATED : 6/18/2001 MERRILL BRIAN J, Called EE:Called the EE and left the EE a message advising the EE to call me back. Called the EE to advise her bens are going to be denied b/c the it's indicated the claim is WR.

---

**Incident Id:** 578593343514414
**Completed Date:** 07/03/2001 10:57:03 AM

UNILYNX NOTE ==> CREATED : 7/3/2001 MERRILL BRIAN J, UPDATED : 7/3/2001 MERRILL BRIAN J, Called ER Peggy Sigler:Called and advised the ER that the claimant bens are going to be denied b/c the EE indicated the claim as being WR. ER understood.

---

**Incident Id:** 578593343514414
**Completed Date:** 07/03/2001 11:06:04 AM

UNILYNX NOTE ==> CREATED : 7/3/2001 MERRILL BRIAN J, UPDATED : 7/3/2001 MERRILL BRIAN J, Decision:Based on the calls and the PofL from the claimant, the claimant is indicating the dis is the result of a WR incident with her prior ER. Since the claimant indicated the claim is work-related, based on policy, benefits for the claimant will be denied.Action:Sending the denial letter

---

LINA/Cleiland 0227



FILE NO. **D063**

DATE CLOSED

DISTRUCTION
DATE

| MONTH | YEAR |

DATE RECEIVED

DATE ENCLOSED





TEMPLE INLAND
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
CLEILAND, CATHY - VOL 2

FLK 20104

LINA/Cleiland 0228



2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAI

May 3, 2007

Ms. Karol Johnson
Senior Appeal Specialist
CIGNA Group Insurance
12225 Greenville Avenue, Suite 1000
Dallas, TX  75243-9337

Re:                          **Cathy Cleiland**
Plan/Policy Holder:          **TEMPLE INLAND CORPORATE SERVICES**

Dear Ms. Johnson:

I am in receipt of your April 24, 2007 correspondence. Attached hereto and bates numbered CLE00221 through CLE00229 is your letter dated April 24, 2007 and all of the documents attached to your letter. I understand that this production along with the previous documents you produced constitutes in their entirety all of the ERISA record in this matter as th record is defined by ERISA and the Department of Labor.

Sincerely,

Thomas O. Sinclair

TOS/me
Enclosures
cc:    Ms. Cathy Cleiland
       Terry G. Key, Esquire

LINA/Cleiland 0229

Karol Johnson
CIGNA Group Insurance
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337

Phone: 800-352-0611 ext. 1249
Fax: 860-731-3211

**CIGNA Group Insur:**
Life · Accident · Disability

MR. THOMAS SINCLAIR, ATTORNEY AT LAW
2100-A SOUTHBRIDGE PARKWAY
SUITE 450
BIRMINGHAM, AL 35209

April 24, 2007

| | |
|---|---|
| Name: | CATHY CLEILAND |
| Incident Number: | 613165 |
| Plan/Policy Number: | FLK0020104 |
| Plan/Policy Holder: | TEMPLE INLAND CORPORATE SERVICES |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. SINCLAIR,

Pursuant to your request enclosed is a copy of the information added to your client's claim file since the correspondence dated November 13, 2006.

Please contact our office at 800-352-0611 ext. 1249 should you have any questions.

Sincerely,

Karol Johnson
Senior Appeal Specialist

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

CLE00221





**CAMPBELL WALLER & POER, L.L.C.**   2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

March 29, 2007

Ms. Noemi Landis
Appeals Claim Examiner
CIGNA Group Insurance
D212
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

Re:    Cathy Cleiland

Dear Ms. Landis:

I am in receipt of the final denial of Ms. Cleiland's claim. I regret that the parties could not resolve this matter.

It has been some time since your company's last production of documents. If the company has any additional documents generated during this claim that have not been produced to the claimant, please produce those at this time. You may exclude from your production documents bates numbered CLE00001 through CLE00220, a copy which has been provided to your office.

Sincerely,

Thomas O. Sinclair, Esquire

TOS/me

**CLE00**





CAMPBELL
WALLER &
POER, L.L.C.

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

March 16, 2007

Ms. Noemi Martinez-Landis
Appeal Claim Manager
CIGNA Group Insurance
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

        Re:    Cathy Cleiland

Dear Ms. Martinez-Landis:

        I am in receipt of your February 26, 2007 correspondence. I look forward to working with you on this matter.

        As I understand it, you have now received the file, which was forwarded to you from within your company. Please be aware that our submission on January 18, 2007 completed Ms. Cleiland's submission and, as stated in that correspondence, the time clock began ticking when your firm received that correspondence. As I am sure you are aware, there are certain time periods for a decision to be made with regard to Ms. Cleiland's claim. Assuming that our January 18 correspondence took ten days to arrive at your firm, we will start the clock ticking on January 28, 2007. I will assume that you will want the full 90 days allowed under the rules and, as such, we look forward to your decision no later than April 30, 2007.

        If we don't receive a decision by April 30, we will be left with little choice but to travel under the assumption that the Department of Labor deemed denial provisions have been triggered and we will proceed accordingly.

                                        Sincerely,

                                        Thomas O. Sinclair, Esquire

TOS/me
Enclosures
cc:    Ms. Cathy Cleiland
       Terry Key, Esquire

Noemi Landis
Appeals Claim Examiner

March 15, 2007



**CIGNA Group Insuran**
Life · Accident · Disability

THOMAS SINCLAIR
ATTORNEY AT LAW
2100 A SOUTHBRIDGE PARKWAY
SUITE 450
BIRMINGHAM, AL 35209

Routing d212
12225 Greenville Ave
Suite 1000
Dallas, Texas 75243
Telephone 1-800-352-0611 ext 1249
Facsimile 860-731-3022

Re:  Claimant:            Cathy Cleiland
     Policy Keys:          FLK 20104
     Account Name:         Temple Inland
     Underwriting Co:      Life Insurance Company of North America

Dear Mr. Sinclair:

We have completed our review of client's appeal for Long Term Disability benefits, and we are reaffirming our previous denials of benefits

Temple Inland's Long Term Disability Policy has the following provisions:

**Definition of Disability**
"An Employee is Disabled if, solely because of Injury or Sickness, he or she is earning 80% or less of his or her Indexed Covered Earnings.

Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation.

After Disability Benefits have been payable for 24 months, the Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she is may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn 80% or more of his or her Indexed Covered Earnings."

**Disability Benefits**
"The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician. Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

The Insurance Company will require continued proof of the Employee's Disability, provided at the Employee's expense, for benefits to continue."

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by operating subsidiaries and contracted companies and not by CIGNA Corporation. Operating subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

CLE00224

LINA/Cleiland 0233



March 15, 2007
Page 2

Your client received Long Term Disability benefits under this policy from November 10, 2003 through November 21, 2005. Benefits were denied as the medical evidence on file no longer supported her inability to function at a sedentary capacity for the period of time in question.

All medical evidence on file, including the additional documentation you submitted for the appeal of Ms. Cleilan's claim was taken into consideration prior to rendering our determination.

The following is a brief summary of some of the medical records reviewed for the period of time in question:

- November 10, 2005 note, Dr. Johnson. Diabetes uncontrolled because glycosylated hemoglobin level was 11.8. Blood Pressure 150/78. Lungs, heart and abdomen exams normal. Blood sugar 314.
- December 13, 2005 note, handwritten, Dr. Johnson. Dental work done week ago today, extreme right side face pain with swelling. No exam recorded.
- January 12, 2006 Cervical spine MRI report. No interval change since December 8, 2004. Mild spinal stenosis.
- May 18, 2006 Lumbar spine MRI report. L4-5 posterior spinal fusion. Moderate L3-4 central canal narrowing. L4-5 disc spacer with bulging into L4-5 left neuroforamen with left L4 nerve root compression.
- October 13, 2006 medical opinion form, Dr. Wise. Restricted because of poorly controlled type 2 diabetes with peripheral neuropathy. No specific measured physical limitations are listed. Restrictions include sitting 8 hrs/d and standing of walking 2 hours per day, 10-15 minutes at a time. No lifting/carrying restrictions listed. He did not believe she could work 8 hours per day, 40 hours per week. He believed she was cognitively limited because of medication use, but did not provide any cognitive measurements to support this opinion.
- October 31, 2006 Right shoulder MRI report. Supraspinatus tendinosis without evidence of full thickness tear.

The available medical records on file do not provide documentation of significant measured physical limitations time-concurrent with the denial date to support continuation of work restrictions recommended by treating physicians. Examples of this could include measured range of motion limitations by inclinometry and/or lower extremity significant muscle strength deficits by manual muscle testing.

In reviewing Ms. Cleiland's claim, Life Insurance Company of North America considered her claim file as a whole for purposes of determining her entitlement to benefits. The Policy provides that Life Insurance Company of North America would pay benefits only she was prevented by disability to perform the duties of her sedentary occupation as a Human Resource Manager or any occupation. The documentation on file provided diagnoses, treatment plans, and medication regimes; however, pathology does not necessarily equate to presence of disability.

CLE002



March 15, 2007
Page 3

Based on our review of the records on file, the physical and psychological limitations and restrictions provided by her physicians are not supported as of November of 2005 and forward; therefore, we are reaffirming our previous denial decisions. Consequently, we will consider Ms. Cleiland to have exhausted all administrative remedies with our office and no further appeals will be considered.

Please note that your client has a right to bring legal action regarding her claim under the ERISA section 502(a). The plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact Ms. Cleiland's local United States Department of Labor Office or her State Insurance Regulatory Agency.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your client's insurance booklet, certificate or coverage information available from her employer to determine if she is eligible for additional benefits.

Sincerely,


Noemi Landis



Cleiland, Cathy

Vol appeal 48 yof off work since 05/14/03 due to lumbar spine surgery. Cx continues to claim disability due to back pain. 10/20/05 consult with gastroenterologist, esophagogastroduodenoscopy with balloon dilation and biopsy from 11/15/05, and a letter from Dr. Adam Nortick dated December 19, 2005 indicating Letter from Dr. Nortick cx on Neurontin for tingling and numbness, meds stable, ongoing problems. May have unpredicted exacerbations as well as OV notes from 12/14/05-8/23/03

For vol appeal we received
     Medical opinion form from Dr. Wise 10/13/06 and Dr. Johnson 10/27/06 providing L & Rs of less than sed work.
     Lumbar MIR 5/17/06 bulging disc 4-5 extending on the left with compression of left L4 nerve root.
     Cervical epidural steroid injection 4/7/06, 2/6/06, 8/27/03,
     OV notes from the center for pain indicating tx 10/24/069/18/06, shoulder MRI confirmed successful injection 10/31/06
     Dr. Herrick sworn statement 11/13/06

Plan  Need to clarify if L & Rs are supported by medical evidence on file from 11/22/05 forward.
NLandis ACM

### 3/14/07:

Medical records reviewed include, but are not limited to
  - 11/10/05 note, Dr. Johnson.  Diabetes uncontrolled because glycosylated hemoglobin level was 11.8.  BP 150/78.  Lungs, heart and abdomen exams normal.  Blood sugar 314.
  - 12/13/05 note, handwritten, Dr. J.  Dental work done week ago today, extreme right side face pain with swelling.  No exam recorded.
  - 1/12/06 Cervical spine MRI report.  No interval change since 12/8/04.  Mild spinal stenosis.
  - 5/18/06 Lumbar spine MRI report.  L4-5 posterior spinal fusion.  Moderate L3-4 central canal narrowing.  L4-5 disc spacer with bulging into L4-5 left neuroforamen with Left L4 nerve root compression.
  - 10/13/06 medical opinion form, Dr. Wise.  Restricted because of poorly controlled type 2 diabetes with peripheral neuropathy.  No specific measured physical limitations are listed.  Restrictions include sitting 8 hrs/d and standing of walking 2 hrs/d, 10-15 minutes at a time.  No lifting/carrying restrictions listed.  He did not believe she could work 8 hrs/day, 40 hrs/wk.  He believed she was cognitively limited because of medication use, but did not provide any cognitive measurements to support this opinion.
  - 10/31/06 Right shoulder MRI report.  Supraspinatus tendinosis without evidence of full thickness tear.
See Investigation Results below for assessment.
John Mendez, M.D.

CLE00

LINA/Cleiland 0236

*Medha Bharadwaj, FLMI, ACS*
*CIGNA Group Insurance*
D212
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337

Phone: 800-352-0611 ext. 1249
Fax: 860-731-3211



**CIGNA Group Insu**
Life · Accident · Disability

MR. THOMAS SINCLAIR, ATTORNEY AT LAW
2100-A SOUTHBRIDGE PARKWAY
SUITE 450
BIRMINGHAM, AL 35209

November 13, 2006

| | |
|---|---|
| Name: | CATHY CLEILAND |
| Incident Number: | 613165 |
| Plan/Policy Number: | FLK0020104 |
| Plan/Policy Holder: | TEMPLE INLAND CORPORATE SERVICES |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. SINCLAIR,

In reference to your request for information dated October 27, 2006 concerning Ms. Cleiland's Long Term Disability claim, please note the following:

1.  Copies of any other policies administered: As the Appeals team did not administer the Short Term Disability claim please contact Temple Inland Corporate Services for this information. In reference to the Life Insurance Policy, please contact Temple Inland Corporate Services for this information.
2.  Copies of information provided to SSA by Advantage 2000: Please note that we do not have this information.
3.  Request for claims manual: Please be advised that the information requested is considered to be confidential and proprietary information and is not intended for duplication or distribution. Furthermore, nothing contained in this requested information was solely relied upon in the determination of the above referenced claim.

Please contact our office at 800-352-0611 ext. 1249 should you have any questions.

Sincerely,

Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

CLE00229



Karol Johnson
CIGNA Group Insurance
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337

Phone: 800-352-0611 ext. 1249
Fax: 860-731-3211



**CIGNA Group Insura**
Life · Accident · Disability

MR. THOMAS SINCLAIR, ATTORNEY AT LAW
2100-A SOUTHBRIDGE PARKWAY
SUITE 450
BIRMINGHAM, AL 35209

April 24, 2007

Name:                          CATHY CLEILAND
Incident Number:               613165
Plan/Policy Number:            FLK0020104
Plan/Policy Holder:            TEMPLE INLAND CORPORATE SERVICES
Underwriting Company:          Life Insurance Company of North America

DEAR MR. SINCLAIR,

Pursuant to your request enclosed is a copy of the information added to your client's claim file since the correspondence
dated November 13, 2006.

Please contact our office at 800-352-0611 ext. 1249 should you have any questions.

Sincerely,

Karol Johnson
Senior Appeal Specialist

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation.  Products and services are provided by these
subsidiaries and not by CIGNA Corporation.  These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General
Life Insurance Company.

A copy of this file was made by Jose E Nieves, Administrative Assistant.

_____
Signature

_____
Date

The copy was mailed out by Karol Johnson, ASCM.

_____
Signature

_____
Date

LINA/Cleiland 0239



2190-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

March 29, 2007

Ms. Noemi Landis
Appeals Claim Examiner
CIGNA Group Insurance
D242
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

Re:    Cathy Cleiland

Dear Ms. Landis:

I am in receipt of the final denial of Ms. Cleiland's claim. I regret that the parties could not resolve this matter.

It has been some time since your company's last production of documents. If the company has any additional documents generated during this claim that have not been produced to the claimant, please produce those at this time. You may exclude from your production documents bates numbered CLE00001 through CLE00220, a copy which has been provided to your office.

Sincerely,

Thomas O. Sinclair, Esquire

TOS/me



**CAMPBELL WALLER & POER, L.L.C.**

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

March 16, 2007

Ms. Noemi Martinez-Landis
Appeal Claim Manager
CIGNA Group Insurance
12225 Greenville Avenue, Suite 1000
Dallas, TX  75243-9337

Re:    Cathy Cleiland

Dear Ms. Martinez-Landis:

I am in receipt of your February 26, 2007 correspondence.  I look forward to working with you on this matter.

As I understand it, you have now received the file, which was forwarded to you from within your company.  Please be aware that our submission on January 18, 2007 completed Ms. Cleiland's submission and, as stated in that correspondence, the time clock began ticking when your firm received that correspondence.  As I am sure you are aware, there are certain time periods for a decision to be made with regard to Ms. Cleiland's claim.  Assuming that our January 18 correspondence took ten days to arrive at your firm, we will start the clock ticking on January 28, 2007.  I will assume that you will want the full 90 days allowed under the rules and, as such, we look forward to your decision no later than April 30, 2007.

If we don't receive a decision by April 30, we will be left with little choice but to travel under the assumption that the Department of Labor deemed denial provisions have been triggered and we will proceed accordingly.

Sincerely,

Thomas O. Sinclair, Esquire

TOS/me
Enclosures
cc:    Ms. Cathy Cleiland
       Terry Key, Esquire

Noemi Landis
Appeals Claim Examiner

March 15, 2007



**CIGNA Group Insuran**
Life · Accident · Disability

THOMAS SINCLAIR
ATTORNEY AT LAW
2100 A SOUTHBRIDGE PARKWAY
SUITE 450
BIRMINGHAM, AL 35209

Routing d212
12225 Greenville Ave
Suite 1000
Dallas, Texas 75243
Telephone 1-800-352-0611 ext 1249
Facsimile 860-731-3022

Re:     Claimant:           Cathy Cleiland
        Policy Keys:        FLK 20104
        Account Name:       Temple Inland
        Underwriting Co:    Life Insurance Company of North America

Dear Mr. Sinclair:

We have completed our review of client's appeal for Long Term Disability benefits, and we are reaffirming our previous denials of benefits

Temple Inland's Long Term Disability Policy has the following provisions:

Definition of Disability
"An Employee is Disabled if, solely because of Injury or Sickness, he or she is earning 80% or less of his or her Indexed Covered Earnings.

Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation.

After Disability Benefits have been payable for 24 months, the Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she is may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn 80% or more of his or her Indexed Covered Earnings."

Disability Benefits
"The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician. Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

The Insurance Company will require continued proof of the Employee's Disability, provided at the Employee's expense, for benefits to continue."

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by operating subsidiaries and contracted companies and not by CIGNA Corporation. Operating subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.



March 15, 2007
Page 2

Your client received Long Term Disability benefits under this policy from November 10, 2003 through November 21, 2005. Benefits were denied as the medical evidence on file no longer supported her inability to function at a sedentary capacity for the period of time in question.

All medical evidence on file, including the additional documentation you submitted for the appeal of Ms. Cleilan's claim was taken into consideration prior to rendering our determination.

The following is a brief summary of some of the medical records reviewed for the period of time in question:

- November 10, 2005 note, Dr. Johnson. Diabetes uncontrolled because glycosylated hemoglobin level was 11.8. Blood Pressure 150/78. Lungs, heart and abdomen exams normal. Blood sugar 314.
- December 13, 2005 note, handwritten, Dr. Johnson. Dental work done week ago today, extreme right side face pain with swelling. No exam recorded.
- January 12, 2006 Cervical spine MRI report. No interval change since December 8, 2004. Mild spinal stenosis.
- May 18, 2006 Lumbar spine MRI report. L4-5 posterior spinal fusion. Moderate L3-4 central canal narrowing. L4-5 disc spacer with bulging into L4-5 left neuroforamen with left L4 nerve root compression.
- October 13, 2006 medical opinion form, Dr. Wise. Restricted because of poorly controlled type 2 diabetes with peripheral neuropathy. No specific measured physical limitations are listed. Restrictions include sitting 8 hrs/d and standing of walking 2 hours per day, 10-15 minutes at a time. No lifting/carrying restrictions listed. He did not believe she could work 8 hours per day, 40 hours per week. He believed she was cognitively limited because of medication use, but did not provide any cognitive measurements to support this opinion.
- October 31, 2006 Right shoulder MRI report. Supraspinatus tendinosis without evidence of full thickness tear.

The available medical records on file do not provide documentation of significant measured physical limitations time-concurrent with the denial date to support continuation of work restrictions recommended by treating physicians. Examples of this could include measured range of motion limitations by inclinometry and/or lower extremity significant muscle strength deficits by manual muscle testing.

In reviewing Ms. Cleiland's claim, Life Insurance Company of North America considered her claim file as a whole for purposes of determining her entitlement to benefits. The Policy provides that Life Insurance Company of North America would pay benefits only she was prevented by disability to perform the duties of her sedentary occupation as a Human Resource Manager or any occupation. The documentation on file provided diagnoses, treatment plans, and medication regimes; however, pathology does not necessarily equate to presence of disability.

LINA/Cleiland 0243

March 15, 2007
Page 3

Based on our review of the records on file, the physical and psychological limitations and restrictions provided by her physicians are not supported as of November of 2005 and forward; therefore, we are reaffirming our previous denial decisions. Consequently, we will consider Ms. Cleiland to have exhausted all administrative remedies with our office and no further appeals will be considered.

Please note that your client has a right to bring legal action regarding her claim under the ERISA section 502(a). The plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact Ms. Cleiland's local United States Department of Labor Office or her State Insurance Regulatory Agency.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your client's insurance booklet, certificate or coverage information available from her employer to determine if she is eligible for additional benefits.

Sincerely,


Noemi Landis

Cleiland, Cathy

Vol appeal 48 yof off work since 05/14/03 due to lumbar spine surgery. Cx continues to claim disability due to back pain. 10/20/05 consult with gastroenterologist, esophagogastroduodenoscopy with balloon dilation and biopsy from 11/15/05, and a letter from Dr. Adam Nortick dated December 19, 2005 indicating Letter from Dr. Nortick cx on Neurontin for tingling and numbness, meds stable, ongoing problems. May have unpredicted exacerbations as well as OV notes from 12/14/05-8/23/03

For vol appeal we received
    Medical opinion form from Dr. Wise 10/13/06 and Dr. Johnson 10/27/06 providing L & Rs of less than sed work.
    Lumbar MIR 5/17/06 bulging disc 4-5 extending on the left with compression of left L4 nerve root.
    Cervical epidural steroid injection 4/7/06, 2/6/06, 8/27/03,
    OV notes from the center for pain indicating tx 10/24/069/18/06, shoulder MRI confirmed successful injection 10/31/06
    Dr. Herrick sworn statement 11/13/06

Plan  Need to clarify if L & Rs are supported by medical evidence on file from 11/22/05 forward.
NLandis ACM

### 3/14/07:

Medical records reviewed include, but are not limited to
- 11/10/05 note, Dr. Johnson.  Diabetes uncontrolled because glycosylated hemoglobin level was 11.8.  BP 150/78.  Lungs, heart and abdomen exams normal.  Blood sugar 314.
- 12/13/05 note, handwritten, Dr. J.  Dental work done week ago today, extreme right side face pain with swelling.  No exam recorded.
- 1/12/06 Cervical spine MRI report.  No interval change since 12/8/04.  Mild spinal stenosis.
- 5/18/06 Lumbar spine MRI report.  L4-5 posterior spinal fusion.  Moderate L3-4 central canal narrowing.  L4-5 disc spacer with bulging into L4-5 left neuroforamen with Left L4 nerve root compression.
- 10/13/06 medical opinion form, Dr. Wise.  Restricted because of poorly controlled type 2 diabetes with peripheral neuropathy.  No specific measured physical limitations are listed.  Restrictions include sitting 8 hrs/d and standing of walking 2 hrs/d, 10-15 minutes at a time.  No lifting/carrying restrictions listed.  He did not believe she could work 8 hrs/day, 40 hrs/wk.  He believed she was cognitively limited because of medication use, but did not provide any cognitive measurements to support this opinion.
- 10/31/06 Right shoulder MRI report.  Supraspinatus tendinosis without evidence of full thickness tear.
See Investigation Results below for assessment.
Iohn Mendez. M.D.



Re: Cleiland, Cathy
Page 2 of 2

**ASSESSMENT, 3/14/2007 11:07 AM**
Based on the additional provide medical records, the original assessment remains unchanged because there is still no documentation of significant measured physical limitations time-concurrent with the denial date to support continuation of work restrictions recommended by treating physicians. Examples of this could include measured range of motion limitations by inclinometry and/or lower extremity significant muscle strength deficits by manual muscle testing.
**John Mendez, M.D**

*Confidential, unpublished property of CIGNA. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2007 CIGNA*

LINA/Cleiland 0246



**CAMPBELL WALLER & POER, L.L.C.**

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR

October 27, 2006

Ms. Karol Johnson
Senior Appeal Specialist
CIGNA Group Insurance
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

RECEIVED
OCT 30 2006
CIGNA - DALLAS

**Re:**                      **Cathy Cleiland**
**Plan/Policy Holder:**      **TEMPLE INLAND CORPORATE SERVICES**

Dear Ms. Johnson:

I am in receipt of your October 23, 2006 correspondence providing a copy of the long term disability claim file for Ms. Cleiland. I need the following information in addition to what you have produced:

1. Copies of any other policies administered. Please be advised that this claim is not limited to simply the long term disability or the short term disability policies provided through Temple Inland Corporate Services. I understand there to be life insurance policies, which may in fact include life premium waivers, and as such those claims need to be processed as well.

2. I need copies of the information provided to the Social Security Administration by your agent Advantage 2000. I understand they collected substantial medical records in an effort to assist you in off-setting the amount of liability under the terms of the policy. Given the vast amount of correspondence back and forth between your offices and Advantage 2000, it appears to me that Advantage 2000 does a lot of work for you folks and it would seem more than reasonable that you would want to get hold of the medical records that your agent used to assist Ms. Cleiland in obtaining Social Security disability benefits.

3. I need a copy of the claims manual in order to assist me in assessing the manner in which this claim is be administered under the terms of the policy and the manner in which any parties may be exercising any specifically assigned discretion under the terms of the policy.

I look forward to receiving your production in the near future.

Sincerely yours,

Thomas O. Sinclair

TOS/me
Enclosures
cc:    Ms. Cathy Cleiland
       Terry G. Key, Esquire

Cleiland, Cathy
Incident # - 613165
Appeals Claims Manager - Medha Bharadwaj

**FILE REVIEW.**
DATE STAFFED - 3/2/06
CLAIM TYPE - LTD
CLAIM STATUS - Any Occupation
EMPLOYER - Temple Inland
OCCUPATION - Human Resource Manager
WORK DEMANDS - Sedentary
DIAGNOSIS - Back pain, dysphagia, diabetes, dyspepsia
INCUR DATE - 5/14/03
AGE - 48

CLAIM SYNOPSIS - OW since 05/14/03 due to lumbar spine surgery 5/21/03 & 7/16/03. Cx continues to claim disability due to back pain. Was seeing Pain management. Paid through 11/21/05. Then denied because L&Rs did not support preclusion from working any occupation. Previous occupation is sedentary. New information on appeal from 10/20/05 consult with gastroenterologist, notes from her primary care PCP, EGD with balloon dilation & biopsy from 11/15/05, & letter from Dr. Adam Nortick of 12/19/05. Need complete medical review. Back surgery 5/14/03. Denied 11/21/05 due to lack of support. New info from pain management, Internist, & GI.

REFERRAL QUESTION - Does the medical support severity of any condition that would preclude Cx from performing in a sedentary capacity from 11/21/05 through present?
PHYSICIAN'S STATEMENT OF PHYSICAL FUNCTIONAL CAPACITY - see review located in chart.
CLAIMANT'S STATEMENT OF PHYSICAL ACTIVITY - see review located in chart.
LAST CLINICAL NOTE RELEVANT TO MAIN PHYSICAL DIAGNOSIS - see review located in chart.
BRIEF SUMMARY OF RELEVANT MEDICAL INFORMATION PRIOR TO LAST NOTE - see review located in chart.
PERTINENT LAB, DIAGNOSTICS & REFERRALS - see review located in chart.
PEER CONTACT ATTEMPT(S) - No provider contact made.

**MATERIALS REVIEWED** - CIGNA file (records reviewed include but are not limited to those found on typed report). Typed report located in claimant's chart.
• Operative Report, Dr John Hackman (neurosurgery), 5/21/03 - Left L4-5 laminectomy.
• Progress Notes, Dr Hackman, 7/14/03 - initially did well then recurrence of hip & leg pain. Also weakness. Admitted to hospital through ER for re-evaluation & pain control. Positive SLR on left. Absent ankle reflex. Weakness toe extension. Dx: recurrent radiculitis L4-5 on left.
• Operative Report, Dr Hackman, 7/16/03 - Re-exploration laminectomy Left L4-5.
• MRI w & w/o contrast, 8/11/03 - large amount of enhancing epidural scar tissue. Small non-enhancing area of low signal intensity near left neural foramen L4-5. Does not abut nerve roots. Could be disc fragment. Severe DDD L4-5.
• Progress Notes, Dr Hackman, 8/28/03 - MRI of 8/11/03 reviewed. Had injection by Dr Herrick yesterday. Trouble w/ left leg. Diminished left knee reflex but no foot drop. Negative SLR.
• MRI w &w/o contrast, 9/18/03 - Severe DDD L4-5. Probable retained disc fragment midline to left at L4-5. Enhancing scar tissue. Slight indentation of left L4 nerve root and left L5 root is encased by scar. Disc fragment more prominent since last MRI.
• Progress Notes, Dr Hackman, 9/18/03 - increasing problems. Radiation down right leg. Re-exploration offered due to changed MRI of today. Refer to Dr Hadley at UAB.
• Daily Activity Questionnaire, 11/12/03 - cannot sit or stand for any period. Spend most of time on back. Difficulty getting up & down to go to BR. Doing minimal activities.
• Letter, Dr Mark Hadley (Neurosurgery), 11/17/03 - has developed lumbar spinal instability w/ recurrent nerve root compression. Surgery needed.
• Operative Report, Dr Hadley, 12/16/03 - L4-5 laminectomy & diskectomy w/ L4-5 internal fixation & fusion.



EXHIBIT
13

CLE00159

LINA/Cleiland 0249

- Progress Notes, Dr Hadley 1/14/04 – no heel walk but can toe walk. No changes done today.
- Medical Request Form, Dr Hadley, 2/24/04 – Neurontin & Lortabs. Cannot assess ability to RTW presently. Does not do FCEs. LOV 2/11/04.
- Daily Activity Questionnaire, 6/28/04 – have excruciating back pain. Requires narcotics & pain management. Medications cause me to not think properly. Drives when she does not take pain meds. Lists no activities. Mom & dad help w/ ADLs. Do not go for walks.
- Progress Notes, Dr Adam Nortick (Pain Management), 3/2/05 – takes Methadone, Effexor, Klonopin. Reports spasms in legs. Not active. Reports falling down. Pain 8/10. Pain in R UEs, left leg, back. Exam unremarkable. DX: Cervical DDD w/ radiculitis, Lumbar DDD w/ radiculitis, IDDM. Continue Neurontin 3200 mg/day. Also Effexor & Klonopin. Increase Methadone. RTC one month.
- Daily Activity Questionnaire, 6/28/05 – have constant back pain. Requires narcotics & pain management regularly. Medications affect my memory. Drives when juggles pain meds. Lists no activities. Do not go for walks anymore due to pain.
- Progress Notes, Dr Steve Harris (ENT & allergy), 8/26/05 – has had lumbar & neck surgeries. Reports burning in base of throat. Exam shows significant laryngopharyngeal irritation. Has not responded to Protonix so need EGD evaluation.
- Consultation, Dr Robert Albares (Gastroenterologist), 10/20/05 – hoarseness & dyspepsia X6 months. Also dysphagia with solid foods. Physical exam unremarkable. Mental status shows affect congruent. Memory intact. Change to Nexium. Needs EGD w/ possible dilatation.
- Lab report, 10/20/05 – glucose 394. Hgb A1C 11.8.
- Progress Notes, Dr Brett Johnson (Family Physician), 11/10/05 – IDDM uncontrolled. Increase Insulin. Refer to endocrine w/ Dr Wise.
- Operative Report, Dr Robert Albares (GI), 11/15/05 – EGD w/ balloon dilatation & biopsy.
- Progress Notes, Dr Johnson, 12/13/05 – recent dental surgery. Blood sugar log erratic. Some in 300s & 400s. Low as 50. Dx: Markedly uncontrolled diabetes. Increase insulin.
- Lab report, 12/13/05 – glucose 366. Hgb A1C 11.3. Alkaline Phosphatase 141.
- Letter, Dr Adam Nortick (Pain Management), 12/19/05 – Has been on stable medications over months. She has on-going problems. Some days are worse than others. She still has symptoms & requires medications.

**ASSESSMENT/CONCLUSION:** A careful review of the file was conducted. Claimant has chronic history of back pain and underwent several lumbar surgeries. Since that time she has been on chronic narcotic pain medications & high-dose neuroleptics drugs. She was paid through 11/21/05. Since that time her diabetes has been under poor control. She underwent esophageal dilatation in mid-November 2005. Her chronic pain appears to be stable & no changes in treatment have occurred. I do not believe, however, that the documents provide sufficient documentation to establish that severity of condition warrants L&Rs or that clinically measurable evidence exists to support deficits which require L&Rs given by the attending physician. In absence of such documentation, I do not believe the documentation supports deficits which require L&Rs which preclude performing sedentary activity during the period 11/21/05 through the present.

Scott C. Taylor, DO
CIGNA Medical Director
Date Completed: 3/7/06

## MEDICAL OPINION FORM

RE:  Cathy Cleiland                    SSN: _____            DOB: _____

Dear Dr. Wise:

Please provide your opinion to a reasonable degree of medical certainty, based on current treatment, of the above referenced patient's abilities and limitations.

1.  Please state the diagnosis of the problem that causes your patient's limitations and restrictions, as well as the objective, clinical, or other specific findings that support your diagnosis and opinion: _Poorly controlled type 2_ _diabetes with peripheral neuropathy._
_____
_____
_____
_____

2.  In an 8 hour workday, 5 days a week, on a full time basis, the patient can be expected to be physically capable of the following activities:

Sit: _____8_____ hrs out of 8 hrs a day _____ hrs/min at one time

Stand or walk: ___2___ hrs out of 8 hrs a day _10-15_ hrs/min at one time

3.  Patient can lift/carry:

|  | Never | Infrequently (very few times a day) | Occasionally (1/3 of workday) | Frequently (2/3 of workday) |
|---|---|---|---|---|
| 1-5 pounds |  |  |  |  |
| 1-10 pounds |  |  |  |  |
| 11-20 pounds |  |  |  |  |
| 21-25 pounds |  |  |  |  |
| 50 pounds or greater |  |  |  |  |

4.  Does the patient require bedrest during a normal workday? Yes _____ No __✓__

If yes, for approximately how many hours? _____

EXHIBIT
14

CLE00135

LINA/Cleiland 0251

5. Does the patient have problems with stamina and endurance which would require him/her to rest more than the one 30-minute break and two 15-minute breaks normally allowed?

      Yes _____     No _____   If yes, how much rest? _____ hours/minutes for every _____ hrs/minutes of work

6. Do the patient's subjective complaints seem reasonable in view of your observations and diagnoses?   Yes __✓__     No _____

7. Could the patient be reasonably expected to be reliable in attending an eight hour a day, 40 hour work week in view of the degree of pain, fatigue or other limitations he/she experiences?

      Yes _____     No __✓__

8. How severe is the pain reasonably suffered by the patient?

Extreme _____ Severe _____ Moderately Severe __✓__ Moderate _____ Mild _____

9. Is it reasonable that the patient's pain, medical condition, or medication would cause lapses in concentration or memory on a regular basis to the extent that your patient could not attend to a task or be reliable in following work instructions?

      Yes __✓__     No _____

      If yes, how often would his/her condition reasonably causes such lapses in concentration or memory?

      _____ several hours 3 or more days a week

      __✓__ daily for several hours a day

      _____ other: _____

10. Are there environmental restrictions reasonably caused by the patient's condition (i.e. avoid heat, humidity, heights, dust etc.)?

_____

2

11. Does the patient have a reasonable medical need to be absent from a full time work schedule on a chronic basis? (**Chronic being, more than 4 absences during any month's period attributable to any one medical condition or related conditions, including absences for required medical treatment including appointments, diagnostic testing, treatment etc.**)

Yes ____✓____    No _____

Please estimate to the best of your ability and expertise how many absences could be reasonably medically expected in any month. ___5-6___

10/13/06
Date

_Steven J. Wise_
Doctor's Signature

_Steven D. Wise, MD._
Doctor's printed name

3

**CLE0013**

## MEDICAL OPINION FORM

RE: Cathy Cleiland                SSN: _____        DOB: _____

Dear Dr. Johnson:

Please provide your opinion to a reasonable degree of medical certainty, based on current treatment, of the above referenced patient's abilities and limitations.

1. Please state the diagnosis of the problem that causes your patient's limitations and restrictions, as well as the objective, clinical, or other specific findings that support your diagnosis and opinion: _____

   _1) Cervical spine HNP x 3 ± C4-C7_
   _inter body fusion_
   _2) Herniated disc (HNP) L4-5_
   _inner body fusion L5-1_
   _Chronic neck / LBP 2° 1 4° 1 3 2_

2. In an 8 hour workday, 5 days a week, on a full time basis, the patient can be expected to be physically capable of the following activities:

   Sit: _<1hr. 6 a time_ hrs out of 8 hrs a day _____ hrs/min at one time

   Stand or walk: _<1hr. 6 a time_ hrs out of 8 hrs a day _____ hrs/min at one time

3. Patient can lift/carry:

| | Never | Infrequently (very few times a day) | Occasionally (1/3 of workday) | Frequently (2/3 of workday) |
|---|---|---|---|---|
| 1-5 pounds | | | | X |
| 1-10 pounds | | | X | |
| 11-20 pounds | | X | | |
| 21-25 pounds | X | | | |
| 50 pounds or greater | X | | | |

4. Does the patient require bedrest during a normal workday? Yes _X_  No _____

   If yes, for approximately how many hours? _6-7_

EXHIBIT
15

1

CLE00138

LINA/Cleiland 0254

5. Does the patient have problems with stamina and endurance which would require him/her to rest more than the one 30-minute break and two 15-minute breaks normally allowed?

Yes __X__   No _____ If yes, how much rest? __40__ hours/minutes for every __1__ hrs/minutes of work

6. Do the patient's subjective complaints seem reasonable in view of your observations and diagnoses?  Yes __X__   No _____

7. Could the patient be reasonably expected to be reliable in attending an eight hour a day, 40 hour work week in view of the degree of pain, fatigue or other limitations he/she experiences?

Yes _____   No __X__

8. How severe is the pain reasonably suffered by the patient? _med'l pain_

Extreme _____ Severe _____ Moderately Severe __X__ Moderate _____ Mild _____

9. Is it reasonable that the patient's pain, medical condition, or medication would cause lapses in concentration or memory on a regular basis to the extent that your patient could not attend to a task or be reliable in following work instructions?

Yes __X__   No _____

If yes, how often would his/her condition reasonably causes such lapses in concentration or memory?

_____ several hours 3 or more days a week

__X__ daily for several hours a day

_____ other: _____

10. Are there environmental restrictions reasonably caused by the patient's condition (i.e. avoid heat, humidity, heights, dust etc.)?

_____

2

CLE00139

LINA/Cleiland 0255

11. Does the patient have a reasonable medical need to be absent from a full time work schedule on a chronic basis? (**Chronic being,** more than 4 absences during any month's period attributable to any one medical condition or related conditions, including absences for required medical treatment including appointments, diagnostic testing, treatment etc.)

Yes    ☒    No _____

Please estimate to the best of your ability and expertise how many absences could be reasonably medically expected in any month. _prob > 2-9/wk_

___10/27/.1___
Date

_[Doctor's signature]_
Doctor's Signature

_Bret M. Johns_
Doctor's printed name

3

*Medha Bharadwaj, FLMI, ACS*
*CIGNA Group Insurance*
D212
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337

Phone: 800-352-0611 ext. 1249
Fax: 860-731-3211



**CIGNA Group Insur**
Life · Accident · Disability

MR. THOMAS SINCLAIR, ATTORNEY AT LAW
2100-A SOUTHBRIDGE PARKWAY
SUITE 450
BIRMINGHAM, AL 35209

November 13, 2006

Name:                        CATHY CLEILAND
Incident Number:             613165
Plan/Policy Number:          FLK0020104
Plan/Policy Holder:          TEMPLE INLAND CORPORATE SERVICES
Underwriting Company:        Life Insurance Company of North America

DEAR MR. SINCLAIR,

In reference to your request for information dated October 27, 2006 concerning Ms. Cleiland's Long Term Disability claim, please note the following:

1.  Copies of any other policies administered: As the Appeals team did not administer the Short Term Disability claim please contact Temple Inland Corporate Services for this information. In reference to the Life Insurance Policy, please contact Temple Inland Corporate Services for this information.
2.  Copies of information provided to SSA by Advantage 2000: Please note that we do not have this information.
3.  Request for claims manual: Please be advised that the information requested is considered to be confidential and proprietary information and is not intended for duplication or distribution. Furthermore, nothing contained in this requested information was solely relied upon in the determination of the above referenced claim.

Please contact our office at 800-352-0611 ext. 1249 should you have any questions.

Sincerely,

Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

December 7, 2005



**CIGNA** Group Insurance
Life · Accident · Disability

CATHY CLEILAND

CLIO, AL 36017

Routing 212
12225 Greenville Ave
Suite 1000
Dallas, TX 75243
Telephone 800.352.0611, Ext. 1294
Facsimile 860.731.3413
Kelli.Archacki@cigna.com

Re:  Name          :   Cathy Cleiland
     Policy #       :   FLK 20104 (LTD)
     Account Name   :   Temple Inland
     Underwriting by :  Life Insurance Company or North America

Dear Ms. Cleiland:

We are writing to you regarding your claim for benefits under the above captioned policy. We have reviewed your claim for Long Term Disability (LTD) benefits and are ready to render a decision.  Based on the information we have on file to date, we have determined that you do not meet the above policy's Definition of Disability.  Accordingly, no additional LTD benefits are payable under the FLK 20104 policy.

To ensure a mutual understanding of the LTD Policy language, we would like to review the following information with you:

**Definition of Disability**

"An Employee is Disabled if, solely because of Injury or Sickness, he or she is earning 80% or less of his or her Indexed Covered Earnings.

Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation.

After Disability Benefits have been payable for 24 months, the Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she is may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn 80% or more of his or her Indexed Covered Earnings."

**Disability Benefits**

"The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy.  A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician.  Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

**EXHIBIT
10**

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

CLE00150

LINA/Cleiland 0258

The Insurance Company will require continued proof of the Employee's Disability, provided at the Employee's expense, for benefits to continue."

We recently completed a review of your information. Specifically, this included:
- Disability Questionnaire received from you dated 6/28/05;
- Telephone call from the Center for Pain of Montgomery dated 8/23/05;
- Telephone call to you dated 8/23/05;
- Office visit notes from the Center for Pain of Montgomery dated 3/02/05 through 9/19/05;
- Telephone call from you regarding updated providers;
- Office visit note from Dr. Steven Harris dated 8/26/05; and
- Request for office visit notes from Dr. Brett Johnson.

A review of the medical information indicates that you were initially off work due to Lumbar Spine Surgery. We received the Disability Questionnaire that you completed dated 6/28/05. You listed as your treating providers the Center for Pain of Montgomery in Montgomery, Alabama.

We requested medical information from the Center for Pain of Montgomery. On 8/16/05 we received a telephone call from Kitty of their office. She stated that they are not disabling you and requested that we obtain the information that we have requested from your other treating physicians.

We telephoned you on 8/23/05 to find out who your treating physicians are and which physician is disabling you. You stated that you are only being seen by the Center for Pain of Montgomery and they are disabling you. We advised you of our conversation with Kitty from the Pain Center and told you that we would request the medical records from them. You stated that you had a primary care physician for six years but he is two hours away and you have not seen him in a year due to your moving.

We received the office visit notes from the Center for Pain of Montgomery. The Progress Note dated 03/02/05 states that you have lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain and diabetes. You have been on Methadone 5 mg up to five pills a day. Effexor, and Klonopin. You stated that you have been having some stomach problems. You have not had to go to the hospital for any IV fluids. You have been having some muscle spasms in your legs. You are not very active and your sugars have been running higher than usual. You have fallen down some steps and once the trunk of your car fell on your back when you were leaning over the trunk. You described your pain as an 8 that day. Upon examination you have no respiratory difficulties noted, no hemodynamic instability noted, no acute hot joints, and no acute localizing weakness. The note dated 6/21/05 states that you have Diabetes Mellitus, your medications are effective, and your current pain is rated as a 9. The plan was to refill the current medications. The note dated 8/17/05 states that you have Diabetes Mellitus, your medications are effective, and your current pain is rated as an 8. Your pain condition is stable and the plan was to refill the current medications. The note dated 9/19/05 states that you have Diabetes Mellitus, your

CLE00151

LINA/Cleiland 0259

medications are effective, and your current pain is rated as a 9. Your pain condition is stable and the plan was to refill the current medications.

We received a telephone call from you stating that you have been seen by a new primary care physician one time a month ago, Dr. Brett Johnson. You also saw an ENT one time a month ago, Dr. Steve Harris. You are being referred for a sleep study but have not set it up yet.

We received the office visit note from Dr. Steve Harris dated 8/26/05. In the office visit note you state that for about two months you have had some burning in the base of your throat. It is a little worse left than right, intermittent hoarseness, some pain deep in the left ear area. Your regular physician felt that you had a left ear infection and placed you on some Amoxil. You are being seen for evaluation of throat, ear, and intermittent hoarseness. Upon examination your voice quality sounds good but you state that it is an intermittent thing. There is considerable irritation at the cricopharyngeus area and in the back of the arytenoids area bilaterally though worse on the left. It is not really enough to cause an ulceration but looks like some significant laryngopharyngeal reflux irritation. It was recommended that they set up a GI medicine evaluation

We requested medical records from Dr. Brett Johnson's office on 10/20/05 and 10/27/05. We contacted Alicia at Dr. Brett Johnson's office on 11/02/05 and we were advised to refax it to a different fax number. It was refaxed on 11/02/05 and we received no information.

<u>Summary</u>

In reviewing your claim, Life Insurance Company of North America considered your claim file as a whole for purposes of determining your entitlement to benefits. The Agreement provides that Life Insurance Company of North America would administer benefits only if you were prevented by Disability as defined above.

Based on the documentation provided by the Pain Center of Montgomery and Dr. Harris, the limitations and restrictions are not supported as evidenced by no current complaints of any radiating pain, numbness or tingling, no current diagnostic testing, your medication usage has been stable for several months, and no current lab values to determine the status of your glucose. The information does not support that you are incapable of performing your occupation. As a result, you do not meet the definition of total disability from any occupation as of November 21, 2005. Therefore, no additional long term disability benefits are payable.

<u>Appeal</u>

If you disagree with our determination and intend to appeal this claim decision, you must submit a written appeal. This appeal should be received by us within 180 days of receipt of this letter and should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.

CLE00152

You have the right to submit written comments as well as any new documentation you wish us to consider. If you have additional information, it should also be sent for further review to the address noted on this letterhead, within 180 days of receipt of this letter.

We would be happy to consider any medical evidence which supports your total disability. Medical evidence includes, but is not limited to: physician's office notes, hospital records, consultation reports, test result reports, therapy notes, physical and/or mental limitations (i.e. Functional Capacities Testing), etc. These medical records should cover the period of disability through the present. You may also wish to have your physician(s) provide some or all following information:

- Height_____ Weight_____
- Diagnosis(es)
- Please send copies of any recent tests performed (in the last six months)
- Last several dates of treatment / current treatment plan
- Is the patient compliant with the prescribed treatment plan? If no, please explain.
- Has or will your patient receive treatment from any other physician or provider for this condition? If so, please provide the name, specialty, address and phone number, if known.
- Current medications, dosage, and response.
- If surgery has been performed or will be performed, please indicate procedure, date and any complications.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter. A final decision will be made no later than 90 days.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your insurance booklet, certificate or coverage information available from your employer to determine if you are eligible for additional benefits.

Please contact our office at 800-352.0611 should you have any questions.

Sincerely,


Kelli Archacki
Claim Manager

You have the right to submit written comments as well as any new documentation you wish us to consider. If you have additional information, it should also be sent for further review to the address noted on this letterhead, within 180 days of receipt of this letter.

We would be happy to consider any medical evidence which supports your total disability. Medical evidence includes, but is not limited to: physician's office notes, hospital records, consultation reports, test result reports, therapy notes, physical and/or mental limitations (i.e. Functional Capacities Testing), etc. These medical records should cover the period of disability through the present. You may also wish to have your physician(s) provide some or all following information:

- Height_____ Weight_____
- Diagnosis(es)
- Please send copies of any recent tests performed (in the last six months)
- Last several dates of treatment / current treatment plan / future treatment plan
- Is the patient compliant with the prescribed treatment plan?
- Has or will your patient receive treatment from any other physician or provider for this condition? If so, please provide the name, specialty, address and phone number, if known.
- Current medications, dosage, and response.
- If surgery has been performed or will be performed, please indicate procedure, date and any complications.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter. A final decision will be made no later than 90 days.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your insurance booklet, certificate or coverage information available from your employer to determine if you are eligible for additional benefits.

Please contact our office at 800-352.0611 should you have any questions.

Sincerely,

Kelli Archacki
Claim Manager

CLE00154

LINA/Cleiland 0262

**CLE00155**

LINA/Cleiland 0263

| | | | | |
|---|---|---|---|---|
| Name | CATHY CLEILAND | | SSN | DOB |
| Account Name | TEMPLE INLAND CORPORATE SERVIC | | Account # FLK0020104 | Incurred Date     05/14/2003 |
| Claim Manager Kelli Archacki | | | Incident #  613165 | Claim Eff Dt-Status  08/28/2006 - Closed |

**Title**     F/U updated medical

**Comment/Instruction**

Kitty from Dr. Harrick and Nordick's office called and stated that they have not disabled her, referring to other AP's.
334.288.7808

| | | | | |
|---|---|---|---|---|
| Last Changed User | Kelli Archacki | | Last Changed Date | 08/23/2005 02:07 PM |
| Status:     Completed | | Assigned To: | Kelli Archacki     Created: | 08/17/2005 05:03 PM |




EXHIBIT

LINA/Cleiland 0264

| Name | CATHY CLEILAND | | SSN | | DOB | |
|------|----------------|---|-----|---|-----|---|
| Account Name | TEMPLE INLAND CORPORATE SERVIC | | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | | Incident # | 613165 | Claim Eff Dt-Status | 08/28/2006 - Closed |

## Contact Information

**Title**  Request for medical

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ First Phone Call | Result | | Date | | User | |
| ☐ Second Phone Call | Result | | Date | | User | |
| ☐ Generate Letter/Fax | | | Date | | User | |
| ☐ Burden of Proof Letter Sent | | | Date | | User | |
| ☑ Incoming Call | | | Date | 08/23/2005 01:05 PM | User | Kelli Archacki |
| ☐ Mail Received | | | Date | | User | |

Contact Comments:
received call 8/16/05

## Interview Documentation

| Provider First Name | CENTER FOR PAIN | Provider Last Name | | Provider Specialty | |
|---|---|---|---|---|---|
| Contact First Name | KITTY | Contact Last Name | | Contact Role | |

Primary ICD Code
Comments

Kitty from Dr. Harrick and Nordick's office called and stated that they have not disabled her. referring to other AP's.
334.288.7808

Secondary ICD Code     Secondary ICD Description
Comments

ICD Code 3     ICD Code 3 Description
Comments

ICD Code 4     ICD Code 4 Description
Comments

ICD Code 5     ICD Code 5 Description
Comments

## Objective Findings

☐ Physical Exam Findings
☐ Test Results
☐ Provider Observations
Comments

## Treatment Information

| Medication (1) | Dosage (1) | Frequency (1) |
|---|---|---|
| Medication (2) | Dosage (2) | Frequency (2) |
| Medication (3) | Dosage (3) | Frequency (3) |
| Medication (4) | Dosage (4) | Frequency (4) |
| Medication (5) | Dosage (5) | Frequency (5) |

Current Treatment Plan/Provider's Estimated RTW date

**CLE00157**

LINA/Cleiland 0265

**Strategy**

3/2/05 lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain, Diabetes, on Methadone 5 mg up to 5 pills/day, Effexor, Klonopin, nausea w/Methadone, muscle spasms legs, not very active, sugars running higher than usual, has fallen down some steps just miscalculated last step, trunk of car fell on back leaning over into trunk, just minor life traumas, more areas marked off in the pain chart than not, pain R upper extremity, L leg, back, life not in total turmoil past few visits, no acute hot joints, no acute localizing weakness, refill Neurontin 800 mg 1 x day, Robaxin 750 mg 3 x day, Phenergan 25 to 1 3 x day, Effexor 75 XR 1 qhs, Protonix 40 mg daily, Klonopin 1 mg qhs, switch to Methadone 10 mg to 1 3 x/day.

8/17/05 cervical degenerative disc disease, cervical stenosis, on Methadone & Neurontin, pain 8, f/u 1 month, fell home, remainder of report largely illegible.

9/17/05 cervical degenerative disc disease, cervical stenosis, on Methadone & Neurontin, pain 9, f/u 1 month, remainder of report largely illegible.

Rx Neurontin 800 mg 1 x day, Robaxin 750 mg 3 x day, Phenergan 25 to 1 3 x day, Effexor 75 XR 1 qhs, Protonix 40 mg daily, Klonopin 1 mg qhs, switch to Methadone 10 mg to 1 3 x/day

Treating once a month w/pain physician.

Functionality DQ drives 50 miles, uses walker times, uses computer once every 2 weeks, watches TV

PAA None noted.

RTW plans Indicates unknown if will RTW.

48 y/o w/hx multiple lumbar surgeries including fusion, cervical surgery, and Diabetes. Based on medical data submitted, R&Ls are not supported as evidenced by no current complaints of any radiating pain, numbness or tingling, no current EMG/NCV testing, medication usage stable for several months, and no current lab values to determine status of glucose. AP's state that they are not disabling her. The information does not support that she is unable to perform a sedentary position which is her previous occupation. Proceeding with closure of claim.

| Last Changed User | Kelli Archacki | | Last Changed Date | 11/21/2005 05:00 PM |
|---|---|---|---|---|
| **Status:** Completed | | **Assigned To:** Kelli Archacki | **Created:** | 11/21/2005 04:57 PM |



CLE00158



P.O. BOX 8346
MOBILE, ALABAMA 36608

3710 . SUNAN STREET
(334) 344.9030

PHYSICIAN:

CLEILAND, CATHY

FAIRCLOTH

## DISCHARGE SUMMARY

OF ADMISSION: 11/18/97
OF DISCHARGE: 11/19/97

..RY PHYSICIAN:                William B. Faircloth, M.D.

..RRING PHYSICIAN:             M. Andrew Wallace, M.D.

HISTORY OF PRESENT ILLNESS:    Please see previously dictated note for History and Physical Examination.

HOSPITAL COURSE:               The patient was admitted and was taken directly to the operating room where an anterior cervical fusion was performed at C5-6, with a right iliac crest graft. She tolerated the procedure well. She was awakened, extubated, and taken to the recovery room in satisfactory condition. She was then placed in the intensive care unit where she remained overnight. The AP and lateral cervical spine x-rays were obtained prior to discharge which revealed the arthrodesis to be in good position and there was good alignment. She had total resolution of her right arm pain. She was discharged home today to return to see me in my office in three weeks.

ADMISSION DIAGNOSIS:           HERNIATED NUCLEUS PULPOSUS, C5-6, RIGHT.

PRIMARY PROCEDURE:             Anterior cervical fusion, C5-6, with right iliac crest graft.

DISCHARGE MEDICATIONS:         1. Lortab 7.5 one q.4h. as needed for pain.
                               2. NPH insulin 25 units each evening and 15 units of Regular each evening.

DISCHARGE INSTRUCTIONS:        The patient was asked to progressively increase her activity. She was to call my office immediately if she developed a temperature above 102 degrees, erythema, edema, or drainage from her wound. She was to call if she had any problems or questions.

cc: M. Andrew Wallace, M.D.

**EXHIBIT**
**4**

"I authorized my name to be electronically affixed by using my unique dictation computer key."

Dict: 11/18/97 Trans: 11/19/97 brl    WILLIAM B. FAIRCLOTH, M.D.

#SMH 16002

CLE00127

LINA/Cleiland 0267

P.O. BOX 248
MOBILE, ALABAMA 36608

DAUPHIN STREET
(334) 343-9630

Cleiland, Cathy

PHYSICIAN:    William Faircloth, M.D.
(cc: extra copy to Dr. Faircloth)

RRN:  TBA
ACCOUNT NO:
DATE:  11/18/97

## HISTORY & PHYSICAL

REFERRING PHYSICIAN:          TONY WALLACE, M.D.

HISTORY OF PRESENT ILLNESS:
Cleiland is a 40 year old, right handed, white female who was involved work related car accident in April of this year. She was in her Honda while wearing her seat belt, and was at a stop sign. Apparently, another Accord traveling between 45 and 50 miles per hour swerved, missed another car, and hit her left frontal area of her car. She was turned to 50 degrees. She denies loss of consciousness, but it "shook me". She was ambulatory at the scene, was taken to the emergency room.

Xrays of the cervical spine revealed "no break". I have not seen these films. She was given pain medication and muscle relaxers, referred to Dr. Charlie Eddins, who treated her with decreased activity, non-steroidal anti-inflammatories, and she felt improved. She was placed in physical therapy, which would help her while she was there, but six or eight hours later, the pain would recur. She describes numbness in the medial aspect of her right arm. She complains of pain in her right shoulder blade which feels like "raw meat". She has had occipital headaches, and generalized weakness in her right arm. She is most uncomfortable with left lateral rotation of her head which causes right neck pain. She is most comfortable sitting or reclining with her neck supported.

She underwent MRI of her cervical spine, which reveals a right sided disc herniation at C5-6, causing neural impingement.

PAST MEDICAL HISTORY:
SURGERIES:     Significant for removal of right ovary and tube in 1987, and removal of the other fallopian tube in 1984. She thinks that she had an appendectomy during one of those two procedures. She has had two Cesarean sections.

ILLNESSES: MEDICATIONS: She has had diabetes for twenty years, takes insulin 15 units of regular each morning, 25 units of NPH each evening. She takes Flexeril, but felt as though this did not help her.

Continued, page two....

CLE00128

LINA/Cleiland 0268



P.O. BOX 8348
MOBILE, ALABAMA 36608                                            1710 DAUPHIN STREET
                                                                (334) 344-6630

Cleiland, Cathy

PHYSICIAN:    William Faircloth, M. D

PAGE 2...

ALLERGIES:     Darvocet causes her to have nausea and vomiting.

SOCIAL HISTORY:     She is married and has two children.  She is a
                    Personnel manager with Medline.  She does not drink
                    and does not smoke.

FAMILY HISTORY:     Her mother is alive and well at age 70.  Her father
                    is 74, and his healthy.  She has three brothers, ages 36,
                    48, and 50, all of which are healthy.  She has one sister,
                    age 45, who is healthy.

PHYSICAL EXAMINATION:
GENERAL:        She is a well developed, well nourished, middle aged,
                female.
HEENT:          Normocephalic and atraumatic.  Pupils equal, round, regular
                and reactive to light and accommodation.  Sclera non-icteric.
                Conjunctiva pink.  Nares patent.  Nose - septum midline.
                Oropharynx - without inflammation, irritation, or injection.
NECK:           Supple without adenopathy, thyromegaly.  Flexion extension
                of the neck causes midline neck pain.  Left lateral rotation
                causes right neck pain.  Right lateral rotation with
                extension causes a radicular pain.
CHEST:          Symmetrical expansion.
LUNGS:          Clear.
HEART:          Regular rate and rhythm without murmurs, rubs or gallops.
EXTREMITIES:    Peripheral pulses are +2.
ABDOMEN:        Soft. Non-tender. Non-distended. Without hepatosplenomegaly
                or masses. Bowel sounds positive.
NEUROLOGIC:     She is awake, alert, and oriented x 3.  Memory,
                intelligence, judgement and affect are all appropriate and
                within normal limits.  Motor strength was 5/5 throughout.
                Reflexes were diminished throughout.  Sensation was
                diminished in the thumb and index finger right hand, normal
                elsewhere.

IMPRESSION:     Cervical disc herniation C5-6 on the right.

Continued, page three....

#SMH 16002

CLE00129

LINA/Cleiland 0269



P.O. BOX 8348
MOBILE, ALABAMA 36608

3711 DAUPHIN STREET
(334) 344-9630

Cleland, Cathy

PHYSICIAN    William Faircloth, M.D.

PAGE 3...

A/P:

Admit
Anterior cervical discectomy and fusion at C5-6 with iliac crest graft.

I explained the anatomy and pathology of the lesion at length, and findings, in great detail. I explained the risks being infection, hemorrhage (so severe as to require transfusion, therefore the risk of aids and hepatitis), right carotid injury (resulting in right hemispheric stroke and left hemiplegia), vocal cord paralysis (permanent hoarse voice), esophageal damage (requiring second operation to repair this), and spinal cord damage (loss of use of her arms, legs, loss of bowel and/or bladder function). She appeared to understand these risks, and states she wishes to proceed. Therefore, I plan to proceed tomorrow.

"I authorized my name to be electronically affixed by using my unique dictation computer key."

Signature::
D: 11/17/97    T: 11/17/97    mm

William Faircloth, M.D.

ASMH 16002

CLE00130

LINA/Cleland 0270



P.O. BOX 8246
MOBILE, ALABAMA 36608

DAUPHIN STREET
(334) 344-9630

CLEILAND, CATHY

PHYSICIAN    William Faircloth, M.D

XRN;    RM
ACCT NO;
ADM DATE;

## OPERATIVE SUMMARY

SURGERY DATE:    11/18/97

SURGEON:    William Faircloth, M.D.

PREOPERATIVE DIAGNOSIS:    Herniated nucleus pulposus C5-6, right.

POSTOPERATIVE DIAGNOSIS:    Same.

PROCEDURE;    1.    Anterior cervical fusion C5-6.
             2.    Anterior cervical diskectomy.
             3.    Right iliac crest graft.

ASSISTANT;    Dr. R. L. White

INSTRUMENT NURSE;    Mr. David Redd
CIRCULATING NURSE:    Ms. Candy Cabiness, RN

ANESTHESIA;    General endotracheal.

ANESTHESIOLOGIST;    Dr. Buddendorf
ANESTHETIST;    Ms. Paula Green

COMPLICATIONS;    None.

ESTIMATED BLOOD LOSS; 300 cc.

BRIEF HISTORY;    Mrs. Cleiland is a 40 year old right handed white female who was involved in a motor vehicle accident and has had intractable neck and right arm pain.    She has failed to improve with conservative measures.    MRI revealed a large cervical disc herniation at C5-6 on the right.

PROCEDURE;    The patient was brought to OR #9.    After adequate level of anesthesia was obtained, the patient was intubated.    She was given 2 grams of Ancef IV and 12 mg of Decadron.    The right anterior neck and right iliac crest were isolated with 10/10 drapes.    The area was prepped with multiple applications of Betadine scrub and Betadine paint.    The patient was sterilely draped in the routine fashion.

CC; DR. M. WALLACE

CONTINUED....

CLE00131

LINA/Cleiland 0271



P.O. BOX 8248
MOBILE, ALABAMA 36608

19 DAUPHIN STREET
(: 14) 344-9930

CLEILAND, CATHY                    PHYSICIAN    William Faircloth, M.D.

PAGE 2...

A transverse skin incision was created in the skin fold, sharp dissection carried down through subcutaneous tissue to the platysma. The platysma was divided with Metzenbaum scissors. I then created a plain medial to the carotid, lateral to the trachea and posterior to the esophagus. I identified the C5-6 interspace. I divided the anterior longitudinal ligament in the midline and dissected in the subperiosteal plane and placed the Casbar retractors posterior to the anterior colles muscle. I placed distraction pins at C5, C6 using fluoroscopic guidance, distracted the interspace. I opened the annulus with a monopolar cautery. I resected the degenerative disc material. Using Midus-Rex drill, I performed a diskectomy posteriorly to the posterior longitudinal ligament. I opened this ligament with various hooks as well as various Kerrison rongeurs. I removed a large extruded disc fragment on the right. I could easily pass a large blunt nerve hook along the course of the nerve root and it was well decompressed.

I then directed my attention to the right iliac crest region. I opened the skin, and divided the fat down to the iliac crest. I opened the fascia over the iliac crest and after measuring the diskectomy, I obtained a right iliac crest graft using an isolating saw and straight osteotome. I waxed the bone and placed Gelfoam in the cavity. I then fashioned the bone graft and introduced it in the interspace. I returned to the iliac crest incision and there was no bleeding. After awaiting an appropriate period of time, I irrigated the wound with copious amounts of Bacitracin solution and approximated the fascia with a running #0 Vicryl in two layers; and approximated the subcutaneous tissues with running 2-0 Vicryl and skin edges with a running subcuticular 4-0 PDS. I then returned to the cervical incision and removed the two distraction pins and waxed the bone. • I irrigated the wound with copious amounts of Bacitracin solution. After waiting for an appropriate period of time and removing the Casbar retractors, I saw no bleeding and approximated the platysma with a running 4-0 Vicryl and the skin edges with a running subcuticular 4-0 PDS. Benzoin and 1/2 inch steri-strips were applied to both incisions. Instrument, sponge and needle counts were all reported to me as being correct. The patient was awakened, extubated and taken to the Recovery Room in satisfactory condition. She could move her arms and legs well. She had significant improvement in her right arm pain and right arm sensation.
          "I AUTHORIZED MY NAME TO BE ELECTRONICALLY AFFIXED BY USING
          MY UNIQUE DICTATION COMPUTER KEY."

Signature::
D: 11/18/97    T: 11/19/97    dd              William Faircloth, M.D.

#SMH 16002

CLE00132

LINA/Cleiland 0272



CLEILAND, CATHY
1019

PHYSICIAN

Robert White, M.D

NRN:
ACCOUNT NO:
ADM DATE:

## OPERATIVE SUMMARY

SURGERY DATE: 11/18/97

SURGEON: Brent Faircloth, M.D.

ASSISTANT SURGEON:    Robert White, M.D.

PREOPERATIVE DIAGNOSIS:    RUPTURED CERVICAL DISC C5-6

PROCEDURE: ANTERIOR CERVICAL MICRODISKECTOMY WITH AUTOLOGOUS BONE GRAFT

DESCRIPTION:   I was asked by Dr. Faircloth to assist him on the case of Cathy Cleiland.  Cathy underwent anterior cervical microdiskectomy at C5-6 with removal of both osteophyte as well as extruded nucleus polyposis.

At patient's request, right iliac autologous bone graft was taken and placed at the C5-6 interspace.   Surgery was uneventful and excellent decompression was accomplished.

CC:  DR. ROBERT WHITE
     (ATTN) BONNIE

Signature::
D: 11/19/97    T: 11/19/97   1c

Robert White, M.D.

#SMH 10002

CLE00133

LINA/Cleiland 0273

JA_SON HOSPITAL & CLINIC, INC.
1235 Forest Avenue
Montgomery, Alabama 36106

DISCHARGE SUMMARY

PATIENT NAME:    CLEILAND, CATHY
ATTENDING:      JOHN E. HACKMAN, M.D.            MR#:  28-51-42
ADMIT DATE:     5/02/2001                        ACT#: 10361681
DISCHARGE DATE: 5/03/2001                        RM#:

REASON FOR ADMISSION:  This is a 41-year-old white female who has had
a prior anterior cervical fusion at C5-6, but never really recovered.
Recent MRI scan shows C6-7 disc herniation.  She complains about
right-sided neck, arm and shoulder pain with numbness in the right
mid fingers and she has got triceps weakness.  She has failed
conservative treatment and she has got an abnormal MRI and now comes
in for surgery.

HOSPITAL COURSE:  The patient was admitted to the hospital and taken
to surgery where she had an anterior cervical diskectomy and
interbody fusion at C6-7 with a bone graft from the right iliac
crest.  She had immediate improvement, did well and was discharged
home the following day.  She will be followed up in the office.

DISCHARGE DIAGNOSIS
1.  C6-7 disc herniation.

OPERATIVE PROCEDURE THIS ADMISSION
1.  Anterior cervical diskectomy and interbody fusion C6-7 with a
bone graft from the right iliac crest.

STA0503                        JOHN E. HACKMAN, M.D.
D:  5/03/2001
T:  5/03/2001
289692

VIRGINIA BENTON - RELIANCE INSURANCE COMPANY

EXHIBIT
5

1

CLE00056

LINA/Cleiland 0274

KSON HOSPITAL & CLINIC, IN
1235 Forest Avenue
Montgomery, Alabama 36106

HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY K
ATTENDING:      HACKMAN, JOHN E                 MR#:  28-51-4:
ADMIT DATE:        5/02/2001                    ACT#: 103616 8 j
                                                RM#:

CHIEF COMPLAINT:  Neck, arm and shoulder pain.

HISTORY:  This 43-year-old, white female had an injury in an accident.  She was treated by Dr. Faircloth in Mobile.  MRI scan at that time showed large C5-6 disc herniation and a smaller C6-7 protrusion.  She had an anterior cervical fusion at C5-6, but has never really recovered.  C5-6 has healed up nicely.  Because of her persistent complaints, she was referred up to my office by Virginia Benton at Reliance Insurance Company.  I looked at her current studies, which show a significant C6-7 disc herniation.  The patient has complained about neck pain, headaches, right scapular pain, pain down the right arm or numbness in the right mid fingers.  Because of her persistent complaints and because of the positive MRI scan, it is felt that she needs surgery at C6-7.  The risks and benefits were discussed.

PAST MEDICAL HISTORY:  Positive for insulin dependent diabetes.

PRIOR SURGERY:  Two Cesarean sections, tubal ligation, reversal of the tubal ligation, removal of the right tube and ovary, C5-6 cervical fusion, carpal tunnel surgery.

CURRENT MEDICATIONS:  Humulin insulin, Effexor, Klonopin.

ALLERGIES:  NONE REPORTED.

FAMILY HISTORY:  Positive for diabetes.

SOCIAL HISTORY:  She is a nonsmoker.

PHYSICAL EXAMINATION
Physical examination shows a healthy appearing, well-developed, white female.  She is alert and oriented.  Cranial nerves are intact.
She has pain with neck extension and neck rotation.  She has got weakness in the right triceps.

Chest is clear.

1

CLE00057

LINA/Cleiland 0275

# EXHIBIT 1 TO
# EXHIBIT A
## Part 6

JACKSON HOSPITAL & CLINIC, INC.
1235 Forest Avenue
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

PATIENT NAME:   CLELAND, CATHY K
ATTENDING:      HACKMAN,JOHN E
ADMIT DATE:        5/02/2001

MR#:   20-51-42
ACT#:  1036168J
RM#:

Heart regular.

Abdomen soft.

ADMITTING IMPRESSION
1.   C6-7 disc herniation.

5TA0503
D:  5/03/2001
T:  5/03/2001
289690

JOHN E. HACKMAN  M.D.



2

CLE00058

LINA/Cleiland 0276

JACKSON HOSPITAL & CLINIC, INC
1235 Forest Avenue
Montgomery, Alabama 36106

REPORT OF OPERATION

PATIENT NAME:    CLEILAND, CATHY K
ATTENDING:       HACKMAN, JOHN E
SURGEON:         JOHN E. HACKMAN, M.D.

MR#: 28-51-4:
ACT#: 1036168 ]
RM#:
DATE: 5/03/2C

PREOPERATIVE DIAGNOSIS: C6-7 disk herniation.

POSTOPERATIVE DIAGNOSIS: C6-7 disk herniation.

PROCEDURE: Anterior cervical diskectomy and interbody fusion, C6-7, with a bone graft from the right iliac crest.

INDICATIONS: This is a 43-year-old white female. She comes in with intractable neck, arm and shoulder pain on the right side with numbness into her hand. She has had a prior cervical fusion at C5-6 but has not completely recovered. Current magnetic resonance imaging scan shows a C6-7 disk herniation.

DESCRIPTION OF PROCEDURE: The patient was taken to the operating room where she underwent a general endotracheal anesthetic. She was positioned in the supine position with sand bags under the neck and under the right hip. The operative sites were shaved, prepped and draped in a sterile manner. A transverse incision was made in the neck through an old scar. This was carried down through the superficial layers and the platysma. The cervical fascia was opened along the anterior border of the sternocleidomastoid muscle. Blunt dissection took us down to the cervical spine. C6-7 was identified and marked and we took an x-ray to confirm our level. Meanwhile we went to the right iliac crest. A transverse incision was made behind and below the anterior superior iliac spine. This was carried down to the fascia lata which was opened along its fibers. Muscle was stripped off the iliac crest and a 12-mm bone dowel was removed. This wound was closed in multiple layers of Vicryl suture, and we returned to the neck. We had accurately identified C6-7. We made an incision in the disk. We removed the entire disk and the cartilage end-plates. We found the interior of the disk to be completely disrupted. We decompressed the posterolateral corners. We drilled down through the interspace with a 12-mm drill. We controlled bleeding with Gelfoam and Thrombin. We distracted the interspace and inserted a bone graft. We made sure there was no active bleeding. The wound was irrigated. A Hemovac drain was brought out through a separate stab wound, and the wound was closed in multiple layers of Vicryl suture. Blood loss during the procedure was 100 cc. There

1

CLE00059

LINA/Cleiland 0277

JACKSON HOSPITAL & CLINIC, INC.
1235 Forest Avenue
Montgomery, Alabama 36106

REPORT OF OPERATION

PATIENT NAME: CLEILAND, CATHY K
ATTENDING: HACKMAN, JOHN E
SURGEON: JOHN E. HACKMAN, M.D.

MR#: 28-51-42
ACT#: 10361681
RM#:
DATE: 5/03/2001

were no obvious complications. Sterile dressings were applied. The
patient was taken to the recovery room in satisfactory condition.

3LR0504
D:  5/03/2001
T:  5/04/2001
289691

JOHN E. HACKMAN, M.D.

2

CLE00060

LINA/Cleiland 0278

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

DISCHARGE SUMMARY

PATIENT NAME:  CLEILAND, CATHY
ATTENDING:  HACKMAN, JOHN
ADMIT DATE:  6/24/2002
DISCHARGE DATE:  6/25/2002

MR#:  28-51-42
ACT#: 10466104
RM#:

REASON FOR ADMISSION: This 44-year-old white female has had prior cervical fusions at C5-6 and C6-7. She was doing well until a recent motor vehicle accident. Ever since then, she has had pain in the neck going into the shoulder. She has had conservative treatment without improvement. Myelogram/CAT scan was abnormal at C4-5, and she now comes in for surgery.

HOSPITAL COURSE: The patient was admitted to the hospital and taken to surgery where she had an anterior cervical diskectomy and interbody fusion at C4-5 with a bone graft from the right iliac crest. She had immediate improvement, did well and was discharged home the following day. She will be followed up in the office. The wounds looked good, and she was given instructions.

DISCHARGE DIAGNOSIS: Cervical radiculitis, C4-5.

OPERATIVE PROCEDURE THIS ADMISSION: Anterior cervical diskectomy and interbody fusion at C4-5 with a bone graft from the right iliac crest.

JOHN E. HACKMAN, M.D.

3DW0625
D:  6/25/2002
T:  6/25/2002
106116

EXHIBIT
6

000602

1

CLE00037

LINA/Cleiland 0279

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama 36106

HISTORY AND PHYSICAL

PATIENT NAME:    CLEILAND, CATHY                    MR#:   28-51-42
ATTENDING:       HACKMAN, JOHN                      ACT#:  10466104
ADMIT DATE:      6/24/2002                          RM#:   630-1

CHIEF COMPLAINT: Neck and shoulder pain.

HISTORY: This is a 44-year-old white female. She had a prior cervical
fusion at C5-C6 in Mobile. A year ago she had an anterior cervical
fusion at C6-C7 here. She says she was doing well until this spring
when she started having trouble with her neck. She had pain and
numbness going to the right shoulder and right hand. She had an
accident on 05/25/2002, but she says the pain in the neck started
prior to the accident. She feels that things got worse after her
accident. She has been evaluated with myelogram CAT scan that was
abnormal at C4 C5. She now comes in for surgery. The risks and
benefits have been discussed.

The patient also has low back problems, which she attributes to her
motor vehicle accident. She has some protrusion at L4-L5 on the left.
She has also got numbness in her hand. She has had a prior carpal
tunnel performed in Mobile and her EMC studies show recurrent carpal
tunnel problems in the right hand.

PAST MEDICAL HISTORY: Positive for insulin-dependent diabetes.

PRIOR SURGERIES: Includes two cesarean sections, tubal ligation,
reversal of tubal ligation, removal of right tube and ovary, C5-C6
and C6-C7 cervical fusions, carpal tunnel surgery.

CURRENT MEDICATIONS: Humulin insulin, Effexor and Klonopin.

ALLERGIES: None reported.

FAMILY HISTORY: Positive for diabetes.

SOCIAL HISTORY: She is a nonsmoker.

PHYSICAL EXAMINATION: Examination shows a healthy-appearing, well-
developed, white female. She is alert and oriented. Cranial nerves
are intact. She has pain with neck extension and neck rotation. There
is no definite neurologic abnormality.

000603

1

CLE00038

LINA/Cleiland 0280

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama 36106

HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY
ATTENDING:      HACKMAN, JOHN              MR#:  28-51-42
ADMIT DATE:     6/24/2002                  ACT#: 10466104
                                           RM#:  630-1

She does have positive Tinel's sign in the right hand. Chest is
clear. Heart regular. Abdomen soft.

ADMITTING IMPRESSION: Cervical radiculitis C4-C5.

4EJ0624                          JOHN B. HACKMAN, M.D.
D:  6/24/2002
T:  6/24/2002
106030

000604

CLE00039

LINA/Cleiland 0281



# JACKSON HOSPITAL & CLINIC, INC.

### 1725 PINE STREET
### MONTGOMERY, ALABAMA 36106

Name: CLEILAND, CATHY K.
Physician: HACKMAN, JOHN E
MR#: 285142
Order ID: 1056208

X-RAY#: 463643
Result ID: 961967

DOB:
Age: 44 YEARS
Patient Location: 6301
Account#: 10466104
Addendum Number: 0

Clinical Data: ACF
Procedure:  C-SPINE ONE VIEW          Date of Exam: 06/24/2002
Film for localization shows a marker anteriorly at the C4-5 level.   There has been previous
anterior fusion at C5-6 and C6-7.

IMPRESSION:
C4-5 LOCALIZATION.

Dictated by: STANLEY B. WINSLOW, M.D.
Verified by: STANLEY B. WINSLOW, M.D.

Transcriptionist: JAK

000607

**X-RAY REPORT**

CLE00040

LINA/Cleiland 0282



●KSON HOSPITAL & CLINIC, IN●
1725 Pine Street
Montgomery, Alabama 36106

REPORT OF OPERATION

PATIENT NAME:    CLEILAND, CATHY
ATTENDING:       JOHN E. HACKMAN, M.D.
SURGEON:         JOHN E. HACKMAN, M.D.

MR#: 28-51-42
ACT#: 10466104
RM#:
DATE: 6/24/20

PREOPERATIVE DIAGNOSIS: Cervical radiculitis C4-5.

POSTOPERATIVE DIAGNOSIS: Cervical radiculitis C4-5.

OPERATION: Anterior cervical diskectomy with inter body fusion C4-5 with bone grafts on the right iliac crest.

INDICATIONS: This 44-year-old white female comes in with intractable neck and shoulder pain. She has had conservative treatment without improvement. Myelogram CAT scan is abnormal at C4-5. She has had prior cervical fusions at C5-6 and C6-7 in the past.

PROCEDURE: The patient was taken to the operating room where she underwent general endotracheal anesthesia. She was positioned in the supine position with sandbags under the neck and under the right hip. The operative sites were shaved, prepped and draped in the usual sterile fashion. A transverse incision was made in the anterior neck. This was carried down through the superficial layers and the platysma. The cervical fascia was opened along the anterior border of the sternocleidomastoid muscle. Blunt dissection took us down to the cervical spine. The C4-5 was identified and marked and we took an x-ray to confirm our level. Meanwhile we went to the right iliac crest. A transverse incision was made behind and below the anterior superior iliac spine. This was carried down to the fascia lata which was opened along its fibers. Muscle was stripped off the iliac crest and a 12 mm bone dowel was removed. This wound was closed in multiple layers with Vicryl suture and we returned to the neck. We had accurately identified C4-5. We made an incision in the disk. We used pituitary rongeurs and curets and cleaned out the entire disk space. The posterolateral corners were decompressed with the 2 mm punch. Bleeding was controlled with Gelfoam and thrombin. We drilled down through the inner space with the 12 mm drill. We controlled bleeding with Gelfoam and thrombin. We distracted the interspaces and we inserted the bone graft. We made sure there was no active bleeding. The wound was irrigated. The Hemovac drain was brought out through a separate stab wound and the wound was closed in multiple layers with Vicryl suture. The blood loss during the procedure was 100 cc. There were no obvious complications. Sterile

000020

1

ᴋSON HOSPITAL & CLINIC, IN
1725 Pine Street
Montgomery, Alabama 36106

REPORT OF OPERATION

PATIENT NAME:    CLEILAND, CATHY
ATTENDING:       JOHN E. HACKMAN, M.D.          MR#:  28-51-42
SURGEON:         JOHN E. HACKMAN, M.D.          ACT#: 10466104
                                                RM#:
                                                DATE:  6/24/2C

dressings were applied and the patient was taken to the recovery room
in satisfactory condition.

2LV0624
D:  6/24/2002                        JOHN E. HACKMAN, M.D.
T:  6/24/2002
106031

000621

2

CLE00042

LINA/Cleiland 0284

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama 36106

DISCHARGE SUMMARY

PATIENT NAME: CLEILAND, CATHY
ATTENDING:
ADMIT DATE:        5/21/2003
DISCHARGE DATE:    5/22/2003

MR#:   28-51-42
ACT#:  10547947
RM#:

Bytescribe #0522-063

REASON FOR ADMISSION: This 45-year-old, diabetic white female comes in with persistent left hip and leg pain with numbness. This has gotten progressively worse for a year. Magnetic resonance imaging scan shows disc bulging at L4-5 on the left with osteophytes. This protrudes into the foramen. She now comes in for surgery.

HOSPITAL COURSE: The patient was admitted to the hospital and taken to surgery where she had a lumbar laminectomy at L4 5 on the left. She had immediate improvement, did well and was discharged home the following day. The wound looked good, and she was given instructions. She will be followed up in the office.

DISCHARGE DIAGNOSIS: Lumbar radiculitis L4-5 on the left.

OPERATIVE PROCEDURE THIS ADMISSION: Lumbar laminectomy L4-5 on the left.

8DW0522
D:  5/22/2003 08:17
T:  5/22/2003 10:56
143166

JOHN E. HACKMAN, M.D.

000002

EXHIBIT

1

1

CLE00030

LINA/Cleiland 0285

JA   SON HOSPITAL & CLINIC, IN
1725 Pine Street
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY
ATTENDING:
ADMIT DATE:        5/21/2003

MR#:   28-51-4
ACT#:  1054794
RM#:   68-647

Bytescribe #0521-072

**CHIEF COMPLAINT:** Left hip and leg pain with numbness.

**HISTORY OF PRESENT ILLNESS:** This is a 45-year-old diabetic white female. She comes in with problems with left hip and leg pain with numbness in the left lateral thigh. She attributes this to a motor vehicle accident which occurred on April 25, 2002. She has persistent pain in the left hip which has gotten progressively worse She does have a history of a prior accident and was treated at the Mobile Infirmary in February of 2000. They noticed some disc bulging and had a report that she had numbness in the left leg ever since a 1997 accident. She says things became worse after her April 25, 2002, accident. She has had conservative treatment and has not improved. Magnetic resonance imaging scan shows some disc bulging at L4-5 on the left with osteophyte. This protrudes into the foramen. She now comes in for lumbar laminectomy. The surgery risks and benefits have been discussed.

**PAST MEDICAL HISTORY:** Positive for insulin-dependent diabetes mellitus. She is noncompliant. When she went for her preoperative visit she had a very high blood sugar, which was 497 and then repeated at 541. This morning she has taken insulin, and her blood sugar is now down to 154.

**PAST SURGICAL HISTORY:** Prior surgery includes two cesarean sections, tubal ligation, reversal of a tubal ligation, removal of the right tube and ovary, anterior cervical fusion and carpal tunnel surgery.

**CURRENT MEDICATIONS:**
1. Humulin insulin.
2. Effexor.
3. Klonopin.

**ALLERGIES:** None reported.

**FAMILY HISTORY:** Positive for diabetes mellitus.

**SOCIAL HISTORY:** She is a nonsmoker.

**PHYSICAL EXAMINATION:**
**GENERAL APPEARANCE:** Examination shows a generally healthy-appearing white female. She is alert and oriented. Cranial nerves are intact.
**NECK:** She has a good range of motion of the neck.
**CHEST:** Clear.
**HEART:** Regular.
**ABDOMEN:** Soft.

000003

1

JACKSON HOSPITAL & CLINIC, INC
1725 Pine Street
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY
ATTENDING:                                          MR#:   28-51-4
ADMIT DATE:      5/21/2003                          ACT#: 1054794
                                                    RM#:  6E-647

NEUROLOGICAL:  She has pain with straight leg raising on the left.
Knee reflexes and ankle reflexes are both unobtainable, probably
secondary to diabetes mellitus.  There is a little weakness with toe
extension on the left but no definite foot drop.

ADMITTING IMPRESSION:  Lumbar radiculitis, L4-5 left.

                                    JOHN E. HACKMAN, M.D.

7DW0521
D:   5/21/2003  09:23
T:   5/21/2003  11:13
143018

000004

2

CLE00032

LINA/Cleiland 0287

JACKSON HOSPITAL & CLINIC, IN
1725 Pine Street
Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:  CLELAND, CATHY
ATTENDING:     JOHN E. HACKMAN, M.D.
SURGEON:       JOHN E. HACKMAN, M.D.

MR#:   28-51-4 5
ACT#:  1054794 5
RM#:   647-1
DATE:  5/21/2 0

PREOPERATIVE DIAGNOSIS:  Lumbar radiculitis L4-5 left.

POSTOPERATIVE DIAGNOSIS:  Lumbar radiculitis L4-5 left.

NAME OF PROCEDURE:  Lumbar laminectomy L4-5 left.

ASSISTANT:

ANESTHESIA:  General endotracheal anesthesia.

INDICATIONS FOR PROCEDURE: This is a 45-year-old white female comes
in with persistent back and left leg pain with numbness and weakness.
She has had conservative treatment without improvement.  The MRI scan
shows a protruding disk with associated osteophyte at L4-5 on the
left.

DESCRIPTION OF PROCEDURE:  The patient was taken to the operating
room where she underwent general endotracheal anesthesia.  She was
turned in the prone position on chest rolls.  The operative sites
were shaved, prepped, and draped in the sterile manner.  A midline
incision was made over L4-5.  This was carried down to the lumbar
fascia, which was opened to the left of the midline.  The
paravertebral muscles were stripped off the spinous processes and
lamina exposing the interlaminar space at L4-5 on the left.

A portion of the inferior lamina of L4 was removed.  The ligamentum
flavum was removed.  The nerve roots were identified.  Underneath we
found a soft protruding disk.  There was some associated osteophyte
going off the rim of the inferior part of L4 and extending out into
the foramen along with protruding disk.

We opened the ligament.  We used pituitary rongeurs and curets and
cleaned out fragmented disk material until all loose fragments were
removed.  We then removed the associated osteophytes with curets.  We
made sure we had a good decompression in the central canal and the
nerve root canal.  Bleeding was controlled with Gelfoam and thrombin.

The wound was closed in multiple layers of Vicryl suture.  Blood loss
during the procedure 350 cc.  There were no obvious complications.
Sterile dressings were applied.

000622

1

CLE00033

LINA/Cleiland 0288

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY
ATTENDING:      JOHN E. HACKMAN, M.D.
SURGEON:        JOHN E. HACKMAN, M.D.

MR#:  28-51-42
ACT#: 1054794 7
RM#:  647-1
DATE: 5/21/20

The patient was taken to the recovery room in satisfactory condition.

                                        JOHN E. HACKMAN, M.D.

6HI0521
D:  5/21/2003 09:25
T:  5/21/2003 15:26
143022

000023

2

CLE00034

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

DISCHARGE SUMMARY

PATIENT NAME:   CLEILAND, CATHY
ATTENDING:      HACKMAN, JOHN
ADMIT DATE:        7/14/2003
DISCHARGE DATE:    7/17/2003

NR#:   28-51-42
ACT#:  1056080 3
RM#:

BS#:   0717-023

**REASON FOR ADMISSION:**  This 45-year-old white female diabetic had a laminectomy on May 21, 2003 at L4-5 on the left and initially did well.  She then developed a recurrence of pain down the left hip and leg, which has gotten progressively worse.  She presented to our emergency room in extreme pain.  She was admitted for pain control and evaluation.

**HOSPITAL COURSE:**  The patient was admitted to the hospital and placed on pain control.  The next day we did an MRI scan and this showed a large extruded fragment at L4-5.  Surgery was recommended.  The patient was taken to surgery on July 16, 2003 where she had re-exploration of her laminectomy at L4-5 on the left.  She had immediate improvement in her leg pain, did well, and was discharged home the following day.  The wounds looked good and she was given instructions.  She will be followed up in the office.

DISCHARGE DIAGNOSIS:
1.   Recurrent disk herniation at L4 5, left.

OPERATIVE PROCEDURE THIS ADMISSION:
1.   Re-exploration laminectomy at L4-5, left.

2AC0717
D:  7/17/2003 09:56
T:  7/17/2003 11:00
149107

JOHN E. HACKMAN, M.D.

EXHIBIT
8

000002

CLE00022

LINA/Cleiland 0290

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY
ATTENDING:      HACKMAN, JOHN
ADMIT DATE:     7/14/2003

MR#:  28-51-42
ACT#: 1056080
RM#:  630-1

CHIEF COMPLAINT: Left hip and leg pain.

HISTORY OF PRESENT ILLNESS: This is 45-year-old white female, diabetic. She recently had a laminectomy on 5/21/03 at L4-5 on the left. She initially did well. She has had a recurrence of pain in the left hip and leg. We have talked to her a couple of times and I saw her in the office this past week. She complained about increasing weakness. I put her on medication but she has gotten progressively worse and she presented to the emergency room and was admitted for reevaluation and pain control.

PAST MEDICAL HISTORY: Positive for insulin-dependent diabetes. She is noncompliant. She has been otherwise healthy.

PRIOR SURGERY: Includes two cesarean sections, tubal ligation, reversal of the tubal ligation, removal of the right tube and ovary, anterior cervical fusion, carpel tunnel surgery, lumbar laminectomy.

HOME MEDICATIONS:
1. Humulin insulin 70/30, 40 units twice a day.
2. Effexor.
3. Klonopin.
4. Pain pills.

ALLERGIES: None reported.

FAMILY HISTORY: Positive for diabetes.

SOCIAL HISTORY: Shows the patient is a nonsmoker.

PHYSICAL EXAM:
GENERAL: Shows a generally healthy appearing white female. She is alert and oriented. Cranial nerves are intact.
NECK: She has a good range of motion of the neck.
CHEST: Clear.
HEART: Regular.
ABDOMEN: Soft.
EXTREMITIES: She has pain with straight leg raising on the left. Knee reflexes are intact. The ankle are both absent. She has weakness of toe extension on the left.

000003

1

CLE00023

LINA/Cleiland 0291

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

PATIENT NAME:    CLEILAND, CATHY
ATTENDING:       HACKMAN, JOHN
ADMIT DATE:      7/14/2003

MR#:   20-51-42
ACT#:  10560803
RM#:   610-1

ADMISSION IMPRESSION:
1. Recurrent lumbar radiculitis at L4-5 left.

4JB0715
D:   7/15/2003 908
T:   7/15/2003 12:01
148839

JOHN E. HACKMAN, M.D.

000004

2

CLE00024

LINA/Cleiland 0292



PAGE 1

## DISCHARGE SUMMARY

NAME: CLEILAND, CATHY

SERVICE: Mark N. Hadley, M.D./2823

MED.REC.NO.: 00698678     ROOM:

ADMITTED: 12/16/03     DISCHARGED: 12/18/03

DICTATED: 12/18/03     TRANSCRIBED: 12/18/03

ADMISSION DIAGNOSIS:     Lumbar instability.

DISCHARGE DIAGNOSIS:     Same.

PROCEDURE:     L4-5 laminectomy and diskectomy with L4-5 internal fixation and fusion and L4-5 posterior lumbar interbody fusion by Dr. Hadley on 12/16.

HISTORY OF PRESENT ILLNESS: The patient is a 46-year-old white female with a one and a half year history of low back pain and left leg pain with numbness in the lateral left leg and plantar surface of the left foot. She has a history of prior lumbar surgery. Exam and imaging is consistent with L4-5 instability. She presents now for elective decompression with L4-5 posterior lumbar interbody fusion.

Please see history and physical for further details.

HOSPITAL COURSE: The patient underwent the aforementioned procedure which she tolerated without difficulty. She was followed on the floor postoperatively where she had an uncomplicated hospital course and mobilized in a timely fashion and she remained neurologically stable in comparison to her preoperative exam. She had a slight foot drop on the left preoperatively and this was felt to have improved actually somewhat on postoperative day one with almost normal strength on the left side with dorsiflexion. She was fitted with an LSO brace and approved for discharge the morning of 12/18.

DISCHARGE CONDITION: Good.

DISPOSITION: Home.

DISCHARGE MEDICATIONS: Neurontin 300 mg t.i.d.; Robaxin, Lortab, and Advil as needed for pain.

EXHIBIT

9

CLE00001

LINA/Cleiland 0293

 

PAGE 2

<u>DISCHARGE SUMMARY</u>

NAME: CLEILAND, CATHY                    MED.REC.NO.: 00698678    ROOM:

Followup is on 12/29 for a wound check with Dr. Hadley.

Kevin N. Ammar, M.D./07734/TL032

Mark N. Hadley, M.D.

CLE00002

LINA/Cleiland 0294



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

Page 1

### Operation Note

NAME: CLEILAND, CATHY    MED. REC. NO.: 000000698678    ROOM:

SURG: Mark N. Hadley, M.D.                    ASSIST: Ajay K. Ananda, M.D.

SURG#: 2823

SURG.SIGN: Electronically Signed by Mark N. Hadley, M.D. on 12/19/2003

DATE OPER.: 12/16/2003   ADMITTED:   DISCHARGED:

SERVICE: Mark N. Hadley, M.D.   DICTATED: 12/16/03   TRANSCRIBED: 12/16/03

DOCTOR/SERV. SIGN: _____

PREOPERATIVE DIAGNOSIS:  Lumbar spinal instability, with L5 radiculopathy, left greater than right.

POSTOPERATIVE DIAGNOSIS: Same.

PROCEDURES PERFORMED:   1.  L4-L5 laminectomy for decompression.
2.  L4-5 diskectomy, bilateral, with L4-5 posterior lumbar interbody fusion, bilateral.
3.  Internal fixation L4-L5, bilateral.
4.  Autologous bone dorsolateral fusion L4-L5, bilateral.

ANESTHESIA:  General with endotracheal intubation.

INDICATIONS:  This is a 46-year-old female who has had previous L4-5 surgery.  She has developed collapse and instability at L4-5, with marked L5 root compression and foot drop.  She has horrific pain, both mechanical in nature and radicular in nature, bilateral, again left more than right.  She is a candidate for operative decompression at the L4-5 level, followed by L4-5 posterior lumbar interbody fusion and internal fixation and dorsolateral fusion.  She understands the indications for as well

CLE00003

LINA/Cleiland 0295



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

Page 2

as the risks of the procedure. She wishes to proceed. Consent has been obtained.

OPERATIVE TECHNIQUE: After smooth induction of anesthesia and intubation, the patient was carefully moved from the hospital bed to the operating table and placed in the prone position on the Wilson frame. The patient's lumbosacral spine was shaved, prepped, and draped in the usual sterile fashion. I used the previous skin incision but essentially extended the incision from the inferior portion of L3 down to the superior portion of S1. There was a great deal of scar on this left side, particularly at L4-5. I dissected down bilaterally, exposing the spinous process and lamina of L4 and the spinous process and lamina of L5. There was marked facet mobility, in fact fractured facet at the L4-5 level on the left with collapse. I dissected out laterally bilaterally and exposed the facet complex at L4-5 and then the transverse process of L5. I worked up in a careful manner in a cephalad direction and exposed the transverse processes of L4 bilaterally, using great care to avoid any compromise or exposure of the L3-4 facet complex. I irrigated the wound with antibiotic solution. I then used a double-action rongeur to remove the spinous processes and lamina which remained at L4 and L5. I had dissected around the L4-5 scar on the left side, of course, but was able to do so and then fully decompress the thecal sac from superior L4 through L5. Working from the patient's left side toward the right, I undercut the medial facet complex and decompressed the lateral recess stenosis here. I took the L4-5 facet down as well. I went around to the patient's right, worked back toward the left, worked around and through scar, and decompressed the exiting L5 root which was markedly compromised, as well as the exiting L4 root. There was tremendous scar here from this collapsed, fractured, and failed facet. I then worked underneath the L5 root on the left, worked in a cephalad direction, and found recurrent disc herniation. I was able to dissect through this using both blunt and sharp dissection techniques, avoiding injury to the L5 and the L4 root, and then retract the nerve root medially. The markedly collapsed interspace here was identified. Posterior lumbar interbody fusion instruments were then sequentially used, beginning with an 8 mm blade up to an 11 mm blade, decorticating the inferior left

CLE00004

LINA/Cleiland 0296



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

Page 3

endplate of L4 as well as the superior endplate of L5. Disc material was removed with interspace rongeurs. I then dissected on the patient's right side, careful to avoid any compromise of the L4-5 root on the right. Again, posterior lumbar interbody blades were used to remove disc material and decorticate the endplates sequentially from 8 mm to 11. I then used a box cutter to decorticate the endplates even better at the inferior L4 and superior L5 bilaterally. I then placed a distraction device in the interspace 12 mm. I used a 13 mm allograft posterior lumbar interbody fusion substrate and tapped these as interposition grafts, first on the patient's left and then the right. These appeared to be in good position, and we had markedly increased, although not quite to normal, the interspace height from her preoperative collapsed circumstance. There was immediate firmness and stability to this previously very unstable joint. I then passed bone screws via the pedicles into the bodies with the use of intraoperative fluoroscopy into L4 and L5 bilaterally. I decorticated the exposed dorsolateral surfaces of L4 and L5. I morselized all the patient's bone which I had removed during the laminectomy and facetectomy completely of L4 and L5, admixed this with bone morphogenic protein putty and paste, and then packed it over the exposed dorsolateral surfaces of L4 and L5. Contoured rods were then secured to the bone screws at L4 and L5 bilaterally and locked into position, completing the procedure. I irrigated the wound with antibiotic solution. There was no evidence of nerve root compromise, thecal sac compression, or CSF leak. Bleeding was well controlled. I placed a drain. We closed the wound in multiple layers. The skin edges were approximated with a running nylon suture.

I personally supervised the entirety of the procedure and performed the essential elements outlined above.

Mark N. Hadley, M.D. / 07120 / TL030

CLE00005

LINA/Cleiland 0297

Nov. 8. 2006  3:05PM                                    No. 2119   P. 1



### *The*
# Center for Pain
### *of* M O N T G O M E R Y, *P.C.*
David Herrick, M.D. ▪ Brad Katz, M.D.
P.O. Box 241348
Montgomery, AL 36124
334-387-7246 ext. 108
## 334-387-0024  (Fax)

**Date:** November 8, 2006

**To:**  Mrs. Ezell

**From:** Michelle

**Fax#:** 205-803-0053                    **Pages, including cover sheet :** 9

---

## Updated records on Cathy Cleiland

### Michelle 334-387-7246 ext 108

#### Confidentiality Statement

The information contained in this facsimile is confidential and intended solely for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited under federal regulations (42 CPR part two).



**EXHIBIT**
**3**

1

CLE00142

LINA/Cleiland 0298

Nov. 8. 2006 3:05PM

No. 2119 P. 2

Nordic



# The Center for Pain
## of MONTGOMERY, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

☐ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_       Date: _10-24-06_

1. Are you: ☐ Better?   ☒ Worse?   ☐ Some?

2. Since your last visit, have you been to the Emergency Room? ☐ YES   ☒ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery? ☐ YES   ☒ NO
   (If Yes, please explain) _____

4. Since your last visit, have you had any X-rays?   ☐ YES   ☒ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES   ☒ NO
   (Please list all medications) _____

6. Do you have any allergies? ☒ YES   ☐ NO
   (If Yes, Please list all your allergies) _Cipro, Levaquin_

7. What do you want to discuss today? (medicine, pain) refills, etc.)
   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0  1  2  3  4  5  6  7  8  9  10

No Pain         Moderate Pain         Worst Pain

RIGHT   LEFT        LEFT   RIGHT

neck
is very
weak

right
hand try
to stay
drawn
up

feet
burning
feel to
bad

2

**CLE00143**

LINA/Cleiland 0299

Name _Cathy Cleiland_ ID _14495_ Date _10.24.06_ East (South)

Pain Issues _CRPS / RSD_

Comorbidities (DM) HBP  CAD CVA  Obesity CHF  OSA COPD PVD GERD RA OA Osteoporosis
Thyroid  Depression  SLE  Asthma

Soc HX no ∆ _____ Family HX no ∆ _____ Injuries (no) _____ Health (stable)

ROS /New issues _____

Medical Care  PCP  Specialist  Dentist  ID  Studies _____ Procedures _____

Medications _Duragesic / Methadone_

Medications effective  yes  no  +/-  new meds _____ adverse rxn _____

Pain Location: _____  Current Pain: _10_



MSE (alert) depressed  agitated  sedated  tearful
Ambulation (well) cane  walker  wheelchair  scooter _____
Posture (comfortable) pacing  fidgeting  slouching  antalgic  Indian chief
Eyes  PERRL  EOMI  conjunctiva wnl  nystagmus _____
ENT  rhinorrhea  oropharynx  TM  KOH _____
Neck  supple  thyroidmegaly  lymphadenopathy  bruits _____
Chest Wall  intact  breasts symmetric _____
Lungs  (no respiratory embarrassment) clear  wheezing  stridor  rhonchi  labored
Heart  (no hemodynamic instability) RrR  S1S2  murmur  edema in legs _____
Abdomen  soft  non-tender  non-surgical  BS wnl  organomegaly  flank tenderness
Skin  generalized rash  irritation  varicosities  tattoos  scars _____
Musk  vertebral tenderness c ‡ l  SI tenderness r l  hot joints _____ amputation _____
Muscle tenderness _____ joint tenderness _____ ROM _____
Neuro  CN 2-12 wnl  no localizing weakness  gait steady  reflexes _____ Spurling
Straight leg  Trunk lateral flexion  Trunk rotation  Romberg  Froment  Tinel  Phalen
Radial tap  position  graphesthesia  dysdiadokinesis  break gastroc
Other _____

Patient Requests  none  new med _____ new dose _____ other _____

Diversion  pill count  contact pharmacy  insurance check  other provider  UDS _____

Interactions  review medication agreement  review goals  review studies  education
handicap placard  disability forms  letter _____

Assessment  pain issues stable  new issues _____

Plan  refill current meds  drop _____ start _____ MRI _____ Procedure _____ Referral _____

Visit Length _____ Follow-up _I_ Comments _____

_Nakul_

CLE00144

LINA/Cleiland 0300

Nov. 8. 2006  3:05PM                                    No. 2119   P. 4



**The Center for Pain**
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_          Date: _____

1.  Are you: ☐ Better?   ☑ Worse?   ☐ Same?

2.  Since your last visit, have you been to the Emergency Room?  ☑ YES    ☐ NO

    (If Yes, please explain) _Troy 8-26-06. They said I had a small bowel obstruction and wanted to do surgery on Sunday. I left for 2nd opinion._

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?  ☑ YES    ☐ NO

    (If Yes, please explain) _My Primary Care Dr. after the ordeal in Troy. He stated that I did the right thing by seeking 2nd opinion._

4.  Since your last visit, have you had any x-rays?  ☑ YES   ☐ NO

    (If Yes, what kind and where were they done) _CAT SCAN in Troy._

5.  Since your last visit, have you had any medication changes? ☐ YES   ☑ NO

    (Please list all medications) _____

6.  Do you have any allergies? ☑ YES    ☐ NO

    (If Yes, Please list all your allergies) _Cipro, kwagin_

7.  What do you want to discuss today? (medicine (pain) refills, etc.) _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

|   0   1   2   3   4   5   6   7   8   9   10   |
No                    Moderate              Worst
Pain                    Pain                Pain

Mark all the places you feel pain.

_my right side has been in severe pain for last month_

_outside of left side_

RIGHT    LEFT        LEFT    RIGHT

4

**CLE00145**

LINA/Cleiland 0301

Nov. 8. 2006  3:06PM                                          No. 2119   P. 5

Name _____ ID _____ Date _____ Past (South)

Pain Issues ___COPD I LDDD_____

Comorbidities (DM) HBP  CAD CVA  Obesity CHF OSA COPD PVD GERD RA OA Osteoporosis
Thyroid  Depression  SLE  Asthma _____

Soc HX no Δ _____ Family HX  no Δ _____ Injuries no _____ Health Stable _____

ROS /New Issues _____

Medical Care  PCP  Specialist  Dentist  ED  Studies _____ Procedures _____

Medications _____

Medications effective  yes  no  +/-   new meds _____ adverse rxn _____

Pain Location: _____ Current Pain: _9_



MSE: (alert) depressed  agitated  sedated  tearful _____
Ambulation (self) cane  walker  wheelchair  scooter _____
Posture (comfortable) pacing  fidgeting  slouching  antalgic  indian chief _____
Eyes  PERRL  EOMI  conjunctiva wnl  nystagmus _____
ENT  rhinorrhea  oropharynx  TM  IIOH _____
Neck  supple  thyroidmegaly  lymphadenopathy  bruits _____
Chest Wall  intact  breasts symmetric _____
Lungs (no respiratory embarrassment) clear _____ wheezing  stridor  rhonchi  labored _____
Heart (no hemodynamic instability) RRR  S1S2  murmur  edema in legs _____
Abdomen  soft  non-tender  non-surgical  BS wnl  organomegaly  flank tenderness _____
Skin  unremarkable rash  irritation  varicosities  tattoos  scars _____
MuSk  vertebral tenderness  c t l  SI tenderness  r l  hot joints _____ amputation _____
Muscle tenderness _____ joint tenderness _____ ROM _____
Neuro  CN 2-12 wnl  so-toranzing  weakness  gait steady  reflexes _____ Spurling
Straight leg-- trunk lateral flexion  Trunk rotation  Romberg  Froment  Tinel  Phalen
Radial tap  position  graphesthesia  dysdiadokinesis  break pasttoc
Other _____

Patient Requests  none  new med _____ new dose _____ other _____

Diversion  pill count  contact pharmacy  insurance check  other provider  UDS _____

Interactions  review medication agreement  review goals  review studies  education _____
handicap placard  disability forms  letter _____

Assessment  pain issues stable  new issues _____

Plan  refill current meds  drop _____ start _____ PRN _____ Procedure _____ Referral _____

Visit Length _____  Follow-up _____  Comments _____

5

CLE00146

LINA/Cleiland 0302

Nov. 8. 2006  3:06PM                                                    No. 2119   P. 6

**The Center for Pain**
of M O N T G O M E R Y, P.C.

DAVID HERRICK, MD • BRAD KATZ, MD

□ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

□ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient  *Cathy Cleiland*          Age          Date  9-18-06

Superbill                          Allergies

Chief Complaint

History of Present Illness                              MEDS

Location
Timing
Other
PSH
PMH
FH/SOC Hx
ROS  #        #2        #3

Exam

GEN #        #2        #3
HEENT
PUL
CARDIAC
ABD
EXT
Spine
Neuro
Extremities/Spine
X-ray/Labs

Diagnosis:

Plan:

Physician Signature                  Staff Signature

6

CLE00147

LINA/Cleiland 0303

Nov. 8. 2006 3:06PM                                        No. 2119   P. 7

**Montgomery Imaging Center**
2055 Normandie Drive, Suite 108
Montgomery, AL 36111-2743
Phone (334) 288-4624
Fax (334) 288-8478

John H. Payne, III, M.D.        Daniel S. Noyes, D.O.        Mary M. Karst, M.D.
David C. Mostlet, M.D.          Mark H. LeQuire, M.D.        Paul Hutchinson, M.D.
Terry D. Williams, M.D.         Gordon Smith, M.D.           Oscar P. Orille, M.D.
Joseph M. Bailey, M.D.          Christopher Dorvault, M.D.   Eva Rubin, M.D.
David R. Necland, M.D.          Philip S. Piasecki, M.D.     Ronald D. Waters, M.D.
Thomas S. Moore, M.D.           David M. Downs, M.D.         John G. Kabler, M.D.
Jason H. Borcy, M.D.            Roland Ng, M.D.
Byron C. Mochen, M.D.           Gary Leung, M.D.

| Patient: GLEILAND, CATHY K | DOB: | Age: | 049 |
|---|---|---|---|
| Exam: MRI UPPER EXT JOINT WITH CONTRAST | Procedure Date: 10/31/06 | Film#: | 20046161 |
| Referring Physician: ADAM NORTICK, M.D. | | Acct#: | 000087431 |

MRI RIGHT SHOULDER:

HISTORY OF RIGHT SHOULDER PAIN FOR 4 MONTHS.

Technical factors: Multiple imaging sequences were acquired in multiple planes through the structures of the right shoulder following the usual protocol after intraarticular injection of a gadolinium based contrast solution.

Findings:

There is some mild supraspinatus tendinosis present. There is also some small subacromial/subdeltoid bursitis. However, no full thickness tear can be seen and there is no indirect evidence of a tear such as extravasation of contrast in the subacromial/subdeltoid bursa.

Marrow appears normal. There is mild acromioclavicular joint osteoarthritis. Visualized soft tissue structures are otherwise normal.

IMPRESSION:

1. SUPRASPINATUS TENDINOSIS, AS WELL AS BURSITIS. NO EVIDENCE OF FULL THICKNESS TEAR.
2. MILD ACROMIOCLAVICULAR JOINT OSTEOARTHRITIS.
3. OTHERWISE NO FOCAL ABNORMALITIES ARE SEEN.



Radiologist:    RONALD D. WATERS, M.D.

Technologist:    Stephen Marsh RT R/Renee Reach RT (R) (CT) (MR)
Transcribed by BECKY on 10/31/2006 at 03:20 PM  JOB 45065

Page 1 of 1

7

CLE00148

LINA/Cleiland 0304

Nov. 8. 2006  3:07PM                               No. 2119   P. 8

**Montgomery Imaging Center**
2055 Normandie Drive, Suite 108
Montgomery, AL 36111-2743
Phone (334) 288-4624
Fax (334) 288-8478

| | | |
|---|---|---|
| John H. Payne, III, M.D. | Daniel S. Noyes, D.O. | Mary M. Karst, M.D. |
| David C. Montiel, M.D. | Mark H. LeQuire, M.D. | Paul Hutchinson, M.D. |
| Terry D. Williams, M.D. | Gordon Smith, M.D. | Oscar P. Oritz, M.D. |
| Joseph M. Bailey, M.D. | Christopher Dorvault, M.D. | Eva Rubin, M.D. |
| David B. Necland, M.D. | Philip S. Pizzetti, M.D. | Ronald D. Waters, M.D. |
| Thomas S. Moore, M.D. | David M. Downs, M.D. | John G. Kabler, M.D. |
| Jason H. Barry, M.D. | Roland Ng, M.D. | |
| Byron C. Macben, M.D. | Gary Leung, M.D. | |

| | | | |
|---|---|---|---|
| Patient: CLEILAND, CATHY K | DOB: | Age: | 049 |
| Exam: INJECT CONTRAST MATERIAL SHOULDER | Procedure Date: 10/31/06 | Film#: | 20046181 |
| Referring Physician: ADAM NORTICK, M.D. | | Acct#: | 000087431 |

RIGHT SHOULDER INJECTION:

After informed consent the patient's shoulder was prepped and draped in the usual sterile fashion. 1% Lidocaine was used for anesthesia. The shoulder joint was punctured with a 22 gauge needle and 12 CC of contrast was instilled into the joint. The needle was removed and the patient sent to MR for further scanning. No complications.

IMPRESSION:

1. SUCCESSFUL INJECTION FOR RIGHT SHOULDER MRI.

Radiologist:    RONALD D. WATERS, M.D.

Technologist:    Shirley Pickett RT R
Transcribed by BECKY on 10/31/2006 at 03:25 PM

Page 1 of 1

8

LINA/Cleiland 0305



| CLEILAND ATRY K | 698678 | 07/14/2004 | 07/14/2004 13:48: |
|---|---|---|---|
| Patient name | Acct | Observation Date | Last Edited Date |

**Result Type:**
MR Lumbar Spine w/o+w contrast

**Reason For Exam:**
lumbar sacral spine - lumbar stenosis

**Results:**
Evaluate operation on the lumbar spine:
There is loss of normal lordosis of the lumbar spine. There is
evidence of marrow change in relation to the disc L4-5 with evidence of
operative intervention with metallic prosthesis using plates and
pedicular screws. There is minimal malalignment with a step deformity
between L4 and L5. Conus medullaris is normal ending at T12-L1.
Possibility of a transitional vertebra at the lumbosacral junction
cannot be excluded. For proper level determination, plain film
examination of the thoracic and lumbar spine is recommended. There is
evidence of laminectomy in the lower lumbar and lumbosacral region.
There is evidence of stenosis at L3-4 with a minimal disc bulge.

Paraspinal muscles appear normal.

After gadolinium injection, enhancement noted at the level of fusion at
L4-5. No evidence of abnormal enhancement in the paraspinal region.

**IMPRESSION:**
Post operative changes with abnormal enhancement in relation to the
disc space at L4-5. Mild to moderate stenosis noted at L3-4. The
enhancement in relation to L4-5 could be due to degenerative changes
Type I, however inflammatory changes cannot be entirely excluded.

LPM

Signature Line:
Final Report
Interpreted by: Taher T. El Gammal
Title: MD
Signed Date/Time: 07/14/04 13 12

*End of document as received by CDA*

https://horizon.hs.uab.edu/cgi-bin/cda/user/show_note.cgi?RS_::13742916:0:20040714134...  8/17/2006



tps://horizon.hs.uab.edu/ipv/servlet/IPVViewDocument?isNS47=no&rid=3266275     8/17/2006

9

CLE0010

LINA/Cleiland 0306

## THE KIRKLIN NEUROSURGERY CLINIC
### CLINIC NOTE

| CLEILAND, CATHY K | 000000698678 | 01/14/2004 |
|---|---|---|
| Patient Name | Record Number | Visit Date |

Cathy Cleiland is seen back in the Neurosurgery Clinic today. She is four weeks out after re-operative lumbar spine surgery at L4-5 with posterior lumbar interbody fusion and internal fixation. While she is standing better and has better function in her left lower extremity, she still has severe, burning dysesthetic pain in her legs, worse in the left leg than the right. This is very similar to her preoperative circumstance. She is using Neurontin 300 mg to 600 mg three times per day. She is still using a fair bit of pain medication. Her wound was giving her trouble but she has no tenderness or soreness there.

On examination, her wound looks good. She has a scab on the bottom but it is not erythematous, not leaking. The skin edges are simply healing. There is no fullness or fluid here. She can bend and move her spine and certainly her posture is much better than it was prior to surgery. She cannot yet walk on her heels but can on her toes. Independent testing reveals improved strength in the extensor hallucis longis and anterior tibialis on the left compared to preoperatively.

Imaging studies were not performed today. We will obtain these in four weeks. I am going to put her on an elevated dose of Neurontin 800 mg qid. We will continue to offer supportive care. We will get her involved in physical therapy as an outpatient. I will see her back in four weeks.

MNH/hu/2823
D: 2004-01-14
T: 1/15/04 12:12 PM
DOB: 07/11/1957

Mark N. Hadley, M.D.
Professor of Neurosurgery

cc:

job#:0114-176

1
NeuroSurgCN-Hadley

11

CLE00101

LINA/Cleiland 0307

THE ᴵRKLIN NEUROSURGERY CLINIC
CLINIC NOTE

| CLEILAND, CATHY K | 000000698678 | 02/11/2004 |
|---|---|---|
| Patient Name | Record Number | Visit Date |

Cathy Cleiland is seen back in the Neurosurgery Clinic today. She is two months out from L4-5 decompression, stabilization and fusion. She is doing okay. She is using Darvocet N-100 for pain, which is substantially a lower dose of narcotic than she has used in the past. She is using Neurontin 800 mg TID same as her preop. She is still having important and bitter burning dysesthesias in that left lower extremity. She has been plagued with that. She states she does not feel any better in that left leg after her operation than she did six months ago. Her only change she notes is that she is not having the same kind of back pain she has had previously.

On exam, I bring out residual weakness in the tibialis anterior and extensor hallucis longis on the left side. I bring out no other abnormalities. Radiographic studies today look pretty good. Internal fixation and fusion, PLIF construct looks fine as it has previously.

I have given my support and encouragement to Cathy. We are going to refill her Robaxin and her Darvocet medications today. She needs to give this more time. As we told her preoperatively, the burning dysesthesias and longstanding nature of her problems in her left lower extremity including weakness, sensory loss and the dysesthesias are not terribly positive signs for a complete recovery. Hopefully, she will continue to improve over time. We will assist her as we can and see her back in four months at her six-month followup.

MNH/hw/2823
D: 2004-02-11
T: 2/12/04 9:18 PM
DOB: 07/11/1957

Mark N. Hadley, M.D.
Professor of Neurosurgery

cc:

job#:0211-043

1
NeuroSurgCN-Hadley

1
NeuroSurgCN-Hadley

12

CLE0010

LINA/Cleiland 0308



**Health System**
2000 6th Ave. South
Birmingham, AL
35249

Name: CLELAND, CATHY K
MRN: 000000698678
DOB:          Age: 47 Years
Race: Unknown  KNEU//
Attending: Hadley, Mark N
Fin #: 406694196  Fin Class: Blue Cross
Admit Date:

| Accession Number: | Date of Service: | Ordering Physician | Exam: |
|---|---|---|---|
| MR-04-0011739 | 7/14/2004 | Hadley, Mark N | MR Lumbar Spine w/ w contrast |

**Indications**
lumbar sacral spine - lumbar stenosis

**Results**
Evaluate operation on the lumbar spine:
There is loss of normal lordosis of the lumbar spine. There is evidence of marrow change in relation to the disc L4-5 with evidence of operative intervention with metallic prosthesis using plates and pedicular screws. There is minimal malalignment with a step deformity between L4 and L5. Conus medullaris is normal ending at T12-L1. Possibility of a transitional vertebra at the lumbosacral junction cannot be excluded. For proper level determination, plain film examination of the thoracic and lumbar spine is recommended. There is evidence of laminectomy in the lower lumbar and lumbosacral region. There is evidence of stenosis at L3-4 with a minimal disc bulge.

Paraspinal muscles appear normal.

After gadolinium injection, enhancement noted at the level of fusion at L4-5. No evidence of abnormal enhancement in the paraspinal region.

**IMPRESSION:**
Post operative changes with abnormal enhancement in relation to the disc plates at L4-5. Mild to moderate stenosis noted at L3-4. The enhancement in relation to L4-5 could be due to degenerative changes Type I, however inflammatory changes cannot be entirely excluded.

LPM
Final Report
Interpreted by: Taher T. El Gammal
Title: MD
Signed Date/Time: 07/14/04 13:12



UAB  60803 Form Rev 06/03          Physician Copy          Page: 1 of 1

13

CLE00108

LINA/Cleiland 0309



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

PAGE 1

### DISCHARGE SUMMARY

NAME: CLEILAND, CATHY

SERVICE: Mark N. Hadley, M.D./2823

MED.REC.NO.: 00698878    ROOM:

ADMITTED: 12/16/03    DISCHARGED: 12/18/03

DICTATED: 12/18/03    TRANSCRIBED: 12/18/03

ADMISSION DIAGNOSIS:    Lumbar instability.

DISCHARGE DIAGNOSIS:    Same.

PROCEDURE:    L4-5 laminectomy and diskectomy with
L4-5 internal fixation and fusion and
L4-5 posterior lumbar interbody fusion
by Dr. Hadley on 12/16.

HISTORY OF PRESENT ILLNESS:  The patient is a 46-year-old white
female with a one and a half year history of low back pain and
left leg pain with numbness in the lateral left leg and plantar
surface of the left foot.  She has a history of prior lumbar
surgery.  Exam and imaging is consistent with L4-5 instability.
She presents now for elective decompression with L4-5 posterior
lumbar interbody fusion.

Please see history and physical for further details.

HOSPITAL COURSE:  The patient underwent the aforementioned
procedure which she tolerated without difficulty.  She was
followed on the floor postoperatively where she had an
uncomplicated hospital course and mobilized in a timely fashion
and she remained neurologically stable in comparison to her
preoperative exam.  She had a slight foot drop on the left
preoperatively and this was felt to have improved actually
somewhat on postoperative day one with almost normal strength on
the left side with dorsiflexion.  She was fitted with an LSO brace
and approved for discharge the morning of 12/18.

DISCHARGE CONDITION:  Good.

DISPOSITION:  Home.

DISCHARGE MEDICATIONS:  Neurontin 300 mg t.i.d.; Robaxin, Lortab,
and Advil as needed for pain.

15

CLE00109



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

PAGE 2

<u>DISCHARGE SUMMARY</u>

NAME: CLEILAND, CATHY          MED.REC.NO.: 00698678    ROOM:

Followup is on 12/29 for a wound check with Dr. Hadley.

Kevin N. Ammar, M.D./07734/TL032          _____
                                          Mark N. Hadley, M.D.

16

CLE00110

LINA/Cleiland 0311



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

PAGE 1

## OPERATION NOTE

NAME: CLEILAND, CATHY

MED.REC.NO.: U0698678    ROOM:

SURG: MARK N. HADLEY, M.D.

ASSIST: AJAY K. ANANDA, M.D.

SURG.SIGN.: _____

DATE OPER.: 12/16/03

ADMITTED: / /    DISCHARGED: / /

SERVICE: MARK N. HADLEY, M.D.

DICTATED: 12/16/03    TRANSCRIBED: 12/16/03

DOCTOR/SERV.SIGN.: _____

PREOPERATIVE DIAGNOSIS:    Lumbar spinal instability, with L5 radiculopathy, left greater than right.

POSTOPERATIVE DIAGNOSIS: Same.

PROCEDURES PERFORMED:
1. L4-L5 laminectomy for decompression.
2. L4-5 diskectomy, bilateral, with L4-5 posterior lumbar interbody fusion, bilateral.
3. Internal fixation L4-L5, bilateral.
4. Autologous bone dorsolateral fusion L4-L5, bilateral.

ANESTHESIA:  General with endotracheal intubation.

INDICATIONS:  This is a 46-year-old female who has had previous L4-5 surgery.  She has developed collapse and instability at L4-5, with marked L5 root compression and foot drop.  She has horrific pain, both mechanical in nature and radicular in nature, bilateral, again left more than right.  She is a candidate for operative decompression at the L4-5 level, followed by L4-5 posterior lumbar interbody fusion and internal fixation and dorsolateral fusion.  She understands the indications for as well as the risks of the procedure.  She wishes to proceed.  Consent has been obtained.

OPERATIVE TECHNIQUE:  After smooth induction of anesthesia and intubation, the patient was carefully moved from the hospital bed to the operating table and placed in the prone position on the Wilson frame.  The patient's lumbosacral spine was shaved, prepped, and draped in the usual sterile fashion.  I used the previous skin incision but essentially extended the incision from the inferior portion of L3 down to the superior portion of S1.  There was a great deal of scar on this left side, particularly at L4-5.  I dissected down bilaterally, exposing the spinous process and lamina of L4 and the spinous process and lamina of L5.  There

17

CLE00111

LINA/Cleiland 0312



**UAB** The University of Alabama at Birmingham
The Medical Center/University of Alabama Hospitals                    PAGE 2

OPERATION NOTE

NAME: CLEILAND, CATHY                    MED.REC.NO.: 00698678    ROOM:

was marked facet mobility, in fact fractured facet at the L4-5
level on the left with collapse. I dissected out laterally
bilaterally and exposed the facet complex at L4-5 and then the
transverse process of L5. I worked up in a careful manner in a
cephalad direction and exposed the transverse processes of L4
bilaterally, using great care to avoid any compromise or exposure
of the L3-4 facet complex. I irrigated the wound with antibiotic
solution. I then used a double-action rongeur to remove the
spinous processes and lamina which remained at L4 and L5. I had
dissected around the L4-5 scar on the left side, of course, but
was able to do so and then fully decompress the thecal sac from
superior L4 through L5. Working from the patient's left side
toward the right, I undercut the medial facet complex and
decompressed the lateral recess stenosis here. I took the L4-5
facet down as well. I went around to the patient's right, worked
back toward the left, worked around and through scar, and
decompressed the exiting L5 root which was markedly compromised,
as well as the exiting L4 root. There was tremendous scar here
from this collapsed, fractured, and failed facet. I then worked
underneath the L5 root on the left, worked in a cephalad
direction, and found recurrent disc herniation. I was able to
dissect through this using both blunt and sharp dissection
techniques, avoiding injury to the L5 and the L4 root, and then
retract the nerve root medially. The markedly collapsed
interspace here was identified. Posterior lumbar interbody fusion
instruments were then sequentially used, beginning with an 8 mm
blade up to an 11 mm blade, decorticating the inferior left
endplate of L4 as well as the superior endplate of L5. Disc
material was removed with interspace rongeurs. I then dissected
on the patient's right side, careful to avoid any compromise of
the L4-5 root on the right. Again, posterior lumbar interbody
blades were used to remove disc material and decorticate the
endplates sequentially from 8 mm to 11. I then used a box cutter
to decorticate the endplates even better at the inferior L4 and
superior L5 bilaterally. I placed a distraction device in
the interspace 12 mm. I used a 13 mm allograft posterior lumbar
interbody fusion substrate and tapped these as interposition
grafts, first on the patient's left and then the right. These
appeared to be in good position, and we had markedly increased,
although not quite to normal, the interspace height from her
preoperative collapsed circumstance. There was immediate firmness
and stability to this previously very unstable joint. I then
passed bone screws via the pedicles into the bodies with the use
of intraoperative fluoroscopy into L4 and L5 bilaterally. I
decorticated the exposed dorsolateral surfaces of L4 and L5. I
morselized all the patient's bone which I had removed during the
laminectomy and facetectomy completely of L4 and L5, admixed this

18

CLE00112

LINA/Cleiland 0313



**UAB** The University of Alabama at Birmingham                           PAGE 3
The Medical Center/University of Alabama Hospitals

<u>OPERATION NOTE</u>

NAME: CLEILAND, CATHY                    MED.REC.NO.: 00698678   ROOM:

with bone morphogenic protein putty and paste, and then packed it
over the exposed dorsolateral surfaces of L4 and L5.  Contoured
rods were then secured to the bone screws at L4 and L5 bilaterally
and locked into position, completing the procedure.  I irrigated
the wound with antibiotic solution.  There was no evidence of
nerve root compromise, thecal sac compression, or CSF leak.
Bleeding was well controlled.  I placed a drain.  We closed the
wound in multiple layers.  The skin edges were approximated with a
running nylon suture.

I personally supervised the entirety of the procedure and
performed the essential elements outlined above.


Mark N. Hadley, M.D./07120/TL030

19

CLE00113

LINA/Cleiland 0314



# THE KIRKLIN NEUROSURGERY CLINIC
## CLINIC NOTE

| CLEILAND, CATHY K | 000000698678 | 06/09/2004 |
|---|---|---|
| Patient Name | Record Number | Visit Date |

**SUMMARY:**

Cathy Cleiland is seen back in the Neurosurgery Clinic today. She underwent L4-L5 posterior lumbar interbody fusion with internal fixation and fusion on December 16, 2003. She states that she has had improvement in back pain. She no longer has the sharp, stabbing, mechanical complaints. Unfortunately, she continues to have severe painful dysesthesias in her lower extremities, left more than right. This is very similar to preop. We cautioned her and were concerned that the burning dysesthesias in her legs prior to surgery may not be improved by surgery. We certainly hoped that she would improve and, at least thus far, have not given up hope that improvement may occur. On exam, she is stiff. She does not bend and flex much, but can flex, extend, laterally bend, and rotate without evidence of instability. Motor, sensory and reflex testing is quite good in the lower extremities. She can walk on her toes and her heels.

Radiographic studies today demonstrate intact internal fixation hardware and good placement of fusion mass at the L4-L5 level. There is no malalignment. There is no pathology above or below.

We have done what we can for Cathy Cleiland. We will continue to monitor progress on an intermittent or six-month type basis. There is nothing additional at present for neurosurgery to provide other than supportive care.

*[signature]*

Mark N. Hadley, M.D.
Professor of Neurosurgery

MNH/npp/2823
D: 2004-06-09
T: 610/04 7:29 AM
DOB: 07/11/1957

ob#22-0609-301

NeuroSurgCN-Hadley

CLE00114

LINA/Cleiland 0315



SPRINGHILL MEMORIAL HOSPITAL
Radiological Consultation

NAME: CLEILAND, CATHY K.
ADDRESS:

Age: 43Y        Sex: F        DOB:

Chk-in #    Order    Exam
173817      0001     4615      MR SPINE CERVICAL W/O CONTRAST
                               Ord Diag: CERVICAL RADICULOPATHY

Comparison to previous examination of 12/03/97. Sagittal and
axial images were obtained utilizing standard technique.
Posterior fossa and cord intensity is within normal limits. There is
redemonstration of previous surgery at C5-6 with what appears to be
bony fusion. There is, however, interval development of a broad based
disc and spur at C6-7 which is causing severe central canal narrowing as
well as moderate to severe left neural foraminal stenosis. The
midline central canal diameter is approximately 6-11 mm.

C3-4, C4-5, and C7-T1 levels are unchanged.

IMPRESSION:

1.   INTERVAL WORSENING OF SEVERE CENTRAL CANAL NARROWING AT C6-7 DUE
TO BROAD BASED POSTERIOR MARGINAL OSTEOPHYTE AND ASSOCIATED DISC
HERNIATION SINCE PREVIOUS STUDIES.

2.   UNCHANGED POST SURGICAL APPEARANCE TO C5-6

3.   C3-4, C4-5 AND C7-T1 LEVELS UNCHANGED SINCE PREVIOUS EXAMINATION.

                        /Read by:
                        /Release by:

AAH

FINAL

CLE00115

LINA/Cleiland 0316

**SPRINGHILL MEMORIAL HOSPITAL**
**EMERGENCY PHYSICIAN REPORT**

Patient Name: CLEILAND, CATHY K
Patient ID: 9220790    Admit Date/Time: 02/25/2001  15:11
DOB:          7    Gender: F    Race: White

**CHIEF COMPLAINT:** Pain in back and neck
Patient complains of chronic pain in neck and back for 4 years status post an MVA.  Patient is under the care of a chronic pain specialist, and has had cervical spine surgery for same thing.  Patient states that over the past year for symptoms and gotten worse, and that her intrathecal injections of antiinflammatories are becoming less and less effective.  Patient is three weeks s/p last injection, and as opposed to previous episodes, patient states that she didn't get any relief.  The patient also states that over the past few weeks, the tips of her fingers ( third and fourth) are numb.  Patient called Dr Snitzer, who instructed the patient to come to ED for evaluation.
There are no other complaints.
**REVIEW OF SYSTEMS:**
**OTHER SYSTEMS:** All other systems that were reviewed were negative.
**PMH:** Medical History: diabetes
**Prior Surgery:** C-section, cervical fusion.
**PATIENT'S ALLERGIES:** The patient denies having any medication allergies.
**PATIENT'S CURRENT MEDICATIONS:** see list
**SOCIAL HISTORY:** The patient is a nonsmoker.
**FAMILY HISTORY:** No Family History is pertinent to the present complaint.

**PHYSICAL EXAM:** Vital Signs: Reviewed Nurse's notes.
**PATIENT STATUS:** is in no distress, alert and cooperative.
**HEAD:** Atraumatic, without temporal or scalp tenderness.
**NECK:** Supple, nontender, no lymphadenopathy.
**CHEST:** Nontender, symmetrical, no retractions.
**LUNGS:** Clear to auscultation and breath sounds equal, no wheezes, rales, or rhonchi.
**HEART:** Regular rate and rhythm, without murmurs, ectopy, gallops, or rubs.
**ABDOMEN:** Soft, nontender.
**ARM:** Right arm.  Nontender.  Nonswollen.  Range of motion: full.  No deformity.
**SKIN:** Normal.  Neurovascular status: motor impaired mildly weaker on the right than left, but patient unable to give full effort with positive "breakaway weakness".  Sensation impaired per patient in tips of finger .. the distal pulses are normal.
**REFLEXES:** normal. with exception of decreased brachioradialis on the right compared to left.
**GAIT:** Normal.
**BACK:** No costovertebral, paravertebral, intervertebral, or vertebral tenderness or spasm.

**TREATMENT:**
**CONSULT:** Dr Snitzer was consulted by phone and we have discussed the above..  He asked that the patient be given analgesia, and asked that the patient follow up in his office in the am.
Demerol, Phenergan, Toradol was given.

**DIAGNOSIS:** Back Pain, 724.5
Neck Pain, 723.1
Numbness, 782.0

**DISPOSITION:** Patient was discharged home accompanied by family.
The patient's condition at discharge was stable.  See the Emergency Department face sheet for discharge instructions.

E.D. Clinician:          Michael A. Mahoney, MD    **EMERGENCY DEPARTMENT**
Date:                    Sun Feb 25, 2001      Page 1 of 2

CLE00116

LINA/Cleiland 0317

SPRINGHILL MEMORIAL HOSPITAL

Radiological Consultation

HOSPITAL #: 0758095

DATE:       12/28/99

LOCATION:   O/P

ORDERING PHYS: MIDDLETON,TROY H

NAME: CLEILAND,CATHY
ADDRESS:

JACKSON                 AL   36545

Age: 42Y    Sex: F    DOB:

MR Number: 00173126

Chk-in #    Order    Exam
86703       0001     1030

XR SPINE CERV SERIES
Ord Diag: NECK PAIN,FALL

There is fusion between C5 and C6 vertebral bodies. The alignment is
normal. There is no encroachment upon the foramina. The other
vertebral bodies and interspaces are normal.

IMPRESSION:  FUSION AT THE C5-6 LEVEL.

/Read By/ Pavel M Lichtenstein, M.D.
/Released By/ Pavel M Lichtenstein, M.D.

FB

FINAL

CLE00117

LINA/Cleiland 0318

SPRINGHILL MEMORIAL HOSPITAL
Radiological Consultation

HOSPITAL #: 07578095

DATE:      12/01/99

LOCATION:    O/P

ORDERING PHYS: HINTON,JOHN L JR

NAME: CLEILAND,CATHY
ADDRESS:

                              JACKSON            AL   36545

Age: 42Y     Sex: F      DOB:
                                        MR Number:   00173126

Chk-in #    Order    Exam
  81810     0001     4615     MR SPINE LEVEL 2 CERVICAL
                             Ord Diag: NECK PAIN

There are no previous cervical spine MRIs available for comparison.
Routine sagittal and axial images were obtained utilizing both T1 and
T2 weighted technique.  Posterior fossa and spinal cord have normal
intensity.

IMPRESSION: 1) PREVIOUS ACD AND F AT C5-6 WITH MILD POSTERIOR BONY BAR
FORMATION WHICH IS CAUSING MINIMAL CENTRAL CANAL NARROWING.

2) AT C6-7, THERE IS A BROAD BASED POSTERIOR MARGINAL OSTEOPHYTE WHICH
IS CAUSING MODERATE TO SEVERE CENTRAL CANAL NARROWING, THIS IS BEST
VISUALIZED ON AXIAL VIEWS.

3) C3-4, C4-5, AND C7-T1 LEVELS UNREMARKABLE WITHOUT EVIDENCE OF DISC
HERNIATION AT ANY LEVEL.  ALL FINDINGS ARE SUPERIMPOSED UPON MILD TO
MODERATE DEGENERATIVE FACET DISEASE AT ALL LEVELS EXAMINED.

/Read By/ Carl E Blunck, M.D.
/Released By/ Carl E Blunck, M.D.

LF

FINAL                    RADIOLOGY REPORT              Page :1

CLE00118

LINA/Cleiland 0319



P.O. #248
MOBILE, ALABAMA 36608

3710 DAUPHIN STREET
(334) 344-8830

Cleiland, Cathy
TBA

PHYSICIAN:     William Faircloth, M.D.

MRN:
ACCOUNT NO:
ADM DATE:   01/15/99

## HISTORY & PHYSICAL

**PRIMARY PHYSICIAN:**     Brent Faircloth, M.D.

**HISTORY OF PRESENT ILLNESS:**
Ms. Cleiland is a 41 year old right handed white female who I performed anterior cervical discectomy fusion at Springhill Memorial Hospital in November of 1997. She did extremely well from that, but more recently has had progressive right hand and forearm pain. It has worsened, and is now to the point that it awakens her at night. She has pain with driving her car, and if she hyper-extends or flexes her wrist. She has developed numbness of her thumb, index finger. She feels though that her strength has remained unchanged. She underwent peripheral nerve conduction studies with Dr. Ed Snitzer who had identified a severe carpal tunnel syndrome on the right. She failed to improve with non-steroidal anti-inflammatory agents, as well as cock-up splints. She is being admitted for carpal tunnel release.

**PAST MEDICAL HISTORY:**
Significant for the anterior cervical discectomy. Medical history is significant for diabetes and she takes insulin 13 units of regular and 27 units of NPH twice a day.

**ALLERGIES:**              No known drug allergies.
**OCCUPATION:**            Human Resources Manager
**SOCIAL HISTORY:**        She is married.
**HABITS:**                Tobacco usage - none; Alcohol usage - occasional.
**FAMILY HISTORY:**        Father is age 76 and healthy; mother is 73 and healthy.
                           She has three brothers ages 36, 49, and 51; all are
                           healthy. She has one sister age 45 and healthy.

**PHYSICAL EXAMINATION:**
**GENERAL:**       Well developed, well nourished, middle aged, white female.
**HEENT:**         Normocephalic and atraumatic. Pupils equal, round, and
                   reactive to light and accommodation. Sclerae non-icteric.
                   Conjunctiva pink. Nares patent, Septum in midline.
                   Oropharynx without inflammation, irritation, injection.
**NECK:**          Supple without adenopathy or thyromegaly. She has no JVD
                   and no bruits.
**LUNGS:**         Symmetrical expansion of lungs; lungs clear.

Continued, page two....

CLE00119

LINA/Cleiland 0320



P.O. BOX 8248
MOBILE, ALABAMA 36608

3719 DAUPHIN STREET
(334) 322-9200

Cleiland, Cathy

PHYSICIAN:     William Faircloth, M.D.

PAGE 2...

**HEART:**          Regular rate and rhythm without gallops or murmurs.
**ABDOMEN:**        Soft. Non-tender. Non-distended.
**NEUROLOGIC:**     She is awake, alert and oriented x 3. Memory, intelligence,
judgement and affect were all appropriate and within normal
limits. Motor strength was 5/5 throughout. Reflexes were
2+/2. She had decreased pinprick in her thumb, and index
finger of her right hand, normal elsewhere. She had a
positive tinel sign at her wrist and had pain with maximal
flexion and extension of her wrist on the right.

**IMPRESSION:**     Carpal tunnel syndrome, right

**PLAN:**
1.   Admit
2.   Right carpal tunnel release

**DISCUSSION:**
I had a long discussion with Ms. Cleiland.  I explained the anatomy and
pathology of her lesion at length, in plain English, and in great detail.
I explained to risks to include the possibility of infection, hemorrhage (
REPORT CUT OFF AT THIS POINT.......



Signature::
D: 01/14/99     T: 01/14/99

CLE00120

LINA/Cleiland 0321

P.O. BOX
MOBILE, ALABAMA 36608

3719 DAUPHIN STREET
(334) 344-9830

CLEILAND, CATHY

MRN:    OP
ACCOUNT NO:
ADM DATE:

PHYSICIAN:    William Faircloth, M.D.

## OPERATIVE SUMMARY

SURGERY DATE:    01/15/99

SURGEON:    William Faircloth, M.D.

This was a clean case performed in O.R. Room 9.

PREOPERATIVE DIAGNOSIS:  Right carpal tunnel syndrome

POSTOPERATIVE DIAGNOSIS: Same.

PROCEDURE:    Right median nerve decompression

ASSISTANT: Mr. David Redd, ORT
CIRCULATING NURSE:  Ms. Candy Cannibus
ANESTHESIA:  Monitored anesthesia care
ANESTHESIOLOGIST: Dr. Hanlon
ANESTHETIST:  Mr. Lamar Brown, CRNA
COMPLICATIONS:  None.
ESTIMATED BLOOD LOSS:  Less than 20 ccs.

BRIEF HISTORY: Ms. Cleiland is a 41 year old right handed white female who presented with intractable right wrist pain.  EMGs revealed evidence of carpal tunnel syndrome. In view of the fact that she failed to improve with conservative management, she is admitted for surgery.

DESCRIPTION OF PROCEDURE:  The patient was brought to O.R. Room 9. The right hand and arm were prepped with multiple applications of Betadine scrub and Betadine. The patient was then sterilely draped in the routine fashion. Planned skin incision was infiltrated with 1% Lidocaine, with sodium bicarbonate. An incision was created in the midline, and carried down to the first flexor crease, and extended down into the palm. The palmaris ligament was identified, and the median nerve was identified just posterior to this. I opened the carpal ligament along the nerve all the way into the palm. Meticulous hemostasis was achieved. The patient could move her thumb and index finger well. She could oppose her thumb to her small finger. She reported that she had improved sensation in her hand.

CONTINUED, PAGE TWO....

CLE00121

LINA/Cleiland 0322



CLEILAND, CATHY

PHYSICIAN:    William Faircloth, M.D.

PAGE 2...

The wound was closed in layers by approximating the subcutaneous tissue with interrupted 4-0 Vicryl and the skin edges with running subcuticular 4-0 PDS.

The patient was taken to the recovery room in satisfactory condition.



"I authorized my name to be electronically affixed by using my unique dictation computer key."

Signature::
D: 01/15/99    T: 01/17/99    mmm    William Faircloth, M.D.

CLE00122

LINA/Cleiland 0323

Patient ID: 9132105.76
Patient Name: Cleiland, Cathy
40 year old well-appearing white female.
MODE OF ARRIVAL: Patient arrived via private automobile.
Time seen by clinician:  1:10 pm
CHIEF COMPLAINT: Left lower abdominal pain, left lower back pain
Patient complains of having urinary symptoms for approximately 2-3 weeks
prior to arrival. There has been moderate dysuria, no hematuria, moderate
frequency, moderate urgency and a low grade fever. There has been mild
left-sided flank pain. There has been mild suprapubic abdominal pain.
There has been no nausea. There has been no vomiting. There has been no
vaginal discharge and no vaginal bleeding.
LMP: 3 weeks ago. Patient has had frequent UTI's for 2 months now.
REVIEW OF SYSTEMS:
GENERAL: some chills.
THROAT: no sore throat.
RESPIRATORY: no cough, no dyspnea.
CARDIAC: no chest pain.
PMH: The patient has a history of insulin dependent diabetes. No
allergies. Currently not on antibiotics
SOCIAL HISTORY: Lives in Jackson, AL
PHYSICAL EXAM: Vital Signs: Reviewed Nurse's notes.
PATIENT STATUS: comfortable, alert and cooperative.
EYES: PERRL, EOMI, no discharge or injection.
EARS: TMs without perforation, injection, or bulging. External canals clear
without exudate.
THROAT: Pharynx without injection, exudate or tonsillar hypertrophy.
Airway patent.
NECK: Supple, nontender, no lymphadenopathy.
Without Kernig's or Brudzinski's signs.
LUNGS: Clear to auscultation and breath sounds equal, no wheezes, rales, or
rhonchi.
HEART: Regular rate and rhythm, without murmurs, ectopy, gallops, or rubs.
ABDOMEN: Mild suprapubic, lower left lower tenderness. Normal bowel
sounds. No rebound. No guarding. Mild left-sided flank tenderness. No
distension. No tympany. No mass is palpable.
EXTREMITIES: Symmetrical, full range of motion, equal tone and strength. No
cyanosis, edema, joint tenderness or effusion. Pulses equal bilaterally.
DIFFERENTIAL DIAGNOSIS: UTI, pyelonephritis, kidney stone, pregnancy, among
others

GLUCOSE: Fingerstick, 69, normal.
Urine pregnancy negative.
URINALYSIS: consistent with a urinary tract infection
URINE CULTURE: obtained.
CBC: WBC 11.2 within high normal limits. Otherwise normal. CREATININE
E.D. Clinician: John L. McCormick, M.D.
Date:        Tue Mar 17 1998

CLE00123

LINA/Cleiland 0324



Patient Name: _____ and, Cathy
Patient ID: _____ 76

0.7 within normal limits.
INTERVENTION:
Tylenol 1 tab po was given.
Gentamicin 80 mg IV was given.
Toradol 60 mg IM was given. After treatment the patient's symptoms were
moderately relieved at 4:45 pm
REEXAMINATION:
The patient's condition is improved. Continues with mild back pain,
markedly improved. Patient ate a snack in ED. Patient has slight
palpitations, heart rate 100, regular.
DIAGNOSIS:
Urinary Tract Infection, 599.0
Fever, 780.6
Diabetes Mellitus, Type I (Insulin Dependent), No Complications, 250.01

DISPOSITION: Patient was discharged home.
The following prescriptions were given to the patient: Macrodantin 100 mg
every 6 hours X 10 days
Pyridium 200 mg every 8 hours X 2 days
Motrin 800 mg every 8 hours w/meals.
Return to the emergency department for high fever, worsening back pain,
abdominal pain, persistent vomiting, or if your condition otherwise seems
to worsen. The patient was advised to follow-up with Family Physician in
2-3 days. For continued symptoms.

John L. McCormick, M.D., FACEP
Tue Mar 1_ 1998, 04:43 PM

E.D. CLINICIAN: _____
Date: _____

Patient ID: 9132105.76
Patient Name: Cleiland, Cathy

DIAGNOSIS:
Urinary Tract Infection, 599.0
Fever, 780.6
Diabetes Mellitus, Type I (Insulin Dependant), No Complications, 250.01

DISPOSITION: Patient was discharged home.
The following prescriptions were given to the patient: Macrodantin 100 mg
every 6 hours X 10 days
Pyridium 200 mg every 8 hours X 2 days
Motrin 800 mg every 8 hours w/meals.
   Return to the emergency department for high fever, worsening back pain,
abdominal pain, persistent vomiting, or if your condition otherwise seems
to worsen. The patient was advised to follow-up with Family Physician in
2-3 days For continued symptoms.


I have received the instructions above. I understand that I have received
emergency treatment only, and that I may be released before all my medical
problems are known or treated. I will arrange for follow-up care as
instructed above.

_X Cathy A. Cleiland_____    __3/17/98__    __Self__
Patient/Responsible person        Date           Relationship to patient

_Deb Kowden_____                17:00
Signature of Witness

                    John L. McCormick, M.D., FACEP
                    Tue Mar 17, 1998, 04:43 PM


E.D. Clinician: John L. McCormick, M.D., FACEP
Date:                Tue Mar 17, 1998

CLE00125

LINA/Cleiland 0326



Name CLEILAND, CATHY M

Age DOB:                                                      Address

Part Examined CERVICAL SPINE-FLEX/EXT                        Sex          P

ROENTGENOLOGICAL REPORT

There is fusion of the C5 and C6 vertebral bodies. No evidence of
significant arthritic disease. There is no evidence of subluxation.

IMPRESSION:  FUSION OF THE C5 AND C6 VERTEBRAL BODIES.  NO OTHER
ABNORMALITIES.

fb 01-23-98

01-23-98

LARRY GREER, M.D.

CLE00126

LINA/Cleiland 0327



**SCHOOL OF MEDICINE**

Department of Surgery
Division of Neurosurgery

November 17, 2003

Dr. John Hackman
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106

Re: CATHY CLEILAND
UAB #: 000000698678

Dear John:

I saw your patient, Cathy Cleiland, in the Neurosurgery Clinic today. She is a pleasant woman of 46 years and has had a good bit of spinal surgery performed. She has had three separate anterior cervical procedures accomplished over time. She was in a motor vehicle accident in April 2002 and ultimately had lumbar spinal surgery, left-sided L4-5 discectomy, in May 2003. She says she did not have much improvement from this, or at least any lasting improvement. It has become increasingly troublesome to her. She ultimately sought re-evaluation and a second procedure in July 16, 2003 for recurrent disc. She unfortunately states that she is no better. She has developed important back pain, which is different than what she has experienced previously. The left lower extremity pain and dysfunction remains but she now has severe burning dysesthesia in the bottom of the foot, which radiates up to the knee. She also is developing right lower extremity complaints. You have discussed with her the options of additional therapy and she would like my thoughts regarding her circumstance.

Of importance with this woman is that she is a bit overweight for her frame. She is 171 pounds on a 5 foot 4 inch frame. She has juvenile diabetes and has been treated for same for 25 years. She is utilizing Neurontin, Darvocet, Lortab and Flexeril in treatment of her pain syndrome but is really not much better. She has not had much in the way of physical therapy of late. She tried this after her first operation.

She describes mechanical type pain, sharp, stabbing, lancinating pain with motion. She cannot always anticipate which motion is going to give her the trouble. Rolling over in bed, for example, sometimes causes a sharp, stabbing pain that then radiates down her left leg. At other times she can stand and walk and get around reasonably well with just an underlying, severe low backache but will have superimposed sharp, stabbing pains that literally take her breath away. Her pain tends to follow the L5 distribution and also S1 on this left side. She is developing some right-sided complaints as well. She walks with a

The University of Alabama at Birmingham
1030 Faculty Office Tower ● 510 20th Street South
Birmingham, Alabama 35294-3410
(205) 934-7170● FAX (205) 934-6507

4

CLE00102

LINA/Cleiland 0328

2059704600         T-256    P 05    F-326

limp and the more she walks, the more she limps. She walks in a flexed position too, very careful with the positioning of her spine and her step. She really tries to avoid any jarring. She cannot keep shoes on her feet more than two to three hours because of the burning dysesthesias, particularly on the left but the right as well.

As we examine her, she does have pain that appears mechanical. She has a real tough time with flexion, extension, laterally bending or rotation of the lumbar spine. This tends to cause focal back pain, sometimes sharp with lancination down the left leg. She appears to be weak in the extensor hallucis longis and anterior tibialis on that left side compared to the right. She indeed has burning dysesthesias in the L5 and S1 distribution on the left. She has reduced ankle response on the left.

I reviewed films on Cathy from prior to her original surgery to her most recent three sets of MR studies with two different sets of plain spine films. She has what appears to be collapse and degeneration despite attempted discectomy times two. I think she has developed failure of the facet complex on this left side and then subluxation and collapse, which is causing further canal compromise. There is a good bit of scar in around the previous operative site. I do not see specific disc material, which has re-herniated, but significant collapse with narrowing and angulation with a grade I spondylosis.

I think Cathy Cleiland has developed lumbar spinal instability with recurrent nerve root compression. I think some of her components, particularly the burning dysesthesias in the left lower extremity, are probably the result of nerve root injury from her pathology and its attempted treatment. I do think her mechanical instability and ongoing neuro compression can be improved with an operative procedure to provide decompression, internal fixation and fusion with the hope to restore her normal lumbar lordosis and interspace height. While I do not think she will have alleviation of her severe burning dysesthesias in her left lower extremity, she does have a very good opportunity to benefit from the above-mentioned procedure. Cathy would like to proceed. We have tentatively selected the date of December 9 as an operative date. We will complete the history, physical and preoperative counseling today. I will keep you posted on our progress. Thank you for asking me to provide an opinion on this pleasant woman.

Sincerely,

Mark N. Hadley, M.D.
Professor of Neurosurgery

MNH/hr

DSCjob#1117-507

5

CLE00103

LINA/Cleiland 0329

Sincerely,

Mark N. Hadley, M.D.
Professor of Neurosurgery

MNH/app

job#21-0714-425

6

CLE00104

LINA/Cleiland 0330

# EXHIBIT 1 TO EXHIBIT A
# Part 7



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, MD • BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808
Fax: 334-288-8069

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-724
Fax: 334-387-7250

## EPIDUROGRAM REPORT

**NAME:** CATHY CLEILAND
**DATE:** 08/27/03
**DOB:**

There are two fluoroscopic images showing contrast injected at L4-5. There is fairly ratty spread of contrast at L4-5 with very poor medial spread of contrast through the neural foramen into the epidural space. A large laminectomy defect is present with significant disc height loss at L4-5. The L5-S1 nerve root is very nicely illuminated with contrast spread medially into the epidural space.

**IMPRESSION:** Epidural fibrosis at L4-5 creating an abnormal epidurogram. No previous films are immediately available for comparison.

DAVID P. HERRICK, M.D.
Signed without review

DPH/slb
D: 08/27/03
T: 08/28/03

CLE00101

LINA/Cleiland 0331



*The*
# Center for Pain
*of* M O N T G O M E R Y, *P.C.*

DAVID HERRICK, MD • BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808
Fax: 334-288-8089

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7240
Fax: 334-387-7250

## PROCEDURE NOTE

**NAME:** CATHY CLEILAND
**DATE:** 08/27/03
**DOB:** ' ,

**PREOPERATIVE DIAGNOSIS:** Lumbar degenerative disc disease and lumbar radiculitis.

**POSTOPERATIVE DIAGNOSIS:** Lumbar degenerative disc disease and lumbar radiculitis.

**PROCEDURE PERFORMED:** Lumbar selective nerve root block on the left at L4-5 and L5-S1 under fluoroscopy with injection of contrast.

**ANESTHESIA:** None.

**COMPLICATIONS:** None.

**PROCEDURE IS AS FOLLOWS:** The patient was prepped and draped in the usual sterile fashion, prone on the OR table. Using fluoroscopic guidance, L4-5 and L5-S1 was identified on the left. A skin wheal was raised, and a 25 gauge 3 ½" needle was inserted until the tip of the needle rested in the 12 o'clock position at L4-5 and the second needle at L5-S1. Needle position was carefully confirmed AP and laterally. Divided equally into each needle was 2 cc of Omnipaque 240 to confirm needle placement. A total of 2 cc of 0.75% Marcaine plus 80 mg of Depo Medrol was divided between the two injections. The patient tolerated the entire procedure with no acute complications and was discharged home in stable condition after observation for 30 minutes.

DAVID P. HERRICK, M.D.
Signed without review

- DPH/slb
D: 08/27/03
T: 08/28/03

**CLE00100**

LINA/Cleiland 0332

*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.
David Herrick, M.D. ▼ Brad Katz, M.D.
Adam Nortick, M.D.
P.O. Box 241348
Montgomery, AL 36124

432 St. Lukes Drive
Phone: 334-387-7246
Fax: 334-387-7250

2055 E. S. Blvd., Ste. 812
Phone: 334-288-7806
Fax: 334-288-8089

## PROCEDURE NOTE

**NAME:** CATHY CLEILAND
**DATE:** 02/06/06
**ACCT:** 14495
**DOB:**

**PREOPERATIVE DIAGNOSIS:** Cervical degenerative disc disease.

**POSTOPERATIVE DIAGNOSIS:** Cervical degenerative disc disease.

**PROCEDURE PERFORMED:** Cervical epidural steroid injection at C5-6 under fluoroscopy with injection of contrast.

**ANESTHESIA:** Versed 4 mg IV.

**COMPLICATIONS:** None.

**PROCEDURE IS AS FOLLOWS:** The patient was prepped and draped in the usual sterile fashion, prone on the OR table. Using fluoroscopic guidance, C5-6 was identified. A skin wheal was raised, and an 18 gauge Tuophy needle was advanced under loss-of-resistance technique in the epidural space. Upon entering the epidural space, no paresthesias were elicited, no heme or CSF was aspirated. 5 cc of Omnipaque 240 was injected to confirm needle placement. A total of 80 mg of Depo Medrol and 4 cc of normal saline were injected into the epidural space. The patient tolerated the entire procedure with no acute complications and was discharged home in stable condition after observation for 30 minutes.

DAVID P. HERRICK, M.D.
Signed without review.

DPH/slc
D: 02/06/06
T: 02/08/06

CLE00099

LINA/Cleiland 0333



**The**
## Center for Pain
*of* M O N T G O M E R Y. P.C.
David Herrick, M.D. ▼ Brad Katz, M.D.
Adam Nortick, M.D.
P.O. Box 241348
Montgomery, AL 36124

432 St. Lukes Drive
Phone: 334-387-7246
Fax: 334-387-7250

2065 E. S. Blvd., Ste. 401
Phone: 334-288-7808
Fax: 334-288-8089

### PROCEDURE NOTE

**NAME:** CATHY CLEILAND
**DATE:** 04/07/06
**ACCT:** 14495
**DOB:**

**PREOPERATIVE DIAGNOSIS:** Cervical degenerative disc disease.

**POSTOPERATIVE DIAGNOSIS:** Cervical degenerative disc disease.

**PROCEDURE PERFORMED:** Cervical epidural steroid injection at C5-6 under fluoroscopy with injection of contrast.

**ANESTHESIA:** None.

**COMPLICATIONS:** None.

**PROCEDURE IS AS FOLLOWS:** The patient was prepped and draped in the usual sterile fashion, prone on the OR table. Using fluoroscopic guidance, C5-6 was identified. A skin wheal was raised and an 18 gauge Tuophy needle was advanced under loss-of-resistance technique in the epidural space. Upon entering the epidural space, no paresthesias were elicited, no heme or CSF was aspirated. 5 cc of Omnipaque 240 was injected to confirm needle placement. A total of 80 mg of Depo Medrol and 4 cc of normal saline were injected into the epidural space. The patient tolerated the entire procedure with no acute complications and was discharged home in stable condition after observation for 30-minutes.

**ADDENDUM:** I have refilled her Methadone 10 mg 5 x a day, Lortab 10 mg TID and Baclofen 10 mg TID.

_____
DAVID F. HERRICK, M.D.
Signed without review.

DPH/slc
D: 04/07/06
T: 04/12/06

**CLE00098**

LINA/Cleiland 0334

ITS SMALL SIZE AND LACK OF ABUTMENT TO THE NERVE ROOTS BUT COULD REPRESENT A SMALL END PLATE FRAGMENT OR DISC FRAGMENT. THIS IS SEEN ONLY ON ONE VIEW.

SEVERE DEGENERATIVE DISC DISEASE AT L4-5.

Dictated by: KEN RICHARDSON
Verified by: KEN RICHARDSON

Transcriptionist: EE

Name: CLEILAND, CATHY K.
Physician: RYAN, PATRICK O

Order ID: 1190671
Date: 08/11/2003

CLE00097

LINA/Cleiland 0335

# JACKSON HOSPITAL & CLINIC, INC.

1725 PINE STREET
MONTGOMERY, ALABAMA 36106

Name: CLEILAND, CATHY K.                  DOB:                  Age: 46 YEARS
Physician: RYAN, PATRICK G                Patient Location: 6301
MR#: 285142           X-RAY#: 463643      Account#: 10567192
Order ID: 1190671     Result ID: 1073900  Addendum Number: 0

---

Clinical Data: BACKK PAIN  TO LEFT LEG BACK SURGERY
Procedure: MRI L SPINE W & W/O CONTRAST    Date of Exam: 08/11/2003

TECHNIQUE:
Pre and post contrast T1 axial and sagittal imaging was performed along with multi-echo T2
sagittal and fast spin echo T2 axial imaging was performed.

FINDINGS:
Comparison is made to a recent examination from 07/14/2003.  The previously described
moderate  sized disc extrusion in the left lateral recess of L4-5 has apparently been removed.
There is a very small, 5mm area of low signal intensity that is surrounded by enhancing scar
tissue that is adjacent to the posterolateral aspect of the intervertebral disc at L4-5 seen only on
the post contrast axial images (image 10).  This is adjacent to the superior end plate of L5 and
is not seen on the parasagittal images.  This does not abut or displace the exiting nerve roots.
I cannot tell with certainty whether this represents a small piece of bone or a small residual disc
fragment but may be clinically insignificant given its small size and no apparent abutment of the
nerve roots.  There is a fairly extensive amount of enhancing soft tissue in the left epidural space
of L4-5.  The enhancing soft tissue extends along the anterior aspect of the thecal sac as well as
into the left neural foramen.  There is no displacement or distortion of the thecal sac.  The
exiting left L5 nerve root is encased by the enhancing tissue.  The patient has significant
degenerative disc disease at this level with disc space loss and end plate sclerosis.  The remaining
intervertebral disc spaces show only some mild disc desiccation.  No other areas of disc bulging
or protrusion.  The conus is normal.

IMPRESSION:
EXTENSIVE POST OPERATIVE CHANGES ON THE LEFT AT L4-5 WITH A LARGE
AMOUNT OF ENHANCING EPIDURAL SCAR TISSUE AS DESCRIBED. THE MODERA
SIZED DISC EXTRUSION AT THIS LEVEL IS NO LONGER VISIBLE. HOWEVER THERE
IS A SMALL NON-ENHANCING AREA OF LOW SIGNAL INTENSITY NEAR THE LEFT
NEURAL FORAMEN AT L4-5. PROBABLY AND CLINICALLY INSIGNIFICANT GIVEN

CLE00096



## MONTGOMERY IMAGING CENTER
2055 Normandle Drive, Suite 108
Montgomery, Alabama 36111-2743

Phone (334) 288-4624    Fax (334) 288-8478

| John H. Payne, III, M.D. | Thomas S. Moore, M.D. | Mark H. LeQuire, M.D. | Mary M. Koerst, M.D. |
| David C. Montiel, M.D. | Jason H. Dorey, M.D. | Christopher Dorvault, M.D. | Gary Leung, M.D. |
| Terry D. Williams, M.D. | Byron C. Machen, M.D. | Gordon Smith, M.D. | Oscar P. Orille, M.D. |
| Joseph M. Bailey, M.D. | Daniel S. Noyes, D.O. | Paul Hutchinson, M.D. | Eva Rubin, M.D. |
| David B. Neeland, M.D. | | | Philip S. Pinsecki, M.D. |

Patient:    CLEILAND, CATHY K.
            DOB:            AGE:047
Referring Physician:    ADAM HORTICK, M.D.

Account:    000087431 01                    Film#: 20046)G1
Exam:       MRI CERVICAL SPINE WITH AND WITHOUT
Date:       12/08/04
Location:   MONTGOMERY IMAGING CENTER

**MRI CERVICAL SPINE WITH AND WITHOUT CONTRAST:**

The study is done without and after IV contrast. History of previous surgery in 97, 01, and 02. Patient has neck pain and pain in both arms and numbness in the right arm.

Multiplanar images obtained of the C-spine without and after IV contrast. The patient is post anterior fusion which I believe is at the C4-5, C5-6, and C6-7 levels. The cervical cord, cervicomedullary junction is unremarkable. There is normal signal from the intervertebral disc. On the images post injection of contrast, I do not see evidence for abnormal enhancement. On the axial images, I do not see evidence for disc herniation or neural foraminal impingement. There is some hypertrophy of the ligamentum flavum at C7-T1 that is causing some impingement on the thecal sac posteriorly at this level. This is obliterating the CSF space, but I don't believe causing significant impingement on the cord.

IMPRESSION:

THE PATIENT IS POST ANTERIOR FUSION, WHICH I BELIEVE IS AT THE C4-5, C5-6, AND C6-7 LEVELS. NO EVIDENCE OF DISC HERNIATION OR NEURAL FORAMINAL IMPINGEMENT. THERE IS HYPERTROPHY OF THE LIGAMENTUM FLAVUM AT THE C7-T1 LEVEL THAT IS CAUSING SOME POSTERIOR IMPRESSION ON THE SUBARACHNOID SPACE AT THIS LEVEL. NO IMPINGEMENT ON THE CORD NOTED.

Radiologist:    PAUL HUTCHINSON, M.D.

Technologist:    RENEE REACH RT MR

Transcribed by CAROLE on 12/08/2004 at 04:52

CLE00095





| CAMPBELL | : |
| WALLER & | 2100-A Southbridge Parkway • Suite 450 |
| POER, L.L.C. | Birmingham • Alabama 35209 |
| | 205 803-0051 • FX 205 803-0053 |

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

October 19, 2006

Ms. Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager
CIGNA Group Insurance
D212
12225 Greenville Avenue, Suite 1000
Dallas, TX  75243-9337

Re:    Cathy Cleiland

Dear Ms. Bharadwaj:

Attached hereto you will find a medical opinion form completed by Dr. Steven Wise who is treating Ms. Cleiland for her diabetes and peripheral neuropathy, bates numbered CLE00135 through CLE00137.  Please be advised that this assessment form addresses those restrictions and limitations arising from only the type II diabetes and peripheral neuropathy.  We are in the process of obtaining additional medical opinion forms from physicians treating the numerous other conditions suffered by Ms. Cleiland.

It is my expectation that once we have all of the documentation for the various conditions suffered by Ms. Cleiland, it will become obvious to even a layman that those restrictions and limitations arising from these various conditions when taken as a whole prevent Ms. Cleiland from performing any occupational duty.

On a separate note, we still await your production of documents.  Until such time as we receive those documents, we are unable to complete our appeal in this matter.  Please produce those forthwith.

Sincerely,

Thomas O. Sinclair, Esq.

TOS/me
Enclosures
cc:    Ms.  Cathy Cleiland
        Terry Key, Esquire

 

## MEDICAL OPINION FORM

RE:  Cathy Cleiland                SSN: _____            DOB: _____

Dear Dr. Wise:

Please provide your opinion to a reasonable degree of medical certainty, based on current treatment, of the above referenced patient's abilities and limitations.

1. Please state the diagnosis of the problem that causes your patient's limitations and restrictions, as well as the objective, clinical, or other specific findings that support your diagnosis and opinion: *Poorly controlled type 2 diabetes with peripheral neuropathy.*

2. In an 8 hour workday, 5 days a week, on a full time basis, the patient can be expected to be physically capable of the following activities:

Sit:              _8_ hrs out of 8 hrs a day        _____ hrs/min at one time

Stand or walk: _2_ hrs out of 8 hrs a day   _10-15_ hrs/min at one time

3. Patient can lift/carry:

|  | Never | Infrequently (very few times a day) | Occasionally (1/3 of workday) | Frequently (2/3 of workday) |
|---|---|---|---|---|
| 1-5 pounds | ___ | ___ | ___ | ___ |
| 1-10 pounds | ___ | ___ | ___ | ___ |
| 11-20 pounds | ___ | ___ | ___ | ___ |
| 21-25 pounds | ___ | ___ | ___ | ___ |
| 50 pounds or greater | ___ | ___ | ___ | ___ |

4. Does the patient require bedrest during a normal workday? Yes ___ No _✓_

If yes, for approximately how many hours? _____

1

LINA/Cleiland 0339

 

5. Does the patient have problems with stamina and endurance which would require him/her to rest more than the one 30-minute break and two 15-minute breaks normally allowed?

    Yes _____   No _____ If yes, how much rest? _____ hours/minutes for
                                    every _____ hrs/minutes of work

6. Do the patient's subjective complaints seem reasonable in view of your observations and diagnoses?  Yes ✓    No _____

7. Could the patient be reasonably expected to be reliable in attending an eight hour a day, 40 hour work week in view of the degree of pain, fatigue or other limitations he/she experiences?

    Yes _____   No ✓

8. How severe is the pain reasonably suffered by the patient?

Extreme____  Severe ____  Moderately Severe ✓  Moderate _____  Mild _____

9.    Is it reasonable that the patient's pain, medical condition, or medication would cause lapses in concentration or memory on a regular basis to the extent that your patient could not attend to a task or be reliable in following work instructions?

    Yes ✓    No _____

    If yes, how often would his/her condition reasonably causes such lapses in concentration or memory?

    _____ several hours 3 or more days a week

    ✓ daily for several hours a day

    _____ other:_____

10.   Are there environmental restrictions reasonably caused by the patient's condition (i.e. avoid heat, humidity, heights, dust etc.)?

CLE0013(

LINA/Cleiland 0340



11. Does the patient have a reasonable medical need to be absent from a full time work schedule on a chronic basis? (**Chronic being,** more than 4 absences during any month's period attributable to any one medical condition or related conditions, including absences for required medical treatment including appointments, diagnostic testing, treatment etc.)

Yes ___✓___   No _____

Please estimate to the best of your ability and expertise how many absences could be reasonably medically expected in any month. ___5-6___

10/18/06
Date

_Steven J. Wise_
Doctor's Signature

_Steven D. Wise, MD_
Doctor's printed name

3

CLE0013

LINA/Cleiland 0341

**RSI**

Recovery Services International, Inc.

PO Box 17079
Wilmington, DE 19886

May 24, 2006

CATHY K CLEILAND

CLIO, AL 36017

RE:    Creditor: LIFE INSURANCE COMPANY OF NORTH AMERICA
       Disability Claim
       Group Name: TEMPLE INLAND CORPORATE
       Group #: FLK   002010400180B
       Current Balance: $565.66
       Reason for Overpayment: LTD - SOC. SECURITY AWARD - ZERO BENEFIT

Recovery Services International, Inc. is the debt collection agency for the above creditor.

This correspondence is to acknowledge and thank you for your recent payment, which has been applied to your account. Your new current balance is shown above.

Thank you for your courtesy and cooperation in this matter.

Please send your next payment to us in the enclosed return envelope. Checks or money orders should be made payable to Recovery Services International, Inc. To ensure proper identification of your payment, please write the reference number shown below on your check.

This is an attempt to collect a debt. Any information obtained will be used for this purpose. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt, or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you notify this office in writing within 30 days after receiving this notice, that you are requesting a copy of the creditor's name and address, this office will provide you with the name and address of the original creditor, if different from the current creditor.

If you have any questions regarding this debt, please contact us at the telephone number below.

Sincerely,

VM22.23                                         1

LINA/Cleiland 0342

EDWARD MCDOWELL
Recovery Representative
Phone #: (800) 251-3376  Extension 6135
Hours of operation:  Monday – Friday, 8:00 A.M. to 4:30 P.M. EST.


REF#: 2 / 2005-199-000059 / D063 / W157
Please write this reference number on all of your correspondence or checks.

M22.23                                   2

LINA/Cleiland 0343

K. Archacki

**RSI**
Recovery Services Intern

October 3, 2006

P. O. Box 17079
Wilmington, DE 19886
1-800-251-3376

CATHY K CLEILAND

CLIO, AL 36017

RE:    Creditor:  LIFE INSURANCE COMPANY OF NORTH AMERICA
       Disability Claim
       Group Name: TEMPLE INLAND CORPORATE
       Group #: FLK    002010400180B
       Current Balance:  $340.66
       Reason for Overpayment: LTD - SOC. SECURITY AWARD - ZERO BENEFIT

Recovery Services International, Inc. is the debt collection agency for the above referenced creditor.

Your installment payment is past due.  When we agreed to accept payment of your debt on an installment
basis, it was understood that your payments would be made on the dates specified.

Please send your payment for the balance due, and a copy of this letter, to us in the enclosed return
envelope.  Checks or money orders should be made payable to Recovery Services International, Inc.
To ensure proper identification of your payment, please write the reference number shown below on
your check.

**NOTICE:  SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

Sincerely,

EDWARD MCDOWELL
Recovery Representative
Phone #: (800) 251-3376  Extension 6135
Hours of operation:  Monday – Friday, 8:00 A.M. to 4:30 P.M. EST.

REF#: 2 / 2005-199-000059 / D063 / W157
Please write this reference number on all of your correspondence or checks.

VM35

LINA/Cleiland 0344

**This is an attempt to collect a debt.  Any information obtained will be used for this purpose.**

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you notify this office in writing within 30 days after receiving this notice, that you are requesting a copy of the creditor's name and address, this office will provide you with the name and address of the original creditor, if different from the current creditor.

UPS CampusShip: Label/Receipt



## Shipment Receipt

(Keep this for your records.)

**Transaction Date 23 Oct 2006**

### Address Information

**Ship To:**
CAMPBELL WALLER & POER, LLC
THOMAS SINCLAIR
205-803-0051
2100 -A SOUTHBRIDGE PARKWAY
SUITE 450
BIRMINGHAM AL 35209-1310

**Shipper:**
CIGNA 149
JOSE NIEVES
972.907.5659
12225 GREENVILLE RD
SUITE 655
DALLAS TX 75243

### Shipment Information

**Service:**
*Guaranteed By:
**Quantum View Notify SM 1:**
  Ship; Delivery; Exception
**E-mail Failure Notification:**

UPS 2nd Day Air
End of Day, Wed. 25 Oct. 2006
jose.nieves@cigna.com

jose.nieves@cigna.com

### Package Information

**Package 1 of 1**
Tracking Number:            1ZE3932E0293435363
Package Type:               UPS PAK
Actual Weight:              5.0 lbs
Billable Weight:            5.0 lbs
Cost Center:                50001583
Reference # 2:              CATHY CLEILAND FILE COPY

### Billing Information

**Bill Shipping Charges to:**          Shipper's Account E3932E

**All Shipping Charges in USD**

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

**Responsibility for Loss or Damage**
Unless a greater value is recorded in the declared value field as appropriate for the UPS shipping system used, the shipper agrees that the released value of each package covered by this receipt is no greater than $100, which is a reasonable value under the circumstances surrounding the transportation. If additional protection is desired, a shipper may increase UPS's limit of liability by declaring a higher value and paying an additional charge. UPS does not accept for transportation and shipper's requesting service through the Internet are prohibited from shipping packages with a value of more than $50,000. The maximum liability per package assumed by UPS shall not exceed $50,000, regardless of value in excess of the maximum. Claims not made within nine months after delivery of the package (sixty days for international shipments), or in the case of failure to make delivery, nine months after a reasonable time for delivery has elapsed (sixty days for international shipments), shall be deemed waived. The entry of a C.O.D. amount is not a declaration of value for carriage purposes. All checks or other negotiable instruments tendered in payment of C.O.D. will be accepted by UPS at shipper's risk. UPS shall not be liable for any special, incidental, or consequential damages. All shipments are subject to the terms and conditions contained in the UPS Tariff and the UPS Terms and Conditions of Service, which can be found at www.ups.com.

LINA/Cleiland 0346



*Jose Neves*

## Archacki, Kelli 212

**From:**    McDowell, Edward J [Edward.McDowell@rsinll.com]
**Sent:**    Monday, October 16, 2006 9:42 AM
**To:**    Niefer, Carol A TL24D; Archacki, Kelli 212
**Subject:**    FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Good Morning:*

*Subsequent to our last e-mail exchange the claimant began making monthly payments of $75.00. However, on October 10 we received a voice message from her ............"My Attorney has advised me not to pay any more and you need to call him."*

*I have faxed each of you a copy of letter (and attachments) dated October 12, 2006 from the claimant's Attorney.  Please respond direct to the Attorney furnishing RSI with a cc of CIGNA's response.*

*Thanks.*

> *Ed*

---

**From:** McDowell, Edward J
**Sent:** Thursday, April 06, 2006 12:28 PM
**To:** 'Niefer, Carol A TL24D'
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Thanks much.*

*Yes our standard procedure is to allow one week's time for the claimant to receive letters from CIGNA before we make contact.*

> *Ed*

---

**From:** Niefer, Carol A TL24D [mailto:Carol.Niefer@CIGNA.COM]
**Sent:** Thursday, April 06, 2006 12:15 PM
**To:** McDowell, Edward J
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Ed,*

*Please see the attached letter that explains the OP. Please give her time to receive it and then you may contact her regarding repayment.*

*Thanks.*
*Carol*
-----Original Message-----
**From:** Archacki, Kelli 212
**Sent:** Thursday, April 06, 2006 11:08 AM
**To:** Niefer, Carol A TL24D
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

Carol,

Attached is a copy of the letter that is being sent to Cathy Cleiland in response to her letter regarding her

10/18/2006

LINA/Cleiland 0347

Message                                                                        Page 2 of 1

overpayment. She repaid the amount that she received in retroactive payment from SSDI paid through 05/01/05, but the overpayment calculation included the amount that had been paid to her through 7/9/05 when we received the award notification.

Let me know if you have any additional questions or comments regarding this.

Thank you very much,
Kelli

-----Original Message-----
**From:** Niefer, Carol A TL24D
**Sent:** Thursday, March 30, 2006 7:24 AM
**To:** Archacki, Kelli 212
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Hi Kelli,*

*This came up on diary so I am just following up on my e-mail below.*

*Thanks.*
*Carol*
-----Original Message-----
**From:** Niefer, Carol A TL24D
**Sent:** Thursday, March 16, 2006 10:04 AM
**To:** Archacki, Kelli 212
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Thanks Kelli. I appreciate it.*

-----Original Message-----
**From:** Archacki, Kelli 212
**Sent:** Thursday, March 16, 2006 9:07 AM
**To:** Niefer, Carol A TL24D
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

I am attempting to get her file from the appeals team in order to properly address her letter but have been unsuccessful. I will request her file again.

-----Original Message-----
**From:** Niefer, Carol A TL24D
**Sent:** Thursday, March 16, 2006 7:34 AM
**To:** Archacki, Kelli 212
**Cc:** Edward McDowell
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059
**Importance:** High

*Hi Kelli,*

*RSI fax'd you a letter from the claimant dated 1/19/06. In this letter she refers to the termination of her claim as well as the OP that is still outstanding. In Acclaim it shows an appeal resolution date of 3/10/06. Can you verify that a letter has been issued to the claimant advising her that the termination has been upheld and if so when that letter was issued? Also, have you responded to her dispute of the remaining OP balance? Once she has been advised that the current OP balance is valid RSI may then continue their recovery efforts.*

*Thanks very much for your assistance.*

*Carol*

10/18/2006

LINA/Cleiland 0348

-----Original Message-----
**From:** McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]
**Sent:** Wednesday, March 15, 2006 4:55 PM
**To:** Niefer, Carol A TL24D
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Carol:*

*I have faxed you a copy of the claimant's letter (previously faxed to the CM on 1/25/06 and again on 2/15/06). If the overpayment is determined to be correct, RSI would like to continue with collection efforts so that we have an opportunity to earn a fee for our efforts.*

*Thanks.*

---

**From:** Niefer, Carol A TL24D [mailto:Carol.Niefer@CIGNA.COM]
**Sent:** Wednesday, March 15, 2006 3:50 PM
**To:** McDowell, Edward J
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Can you fax me the letter dated 1/19/06? It appears the decision on the appeal was to uphold the termination of her benefits. Notes in Acclaim indicate that if her claim did not continue she would be unable to repay the balance of the OP. She wanted the OP balance recovered by withholding $160.00 per month.*

*Thanks.*
*Carol*

-----Original Message-----
**From:** McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]
**Sent:** Monday, March 13, 2006 10:05 AM
**To:** Niefer, Carol A TL24D
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059
**Importance:** High

*Can you assist?*

---

**From:** McDowell, Edward J
**Sent:** Friday, March 03, 2006 10:13 AM
**To:** 'Roberto.Castellon@cigna.com'
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Good Morning Roberto:*

*Could you review the e-mail exchanges that follow and assist RSI in obtaining an update on the status of CIGNA's handling?*

*Ed*

---

**From:** McDowell, Edward J
**Sent:** Thursday, February 23, 2006 9:59 AM
**To:** 'Kelli.Archacki@cigna.com'
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059
**Importance:** High

LINA/Cleiland 0349

*Kelli:*

*Can you advise current status?*

---

**From:** McDowell, Edward J
**Sent:** Wednesday, February 15, 2006 5:10 PM
**To:** 'Archacki, Kelli 212'
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Kelli:*

*I have just faxed it again.  Please furnish RSI with a cc of CIGNA's reply to the claimant.*

*Thanks.*

                              *Ed*

---

**From:** Archacki, Kelli 212 [mailto:KELLI.ARCHACKI@cigna.com]
**Sent:** Wednesday, February 15, 2006 4:51 PM
**To:** McDowell, Edward J
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

I sincerely apologize for the delay in responding to you regarding this matter.  I do not seem to have a copy of the letter that you are referring to.  Could you please fax it again to my attention.  The fax number is 860.731.3413.  Upon receipt I will review it with my Senior Claim Manager and respond to you.

Thank you very much.

     -----Original Message-----
     **From:** McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]
     **Sent:** Wednesday, February 15, 2006 9:38 AM
     **To:** Archacki, Kelli 212
     **Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

     *Good Morning Kelli:*

     *Your reply will be sincerely appreciated and enable RSI to determine how to proceed.*

     *Thanks much for your anticipated response.*

                           *Ed*

---

**From:** McDowell, Edward J
**Sent:** Tuesday, February 07, 2006 11:14 AM
**To:** 'Kelli.Archacki@cigna.com'
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Good Morning Kelli:*

LINA/Cleiland 0350

*Can you advise current status?*

---

**From:** McDowell, Edward J
**Sent:** Wednesday, January 25, 2006 2:12 PM
**To:** 'Archacki, Kelli 212'
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Good Afternoon Kelli:*

*I have faxed you a copy of claimant's handwritten letter dated 1/19/06. Please respond direct to the claimant furnishing RSI with a cc of CIGNA's response.*

*Your assistance is sincerely appreciated.*

---

**From:** Archacki, Kelli 212 [mailto:KELLI.ARCHACKI@cigna.com]
**Sent:** Wednesday, January 18, 2006 9:56 AM
**To:** McDowell, Edward J
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

We received her appeal and so her claim is in appeal status.  We did not receive a letter stating that she does not agree to reimburse her overpayment.

> -----Original Message-----
> **From:** McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]
> **Sent:** Wednesday, January 18, 2006 8:43 AM
> **To:** Archacki, Kelli 212
> **Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059
>
> *Kelli:*
>
> *If the letter was not received, is the claim still in appeal status??*
>
> ---
>
> **From:** Archacki, Kelli 212 [mailto:KELLI.ARCHACKI@cigna.com]
> **Sent:** Wednesday, January 18, 2006 9:25 AM
> **To:** McDowell, Edward J
> **Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059
>
> I checked with the Claim Manager who is handling her appeal and she does not have the letter that Ms Cleiland was referring to.  The only letter that we received was her appeal letter.  If I receive it I will let you know but it does not appear that we received it.
>
> Kelli
> -----Original Message-----
> **From:** Bharadwaj, Medha 212
> **Sent:** Wednesday, January 18, 2006 7:32 AM
> **To:** Archacki, Kelli 212
> **Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-

10/18/2006

LINA/Cleiland 0351

199-000059

No, we do not have the letter. I checked my mail and inside her file.

Thank you

# Medha Bharadwaj, FLMI, ACS

Appeal Claim Manager
CIGNA Disability Management Solutions
800.352.0611 ext. 1249
860.731.3211(facsimile)
medha.bharadwaj@cigna.com

CONFIDENTIALITY NOTICE:  If you have received this email in error, please immediately notify the sender by email at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly.  Please delete it from your files if you are not the intended recipient.  Thank you for your compliance.

Confidential, unpublished property of CIGNA
Do not duplicate or distribute
Use and distribution limited solely to authorized personnel
(c) Copyright 2006 CIGNA

-----Original Message-----
From: Archacki, Kelli 212
Sent: Tuesday, January 17, 2006 3:07 PM
To: Bharadwaj, Medha 212
Subject: FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

Medha,

Cathy Cleiland advised RSI that she sent a certified letter to me regarding the fact that she does not agree to reimburse her overpayment.  Do you have her file?  If so, is the letter that she is referring to on file.  I do not remember seeing it.

Thank you,
Kelli
-----Original Message-----
From: McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]

Sent: Tuesday, January 17, 2006 2:00 PM
To: Archacki, Kelli 212
Subject: FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

10/18/2006

*Good Afternoon Kelli:*

*Your response will be sincerely appreciated.*

---

**From:** McDowell, Edward J
**Sent:** Monday, January 09, 2006 9:44 AM
**To:** 'Kelli.Archacki@cigna.com'
**Subject:** Cleiland, Cathy K. DISPUTED OVERPAYMENT?
EDP#2005-199-000059

*Good Morning Kelli:*

*The subject claimant would not agree to reimburse your overpayment and tells us that she sent a certified letter to you regarding this matter.*

*Can you confirm receipt of such letter and advise status of CIGNA's handling?*

*Edward J. McDowell - ACA Certified*

*Professional Collection Specialist*

*Recovery Services International, Inc.*

*edward.mcdowell@rsintl.com*

*800-251-3376 x6135*

*302-476-6159 (Fax)*

---

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

---

10/18/2006

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2006 CIGNA

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2006 CIGNA

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your

computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2006 CIGNA

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient (s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

LINA/Cleiland 0355

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2006 CIGNA

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

10/18/2006

'16/2006 10:35 FAX 3024766182          RECOVERY SERV INTL                    @001
OCT-12-2006 THU 03:39 PM CAMPBELL WALLER          FAX NO. 2050C053          P. 01

**CAMPBELL, WALLER, & POER, L.L.C.**

2100-A Southbridge Parkway
Suite 450
Birmingham · Alabama 35209

# FAX COVER SHEET

**TO:**    Mr. Ed McDowell          **FAX NO.:**    302-476-6159
         % Recovery Services

**FROM:**    Thomas O. Sinclair, Esquire          **DATE:**    October 12, 2006

**CLIENT/MATTER:**          1270-4135

**NUMBER OF PAGES:**    6          *Fax to Kelli aachacki Carol Niefer 10/16/06*

**MESSAGE:**

NOTICE: The information contained in this facsimile transmission ("FAX") is intended by Campbell, Waller & Poer, LLC for the use of the named individual or entity to which it is directed and may contain information that is privileged or otherwise confidential. It is not intended for transmission to, or receipt by, anyone other than the named addressee (or a person authorized to deliver it to the named addressee). It should not be copied or forwarded to any unauthorized persons. If you have received this fax transmission in error, please destroy it without copying or forwarding it, and notify the sender of the error by calling Campbell, Waller, & Poer, LLC at (205) 803-0051.

LINA/Cleiland 0357



CAMPBELL
WALLER &
POER, L.L.C.

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

October 12, 2006

Fax No: 302-476-6159
Mr. Ed McDowell
Recovery Services

Re:   **Cathy Cleiland**

Dear Mr. McDowell:

I understand that you have been in contact with my client, Ms. Cathy Cleiland. I further understand that you are attempting to collect on a debt related to an alleged over-payment of benefits. Because we have yet to receive the documentation required to be produced pursuant to ERISA, and because we have no documentation supporting the claim for alleged over-payment, I am unable to provide a response to your claim until such time as I receive the documentation required to be produced pursuant to ERISA.

Attached hereto you will find a request for production made pursuant to Ms. Cleiland's rights under ERISA. We look forward to receiving the documents outlined within that request. If you have any questions or concerns, please do not hesitate to contact me. I remain

Sincerely yours,

Thomas O. Sinclair

TOS/me
Enclosure
cc:   Ms. Cathy Cleiland
      Terry Key, Esquire



10/16/2006 10:36 FAX 3024766162          RECOVERY SERV INTL                    ☒003
OCT-12-2006 THU 03:39 PM CAMPBELL WALLER        FAX NO. 205███0053        P. 03



2100-A Southbridge P. kway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

September 5, 2006

**VIA FEDERAL EXPRESS**
Medha Bharadwaj
Appeal Claim Manager
CIGNA Disability Management Solutions
CIGNA Group Insurance
Routing 212
12225 Greenville Avenue, Suite 1000 LB 179
Dallas, TX 75243-9382

Re:   Claimant:      Cathy Cleiland
      Policy Keys:   FLK 20104\FLI50710\OK810692\ABL670620
      Account Name:  Temple Inland

Dear Mr. Bharadwaj:

1.   This firm represents Ms. Cathy Cleiland with regard to her claim for benefits under the various Temple Inland Employee Welfare Benefit Plans and/or Pension Plans. No further contact should be made directly with Ms. Cleiland. Any and all contact regarding any and all benefits should be directed to this firm.

2.   Under separate cover you have been provided a HIPAA Complaint Authorization along with a request for production. This request is made pursuant to Ms. Cleiland's rights under ERISA. In order to perfect her appeal, it is necessary for your companies to comply with the requests for productions so that Ms. Cleiland may be fully informed as to the basis of your denial of benefits.

3.   All prior document production authorizations are hereby terminated. Your company will be provided documents pursuant to HIPAA compliant requests signed from this date forward by Ms. Cleiland upon receipt of a request from your company. Once again, all prior authorizations are hereby revoked pursuant to Ms. Cleiland's rights under HIPAA. Any authorizations signed prior to the date of this correspondence by your company will constitute violations of HIPAA.

4.   Attached hereto are documents bates numbered CLE00001 through CLE00134. Because Ms. Cleiland has not been provided a full copy of the records pertaining to her claim for benefits and the documents which you have obtained during the course of that review, it is impossible to determine what documents have not been included in your review. We look forward to receipt of your production so that we may properly assess the need for additional documentation.

6.   You are hereby provided notice that Ms. Cleiland disputes your company's claim that she
     is able to perform in a sedentary occupation.

7.   Please reconsider your termination in light of the attached medical records and hold off
     making a final determination on this appeal until such time as we have sufficient time to
     review your document production. Please forward that production to my office as soon
     as possible to avoid any further delay.

8.   This appeal and documentation is provided pursuant to your invitation in the March 10,
     2006 correspondence wherein you state tha Ms. Cleiland "may request a review of this
     decision by writing to the Life Insurance of North America representative signing this
     letter at the address noted on the letterhead." "In addition to any written comments, your
     request for review must include any documentation you wish us to consider." Under the
     circumstances, it is impossible to tell if there is additional "new" documentation provided
     in the attached bates numbered documents without a review of your document production
     which we look forward to receiving.

9.   In your review of this claim, please consider the operative word "or" contained in the
     definition of disability after 24 months of disability. I do not believe that there is an
     analysis of whether or not Ms. Cleiland could earn 80% or more of her pre-disability
     indexed earnings.

     We look forward to receiving the documentation outlined in our document request letter.
Once we receive that documentation, we will provide additional correspondence, arguments,
position statements, documentation and further evidence of Ms. Cleiland's entitlement to benefits.

     In the alternative, and in light of the numerous and well-documented physically disabling
conditions suffered by Ms. Cleiland, we invite your company to immediately provide back
benefits, reinstate benefits, provide a reasonable amount of attorney's fees based upon the
Lodestar method along with interest on the past due benefits.

     I look forward to receiving your production and response to the offer of settlement
outlined above.


                                        Sincerely,

                                        'DICTATED, BUT NOT READ
                                        IN ORDER TO AVOID DELAY'

                                        Thomas C. Sinclair, Esquire

TOS/mc
Enclosures
cc:   Cathy Cleiland
      Terry Key


LINA/Cleiland 0360

OCT-12-2006 THU 03:40 PM CAMPBELL WALLER        FAX NO. 20● ●0053        P. 0



2100-A Southbridge Pa.  /ay • Suite 450
Birmingham • Alabama 35209
208 803-0061 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

September 5, 2006

**VIA CERTIFIED MAIL**
CIGNA Group Insurance
Routing 212
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243



Life Insurance Company of North America
1601 Chestnut Street
Philadelphia, PA 19192-2235

Temple-Inland, Inc.
Benefits Administration Committee
Plan Administrator
303 South Temple Drive
Post Office Drawer N
Diboll, TX 75941

        Re:    Cathy Cleiland

Dear Sirs:



        This firm has been retained by Cathy Cleiland with regard to a claim for benefits under the terms of the employee welfare benefit plan(s) or pension plan(s) in which the above referenced individual was a participant and/or beneficiary. Please direct any and all correspondence, and all contact regarding this matter, to this firm.

        If it is your company's contention that the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et. seq. applies in this matter, then please produce any and all "relevant" (as defined within 29 C.F.R. § 2560.503-1) documents to include the pol cy, summary plan description, or any other documents specified within 29 U.S.C. § 1001 et. seq. and 29 C.F.R. § 2560.503-1. These documents should include any and all information upon which you base your decision regarding any claim for benefits, and all documents pertaining to or referencing the employee welfare benefit plan(s) and/or employee pension plans under the terms of which the above referenced individual is or was a beneficiary and/or participants.

        These documents are requested pursuant to the rights specified within 29 U.S.C. § 1132 (c). Your response should include any "relevant" ERISA documents, plan documents, claim file documents, any manuals, disability guidelines, or any other documents pertaining to the guidelines under which the claim

LINA/Cleiland 0361

1/16/2006 10:38 FAX 3024766182          RECOVERY SERV INTL                          ✉ 006
OCT-12-2006 THU 03:40 PM CA●●ELL WALLER         FAX NO. 20●●0053              P. 06

was determined, and any brochures, handbooks, employee benefit guides, pension plan documents
detailing any and all benefits provided to the above referenced individual.

Sincerely

**"DICTATED, BUT NOT READ
IN ORDER TO AVOID DELAY"**

Thomas O. Sinclair, Esq.

TOS/mc
Enclosure
cc: Cathy Cleiland

LINA/Cleiland 0362

*Noemi Martinez-Landis*
*CIGNA Group Insurance*
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337

Phone: 800-352-0611 ext. 1249
Fax: 860-731-3211



**CIGNA Group Insura**
Life · Accident · Disability

MR. THOMAS SINCLAIR, ATTORNEY AT LAW
2100-A SOUTHBRIDGE PARKWAY
SUITE 450
BIRMINGHAM, AL 35209

February 26, 2007

| | |
|---|---|
| Name: | CATHY CLEILAND |
| Incident Number: | 613165 |
| Plan/Policy Number: | FLK0020104 |
| Plan/Policy Holder: | TEMPLE INLAND CORPORATE SERVICES |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. SINCLAIR,

This is to acknowledge the receipt of the voluntary appeal in reference to the above claim in the Dallas Appeals Team. The voluntary appeal will be managed by:

Noemi Landis
Appeals Claim Examiner
CIGNA Group Insurance
Dallas Appeal Team
12225 Greenville Avenue, 5th Floor
Dallas, TX 75243
PH: 800-352-0611 Ext 1249
FAX: 860-731-3022

As it is our understanding that you have submitted all the additional medical evidence you feel supports Ms. Cleiland's appeal, we will move forward with a review of all the evidence on file, including the additional documentation you presented to support this claim. This review takes between four to six weeks. We need this information to determine her functional ability, and whether your client qualifies for Total Disability benefits as defined under the contract. Should there be any delays, we will let you know the reason of the delay

Please contact our office at 800-352-0611 ext. 1249 should you have any questions.

Sincerely,

Noemi Martinez-Landis
Appeal Claim Manager

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.



CAMPBELL
WALLER &
POER, L.L.C.

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

January 18, 2007

Ms. Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager
CIGNA Group Insurance
D212
12225 Greenville Avenue, Suite 1000
Dallas, TX  75243-9337

     **Re:**    **Cathy Cleiland**

Dear Ms. Bharadwaj:

     Attached hereto you will find the vocational analysis report (Bates Nos. CLE00196 – CLE00220) regarding the above referenced claimant.  It is clear from the evidence that we have submitted to-date that Ms. Cleiland is entitled to benefits.  You have now been provided with detailed documentation regarding the various diagnoses that she has received from her physicians, the various restrictions and limitations arising from those diagnoses and now a detailed vocational analysis of those restrictions and limitations provided by her attending physicians.

     It is clear from the evidence submitted that Ms. Cleiland is entitled to benefits.

     Ms. Cleiland has now completed her submission of additional evidence and has provided your firm with more than enough evidence to support her claim for benefits.  You now have 45 days from the date of this correspondence to make the determination on her claim.  Failure to provide that determination within the 45-day period will result in triggering the deemed denial provisions under the Department of Labor Regulations.

     Sincerely,

     Thomas O. Sinclair, Esquire

TOS/me
Enclosures

●                                    ●

**CATHY CLEILAND**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA & CIGNA GROUP INSURANCE**

**FILE # 4135**

# DOCUMENTS PRODUCED

| NO. | DATE SUBMITTED | DOCUMENTS SUBMITTED TO | DOCUMENT BATES NUMBERS | DOCUMENTS SUBMITTED |
|-----|----------------|------------------------|------------------------|---------------------|
| 1. | 09/05/06 | CIGNA | CLE00001-CLE00134 | Documents Produced by CIGNA |
| 2. | 10/19/06 | CIGNA | CLE00135-CLE00137 | Medical Opinion of Steven D. Wise, M.D. |
| 3. | 11/03/06 | CIGNA | CLE00138-CLE00140 | Medical Opinion of Bret M. Johnson, M.D. |
| 4. | 11/27/06 | CIGNA | CLE00141 | CV of David P. Herrick, M.D. |
| 5. | 11/27/06 | CIGNA | CLE00142-CLE00149 | Updated medicals from Montgomery Pain Center |
| 6. | 11/27/06 | CIGNA | CLE00150-CLE00155 | 12/2/05 TD |
| 7. | 11/27/06 | CIGNA | CLE00156-CLE00157 | Claim File Letter |
| 8. | 11/27/06 | CIGNA | CLE00158-CLE00160 | CIGNA Doctor's Notes |
| 9. | 11/27/06 | CIGNA | CLE00161-CLE00195 | Sworn Statement of David P. Herrick, M.D. |
| 10. | 01/18/07 | CIGNA | CLE00196 – CLE0220 | Vocational Analysis Report of Mark Boatner, M.Ed., CRC |

January 18, 2007

LINA/Cleiland 0365



## Mark Boatner, M.Ed., CRC

## Boatner Rehabilitation & Counseling Service, Inc.
### ◆◆◆
P.O. Box 3723 ◆ 305 Point North Place, Suite Two ◆ Dalton, Georgia 30721
Phone 706-226-7385 ◆ Fax 706-226-5979

REPORT OF MEDICAL RECORDS REVIEW AND ASSESSMENT OF CAPACITY FOR
SUSTAINED PERFORMANCE OF GAINFUL WORK ACTIVITY

To: Mr. Thomas O. Sinclair
Campbell, Waller & Poer, L.L.C
Attorneys at Law
2100-A Southbridge Parkway; Suite 450
Birmingham, AL 35209

Re: Ms. Cathy Cleiland
}
Clio, AL 36017
SSN: ·
Date of Birth:                '; age 48 years, 6+ months
Date of Records Review and Report: January 13, 2007

REASON FOR REFERRAL
Attorney Thomas O. Sinclair represents Ms. Cathy Cleiland in her disability claim. Mr. Sinclair
sent to me a volume of medical records that pertain to Ms. Cleiland and the treatment that she
has had for her chronic neck and low back problems. He asked me to review those documents
and determine the Residual Functional Capacity, RFC, indicated by those documents. RFC refers
to the maximum sustainable capability that a person retains in spite of their medical problems.
Mr. Sinclair wanted me to state my professional vocational rehabilitation opinion regarding Ms.
Cleiland's ability or inability to perform all of the material duties of any underlying occupation
(other than her own regular occupation) for which she might reasonably become qualified based
upon education, training or experience. In addition, he wanted to know if she was unable to
perform any occupation solely due to injury or illness, such that she was unable to earn more
than 80% of her indexed or covered earnings.

The upshot of the medical records indicates that Ms. Cleiland has had three multilevel surgical
procedures to her cervical spine and three surgical procedures to her lumbar spine.
Administrative Law Judge Ricardo M. Ryan awarded Social Security Disability Income
Benefits, SSDIB, to Ms. Cathy Key (Cleiland) on May 26, 2005 after a review of the entire
medical record that included a consultative examination. She was 45 years of age at the time the
ALJ determined that she was unable to perform any job in the US national economy that existed
in significant numbers.

The medical records that Mr. Sinclair sent to me were from the following treating and consulting
sources:
- Dr. William Faircloth, MD, treating surgeon
- Dr. John E. Hackman, MD, treating surgeon

**CLE00196**

LINA/Cleiland 0366

- Dr. Mark N. Hadley, MD, treating neurosurgeon
- Dr. Adam R. Nortick, MD, treating pain management physician
- Dr. David P. Herrick, MD, treating pain management physician
- Dr. Scott C. Taylor, DO, insurance company records reviewer
- Dr. Steven D. Wise, M.D., letter to Mr. Sinclair & Medical Opinion Form dated 10-13-2006
- Dr. Bret M. Johnson, MD, Medical Opinion Form dated 10-27-2006
- Dr. David P. Herrick, MD, Sworn Statement dated November 13, 2006

In addition, Mr. Sinclair sent to me various documents that were as follows:
- CIGNA Group Insurance Policy number FLK 20104 (LTD) - denial of disability benefits
- Follow-Up Tasks records assigned to Kelli Archacki regarding Medical Requests, Provider Contacts, General Follow-Up, Claimant Contact, Outstanding Issues - various dates
- Notice of Decision, Fully Favorable by Social Security ALJ Ricardo M. Ryan, May 26, 2005
- Amendment to the Group Policy effective January 1, 1999 by Mr. John K. Leonard, President
- Mr. Medha Bharadwaj, appeal claim manager, denial of continuing coverage, letter dated March 10, 2006

REVIEW AND SUMMARY OF THE MEDICAL RECORDS REGARDING MS. CLEILAND
Ms. Cathy Cleiland has had a number of surgical procedures to her cervical and lumbar spine. The surgeries were performed by surgeons that found medical need for such invasive treatment based on a combination of the patient's subjective complains, findings of medical signs in the medical office and evidence on objective medical imaging studies.

Dr. William B. Faircloth, MD performed an anterior cervical fusion at C5-6 and used a right iliac crest graft on November 18, 1997. The medical diagnosis that indicated this treatment was necessary was a herniated nucleus pulposus at C5-6 on the right. The likely cause of that herniated cervical disc was a motor vehicle accident where another vehicle struck Ms. Cleiland's vehicle while she was stopped at a traffic signal. Dr. Faircloth reported her description of numbness in the medial aspect of her right arm as well as weakness in the right arm, pain in her right shoulder blade and occipital headaches. Left lateral rotation of her head caused right neck pain. She was most comfortable sitting or reclining with her neck supported. She had had a course of physical therapy that gave only short-lived relief for a few hours and the pain then returned. She reported intractable pain in her neck and right arm. A MRI showed the right-sided disc herniation at C5-6 that caused neural impingement. Dr. Faircloth also reported in his medical office note of November 18, 1997 that Ms. Cleiland had been diagnosed with diabetes mellitus at about age 20 and used 15 units of regular insulin each morning and 25 units of NPH each evening. At the time of her first neck surgery she was 40 years of age. She was married and had two children.

On January 15, 1999, Dr. William Faircloth, MD reported that he performed a right median nerve decompression to treat Ms. Cleiland's diagnosed right carpal tunnel syndrome. He noted that she had not improved following conservative care provided for her intractable right wrist pain.

On May 2, 2001 Dr. John E. Hackman, MD performed an anterior cervical discectomy and interbody fusion at C6-7 to treat the diagnosis of a disc herniation at that level. Dr. Hackman reported that she had indicated to him that she had never really recovered from her earlier

CLE0019

cervical surgery and her complaints were of pain in the right side of her neck and in her right shoulder and arm. She had failed conservative follow up treatment and had an abnormal MRI that showed the herniated disc at C6-7. Dr. Hackman indicated that he used donor bone graft from bone taken at the iliac crest site on the right. He also noted in his report that she had a history of a prior cervical surgery and a carpal tunnel surgery.

On June 24, 2002 Dr. John E. Hackman, MD reported performing an anterior cervical discectomy and interbody fusion at C4-5 with a bone graft from the right iliac crest. He reported that she had a history of two prior cervical surgeries and had been doing well until a recent motor vehicle accident. She had not improved with conservative treatment and a cervical myelogram and CAT scan was positive for an abnormal disc at C4-5. Dr. Hackman reported that Ms. Cleiland stated her right arm pain and neck pain had begun to increase prior to the motor vehicle accident that occurred on May 25, 2002. Her neck pain worsened after the accident and she had pain in her lower back as well. She attributed her low back pain to that same motor vehicle accident.

On May 21, 2003 Dr. John E. Hackman, MD performed a lumbar laminectomy on the left side at L4-5 for a diagnosis of lumbar radiculitis. Ms. Cleiland's complaints were of persistent left hip and leg pain with numbness that had worsened over the past year. She had a positive straight leg-raising test on the left leg. He was unable to obtain reflexes at her left knee and her left ankle. There was some toe weakness but no foot drop on the left. A magnetic resonance imaging scan showed disc bulging at L4-5 on the left with osteophytes. The disc protruded into the foramen. Dr. Hackman reported that she had immediate improvement of her symptoms noted on the day following surgery.

On July 14, 2003 Dr. John E. Hackman, MD admitted Ms. Cathy Cleiland into the hospital for pain management and diagnostic testing. On July 16, 2003 he performed a re-exploration at the L4-5 level on the left for the diagnosis of a recurrent disc herniation on the left there. The reason for the surgery was a return of her pain in the left hip and leg that had gotten progressively worse after an initial period of relief. A MRI scan showed a large extruded fragment at L4-5 on the left. Additionally there was a positive straight leg-raising test with the left leg.

On December 16, 2003 Dr. Mark N. Hadley, MD performed extensive surgery to Ms. Cleiland's lower back for the pre-operative diagnosis of lumbar instability with low back pain and left leg pain that included the plantar area of the left foot. The procedures that he performed were:
- L4-5 laminectomy and discectomy bilaterally with
- L4-5 internal fixation and fusion , bilaterally and
- L4-5 posterior lumbar dorsolateral interbody fusion, bilaterally with autologous bone
In his report of the operative technique that he used, he also described some of the anatomical abnormalities that he found. He stated that, "There was marked facet mobility, in fact, fractured facet at L4-5 level with collapse". Later, he noted that he, " worked around and through scar, and decompressed the exiting L5 nerve root, which was markedly compromised, as well as the exiting L4 root. There was tremendous scar here from the collapsed, fractured and failed facet... at L4 / L5 the markedly collapsed interspace here was identified. He noted that he had markedly increased, although not quite to normal, the interspace height from her preoperative collapsed circumstance."

Dr. Adam R. Nortick, MD, one of Ms. Cleiland's treating pain management physicians wrote a letter on December 19, 2005 to Ms. Kelli Archacki of Cigna Insurance. He stated his

CLE00198

professional reasons that supported Ms. Cleiland's application for L benefits and cited some of the "misquotes" of the insurance company. He stated that Ms. Cleiland had clearly indicated on her admission sheet and pain diagrams at the pain center that she had involvement with her hands and feet. The patient had been taking prescribed Neurontin for her tingling and numbness. He added that was not a new complaint and he did not feel that any additional documentation had been needed in that regard. He went on to state that, "Ms. Cleiland's medications have been stable over the last few months. However, this does not mean that she does not have ongoing problems, or that on any given day she may be more symptomatic than another. It is fairly common for patients like Ms. Cleiland to have unpredictable exacerbations of their problem along with a steady course, otherwise". He added that Ms. Cleiland was still symptomatic and that her symptoms are real. He offered to discuss the matter further if Ms. Archacki would only telephone him.

REVIEW AND SUMMARY OF THE MEDICAL OPINION FORM OF DR. WISE, MD
Dr. Steven Wise, MD is the endocrinologist who has treated Ms. Cathy Cleiland for her diabetes and peripheral neuropathy. He completed a Medical Opinion Form submitted to him by Mr. Sinclair regarding Ms. Cleiland's abilities for sustained full-time and part-time work as related to her diabetic condition. He listed in item number 1 the diagnosis of the medical problem that causes Ms. Cleiland's restrictions and limitations as, "Poorly controlled type 2 diabetes with peripheral neuropathy".

In item number 2 he noted that in an 8-hour workday, 5 days a week on a full-time basis Ms. Cleiland could be expected to be physically capable of the following activities:
- Sit - 8 hours out of 8-hours a day. He did not indicate the time per session that she could sit.
- Stand or walk - 2 hours out of 8-hours a day on the basis of 10 t 15 minutes at one time.

He did not list any comment in item number 3 regarding amount of weight and ratings of frequency that Ms. Cleiland could lift.

In item number 4 he indicated that Ms. Cleiland does not require bedrest during a normal workday.

Dr. Wise did not make any notation on item number 5 regarding the patient's need for rest periods during he normal workday.

In item number 6, Dr. Wise noted that Ms. Cleiland's subjective complaints seemed reasonable to him in view of his observations and diagnoses.

In item number 7, Dr. Wise indicated that Ms. Cleiland could not be reasonably expected to be reliable in attending an 8-hour a day, 40-hour workweek in view of the degree of pain, fatigue or other limitation that she experiences.
(Under this portion of the assessment alone, Ms. Cleiland would not have access to the labor market of full-time jobs since the 40-hour workweek is the cornerstone of regularly defined full-time work.)

In item number 8, regarding the pain that Ms. Cleiland reasonably suffers from, Dr. Wise rated her pain as "moderately severe" on a scale that ranges from "extreme, severe, moderately severe, moderate to mild".
(Pain that is credibly rated at the level of "moderately severe" or greater is taken as presumptive

CLE00199

that an individual could n● ●ustain any job on a regular and reoccur●●g weekly schedule.)

In item number 9, Dr. Wise indicated that the patient's medication would cause lapses in her abilities of concentration or memory on a regular basis to the extent that she could not attend to a task or be reliable in following work instructions. In the follow-up to the question, Dr. Wise opined that Ms. Cleiland's condition / medication would reasonably cause such lapses in concentration or memory on a daily basis for several hours each day.
(Under this portion of the assessment alone, Ms. Cleiland would not have the capability to perform any job at any level of skill due to the erosion of her abilities of concentration and memory at the frequency noted.)

In item number 10 regarding any restrictions that applied to environmental characteristics or locations of jobs, Dr. Wise left the item blank.

In item number 11, Dr. Wise noted that Ms. Cleiland does have a reasonable medical need to be absent from a full-time work schedule on a chronic basis. Chronic is defined as more than 4 absences during any monthly periods that would be attributable to any one medical condition or related conditions including absences for keeping medical appointments, having medical treatments, having diagnostic testing and related matters. In the follow up portion to the item, Dr. Wise estimated to the best of his ability and expertise that Mrs. Cleiland would reasonably have from 5 to 6 absences in any monthly period.
(Under this portion of the assessment alone, Ms. Cleiland would not have access to any regularly defined job title existing in the US national economy. The absenteeism survey reported by the Bureau of Labor Statistics indicates that employers take a disapproving view of employee absence and tardiness. Typically employers tolerate only about 4 to 8-hours of absence per month. In my experience of interviewing employers over the years in conducting labor market surveys and job placement, this comports with my findings. Thus, Ms. Cleiland could not maintain employment even if she secured a job that was otherwise commensurate with her education and past relevant work experience.)

Dr. Steven D. Wise then signed and dated the Medical Opinion Form on October 16, 2006.

REVIEW AND SUMMARY OF THE MEDICAL OPINION FORM OF DR. BRET JOHNSON
Dr. Bret Johnson completed and signed this document on October 27, 2006. The instructions to the form asked him to provide his opinion to a reasonable degree of medical certainty based upon his current treatment of the patient, Ms. Cathy Cleiland.

In item number 1, he stated the medical diagnosis of the problem that causes the patient's limitations and restrictions as follows:
1. Cervical spine HNP X 3 with C4-5 interbody fusion
2. Herniated disc (HNP) L4-5; history of interbody fusion L5- S1
3. Chronic neck / LBP secondary to numbers 1 & 2 above.

In item number 2 regarding an 8-hour workday, 5 days a week on a full-time basis, he indicated that Ms. Cleiland could be expected to be physically capable of the following activities:
• Sit - < 1 hour at a time out of an 8-hour workday
• Stand or walk - < 1 hour at a time out of 8-hours a day
(On the basis of this portion of the assessment alone, Ms. Cleiland would not be capable of performing any type of job that required either full-time or part-time attendance. The typical

CLE00200

work schedule for full-time jobs is based on the 40-hour workweek that is usually performed at 8-hours per day and 5 days per week or any equivalent schedule.)

In item number 3, Dr. Johnson indicated that Ms. Cleiland could lift / carry as follows:
- 1 to 5 pounds - frequently, that is, for up to ⅔ of a workday
- 1 to 10 pounds - occasionally, that is, for up to ⅓ of a workday
- 11 to 20 pounds - infrequently, that is, for very few times per day
- 21 to 25 pounds - never
- 50 pounds or greater - never

(On the basis of this portion of the assessment, Ms. Cleiland might be capable of performing jobs at the sedentary level of strength. However, in combination with the earlier assessment in item number 2, she would not be capable of performing any type of job since she would continue to be limited to "working" only about less than 2 hours a day.)

In item number 4, Dr. Johnson noted that Ms. Cleiland does require bedrest during a normal workday on the basis of 6 to 7 hours per day.
(Under this portion of the assessment alone, Ms. Cleiland would not be capable of performing any job that exists in the national economy since there are no jobs that allow a worker to regularly lie down and take bedrest during the normal workday.)

In item number 5, Dr. Johnson indicated that the patient does have problems with stamina and endurance which would require her to rest more than the usual and customary time periods of 30-minutes in the middle of the shift and a 15-minute periods in each half of the shift. He further indicated that Ms. Cleiland needs 40 minutes of rest for every 1 hour of work.
(Under this portion of the assessment alone Ms. Cleiland would be incapable of performing any job that exists in the national economy since this amount of rest is excessive and incompatible with meeting the production goals and completion of assigned tasks of any job.)

In item number 6, Dr. Johnson indicated that the patient's subjective complaints seemed reasonable to him in view of his observations and diagnoses.

In item number 7, the physician indicated that the patient could not be reasonably expected to be reliable in attending an 8-hour a day, 40-hour workweek in view of the degree of pain, fatigue or other limitations that she experiences.
(Under this portion of the assessment alone, Ms. Cleiland could not be successfully employed since the 40-hour workweek is the gold standard of employment that is used by the US Department of Labor and the Social Security Administration as well as by the greatest majority of employers of full-time workers in the nation.)

In item number 8 Dr. Johnson rated the degree of pain that Ms. Cleiland reasonably suffers as "moderately severe" (with pain medications) on a scale that ranges from "extreme, severe, moderately severe, moderate, to mild".
(Pain that is credibly rated as at the level of moderately severe or greater is presumptive that an individual could not sustain any gainful employment successfully on a full-time or part-time basis. Pain at that level superimposes the experience of unease to the extent that a person cannot focus effectively on anything else except finding relief from the pain.)

In item number 9, Dr. Johnson indicated that it is reasonable that the patient's pain, medical condition or medication would cause lapses in concentration or memory on a regular basis to the

CLE00201

LINA/Cleiland 0371

extent that Ms. Cleiland could not attend to a task or be reliable in following work instructions. He further indicated that these lapses in concentration or memory would occur on a daily basis for several hours a day.
(Under this portion of the assessment alone Ms. Cleiland would not be capable of sustaining any type of full-time or part-time employment since loss of cognitive ability for significant periods of time means the job is simply not being performed as the employer wants the job done.)

In item number 10, Dr. Johnson indicated that Ms. Cleiland should not work around heights as a result of her medical condition.

In item number 11, Dr. Johnson indicated that Ms. Cleiland does have a reasonable medical need to be absent from a full-time schedule on a chronic basis. Chronic is defined as more than 4 absences in any monthly period that is attributable to any one medical condition or related conditions including absences for required medical treatment, appointments, diagnostic testing and the like. He further estimated to the best of his ability and expertise that she would be absent in any month, "probably > 2 - 9 / week".
((Under this portion of the assessment alone, Ms. Cleiland would not have access to any regularly defined job title existing in the US national economy. The absenteeism survey reported by the Bureau of Labor Statistics indicates that employers take a disapproving view of employee absence and tardiness. Typically employers tolerate only about 4 to 8-hours of absence per month. In my experience of interviewing employers over the years in conducting labor market surveys and job placement, this comports with my findings. Thus, Ms. Cleiland could not maintain employment even if she secured a job that was otherwise commensurate with her education and past relevant work experience.)

Dr. Bret Johnson then dated and signed the document on October 27, 2006.

REVIEW AND SUMMARY OF THE SWORN STATEMENT OF DR. DAVID HERRICK
Attorney Thomas Sinclair took the sworn statement of Dr. David P. Herrick, MD after the physician agreed to speak the truth, the whole truth and nothing but the truth. The physician is Board-certified in Anesthesiology and Board-Certified as a pain management physician. He stated that he had been in practice of that specialty for more than 10 years.

On page 7, Dr. Herrick stated that Ms. Cleiland's medical diagnoses were cervical and lumbar degenerative disc disease and both cervical and lumbar failed surgery syndrome. The physician stated that there had been a number of MRI scans performed with regards to Ms. Cleiland's cervical spine and those documented evidence that she had severe degenerative disc disease in the cervical spine and later, in the lumbar spine. She had had multiple surgeries to each of those general areas of her spine and those included fusions of each area noted.

The physician stated that even after the multiple surgeries Ms. Cleiland continued to have symptomatic complaints. Dr. Herrick stated that he continued to treat Ms. Cleiland and he prescribed Schedule II narcotics for her. He also administered injections of steroids into her back from time to time for flare-ups of her pains there.

Mr. Sinclair asked Dr. Herrick on page 8 if there was any cure for Ms. Cleiland's problems and Dr. Herrick answered, "No." The physician indicated that his job was to keep Ms. Cleiland as comfortable as possible. He also indicated that the patient had been cooperative with all recommended medical treatment. He also indicated that from time to time she had complained of

CLE0020

some depression that he fe●was certainly expected and caused by h●ack pain.

Dr. Herrick indicated that Ms. Cleiland was going to require continuous treatment for her ongoing problems. She had been seen by numerous physicians and she had had numerous back surgeries. Her problems were not going to go away. Mr. Sinclair told the physician that the insurance company had stated that Ms. Cleiland's problems had stabilized and that her problems had been managed to the point that her issues were stable. Mr. Sinclair asked Dr. Herrick if that was a proper way to put the point. Dr. Herrick responded that that was a curious way to put it and he stated that he thought, "that she is managed as well as she can be managed". He added that he thought that she was a functional as she could be functional and he had been trying to discover an analogy to her situation. He used the metaphor of a "demolition derby automobile". He said that at the time of such events the cars used were pretty well damaged to begin with but they could still be driven around. He said that Ms. Cleiland was "pretty rough" at this time but she was stable if that is how someone wanted to state that. He added that she was still moving and she did function to some degree but she did not function in a normal fashion. She did not function as well as someone else her age who had not had all the problems that she had.

On page 12, Mr. Sinclair asked Dr. Herrick if it would be reasonable for Ms. Cleiland to expect to be able to work 40-hours a week just as any other individual who did not have those problems. Dr. Herrick answered, "No".

Mr. Sinclair asked the physician to list the medications that he prescribed for Ms. Cleiland and he stated that they were:
- Flexeril, a muscle relaxant
- Cymbalta, an antidepressant
- Phenergan, an anti-nausea medicine
- Protonix, used for gastroesophageal reflux disease
- Methadone, her primary pain medication - 50 milligrams per day in divided doses
- Duragesic, a patch form of Fentanyl, a pain medication - 25 micrograms every 72 hours
Dr. Herrick answered the attorney's question if those medications were necessary in the affirmative. He stated that Methadone is used for chronic, severe pain that would be so bad that it did not respond to simple medications and for pain that the physician did not expect to go away.

Mr. Sinclair asked about the combined effect of the prescribed drugs on Ms. Cleiland's ability to concentrate. Dr. Herrick said that it varied from person to person but the basic problem is that such pain is a distraction. Pain at the level that requires such medications is severe. The medications are potentially sedating and also dull the ability to respond to or face stressful situations.

The attorney then reviewed the medical reports contained in Dr. Herrick's medical file from the surgeons that had operated on Ms. Cleiland's neck and lumbar spine. Beginning on page 15 the records indicated the following procedures, surgeons and dates:
- November 1997; anterior cervical fusion at C5-6 by Dr. William Faircloth
- May 3, 2001; anterior cervical fusion at C6-7 by Dr. John Hackman
- June 25, 2002; cervical discectomy and interbody fusion at C4-5 by Dr. John Hackman
- May 22, 2003; lumbar laminectomy at L4-5 by Dr. John Hackman
- June 17, 2003; re-exploration laminectomy at L4-5 by Dr. John Hackman
- December 18, 2003; laminectomy and discectomy with fusion at L4-5 by Dr. Hadley

CLE00203

Mr. Sinclair asked Dr. Herrick on page 22 what the cumulative effect of all those surgeries were in Ms. Cleiland's case. Dr. Herrick said that in his opinion, "her back had been degenerative and had been, for lack of a better term, falling apart...So each procedure, certainly while in general it encompasses the intent of taking compression off the nerve or stabilizing the spine, at the same time makes the spine more vulnerable."

The attorney asked Dr. Herrick if Ms. Cleiland's current complaints of pain would be reasonable and the physician answered, "Absolutely". In follow-up he asked the physician if her current complaints of pain were related to her diagnosed conditions and Dr. Herrick answered, "Absolutely".

On pages 23, 24 and 25 Mr. Sinclair asked about an insurance company note dated August 16, 2005 that referenced a phone call from Kitty at Dr. Herrick's office that indicated the physician "was not disabling" Ms. Cleiland. In follow up to that matter Mr. Sinclair quoted that a person named Kelly Archacki said that she talked to Kitty in Dr. Herrick's office and was told that that physician "was not disabling" Ms. Cleiland. Dr. Herrick said that Kitty is a LPN that works in his office and she is not someone who is authorized to assign diagnoses to patients. Mr. Sinclair pointed out that, "what they may have done is simply lied and put a note in here". However, that note formed the basis of the insurance company's denial of benefits, that is, by claiming that Dr. Herrick was "not disabling" Ms. Cleiland. Dr. Herrick responded to questioning that he had not read the disability policy that pertained to Ms. Cleiland. As such, the physician was not qualified to tell whether Ms. Cleiland was disabled under the policy.

Beginning on page 26 Mr. Sinclair asked Dr. Herrick if it would be reasonable to ask Ms. Cleiland to lift 50-pounds every day and the physician said, "No". Mr. Sinclair asked him if Ms. Cleiland could work for 8-hours without bedrest and Dr. Herrick said, "No". Mr. Sinclair asked Dr. Herrick if Ms. Cleiland could stand for 4 or 5 hours per day and Dr. Herrick answered, "No".

Mr. Sinclair asked at the bottom of page 26 if it would be reasonable for Ms. Cleiland to require bedrest during the day and Dr. Herrick answered, "Yes". The attorney then asked if Dr. Herrick had ever had an insurance company to call his nurse and ask them whether or not a patient is disabled and Dr. Herrick responded, "No. It's not in the nurse's job description to be doing that. Now, I don't think Kitty did in this case either". Mr. Sinclair commented that he thought that note from the insurance company was a "little fabrication".

The attorney read to Dr. Herrick on page 27 from the notes of an insurance company internal, physician's review that stated that, "Based on medical data submitted, restrictions and limitations are not supported as evidenced by no current complaints of any radiating pain, numbness or tingling, no nerve testing, medication usage stable, and no current lab values to determine status of glucose. Attending physicians are not disabling her." Mr. Sinclair asked Dr. Herrick on page 28 if the physician agree with anything in that statement from the insurance company physician. Dr. Herrick said, "well, there's no treating physician that I've seen in any of this evidence here that has not disabled her. So I think that is certainly a stretch of the information that the doctor had before him". Mr. Sinclair asked Dr. Herrick if Ms. Cleiland had complaints of radiating pain currently and the physician answered, "Yes, she does". The attorney then asked if she had numbness and tingling currently and the physician answered, "Yes, she does". Mr. Sinclair asked if she had numbness and tingling back when the insurance company first issued the denial letter back at the end of last year and Dr. Herrick said, "Yes, she did". Dr. Herrick stated in response to the attorney's question of "medication usage stable" and what that meant as a "quantitative rating

**CLE00204**

of disability" that, "It had ● relationship to a quantitative rating of ● ability". Continuing on page 29, Mr. Sinclair asked Dr. Herrick about the internal insurance company notes of Dr. Scott Taylor, the CIGNA medical director, who indicated that based upon his file review the documents did not establish that Ms. Cleiland had a severe condition that warranted limitations and restrictions. Mr. Sinclair asked Dr. Herrick if he agreed with that diagnosis and Dr. Herrick stated, "You know, that's really kind of an absurd statement. No, I don't agree with that."

Mr. Sinclair asked in follow up about Dr. Herrick's opinion regarding Dr. Taylor's comment that there was no clinically measurable evidence to support deficits which would require restrictions and limitations as given by Dr. Herrick's office. Dr. Herrick stated that he absolutely did not agree with Dr. Taylor's statement.

The attorney then turned his attention to two Medical Opinion Forms that were completed by other of Ms. Cleiland's treating physicians. Mr. Sinclair pointed out that the purpose of the Medical Opinion Forms was not to discuss whether a person was disabled or not but rather to get an understanding of the restrictions and limitations that would apply to this patient. On page 31, Mr. Sinclair asked if Dr. Herrick's opinion remained that Ms. Cleiland did require bedrest during the course of a normal workday and the physician said that was his opinion. The attorney asked if Dr. Herrick thought that Ms. Cleiland would have problems with stamina or endurance that required her to take more than 30-mnute breaks during the workday and the physician answered, "yes". Mr. Sinclair asked if Ms. Cleiland's subjective complaints of pain seemed reasonable based upon the physician's observations and diagnoses and Dr. Herrick said, "Yes".

On page 32 Mr. Sinclair asked if Dr. Herrick thought it reasonable that Ms. Cleiland could be reliable in performing a 40-hour workweek and the physician answered, "No". Mr. Sinclair asked the physician how he would characterize Ms. Cleiland's complaints of pain and he said, "I would say they are severe". The attorney asked if the physician thought that the patient's medical condition would cause her to have lapses in concentration or memory that would cause her to be unreliable in a 40-hour workweek and the physician answered, "Yes". Mr. Sinclair then asked if Dr. Herrick would characterize Ms. Cleiland's condition as chronic and the physician answered, "Yes". Mr. Sinclair asked if there was a cure for Ms. Cleiland's condition at this point and Dr. Herrick said, "There is no cure".

The sworn statement closed by the physician making comment that whatever response the insurance company indicated they had gotten from Kitty, his office nurse, must have been taken way out of context. He said that Kitty had not have indicated in any way that Ms. Cleiland was not disabled. He thought that what had been implied was that the disability ratings and such had not been provided and his office had assumed that the surgeons would have given those ratings and placed restrictions upon Ms. Cleiland. Attorney Sinclair closed by indicating that there might have been a trick question in that someone from the insurance company might have asked the person who answered the telephone if that person could tell whether or not this person is disabled under this policy and the answer would have been, "No, we can't tell you". After closing comments the statement concluded.

## DISCUSSION OF TERMS AND STANDARDS REGARDING OCCUPATIONS
The Dictionary of Occupational Titles (DOT) is the standard treatise on classification of jobs in the national economy of the United States. The DOT lists definitions for 12,741 job titles. Work is classified in several ways and by several criteria. Among the most useful systems are those regarding strength and skill level of work since all jobs require both behavior and cognitive

CLE0020

ability to some extent by the worker. 

The United States Department of Labor (USDOL) embarked on a new venture several years ago to upgrade the database of the DOT and has named the effort the O*NET- short for the Occupational Information Network. This effort to revise and replace the venerable DOT remains under development and the USDOL has no plans to publish the 0*NET database in a book bound form. In fact, many, if not most of the job descriptions used in the 1,172 occupations listed in the O*NET are taken directly from the DOT. The last update of the DOT included descriptions of 12,741 job titles. Many of the general job descriptions in the O*NET are composites of job descriptions as such are found in the DOT. There has not been a widespread effort to upgrade the database in terms of new on-site job analyses according to the standards published in the Revised Handbook for Analyzing Jobs. There is a version available to anyone who has Internet access through the Bureau of Labor Statistics web site at onetcenter.org. The O*NET documents that I employ are published by JIST Works, Inc. of Indianapolis, Indiana. The writers include the following paragraph on page xxxvi of their 1998 volume:
"You have probably heard of "caveat emptor", which is Latin for "let the buyer beware". We think, "caveat dictum", which loosely translated means, "beware of the data", is particularly appropriate as our advice for regarding the O*NET data as the basis for settling legal issues."

Thus, until there is another systematic method set forth by the USDOL, the DOT remains the accepted document used by Vocational Rehabilitation Counselors, state boards of worker compensation, and the Social Security Administration.

Strength factors are rated by the amount of weight or force that a worker has to exert in order to lift, handle and carry in the usual pursuit of the job. The weight factors consider measurable characteristics as the magnitude, frequency and duration of an activity. The strength ratings used in the DOT are as follows:
- Very Heavy- lift over 100 pounds occasionally, frequently and constantly
- Heavy- lift up to 100 pounds occasionally, 50 pounds frequently and 25 pounds constantly
- Medium –lift up to 50 pounds occasionally, 20 pounds frequently and constantly
- Light – lift up to 20 pounds occasionally, 10 pounds frequently and negligible amounts constantly
- Sedentary –lift up to 10 pounds occasionally, and / frequently

Furthermore, in the definition of Light Work that appears on page 1013 of the 4th Edition of the Dictionary of Occupational Titles, published by JIST Works, Inc. of Indianapolis, Indiana is the **NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the force exerted is negligible.**

Sedentary work is further defined as jobs that are performed while the worker is sitting. The DOT definition indicates the worker sits for 6 out of 8 hours and stands / walks for a total of 2 out of 8 hours. Light work is further defined as jobs that are performed while the worker is standing for 6 out of 8 hours with provisions for sitting / walking for 2 out of 8 hours. Generally speaking, all unskilled sedentary jobs require the worker sit except for comfort breaks and to get more material to work with. Likewise, the unskilled light jobs require that the worker stand for all of the time on the job except for sitting to get under a machine, sort material or other related chores. The remaining strength categories of Medium, Heavy and Very Heavy work require that the worker stand and walk for all of the time on the job except for occupations where the worker

CLE0020

LINA/Cleiland 0376

uses foot / hand controls such as driving trucks, operating cranes, etc.

In the language of the DOT, the following definitions are used:
- Occasionally means up to one third of the time on the job (e.g. 2.5 of 8 hours)
- Frequently means from one third to two thirds of the time on the job
- Constantly means over two thirds of the time on the job

In addition, postural requirements of jobs are further specified in terms of physical demands / exertional requirements as listed below. Items 2 through 20 are also considered as non-exertional characteristics.
The DOT lists 20 physical demands and each is rated according to duration for each job. Each activity is identified as being required on an occasional, frequent or constant basis.
1. Strength – is discussed above.
2. Climbing –ladders stairs, scaffolding, ramps, poles, etc.
3. Balancing - to prevent fall from hazardous surfaces.
4. Stooping -(bending) the spine at the waist.
5. Kneeling –to come to rest on the knee or knees.
6. Crouching – bending legs and spine.
7. Crawling- by moving about on hands and knees.
8. Reaching- with hand(s) / arm(s) in any direction.
9. Handling – by seizing, holding, grasping or turning.
10. Fingering- by picking or pinching with finger(s).
11. Feeling- for size, shape, temperature, or texture.
12. Talking- to exchange ideas or information with others.
13. Hearing – the nature of sounds by the ear.
14. Tasting / Smelling- variations in flavors or odors.
15. Near Acuity- vision at 20 inches or less.
16. Far Acuity- vision at 20 feet or more.
17. Depth Perception- to judge distances.
18. Accommodation- quick near-point visual refocus.
19. Color Vision- to identify and distinguish colors.
20. Field of Vision- around the periphery of a fixed point.

The DOT also lists Environmental Conditions that are the surrounding in which a job is performed. An environmental condition is present when it is specific and job-related. The following is the list from the Dictionary of Occupational Titles:
1. WE - exposure to Weather - outside atmosphere
2. CO - extreme non-weather Cold temperatures
3. HO - extreme non-weather Hot temperatures
4. WT - exposure to Wetness and non-weather humidity
5. NO - Noise intensity level rated as Very Quiet, Quiet, Moderate, Loud, Very Loud
6. VI - Vibration of shaking objects or surfaces
7. AT - Atmospheric conditions (fumes, noxious odors, dust, gas, poor ventilation system, eye or skin)
8. MV - Moving mechanical parts hazard
9. EL - Electrical shock hazard
10. HI - High, exposed places hazard
11. RA - Radiation exposure hazard
12. EX - Explosion hazard

**CLE0020**

12

LINA/Cleiland 0377



13. TX - Toxic / Caustic chemical hazard
14. OT - Other significant hazards

Skill levels are rated by the amount of time required for a person to learn the techniques, acquire the information and develop the facility for average performance in a specific job / worker situation. These time frames are described by the Specific Vocational Preparation (SVP) levels listed in the DOT and other volumes published by the US Department of Labor. These SVP levels are:

1. Short demonstration only
2. Up to 30 days
3. 30 days to 3 months
4. 3 to 6 months
5. 6 months to 1 year
6. 1 to 2 years (certificate / AA degree)
7. 2 to 4 years (AA /BA /BS degree)
8. 4 to 10 years (MS / Ph.D.)
9. over 10 years

Skill refers to knowledge of a work activity, which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties. Skills are acquired through performance of an occupation which is above the unskilled level (requires more than 30-days to learn). A skill is a practical and familiar knowledge of the principles of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. A skill gives a person a special advantage over unskilled workers in the labor market.

SVP may be obtained from vocational education, civilian, military and institutional work experience and from apprenticeships and in-plant and on-the-job-training. The SVP ratings are an "average" amount of time required since some workers might require more time to learn the specifics of a job than others and vice versa.

The SVP ratings are further interpreted into skill levels, such that:
- SVP 1 & 2 are unskilled
- SVP 3 & 4 are semiskilled
- SVP 5, 6 & 7 are skilled
- SVP 8 & 9 are highly skilled

The DOT lists eleven (11) vocationally relevant aptitudes. Each aptitude is rated on a 5-point scale. The vocational aptitudes are:
- G- general intelligence
- V – verbal
- N – numerical
- S –spatial
- P –form perception
- Q –clerical perception
- K- motor coordination
- F –finger coordination
- M –manual dexterity
- E – eye-hand-foot coordination

CLE00208

13

LINA/Cleiland 0378



- .C – color discrimination

The aptitude rating scale is based on a high of 1 and a low of 5. The scale is defined as:
1. 90 to 99 percentile, Superior, GATB of over 125 (upper 10 % of the population)
2. 68 to 89 percentile, Above Average, GATB of 108 to 125 (upper third exclusive of the top 10%)
3. 34 to 65 percentile, Average, GATB of 92 to 107 (middle third of the population)
4. 1 to 33 percentile, Below Average, GATB of 56 to 91 (lower third of the population exclusive of the lowest 10%)
5. minimal ability / unable to perform (lowest 10% of the population)

GATB is the General Aptitude Test Battery and is the standard test instrument used by the US and state Departments of Labor. The APTICOM vocational testing system is used in private sector vocational rehabilitation to measure vocational aptitudes under the GATB system.

Each DOT job title is assigned a General Educational Development (GED) rating. GED depicts the formal and informal education which workers use to develop basic reasoning / direction following skills and language / math skills. GED embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature, which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, GED may be obtained from experience and self-study.

The GED scale is composed of three divisions: Reasoning Development, Mathematical Development and Language Development. The description of the various levels of language and mathematical development are based on the curricula taught in schools throughout the United States. An analysis of mathematics courses in school curricula reveals distinct levels of progression in the primary and secondary grades and in college. These levels of progression facilitated the selection and assignment of six levels of GED for the mathematics developmental scale.

However, though language courses follow a similar pattern of progression in primary and secondary school, particularly in learning and applying the principles of grammar, this pattern changes at the college level. The diversity of language courses offered at the college level precludes the establishment of distinct levels of language progression for these four years. Consequently, language development is limited to five defined levels of GED inasmuch as levels 5 and 6 share a common definition, even though they are distinct levels.

There are 6 GED levels with 6 equal to high and 1 equal to low. Each GED level corresponds to a grade level of education. The chart summarizes the scale:

| GED | | REASONING | MATH | LANGUAGE |
|---|---|---|---|---|
| High – | 6 | Intellectual | Advanced Calculus | Graduate School |
| | 5 | Scientific | Statistics | College |
| Average- | 4 | High School | Algebra | High School |
| | 3 | 7th to 8th grade | 7th to 8th grade | 7th to 8th grade |
| Low- | 2 | 4th to 6th grade | 4th to 6th grade | 4th to 6th grade |

**CLE00209**

14

**LINA/Cleiland 0379**

     

1      1st to 3rd grade        1st to 3rd grade        1 to 3rd grade

A matter of concern for vocational rehabilitation counselors, job placement counselors, Social Security Disability and the insurance industry is the matter of transferable skills. Transferable skills may be defined as using skills acquired in past work to apply to skilled or semiskilled activities of other jobs or other kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs. Job skills are not listed as such in any resource that I am aware of but there are lists of job titles arranged according to a number of different criteria. One may assume that jobs similarly arranged possess certain similar attributes or skills. Examples of these lists of jobs include:
- Census codes
- Data, People, Things - DPT
- Guide to Occupational Exploration – GOE
- Work Fields
- Materials, Products, Subject Matter and Services
- Industrial designation-Standard Occupational Classification (SOC) and Standard Industrial Code (SIC)
- Occupational Information Network- O*NET- a computer generated data base found at Internet address- online.onetcenter.org.

Transferable skills are best identified by persons with training and expertise in job analysis, vocational evaluation, job placement and job modification / accommodation. Transferability means applying work skills, which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs.

ASSESSMENT OF ACCESS TO THE LABOR MARKET

In order to calculate loss of access to the local and national labor market, it is necessary to estimate the pre-injury access to the labor market that a person possessed prior to injury, disease, accident that produced loss of function / loss of access to past work. I use a model based upon the frequency counts of occupations as listed in the Dictionary of Occupational Titles (DOT). As previously mentioned, this is not a perfect document yet no suitable replacement exists for it at the present time. Due to the limited numbers of jobs that skills transfer to, I use the database of unskilled job titles to calculate a pre-injury access to the labor market.

The DOT lists 12,741 job titles at all skill and strength levels. These matters are discussed in the Standards section of this report. Using the frequency counts of the DOT there are:
- 25 unskilled very heavy job titles
- 425 unskilled heavy job titles
- 967 unskilled medium job titles
- 1571 unskilled light job titles
- 137 unskilled sedentary job titles



These total 3125 job titles. By dividing 3125 by 12,741, a person with physical capacities up through the Heavy strength rated job titles had access to 24.53% of the jobs in the national or local economy. Even though not every job title listed in the DOT is available in every Metropolitan Statistical Area (geographical regions used by the United States Census Bureau- Division of the US Department of Labor), proportionally the numbers compare favorably. The proportions of job titles are:
- all sedentary job titles = 1,397 or 10.96 % of the labor market

CLE00210

- all light job titles = 6,3█ or 49.59% of the labor market
- all medium job titles = 3,770 or 29.59 % of the labor market
- all heavy job titles = 1,164 or 9.14 % of the labor market
- all very heavy job titles = 92 or .72% of the labor market

In order for me to further define the percentages of the labor market, the following chart applies:
- 137 unskilled sedentary job titles is 9.8 % of all sedentary job titles
- 1571 unskilled light job titles is 24.86 % of all light job titles
- 967 unskilled medium job titles is 25.64 % of all medium job titles
- 425 unskilled heavy job titles is 36.51 % of all heavy job titles
- 25 unskilled very heavy job titles is 27.17% of all very heavy job titles

The assessment of a person's residual functional capacity, RFC is an additional consideration for the vocational evaluator, adjudicator or trier of fact. RFC refers to the maximum sustainable capability that a person retains in spite of their medical problems. RFC has both an exertional and a non-exertional component. In fact, RFC may be defined as a multi-dimensional description of the work-related abilities, which an individual retains in spite of medical impairments (20-CFR, § 404.1545). RFC is an assessment based upon all of the relevant evidence. It may include descriptions (including those of the applicant) of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of the medical condition. The assessment of RFC is not necessarily a decision of whether or not a person is disabled but rather is used for determining the particular types of work that a person might be able to do in spite of their impairments. If a person is unable to perform their past relevant work due to medically determinable impairments then the evaluator considers if the RFC is compatible with other work that a person might be able to perform. Such other work might be simpler in cognitive demands and / or less strenuous from a physical demand frame of reference.

The task of the vocational evaluator / job placement counselor is to match the RFC with the requirements of work and identify job titles / jobs that exist that are compatible with the demonstrated or assessed RFC. Comparison is made with the RFC and the general standards of "regular duty" employment according to the standards set by the US Department of Labor as summarized in the relevant section of this report. If no match can be made between the demonstrated or assessed RFC and the world of work as jobs are ordinarily performed in the local or national economy, then a person is said to have a 100% vocational disability rating. Stated another way, the person has no access to the labor market as a result of their medically determinable impairment(s).

I use the following outline to define a rationale for the determination of vocational disability rating and assessment of access to the labor market:
1. History of the presenting problem
A. Injury, accident, cause – review of medical treatment records and diagnosis
B. History of medical treatment – conservative care, surgery, recuperation, pain management
C. MMI – Residual Functional Capacity – comparison with the world of work and consideration of the IW's age, education, work experience

2. RFC – the residual functional capacity is the most that a person can still do in spite of their limitations and restrictions - parameters
A. Exertional capabilities – magnitude, frequency and duration – how big, how often and how long might the person perform the following 7 strength demands

CLE00211

LINA/Cleiland 0381

a. sitting
b. standing
c. walking
d. lifting
e. carrying
f. pushing
g. pulling

B. Non-Exertional capabilities – those abilities that do not depend on an individual's strength
a. postural – stooping, climbing, crawling, crouching, kneeling
b. manipulative – reaching, handling, fingering, feeling
c. visual – seeing – near and far acuity
d. communicative – hearing and speaking
e. environmental – tolerance of temperature extremes, dust, fumes, odors
f. mental – understanding, remembering and following instructions; responding appropriately to supervisors, co-workers and work situations; dealing with changes in the routine work setting

3. Effect of symptoms on exertional and / or non – exertional limitations and restrictions
a. Pain – might cause limitations of strength, reaching or any of the 7 strength demands
b. Pain / depression or psychiatric diagnosis – might also cause limitations of concentration, attention, capacity for persistence and pace regarding task completion
c. Pain / depression or psychiatric diagnosis – might reduce incidence / duration of sleep – lead to ease of fatigability, falling asleep during the normal waking period, failure to meet job attendance requirements, etc.
d. Pain / depression or psychiatric diagnosis – might lead to other symptoms such as isolation, social withdrawal, loss of interest in formerly pleasurable activities, weight gain or loss, pervasive loss of interest, insomnia, fatigue, diminished ability to think or concentrate, indecisiveness, feelings of worthlessness, inappropriate or excessive guilt, suicidal ideation with or without a specific plan.
Whenever any manifestation such as pain, fatigue, shortness of breath, weakness or nervousness, etc. is an anatomical, physiological or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical "sign" rather than a "symptom".

CONCLUSIONS
I reviewed all of the medical documents listed in the first section of this report as well as the other documents that I noted that Mr. Sinclair had sent to me. While reviewing the medical records I paid attention to those reports of objective medical findings as shown by MRI scans, x-rays and by medical signs elicited upon physical examination of treating and examining physicians. I paid particular attention to the medical records of treating surgeons, pain management physicians and the general medicine practitioner. I gave less weight to the opinion of non-examining physicians when such individuals only quoted the parts of other practitioner's medical records that would support conclusions of a RFC compatible with work. The insurance company physicians apparently did not consider the records in their entirety as evidenced by the functional capacities they indicated. The Administrative Law Judge of the Office of Hearings and Appeals, Division of the Social Security Administration wrote a decision that carefully and specifically enumerated the well-considered reasons that supported his conclusion that Ms. Cathy Cleiland did not possess the exertional and non-exertional capabilities for any job at any level of strength or skill. The examining orthopedist for the SSA carefully enunciated his reasons that

CLE0021

LINA/Cleiland 0382

supported his assessment of functional capacity that was incompatible with any regularly defined job title or actual job that occurs in significant numbers in the national economy.

All jobs have requirements of both exertional and non-exertional characteristics. The exertional requirements correspond to the five strength demand categories listed in the Dictionary of Occupational Titles , DOT. The non-exertional characteristics refer to postures, positional capabilities, mental abilities and environmental surroundings required in the various workplaces where jobs occur. All full-time jobs require that employees meet attendance schedules of 40-hours per week based on 8-hours a day for 5-days per week or any equivalent schedule. Full-time work requires that employees spend 2080 hours per year in gainful effort on the jobs they hold.

The Medical Opinion Forms completed by treating physicians indicate that Ms. Cleiland does not possess the sustainable RFC for sedentary or light-strength rated job titles. Furthermore, the absenteeism rate that she would exhibit is incompatible with the usual and customary tolerances as published in "Absenteeism Tables" by the Bureau of Labor Statistics, division of the US Department of Labor. Typically, workers must devote 260 days per year to a full-time job schedule. Five days per week multiplied by 52-weeks per year equals 260 days. Employers typically have certain expectations of employees in terms of goals, productivity targets, quality control and the like. Absenteeism at the rate of one day per month is excessive and would most likely trigger an application for a Family Medical Leave application or termination from employment. Estimated absenteeism at the rate of two to nine days per month is clearly excessive and incompatible with a full-time work schedule.

Medically determinable impairments that demonstrate an inability of a person to sit, stand and walk on the "at will" basis of 8-hours per day and five days per week for 52 weeks per year provide support for a conclusion that that person is unable to be gainfully employed at any full-time job. Furthermore, when there is a reasonable basis for the allegations of pain, that pain must be regarded as having an adverse effect on a person's capacity for sustained gainful activity. A solid work history over many years demonstrates motivation for work. Ms. Cathy Cleiland also has some evidence of a depression that her pain management physician believes is caused by her chronic and severe back and neck pain.

Ultimately, the most reasonable vocational rehabilitation conclusion regarding Ms. Cleiland is that she is not a candidate for job placement or re-training because of the individual physical limitations and restrictions that apply to her. She is unable to remain in any gainfully employed capacity due to her chronic pains in her neck and upper extremities as well as by her back pain and the radiating pain in her lower extremities. She suffers cognitive deficits in that her attention is unreliable due to lapses in concentration and memory on a daily basis for several hours per day due to her pains and the strong narcotic medication that she uses as prescribed by her physicians. Ms. Cleiland's vocational disability rating is 100%. She does not have any access into the labor market at any job regardless of skill level or strength requirements. She would be unable to perform at any satisfactory level of expectation in even the most accommodated of jobs by the most benevolent of employers. She does not possess the sustainable functional capacity required for sedentary work or any other rating of work. As her physician, Dr. Herrick observed, there is no cure for Ms. Cleiland's problems and the best that medicine could hope to do is try to keep her as comfortable as possible. She is not capable of working at her past work or at any other work.

CLE00213



I have based my conclusions on a reasonable degree of vocational rehabilitation certainty. This report is most respectfully submitted by,

Mark Boatner, M.Ed., CRC, LPC



 **Mark Boatner, M.Ed., CRC** 

# Boatner Rehabilitation & Counseling Service, Inc.
### ◆ ◆ ◆
P.O. Box 3723 ◆ 305 Point North Place, Suite Two ◆ Dalton, Georgia 30721
Phone 706-226-7385 ◆ Fax 706-226-5979

January 13, 2007
### LIST OF DEPOSITIONS AND COURT TESTIMONY IN THE PAST FOUR YEARS
**2007**
January 5, 2007 - Hearing testimony given in the civil matter of Mr. John E. Avitt versus Ms. Holly D. Avitt, case number 05-869; in the Chancery Court of Tennessee for the 11th Judicial Circuit at Chattanooga, Chancellor Frank Brown presiding. Mr. Hal North and Mrs. Valerie Richardson represented Mr. John Avitt and Ms. Leslie McWilliams represented Ms. Holly Avitt.

**2006**
November 13, 2006 - Discovery deposition given in the Tennessee worker compensation claim of Mr. Daniel Mendiola / Enrique Navarrete in the law office of attorney Bryan Hoss. Mr. Byron Lindberg represents the employer / insurer and Mr. Hoss represents the claimant. The case is set to be heard in the Chancery Court of Bradley County, Tennessee before Judge Jerri Bryant.

October 13, 2006 - Trial testimony given in the Chancery Court, Part 1, Knox County, Tennessee with Judge Weaver presiding; in the matter of the Tennessee worker compensation case of Mr. Javier Lopez versus Southland Building Company. Mr. Rodney H. Bennett represented Mr. Lopez and Ms. Debra Fulton represented the employer.

September 9, 2006 - Deposition given in the conference room of Mr. Christopher E. Sanspree of the law firm Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. representing Mrs. Barbara Ducoffe. Requested by Mr James S. Williams of the law firm Sirote & Permutt, P.C. representing UnumProvident Insurance and Protective Life Insurance, Co. This is Civil Action Number CV-04-1701 filed in the Circuit Court for the Judicial Circuit in and for Jefferson County, Alabama.

August 9, 2006 - Trial testimony in the Tennessee worker compensation claim of Mrs. Rebecca Harris versus Signal Centers, UCP before Chancellor Jeffrey Stuart in the Chancery Court of Rhea County in Dayton, Tennessee. Ms. Rebecca Hicks represented the claimant and Ms. Elaine M. Youngblood and Mr. Kent Thomas Jones represented the employer. The docket number was 9526.

July 21, 2006 - Trial Testimony in the Georgia worker compensation claim of Mrs. Sandra Evans versus Walmart Stores, Inc. before Administrative Law Judge David Whittenburg in the Municipal Courtroom in Rome, Georgia. Mr. Michael R. Eddings represented Mrs. Evans and Mr. John Stunda represented the employer. The case file number was 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.

June 12, 2006 - Evidentiary deposition in the Tennessee worker compensation claim of Mr. Grady Samuel Graden in the Circuit Court of Anderson County, Tennessee. Mr. Thomas L. Wyatt represents Mr. Graden and Ms. Kristi D. McKinney represents the employer, KHS&S Contractors. The case number is A4LA0450.

**CLE0021**

# EXHIBIT 1 TO EXHIBIT A
# Part 8

May 12, 2006 - Trial testimony in the Tennessee Worker Compensation claim of Mr. Michael Aldrich in Lewisburg, Tennessee in the Circuit Court of Marshall County, Judge Lee Russell presiding. Ms. Barbara G. Medley represented Mr. Aldrich. The employer, Saturn Corporation was represented by attorney, Mr. Cliff Wilson. Attorney Janis Mize represented the Tennessee Second Injury Fund. The docket number is 16103.

March 10, 2006 - Trial testimony in the Tennessee Worker Compensation claim of Mr. Earl Douglas Tryon in Lewisburg, Tennessee in the Circuit Court for Marshall County, Judge Lee Russell presiding. Ms. Barbara G. Medley represents Mr. Tryon and Mrs. Marcia McShane Watson represented the employer, Saturn Corporation. The docket number is 15843

March 7, 2006 - Discovery deposition given in the Tennessee Worker Compensation claim of Mr. Earl Douglas Tryon, by telephone. Deposition taken by Mrs. Marcia M. Watson representing the Saturn Corporation and attended by Ms. Barbara G. Medley, representing Mr. Tryon. The matter is set to be heard in the Circuit Court for Marshall County, Tennessee at Lewisburg before Chancellor Lee Russell. The docket number is 15843.

February 13, 2006 - Deposition given in the Georgia Worker Compensation claim of Mrs. Robin Sellars, state claim number 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 versus Piggly Wiggly Store number 116 and Management Services, Inc. the servicing agent. Mr. Tommy D. Goddard represents Mrs. Sellars and Mrs. Jennie Halenza Tavares represents the employer / insurer. The case is set for hearing before Honorable Dixon Belk, Administrative Law Judge.

2005

November 14, 2005 - Discovery deposition given in the civil suit of plaintiffs, Nancy V. Kinsey and Tony Kinsey, individually as the natural parents of Samantha Kinsey versus Dr. Ismail Esener, MD, defendant. Deposition given in the conference room at the law offices of Mr. Jessie Vaughn of Coppedge, Leman & Vaughn in Calhoun, Georgia, who are representing the plaintiffs. Mr. John McCown of Minor, Bell & Neal represents the defendant in civil action file number 34278.

November 9, 2005 - Testimony in the civil suit of plaintiff, Mrs. Lisa Barker versus defendant, Kathy Marie Kennedy and R.G. & Associates given in the Circuit Court of Hamilton County, Tennessee at Chattanooga. Honorable Judge L. Marie Williams presiding in civil case number D1C1884. Mr. Bryan H. Hoss represented Mrs. Barker and Mr. Randolph Andy Veasey represented the defendants.

October 24, 2005 – Testimony in the civil suit of plaintiff, Mrs. Karen Lewis versus defendant, Juanita Smith given in the Circuit Court of Coffee County in Manchester, Tennessee. The Honorable Judge Jerry Smith presiding in civil case number 32, 375. Mr. Robert A. Croy represented Mrs. Lewis and Mr. Herbert J. Seivers, III represented Ms. Smith.

September 30, 2005 – Discovery deposition given in my office in the civil suit of plaintiff, Mrs. Karen Lewis versus defendant, Juanita Smith. Mr. Robert A. Croy represents Mrs. Lewis and Mr. Herbert J. Seivers, III represents the defendant. Case set for jury trial in the Circuit Court of Coffee County in Manchester, Tennessee, case number 32,375.

August 29, 2005 - Discovery deposition given in the Tennessee civil action of Mrs. Lisa Barker versus Mrs. Kathy Marie Kennedy at the law office of Mr. Bryan H. Hoss. Mr. Hoss represented

**CLE00216**

the plaintiff, Mrs. Barker and Mr. Randolph Andy Veasey represented Mrs. Kennedy. The case was set for the Circuit Court of Hamilton County at Chattanooga before honorable Judge L. Marie Williams, case number D1C1884.

July 29, 2005 – Evidentiary deposition in the Georgia worker compensation case of Mr. Bernard Vanderhorst versus Dekalb Medical Center taken at the law offices of Kissiah & Lay in Alpharetta, Georgia. Mr. Cornelius B. Scott represents Mr. Vanderhorst and Mr. James Jackson represents the employer. The case is Georgia WCB 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.

July 20,2005 – Evidentiary deposition in the Georgia worker compensation case of Mrs. Kathryn Barrett taken at my office in Dalton, Georgia. Mr. Tommy D. Goddard represented Mrs. Barrett and Mr. Robert F. Hamilton represented the employer / insurer – Jackson- Hewitt Tax Service and Travelers Insurance Company. The Georgia WCB case number is 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.

June 3, 2005 – Trial testimony in the Tennessee worker compensation case of Mr. William Steve Holton versus Marshall County and the Tennessee Second Injury Fund, Division of the Tennessee Department of Labor in the Chancery Court of Marshall County at Lewisburg. Ms. Barbara G. Medley represented Mr. Holton and Mr. Andrew Saulters represented Marshall County; Ms. Janis Mize represented the Second Injury Fund.  Judge Lee Russell presided. The case number was 16087.

April 25, 2005 – Trial testimony in the Tennessee worker compensation case of Ms. Sherry Parker versus Bradley County Government. Chancery Court Judge Jerri Bryant presided. Attorney Bert Bates represented the plaintiff, Ms. Parker. Attorney Tom Hasty represented the defendant, Bradley County. The case number was 03-220.

2004

September 27, 2004- Proof deposition in the Tennessee worker compensation case of Mrs. Patricia Hicks G. Lambert versus DuPont for the trial scheduled before Chancellor Jeffrey F. Stuart in the Chancery Court of Rhea County, Tennessee. Mr. J. Shannon Garrison represented Mrs. Lambert and Mr. Gerald Siciliano represented DuPont.

August 26, 2004-Trial testimony in the Tennessee Worker Compensation case of Mr. John Shelton versus Central Mutual Insurance Company in the Chancery Court of Bradley County, Tennessee before Chancellor Judge Jerri Bryant. Attorney Bert Bates for the claimant and attorney Lanny Goins for the defense. The case number was 00237.

August 12, 2004- Trial testimony in the Tennessee Worker Compensation case of Mr. Lucner Marc versus U.S. Express and Liberty Mutual Insurance Company in the Chancery Court of Hamilton County, Tennessee before Judge W. Frank Brown. Mr. Gary W. Starnes represented Mr. Marc and Mr. David Nagle represented the defendants. The case number was 02-0420.

July 23, 2004- Trial testimony in the Tennessee Worker Compensation case of Mr. Jolly Walls, Jr. versus Orion Building Corporation in the Chancery Court of Marshall County, Tennessee before Judge Lee Russell. Ms. Barbara G. Medley represented Mr. Walls and Mr. Robert K. Davies represented the defendants. The case number was 15707.

April 2,2004-Trial testimony in the matter of the Tennessee worker compensation case of Jeannie Ruby Hefner versus McKee Foods in the Chancery Court of Hamilton County, Part II

**CLE0021**

LINA/Cleiland 0387

before Chancellor Howell N. Peoples. Mr. Gary W. Starnes represented Mrs. Hefner and Mr. Bruce Bailey represented McKee Foods. The case number was 99-0056.

March 10, 2004-Discovery deposition taken at the law office of Spicer, Flynn & Rudstrom, PLLC in Chattanooga, Tennessee in the Tennessee worker compensation claim of Mr. Rickey Suttles versus Frontier House Restaurant and the Travelers Insurance Company. Mrs. Michelle Fowler represented defendant, Mr. Quinn Windham, represented the Tennessee Second Injury Fund, Mr. James Paris represented the claimant. The case will be set before the honorable Chancellor Jeffrey F. Stuart in the Chancery Court of Rhea County, Tennessee; Civil Action number 9629.

February 9, 2004-Discovery deposition taken at the law office of Swift, Currie, McGhee & Hiers, LLP in Atlanta, Georgia in the worker compensation claim of Mr. Robert Jones, Jr. versus Masterack / Leggett & Platt. Georgia Worker Compensation claim number 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; date of injury: 05-04-2001. Mr. Cornelius B. Scott for the plaintiff and Mr. David W. Willis for the defense.

January 26, 2004- Discovery deposition taken at the law office of Mr. David Blackburn in Dalton, Georgia in the personal injury matter of Johnny Dwayne Martin versus RWT, Inc., American Central Insurance Company and Michael L. Hudson d/b/a M & S Trucking. Attorneys for the defense were Ms. Stephanie Collins Patel and Mr. Jeff N. Mykkeltvedt. The case is filed in the Superior Court of Murray County, Georgia, civil action number 01-CI-939.

January 16, 2004- Discovery deposition taken at the law office of Mr. Jeffrey Rufolo of Summers & Wyatt in the Tennessee worker compensation case of Mr. Glenn Clifton versus Komatsu and the Tennessee Second Injury Fund. Mr. Wilson Von Kessler represented the employer and Ms. Janis Mize listened via telephone for the Second Injury Fund. The case is scheduled for trial in the Chancery Court of Sequatchie County in Dunlap, Tennessee before Chancellor Jeffrey F. Stuart. The docket number is 1932.

January 9, 2004- Discovery and proof depositions taken at the law office of Mr. Walter W. Bussart in the Tennessee worker compensation claim of Mr. Danny Jett versus Irving Materials Company and Zurich American Insurance Company. Mr. Steven B. Morton represented Irving Materials. The case is scheduled in the Chancery court of Marshall County, Tennessee at Lewisburg and the case number is 12560.

January 5, 2004 - Discovery deposition at the law office of Mr. Wilson Von Kessler of Spicer, Flynn & Rudstrom, in the Tennessee worker compensation case of Mr. Claude Vaughn. Mr. Howard Upchurh represented Mr. Vaughn and Mr. Von Kessler represented the Suburban Manufacturing Company. The matter is scheduled with the Circuit Court of Rhea County, Tennessee at Dayton before Judge Jeffrey F. Stewart. The docket number is 21475.

2003

December 3, 2003-Testimony in the Chancery Court of Rhea County, Tennessee in Dayton in the worker compensation case of Mr. Freddie Lee Morgan versus the Roberts Concrete Company and the Tennessee Insurance Guarantee Associates. Mr. Gary W. Starnes appeared for Mr. Morgan and Mr. William Lockett appeared for the fund. Honorable Jeffrey F. Stuart presiding. Docket number 9516.

November 14, 2003-Testimony in the Chancery Court of Hamilton County, Tennessee in the

CLE00218

LINA/Cleiland 0388

workers compensation case of Ms. Sheila Owens versus McKee Foods, Inc. Mr. Bruce Bailey and Mr. Chuck Lawson for the defendant and Mr. Gary W. Starnes for the plaintiff. Honorable Howell N. Peoples presiding. Docket number 01-0032; part II.

June 6,2003-Testimony given in the Chancery Court of Hamilton County, Tennessee in the Tennessee Worker Compensation case of Ms. Kimbra Dunning. Mr. Robert W. Sauser, Esq. Was attorney for the defendant, Lifecare Centers of America. Mr. Gary W. Starnes was the attorney for the plaintiff. The docket number was 01-0046. Honorable Howell N. Peoples presided in the matter.

May 1,2003-Deposition at the law office of Mr. Howard Upchurch in the worker compensation case of Mr. Chris Hankins. Mr. Scott Johnson of the Fleissner Firm took the deposition representing the La-Z-Boy Company. This is civil case 21458 in the Circuit Court of Rhea County, Tennessee before Honorable Chancellor Jeffrey F. Stuart.

February 28, 2003-Deposition at my Dalton, Georgia office in the matter of Mr. Ronald D. Steakley versus Jet Corporation & Powermatic, Tennessee Worker Compensation case. Attorney Howard Upchurch for the plaintiff and attorney Austin Pedigo for the defendant. In the Chancery Court of Van Buren County, Tennessee; civil action number 1170.

January 15,2003-Deposition at my Dalton, Georgia office in the matter of Ms. Linda Lindsey, Tennessee worker compensation case. Attorney Gary Starnes for the plaintiff and attorney Bartlett Quinn for McKee Foods, defendant. In the Chancery Court of Hamilton County, Tennessee; Case Number 00-0064, Part II, honorable Judge Howell N. Peoples presiding.

Since August 1996 I have provided impartial Vocational Expert testimony in Social Security Disability cases- both SSDIB and SSI- through the Office of Hearings and Appeals located at 5751 Uptain Road in Chattanooga, Tennessee. I usually participate in 45 to 65 cases per month depending upon the schedule of the various administrative law judges. I have provided this type of impartial vocational testimony every month since the agency determined that I met the SSA guidelines to be considered a vocational expert after my application in July 1996. I have testified in approximately 6000 Social Security hearings since that time and have a schedule of appearances at this time.

This list of depositions and court appearances to provide vocational testimony is accurate to the best of my knowledge and belief.

Most respectfully submitted,

Mark Boatner, M.Ed., CRC



2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

November 27, 2006

Ms. Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager
CIGNA Group Insurance
D212
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

Re:    **Cathy Cleiland**

Dear Ms. Bharadwaj:

Attached hereto you will find the sworn statement taken under oath of Dr. Herrick, one of Ms. Cleiland's attending physicians. Attached to his statement under oath you will find additional medical records and assessment forms bates numbered CLE00141 through CLE00195.

We are still awaiting production of the information outlined in my prior correspondence so that we may properly assess the reasons for denying this lady's claim. We have yet to receive a response to our correspondence requesting the information and production and I am beginning to get a little worried that the company is refusing to produce the information the claimant needs in order to properly assess the basis for the denial of this claim. Please be advised that ERISA provides for certain statutory remedies for failure to produce the documents. The new Department of Labor Regulations enacted in January 2002 specified the broad scope of the nature of the documents that must be produced. Please provide those documents as soon as possible.

Sincerely,

Thomas O. Sinclair, Esquire

TOS/me
Enclosures

**CATHY CLEILAND**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA & CIGNA GROUP INSURANCE**

**FILE # 4135**

| NO. | DATE SUBMITTED | DOCUMENTS SUBMITTED TO | DOCUMENT BATES NUMBERS | DOCUMENTS SUBMITTED |
|-----|----------------|------------------------|------------------------|---------------------|
| 1. | 09/05/06 | CIGNA | CLE00001-CLE00134 | |
| 2. | 10/19/06 | CIGNA | CLE00135-CLE00137 | |
| 3. | 11/03/06 | CIGNA | CLE00138-CLE00140 | Dr. Johnson |
| 4. | 11/27/06 | CIGNA | CLE00141 | Dr. Herrick CV |
| 5. | 11/27/06 | CIGNA | CLE00142-CLE00149 | Updated medicals from the Montgomery Pain Center |
| 6. | 11/27/06 | CIGNA | CLE00150-CLE00155 | 12/2/05 TD |
| 7. | 11/27/06 | CIGNA | CLE00156-CLE00157 | Claim File Letter |
| 8. | 11/27/06 | CIGNA | CLE00158-CLE00160 | CIGNA doctor's notes |
| 9. | 11/27/06 | CIGNA | CLE00161-CLE00195 | Sworn Statement of Dr. David P. Herrick |
| 10. | | | | |

November 27. 2006

LINA/Cleiland 0391

## FREEDOM COURT REPORTING

Page 1

1

2

3                                           **ORIGINAL**

4    IN RE:   CATHY CLEILAND

5

6

7

8

9

10              *  *  *  *  *  *  *  *  *  *  *  *

11        SWORN STATEMENT OF DAVID P. HERRICK, M.D.,

12    taken before Jackie Parham, Certified

13    Shorthand Reporter and Commissioner for the

14    State of Alabama at Large, in the offices of

15    The Center for Pain Management, 2065 East

16    South Boulevard, Montgomery, Alabama, on

17    Monday, the 13th day of November, 2006,

18    commencing at approximately 7:15 a.m.

19              *  *  *  *  *  *  *  *  *  *  *  *  *

20

21

22

23

CLE00161

LINA/Cleiland 0392

**FREEDOM COURT REPORTING**

Page 2

1    APPEARING ON BEHALF OF CATHY CLEILAND BY PHONE:

2    THOMAS O. SINCLAIR, ESQUIRE

3    Campbell, Waller & Poer

4    Suite 450

5    2100-A SouthBridge Parkway

6    Birmingham, Alabama   35203

7

8           * * * * * * * * * * * * *

9                INDEX OF EXHIBITS

10   Exhibit 1 (CV) ........................ 4

11   Exhibit 2 (Cigna letter, Center ...... 5

12        for Pain Documents)

13   Exhibit 3 (Center for Pain  .......... 9

14        Documents)

15   Exhibit 4 (Discharge Summary from  ... 14

16        Dr. Faircloth)

17   Exhibit 5 (Discharge Summary from  ... 17

18        Dr. Hackman)

19   Exhibit 6 (Dr. Hackman's Notes) ...... 18

20   Exhibit 7 (Dr. Hackman's Notes) ...... 19

21   Exhibit 8 (Dr. Hackman's Notes) ...... 20

22   Exhibit 9 (Discharge Summary from  ... 21

23        Dr. Hadley)

CLE001(

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM. ALABAMA 1-877-373-3660**

LINA/Cleiland 0393

**FREEDOM COURT REPORTING**

Page 3

1    Exhibit 10 (Documents from Cigna) .... 23

2    Exhibit 11 (Cigna Documents) ......... 24

3    Exhibit 12 (Cigna Document) .......... 27

4    Exhibit 13 (Cigna Document) .......... 29

5    Exhibits 14 and 15 (Medical  ......... 30

6        Opinion Forms)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

CLE00163

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

LINA/Cleiland 0394

**FREEDOM COURT REPORTING**

Page 4

1        DAVID P. HERRICK, M.D.,

2        The witness, after having first been duly

3    sworn to speak the truth, the whole truth, and

4    nothing but the truth, testified as follows:

5                    EXAMINATION

6    BY MR. SINCLAIR:

7    Q.    Good morning, Doctor.

8    A.    Good morning.

9    Q.    My name is Tom Sinclair, and I'm the

10         attorney for Ms. Cathy Cleiland.  I'm

11         going to ask you a few questions.  First

12         off, if we can, Doctor, let's take a look

13         at what's previously been marked as

14         Exhibit Number 1 to your sworn statement

15         here.

16              (Exhibit 1 previously marked

17              for purposes of identification)

18    Q.    That's Bates-numbered CLE141 at the

19         bottom.  Is that your current CV?

20    A.    Yes, it is.

21    Q.    I notice that you are Board-certified in

22         pain management.  Can you please tell me

23         what requirements there are for Board

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

CLE00164

LINA/Cleiland 0395

**FREEDOM COURT REPORTING**

Page 5

1    certification in pain management?

2   A.    Board certification in pain management by

3         the American Board of Anesthesiology

4         requires being Board-certified in

5         anesthesiology and then completing a

6         fellowship in pain management, passing a

7         test.  In my case, I've been through both

8         the original certification and the

9         recertification, because my -- I've been

10        at this more than ten years.

11  Q.    Well, we won't tell the folks how long

12        you've been at it.

13  A.    Okay.

14  Q.    You're right.  You have.  I also notice

15        you have the Board certification in

16        anesthesiology.  Are there any other,

17        besides those two certifications, that you

18        hold?

19  A.    No.

20             (Exhibit 2 previously marked

21               for purposes of identification)

22  Q.    Okay.  Let's march on then if we can to

23        Exhibit Number 2, which are a stack of

CLE0016

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

LINA/Cleiland 0396

**FREEDOM COURT REPORTING**

Page 6

1   documents that are Bates-numbered CLE70

2   through 126. Do you have that document or

3   that exhibit in front of you?

4   A.   Exhibit Number 2 marked CLE00070; is that

5        it?

6   Q.   Yes.

7   A.   Yes.

8   Q.   Okay. I will tell you that these are

9        documents we received from your office in

10       response to a Request for Production that

11       we've issued. First off, if I can have

12       you -- can you tell me what Ms. Cleiland's

13       diagnosis is currently? And I tell you

14       what, Doctor, I may be able to speed this

15       along a little bit if you'd like.

16  A.   Sure.

17  Q.   And maybe give you some of the history as

18       we go through the records here.

19  A.   Right. I mean, I can answer that question

20       right now if you'd like me to, or however

21       you want to do this.

22  Q.   Please go ahead.

23  A.   Okay. She has, among other things,

CLE00166

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM. ALABAMA 1-877-373-3660**

LINA/Cleiland 0397

## FREEDOM COURT REPORTING

1      cervical and lumbar degenerative disk

2      disease and both cervical and lumbar

3      Failed Surgery Syndrome.

4  Q.   All right.  Let's, first off, deal with

5      the first diagnosis if we can, the

6      cervical lumbar disk disease.  How do you

7      come by that diagnosis?  What factors do

8      you consider?

9  A.   It's multifactorial.  But it boils down to

10     the fact that she has had -- that she has

11     documented evidence of severe degenerative

12     disk disease in both the cervical and

13     lumbar spine from numerous MRIs.  It also

14     is documented by the fact she's had

15     multiple surgeries of both the cervical

16     lumbar spine, including fusions of both

17     the cervical and lumbar spine.

18  Q.   Okay.  And I believe we have some of those

19     records before us today, and we'll get to

20     those in a second.  But you also gave her

21     a diagnosis of failed surgery -- I'm

22     sorry.  I'm saying this wrong -- Failed

23     Surgical Syndrome?

CLE0016

LINA/Cleiland 0398

**FREEDOM COURT REPORTING**

Page 8

1    A.    Yes.

2    Q.    What is that, please?

3    A.    Well, multiple surgeries, repeat surgeries

4          with continued pain and continued

5          symptomatic complaints.

6    Q.    Okay.  Let me ask you, Doctor, is your

7          office currently treating Ms. Cleiland?

8    A.    Yes.

9    Q.    Is her current treatment -- or please tell

10         us what her current treatment is.

11   A.    Her current treatment is predominantly

12         medical management, which means that she's

13         being managed using Schedule 2 opioids or

14         very strong narcotic pain medicine, to use

15         a lay term.  She also has had an

16   .     occasional injection of steroids into her

17         back for flareups, so to speak, of her

18         back pain.

19   Q.    Okay.  Well, let me ask you, because I am

20         a layman, or even worse, a lawyer.  Is

21         there a cure for what ails her?  Is there

22         some cure that the medical profession can

23         offer her to cure her failed back

CLE00168

LINA/Cleiland 0399

## FREEDOM COURT REPORTING

Page 9

1    syndrome?

2  A.  No.

3  Q.  Okay. So at this point it comes down to

4      just trying to make her life as

5      comfortable as possible?

6  A.  Yes.

7  Q.  Okay. Has she refused any treatment from

8      your office?

9  A.  None that I'm aware of.

10 Q.  Okay. Has she, to your knowledge, ever

11     complained of depression secondary to her

12     physical condition?

13 A.  I believe she has complained some of

14     depression. However, I think depression

15     is certainly expected and secondary to her

16     -- and caused by her back pain.

17 Q.  Thank you, Doctor.

18             (Exhibit 3 previously marked

19               for purposes of identification)

20 Q.  Let's set aside Exhibit 2 then and go to

21     the next exhibit, which is Exhibit 3. The

22     documents are Bates-numbered CLE142 to

23     149. And I will tell you that these are

CLE00169

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

LINA/Cleiland 0400

**FREEDOM COURT REPORTING**

Page 10

1   updated medical records we had faxed from

2   your office in preparation for today.  If

3   you can, take just a moment to look at

4   those, and I'm going to ask you some

5   questions about her current treatment.

6   And let me know when you've had a moment

7   to look at those.

8   A.   Okay.

9   Q.   Okay.  Let me ask you, Doctor -- As a

10  layman, I'm not sure I understand

11  everything that she's been through.  But

12  is she going to require continuous

13  treatment?

14  A.   Yes.  I mean, she's got a very complex

15  history.  She's been seen by numerous

16  physicians, had numerous back surgeries.

17  She has problems that are not going to go

18  away.  They're going to have to be managed

19  over time using whatever we have at our

20  disposal.  In the case of pain,

21  predominantly pain medicines.  But her

22  problems are not going to go away, in my

23  opinion.

CLE00170

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

LINA/Cleiland 0401

## FREEDOM COURT REPORTING

Page 11

1  Q.    Well, let me ask you, the insurance

2        company in this case has indicated that

3        her problems have stabilized.  Have her

4        problems been managed to the degree where

5        her issues are stable?  Is that a proper

6        way to put it?

7  A.    That's a curious way to put it.  I think

8        that she is managed as well as she can be

9        managed.  I think that she is as

10       functional as she can be functional.  And

11       I was thinking about some way to try to

12       describe this.  And I can use an analogy,

13       if you would like.

14  Q.   Please.

15  A.   Okay.  To me, it's kind of like a

16       demolition derby.  You know, the cars they

17       use in demolition derby are not -- you

18       know, they're pretty much -- they're

19       damaged to begin with.  And she's, you

20       know, still driving around in the

21       demolition derby, but she's looking pretty

22       rough right now.  So she's stable, if you

23       want to put it that way, from the point of

CLE00171

LINA/Cleiland 0402

**FREEDOM COURT REPORTING**

Page 12

1    view that she is still moving.  She still

2    functions to some degree.  She certainly

3    does not function in a normal fashion, and

4    she doesn't function as well as somebody

5    else her age who didn't have all these

6    problems would be functioning.

.7   Q.   And that's an excellent analogy, by the

8         way, Doctor.  Thank you.  I have a

9         question that really kind of relates to

10        that.  Would it be reasonable for this

11        particular patient to expect she'd be able

12        to work forty hours a week just as any

13        other individual who didn't have these

14        conditions?

15   A.   No.

16   Q.   Okay.  You mentioned earlier Schedule 2

17        opioids.  And I'm sorry.  Can you tell us

18        what her current meds are right now?

19   A.   Just a second.  Let me look that up.

20   Q.   Sure.  And I believe you'll find that in

21        Exhibit 3 on those most recent notes

22        hopefully.

23   A.   Right.  I'm going back to the carbon

**367 VALLEY AVENUE**                     CLE001
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

LINA/Cleiland 0403

**FREEDOM COURT REPORTING**

Page 13

1   copies we keep because it's the best

2   record that we have.  And I'm looking at

3   her original chart here.  She's taking a

4   medicine called Flexeril, which is a

5   muscle relaxant.  She is taking Cymbalta,

6   which is an anti-depressant.  Phenergan,

7   which is an anti-nausea medicine.

8   Protonix, which is a medicine for

9   gastroesophageal reflux disease.  And her

10  primary pain medicine is a medicine called

11  Methadone, which is a Schedule 2 opioid.

12  She's taking 50 milligrams per day in

13  divided doses.  In addition to Duragesic,

14  which is a patch form of the medicine

15  called Fentanyl.  And it is also a

16  Schedule 2 opioid.  She's taking 25

17  micrograms of that every 72 hours.

18  Q.   Doctor, are these medications reasonably

19       necessary to treat her condition?

20  A.   Yes.

21  Q.   In prescribing, for example, Methadone,

22       would you prescribe that for somebody who

23       had, say, for example, a bruise or a

CLE00173

LINA/Cleiland 0404

## FREEDOM COURT REPORTING

Page 14

1     headache?

2  A.    No.  Methadone is used for chronic, severe

3        pain, in other words, pain that is really

4        bad that doesn't respond to simple

5        medications and pain that you don't expect

6        to go away.

7  Q.    Well, let me ask you, what is the combined

8        effect on the ability to concentrate of

9        all these different drugs?

10 A.    It varies from person to person.  You

11       know, it is quite possible you can take

12       these medicines and be of clear enough

13       mind to function.  The basic problem is,

14       you have pain that is such a distraction

15       that you're having to take these

16       medicines.  So you're up against severe

17       pain, plus taking medicines that are

18       potentially sedating, that potentially

19       dull your ability to respond or to face

20       stressful situations.

21              (Exhibit 4 previously marked

22                 for purposes of identification)

23 Q.    Okay.  Let's march off so we can get you

**FREEDOM COURT REPORTING**

Page 15

1     back to treating patients.  Let's take a

2     look -- If you can set aside Exhibit 3 and

3     take a look at Exhibit 4.  We're going to

4     very briefly cover the basis for your

5     diagnosis for Failed Surgical Syndrome.

6     And I think I've got all the surgeries

7     actually gathered here before us finally.

8     So if we can take a look real quick and

9     make sure that these are the records

10    you're referring to.

11  A.    Okay.

12  Q.    Exhibit 4, which is Bates-numbered CLE261

13    to 133.

14  A.    Yes.

15  Q.    That is actually a Discharge Summary from

16    Dr. William Faircloth dated November 1997.

17    Do you see that?

18  A.    Yes.

19  Q.    He indicates that they performed an

20    anterior cervical fusion at C5-6, an

21    anterior cervical diskectomy and right

22    iliac crest graft.  Doctor, I've got to

23    tell you, I don't understand a single

**367 VALLEY AVENUE**
CLE001
**(205) 397-2397 BIRMINGHAM. ALABAMA 1-877-373-3660**

LINA/Cleiland 0406

## FREEDOM COURT REPORTING

Page 16

1    thing that they -- what they're

2    describing. Can you tell us in layman's

3    terms what that operation entails?

4  A.    Okay. It involves removing the disk at

5    C5-6, which is in the neck. And it

6    involves taking a piece of bone from the

7    hip and taking that bone, putting it where

8    the disk was, and then bolting the two

9    vertebrae together.

10  Q.    That sounds painful. I mean, are we

11    looking at that bone being sufficient to

12    cause somebody -- potentially cause

13    somebody long-term pain?

14  A.    Well, people respond to that in different

15    ways. I mean, certainly, you know, the

16    neck problem is the primary problem. You

17    also sometimes run into problems with pain

18    coming from the site where you took the

19    bone for the graft, which would be the hip

20    in this case. So it's not uncommon for

21    people to have residual pain after that

22    surgery.

23  Q.    Okay. So, essentially, Ms. Cleiland has a

LINA/Cleiland 0407

**FREEDOM COURT REPORTING**

Page 17

1    piece of bone from her hip and a plate in

2    her neck at C5-6, right?

3  A.    Correct.

4              (Exhibit 5 previously marked

5              for purposes of identification)

6  Q.    Okay. March on to Exhibit 5 if we can

7    then. Exhibit 5 is Bates-numbered CLE56

8    to 60. And it is a Discharge Summary

9    dated May 3rd, 2001 from Dr. John Hackman.

10   And in that Discharge Summary he indicates

11   that he performed an anterior cervical

12   diskectomy interbody fusion at C6-7 with a

13   bone graft from the right iliac crest.

14   Would you please tell us what that

15   entails?

16  A.    That procedure is similar to the procedure

17   we just described. Again, the disk at

18   C6-7 is removed. A bone graft was taken

19   from the right hip and placed at C6-7.

20   And then the disks were bolted together.

21   I'm sorry, not the disks. The vertebrae

22   were bolted together.

23  Q.    Okay. Would C6-7 be above or below C5-6?

LINA/Cleiland 0408

## FREEDOM COURT REPORTING

Page 18

1   A.   It would be below C5-6.

2   Q.   Okay.  So we're marching down

3        Ms. Cleiland's neck as we replace parts

4        here, is what it boils down to?

5   A.   Correct.

6   Q.   Let's take a look at -- The previous two

7        surgical procedures that we've described

8        here, would either one of those be

9        guaranteed one hundred percent recovery to

10       precondition levels?  I mean, are these

11       cures for back pain in Ms. Cleiland's

12       case?

13  A.   Sometimes they are, sometimes they're not.

14       Nothing is ever guaranteed.

15            (Exhibit 6 previously marked

16             for purposes of identification)

17  Q.   Let's take a look at Exhibit 6 if we can.

18       It's Bates-numbered CLE37 to 42.  It's a

19       discharge date of June 25th, 2002 from

20       Dr. John Hackman.  And in it he describes

21       an interbody fusion at C4-5 with bone

22       grafts -- it appears to be another

23       cervical diskectomy just continuing on up

CLE00178

**FREEDOM COURT REPORTING**

Page 19

| | | |
|---|---|---|
| 1 | | her neck this time; is that right? |
| 2 | A. | That's correct. |
| 3 | Q. | Okay.  So we essentially have three |
| 4 | | different portions of her spine that's |
| 5 | | been replaced at this point? |
| 6 | A. | That's correct. |
| 7 | | (Exhibit 7 previously marked |
| 8 | | for purposes of identification) |
| 9 | Q. | Okay.  Let's take a look at Exhibit 7 if |
| 10 | | we can.  It's Bates-numbered CLE30 to 34. |
| 11 | | And I'm sorry.  Am I going too fast here? |
| 12 | A. | No.  You're good for me. |
| 13 | Q. | Exhibit 7 is a discharge date -- or |
| 14 | | Discharge Summary of 5/22/2003.  Once |
| 15 | | again, it appears to be Dr. John Hackman. |
| 16 | | This is, I guess, the same laminectomy. |
| 17 | | Is that a different procedure?  It |
| 18 | | indicates lumbar laminectomy at L4-5. |
| 19 | A. | Right.  A laminectomy would be a procedure |
| 20 | | in this case in the lumbar spine, in the |
| 21 | | lower back, where usually a part of the |
| 22 | | lamina or the bone of the vertebrae is |
| 23 | | removed, and that would be to take some of |

LINA/Cleiland 0410

Page 20

1    the pressure off the nerve.  In this case

2    it was the L4-5 nerve on the left.

3  Q.    Okay.  So that's a completely different

4        procedure from the cervical diskectomy at

5        C4-5?

6  A.    Yes.

7  Q.    So, essentially, she had, within the span

8        of a couple of days it appears, two

9        different surgical procedures.  And now

10       we're talking about having four parts of

11       her spine that have been operated on as of

12       this date?

13 A.    That's correct.

14            (Exhibit 8 previously marked

15             for purposes of identification)

16 Q.    Okay.  Let's march on then if we can to

17       Exhibit 8.  Exhibit 8 is marked CLE22 to

18       CLE24.  It appears to be a June 17th, 2003

19       Discharge Summary from Dr. John Hackman

20       once again.  And in this he describes a

21       reexploration laminectomy at L4-5.  Can

22       you please tell us what that entails?

23 A.    A reexploration means he's going back and

**FREEDOM COURT REPORTING**

Page 21

1    looking at something that's already been

2    looked at.  In this case he's going back

3    to L4-5 to look for something else at that

4    level that may be still there or newly

5    there causing problems at the L4-5 level

6    on the left.

7  Q.    Okay.

8  A.    And, so, he went back and actually took a

9    little bit more bone, a little bit more

10    disk off the nerve at L4-5 on the left.

11        (Exhibit 9 previously marked

12            for purposes of identification).

13  Q.    Okay.  All right.  And I believe the last

14    we have as far as past surgical procedures

15    at this point would be Exhibit 9, which is

16    Bates-numbered CLE1 to CLE5.  That's a

17    Discharge Summary dated December 18th,

18    2003 from Dr. Hadley.  Do you see that?

19  A.    I do.

20  Q.    Okay.  Please tell us what that procedure

21    entailed, that surgical procedure, please.

22  A.    This procedure describes an additional

23    laminectomy and diskectomy.  In other

CLE00181

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

LINA/Cleiland 0412

**FREEDOM COURT REPORTING**

Page 22

1   words, they're taking a little bit more

2   bone, a little bit more disk out from

3   L4-5. And they're also placing in fusion

4   hardware, which is hardware that actually

5   bolts the vertebrae together so that you

6   take some of the instability out of the

7   spine.

8   Q.   Okay. Doctor, let me ask you, what's the

9        cumulative effect of all these surgical

10       procedures on a spine in Ms. Cleiland's

11       case?

12   A.   Well, the surgeries have been there, in my

13        opinion, because her back has been

14        degenerative and has been, for lack of a

15        better term, falling apart. Any time you

16        operate on a spine, you take something

17        away from the spine. You're taking away

18        some of the structure that holds the spine

19        together or supports the spine. So each

20        procedure, certainly while in general it

21        encompasses the intent of taking

22        compression off the nerve or stabilizing

23        the spine, at the same time makes the

CLE0018

LINA/Cleiland 0413

## FREEDOM COURT REPORTING

Page 23

```
1         spine more vulnerable.
2    Q.   Okay.  Let me ask you, wouldn't
3         Ms. Cleiland's complaints -- in light of
4         these procedures, would her current pain
5         complaints be reasonable?
6    A.   Absolutely.
7    Q.   Okay.  Are her current complaints of pain
8         reasonably related to these surgical
9         procedures or the -- I'm sorry.  Let me
10        say that again.  Are her current pain
11        complaints reasonably related to her
12        diagnosed conditions?
13   A.   Absolutely.
14               (Exhibit 10 previously marked
15                 for purposes of identification.)
16   Q.   Okay.  All right.  Let's march on then to
17        Exhibit 10, Bates-numbered 150 to 155.
18        It's a December 7th, 2005 letter from the
19        insurance company in this case denying her
20        claim.  If you would, take a look at the
21        page Bates-numbered 151.  And I believe
22        I've highlighted a paragraph there on that
23        page wherein the insurance company states
```

CLE00183

LINA/Cleiland 0414

## FREEDOM COURT REPORTING

Page 24

1   on 8/16/05, "We received a telephone call

2   from Kitty" at -- I believe they're

3   referring to your office there, stating

4   that your office is not disabling

5   Ms. Cleiland.  Do you see that?

6   A.   I do see that.

7          (Exhibit 11 previously marked

8           for purposes of identification)

9   Q.   And let's flip on now if we can to Exhibit

10   11, which is Bates-numbered 156 and 157.

11   That's actually from the claim file

12   produced by the insurance company in this

13   case, a phone log note wherein it's an

14   indication that somebody at the insurance

15   company by the name of Kelly Archacki

16   talked to Kitty from your office, and

17   Kitty stated that your office was not

18   disabling Ms. Cleiland.  Do you see that

19   note?

20   A.   Tell me the page number again on that.

21   Q.   Exhibit 11.

22   A.   Okay.

23   Q.   156.

CLE00184

LINA/Cleiland 0415

**FREEDOM COURT REPORTING**

Page 25

1   A.    156.  Okay.

2   Q.    It's a very --

3   A.    Yes, I see it.  Yes.

4   Q.    First off, let me ask you, who is Kitty?

5   A.    Kitty is an LPN nurse here in my office.

6   Q.    Is Kitty somebody who provides diagnoses

7         of patients?

8   A.    Absolutely not.

9   Q.    Okay.  And I've seen this before, Doctor.

10        I'm not even suggesting Kitty said that.

11        But what they may have done is simply lied

12        and put a note in here.  But this is the

13        basis for their denial, claiming that your

14        office was not disabling her.  And

15        understand, I'm not asking whether or not

16        she's disabled under the terms of the

17        insurance policy.  Have you even looked at

18        her insurance policy in this case?

19  A.    No.

20  Q.    Well, then you wouldn't be qualified to

21        tell me whether or not she was disabled

22        under that policy, right?

23  A.    No.

## FREEDOM COURT REPORTING

Page 26

1  Q.   What I am asking you is, based upon her

2       diagnosis, what would you consider to be

3       reasonable restrictions and limitations

4       for this woman?  In other words, could

5       Ms. Cleiland, for example, lift fifty

6       pounds every day?

7  A.   No.

8  Q.   Could she be expected to work eight hours

9       in a day without any bedrest?

10 A.   No.

11 Q.   Could Ms. Cleiland stand for four or five

12      hours a day working?

13 A.   No.

14 Q.   Would it be reasonable for Ms. Cleiland to

15      require bedrest during the day?

16 A.   Yes.

17 Q.   Okay.  And we'll get to those -- the rest

18      of those restrictions and limitations.

19      But this is the basis for the insurance

20      company's denial.  Have you ever had an

21      insurance company call your nurse and ask

22      them whether or not a patient is disabled?

23 A.   No.  It's not in the nurse's job

CLE0018(

LINA/Cleiland 0417

**FREEDOM COURT REPORTING**

Page 27

1   description to be doing that.  Now, I

2   don't think Kitty did in this case either.

3   Q.   I don't think she did either.  I think

4   this is a little fabrication.

5              (Exhibit 12 previously marked

6              for purposes of identification)

7   Q.   Take a look at Exhibit 12 if we can.  This

8   is where they take Kitty's comments --

9   supposedly Kitty's comments and try to

10  twist them a little bit more.  If you'll

11  take a look at Exhibit 12, which is 158 --

12  Bates-numbered 158.  Down at the bottom,

13  I've blocked off some text down there.

14  These are notes from their internal

15  physician's review.  And you see there,

16  says, "Based on medical data submitted,

17  restrictions and limitations are not

18  supported as evidenced by no current

19  complaints of any radiating pain, numbness

20  or tingling, no nerve testing, medication

21  usage stable, and no current lab values to

22  determine status of glucose.  AP's --

23  Attending physicians state they are not

CLE0018

LINA/Cleiland 0418

## FREEDOM COURT REPORTING

Page 28

1    disabling her."

2         Doctor, do you agree with anything in

3    that statement?

4    A.   Well, there's no treating physician that

5         I've seen in any of this evidence here

6         that has not disabled her.  So I think

7         that is certainly a stretch of the

8         information that the doctor had before

9         him.

10   Q.   Well, let me ask you this:   Does

11        Ms. Cleiland have complaints of radiating

12        pain currently?

13   A.   Yes, she does.

14   Q.   Does she have numbness and tingling

15        currently?

16   A.   Yes, she does.

17   Q.   Did she have numbness and tingling back

18        when they first issued this denial letter

19        back at the end of last year in December?

20   A.   Yes, she did.

21   Q.   Okay.  They claim that her condition is --

22        Medication usage stable.  Doctor, what

23        does that mean as a quantitative measure

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM. ALABAMA 1-877-373-3660**

CLE00188

# FREEDOM COURT REPORTING

Page 29

1     of disability?

2   A.   It has no relationship to a quantitative

3        rating of disability.

4             (Exhibit 13 previously marked

5                for purposes of identification)

6   Q.   Okay. Exhibit 13, if we can. And I'm

7        almost done, and I'll let you get back to

8        being a doctor. And thank you for your

9        time today.

10  A.   You're welcome.

11  Q.   Exhibit 13. Pages 159 and 160 are the

12       internal notes of Dr. Scott Taylor, who's

13       the CIGNA Medical Director at the

14       insurance company. On page 160, if you'll

15       look down there at the bottom of that

16       page, he indicates based upon his file

17       review that the documents don't establish

18       that she has a severe condition that

19       warrants limitations and restrictions. Do

20       you agree with that diagnosis?

21  A.   You know, that's really kind of an absurd

22       statement. No, I don't agree with that.

23  Q.   Dr. Taylor indicates that there is no

CLE00189

LINA/Cleiland 0420

**FREEDOM COURT REPORTING**

Page 30

1    clinically measurable evidence to support

2    deficits which require restrictions and

3    limitations given by your office.  Do you

4    see that?

5    A.    Correct.

6    Q.    Do you agree with that statement?

7    A.    Absolutely not.

8                    (Exhibits 14 and 15 previously

9                    marked for purposes of

10                   identification)

11   Q.    Then in that case, let's flip on over here

12         if we can to Exhibits 14 and 15.  Now,

13         these are from two other attending

14         physicians who treat Ms. Cleiland.  These

15         are Medical Opinion Forms.  They're not

16         asking whether or not somebody is disabled

17         under the insurance policy.  They're

18         asking what's the restrictions and

19         limitations this lady has to go by in

20         order to get through the day.  We have one

21         from her diabetes doctor who's treating

22         her for diabetes and another from

23         Dr. Johnson.  Are you familiar with

CLE00190

LINA/Cleiland 0421

## FREEDOM COURT REPORTING

Page 31

1   Dr. Wise or Dr. Johnson?  I'm sorry.  It's

2   Bret Johnson.

3   A.   I don't know them personally.  I've seen

4        some of their patients before, I believe.

5        Yes.

6   Q.   If you would, let's go through this very

7        quickly and then we can wrap up.

8   A.   Okay.

9   Q.   You've already indicated that Ms. Cleiland

10       requires bedrest during the course of a

11       normal workday, correct?

12  A.   That's my opinion.  Yes.

13  Q.   Okay.  In your opinion, would Ms. Cleiland

14       have problems with stamina or endurance

15       which will require her to rest or take

16       more than thirty-minute breaks during the

17       day?

18  A.   Yes.

19  Q.   Do Ms. Cleiland's complaints of pain --

20       subjective complaints of pain seem

21       reasonable based upon your observations

22       and diagnoses?

23  A.   Yes.

CLE00191

LINA/Cleiland 0422

## FREEDOM COURT REPORTING

Page 32

1   Q.   Would Ms. Cleiland, in your opinion, be

2        reliable in requiring -- or performing a

3        forty-hour workweek?

4   A.   No.

5   Q.   How severe would you categorize

6        Ms. Cleiland's complaints of pain?

7   A.   I would say they're severe.

8   Q.   Would Ms. Cleiland's medical condition

9        give rise to lapses in concentration or

10       memory that would cause her to be

11       unreliable in a forty-hour workweek

12       setting?

13  A.   Yes.

14  Q.   Okay.  And would you characterize

15       Ms. Cleiland's condition as chronic?

16  A.   Yes.

17  Q.   In other words, there's no cure for her

18       condition at this point?

19  A.   That's correct.  There is no cure.

20  Q.   Okay.  I believe that's it, Doctor.  Are

21       there any questions that I should have

22       asked that you would like to give me the

23       answer to at this point?

CLE001

LINA/Cleiland 0423

**FREEDOM COURT REPORTING**

Page 33

1    A.    No.    I think you've covered the most

2          important things.  Again, whatever

3          response they got from Kitty in this

4          office I think has been taken way out of

5          context.  You know, she certainly did not

6          mean to imply that Ms. Cleiland is not

7          disabled.  What she was implying was that

8          the disability responsibilities as far as

9          the ratings and whatnot were not -- had

10         never been asked for.  And she would

11         assume that the surgeons were going to

12         place those restrictions on her.  So --

13   Q.    And, Doctor, that's actually a trick

14         question.  What I'm betting they did is,

15         they picked up the phone, called somebody

16         at your office and said, "Can you tell us

17         whether or not she's disabled under this

18         insurance policy?"  And the answer is,

19         "No, we can't tell you?"

20   A.    Right.

21   Q.    So I appreciate your time, Doctor.

22   A.    Sure.

23   Q.    We can be off the Record at this point.

## FREEDOM COURT REPORTING

Page 34

1

2                  *  *  *  *  *  *  *  *  *  *  *  *

3              FURTHER DEPONENT SAITH NOT

4                  *  *  *  *  *  *  *  *  *  *  *  *

5                  REPORTER'S CERTIFICATE

6    STATE OF ALABAMA,

7    MONTGOMERY COUNTY,

8          I, Jackie Parham, Certified Shorthand

9    Reporter and Commissioner for the State of

10   Alabama at Large, do hereby certify that I

11   reported the sworn statement of DAVID P.

12   HERRICK, M.D., who was first duly sworn by me to

13   speak the truth, the whole truth, and nothing

14   but the truth, in the matter of CATHY CLEILAND,

15   on Monday, the 13th day of November, 2006.

16         The foregoing 33 computer-printed pages

17   contain a true and correct transcript of the

18   examination of said witness by counsel for the

19   parties set out herein.  The reading and signing

20   of same is hereby waived.

21         I further certify that I am neither of kin

22   nor of counsel to the parties to said cause, nor

23   in any manner interested in the results thereof.

FREEDOM COURT REPORTING

Page 35

JACKIE PARHAM, Certified

Shorthand Reporter and

Commissioner for the State

of Alabama at Large

CLE0019

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

LINA/Cleiland 0426



**CAMPBELL WALLER & POER, L.L.C.**

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

November 3, 2006

Ms. Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager
CIGNA Group Insurance
D212
12225 Greenville Avenue, Suite 1000
Dallas, TX  75243-9337

      **Re:**   **Cathy Cleiland**

Dear Ms. Bharadwaj:

    Attached hereto you will find a medical opinion form bates numbered CLE00138 through CLE00140.  Please be advised that this is from Dr. Bret Johnson who is one of Ms. Cleiland's attending physicians.

    We are continuing to gather information concerning Ms. Cleiland's medical condition. Please advise on your efforts to obtain documentation concerning Ms. Cleiland's medical condition.

             Sincerely,



             Thomas O. Sinclair, Esquire

TOS/me
Enclosures
cc:   Ms. Cathy Cleiland
      Terry Key, Esquire

**CATHY CLEILAND**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA & CIGNA GROUP INSURANCE**

**FILE # 4135**

| NO. | DATE SUBMITTED | DOCUMENTS SUBMITTED TO | DOCUMENT BATES NUMBERS |
|-----|----------------|------------------------|------------------------|
| 1. | 09/05/06 | CIGNA | CLE00001-CLE00134 |
| 2. | 10/19/06 | CIGNA | CLE00135-CLE00137 |
| 3. | 11/03/06 | CIGNA | CLE00138-CLE00140 |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

November 3, 2006

LINA/Cleiland 0428

**MEDICAL OPINION FORM**

RE:  Cathy Cleiland                SSN: _____        DOB: _____

Dear Dr. Johnson:

Please provide your opinion to a reasonable degree of medical certainty, based on current treatment, of the above referenced patient's abilities and limitations.

1.  Please state the diagnosis of the problem that causes your patient's limitations and restrictions, as well as the objective, clinical, or other specific findings that support your diagnosis and opinion: _____

   _____ i) Cervical spine HNP x 3 = C4-C7
   _____ inter body fusion
   _____ a) Herniated disc (HNP) L4-5 ⅙
   _____ innerbody fusion L-L
   _____ Chronic neck / LBP 2° 1 4° 1 2

2.  In an 8 hour workday, 5 days a week, on a full time basis, the patient can be expected to be physically capable of the following activities:

   Sit:  < 1 hour at time  hrs out of 8 hrs a day  _____ hrs/min at one time

   Stand or walk: < 1 hour at time  hrs out of 8 hrs a day  _____ hrs/min at one time

3.  Patient can lift/carry:

| | Never | Infrequently (very few times a day) | Occasionally (1/3 of workday) | Frequently (2/3 of workday) |
|---|---|---|---|---|
| 1-5 pounds | | | | X |
| 1-10 pounds | | | X | |
| 11-20 pounds | | X | | |
| 21-25 pounds | X | | | |
| 50 pounds or greater | X | | | |

4.  Does the patient require bedrest during a normal workday? Yes X   No ____

   If yes, for approximately how many hours?  6-7

1

CLE00138

LINA/Cleiland 0429

5. Does the patient have problems with stamina and endurance which would require him/her to rest more than the one 30-minute break and two 15-minute breaks normally allowed?

Yes __X__     No _____ If yes, how much rest? __40__ hours/minutes for every __1__ hrs/minutes of work

6. Do the patient's subjective complaints seem reasonable in view of your observations and diagnoses? Yes __X__     No _____

7. Could the patient be reasonably expected to be reliable in attending an eight hour a day, 40 hour work week in view of the degree of pain, fatigue or other limitations he/she experiences?

Yes _____     No __X__

8. How severe is the pain reasonably suffered by the patient? mod'r pain mod'r

Extreme ____  Severe ____  Moderately Severe __X__  Moderate _____  Mild ____

9.    Is it reasonable that the patient's pain, medical condition, or medication would cause lapses in concentration or memory on a regular basis to the extent that your patient could not attend to a task or be reliable in following work instructions?

Yes __X__     No _____

If yes, how often would his/her condition reasonably causes such lapses in concentration or memory?

_____ several hours 3 or more days a week

__X__ daily for several hours a day

_____ other:_____

10.    Are there environmental restrictions reasonably caused by the patient's condition (i.e. avoid heat, humidity, (heights) dust etc.)?

_____

2

CLE0013

LINA/Cleiland 0430

11. Does the patient have a reasonable medical need to be absent from a full time work schedule on a chronic basis? (**Chronic being,** more than 4 absences during any month's period attributable to any one medical condition or related conditions, including absences for required medical treatment including appointments, diagnostic testing, treatment etc.)

Yes ___X___     No _____

Please estimate to the best of your ability and expertise how many absences could be reasonably medically expected in any month. _prob > 2-4/week_

__10/27/1__
Date

_____
Doctor's Signature

_Bret M. Johns_
Doctor's printed name

3

CLE00140

LINA/Cleiland 0431

spacer at L4-5.

The vertebral bodies are in anatomic alignment with no evidence of compression deformity or significant subluxation. The marrow signal intensity is unremarkable. Conus medullaris terminates at inferior aspect of T12. No evidence of enlargement or abnormal signal.

L3-4: Mild diffuse disc bulging with moderate facet arthropathy and ligamentum flavum hypertrophy. There is resultant moderate central canal narrowing. No evidence of superimposed disc protrusion.

L4-5: Laminectomy defect noted at L4. There is no evidence of central canal narrowing. However, moderate narrowing of the neuroforamen noted on the left, secondary to a bulging disc. There is compression of the exiting L4 nerve root on the left.

L5-S1: Mild diffuse disc bulging with no evidence of disc protrusion, central canal or neuroforaminal narrowing.

Name:  CLEILAND,CATHY
BRETT STORM, M.D.                       MR #: 000214773
{eop}

MRI
Page 2 of 2

SOUTHEAST ALABAMA MEDICAL CENTER
PO Drawer 6987,  Dothan, AL 36302
334-793-8111

IMPRESSION:
1.  EVIDENCE OF POSTERIOR SPINAL FUSION L4-5.  THERE IS NO EVIDENCE OF
    SUBLUXATION OR COMPRESSION DEFORMITY.
2.  MODERATE CENTRAL CANAL NARROWING AT L3-4.
3.  THERE IS EVIDENCE OF INTERVERTEBRAL DISC SPACER L4-5. HOWEVER, THERE
    APPEARS TO BE BULGING DISC EXTENDING INTO THE NEUROFORAMEN AT L4-5
    ON THE LEFT WITH COMPRESSION OF THE LEFT L4 NERVE ROOT.

BRETT STORM, M.D.

DD:  5/18/2006 00:21     ko
DT:  5/18/2006 12:47     153245

Name:  CLEILAND, CATHY
BRETT STORM, M.D.                    MR:  000214773
{eop}

Brett Storm
05-18-2006 12:53

Page: 2  Printed: S. Skipper/05-23-2006 15:32  Study: Cathy Cleiland/05-17-2006 16:54

CLE00093

LINA/Cleiland 0432



**The**
# Center for Pain
## of M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

℞ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _CATHY Cleiland_____    Date: _12-14-05_____

1. Are you: ☐ Better?   ☒ Worse?   ☐ Same?

2. Since your last visit, have you been to the Emergency Room?  ☐ YES   ☒ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ☒ YES   ☐ NO
   (If Yes, please explain) _Dr. Bret Johnson (General md)_

4. Since your last visit, have you had any X-rays?  ☒ YES   ☐ NO
   (If Yes, what kind and where were they done) _Teeth_

5. Since your last visit, have you had any medication changes? ☐ YES   ☒ NO
   (Please list all medications) _____

6. Do you have any allergies? ☒ YES   ☐ NO
   (If Yes, Please list all your allergies) _Cipro_

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _Pain ; Medication_

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
-10 means the worst pain you can imagine.

Mark all the places you feel pain.

0 1 2 3 4 5 6 7 8 9 10
No Pain          Moderate Pain          Worst Pain

Burning feels
like skin is being
pulled back to...

feels like
sand on
feet and between

CARPAL
Tunnel

CLE00071



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36 1 17
Telephone: 334-387-7246

Patient Name: *Cathy Cleiland*                    Date: *11-16-05*

1.  Are you: ☐ Better?    ☒ Worse?    ☐ Some?

2.  Since your last visit, have you been to the Emergency Room?  ☐ YES   ☒ NO
    (If Yes, please explain) _____

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?  ☒ YES   ☐ NO
    (If Yes, please explain) *Sleep Study ; light into stomach for exam*
    *neurologist                 gastro-enterologist*

4.  Since your last visit, have you had any X-rays?   ☐ YES   ☒ NO
    (If Yes, what kind and where were they done) _____

5.  Since your last visit, have you had any medication changes? ☐ YES   ☒ NO
    (Please list all medications) _____

6.  Do you have any allergies? ☒ YES   ☐ NO
    (If Yes, Please list all your allergies) *Cipro*

7.  What do you want to discuss today? (medicine, pain, refills, etc.)
    *pain + possible medication change*

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

```
0   1   2   3   4   5   6   7   8   9   10
No                  Moderate              Worst
Pain                  Pain                 Pain
```

RIGHT    LEFT        RIGHT

*extremely painful*

CLE00072

LINA/Cleiland 0434





### The Center for Pain
of M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_    Date: _10-18-05_

1. Are you: ☐ Better?  ☑ Worse?  ☐ Same?

2. Since your last visit, have you been to the Emergency Room?  ☐ YES  ☑ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ☐ YES  ☑ NO
   (If Yes, please explain) _____

4. Since your last visit, have you had any X-rays?  ☐ YES  ☑ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES  ☐ NO
   (Please list all medications) _Celebrex_

5. Do you have any allergies? ☑ YES  ☐ NO
   (If Yes, Please list all your allergies) _Cipro_

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

1  2  3  4  5  6  7  8  9  10
        Moderate        Worst
         Pain            Pain

RIGHT    LEFT      LEFT    RIGHT

CLE00073

LINA/Cleiland 0435

# the
# CENTER for PAIN
## of Montgomery
### DAVID HERRICK MD ■ BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7806

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_     Date: _9-19-05_

1. Are you: ☐ Better?  ☑ Worse?  ☐ Same?

2. Since your last visit, have you been to the Emergency Room?  ☐ YES  ☑ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ☐ YES  ☐ NO
   (If Yes, please explain) _I had an appt at the sleep ctr this morning but_

4. Since your last visit, have you had any X-rays?  ☐ YES  ☑ NO
   _I waited from 11:15 - 1:10 and I had to leave to come here._
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES  ☑ NO
   (Please list all medications) _____

6. Do you have any allergies? ☑ YES  ☐ NO
   (If Yes, Please list all your allergies) _Ci PRO_

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0 No Pain  1  2  3  4  5  6 Moderate Pain  7  8  9  10 Worst Pain

RIGHT  LEFT     LEFT  RIGHT

CLE00074

LINA/Cleiland 0436



*The* **Center for Pain**
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_     Date: _8-17-05_

1.  Are you: ❑ Better?     ❑ Worse?     ❑ Same?

2.  Since your last visit, have you been to the Emergency Room?   ❑ YES   ❑ NO
    (If Yes, please explain) _____

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?   ❑ YES   ❑ NO
    (If Yes, please explain) _____

4.  Since your last visit, have you had any X-rays?   ❑ YES   ❑ NO
    (If Yes, what kind and where were they done) _____

5.  Since your last visit, have you had any medication changes? ❑ YES   ❑ NO
    (Please list all medications) _Insulin, Neurontin, methedone, phenergrin, protonix, lobozin,_
6.  Do you have any allergies? ❑ YES  ❑ NO _Clonipin, (over the counter benadryl for sinus allergy)_
    (If Yes, Please list all your allergies) _Outdoor (flowers) pet dander_

7.  What do you want to discuss today? (medicine/pain, refills, etc.)
    _I had a bad fall during the wee hrs of last Sat morning_

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

```
|----|----|----|----|----|----|----|----|----|----|
0    1    2    3    4    5    6    7    8    9    10
No                   Moderate                  Worst
Pain                   Pain                     Pain
```

RIGHT   LEFT      LEFT   RIGHT

CLE00075

LINA/Cleiland 0437



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.
David Herrick, M.D. ▪ Brad Katz, M.D.
432 St. Lukes Drive
Montgomery, AL 36117
Phone (334) 387-7246    Fax (334) 387-7250

**PROGRESS NOTE**

**NAME:** CATHY K. CLEILAND
**DATE:** 03/02/05
**ACCT:** 4495
**DOB:**

This is a 47-year-old, white female with lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain and diabetes. She has been on Methadone 5 mg up to five pills a day, Effexor, and Klonopin.

Ms. Cleiland states that she has been having some upset stomach problems. We called in Protonix. She says this has really been pre-helpful. Ms. Cleiland states that she has had a fair amount of nausea with Methadone, but on the whole it is livable with Phenergan. She really has not had to go to the hospital for any IV fluids. She has had worse problems with GI upset from other opioids and does not wish to try switching out.

Ms. Cleiland has been having some muscle spasms in the legs. She says she is not very active, and she thinks that her sugars have been running higher than they usually have. She states that she has fallen down some steps. She says she just miscalculated the last step. Once she said the trunk of the car fell on her back when she was leaning over into the trunk, just minor life traumas.

Ms. Cleiland describes her pain as an 8 today. Again, there are more areas marked off on the pain chart than not. There is pain in the right upper extremity, left leg and back. She states really no chest pain and no unusual dysuria. She states life is not in total turmoil as it has been in the past few visits.

**PHYSICAL EXAMINATION:** This is a 47-year-old, white female who is alert and cooperative. She is fairly pleasant today and less upbeat. She has no gross rashes. Skin is warm and dry. She has no respiratory difficulties noted, no obvious hemodynamic instability noted, no acute hot joints, and no acute localizing weakness.

**ASSESSMENT:** Cervical degenerative disc disease, cervical radiculitis, lumbar degenerative disc disease, lumbar radiculitis, and insulin dependent diabetes.

**PLAN:** We will refill Neurontin 800 mg 4x/day, Robaxin 750 mg 3x/day, Phenergan 25 ½ - 1 three times daily, Effexor 75 XR one at bedtime, Protonix 40 mg one daily, Klonopin 1 mg at bedtime, and we will switch her to Methadone 10 mg ½ - 1 p.o. three times a day rather than the 5s. We plan on seeing the patient back in one month's time. Today's office visit has been 20 minutes.

ADAM NORTICK, M.D.

AN/aww
D: 03/11/05
T: 03/15/05

CLE00076

LINA/Cleiland 0438



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D.  ■  BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: __Cathy Cleiland__    Date: __5-17-05__

1.  Are you: ☐ Better?    ☐ Worse?    ☑ Same?

2.  Since your last visit, have you been to the Emergency Room?  ☐ YES   ☑ NO
    (If Yes, please explain) _____

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?  ☐ YES   ☑ NO
    (If Yes, please explain) _____

4.  Since your last visit, have you had any X-rays?   ☑ YES   ☐ NO
    (If Yes, what kind and where were they done) __mammogram__

5.  Since your last visit, have you had any medication changes? ☐ YES   ☑ NO
    (Please list all medications) _____

6.  Do you have any allergies? ☑ YES   ☐ NO
    (If Yes, Please list all your allergies) __Cipro__
    _____

7.  What do you want to discuss today? (medicine, pain, refills, etc.)
    _____
    _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0   1   2   3   4   5   6   7   8   9   10
No                  Moderate              Worst
Pain                  Pain                Pain

RIGHT          LEFT          LEFT          RIGHT

CLE00072



*The*
# Center for Pain
## of M O N T G O M E R Y, P.C.
### DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

❑ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

❑ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _CATHY K. Cleiland_          Date: _3-2-05_

1.  Are you: ❑ Better?  ☒ Worse?  ❑ Same?

2.  Since your last visit, have you been to the Emergency Room?  ❑ YES  ☒ NO
    (If Yes, please explain) _____

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?  ❑ YES  ☒ NO
    (If Yes, please explain) _____

4.  Since your last visit, have you had any X-rays?  ❑ YES  ☒ NO
    (If Yes, what kind and where were they done)_____

5.  Since your last visit, have you had any medication changes? ❑ YES  ❑ NO
    (Please list all medications) _The protonix what Dr. Nortick prescribed_

6.  Do you have any allergies? ☒ YES  ❑ NO
    (If Yes, Please list all your allergies) _unknown but believe dust + dander_

7.  What do you want to discuss today? (medicine) (pain) refills, etc.)
    _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0 No Pain  1  2  3  4  5 Moderate Pain  6  7  8  9  10 Worst Pain

CLE00478

# EXHIBIT 1 TO EXHIBIT A
# Part 9



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_    Date: _3-29-05_

1.  Are you: ☐ Better?   ☑ Worse?   ☐ Same?

2.  Since your last visit, have you been to the Emergency Room?   ☑ YES    ☐ NO
    (If Yes, please explain) _ER @ Store in Dothan - Diagnosed w/ the flu_

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?   ☐ YES   ☑ NO
    (If Yes, please explain) _____

4.  Since your last visit, have you had any X-rays?   ☑ YES   ☐ NO
    (If yes, what kind and where were they done) _Lungs when I had the flu_

5.  Since your last visit, have you had any medication changes? ☐ YES   ☑ NO
    (Please list all medications) _Just took Tamiflu along w/ my pain med's_

6.  Do you have any allergies? ☑ YES   ☐ NO
    (If Yes, Please list all your allergies) _Cipro_

7.  What do you want to discuss today? (medicine, pain, refills, etc.)
    _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

0  1  2  3  4  5  6  7  8  9  10
No                Moderate              Worst
Pain                Pain                Pain

Mark all the places you feel pain.

RIGHT — LEFT    LEFT — RIGHT

CLE00079

LINA/Cleiland 0441



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, MD • BRAD KATZ, MD

2055 East South Blvd., Ste. 612
Montgomery, AL 36116
Telephone: 334-288-7808
Fax: 334-288-8089

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246
Fax: 334-387-7250

PROGRESS NOTE

NAME:    CATHY CLEILAND
DATE:    12/01/04
ACCT:    14495
DOB:

Ms. Cleiland is a 47-year old white female who has been followed for lumbar degenerative disc disease and cervical degenerative disc disease. She also has myofascial pain and diabetes. Ms. Cleiland has been on Methadone 5 mg 1-5 pills a day, Effexor and Klonopin. Ms. Cleiland has not had any adverse reactions to her medicines.

Ms. Cleiland has been under a lot of stress in October. She states her daughter is a diabetic and has had problems with a staph infection and when _____. She said it was touch and go for a few days. Ms. Cleiland states that she spent 4 days in the ICU and she was at her side. She states she slept upright and in rather hard, uncomfortable chairs. She says at times she has been having some increasing pain in her neck going into both arms. She states that this was new and this really wasn't going on before. Ms. Cleiland has prior neck surgery. She said she has called up Dr. Hadley over at UAB but he states she would "have to have a real problem" before he would see her again. Ms. Cleiland is wanting to have an MRI and I think that is reasonable. We will go ahead and assist her in getting that scheduled.

Ms. Cleiland states that her back has been about the same. Ms. Cleiland states that she is not sleepy at night but she can be drowsy during the day. It is hard to say how much of this is has to do with the total upset that she has been through lately.

Ms. Cleiland has gone to the ophthalmologist and apparently has a 6th nerve palsy that is resolving without incident. Ms. Cleiland states that she has gained about 30 pounds. She states she never eats a lot of big meals but she kind of grazes and it can be at least 6 x a day. She is not having any unusual nausea, vomiting or gastroparesis type problems.

Ms. Cleiland does get some nausea, she uses Phenergan for. She has not had to go to the hospital getting IV fluids. Ms. Cleiland states that she was running short on her medicines and her daughter did admit to taking some of her Methadone. Ms. Cleiland states that was only Effexor XR but apparently plain Effexor was called in for her. We will remedy that.

Ms. Cleiland describes her pain today as a 9. It is across the shoulders and into the right arm and in the left leg. Ms. Cleiland really has no new significant health issues. She really is not having any chest pain, shortness of breath or rash.

On physical exam today she is a 47-year old white female. She is alert and cooperative. She has minimal respiratory difficulty. Her chest is clear. Chest wall is intact. Heart has a regular rate and rhythm, S1 and S2, without murmurs, gallops or thrills. She has no acute hot joints. She is ambulating without difficulty. She has no localizing weakness. She has a positive Spurling on the right side. She has no acute trophic skin changes. Cranial nerves II-XII are intact.

**ASSESSMENT:** Cervical degenerative disc disease, cervical radiculitis, lumbar degenerative disc disease, lumbar radiculitis and insulin dependent diabetes.

**PLAN:** We will continue her on her medicines of Methadone 5 mg up to 5 x a day, Effexor XR 75 mg at bedtime, Neurontin 800 mg at bedtime, Phenergan 25 mg #90 pills ½ to 1 up to 3 x a day and Clonazepam 1 mg at bedtime. We will also schedule her to get a cervical MRI for cervical radiculitis. Total office time today was 20-minutes. We will plan on seeing the patient back in 3-months time. If it comes back that there is something new on her cervical MRI, we will make appropriate arrangements.

ADAM NORTICK, M.D.

AN/slc
D: 12/02/04
T: 12/07/04

CLE00080

LINA/Cleiland 0442



**The Center for Pain**
*of* M O N T G O M E R Y, P.C.
DAVID HERRICK, M.D.  ■  BRAD KATZ, M.D.

☐ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _CATHY CLEILAND_          Date: _12-1-04_

1.  Are you: ☐ Better?   ☑ Worse?   ☐ Same?

2.  Since your last visit, have you been to the Emergency Room?  ☐ YES   ☑ NO
    (If Yes, please explain) _____

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?  ☐ YES   ☑ NO
    (If Yes, please explain) _I talked w/ Dr Hadley's nurse about severe pain in_
    _neck but she said he would have to know a problem had_

4.  Since your last visit, have you had any X-rays?  ☐ YES   ☑ NO    _been identified before seeing me_
    (If Yes, what kind and where were they done) _for that_

5.  Since your last visit, have you had any medication changes? ☑ YES   ☐ NO
    (Please list all medications) _Ya'll called in my effexor XR as regular effexor_

6.  Do you have any allergies? ☑ YES   ☐ NO
    (If Yes, Please list all your allergies) _Cipro_

7.  What do you want to discuss today? (medicine, pain, refills, etc.)
    _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

0  1  2  3  4  5  6  7  8  9  10
No Pain        Moderate Pain        Worst Pain

Mark all the places you feel pain.

RIGHT    LEFT        LEFT    R

CLE00081

LINA/Cleiland 0443



### The Center for Pain
### of M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

☐ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_   Date: _9-21-04_

1. Are you: ☐ Better?   ☐ Worse?   ☒ Same?

2. Since your last visit, have you been to the Emergency Room?  ☐ YES  ☒ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ☒ YES  ☐ NO
   (If Yes, please explain) _Opthamologist for sixth cranial nerve palsy_

4. Since your last visit, have you had any X-rays?   ☐ YES  ☒ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES  ☒ NO
   (Please list all medications) _____

6. Do you have any allergies? ☒ YES  ☐ NO
   (If Yes, Please list all your allergies) _Cipro_

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _____
   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0   1   2   3   4   5   6   7   8   9   10

No Pain          Moderate Pain          Worst Pain

RIGHT        LEFT        LEFT        RIGHT

CLE00082

LINA/Cleiland 0444



*The*
**Center for Pain**
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D.  ■  BRAD KATZ, M.D.

☐ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_      Date: _8-24-04_

1. Are you: ☐ Better?   ☒ Worse?   ☐ Same?

2. Since your last visit, have you been to the Emergency Room?   ☐ YES   ☒ NO

   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ☐ YES   ☐ NO

   (If Yes, please explain) _Opthalmologist_____

4. Since your last visit, have you had any X-rays?   ☐ YES   ☒ NO

   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES   ☒ NO

   (Please list all medications) _____

6. Do you have any allergies? ☒ YES   ☐ NO

   (If Yes, Please list all your allergies) _Cipro_____

7. What do you want to discuss today? (medicine, pain, refills, etc.)

   _pain, side effects of med_____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

Mark all the places you feel pain.

0 means no pain.
10 means the worst pain you can imagine.

0  1  2  3  4  5  6  7  8  9  10
No              Moderate         Worst
Pain              Pain            Pain

RIGHT   LEFT

→ pelvic area

LEFT

LINA/Cleiland 0445



**The Center for Pain**
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D.  ■  BRAD KATZ, M.D.

☐ 2055 East South Blvd., Ste. 812
   Montgomery, AL 36116
   Telephone: 334-288-7808

☐ 432 St. Lukes Drive
   Montgomery, AL 36117
   Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_          Date: _7-21-2004_

1. Are you: ☐ Better?     ☐ Worse?     ☒ Same?

2. Since your last visit, have you been to the Emergency Room?   ☐ YES   ☒ NO
   (If Yes, please explain) _____
   _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ☒ YES   ☐ NO
   (If Yes, please explain) ~~Dentist~~ Dr Mark Hadley @ UAB
   _____

4. Since your last visit, have you had any X-rays?   ☒ YES   ☐ NO
   (If Yes, what kind and where were they done) MRI @ UAB on 7-14-04

5. Since your last visit, have you had any medication changes? ☐ YES   ☒ NO
   (If Yes, what) _____
   _____

6. What do you want to discuss today? (medicine, pain, refills, etc.)
   Pain and medication

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

0 — 1 — 2 — 3 — 4 — 5 — 6 — 7 — 8 — ⑨ — 10
No                    Moderate                    Worst
Pain                   Pain                        Pain

CLE00084

LINA/Cleiland 0446



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D.  ■  BRAD KATZ, M.D.

☐ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_    Date: _5-26-04_

1. Are you: ☐ Better?   ☒ Worse?   ☐ Same?

2. Since your last visit, have you been to the Emergency Room?  ☒ YES    ☐ NO

   (If Yes, please explain) _Monroeville, AL - Admitted to ICU/DKA after medicine made me nauseated/dehydrated_

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ☒ YES    ☐ NO

   (If Yes, please explain) _Family Dr saw me in hospital_

4. Since your last visit, have you had any X-rays?   ☐ YES   ☒ NO

   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes?  ☒ YES   ☐ NO

   (Please list all medications) _My family Dr prescribed me lortab when he dismissed me yesterday (5/25) until I could be seen here today_

6. Do you have any allergies? ☐ YES   ☐ NO

   (If Yes, Please list all your allergies) _CIPRO_

7. What do you want to discuss today? (medicine, pain, refills, etc.)

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0  1  2  3  4  5  6  7  8  9  10
No                Moderate            Worst
Pain                Pain              Pain

RIGHT       LEFT        LEFT       RIGHT

CLE00085

LINA/Cleiland 0447

PROGRESS NOTE

NAME:   KATHY CLEILAND
DATE:   04/28/04

Ms. Cleiland returns today for follow up. Avinza 30 mg helps but is not enough. She continues to have neck and shoulder pain and the medication does make her slightly sluggish although she has become accustomed to it.

PHYSICAL EXAM:
GENERAL:  She is alert and oriented x 3.
HEENT: Unremarkable.
PULMONARY: Clear.
HEART: Regular rate and rhythm.
NEUROLOGICAL EXAM: Non-focal. Cranial nerves appear to be intact.

IMPRESSION:  Cervical degenerative disc disease.

PLAN:  Continue titration of Avinza. Will increase to 60 mg po q a.m. She has been taken the medicine about mid-day and I have encouraged her to take it earlier in the morning and see if that has any added benefit. I have reviewed her medication agreement. I will see her back in 1-month for reassessment. I informed her she may see Dr. Nortick when she returns. This was a 20-minute face-to-face visit.

DAVID P. HERRICK, M.D.

AN/slc
D: 04/28/04
T: 05/03/04

CLE00086

LINA/Cleiland 0448



**The Center for Pain**
*of* M O N T G O M E R Y, *P.C.*

DAVID HERRICK, MD • BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808
Fax: 334-288-8089

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7240
Fax 334-387-7250

PROGRESS NOTE

NAME:   CATHY CLEILAND
DATE:   05/26/04
ACCT:   14495
DOB:

Ms. Cleiland returns today for adjustment of medicines. Ms. Cleiland had been on Avinza. She had been on 30 mg and that dose was increased up to 60 mg. She was complaining with problems with nausea with 60 mg from the get go. She tried it for a few days, went off, and went back on. She eventually wound up having problems with nausea and vomiting. When she went to her local doctor she was probably in sort of DKA and was admitted to the hospital into the ICU. She did get some IV fluids. She was given a prescription for some Lortab when she left the hospital. Her other medicines include Neurontin 800 mg 4 x a day. She had a blood level checked about 3-weeks ago and was doing fine. She also takes Effexor 75 mg and Robaxin. At the present time Ms. Cleiland is most concerned about having a pain medicine, which will not cause any significant stomach upset rather than marked analgesia. She states in the past she has had some Demerol and never really suffered any adverse reactions from that. She states that Percocet had cost her some GI problems in the past and Lortab caused some slight quizziness but really it wasn't very effective for her pain.

On physical exam she is a 46-year old white female who is alert and cooperative. She has no obvious respiratory or hemodynamic compromise. The skin is warm and dry. She has a non-localizing neurologic exam.

ASSESSMENT: Cervical degenerative disc disease with nausea and vomiting secondary to Avinza.

PLAN: Through the next week we will have the patient use some Mepergan Fortes 1 po 4 x a day. We will then have her start on Methadone 10 mg twice a day for 3-weeks. We will have her come back in a month and see how she is doing in terms of nausea and pain effectiveness on the new medication regimen. We will keep all of her other medicines the same. Total office time today was 25-minutes.

ADAM NORTICK, M.D.

AN/slc
D: 05/26/04
T: 06/02/04

CLE00087

LINA/Cleiland 0449



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

☐ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy K. Cleiland_     Date: _4-28-04_

1. Are you: ☐ Better?     ☐ Worse?     ☑ Some?

2. Since your last visit, have you been to the Emergency Room?   ☐ YES   ☑ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ☑ YES   ☐ NO
   (If Yes, please explain) _My general MD - just to have bloodwork_

4. Since your last visit, have you had any X-rays?     ☐ YES   ☑ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES   ☑ NO
   (Please list all medications) _____

6. Do you have any allergies? ☐ YES   ☑ NO
   (If Yes, Please list all your allergies) _____
   _____

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _Continued pain and medicine_

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0  1  2  3  4  5  6  7  8  9  10
No Pain        Moderate Pain        Worst Pain

RIGHT    LEFT        LEFT    RIGHT

CLE00088

LINA/Cleiland 0450

# the
# CENTER for PAIN
### of Montgomery
### DAVID HERRICK, MD ■ BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy K. Cleiland_                     Date: _3-29-04_

1.  Are you: ☐ Better?    ☐ Worse?    ☑ Some?

2.  Since your last visit, have you been to the Emergency Room?    ☑ YES    ☐ NO

    (If Yes, please explain) _UAB_

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?    ☑ YES    ☐ NO

    (If Yes, please explain) _Dr Mark Hadley ; UAB ; 12/16/03 C-4, L5 lumbar laminectomy & decompression, C4-C5 disectomy, bilateral with brid cages, with lumbar fusion, interal & vertib C4-C5 bilateral - Bone graft L4, L5 bilateral - Bone graft & fusion L4, L5 bilateral_

4.  Since your last visit, have you had any X-rays?    ☐ YES    ☐ NO

    (If Yes, what kind and where were they done)_____

5.  Since your last visit, have you had any medication changes? ☑ YES    ☐ NO

    (Please list all medications) _Darvon Insulin N 35 R 15 x2 ; Nexium 75 mg ; Neurontin 800 x4 ; Lortab 2.5 x 6 Robaxin 750mg x3_

6.  Do you have any allergies? ☐ YES    ☑ NO

    (If Yes, Please list all your allergies) _Not that I am aware of_

7.  What do you want to discuss today? (medicine, pain, refills, etc.)

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0 No Pain  1  2  3  4  5  6(Moderate Pain)  7  (8)  9  10 Worst Pain

RIGHT    LEFT          LEFT    RIGHT

CLE00089

LINA/Cleiland 0451



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, MD • BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808
Fox: 334-288-8089

432 St. Lukes Drive
Montgomery, AL 36 117
Telephone: 334-387-7246
Fax: 334-387-7250

NAME:    CATHY CLEILAND
DOB:    07/11/57

DATE:    08/27/03
SSN:

**REFERRING PHYSICIAN:** Dr. Hackman.

**CHIEF COMPLAINT:** Back and left leg pain.

**HISTORY OF PRESENT ILLNESS:** The patient is a 46-year old female with back and left leg pain that has been present for approximately 16-months. It is an aching, burning, stabbing pain that is exacerbated by coughing, sneezing, sitting or standing. She has had two previous lumbar surgeries done by Dr. Hackman, the last being July 16th of this year. She continues to have a left lumbar pain that is an aching, burning, constant, unbearable pain that is exacerbated by sitting, standing and walking. She has had no previous spinal injections.

**PAST SURGICAL HISTORY:** Significant for lumbar surgery x 2, anterior cervical fusion x 3, C-section x 2, bilateral tubal ligation, right oophorectomy and carpal tunnel release.

**PAST MEDICAL HISTORY:** She is an insulin dependent diabetic.

**CURRENT MEDICATIONS:** Insulin, Darvocet, Flexeril and Neurontin.

**ALLERIES:** No known drug allergies.

**SOCIAL HISTORY:** Negative tobacco. Negative ETOH.

**FAMILY HISTORY:** Non-contributory.

**REVIEW OF SYSTEMS:** No fever, chills, nausea, vomiting, headaches, chest pain, shortness of breath, bowel/bladder dysfunction or rashes.

**PHYSICAL EXAM:**
**GENERAL:** She is a very pleasant, well-developed, well-nourished female. She is moderately distressed secondary to pain.
**HEENT:** Unremarkable.
**PULMONARY:** Clear.
**HEART:** Regular rate and rhythm.
**ABDOMEN:** Non-tender and non-distended.
**EXTREMITIES:** No clubbing, cyanosis, or edema.

**CLE00090**

LINA/Cleiland 0452

Name:     Cathy Cleiland
Date:     08/27/03

Continued...2

NEUROLOGICAL EXAM:  Significant for a positive straight leg raise on the left at about 45 degrees.

IMPRESSION:  Lumbar degenerative disc disease and lumbar radiculitis.

PLAN:  Lumbar selective nerve root block on the left at L4-5 and L5-S1.  I have discussed the risks, benefits, and rationale of this procedure.  The risks are bleeding, infection, nerve damage, paralysis and other various complications up to and including death.  He appears to understand, accept and wishes to proceed.

DAVID P. HERRICK, M.D.
Signed without review.

DPH/slb
D: 08/27/03
T: 08/28/03

CLE00091

LINA/Cleiland 0453

December 19, 2005

Kelli Archacki
Cigna Insurance Company
Routing 2121225
Greenville Avenue, Suite #1000
Dallas, TX 75243

Re:    Cathy Cleiland
       Chart #14495

Dear Ms. Archacki,

This letter is on behalf of Ms. Cathy Cleiland in support of her claim for disability.

I understand that you recently sent Ms. Cleiland a letter discontinuing her benefits. Part of your decision was based on some of the documentation from our office.

In reviewing the letter, it was mentioned that Ms. Cleiland had not been complaining of any problems with radiating type pain or numbness. Ms. Cleiland has clearly indicated on her admission sheets and on the pain diagrams I put down that she has involvement in hands and feet. Ms. Cleiland has persistently been on Neurontin for tingling and numbness. It really is not a new complaint and has not required any additional documentation.

Ms. Cleiland's medications have been stable over the last few months. However, this does not mean that she does not have ongoing problems, or that on any given day she may be more symptomatic than another. It is fairly common for patients like Ms. Cleiland to have unpredictable exacerbations of their problem along with a steady course, otherwise.

Ms. Cleiland is still symptomatic, and I do believe that her symptoms are real.

Please feel free to contact me to further discuss the issue.

Respectfully yours,

Adam R. Nortick, MD

ARN:rts/qes/jdb



EXHIBIT
2

CLE00070

# David Phillip Herrick, M.D.

| | | |
|---|---|---|
| 2055 East South Blvd., Ste 812 | Montgomery, AL 36116 | (334)288-7808 |
| 432 St. Luke's Drive | Montgomery, AL 36117 | (334)387-7246 |

## Professional Experience

| | | |
|---|---|---|
| The Center for Pain of Montgomery, PC | Montgomery, AL | 06/1997 to Present |
| Central Alabama Pain Management | Montgomery, AL | 10/1995 to 06/1997 |
| U. S. Air Force Anesthesiologist | Maxwell AFB, AL | 08/1992 to 09/1995 |

## Education

| | | | |
|---|---|---|---|
| 1989 to 1992 | University of Tennessee | Memphis, TN | Anesthesiology |
| 1988 to 1989 | Baptist Medical Centers | Birmingham, AL | Internship |
| 1984 to 1988 | University of Alabama | Birmingham, AL | Medical Doctor |
| | *United States Air Force Health Professions Scholarship* | | |
| 1980 to 1984 | Auburn University | Auburn, AL | B.S. Chemistry |
| | *Student Body President, 1983-1984* | | |

## Board Certification

- American Board of Anesthesiology
- Additional Qualifications in Pain Management; American Board of Anesthesiology

## Professional Affiliations

- District 2 Censor; Medical Association of the State of Alabama
- Immediate Past President; Montgomery County Medical Society
- Physician Advisor; Alabama Quality Assurance Foundation
- Member; State of Alabama Prescription Drug Abuse Task Force
- Member; State of Alabama Medicaid Pharmacy and Therapeutics Committee

## Publications

Comparison of Intrathecal Methadone and Fentanyl in Women Undergoing Cesarean Delivery, D. P. Herrick, M. D. et. al. Presented to the American and European Society of Regional Anesthesia; Brussels, Belgium; June, 11, 1992.



EXHIBIT

LINA/Cleiland 0455



**THOMAS O. SINCLAIR**
tsinclair@cwp-law.com

November 27, 2006

Ms. Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager
CIGNA Group Insurance
D212
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

Re:     **Cathy Cleiland**

Dear Ms. Bharadwaj:

        I am in receipt of your November 13, 2006 correspondence received in my office
November 20, 2006.

        I understand that your company is refusing to produce copies of the life insurance
policies issued by your company to Ms. Cleiland's employer and under which Ms. Cleiland was
a plan participant.

        I further understand that your company is refusing to produce information pertaining to
Ms. Cleiland's short-term disability claim.

        Finally, I understand that your company is refusing to produce medical documentation,
and claims information prepared by your hired consultant, Advantage 2000. I note that you
claim you don't have that information. In fact, after reviewing Ms. Cleiland's file, it is obvious
that Advantage 2000 is a consultant hired by your company on a regular basis. Make every
effort to obtain the information gathered by Advantage 2000 in preparation of Ms. Cleiland's
SSA claim. If we have to proceed to litigation and you have refused to produce that information,
I'll be naming Advantage 2000 in the complaint. Further, you may want to put Advantage 2000
on notice that I'm not entirely certain they have complied with the rules governing the practice of
law in the State of Alabama. Providing advise to the claimant that she is <u>required</u> to repay your
company any lump sum payment made by Social Security constitutes the practice of law. Recent
Eleventh Circuit decisions make clear that the analysis of whether or not your off-set provisions
would require repayment is clearly a legal question which requires an attorney to properly advise
a client of their obligations under the terms of the plan documents. Advantage 2000's statements
to Ms. Cleiland constitutes practice of law. If they don't give you the information that they
gathered in preparation of her Social Security claim, and they do wind up getting named in the
complaint, they are going to have a lot to explain to a court here in Alabama.

LINA/Cleiland 0456

Finally, I understand that you used the claims manual in determining Ms. Cleiland's claim. If you didn't use the claims manual, then obviously, that will be one basis for us claiming that the decision was both arbitrary and/or capricious and without reasonable basis. If you did use the claims manual (which seems likely given your statement that the claims manual "was not solely relied upon in the determination"), then Ms. Cleiland has a right to the claims manual documents.

I hope you reconsider this course of action. If we don't hear from you within the next thirty days, we will assume that Ms. Cleiland is going to be denied the documents which govern the administration of this claim, that the company will not be producing its short-term disability claim documents or life insurance policy documents and, finally, that the company is refusing to use the Advantage 2000 documents which are within the company's possession, custody or control, in the administration of Ms. Cleiland's claim.

Sincerely,

Thomas O. Sinclair, Esquire

TOS/me
Enclosures
cc:     Ms. Cathy Cleiland
        Terry Key, Esquire



**Montgomery Imaging Center**
2055 Normandie Drive, Suite 108
Montgomery, AL 36111-2743
Phone (334) 288-4624
Fax (334) 288-8478

John H. Payne, III, M.D.
David C. Montiel, M.D.
Terry D. Williams, M.D.
Joseph M. Bailey, M.D.
David B. Nesland, M.D.
Thomas S. Moore, M.D.
Jason H. Dorey, M.D.
Byron C. Machen, M.D.

Daniel S. Noy    O.
Mark H. LeQ      M.D.
Gordon Smith, M.D.
Christopher Dorvault, M.D.
Philip S. Piasecki, M.D.
David M. Downs, M.D.
Roland Ng, M.D.
Gary Leung, M.D.

Mary M. Kastil M.D.
Paul Hutchinson, M.D.
Oscar P. Orille, M.D.
Eva Rubin, M.D.
Ronald D. Waters, M.D.
John G. Kabler, M.D.

| | | |
|---|---|---|
| Patient: CLEILAND, CATHY K. | DOB: | Age: 048 |
| Exam: MRI CERVICAL SPINE WITHOUT CONTRAST Procedure Date: 01/12/06 | | Film#: 20046161 |
| Referring Physician: ADAM NORTICK, M.D. | | Acc#: 000087431 |

**CERVICAL SPINE MRI:**

**HISTORY:** Neck pain and dizziness.

**TECHNIQUE:** Sagittal T1, fast spin echo T2, fat sat fast spin echo T2, axial gradient echo, and axial T1 weighted images.

**FINDINGS:** Comparison is made with a previous exam dated 12-08-04. The patient has had an anterior cervical fusion at C4/5/6/7. There is some mild posterior osteophyte formation at C7/T1, which is unchanged from the previous exam.

There is mild diffuse spinal stenosis through the upper portion of the fusion block, which appears unchanged from the previous exam. I do not see evidence of new disc herniation, spinal stenosis, fracture, or subluxation.

**OPINION:** No interval change in appearance since 12-08-04. Worse abnormality appears to be the mild circumferential spinal stenosis caused by the posterior osteophyte/ligamentous hypertrophy at C7/T1, seen best on the sagittal views.

Radiologist    JOSEPH M. BAILEY, M.D.

Radiologist Signature

Technologist:    Renee Reach, RT (R)(CT)(MR)
Transcribed by SUZANNEM on 01/12/2006 at 03:31 PM

CLE00094        Page 1 of 1

LINA/Cleiland 0458



Patient Name: Cleiland, Cathy Key
Patient ID: 000214773

Date of Birth:
Age: 48 years
Gender: Female
Accession Number: 001000000159070
Location: SAMC
Referring Physician: Bret Johnson

Study Date: 05-17-2006 16:54
Procedure Types: MRI LUMBAR WO/W

*Preliminary*

## MR MRI LUMBAR WO/W

MRI MRI LUMBAR WO/W
Page 1 of 2

SOUTHEAST ALABAMA MEDICAL CENTER
PO Drawer 6987, Dothan, AL 36302
334-793-8111
RADIOLOGY SERVICES
MRI REPORT

Patient Name: CLEILAND, CATHY
XRAY/MR#: 000214773
DOB:
Order #: 0012781674842104                Account #: 2781674
CDM: 3836052                             Age: 48          Room:MI- -
                                         Accession #:     Pt Type: O
                                         001000000159070

Attending Physician: Bret M. Johnson, M.D.
Ordering Physician: Bret M. Johnson, M.D.
Referring Physician:
Exam Requested: MRI LUMBAR WO/W
Exam Date: 05/17/2006

PROCEDURE:     MRI LUMBAR SPINE WO/W GADOLINIUM  5/17/06
HISTORY:       Low back pain radiating down left leg
COMPARISON:    None
TECHNIQUE:     T1, T2 and STIR sagittal, T1 and T2 axial sequences without
               contrast, T1 axial and sagittal sequence following the
               administration of 17 cc's of intravenous Gadolinium.

FINDINGS:
Evidence of posterior spinal fusion at L4-5.  Spinal stabilization rods
and transpedicular screws are noted as well as an intervertebral disc

Page: 1 Printed: S. Skipper/05-23-2008 15:32 Study: Cathy Cleiland/05-17-2006 16:54

CLE00092

LINA/Cleiland 0459



TEMPLE INLAND
CLEILAND, CATHY

FLK 020104



# CLAIM REVIEW

CM _Kelli Archack_ CLAIMANT _Cathy Qeibon_ SSN _____

**10 DAY REVIEW (CLAIM REC'D)**

ELIGIBILITY_____

EE TPC_____

OFFSETS_____

TAX SCREEN ADDED_____

INITIAL LTR TO EE_____

F/U TASKS SET_____

PRE-X OR LATE SUB
IDENTIFIED IF APPROPRIATE_____

AGREE W/ CLAIM DIRECTION_____

**INITIAL CLAIM APPROVAL**

BME_____

OFFSETS_____

COMPLIANCE_____

CLAIM STRATEGY_____

RESOURCES UTILIZED_____

AGREE W/ CLAIM DIRECTION_____

APPROVAL LTR CONTAINS MANDATORY REHAB LANGUAGE PAR IF APPL_____

**DENIAL**

RATIONALE __✓__     EE TPC __✓__     LETTER* __✓__

* states requiring special paragraph: AR, CA, IL, IN, NE, NH,OH, TX, VA,WI

COMMENTS _make a to correction d mail_
_____ _letter out:_

REVIEWED BY: _Sandra Scott_  DATE: _12/7/05_

Acenza: Task

🗒 Task | 🕮 Contents | 📑 Notes (0/0)

Logo (0)

## 📋 Task: Claim Strategy

**Start Date:** 11/21/2005     **Due Date:**     11/30/2005

### 🔷 Details

**Ior**

| | | | |
|---|---|---|---|
| Name | CATHY CLEILAND | SSN | |
| Account Name | TEMPLE INLAND CORPORATE SERVIC | Account # | FLK0020104 |
| Claim Manager | Kelli Archacki | Incident # | 613165 |

DOB

Incurred Date  05/14/2003

Claim Eff Dt-Status  11/21/2005 - Closed

Update Rationale - Claim Status Information - Duration Information - Strategy Documentation

### Update Rationale

| | |
|---|---|
| Title | Claim Decision |
| Update Rationale | Staffing |

**Ior**

### For Walk-up and Nurse Interaction Only

Role _____  Name _____

### For Staffings Only - Indicate Resources Present (check all that apply)
- ☑ AMD
- ☒ NCM
- ☒ VRC
- ☑ CBH Specialist
- ☑ On-Site Psych
- ☑ Network Orthopedist

### Claim Status Information

| | |
|---|---|
| Status | Closed |
| Status Reason | Denied, Not TD Own Occ |
| Reopened Reason | |

LINA/Cleiland 0462

Acenza: Task



Second Eye Review
Required

☑ Second Eye Review
Complete

☑ Does Not Exist

Date                    User ID

Comments

**Duration Information**                                          **Top**

Part Time          Full Time                    Red Flag

Provider's
Estimated      11/10/2005       Days
RTW Date

ERD                            ERD Reason

Primary ICD Code   7244       Primary ICD      LUMBOSACRAL NEURITIS NOS
                              Description                   757

**Strategy Documentation**                                      **Top**

Level of Functional
Capacity

Restrictions & Limitations

Subjective / Objective Findings / Treatment

Outstanding Issues and Follow-up Dates

Strategy

LINA/Cleiland 0463

Acenza: Task

Page 3 of 3

3/2/05 lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain, Diabetes, on Methadone 5 mg up to 5 pills/day, Effexor, Klonopin, nausea w/Methadone, muscle spasms legs, not very active, sugars running higher than usual, has fallen down some steps just miscalculated last step, trunk of car fell on back leaning over into trunk, just minor life traumas, more areas marked off in the pain chart than not, pain R upper extremity, L leg, back, life not in total turmoil past few visits, no acute hot joints, no acute localizing weakness, refill Neurontin 800 mg 1 x day, Robaxin 750 mg 3 x day, Phenergan 25 to 1 3 x day, Effexor 75 XR 1 qhs, Protonix 40 mg daily, Klonopin 1 mg qhs, switch to Methadone 10 mg to 1 3 x/day.
8/17/05 cervical degenerative disc disease, cervical stenosis, on Methadone & Neurontin, pain 8, f/u 1 month, fell home, remainder of report largely illegible.
9/17/05 cervical degenerative disc disease, cervical stenosis, on Methadone & Neurontin, pain 9, f/u 1 month, remainder of report largely illegible.
Rx Neurontin 800 mg 1 x day, Robaxin 750 mg 3 x day, Phenergan 25 to 1 3 x day, Effexor 75 XR 1 qhs, Protonix 40 mg daily, Klonopin 1 mg qhs, switch to Methadone 10 mg to 1 3 x/day
Treating once a month w/pain physician.
Functionality DQ drives 50 miles, uses walker times, uses computer once every 2 weeks, watches TV
PAA None noted.
RTW plans Indicates unknown if will RTW.
48 y/o w/hx multiple lumbar surgeries including fusion, cervical surgery, and Diabetes. Based on medical data submitted, R&Ls are not supported as evidenced by no current complaints of any radiating pain, numbness or tingling, no current EMG/NCV testing, medication usage stable for several months, and no current lab values to determine status of glucose. AP's state that they are not disabling her. The information does not support that she is unable to perform a sedentary position which is her previous occupation. Proceeding with closure of claim.

| Last Changed User | Kelli Archacki | Created By | Assigned To | Last Changed Date | | |
|---|---|---|---|---|---|---|

| Type | Due Date | Created By | Assigned To | | Title | |
|---|---|---|---|---|---|---|
| LTD | 05/14/2003 | | Kelli Archacki | CLEILAND,CATHY -- | 11/21/2005 05:00 PM | |

Active Contents

Assigned To: Kelli Archacki

Status: Completed

Created: 11/21/2005 04:57 PM

https://dms-acclaim.group.cigna.com/acenza/TASK/TASKOTCTASK_CREATE_CLAIM_STRATEGYDisplay.asp?id=1529...    11/21/2005

LINA/Cleiland 0464

Logs
(0)

📋 Task  🔖 Contents  📖 Notes (0/0)

## Task: Claim Strategy

**Start Date:** 06/10/2004    **Due Date:**    06/18/2004

● **Details**

| | | | |
|---|---|---|---|
| Name | CATHY CLEILAND | SSN | |
| Account Name | TEMPLE INLAND CORPORATE | Account # | FLK0020104 |
| Claim Manager | Drusilla Gamez | Incident # | 613165 |
| | | DOB | |
| | | Incurred Date | 05/14/2003 |
| | | Claim Eff Dt-Status | 11/18/2003 - Active |

Update Rationale - Claim Status Information - Duration Information - Strategy Documentation

Top

**Update Rationale**

Update Rationale    New Medical

For Walk-up and Nurse Interaction Only

Role _____    Name _____

For Staffings Only - Indicate Resources Present (check all that apply)

☑ AMD
☑ NCM
☑ VRC
☑ CBH Specialist
☑ On-Site Psych
☑ Network Orthopedist

**Claim Status Information**

Top

| | |
|---|---|
| Status | Active |
| Status Reason | Own Occ - Receiving Payments |
| Reopened Reason | |
| Second Eye Review Required | |

LINA/Cleiland 0465

Acenza: Task

☒ Second Eye Review
Complete          Date                    User ID

Comments

**Duration Information**

| Part Time | Full Time | Red Flag | IOR |
|---|---|---|---|

☒ Does Not Exist

Provider's
Estimated      11/10/2005
RTW Date

ERD                        ERD Reason

Primary ICD Code  7244      Primary ICD      LUMBOSACRAL NEURITIS NOS
                            Description

**Strategy Documentation**                                    IOR

Level of Functional
Capacity

Restrictions & Limitations

OV note dated 1/14/04 with Dr. Hadley-Neurosurgeon - 4 weeks out after re-operative
lumbar spine surgery at L4-5 with posterior lumbar interbody fusion and internal
fixation. On examination, her wound looks good. She has a scab on the bottom but it is
not erythematous, not leaking. There is no fullness or fluid here. She can bend and
mover her spine and certainly her posture is much better than it was prior to surgery.
She cannot yet walk on her heels but can on her toes. Independent testing reveals
improved strenght in the extensor hallucis longis and anterior tibialis on the left
compared to preoperatively. Will will obtain in four weeks for imaging studies. Need to
be involved in PT as outpatient.

Subjective / Objective Findings / Treatment

OP report dated 12/16/03 - L4-L5 Laminectomy for decompression. L4-5 diskectomy,
bilateral, with L4-5 posterior lumbar interbody fusion, bilateral, internal fixation L4-
L5, bilateral. Autologous bone dorsolateral fusion L4-L5, bilateral.

Outstanding Issues and Follow-up Dates

LINA/Cleiland 0466

Acenza: Task

Page 3 of 3

Pending DQ and Auth from clmt.  Need updated meds from neurosurgeon.

Strategy

| Last Changed User | Drusilla Gamez | | Last Changed Date | 06/10/2004 07:04 PM |
|---|---|---|---|---|

**Active Contents**

| Type | Due Date | Created By | Assigned To | | Name |
|---|---|---|---|---|---|
| LTD | 05/14/2003 | Drusilla Gamez | Drusilla Gamez | | CLEILAND,CATHY |

| Created: | 06/10/2004 07:58 PM |
|---|---|

| Status: | Completed | Assigned To: | Drusilla Gamez |
|---|---|---|---|

LINA/Cleiland 0467

06/05/2004

## GENERAL INFO.

| | |
|---|---|
| Date Claim Rec'd | 10/1/03 |
| Policy Eff. Date | 1/1/98 |
| Policy Canceled? | |
| Initial EE (Y/N) | |
| Eligibility WP | |
| Incur Date | 5/14/03 |
| Inv. PCL (Y/N) | |
| Ben. Start Date | 11/10/03 |
| DOB | |
| PO Age Recd? | |
| MI Limit (Y/N) | |
| SS Policy Lang: | |
| R/A Rec'd(Y/N)? | |

Date of Hire 8/24/98
EE Class
Date elected
EE Eff. Date
Eligible? (Y/N)
PCL Descr.
Inv. Dates
Any Occ. Date 11/10/05
Ben Term Date 7/10/2022
FMI (Y/N)
W.O.P (Y/N)
Primary/Full
Freeze (Y/N)?
Amount/ Status:

Other benefits:
Short Term Disability (01)
Prmary SSDI w/ Freeze (04)
Dep.SS w/ Freeze (06)
Gov't/State Dis Benefits (16)
WC/Jones Act (18)
Salary Continuance (19)
Other:
Other:
Note:  EWP -- Watch for 1st of month following DOH, etc.

## MEDICAL INFORMATION

| | |
|---|---|
| Initial DX | Lumbar Radiculitis #45 |
| ICD-9/DSM IV | 847 |
| Surgery/Hosp | 5/21/03   7/16/03 |
| Accident? (Type?) | |
| Work Related (Reported?) | |
| Attending Physician: | Phone:      Fax: |

## OCCUPATIONAL INFORMATION

| | |
|---|---|
| Occupation | HR Manager. |
| Job Description (Y/N) | |
| Occ. Desc. - Sed., Light | |
| Med., Hvy, Very Hvy | |
| Education <8th Grade | |
|       <12 Grade | |
| H.S. Diploma / GED | |
| College - #Years | |
| Degree (List titles) | |
| Specialty, Certificate, | |
| or License | |
| Experience | |
| RTW Language | |

## BENEFIT INFORMATION

| | |
|---|---|
| BME/Salary | 4291.67 |
| Gross Benefit | 2575.00 |
| Basic % | 60% |
| Minimum | 50 |
| EE Contribution % | 100 |

Override Benefit
Override %
Maximum    2500
Pre/Post      pre

## EMPLOYER INFORMATION

| | |
|---|---|
| Policy Number | FLK 20104 |
| Policy Name | Temple Inland. |
| PH Address | |
| Phone # | |
| Contact Name/ Title | |

01
09

## CLAIMANT INFORMATION

| | |
|---|---|
| Claimant Name: | Cathy Cleiland |
| Address | Monroeville AL 36460 |
| Cx Age @ Dis. | 43   Clmt Age 62 |
| Spouse DOB | |

Social Security #
Phone/ Fax #
Spouse Name
Spouse SS#
Spouse Age 62

Dependent Name          DOB

Date Age 18          Age 25 (disabled)

Additional Information:

coverage sheet

LINA/Cleiland 0468



*Disclosure Author▮ion*



CIGNA
Life · Ac▮    Insurance
· Disability

Life Insurance Company of North America...
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York    CIGNA

---

### FRAUD WARNING

**Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. For residents of the following states, please see the reverse side of this form: Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon or Virginia.**

---

Claimant's Name (Please Print): Cathy K Cleiband

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome), as well as communicable diseases and genetic testing. If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings, or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a)reinsuring companies; b)the Medical Information Bureau, Inc., which operates Health Claim index (HCI); c)fraud or overinsurance detection bureaus; d)anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e)for audit or statistical purposes; f)as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: Cathy L Cleiland    Date: 6/4/03

Relationship,
if other than Claimant: _____    Claimant's Social Security Number: _____

Company Name: Temple Inland Forest Products Corp

612286 (03/2003)    STD

LINA/Cleiland 0469

## LTD Policy: Temple Inland   FLK 020104

*Cheat Sheet- (Prepared by CM M. Ryan)*

*Pol eff date:   1/1/98*

- *Eligible Classes= one:*

### Class 1:

*All active, full-time and part-time salaried, comm'n'd I,II,III,& IV Ees and designated non-union hourly Ees (Streetsboro, Crawfordsville, Lexington Box, Harrington, Maysville and Ontario Mill Locations) of the Er who are a participant in the Plan and regularly scheduled to work min of 20 hrs or more per week.*

- *Eligibility Waiting Period (please see 1/1/99 Amendment cheat sheet)*

- *Definition of Disability    (any occ at 24 mos)*

*An Employee is Disabled if, because of Injury or Sickness, he or she is earning 80% or less of his or her Indexed Covered Earnings.*

*Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation.*

*After Disability Benefits have been payable for 24 months, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings.*

- *Def of Covered Earnings (see cheat sheet for 1/1/98 amendment)*

- *Benefit Waiting Period= 180 days  (Dis continuous even if ee rtw up to 30 days during BWP- no extension of BWP)*

*Note- page 10 may waive if bens under prior plan were payable on pol eff date and Ee returns  6 mos but more than 14 days; with related cause*

- *Disability Benefits (Taxability & max benefit options):   FOUR OPTIONS*

*Option 1 (tax free premiums   pretax):       The lesser of 60% of ees monthly Covered Earnings (CE's) rounded to the nearer dollar or $2500.00 reduced by OIB's*

**LINA/Cleiland 0470**

2

*Option 2 (after tax premiums= post tax)* — *The lesser of 60% of an ees monthly CE's rounded to the nearer dollar or $2500.00 reduced by OIB's*

*Option 3 (tax free premiums=pretax)* — *The lesser of 60% of Ees monthly CE's rounded to the nearer dollar or $7500.00 reduced by OIB's*

*Option 4 (after tax premiums= post tax)* — *The lesser of 60% of an ees monthly CE's rounded to the nearer dollar or $7500.00, reduced by OIB's*

- *Minimum Disability Benefit = $50.00*

- *WIB— first 12 mos straight 100% reductions calc*

  *Second 12 mos reduced by 50% of current earnings, if exceeds 80% of Monthly Indexed Covered Earnings- further reduction by this amt.*

- *Mandatory work to cap prov'n or no benefit payable*

- *See Add'l benefits prov'n for accidental loss of body part  "Specified Loss Ben" (p.15)*

- ADEA
  
  62 or under    65th or 42nd mo ben payable later of
  
  | | |
  |---|---|
  | 63 | 36th mo ben |
  | 64 | 30th mo ben |
  | 65 | 24th mo ben |
  | 66 | 21st mo ben |
  | 67 | 18th mo ben |
  | 68 | 15th mo ben |
  | 69 | 12th mo ben    (69 or older) |

*Note:  Proof of Dis- (page 10) must satisfy BWP & Appropriate Care, proof must l provided at Insured's expense*

- Termination of Benefits- will end on earliest of
  
  1)    Date ee earns  - than 80% of ICE
  2)    Date Ins Co determined not dis
  3)    End of Max Ben Period
  4)    Date Ee dies
  5)    Date refuses to participate in rehab efforts

LINA/Cleiland 0471

6)        Date ee not receiving appropriate care

- **Recurrent Provn:**        Successive Periods of Dis- same/ related cause are continuous unless ee returns to active serv for 6 or more consecutive mos. Not considered continuous if cause unrelated (or covered under plan replacement)

- **M/I Limit:** 24 mos max incl alcohol, anxiety, eating disorders, etc. (Note 14 day confinement excepted from 24 mo count)

- **Pre-x:** 3/12 with continuity of coverage and reas prudent person language

- **OIB's:** all- with assumed to receive provn & dependents included, Freeze for increases

- **Lump Sum** pro-rated- over time award states or 5 yrs

- **SS Assistance** with reqd appeal

- <u>Rehab- at ins co's discretion, may require or bens not payable  & Spouse rehab prov'n with 50% red of ben</u>

- **Survivor Benefit-** payable to spouse, then equal shares to children unmarried under 21, then estate  (Survivor BWP= after 6 dis bens payable, 100% of last full dis ben payable in single lump sum equal to 3 mos bens)

- **Exclusions:** general excl (terrorism, felony etc)- plus ins co will not pay if Ee Refuses rehab plan, not under appropriate care, refuses trans/modified work arrangem fails to cooperate in the administration of a claim including providing docs of dis or to determine benefit due

LINA/Cleiland 0472

**Temple Inland   FLK  020104**

**Cheat Sheets Amendments—M. Ryan**

*Policy Effective Date*                    *1/1/98*

*Amended:*                              *9/1/98 & 1/1/99*

*1/1/99 Amendment*

*Eligibility Waiting Period:*

*Initial Group: None*

*New Hires:*

1)      *F/T Salaried Exempt Ee, Comm'n II, Comm'n III & IV: eligible 1ˢᵗ day of activ service.*

2)      *F/t salaried non-exempt Ee not financial services- 1ˢᵗ day active service*

3)      *F/t salaried nonexempt who is financial services Ee, and hourly Ees, p/t hourly Ees, part-time salaried ees, or comm'n I Ee shall be eligible on 1ˢᵗ day of month in active service following Waiting Period as follows:*

- *Financial Serv Ee- WP= three continuous months of active service from most recent date of hire*
- *All others- WP= 31 days active service from Ees most recent date of hire*

*Note-( amended eff date of insurance:  If coverage elected w/in 31 days Ee b/c eligible, or w/in 31 days of life status change Is amt eff on latest of the following:  Pol eff date, date payroll deduction authorized, date Er or Ins Co receives completed Enrollment form, eff date determined by Er's ben plan)*

*9/1/98 Amendment:*

*Covered Earnings:*

*"Covered Earnings" includes base pay prior to any reduction fro elective deferrals, includes comm's actually paid, but excludes those not yet paid whether or not accrue*

LINA/Cleiland 0473

## Temple Inland LTD 020104  *(9/1/98 Amend cont'd)*

*"Covered Earnings" excludes all other comp incl- insured dis pay, imputed income, O/T bonus, excess credit, shift differentials, premium pay, severance pay, no-cash comp, allowances, fringe benefits, etc.*

I.  *Salaried Ee, Covered Earnings= annual base salary*

II.  *Hourly Ee- base hrly rate x 2080 hrs for f/t, x 1040 hrs for p/t Ee, regardless of hrs regularly worked.*

III.  *Newly hired Comm'n I Ees, Comm'n II Ees, Comm'n III and IV- Covered Earnings is the greater of:*
   *(1) Base pay, if any*
   *(2) 20,000*

IV.  *For all other Comm'n I, II, III  Ees Covered Earnings is determined by: (greater of 20,000 or)*
   *(1) adding Ees base pay and comm'n paid  from Jan 1 though time enrollment data is produced and then,*
   *(2) annualizing that amt for full 12- month year*

V.  *For all other Comm'n IV Ees covered earnings is determined by: (greater of 20,000 or)*
   *(1) adding Ees base pay if nay and comm'n paid from Jan 1 through date enrollment data produced, then*
   *(2) annualizing that amt based on a 12 month year, provided this does not exceed max sal range for Comm'n IV Ees*

VI.  *For ees hired after enrollment data produced or Ees with change of pay afte produced, covered earnings are determined as of date of hire or date of change in pay or status respectively- administrator discretion to use "frozen pay"*

LINA/Cleiland 0474

# TEMPLE-INLAND
## Suffix Codes/Locator Codes/Address/Phone/Fax/E-Mail
## Long Term Disability (FLK-020104)

| Groups/Divisions | Contact | Suffix Code | Loc. Code | Street/P.O. | City/State/Zip | Phone/Fax/E-Mail |
|---|---|---|---|---|---|---|
| FOREST PRODUCTS GROUP | Cathy Dover | N/A | N/A | P.O. Drawer N | Diboll, TX 75941 | 936-829-1643<br>936-829-1318<br>cdover@templeinland.com |
| Temple-Inland Inc<br>10001 | Cecilia Cornelius | 001 | 01 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1997<br>936-829-1537<br>ccornell@templeinland.com |
| FPC Corporate<br>10101 | Cecilia Cornelius | 001 | 02 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1997<br>936-829-1537<br>ccornell@templeinland.com |
| Sabine Investment Company<br>10103 | Cecilia Cornelius | 001 | 03 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1997<br>936-829-1537<br>ccornell@templeinland.com |
| Texas South-Eastern Railroad<br>10105 | Cecilia Cornelius | 001 | 04 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1997<br>936-829-1537<br>ccornell@templeinland.com |
| Temple Administration-Diboll, TX<br>10202 | Cecilia Cornelius | 001 | 05 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1997<br>936-829-1537<br>ccornell@templeinland.com |
| Bldg. Products-Pineland, TX<br>10203 | Bonnie Davis | 001 | 06 | P.O. Box 929 | Pineland, TX 75968 | 936-584-4223<br>936-584-4277<br>bdavis1@templeinland.com |
| Bldg. Products-West Memphis<br>10204 | Wade Hardy | 001 | 07 | P.O. Box 1270 | West Memphis, AR 72303 | 870-702-3105<br>870-702-3200<br>whardy@templeinland.com |
| Bldg. Products-Thomson, GA<br>10205 | Anita Reese | 001 | 08 | P.O. Box 369 | Thomson, GA 30824 | 706-595-5721<br>706-595-8560<br>areese@templeinland.com |
| Bldg. Products-Monroeville<br>10206 | Peggy Sigler | 001 | 09 | P.O. Box 966 | Monroeville, AL 36461 | 334-575-4876<br>334-575-7063<br>psigler@templeinland.com |
| Bldg. Products-Fletcher, OK<br>10208 | Debbie Price | 001 | 10 | Rt. 1 Box 3156 | Fletcher, OK 73541 | 580-549-7114<br>580-549-7123<br>dprice@templeinland.com |
| Bldg. Products-Buna, TX<br>10209 | Krystal Johnson | 001 | 11 | P.O. Box 1559 | Buna, TX 77612 | 936-994-5911<br>936-994-7224<br>@templeinland.com |
| Bldg. Products-Dequincy, LA<br>10210 | Leah Rigmalden | 001 | 12 | P.O. Box 1057 | Dequincy, LA 70633 | 318-786-1300<br>318-786-1342<br>lrigmal@templeinland.com |
| Bldg. Products-Hope, AR<br>10223 | Cecelia Jackson | 001 | 13 | P.O. Box 618 | Hope, AR 71801 | 870-722-4010<br>870-722-4040<br>cjackson@templeinland.com |
| Forests<br>10401 | Cecilia Cornelius | 001 | 14 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1997<br>936-829-1537<br>ccornell@templeinland.com |
| Rome Lumber (salaried)<br>20202 | Eugene Jones | 001 | 27 | P.O. Box 1551 | Rome, GA 30162 | 706-236-5529<br>706-291-8775<br>hjones@templeinland.com |
| Rome Forests (salaried)<br>20401 | Bonnie Holden | 001 | 28 | P.O. Box 100 | Coosa, GA 30129 | 706-236-5411<br>706-236-5446<br>bholden2@templeinland.com |

LINA/Cleiland 0475

| | | | | | | |
|---|---|---|---|---|---|---|
| Bldg. Products-Clarian, PA (eff 101/98) 10224 | Tina Banner | 001 | 34 | 1 Fiberboard Ave P.O. Box 340 | Shippenville, PA 16354 | 814-226-0850 814-226-8967 tbanner@templeinland.com |
| Mt. Jewett PBD (Salaried only eff. 4/1/00) 10228 | Mary Leland | 001 | 35 | R.R. #1, Box 266 | Kane, PA 16735 | 814-778-2619 814-778-6002 |
| Mt. Jewett MDF (Salaried only eff. 4/1/00) 10229 | Mary Leland | 001 | 36 | R.R. #1, Box 266 | Kane, PA 16735 | 814-778-2619 814-778-6002 |
| Temple-Sales and Marketing 10201 | Cecilia Cornelius | 001 | 37 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1997 936-829-1537 ccornell@templeinland.com |
| Temple-Particleboard/Laminating 10225 | Maria Olvera | 001 | 38 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1436 936-829-1537 molvera@templeinland.com |
| Temple Fiber Products 10226 | Kathy Hufstetler | 001 | 39 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1662 936-829-7204 khufstet@templeinland.com |
| Temple-Lumber/Finger Joint/Power 10227 | Angie Robles | 001 | 40 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1644 936-829-7106 arobles@templeinland.com |
| FINANCIAL SERVICES GROUP | Susan Riley | N/A | N/A | 8333 Douglas Ave. | Dallas, TX 75225 | 214-360-4814 214-360-4894 |
| Timberline Ins. – FP 11103 | Debra Howard | 002 | 16 | 1300 Mopac Expressway | Austin, TX 78746 | 512-434-8551 512-434-8560 dhoward@tlmcmortgage.com |
| Mortgage Banking – FP 11104 | Debra Howard | 002 | 17 | 1300 Mopac Expressway | Austin, TX 78746 | 512-434-8551 512-434-8560 dhoward@tlmcmortgage.com |
| LIC - Delaware – FP 11108 | Debra Howard | 002 | 18 | 1300 Mopac Expressway | Austin, TX 78746 | 512-434-8551 512-434-8560 dhoward@tlmcmortgage.com |
| Timberline Ins. – FS 11113 | Debra Howard | 002 | 19 | 1300 Mopac Expressway | Austin, TX 78746 | 512-434-8551 512-434-8560 dhoward@tlmcmortgage.com |
| Mortgage Banking – FS 11114 | Debra Howard | 002 | 20 | 1300 Mopac Expressway | Austin, TX 78746 | 512-434-8551 512-434-8560 dhoward@tlmcmortgage.com |
| LIC - Delaware – FS 11118 | Debra Howard | 002 | 21 | 1300 Mopac Expressway | Austin, TX 78746 | 512-434-8551 512-434-8560 dhoward@tlmcmortgage.com |
| Mortgage Banking-Knutson 11112 | Debra Howard | 002 | 29 | 1300 Mopac Expressway | Austin, TX 78746 | 512-434-8551 512-434-8560 dhoward@tlmcmortgage.com |
| Guaranty Federal – FP 10201 | Vickie Lee | 002 | 22 | 8333 Douglas Ave. | Dallas, TX 75225 | 214-360-4813 214-360-4894 vlee@gfbank.com |
| Guaranty Federal – FS 11211 | Vickie Lee | 002 | 23 | 8333 Douglas Ave. | Dallas, TX 75225 | 214-360-4813 214-360-4894 vlee@gfbank.com |
| Guaranty Group, Inc. – FS 11212 | Vickie Lee | 002 | 24 | 8333 Douglas Ave. | Dallas, TX 75225 | 214-360-4813 214-360-4894 vlee@gfbank.com |
| Guaranty Business Credit Corporation (eff 6/11/99) 11215 | Vickie Lee | 002 | 31 | 8333 Douglas Ave. | Dallas, TX 75225 | 214-360-4813 214-360-4894 vlee@gfbank.com |
| First Hemet Corporation (eff 6/28/99) 11217 | Vickie Lee | 002 | 32 | 8333 Douglas Ave. | Dallas, TX 75225 | 214-360-4813 214-360-4894 vlee@gfbank.com |

LINA/Cleiland 0476

| | | | | | | |
|---|---|---|---|---|---|---|
| Stockton Financial Corporation (eff 7/1/99 11216 | Vickie Lee | 002 | 33 | 8333 Douglas Ave. | Dallas, TX 75225 | 214-360-4813 214-360-4894 vlee@gfbank.com |
| INLAND GROUP | Sharon McClish | N/A | N/A | 4030 Vincennes Road | Indianapolis, IN 46268-0737 | 317-879-4525 317-824-4777 smcclis@iccnet.com |
| Inland Streetsboro Hourly 30009 | Sharon McClish | 006 | A9 | 4030 Vincennes Road | Indianapolis, IN 46268-0737 | 317-879-4525 317-824-4777 smcclis@iccnet.com |
| Inland Crawfordsville Hourly 30027 | Sharon McClish | 006 | C7 | 4030 Vincennes Road | Indianapolis, IN 46268-0737 | 317-879-4525 317-824-4777 smcclis@iccnet.com |
| Inland Lexington Box Hourly 30037 | Sharon McClish | 006 | D7 | 4030 Vincennes Road | Indianapolis, IN 46268-0737 | 317-879-4525 317-824-4777 smcclis@iccnet.com |
| Inpeak Packaging Co. Warren County Hourly (eff 7/1/2001)    30158 | Sharon McClish | 006 | P8 | 4030 Vincennes Road | Indianapolis, IN 46268-0737 | 317-879-4525 317-824-4777 smcclis@iccnet.com |
| Inland Rand-Whitney Harrington Hourly 30058 | Sharon McClish | 006 | 58 | 4030 Vincennes Road | Indianapolis, IN 46268-0737 | 317-879-4525 317-824-4777 smcclis@iccnet.com |
| Inland Maysville Hourly 31091 | Sharon McClish | 006 | 91 | 4030 Vincennes Road | Indianapolis, IN 46268-0737 | 317-879-4525 317-824-4777 smcclis@iccnet.com |
| Inland Ontario Mill Hourly 31092 | Sharon McClish | 006 | 92 | 4030 Vincennes Road | Iadianapolis, IN 46268-0737 | 317-879-4525 317-824-4777 smcclis@iccnet.com |
| Inland Salaried 33900 | Sharon McClish | 006 | 98 | 4030 Vincennes Road | Indianapolis, IN 46268-0737 | 317-879-4525 317-824-4777 smcclis@iccnet.com |
| INLAND EASTEX | Cathy Dover | N/A | N/A | P.O. Drawer N | Diboll, TX 75941 | 936-829-1643 936-829-1318 cdover@templeinland.com |
| Inland Eastex* 10302 | Cathy Dover | 003 | 25 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1643 936-829-1318 cdover@templeinland.com |
| Inland Eastex Extrusion Co. 10304 | Cathy Dover | 003 | 26 | P.O. Drawer N | Diboll, TX 75941 | 936-829-1643 936-829-1318 cdover@templeinland.com |
| Gaylord Container Corporation | Teah Bowling | 006 | GE | 303 South Temple Drive | Diboll, TX 75941 | 936-829-7953 936-829-1910 Tbowling@templeinland.com |

FLK-20104 Revised 2/2/00

Changes made 1/18/00
Effective 12/29/99 the following group was cancelled:
Inland Eastex Group
Inland Eastex Suffix Code 003 Loc. Code 25
Inland Eastex Extrusion Co. Suffix Code 003 Loc. Code 26

Inland Group
Contact Name, Address, City, State, Zip Code and Phone/Fax/E-Mail for Suffix 006, Loc. Codes D7, 58 and 92 to Sharon McClish.

Changes made 2/2/00

Changed Contact from Angie Robles to Cecilia Cornelius for: Temple-Inland, Inc., 001-01; FBP Corporate 001-02; Sabine Investment Co., 001-03; Texas South-Eastern Railroad 001-04; and Forests 001-14, changing phone and fax.

Changed Contact from Angie Robles to Cecilia Cornelius, changing phone and fax; changed the Company/Division name from Bldg. Products to "Temple Administration-Diboll, TX".

Added the following locations: Mt. Jewett PBD –001-35 and Mt. Jewett MDF 001-36, both eff. 4/1/2000n (salaried only); Temple Sales and Marketing 001-37; Temple – Particleboard/Laminating 001-38; Temple-Fiber Products 001-39; and Temple-Lumber/Finger Joint/Power 001-40, all eff. 1/1/2000.

LINA/Cleiland 0477

REVISED 2/8/00:

Revised to include the Inland Eastex Group, Suffix Code 003, Location Codes 25 and 26, which were cancelled due to the sale of the Inland Eastex Group on 12/29/99.  Added for purposes of ongoing claims incurred prior to 12/29/99.

REVISED 2/22/00:

Changed phone and fax on Suffix 001, Location Code 07; corrected phone, fax and email on Suffix 006, Location Code 92.

REVISED 3/23/00:

*Reactivated suffix code 003 and location codes 25 and 26 for Inland Eastex and Inland Eastex Extrusion to cover employees who were retired or disabled on or before 12/29/99, which was the cancellation date of the policy due to the sale of Eastex.  Contact is T.J. Colwell.

UPDATED 5/22/00:

Changed suffix code 001, location code 38 contact from Jeanna Mahan to Romonia Bradford on a temporary basis, per Dan Smith.

UPDATED 6/28/00:

Changed suffix code 001, location code contact from Ramonia Bradford to Trudy LeDoux.
Changed P.O. box for suffix 001, location 09.

UPDATE 10/06/00:

Changed suffix code 001, location code 34 contact to Tina Banner.

UPDATED 6/28/01:

Added the following suffix 006 location P8: (Eff 7/1/2001) - Inpeak Packaging Co. Warren County Hourly Employees

Inland recently acquired several companies, which will offer LTD coverage to salaried employees and will be reported under suffix 006, location 98
Elgin Corrugated Box (division of Inland Paperboard & Pkg. Co.) Salaried Employee – effective 6/1/2001
Inpeak Denver Salaried Employees – effective 7/1/2001
Inpeak Scranton Salaried Employees – effective 7/1/2001
Inpeak Binghamton Salaried Employees – effective 7/1/2001
Inpeak Louisville & St. Anthony Salaried Employees – effective 7/1/2001
Inpeak Madison Salaried Employees – effective 7/1/2001
Inpeak Buffalo Salaried Employees – effective 7/1/2001
Inpeak Scotia Salaried Employees – effective 7/1/2001
Inpeak Utica Salaried Employees – effective 7/1/2001

UPDATED 9/7/01:

Added client company codes.

UPDATED 10/25/01

Replaced Trudy LeDoux with Maria Olvera

UPDATED 09/26/02

Adding Gaylord Container Corporation/effective 02/28/2002

Class description: All former Gaylord Container Corporation employees on file with the Policyholder and the Insurance company, who while employed by Gaylord Container Corporation prior to the effective date of this amendment: 1) had a valid and signed severance agreement or change in control agreement requiring benefits to continue following the termination of employment through a specified coverage termination date, and 2) were terminated before satisfying a written probationary employment period with the Policyholder

Benefit Amount 66.67/$12,000
Minimum benefit $100
Maximum Benefit Period: to age 65 (graded ADEA schedule)
BWP: 180 days

LINA/Cleiland 0478

*Interoffice Memo*



**CIGNA**

Date :      August 17, 1999
To :       Kathy Harvey

From :     Lori Dickman

Telephone :   317.298.2995
Facsimile :    317.298.2998

Subject :    Temple-Inland Final Approved Contract (FLK-20104)

Kathy, enclosed is the final contract as approved by Temple-Inland for LTD (FLK-20104), and amendments 1 and 2 for your file (please replace this contract in your file, all prior versions were draft copies).

For the 1/1/2000 renewal we will be amending the contract to provide guarantee issue coverage for options 3 and 4 (if not selected when they first qualify at the $50,000 per year or more salary level required for these options) at annual enrollment or upon a permitted election change event (family status change), we will forward this amendment (that will also include premium rate changes) when it is received in our office.

Thank you for your assistance.

cc: Stephanie Tonyes

LIFE INSURANCE COMPANY OF NORTH AMERICA
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Temple-Inland Forest Products Corporation
(herein called the Policyholder)

Effective Date: January 1, 1999

Group Policy No.: FLK-020104

This Amendment will be in effect only for eligible employees in Active Service on the Effective Date shown above. If an Employee is not in Active Service on the date he would otherwise become eligible, he will become eligible on the date he returns to Active Service provided any required Waiting Period has been satisfied.

As of the Effective Date shown above, the Company and the Policyholder hereby agree that the Policy is amended as follows:

1.    The Eligibility Waiting Period on the page entitled SCHEDULE OF BENEFITS FOR CLASS 1 is hereby replaced by the following:

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

Initial Group:  No Waiting Period.

New Hires:

Each Full-time salaried exempt Employee, commission II Employee, commission III Employee, and commission IV Employee shall be eligible to participate in the Plan on the first day he becomes an Employee provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time salaried nonexempt Employee who is not a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time salaried non-exempt Employee who is a Financial Services Employee, and each hourly Employee, part-time hourly Employee, part-time salaried Employee, or commission I Employee shall be eligible to participate in the Plan on the first day of the month following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service. For this group, Waiting Period is defined as follows:

For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees, Waiting Period means 31 days of Active Service from an Employee's most recent date of hire a an Employee.

LINA/Cleiland 0480



2.    The page entitled **EFFECTIVE DATE OF INSURANCE** is hereby replaced by the following:

## EFFECTIVE DATE OF INSURANCE

An Employee, his or her eligible Spouse or Dependent Child will be insured for an amount not to exceed the Guaranteed Issue Amount on the date he or she becomes eligible, if the Employee is not required to contribute to the cost of this insurance.

An Employee, his or her eligible Spouse or Dependent Child will be insured for an amount that exceeds the Guaranteed Issue Amount on the date the Insurance Company agrees in writing to insure that eligible person. The Insurance Company will require the eligible person to satisfy the Insurability Requirement before it agrees to insure him or her.

An Employee who is required to contribute to the cost of this insurance may elect insurance for himself or herself and an eligible Spouse or Dependent Child only by authorizing payroll deduction in a form approved by the Employer and the Insurance Company. The effective date of this insurance depends on the date and amount of insurance elected.

If the coverage is elected within 31 days after the individual becomes eligible, during an Annual Enrollment Period or within 31 days after a Life Status Change, the Guaranteed Issue Amount will be effective on the latest of the following dates.
1.    The Policy Effective Date.
2.    The date payroll deduction is authorized for this insurance.
3.    The date the Employer or Insurance Company receives the completed enrollment form.
4.    The effective date determined by the Employer's benefit plan.

If coverage is elected in an amount that exceeds the Guaranteed Issue Amount or an enrollment form is received more than 60 days after an individual is eligible to elect coverage, the amount over the Guaranteed Issue Amount will be effective on the date the Insurance Company agrees in writing to insure that eligible person. The Insurance Company will require the eligible person to satisfy the Insurability Requirement before it agrees to insure him or her.

If coverage for a Dependent Child is in force and another Dependent Child is acquired, coverage for that child is effective on the date the child qualifies as a Dependent Child.

If an eligible person is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to Active Service.

LINA/Cleiland 0481

● ●

## LIFE INSURANCE COMPANY OF NORTH AMERICA
### (herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Temple-Inland Forest Products Corporation
(herein called the Policyholder)

Effective Date: September 1, 1998

Group Policy No.: FLK-020104

This Amendment will be in effect only for eligible employees in Active Service on the Effective Date shown above. If an Employee is not in Active Service on the date he would otherwise become eligible, he will become eligible on the date he returns to Active Service provided any required Waiting Period has been satisfied.

As of the Effective Date shown above, the Company and the Policyholder hereby agree that the Policy is amended as follows:

1.    The section entitled TERMINATION OF INSURANCE is hereby replaced by the following:

### TERMINATION OF INSURANCE

An Insured's coverage will end on the earliest of the following dates.

1.    The date the Employee is eligible for coverage under a plan intended to replace this coverage.
2.    The date the Policy is terminated by the Insurance Company.
3.    The end of the month following the date the Insured is no longer eligible.
4.    The day after the end of the period for which premiums are paid.
5.    The date an Employee is no longer in Active Service.

2.    The definition of Covered Earnings on the page entitled SCHEDULE OF BENEFITS FOR CLASS 1 is hereby replaced by the following:

Covered Earnings is defined as:

a.    For All Purposes: For all purposes under the Temple-Inland Benefit Solutions Plan, "Covered Earnings" includes only compensation paid to an Employee by an Employer for services performed by the Employee for the Employer as reflected on the Employer's pay system which meets all of the definitions set forth in this paragraph a. and the applicable paragraphs b. or c. below. "Covered Earnings" does not include any amounts that are not paid through the Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

LINA/Cleiland 0482

"Covered Earnings" includes the Employee's base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan. "Covered Earnings" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, have accrued, or are otherwise payable at the time of the calculation).

"Covered Earnings" excludes all other compensation including, but not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by an Employer to an Employee on behalf of an entity that is not a member of the Employer's controlled group of corporations for services rendered by the Employee on behalf of such entity, and any other compensation.

For Costs and Credits: For purposes of determining Costs and Credits, an Employee's "Covered Earnings" is the Employee's "Covered Earnings" in effect at the time the Solutions enrollment data is produced as determined below:

I.    For a salaried Employee, "Covered Earnings" is the annual base salary.

ii.   For an hourly Employee, "Covered Earnings" is the Employee's base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

iii.  For newly hired commission I Employees, commission II Employees, commission III Employees and commission IV Employees, "Covered Earnings" is the greater of:

      (1)   base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever applicable), or

      (2)   $20,000

iv.   For all other commission I Employees, commission II Employees, commission III Employees, and for any other hourly Employees or salaried Employees with commission pay, "Covered Earnings" is determined by:

      (1)   adding the Employee's base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

      (2)   annualizing that amount based on a full 12-month year.

..    For all other commission IV Employees, "Covered Earnings" is determined by:

LINA/Cleiland 0483

(1)    adding the Employee's base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

(2)    annualizing that amount based on a full 12-month year; provided, however, that "Covered Earnings" shall not exceed the maximum salary in the range for salary grade 19-1 for commission IV Employees.

ii.    For Employees hired after the Solutions enrollment data is produced or Employees who have a change in pay or change in status after the Solutions enrollment data is produced, "Covered Earnings" will be determined as of the date of hire or the date of change in pay or change in status, respectively; provided, however, that the Plan Administrator may elect in his sole discretion to use the "Frozen pay" determined at the time the Solutions enrollment data is produced to determine Costs and Credits for any group or classification of Employees with commission pay.

For Benefit Payments: For the purpose of determining the amount of a benefit to be paid, an Employee's "Covered Earnings" in effect on the date of the event for which the claim is paid will be used, as determined below:

i.    For a salaried Employee, "Covered Earnings" is the annual base salary.

ii.    For an hourly Employee, "Covered Earnings" is the Employee's base hourly rate multiplied by the number of hours the Employee is regularly scheduled to work, up to a maximum of 2,080 hours.

iii.    For commission I Employees, commission II Employees, and commission III Employees, and for any other hourly Employees or salaried Employees with commission pay, "Covered Earnings" is the greater of:

(1)    the Employee's base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if the Employee has been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period), or

(2)    $20,000.

LINA/Cleiland 0484

iv.    For commission IV Employees, "Covered Earnings" is the greater of:

(1)    the Employee's base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if the Employee has been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period); provided, however, that "Covered Earnings" shall not exceed the maximum salary in the range for salary grade 19-1 for commission IV Employees, or

(2)    $20,000.

Except for the above, this amendment does not change the Policy in any way.

FOR THE COMPANY

By:

John K. Leonard, President

Date: June 17, 1999

Amendment No. 1

TL-004750

LINA/Cleiland 0485

Except for the above, this amendment does not change the Policy in any way.

FOR THE COMPANY

By:

John K. Leonard, President

Date: April 28, 1999

Amendment No. 2

TL-004780

LINA/Cleiland 0486

LIFE INSURANCE COMPANY OF NORTH AMERICA **GROUP POLICY**
1601 CHESTNUT STREET, PHILADELPHIA, PA 19192-2235
215-761-1000
A STOCK INSURANCE COMPANY

| | |
|---|---|
| POLICYHOLDER: | Temple-Inland Forest Products Corporation |
| POLICY NUMBER: | FLK-020104 |
| POLICY EFFECTIVE DATE: | January 1, 1998 |
| POLICY ANNIVERSARY DATE: | January 1 |

This Policy describes the terms and conditions of coverage. The Policy is issued in Texas and shall be governed by its laws. The Policy goes into effect on the Policy Effective Date, 12:01 AM at the Policyholder's address.

The Insurance Company and the Policyholder have agreed to all the terms of this Policy.

*[signature]*
John K. Leonard, President

*[signature]*
George D. Mulligan, Secretary

TL-004700

IMPORTANT NOTICE

To obtain information or make a complaint:

You may call the Life Insurance Company of North America, Group Insurance's toll-free telephone number for information or to make a complaint at:

1-800-441-1832

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write the
Texas Department of Insurance
P.O. Box 149104
Austin, TX  78714-9104
X # (512) 475-1771

PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY:  This notice is for information only and does not become a part or condition of the attached document.

TL-004424

AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis del Life Insurance Company of North America, Group Insurance Division para informacion o para someter una queja al:

1-800-441-1832

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

1-800-252-3439

Puede escribir al Departamento de
Seguros de Texas
P.O. Box 149104
Austin, TX  78714-9104
FAX # (512) 475-1771

DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero.
Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

UNA ESTE AVISO A SU POLIZA:
Este aviso es solo para proposito de informacion y se convierte en parte o condicion del documento adjunto.

## IMPORTANT INFORMATION ABOUT COVERAGE UNDER THE TEXAS LIFE, ACCIDENT, HEALTH AND HOSPITAL SERVICE INSURANCE GUARANTY ASSOCIATION

Texas law establishes a system, administered by the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association (the "Association"), to protect policyholders if their life or health insurance company fails to or cannot meet its contractual obligations. Only the policyholders of insurance companies which are members of the Association are eligible for this protection. However, even if a company is a member of the Association, protection is limited and policyholders must meet certain guidelines to qualify. (The law is found in the Texas Insurance Code, Article 21.28-D.)

BECAUSE OF STATUTORY LIMITATIONS ON POLICYHOLDER PROTECTION, IT IS POSSIBLE THAT THE ASSOCIATION MAY NOT COVER YOUR POLICY OR MAY NOT COVER YOUR POLICY IN FULL.

ELIGIBILITY FOR PROTECTION BY THE ASSOCIATION
When an insurance company which is a member of the Association is designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:

- residents of Texas at the time that their insurance company is impaired;
- residents of other states, ONLY if the following conditions are met:
    1) The policyholder has a policy with a company based in Texas;
    2) The company has never held a license in the policyholder's state of residence;
    3) The policyholder's state of residence has a similar guaranty association; and
    4) The policyholder is not eligible for coverage by the guaranty association of the policyholder's state of residence.

LIMITS OF PROTECTION BY THE ASSOCIATION
Accident, Accident and Health, or Health Insurance:

- up to a total of $200,000 for one or more policies for each individual covered.

Life Insurance

- net cash surrender value up to a total of $100,000 under one or more policies on any one life; or
- death benefits up to a total of $300,000 under one or more policies on any one life.

Individual Annuities:

- net cash surrender amount up to a total of $100,000 under one or more policies owned by one contract holder.

Group Annuities:

- net cash surrender amount up to $100,000 in allocated benefits under one or more policies owned by one contract holder; or
- net cash surrender amount up to $5,000,000 in unallocated benefits under one contract holder regardless of the number of contracts.

THE INSURANCE COMPANY AND ITS AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE ASSOCIATION FOR THE PURPOSE OF SALES, SOLICITATION, OR INDUCEMENT TO PURCHASE ANY FORM OF INSURANCE.

When you are selecting an insurance company, you should not rely on coverage by the Association.

Texas Life, Accident, Health and Hospital
Service Insurance Guaranty Association
301 Congress, Suite 500
Austin, Texas 78701
800-982-6362

Texas Department of Insurance
P.O. Box 149104
Austin, Texas 78714-9104
800-252-3439

LINA/Cleiland 0489

## TABLE OF CONTENTS

..................................................................................................... 1

ELIGIBILITY FOR INSURANCE ......................................................................... 1

EFFECTIVE DATE OF INSURANCE ..................................................................... 1

TERMINATION OF INSURANCE .......................................................................... 2

CONTINUATION OF INSURANCE ....................................................................... 3

SCHEDULE OF BENEFITS ................................................................................. 4

SCHEDULE OF BENEFITS FOR CLASS 1 ........................................................... 10

DESCRIPTION OF BENEFITS ............................................................................. 16

EXCLUSIONS ................................................................................................... 16

CLAIM PROVISIONS ......................................................................................... 18

ADMINISTRATIVE PROVISIONS ....................................................................... 19

GENERAL PROVISIONS .................................................................................... 20

DEFINITIONS ................................................................................................... 23

SCHEDULE OF AFFILIATES ..............................................................................

LINA/Cleiland 0490



## ELIGIBILITY FOR INSURANCE

An Employee in one of the Classes of Eligible Employees shown in the Schedule of Benefits is eligible to be insured on the Policy Effective Date, or the day after he or she completes the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

Except as noted in the Reinstatement Provision, if an Employee terminates coverage and later wishes to reapply, or if a former Employee is rehired, a new Eligibility Waiting Period must be satisfied. An Employee is not required to satisfy a new Eligibility Waiting Period if insurance ends because he or she is no longer in a Class of Eligible Employees, but continues to be employed by the Employer, and becomes a member of an eligible class.

TL-004710

## EFFECTIVE DATE OF INSURANCE

An Employee will be insured on the date he or she becomes eligible, if the Employee is not required to contribute to the cost of this insurance.

An Employee who is required to contribute to the cost of this insurance may elect to be insured only by authorizing payroll deduction in a form approved by the Employer and the Insurance Company. The effective date of this insurance depends on the date coverage is elected.

Insurance for an Employee who applies for coverage within 30 days after he or she becomes eligible, during an Annual Enrollment Period or within 30 days after a Life Status Change, is effective on the latest of the following dates.

1.    The Policy Effective Date.
2.    The date payroll deduction is authorized.
3.    The date the Employer or Insurance Company receives the completed enrollment form.
4.    The effective date determined by the Employer's benefit plan.

If an Employee's enrollment form is received more than 60 days after he or she is eligible for this insurance, the Insurability Requirement must be satisfied before this insurance is effective. If approved, this insurance is effective on the date the Insurance Company agrees in writing to insure the Employee.

If an Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to any occupation for the Employer on a Full-time basis.

TL-004712

## TERMINATION OF INSURANCE

The insurance on an Employee will end on the earliest date below.

1.    The date the Employee is eligible for coverage under a plan intended to replace this coverage.
2.    The date the Policy is terminated.
3.    The date the Employee is no longer in an eligible class.
4.    The day after the period for which premiums are paid.
5.    The date the Employee is no longer in Active Service.

TL-004714

LINA/Cleiland 0491

## CONTINUATION OF INSURANCE

Insurance continues if an Employee's Active Service ends due to a Disability for which benefits under the Policy are or may become payable. Premiums for the Employee will be waived while Disability Benefits are payable. If the Employee does not return to Active Service, this insurance ends when the Disability ends or when benefits are no longer payable, if earlier.

If an Employee's Active Service ends due to an Employer approved unpaid family medical leave of absence, insurance for that Employee will continue for up to 12 weeks if the required premium is paid. If an Employee's Active Service ends due to an Employer approved unpaid leave of absence or layoff, excluding family medical leave, insurance for that Employee will continue for the period specified by the Employer, if any, not to exceed 6 months if the required premium is paid.

If an Employee's insurance is continued and he or she becomes Disabled during the leave of absence, Disability Benefits will not begin until the later of the following dates.
1.    the date the Benefit Waiting Period is satisfied
2.    the date the Employee was scheduled to return to Active Service

TL-004716

LINA/Cleiland 0492

## SCHEDULE OF BENEFITS

**Premium Due Date**

Premiums are due monthly in advance on the date coinciding with the day of the Policy Anniversary Date or the last day of the month, if earlier. Premiums will be based upon the amount of coverage in effect for an insured during the prior month one single annual settlement will be made.

**Participation Requirements**

**For Contributory Plans**

The greater of 75% of Eligible Employees or a minimum of 10 Employee

**For Non-Contributory Plans**

100% of Eligible Employees, but not less than 25 Employees.

**Classes of Eligible Employees**

Class 1  All active, Full-time and part-time salaried, commissioned I, II, III and IV Employees and designated non-union hourly Employees (Streetsboro, Crawfordsville, Lexington Box, Harrington, Maysville and Ontario Mill locations) of the Employer who are a participant in the Temple-Inland Benefit Solutions Plan and who are regularly scheduled to work a minimum of 20 hours or more per week.

LINA/Cleiland 0493

## SCHEDULE OF BENEFITS FOR CLASS 1

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:    None.

For Employees hired after the Policy Effective Date:

- Each Full-time Salaried Exempt Employee, Commission II Employee, Commission III Employee and Commission IV Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

- Each Full-time Salaried Nonexempt Employee who is not a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

- Each Salaried Nonexempt Employee who is a Financial Services Employee, and each Hourly Employee, Part-time Hourly Employee, Part-time Salaried Employee, or Commission I Employee shall be eligible to participate in the plan upon the first day of the month following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service. For this group the waiting period is defined as follows:

    For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees, Waiting Period means one month of Active Service from an Employee's most recent date of hire as an Employee.

**Definition of Disability**

An Employee is Disabled if, solely because of Injury or Sickness, he or she is earning 80% or less of his or her Indexed Covered Earnings.

Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation.

After Disability Benefits have been payable for 24 months, an Employee is Disabled if, because of Injury or Sickness he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings.

LINA/Cleiland 0494

**Definition of Covered Earnings**

a.   <u>For All Purposes:</u> For all purposes under the Temple-Inland Benefit Solutions Plan, "Covered Earnings" includes only compensation paid to an Employee by an Employer for services performed by the Employee for the Employer as reflected on the Employer's payroll system which meets all of the definitions set forth in this paragraph a. and the applicable paragraphs b. or c. below.  Covered Earnings does not include any amounts that are not paid through the Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

"Covered Earnings" includes the Employee's base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan.  "Covered Earnings" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, have accrued, or are otherwise payable at the time of the calculation).

"Covered Earnings" excludes all other compensation including, not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by an Employer to an Employee on behalf of an entity that is not a member of the Employer's controlled group of corporations for services rendered by the Employee on behalf of such entity, and any other compensation.

b.   <u>For Costs and Credits:</u> For purposes of determining Costs and Credits, an Employee's "Covered Earnings" is the Employee's Covered Earnings in effect at the time the Solutions enrollment data is produced as determined below:

   I.   For a salaried Employee, "Covered Earnings" is the annual base salary.

   ii.   For an hourly Employee, "Covered Earnings" is the Employee's base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

   iii.   For newly hired commission I Employees, commission II Employees, commission III Employees and commission IV Employees, "Covered Earnings" is the greater of:

      (1)   base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever applicable), or

      (2)   $20,000

   iv.   For all other commission I Employees, commission II Employees, commission III Employees, and for any other hourly Employees or salaried Employees with commission pay, "Covered Earnings" is determined by:

      (1)   adding the Employee's base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

      (2)   annualizing that amount based on a full 12-month year.

# EXHIBIT 1 TO
# EXHIBIT A
# Part 10

**Benefit Waiting Period**     180 days

A period of Disability is continuous even if the Employee can return to Active Service for up to 30 days during the Benefit Waiting Period. The length of the Benefit Waiting Period will not be extended by the number of days the Employee can return to Active Service.

**Disability Benefits**

Option 1 (tax free premiums)     The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearer dollar or $2,500, reduced by any Other Income Benefits.

Option 2 (after tax premiums)     The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearer dollar or $2,500, reduced by any Other Income Benefits.

Option 3 (tax free premiums)     The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearer dollar or $7,500, reduced by any Other Income Benefits.

Option 4 (after tax premiums)     The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearer dollar or $7,500, reduced by any Other Income Benefits.

**Minimum Disability Benefit**     $50

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

*Work Incentive Benefits*
For the first 12 months the Employee returns to work, the Disability Benefit is as figured above. If for any month during this period, the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of his or her Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 12 months the Employee returns to work, the Disability Benefit is as figured above, reduced by 50% of his or her current earnings received during any month he or she returns to work. If the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of his or her monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

No Disability Benefits will be paid if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and he or she refuses to do so.

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If an Employee is working for another employer on a regular basis when Disability begins, current earnings will include an increase in the amount he or she earned from this work during the period for which Disability Benefits are payable.

*Decreases in Coverage Amount*

An Employee may elect a decrease in his or her benefit amount at future annual enrollments or within 30 days after a Life Status Change by signing a change form. The lesser benefit amount will be effective on the date the completed change form is received by the Employer or Insurance Company.

## Increases in Coverage Amount

During an Annual Enrollment Period an Employee may elect an increased benefit amount up to the Maximum Benefit Amount. If an Employee requests an increased benefit amount after the Annual Enrollment Period, this request will not be considered for eligibility until the following Annual Enrollment Period.

However, an Employee who has initially declined coverage for the higher benefits of Options 3 or 4 must satisfy the Insurability requirement for that amount.

If an Employee is not actively at work on the date an increased benefit amount would otherwise be effective, the Employee will become insured on the date he or she returns to work at his or her regular occupation for the Employer on a Full-time basis.

## Limit on Increases or Decreases

The Insurance Company reserves the right to limit or deny the amounts of insurance available to individuals who do not meet our underwriting requirements or where limited by law.

## Additional Benefits

*Rehabilitation During Disability*    Please refer to the Description of Benefits for an explanation of this benefit.

*Reasonable Accommodation Benefit*    Please refer to the Description of Benefits for an explanation of this benefit.

*Specified Loss Benefits*
Time Period for Accident    90 days

Table for Accidental Loss

| Loss | Benefit Period |
|---|---|
| Both hands or feet, the entire sight in both eyes, hearing in both ears, speech, one hand and one foot, one hand or foot and the entire sight of one eye | 46 Months |
| One arm or leg | 35 Months |
| One hand or foot | 23 Months |
| The entire sight in one eye or hearing in one ear | 15 Months |
| Thumb and index finger of either hand | 12 Months |

The loss of a hand or foot means the complete severance through or above the wrist or ankle joint. The loss of an arm or leg means complete severance through or above the elbow or knee joint. The loss of a thumb and index finger means complete severance through or above the metacarpophalangeal joints (the joints between the fingers and the hand). "Severance" means complete separation and dismemberment of the limb from the body. The loss of sight, speech or hearing means total and irrecoverable loss of the function.

LINA/Cleiland 0497

If more than one loss results from an Accident, the Insurance Company will pay for the longest benefit period of the losses incurred.

**Survivor Benefit**
Benefit Waiting Period | After 6 Disability Benefits are payable.
Amount of Benefit | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month.

Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits.

## Maximum Benefit Period

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

## Initial Premium Rates

Options 1 and 2 | $.60 per $100 of Covered Payroll

Options 3 and 4 | An additional $.60 per $100 of Covered Payroll in excess of Options 1 and 2.

Covered Payroll for an Employee will mean his or her covered earnings for the insurance month prior to the date the determination is made. For the Options 1 and 2, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $4,167. For Options 3 and 4, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $12,500.

TL-004774

LINA/Cleiland 0498



## DESCRIPTION OF BENEFITS

The following provisions explain the benefits available under the Policy. Please see the Schedule of Benefits for the applicability of these benefits on a class level.

### Disability Benefits

The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician. Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

The Insurance Company will require continued proof of the Employee's Disability, provided at the Employee's expense, for benefits to continue.

### Benefit Waiting Period

The Benefit Waiting Period is the period of time an Employee must be continuously Disabled before Disability Benefits may be payable. The Benefit Waiting Period is shown in the Schedule of Benefits.

The Insurance Company will waive the Benefit Waiting Period for an Employee if benefits under a Prior Plan were payable on the Policy Effective Date and the Employee returns to Active Service within 6 months after that date. The return to Active Service must be for more than 14 consecutive days but less than 6 months. The later Disability must be caused by the same or related causes.

### Termination of Disability Benefits

Disability Benefits will end on the earliest of the following dates.
1.    The date an Employee earns more than 80% of his or her Indexed Covered Earnings
2.    The date the Insurance Company determines an Employee is not Disabled
3.    The end of the Maximum Benefit Period
4.    The date an Employee dies
5.    The date the Employee refuses to participate in rehabilitation efforts as required by the Insurance Company
6.    The date the Employee is no longer receiving Appropriate Care

### Successive Periods of Disability

Once an Employee is eligible to receive Disability Benefits under the Policy, separate periods of Disability resulting from the same or related causes are a continuous period of Disability unless the Employee can return to Active Service for 6 or more consecutive months.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes or the later Disability occurs after coverage under the Policy ends.

The Successive Periods of Disability provision will not apply if an Employee is eligible for coverage under a plan that replaces this Policy.

LINA/Cleiland 0499



## Mental Illness, Alcoholism and Drug Abuse Limitation

The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 months of Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1.  Alcoholism
2.  Anxiety Disorders
3.  Delusional (paranoid) disorders
4.  Depressive disorders
5.  Drug addiction or abuse
6.  Eating disorders
7.  Mental Illness
8.  Somatoform disorders (psychosomatic illness)

If, before reaching the lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against the lifetime limit. The confinement must be for the Appropriate Care of any of the conditions listed above.

## Pre-Existing Condition Limitation

The Insurance Company will not pay Disability Benefits for any period of Disability caused by or contributed to by, or resulting from, a Pre-Existing Condition. A "pre-existing condition" means any Injury or Sickness for which the Employee incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a physician within 3 months before his or her most recent effective date of insurance.

The Pre-Existing Condition Limitation will apply to any added benefits or increases in benefits. It will not apply to a period of Disability that begins after an Employee is in Active Service for at least 12 months after his or her most recent effective date of insurance or the effective date of any added or increased benefits.

The Pre-Existing Condition Limitation will not apply to an Employee covered under a Prior Plan who satisfied the pre-existing condition limitation, if any, under that plan. If an Employee, covered under a Prior Plan, did not fully satisfy the pre-existing condition limitation of that plan, credit will be given for any time that was satisfied.

Time will not be credited for any day an Employee is not actively at work due to his or her Injury or Sickness. The Pre-Existing Condition Limitation will be extended by the number of days the Employee is not actively at work due to his or her Injury or Sickness.

## Disability Benefit Calculation

The Disability Benefit for any month Disability Benefits are payable is shown in the Schedule of Benefits. Disability Benefits are based on a 30 day period. They will be prorated if payable for any period less than a month.

## Work Incentive Benefit

If an Employee is covered for Work Incentive Benefits, he or she may return to work while Disabled and Disability Benefits will continue. The conditions under which an Employee may return to work and the amount of this benefit is shown in the Schedule of Benefits.

LINA/Cleiland 0500



The Insurance Company will review the Employee's status and will require satisfactory proof of earnings and continued Disability.

**Other Income Benefits**

While an Employee is Disabled, he or she may be eligible for benefits from other income sources. If so, the Insurance Company may reduce the Disability Benefits payable by the amount of such Other Income Benefits. The extent to which Other Income Benefits will reduce any Disability Benefits payable under the policy is shown in the Schedule of Benefits.

Other Income Benefits include:

1.  any amounts which the Employee or any dependents, if applicable, receive (or are assumed to receive*) under:
    a.  the Canada and Quebec Pension Plans;
    b.  the Railroad Retirement Act;
    c.  any local, state, provincial or federal government disability or retirement plan or law;
    d.  any sick leave or salary continuation plan of the Employer;
    e.  any work loss provision in "No-Fault" auto insurance;
    f.  any Disability Benefits received from the Veterans' Administration;
    g.  any Workers' Compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.

2.  any Social Security disability or retirement benefits the Employee or any third party receives (or is assumed to receive*) on the Employee's behalf or for his or her dependents; or, if applicable, which his or her dependents receive (or are assumed to receive*) because of the Employee's entitlement to such benefits.

3.  any retirement plan benefits funded by the Employer. "Retirement plan" means any defined benefit or defined contribution plan sponsored or funded by an employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or any Employee contributions under a 401(k) plan or any Employer match thereon.

4.  any proceeds payable under any group insurance or similar plan. If there is other insurance that applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, the Insurance Company will pay for its pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.

5.  any wage or salary for work performed. If an Employee is covered for Work Incentive Benefits, the Insurance Company will only reduce Disability Benefits to the extent provided under the Work Incentive Benefit in the Schedule of Benefits.

Dependents include any person who receives (or is assumed to receive)* benefits under any applicable law on account of an Employee's entitlement to benefits.

> * See the Assumed Receipt of Benefits provision.

12

LINA/Cleiland 0501

*Increases in Other Income Benefits*

After the first deduction for any Other Income Benefit (except wage or salary) is made, benefits will not be further reduced during that period of Disability due to any cost of living increase in that Other Income Benefit.

*Lump Sum Payments*

Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated the lump sum will be prorated monthly over a five year period.

If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

*Assumed Receipt of Benefits*

The Insurance Company will assume the Employee (or his or her dependents, if applicable) are receiving Other Income Benefits if they may be eligible for them. These assumed benefits will be the amount the Insurance Company estimates the Employee (or his or her dependents, if applicable) may be eligible to receive. Disability Benefits will be reduced by the amount of any assumed benefits as if they were actually received.

Except for any wage or salary for work performed while Disability Benefits are payable, this assumption will not be made if the Employee gives the Insurance Company proof of the following events.

1. Application was made for these benefits
2. A Reimbursement Agreement is signed
3. Any and all appeals were made for these benefits or the Insurance Company determines further appeals will not be successful
4. Payments were denied

The Insurance Company will not assume receipt of, nor reduce benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until the Employee actually receives them.

*Social Security Assistance*

The Insurance Company will, at its discretion, assist the Employee in applying for Social Security Disability Income (SSDI) benefits. Disability Benefits will not be reduced by the assumed receipt of SSDI benefits while the Employee participates in the Social Security Assistance Program.

The Insurance Company may require the Employee to file an appeal if it believes a reversal of a prior decision is possible. If the Employee refuses to participate in, or cooperate with, the Social Security Assistance Program, the Insurance Company will assume receipt of SSDI benefits until the Employee gives us proof that all administrative remedies are exhausted.

**Minimum Benefit**

The Insurance Company will pay the Minimum Benefit regardless of any reductions made for Other Income Benefits. However, if there is an overpayment due, this benefit may be reduced to recover the overpayment.

## Recovery of Overpayment

If benefits are overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods.

1.    A request for lump sum payment of the overpaid amount
2.    A reduction of any amounts payable under the Policy

If there is an overpayment due when an Employee dies, any benefits payable under the Policy will be reduced to recover the overpayment.

TL-004771

# ADDITIONAL BENEFITS

## Rehabilitation During A Period of Disability

If, while an Employee is Disabled, the Insurance Company determines that he or she is a suitable candidate for rehabilitation he or she may participate in a Rehabilitation Plan. The terms and conditions of the Rehabilitation Plan must be mutually agreed upon by the Employee and the Insurance Company.

The Insurance Company may require an Employee to participate in a rehabilitation assessment or a Rehabilitation Plan at our expense. The Insurance Company will work with the Employee, the Employer and the Employee's Physician and others, as appropriate, to develop a Rehabilitation Plan. If the Employee refuses to participate in the rehabilitation efforts, Disability Benefits will not be payable.

The Rehabilitation Plan may, at the Insurance Company's discretion, allow for payment of the Employee's medical expense, education expense, moving expense, accommodation expense or family care expense while he or she participates in the program.

A "Rehabilitation Plan" is a written agreement between the Employee and the Insurance Company in which the Insurance Company agrees to provide, arrange or authorize vocational or physical rehabilitation services.

## Reasonable Accommodation Benefit

The Insurance Company may reimburse the Employer for expenses incurred in making a Reasonable Accommodation. For the Employer to be eligible for this benefit, the Reasonable Accommodation must meet the following conditions.

1.    It must be made on behalf of a Disabled Employee and result in his or her ability to return to any occupation for the Employer.
2.    It must be approved by the Insurance Company in writing before it is implemented or any expense is incurred.
3.    It must meet federal standards of a Reasonable Accommodation as detailed in the Americans with Disabilities Act of 1990 and any later amendments.

"Reasonable Accommodation" means any modification or adjustment to a job, an employment practice, or the work environment that makes it possible for a person with a disability to perform the material duties of any occupation without causing undue hardship to the Employer.

LINA/Cleiland 0503

## Spouse Rehabilitation Benefit

While an Employee is Disabled, his or her Spouse may, at the option of the Insurance Company, be eligible to participate in a Rehabilitation Plan. To be eligible, the following conditions must be met.

1. The Employee must be continuously Disabled for 12 months
2. The Spouse's earnings must be 60% or less than the Employee's Covered Earnings
3. The Spouse must be determined by the Insurance Company to be a suitable candidate for re-employment.

The Spouse's Rehabilitation Plan may include, at the Insurance Company's discretion, payment of the Spouse's education expenses, reasonable job placement expenses and moving expenses. It may also include family care expenses if necessary for the Spouse to be retrained under the Rehabilitation Plan.

Disability Benefits will be reduced by 50% of a Spouse's earnings from Rehabilitative Work. If the Spouse was working before the Rehabilitation Plan begins, Disability Benefits will be reduced by 50% of the increase in income that results from a Spouse's participation in the program.

"Spouse" means the Employee's lawful spouse living with the Employee on the date his or her Disability begins. The Rehabilitation Plan will end if the Spouse is not living with the Employee during the term of the agreement.

TL-005105

## Specified Loss Benefit

If an Employee suffers a loss from an Accident, the Insurance Company will pay Disability Benefits as shown in the Table for Accidental Loss. For an Employee to be eligible for benefits, the following conditions must be met.

1. The loss must occur within the Time Period for Accident and must be shown in the Table for Accidental Loss.
2. The Accident must be the sole cause of the loss.
3. The Accident and the resulting loss must occur while coverage is effective.
4. The Benefit Waiting Period has been satisfied.

If an Employee dies within the Time Period for Accident, the Insurance Company will pay benefits for the period between the date Monthly Benefits are payable and the date the Employee dies. If the Employee dies after this time, but before the end of the Guaranteed Benefit Period, the Insurance Company will pay the rest in a lump sum.

"Accident" means a sudden, unforeseeable external event that causes bodily injury to an Employee.

TL-005108

## Survivor Benefit

The Insurance Company will pay a Survivor Benefit if an Employee dies while Monthly Benefits are payable. The Employee must have been continuously Disabled for the Survivor Benefit Waiting Period before the first benefit is payable. These benefits will be payable for the Maximum Benefit Period for Survivor Benefits.

Benefits will be paid to the Employee's Spouse. If there is no Spouse, benefits will be paid in equal shares to the Employee's surviving Children. If there are no Spouse and no Children, benefits will be paid to the Employee's estate

LINA/Cleiland 0504



"Spouse" means an Employee's lawful spouse. "Children" means an Employee's unmarried children under age 21 who are chiefly dependent upon the Employee for support and maintenance.

TL-005107

## EXCLUSIONS

The Insurance Company will not pay Disability Benefits for a Disability that results, directly or indirectly, from any of the following events.

1.  attempted suicide, or whenever an Employee injures himself or herself on purpose.
2.  war or any act of war, whether or not declared.
3.  serving on full-time active duty in any armed forces. If the Employee sends proof of military service, the Insurance Company will refund the portion of the premium paid to cover the Employee during a period of such service.
4.  terrorism or active participation in a riot.
5.  commission of a felony.
6.  the revocation, restriction or non-renewal of an Employee's license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Sickness otherwise covered by the Policy.
7.  incarceration in a penal or corrections institution.

The Insurance Company will not pay Disability Benefits for any period of Disability during which the Employee does any of the following.

1.  refuses to participate in rehabilitation efforts as required by the Insurance Company.
2.  is not receiving Appropriate Care.
3.  refuses to participate in a Transitional Work Arrangement or other modified work arrangement. These work arrangements mean any work offered to the Employee by the Employer or an affiliated company while the Employee is Disabled and which may be his or her own or any occupation. The work arrangements include, but are not limited to reassigned duties, work site modification, flexible work arrangements, job adaption or special equipment.
4.  fails to cooperate with the Insurance Company in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

TL-004772

## CLAIM PROVISIONS

**Notice of Claim**
Written notice, or notice by any other electronic or telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If this notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice, or notice by any other electronic or telephonic means authorized by the Insurance Company, was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Policyholder's name and Policy Number and the claimant's name and address.



## Claim Forms

When the Insurance Company receives written notice of a claim, or notice by any other electronic or telephonic means authorized by the Insurance Company, it will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by the Insurance Company, the proof requirements will be met by submitting, within the time required under "Proof of Loss" section, written proof of the nature and extent of the loss.

## Claimant Cooperation Provision

Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

## Insurance Data

The Employer is required to cooperate with the Insurance Company in the review of claims and applications for insurance. Any information the Insurance Company provides in these areas is confidential and may not be used or released by the Employer if not permitted by applicable privacy laws.

## Proof of Loss

Written proof of loss must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made. If written proof of loss is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof of loss was given as soon as was reasonably possible. In any case, written proof must be given not more than a year after the time otherwise required unless proof is not given solely due to the lack of legal capacity.

Within 30 days of a request, written proof of continued Disability and of regular attendance by a Physician must be given to the Insurance Company.

## Time of Payment

Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which the Insurance Company is liable, will be paid at that time.

## To Whom Payable

Disability Benefits will be paid to the Employee. If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, the Insurance Company, may at its option, make payment to the person or institution appearing to have assumed custody and support.

If an Employee dies while any Disability Benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother and father, natural or adopted children, brothers and sisters; or to the executors or administrators of the Employee's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release the Insurance Company from all liability for any payment made.

## Physical Examination and Autopsy

The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. The Insurance Company may, at its expense, require an autopsy unless prohibited by law.

## Legal Actions

No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time written proof of loss must be furnished.

LINA/Cleiland 0506

**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**
The Employee will have the right to choose any Physician who is practicing legally. The Insurance Company will in no way disturb the Physician/patient relationship.

TL-004724

# ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

**Changes in Premium Rates**
The premium rates may be changed by the Insurance Company from time to time with at least 120 days advance written notice. No change in rates will be made until 24 months after the Policy Effective Date. An increase in rates will not be made more often than once in a 12 month period and will take effect on the Policy Anniversary Date. However, the Insurance Company reserves the right to change the rates at any time if any of the following events take place.

1.  The terms of the Policy change.
2.  A division, subsidiary, affiliated company or eligible class is added or deleted from the Policy, causing a change in the group demographic composition by 10% or more.
3.  There is a change in the factors bearing on the risk assumed because of a change in the group demographic composition by 10% or more.
4.  Any federal or state law or regulation is amended to the extent it affects the Insurance Company's benefit obligation.
5.  The Insurance Company determines that the Employer has failed to promptly furnish any necessary information requested by the Insurance Company, or has failed to perform any other obligations in relation to the Policy.

If an increase or decrease in rates takes place on a date that is not a Premium Due Date, a pro rata adjustment will apply from the date of the change to the next Premium Due Date.

As of any premium due date after the Policy has been in force for 24 months, the Insurance Company may grant a premium holiday in such amount as it may determine based on experience.

**Reporting Requirements**
The Employer must, upon request, give the Insurance Company any information required to determine who is insured, the amount of insurance in force and any other information needed to administer the plan of insurance.

**Payment of Premium**
The first premium is due on the Policy Effective Date. After that, premiums will be due monthly unless the Policyholder and the Insurance Company agree on some other method of premium payment.

If any premium is not paid when due, the Policy will be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

LINA/Cleiland 0507



## Notice of Cancellation
The Policyholder or the Insurance Company may cancel the Policy as of any Premium Due Date by giving 31 days advance written notice. If a premium is not paid when due, the Policy will automatically be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

## Policy Grace Period
A Policy Grace Period of 31 days will be granted for the payment of the required premiums under the Policy. The Policy will be in force during the Policy Grace Period. If the required premiums are not paid during the Policy Grace Period, insurance will end on the last Premium Due Date. The Policyholder will be liable to the Insurance Company for any unpaid premium for the time the Policy was in force.

## Grace Period for the Employee
If the required premium is not paid on the Premium Due Date there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

## Reinstatement of Insurance
An Employee's insurance may be reinstated if it ends because the Employee is on an unpaid leave of absence or an Employee is rehired within three months of the date of termination of employment and he or she applies for Reinstatement within 31 days of his return to Active Service.

An Employee's insurance may be reinstated only if reinstatement occurs within 6 months from the date insurance ends due to an Employer approved unpaid leave of absence or on any date in which he or she returns from active duty in the armed forces as defined by the Uniformed Services Employment and Reemployment Act of 1994 (USERRA) if the following conditions are met:
1. An Employee must be in a Class of Eligible Employees.
2. The required premium must be paid.
3. A written request for reinstatement must be received by the Insurance Company within 31 days from the date an Employee returns to Active Service.

Reinstated insurance will be effective on the date the Employee returns to Active Service. If an Employee did not fully satisfy the Eligibility Waiting Period or the Pre-Existing Condition Limitation before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004720

# GENERAL PROVISIONS

## Entire Contract
The entire contract will be made up of the Policy, the application of the Policyholder, a copy of which is attached to the Policy, and the applications, if any, of the Employees.

## Incontestability
All statements made by the Policyholder or by an Employee are representations not warranties. No statement will be used to deny or reduce benefits or be used as a defense to a claim, unless a copy of the instrument containing the statement is signed by the Employee and has been furnished to the claimant. In the event of death or incapacity, the beneficiary or representative must receive the copy.

After two years from an Employee's effective date of insurance, or from the effective date of any added or increased benefits, the validity of an Employee's insurance under the Policy may not be contested using such statements.

LINA/Cleiland 0508

 

**Misstatement of Age**
If an Employee's age has been misstated, the Insurance Company will adjust all benefits to the amounts that would have been purchased for the correct age.

**Policy Changes**
No change in the Policy will be valid until approved by an executive officer of the Insurance Company. This approval must be endorsed on, or attached to, the Policy. No agent may change the Policy or waive any of its provisions.

**Workers' Compensation Insurance**
The Policy is not in lieu of and does not affect any requirements for coverage under any Workers' Compensation Insurance.

**Certificates**
An individual certificate of insurance will be delivered to the Policyholder for delivery to Employees. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid.

**Assignment of Benefits**
The Insurance Company will not be affected by the assignment of an Employee's certificate until the original assignment or a certified copy of the assignment is filed with us. The Insurance Company will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided coverage under the Policy is in effect. This insurance may not be levied on, attached, garnished, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

**Conformity with State Statutes**
Any provision of the Policy in conflict on the Policy Effective Date with the laws of the state where the Policy is delivered is amended to conform to the minimum requirements of such laws.

**Clerical Error**
A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**Agency**
The Employer and plan administrator are agents of the Employee for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.

TL-004726

# DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**
An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.

1. He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.

2. The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

20

LINA/Cleiland 0509

 

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

**Annual Enrollment Period**
The period in each calendar year agreed upon by the Employer and the Insurance Company when an eligible Employee may enroll for or change benefit elections under the Policy.

**Appropriate Care**
Appropriate Care means the determination of an accurate and medically supported diagnosis of the Employee's Disability, or ongoing medical treatment and care of the Employee's Disability by a Physician that conforms to generally-accepted medical standards, including frequency of treatment and care.

**Consumer Price Index (CPI-W)**
The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

**Employee**
For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is covered under the Policy.

**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is the agent of the Employee for transactions relating to this insurance. The actions of the Employer shall not be considered actions of the Insurance Company.

**Flexible Benefits Plan**
The Flexible Benefits Plan is the Employee Benefits Plan arrangement sponsored by the Employer for eligible Employees.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

**Indexed Covered Earnings**
For the first 12 months Monthly Benefits are payable, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.      10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or
2.      the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**
The term Injury means an accidental loss or bodily harm.

**Insurability Requirement**
An Employee will satisfy the Insurability Requirement on the day the Insurance Company agrees in writing to accept the Employee as covered under the Policy. To determine an Employee's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on the Policy cover page.

21

LINA/Cleiland 0510

 

**Conformity with State Statutes**
Any provision of the Policy in conflict on the Policy Effective Date with the laws of the state where the Policy is delivered is amended to conform to the minimum requirements of such laws.

**Clerical Error**
A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**Agency**
The Employer and plan administrator are agents of the Employee for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.

TL-004726

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**
An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.

1.   He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.

2.   The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

**Annual Enrollment Period**
The period in each calendar year agreed upon by the Employer and the Insurance Company when an eligible Employee may enroll for or change benefit elections under the Policy.

**Appropriate Care**
Appropriate Care means the determination of an accurate and medically supported diagnosis of the Employee's Disability, or ongoing medical treatment and care of the Employee's Disability by a Physician that conforms to generally-accepted medical standards, including frequency of treatment and care.

**Consumer Price Index (CPI-W)**
The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

**Employee**
For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is covered under the Policy.

22

LINA/Cleiland 0511

 

**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is the agent of the Employee for transactions relating to this insurance. The actions of the Employer shall not be considered actions of the Insurance Company.

**Flexible Benefits Plan**
The Flexible Benefits Plan is the Employee Benefits Plan arrangement sponsored by the Employer for eligible Employees.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

**Indexed Covered Earnings**
For the first 12 months Monthly Benefits are payable, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.      10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or
2.      the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**
The term Injury means an accidental loss or bodily harm.

**Insurability Requirement**
An Employee will satisfy the Insurability Requirement on the day the Insurance Company agrees in writing to accept the Employee as covered under the Policy. To determine an Employee's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on the Policy cover page.

**Life Status Change**
A Life Status Change is an event recognized by the Employer's Flexible Benefits Plan as qualifying an Employee to make changes in benefit selections at a time other than an Annual Enrollment Period.

If there is no Employer sponsored Flexible Benefits Plan, or if it is no longer in effect, the following events are Life Status Changes.
1.      Marriage
2.      Divorce, annulment or legal separation
3.      Birth or adoption of a child
4.      Death of a spouse
5.      Termination of a spouse's employment
6.      A change in the benefit plan available to the Employee's spouse
7.      A change in the Employee's or spouse's employment status that affects either's eligibility for benefits

LINA/Cleiland 0512

**Physician**

Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Employee that is appropriate for the condition and locality. The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage), of an Employee or spouse, or a person living in an Employee's household.

**Prior Plan**

The Prior Plan refers to the plan of insurance providing similar benefits to an Employee sponsored by the Employer and in effect directly prior to the Policy Effective Date.

**Sickness**

The term Sickness means a physical or mental illness.

TL-004708

LINA/Cleiland 0513



## IMPORTANT INFORMATION ABOUT COVERAGE UNDER THE TEXAS LIFE, ACCIDENT, HEALTH AND HOSPITAL SERVICE INSURANCE GUARANTY ASSOCIATION

Texas law establishes a system, administered by the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association (the "Association"), to protect policyholders if their life or health insurance company fails to or cannot meet its contractual obligations. Only the policyholders of insurance companies which are members of the Association are eligible for this protection. However, even if a company is a member of the Association, protection is limited and policyholders must meet certain guidelines to qualify. (The law is found in the Texas Insurance Code, Article 21.28-D.)

**BECAUSE OF STATUTORY LIMITATIONS ON POLICYHOLDER PROTECTION, IT IS POSSIBLE THAT THE ASSOCIATION MAY NOT COVER YOUR POLICY OR MAY NOT COVER YOUR POLICY IN FULL.**

### ELIGIBILITY FOR PROTECTION BY THE ASSOCIATION

When an insurance company which is a member of the Association is designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:

- residents of Texas at the time that their insurance company is impaired;
- residents of other states, ONLY if the following conditions are met:
  1) The policyholder has a policy with a company based in Texas;
  2) The company has never held a license in the policyholder's state of residence;
  3) The policyholder's state of residence has a similar guaranty association; and
  4) The policyholder is not eligible for coverage by the guaranty association of the policyholder's state of residence.

### LIMITS OF PROTECTION BY THE ASSOCIATION

Accident, Accident and Health, or Health Insurance:
- up to a total of $200,000 for one or more policies for each individual covered.

Life Insurance
- net cash surrender value up to a total of $100,000 under one or more policies on any one life; or
- death benefits up to a total of $300,000 under one or more policies on any one life.

Individual Annuities:
- net cash surrender amount up to a total of $100,000 under one or more policies owned by one contract holder.

Group Annuities:
- net cash surrender amount up to $100,000 in allocated benefits under one or more policies owned by one contract holder; or
- net cash surrender amount up to $5,000,000 in unallocated benefits under one contract holder regardless of the number of contracts.

**THE INSURANCE COMPANY AND ITS AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE ASSOCIATION FOR THE PURPOSE OF SALES, SOLICITATION, OR INDUCEMENT TO PURCHASE ANY FORM OF INSURANCE.**

When you are selecting an insurance company, you should not rely on coverage by the Association.

Texas Life, Accident, Health and Hospital
Service Insurance Guaranty Association
301 Congress, Suite 500
Austin, Texas 78701
800-982-6362

Texas Department of Insurance
P.O. Box 149104
Austin, Texas 78714-9104
800-252-3439

LINA/Cleiland 0514

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call the Life Insurance Company of North America, Group Insurance's toll-free telephone number for information or to make a complaint at:

1-800-441-1832

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance P.O. Box 149104 Austin, TX 78714-9104 FAX # (512) 475-1771

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

TL.004426

**AVISO IMPORTANTE**

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis del Life Insurance Company of North America, Group Insurance Division para informacion o para someter una queja al:

1-800-441-1832

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas P.O. Box 149104 Austin, TX 78714-9104 FAX # (512) 475-1771

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

LINA/Cleiland 0515





*Karol Johnson*
*CIGNA Group Insurance*
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337

Phone: 800-352-0611 ext. 1249
Fax: 860-731-3211

**CIGNA Group Ins**
Life · Accident · Disability

MR. THOMAS SINCLAIR, ATTORNEY AT LAW
2100-A SOUTHBRIDGE PARKWAY
SUITE 450
BIRMINGHAM, AL 35209

October 23, 2006

Name:                           CATHY CLEILAND
Incident Number:                613165
Plan/Policy Number:             FLK0020104
Plan/Policy Holder:             TEMPLE INLAND CORPORATE SERVICES
Underwriting Company:           Life Insurance Company of North America

DEAR MR. SINCLAIR,

Please find enclosed a copy of the above referenced disability policy, claim file
and the Acclaim printout.

Please contact our office at 800-352-0611 ext. 1249 should you have any questions.

Sincerely,


Karol Johnson
Senior Appeal Specialist

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

LINA/Cleiland 0516



A copy of this file was made by Jose E. Nieves, Administrative Assistant.

_Signature_

10/23/2006
_Date_

The copy was mailed out by Karol Johnson, ASCM.

_Signature_

10/23/06
_Date_

LINA/Cleiland 0517



**CAMPBELL
WALLER &
POER, L.L.C.**

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

October 12, 2006

Ms. Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager
CIGNA Group Insurance
D212
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

Re:    Cathy Cleiland

Dear Ms. Bharadwaj:

I am in receipt of your October 3, 2006 correspondence to my client. Attached for your review is the September 5, 2006 correspondence provided by my office setting out that this firm represents Ms. Cathy Cleiland and attaching thereto not only her express authorization, but a HIPAA compliant form requesting the production of those documents.

The Employment Retirement Income Security Act of 1974 requires production of documents within thirty days from receipt of a request such as I set out in my September 5, 2006 correspondence. Therefore, your company is now in violation of ERISA. We will be pursuing whatever remedies are available under 29 U.S.C. §1132(c).

I am at a loss to understand first off why your company waited thirty days (the entire period allowed under ERISA) before pointing out that you have some additional internal form that you wish my client to sign. Please be advised that my client is represented by this office and she does not fill out paperwork with you simply because of your internal dictates. If you have some provision of ERISA that allows you to place my client in a position of having to sign documents that you dictate she sign even though she is represented, please send me those citations so I can review them for myself.

Your company has all the documentation required under the statute and unless you can point to some new provision of the statute, my client is not going to sign anything else based upon your company's instructions unless I tell her to sign them. If we don't have the document production in our office within the next twelve business days (on or before October 31, 2006), we will be filing a lawsuit seeking production of these documents.

I look forward to your production of documents. Please do not have any further contact with my client. If you send any future correspondence directly to my client, I will immediately

take action by seeking an injunction in federal court directing you to no longer contact my cl
except through this office.

Sincerely,

Thomas O. Sinclair, Esq.

TOS/me
Enclosures
cc:    Ms.  Cathy Cleiland
       Terry Key, Esquire

CAMPBELL
WALLER &
POER, L.L.C.

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053



THOMAS O. SINCLAIR
tsinclair@cwp-law.cov

September 5, 2006

**VIA FEDERAL EXPRESS**
Medha Bharadwaj
Appeal Claim Manager
CIGNA Disability Management Solutions
CIGNA Group Insurance
Routing 212
12225 Greenville Avenue, Suite 1000 LB 179
Dallas, TX 75243-9382

Re:   **Claimant:**      **Cathy Cleiland**
      **Policy Keys:**   FLK 20104\FLI50710\OK810692\ABL670620
      **Account Name:**  **Temple Inland**

Dear Mr. Bharadwaj:

1.    This firm represents Ms. Cathy Cleiland with regard to her claim for benefits under the various Temple Inland Employee Welfare Benefit Plans and/or Pension Plans. No further contact should be made directly with Ms. Cleiland. Any and all contact regarding any and all benefits should be directed to this firm.

2.    Under separate cover you have been provided a HIPAA Complaint Authorization along with a request for production. This request is made pursuant to Ms. Cleiland's rights under ERISA. In order to perfect her appeal, it is necessary for your companies to comply with the requests for productions so that Ms. Cleiland may be fully informed as to the basis of your denial of benefits.

3.    All prior document production authorizations are hereby terminated. Your company will be provided documents pursuant to HIPAA compliant requests signed from this date forward by Ms. Cleiland upon receipt of a request from your company. Once again, all prior authorizations are hereby revoked pursuant to Ms. Cleiland's rights under HIPAA. Any authorizations signed prior to the date of this correspondence by your company will constitute violations of HIPAA.

4.    Attached hereto are documents bates numbered CLE00001 through CLE00134. Because Ms. Cleiland has not been provided a full copy of the records pertaining to her claim for benefits and the documents which you have obtained during the course of that review, it is impossible to determine what documents have not been included in your review. We look forward to receipt of your production so that we may properly assess the need for additional documentation.

LINA/Cleiland 0520



6.    You are hereby provided notice that Ms. Cleiland disputes your company's claim that she is able to perform in a sedentary occupation.

7.    Please reconsider your termination in light of the attached medical records and hold off making a final determination on this appeal until such time as we have sufficient time to review your document production. Please forward that production to my office as soon as possible to avoid any further delay.

8.    This appeal and documentation is provided pursuant to your invitation in the March 10, 2006 correspondence wherein you state that Ms. Cleiland "may request a review of this decision by writing to the Life Insurance of North America representative signing this letter at the address noted on the letterhead." "In addition to any written comments, your request for review must include any documentation you wish us to consider." Under the circumstances, it is impossible to tell if there is additional "new" documentation provided in the attached bates numbered documents without a review of your document production which we look forward to receiving.

9.    In your review of this claim, please consider the operative word "or" contained in the definition of disability after 24 months of disability. I do not believe that there is an analysis of whether or not Ms. Cleiland could earn 80% or more of her pre-disability indexed earnings.

We look forward to receiving the documentation outlined in our document request letter. Once we receive that documentation, we will provide additional correspondence, arguments, position statements, documentation and further evidence of Ms. Cleiland's entitlement to benefits.

In the alternative, and in light of the numerous and well-documented physically disabling conditions suffered by Ms. Cleiland, we invite your company to immediately provide back benefits, reinstate benefits, provide a reasonable amount of attorney's fees based upon the Lodestar method along with interest on the past due benefits.

I look forward to receiving your production and response to the offer of settlement outlined above.

Sincerely,

'DICTATED, BUT NOT READ
IN ORDER TO AVOID DELAY'

Thomas O. Sinclair, Esquire

TOS/me
Enclosures
cc:    Cathy Cleiland
       Terry Key

 

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

September 5, 2006

**VIA CERTIFIED MAIL**
CIGNA Group Insurance
Routing 212
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243

Life Insurance Company of North America
1601 Chestnut Street
Philadelphia, PA 19192-2235

Temple-Inland, Inc.
Benefits Administration Committee
Plan Administrator
303 South Temple Drive
Post Office Drawer N
Diboll, TX 75941

        Re:    **Cathy Cleiland**

Dear Sirs:

        This firm has been retained by Cathy Cleiland with regard to a claim for benefits under the terms of the employee welfare benefit plan(s) or pension plan(s) in which the above referenced individual was a participant and/or beneficiary. Please direct any and all correspondence, and all contact regarding this matter, to this firm.

        If it is your company's contention that the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et. seq. applies in this matter, then please produce any and all "relevant" (as defined within 29 C.F.R. § 2560.503-1) documents to include the policy, summary plan description, or any other documents specified within 29 U.S.C. § 1001 et. seq. and 29 C.F.R. § 2560.503-1. These documents should include any and all information upon which you based your decision regarding any claim for benefits, and all documents pertaining to or referencing the employee welfare benefit plan(s) and/or employee pension plans under the terms of which the above referenced individual is or was a beneficiary and/or participants.

        These documents are requested pursuant to the rights specified within 29 U.S.C. § 1132 (c). Your response should include any "relevant" ERISA documents, plan documents, claim file documents, any manuals, disability guidelines, or any other documents pertaining to the guidelines under which the claim

was determined, and any brochures, handbooks, employee benefit guides, pension plan documer detailing any and all benefits provided to the above referenced individual.

Sincerely,

**"DICTATED, BUT NOT READ
IN ORDER TO AVOID DELAY"**

Thomas O. Sinclair, Esq.

TOS/me
Enclosure
cc: Cathy Cleiland

 

*HIPAA-Compliant PHI Release Form*

## Authorization for Disclosure of Protected Health Information

I, Cathy Cleiland, authorize the disclosure of my protected health information[1] as described herein. I understand that this authorization is voluntary and made to confirm my direction. I understand that, if the person(s) or organization(s) that I authorize to receive my protected health information is not subject to federal and state health information privacy laws,[2] subsequent disclosure by such person(s) or organization(s) may not be protected by those laws.

1. I authorize the following person(s) and/or organization(s) to disclose my protected health information (as specified below):

   Name(s) CIGNA Group Insurance

   Address Routing 212, 12225 Greenville Avenue, Suite 1000, Dallas, TX 75243

2. I authorize the following person(s) and/or organization(s) to receive my protected health information, as disclosed by the person(s) and/or organization(s) above.

   Name(s)  Thomas O. Sinclair

   Organization(s) Campbell, Waller, & Poer

   Address 2100A Southbridge Parkway, Suite 450, Birmingham, AL 35209

3. Specific description of the protected health information that I authorize for disclosure (authorization to disclose psychotherapy notes must be separate):

   **Any and all documents and records relating in any manner to Cathy Cleiland, DOB _____ SSN # _____, including but not limited to all insurance files, underwriting files, investigation files, application files, insurance policies, applications for insurance, all documents containing the signature of claimant, documents involving claims submitted on the policies, all correspondence and communications with claimant, records of all transactions, agreements, records stored on any computer system, computer printouts, and any and all other writings of any nature prepared at any time which related in any way to claimant including, without limitation, all such records and documents until the date the response is made to this request**

4. Specific description of the purpose for each use or disclosure (or write "At the request of the individual" in this space):

   **At the request of the individual**



***Please complete reverse side.***

LINA/Cleiland 0524



5. I understand that I may revoke this authorization at any time by sending a letter to the person or organization listed in paragraph one, except to the extent that the person(s) and/or organization(s) named above have taken action in reliance on this authorization. If I do not sign this form or if I later revoke my authorization, the services provided to me by the person or organization listed in paragraph one will not be affected in any way.

6. This authorization expires on <u>1 calendar year from receipt of this notice</u>, or in the event that
   (date)

<u>UPON RECEIPT OF MEDICAL RECORDS BY THOMAS SINCLAIR</u>, whichever occurs first
   (event)

I have had the opportunity to read and consider the contents of this authorization. I confirm that the contents are consistent with my direction.

_Cathy L. Cleiland_                    7-27-06
Signed                                  _____
                                        Date

Name: <u>Cathy Cleiland</u>

Address: _____, Clio, AL  36107

Telephone: _____        Social Security No.: _____

_____
Relationship or Authority of Personal Representative
(if applicable)

---

[1] Protected health information ("PHI") is health information that is created or received by a health care provider, health plan, or health care clearinghouse which relates to: 1) the past, present, or future physical or mental health of an individual; 2) the provision of health care to an individual; or 3) the past, present, or future payment for the provision of health care to an individual. To be protected, the information must be such that it identifies the individual or provides a reasonable basis to believe that the information can identify the individual. 45 C.F.R. 164.508.

[2] These laws apply to health plans, health care providers, and health care clearinghouses.

*Medha Bharadwaj, FLMI, ACS*
*CIGNA Group Insurance*
D212
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337

Phone: 800-352-0611 ext. 1249
Fax: 860-731-3211



**CIGNA Group Insura**
Life · Accident · Disability

CATHY CLEILAND

CLIO, AL 36017

October 3, 2006

| | |
|---|---|
| Name: | CATHY CLEILAND |
| Incident Number: | 613165 |
| Plan/Policy Number: | FLK0020104 |
| Plan/Policy Holder: | TEMPLE INLAND CORPORATE SERVICES |
| Underwriting Company: | Life Insurance Company of North America |

DEAR CATHY CLEILAND,

This letter is in reference to your Long Term Disability claim.

We are in receipt of a letter from Mr. Thomas Sinclair, Attorney at Law, dated September 05, 2006 along with medical records. Mr. Sinclair requested a copy of your claim file. Please be advised that we cannot communicate with or provide information to Mr. Sinclair without a signed authorization from you allowing us to communicate with Mr. Sinclair.

If Mr. Sinclair is representing you in your claim, please sign and return the 3rd party authorization form, which is enclosed. Until we receive this form, all communication will be directed to your attention.

Please contact our office at 800-352-0611 ext. 1249 should you have any further questions.

Sincerely,

Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager

cc:    MR. TONY SINCLAIR

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

LINA/Cleiland 0526

## Authorization to Release Information
### Third Party

I, <u>Cathy Cleiland,</u> hereby authorize Life Insurance Company of North America or any of its affiliated companies to furnish my attorney, Thomas Sinclair or any Agent/Broker working on behalf of Thomas Sinclair, any and all information with respect to my insurance claim under policy number FLK 20104. A photostatic copy of this authorization shall be considered as effective and valid as the original. I understand that I, or my authorized representative, will receive a copy of this authorization upon request.

I understand that this information will be used for the purpose of <u>evaluating my appeal for Long Term Disability benefits.</u>

I understand that this authorization is valid up to one year from the date of signature and that I may be asked to complete an additional authorization form after that date. I or my authorized representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. Prompt notice of revocation will then be given to all persons to whom the Company has disclosed protected health information in reliance to the original authorization as required by law. A valid authorization or court order for information does not waive other privacy rights.

Date:_____.    Signature:_____.

If claimant is under 18 years of age or incapacitated, the parent or guardian must sign. If claimant is deceased, the personal representative or executor of the estate must sign.

5/3/01

LINA/Cleiland 0527





RECEIVED

SEP 0 6 2006

CIGNA - DALLAS

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

September 5, 2006

**VIA FEDERAL EXPRESS**
Medha Bharadwaj
Appeal Claim Manager
CIGNA Disability Management Solutions
CIGNA Group Insurance
Routing 212
12225 Greenville Avenue, Suite 1000 LB 179
Dallas, TX 75243-9382

    Re:    Claimant:      **Cathy Cleiland**
           Policy Keys:   **FLK 20104\FLI50710\OK810692\ABL670620**
           Account Name:  **Temple Inland**

Dear Mr. Bharadwaj:

1.      This firm represents Ms. Cathy Cleiland with regard to her claim for benefits under the various Temple Inland Employee Welfare Benefit Plans and/or Pension Plans. No further contact should be made directly with Ms. Cleiland. Any and all contact regarding any and all benefits should be directed to this firm.

2.      Under separate cover you have been provided a HIPAA Complaint Authorization along with a request for production. This request is made pursuant to Ms. Cleiland's rights under ERISA. In order to perfect her appeal, it is necessary for your companies to comply with the requests for productions so that Ms. Cleiland may be fully informed as to the basis of your denial of benefits.

3.      All prior document production authorizations are hereby terminated. Your company will be provided documents pursuant to HIPAA compliant requests signed from this date forward by Ms. Cleiland upon receipt of a request from your company. Once again, all prior authorizations are hereby revoked pursuant to Ms. Cleiland's rights under HIPAA. Any authorizations signed prior to the date of this correspondence by your company will constitute violations of HIPAA.

4.      Attached hereto are documents bates numbered CLE00001 through CLE00134. Because Ms. Cleiland has not been provided a full copy of the records pertaining to her claim for benefits and the documents which you have obtained during the course of that review, it is impossible to determine what documents have not been included in your review. We look forward to receipt of your production so that we may properly assess the need for additional documentation.

6.  You are hereby provided notice that Ms. Cleiland disputes your company's claim that she is able to perform in a sedentary occupation.

7.  Please reconsider your termination in light of the attached medical records and hold off making a final determination on this appeal until such time as we have sufficient time to review your document production. Please forward that production to my office as soon as possible to avoid any further delay.

8.  This appeal and documentation is provided pursuant to your invitation in the March 10, 2006 correspondence wherein you state that Ms. Cleiland "may request a review of this decision by writing to the Life Insurance of North America representative signing this letter at the address noted on the letterhead." "In addition to any written comments, your request for review must include any documentation you wish us to consider." Under the circumstances, it is impossible to tell if there is additional "new" documentation provided in the attached bates numbered documents without a review of your document production which we look forward to receiving.

9.  In your review of this claim, please consider the operative word "or" contained in the definition of disability after 24 months of disability. I do not believe that there is an analysis of whether or not Ms. Cleiland could earn 80% or more of her pre-disability indexed earnings.

We look forward to receiving the documentation outlined in our document request letter. Once we receive that documentation, we will provide additional correspondence, arguments, position statements, documentation and further evidence of Ms. Cleiland's entitlement to benefits.

In the alternative, and in light of the numerous and well-documented physically disabling conditions suffered by Ms. Cleiland, we invite your company to immediately provide back benefits, reinstate benefits, provide a reasonable amount of attorney's fees based upon the Lodestar method along with interest on the past due benefits.

I look forward to receiving your production and response to the offer of settlement outlined above.

Sincerely,

**'DICTATED, BUT NOT READ
IN ORDER TO AVOID DELAY'**

Thomas O. Sinclair, Esquire

TOS/me
Enclosures
cc:    Cathy Cleiland
       Terry Key

LINA/Cleiland 0529

**UAB** The University of Alabama at Birmingham    PAGE 1
The Medical Center/University of Alabama Hospitals

### DISCHARGE SUMMARY

NAME: CLEILAND, CATHY    MED.REC.NO.: 00698678    ROOM:

SERVICE: Mark N. Hadley, M.D./2823    ADMITTED: 12/16/03    DISCHARGED: 12/18/03

DICTATED: 12/18/03    TRANSCRIBED: 12/18/03

ADMISSION DIAGNOSIS:    Lumbar instability.

DISCHARGE DIAGNOSIS:    Same.

PROCEDURE:    L4-5 laminectomy and diskectomy with
L4-5 internal fixation and fusion and
L4-5 posterior lumbar interbody fusion
by Dr. Hadley on 12/16.

HISTORY OF PRESENT ILLNESS:  The patient is a 46-year-old white
female with a one and a half year history of low back pain and
left leg pain with numbness in the lateral left leg and plantar
surface of the left foot.  She has a history of prior lumbar
surgery.  Exam and imaging is consistent with L4-5 instability.
She presents now for elective decompression with L4-5 posterior
lumbar interbody fusion.

Please see history and physical for further details.

HOSPITAL COURSE:  The patient underwent the aforementioned
procedure which she tolerated without difficulty.  She was
followed on the floor postoperatively where she had an
uncomplicated hospital course and mobilized in a timely fashion
and she remained neurologically stable in comparison to her
preoperative exam.  She had a slight foot drop on the left
preoperatively and this was felt to have improved actually
somewhat on postoperative day one with almost normal strength on
the left side with dorsiflexion.  She was fitted with an LSO brace
and approved for discharge the morning of 12/18.

DISCHARGE CONDITION:  Good.

DISPOSITION:  Home.

DISCHARGE MEDICATIONS:  Neurontin 300 mg t.i.d.; Robaxin, Lortab,
and Advil as needed for pain.

**UAB** The University of Alabama at Birmingham                    PAGE 2
       The Medical Center/University of Alabama Hospitals

### DISCHARGE SUMMARY

NAME: CLEILAND, CATHY          MED.REC.NO.: 00698678   ROOM:

Followup is on 12/29 for a wound check with Dr. Hadley.

Kevin N. Ammar, M.D./07734/TL032

                                    Mark N. Hadley, M.D.

**CLE0000**

**LINA/Cleiland 0531**



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

## Operation Note

*NAME:* CLEILAND, CATHY   *MED. REC. NO.:* 000000698678   *ROOM:*

*SURG:* Mark N. Hadley, M.D.          *ASSIST:* Ajay K. Ananda, M.D.

*SURG#:* 2823

*SURG. SIGN:* Electronically Signed by Mark N. Hadley, M.D. on 12/19/2003

*DATE OPER.:* 12/16/2003   *ADMITTED:*   *DISCHARGED:*

*SERVICE:* Mark N. Hadley, M.D.   *DICTATED:* 12/16/03   *TRANSCRIBED:* 12/16/03

*DOCTOR/SERV. SIGN:* _____

PREOPERATIVE DIAGNOSIS:  Lumbar spinal instability, with L5 radiculopathy, left greater than right.

POSTOPERATIVE DIAGNOSIS: Same.

PROCEDURES PERFORMED:   1.  L4-L5 laminectomy for decompression.
2.  L4-5 diskectomy, bilateral, with L4-5 posterior lumbar interbody fusion, bilateral.
3.  Internal fixation L4-L5, bilateral.
4.  Autologous bone dorsolateral fusion L4-L5, bilateral.

ANESTHESIA:  General with endotracheal intubation.

INDICATIONS: This is a 46-year-old female who has had previous L4-5 surgery.  She has developed collapse and instability at L4-5, with marked L5 root compression and foot drop.  She has horrific pain, both mechanical in nature and radicular in nature, bilateral, again left more than right.  She is a candidate for operative decompression at the L4-5 level, followed by L4-5 posterior lumbar interbody fusion and internal fixation and dorsolateral fusion.  She understands the indications for as well

CLE00003

LINA/Cleiland 0532



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

as the risks of the procedure.  She wishes to proceed.  Consent has been obtained.

OPERATIVE TECHNIQUE:  After smooth induction of anesthesia and intubation, the patient was carefully moved from the hospital bed to the operating table and placed in the prone position on the Wilson frame.  The patient's lumbosacral spine was shaved, prepped, and draped in the usual sterile fashion.  I used the previous skin incision but essentially extended the incision from the inferior portion of L3 down to the superior portion of S1. There was a great deal of scar on this left side, particularly at L4-5.  I dissected down bilaterally, exposing the spinous process and lamina of L4 and the spinous process and lamina of L5.  There was marked facet mobility, in fact fractured facet at the L4-5 level on the left with collapse.  I dissected out laterally bilaterally and exposed the facet complex at L4-5 and then the transverse process of L5.  I worked up in a careful manner in a cephalad direction and exposed the transverse processes of L4 bilaterally, using great care to avoid any compromise or exposure of the L3-4 facet complex.  I irrigated the wound with antibiotic solution.  I then used a double-action rongeur to remove the spinous processes and lamina which remained at L4 and L5.  I had dissected around the L4-5 scar on the left side, of course, but was able to do so and then fully decompress the thecal sac from superior L4 through L5.  Working from the patient's left side toward the right, I undercut the medial facet complex and decompressed the lateral recess stenosis here.  I took the L4-5 facet down as well.  I went around to the patient's right, worked back toward the left, worked around and through scar, and decompressed the exiting L5 root which was markedly compromised, as well as the exiting L4 root.  There was tremendous scar here from this collapsed, fractured, and failed facet.  I then worked underneath the L5 root on the left, worked in a cephalad direction, and found recurrent disc herniation.  I was able to dissect through this using both blunt and sharp dissection techniques, avoiding injury to the L5 and the L4 root, and then retract the nerve root medially.  The markedly collapsed interspace here was identified.  Posterior lumbar interbody fusion instruments were then sequentially used, beginning with an 8 mm blade up to an 11 mm blade, decorticating the inferior left

CLE00004

LINA/Cleiland 0533





**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

endplate of L4 as well as the superior endplate of L5. Disc material was removed with interspace rongeurs. I then dissected on the patient's right side, careful to avoid any compromise of the L4-5 root on the right. Again, posterior lumbar interbody blades were used to remove disc material and decorticate the endplates sequentially from 8 mm to 11. I then used a box cutter to decorticate the endplates even better at the inferior L4 and superior L5 bilaterally. I then placed a distraction device in the interspace 12 mm. I used a 13 mm allograft posterior lumbar interbody fusion substrate and tapped these as interposition grafts, first on the patient's left and then the right. These appeared to be in good position, and we had markedly increased, although not quite to normal, the interspace height from her preoperative collapsed circumstance. There was immediate firmness and stability to this previously very unstable joint. I then passed bone screws via the pedicles into the bodies with the use of intraoperative fluoroscopy into L4 and L5 bilaterally. I decorticated the exposed dorsolateral surfaces of L4 and L5. I morselized all the patient's bone which I had removed during the laminectomy and facetectomy completely of L4 and L5, admixed this with bone morphogenic protein putty and paste, and then packed it over the exposed dorsolateral surfaces of L4 and L5. Contoured rods were then secured to the bone screws at L4 and L5 bilaterally and locked into position, completing the procedure. I irrigated the wound with antibiotic solution. There was no evidence of nerve root compromise, thecal sac compression, or CSF leak. Bleeding was well controlled. I placed a drain. We closed the wound in multiple layers. The skin edges were approximated with a running nylon suture.

I personally supervised the entirety of the procedure and performed the essential elements outlined above.

Mark N. Hadley, M.D. / 07120 / TL030

CLE0000

LINA/Cleiland 0534



CLEILAND, CATHY K.

JOHN E. HACKMAN, M.D., P.A.
1722 PINE ST., SUITE 1001
MONTGOMERY, AL 36106-1107

BIRTHDATE:
S.S.#:

09-18-03

Mrs. Cleiland comes in for followup. She is having increasing problems. She is now having a lot of pain down the right leg. This has changed from when she was here last. We reviewed her MRI scan and compared it with the one that was done on 08-11-03. She now has disk protruding into the foramen at L4-5 on the right which was not there a month and a half ago. She also has some recurrent disk protrusion on the left which was not there a month and a half ago. She says she can't live with the leg pain. I offered her re-exploration at L4-5 bilateral. She says she has been looking on the internet and she is interested in talking to somebody about instrumentation. We are going to try to get her up to see Dr. Mark Hadley at UAB.

11-11-03 - Lortab 5 #30, one refill, called to 334-774-5508.

11-11-03 - Medical records mailed to Social Security.

11-18-03

Phone call: Mrs. Cleiland called up to tell us that Dr. Hadley in Birmingham is going to do a decompression with internal fixation and fusion, (possibly PLIF). He is to do this on 12-09-03.

12-09-03

We received a nice note from Dr. Mark Hadley. He plans instrumentation and stabilization on Cathy's back problem for lumbar spinal instability. This is scheduled for 12-09-03.

12-30-03

We got a note from Dr. Mark Hadley that Mrs. Cleiland has had an L4-5 posterior lumbar interbody fusion.

05-11-04 - Letter to Mrs. Cleiland.

05-18-04 - Letter to Mrs. Cleiland.

CLE00006

LINA/Cleiland 0535

CLEILAND, CATHY K.

**JOHN E. HACKMAN, M.D., P.A.**
**1722 PINE ST., SUITE 1001**
**MONTGOMERY, AL 36106-1107**

BIRTHDATE:
S.S. #:

07-14-03 – Hospital admission.

07-16-03 – Re-exploration laminectomy, L4-5, left.

07-17-03 – Discharged home.

DIAGNOSIS– Recurrent HNP, L4-5, left.

**07-18-03**

We had a deposition with Mr. Tom Galloway and Mr. Terry Key.  During the deposition they wanted impairment ratings.  I gave impairment ratings of 7% for her C5-6 disc, 2% for the C6-7 disc, 1% for the C4-5, 10% for the first low back operation and 2% for the second low back operation.

**07-22-03**

Cathy called up to talk about physical therapy.  I don't want her taking physical therapy until she is at least 12 weeks post op.

**08-21-03** – Refill on Darvocet N-100 called into Walmart 334-774-5508.

**08-04-03** – Refill on Darvocet N-100 and Medrol Dosepak called to pharmacy (251) 743-3784.

**08-28-03**

Mrs. Cleiland comes in for follow up.  On a weekend when I was out of town, she had to come up and see Dr. Pat Ryan.  He had an MRI scan done and I reviewed it.  It was done on 08-11-03.  It shows good decompression of the central canal and the nerve root canal.  There is marked narrowing of the interspace.

She saw Dr. Herrick yesterday and had an injection but she says it didn't help very much.

She is still having trouble with her left leg.

She has a diminished left knee reflex but no foot drop.  She has got negative straight leg raising.  Ankle reflexes are intact.

We had a discussion about activities.  I am going to see her back in six to eight weeks.

**09-09-03** – Darvocet N100 #30, one three times a day as needed with one refill called into Wal-Mart 251-666-6988.

**09-16-03** – Darvocet N100 #30, one four times a day as needed with one refill and Flexeril 10 mg., #100, one four times a day as needed with one refill called to Wal-Mart 251-666-6988.

JOHN E. HACKMAN, M.D., P.A.
1722 PINE ST., SUITE 1001
MONTGOMERY, AL 36106-1107

CLEILAND, CATHY K.

BIRTHDATE:
S.S.#:

04-23-03

Mrs. Cleiland comes in because she is having increasing problems in her left hip and leg with numbness in the left lateral thigh. She has already schedule surgery for May 21, 2003, lumbar laminectomy at L4-5 on the left. We went over her x-rays. We discussed alternatives. Risks and benefits of surgery were discussed. She is going to come in on May 21, 2003 for lumbar laminectomy at L4-5 on the left.

She said if anything might delay the surgery she would like to give it a try. So we are going to try some physical therapy and if the physical therapy does not help, then we will plan on surgery as scheduled.

05-12-03 – Letter to George K. Elbrecht, P.C., Attorney at Law – faxed and mailed 05-13-03.

05-13-03 – Lortab 5 #30, one three times a day as needed with one refill called into Wal-Mart 251-575-3383.    (FAX # 251-575-7063)

05-21-03 – Hospital admission.

05-21-03 – Lumbar laminectomy, L4-5, left.

05-22-03 – Discharged home.

DIAGNOSIS– Lumbar radiculitis, L4-5, left.

06-02-03

Patient called up because her Darvocet is not strong enough. We called in Ultram and Neurontin 300 mg four times a day.

06-10-03

Cathy called and said she needed something stronger for pain. We are going to call in Tylenol #3, #30, one every four hours as needed with two refills. Called in to Wal-Mart (334) 774-5508 or (334) 774-5651.

07-07-03 – Records mailed to Kathy Underwood, Legal Assistant to Terry G. Key, COCHRAN, CHERRY, GIVENS & SMITH, P.C.

07-10-03

Cathy comes in for follow up. She says she is still having a lot of trouble with her left leg. She says it hurts and it feels sort of swollen and heavy. She has got negative straight leg raising. Knee reflexes are intact. Ankle reflexes are both absent today. She does not have a foot drop.

I asked her about her medication. She says she is not taking Neurontin because it was too expensive. I told her the Neurontin might help. We are going to give her a Medrol Dosepak. We are going to get an MRI scan and see her back.

CLE00008

LINA/Cleiland 0537

JOHN E. HACKMAN, M.D., P.A.
1722 PINE ST., SUITE 1001
MONTGOMERY, AL 36106-1107

CLEILAND, CATHY K.

BIRTHDATE:
S.S.#:

09-12-02 - continuation

reported trouble thinking and I have told her previously that that has nothing to do with her
neck surgery.

09-19-02 - Medical records mailed to Attorneys Cochran, Cherry, et al.

09-19-02

Phone call: She says there is something much worse in her back and she wants to know when we
can do surgery. I told her that we found some minimal changes at L4-5, but not anything that
would require surgery so far. She wants me to check things further. We are going to do an
MRI scan of her lumbar spine when she returns in October.

10-01-02

Mrs. Cleiland comes in for followup. Her MRI scan at the present time is much more
impressive at L4-5 on the left side. There is a combination of disk bulge and osteophyte.
This is worst than what things looked like in May. Her pain is in the left hip and leg. We
talked about options. Surgery was discussed. She says that she would like to hold off on
surgery at this point, but if things get worse, I will offer her a lumbar laminectomy at L4-
5 on the left.

We are going to bring her back in three months for another neck x-ray.

10-29-02

Phone call: She called and talked to the girls in the office. She has been sore on the
left side of her neck and Flexeril was not helping. We are going to call in some Neurontin.

She was not available when I called, but I listened to her answering machine and left a
message. She has a nice clear voice on the answering machine, so it sounds like her
hoarseness has probably cleared up.    Pharmacy #: 251-743-3784.

12-17-02

Mrs. Cleiland comes in for follow up. She still reports occasional cracking in her
voice but she has got a good, clear voice today. She complains about numbness in her
arms and legs. She has got a documented peripheral neuropathy which I think is caused
by her diabetes.

She corrected information in one of my notes. On my note of 06-04-02 we have reported
that her accident was on 05-25-02. In fact it was on 04-25-02, prior to her myelogram.

Her x-ray shows that she is developing a good, solid fusion. She takes one Flexeril at
bedtime and I gave her plenty of refills. I will see her back as necessary.

02-20-03 - DNKA.

CLE00009

LINA/Cleiland 0538

CLEILAND, CATHY K.

**JOHN E. HACKMAN, M.D., P.A.**
**1722 PINE ST., SUITE 1001**
**MONTGOMERY, AL 36106-1107**

BIRTHDATE:
S.S.#:

06-04-02 — continuation

I think the neck problem is due to C4-5.  I think the problem in the right hand with the numbness is due to a recurrent carpal tunnel.  I think the problem on the left side of the back is due to L4-5.  We discussed alternatives.  She would like to avoid surgery, so we are going to try some Bextra.  If things don't get better, she will be back to see me.

06-24-02 — Hospital admission.

06-24-02 — Anterior cervical discectomy and interbody fusion, C4-5, with a bone graft from the right iliac crest.

06-25-02 — Discharged home.

DIAGNOSIS— Cervical radiculitis, C4-5.

06-27-02 — Medrol Dosepak okayed to 251-743-3784.

07-09-02 — Flexeril #100, one refill, called to 251-743-3784.

08-01-02

Phone call:  She called up.  She has a little numbness under her chin and she gets hoarse if she talks for very long.  I told her this should all be temporary.

08-06-02

Mrs. Cleiland comes in for followup.  She is pretty much the same as we discussed the other day.  Her wound looks good.  Her x-ray looks good.  She is neurologically intact.  She is taking Flexeril with pretty good results.  We discussed activities.  I will see her back in 8 weeks.  When she returns I want to look at her MRI scan of the lumbar spine because she says her low back is still giving her trouble.

08-13-02

Phone call: She says that she doesn't think she is thinking as sharp as she was prior to surgery and she wanted to know if it was the anesthesia.  I told her it is much more likely to be related to medicine that she is taking such as the Flexeril.  I suggested she stop all medications for a week and see if these problems go away.

09-05-02

Phone call:  For about two weeks she has found that when she is trying to go to sleep at night she feels swelling her throat and she has had some hoarseness.  We are going to call in a Medrol Dosepak.

09-12-02

Phone call:  Cathy called up and talked to Kathy in my office and indicated she is still having trouble with hoarseness.  We cannot detect any hoarseness over the telephone, so I think it is probably just some tightness from the surgery.  I have talked to her about this before and told her that it will take 6-9 months before this goes away completely.  She also

CLE00010

*A751198*

CLEILAND, CATHY K.

BIRTHDATE:
S.S.#:

JOHN E. HACKMAN, M.D., P.A.
1722 PINE ST., SUITE 1001
MONTGOMERY, AL 36106-1107

04-15-02

Mrs. Cleiland comes in because of pain and numbness in the right arm and the right hand. This started suddenly about three weeks ago. She has neck pain, shoulder pain, numbness down the arm, right hand gets weak and clumsy. She has numbness in the thumb, index and long finger of the right hand, worst in the thumb.

She is neurologically intact on exam.

MRI scan of the cervical spine and x-ray of the neck showed good solid fusions at C5-6 and C6-7 and it shows no evidence of nerve root compression. All the nerve root canals appear to be wide open. Radiologist reported some various degrees of neural foraminal stenosis, but I don't see anything on the right side that would explain her complaints.

She does not have a Tinel's sign and she has had a previous carpal tunnel release in Mobile.

I am going to try her on Bextra and I am going to schedule a myelogram and some EMG studies.

04-29-02 - 23 observation for myelogram.

04-29-02 - Complete myelogram.

DIAGNOSIS- Recurrent carpal tunnel, right.
         C4-5 disk bulge.

05-03-02 - Medrol Dosepak okayed to 251-575-3393.

05-14-02

Mrs. Cleiland comes in for followup. On 04-25-02 she was hit at a four way stop. This was just a few days before she had her myelogram. We went over her myelogram. She has a bulge at C4-5. L4-5 had some minimal bulge. She is complaining alot about back and right leg pain. She is also complaining about headaches and neck pain.

We are going to get an MRI scan to look at her low back. There were some L4-5 changes last year and we are going to compare that with last year's MRI, so we need both MRI's when she returns. The neck problem is a bulge at C4-5 which is new. She also has diabetic neuropathy and a recurrent carpal tunnel on the right hand.

06-04-02
Mrs. Cleiland comes in for followup. We went over all of her testing. Her pain in her neck started prior to her 05-25-02 accident, but her MRI scan did not show much. Her 04-29-02 myelogram showed a bulging disk at C4-5. She wanted to know if this meant that the accident caused it, and I told her that didn't necessarily follow. The reason we did the myelogram is that MRI scans consistently miss things in the neck. As far as her low back, she has persistent pain going down to the left hip. She says she hasn't had previous problems with her low back, so she wanted to know if that means that the accident caused this. I showed her a report from the Mobile Infirmary, 02-16-00, that showed some disk bulging and there is a notation on that report "could this be causing numbness in the left leg which I have had since the 1997 accident." MRI scan of the low back, dated 06-05-01, showed a posterior and central bulge of disk material at L4-5 level. I told her that she definitely has a history of previous low back problems, but I agreed with her that when I saw her on 04-15-02, prior to her myelogram, she was not complaining about her low back, and she is now complaining.

CLE00011

CLEILAND, CATHY K.

**JOHN E. HACKMAN, M.D., P.A.**
**1722 PINE ST., SUITE 1001**
**MONTGOMERY, AL 36106-1107**

BIRTHDATE:
S.S. #:

05-02-01 – Hospital admission.

05-02-01 – Anterior cervical discectomy and interbody fusion, C6-7, with a bone graft from the right iliac crest.

05-03-01 – Discharged home.

DIAGNOSIS– C6-7 disk herniation.

05-04-01 – Medrol Dosepak okayed to 566-8009.

05-15-01 – Second Medrol Dosepak okayed to 566-8009; also Parafon DSC #60, one refill, called to 334-247-2520.

06-05-01

Mrs. Cleiland comes in for followup. - She is one month post-op anterior cervical fusion. She says her arm is better and the strength is better and the numbness is better. She still has some axial pain which I think is normal. Her x-ray looks good.

She had an MRI scan of the low back. This has some mild changes at L4-5, but I do not see any major abnormalities and I don't think she is going to need surgery.

We had a discussion about activities. I am going to see her back in 4-6 weeks. She is still out of work at this point.

06-07-01 – Lortab 5 #20, one refill, called to 334-247-2520.

08-09-01

Mrs. Cleiland comes in for followup. She was doing great until she took her car out to get serviced and she slipped on the handicapped ramp and fell down. She did it just about an hour ago. She is sore all over, but there is nothing that sounds like it is dangerous from a neurologic standpoint. X-ray of the neck looks good. She is back working. I am going to bring her back in in two weeks to get another neck x-ray to make sure that nothing happened with her fall today.

08-23-01 – DNKA.

CLE00012

LINA/Cleiland 0541



**JOHN E. HACKMAN, M.D., P.A.**
**1722 PINE ST., SUITE 1001**
**MONTGOMERY, AL 36106-1107**

CLEILAND, CATHY K.

BIRTHDATE:
S.S.#:

04-19-01

CHIEF COMPLAINT: Neck, arm and shoulder pain.

HISTORY: This is a 43 year old white female.  She was involved in a motor vehicle accident whe she was taking an employee to the doctor.  She was at a stop sign, completely stopped, and got hit on the driver's side.  She was treated by Dr. Faircloth for neck problems.  MRI scan showed a large C5-6 disk herniation and smaller C6-7 protrusion.  She had an anterior cervical fusion.  C5-6 was fused.  In general, she has done well, but she has never really been pain-free.  She has continued with pain in the neck and pain in the shoulders.  As time has gone on, it has become progressively worse.  She now complains about neck pain, headaches, right scapular pain, pain down the right arm, and numbness in the right mid fingers.

PAST MEDICAL HISTORY:  Positive for insulin-dependent diabetes.

PRIOR SURGERY:  Two cesarean sections, tubal ligation, removal of a tubal ligation, removal of a right tube and ovary, C5-6 cervical fusion, carpal tunnel syndrome.

CURRENT MEDICATIONS: Humulin N 25 twice a day, Humulin Regular 15 twice a day, and Effexor. She has also been on Clonopin but she is currently not taking that.

ALLERGIES: None reported.

FAMILY HISTORY: Positive for diabetes.

SOCIAL HISTORY: She is a nonsmoker.

PHYSICAL EXAM:  She has pain with neck extension and neck rotation.  There is no definite neurologic abnormality except for the right triceps which seems a little bit weak.

X-RAYS:  Her initial MRI scan after her accident showed a large central spur and disk at C5-6 with mass-effect on the right side of the cord.  There is a small left-sided disk herniation at C6-7 without significant mass-effect.  C5-6 was the level that had surgery.

Her current MRI, which was done about a month ago, shows a large central disk herniation at C5-6 with spinal cord compression and bilateral foraminal encroachment.
C6-7

IMPRESSION:  I think her current problems are related to her C6-7 disk.

She reports some low back pain, but there is no film available to look at her low back.  She was told that she had some bulging, but it was not enough to worry about.

RECOMMENDATIONS: Anterior cervical fusion at C6-7.  Surgery, risks and benefits, were discussed.  We will schedule surgery as soon as we get authorization.

cc: Virginia Benton at Reliance.



CLE00013

LINA/Cleiland 0542



Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 10:46 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 09/18/2003 Loc= RAD SPEC    Acct#= 10576197    Phys= HACKMAN,JOHN E

---------------------------------------------------------------------

Ord #= -                              Sched D/T= 09/18/2003 1044
Ord Phys=                            Collect D/T= 09/18/2003 1216
Resulted by= SYS,IS                   Result D/T= 09/18/2003 1312

MRI LUMBAR SPINE WITH AND WITH                    {1 of 1}
  RAD01:
      Clinical Data: back and leg pain  bc  linda

  REPORT:
      Procedure:  MRI L SPINE W & W/O CONTRAST  Date of Exam: 09/18/2003

      INDICATION: Low back and right leg pain with previous surgery most

      recently July 03.

      PROTOCOL:

      Parasagittal T1 and T2 weighted images with axial T1 and T2 weighted

      images.  Gadolinium was then injected followed by repeat parasagittal

      and axial T1 weighted images of the lumbar spine.

      FINDINGS:

      The disc space is considerably narrowed at L4-5 with degenerative end

      plate signal changes at that level.  The remaining lumbar vertebral

      bodies are normal but the disc space is also narrowed at L5- S1.


      At L4-5, there are operative changes upon the left lamina, foramen,

      facet and posterior margin of the disc with enhancing soft tissue in

      that location as well as encasing the left L5 nerve root proximally.

      The enhancing soft tissue fills the left neural foramen.  I suspect a

**CLE00014**

**LINA/Cleiland 0543**

Page 2

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 10:46 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y      Sex= F      MRUN 28-51-42
Adm Dt= 09/18/2003 Loc= RAD SPEC    Acct#= 10576197      Phys= HACKMAN,JOHN E
---------------------------------------------------------------------------
MRI LUMBAR SPINE WITH AND WITH   09/18/2003 1:12 PM   (Continued)
     small residual disc fragment on the left at L4-5 adjacent to the

     exiting L5 nerve root proximally. It appears to be more closely

     approximating the root than on the previous examination of 8-11-03

     but there have been no other changes since the previous study.


     IMPRESSION:

     DEGENERATIVE CHANGES L5-S1, UNCHANGED.


     SEVERE DEGENERATIVE DISC DISEASE L4-5 AND OPERATIVE CHANGES UPON THE

     LEFT LAMINA, FORAMEN, FACET AND DISC AT THAT POINT WITH PROBABLE

     RETAINED DISC FRAGMENT TO THE LEFT OF MIDLINE AT L4-5 SURROUNDED BY

     ENHANCING SCAR.  THIS MAY ACTUALLY SLIGHTLY INDENT UPON THE LEFT L4

     NERVE ROOT PROXIMALLY AND THE LEFT L5 NERVE ROOT DOES APPEAR TO BE

     ENCASED BY SCAR.  THE RETAINED FRAGMENT IS SLIGHTLY MORE PROMINENT

     THAN ON 8-11-03.



     Faxed to Dr. Hackman's office.

     Dictated by: DONALD H. DAHLENE

     Verified by: DONALD H. DAHLENE


**CLE0001**

**LINA/Cleiland 0544**

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 10:46 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 09/18/2003 Loc= RAD SPEC    Acct#= 10576197    Phys= HACKMAN,JOHN E
--------------------------------------------------------------------
MRI LUMBAR SPINE WITH AND WITH  09/18/2003 1:12 PM    (Continued)

Transcriptionist: JAJ

CLE00016

LINA/Cleiland 0545

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

DISCHARGE SUMMARY

PATIENT NAME: · CLEILAND, CATHY            MR#:  28-51-42
ATTENDING:      RYAN, PATRICK               ACT#: 10567192
ADMIT DATE:     8/10/2003                   RM#:
DISCHARGE DATE: 8/12/2003

BS#:  0813-007

FINAL DIAGNOSES:
1.  Lumbar radiculitis.
2.  Status post lumbar laminectomy at L4 5 x two.

HISTORY:  Cathy Cleiland is a very pleasant 51-year-old female,
admitted for intractable pain.  She is a patient of Dr. Hackman and
has undergone lumbar laminectomy twice this year.  Most recently her
surgery was done in July.  She states over the past few days her pain
has become intractable in nature and the patient presented to the
emergency room for evaluation and treatment.  She was admitted to the
hospital on Sunday, August 10, 2003 for possible IV PCA and further
workup.

HOSPITAL COURSE:  Cathy Cleiland was admitted to the hospital on
August 10, 2003.  She was placed on IM pain medications and her pain
resolved somewhat.  MRI scan of the lumbar spine with contrast
demonstrated postoperative changes at L4-5, without evidence of disk
herniation.  She appeared to be postoperative on the left at L4-5.
She was much improved on August 12, 2003, and was discharged from the
hospital in stable condition.

Detailed discharge instructions, including wound care and activities
were given to her prior to discharge, as well as a prescription for
Tylox one every four hours as needed for pain and Flexeril 10 mg one
b.i.d. p.r.n. spasm.  She was asked to follow up with Dr. Hackman in
one week.  Dr. Hackman had been out of town for the week prior.

CONDITION ON DISCHARGE:  Stable.

ACTIVITIES:  Limited.

DIET:  Regular.

Michael D. Easterling, S.A.

PATRICK G. RYAN, M.D.

1AC0813
D:  8/13/2003 08:17
T:  8/13/2003 07:52
151804

000002                                                          1

CLE0001

LINA/Cleiland 0546



JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

| | |
|---|---|
| PATIENT NAME:  CLEILAND, CATHY | MR#:   28-51-42 |
| ATTENDING:     PATRICK G. RYAN, M.D. | ACT#:  10567192 |
| ADMIT DATE:    8/10/2003 | RM#:   6E-630 |

0811- 34/35
CHIEF COMPLAINT:  Intractable low back pain.

HISTORY: Cathy Cleiland is a 46-year-old female, a patient of Dr. Hackman. She is admitted to the hospital at this time for intractable low back pain and left sciatica. She has undergone lumbar laminectomy for disk herniation in May 2003, and was readmitted for intractable low back pain in July. She was found to have recurrent disk herniation apparently at L4-5 and underwent reexploration and diskectomy by Dr. Hackman. She has done well since that time, but over the past 3-4 days her pain has become increasing in nature. She found herself with intractable low back pain yesterday with left sciatica. She states her pain radiates into the left hip, down her left thigh and into the left calf and foot. She has had numbness and tingling in her left lower extremity. There is no recent history of accident or injury. She presented to the emergency room yesterday for evaluation and treatment and was admitted to the hospital for intractable low back pain. She was to be placed on pain medications and was admitted to the hospital. The patient was on 6-East.

PAST MEDICAL HISTORY

ALLERGIES:  No known allergies.

CURRENT MEDICATIONS: Insulin N 25 units and Humulin R 15 units b.i.d., Darvocet for pain and Flexeril b.i.d.

PAST SURGICAL HISTORY:  She underwent lumbar laminectomy x 2, anterior cervical fusion x 3, 2 by Dr. Hackman and 1 in Mobile. Cesarean section, tubal ligation and carpal tunnel release.

SOCIAL HISTORY:  No use of cigarettes or alcohol noted.

FAMILY HISTORY:  Noncontributory.

REVIEW OF SYSTEMS: Positive for insulin-dependent type-2 diabetes. No history of hypertension. Denies cardiac disease or MI. There is no history of renal or hepatic disease. Denies seizures, CVA or bleeding abnormalities. There is a positive history of mitral valve prolapse. There is no history of cancer or chronic lung disease.

PHYSICAL EXAMINATION
General:  This 46-year-old white female in no acute distress. She is well developed and well nourished.
Vital Signs:  Blood pressure 132/82, heart rate 96, respirations 18, temperature 98.0.

000003

1

CLE00018

LINA/Cleiland 0547

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY
ATTENDING:      PATRICK G. RYAN, M.D.
ADMIT DATE:     8/10/2003

MR#:   28-51-42
ACT#:  1056/192
RM#:   6E-630

HEENT: Normocephalic, atraumatic. Extraocular movements intact. Pupils are equal, round, reactive to light and accommodation.
Neck: Supple, nontender, no cervical lymphadenopathy. There is no jugular venous distention.
Heart: Regular rate and rhythm, without murmur or gallop.
Lungs: Clear to auscultation bilaterally without rales, rhonchi or wheezing.
Abdomen: Soft, nontender, nondistended, positive bowel sounds present.
GU: Deferred.
Extremities: Without clubbing or cyanosis. No edema. No atrophy.
Skin: Turgor within normal limits.
Neurological: Patient is alert and oriented x 3. She answered questions appropriately. She is _____. There is palpable paralumbar spasm present. Straight-leg raising on her left is positive at 30 degrees. Contralateral straight-leg raising is positive at 70 degrees. She is hyperesthetic to pinprick in the left S1 and L5 distribution, especially below the knee. Sensation is intact on the right. Reflexes are absent at the left ankle, 1-2+ on the right and 1+ at the knee bilaterally. Patrick's maneuver negative. Quadriceps strength and biceps strength is 5/5 bilaterally.

IMPRESSION:
1.  Lumbar radiculopathy, rule out recurrent disk herniation.
2.  Status post lumbar laminectomy x 2.
3.  Anterior cervical fusion x 3.
4.  Type 2 insulin-dependent diabetes mellitus.

PLAN: The patient was admitted to the hospital at this time for pain control. She is admitted as well for MRI scan of the lumbar spine and will have this done on 8/11/03, 6-East.

PATRICK G. RYAN, M.D.

2MQ0811
D:  8/11/2003 09:19
T:  8/11/2003 13:15
151560

JOHN E. HACKMAN, M.D.

000004

2

CLE00019

LINA/Cleiland 0548

# JACKSON HOSPITAL & CLINIC, INC.
## 1725 PINE STREET
### MONTGOMERY, ALABAMA 36106

Name: CLEILAND, CATHY K.
Physician: RYAN, PATRICK G
MR#: 285142                X-RAY#: 463643
Order ID: 1190671          Result ID: 1073900

DOB:                       Age: 46 YEARS
Patient Location: 6301
Account#: 10567192
Addendum Number: 0

---

Clinical Data: BACKK PAIN TO LEFT LEG BACK SURGERY
Procedure: MRI L SPINE W & W/O CONTRAST    Date of Exam: 08/11/2003

**TECHNIQUE:**
Pre and post contrast T1 axial and sagittal imaging was performed along with multi-echo T2 sagittal and fast spin echo T2 axial imaging was performed.

**FINDINGS:**
Comparison is made to a recent examination from 07/14/2003. The previously described moderate sized disc extrusion in the left lateral recess of L4-5 has apparently been removed. There is a very small, 5mm area of low signal intensity that is surrounded by enhancing scar tissue that is adjacent to the posterolateral aspect of the intervertebral disc at L4-5 seen only on the post contrast axial images (image 10). This is adjacent to the superior end plate of L5 and is not seen on the parasagittal images. This does not abut or displace the exiting nerve roots. I cannot tell with certainty whether this represents a small piece of bone or a small residual disc fragment but may be clinically insignificant given its small size and no apparent abutment of the nerve roots. There is a fairly extensive amount of enhancing soft tissue in the left epidural space of L4-5. The enhancing soft tissue extends along the anterior aspect of the thecal sac as well as into the left neural foramen. There is no displacement or distortion of the thecal sac. The exiting left L5 nerve root is encased by the enhancing tissue. The patient has significant degenerative disc disease at this level with disc space loss and end plate sclerosis. The remaining intervertebral disc spaces show only some mild disc desiccation. No other areas of disc bulging or protrusion. The conus is normal.

**IMPRESSION:**
EXTENSIVE POST OPERATIVE CHANGES ON THE LEFT AT L4-5 WITH A LARGE AMOUNT OF ENHANCING EPIDURAL SCAR TISSUE AS DESCRIBED. THE MODERATE SIZED DISC EXTRUSION AT THIS LEVEL IS NO LONGER VISIBLE, HOWEVER THERE IS A SMALL NON-ENHANCING AREA OF LOW SIGNAL INTENSITY NEAR THE LEFT NEURAL FORAMEN AT L4-5. PROBABLY AND CLINICALLY INSIGNIFICANT GIVEN

JACKSON HOSPITAL
Jackson Hospital & Clinic, Inc.
1725 Pine Street
Montgomery, AL 36106-1137
A Non Profit Organization

-2 (9/99)

000005                                    X-RAY REPORT



CLE00020

LINA/Cleiland 0549

ITS SMALL SIZE AND LACK OF ABUTMENT TO THE NERVE ROOTS BUT COULD
REPRESENT A SMALL END PLATE FRAGMENT OR DISC FRAGMENT. THIS IS SEEN
ONLY ON ONE VIEW.

SEVERE DEGENERATIVE DISC DISEASE AT L4-5.

Dictated by: KEN RICHARDSON
Verified by: KEN RICHARDSON

Transcriptionist: EE

Name:CLEILAND, CATHY K.                Order ID:1190671
Physician:RYAN, PATRICK G              Date:08/11/2003

JACKSON HOSPITAL

Jackson Hospital & Clinic, Inc.
1725 Pine Street
Montgomery, AL 36106-1117
A Not Profit Organization

-8 (2/98)

000006                          X-RAY REPORT



CLE00021

LINA/Cleiland 0550

EXHIBIT 1 TO
EXHIBIT A
Part 11



JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

DISCHARGE SUMMARY

PATIENT NAME:   CLEILAND, CATHY          MR#:   28-51-42
ATTENDING:      HACKMAN, JOHN            ACT#:  10560803
ADMIT DATE:      7/14/2003               RM#:
DISCHARGE DATE:  7/17/2003

BS#:  0717-023

REASON FOR ADMISSION:  This 45-year-old white female diabetic had a
laminectomy on May 21, 2003 at L4-5 on the left and initially did
well.  She then developed a recurrence of pain down the left hip and
leg, which has gotten progressively worse.  She presented to our
emergency room in extreme pain.  She was admitted for pain control
and evaluation.

HOSPITAL COURSE:  The patient was admitted to the hospital and placed
on pain control.  The next day we did an MRI scan and this showed a
large extruded fragment at L4-5.  Surgery was recommended.  The
patient was taken to surgery on July 16, 2003 where she had re-
exploration of her laminectomy at L4-5 on the left.  She had
immediate improvement in her leg pain, did well, and was discharged
home the following day.  The wounds looked good and she was given
instructions.  She will be followed up in the office.

DISCHARGE DIAGNOSIS:
1.   Recurrent disk herniation at L4 5, left.

OPERATIVE PROCEDURE THIS ADMISSION:
1.   Re-exploration laminectomy at L4-5, left.

                                   JOHN E. HACKMAN, M.D.

2AC0717
D:  7/17/2003 09:56
T:  7/17/2003 11:00
149107

000002

1

CLE00022

LINA/Cleiland 0551




JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

PATIENT NAME:    CLELLAND, CATHY          MR#:    28-51-42
ATTENDING:       HACKMAN,JOHN             ACT#:   10560803
ADMIT DATE:      7/14/2003               RM#:    630-1

CHIEF COMPLAINT: Left hip and leg pain.

HISTORY OF PRESENT ILLNESS: This is 45-year-old white female,
diabetic. She recently had a laminectomy on 5/21/03 at L4-5 on the
left. She initially did well. She has had a recurrence of pain in the
left hip and leg. We have talked to her a couple of times and I saw
her in the office this past week. She complained about increasing
weakness. I put her on medication but she has gotten progressively
worse and she presented to the emergency room and was admitted for
reevaluation and pain control.

PAST MEDICAL HISTORY: Positive for insulin-dependent diabetes. She is
noncompliant. She has been otherwise healthy.

PRIOR SURGERY: Includes two cesarean sections, tubal ligation,
reversal of the tubal ligation, removal of the right tube and ovary,
anterior cervical fusion, carpel tunnel surgery, lumbar laminectomy.

HOME MEDICATIONS:
1. Humulin insulin 70/30, 40 units twice a day.
2. Effexor.
3. Klonopin.
4. Pain pills.

ALLERGIES: None reported.

FAMILY HISTORY: Positive for diabetes.

SOCIAL HISTORY: Shows the patient is a nonsmoker.

PHYSICAL EXAM:
GENERAL: Shows a generally healthy appearing white female. She is
alert and oriented. Cranial nerves are intact.
NECK: She has a good range of motion of the neck.
CHEST: Clear.
HEART: Regular.
ABDOMEN: Soft.
EXTREMITIES: She has pain with straight leg raising on the left. Knee
reflexes are intact. The ankle are both absent. She has weakness of
toe extension on the left.

000003

1

CLE00023

LINA/Cleiland 0552



JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY            MR#:   20-51-42
ATTENDING:      HACKMAN,JOHN               ACT#:  1056O8O3
ADMIT DATE:        7/14/2003               RM#:   630-1

ADMISSION IMPRESSION:
1. Recurrent lumbar radiculitis at L4-5 left.


JOHN F. HACKMAN, M.D.

4JB0715
D:  7/15/2003 908
T:  7/15/2003 12:01
148839

000004

2

CLE00024

LINA/Cleiland 0553



# JACKSON HOSPITAL & CLINIC, INC.
### 1725 PINE STREET
### MONTGOMERY, ALABAMA 36106

Name: CLEILAND, CATHY K.                    DOB:              Age: 46 YEARS
Physician: HACKMAN, JOHN E                  Patient Location: 6301
MR#: 285142           X-RAY#: 463643           Account#: 10560803
Order ID: 1182215     Result ID: 1066800       Addendum Number: 0

Clinical Data: BACK AND LEG PAIN
Procedure:  MRI L SPINE W & W/O CONTRAST     Date of Exam: 07/14/2003

Comparison is made October 02.

Surgical change is now seen on the left at L4-5 with enhancing scar in the left lateral recess and
portion of the left neural foramen. There is a prominent focus of non-enhancing material that
protrudes from the disc space posteriorly to the left. This is consistent with a recurrent disc
extrusion. This fills the lateral recess and impinges on the left neural foramen. The remainder of
the discs are intact. The L4-5 disc is more narrowed and desiccated with secondary spondylotic
change along the end plates. Vertebral height and alignment is maintained. No intradural
abnormalities are seen.

**IMPRESSION:**
RECURRENT OR RESIDUAL LARGE FOCAL EXTRUSION OF DISC MATERIAL TO THE
LEFT AT L4-5.  UNDERLYING SURGICAL CHANGE AND ENHANCING SCAR IS ALSO
PRESENT IN THIS AREA.

Dictated by: GARY W. SCOTT
Verified by: GARY W. SCOTT

Transcriptionist: TAC

JACKSON HOSPITAL
Jackson Hospital & Clinic, Inc.
1725 Pine Street
Montgomery, AL 36106-1117
A Non Profit Organization

000007                    **X-RAY REPORT**



CLE00025

LINA/Cleiland 0554

# JACKSON HOSPITAL & CLINIC, INC.
### 1725 PINE STREET
### MONTGOMERY, ALABAMA 36106

Name: CLEILAND, CATHY K.            DOB:                Age: 46 YEARS
Physician: HACKMAN, JOHN E.         Patient Location: 6301
MR#: 285142            X-RAY#: 463643        Account#: 10560803
Order ID: 1182214      Result ID: 1066801    Addendum Number: 0

Clinical Data: BACK AND LEG PAIN
Procedure: L-SPINE COMPLETE            Date of Exam: 07/14/2003

L4-5 and L5-S1 disc spaces are narrowed. There is a surgical defect seen in the left posterior
elements at L4-5. Mild facet hypertrophy and sclerosis is noted at the lower three disc levels.
Vertebral height and alignment is maintained. No fractures are seen.

**IMPRESSION:**
SURGICAL CHANGE ON THE LEFT AT L4-5.

NARROWING OF THE DISC AND SPONDYLOTIC CHANGES AT L4-5 AND L5-S1.

Dictated by: GARY W. SCOTT
Verified by: GARY W. SCOTT

Transcriptionist: TAC

JACKSON HOSPITAL
Jackson Hospital & Clinic, Inc.
1725 Pine Street
Montgomery, AL 36106-1117
A Non Profit Organization

-3 (2/00)

000008                    **X-RAY REPORT**



CLE00026

LINA/Cleiland 0555

# JACKSON HOSPITAL & CLINIC, INC.

### 1725 PINE STREET
### MONTGOMERY, ALABAMA 36106

**Name: CLEILAND, CATHY K.**
**Physician: HACKMAN, JOHN E**
MR#: 285142                X-RAY#: 463643
Order ID: 1183115          Result ID: 1067796

DOB:                       Age: 46 YEARS
Patient Location: 6301
Account#: 10560803
Addendum Number: 0

---

Clinical Data: LL
Procedure: **SPINE ONE LEVEL**            **Date of Exam: 07/18/2003**

Lateral view was obtained with metallic probe dorsal to the inferior aspect of L4.

Dictated by: PAUL A. TURNER
Verified by: PAUL A. TURNER

Transcriptionist: TAC

**JACKSON HOSPITAL**
Jackson Hospital & Clinic, Inc.
1725 Pine Street
Montgomery, AL 36106-1717
A Non Profit Organization

-2 (2/99)

**000009**                    **X-RAY REPORT**

CLE00027



LINA/Cleiland 0556

76

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama 36106

REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY                MR#:   28-51-42
ATTENDING:      HACKMAN,JOHN                   ACT#: 105608 03
SURGEON:                                       RM#:   6E 630
                                               DATE:  7/16/200

BS job # 0716-058

PREOPERATIVE DIAGNOSIS
Recurrent disc herniation at L4-5, left.

POSTOPERATIVE DIAGNOSIS
Recurrent disc herniation at L4-5, left.

PROCEDURE
Re-exploration laminectomy at L4-5, left.

SURGEON
Dr. John Hackman.

INDICATIONS
This 45-year-old white female had a laminectomy nearly two months ago
at L4-5 on the left and initially did well. She did start having some
recurrence of pain in her left hip and leg. That pain has become very
severe over the last week.  She presented to the emergency room and
was admitted for pain control. On evaluation, we found, on an MRI
scan, that she has large recurrent disc herniation at L4-5 on the
left with extruded fragments.

PROCEDURE
The patient was taken to the operating room where she underwent
general endotracheal anesthesia. She was turned to the prone position
on chest rolls. The operative site was shaved, prepped and draped in
sterile manner. Midline incision was made over L4-5, at old lumbar
scar. It was carried down to the lumbar fascia, left of the midline.
Paravertebral muscles were stripped off the spinous processes and
lamina, exposing the intralaminar space at L4-5 on the left.
Previous laminectomy site was enlarged. Scar tissue was removed. We
found several huge fragments of cartilage out under the dural sac and
the nerve root. These were all cleaned out. It appeared that she had
avulsed some of the cartilage end plate. We cleaned out all loose
fragments and made sure we had a good decompression. Bleeding was
controlled with Gelfoam and thrombin.  The wound was closed in
multiple layers of Vicryl suture.

ESTIMATED BLOOD LOSS
Blood loss during the procedure was 150 cc.

COMPLICATIONS
There were no obvious complications.

000024                                        1

CLE00028

LINA/Cleiland 0557

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

REPORT OF OPERATION

| | | |
|---|---|---|
| PATIENT NAME: | CLEILAND, CATHY | MR#:  28-51-42 |
| ATTENDING: | HACKMAN,JOHN | ACT#: 10560803 |
| SURGEON: | | RM#:   6E 630 |
| | | DATE:  7/16/2003 |

Sterile dressings were applied and the patient was taken to the recovery room in satisfactory condition.

JOHN E. HACKMAN, M.D.

3AI0716
D:
T:  7/16/2003 22:27

000025

2

CLE00029

LINA/Cleiland 0558



JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

DISCHARGE SUMMARY

PATIENT NAME:   CLEILAND, CATHY                MR#:   28-51-42
ATTENDING:                                     ACT#: 10547947
ADMIT DATE:       5/21/2003                     RM#:
DISCHARGE DATE:   5/22/2003

Bytescribe #0522-063

REASON FOR ADMISSION:  This 45-year-old, diabetic white female comes
in with persistent left hip and leg pain with numbness.  This has
gotten progressively worse for a year.  Magnetic resonance imaging
scan shows disc bulging at L4-5 on the left with osteophytes.  This
protrudes into the foramen.  She now comes in for surgery.

HOSPITAL COURSE:  The patient was admitted to the hospital and taken
to surgery where she had a lumbar laminectomy at L4 5 on the left.
She had immediate improvement, did well and was discharged home the
following day.  The wound looked good, and she was given
instructions.  She will be followed up in the office.

DISCHARGE DIAGNOSIS:  Lumbar radiculitis L4-5 on the left.

OPERATIVE PROCEDURE THIS ADMISSION: Lumbar laminectomy L4-5 on the
left.

                                    JOHN E. HACKMAN, M.D.

8DW0522
D:   5/22/2003 08:17
T:   5/22/2003 10:56
143166

000002

1

CLE00030

LINA/Cleiland 0559

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

| | | | |
|---|---|---|---|
| PATIENT NAME: | CLEILAND, CATHY | MR#: | 28-51-42 |
| ATTENDING: | | ACT#: | 10547947 |
| ADMIT DATE: | 5/21/2003 | RM#: | 6E-647 |

Bytescribe #0521-072

CHIEF COMPLAINT:  Left hip and leg pain with numbness.

HISTORY OF PRESENT ILLNESS:  This is a 45-year-old diabetic white female.  She comes in with problems with left hip and leg pain with numbness in the left lateral thigh.  She attributes this to a motor vehicle accident which occurred on April 25, 2002.  She has persistent pain in the left hip which has gotten progressively worse.  She does have a history of a prior accident and was treated at the Mobile Infirmary in February of 2000.  They noticed some disc bulging and had a report that she had numbness in the left leg ever since a 1997 accident.  She says things became worse after her April 25, 2002, accident.  She has had conservative treatment and has not improved.  Magnetic resonance imaging scan shows some disc bulging at L4-5 on the left with osteophyte.  This protrudes into the foramen.  She now comes in for lumbar laminectomy.  The surgery risks and benefits have been discussed.

PAST MEDICAL HISTORY:  Positive for insulin-dependent diabetes mellitus.  She is noncompliant.  When she went for her preoperative visit she had a very high blood sugar, which was 497 and then repeated at 541.  This morning she has taken insulin, and her blood sugar is now down to 154.

PAST SURGICAL HISTORY:  Prior surgery includes two cesarean sections, tubal ligation, reversal of a tubal ligation, removal of the right tube and ovary, anterior cervical fusion and carpal tunnel surgery.

CURRENT MEDICATIONS:
1.  Humulin insulin.
2.  Effexor.
3.  Klonopin.

ALLERGIES:  None reported.

FAMILY HISTORY:  Positive for diabetes mellitus.

SOCIAL HISTORY:  She is a nonsmoker.

PHYSICAL EXAMINATION:
GENERAL APPEARANCE:  Examination shows a generally healthy-appearing white female.  She is alert and oriented.  Cranial nerves are intact.
NECK:  She has a good range of motion of the neck.
CHEST:  Clear.
HEART:  Regular.
ABDOMEN: Soft.

000003

1

CLE00031

LINA/Cleiland 0560

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama 36106

HISTORY AND PHYSICAL

PATIENT NAME:    CLEILAND, CATHY                MR#:   28-51-42
ATTENDING:                                      ACT#:  10547947
ADMIT DATE:      5/21/2003                      RM#:   6E-647

NEUROLOGICAL:  She has pain with straight leg raising on the left.
Knee reflexes and ankle reflexes are both unobtainable, probably
secondary to diabetes mellitus.  There is a little weakness with toe
extension on the left but no definite foot drop.

ADMITTING IMPRESSION:  Lumbar radiculitis, L4-5 left.

                                    JOHN E. BACKMAN, M.D.

7DW0521
D:  5/21/2003 09:23
T:  5/21/2003 11:13
143018

000004

2

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY                         MR#:   28-51-42
ATTENDING:      JOHN E. HACKMAN, M.D.                   ACT#:  10547947
SURGEON:        JOHN E. HACKMAN, M.D.                   RM#:   647-1
                                                        DATE:  5/21/20

---

PREOPERATIVE DIAGNOSIS:  Lumbar radiculitis L4-5 left.

POSTOPERATIVE DIAGNOSIS:  Lumbar radiculitis L4-5 left.

NAME OF PROCEDURE:  Lumbar laminectomy L4-5 left.

ASSISTANT:

ANESTHESIA:  General endotracheal anesthesia.

INDICATIONS FOR PROCEDURE: This is a 45-year-old white female comes
in with persistent back and left leg pain with numbness and weakness.
She has had conservative treatment without improvement.  The MRI scan
shows a protruding disk with associated osteophyte at L4-5 on the
left.

DESCRIPTION OF PROCEDURE:  The patient was taken to the operating
room where she underwent general endotracheal anesthesia.  She was
turned in the prone position on chest rolls.  The operative sites
were shaved, prepped, and draped in the sterile manner.  A midline
incision was made over L4-5.  This was carried down to the lumbar
fascia, which was opened to the left of the midline.  The
paravertebral muscles were stripped off the spinous processes and
lamina exposing the interlaminar space at L4-5 on the left.

A portion of the inferior lamina of L4 was removed.  The ligamentum
flavum was removed.  The nerve roots were identified.  Underneath we
found a soft protruding disk.  There was some associated osteophyte
going off the rim of the inferior part of L4 and extending out into
the foramen along with protruding disk.

We opened the ligament.  We used pituitary rongeurs and curets and
cleaned out fragmented disk material until all loose fragments were
removed.  We then removed the associated osteophytes with curets.  We
made sure we had a good decompression in the central canal and the
nerve root canal.  Bleeding was controlled with Gelfoam and thrombin.

The wound was closed in multiple layers of Vicryl suture.  Blood loss
during the procedure 350 cc.  There were no obvious complications.
Sterile dressings were applied.

000022

1

CLE00033

LINA/Cleiland 0562

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY                    MR#:   28-51-42
ATTENDING:      JOHN E. HACKMAN, M.D.              ACT#:  10547947
SURGEON:        JOHN E. HACKMAN, M.D.              RM#:   647-1
                                                   DATE:  5/21/20

The patient was taken to the recovery room in satisfactory condition.

                              JOHN E. HACKMAN, M.D.

6HI0521
D:  5/21/2003 09:25
T:  5/21/2003 15:26
143022

000023

2

CLE00034

LINA/Cleiland 0563

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:07 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 10/01/2002 Loc= RAD SPEC    Acct#= 13492239    Phys= HACKMAN,JOHN E
--------------------------------------------------------------------------------

Ord #= -                                    Sched D/T= 10/01/2002 0844
Ord Phys=                                   Collect D/T= 10/01/2002 1032
Resulted by= SYS,IS                         Result D/T= 10/01/2002 1228

MRI LUMBAR SPINE WITHOUT CONTRAST                        (1 of 1)
   RAD01:
      Clinical Data: BACK PAIN    F&S    BRENDA      COMM

REPORT:
      Procedure:  MRI LUMBAR SPINE   Date of Exam: 10/01/2002


      TECHNIQUE:

      T1 sagittal, multi-echo T2 sagittal, T1 axial, and fast spin echo T2

      axial imaging was performed.


      FINDINGS:

      Comparison is made to a previous study from May 24, 2002.  Overall, I

      see no significant interval change.  Again seen is some disc

      desiccation and mild disc bulging at L4-5.  There is some relative

      mild left neural foraminal stenosis due to disc bulge but this is

      stable in appearance from the prior study.  No focal disc protrusions

      are seen. No other disc bulges are identified.  There is no spinal

      canal stenosis.  The vertebral bodies maintain normal signal

      intensity on all sequences.  The conus is normal.


CLE00035

LINA/Cleiland 0564

●                                                      ●                    Page 2

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:07 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 10/01/2002 Loc= RAD SPEC    Acct#= 10492239    Phys= HACKMAN,JOHN E
--------------------------------------------------------------------------
MRI LUMBAR SPINE WITHOUT CONTRAST10/01/2002 2:28 PM   (Continued)
    IMPRESSION:

DISC DESICCATION AND MILD DISC BULGING AT L4-5.   NO FOCAL DISC

PROTRUSIONS.


Faxed to Dr. Hackman.

Dictated by: KEN RICHARDSON

Verified by: KEN RICHARDSON


Transcriptionist: EE

CLE00036

LINA/Cleiland 0565

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

DISCHARGE SUMMARY

| | |
|---|---|
| PATIENT NAME:  CLEILAND, CATHY | MR#:  28-51-42 |
| ATTENDING:  HACKMAN,JOHN | ACT#: 10466104 |
| ADMIT DATE:  6/24/2002 | RM#: |
| DISCHARGE DATE:  6/25/2002 | |

**REASON FOR ADMISSION:** This 44-year-old white female has had prior cervical fusions at C5-6 and C6-7. She was doing well until a recent motor vehicle accident. Ever since then, she has had pain in the neck going into the shoulder. She has had conservative treatment without improvement. Myelogram/CAT scan was abnormal at C4-5, and she now comes in for surgery.

**HOSPITAL COURSE:** The patient was admitted to the hospital and taken to surgery where she had an anterior cervical diskectomy and interbody fusion at C4-5 with a bone graft from the right iliac crest. She had immediate improvement, did well and was discharged home the following day. She will be followed up in the office. The wounds looked good, and she was given instructions.

**DISCHARGE DIAGNOSIS:** Cervical radiculitis, C4-5.

**OPERATIVE PROCEDURE THIS ADMISSION:** Anterior cervical diskectomy and interbody fusion at C4-5 with a bone graft from the right iliac crest.

JOHN B. HACKMAN, M.D.

3DW0625
D:  6/25/2002
T:  6/25/2002
106116

000602

1

CLE00037

LINA/Cleiland 0566

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama 36106

HISTORY AND PHYSICAL

PATIENT NAME: CLEILAND, CATHY        MR#: 28-51-42
ATTENDING: HACKMAN,JOHN              ACT#: 10466104
ADMIT DATE: 6/24/2002                RM#: 630-1

CHIEF COMPLAINT: Neck and shoulder pain.

HISTORY: This is a 44-year-old white female. She had a prior cervical
fusion at C5-C6 in Mobile. A year ago she had an anterior cervical
fusion at C6-C7 here. She says she was doing well until this spring
when she started having trouble with her neck. She had pain and
numbness going to the right shoulder and right hand. She had an
accident on 05/25/2002, but she says the pain in the neck started
prior to the accident. She feels that things got worse after her
accident. She has been evaluated with myelogram CAT scan that was
abnormal at C4 C5. She now comes in for surgery. The risks and
benefits have been discussed.

The patient also has low back problems, which she attributes to her
motor vehicle accident. She has some protrusion at L4-L5 on the left.
She has also got numbness in her hand. She has had a prior carpal
tunnel performed in Mobile and her EMG studies show recurrent carpal
tunnel problems in the right hand.

PAST MEDICAL HISTORY: Positive for insulin-dependent diabetes.

PRIOR SURGERIES: Includes two cesarean sections, tubal ligation,
reversal of tubal ligation, removal of right tube and ovary, C5-C6
and C6-C7 cervical fusions, carpal tunnel surgery.

CURRENT MEDICATIONS: Humulin insulin, Effexor and Klonopin.

ALLERGIES: None reported.

FAMILY HISTORY: Positive for diabetes.

SOCIAL HISTORY: She is a nonsmoker.

PHYSICAL EXAMINATION: Examination shows a healthy-appearing, well-
developed, white female. She is alert and oriented. Cranial nerves
are intact. She has pain with neck extension and neck rotation. There
is no definite neurologic abnormality.

000603

CLE00038

LINA/Cleiland 0567

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

| | | |
|---|---|---|
| PATIENT NAME: | CLEILAND, CATHY | MR#:  28-51-42 |
| ATTENDING: | HACKMAN, JOHN | ACT#: 10466104 |
| ADMIT DATE: | 6/24/2002 | RM#:  630-1 |

She does have positive Tinel's sign in the right hand. Chest is clear. Heart regular. Abdomen soft.

ADMITTING IMPRESSION: Cervical radiculitis C4-C5.

JOHN B. HACKMAN, M.D.

4EJ0624
D:  6/24/2002
T:  6/24/2002
106030

000004

CLE00039

LINA/Cleiland 0568



# JACKSON HOSPITAL & CLINIC, INC.
### 1725 PINE STREET
### MONTGOMERY, ALABAMA 36106

Name: CLEILAND, CATHY K.
Physician: HACKMAN, JOHN E
MR#: 285142               X-RAY#: 463643
Order ID: 1056208         Result ID: 961967

DOB:                      Age: 44 YEARS
Patient Location: 6301
    Account#: 10466104
    Addendum Number: 0

---

Clinical Data: ACF
Procedure:  C-SPINE ONE VIEW          Date of Exam: 06/24/2002
Film for localization shows a marker anteriorly at the C4-5 level.   There has been previous anterior fusion at C5-6 and C6-7.

**IMPRESSION:**
C4-5 LOCALIZATION.

Dictated by: STANLEY B. WINSLOW, M.D.
Verified by: STANLEY B. WINSLOW, M.D.

Transcriptionist: JAK



JACKSON HOSPITAL
Jackson Hospital & Clinic, Inc.
1725 Pine Street
Montgomery, AL 36106-1117
A Non Profit Organization

3 (2/99)

000607

**X-RAY REPORT**

X-2

CLE00040

LINA/Cleiland 0569

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama 36106

REPORT OF OPERATION

PATIENT NAME: CLEILAND, CATHY                           MR#:   28-51-42
ATTENDING:    JOHN E. HACKMAN, M.D.                     ACT#:  10466104
SURGEON:      JOHN E. HACKMAN, M.D.                     RM#:
                                                        DATE:  6/24/20

---

**PREOPERATIVE DIAGNOSIS:** Cervical radiculitis C4-5.

**POSTOPERATIVE DIAGNOSIS:** Cervical radiculitis C4-5.

**OPERATION:** Anterior cervical diskectomy with inter body fusion C4-5
with bone grafts on the right iliac crest.

**INDICATIONS:** This 44-year-old white female comes in with intractable
neck and shoulder pain. She has had conservative treatment without
improvement. Myelogram CAT scan is abnormal at C4-5. She has had
prior cervical fusions at C5-6 and C6-7 in the past.

**PROCEDURE:** The patient was taken to the operating room where she
underwent general endotracheal anesthesia. She was positioned in the
supine position with sandbags under the neck and under the right hip.
The operative sites were shaved, prepped and draped in the usual
sterile fashion. A transverse incision was made in the anterior
neck. This was carried down through the superficial layers and the
platysma. The cervical fascia was opened along the anterior border
of the sternocleidomastoid muscle. Blunt dissection took us down to
the cervical spine. The C4-5 was identified and marked and we took
an x-ray to confirm our level. Meanwhile we went to the right iliac
crest. A transverse incision was made behind and below the anterior
superior iliac spine. This was carried down to the fascia lata which
was opened along its fibers. Muscle was stripped off the iliac crest
and a 12 mm bone dowel was removed. This wound was closed in
multiple layers with Vicryl suture and we returned to the neck. We
had accurately identified C4-5. We made an incision in the disk. We
used pituitary rongeurs and curets and cleaned out the entire disk
space. The posterolateral corners were decompressed with the 2 mm
punch. Bleeding was controlled with Gelfoam and thrombin. We
drilled down through the inner space with the 12 mm drill. We
controlled bleeding with Gelfoam and thrombin. We distracted the
interspaces and we inserted the bone graft. We made sure there was
no active bleeding. The wound was irrigated. The Hemovac drain was
brought out through a separate stab wound and the wound was closed in
multiple layers with Vicryl suture. The blood loss during the
procedure was 100 cc. There were no obvious complications. Sterile

CLE00041

LINA/Cleiland 0570

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY
ATTENDING:      JOHN E. HACKMAN, M.D.
SURGEON:        JOHN E. HACKMAN, M.D.

MR#:    28-51-42
ACT#:   10466104
RM#:
DATE:   6/24/20(

dressings were applied and the patient was taken to the recovery room
in satisfactory condition.

JOHN E. HACKMAN, M.D.

2LV0624
D:  6/24/2002
T:  6/24/2002
106031

000021

2

CLE00042

LINA/Cleiland 0571



## JACKSON HOSPITAL & CLINIC, INC.
### 1725 Pine Street, Montgomery, AL 36106
### (334) 293-8794    (334) 293-8395 (Fax)

## PATHOLOGY REPORT

Patient Name: CLEILAND, CATHY K.
Medical Record #: 285142
DOB/Age:        (Age: 44)
Gender: F    Race: Caucasian
Physician(s): John E Hackman

Account #: 10466104\285142\1\9\1
Location: 6E
Rm#: 630-1
Copy To:

Specimen #: J02-4438
Collected: 6/24/02
Received: 6/24/02
Reported: 6/25/02

---

Specimen(s) Received: Disc material, cervical spine, C4-5

## FINAL DIAGNOSIS:
Disc material, C4-5:
     Degenerating fibrocartilage.

Electronic Signature
Timothy C. Barrowman, M.D

---

### Gross Description
Received is a 2.0 x 1.5 x 1.0 cm aggregate of irregular white and red tan tissue fragments.  Representative fragments are submitted.

                                          TCB

Diagnostic Services By:
Alabama Pathology Associates, P.C.
Montgomery, AL 36106

000022

CLEILAND, CATHY K.                    J02-4438                    Page 1 of 1

CLE00043

LINA/Cleiland 0572

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:13 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 04/29/2002 Loc= RAD SPEC    Acct#= 10452346    Phys= HACKMAN,JOHN E
------------------------------------------------------------------------

Ord #= -                              Sched D/T= 04/29/2002 0859
Ord Phys=                             Collect D/T= 04/29/2002 1405
Resulted by= SYS,IS                   Result D/T= 04/29/2002 1623

CT LUMBAR SPINE                                    (7 of 10)
  RAD01:
      Clinical Data: NECKPAIN

  REPORT:
      Procedure:  CT LUMBAR SPINE  Date of Exam: 04/29/2002


      Axial images obtained from the L2-3 disc space into S1. Intrathecal

      contrast is present.


      There is a mild diffuse protrusion of the disc at L2-3, 3-4 and

      moderate protrusion at L4-5 which appears to be eccentric to the left

      with posterior displacement of the left L5 nerve root. There appears

      to be previous laminectomy at L5 on the left. There is no evidence of

      disc protrusion at L5-S1.


      IMPRESSION:

      MILD DISC PROTRUSION AT L2-3 AND 3-4 AND MODERATE PROTRUSION AT L4-5

      WITH LEFT L5 NERVE ROOT DISPLACEMENT. POST SURGICAL CHANGE L5-S1.


      Dictated by: PAUL A. TURNER

CLE00044

LINA/Cleiland 0573

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:13 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 04/29/2002 Loc= RAD SPEC    Acct#= 10452346    Phys= HACKMAN,JOHN E
----------------------------------------------------------------------------
CT LUMBAR SPINE                    04/29/2002 4:23 PM    (Continued)

    Verified by: PAUL A. TURNER


    Transcriptionist: EDA




Ord #= -                                Sched D/T= 04/29/2002 0859
Ord Phys=                                Collect D/T= 04/29/2002 1404
Resulted by= SYS,IS                      Result D/T= 04/29/2002 1623

CT CERVICAL SPINE                                    (8 of 10)
  RAD01:
      Clinical Data: NECKPAIN

  REPORT:
      Procedure:  CT CERVICAL  Date of Exam: 04/29/2002


    Axial images obtained from C3 into T1.  Intrathecal contrast is

    present.  There is bony hypertrophic change of the intervertebral

    joints at C5-6 and C6-7 with no evidence of significant neural

    foraminal stenosis.  There is evidence of fusion at C5-7.  There is

    posterior bony spur arising from the inferior aspect of C6 slightly

    eccentric to the right.  This does impinge upon the thecal sac.

    There is mild posterior disc protrusion at C4-5.


CLE00045

LINA/Cleiland 0574

Jackson Hospital & Clinic, Inc.                    Page 8
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:13 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 04/29/2002 Loc= RAD SPEC    Acct#= 10452346    Phys= HACKMAN,JOHN E
-------------------------------------------------------------------------
MYELOGRAM ENTIRE SPINE                04/29/2002 12:53 PM   (Continued)
      FINDINGS:

  LUMBAR:

  There is minimal ventral extradural impression at L4-5 and L5-S1.

  The nerve root sleeves are symmetrically filled with no truncation.

  THORACIC:

  Contrast flowed easily through the thoracic spine without

  obstruction. The conus is normal.

  CERVICAL:

  There has been anterior cervical fusion at C5-6 and C6-7.    There is

  a small ventral extradural defect at C4-5.   No nerve root sleeve

  truncation.


  IMPRESSION:

  PREVIOUS ANTERIOR CERVICAL FUSION AT C5-6 AND C6-7 WITH A SMALL

  VENTRAL DEFECT AT C4-5.

  MINIMAL VENTRAL IMPRESSION AT L4-5 AND L5-S1.


  Dictated by: KEN RICHARDSON

  Verified by: KEN RICHARDSON


CLE0004I

LINA/Cleiland 0575



Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:13 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 04/29/2002 Loc= RAD SPEC    Acct#= 10452346    Phys= HACKMAN,JOHN E
-----------------------------------------------------------------------------
MYELOGRAM ENTIRE SPINE          04/29/2002 12:53 PM   (Continued)


        Transcriptionist: JAJ

**CLE0004**

**LINA/Cleiland 0576**

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:13 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 04/10/2002 Loc= RAD SPEC    Acct#= 10447912    Phys= HACKMAN,JOHN E
---------------------------------------------------------------------------

Ord #= -                                    Sched D/T= 04/10/2002 150
Ord Phys=                                    Collect D/T= 04/10/2002 1510
Resulted by= SYS,IS                         Result D/T= 04/10/2002 1841

CERVICAL SPINE SINGLE VIEW                           #1 of 2?
  RAD01:
     Clinical Data: neck arm & shoulder pain    MRI & XRAY LATERAL C SPINE

  REPORT:
     Brenda      wc #A751198 DOI 4-24-1997, ALICE EARLEY @ RELIANCE

     205-823-4042, 3440 PESTON RIDGE RD, SUITE 200 ALFARETTA, GA 30005

     Procedure:  C-SPINE ONE VIEW   Date of Exam: 04/10/2002


     There has been anterior cervical fusion at C5-6 and C6-7 with solid

     fusion. There is good anatomic alignment. No subluxation. The

     remaining disc spaces are well maintained.


     IMPRESSION: ·

     PREVIOUS ANTERIOR CERVICAL FUSION AT C5-6 AND C6-7 WITH NO FRACTURE

     OR SUBLUXATION.


     Dictated by: KEN RICHARDSON

     Verified by: KEN RICHARDSON


     Transcriptionist: BDA

CLE00048

LINA/Cleiland 0577

●                                                              ●                    Page 2

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:13 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 04/10/2002 Loc= RAD SPEC    Acct#= 10447912    Phys= HACKMAN,JOHN E
---------------------------------------------------------------------------
CERVICAL SPINE SINGLE VIEW        04/10/2002 6:41 PM    (Continued)


Ord #= -                                      Sched D/T= 04/10/2002 1508
Ord Phys=                                     Collect D/T= 04/10/2002 1604
Resulted by- SYS,IS                           Result D/T= 04/10/2002 1841

MRI CERVICAL SPINE WITHOUT CONTRAST                        (2 of 2)
  RAD01:
     Clinical Data: neck arm & shoulder pain  MRI & XRAY LATERAL C SPINE

  REPORT:
     Brenda    wc #A751198 DOI 4-24-1997, ALICE EARLEY @ RELIANCE

     2C5-823-4042, 3440 PESTON RIDGE RD, SUITE 200 ALFARETTA, GA 30005

     Procedure: MRI CERVICAL W/O CONTRAST  Date of Exam: 04/10/2002


     TECHNIQUE:

     T1 sagittal, multi-echo T2 sagittal, and axial gradient echo imaging

     was performed.


     FINDINGS:

     There has been previous anterior cervical fusion at C5-6 and at C6-7.

     There is some underlying spondylosis in the mid and lower cervical

     spine. There is mild right sided uncovertebral joint hypertrophy at

     C4-5 which creates mild right neural foraninal stenosis as compared

**CLE00049**

**LINA/Cleiland 0578**

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:13 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y     Sex= F     MRUN 28-51-42
Adm Dt= 04/10/2002 Loc= RAD SPEC     Acct#= 10447912     Phys= HACKMAN,JOHN E
------------------------------------------------------------------------
MRI CERVICAL SPINE WITHOUT CONTRAST04/10/20026:41 PM (Continued)

to the left side. There is minimal disc bulging at this level but
this does not create any radiographically significant spinal canal
stenosis.

At C6-7 and to a lesser degree at C5-6, there is right sided
uncovertebral joint hypertrophy. This creates a moderate degree of
neural foraminal stenosis at C6-7 and mild stenosis at C5-6. The
underlying posterior end plate spurring does create some relative
mild spinal canal stenosis at these two levels but there continues to
be preservation of the subarachnoid space surrounding the cord and
there is no cord flattening. The remaining disc space levels are
unremarkable. No focal disc protrusions are seen.

IMPRESSION:

PREVIOUS ANTERIOR CERVICAL FUSION AT C5-6 AND C6-7. THERE IS RIGHT
SIDED UNCOVERTEBRAL JOINT HYPERTROPHY AT C6-7 AND TO A LESSER DEGREE
AT C5-6 AND C4-5 CREATING VARIOUS DEGREES OF NEURAL FORAMINAL
STENOSIS.

NO FOCAL DISC PROTRUSIONS ARE IDENTIFIED.

 

Page 4

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:13 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 04/10/2002 Loc= RAD SPEC    Acct#= 10447912    Phys= HACKMAN,JOHN E
-----------------------------------------------------------------------
MRI CERVICAL SPINE WITHOUT CONTRAST04/10/20026:41 PM (Continued)


    Dictated by: KEN RICHARDSON

    Verified by: KEN RICHARDSON


    Transcriptionist: EDA

CLE00051

LINA/Cleiland 0580



Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:14 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y     Sex= F     MRUN 28-51-42
Adm Dt= 06/05/2001 Loc= RAD SPEC   Acct#= 10372027     Phys= HACKMAN,JOHN E
--------------------------------------------------------------------------

Ord #= -                                    Sched D/T= 06/05/2001 0947
Ord Phys=                                 Collect D/T= 06/05/2001 1043
Resulted by= SYS,IS                        Result D/T= 06/05/2001 1247

MRI LUMBAR SPINE WITHOUT CONTRAST                        {1 of 2}
   RAD01:
      Clinical Data: BACK PAIN and right leg pain  FAX AND SEND      LINDA

REPORT:
   SIGNA      .

   Procedure:  MRI LUMBAR SPINE  Date of Exam: 06/05/2001

   HISTORY:    The patient is a 43 year old female who complains of pain

   and numbness in her left lower extremity.

   TECHNIQUE:    Sagittal T1 weighted, balanced, and T2 weighted

   images of the lumbar sacral spine have been obained.  In addition,

   angled axial T1 and T2 weighted images from the L3 vertebral body

   through the proximal sacrum have been obtained.

   FINDINGS:    At the L3-4 disc space level, the neural canal and

   intervertebral foramina are widely patent.  No significant posterior

   extension of disc material is identified.


   At the L4-5 disc space level, a posterior and left central bulge of

   disc material is present. This minimally encroaches into the anterior

   epidural space. The intervertebral foramina and neural canal are

   widely patent. There is desiccation noted of the disc material noted

CLE00052

LINA/Cleiland 0581

 

Page 2

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:14 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 06/05/2001 Loc= RAD SPEC    Acct#= 10372027    Phys= HACKMAN,JOHN E
----------------------------------------------------------------------
MRI LUMBAR SPINE WITHOUT CONTRAST 06/05/2001 12:47 PM   (Continued)
       at this level.


    At the L5-S1 disc space level, no significant posterior extension of

    disc material is present.  The neural canal and intervertebral

    foramina are widely patent.

    IMPRESSION:

    POSTERIOR AND CENTRAL BULGE OF DISC MATERIAL AT THE L4-5 DISC SPACE

    LEVEL.  THIS DOES NOT APPEAR TO SIGNIFICANTLY ENCROACH INTO THE

    NEURAL CANAL OR INTERVERTEBRAL FORAMINA.


    MINIMAL TO MILD DEGENERATIVE CHANGES OF THE FACET JOINTS ARE PRESENT

    AT THE IMAGED LEVELS.


    Faxed to Dr. Hackman's office.

    Dictated by: ROBERT BALLARD

    Verified by: ROBERT BALLARD

    Transcriptionist: JAJ

**CLE00053**

**LINA/Cleiland 0582**

Page 3

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:14 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K          Age= 49Y     Sex= F     MRUN 28-51-42
Adm Dt= 06/05/2001 Loc= RAD SPEC   Acct#= 13372027   Phys= HACKMAN,JOHN E
------------------------------------------------------------------------

Ord #= -                                    Sched D/T= 06/05/2001 O949
Ord Phys=                                    Collect D/T= 06/05/2001 1005
Resulted by= SYS,IS                          Result D/T= 06/05/2001 1247

CERVICAL SPINE AP AND LATERAL                          (2 of 2)
  RAD01:
     Clinical Data: ORDERED  LATERAL C-SPINE VIEWS   ****   FAX AND SEND

  REPORT:
     *** PT FOR MRI ALSO @ 10:50

     Procedure:  CERVICAL AP & LAT  Date of Exam: 06/05/2001


     Anterior cervical spine fusion changes with associated bone grafts

     are noted at the C5-7 vertebral levels.  Posterior vertebral spurring

     is noted at the C5-6 disc space level.


     The visualized posterior elements are intact.


     IMPRESSION:

     ANTERIOR CERVICAL SPINE FUSION CHANGES AT C5-7.


     Dictated by: ROBERT BALLARD

     Verified by: ROBERT BALLARD


     Transcriptionist: EE

CLE00054

LINA/Cleiland 0583

Page 4

Jackson Hospital & Clinic, Inc.
RESULTS BY SELECTION
RESULTS REPORTING
Thu Aug 3, 2006 11:14 AM
Printed By: SML,HIM

Name= CLEILAND,CATHY K            Age= 49Y    Sex= F    MRUN 28-51-42
Adm Dt= 06/05/2001 Loc= RAD SPEC    Acct#= 10372027    Phys= HACKMAN,JOHN E
-----------------------------------------------------------------------
CERVICAL SPINE AP AND LATERAL    06/05/2001 12:47 PM    (Continued)

CLE0005

LINA/Cleiland 0584

JACKSON HOSPITAL & CLINIC, INC.
1235 Forest Avenue
Montgomery, Alabama  36106

DISCHARGE SUMMARY

| | | | |
|---|---|---|---|
| PATIENT NAME: | CLEILAND, CATHY | MR#: | 28-51-42 |
| ATTENDING: | JOHN E. HACKMAN, M.D. | ACT#: | 10361681 |
| ADMIT DATE: | 5/02/2001 | RM#: | |
| DISCHARGE DATE: | 5/03/2001 | | |

REASON FOR ADMISSION:  This is a 43-year-old white female who has had a prior anterior cervical fusion at C5-6, but never really recovered. Recent MRI scan shows C6-7 disc herniation.  She complains about right-sided neck, arm and shoulder pain with numbness in the right mid fingers and she has got triceps weakness.  She has failed conservative treatment and she has got an abnormal MRI and now comes in for surgery.

HOSPITAL COURSE:  The patient was admitted to the hospital and taken to surgery where she had an anterior cervical diskectomy and interbody fusion at C6-7 with a bone graft from the right iliac crest.  She had immediate improvement, did well and was discharged home the following day.  She will be followed up in the office.

DISCHARGE DIAGNOSIS
1.  C6-7 disc herniation.

OPERATIVE PROCEDURE THIS ADMISSION
1.  Anterior cervical diskectomy and interbody fusion C6-7 with a bone graft from the right iliac crest.

                                          JOHN E. HACKMAN, M.D.

5TA0503
D:  5/03/2001
T:  5/03/2001
289692

VIRGINIA BENTON - RELIANCE INSURANCE COMPANY

1

CLE00056

LINA/Cleiland 0585



JACKSON HOSPITAL & CLINIC, INC.
1235 Forest Avenue
Montgomery, Alabama 36106

HISTORY AND PHYSICAL

PATIENT NAME:    CLEILAND, CATHY K            MR#:  28-51-4:
ATTENDING:       HACKMAN, JOHN B              ACT#: 1036168J
ADMIT DATE:          5/02/2001               RM#:

---

CHIEF COMPLAINT:  Neck, arm and shoulder pain.

HISTORY:  This 43-year-old, white female had an injury in an accident.  She was treated by Dr. Faircloth in Mobile.  MRI scan at that time showed large C5-6 disc herniation and a smaller C6-7 protrusion.  She had an anterior cervical fusion at C5-6, but has never really recovered.  C5-6 has healed up nicely.  Because of her persistent complaints, she was referred up to my office by Virginia Benton at Reliance Insurance Company.  I looked at her current studies, which show a significant C6-7 disc herniation.  The patient has complained about neck pain, headaches, right scapular pain, pain down the right arm or numbness in the right mid fingers.  Because of her persistent complaints and because of the positive MRI scan, it is felt that she needs surgery at C6-7.  The risks and benefits were discussed.

PAST MEDICAL HISTORY:  Positive for insulin dependent diabetes.

PRIOR SURGERY:  Two Cesarean sections, tubal ligation, reversal of the tubal ligation, removal of the right tube and ovary, C5-6 cervical fusion, carpal tunnel surgery.

CURRENT MEDICATIONS:  Humulin insulin, Effexor, Klonopin.

ALLERGIES:  NONE REPORTED.

FAMILY HISTORY:  Positive for diabetes.

SOCIAL HISTORY:  She is a nonsmoker.

PHYSICAL EXAMINATION
Physical examination shows a healthy appearing, well-developed, white female.  She is alert and oriented.  Cranial nerves are intact.

She has pain with neck extension and neck rotation.  She has got weakness in the right triceps.

Chest is clear.

1

CLE00057

LINA/Cleiland 0586

DEA# ~~R2511916~~                          AL# ~~00010267~~

**REUBEN C. RICHARDSON, II, M.D.**
SLEEP DISORDERS MEDICINE AND NEUROLOGY
~~Eastern Boulevard Drive~~ 300 Taylor Rd
MONTGOMERY, AL 36111
334-284-7500   396-8984

NAME _Ms. Bethany K Cleiland_

ADDRESS _____  DATE _10-14-05_

**Rx** (Please Print)

Ms Cleiland has
central sleep Apnea
possibly related to
her pain meds needed
for her chronic pain

☐ LABEL

REFILL _____ TIMES     PRN     NR

_____ M.D.          _____ M.D.
PRODUCT SELECTION PERMITTED                    DISPENSE AS WRITTEN

13-JUN-05                    TRI050613_100170589-4_14_48130_0001

LINA/Cleiland 0587

JACKSON HOSPITAL & CLINIC, INC.
1235 Forest Avenue
Montgomery, Alabama  36106

HISTORY AND PHYSICAL

PATIENT NAME:  CLELAND, CATHY K        MR#:  28-51-42
ATTENDING:     HACKMAN,JOHN E          ACT#: 10361681
ADMIT DATE:    5/02/2001               RM#:

Heart regular.

Abdomen soft.

ADMITTING IMPRESSION
1.  C6-7 disc herniation.

                                JOHN E. HACKMAN  M.D.

5TA0503
D:  5/03/2001
T:  5/03/2001
289690

                                                              2

CLE00058

LINA/Cleiland 0588



JACKSON HOSPITAL & CLINIC, INC.
1235 Forest Avenue
Montgomery, Alabama 36106

REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY K              MR#:  28-51-42
ATTENDING:      HACKMAN,JOHN E                 ACT#: 10361681
SURGEON:        JOHN E. HACKMAN, M.D.          RM#:
                                               DATE:  5/03/200

PREOPERATIVE DIAGNOSIS:  C6-7 disk herniation.

POSTOPERATIVE DIAGNOSIS:  C6-7 disk herniation.

PROCEDURE:  Anterior cervical diskectomy and interbody fusion, C6-7, with a bone graft from the right iliac crest.

INDICATIONS:  This is a 43-year-old white female.  She comes in with intractable neck, arm and shoulder pain on the right side with numbness into her hand.  She has had a prior cervical fusion at C5-6 but has not completely recovered.  Current magnetic resonance imaging scan shows a C6-7 disk herniation.

DESCRIPTION OF PROCEDURE:  The patient was taken to the operating room where she underwent a general endotracheal anesthetic.  She was positioned in the supine position with sand bags under the neck and under the right hip.  The operative sites were shaved, prepped and draped in a sterile manner.  A transverse incision was made in the neck through an old scar.  This was carried down through the superficial layers and the platysma.  The cervical fascia was opened along the anterior border of the sternocleidomastoid muscle.  Blunt dissection took us down to the cervical spine.  C6-7 was identified and marked and we took an x-ray to confirm our level.  Meanwhile we went to the right iliac crest.  A transverse incision was made behind and below the anterior superior iliac spine.  This was carried down to the fascia lata which was opened along its fibers.  Muscle was stripped off the iliac crest and a 12-mm bone dowel was removed.  This wound was closed in multiple layers of Vicryl suture, and we returned to the neck.  We had accurately identified C6-7.  We made an incision in the disk.  We removed the entire disk and the cartilage end-plates.  We found the interior of the disk to be completely disrupted.  We decompressed the posterolateral corners.  We drilled down through the interspace with a 12-mm drill.  We controlled bleeding with Gelfoam and Thrombin.  We distracted the interspace and inserted a bone graft.  We made sure there was no active bleeding.  The wound was irrigated.  A Hemovac drain was brought out through a separate stab wound, and the wound was closed in multiple layers of Vicryl suture.  Blood loss during the procedure was 100 cc.  There

1

CLE00059

LINA/Cleiland 0589



JACKSON HOSPITAL & CLINIC, INC.
1235 Forest Avenue
Montgomery, Alabama 36106

REPORT OF OPERATION

PATIENT NAME:  CLEILAND, CATHY K          MR#:   28-51-42
ATTENDING:     HACKMAN,JOHN E              ACT#:  10361681
SURGEON:       JOHN E. HACKMAN, M.D.       RM#:
                                           DATE:  5/03/2001

---

were no obvious complications.  Sterile dressings were applied.  The
patient was taken to the recovery room in satisfactory condition.

JOHN E. HACKMAN, M.D.

3LR0504
D:  5/03/2001
T:  5/04/2001
289691

2

CLE00060

LINA/Cleiland 0590

Name _Cathy Cleiland_   ID _14795_   Date _7/19/06_   East   South

Pain Issues _LBP // CPPP_

Comorbidities /DM HBP CAD CVA Obesity CHF OSA COPD PVD GERD RA OA Osteoporosis
Thyroid Depression SLE Asthma _____

Soc HX no Δ _____ Family HX no Δ _____ Injuries no _____ Health Stable _____

ROS /New Issues _____

Medical Care PCP Specialist Dentist ED Studies_____ Procedures_____

Medications _Methadone   Lortab   Neurgan_

Medications effective yes no +/-   new meds_____   adverse rxn _____

Pain Location:                     Current Pain:



MSE alert  depressed  agitated  sedated  tearful _____
Ambulation  Self  cane  walker  wheelchair  scooter _____
Posture  comfortable  pacing  fidgeting  slouching  antalgic  indian chief _____
Eyes  PERRL  EOMI  conjunctiva wnl  nystagmus _____
ENT  rhinorrhea  oropharynx  TM  HOH _____
Neck  supple  thyroidmegaly  lymphadenopathy  bruits _____
Chest Wall  intact  breasts symmetric _____
Lungs  no respiratory embarrassment  clear  wheezing  stridor  rhonchi  labored _____
Heart  no hemodynamic instability  RRR  S1S2  murmur  edema in legs _____
Abdomen  soft  non-tender  non-surgical  BS wnl  organomegaly  flank tenderness _____
Skin  generalized rash  irritation  varicosities  tattoes  scars _____
MuSk  vertebral tenderness  c t l  SI tenderness  r l  hot joints_____  amputation _____
Muscle tenderness_____  joint tenderness_____  ROM _____
Neuro  CN 2-12 wnl  no radiating weakness  gait steady  reflexes_____  Spurling _____
Straight leg  Trunk lateral flexion  Trunk rotation  Romberg  Froment  Tinel  Phalen
Radial tap  position  graphesthesia  dysdiadokinesis  break gastroc _____
Other_____

Patient Requests  none  new med_____  new dose_____  other_____

Diversion  pill count  contact pharmacy  insurance check  other provider  UDS_____

Interactions  review medication agreement  review goals  review studies  education
handicap placard  disability forms  letter_____

Assessment  pain issues stable  new issues_____
Plan  refill current meds  drop_____  start_____  MRI_____  Procedure_____  Referral_____

Visit Length_____   Follow-up_____   Comments:_____

1 moFU
8-16-06
10:15am

_Nanchelle_

CLE00061

LINA/Cleiland 0591



**The Center for Pain**
of **M O N T G O M E R Y, P.C.**

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

☐ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 38117
Telephone: 334-387-7246

Patient Name: _CRNby Cleiland_          Date: _4-19-06_

1. Are you: ☐ Better?   ☒ Worse?   ☐ Same?

2. Since your last visit, have you been to the Emergency Room?   ☐ YES   ☒ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ☐ YES   ☒ NO
   (If Yes, please explain) _____

4. Since your last visit, have you had any X-rays?   ☐ YES   ☒ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☒ YES   ☐ NO
   (Please list all medications) _Dr. Nortick changed me from Robaxin to Flexeril_

6. Do you have any allergies? ☒ YES   ☐ NO
   (If Yes, Please list all your allergies) _Cipro - Levequinn_

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0  1  2  3  4  5  6  7  8  9  10
No                Moderate              Worst
Pain                 Pain                 Pain

_I am in severe pain most of the time. Now both of my hands are basically numb most of the time - mu memani it. and I continue to talk_

_very bad_

CLE00062



**The Center for Pain**
of **M O N T G O M E R Y**, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _CRVby Cleiland_     Date: _4-19-06_

1. Are you: ☐ Better? ☒ Worse? ☐ Same?

2. Since your last visit, have you been to the Emergency Room? ☐ YES ☒ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery? ☐ YES ☒ NO
   (If Yes, please explain) _____

4. Since your last visit, have you had any X-rays? ☐ YES ☒ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☒ YES ☐ NO
   (Please list all medications) _Dr. Nartick changed me from Robaxin to Flexeril_

6. Do you have any allergies? ☒ YES ☐ NO
   (If Yes, Please list all your allergies) _Cipro - Levequinn_

7. What do you want to discuss today? (medicine,)(pain,)(refills,)etc.)
   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0  1  2  3  4  5  6  7  8  9  10
No          Moderate          Worst
Pain          Pain          Pain



_I am in severe pain most of the time. Now both of my hands are basically numb most of the time - my memory is ___ and I continue to ___

CLE00063



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

**DAVID HERRICK, M.D.** ■ **BRAD KATZ, M.D.**

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_          Date: _10-13-06_

1. Are you: ☐ Better?   ☑ Worse?   ☐ Same?

2. Since your last visit, have you been to the Emergency Room?   ☑ YES   ☐ NO
   (If Yes, please explain) _Cellulitis (Resistant staph) on back_

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ☑ YES   ☐ NO
   (If Yes, please explain) _Dr for staph - packing + repacking where cut was made to drain_

4. Since your last visit, have you had any X-rays?   ☑ YES   ☐ NO
   (If Yes, what kind and where were they done) _under arm - breast area (caused from staph infection)_

5. Since your last visit, have you had any medication changes? ☐ YES   ☑ NO
   (Please list all medications) _Same as last visit_

6. Do you have any allergies? ☑ YES   ☐ NO
   (If Yes, Please list all your allergies) _Cipro_

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _3 falls since last visit - one causing a herniated disc_
   _One of the falls was last night. I have scrapes from it but it hasn't had time to bruise -_

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

0  1  2  3  4  5  6  7  8  9  10
No          Moderate        Worst
Pain         Pain            Pain

Mark all the places you feel pain.

RIGHT   LEFT        LEFT   RIGHT

_feels like sandpaper_

CLE00064

LINA/Cleiland 0594



**The Center for Pain**
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_     Date: _5-3-06_

1. Are you: ☐ Better?  ☑ Worse?  ☐ Same?

2. Since your last visit, have you been to the Emergency Room? ☐ YES  ☑ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery? ☑ YES  ☐ NO
   (If Yes, please explain) _endocrinologist & gynocologist_

4. Since your last visit, have you had any X-rays?  ☑ YES  ☐ NO
   (If Yes, what kind and where were they done) _CATSCAN_

5. Since your last visit, have you had any medication changes? ☐ YES  ☑ NO
   (Please list all medications) _Added HRT_

6. Do you have any allergies? ☑ YES  ☐ NO
   (If Yes, Please list all your allergies) _Cipro_

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _Pain; memory loss, can Baclofen take the place of robaxin;
   burning tongue - Could it be related to med's; headaches;
   severe leg cramps (not calf)_

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0 — 1 — 2 — 3 — 4 — 5 — 6 — 7 — 8 — 9 — 10
No Pain     Moderate Pain         Worst Pain

RIGHT   LEFT      LEFT   RIGHT

CLE00065

LINA/Cleiland 0595



### The
# Center for Pain
### of MONTGOMERY, P.C.

**DAVID HERRICK, M.D.** ■ **BRAD KATZ, M.D.**

☐ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_          Date: _3-14-06_

1.  Are you: ☐ Better?   ☒ Worse?   ☐ Same?

2.  Since your last visit, have you been to the Emergency Room?  ☐ YES   ☒ NO

    (If Yes, please explain) _____

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?  ☒ YES   ☐ NO

    (If Yes, please explain) _Colonoscopy_____

4.  Since your last visit, have you had any X-rays?   ☐ YES   ☒ NO

    (If Yes, what kind and where were they done)_____

5.  Since your last visit, have you had any medication changes? ☐ YES   ☒ NO

    (Please list all medications) _____

6.  Do you have any allergies? ☒ YES   ☐ NO

    (If Yes, Please list all your allergies) ___Cipro_____

7.  What do you want to discuss today? (medicine, pain, refills, etc.)

    _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

```
|----|----|----|----|----|----|----|----|----|----|
0    1    2    3    4    5    6    7    8    9    10
No                    Moderate                 Worst
Pain                   Pain                     Pain
```

Mark all the places you feel pain.

← hit nose
when I
Fell

RIGHT   LEFT        LEFT   RIGHT

CLE00066

Another
Round of bad
falls on 3/12/06

LINA/Cleiland 0596



**The**
**Center for Pain**
*of* M O N T G O M E R Y, *P.C.*
David Herrick, M.D. ▼ Brad Katz, M.D.
Adam Nortick, M.D.
P.O. Box 241348
Montgomery, AL 36124

432 St. Lukes Drive
Phone: 334-387-7246
Fax: 334-387-7250

2055 E. S. Blvd., Ste. 812
Phone: 334-288-7808
Fax: 334-288-8089

### PROGRESS NOTE

**NAME:**   CATHY CLEILAND
**DATE:**   02/06/06
**ACCT:**   14495
**DOB:**

Ms. Cleiland returns today for follow up. She has a mildly positive Spurling's on the left. She has had previous cervical epidural steroid injections, which have helped. Her pain is 8/10 in intensity. She is requesting a repeat injection. I have discussed the risks, benefits and rationale of this procedure with the patient. The risks are bleeding, infection, nerve damage, paralysis and other various complications up to and including death. She appears to understand, accept and wishes to proceed.

_____
DAVID P. HERRICK, M.D.
Signed without review.

DPH/slc
D: 02/06/06
T: 02/08/06

**CLE00067**

LINA/Cleiland 0597



**The**
# Center for Pain
## of MONTGOMERY, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_          Date: _2-14-06_

1. Are you: ☐ Better?  ☑ Worse?  ☐ Same?

2. Since your last visit, have you been to the Emergency Room?  ☐ YES  ☑ NO

   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ☑ YES  ☐ NO

   (If Yes, please explain) _ENT_____

4. Since your last visit, have you had any X-rays?  ☐ YES  ☑ NO

   (If Yes, what kind and where were they done)_____

5. Since your last visit, have you had any medication changes? ☐ YES  ☑ NO

   (Please list all medications) _____

6. Do you have any allergies? ☑ YES  ☐ NO

   (If Yes, Please list all your allergies) _Cipro_____

7. What do you want to discuss today? (medicine, pain, refills, etc.)

   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0  1  2  3  4  5  6  7  8  9  10
No                Moderate              Worst
Pain                Pain                  Pain



CLE00068

LINA/Cleiland 0598

The Center for Pain of Montgomery                    East          South

Name _Cathy Cleiland_                  ID _1445_     Date _1/17/2006_

Pain Problems: ddd c t l / radiculitis c t l / stenosis c t l / facet c t l / failed back c t l
Headache / PHN / Fibromyalgia / Restless leg / Periph neuropathy (DM) / Cancer / carpal tunnel
SI r l / myofascial pain / DJD _____ / crps _____ / other _____

Comorbidities: DM CAD COPD HBP CVA PVD GERD RA OA OSA Ospo Obesity Psych _____

SocHx: noΔ _____  FamHx: noΔ _____  ED: no pain other Studies: no _____  ROS: noΔ _____

Medicines: effective: y p n     adverse: no _____     requests Δ: no _____
Duragesic Methadone Avinza Kadian MSContin Oxycontin Ultram/cet Darvocet Talacen Codiene
Panlor Lortab Lorcet Norco Xodol Roxicet Percocet Percodan Dilaudid MSIR OxyIR Actiq
Adjuvants _____

Current Pain: _9_  New Pain Symptoms: no _____  Health: stable _____

Pain Location:



PE: MSE _alrt_  AMB: _self_  POST _____ HEENT _____ CV _____ RESP _____
GI _____ SKIN _to +_ MUSK _____ NEURO _R/L _____

Interactions: review studies  patient education  review goals  review medication contract

Assessment: Pain Condition: stable _____  New Issues: none _____

Plan: Refill current meds  DC _____  Start _____
Schedule: intervention _Schedule CESI_ study _____ referral _____

Visit Length: _____

F/U: _____

Comments:

1mo FU
2·14·06
@
1015am

CESI
2·6·06
@
1030a

_Nontele_ MD

CLE00069

December 19, 2005

Kelli Archacki
Cigna Insurance Company
Routing 2121225
Greenville Avenue, Suite #1000
Dallas, TX 75243

Re:    Cathy Cleiland
       Chart #14495

Dear Ms. Archacki,

This letter is on behalf of Ms. Cathy Cleiland in support of her claim for disability.

I understand that you recently sent Ms. Cleiland a letter discontinuing her benefits.  Part of your decision was based on some of the documentation from our office.

In reviewing the letter, it was mentioned that Ms. Cleiland had not been complaining of any problems with radiating type pain or numbness.  Ms. Cleiland has clearly indicated on her admission sheets and on the pain diagrams I put down that she has involvement in hands and feet.  Ms. Cleiland has persistently been on Neurontin for tingling and numbness.  It really is not a new complaint and has not required any additional documentation.

Ms. Cleiland's medications have been stable over the last few months.  However, this does not mean that she does not have ongoing problems, or that on any given day she may be more symptomatic than another.  It is fairly common for patients like Ms. Cleiland to have unpredictable exacerbations of their problem along with a steady course, otherwise.

Ms. Cleiland is still symptomatic, and I do believe that her symptoms are real.

Please feel free to contact me to further discuss the issue.

Respectfully yours,

*Adam R Nortick*

Adam R. Nortick, MD

ARN:rts/qes/jdb

CLE00070

LINA/Cleiland 0600



**The**
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D.   ■   BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

*nortice*

Patient Name: __CATHY Cleiland__          Date: __12-14-05__

1.  Are you: ☐ Better?   ☒ Worse?   ☐ Same?

2.  Since your last visit, have you been to the Emergency Room?   ☐ YES   ☒ NO
    (If Yes, please explain) _____

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?   ☒ YES   ☐ NO
    (If Yes, please explain) __Dr. Bret Johnson  (General MD)__

4.  Since your last visit, have you had any X-rays?   ☒ YES   ☐ NO
    (If Yes, what kind and where were they done) __Teeth__

5.  Since your last visit, have you had any medication changes? ☐ YES   ☒ NO
    (Please list all medications) _____

6.  Do you have any allergies? ☒ YES   ☐ NO
    (If Yes, Please list all your allergies) __CiPRO__

7.  What do you want to discuss today? (medicine, pain, refills, etc.)
    __Pain ; Medication__

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0   1   2   3   4   5   6   7   8   9   10
No                  Moderate            Worst
Pain                 Pain               Pain

Burning, feels
like skin is being
pulled back to...

Feels like
sand on
feet and between

CARPAL
Tunnel

RIGHT   LEFT   LEFT   RIGHT

CLE00071



### The
# Center for Pain
### of MONTGOMERY, P.C.

**DAVID HERRICK, M.D.  ■  BRAD KATZ, M.D.**

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_____     Date: _11-16-05_____

1. Are you: ☐ Better?   ☒ Worse?   ☐ Same?

2. Since your last visit, have you been to the Emergency Room?   ☐ YES   ☒ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ☒ YES   ☐ NO
   (If Yes, please explain) _Sleep Study ; light into stomach for exam_  _Neurolog for gastroenterologist_

4. Since your last visit, have you had any X-rays?   ☐ YES   ☒ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES   ☒ NO
   (Please list all medications) _____

6. Do you have any allergies? ☒ YES   ☐ NO
   (If Yes, Please list all your allergies) _Cipro_____

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _pain, possible medication change._

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0 — 1 — 2 — 3 — 4 — 5 — 6 — 7 — 8 — 9 — 10

0 No Pain      Moderate Pain (5)      Worst Pain (10)

RIGHT   LEFT       RIGHT

_extreme pain_

CLE00072

LINA/Cleiland 0602



**The**
**Center for Pain**
*of* **M O N T G O M E R Y**, P.C.

DAVID HERRICK, M.D.   ■   BRAD KATZ, M.D.

☑ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

❑ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_          Date: _10-18-05_

1. Are you: ❑ Better?  ☑ Worse?  ❑ Same?

2. Since your last visit, have you been to the Emergency Room?  ❑ YES  ☑ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ❑ YES  ☑ NO
   (If Yes, please explain) _____

4. Since your last visit, have you had any X-rays?  ❑ YES  ☑ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ❑ YES  ❑ NO
   (Please list all medications) _Celebrex_

6. Do you have any allergies? ☑ YES  ❑ NO
   (If Yes, Please list all your allergies) _Cipro_

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _____
   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW



0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

1  2  3  4  5  6  7  8  9  10
            Moderate              Worst
            Pain                  Pain

CLE00073

LINA/Cleiland 0603

the
# CENTER for PAIN
of Montgomery
### DAVID HERRICK, MD ■ BRAD KATZ, MD

☑ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_      Date: _9-19-05_

1. Are you: ☐ Better?  ☑ Worse?  ☐ Same?

2. Since your last visit, have you been to the Emergency Room?  ☐ YES  ☑ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ☐ YES  ☐ NO
   (If Yes, please explain) _I had an apptat the sleep ctr this morning but I waited from 11:15 - 1:10 and I had to leave to come here._

4. Since your last visit, have you had any X-rays?  ☐ YES  ☑ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES  ☑ NO
   (Please list all medications) _____

6. Do you have any allergies? ☑ YES  ☐ NO
   (If Yes, Please list all your allergies) _CiPRO_

7. What do you want to discuss today? (medicine, pain, refills, etc.) _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.



| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |

No Pain — Moderate Pain — Worst Pain

CLE00074



**The Center for Pain**
of **M O N T G O M E R Y**, P.C.

DAVID HERRICK, M.D.    ■    BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_    Date: _8-17-05_

1. Are you: ☐ Better?    ☑ Worse?    ☐ Same?

2. Since your last visit, have you been to the Emergency Room?    ☐ YES    ☑ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?    ☐ YES    ☑ NO
   (If Yes, please explain) _____

4. Since your last visit, have you had any X-rays?    ☐ YES    ☑ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES    ☑ NO
   (Please list all medications) _Insulin, Neurontin, methadone, phenergrin, protonix, robaxin_
   _Clonipin, over the counter benadryl for sinus/allergs_

5. Do you have any allergies? ☑ YES    ☐ NO
   (If Yes, Please list all your allergies) _Outdoor (flowers) pet dander_

7. What do you want to discuss today? (medicine/pain, refills, etc.)
   _I had a bad fall during the wee hrs of last Sat morning_

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0 — 1 — 2 — 3 — 4 — 5 — 6 — 7 — 8 — 9 — 10

0
No
Pain

Moderate
Pain

Worst
Pain

RIGHT    LEFT    LEFT    RIGHT

CLE00075

LINA/Cleiland 0605

# EXHIBIT 1 TO EXHIBIT A Part 12



### *The*
# Center for Pain
### *of* M O N T G O M E R Y, P.C.
David Herrick, M.D. ■ Brad Katz, M.D.
432 St. Lukes Drive
Montgomery, AL 36117
Phone (334) 387-7246   Fax (334) 387-7250

### PROGRESS NOTE

**NAME:**   CATHY K. CLEILAND
**DATE:**   03/02/05
**ACCT:**   4495
**DOB:**

This is a 47-year-old, white female with lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain and diabetes. She has been on Methadone 5 mg up to five pills a day, Effexor, and Klonopin.

Ms. Cleiland states that she has been having some upset stomach problems. We called in Protonix. She says this has really been pre-helpful. Ms. Cleiland states that she has had a fair amount of nausea with Methadone, but on the whole it is livable with Phenergan. She really has not had to go to the hospital for any IV fluids. She has had worse problems with GI upset from other opioids and does not wish to try switching out.

Ms. Cleiland has been having some muscle spasms in the legs. She says she is not very active, and she thinks that her sugars have been running higher than they usually have. She states that she has fallen down some steps. She says she just miscalculated the last step. Once she said the trunk of the car fell on her back when she was leaning over into the trunk, just minor life traumas.

Ms. Cleiland describes her pain as an 8 today. Again, there are more areas marked off on the pain chart than not. There is pain in the right upper extremity, left leg and back. She states really no chest pain and no unusual dysuria. She states life is not in total turmoil as it has been in the past few visits.

**PHYSICAL EXAMINATION:** This is a 47-year-old, white female who is alert and cooperative. She is fairly pleasant today and less upbeat. She has no gross rashes. Skin is warm and dry. She has no respiratory difficulties noted, no obvious hemodynamic instability noted, no acute hot joints, and no acute localizing weakness.

**ASSESSMENT:** Cervical degenerative disc disease, cervical radiculitis, lumbar degenerative disc disease, lumbar radiculitis, and insulin dependent diabetes.

**PLAN:** We will refill Neurontin 800 mg 4x/day, Robaxin 750 mg 3x/day, Phenergan 25 ½ - 1 three times daily, Effexor 75 XR one at bedtime, Protonix 40 mg one daily, Klonopin 1 mg at bedtime, and we will switch her to Methadone 10 mg ½ - 1 p.o. three times a day rather than the 5s. We plan on seeing the patient back in one month's time. Today's office visit has been 20 minutes.

ADAM NORTICK, M.D.

AN/aww
D: 03/11/05
T: 03/15/05



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_      Date: _5-17-05_

1.  Are you: ☐ Better?    ☐ Worse?    ☑ Some?

2.  Since your last visit, have you been to the Emergency Room?   ☐ YES   ☑ NO

    (If Yes, please explain) _____

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?   ☐ YES   ☑ NO

    (If Yes, please explain) _____

4.  Since your last visit, have you had any X-rays?   ☑ YES   ☐ NO

    (If Yes, what kind and where were they done) _mammogram_

5.  Since your last visit, have you had any medication changes? ☐ YES   ☑ NO

    (Please list all medications) _____

6.  Do you have any allergies? ☑ YES   ☐ NO

    (If Yes, Please list all your allergies) _Cipro_

7.  What do you want to discuss today? (medicine, pain, refills, etc.)

    _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.



0  1  2  3  4  5  6  7  8  9  10
No            Moderate         Worst
Pain          Pain             Pain

CLE00077

LINA/Cleiland 0607



### The
### Center for Pain
#### of MONTGOMERY, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

| | 2055 East South Blvd., Ste. 812 | | 432 St. Lukes Drive |
| | Montgomery, AL 36116 | | Montgomery, AL 36117 |
| | Telephone: 334-288-7808 | | Telephone: 334-387-7246 |

Patient Name: _CATHY K. Cleiland_    Date: _3-2-05_

1. Are you: ☐ Better?  ☒ Worse?  ☐ Same?

2. Since your last visit, have you been to the Emergency Room? ☐ YES  ☒ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ☐ YES  ☒ NO
   (If Yes, please explain) _____

4. Since your last visit, have you had any X-rays?  ☐ YES  ☒ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES  ☐ NO
   (Please list all medications) _The protonix that Dr. Nortick prescribed_

6. Do you have any allergies? ☒ YES  ☐ NO
   (If Yes, Please list all your allergies) _unknown but believe dust + dander_

7. What do you want to discuss today? (medicine, pain) refills, etc.)
   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW



0 means no pain.
10 means the worst pain you can imagine.

0  1  2  3  4  5  6  7  8  9  10
No Pain         Moderate Pain         Worst Pain

Mark all the places you feel pain.

CLE00078

LINA/Cleiland 0608



**The Center for Pain**
of MONTGOMERY, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

7⃣ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

❑ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_       Date: _3-29-05_

1.  Are you: ❑ Better?  ☑ Worse?  ❑ Same?

2.  Since your last visit, have you been to the Emergency Room? ☑ YES   ❑ NO
    (If Yes, please explain) _ER @ SAMC in Dothan - Diagnosed w/ the flu_

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?  ❑ YES  ☑ NO
    (If Yes, please explain) _____

4.  Since your last visit, have you had any X-rays? ☑ YES  ❑ NO
    (If Yes, what kind and where were they done) _Lungs when I had the flu_

5.  Since your last visit, have you had any medication changes? ❑ YES  ☑ NO
    (Please list all medications) _Just took Tamiflu along w/ my pain med's_

6.  Do you have any allergies? ☑ YES  ❑ NO
    (If Yes, Please list all your allergies) _Cipro_

7.  What do you want to discuss today? (medicine, pain, refills, etc.)
    _____
    _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW



0 means no pain.
10 means the worst pain you can imagine.

0  1  2  3  4  5  6  7  8  9  10
No Pain        Moderate Pain        Worst Pain

Mark all the places you feel pain.

RIGHT   LEFT      LEFT   RIGHT

CLE00079



*The*
# Center for Pain
*of* M O N T G O M E R Y, *P.C.*

DAVID HERRICK, MD • BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808
Fax: 334-288-8089

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246
Fax: 334-387-7250

### PROGRESS NOTE

NAME:      CATHY CLEILAND
DATE:      12/01/04
ACCT:      14495
DOB:

Ms. Cleiland is a 47-year old white female who has been followed for lumbar degenerative disc disease and cervical degenerative disc disease. She also has myofascial pain and diabetes. Ms. Cleiland has been on Methadone 5 mg 1-5 pills a day, Effexor and Klonopin. Ms. Cleiland has not had any adverse reactions to her medicines.

Ms. Cleiland has been under a lot of stress in October. She states her daughter is a diabetic and has had problems with a staph infection and when _____. She said it was touch and go for a few days. Ms. Cleiland states that she spent 4 days in the ICU and she was at her side. She states she slept upright and in rather hard, uncomfortable chairs. She says at times she has been having some increasing pain in her neck going into both arms. She states that this was new and this really wasn't going on before. Ms. Cleiland has prior neck surgery. She said she has called up Dr. Hadley over at UAB but he states she would "have to have a real problem" before he would see her again. Ms. Cleiland is wanting to have an MRI and I think that is reasonable. We will go ahead and assist her in getting that scheduled.

Ms. Cleiland states that her back has been about the same. Ms. Cleiland states that she is not sleepy at night but she can be drowsy during the day. It is hard to say how much of this is has to do with the total upset that she has been through lately.

Ms. Cleiland has gone to the ophthalmologist and apparently has a 6th nerve palsy that is resolving without incident. Ms. Cleiland states that she has gained about 30 pounds. She states she never eats a lot of big meals but she kind of grazes and it can be at least 6 x a day. She is not having any unusual nausea, vomiting or gastroparesis type problems.

Ms. Cleiland does get some nausea, she uses Phenergan for. She has not had to go to the hospital getting IV fluids. Ms. Cleiland states that she was running short on her medicines and her daughter did admit to taking some of her Methadone. Ms. Cleiland states that was only Effexor XR but apparently plain Effexor was called in for her. We will remedy that.

Ms. Cleiland describes her pain today as a 9. It is across the shoulders and into the right arm and in the left leg. Ms. Cleiland really has no new significant health issues. She really is not having any chest pain, shortness of breath or rash.

On physical exam today she is a 47-year old white female. She is alert and cooperative. She has minimal respiratory difficulty. Her chest is clear. Chest wall is intact. Heart has a regular rate and rhythm, S1 and S2, without murmurs, gallops or thrills. She has no acute hot joints. She is ambulating without difficulty. She has no localizing weakness. She has a positive Spurling on the right side. She has no acute trophic skin changes. Cranial nerves II-XII are intact.

ASSESSMENT: Cervical degenerative disc disease, cervical radiculitis, lumbar degenerative disc disease, lumbar radiculitis and insulin dependent diabetes.

PLAN: We will continue her on her medicines of Methadone 5 mg up to 5 x a day, Effexor XR 75 mg at bedtime, Neurontin 800 mg at bedtime, Phenergan 25 mg #90 pills ½ to 1 up to 3 x a day and Clonazepam 1 mg at bedtime. We will also schedule her to get a cervical MRI for cervical radiculitis. Total office time today was 20-minutes. We will plan on seeing the patient back in 3-months time. If it comes back that there is something new on her cervical MRI, we will make appropriate arrangements.

ADAM NORTICK, M.D.

AN/slc
D: 12/02/04
T: 12/07/04

CLE00080



### The Center for Pain
### of M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

❑ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

❑ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _CATHY CLEILAND_          Date: _12-1-00 d_

1. Are you: ❑ Better?   ☑ Worse?   ❑ Same?

2. Since your last visit, have you been to the Emergency Room?   ❑ YES   ☑ NO

   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ❑ YES   ☑ NO

   (If Yes, please explain) _I talked w/ Dr Hadley's nurse about severe pain in_

4. Since your last visit, have you had any X-rays?   ❑ YES   ☑ NO  _neck but she said he would have to know a problem had_
   _been identified before seeing me_

   (If Yes, what kind and where were they done)_____  _for that_

5. Since your last visit, have you had any medication changes? ☑ YES   ❑ NO

   (Please list all medications) _Yall called in my effexor XR as regular effexor_

6. Do you have any allergies? ☑ YES   ❑ NO

   (If Yes, Please list all your allergies) _Cipro_

7. What do you want to discuss today? (medicine, pain, refills, etc.)

   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW



0 means no pain.
10 means the worst pain you can imagine.

0 — 1 — 2 — 3 — 4 — 5 — 6 — 7 — 8 — 9 — 10

0 No Pain          5 Moderate Pain          10 Worst Pain

Mark all the places you feel pain.

RIGHT   LEFT       LEFT   R

CLE00081

LINA/Cleiland 0611



**The Center for Pain**
of **M O N T G O M E R Y**, P.C.

DAVID HERRICK, M.D.  ■  BRAD KATZ, M.D.

☐ 2055 East South Blvd., Ste. 812
  Montgomery, AL 36116
  Telephone: 334-288-7808

☐ 432 St. Lukes Drive
  Montgomery, AL 36117
  Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_  Date: _9-21-04_

1. Are you: ☐ Better?  ☐ Worse?  ☒ Same?

2. Since your last visit, have you been to the Emergency Room? ☐ YES  ☒ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery? ☒ YES  ☐ NO
   (If Yes, please explain) _Opthamologist for sixth cranial nerve palsy_

4. Since your last visit, have you had any X-rays? ☐ YES  ☒ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES  ☒ NO
   (Please list all medications) _____

6. Do you have any allergies? ☒ YES  ☐ NO
   (If Yes, Please list all your allergies) _Cipro_

7. What do you want to discuss today? (medicine, (pain), (refills), etc.)
   _____

# PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW



0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0 — No Pain   1   2   3   4   5   6 — Moderate Pain   7   8   9   10 — Worst Pain

CLE00082

LINA/Cleiland 0612



**The Center for Pain**
of MONTGOMERY, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

☐ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: __Cathy Cleiland__     Date: __8-24-04__

1. Are you: ☐ Better?  ☐ Worse?  ☐ Same?

2. Since your last visit, have you been to the Emergency Room?  ☐ YES  ☒ NO

   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ☐ YES  ☐ NO

   (If Yes, please explain) __Opthalmologist__

4. Since your last visit, have you had any X-rays?  ☐ YES  ☒ NO

   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes?  ☐ YES  ☒ NO

   (Please list all medications) _____

6. Do you have any allergies?  ☒ YES  ☐ NO

   (If Yes, Please list all your allergies) __Cipro__

7. What do you want to discuss today? (medicine, pain, refills, etc.)

   __pain, side effects of med__

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

Mark all the places you feel pain.

0 means no pain.
10 means the worst pain you can imagine.

0 1 2 3 4 5 6 7 8 9 10
No                Moderate        Worst
Pain               Pain            Pain

RIGHT   LEFT      LEFT   RIGHT

pelvic area

CLE00083

LINA/Cleiland 0613



### *The* Center for Pain
of **M O N T G O M E R Y**, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

❑ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

❑ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_          Date: _7-21-2004_

1. Are you: ❑ Better?   ❑ Worse?   ☒ Same?

2. Since your last visit, have you been to the Emergency Room?   ❑ YES   ☒ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ☒ YES   ~~❑ NO~~
   (If Yes, please explain) ~~Dentist~~ Dr Mark Hadley @ UAB

4. Since your last visit, have you had any X-rays?   ☒ YES   ❑ NO
   (If Yes, what kind and where were they done) _MRI @ UAB on 7-14-04_

5. Since your last visit, have you had any medication changes?   ❑ YES   ☒ NO
   (If Yes, what) _____

6. What do you want to discuss today? (medicine, pain, refills, etc.)
   _Pain and medication_

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

```
  |----|----|----|----|----|----|----|----|--Ⓘ--|
  0    1    2    3    4    5    6    7    8    9   10
  No                      Moderate                Worst
 Pain                       Pain                   Pain
```

**CLE00084**

LINA/Cleiland 0614



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D.  ◼  BRAD KATZ, M.D.

❑ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

❑ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_    Date: _5-26-04_

1. Are you: ❑ Better?   ☒ Worse?   ❑ Same?

2. Since your last visit, have you been to the Emergency Room?  ☒ YES   ❑ NO
   (If Yes, please explain) _Monroeville, AL - Admitted to ICU/DKA After medicine_
   _made me nausea/ded/dehydrated_

3. Since your last visit, have you seen any other doctor(s) or had any surgery?  ☑ YES   ❑ NO
   (If Yes, please explain) _Family Dr. saw me in hospital_

4. Since your last visit, have you had any X-rays?   ❑ YES   ☒ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☑ YES   ❑ NO
   (Please list all medications) _My family Dr prescribed me lortab when he dismissed_
   _me yesterday (5/25) until I could be seen here today_

6. Do you have any allergies? ❑ YES   ☑ NO
   (If Yes, Please list all your allergies) _CIPRO_

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

```
 0  1  2  3  4  5  6  7  8  9  10
No              Moderate          Worst
Pain              Pain             Pain
```

Mark all the places you feel pain.

RIGHT  LEFT    LEFT  RIGHT

CLE00085

LINA/Cleiland 0615

## PROGRESS NOTE

**NAME:**      KATHY CLEILAND
**DATE:**      04/28/04

Ms. Cleiland returns today for follow up.  Avinza 30 mg helps but is not enough.  She continues to have neck and shoulder pain and the medication does make her slightly sluggish although she has become accustomed to it.

**PHYSICAL EXAM:**
**GENERAL:**   She is alert and oriented x 3.
**HEENT:** Unremarkable.
**PULMONARY:** Clear.
**HEART:** Regular rate and rhythm.
**NEUROLOGICAL EXAM:** Non-focal.  Cranial nerves appear to be intact.

**IMPRESSION:** Cervical degenerative disc disease.

**PLAN:** Continue titration of Avinza.  Will increase to 60 mg po q a.m.  She has been taken the medicine about mid-day and I have encouraged her to take it earlier in the morning and see if that has any added benefit.  I have reviewed her medication agreement.  I will see her back in 1-month for reassessment.  I informed her she may see Dr. Nortick when she returns.  This was a 20-minute face-to-face visit.

DAVID P. HERRICK, M.D.

AN/slc
D: 04/28/04
T: 05/03/04

CLE00086

LINA/Cleiland 0616



*The*
# Center for Pain
*of* M O N T G O M E R Y, P.C.

**DAVID HERRICK, MD • BRAD KATZ, MD**

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808
Fax: 334-288-8089

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246
Fax: 334-387-7250

### PROGRESS NOTE

**NAME:**   CATHY CLEILAND
**DATE:**   05/26/04
**ACCT:**   14495
**DOB:**

Ms. Cleiland returns today for adjustment of medicines. Ms. Cleiland had been on Avinza. She had been on 30 mg and that dose was increased up to 60 mg. She was complaining with problems with nausea with 60 mg from the get go. She tried it for a few days, went off, and went back on. She eventually wound up having problems with nausea and vomiting. When she went to her local doctor she was probably in sort of DKA and was admitted to the hospital into the ICU. She did get some IV fluids. She was given a prescription for some Lortab when she left the hospital. Her other medicines include Neurontin 800 mg 4 x a day. She had a blood level checked about 3-weeks ago and was doing fine. She also takes Effexor 75 mg and Robaxin. At the present time Ms. Cleiland is most concerned about having a pain medicine, which will not cause any significant stomach upset rather than marked analgesia. She states in the past she has had some Demerol and never really suffered any adverse reactions from that. She states that Percocet has cost her some GI problems in the past and Lortab caused some slight quizziness but really it wasn't very effective for her pain.

On physical exam she is a 46-year old white female who is alert and cooperative. She has no obvious respiratory or hemodynamic compromise. The skin is warm and dry. She has a non-localizing neurologic exam.

**ASSESSMENT:** Cervical degenerative disc disease with nausea and vomiting secondary to Avinza.

**PLAN:** Through the next week we will have the patient use some Mepergan Fortes 1 po 4 x a day. We will then have her start on Methadone 10 mg twice a day for 3-weeks. We will have her come back in a month and see how she is doing in terms of nausea and pain effectiveness on the new medication regimen. We will keep all of her other medicines the same. Total office time today was 25-minutes.

ADAM NORTICK, M.D.

AN/slc
D: 05/26/04
T: 06/02/04

CLE00087

LINA/Cleiland 0617



**The**
# Center for Pain
*of* M O N T G O M E R Y, *P.C.*

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

❑ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

❑ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy K. Cleiland_          Date: _4-28-04_

1. Are you: ❑ Better?   ❑ Worse?   ☑ Same?

2. Since your last visit, have you been to the Emergency Room?   ❑ YES   ☑ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ☑ YES   ❑ NO
   (If Yes, please explain) _My general MD - just to have bloodwork_

4. Since your last visit, have you had any X-rays?   ❑ YES   ☑ NO
   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ❑ YES   ☑ NO
   (Please list all medications) _____

6. Do you have any allergies? ❑ YES   ☑ NO
   (If Yes, Please list all your allergies) _____
   _____

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _Continued pain and medicine_

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0 1 2 3 4 5 6 7 8 9 10
No Pain        Moderate Pain        Worst Pain

RIGHT    LEFT        LEFT    RIGHT

CLE00088

the
# CENTER for PAIN
of Montgomery

**DAVID HERRICK, MD** ■ **BRAD KATZ, MD**

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7608

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy K. Cleiland_          Date: _3-29-04_

1. Are you: ☐ Better? ☐ Worse? ☑ Same?

2. Since your last visit, have you been to the Emergency Room? ☑ YES ☐ NO

   (If Yes, please explain) _UAB_

3. Since your last visit, have you seen any other doctor(s) or had any surgery? ☑ YES ☐ NO

   (If Yes, please explain) _Dr Mark Hadley ; UAB ; 12/16/03 ; C-4, C5 lumbar laminectomy &_ _decompression, C4-C5 diskectom_ _bilateral with fusion, posterior_ _lumbar fusion; anterior bivalve_ _C-4-C5 bilateral - bone dorsikt_ _fusion C4, C5 biklterL_

4. Since your last visit, have you had any X-rays? ☐ YES ☐ NO

   (If Yes, what kind and where were they done)_____

5. Since your last visit, have you had any medication changes? ☑ YES ☐ NO

   (Please list all medications) _Doulin N 35 R 15 x 2 ; Effexor 75 mg ; Neurontin 800 x4 ; Lortab 10/5 x 6_ _Robavin 750 mg x3_

6. Do you have any allergies? ☐ YES ☑ NO

   (If Yes, Please list all your allergies) _Not that I am aware of_

7. What do you want to discuss today? (medicine, pain, refills, etc.)

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.



0  1  2  3  4  5  6  7  (8)  9  10
No              Moderate              Worst
Pain              Pain              Pain

RIGHT    LEFT        LEFT    RIGHT

CLE00089



**The**
# Center for Pain
**of M O N T G O M E R Y, P.C.**

DAVID HERRICK, MD • BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808
Fax 334-288-8089

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246
Fax 334-387-7250

**NAME:** CATHY CLEILAND                    **DATE:** 08/27/03
**DOB:**                                     **SSN:**

**REFERRING PHYSICIAN:** Dr. Hackman.

**CHIEF COMPLAINT:** Back and left leg pain.

**HISTORY OF PRESENT ILLNESS:** The patient is a 46-year old female with back and left leg pain that has been present for approximately 16-months. It is an aching, burning, stabbing pain that is exacerbated by coughing, sneezing, sitting or standing. She has had two previous lumbar surgeries done by Dr. Hackman, the last being July 16th of this year. She continues to have a left lumbar pain that is an aching, burning, constant, unbearable pain that is exacerbated by sitting, standing and walking. She has had no previous spinal injections.

**PAST SURGICAL HISTORY:** Significant for lumbar surgery x 2, anterior cervical fusion x 3, C-section x 2, bilateral tubal ligation, right oophorectomy and carpal tunnel release.

**PAST MEDICAL HISTORY:** She is an insulin dependent diabetic.

**CURRENT MEDICATIONS:** Insulin, Darvocet, Flexeril and Neurontin.

**ALLERIES:** No known drug allergies.

**SOCIAL HISTORY:** Negative tobacco. Negative ETOH.

**FAMILY HISTORY:** Non-contributory.

**REVIEW OF SYSTEMS:** No fever, chills, nausea, vomiting, headaches, chest pain, shortness of breath, bowel/bladder dysfunction or rashes.

**PHYSICAL EXAM:**
**GENERAL:** She is a very pleasant, well-developed, well-nourished female. She is moderately distressed secondary to pain.
**HEENT:** Unremarkable.
**PULMONARY:** Clear.
**HEART:** Regular rate and rhythm.
**ABDOMEN:** Non-tender and non-distended.
**EXTREMITIES:** No clubbing, cyanosis, or edema.

CLE00090

LINA/Cleiland 0620

**Name:**    Cathy Cleiland
**Date:**    08/27/03

**Continued...2**

**NEUROLOGICAL EXAM:** Significant for a positive straight leg raise on the left at about 45 degrees.

**IMPRESSION:** Lumbar degenerative disc disease and lumbar radiculitis.

**PLAN:** Lumbar selective nerve root block on the left at L4-5 and L5-S1. I have discussed the risks, benefits, and rationale of this procedure. The risks are bleeding, infection, nerve damage, paralysis and other various complications up to and including death. He appears to understand, accept and wishes to proceed.

DAVID P. HERRICK, M.D.
Signed without review.

DPH/slb
D: 08/27/03
T: 08/28/03

CLE00091

LINA/Cleiland 0621

Patient Name: **Cleiland, Cathy Key**
Patient ID: **000214773**

Date of Birth:
Age: **48 years**
Gender: **Female**
Accession Number: **001000000159070**
Location: **SAMC**
Referring Physician: **Bret Johnson**

Study Date: **05-17-2006 16:54**
Procedure Types: **MRI LUMBAR WO/W**

*Preliminary*

# MR MRI LUMBAR WO/W

MRI MRI LUMBAR WO/W
Page 1 of 2

SOUTHEAST ALABAMA MEDICAL CENTER
PO Drawer 6987, Dothan, AL 36302
334-793-8111
RADIOLOGY SERVICES
MRI REPORT

Patient Name:  CLEILAND, CATHY
XRAY/MR#:  000214773
DOB:
Order #: 00127816748422104              Account #: 2781674
CDM: 3836052                            Age: 48              Room:MI-
                                        Accession #:  001000000159070    Pt Type: O

Attending Physician:  Bret M. Johnson, M.D.
Ordering Physician:  Bret M. Johnson, M.D.
Referring Physician:
Exam Requested: MRI LUMBAR WO/W
Exam Date:  05/17/2006

PROCEDURE:    MRI LUMBAR SPINE WO/W GADOLINIUM  5/17/06
HISTORY:      Low back pain radiating down left leg
COMPARISON:   None
TECHNIQUE:    T1, T2 and STIR sagittal, T1 and T2 axial sequences without
              Contrast, T1 axial and sagittal sequence following the
              administration of 17 cc's of intravenous Gadolinium.

FINDINGS:
Evidence of posterior spinal fusion at L4-5.  Spinal stabilization rods
und transpedicular screws are noted as well as an intervertebral disc

Page: 1 Printed: S. Skipper/05-23-2006 15:32 Study: Cathy Cleiland/05-17-2006 16:5

CLE00092

LINA/Cleiland 0622

spacer at L4-5.

The vertebral bodies are in anatomic alignment with no evidence of compression deformity or significant subluxation. The marrow signal intensity is unremarkable. Conus medullaris terminates at inferior aspect of T12. No evidence of enlargement or abnormal signal.

L3-4: Mild diffuse disc bulging with moderate facet arthropathy and ligamentum flavum hypertrophy. There is resultant moderate central canal narrowing. No evidence of superimposed disc protrusion.

L4-5: Laminectomy defect noted at L4. There is no evidence of central canal narrowing. However, moderate narrowing of the neuroforamen noted on the left, secondary to a bulging disc. There is compression of the exiting L4 nerve root on the left.

L5-S1: Mild diffuse disc bulging with no evidence of disc protrusion, central canal or neuroforaminal narrowing.

Name: CLEILAND,CATHY                    MR #: 000214773
BRETT STORM, M.D.
{eop}

MRI
Page 2 of 2

SOUTHEAST ALABAMA MEDICAL CENTER
PO Drawer 6987,  Dothan, AL 36302
334-793-8111

IMPRESSION:
1.  EVIDENCE OF POSTERIOR SPINAL FUSION L4-5. THERE IS NO EVIDENCE OF
    SUBLUXATION OR COMPRESSION DEFORMITY.
2.  MODERATE CENTRAL CANAL NARROWING AT L3-4.
3.  THERE IS EVIDENCE OF INTERVERTEBRAL DISC SPACER L4-5. HOWEVER, THERE
    APPEARS TO BE BULGING DISC EXTENDING INTO THE NEUROFORAMEN AT L4-5
    ON THE LEFT WITH COMPRESSION OF THE LEFT L4 NERVE ROOT.

BRETT STORM, M.D.

DD: 5/18/2006 00:21      ko
DT: 5/18/2006 12:47      153245

Name: CLEILAND, CATHY                   MR:  000214773
BRETT STORM, M.D.
{eop}

Brett Storm
05-18-2006 12:53

Page: 2 Printed: S. Skipper/05-23-2006 15:32 Study: Cathy Cleiland/05-17-2006 16:54

CLE00093

LINA/Cleiland 0623

Jan. 13. 2006  7:59AM                                              No. 3505   P. 1／1

**Montgomery Imaging Center**
2055 Normandie Drive, Suite 108
Montgomery, AL 36111-2743
Phone (334) 288-4624
Fax (334) 288-8478

John H. Payoc, III, M.D.    Daniel S. Noyes, D.O.      Mary M. Karst, M.D.
David C. Montiel, M.D.      Mark H. LeQuire, M.D.      Paul Hutchison, M.D.
Terry D. Williams, M.D.     Gordon Smith, M.D.         Oscar P. Ortiz, M.D.
Joseph M. Bailey, M.D.      Christopher Dorvault, M.D. Eva Rubin, M.D.
David B. Neeland, M.D.      Philip S. Piasecki, M.D.   Ronald D. Waters, M.D.
Thomas S. Moore, M.D.       David M. Downs, M.D.       John G. Kahler, M.D.
Jason H. Dorey, M.D.        Roland Ng, M.D.
Byron C. Machen, M.D.       Gary Leung, M.D.

| | | |
|---|---|---|
| Patient: **CLEILAND, CATHY K.** | DOB: | Age: 048 |
| Exam: **MRI CERVICAL SPINE WITHOUT CONTRAST** Procedure Date: 01/12/06 | | Film#: 20046161 |
| Referring Physician: ADAM NORTICK, M.D. | | Acct#: 000087431 |

**CERVICAL SPINE MRI:**

**HISTORY:** Neck pain and dizziness.

**TECHNIQUE:** Sagittal T1, fast spin echo T2, fat sat fast spin echo T2, axial gradient echo, and axial T1 weighted images.

**FINDINGS:** Comparison is made with a previous exam dated 12-08-04. The patient has had an anterior cervical fusion at C4/5/6/7. There is some mild posterior osteophyte formation at C7/T1, which is unchanged from the previous exam.

There is mild diffuse spinal stenosis through the upper portion of the fusion block, which appears unchanged from the previous exam. I do not see evidence of new disc herniation, spinal stenosis, fracture, or subluxation.

**OPINION:** No interval change in appearance since 12-08-04. Worse abnormality appears to be the mild circumferential spinal stenosis caused by the posterior osteophyte/ligamentous hypertrophy at C7/T1, seen best on the sagittal views.

Radiologist      JOSEPH M. BAILEY, M.D.

Radiologist-Signature

Technologist:     Renee Reach, RT (R)(CT)(MR)
Transcribed by SUZANNEM on 01/12/2006 at 03:31 PM

CLE00094           Page 1 of 1

LINA/Cleiland 0624

# MONTGOMERY IMAGING CENTER

## 2055 Normandie Drive, Suite 108
## Montgomery, Alabama 36111-2743

### Phone (334) 288-4624    Fax (334) 288-8478

| | | | |
|---|---|---|---|
| John H. Payne, III, M.D. | Thomas S. Moore, M.D. | Mark H. LeQuire, M.D. | Mary M. Karst, M.D. |
| David C. Montiel, M.D. | Jason H. Dorey, M.D. | Christopher Dorvault, M.D. | Gary Leung, M.D. |
| Terry D. Williams, M.D. | Byron C. Machen, M.D. | Gordon Smith, M.D. | Oscar P. Orille, M.D. |
| Joseph M. Bailey, M.D. | Daniel S. Noyes, D.O. | Paul Hutchinson, M.D. | Eva Rubin, M.D. |
| David B. Neeland, M.D. | | | Philip S. Piasecki, M.D. |

```
Patient:      CLEILAND, CATHY K.
              DOB:              AGE:047

Referring Physician:  ADAM NORTICK, M.D.
```

```
Account:      000087431 01                    Film#: 20046161

Exam:         MRI CERVICAL SPINE WITH AND WITHOUT
Date:         12/08/04
Location:     MONTGOMERY IMAGING CENTER
```

## MRI CERVICAL SPINE WITH AND WITHOUT CONTRAST:

The study is done without and after IV contrast. History of previous surgery in 97, 01, and 02. Patient has neck pain and pain in both arms and numbness in the right arm.

Multiplanar images obtained of the C-spine without and after IV contrast. The patient is post anterior fusion which I believe is at the C4-5, C5-6, and C6-7 levels. The cervical cord, cervicomedullary junction is unremarkable. There is normal signal from the intervertebral disc. On the images post injection of contrast, I do not see evidence for abnormal enhancement. On the axial images, I do not see evidence for disc herniation or neural foraminal impingement. There is some hypertrophy of the ligamentum flavum at C7-T1 that is causing some impingement on the thecal sac posteriorly at this level. This is obliterating the CSF space, but I don't believe causing significant impingement on the cord.

IMPRESSION:

THE PATIENT IS POST ANTERIOR FUSION, WHICH I BELIEVE IS AT THE C4-5, C5-6, AND C6-7 LEVELS. NO EVIDENCE OF DISC HERNIATION OR NEURAL FORAMINAL IMPINGEMENT. THERE IS HYPERTROPHY OF THE LIGAMENTUM FLAVUM AT THE C7-T1 LEVEL THAT IS CAUSING SOME POSTERIOR IMPRESSION ON THE SUBARACHNOID SPACE AT THIS LEVEL. NO IMPINGEMENT ON THE CORD NOTED.

Radiologist:    PAUL HUTCHINSON, M.D.

Technologist:    RENEE REACH RT MR

Transcribed by CAROLE on 12/08/2004 at 04:52

CLE00095

LINA/Cleiland 0625

3/27/03  10:53 AM COT  via Vxi-FAX

# JACKSON HOSPITAL & CLINIC, INC.
### 1725 PINE STREET
### MONTGOMERY, ALABAMA 36106

Name: CLEILAND, CATHY K.
Physician: RYAN, PATRICK G
MR#: 285142                         X-RAY#: 463643
Order ID: 1190671                   Result ID: 1073900

DOB:                                Age: 46 YEARS
Patient Location: 6301
Account#: 10567192
Addendum Number: 0

Clinical Data: BACKK PAIN  TO LEFT LEG BACK SURGERY
Procedure:  MRI L SPINE W & W/O CONTRAST   Date of Exam: 08/11/2003

TECHNIQUE:
Pre and post contrast T1 axial and sagittal imaging was performed along with multi-echo T2 sagittal and fast spin echo T2 axial imaging was performed.

FINDINGS:
Comparison is made to a recent examination from 07/14/2003. The previously described moderate sized disc extrusion in the left lateral recess of L4-5 has apparently been removed. There is a very small, 5mm area of low signal intensity that is surrounded by enhancing scar tissue that is adjacent to the posterolateral aspect of the intervertebral disc at L4-5 seen only on the post contrast axial images (image 10). This is adjacent to the superior end plate of L5 and is not seen on the parasagittal images. This does not abut or displace the exiting nerve roots. I cannot tell with certainty whether this represents a small piece of bone or a small residual disc fragment but may be clinically insignificant given its small size and no apparent abutment of the nerve roots. There is a fairly extensive amount of enhancing soft tissue in the left epidural space of L4-5. The enhancing soft tissue extends along the anterior aspect of the thecal sac as well as into the left neural foramen. There is no displacement or distortion of the thecal sac. The exiting left L5 nerve root is encased by the enhancing tissue. The patient has significant degenerative disc disease at this level with disc space loss and end plate sclerosis. The remaining intervertebral disc spaces show only some mild disc desiccation. No other areas of disc bulging or protrusion. The conus is normal.

IMPRESSION:
EXTENSIVE POST OPERATIVE CHANGES ON THE LEFT AT L4-5 WITH A LARGE AMOUNT OF ENHANCING EPIDURAL SCAR TISSUE AS DESCRIBED. THE MODERATE SIZED DISC EXTRUSION AT THIS LEVEL IS NO LONGER VISIBLE, HOWEVER THERE IS A SMALL NON-ENHANCING AREA OF LOW SIGNAL INTENSITY NEAR THE LEFT NEURAL FORAMEN AT L4-5. PROBABLY AND CLINICALLY INSIGNIFICANT GIVEN

CLE00096

LINA/Cleiland 0626

ITS SMALL SIZE AND LACK OF ABUTMENT TO THE NERVE ROOTS BUT COULD
REPRESENT A SMALL END PLATE FRAGMENT OR DISC FRAGMENT. THIS IS SEEN
ONLY ON ONE VIEW.

SEVERE DEGENERATIVE DISC DISEASE AT L4-5.

Dictated by: KEN RICHARDSON
Verified by: KEN RICHARDSON

Transcriptionist: EE

Name: CLEILAND, CATHY K.            Order ID: 1190671
Physician: RYAN, PATRICK G          Date: 08/11/2003

CLE00097

LINA/Cleiland 0627



**The**
**Center for Pain**
*of* M O N T G O M E R Y, *p.c.*
David Herrick, M.D. ▼ Brad Katz, M.D.
Adam Nortick, M.D.
P.O. Box 241348
Montgomery, AL 36124

432 St. Lukes Drive
Phone: 334-387-7246
Fax: 334-387-7250

2065 E. S. Blvd., Ste. 401
Phone: 334-288-7808
Fax: 334-288-8089

### PROCEDURE NOTE

**NAME:**     CATHY CLEILAND
**DATE:**     04/07/06
**ACCT:**     14495
**DOB:**

**PREOPERATIVE DIAGNOSIS:** Cervical degenerative disc disease.

**POSTOPERATIVE DIAGNOSIS:** Cervical degenerative disc disease.

**PROCEDURE PERFORMED:** Cervical epidural steroid injection at C5-6 under fluoroscopy with injection of contrast.

**ANESTHESIA:** None.

**COMPLICATIONS:** None.

**PROCEDURE IS AS FOLLOWS:** The patient was prepped and draped in the usual sterile fashion, prone on the OR table. Using fluoroscopic guidance, C5-6 was identified. A skin wheal was raised and an 18 gauge Tuophy needle was advanced under loss-of-resistance technique in the epidural space. Upon entering the epidural space, no paresthesias were elicited, no heme or CSF was aspirated. 5 cc of Omnipaque 240 was injected to confirm needle placement. A total of 80 mg of Depo Medrol and 4 cc of normal saline were injected into the epidural space. The patient tolerated the entire procedure with no acute complications and was discharged home in stable condition after observation for 30 minutes.

**ADDENDUM:** I have refilled her Methadone 10 mg 5 x a day, Lortab 10 mg TID and Baclofen 10 mg TID.

DAVID P. HERRICK, M.D.
Signed without review.

DPH/slc
D: 04/07/06
T: 04/12/06

CLE00098

LINA/Cleiland 0628



**The**
**Center for Pain**
*of* M O N T G O M E R Y, P.C.
David Herrick, M.D. ▼ Brad Katz, M.D.
Adam Nortick, M.D.
P.O. Box 241348
Montgomery, AL 36124

432 St. Lukes Drive
Phone: 334-387-7246
Fax: 334-387-7250

2055 E. S. Blvd., Ste. 312
Phone: 334-288-7808
Fax: 334-288-8089

## PROCEDURE NOTE

**NAME:**     CATHY CLEILAND
**DATE:**     02/06/06
**ACCT:**     14495
**DOB:**

**PREOPERATIVE DIAGNOSIS:** Cervical degenerative disc disease.

**POSTOPERATIVE DIAGNOSIS:** Cervical degenerative disc disease.

**PROCEDURE PERFORMED:** Cervical epidural steroid injection at C5-6 under fluoroscopy with injection of contrast.

**ANESTHESIA:** Versed 4 mg IV.

**COMPLICATIONS:** None.

**PROCEDURE IS AS FOLLOWS:** The patient was prepped and draped in the usual sterile fashion, prone on the OR table. Using fluoroscopic guidance, C5-6 was identified. A skin wheal was raised, and an 18 gauge Tuophy needle was advanced under loss-of-resistance technique in the epidural space. Upon entering the epidural space, no paresthesias were elicited, no heme or CSF was aspirated. 5 cc of Omnipaque 240 was injected to confirm needle placement. A total of 80 mg of Depo Medrol and 2 cc of normal saline were injected into the epidural space. The patient tolerated the entire procedure with no acute complications and was discharged home in stable condition after observation for 30 minutes.

DAVID P. HERRICK, M.D.
Signed without review.

DPH/slc
D: 02/06/06
T: 02/08/06

CLE00099

LINA/Cleiland 0629



**The Center for Pain**
*of* M O N T G O M E R Y, *P.C.*

DAVID HERRICK, MD • BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808
Fax: 334-288-8089

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246
Fax: 334-387-7250

### PROCEDURE NOTE

**NAME:**    CATHY CLEILAND
**DATE:**    08/27/03
**DOB:**

**PREOPERATIVE DIAGNOSIS:** Lumbar degenerative disc disease and lumbar radiculitis.

**POSTOPERATIVE DIAGNOSIS:** Lumbar degenerative disc disease and lumbar radiculitis.

**PROCEDURE PERFORMED:** Lumbar selective nerve root block on the left at L4-5 and L5-S1 under fluoroscopy with injection of contrast.

**ANESTHESIA:** None.

**COMPLICATIONS:** None.

**PROCEDURE IS AS FOLLOWS:** The patient was prepped and draped in the usual sterile fashion, prone on the OR table. Using fluoroscopic guidance, L4-5 and L5-S1 was identified on the left. A skin wheal was raised, and a 25 gauge 3 ½" needle was inserted until the tip of the needle rested in the 12 o'clock position at L4-5 and the second needle at L5-S1. Needle position was carefully confirmed AP and laterally. Divided equally into each needle was 2 cc of Omnipaque 240 to confirm needle placement. A total of 2 cc of 0.75% Marcaine plus 80 mg of Depo Medrol was divided between the two injections. The patient tolerated the entire procedure with no acute complications and was discharged home in stable condition after observation for 30 minutes.

DAVID P. HERRICK, MD
Signed without review

DPH/slb
D: 08/27/03
T: 08/28/03



**The**
# Center for Pain
*of* M O N T G O M E R Y, *P.C.*

DAVID HERRICK, MD • BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808
Fax: 334-288-8089

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246
Fax: 334-387-7250

## EPIDUROGRAM REPORT

**NAME:**    CATHY CLEILAND
**DATE:**    08/27/03
**DOB:**

There are two fluoroscopic images showing contrast injected at L4-5. There is fairly ratty spread of contrast at L4-5 with very poor medial spread of contrast through the neural foramen into the epidural space. A large laminectomy defect is present with significant disc height loss at L4-5. The L5-S1 nerve root is very nicely illuminated with contrast spread medially into the epidural space.

**IMPRESSION:** Epidural fibrosis at L4-5 creating an abnormal epidurogram. No previous films are immediately available for comparison.

DAVID P. HERRICK, M.D.
Signed without review

DPH/slb
D: 08/27/03
T: 08/28/03

CLE00101

LINA/Cleiland 0631



**SCHOOL OF MEDICINE**

Department of Surgery
Division of Neurosurgery

November 17, 2003

Dr. John Hackman
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106

Re: CATHY CLEILAND
UAB #: 000000698678

Dear John:

I saw your patient, Cathy Cleiland, in the Neurosurgery Clinic today. She is a pleasant woman of 46 years and has had a good bit of spinal surgery performed. She has had three separate anterior cervical procedures accomplished over time. She was in a motor vehicle accident in April 2002 and ultimately had lumbar spinal surgery, left-sided L4-5 discectomy, in May 2003. She says she did not have much improvement from this, or at least any lasting improvement. It has become increasingly troublesome to her. She ultimately sought re-evaluation and a second procedure in July 16, 2003 for recurrent disc. She unfortunately states that she is no better. She has developed important back pain, which is different than what she has experienced previously. The left lower extremity pain and dysfunction remains but she now has severe burning dysesthesia in the bottom of the foot, which radiates up to the knee. She also is developing right lower extremity complaints. You have discussed with her the options of additional therapy and she would like my thoughts regarding her circumstance.

Of importance with this woman is that she is a bit overweight for her frame. She is 171 pounds on a 5 foot 4 inch frame. She has juvenile diabetes and has been treated for same for 25 years. She is utilizing Neurontin, Darvocet, Lortab and Flexeril in treatment of her pain syndrome but is really not much better. She has not had much in the way of physical therapy of late. She tried this after her first operation.

She describes mechanical type pain, sharp, stabbing, lancinating pain with motion. She cannot always anticipate which motion is going to give her the trouble. Rolling over in bed, for example, sometimes causes a sharp, stabbing pain that then radiates down her left leg. At other times she can stand and walk and get around reasonably well with just an underlying, severe low backache but will have superimposed sharp, stabbing pains that literally take her breath away. Her pain tends to follow the L5 distribution and also S1 on this left side. She is developing some right-sided complaints as well. She walks with a

The University of Alabama at Birmingham
1030 Faculty Office Tower ● 510 20th Street South
Birmingham, Alabama 35294-3410
(205) 934-7170● FAX (205) 934-6507

4

CLE0010

LINA/Cleiland 0632



03:00pm  From·SURGERY MED RECORDS                    2058704600         T-256    P.05    F-326

limp and the more she walks, the more she limps. She walks in a flexed position too, very careful with the positioning of her spine and her step. She really tries to avoid any jarring. She cannot keep shoes on her feet more than two to three hours because of the burning dysesthesias, particularly on the left but the right as well.

As we examine her, she does have pain that appears mechanical. She has a real tough time with flexion, extension, laterally bending or rotation of the lumbar spine. This tends to cause focal back pain, sometimes sharp with lancination down the left leg. She appears to be weak in the extensor hallucis longis and anterior tibialis on that left side compared to the right. She indeed has burning dysesthesias in the L5 and S1 distribution on the left. She has reduced ankle response on the left.

I reviewed films on Cathy from prior to her original surgery to her most recent three sets of MR studies with two different sets of plain spine films. She has what appears to be collapse and degeneration despite attempted discectomy times two. I think she has developed failure of the facet complex on this left side and then subluxation and collapse, which is causing further canal compromise. There is a good bit of scar in around the previous operative site. I do not see specific disc material, which has re-herniated, but significant collapse with narrowing and angulation with a grade I spondylosis.

I think Cathy Cleiland has developed lumbar spinal instability with recurrent nerve root compression. I think some of her components, particularly the burning dysesthesias in the left lower extremity, are probably the result of nerve root injury from her pathology and its attempted treatment. I do think her mechanical instability and ongoing neuro compression can be improved with an operative procedure to provide decompression, internal fixation and fusion with the hope to restore her normal lumbar lordosis and interspace height. While I do not think she will have alleviation of her severe burning dysesthesias in her left lower extremity, she does have a very good opportunity to benefit from the above-mentioned procedure. Cathy would like to proceed. We have tentatively selected the date of December 9 as an operative date. We will complete the history, physical and preoperative counseling today. I will keep you posted on our progress. Thank you for asking me to provide an opinion on this pleasant woman.

Sincerely,

Mark N. Hadley, M.D.
Professor of Neurosurgery

MNH/hr

DSCjob#1117-507

5

CLE00103

LINA/Cleiland 0633

17-06 03:01pm  From-SURGERY MED RECORDS               2059704600      T-256  P.06/20  F-326

Sincerely,

Mark N. Hadley, M.D.
Professor of Neurosurgery

MNH/npp

job#21-0714-425

6

CLE00104

| CLEILAND CATHY K | 698678 | 07/14/2004 | 07/14/2004 13:48:: |
|---|---|---|---|
| Patient Name | MRN | Observation Date | Last Edited Date |

**Result Type:**
MR Lumbar Spine wo+w contrast

**Reason For Exam:**
lumbar sacral spine - lumbar stenosis

**Results:**
**Evaluate operation on the lumbar spine:**
There is loss of normal lordosis of the lumbar spine. There is
evidence of marrow change in relation to the disc L4-5 with evidence of
operative intervention with metallic prosthesis using plates and
pedicular screws. There is minimal malalignment with a step deformity
between L4 and L5. Conus medullaris is normal ending at T12-L1.
Possibility of a transitional vertebra at the lumbosacral junction
cannot be excluded. For proper level determination, plain film
examination of the thoracic and lumbar spine is recommended. There is
evidence of laminectomy in the lower lumbar and lumbosacral region.
There is evidence of stenosis at L3-4 with a minimal disc bulge.


Paraspinal muscles appear normal.


After gadolinium injection, enhancement noted at the level of fusion at
L4-5. No evidence of abnormal enhancement in the paraspinal region.


**IMPRESSION:**
Post operative changes with abnormal enhancement in relation to the
disc plates at L4-5. Mild to moderate stenosis noted at L3-4. The
enhancement in relation to L4-5 could be due to degenerative changes
Type I, however inflammatory changes cannot be entirely excluded.

LPM

**Signature Line:**
Final Report
Interpreted by: Taher T. El Gammal
Title: MD
Signed Date/Time: 07/14/04 13 12

*End of document as received by CDA*


https://horizon.hs.uab.edu/cgi-bin/cda/user/show_note.cgi?RS_::13742916:0:20040714134...  8/17/2006


https://horizon.hs.uab.edu/ipv/servlet/IPVViewDocument?isNS47=no&rid=3266275     8/17/2006

CLE0010

LINA/Cleiland 0635

uu-17-06  03:02pm  From-SURGERY MED RCORDS                    2059704600        T-256   P.11/20   F-326

# THE KIRKLIN NEUROSURGERY CLINIC
## CLINIC NOTE

| CLEILAND, CATHY K | 000000698678 | 01/14/2004 |
|---|---|---|
| Patient Name | Record Number | Visit Date |

Cathy Cleiland is seen back in the Neurosurgery Clinic today. She is four weeks out after re-operative lumbar spine surgery at L4-5 with posterior lumbar interbody fusion and internal fixation. While she is standing better and has better function in her left lower extremity, she still has severe, burning dysesthetic pain in her legs, worse in the left leg than the right. This is very similar to her preoperative circumstance. She is using Neurontin 300 mg to 600 mg three times per day. She is still using a fair bit of pain medication. Her wound was giving her trouble but she has no tenderness or soreness there.

On examination, her wound looks good. She has a scab on the bottom but it is not erythematous, not leaking. The skin edges are simply healing. There is no fullness or fluid here. She can bend and move her spine and certainly her posture is much better than it was prior to surgery. She cannot yet walk on her heels but can on her toes. Independent testing reveals improved strength in the extensor hallucis longis and anterior tibialis on the left compared to preoperatively.

Imaging studies were not performed today. We will obtain these in four weeks. I am going to put her on an elevated dose of Neurontin 800 mg qid. We will continue to offer supportive care. We will get her involved in physical therapy as an outpatient. I will see her back in four weeks.

MNH/hr/2823
D: 2004-01-14
T: 1/15/04 12:12 PM
DOB: 07/11/1957

Mark N. Hadley, M.D.
Professor of Neurosurgery

cc:

job#:0114-176

1
NeuroSurgCN-Hadley

CLE00100

LINA/Cleiland 0636

7-06 03:02pm  From-SURGERY MED RECORDS        2058704600        T-256  P.12/20  F-326

## THE KIRKLIN NEUROSURGERY CLINIC
## CLINIC NOTE

| CLEILAND, CATHY K | 000000698678 | 02/11/2004 |
|---|---|---|
| Patient Name | Record Number | Visit Date |

Cathy Cleiland is seen back in the Neurosurgery Clinic today.  She is two months out from L4-5 decompression, stabilization and fusion.  She is doing okay.  She is using Darvocet N-100 for pain, which is substantially a lower dose of narcotic than she has used in the past. She is using Neurontin 800 mg TID same as her preop.  She is still having important and bitter burning dysesthesias in that left lower extremity.  She has been plagued with that.  She states she does not feel any better in that left leg after her operation than she did six months ago.  Her only change she notes is that she is not having the same kind of back pain she has had previously.

On exam, I bring out residual weakness in the tibialis anterior and extensor hallucis longis on the left side.  I bring out no other abnormalities.  Radiographic studies today look pretty good.  Internal fixation and fusion, PLIF construct looks fine as it has previously.

I have given my support and encouragement to Cathy.  We are going to refill her Robaxin and her Darvocet medications today.  She needs to give this more time.  As we told her preoperatively, the burning dysesthesias and longstanding nature of her problems in her left lower extremity including weakness, sensory loss and the dysesthesias are not terribly positive signs for a complete recovery.  Hopefully, she will continue to improve over time. We will assist her as we can and see her back in four months at her six-month followup.

MNH/hr/2823
D: 2004-02-11
T: 2/12/04 9:18 PM
DOB: 07/11/1957

Mark N. Hadley, M.D.
Professor of Neurosurgery

cc:

job#:0211-043

1
NeuroSurgCN-Hadley

1
NeuroSurgCN-Hadley

12

**CLE001**

**LINA/Cleiland 0637**



**Health**
System
2000 6th Ave. South
Birmingham, AL
35249

Name: CLEILAND, CATHY K.
MRN: 000000008678
DOB:              Age: 47 Years
Race: Unknown KNEU//
Attending: Hadley, Mark N
Fin #: 406694196  Fin Class: Blue Cross
Admit Date:

| Accession Number: | Date of Service: | Ordering Physician | Exam: |
|---|---|---|---|
| MR-04-0011739 | 7/14/2004 | Hadley, Mark N | MR Lumbar Spine wo+w contrast |

**Indications**
lumbar sacral spine - lumbar stenosis

**Results**
Evaluate operation on the lumbar spine:
There is loss of normal lordosis of the lumbar spine.  There is
evidence of marrow change in relation to the disc L4-5 with evidence of
operative intervention with metallic prosthesis using plates and
pedicular screws.  There is minimal malalignment with a step deformity
between L4 and L5.  Conus medullaris is normal ending at T12-L1.
Possibility of a transitional vertebra at the lumbosacral junction
cannot be excluded.  For proper level determination, plain film
examination of the thoracic and lumbar spine is recommended.  There is
evidence of laminectomy in the lower lumbar and lumbosacral region.
There is evidence of stenosis at L3-4 with a minimal disc bulge.

Paraspinal muscles appear normal.

After gadolinium injection, enhancement noted at the level of fusion at
L4-5.  No evidence of abnormal enhancement in the paraspinal region.

IMPRESSION:
Post operative changes with abnormal enhancement in relation to the
disc plates at L4-5.  Mild to moderate stenosis noted at L3-4.  The
enhancement in relation to L4-5 could be due to degenerative changes
Type I, however inflammatory changes cannot be entirely excluded.

LPM
Final Report
Interpreted by:  Taher T. El Gammal
Title: MD
Signed Date/Time: 07/14/04 13:12

CLE00108

LINA/Cleiland 0638

Aug-17-06  03:03pm   From-SURGERY MED RECORDS          2059704600          T-256   P.15/20   F-326

)                                                    )

**LAB**   The University of Alabama at Birmingham             PAGE 1
          The Medical Center/University of Alabama Hospitals

## DISCHARGE SUMMARY

NAME: CLELAND, CATHY            MED.REC.NO.: 00698678      ROOM:

SERVICE: Mark N. Hadley, M.D./2823   ADMITTED: 12/16/03     DISCHARGED: 12/18/03

                                DICTATED: 12/18/03         TRANSCRIBED: 12/18/03

ADMISSION DIAGNOSIS:      Lumbar instability.

DISCHARGE DIAGNOSIS:      Same.

PROCEDURE:                L4-5 laminectomy and diskectomy with
                          L4-5 internal fixation and fusion and
                          L4-5 posterior lumbar interbody fusion
                          by Dr. Hadley on 12/16.

HISTORY OF PRESENT ILLNESS: The patient is a 46-year-old white
female with a one and a half year history of low back pain and
left leg pain with numbness in the lateral left leg and plantar
surface of the left foot. She has a history of prior lumbar
surgery. Exam and imaging is consistent with L4-5 instability.
She presents now for elective decompression with L4-5 posterior
lumbar interbody fusion.

Please see history and physical for further details.

HOSPITAL COURSE: The patient underwent the aforementioned
procedure which she tolerated without difficulty. She was
followed on the floor postoperatively where she had an
uncomplicated hospital course and mobilized in a timely fashion
and she remained neurologically stable in comparison to her
preoperative exam. She had a slight foot drop on the left
preoperatively and this was felt to have improved actually
somewhat on postoperative day one with almost normal strength on
the left side with dorsiflexion. She was fitted with an LSO brace
and approved for discharge the morning of 12/18.

DISCHARGE CONDITION: Good.

DISPOSITION: Home.

DISCHARGE MEDICATIONS: Neurontin 300 mg t.i.d.; Robaxin, Lortab,
and Advil as needed for pain.

CLE0010

LINA/Cleiland 0639

Aug-17-06  03:03pm    From-SURGERY MED RECORDS                2050784600          T-256   P.16/20   F-326

)                                    )                        PAGE 2

**LIAB**    The University of Alabama at Birmingham
            The Medical Center/University of Alabama Hospitals

### DISCHARGE SUMMARY

NAME: CLEILAND, CATHY              MED.REC.NO.: 00698678    ROOM:

Followup is on 12/29 for a wound check with Dr. Hadley.

Kevin N. Ammar, M.D./07734/TL032

Mark N. Hadley, M.D.

16

CLE00110

LINA/Cleiland 0640

Aug-17-06  03:04pm  From-SURGERY MEDICAL RECORDS    2059704600    T-256  P.17/28  F-326



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

PAGE 1

### OPERATION NOTE

NAME: CLEILAND, CATHY

MED.REC.NO.: 00698678    ROOM:

SURG: MARK N. HADLEY, M.D.

ASSIST: AJAY K. ANANDA, M.D.

SURG.SIGN.: _____

DATE OPER.: 12/16/03          ADMITTED: / /          DISCHARGED: / /

SERVICE: MARK N. HADLEY, M.D.      DICTATED: 12/16/03      TRANSCRIBED: 12/16/03

DOCTOR/SERV.SIGN.: _____

PREOPERATIVE DIAGNOSIS:    Lumbar spinal instability, with L5
                           radiculopathy, left greater than right.

POSTOPERATIVE DIAGNOSIS: Same.

PROCEDURES PERFORMED:    1.  L4-L5 laminectomy for decompression.
                        2.  L4-5 diskectomy, bilateral, with L4-5
                            posterior lumbar interbody fusion,
                            bilateral.
                        3.  Internal fixation L4-L5, bilateral.
                        4.  Autologous bone dorsolateral fusion
                            L4-L5, bilateral.

ANESTHESIA:  General with endotracheal intubation.

INDICATIONS:  This is a 46-year-old female who has had previous
L4-5 surgery.  She has developed collapse and instability at L4-5,
with marked L5 root compression and foot drop.  She has horrific
pain, both mechanical in nature and radicular in nature,
bilateral, again left more than right.  She is a candidate for
operative decompression at the L4-5 level, followed by L4-5
posterior lumbar interbody fusion and internal fixation and
dorsolateral fusion.  She understands the indications for as well
as the risks of the procedure.  She wishes to proceed.  Consent
has been obtained.

OPERATIVE TECHNIQUE:  After smooth induction of anesthesia and
intubation, the patient was carefully moved from the hospital bed
to the operating table and placed in the prone position on the
Wilson frame.  The patient's lumbosacral spine was shaved,
prepped, and draped in the usual sterile fashion.  I used the
previous skin incision but essentially extended the incision from
the inferior portion of L3 down to the superior portion of S1.
There was a great deal of scar on this left side, particularly at
L4-5.  I dissected down bilaterally, exposing the spinous process
and lamina of L4 and the spinous process and lamina of L5.  There

17

CLE00111

LINA/Cleiland 0641

Aug-17-06  03:04pm   From-SURGERY MED RECORDS                    2059704600          T-256   P.18/20   F-326



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

PAGE 2

### OPERATION NOTE

NAME: CLEILAND, CATHY                    MED.REC.NO.: 00698878     ROOM:

was marked facet mobility, in fact fractured facet at the L4-5 level on the left with collapse. I dissected out laterally bilaterally and exposed the facet complex at L4-5 and then the transverse process of L5. I worked up in a careful manner in a cephalad direction and exposed the transverse processes of L4 bilaterally, using great care to avoid any compromise or exposure of the L3-4 facet complex. I irrigated the wound with antibiotic solution. I then used a double-action rongeur to remove the spinous processes and lamina which remained at L4 and L5. I had dissected around the L4-5 scar on the left side, of course, but was able to do so and then fully decompress the thecal sac from superior L4 through L5. Working from the patient's left side toward the right, I undercut the medial facet complex and decompressed the lateral recess stenosis here. I took the L4-5 facet down as well. I went around to the patient's right, worked back toward the left, worked around and through scar, and decompressed the exiting L5 root which was markedly compromised, as well as the exiting L4 root. There was tremendous scar here from this collapsed, fractured, and failed facet. I then worked underneath the L5 root on the left, worked in a cephalad direction, and found recurrent disc herniation. I was able to dissect through this using both blunt and sharp dissection techniques, avoiding injury to the L5 and the L4 root, and then retract the nerve root medially. The markedly collapsed interspace here was identified. Posterior lumbar interbody fusion instruments were then sequentially used, beginning with an 8 mm blade up to an 11 mm blade, decorticating the inferior left endplate of L4 as well as the superior endplate of L5. Disc material was removed with interspace rongeurs. I then dissected on the patient's right side, careful to avoid any compromise of the L4-5 root on the right. Again, posterior lumbar interbody blades were used to remove disc material and decorticate the endplates sequentially from 8 mm to 11. I then used a box cutter to decorticate the endplates even better at the inferior L4 and superior L5 bilaterally. I then placed a distraction device in the interspace 12 mm. I used a 13 mm allograft posterior lumbar interbody fusion substrate and tapped these as interposition grafts, first on the patient's left and then the right. These appeared to be in good position, and we had markedly increased, although not quite to normal, the interspace height from her preoperative collapsed circumstance. There was immediate firmness and stability to this previously very unstable joint. I then passed bone screws via the pedicles into the bodies with the use of intraoperative fluoroscopy into L4 and L5 bilaterally. I decorticated the exposed dorsolateral surfaces of L4 and L5. I morselized all the patient's bone which I had removed during the laminectomy and facetectomy completely of L4 and L5, admixed this

18

CLE0011

LINA/Cleiland 0642

Aug-17-06  03:04pm   From-SURGERY MED RECORDS                 2059704680              T-256   P.19/20   F-326



PAGE 3

**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

**OPERATION NOTE**

NAME: CLEILAND, CATHY                 MED.REC.NO.: 00698678    ROOM:

with bone morphogenic protein putty and paste, and then packed it over the exposed dorsolateral surfaces of L4 and L5.  Contoured rods were then secured to the bone screws at L4 and L5 bilaterally and locked into position, completing the procedure.  I irrigated the wound with antibiotic solution.  There was no evidence of nerve root compromise, thecal sac compression, or CSF leak. Bleeding was well controlled.  I placed a drain.  We closed the wound in multiple layers.  The skin edges were approximated with a running nylon suture.

I personally supervised the entirety of the procedure and performed the essential elements outlined above.

Mark N. Hadley, M.D./07120/TL030

19

CLE00113

LINA/Cleiland 0643

'-06  03:05pm  From-SURGERY MED RECORDS         2059704600        T-256   P.20/20   F-326

# THE KIRKLIN NEUROSURGERY CLINIC
## CLINIC NOTE

| CLEILAND, CATHY K. | 000000698678 | 06/09/2004 |
|---|---|---|
| Patient Name | Record Number | Visit Date |

**SUMMARY:**
Cathy Cleiland is seen back in the Neurosurgery Clinic today. She underwent L4-L5 posterior lumbar interbody fusion with internal fixation and fusion on December 16, 2003. She states that she has had improvement in back pain. She no longer has the sharp, stabbing, mechanical complaints. Unfortunately, she continues to have severe painful dysesthesias in her lower extremities, left more than right. This is very similar to preop. We cautioned her and were concerned that the burning dysesthesias in her legs prior to surgery may not be improved by surgery. We certainly hoped that she would improve and, at least thus far, have not given up hope that improvement may occur. On exam, she is stiff. She does not bend and flex much, but can flex, extend, laterally bend, and rotate without evidence of instability. Motor, sensory and reflex testing is quite good in the lower extremities. She can walk on her toes and her heels.

Radiographic studies today demonstrate intact internal fixation hardware and good placement of fusion mass at the L4-L5 level. There is no malalignment. There is no pathology above or below.

We have done what we can for Cathy Cleiland. We will continue to monitor progress on an intermittent or six-month type basis. There is nothing additional at present for neurosurgery to provide other than supportive care.

MNH/npp/2823
D: 2004-06-09
T: 6/10/04 7:29 AM
DOB: 07/11/1957

Mark N. Hadley, M.D.
Professor of Neurosurgery

job#22-0609-301

1
NeuroSurgCN-Hadley

20

CLE00114

LINA/Cleiland 0644



SPRINGHILL MEMORIAL HOSPITAL

Radiological Consultation

NAME: CLEILAND, CATHY K.
ADDRESS:

Age: 43Y      Sex: F      DOB:

Chk-in #    Order    Exam
173817      0001     4615      MR SPINE CERVICAL W/O CONTRAST
                               Ord Diag:

Comparison to previous examinations of 10/01/

IMPRESSION:

1.  INTERVAL WORSENING OF SEVERE CENTRAL CANAL NARROWING DUE TO INCREASE
TO BROAD BASED POSTERIOR MARGINAL OSTEOPHYTE AND ASSOCIATED DISC
HERNIATION SINCE PREVIOUS STUDIES.

2.  UNCHANGED POST SURGICAL APPEARANCE TO C5-6.

3.  C3-4, C4-5 AND C7-T1 LEVELS UNCHANGED SINCE PREVIOUS

                               /Read By/
                               /Released By/

AAH

FINAL

CLE00115

LINA/Cleiland 0645

**SPRINGHILL MEMORIAL HOSPITAL**
**EMERGENCY PHYSICIAN REPORT**

Patient Name: CLEILAND, CATHY K
Patient ID: 9220790     Admit Date/Time: 02/25/2001  15:11
DOB:                        Gender: F    Race: White

CHIEF COMPLAINT:  Pain in back and neck
Patient complains of chronic pain in neck and back for 4 years status post an MVA. Patient is under
the care of a chronic pain specialist, and has had cervical spine surgery for same thing.  Patient
states that over the past year for symptoms and gotten worse, and that her intrathecal injections of
antinflammatories are becoming less and less effective.  Patient is three weeks s/p last injection, and
as opposed to previous episodes, patient states that she didn't get any relief.  The patient also states
that over the past few weeks, the tips of her fingers ( third and fourth) are numb.  Patient called Dr
Snitzer, who instructed the patient to come to ED for evaluation.
There are no other complaints.
REVIEW OF SYSTEMS:
OTHER SYSTEMS:  All other systems that were reviewed were negative.
PMH: Medical History: diabetes
Prior Surgery: C-section, cervical fusion.
PATIENT'S ALLERGIES: The patient denies having any medication allergies.
PATIENT'S CURRENT MEDICATIONS: see list
SOCIAL HISTORY: The patient is a nonsmoker.
FAMILY HISTORY:  No Family History is pertinent to the present complaint.

PHYSICAL EXAM:  Vital Signs: Reviewed Nurse's notes.
PATIENT STATUS: is in no distress, alert and cooperative.
HEAD: Atraumatic, without temporal or scalp tenderness.
NECK: Supple, nontender, no lymphadenopathy.
CHEST: Nontender, symmetrical, no retractions.
LUNGS: Clear to auscultation and breath sounds equal, no wheezes, rales, or rhonchi.
HEART: Regular rate and rhythm, without murmurs, ectopy, gallops, or rubs.
ABDOMEN: Soft, nontender.
ARM:  Right arm.  Nontender.  Nonswollen.  Range of motion: full.  No deformity.
SKIN: Normal.  Neurovascular status: motor impaired mildly weaker on the right than left, but patient
unable to give full effort with positive "breakaway weakness".  Sensation impaired per patient in tips of
finger..  The distal pulses are normal.
REFLEXES: normal. with exception of decreased brachioradialis on the right compared to left.
GAIT: Normal.
BACK: No costovertebral, paravertebral, intervertebral, or vertebral tenderness or spasm.

TREATMENT:
CONSULT:  Dr Snitzer was consulted by phone and we have discussed the above..  He asked that
the patient be given analgesia, and asked that the patient follow up in his office in the am.
Demerol, Phenergan, Toradol was given.

DIAGNOSIS:  Back Pain, 724.5
Neck Pain, 723.1
Numbness, 782.0

DISPOSITION: Patient was discharged home accompanied by family.
 The patient's condition at discharge was stable. See the Emergency Department face sheet for
discharge instructions.

E.D. Clinician:              Michael A. Mahoney, MD         EMERGENCY DEPARTMENT
Date:                            Sun Feb 25, 2001      Page 1 of 2

CLE00116

LINA/Cleiland 0646

SPRINGHILL MEMORIAL HOSPITAL

Radiological Consultation

HOSPITAL #: 0781295

DATE:     12/28/99

LOCATION:   O/P

ORDERING PHYS: MIDDLETON,TROY H.

NAME: CLEILAND,CATHY
ADDRESS:                    JACKSON          AL  36545

Age: 42Y     Sex: F     DOB:              MR Number: 00173126

Chk-in #   Order   Exam
  86703    0001    1030    XR SPINE CERV SERIES
                          Ord Diag: NECK PAIN,FALL


There is fusion between C5 and C6 vertebral bodies. The alignment is
normal. There is no encroachment upon the foramina. The other
vertebral bodies and interspaces are normal.


IMPRESSION: FUSION AT THE C5-6 LEVEL.


                    /Read By/ Pavel M Lichtenstein, M.D.
                    /Released By/ Pavel M Lichtenstein, M.D.
FB

FINAL

CLE00117

LINA/Cleiland 0647

SPRINGHILL MEMORIAL HOSPITAL

Radiological Consultation

HOSPITAL #: 07578095

DATE:      12/01/99

LOCATION:    O/P

ORDERING PHYS: HINTON,JOHN L JR

NAME: CLEILAND,CATHY
ADDRESS:                    JACKSON          AL   36545

Age: 42Y      Sex: F     DOB:                    MR Number: 00173126

Chk-in #   Order   Exam
  81810    0001    4615    MR SPINE LEVEL 2 CERVICAL
                          Ord Diag: NECK PAIN

There are no previous cervical spine MRIs available for comparison.
Routine sagittal and axial images were obtained utilizing both T1 and
T2 weighted technique.  Posterior fossa and spinal cord have normal
intensity.

IMPRESSION: 1) PREVIOUS ACD AND F AT C5-6 WITH MILD POSTERIOR BONY BAR
FORMATION WHICH IS CAUSING MINIMAL CENTRAL CANAL NARROWING.

2) AT C6-7, THERE IS A BROAD BASED POSTERIOR MARGINAL OSTEOPHYTE WHICH
IS CAUSING MODERATE TO SEVERE CENTRAL CANAL NARROWING, THIS IS BEST
VISUALIZED ON AXIAL VIEWS.

3) C3-4, C4-5, AND C7-T1 LEVELS UNREMARKABLE WITHOUT EVIDENCE OF DISC
HERNIATION AT ANY LEVEL.  ALL FINDINGS ARE SUPERIMPOSED UPON MILD TO
MODERATE DEGENERATIVE FACET DISEASE AT ALL LEVELS EXAMINED.

/Read By/ Carl E Blunck, M.D.
/Released By/ Carl E Blunck, M.D.

LF

FINAL                          RADIOLOGY REPORT          Page  :1

CLE00118

LINA/Cleiland 0648



P.O. BOX 8248
MOBILE, ALABAMA 36608

3719 DAUPHIN STREET
(334) 344-9839

Cleiland, Cathy
TBA

PHYSICIAN: William Faircloth, M.D.

MRN:
ACCOUNT NO:
ADM DATE: 01/15/99

## HISTORY & PHYSICAL

**PRIMARY PHYSICIAN:**     Brent Faircloth, M.D.

**HISTORY OF PRESENT ILLNESS:**
Ms. Cleiland is a 41 year old right handed white female who I performed anterior cervical discectomy fusion at Springhill Memorial Hospital in November of 1997. She did extremely well from that, but more recently has had progressive right hand and forearm pain. It has worsened, and is now to the point that it awakens her at night. She has pain with driving her car, and if she hyper-extends or flexes her wrist. She has developed numbness of her thumb, index finger. She feels though that her strength has remained unchanged. She underwent peripheral nerve conduction studies with Dr. Ed Snitzer who had identified a severe carpal tunnel syndrome on the right. She failed to improve with non-steroidal anti-inflammatory agents, as well as cock-up splints. She is being admitted for carpal tunnel release.

**PAST MEDICAL HISTORY:**
Significant for the anterior cervical discectomy. Medical history is significant for diabetes and she takes insulin 13 units of regular and 27 units of NPH twice a day.

**ALLERGIES:**      No known drug allergies.
**OCCUPATION:**     Human Resources Manager
**SOCIAL HISTORY:**  She is married.
**HABITS:**         Tobacco usage - none; Alcohol usage - occasional.
**FAMILY HISTORY:**  Father is age 76 and healthy; mother is 73 and healthy. She has three brothers ages 36, 49, and 51; all are healthy. She has one sister age 45 and healthy.

**PHYSICAL EXAMINATION:**
**GENERAL:**  Well developed, well nourished, middle aged, white female.
**HEENT:**    Normocephalic and atraumatic. Pupils equal, round, and reactive to light and accommodation. Sclerae non-icteric. Conjunctiva pink. Nares patent; Septum in midline. Oropharynx without inflammation, irritation, injection.
**NECK:**     Supple without adenopathy or thyromegaly. She has no JVD and no bruits.
**LUNGS:**    Symmetrical expansion of lungs; lungs clear.

Continued, page two....

CLE00119

LINA/Cleiland 0649



P.O. BOX 8248
MOBILE, ALABAMA 36608

3719 DAUPHIN STREET
(334) 344-9838

Cleiland, Cathy                    PHYSICIAN:    William Faircloth, M.D.

PAGE 2...

HEART:          Regular rate and rhythm without gallops or murmurs.
ABDOMEN:        Soft. Non-tender. Non-distended.
NEUROLOGIC:     She is awake, alert and oriented x 3. Memory, intelligence,
                judgement and affect were all appropriate and within normal
                limits. Motor strength was 5/5 throughout. Reflexes were
                2+/2. She had decreased pinprick in her thumb, and index
                finger of her right hand, normal elsewhere. She had a
                positive tinel sign at her wrist and had pain with maximal
                flexion and extension of her wrist on the right.

IMPRESSION:     Carpal tunnel syndrome, right

PLAN:
1.    Admit
2.    Right carpal tunnel release

DISCUSSION:
I had a long discussion with Ms. Cleiland. I explained the anatomy and
pathology of her lesion at length, in plain English, and in great detail.
I explained to risks to include the possibility of infection, hemorrhage (
REPORT CUT OFF AT THIS POINT........

Signature::
D: 01/14/99    T: 01/14/99   mmc



CLE00120



P.O. BOX 8246
MOBILE, ALABAMA 36608

3719 DAUPHIN STREET
(334) 344-9630

CLEILAND, CATHY                    PHYSICIAN:    William Faircloth, M.D.

MRN:   OP
ACCOUNT NO:
ADM DATE:

## OPERATIVE SUMMARY

**SURGERY DATE:** 01/15/99

**SURGEON:**    William Faircloth, M.D.

This was a clean case performed in O.R. Room 9.

**PREOPERATIVE DIAGNOSIS:** Right carpal tunnel syndrome

**POSTOPERATIVE DIAGNOSIS:** Same.

**PROCEDURE:**                    Right median nerve decompression

**ASSISTANT:** Mr. David Redd, ORT
**CIRCULATING NURSE:** Ms. Candy Cannibus
**ANESTHESIA:** Monitored anesthesia care
**ANESTHESIOLOGIST:** Dr. Hanlon
**ANESTHETIST:** Mr. Lamar Brown, CRNA
**COMPLICATIONS:** None.
**ESTIMATED BLOOD LOSS:** Less than 20 ccs.

**BRIEF HISTORY:** Ms. Cleiland is a 41 year old right handed white female who presented with intractable right wrist pain. EMGs revealed evidence of carpal tunnel syndrome. In view of the fact that she failed to improve with conservative management, she is admitted for surgery.

**DESCRIPTION OF PROCEDURE:** The patient was brought to O.R. Room 9. The right hand and arm were prepped with multiple applications of Betadine scrub and Betadine. The patient was then sterilely draped in the routine fashion. Planned skin incision was infiltrated with 1% Lidocaine, with sodium bicarbonate. An incision was created in the midline, and carried down to the first flexor crease, and extended down into the palm. The palmaris ligament was identified, and the median nerve was identified just posterior to this. I opened the carpal ligament along the nerve well down into the palm. Meticulous hemostasis was achieved. The patient could move her thumb and index finger well. She could oppose her thumb to her small finger. She reported that she had improved sensation in her hand.

**CONTINUED, PAGE TWO....**

CLE00121

LINA/Cleiland 0651



P.O. BOX 8248
MOBILE, ALABAMA 36608

3710 DAUPHIN STREET
(334) 344-0800

CLEILAND, CATHY

PHYSICIAN:    William Faircloth, M.D.

PAGE 2...

The wound was closed in layers by approximating the subcutaneous tissue
with interrupted 4-0 Vicryl and the skin edges with running subcuticular 4-
0 PDS.

The patient was taken to the recovery room in satisfactory condition.

"I authorized my name to be electronically affixed by using
my unique dictation computer key."

Signature::
D: 01/15/99      T: 01/17/99      mmm          William Faircloth, M.D.

CLE00122

LINA/Cleiland 0652

Patient ID: 9132105.76
Patient Name: Cleiland, Cathy
40 year old well-appearing white female.
MODE OF ARRIVAL: Patient arrived via private automobile.
Time seen by clinician: 1:10 pm.
CHIEF COMPLAINT:  Left lower abdominal pain, left lower back pain
Patient complains of having urinary symptoms for approximately 2-3 weeks
prior to arrival.  There has been moderate dysuria, no hematuria, moderate
frequency, moderate urgency and a low grade fever.  There has been mild
left-sided flank pain.  There has been mild suprapubic abdominal pain.
There has been no nausea.  There has been no vomiting.  There has been no
vaginal discharge and no vaginal bleeding.
LMP: 3 weeks ago.  Patient has had frequent UTI's for 2 months now.

REVIEW OF SYSTEMS:
GENERAL:  some chills.
THROAT:  no sore throat.
RESPIRATORY:  no cough, no dyspnea.
CARDIAC:  no chest pain.
PMH:  The patient has a history of insulin dependent diabetes.  No
allergies.  Currently not on antibiotics
SOCIAL HISTORY: Lives in Jackson, AL
PHYSICAL EXAM:  Vital Signs: Reviewed Nurse's notes.
PATIENT STATUS:    comfortable, alert and cooperative.
EYES: PERRL, EOMI, no discharge or injection.
EARS: TMs without perforation, injection, or bulging. External canals clear
without exudate.
THROAT: Pharynx without injection, exudate or tonsillar hypertrophy.
Airway patent.
NECK: Supple, nontender, no lymphadenopathy.
Without Kernig's or Brudsinski's signs.
LUNGS: Clear to auscultation and breath sounds equal, no wheezes, rales, or
rhonchi.
HEART: Regular rate and rhythm, without murmurs, ectopy, gallops, or rubs.
ABDOMEN:  Mild suprapubic, lower left lower tenderness.  Normal bowel
sounds.  No rebound.  No guarding.  Mild left-sided flank tenderness.  No
distension.  No tympany.  No mass is palpable.
EXTREMITIES: Symmetrical, full range of motion, equal tone and strength. No
cyanosis, edema, joint tenderness or effusion.  Pulses equal bilaterally.
DIFFERENTIAL DIAGNOSIS: UTI, pyelonephritis, kidney stone, pregnancy, among
others

GLUCOSE: Fingerstick, 69, normal.
Urine pregnancy negative.
URINALYSIS:  consistent with a urinary tract infection
URINE CULTURE: obtained.
CBC: WBC 11.2 within high normal limits.  Otherwise normal. CREATININE

E.D. Clinician:  John L. McCormick, M.D., FACEP Emergency Physicians Group
Date:          Tue Mar 17, 1998               Page 1 of 1

CLE00123

LINA/Cleiland 0653

Patient Name: Cleiland, Cathy
Patient ID: 1311405.76

0.7 within normal limits.
INTERVENTION:
Tylenol 1 gram po was given
Gentamicin 90 mg IV was given.
Toradol 60 mg IV was given. After treatment the patient's symptoms were
moderately relieved
REEXAMINATION at 4:45 pm
The patient's condition is improved. Continues with mild back pain
markedly improved Patient ate a snack in ED. Patient has slight
palpitations, heart rate 100, regular.
DIAGNOSIS:
Urinary Tract Infection, 599.0
Fever, 780.6
Diabetes Mellitus, Type I (Insulin Dependent), No Complications, 250.01

DISPOSITION: Patient was discharged home.
The following prescriptions were given to the patient: Macrodantin 100 mg
every 6 hours X 10 days
Pyridium 200 mg every 8 hours X 2 days
Motrin 800 mg every 8 hours w/meals
   Return to the emergency department for high fever, worsening back pain,
abdominal pain, persistent vomiting, or if your condition otherwise seems
to worsen. The patient was advised to follow-up with Family Physician in
2-3 days For continued symptoms .

                    John L. McCormick, M.D., FACEP
                    Tue Mar 17, 1998, 04:43 PM

E.D. CLINICIAN
Date:

CLE00124

LINA/Cleiland 0654



Patient ID: 9133105.76
Patient Name: Cleiland, Cathy

DIAGNOSIS:
Urinary Tract Infection, 599.0
Fever, 780.6
Diabetes Mellitus, Type I (Insulin Dependent), No Complications, 250.01

DISPOSITION: Patient was discharged home.
The following prescriptions were given to the patient: Macrodantin 100 mg
every 6 hours X 10 days.
Pyridium 200 mg every 8 hours X 2 days
Motrin 800 mg every 8 hours w/meals.
    Return to the emergency department for high fever, worsening back pain,
abdominal pain, persistent vomiting, or if your condition otherwise seems
to worsen.  The patient was advised to follow-up with  Family Physician in
2-3 days  For continued symptoms .


I have received the instructions above.  I understand that I have received
emergency treatment only, and that I may be released before all my medical
problems are known or treated.  I will arrange for follow-up care as
instructed above.

_____        _____        _____
Patient/Responsible person        Date              Relationship to patient
                                  17:00

_____
Signature of Witness

                  John L. McCormick, M.D., FACEP
                  Tue Mar 17, 1998, 04:43 PM



E.D. Clinician:   John L. McCormick, M.D., FACEP
Date:             Tue Mar 17, 1998

CLE00125

LINA/Cleiland 0655

Name CLEILAND, CATHY K                    Address

Age  DOB:                          Sex

Part Examined CERVICAL SPINE/FLEX/EXT

ROENTGENOLOGICAL FINDINGS

There is fusion of the C5 and C6 vertebral bodies. No evidence of
significant arthritic disease. There is no evidence of subluxation.

IMPRESSION:   FUSION OF THE C5 AND C6 VERTEBRAL BODIES.  NO OTHER
ABNORMALITIES.

fb 01-23-98

01-23-98                              LARRY GREER, M.D.

CLE00126

LINA/Cleiland 0656

P.O. BOX 8248
MOBILE, ALABAMA 36608

3719 DAUPHIN STREET
(334) 344-9130

PHYSICIAN:

CLEILAND, CATHY                                    FAIRCLOTH

DISCHARGE SUMMARY

OF ADMISSION:   11/18/97
OF DISCHARGE:   11/19/97

PRIMARY PHYSICIAN:              William B. Faircloth, M.D.

REFERRING PHYSICIAN:           M. Andrew Wallace, M.D.

HISTORY OF PRESENT ILLNESS:    Please see previously dictated note for
History and Physical Examination.

HOSPITAL COURSE:               The patient was admitted and was taken
directly to the operating room where an anterior cervical fusion was
performed at C5-6, with a right iliac crest graft. She tolerated the
procedure well. She was awakened, extubated, and taken to the recovery
room in satisfactory condition. She was then placed in the intensive
care unit where she remained overnight. The AP and lateral cervical
spine x-rays were obtained prior to discharge which revealed the
arthrodesis to be in good position and there was good alignment. She
had total resolution of her right arm pain. She was discharged home
today to return to see me in my office in three weeks.

ADMISSION DIAGNOSIS:           HERNIATED NUCLEUS PULPOSUS, C5-6, RIGHT.

PRIMARY PROCEDURE:             Anterior cervical fusion, C5-6, with
                               right iliac crest graft.

DISCHARGE MEDICATIONS:    1.   Lortab 7.5 one q.4h. as needed for
                               pain.
                          2.   NPH insulin 25 units each evening and
                               15 units of Regular each evening.

DISCHARGE INSTRUCTIONS:        The patient was asked to progressively
increase her activity. She was to call my office immediately if she
developed a temperature above 102 degrees, erythema, edema, or
drainage from her wound. She was to call if she had any problems or
questions.

cc: M. Andrew Wallace, M.D.

"I authorized my name to be electronically affixed by
using my unique dictation computer key."

Dict: 11/18/97 Trans: 11/19/97 bri     WILLIAM B. FAIRCLOTH, M.D.

#SMH 16002

CLE00127

LINA/Cleiland 0657



P.O. BOX 8246
MOBILE, ALABAMA 36808

371 DAUPHIN STREET
(334) 343-0630

Cleiland, Cathy

PHYSICIAN:    William Faircloth, M.D.
(cc: extra copy to Dr. Faircloth)

MRN:    TBA
ACCOUNT NO:
DATE: 11/18/97

## HISTORY & PHYSICAL

REFERRING PHYSICIAN:        TONY WALLACE, M.D.

HISTORY OF PRESENT ILLNESS:

. Cleiland is a 40 year old, right handed, white female who was involved
. work related car accident in April of this year. She was in her Honda
Accord wearing her seat belt, and was at a stop sign. Apparently, another
Accord traveling between 45 and 50 miles per hour swerved, missed
another car, and hit her left frontal area of her car. She was turned to
90 degrees. She denies loss of consciousness, but it "shook me". She was
ambulatory at the scene, was taken to the emergency room.

Xrays of the cervical spine revealed "no break". I have not seen these
films. She was given pain medication and muscle relaxers, referred to Dr.
Charlie Eddins, who treated her with decreased activity, non-steroidal
anti-inflammatories, and she felt improved. She was placed in physical
therapy, which would help her while she was there, but six or eight hours
later, the pain would recur. She describes numbness in the medial aspect
of her right arm. She complains of pain in her right shoulder blade which
feels like "raw meat". She has had occipital headaches, and generalized
weakness in her right arm. She is most uncomfortable with left lateral
rotation of her head which causes right neck pain. She is most comfortable
sitting or reclining with her neck supported.

She underwent MRI of her cervical spine, which reveals a right sided disc
herniation at C5-6, causing neural impingement.

PAST MEDICAL HISTORY:
SURGERIES:        Significant for removal of right ovary and tube in 1987, and
                  removal of the other fallopian tube in 1984. She thinks
                  that she had an appendectomy during one of those two
                  procedures. She has had two Cesarean sections.

ILLNESSES: MEDICATIONS: She has had diabetes for twenty years, takes
                  insulin 15 units of regular each morning, 25 units of NPH
                  each evening. She takes Flexeril, but felt as though this
                  did not help her.

Continued, page two.....

#SMH 1600:

CLE00128

LINA/Cleiland 0658



P.O. BOX 8248
MOBILE, ALABAMA 36608

1719 DAUPHIN STREET
(334) 344-0630

Cleiland, Cathy                          PHYSICIAN:    William Faircloth, M.D.

PAGE 2...

ALLERGIES:     Darvocet causes her to have nausea and vomiting.

SOCIAL HISTORY:     She is married and has two children.  She is a
               Personnel manager with Medline.  She does not drink
               and does not smoke.

FAMILY HISTORY:     Her mother is alive and well at age 70.  Her father
               is 74, and his healthy.  She has three brothers, ages 36,
               48, and 50, all of which are healthy.  She has one sister,
               age 45, who is healthy.

PHYSICAL EXAMINATION:
GENERAL:       She is a well developed, well nourished, middle aged,
               female.
HEENT:         Normocephalic and atraumatic.  Pupils equal, round, regular
               and reactive to light and accommodation.  Sclera non-icteric.
               Conjunctiva pink.  Nares patent.  Nose - septum midline.
               Oropharynx - without inflammation, irritation, or injection.
NECK:          Supple without adenopathy, thyromegaly.  Flexion extension
               of the neck causes midline neck pain.  Left lateral rotation
               causes right neck pain.  Right lateral rotation with
               extension causes a radicular pain.
CHEST:         Symmetrical expansion.
LUNGS:         Clear.
HEART:         Regular rate and rhythm without murmurs, rubs or gallops.
EXTREMITIES:   Peripheral pulses are +2.
ABDOMEN:       Soft. Non-tender. Non-distended. Without hepatosplenomegaly
               or masses. Bowel sounds positive.
NEUROLOGIC:    She is awake, alert, and oriented x 3.  Memory,
               intelligence, judgement and affect are all appropriate and
               within normal limits.  Motor strength was 5/5 throughout.
               Reflexes were diminished throughout.  Sensation was
               diminished in the thumb and index finger right hand, normal
               elsewhere.

IMPRESSION:    Cervical disc herniation C5-6 on the right.

Continued, page three....

#SMH 16902

CLE00129

LINA/Cleiland 0659



P.O. BOX 8248
MOBILE, ALABAMA 36308

37?? DAUPHIN STREET
(334) 344-9630

Cleiland, Cathy                    PHYSICIAN     William Faircloth, M.D.

PAGE 3...

AN:
    Admit
    Anterior cervical discectomy and fusion at C5-6 with iliac crest
    graft.

I explained the anatomy and pathology of the lesion at length, and
findings, in great detail.   I explained the risks being infection,
hemorrhage (so severe as to require transfusion, therefore the risk of aids
and hepatitis), right carotid injury (resulting in right hemispheric stroke
and left hemiplegia), vocal cord paralysis (permanent hoarse voice),
esophageal damage (requiring second operation to repair this), and spinal
cord damage (loss of use of her arms, legs, loss of bowel and/or bladder
function).  She appeared to understand these risks, and states she wishes
to proceed.  Therefore, I plan to proceed tomorrow.

                "I authorized my name to be electronically affixed by using
                my unique dictation computer key."

Signature::
D: 11/17/97    T: 11/17/97    mm            William Faircloth, M.D.

#SMH 18002

CLE00130

LINA/Cleiland 0660

# EXHIBIT 1 TO EXHIBIT A Part 13



P.O. BOX 8246
MOBILE, ALABAMA 36808

3759 DAUPHIN STREET
(334) 344-6639

CLEILAND, CATHY              PHYSICIAN    William Faircloth, M.D.

XRN:    RM
ACCOUNT NO:
ADM DATE:

## OPERATIVE SUMMARY

**SURGERY DATE:**  11/18/97

**SURGEON:**    William Faircloth, M.D.

**PREOPERATIVE DIAGNOSIS:**   Herniated nucleus pulposus C5-6, right.

**POSTOPERATIVE DIAGNOSIS:**  Same.

**PROCEDURE;**      1.   Anterior cervical fusion C5-6.
                    2.   Anterior cervical diskectomy.
                    3.   Right iliac crest graft.

**ASSISTANT;**    Dr. R. L. White

**INSTRUMENT NURSE;**   Mr. David Redd
**CIRCULATING NURSE;**  Ms. Candy Cabiness, RN

**ANESTHESIA;**    General endotracheal.

**ANESTHESIOLOGIST;**   Dr. Buddendorf
**ANESTHETIST;**        Ms. Paula Green

**COMPLICATIONS;**    None.

**ESTIMATED BLOOD LOSS;** 300 cc.

**BRIEF HISTORY;**    Mrs. Cleiland is a 40 year old right handed white female who was involved in a motor vehicle accident and has had intractable neck and right arm pain.   She has failed to improve with conservative measures.   MRI revealed a large cervical disc herniation at C5-6 on the right.

**PROCEDURE;**    The patient was brought to OR #9.   After adequate level of anesthesia was obtained, the patient was intubated.   She was given 2 grams of Ancef IV and 12 mg of Decadron.   The right anterior neck and right iliac crest were isolated with 10/10 drapes.   The area was prepped with multiple applications of Betadine scrub and Betadine paint.   The patient was sterilely draped in the routine fashion.

**CC; DR. M. WALLACE**

**CONTINUED....**

CLE00131

LINA/Cleiland 0661



P.O. BOX 8248
MOBILE, ALABAMA 36608

19 DAUPHIN STREET
(334) 344-9030

CLEILAND, CATHY                    PHYSICIAN    William Faircloth, M.D.

PAGE 2...

A transverse skin incision was created in the skin fold, sharp dissection carried down through subcutaneous tissue to the platysma. The platysma was divided with Metzenbaum scissors. I then created a plain medial to the carotid, lateral to the trachea and posterior to the esophagus. I identified the C5-6 interspace. I divided the anterior longitudinal ligament in the midline and dissected in the subperiosteal plane and placed the Casbar retractors posterior to the anterior Colles muscle. I placed distraction pins at C5, C6 using fluoroscopic guidance, distracted the interspace. I opened the annulus with a monopolar cautery. I resected the degenerative disc material. Using Midus-Rex drill, I performed a diskectomy posteriorly to the posterior longitudinal ligament. I opened this ligament with various hooks as well as various Kerrison rongeurs. I removed a large extruded disc fragment on the right. I could easily pass a large blunt nerve hook along the course of the nerve root and it was well decompressed.

I then directed my attention to the right iliac crest region. I opened the skin, and divided the fat down to the iliac crest. I opened the fascia over the iliac crest and after measuring the diskectomy, I obtained a right iliac crest graft using an isolating saw and straight osteotome. I waxed the bone and placed Gelfoam in the cavity. I then fashioned the bone graft and introduced it in the interspace. I returned to the iliac crest incision and there was no bleeding. After awaiting an appropriate period of time, I irrigated the wound with copious amounts of Bacitracin solution and approximated the fascia with a running #0 Vicryl in two layers, and approximated the subcutaneous tissues with running 2-0 Vicryl and skin edges with a running subcuticular 4-0 PDS. I then returned to the cervical incision and removed the two distraction pins and waxed the bone. I irrigated the wound with copious amounts of Bacitracin solution. After waiting for an appropriate period of time and removing the Casbar retractors, I saw no bleeding and approximated the platysma with a running 4-0 Vicryl and the skin edges with a running subcuticular 4-0 PDS. Benzoin and 1/2 inch steri-strips were applied to both incisions. Instrument, sponge and needle counts were all reported to me as being correct. The patient was awakened, extubated and taken to the Recovery Room in satisfactory condition. She could move her arms and legs well. She had significant improvement in her right arm pain and right arm sensation.
         "I AUTHORIZED MY NAME TO BE ELECTRONICALLY AFFIXED BY USING
MY UNIQUE DICTATION COMPUTER KEY."

Signature::
D: 11/18/97      T: 11/19/97    dd              William Faircloth, M.D.

*SMH 16002

CLE00132

LINA/Cleiland 0662



P.O. BOX 8246
MOBILE, ALABAMA 36608

3919 DAUPHIN STREET
(334) 344-9630

CLEILAND, CATHY
1019

PHYSICIAN.

Robert White, M.D.

MRN:
ACCOUNT NO:
ADM DATE:

## OPERATIVE SUMMARY

SURGERY DATE:   11/18/97

SURGEON:   Brent Faircloth, M.D.

ASSISTANT SURGEON:   Robert White, M.D.

PREOPERATIVE DIAGNOSIS:   RUPTURED CERVICAL DISC C5-6

PROCEDURE:   ANTERIOR CERVICAL MICRODISKECTOMY WITH AUTOLOGOUS BONE GRAFT

DESCRIPTION:   I was asked by Dr. Faircloth to assist him on the case of Cathy Cleiland.  Cathy underwent anterior cervical microdiskectomy at C5-6 with removal of both osteophyte as well as extruded nucleus polyposis.

At patient's request, right iliac autologous bone graft was taken and placed at the C5-6 interspace.  Surgery was uneventful and excellent decompression was accomplished.

CC:   DR. ROBERT WHITE
      (ATTN) BONNIE

Signature::
D: 11/19/97     T: 11/19/97     lc

Robert White, M.D.

#SMH 16002

CLE00133

PA  OLOGY LABORATORY ASSOCIATE  P.A.
P.O. BOX 66229, MOBILE, AL 36660
TEL. 460-5288

R. EGGERS, M.D.                          BRIAN C. WENZEL, M.D.
L. BROWN, M.D.                           MICHEL H. SHAIN, M.D.
                                         CAROL D. COOKE, M.D.

SURGICAL PATHOLOGY REPORT

PATIENT DATA        DATE:   DOCTOR:              ROOM: ACCN. NO.:

CLE,CATHY K         11/19/97  FAIRCLOTH, WILL    (10)   M/5086-97
        0173126

                    TISSUES SUBMITTED:

    07/11/1957      C5 6 DISC.

SURGERY: 11/18/97

DIAGNOSIS:  Cervical herniation C5-6
DIAGNOSIS:
ATION:  Anterior cervical discectomy C5-6

DESCRIPTION:  The specimen is received in formalin labeled "C5-6 disc"
consists of multiple tough shaggy and irregularly shaped fragments of
tissue measuring 1.2 x 1.0 x 0.4 cm.  This is totally submitted.
..ch  (04; B1)

FINAL DIAGNOSIS:    (BASED ON GROSS AND MICROSCOPIC EXAMINATION):

FROM THE C5-6 VERTEBRAL LEVEL:

    BENIGN FRAGMENTS OF FIBROCARTILAGE COMPATIBLE WITH
    HERNIATED DISC.

MHS:lkh

DATE REPORTED:  11/20/97
CLEILAND,CATHY K                         MICHEL H. SHAIN, M.D.

CLE00134

LINA/Cleiland 0664

Inactive Records - Order Submission 

CIGNA Printing & Distribution

**Inactive Records Services**

| Home | | User Guide for Bloomfield/Hartford | | User Guide for Philadelphia/Field | | P&D OnLine |

*Any Questions...call your Records Liason at 860.226.2784.*

**Your order has been submitted successfully.**
You may wish to print this summary for your records.

## Summary for Order # 118283

**Requester:**

| | | |
|---|---|---|
| **Requester:** JOSE E NIEVES | **Expense Center:** 50001583 | **Date Submitted:** 09/14/2006 9:22:49 AM |
| **E-mail:** JOSE.NIEVES@CIGNA.COM | | |
| **Telephone:** 972-907-5659 | **Record Code:** PF04 | |
| **Address:** 12225 Greenville Ave, Suite 655 | **Routing:** 212D | |
| DALLAS, TX 75243 | | |

### Inactive Records Retrieval

**Delivery Instructions: Regular (Next Business Day)**

| Line | Carton Number | Entire Box or File Only | File ID Number | File Description |
|---|---|---|---|---|
| 1 | 283744981 | File Only | 422802332 | CLEILAND, CATHY |

p://pnd.corp.cigna.com/inactiverecords/InactSubmit.asp

09/14/2006

LINA/Cleiland 0665

**RSI**

Recovery Services International, I

April 17, 2006

P. O. Box 17079
Wilmington, DE 19886
1-800-251-3376

CATHY K CLEILAND

CLIO, AL 36017

RE:   Creditor:  LIFE INSURANCE COMPANY OF NORTH AMERICA
       Disability Claim
       Group Name: TEMPLE INLAND CORPORATE
       Group #: FLK   002010400180B
       Current Balance: $640.66
       Reason for Overpayment: LTD - SOC. SECURITY AWARD - ZERO BENEFIT

Recovery Services International, Inc. is the debt collection agency for the above referenced creditor.
We recently sent you a letter advising that a balance due is owed and we have not received your payment.

Please send your payment for the balance due, and a copy of this letter, to us in the enclosed return
envelope. Checks or money orders should be made payable to Recovery Services International, Inc.
To ensure proper identification of your payment, please write the reference number shown below on
your check.

If you would like to discuss a satisfactory payment schedule, please contact me at the telephone number
shown below.

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

Sincerely,

EDWARD MCDOWELL
Recovery Representative
Phone #: (800) 251-3376  Extension 6135
Hours of operation:  Monday – Friday, 8:00 A.M. to 4:30 P.M. EST.

REF#: 2 / 2005-199-000059 / D063 / W157
Please write this reference number on all of your correspondence or checks.

VM34

LINA/Cleiland 0666

Kelli Archacki
Claim Manager

April 6, 2006

**CIGNA** Group Insu
Life · Accident · Disability

CATHY CLEILAND

CLIO, AL 36017

Routing  212
12225 Greenville Ave
Suite 1000
Dallas, TX 75243
Telephone  800.352.0611, E
1294
Facsimile  860.731.3413
Kelli.Archacki@cigna.com

Claimant's Name:          Cathy Cleiland
Policy Number:             FLK 20104
Policyholder:                Temple Inland
Life Insurance Company of North America

Dear Ms. Cleiland:

This is in regard to your letter regarding the overpayment from your Social Security award
for your Long Term Disability Claim.

You questioned the amount that we had calculated as your overpayment that is owed to
CIGNA. According to your award notification, you were paid $24,600.00 in retroactive pay
from Social Security Disability. This represents the payment made to you for dates 11/01/03
through 05/01/2005. We did not receive your award notification until payments had been
issued through 07/09/05. You had received your full benefit through 07/09/05 when the
Social Security award should have been offset from that amount. Therefore, you were
overpaid from 11/10/03 through 07/09/05 resulting in an overpayment in the amount of
$25,281.23. We requested back the retroactive payment that was made to you, plus the
amount that was overpaid after 05/01/05. I have enclosed another copy of the overpayment
calculation for your review.

In addition, we are unable to provide you with a letter explaining the breakdown of the
money that you repaid until the overpayment is paid in full. Our records show that you still
have $640.66 still owed on your overpayment.

Please contact our office should you have any further questions.

Sincerely,


Kelli Archacki
Claims Manager
Disability Management Solutions
(800) 352-0611 ext. 1294
Fax (860)731-3413

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by
these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and
Connecticut General Life Insurance Company.

LINA/Cleiland 0667

**Archacki, Kelli    212**

| | |
|---|---|
| **From:** | Cremer, Reeva    SM16 |
| **Sent:** | Wednesday, April 05, 2006 7:11 AM |
| **To:** | Archacki, Kelli    212 |
| **Cc:** | Castellon, Roberto A (Robert)    212 |
| **Subject:** | CLAIMANT CATHY CLEILAND |
| | |
| **Importance:** | High |

Hi Kelli:

We had a message on our 800 number from Cathy Cleiland, SS                      regarding a request that she made to you
about 2 weeks ago.

The claimant is looking to you for a letter with the breakdown of the money she returned. She needs this information so
that she can file her taxes. Tax Compliance can not accommodate this request.

Appreciate if you can return the call to her at :                    and advise her when she will receive this letter.

Please confirm.

Thank you,

    Reeva Cremer
    Tax Compliance
    860 226 7913

Confidential, unpublished property of CIGNA.  Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2003 by CIGNA

LINA/Cleiland 0668

Message                                                                          Page 1 of

## Archacki, Kelli 212

**From:** Niefer, Carol A TL24D
**Sent:** Thursday, March 30, 2006 7:24 AM
**To:** Archacki, Kelli 212
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Hi Kelli,*

*This came up on diary so I am just following up on my e-mail below.*

*Thanks.*
*Carol*
-----Original Message-----
**From:** Niefer, Carol A TL24D
**Sent:** Thursday, March 16, 2006 10:04 AM
**To:** Archacki, Kelli 212
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Thanks Kelli. I appreciate it.*

    -----Original Message-----
    **From:** Archacki, Kelli 212
    **Sent:** Thursday, March 16, 2006 9:07 AM
    **To:** Niefer, Carol A TL24D
    **Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

    I am attempting to get her file from the appeals team in order to properly address her letter but have been unsuccessful. I will request her file again.

        -----Original Message-----
        **From:** Niefer, Carol A TL24D
        **Sent:** Thursday, March 16, 2006 7:34 AM
        **To:** Archacki, Kelli 212
        **Cc:** Edward McDowell
        **Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059
        **Importance:** High

        *Hi Kelli,*

        *RSI fax'd you a letter from the claimant dated 1/19/06. In this letter she refers to the termination of her claim as well as the OP that is still outstanding. In Acclaim it shows an appeal resolution date of 3/10/06. Can you verify that a letter has been issued to the claimant advising her that the termination has been upheld and if so when that letter was issued? Also, have you responded to her dispute of the remaining OP balance? Once she has been advised that the current OP balance is valid RSI may then continue their recovery efforts.*

        *Thanks very much for your assistance.*

        *Carol*
        -----Original Message-----
        **From:** McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]
        **Sent:** Wednesday, March 15, 2006 4:55 PM
        **To:** Niefer, Carol A TL24D

3/31/2006

LINA/Cleiland 0669

02/15/2006 17:03 FAX 3024766162    RECOVERY SERV INTL    ☒001

DATE
1-19-06

PROJECT ACTION NOTES

Fax to
Kelli
Archacki
1/25/06

again
2/15/06

GOLD FIBRE®

PROJECT PLANNING NO RECEIVED 1270

JAN 25 2006

1  Dear Mr McDavel!
2
3    I am in receipt of your letter dated
4  1-10-06 regarding what Cigna has said
5  was an overpayment by them to me. I
6  dispute this claim. On 9-1-2005 I
7  submitted a check for $24,600 to
8  Life Insurance Company of North America.
9  This was my entire amount of backpay
10  that I had received from Social Security
11  Administration, after my claim for
12  disability was approved. I was never
13  told that I could end up owing more
14  than my benefit. I know you included
15  the Disability Benefit Adj. worksheet
16  but I still don't understand how I
17  can owe this. The letter that was
18  included with my. In December 05,
19  my LTD was ended with no forewarning.
20  While my case is in appeal I am
21  only drawing about $1250 per month.
22  This is after making $53,000 per yr
23  when I was working. I hardly
24  have enough to pay basic necessities.
25    Thank you for your help in
26  resolving this.
27
28    Sincerely,
29
30    Cathy Cleiland
31
32        2/5-199-059

LINA/Cleiland 0670

## Archacki, Kelli 212

| | |
|---|---|
| **From:** | McDowell, Edward J [Edward.McDowell@rsintl.com] |
| **Sent:** | Thursday, February 23, 2006 8:59 AM |
| **To:** | Archacki, Kelli 212 |
| **Subject:** | FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059 |
| **Importance:** | High |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

*Kelli:*

*Can you advise current status?*

---

**From:** McDowell, Edward J
**Sent:** Wednesday, February 15, 2006 5:10 PM
**To:** 'Archacki, Kelli 212'
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Kelli:*

*I have just faxed it again.  Please furnish RSI with a cc of CIGNA's reply to the claimant.*

*Thanks.*

                    *Ed*

---

**From:** Archacki, Kelli 212 [mailto:KELLI.ARCHACKI@cigna.com]
**Sent:** Wednesday, February 15, 2006 4:51 PM
**To:** McDowell, Edward J
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

I sincerely apologize for the delay in responding to you regarding this matter.  I do not seem to have a copy of the letter that you are referring to.  Could you please fax it again to my attention.  The fax number is 860.731.3413. Upon receipt I will review it with my Senior Claim Manager and respond to you.

Thank you very much.

        -----Original Message-----
        **From:** McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]
        **Sent:** Wednesday, February 15, 2006 9:38 AM
        **To:** Archacki, Kelli 212
        **Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

        *Good Morning Kelli:*

        *Your reply will be sincerely appreciated and enable RSI to determine how to proceed.*

        *Thanks much for your anticipated response.*

                        *Ed*

2/24/2006

LINA/Cleiland 0671

**From:** McDowell, Edward J
**Sent:** Tuesday, February 07, 2006 11:14 AM
**To:** 'Kelli.Archacki@cigna.com'
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Good Morning Kelli:*

*Can you advise current status?*

---

**From:** McDowell, Edward J
**Sent:** Wednesday, January 25, 2006 2:12 PM
**To:** 'Archacki, Kelli 212'
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Good Afternoon Kelli:*

*I have faxed you a copy of claimant's handwritten letter dated 1/19/06.  Please respond direct to the claimant furnishing RSI with a cc of CIGNA's response.*

*Your assistance is sincerely appreciated.*

---

**From:** Archacki, Kelli 212 [mailto:KELLI.ARCHACKI@cigna.com]
**Sent:** Wednesday, January 18, 2006 9:56 AM
**To:** McDowell, Edward J
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

We received her appeal and so her claim is in appeal status.  We did not receive a letter stating that she does not agree to reimburse her overpayment.

> -----Original Message-----
> **From:** McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]
> **Sent:** Wednesday, January 18, 2006 8:43 AM
> **To:** Archacki, Kelli 212
> **Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059
>
> *Kelli:*
>
> *If the letter was not received, is the claim still in appeal status??*

---

**From:** Archacki, Kelli 212 [mailto:KELLI.ARCHACKI@cigna.com]
**Sent:** Wednesday, January 18, 2006 9:25 AM
**To:** McDowell, Edward J
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

I checked with the Claim Manager who is handling her appeal and she does not have the letter that Ms Cleiland was referring to.  The only letter that we received was her appeal letter.  If I receive it I will let you know but it does not appear that we received it.

Kelli
-----Original Message-----
**From:** Bharadwaj, Medha 212
**Sent:** Wednesday, January 18, 2006 7:32 AM
**To:** Archacki, Kelli 212

LINA/Cleiland 0672



**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

No, we do not have the letter. I checked my mail and inside her file.


Thank you

# Medha Bharadwaj, FLMI, ACS

**Appeal Claim Manager**
**CIGNA Disability Management Solutions**
**800.352.0611 ext. 1249**
**860.731.3211(facsimile)**
**medha.bharadwaj@cigna.com**

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by email at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance.

Confidential, unpublished property of CIGNA
Do not duplicate or distribute
Use and distribution limited solely to authorized personnel
(c) Copyright 2006 CIGNA

-----Original Message-----
**From:** Archacki, Kelli 212
**Sent:** Tuesday, January 17, 2006 3:07 PM
**To:** Bharadwaj, Medha 212
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

Medha,

Cathy Cleiland advised RSI that she sent a certified letter to me regarding the fact that she does not agree to reimburse her overpayment. Do you have her file? If so, is the letter that she is referring to on file. I do not remember seeing it.

Thank you,
Kelli
-----Original Message-----
**From:** McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]
**Sent:** Tuesday, January 17, 2006 2:00 PM
**To:** Archacki, Kelli 212
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

*Good Afternoon Kelli:*

*Your response will be sincerely appreciated.*

2/24/2006

LINA/Cleiland 0673

**From:** McDowell, Edward J
**Sent:** Monday, January 09, 2006 9:44 AM
**To:** 'Kelli.Archacki@cigna.com'
**Subject:** Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

*Good Morning Kelli:*

*The subject claimant would not agree to reimburse your overpayment and tells us that she sent a certified letter to you regarding this matter.*

*Can you confirm receipt of such letter and advise status of CIGNA's handling?*

*Edward J. McDowell - ACA Certified*

*Professional Collection Specialist*

*Recovery Services International, Inc.*

*edward.mcdowell@rsintl.com*

*800-251-3376 x6135*

*302-476-6159 (Fax)*

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient (s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2006 CIGNA

2/24/2006

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2006 CIGNA

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

2/24/2006

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2006 CIGNA

2/24/2006

**Medha Bharadwaj**
Appeal Claim Manager

CIGNA Disability Management Solutions

March 10, 2006

**CIGNA** Group Insura
Life · Accident · Disability

CATHY CLEILAND

CLIO AL 36017

Routing 212
12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9382
Telephone  800.352.0611 ext.
1249
Facsimile  860.731.3211
medha.bharadwaj@cigna.com

Re:    Claimant:        Cathy Cleiland
       Policy Keys:      FLK 20104
       Account Name:     Temple Inland
       Life Insurance Company of North America

Dear Ms. Cleiland:

We have completed our review of your appeal for Long Term Disability benefits, and must advise you that we are reaffirming our previous denial of benefits dated December 07, 2005. Please refer below for specific policy definitions and reviewed information. In addition, please review the following:

## Definition of Disability

"An Employee is Disabled if, solely because of Injury or Sickness, he or she is earning 80% or less of his or her Indexed Covered Earnings.

Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation.

After Disability Benefits have been payable for 24 months, the Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she is may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn 80% or more of his or her Indexed Covered Earnings."

## Disability Benefits

"The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy.  A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician.  Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

The Insurance Company will require continued proof of the Employee's Disability, provided at the Employee's expense, for benefits to continue."

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation.  Products and services are provided by these subsidiaries and not by CIGNA Corporation.  These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

LINA/Cleiland 0677

March 10, 2006
Page 2

## Termination of Disability Benefits

"Disability Benefits will end on the earliest of the following dates.
1. The date an Employee earns more than 80% of his or her Indexed Covered Earnings
2. The date the Insurance Company determines an Employee is not Disabled
3. The end of the Maximum Benefit Period
4. The date an Employee dies
5. The date the Employee refuses to participate in rehabilitation efforts as required by the Insurance Company
6. The date the Employee is no longer receiving Appropriate Care

## Overview of Eligibility of Benefits

We based our decision on your claim for benefits upon Policy language and all documents contained in your claim file, viewed as a whole.

The following information was reviewed as part of your appeal:

- Medical records from various providers

I am aware that you have been off work since May 14, 2003 due to back pain, dysphagia, diabetes, and dyspepsia. As the previous decision on your claim was based on a medical judgment, your file was reviewed by our Medical Director. As part of his review, our Medical Director reviewed all the medical information contained in your claim file.

After review of the entirety of the medical information contained in your file, our Medical Director noted that you have a chronic history of back pain and have undergone several lumbar surgeries. Since then, you have been on chronic pain medications and neuroleptic drugs. Our Medical Director also noted that you have diabetes, which has been under poor control. In Mid-November 2005, you underwent a mid-esophageal dilatation. Our Medical Director said that your chronic pain appears to be stable and no changes in treatment have occurred. Our Medical Director stated that the documentation does not support deficits which require limitations and restrictions precluding you from performing any sedentary occupation from November 21, 2005 through present.

## Summary

Ms. Cleiland, in order to qualify for Long Term Disability Benefits, you must provide evidence of Total Disability from any occupation as outlined in your previous denial letter of December 07, 2005. However, as outlined above, the medical documentation does not support your inability to perform any sedentary occupation. Please note that your previous occupation as a Human Resources Manager is considered sedentary. The medical documentation does not support your inability to perform your or any sedentary occupation from November 21, 2005 forward.

As you have not submitted any additional information sufficient to change our previous determination regarding your eligibility for Long Term Disability benefits, we are reaffirming our previous denial decision of December 07, 2005 within the meaning and terms of your group Long Term Disability plan.

LINA/Cleiland 0678

March 10, 2006
Page 3

You may request a review of this decision by writing to the Life Insurance Company of North America representative signing this letter at the address noted on the letterhead. The written request for review must be sent within 180 days of the receipt of this letter. In addition to any written comments, your request for review must include new documentation you wish us to consider. Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter. A final decision will be made no later than 90 days.

Please note that you have a right to bring legal action regarding your claim under the ERISA section 502(a). You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local United States Department of Labor Office or your State Insurance Regulatory Agency.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your insurance booklet, certificate or coverage information available from your employer to determine if you are eligible for additional benefits. Upon written request, you may receive a copy of your claim file, free of charge.

Should you have any questions, please call me at 1.800.352.0611 ext. 1249 between the hours of 8:00am and 4:30pm Central Time.

Sincerely,

Medha Bharadwai

LINA/Cleiland 0679

Cleiland, Cathy
Incident # - 613165
Appeals Claims Manager - Medha Bharadwaj

**FILE REVIEW.**
DATE STAFFED – 3/2/06
CLAIM TYPE - LTD
CLAIM STATUS – Any Occupation
EMPLOYER – Temple Inland
OCCUPATION – Human Resource Manager
WORK DEMANDS - Sedentary
DIAGNOSIS – Back pain, dysphagia, diabetes, dyspepsia
INCUR DATE – 5/14/03
AGE - 48
CLAIM SYNOPSIS – OW since 05/14/03 due to lumbar spine surgery 5/21/03 & 7/16/03. Cx continues to claim disability due to back pain. Was seeing Pain management. Paid through 11/21/05. Then denied because L&Rs did not support preclusion from working any occupation. Previous occupation is sedentary. New information on appeal from 10/20/05 consult with gastroenterologist, notes from her primary care PCP, EGD with balloon dilation & biopsy from 11/15/05, & letter from Dr. Adam Nortick of 12/19/05. Need complete medical review.
Back surgery 5/14/03. Denied 11/21/05 due to lack of support. New info from pain management, Internist, & GI.
REFERRAL QUESTION - Does the medical support severity of any condition that would preclude Cx from performing in a sedentary capacity from 11/21/05 through present?
PHYSICIAN'S STATEMENT OF PHYSICAL FUNCTIONAL CAPACITY – see review located in chart.
CLAIMANT'S STATEMENT OF PHYSICAL ACTIVITY – see review located in chart.
LAST CLINICAL NOTE RELEVANT TO MAIN PHYSICAL DIAGNOSIS - see review located in chart
BRIEF SUMMARY OF RELEVANT MEDICAL INFORMATION PRIOR TO LAST NOTE – see review located in chart.
PERTINENT LAB, DIAGNOSTICS & REFERRALS – see review located in chart.
PEER CONTACT ATTEMPT(S) - No provider contact made.

**MATERIALS REVIEWED** - CIGNA file (records reviewed include but are not limited to those found on typed report). Typed report located in claimant's chart.
- Operative Report, Dr John Hackman (neurosurgery), 5/21/03 – Left L4-5 laminectomy.
- Progress Notes, Dr Hackman, 7/14/03 – initially did well then recurrence of hip & leg pain. Also weakness. Admitted to hospital through ER for re-evaluation & pain control. Positive SLR on left. Absent ankle reflex. Weakness toe extension. Dx: recurrent radiculitis L4-5 on left.
- Operative Report, Dr Hackman, 7/16/03 – Re-exploration laminectomy Left L4-5.
- MRI w & w/o contrast, 8/11/03 – large amount of enhancing epidural scar tissue. Small non-enhancing area of low signal intensity near left neural foramen L4-5. Does not abut nerve roots. Could be disc fragment. Severe DDD L4-5.
- Progress Notes, Dr Hackman, 8/28/03 – MRI of 8/11/03 reviewed. Had injection by Dr Herrick yesterday. Trouble w/ left leg. Diminished left knee reflex but no foot drop. Negative SLR.
- MRI w & w/o contrast, 9/18/03 – Severe DDD L4-5. Probable retained disc fragment midline to left at L4-5. Enhancing scar tissue. Slight indentation of left L4 nerve root and left L5 root is encased by scar. Disc fragment more prominent since last MRI.
- Progress Notes, Dr Hackman, 9/18/03 – increasing problems. Radiation down right leg. Re-exploration offered due to changed MRI of today. Refer to Dr Hadley at UAB.
- Daily Activity Questionnaire, 11/12/03 – cannot sit or stand for any period. Spend most of time on back. Difficulty getting up & down to go to BR. Doing minimal activities.
- Letter, Dr Mark Hadley (Neurosurgery), 11/17/03 – has developed lumbar spinal instability w/ recurrent nerve root compression. Surgery needed.
- Operative Report, Dr Hadley, 12/16/03 – L4-5 laminectomy & diskectomy w/ L4-5 internal fixation & fusion.

- Progress Notes, Dr Hadley, 1/14/04 – no heel walk but can toe walk. No images done today.
- Medical Request Form, Dr Hadley, 2/24/04 – Neurontin & Lortabs. Cannot assess ability to RTW presently. Does not do FCEs. LOV 2/11/04.
- Daily Activity Questionnaire, 6/28/04 – have excruciating back pain. Requires narcotics & pain management. Medications cause me to not think properly. Drives when she does not take pain meds. Lists no activities. Mom & dad help w/ ADLs. Do not go for walks.
- Progress Notes, Dr Adam Nortick (Pain Management), 3/2/05 – takes Methadone, Effexor, Klonopin. Reports spasms in legs. Not active. Reports falling down. Pain 8/10. Pain in R UEs, left leg, back. Exam unremarkable. DX: Cervical DDD w/ radiculitis, Lumbar DDD w/ radiculitis, IDDM. Continue Neurontin 3200 mg/day. Also Effexor & Klonopin. Increase Methadone. RTC one month.
- Daily Activity Questionnaire, 6/28/05 – have constant back pain. Requires narcotics & pain management regularly. Medications affect my memory. Drives when juggles pain meds. Lists no activities. Do not go for walks anymore due to pain.
- Progress Notes, Dr Steve Harris (ENT & allergy), 8/26/05 – has had lumbar & neck surgeries. Reports burning in base of throat. Exam shows significant laryngopharyngeal irritation. Has not responded to Protonix so need EGD evaluation.
- Consultation, Dr Robert Albares (Gastroenterologist), 10/20/05 – hoarseness & dyspepsia X6 months. Also dysphagia with solid foods. Physical exam unremarkable. Mental status shows affect congruent. Memory intact. Change to Nexium. Needs EGD w/ possible dilatation.
- Lab report, 10/20/05 – glucose 394. Hgb A1C 11.8.
- Progress Notes, Dr Brett Johnson (Family Physician), 11/10/05 – IDDM uncontrolled. Increase Insulin. Refer to endocrine w/ Dr Wise.
- Operative Report, Dr Robert Albares (GI), 11/15/05 – EGD w/ balloon dilatation & biopsy.
- Progress Notes, Dr Johnson, 12/13/05 – recent dental surgery. Blood sugar log erratic. Some in 300s & 400s. Low as 50. Dx: Markedly uncontrolled diabetes. Increase insulin.
- Lab report, 12/13/05 – glucose 366. Hgb A1C 11.3. Alkaline Phosphatase 141.
- Letter, Dr Adam Nortick (Pain Management), 12/19/05 – Has been on stable medications over months. She has on-going problems. Some days are worse than others. She still has symptoms & requires medications.

**ASSESSMENT/CONCLUSION:** A careful review of the file was conducted. Claimant has chronic history of back pain and underwent several lumbar surgeries. Since that time she has been on chronic narcotic pain medications & high-dose neuroleptics drugs. She was paid through 11/21/05. Since that time her diabetes has been under poor control. She underwent esophageal dilatation in mid-November 2005. Her chronic pain appears to be stable & no changes in treatment have occurred. I do not believe, however, that the documents provide sufficient documentation to establish that severity of condition warrants L&Rs or that clinically measurable evidence exists to support deficits which require L&Rs given by the attending physician. In absence of such documentation, I do not believe the documentation supports deficits which require L&Rs which preclude performing sedentary activity during the period 11/21/05 through the present.

Scott C. Taylor, DO
CIGNA Medical Director
Date Completed: 3/7/06

# LTD Appeal Team File Review

**CX:** Cathy Cleiland       **ACE:** Medha Bharadwaj
**Inc#:** 613165       **Date:** 02/23/06
**DOB:**       (48)       **AMD:**

**DOD:** 05/14/03       **Type of claim:** Any occ
**BSD:** 11/10/03       **Denial date:** 11/21/05
**A/O:** 11/10/05       **State:** Alabama

**Occupation and Level as defined by DOT or JD:**
We are evaluating for sedentary

**Reason for Denial: (Be specific)**
Medical did not support severity of condition to preclude cx from performing A/O

**Diagnoses:**

1. Back pain
2. Dysphagia
3. Diabetes
4. Dyspepsia

**Treating Physicians with Specialty & Phone Numbers:**

| Name | Specialty | Phone |
|------|-----------|-------|
| 1. Dr. Brett Johnson | Internal medicine | |
| 2. Dr. Adam Nortick | Pain management | 334.288.7808 |

**Review of File:**
48 yof off work since 05/14/03 due to lumbar spine surgery. Cx continues to claim disability due to back pain. Cx paid through 11/21/05 and then denied because l.r not supported to preclude any occ. Cx's previus occ is sedentary. On appeal, cx sent in some medical information. Consisted of 10/20/05 consult with gastroenterologist along with a esophagogastroduodenoscopy with balloon dilation and biopsy from 11/15/05, notes from her primary care ap from 08/24/05-12/13/05, and a letter from Dr. Adam Nortick dated December 19, 2005.

**Plan**
Staff with MD, MC,

_Was seeing pain management for back pain. Denied due to lack of support. New info include note from statement first seen August 05 & letter from pain management and new lab. Need pt review to determine ability to do sedentary activity from 11/21/05 to present_

_3/1/06_

DATE
1-19-06

PAGE
NO.

PROJECT ACTION NOTES

Fax to
Kelli
Archacki
1/25/06

PROJECT PLANNING NO.

RECEIVED / 1275

JAN 25 2006

1  Dear Mr McDavell

2

3     I am in receipt of your letter dated

4  1-10-06 regarding what Cigna has said

5  was an overpayment by them to me. I

6  dispute this claim. On 9-1-2005 I

7  submitted a check for $24,600 to

8  Life Insurance Company of North America.

9  this was my entire amount of backpay

10 that I had received from Social Security

11 Administration, after my claim for

12 disability was approved. I was never

13 told that I could end up owing more

14 than my benefit. I know you included

15 the Disability Benefit Adj worksheet

16 but I still don't understand how I

17 can owe this. The letter that was

18 included with mq. In December 05,

19 my LTD was ended with no forewarning.

20 While my case is in appeal I am

21 only drawing about $1250 per month.

22 This is after making $53,000 per yr

23 when I was working. I hardly

24 have enough to pay basic necessities.

25    thank you for your help in

26 resolving this.

27

28    Sincerely,

29

30    Cory Cliland

31

32    2/5 - 199 - 059

GOLD FIBRES

LINA/Cleiland 0683

Message                                                                    Page 1 of 4

**Archacki, Kelli 212**

**From:**    McDowell, Edward J [Edward.McDowell@rsintl.com]
**Sent:**    Wednesday, January 25, 2006 1:12 PM
**To:**      Archacki, Kelli 212
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT EDP#2005-199-000059

*Good Afternoon Kelli:*

*I have faxed you a copy of claimant's handwritten letter dated 1/19/06. Please respond direct to the clamant furnishing RSI with a cc of CIGNA's response.*

*Your assistance is sincerely appreciated.*

**From:** Archacki, Kelli 212 [mailto:KELLI.ARCHACKI@cigna.com]
**Sent:** Wednesday, January 18, 2006 9:56 AM
**To:** McDowell, Edward J
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

We received her appeal and so her claim is in appeal status. We did not receive a letter stating that she does not agree to reimburse her overpayment.

-----Original Message-----
**From:** McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]
**Sent:** Wednesday, January 18, 2006 8:43 AM
**To:** Archacki, Kelli 212
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

*Kelli:*

*If the letter was not received, is the claim still in appeal status??*

**From:** Archacki, Kelli 212 [mailto:KELLI.ARCHACKI@cigna.com]
**Sent:** Wednesday, January 18, 2006 9:25 AM
**To:** McDowell, Edward J
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

I checked with the Claim Manager who is handling her appeal and she does not have the letter that Ms Cleiland was referring to. The only letter that we received was her appeal letter. If I receive it I will let you know but it does not appear that we received it.

Kelli
-----Original Message-----
**From:** Bharadwaj, Medha 212
**Sent:** Wednesday, January 18, 2006 7:32 AM
**To:** Archacki, Kelli 212
**Subject:** RE: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

No, we do not have the letter. I checked my mail and inside her file.

1/26/2006

Thank you

# Medha Bharadwaj, FLMI, ACS

Appeal Claim Manager
CIGNA Disability Management Solutions
800.352.0611 ext. 1249
860.731.3211(facsimile)
medha.bharadwaj@cigna.com

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender
by email at the address shown. This email transmission may contain confidential information. This
information is intended only for the use of the individual(s) or entity to whom it is intended even if
addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for
your compliance.

Confidential, unpublished property of CIGNA
Do not duplicate or distribute
Use and distribution limited solely to authorized personnel
(c) Copyright 2006 CIGNA

-----Original Message-----
**From:** Archacki, Kelli 212
**Sent:** Tuesday, January 17, 2006 3:07 PM
**To:** Bharadwaj, Medha 212
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

Medha,

Cathy Cleiland advised RSI that she sent a certified letter to me regarding the fact that she does not
agree to reimburse her overpayment. Do you have her file? If so, is the letter that she is referring to
on file. I do not remember seeing it.

Thank you,
Kelli
-----Original Message-----
**From:** McDowell, Edward J [mailto:Edward.McDowell@rsintl.com]
**Sent:** Tuesday, January 17, 2006 2:00 PM
**To:** Archacki, Kelli 212
**Subject:** FW: Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

*Good Afternoon Kelli:*

*Your response will be sincerely appreciated.*

_____

**From:** McDowell, Edward J
**Sent:** Monday, January 09, 2006 9:44 AM
**To:** 'Kelli.Archacki@cigna.com'
**Subject:** Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-199-000059

*Good Morning Kelli:*

1/26/2006

LINA/Cleiland 0685

Message



*The subject claimant would not agree to reimburse your overpayment and tells us that she sent a certified letter to you regarding this matter.*

*Can you confirm receipt of such letter and advise status of CIGNA's handling?*

*Edward J. McDowell - ACA Certified*

*Professional Collection Specialist*

*Recovery Services International, Inc.*

*edward.mcdowell@rsintl.com*

*800-251-3376 x6135*

*302-476-6159 (Fax)*

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2006 CIGNA

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or

1/26/2006

alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

---

This email is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

---

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2006 CIGNA

1/26/2006

LINA/Cleiland 0687

Medha Bharadwaj 
Appeals Claim Examiner

CIGNA Disability Management Solutions

February 10, 2006

**CIGNA** Group Insu
Life · Accident · Disability

KATHY CLEILAND

CLIO AL 36017

Routing
CIGNA Group Insurance
12225 Greenville Avenue
Suite 1000, LB 179
Dallas TX 75243-9384
Phone 800-352-0611x1249
Facsimile 860-731-3211

Re: Long Term Disability
    Claimant:        Cathy Cleiland
    Account Name:    Temple Inland
    Policy #:        FLK 20104
    Life Insurance Company of North America

Dear Ms. Cleiland:

This letter is in reference to your claim for Long Term Disability benefits under policy number
Ms. Cleiland.

We are sorry for the delay in making a decision on your claim. We are in receipt of medical
information from Dr. Nortick and are in the process of reviewing it. We needed this information
to determine your functional ability, and whether you qualify for Long Term Disability benefits
as defined under your contract.

We hope to complete our review within thirty days, and if possible, we will make a decision with
the information received. If we are unable to complete our review within thirty days, or
additional information is needed, we will notify you of the reason for the delay.

Thank you for your continued cooperation. Should you have any questions, please feel free to
call me.

Sincerely,

Medha Bharadwaj, FLMI, ACS

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are
provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance
Company of New York, and Connecticut General Life Insurance Company.

LINA/Cleiland 0688

DATE: 1-19-06

PAGE NO. 1

PROJECT ACTION NOTES

PROJECT PLANNING NOTES

Received

JAN 24 2006

CIGNA - DALLAS

1. Medha Bharadwaj, FLMI, ACS
2. Cigna Group Ins.
3. Centralized Appeal Team
4. 12225 Greenville, Ave, 5th Floor,
5. Dallas, TX   75243
6.
7. Dear Sir/Madam
8.
9.   Yesterday I mailed the final medical
10. information when I mailed you the
11. letter from Dr Adam Nartick of the Pain
12. Center of Montgomery. Later that afternoon
13. I received the letter from you dated 1-13-06
14. After reading the letter I was confused
15. as to who is responsible to make sure
16. nothing is left out. It seems to me
17. that you would be able to get my records
18. from the Social Security Administration.
19. I am sure that they have a lot more
20. medical records than I sent you.
21. Also, SSA sent me to a neurosurgeon
22. in Ozark, AL named Dr. Keith Vanderzyl.
23. His phone # is 334-774-5501. I also
24. left out notes from Dr. Edmund LeCour,
25. a Dr. of Rheumatology - office # 334-774-1148.
26. I think of things daily and I am so
27. afraid I will forget something. And that
28. brings something else up - my memory.
29. I don't know if it is from medication
30. or what but my memory has become
31. extremely bad and it is so frustrating
32.

DATE: 1-19-06

PAGE NO. 2

PROJECT ACTION NOTES

PROJECT PLANNING NOTES

1 when you go from being a Human Resources
2 manager who has to know the laws
3 of the workplace, to not being able to
4 remember to take my insulin which I
5 have taken twice a day since 1978; and,
6 I am now on about a dozen medications.
7 I stagger from left to right when I walk
8 and I have fallen repeatedly leaving myself
9 badly bruised. If I am late taking
10 my medications, I cannot stand up straight.
11 I am crumpled up. The joints in my
12 body are hit with pains so sharp that
13 I sometimes fall down. My Knuckles, Knees,
14 and toes lock up with stabbing pains.
15 My toes and fingers feel like someone is
16 trying to peel my skin off from them. I
17 use pain relieving gel constantly - and
18 this is in addition of taking megadoses of
19 prescription medications.
20   I hope I have given you information that
21 will lead you to any other information you
22 need. I signed and mailed back to y'all the new
23 authorization form which ya'll sent to me a
24 few days ago. If there is something you need but
25 are having trouble getting, please let me Know.
26 It seems Advantage 2000 - the company hired by Cigna
27 to work on getting my Social Security claim
28 approved - got what they needed with a positive result.
29 I would think all of their files would be available
30 to you. Thank you so much.
31                                        Cathy Cleiland
32

GOLD FIBRE®

LINA/Cleiland 0690

*Disclosure Authorization* 

**Received**

**JAN 2 3 2006**

**CIGNA - DALLAS**

CIGNA Group Insurance
Life • Accident • Disability

Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

 **CIGNA**

**FRAUD WARNING:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. *For residents of the following states, please see page 2: California, Colorado, District of Columbia, Florida, Kentucky, Maryland, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Tennessee, Texas or Virginia.*

Claimant's Name (Please Print):  CATHY K. Cleiland

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the requesting company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding any physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome), as well as communicable diseases and genetic testing. If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a)reinsuring companies; b)the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c)fraud or overinsurance detection bureaus; d)anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e)for audit or statistical purposes; f)as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative:  *Cathy K. Cleiland*          Date: 1-16-06

Relationship,
if other than Claimant: _____     Claimant's Social Security Number: _____

"**Company**" refers to: Life Insurance Company of North America
                Connecticut General Life Insurance Company
                CIGNA Life Insurance Company of New York

**PROHIBITION ON RE-DISCLOSURE**

If the medical information contains information regarding drug or alcohol abuse, it may be protected under federal law. Federal regulations (42 CFR Part 2) prohibit any person or entity who receives such protected information from the Company from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulation. A general authorization for the release of medical or other information is not sufficient for this purpose. The federal rules restrict any use of such protected information to criminally investigate or prosecute any alcohol or drug abuse patient.

617283    (09/2004)                                                                                      Page 1 of 2

LINA/Cleiland 0691

1-16-06

Kelli Archacki
Life Insurance Company of North America
Routing 212; 12225 Greenville Ave.
Suite 1000
Dallas, TX 75243

Received
JAN 23 2006
CIGNA · DALLAS

Dear Ms. Archacki:

Attached are additional notes; these are from
the Center of Pain of Montgomery. I hope
that with these notes, your Insurance Company
will be able to come to a conclusion regarding
my claim. Dr. Nartick is also the Dr. who
witnessed bruising on me, which was caused
from me falling. I have a lack of coordination
at times.
Please let me know if there is anything
else you need ~~that I~~ from me.

Sincerely,

Cathy Cleiland

Cathy Cleiland

December 19, 2005

Received

JAN 2 3 2006

CIGNA - DALLAS

Kelli Archacki
Cigna Insurance Company
Routing 2121225
Greenville Avenue, Suite #1000
Dallas, TX 75243

Re:     Cathy Cleiland
        Chart #14495

Dear Ms. Archacki,

This letter is on behalf of Ms. Cathy Cleiland in support of her claim for disability.

I understand that you recently sent Ms. Cleiland a letter discontinuing her benefits.  Part of your decision was based on some of the documentation from our office.

In reviewing the letter, it was mentioned that Ms. Cleiland had not been complaining of any problems with radiating type pain or numbness.  Ms. Cleiland has clearly indicated on her admission sheets and on the pain diagrams I put down that she has involvement in hands and feet.  Ms. Cleiland has persistently been on Neurontin for tingling and numbness.  It really is not a new complaint and has not required any additional documentation.

Ms. Cleiland's medications have been stable over the last few months.  However, this does not mean that she does not have ongoing problems, or that on any given day she may be more symptomatic than another.  It is fairly common for patients like Ms. Cleiland to have unpredictable exacerbations of their problem along with a steady course, otherwise.

Ms. Cleiland is still symptomatic, and I do believe that her symptoms are real.

Please feel free to contact me to further discuss the issue.

Respectfully yours,

Adam R. Nortick, MD

ARN:rts/ges/idb

LINA/Cleiland 0693

**Medha Bharadwaj**
Appeals Claim Manager

CIGNA Disability Management Solutions

**CIGNA Group Insura**
Life · Accident · Disability

January 13, 2006

CATHY CLEILAND

CLIO AL 36017

Routing 212
12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9382
Telephone 800.352.0611 ext.
1249
Facsimile 860.731.3211
medha.bharadwaj@cigna.com

RE:                 Cathy Cleiland
POLICY #:           FLK 020104
Policy:             Temple Inland
COMPANY:            Life Insurance Company of North America

Dear Ms. Cleiland:

This letter is to acknowledge the receipt of your administrative appeal in reference to the above claim in the Centralized Appeal Team. The claim will be managed by:

> Medha Bharadwaj, FLMI, ACS
> CIGNA Group Insurance
> Centralized Appeal Team
> 12225 Greenville Avenue, 5th Floor
> Dallas, TX 75243
> PH:    800-352-0611 Ext 1249
> FAX:   860-731-3211

During the appeal process, you have the opportunity to present all medical evidence you feel supports the severity of your claim. Medical evidence includes, but is not limited to complete copy of office notes, test results, therapy notes, medication regime, hospital records, etc from your treating physicians during the period of time you are claiming Total Disability.

We cannot make a determination on your claim until you indicate that all relevant medical evidence you feel supports your claim has been provided. You have 45 days from the date of this letter to do so. Once we are notified that you are ready for us to move forward with the appeal process, we will proceed with a medical review of your complete file. The medical review takes between four to six weeks.

**Please read the following carefully it will help resolve your appeal:**

1. The denial of benefits letter that was sent to you contains information that would be helpful in resolving your appeal; specifically a listing of information needed to perfect your claim. Please read that letter and determine if all information you desire to submit in support of your appeal has been furnished to the claim file. As this is an appeal, the Appeals Claim Examiner will be resolving the claim on the information that you submit. The Appeals Claim Examiner may notify you of certain items that are needed but that is not intended to limit what you desire to submit. Under the terms of the policy it is your

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.



Page 2

obligation to submit the information to establish your claim. We need this information to determine your functional ability, and whether you qualify for Long Term Disability benefits as defined under your contract.

2. Tell the above Appeals Claim Examiner as soon as possible that you have submitted all information that you desire to submit or that you are going to submit additional information in support of your appeal. If you are going to submit more information CIGNA must allow you 45 days to do so. If the Appeals Claim Examiner requests specific information from you, you have 45 days to submit that information and the time period until you contact the Appeals Claim Examiner is tolled. The Appeals Claim Examiner cannot resolve your appeal until all information you desire to be reviewed is in fact in the file. The time that you take to submit information is TOLLED from the time of a request for information or notice that you will submit information until you in fact contact the Appeals Claim Examiner for a maximum of 45 days. That means that the tolled time period does not count against the mandated appeal resolution time frames.

3. The time frame for resolving an administrative appeal is mandated by ERISA (Employee Retirement Income Security Act) Regulations as written by the United States Department of Labor and if your appeal is not within the coverage of ERISA, CIGNA does adhere to the regulatory time frames of ERISA. The ERISA Regulations require that an administrative appeal should be resolved within 45 days from receipt by the insurance company except for good cause an additional 45 days may be requested as an extension of the resolution time. As stated above the time frame when the Appeals Claim Examiner is waiting for you to furnish any information up to 45 days is tolled. If it is known that you are going to submit additional information, at the end of 45 days the appeal will be resolved with the information contained in the file.

4. If you provide additional information, under normal circumstance the claim will be resolved within 30 days. If you do not provide any information, we will decide your claim within 30 days of the expiration of the 45 day time period. If additional time is needed, the appeals claim examiner will notify you of the reason for the delay and the expected resolution time frame.

In the review of the information contained in the appeal of your claim it will not be possible to resolve the claim in 45 days due to your opportunity to submit medical documentation. As allowed by ERISA, we are requesting a 45 day extension. However, please be aware the time from when we requested the medical documentation from you until you furnish the information under ERISA is tolled and does not count against our resolution time under the applicable ERISA regulations.

Should you have any questions, please feel free to contact me at the number listed above.

Sincerely,

Medha Bharadwai. FLMI. ACS

Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-299-000059          Page 1 of 1

## Archacki, Kelli 212

**From:** McDowell, Edward J [Edward.McDowell@rsintl.com]
**Sent:** Monday, January 09, 2006 8:44 AM
**To:** Archacki, Kelli 212
**Subject:** Cleiland, Cathy K. DISPUTED OVERPAYMENT? EDP#2005-299-000059

*Good Morning Kelli:*

*The subject claimant would not agree to reimburse your overpayment and tells us that she sent a certified letter to you regarding this matter.*

*Can you confirm receipt of such letter and advise status of CIGNA's handling?*

*Edward J. McDowell - ACA Certified*

*Professional Collection Specialist*

*Recovery Services International, Inc.*

*edward.mcdowell@rsintl.com*

*800-251-3376 x6135*

*302-476-6159 (Fax)*

This email is intended for the designated recipient(s) only, and may be confidential, non-  lic, proprietary, protected by the attorney/client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

1/10/2006

LINA/Cleiland 0696

Kelli Archacki
Claim Manager

January 5, 2006

**CIGNA** Group Insu
Life - Accident - Disability

CATHY CLEILAND

CLIO, AL 36017

Routing 212
12225 Greenville Ave
Suite 1000
Dallas, TX 75243
Telephone 800.352.0611, 1
1294
Facsimile 860.731.3413
Kelli.Archacki@cigna.com

| | |
|---|---|
| CLMT: | Cathy Cleiland |
| POLICY #: | FLK 20104 |
| POLICY: | Temple Inland |
| COMPANY: | Life Insurance Company of North America |

Dear Ms. Cleiland:

We are in receipt of your request for review of the denial of your claim for Long Term
Disability benefits and/or the additional information that was submitted regarding your
Long Term Disability claim which was denied on 12/07/05.

Your claim will be forwarded within 48 hours to our Disability Appeals Team in Dallas, TX.
They will review your claim and any additional medical information provided, and you will
be notified as soon as a decision is made. It may be necessary for us to request additional
information from your doctor in order for us to make our decision. In case additional
information is needed, we ask that you sign and date the enclosed Disclosure Authorization,
which will enable us to obtain any updated information on your condition. This form
should be returned to:

**CIGNA Group Insurance**
**Disability Appeals Team**
**12225 Greenville Ave., 5th Floor**
**Dallas, TX 75243**
**1.800.352.0611**

Under normal circumstances, you will be notified of the decision or status within 30 days
from the date that the appeal is received. If additional time is needed, we will notify you of
the reason for the delay. Please be aware that as part of the appeals process, you may have
access to information relevant to your claim, which will be provided to you upon request
free of charge.

The Appeals Claims Examiner there will contact you if they need additional information
from you. You can reach the Disability Appeals Team at 1.800.352.0611 should you have
any questions.

Sincerely,

Kelli Archacki

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

LINA/Cleiland 0697



# Claim Direction Staffing Form

**Please complete the sections that are applicable for the staffing purpose**

## *Claim Information:*

| Staffing Date: | 12/30/05 | Case Manager: | Kelli Archacki |
|---|---|---|---|
| Cl Name: | Cathy Cleiland | SSN: | |
| DOB/Age: | 48 | Height/Wt: | 5'4" 170 |
| Employer: | Temple Inland | Occupation: | Human Resources Manager II |
| Incur Date: | 5/14/03 | Date of Hire: | |
| | | Job Occ Term Date: | |
| BSD or A/O Date: | 11/10/05 | Claim Received Date: | |
| Prior Claim ? | No | MI Max date: | n/a |
| Diagnosis/ICD 9 code: | S/P reoperative lumbar spine surgery at L4-5 with posterior lumbar interbody fusion and internal fixation | | |
| Status: | II ____   Ongoing ____   A/O ____   Appeal __x__   Pre-Ex _____ | | |

Staffing Purpose:  new medical

Claim synopsis:

## *Vocational / Occupational History:*

| Occupational requirements (DOT MUST BE ON FILE & TABBED) | |
|---|---|
| **X** Sedentary   ☐ Light ☐ Medium   ☐ Heavy ☐ Very Heavy | |
| Own Occ DOT and JD: _____ | Own job and JD: _____ |
| Training/Education/Experience Bachelors in Business | Dominant hand: R | VRC assigned: ____ Yes   x No |

## *Medical / Offsets:*

| Treating Physicians (name, specialty, initial & LOV, frequency): | | | | | | | |
|---|---|---|---|---|---|---|---|
| Provider | Specialty | Initial OV | LOV | TX | PAA? | R | L |
| Pain Mgmt Center | | | | | | | |
| Dr. Steven Harris | ENT | | | | | | |
| Dr. Brett Johnson | PCP | | | | | | |

| Projected RTW Date and Provider: | none |
|---|---|
| CGT Guidelines: | |
| Other Benefits: | ☐ STD   ☐ WC  X  SSDI  ☐ SSR  ☐ Pension  ☐ Other |



## Claim Direction Staffing Form

**Please complete the sections that are applicable for the staffing purpose**

### *Comments/ Review outcome/Rationale/Plan:*

| AMD_____ NCM_____ VRC_____ |
| --- |
| Based on medical data submitted AFC's are not supported as evidenced by pain management provider not disabling cx and no new medicals to review that would prevent cx from functioning. |

| **Future Claim Direction:** | |
| --- | --- |
| F/U Medical _____ | SSDI _____ |
| VOC Rehab _____ | W/C _____ |
| SIU _____ | Other _____ |

### *Parties in Attendance:*

**Please list printed staffing participant names with signatures:**

1. *Susa Lynford, RN 1/5/06*
2.
3.
4.
5.

Date:_____

LINA/Cleiland 0699

12-26-05

Kelli Archacki
Life Insurance Company of North America
Routing 212
12225 Greenville Ave.
Suite 1000
Dallas, TX   75243

RECEIVED

CIGNA = DALLAS

Dear Ms. Archacki:

Please accept this letter as my
submission of appeal of my LTD benefits
under the FLK 20104 policy.
In contacting the physicians I have seen,
I do understand that some of their notes
didn't have all of the information that would
have helped you make a more informed
decision. However, I also feel that based on the
Disability Questionaire that I completed on
6/28/05, I know I listed the medications
I was on and you referenced only three
medications in your determination letter
dated 12/7/05. At the conclusion of this
letter I will list all of my medications and
the physician who prescribed them. I am
using Dr. Bret Johnson of First Med in Dothan,
AL as my primary physician. I have seen him
twice and I am in the process of getting my Received
medical records from him and I will send them
directly to you. I will also do the same
from the Pain Center of Montgomery. You indicated

LINA/Cleiland 0700

Cathy K. Cleiland          12-21-05          page 2

that you received my medical records from
Dr. Steve Harris. He referred me to Dr. Robert Albares
of Gastroenterology Associates of Dothan. I had
a GI medical evaluation in November and I have
requested those records as well. I think that by
collecting the records myself I will know that
you have the correct and accurate information.
~~Also~~ In November, I also went for a sleep study.
I had a follow-up appt with Dr. Reuben Richardson,
Neurologist and have included with this letter, a
note from him. I have an appointment in January
to be fitted with the necessary breathing equipment.
He indicated to me that most likely my medications
plays a significant role in my sleep or lack of sleep.
Dr. Nortick of the Pain Center of Montgomery referred
me to Dr. Richardson because I was having some falling
spells during the night when I got
up to go to the bathroom. I went to the Pain Center
3 months in a row with visible bruises from
falling and hitting my head, arms, legs and back.
Dr. Nortick said that with the falls happening on
a regular basis that I should be evaluated.
Dr. Richardson explained to me what was happening
but I didn't understand it that well. If you need
specific test results, you may contact him. You
stated that there were no current complaints of
radiating pain, numbness, or tingling. Every time
I go to the Pain Center of Montgomery. I am
given a drawing of a body and I color in
the areas of pain. But I don't know if you received

LINA/Cleiland 0701

received ⟵ (margin note)

Cathy K. Cleiland        12-21-05                    page 3

those drawings but that was exactly the
purpose. My left leg has constantly had the
sensation of my skin being peeled away.
My feet constantly feel like they have been
sitting in dust leaving them in extreme pain.
My back is in pain to the extent that
it is indescribable. There are times when I
cannot get my self straitened up to stand.
besides My feet also feel gritty and like I
have string tied around my toes. In my
visit to the Pain Clinic of Montgomery after I
had my last surgery (11-03), Dr. Herrick told me
that surgically everything had been done that
could be done and most likely I will be on
narcotic medication the rest of my life. My
injuries have also affected my bladder but I
have not seen a gynocologist yet to see if
that can be corrected. I have also seen a
rheumotoligist spelling? due to the pain in
my knees and fingers. I have severe pain
in them with them locking up much of the
time. I will call and request those records
as well (Dr. LaCour - Dothan, Al.)
        I know I have given you a lot of information
and hopefully can send you some more medical records
in the next 1 to 2 wks. With the holidays
approaching, it may take a little longer
than usual. I appreciate your help and
I am going to list on the next page the medications
I take.
                    Sincerely,
                    Cathy Cleiland

LINA/Cleiland 0702

Cathy K. Cleiland    12-21-05          Page 4

List of prescription medication and Dr. prescribing

② 1/1   Insulin R/N    20/25 x 2 daily   — Dr. Johnson
        (Diagnosed with juvenile diabetes in 9/1978)
        Methedone  10 mg x 5 daily   — Dr Nortick
        Neurontin  800 mg x 4 daiey  — Dr. Nortick
        (I have liver test periodically duets large dose)
        Robaxin  750 mg x 3 daily   — Dr Nortick
        Clonazepam   1 mg x 2 daily  — Dr. Nortick
        Effexor     75 mg x 1 daily  — Dr. Herrick Nortick
        phenegren    25 mg x 3 daily  — Dr. Nortick
        protonix     40 mg x 1 daily  — Dr. Nortick
        Naprelan     375 = 2 tablets x 2 daily — Dr. Bret Johnson
        Nitrofurantin  100 mg x 1 daily — Dr William Terry
        Celebrex      200 mg x 1 daily — Dr Edmund LaCour

12 different
meds daily

                          copy of a
You should have a letter sent to the Social
Security Administration by a physician
of their choice, Dr. Keith Vanderzyl —

Enclosure: medical Records
   Dr. Reuben Richardson
   Dr. Bret Johnson
   Dr. Robert Albares                    Cathy Cleiland

136340. CLEILAND   CATHY
08/24/05  BRET M JOHNSON MD
FM
This patient is here today for left earache she has had for three days. She has had nasal congestion and rhinitis and postnasal drip. Pain and pressure over the left maxillary area. There is a complicated medical history. She also needs to establish a primary care physician. I went over her history form and a copy of that is on the chart. Because of an MVA and subsequent back surgeries times three, she is cared for by Pain Management in Montgomery.

PHYSICAL EXAM:
VS:    Weight is 173.  Temp 97.  Pulse 92.  Blood pressure 140/80.
HEENT:   Significant  for  some pain with palpation over the left maxillary area.  A little bit congested nasally.   She has a little bit of erythema left tympanic membrane.
NECK: She has two scars anteriorly.   She states she had neck surgery as well.   She does have some hoarseness which she states has been persistent for quite some time now.
LUNGS:  Clear.
HEART:  Regular rate and rhythm.
ABD:  Soft, nontender.
EXT:  Feet show no lesions.

A/P: Patient with complicated medical history.  We are going to order some blood work today and have her back in a week to go over her chronic medical problems.  We are going to start her on Amoxil, Mucinex and steroid nasal spray for her URI / Sinusitis.  Referral to ENT for persistent hoarseness for rhinolaryngoscopy.
BMJ/ld

OCT 2 0 2005

| | Temp.: |
| Alt.: | Pulse: |
| B.P.: | Hgt.: |
| BMI: | Time: |
| Nurse: | |
| M.D. | |

Lab only pu Dr Johnson

AM PM

failing
D/c
cmp

10³⁰

**FIRST MED OF DOTHAN, P.A., 1245 WESTGATE PARKWAY, DOTHAN, ALABAMA**

FM-27 F&B

LINA/Cleiland 0704

136340

Cleiland, Cathy

AUG 24 2005 C/O (L) earache X 3d

Needs Primary Physician

48 WF
Cipro

int
Menopause

- MVA
- LB Sx 3°
- Fi: ...

Dr. Harris
8/26/05 @ 9:45

Wt: 172.8    Temp: 97
B.P. 140/80    Pulse: 92
BMI:    Hgt:
Nurse: Off    Time:
M.D.

Meds tested
CBC
Rx Amoxil 500mg
Potid x 10d
#30 ORL
Pt to RTC Fasting
- H/bA1c
- CMP

COC > 3°°

- supp x 1 Cl
12hrs work

#30 day ē 3RF
on Consulin
30 day Quan RF
on Strips/Arech

ENT — Rhinitis
Persistent
hoarseness

FIRST MED OF DOTHAN, P.A., 1245 WESTGATE PARKWAY, DOTHAN, ALABAMA

LINA/Cleiland 0705



TEST: ☑ CBC  PROFILE: ☐ WBC  ☐ RBC  ☐ PLT  ☐ PLOT

REQD BY: _____

PERFORMED BY: _____    DATE: _____

_____    DATE: _____

ID: 136340                          08-24-05
CMB                                    15:05

                              Patient
                              Limits 1
WBC    6.5    x10^3/uL      3.6    9.6
LY    33.3    %            20.5   51.1
MO     1.6  3L %            1.7    9.3
GR    65.1  3  %          42.2   75.2
LY#    2.2    x10^3/uL      1.2    3.4
MO#    0.1  3  x10^3/uL     0.1    0.6
GR#    4.2  3  x10^3/uL     1.4    6.5
RBC    4.76   x10^6/uL      3.90   5.70
Hgb   12.8    g/dL         12.1   17.2
Hct   40.3    %            36.1   50.3
MCV   84.6    fL           82.2   97.4
MCH   27.0  L  pg          27.8   33.3
MCHC  31.9  L  g/dL        33.0   34.8
RDW   13.4    %            11.6   13.7
PLT   350.    x10^3/uL     150.   400.
MPV    8.8    fL            7.4   10.4

8-24-05

FIRST MED OF DOTHAN, P.A.   125 WESTGATE PARKWAY   DOTHAN, AL 36303

LINA/Cleiland 0706



**Client Information**
ACCOUNT: 434083
PHYSICIAN: BRET JOHNSON

FIRST MED OF DOTHAN, PA
1245 WESTGATE PKWY.
DOTHAN, AL 36303

2906 Julia Drive
Valdosta, GA 31602
Phone (229) 244-4468
Director: Jackson L. Gates, M.D.

**Patient Information**
NAME: CLEILAND CATHY
AGE, DOB: 48.
PHONE:
SEX: F
FASTING: YES
ROOM #:
MED REC #: 136340
PATIENT ID: 96601-01

**Patient Notes**

**Specimen Information**
ACCESSION #: S5904781
REQUISITION #: AB14307
COLLECTED: 10/20/2005-11:25AM
RECEIVED: 10/20/2005-12:26PM
REPORTED: 10/21/2005-2:16AM

| Test Name | Within Range | Outside Range | Normal Range | Units |
|---|---|---|---|---|
| COMPREHENSIVE METABOLIC PANEL | | | | |
| CALCIUM | 9.8 | | 8.5-10.8 | MG/DL |
| GLUCOSE | | 394 (H) | 70-110 | MG/DL |
| BUN | 15 | | 6-24 | MG/DL |
| CREATININE | 1.0 | | 0.6-1.5 | MG/DL |
| PROTEIN, TOTAL | 6.4 | | 6.4-8.3 | GM/DL |
| ALBUMIN | 4.0 | | 3.4-4.8 | GM/DL |
| BILIRUBIN, TOTAL | 0.3 | | 0-1.0 | MG/DL |
| PHOSPHATASE, ALK. | | 155 (H) | 35-104 | UNITS/L |
| AST (SGOT) | | 41 (H) | 0-37 | UNITS/L |
| ALT (SGPT) | 40 | | 0-40 | UNITS/L |
| SODIUM | 139 | | 135-148 | MEQ/L |
| POTASSIUM | 5.0 | | 3.5-5.3 | MEQ/L |
| CARBON DIOXIDE | 28 | | 22-30 | MEQ/L |

Note: CO2 values may be decreased by exposure to room air.

| CHLORIDE | 99 | | 96-110 | MEQ/L |
| GLYCOSYLATED HGB, A1C /MBG | | | | |
| GLYCOSYLATED HGB, A1C | | 11.8 (H) | <7.0 | % |
| MEAN GLUCOSE (CALCULATED) | 306.9 | | | MG/DL |

NOTE: This is a calculated Mean Blood Glucose.
It reflects the calculated average glucose
for the last 60-90 days.

| GLOMERULAR FILTRATION RATE (CALC) | | | | |
| GFR, BLACK | 76 | | >60 | |
| GFR, NON-BLACK | 63 | | >60 | |

*** Glomerular Filtration Rate is calculated using the MDRD
equation as recommended by the National Kidney Foundation.
The GFR calculation is a no-charge service.

### *** FINAL REPORT ***

EXCEPT WHERE NOTED: TEST PERFORMED AT DOCTORS LABORATORY INC., VALDOSTA, GA

Cleiland, Cathy

NOV 10 2005 To Discuss blood work
48405
allg. cipro      Flu Shot

Wt 182    Temp: 97
B.P. 150/78   Pulse: 90
BMI:          Hgt:
Pulse: As     Time:    AM PM
M.D.

meds
list
BS 314 gl

Flu (Not avail)
Vaccine

136340 CLEILAND   CATHY
11/10/05  BRET M JOHNSON MD
FM
This patient in to discuss blood work today. Her diabetes has
been uncontrolled as evidenced by A1c of 11.8. She has been
under a lot of stress. She also has had a little activity of
late, intermittently compliant with diet.

PHYSICAL EXAM:
VS: Temp is 97. Blood pressure 150/78. Pulse 90.
LUNGS: Clear.
HEART: Regular rate and rhythm.
ABD: Soft, nontender.

LAB: Her sugar here is 314.

A: Uncontrolled diabetes.
P: I am going to increase both her N and R. She takes
currently 20 b.i.d. of the R and of the N 25 b.i.d. We will
increase by two units of each type in the morning and two
units at night by each type, and have her do b.i.d. Accuchecks
and bring them back to me in a week or so. Also referral to
endocrine with Dr. Wise. We will go ahead and give her a flu
shot today if we do have them available.
BMJ/ld

_____

Endo referral
Dr Wise —
uncontrolled
Dm

Dn Sch Bad
(MS) 11-10-05 5:20 pm

**FIRST MED OF DOTHAN, P.A., 1245 WESTGATE PARKWAY, DOTHAN, ALABAMA**

FM-27 F&B

LINA/Cleiland 0708



136940 CLEILAND    CATHY
12/13/05   BRET M JOHNSON MD
FM
/Patient is a pleasant female in today for
followup. Unfortunately, we only see her periodically but she
has had very uncontrolled diabetes but is
here today because she had some dental work done,
had a bone graft placed in the posterior aspect
of the right upper gum line and it has been very
painful. They wanted to give her some steroids
but because her diabetes had been so uncontrolled
we recommended at the most just giving her an
injection here.
PHYSICAL EXAMINATION:
She does have evidence of the surgery. It  looks
good though, looks like it is healing well.
The surrounding gum does not appear erythematous
or indurated. She has been on some Amoxil. I
went over her blood sugar log with her and they
have been erratic, some in the 300 and 400's,
some down as low as 50.
ASSESSMENT/PLAN:
1)      Markedly uncontrolled diabetes
        I have asked her to please keep track of
        her sugars closely, call me every few
        days and if need be we can help her
        adjust her Insulin. As it stands, we are
        going to have her go up by at least a couple
        of units on her NNR for both the morning
        and night time doses and continue to
        follow sugars closely.  We will write some
        Naprelan and Flextra and if she wants we
        will give her a Decadron shot today and
        check her in one week.
BMJ/dls
ADDENDUM:
We will just use the Naprelan 375 2 q.d.
prn to be taken with food. She denies NSAID
intolerance or peptic ulcer #20, no refill.
BMJ/dls

FIRST MED OF DOTHAN, P.A., 1245 WESTGATE PARKWAY, DOTHAN, ALABAMA

FM-27 F&B

LINA/Cleiland 0709

*136340*

CLEILAND, CATHY

DEC 1 3 2005

18 yo F C/o Apro

① dental work done week ago
today, was in extream pain
on ® side of face with swollen
jaw, & pressure. Her dentist said
she needed to see Dr. Johnson.

② discuss letter she recieved
about disability

DICTATION
NEXT PAGE

| | | |
|---|---|---|
| Wt. 174 | Temp.: 97² |
| B.P ⑤ 150/84 | Pulse: 100 |
| BM: | Hgt.: |
| Nurse: KL | Time: 3:10 AM/PM |
| M.D. | |

Meds
listed

Decadron 4mg
Om ® gluteal
CL

A1c
Cmp
Lipe          3³ˢ

↑ NIN
by Zu
early
Jan

coll w/
≈ CBC

→ 3:9Jp

Rt NAprelan
375 ii gd prn
e food #20
OUT

LINA/Cleiland 0710

| Client Information | | Patient Information |
|---|---|---|
| ACCOUNT: 434083<br>PHYSICIAN: BRET JOHNSON<br><br>FIRST MED OF DOTHAN, PA<br>1245 WESTGATE PKWY.<br>DOTHAN, AL 36303 | DOCTORS LABORATORY<br>2906 Julia Drive<br>Valdosta, GA 31602<br>Phone (229) 244-4468<br>Director: Jackson L. Gates, M.D.<br>FINAL REPORT | NAME: CLEILAND, CATHY<br>AGE, DOB: 48.<br>PHONE:<br>SEX: F<br>FASTING: NO<br>ROOM #: 136340<br>MED REC #: 136340<br>PATIENT ID: 96601-01 |

**Patient Notes**

| Specimen Information |
|---|
| ACCESSION #: S5953113<br>REQUISITION #: AB46072<br>COLLECTED: 12/13/2005-4:47PM<br>RECEIVED: 12/13/2005-5:38PM<br>REPORTED: 12/14/2005-2:43AM |

| Test Name | Within Range | Outside Range | Normal Range | Units |
|---|---|---|---|---|
| **COMPREHENSIVE METABOLIC PANEL** | | | | |
| CALCIUM | 9.5 | | 8.5-10.8 | MG/DL |
| GLUCOSE | | 366 (H) | 70-110 | MG/DL |
| BUN | 12 | | 6-24 | MG/DL |
| CREATININE | 1.0 | | 0.6-1.5 | MG/DL |
| PROTEIN, TOTAL | 6.7 | | 6.4-8.3 | GM/DL |
| ALBUMIN | 4.0 | | 3.4-4.8 | GM/DL |
| BILIRUBIN, TOTAL | 0.2 | | 0-1.0 | MG/DL |
| PHOSPHATASE, ALK. | | 141 (H) | 35-104 | UNITS/L |
| AST (SGOT) | 22 | | 0-37 | UNITS/L |
| ALT (SGPT) | 21 | | 0-40 | UNITS/L |
| SODIUM | 138 | | 135-148 | MEQ/L |
| POTASSIUM | 4.4 | | 3.5-5.3 | MEQ/L |
| CARBON DIOXIDE | | 31 (H) | 22-30 | MEQ/L |

Note: $CO_2$ values may be decreased by exposure to room air.

| | | | | |
|---|---|---|---|---|
| CHLORIDE | 98 | | 96-110 | MEQ/L |
| **GLYCOSYLATED HGB, A1C /MBG** | | | | |
| GLYCOSYLATED HGB, A1C | | 11.3 (H) | <7.0 | % |
| MEAN GLUCOSE (CALCULATED) | 290.3 | | | MG/DL |

NOTE: This is a calculated Mean Blood Glucose.
It reflects the calculated average glucose
for the last 60-90 days.

| | | | | |
|---|---|---|---|---|
| **GLOMERULAR FILTRATION RATE (CALC)** | | | | |
| GFR, BLACK | 76 | | >60 | |
| GFR, NON-BLACK | 63 | | >60 | |

*** Glomerular Filtration Rate is calculated using the MDRD
equation as recommended by the National Kidney Foundation.
The GFR calculation is a no-charge service.

| | | | | |
|---|---|---|---|---|
| CHOLESTEROL, TOTAL | 188 | | | MG/DL |
| <200 is desirable MG/DL | | | | |
| TRIGLYCERIDES | | 155 (H) | | MG/DL |
| <150 is desirable MG/DL | | | | |
| Result is borderline high | | | | |
| **HDL / LDL CHOLESTEROL** | | | | |
| HDL CHOLESTEROL | | 39 (L) | 40-59 | MG/DL |
| LDL | | 118 (H) | | MG/DL |
| <100 is optimal MG/DL | | | | |
| Result is higher than Optimal | | | | |
| CHOL/HDL RATIO | 4.8 | | | |

*** FINAL REPORT ***

EXCEPT WHERE NOTED: TEST PERFORMED AT DOCTORS LABORATORY INC., VALDOSTA, GA

LINA/Cleiland 0711



136340

## GASTROENTEROLOGY CONSULTATION

Cathy Cleiland (          )

10/20/05

REFERRING PHYSICIAN: Dr. Harris

CONSULTING PHYSICIAN: Robert P. Albares, M.D.

CHIEF COMPLAINT: Hoarseness.

HISTORY OF PRESENT ILLNESS: Ms. Cleiland is a 48-year-old female patient who over the last six months had intermittent hoarseness and dyspepsia symptoms. She is also describing dysphagia with solid foods at times. She did try Protonix which helped a slight amount. Her appetite is good and her weight is maintained. She denies any nausea or vomiting. Her bowels do tend toward constipation. She denies any diarrhea. She denies any blood or black stools.

MEDICATIONS:
1. Insulin.
2. Neurontin.
3. Robaxin.
4. Methadone.
5. Phenergan.
6. Effexor.
7. Clonazepam.
8. Protonix.
9. Celebrex.
10. Stool softener

ALLERGIES: Cipro.

PAST MEDICAL/SURGICAL HISTORY:
1. C-section x2.
2. Tubal ligation with later reversal.
3. Removal of right ovary.
4. Herniated cervical disc surgery.
5. Lumbar disc surgery.
6. Carpal tunnel release.

CONTINUED...

## GASTROENTEROLOGY CONSULTATION

Cathy Cleiland (        )

10/20/05

CONTINUED...2

7. History of DKA with hospitalization.
8. History of heart catheterization in 1999.
9. Insulin-dependent diabetes mellitus.
10. Depression.
11. Sleep apnea.
12. Mitral valve prolapse.

OCCUPATIONAL/SOCIAL HISTORY: She is divorced and lives in Clio. She does not smoke cigarettes or drink alcohol. She is disabled due to back problems.

FAMILY HISTORY: Her father has a history of Alzheimer's. Her mother has a history of back problems. She has a first cousin with colon polyps and two aunts with colon cancer.

REVIEW OF SYSTEMS:
GENERAL: Positive for weight loss.
SKIN/BREAST: Positive for rash.
HEMATOLOGY/LYMPHATICS: Positive for enlarged and painful lymph node.
MUSCULOSKELETAL: Positive for arthritis, weakness, back pain, and joint pain.
ENDOCRINE: Positive for diabetes.
ALLERGY/IMMUNOLOGY: Positive for sinus.
EYES: Positive for glass.
ENT: Positive for mouth or throat sores, hoarseness, and teeth problems.
RESPIRATORY: Positive for sleep apnea.
CARDIOVASCULAR: Positive for heart murmur and palpitations.
GENITOURINARY: Positive for increased urinary frequency and change in urine color.
NEUROLOGIC: Positive for numbness.
PSYCHIATRIC: Positive for sleep disturbances and depression.

PHYSICAL EXAMINATION:
CONSTITUTIONAL: Blood pressure 138/60, pulse 88, respirations 18, temperature 97.3, and weight 178 pounds.
GENERAL: Ms. Cleiland is a pleasant female, in no acute distress.
EYES: PERRLA. Sclerae are nonicteric. Conjunctivae are pink.

CONTINUED...2

LINA/Cleiland 0713

## GASTROENTEROLOGY CONSULTATION

Cathy Cleiland (          )

10/20/05

CONTINUED...3

ENT: Pharynx is benign. Pink and moist mucous membranes are intact without lesions. Lips and gums are without abnormality. Tongue midline.
NECK: No adenopathy or thyromegaly. Trachea is midline.
CHEST: Lungs are bilaterally clear to A&P with good respiratory effort.
CARDIOVASCULAR: Regular rate and rhythm. No murmur, gallop, or rub noted. Pedal pulses are 1+ bilaterally with no pedal edema.
ABDOMEN: Soft, nondistended, and nontender. No organomegaly or masses palpated. Bowel sounds present in all four quadrants.
RECTAL: Deferred.
LYMPHATICS: No adenopathy to the neck, groin, or supraclavicular area.
MUSCULOSKELETAL: No clubbing, cyanosis, or edema.
SKIN: No rashes or icterus.
NEUROLOGIC: Cranial nerves are intact. Alert and oriented x3. Sensation is intact.
PSYCHIATRIC: Mood and affect are pleasant and congruent. Memory is intact.

PROBLEMS:
1. Dyspepsia.
2. Hoarseness.
3. Dysphagia.
4. Constipation.
5. Insulin-dependent diabetes mellitus.
6. Arthritis.
7. Sinus problems.
8. Mitral valve prolapse.
9. Depression.

RECOMMENDATIONS: Dr. Albares spoke with Ms. Cleiland regarding her dyspepsia, hoarseness, and dysphagia. We will change her to Nexium from Protonix to hopefully give her better symptomatic relief. She needs an EGD with possible dilatation.

CONTINUED...3

LINA/Cleiland 0714

/FRI 09:09 PM  GASTROENTEROLOGY            FAX No. 334 836 1998            P. 017/029

GASTROENTEROLOGY CONSULTATION

Cathy Cleiland (          )

10/20/05

CONTINUED...4

Risks, benefits, and alternatives for the procedure were discussed and she agrees to
proceed. A copy of the permit was given for her review. She denies problems with
conscious sedation such as Demerol and Versed. In regard to the constipation, she is
generally on high fiber diet and fiber laxatives daily. Further workup will be based on
the results of the test.

Shea R. Calhoun, CRNP/pkg/san/136199              Robert P. Albares, M.D.

cc:    Dr. Harris
       Dr. Brett Johnson

LINA/Cleiland 0715

# EXHIBIT 1 TO EXHIBIT A Part 14

SAMC Medical Records /9/2005 8:47    PAGE 007/018  ax Server   /2182

## SOUTHEAST ALABAMA MEDICAL CENTER
PO Drawer 6987,  Dothan, AL 36302
334-793-8111

### REPORT OF OPERATION

Patient Name: CLEILAND, CATHY
MR#: 000214773              Patient #: 2680114      Room:EN- -
DOB:                        Age: 48                 Pt Sex:  F

Admit Date:  11/15/2005     D/C Date:  11/15/2005   Pt Type:

Attending:  Robert Albares M.D.
Admitting:  Robert Albares M.D.
Referring:  Alexander Benz M.D.


DATE:                    11/15/05

SURGEON:                 Robert P. Albares, M.D.

PREOPERATIVE DIAGNOSIS:  Dysphagia, dyspepsia.

POSTOPERATIVE DIAGNOSES:  1.  Retained stomach contents.
                          2.  Distal esophageal stricture.
                          3.  Antral gastritis; biopsy taken of
                              antrum.

OPERATION:               Esophagogastroduodenoscopy with balloon
                         dilatation and biopsy.

SEDATION:                Demerol 75 mg, Versed 4 mg, and Phenergan
                         25 mg.

DESCRIPTION OF PROCEDURE:
     The patient signed informed consent of the risks, benefits, and
alternatives, and all questions answered.

Esophagoscopy revealed distal esophageal changes.  Passed into the
stomach.  Antegrade and retrograde views revealed gastritis, retained
stomach contents with food.  The duodenum was unremarkable.  I took a
biopsy of the antrum.  We dilated U-junction up to 42-French.


Name:  CLEILAND,CATHY              MR #: 000214773
Robert P. Albares, M.D.           Patient #:  2680114

           COPY FOR Robert P. Albares, M.D.

                                                        /

LINA/Cleiland 0716

SAMC Medical Records 2/9/2005 8:47   PAGE 008/018   Fax Server

42182

REPORT OF OPERATION
Page 2 of 2

## SOUTHEAST ALABAMA MEDICAL CENTER
PO Drawer 6987,  Dothan, AL 36302
334-793-8111

The patient tolerated the procedure quite well.  No immediate
complications.  The patient is to be followed back up in the office.

Robert P. Albares, M.D.

DD:  11/15/2005 12:18    dd
DT:  12/8/2005 09:12     30602

Name:  CLEILAND, CATHY               MR:  000214773
Robert Albares, M.D.                 Patient #:  2680114

COPY FOR Robert P. Albares, M.D.

LINA/Cleiland 0717

# INVOICE

**Smart Document Solutions, LLC**
P.O. Box 409875
Atlanta, GA 30384-9875
Fed Tax ID 58 - 2659941
(770) 754 - 6000

**Invoice #:** 0030682538
**Date:**       12/08/2005

| Ship to: | Bill to: | Records from: |
|----------|----------|---------------|
| KELLI ARCHACKI<br>CIGNA DISABILITY MANAGEMENT<br>12225 GREENVILLE AVE<br>STE 1000 D212<br>DALLAS, TX 75243 | KELLI ARCHACKI<br>CIGNA DISABILITY MANAGEMENT<br>12225 GREENVILLE AVE<br>STE 1000 D212<br>DALLAS, TX 75243 | FIRST MED OF DOTHAN<br>1245 WESTGATE PARKWAY<br>DOTHAN, AL 36303 |

**Requested By:** CIGNA DISABILITY MANAGEMENT
**Patient Name:** CLEILAND CATHY K

**SSN:**
**POLICY NUMBER:** FLK20104

| Description | Quantity | Unit Price | Amount |
|-------------|----------|------------|--------|
| Basic Fee | | | 0.00 |
| Retrieval Fee | | | 5.00 |
| Per Page Copy (Paper) 1 | 8 | 1.00 | 8.00 |
| Shipping/Handling | | | 0.60 |
| Subtotal | | | 13.60 |
| Sales Tax | | | 0.00 |
| Invoice Total | | | 13.60 |
| Balance Due | | | 13.60 |

**Pay your invoice online at www.SDSPayOnline.com**

Terms: Net 30 days          **Please remit this amount : $ 13.60**

------------------------------------✂------------------------------------

*pd 12/15/05 xa*

**Smart Document Solutions, LLC**
P.O. Box 409875
Atlanta, GA 30384-9875
Fed Tax ID 58 - 2659941
(770) 754 - 6000

**Fast. Secure. Free.**
SDSPayOnline is a free, online payment processing service that provides you a fast and convenient way to pay your Smart Document Solutions invoice. You can now pay your Smart Document Solutions invoice online by visiting www.SDSPayOnline.com. Simply have your invoice and major credit card ready to process your payment.

**Invoice #:** 0030682538

Check # _____
Payment Amount $_____

# Please return stub with payment.
**Please include invoice number on check.**
To pay invoice online, please go to www.SDSPayOnline.com or call (770) 754 6000.

LINA/Cleiland 0718

J-03-2005 14:22 From:CIGNA DALLAS                    To:3347948153              P.1/4

## *Facsimile Transmission Cover Sheet*

3rd request
11/2/05
334-793-1578

**SECOND REQUEST**
10/27/05

FM136340

**CIGNA Group Insurance**
Life · Accident · Disability

| Transmit to FAX number 334.794.8153 | Date October 20, 2005 | Time 11:05 AM | Total number of pages (including this sheet): 4 |

**To**                                              **From**

Name
Dr. Brett Johnson                                   Name
                                                    Kelli Archacki

Company                                             Department
Attn: Alicia  *Medical records*   Mail Bill!

Phone                                               Phone
                                                    800.352.0611, Ext. 1294

Address                                             Address
                                                    212
                                                    12225 Greenville Ave
                                                    Suite 1000
                                                    Dallas, TX 75243

Re:     Cathy Cleiland
DOB:
Policy#  FLK 20164
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland. So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

- **Complete office/progress notes from September 1, 2005 through present. Please include the results of all diagnostic studies.**

- **Please complete the enclosed Physical Abilities Assessment form.**

We request that you have this information to us no later than October 26, 2005. Thank you very much for your assistance and prompt attention to this letter.

11/2/05

JH/12-7-05

CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

[ ] Acknowledgment Requested                    To Fax a reply, dial : 860.731.3413

LINA/Cleiland 0719

1-03-2005 14:22 From:CIGNA DALLAS                    To:3347948153        P.2/4

## PHYSICAL ABILITY ASSESSMENT

We are evaluating your patient's disability claim in order to determine functional impairment Please check the boxes corresponding to the patient's level of physical functioning. Please substantiate your findings with medical documentation. (Failure to provide the requested reports/data may result in delay in claim determinations).

Patient Name_____ Date of Birth_____

Diagnosis(es)/ICD-9 Code_____

*Throughout* an 8-hour workday, the patient can tolerate, *with positional changes and meal breaks,* the following activities for the specified durations:

| | | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|---|
| Sitting: | | | | | | |
| Standing: | | | | | | |
| Walking: | | | | | | |
| Reaching: | Overhead | | | | | |
| | Desk Level | | | | | |
| | Below Waist | | | | | |
| Fine Manipulation: | Right: | | | | | |
| | Left: | | | | | |
| Simple Grasp: | Right: | | | | | |
| | Left: | | | | | |
| Firm Grasp: | Right: | | | | | |
| | Left: | | | | | |
| Lifting: | 10 lbs. | | | | | |
| | 11-20 lbs. | | | | | |
| | 21-50 lbs. | | | | | |
| | 51-100 lbs. | | | | | |
| | 100+ lbs. | | | | | |
| Carrying: | 10 lbs. | | | | | |
| | 11-20 lbs. | | | | | |
| | 21-50 lbs. | | | | | |
| | 51-100 lbs | | | | | |
| | 100+ lbs. | | | | | |

LINA/Cleiland 0720

U-03-2005 14:22 From:CIGNA DALLAS                To:3347948153        P.3/4

| | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| Pushing:  (Max. Wt.:_____) | | | | | |
| Pulling:  (Max. Wt.:_____) | | | | | |
| Climbing:       Regular Stairs | | | | | |
|                 Regular Ladders | | | | | |
| Balancing: | | | | | |
| Stooping: | | | | | |
| Kneeling: | | | | | |
| Crouching: | | | | | |
| Crawling: | | | | | |
| Seeing: | | | | | |
| Hearing: | | | | | |
| Smell/Taste: | | | | | |
| Environmental Conditions: | | | | | |
|     Exposure to extremes in heat | | | | | |
|     Exposure to extremes in cold | | | | | |
|     Exposure to wet / humid conditions | | | | | |
|     Exposure to vibration | | | | | |
|     Exposure to odors / fumes / particles | | | | | |
|     Can work around machinery | | | | | |
| Ability to work extended shifts/ overtime: | | | | | |
| Use lower extremities for foot controls: | | | | | |

*Please use this space to elaborate on ANY of the above categories:*

_____
_____
_____
_____

Name: _____    **Signature** _____
Medical Specialty: _____    Date: _____
Address: _____    Phone: _____
Federal ID tax number: _____

**Please include any objective test or narrative if available.**
**Thank you for your time.**

**Please return this form in the enclosed addressed envelope.**

LINA/Cleiland 0721

NOV-03-2005 14:22 From:CIGNA DALLAS                    To:3347948153                    P.4/4

## DISCLOSURE AUTHORIZATION

Claimant's Name (Please Print) CATHY K. Cleiland

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome), as well as communicable diseases and genetic testing. If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a) reinsuring companies; b) the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c) fraud or overinsurance detection bureaus; d) anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e) for audit or statistical purposes; f) as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: _Cathy K. Cleiland_     Date: 6/28/05

Relationship,
if other than Claimant: _____     Claimant's Social Security Number: _____

Company Name: Temple - Inland Forest Products Corp

### PROHIBITION ON REDISCLOSURE

If the medical information contains information regarding drug or alcohol abuse, it may be protected under federal law. Federal regulations (42 CFR Part 2) prohibit any person or entity who receives such protected information from the Company from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulation. A general authorization for the release of medical or other information is not sufficient for this purpose. The federal rules restrict any use of such protected information to criminally investigate or prosecute any alcohol or drug abuse patient.

LINA/Cleiland 0722

Cleiland, Cathy
NOv 1 0 2005  9o Discuss blood work &
48408           Flu Shot
allg. ã cipro

182 = 92
150/78    90

as
meds
list
BS 314 gol

136340 CLEILAND  CATHY
11/10/05  BRET M JOHNSON MD
FM
This patient in to discuss blood work today. Her diabetes has
been uncontrolled as evidenced by A1c of 11.8. She has been
under a lot of stress. She also has had a little activity of
late, intermittently compliant with diet.

PHYSICAL EXAM:
VS: Temp is 97. Blood pressure 150/78. Pulse 90.
LUNGS: Clear.
HEART: Regular rate and rhythm.
ABD: Soft, nontender.

LAB: Her sugar here is 314.

A: Uncontrolled diabetes.
P:  I am going to increase both her N and R. She takes
currently 20 b.i.d. of the R and of the N 25 b.i.d. We will
increase by two units of each type in the morning and two
units at night by each type, and have her do b.i.d. Accucheks
and bring them back to me in a week or so. Also referral to
endocrine with Dr. Wise. We will go ahead and give her a flu
shot today if we do have them available.
BMJ/ld

----------------

F/u (Not avail)
vaccine

Endo referral
Dr W.se —
uncontrolled
Dm

in Sch Bad
(ms) 11-10-05  5

FM-27 F&B

LINA/Cleiland 0723

136340 CLEILAND   CATHY
08/24/05  BRET M JOHNSON MD
FM
This patient is here today for left earache she has had for
three days. She has had nasal congestion and rhinitis and
postnasal drip.   Pain and pressure over the left maxillary
area. There is a complicated medical history.    She also
needs to establish a primary care physician.  I went over her
history form and a copy of that is on the chart. Because of
an MVA and subsequent back surgeries times three, she is
cared for by Pain Management in Montgomery.

PHYSICAL EXAM:
VS:   Weight is 173.   Temp 97.  Pulse 92.  Blood pressure
140/80.
HEENT:   Significant for some pain with palpation over the
left maxillary area. A little bit congested nasally.    She
has a little bit of erythema left tympanic membrane.
NECK: She has two scars anteriorly.  She states she had neck
surgery as well.   She does have some hoarseness which she
states has been persistent for quite some time now.
LUNGS: Clear.
HEART: Regular rate and rhythm.
ABD:  Soft, nontender.
EXT: Feet show no lesions.

A/P: Patient with complicated medical history.  We are going
to order some blood work today and have her back in a week to
go over her chronic medical problems.   We are going to start
her on Amoxil, Mucinex and steroid nasal spray for her URI /
Sinusitis. Referral to ENT for persistent hoarseness for
rhinolaryngoscopy.
BMJ/ld

OCT 2 0 2005

|        |  |  | Temp.: |  |
|--------|--|--|--------|--|
| Wt.:   |  |  | Pulse: |  |
| B.P.:  |  |  | Hgt.:  | AM PM |
| BMI:   |  |  | Time:  |  |
| Nurse: |  |  |        |  |
| M.D.   |  |  |        |  |

Lab only per Dr. Johnson

**FIRST MED OF DOTHAN, P.A., 1245 WESTGATE PARKWAY, DOTHAN, ALABAMA**

6-27 F&B

LINA/Cleiland 0724



136340

## GASTROENTEROLOGY CONSULTATION

Cathy Cleiland (     )

10/20/05

**REFERRING PHYSICIAN:** Dr. Harris

**CONSULTING PHYSICIAN:** Robert P. Albares, M.D.

**CHIEF COMPLAINT:** Hoarseness.

**HISTORY OF PRESENT ILLNESS:** Ms. Cleiland is a 48-year-old female patient who over the last six months had intermittent hoarseness and dyspepsia symptoms. She is also describing dysphagia with solid foods at times. She did try Protonix which helped a slight amount. Her appetite is good and her weight is maintained. She denies any nausea or vomiting. Her bowels do tend toward constipation. She denies any diarrhea. She denies any blood or black stools.

**MEDICATIONS:**
1. Insulin.
2. Neurontin.
3. Robaxin.
4. Methadone.
5. Phenergan.
6. Effexor.
7. Clonazepam.
8. Protonix.
9. Celebrex.
10. Stool softener

**ALLERGIES:** Cipro.

**PAST MEDICAL/SURGICAL HISTORY:**
1. C-section x2.
2. Tubal ligation with later reversal.
3. Removal of right ovary.
4. Herniated cervical disc surgery.
5. Lumbar disc surgery.
6. Carpal tunnel release.

CONTINUED...

LINA/Cleiland 0726

OCT/28/2005/FRI 04:05 PM    GASTROENTEROLOGY    FAX No. 334 836 1998    P. 01

GASTROENTEROLOGY CONSULTATION

Cathy Cleiland (        )

10/20/05

CONTINUED...2

    7.  History of DKA with hospitalization.
    8.  History of heart catheterization in 1999.
    9.  Insulin-dependent diabetes mellitus.
    10. Depression.
    11. Sleep apnea.
    12. Mitral valve prolapse.

**OCCUPATIONAL/SOCIAL HISTORY:** She is divorced and lives in Clio. She does not smoke cigarettes or drink alcohol. She is disabled due to back problems.

**FAMILY HISTORY:** Her father has a history of Alzheimer's. Her mother has a history of back problems. She has a first cousin with colon polyps and two aunts with colon cancer.

**REVIEW OF SYSTEMS:**
**GENERAL:** Positive for weight loss.
**SKIN/BREAST:** Positive for rash.
**HEMATOLOGY/LYMPHATICS:** Positive for enlarged and painful lymph node.
**MUSCULOSKELETAL:** Positive for arthritis, weakness, back pain, and joint pain.
**ENDOCRINE:** Positive for diabetes.
**ALLERGY/IMMUNOLOGY:** Positive for sinus.
**EYES:** Positive for glass.
**ENT:** Positive for mouth or throat sores, hoarseness, and teeth problems.
**RESPIRATORY:** Positive for sleep apnea.
**CARDIOVASCULAR:** Positive for heart murmur and palpitations.
**GENITOURINARY:** Positive for increased urinary frequency and change in urine color.
**NEUROLOGIC:** Positive for numbness.
**PSYCHIATRIC:** Positive for sleep disturbances and depression.

**PHYSICAL EXAMINATION:**
**CONSTITUTIONAL:** Blood pressure 138/60, pulse 88, respirations 18, temperature 97.3, and weight 178 pounds.
**GENERAL:** Ms. Cleiland is a pleasant female in no acute distress.
**EYES:** PERRLA. Sclerae are nonicteric. Conjunctivae are pink.

CONTINUED...2

LINA/Cleiland 0727

 

## GASTROENTEROLOGY CONSULTATION

Cathy Cleiland (

10/20/05

CONTINUED...3

ENT: Pharynx is benign. Pink and moist mucous membranes are intact without lesions.
Lips and gums are without abnormality. Tongue midline.
NECK: No adenopathy or thyromegaly. Trachea is midline.
CHEST: Lungs are bilaterally clear to A&P with good respiratory effort.
CARDIOVASCULAR: Regular rate and rhythm. No murmur, gallop, or rub noted.
Pedal pulses are 1+ bilaterally with no pedal edema.
ABDOMEN: Soft, nondistended, and nontender. No organomegaly or masses palpated.
Bowel sounds present in all four quadrants.
RECTAL: Deferred.
LYMPHATICS: No adenopathy to the neck, groin, or supraclavicular area.
MUSCULOSKELETAL: No clubbing, cyanosis, or edema.
SKIN: No rashes or icterus.
NEUROLOGIC: Cranial nerves are intact. Alert and oriented x3. Sensation is intact.
PSYCHIATRIC: Mood and affect are pleasant and congruent. Memory is intact.

PROBLEMS:
1. Dyspepsia.
2. Hoarseness.
3. Dysphagia.
4. Constipation.
5. Insulin-dependent diabetes mellitus.
6. Arthritis.
7. Sinus problems.
8. Mitral valve prolapse.
9. Depression.

RECOMMENDATIONS: Dr. Albares spoke with Ms. Cleiland regarding her dyspepsia,
hoarseness, and dysphagia. We will change her to Nexium from Protonix to hopefully
give her better symptomatic relief. She needs an EGD with possible dilatation.

CONTINUED...3



LINA/Cleiland 0728

## GASTROENTEROLOGY CONSULTATION

Cathy Cleiland (

10/20/05

CONTINUED...4

Risks, benefits, and alternatives for the procedure were discussed and she agrees to proceed. A copy of the permit was given for her review. She denies problems with conscious sedation such as Demerol and Versed. In regard to the constipation, she is generally on high fiber diet and fiber laxatives daily. Further workup will be based on the results of the test.

Shea R. Calhoun, CRNP/pkg/san/136199                Robert P. Albares, M.D.

cc:    Dr. Harris
       Dr. Brett Johnson



14 pgs                    000333
***********AUTO** 3-DIGIT 752
000000333 03 AT   0.731
ATTN: KELLI ARCHACKI
CIGNA DISABILITY MANAGEMENT
12225 GREENVILLE AVE STE 1000D212
DALLAS TX 75243-9362



# ATTENTION
## Confidential information enclosed.
## To be viewed by authorized persons only.

## If you have questions regarding these records or any other information you have requested from Smart, please call the phone number on the attached invoice

The enclosed health information was reproduced by Smart Document Solutions, a health information outsourcing service. Your health care facility contracts with Smart to process authorized copies of medical records.

The reproductions have been made from the medical facility 's original records. The confidentiality of these records is protected by federal and state laws and regulations, including the Health Insurance Portability and Accountability Act (HIPAA).

If you requested items that are not maintained in the medical record, your request for those items was forwarded to the appropriate department and will be sent under separate cover.

Some medical records contain sensitive information that cannot be released without specific patient authorization. If you need this information, please provide such authorization. If the patient has questions about the need for specific authorization, he/she must contact the medical records department of the facility.

Since this facility has chosen to outsource its medical records reproduction function, Smart serves at the facility 's instruction. Future requests for medical records must continue to be directed to the facility.



LINA/Cleiland 0730

**Archacki, Kelli    212**

| | |
|---|---|
| **From:** | Archacki, Kelli    212 |
| **Sent:** | Wednesday, December 07, 2005 9:09 AM |
| **To:** | 'Cornelius, Cecilia' |
| **Subject:** | Cathy Cleiland |

Cecilia,

This is to let you know that we have closed Cathy Cleiland's claim at the any occupation phase.  Attached is the letter for your records.

Thank you,



temple inland
cleiland.doc (33...

*Kelli Archacki*
**Case Manager, Dallas Claims Office**
**CIGNA Disability Management Solutions**
E Mail: Kelli.Archacki@CIGNA.com
1-800-352-0611 ext. 1294
Local:  972.952.1294
Network:  933.1294
Fax:  860.731.3413

***Confidentiality Notice***:  If you have received this e-mail in error, please immediately notify the sender by e-mail at the address shown.  This e-mail transmission may contain confidential information.  This information is intended only for the use of the individual(s) or entity to whom it was intended even if addressed incorrectly.  Please delete from your files if you are not the intended recipient.  Thank you for your compliance.

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2004 by CIGNA

Kelli Archacki
Claim Manager

December 7, 2005

**CIGNA Group Insurance**
Life · Accident · Disability

CATHY CLEILAND

CLIO, AL 36017

Routing 212
12225 Greenville Ave
Suite 1000
Dallas, TX 75243
Telephone 800.352.0611, Ext. 1294
Facsimile 860.731.3413
Kelli.Archacki@cigna.com

Re:   Name                    :    Cathy Cleiland
      Policy #                 :    FLK 20104 (LTD)
      Account Name             :    Temple Inland
      Underwriting by          :    Life Insurance Company or North America

Dear Ms. Cleiland:

We are writing to you regarding your claim for benefits under the above captioned policy. We have reviewed your claim for Long Term Disability (LTD) benefits and are ready to render a decision.   Based on the information we have on file to date, we have determined that you do not meet the above policy's Definition of Disability.  Accordingly, no additional LTD benefits are payable under the FLK 20104 policy.

To ensure a mutual understanding of the LTD Policy language, we would like to review the following information with you:

**Definition of Disability**

"An Employee is Disabled if, solely because of Injury or Sickness, he or she is earning 80% or less of his or her Indexed Covered Earnings.

Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation.

After Disability Benefits have been payable for 24 months, the Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she is may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn 80% or more of his or her Indexed Covered Earnings."

**Disability Benefits**

"The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy.  A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician.  Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation.  Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

LINA/Cleiland 0732

CATHY CLEILAND
December 7, 2005
Page 2

The Insurance Company will require continued proof of the Employee's Disability, provided at the Employee's expense, for benefits to continue."

We recently completed a review of your information. Specifically, this included:
- Disability Questionnaire received from you dated 6/28/05;
- Telephone call from the Center for Pain of Montgomery dated 8/23/05;
- Telephone call to you dated 8/23/05;
- Office visit notes from the Center for Pain of Montgomery dated 3/02/05 through 9/19/05;
- Telephone call from you regarding updated providers;
- Office visit note from Dr. Steven Harris dated 8/26/05; and
- Request for office visit notes from Dr. Brett Johnson.

A review of the medical information indicates that you were initially off work due to Lumbar Spine Surgery. We received the Disability Questionnaire that you completed dated 6/28/05. You listed as your treating providers the Center for Pain of Montgomery in Montgomery, Alabama.

We requested medical information from the Center for Pain of Montgomery. On 8/16/05 we received a telephone call from Kitty of their office. She stated that they are not disabling you and requested that we obtain the information that we have requested from your other treating physicians.

We telephoned you on 8/23/05 to find out who your treating physicians are and which physician is disabling you. You stated that you are only being seen by the Center for Pain of Montgomery and they are disabling you. We advised you of our conversation with Kitty from the Pain Center and told you that we would request the medical records from them. You stated that you had a primary care physician for six years but he is two hours away and you have not seen him in a year due to your moving.

We received the office visit notes from the Center for Pain of Montgomery. The Progress Note dated 03/02/05 states that you have lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain and diabetes. You have been on Methadone 5 mg up to five pills a day. Effexor, and Klonopin. You stated that you have been having some stomach problems. You have not had to go to the hospital for any IV fluids. You have been having some muscle spasms in your legs. You are not very active and your sugars have been running higher than usual. You have fallen down some steps and once the trunk of your car fell on your back when you were leaning over the trunk. You described your pain as an 8 that day. Upon examination you have no respiratory difficulties noted, no hemodynamic instability noted, no acute hot joints, and no acute localizing weakness. The note dated 6/21/05 states that you have Diabetes Mellitus, your medications are effective, and your current pain is rated as a 9. The plan was to refill the current medications. The note dated 8/17/05 states that you have Diabetes Mellitus, your medications are effective, and your current pain is rated as an 8. Your pain condition is stable and the plan was to refill the current medications. The note dated 9/19/05 states that you have Diabetes Mellitus, your

LINA/Cleiland 0733



CATHY CLEILAND
December 7, 2005
Page 3

medications are effective, and your current pain is rated as a 9. Your pain condition is stable and the plan was to refill the current medications.

We received a telephone call from you stating that you have been seen by a new primary care physician one time a month ago, Dr. Brett Johnson. You also saw an ENT one time a month ago, Dr. Steve Harris. You are being referred for a sleep study but have not set it up yet.

We received the office visit note from Dr. Steve Harris dated 8/26/05. In the office visit note you state that for about two months you have had some burning in the base of your throat. It is a little worse left than right, intermittent hoarseness, some pain deep in the left ear area. Your regular physician felt that you had a left ear infection and placed you on some Amoxil. You are being seen for evaluation of throat, ear, and intermittent hoarseness. Upon examination your voice quality sounds good but you state that it is an intermittent thing. There is considerable irritation at the cricopharyngeus area and in the back of the arytenoids area bilaterally though worse on the left. It is not really enough to cause an ulceration but looks like some significant laryngopharyngeal reflux irritation. It was recommended that they set up a GI medicine evaluation

We requested medical records from Dr. Brett Johnson's office on 10/20/05 and 10/27/05. We contacted Alicia at Dr. Brett Johnson's office on 11/02/05 and we were advised to refax it to a different fax number. It was refaxed on 11/02/05 and we received no information.

Summary

In reviewing your claim, Life Insurance Company of North America considered your claim file as a whole for purposes of determining your entitlement to benefits. The Agreement provides that Life Insurance Company of North America would administer benefits only if you were prevented by Disability as defined above.

Based on the documentation provided by the Pain Center of Montgomery and Dr. Harris, the limitations and restrictions are not supported as evidenced by no current complaints of any radiating pain, numbness or tingling, no current diagnostic testing, your medication usage has been stable for several months, and no current lab values to determine the status of your glucose. The information does not support that you are incapable of performing your occupation. As a result, you do not meet the definition of total disability from any occupation as of November 21, 2005. Therefore, no additional long term disability benefits are payable.

Appeal

If you disagree with our determination and intend to appeal this claim decision, you must submit a written appeal. This appeal should be received by us within 180 days of receipt of this letter and should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.

LINA/Cleiland 0734

CATHY CLEILAND
December 7, 2005
Page 4

You have the right to submit written comments as well as any new documentation you wish us to consider. If you have additional information, it should also be sent for further review to the address noted on this letterhead, within 180 days of receipt of this letter.

We would be happy to consider any medical evidence which supports your total disability. Medical evidence includes, but is not limited to: physician's office notes, hospital records, consultation reports, test result reports, therapy notes, physical and/or mental limitations (i.e. Functional Capacities Testing), etc. These medical records should cover the period of disability through the present. You may also wish to have your physician(s) provide some or all following information:

- Height_____ Weight_____
- Diagnosis(es)
- Please send copies of any recent tests performed (in the last six months)
- Last several dates of treatment / current treatment plan / future treatment plan
- Is the patient compliant with the prescribed treatment plan? If no, please explain.
- Has or will your patient receive treatment from any other physician or provider for this condition? If so, please provide the name, specialty, address and phone number, if known.
- Current medications, dosage, and response.
- If surgery has been performed or will be performed, please indicate procedure, date and any complications.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter. A final decision will be made no later than 90 days.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your insurance booklet, certificate or coverage information available from your employer to determine if you are eligible for additional benefits.

Please contact our office at 800-352.0611 should you have any questions.

Sincerely,


Kelli Archacki
Claim Manager

CATHY CLEILAND
December 7, 2005
Page 4

You have the right to submit written comments as well as any new documentation you wish us to consider. If you have additional information, it should also be sent for further review to the address noted on this letterhead, within 180 days of receipt of this letter.

We would be happy to consider any medical evidence which supports your total disability. Medical evidence includes, but is not limited to: physician's office notes, hospital records, consultation reports, test result reports, therapy notes, physical and/or mental limitations (i.e. Functional Capacities Testing), etc. These medical records should cover the period of disability through the present. You may also wish to have your physician(s) provide some or all following information:

- Height_____ Weight_____
- Diagnosis(es)
- Please send copies of any recent tests performed (in the last six months)
- Last several dates of treatment / current treatment plan / future treatment plan
- Is the patient compliant with the prescribed treatment plan? If no, please explain.
- Has or will your patient receive treatment from any other physician or provider for this condition? If so, please provide the name, specialty, address and phone number, if known.
- Current medications, dosage, and response.
- If surgery has been performed or will be performed, please indicate procedure, date and any complications.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter. A final decision will be made no later than 90 days.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your insurance booklet, certificate or coverage information available from your employer to determine if you are eligible for additional benefits.

Please contact our office at 800-352.0611 should you have any questions.

Sincerely,

Kelli Archacki
Claim Manager

LINA/Cleiland 0736

CATHY CLEILAND
December 7, 2005
Page 5

LINA/Cleiland 0737

Acenza: Task

Page 1 of 2

Re-route | Task | Contents | Void | Pend | Notes (0/0) | Alert | Logs | Update
(0)

## Task: Claimant Contact

**Start Date:** | 11/30/2005 |   | **Due Date:** |   | 12/01/2005

▸ **Details**

| **Name** | CATHY CLEILAND | **SSN** |   | **DOB** |
| **Account Name** | TEMPLE INLAND CORPORATE SERVIC | **Account #** | FLK0020104 | **Incurred Date** | 05/14/2003 |
| **Claim Manager** | Kelli Archacki | **Incident #** | 613165 | **Claim Eff Dt-Status** | 11/21/2005 - Closed |

Contact Information - Interview Documentation - Spouse Information

**Contact Information**

Title | Claim Decision

☒ First Phone Call

Result | Left Message - Answering Machine | **Date** | 11/30/2005 10:08 AM | **User ID** | Kelli Archacki

☒ Second Phone Call
  Result | | Date | | User ID
☒ Generate Letter/Fax | | Date | | User ID
☒ Incoming Call | | Date | | User ID
☒ Mail Received | | Date | | User ID

**Contact Comments**
334.807.0396

**Interview Documentation**
Primary Diagnosis/Symptoms/Co-Morbid Conditions

Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization

LINA/Cleiland 0738

# Update Task: Internal Resource Response

| Start Date: | 11/14/2005 | | Due Date: | 11/23/2005 |
|---|---|---|---|---|

| Name | CATHY CLEILAND | | DOB | |
|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE | SSN | | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Account # | FLK0020104 | | |
| | | Incident # | 613165 | Claim Eff Dt-Status | 11/18/2003 - Active |

**\*Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.), Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits**

Referral Type    Medical

Role    Nurse Case Manager Name Teresa Lynfoot    ☒ New Nurse/VRC of Record

Check all that apply for Medical or Vocational

- ☒ Symptoms insufficient to support diagnosis
- ☒ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis
- ☒ Occupational requirements assessment is needed
- ☒ Determine Functional Capacity
- ☒ Projected return to work date is unclear or undetermined
- ☒ Return to Work Assistance
- ☒ Internal Transferable Skills Assessment
- ☒ Claim Complexity Changed
- ☒ Other    Specify Other
- ☐ Complete medical review

**Comments**

Cx is 48 yof Human Resources Manager II for Temple Inland.  Dx S/P reoperative lumbar
spine surgery at L4-5.  Please review file based on staffing.

Title    File review

Referral Accepted*  Yes    Date*    11/14/2005

Comments

LINA/Cleiland 0739

Acenza: Update Task

Page 2 of 3

```
Date/Reason for Referral  NCM to review for R&Ls per staffing.  Dr. Johnson, Dr. Harris,
Dr. Hadley, & Dr. Hickman medical records reviewed 11/17/05.
Hx  Cathy Cleiland, 48 y/o w/hx degenerative disc disease, cervical disc disease
Incurred  5/14/03
Diagnoses  Lumbar degenerative disc disease, cervical degenerative disc disease,
myofascial pain
Co-morbid  Diabetes, multiple lumbar surgeries, cervical surgery, MVA, and carpal tunnel
release.  Currently treating Diabetes.
Providers  Dr. Adam Nortick  Pain  334-387-7246
MDA/DX  722.5  Lumbar disc degeneration, 722.4 Cervical disc degeneration, 728.8
Myofascial Pain Syndrome.  Disability duration beyond guidelines.
CHC/ICMS  Notes attached to file.
EAP/LAP/Well Aware  EAP
HA Referral  N/A
Job Title  Human Resources Manager II, w/sitting, walking up and down stairwells,
walking across catwalks, walking on cement.
DOT  Indicates strength sedentary
S/S
5/21/03 Laminectomy L4-5 on L
7/16/03 Re-exploration laminectomy L4-5 L
12/16/03 L4-5 laminectomy, discectomy bilaterally, posterior fusion
```

Investigation Result

LINA/Cleiland 0740

Acenza: Update Task

Page 3 of 3



3/2/05 lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain, Diabetes, on Methadone 5 mg up to 5 pills/day, Effexor, Klonopin, nausea w/Methadone, muscle spasms legs, not very active, sugars running higher than usual, has fallen down some steps just miscalculated last step, trunk of car fell on back leaning over into trunk, just minor life traumas, more areas marked off in the pain chart than not, pain R upper extremity, L leg, back, life not in total turmoil past few visits, no acute hot joints, no acute localizing weakness, refill Neurontin 800 mg 1 x day, Robaxin 750 mg 3 x day, Phenergan 25 to 1 3 x day, Effexor 75 XR 1 qhs, Protonix 40 mg daily, Klonopin 1 mg qhs, switch to Methadone 10 mg to 1 3 x/day.
8/17/05 cervical degenerative disc disease, cervical stenosis, on Methadone & Neurontin, pain 8, f/u 1 month, fell home, remainder of report largely illegible.
9/17/05 cervical degenerative disc disease, cervical stenosis, on Methadone & Neurontin, pain 9, f/u 1 month, remainder of report largely illegible
Rx Neurontin 800 mg 1 x day, Robaxin 750 mg 3 x day, Phenergan 25 to 1 3 x day, Effexor 75 XR 1 qhs, Protonix 40 mg daily, Klonopin 1 mg qhs, switch to Methadone 10 mg to 1 3 x/day
Treating once a month w/pain physician.
Functionality DQ drives 50 miles, uses walker times, uses computer once every 2 weeks, watches TV
PAA None noted.
RTW plans Indicates unknown if will RTW.
NCM/Assessment 48 y/o w/hx multiple lumbar surgeries including fusion, cervical surgery, and Diabetes. Based on medical data submitted, R&Ls are not supported as evidenced by no current complaints of any radiating pain, numbness or tingling, no current EMG/NCV testing, medication usage stable for several months, and no current lab values to determine status of glucose.
Plan NCM will disengage at this time.
TLynfoot, RN, CCM

Complete ☑    Update ✎    Cancel ✖

LINA/Cleiland 0741

| Name:SHARON KOVACH | Prior Authorization HX/SX | 6/25/2002 4:36 AM CST |
|---|---|---|
| Auth Code=BGVYLNK1, Recommendation=Not Applicable | | |

Call received from Whom/Where: ANN/ADMIT 334 293 8400 EXT 5014

| Name:SHARON KOVACH | Prior Authorization HX/SX | 6/25/2002 4:38 AM CST |
|---|---|---|
| Auth Code=BGVYLNK1, Recommendation=Not Applicable | | |

REQ PRECERT FOR ADMIT FOLLOWING OP PROCEDURE 6/24/02. PT HAS OTHER INSURANCE ( ALPHA). UNABLE TO VERIFY WHICH IS PRIMARY AT THIS TIME. NO CASES/CM. PPO PLAN.

| Name:SHARON KOVACH | Provider Plan of Treatment | 6/25/2002 4:39 AM CST |
|---|---|---|
| Auth Code=BGVYLNK1, Recommendation=Not Applicable | | |

PRECERT APPROVAL DISCLAIMER READ/UNDERSTOOD.

| Name:SHARON KOVACH | Prior Authorization Nurse Intervention | 6/25/2002 4:39 AM CST |
|---|---|---|
| Auth Code=BGVYLNK1, Recommendation=Not Applicable | | |

AUTH 1 DAY. DD FOR 5 DAYS PER PPO PROCESS. NO GUIDELINES AVAILABLE

| Name:SHARON KOVACH | Prior Authorization Benefit Access | 6/25/2002 4:40 AM CST |
|---|---|---|
| Auth Code=BGVYLNK1, Recommendation=Not Applicable | | |

All of the following bounds:
  Hospital Admission Deductible: No Deductible for Admission
  and All of the following bounds:
    Plan Deductible: Individual Deductible of $300
      Contributes to Plan OOP
      with 0 carry over months
      Limited by:
        Family Deductible of $900
    and Coinsurance of 80%
      20% Contributes to Plan OOP
      Increases to 100% new coinsurance
      Limited by:
        Individual Out of Pocket of $1,500 per Calendar Year
          Exclusions: Non-Compliance Penalties and charges over R&C.
        Limited by:
          Family Out of Pocket of $3,000
Ben Desc: Including, but not limited to, charges for anesthesia and associated services;
hemodialysis and peritoneal dialysis; drugs and medications; internal prosthetics; laboratory and

LINA/Cleiland 0742

 

radiology services; operating and recovery room; oxygen; radiation and chemotherapy; rehabilitative therapy; blood and blood products (unless replaced); intravenous fluids; and DME while confined.

| Name:SHARON KOVACH | Provider Plan of Treatment | 6/25/2002 4:48 AM CST |
|---|---|---|
| Auth Code=BGVYLNK1, Recommendation=Not Applicable | | |

ADDED CORRECT CODES PROVIDED BY MDO. ADDED RATIONAL.

| Name:SHARON KOVACH | Activity | 6/25/2002 4:50 AM CST |
|---|---|---|
| Activity=Concurrent Review, Status= Diary - complete, Result= Completed | | |

MD PHONE NUMBER

| Name:SHARON KOVACH | Activity | 6/25/2002 4:53 AM CST |
|---|---|---|
| Activity=Concurrent Review, Status= Diary - complete, Result= Completed | | |

MD PHONE 334 834 1663. UR PHONE 334 293 8887. FACILITY IN CPF AS PAR PROVIDER. NO INDEMNITY LOAD SENT.

| Name:SHARON KOVACH | Activity | 6/25/2002 4:55 AM CST |
|---|---|---|
| Activity=Concurrent Review, Status= Diary - complete, Result= Completed | | |

SEE CONTACT INFO FOR FACILITY ADDRESS/PHONE NUMBER.

| Name:WANDA BOSS | Activity | 7/1/2002 8:17 AM CST |
|---|---|---|
| Activity=Concurrent Review, Status= Diary - complete, Result= Completed | | |

CALLED MARY PT ACCTS AT HOSP. PT DCD 6/25/02. COMPLETED CASE

LINA/Cleiland 0743



# Claim Direction Staffing Form

**Please complete the sections that are applicable for the staffing purpose**

## *Claim Information:*

| Staffing Date: | 11/9/05 | Case Manager: | Kelli Archacki |
|---|---|---|---|
| Cl Name: | Cathy Cleiland | SSN: | |
| DOB/Age: | 48 | Height/Wt: | 5'4" 170 |
| Employer | Temple Inland | Occupation: | Human Resources Manager II |
| Incur Date: | 5/14/03 | Date of Hire: | |
| | | Job/Occ Term Date: | |
| LSD or AO Date | 11/10/05 | Claim Received Date: | |
| Prior Claim ? | No | MI Max dates : | n/a |
| Diagnosis ICD 9 code: | S/P reoperative lumbar spine surgery at L4-5 with posterior lumbar interbody fusion and internal fixation | | |
| Status: | II ___ Ongoing ___ A/O _x_ Appeal _____ Pre-Ex _____ | | |

**Staffing Purpose:** Are R/L supported?

**Claim synopsis:**

## *Vocational / Occupational History:*

| Occupational requirements (DOT MUST BE ON FILE & TABBED) |
|---|
| **X** Sedentary  ☐ Light ☐ Medium  ☐ Heavy ☐ Very Heavy |

| Own Occ DOT and JD: _____ | Own job and JD: _____ |
|---|---|
| **Training/Education/Experience** Bachelors in Business | Dominant hand: R | VRC assigned: ____Yes  x No |

## *Medical / Offsets:*

| Treating Physicians (name, specialty, initial & LOV, frequency): | | | | | | | |
|---|---|---|---|---|---|---|---|
| Provider | Specialty | Initial OV | LOV | TX | PAA? | R | L |
| Pain Mgmt Center | | | | | | | |
| Dr. Steven Harris | ENT | | | | | | |
| Dr. Brett Johnson | PCP | | | | | | |
| | | | | | | | |

| Projected RTW Date and Provider | none |
|---|---|
| CGT Guidelines: | |
| Other Benefits: | ☐ STD  ☐ WC X SSDI  ☐ SSR ☐ Pension ☐ Other |



## Claim Direction Staffing Form

**Please complete the sections that are applicable for the staffing purpose**

_**Comments/ Review outcome/Rationale/Plan:**_

| AMD_____ NCM_____ VRC_____ |
|---|
| Based on medical data submitted at the time of review R & L's are not supported as evidenced no Clinical findings to assess functional capacity. CM will do IRR to NCM |

| **Future Claim Direction:** | | |
|---|---|---|
| F/U Medical _____ | SSDI _____ |
| VOC Rehab _____ | W/C _____ |
| SIU _____ | Other _____ |

_**Parties in Attendance:**_

Please list printed staffing participant names with signatures:

1. _Tresa Lynfoot_, RN 11/14/05
2.
3.
4.
5.

Date:_____

Acenza: Task

📋 Task  🔍 Contents  📋 Notes (0/0)

## Task: Provider Contact

| Start Date: | 11/02/2005 | Due Date: | | 11/07/2005 |

● Details

Igr

| Name | CATHY CLEILAND | SSN | | DOB | |
| Account Name | TEMPLE INLAND CORPORATE | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 11/18/2003 - Active |

Contact - Interview Documentation - Obj. Findings - Treatment - Functionality - Referral

### Contact Information

Igr

Title Dr. Johnson 334.793.9595

| | | Result | Successful | Date | 11/02/2005 04:12 PM | User | Kelli Archacki |
| ☒ First Phone Call | | Result | | Date | | User | |
| ☐ Second Phone Call | | | | Date | | User | |
| ☒ Generate Letter/Fax | | | | Date | | User | |
| ☒ Burden of Proof Letter Sent | | | | Date | | User | |
| ☒ Incoming Call | | | | Date | | User | |
| ☒ Mail Received | | | | Date | | User | |

Contact Comments:

Called for status of fax. Alicia stated that she would have forwarded it to the other office so recommended I call there. Called the other office and they have no record of fax. Advised to refax it to 334.793.1578, attn medical records.

### Interview Documentation

| Provider First Name | | Provider Last Name | | Provider Specialty | |
| Contact First Name | | Contact Last Name | | Contact Role | |
| Primary ICD Code | | Primary ICD Description | | | |
| Comments | | | | | |

LINA/Cleiland 0746



## Message Confirmation Report



NOV-03-2005 02:23 PM THU

Fax Number    :
Name          :  CIGNA DALLAS

Name/Number   :  913347948153
Page          :  4
Start Time    :  NOV-03-2005 02:22PM THU
Elapsed Time  :  00'56"
Mode          :  STD ECM
Results       :  [O.K]

---

### Facsimile Transmission Cover Sheet

3rd request
11/2/05
334-793-1578


SECOND REQUEST
10/27/05

CIGNA Group Insuranc
Life · Accident · Disability

| Transmit to FAX number | Date | Time | Total number of pages |
|---|---|---|---|
| 334.794.8153 | October 20, 2005 | 11:05 AM | (including this sheet): 4 |

| To | From |
|---|---|
| **Name** Dr. Brett Johnson | **Name** Kelli Archacki |
| **Company** Attn: Alicia Medical needs | **Department** |
| **Phone** | **Phone** 800.352.0611, Ext. 1294 |
| **Address** | **Address** 212 12225 Greenville Ave Suite 1000 Dallas, TX 75243 |

Re:    **Cathy Cleiland**
DOB:
Policy#    _____04
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland. So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

* **Complete office/progress notes from September 1, 2005 through present. Please include the results of all diagnostic studies.**

* **Please complete the enclosed Physical Abilities Assessment form.**

We request that you have this information to us no later than October 28, 2005. Thank you very much for your assistance and prompt attention to this letter.        11/2/05

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The document accompanying this facsimile transmission contains confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by those subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

[ ] Acknowledgment Requested                    To Fax a reply, dial : 800.731.3413

LINA/Cleiland 0747

*Facsimile Transmission Cover Sheet*

 3rd request
11/2/05
334-793-1578

  10/27/05



**CIGNA** Group Insuranc
Life · Accident · Disability

| Transmit to FAX number | Date | Time | Total number of pages |
|---|---|---|---|
| 334.794.8153 | October 20, 2005 | 11:05 AM | (including this sheet) : 4 |

| To | From |
|---|---|

| Name | Name |
|---|---|
| Dr. Brett Johnson | Kelli Archacki |

| Company | Department |
|---|---|
| Attn: ~~Alicia~~ Medical records | |

| Phone | Phone |
|---|---|
| | 800.352.0611, Ext. 1294 |

| Address | Address |
|---|---|
| | 212 |
| | 12225 Greenville Ave |
| | Suite 1000 |
| | Dallas, TX 75243 |

Re:    Cathy Cleiland
DOB:
Policy#    FLK 20104
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland. So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

- **Complete office/progress notes from September 1, 2005 through present. Please include the results of all diagnostic studies.**

- **Please complete the enclosed Physical Abilities Assessment form.**

We request that you have this information to us no later than ~~October 26, 2005~~. Thank you very much for your assistance and prompt attention to this letter.    11/2/05

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

*"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.*

[ ] Acknowledgment Requested                    To Fax a reply, dial : 860.731.3413



## PHYSICAL ABILITY ASSESSMENT

We are evaluating your patient's disability claim in order to determine functional impairment Please check the boxes corresponding to the patient's level of physical functioning. **Please substantiate your findings with medical documentation. (Failure to provide the requested reports/data may result in delay in claim determinations).**

Patient Name_____ Date of Birth_____

Diagnosis(es)/ICD-9 Code_____

***Throughout*** an 8-hour workday, the patient can tolerate, ***with positional changes and meal breaks,*** the following activities for the specified durations:

|  |  | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|---|
| **Sitting:** |  |  |  |  |  |  |
| **Standing:** |  |  |  |  |  |  |
| **Walking:** |  |  |  |  |  |  |
| **Reaching:** | Overhead |  |  |  |  |  |
|  | Desk Level |  |  |  |  |  |
|  | Below Waist |  |  |  |  |  |
| **Fine Manipulation:** | Right: |  |  |  |  |  |
|  | Left: |  |  |  |  |  |
| **Simple Grasp:** | Right: |  |  |  |  |  |
|  | Left: |  |  |  |  |  |
| **Firm Grasp:** | Right: |  |  |  |  |  |
|  | Left: |  |  |  |  |  |
| **Lifting:** | 10 lbs. |  |  |  |  |  |
|  | 11-20 lbs. |  |  |  |  |  |
|  | 21-50 lbs. |  |  |  |  |  |
|  | 51-100 lbs. |  |  |  |  |  |
|  | 100+ lbs. |  |  |  |  |  |
| **Carrying:** | 10 lbs. |  |  |  |  |  |
|  | 11-20 lbs. |  |  |  |  |  |
|  | 21-50 lbs. |  |  |  |  |  |
|  | 51-100 lbs |  |  |  |  |  |
|  | 100+ lbs. |  |  |  |  |  |

LINA/Cleiland 0749

| | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| **Pushing:** (Max. Wt.:_____) | | | | | |
| **Pulling:** (Max. Wt.:_____) | | | | | |
| **Climbing:** Regular Stairs | | | | | |
| Regular Ladders | | | | | |
| **Balancing:** | | | | | |
| **Stooping:** | | | | | |
| **Kneeling:** | | | | | |
| **Crouching:** | | | | | |
| **Crawling:** | | | | | |
| **Seeing:** | | | | | |
| **Hearing:** | | | | | |
| **Smell/Taste:** | | | | | |
| **Environmental Conditions:** | | | | | |
| Exposure to extremes in heat | | | | | |
| Exposure to extremes in cold | | | | | |
| Exposure to wet / humid conditions | | | | | |
| Exposure to vibration | | | | | |
| Exposure to odors / fumes / particles | | | | | |
| Can work around machinery | | | | | |
| **Ability to work extended shifts/ overtime:** | | | | | |
| **Use lower extremities for foot controls:** | | | | | |

*Please use this space to elaborate on ANY of the above categories:*

_____

_____

_____

_____

**Name:** _____    **Signature:** _____

**Medical Specialty:** _____    **Date:** _____

**Address:** _____    **Phone:** _____

**Federal ID tax number:** _____

**Please include any objective test or narrative if available.**
**Thank you for your time.**

**Please return this form in the enclosed addressed envelope.**

LINA/Cleiland 0750



## DISCLOSURE AUTHORIZATION

Claimant's Name (Please Print): CATHY K. Cleiland

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome), as well as communicable diseases and genetic testing. If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a) reinsuring companies; b) the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c) fraud or overinsurance detection bureaus; d) anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e) for audit or statistical purposes; f) as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: *Cathy K. Cleiland*    Date: 6/28/05
Relationship,
if other than Claimant:                        Claimant's Social Security Number:
Company Name: Temple - Inland Forest Products Corp.

## PROHIBITION ON RE-DISCLOSURE

If the medical information contains information regarding drug or alcohol abuse, it may be protected under federal law. Federal regulations (42 CFR Part 2) prohibit any person or entity who receives such protected information from the Company from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulation. A general authorization for the release of medical or other information is not sufficient for this purpose. The federal rules restrict any use of such protected information to criminally investigate or prosecute any alcohol or drug abuse patient.

CT-20-2005 14:04  FROM:DOTHAN ENT 3347931561    TO:918607313413P9422    P:1/4



# *Dothan ENT, Allergy & Asthma, P.C.*

**FLOWERS HOSPITAL DOCTORS CENTER**
4300 West Main Street • Suite 403
Dothan, Alabama 36305-1051
(334)793-4788 • 1-800-400-4788
FAX (334) 793-1561
TDD (334) 793-4788

**SOUTHEAST ALABAMA MEDICAL CENTER
DOCTORS BUILDING**
1118 Ross Clark Circle • Suite 402
Dothan, Alabama 36301-3022
(334) 671-2855 • 1-800-400-4788
FAX (334) 671-2954

TIMOTHY H. GANNON, M.D.  /  STEVEN D. HARRIS, M.D.  /  PAUL C. MOTTA, D.O., ALLERGY/ASTHMA

F. KENT NUNNALLY, M.D., F.A.C.S.  /  WARREN ROLLINS, M.D.  /  JOE FRANK SMITH, M.D., F.A.C.S.

## FAX TRANSMITTAL SHEET

ATTENTION: _Kelli Archacki_

TO: _____

FAX NUMBER: _860 731-3413_

DATE SENT: _10-20-05_     TIME SENT: _2:05_

REPLY TO: _Sandy - Med. Records_

# OF PAGES SENT INCLUDING THIS COVER: _4_

_Re: Cathy Cleiland_

_D.O.B._

_(includes (1) page of medical notes)_

*This message is intended for the individual to whom it is addressed. It contains information that may be confidential under law. If you are not the intended recipient or agent responsible for delivering this message*
**DO NOT READ, COPY OR DISTRIBUTE THIS INFORMATION!**
*If you have received this in error, please notify us immediately by telephone (collect) and return this message to us by mail.*

USBPI - #14029 - Rev.1/03

LINA/Cleiland 0752

'005 14:04   FROM:DOTHAN ENT 3347931561                    TO:918607313413P9422        P:2/4

# DOTHAN ENT ASSOCIATES

Timothy H. Gannon, M.D.
Steven D. Harris, M.D.
Wilton D. McRae, M.D.
Paul C. Motta, D.O.
F. Kent Nunnally, M.D., F.A.C.S.
Warren Rollins, M.D.
Joe Frank Smith, M.D., F.A.C.S.

Date: Oct. 20, 2005

CIGNA Company
12225 Greenville Ave, Suite 1000
Dallas, TX 75243

RE: Cathy Cleiland          DOB:
Our account number: 121106

To Whom It May Concern:

In an effort to reduce costs associated with processing medical records requests, our office has implemented a policy of pre-payment for all records requests.

Please consider this your itemized invoice:

      _1_ pages x $1.00 per page    = _1.00_
            (up to 25 pages)
      _____ pages x .50 per page    = _____
            (each page over 25)
      Search fee             = $5.00
      Handling/Mail fee      = $1.00
      Postage fee           = _3T_ faxed

         TOTAL DUE = ~~7.37~~ 7.00

Your request will be processed within two (2) business days of receipt of payment.

If you have any questions regarding this statement, please feel free to contact me at 334-673-7322.   Tax ID 72-1347315

Sincerely,

Sandy Wise
Sandy Wise
Medical Records Clerk

*These charges are in accordance with State Regulations.

4300 West Main Street • Suite 403 • Dothan, Alabama 36305-1051 • (334) 793-4788 • (800) 400-4788 • FAX (334) 793-1561

LINA/Cleiland 0753

20-2005 14:05  FROM:DOTHAN DUT 3347931561  TO:918607313413P9422  P:3/4

T-20-2005 11:25 From:CIGNA DALLAS  To:3347931561  P.1/2

121106

# Facsimile Transmission Cover Sheet



**CIGNA Group Insurance**
Life · Accident · Disability

| Transmit to FAX number | Date | Time | Total number of pages |
|---|---|---|---|
| 774 792 1561 | October 20, 2005 | 11:01 AM | [ ] |

| To | From |
|---|---|
| **Name**<br>Dr. Steven Harris | **Name**<br>Kelli Archacki |
| **Company** | **Department** |
| **Phone** | **Phone**<br>800.352.0611, Ext. 1294 |
| **Address** | **Address**<br>212<br>12225 Greenville Ave<br>Suite 1000<br>Dallas, TX 75243 |

Re:  Cathy Cleiland
DOB:
Policy#  FLK 20104
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland. So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

- Complete office/progress notes from September 1, 2005 through present. Please include the results of all diagnostic studies.

We request that you have this information to us no later than October 26, 2005. Thank you very much for your assistance and prompt attention to this letter.

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile may contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

[ ] Acknowledgment Requested                    To Fax a reply, dial: 800.731.3413

LINA/Cleiland 0754



DOTHAN ENT, ALLERGY & ASTHMA, P.C.
STEVE HARRIS, M.D.

DATE; 8-26-2005

NAME; Cathy Cleiland

HISTORY; Ms. Cleiland is 48. She is a consult from Dr. Brett Johnson.
Please see her review of systems 8-26-05 which I reviewed.
She has had a number of back surgeries and some surgeries on her cervical spine. She
states she has diabetes and mitral valve prolapse.
She states she has been having a lot of problems with her stomach, throwing up a lot due
to all of the medicines that she takes. She has been taking Protonix for several months
and this has only partly improved those problems.
She states that for about two months she has had some burning in the base of her throat, it
is a little worse left than right, intermittent hoarseness, some pain deep in the left ear area.
Her regular physician felt that she had a left ear infection and placed her on some
Amoxil. She is seen for evaluation of throat, ear, and intermittent hoarseness.

EXAM; Her voice quality sounds good today but she states this is an intermittent thing.
The neck is supple and w/out adenopathy though she complains of a little soreness on the
left. She has a couple of well healed scars anteriorly from cervical fusions.
Both ears appear normal, ME spaces are clear, canals satisfactory, external ears ok.
Nasal exam satisfactory. OC, posterior pharynx ok but due to her symptoms it was felt
flexible laryngoscopy was indicated. The pharynx was anesthetized with Cetacaine, nose
decongested and flexible laryogoscopy performed. This shows no cord nodules, the vocal
cords themselves look good and move well, good airway but there is considerable
irritation right at the cricopharyngeus area and just in the back of the arytenoid area bil
though worse on the left. This is not really enough to cause an ulceration but certainly
looks like some significant laryngopharyngeal reflux irritation.

IMPRESSION
   1.  Significant laryngopharyngeal reflux with more irritation left than right and this
       may indeed be the cause of some of the deep seeded left ear area pain though of
       course she may have had some otitis too that may have been in the resolution
       stage with the Amoxil.

PLAN
   1.  It sounds like she has been having a lot of problems with vomiting also. I
       recommended that since this hasn't improved on the Protonix that we set up GI
       medicine evaluation. She will likely need EGD and further evaluation. SH/js

CC: Dr. Brett Johnson

*Facsimile Transmission Cover Sheet*



**CIGNA Group Insuranc**
Life · Accident · Disability

| Transmit to FAX number 334.793.1561 | Date October 20, 2005 | Time 11:05 AM | Total number of pages (including this sheet) : 2 |
|---|---|---|---|

| To | From |
|---|---|
| **Name** Dr. Steven Harris | **Name** Kelli Archacki |
| **Company** | **Department** |
| **Phone** | **Phone** 800.352.0611, Ext. 1294 |
| **Address** | **Address** 212 12225 Greenville Ave Suite 1000 Dallas, TX 75243 |

Re:     Cathy Cleiland
DOB:
Policy#    FLK 20104
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland.  So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

- **Complete office/progress notes from September 1, 2005 through present.  Please include the results of all diagnostic studies.**

We request that you have this information to us no later than **October 26, 2005**.  Thank you very much for your assistance and prompt attention to this letter.

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation.  Products and services are provided by these subsidiaries and not by CIGNA Corporation.  These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

[ ] Acknowledgment Requested                        To Fax a reply, dial : 860.731.3413

LINA/Cleiland 0756



## ACTON
### CORPORATION
The Release of Information Specialists

**Medical Record Requestor**

Cigna
12225 Greenville Ave
Suite 1000
Dallas TX 75243
Attn: Kelli Archacki

| Invoice Number | 179425 |
|---|---|
| Invoice Date | 9/26/2005 |
| Invoice Due Date | 10/26/2005 |
| Your Reference # | ELK20104 |

| Patient's Name | Records Requested From: |
|---|---|
| Cathy Cleiland | Pain Center |

| Release of Information Item | Price |
|---|---|
| 9   Pages Copied | $9.00 |
| Alabama Processing Fee | $5.00 |
| $0.60 Postage | $0.60 |
| | $0.00 |
| | $0.00 |
| | $0.00 |
| | $0.00 |

**Subtotal**
~~$14.60~~

**Amount Paid**
$0.00

**AMOUNT DUE**
~~$14.60~~

**Comments**

All charges are regulated by state law where applicable. A late fee service charge of 1.5% per month (18% annual rate) will be made against all total fees not paid on or before the invoice due date.

**TAX ID NUMBER**
**72-1355541**



To pay by credit card please call
**1-205-981-4534**

~~PREBILL NOTICE. Records will be sent once payment has been received~~

*Paid*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
▲ Detach and mail this portion with your check to Acton Corporation. ▲

INVOICE DUE DATE: 10/26/2005

| Invoice Number | AMOUNT DUE |
|---|---|
| 179425 | ~~$14.60~~ |

**Medical Record Requestor**

Cigna

Please make checks payable to:
**Acton Corporation**
P.O. Box 380213
Birmingham, AL 35238-0213

**TAX ID NUMBER**
**72-1355541**

    

To pay by credit card please call
**1-205-981-4534**

LINA/Cleiland 0757

The Center for Pain of Montgomery          East          South

Name _Cathy Cleland_          ID _14757_          Date _9/19/2005_

Pain Problems: ddd c t l / radiculitis c t l / stenosis c t l / facet c t l / failed back c t l
Headache / PHN / Fibromyalgia / Restless leg / Periph neuropathy (DM) / Cancer / carpal tunnel
SI r l / myofascial pain / DJD _____ / crps _____ / other _____

Comorbidities: DM CAD COPD HBP CVA PVD GERD RA OA OSA Ospo Obesity Psych _____

SocHx: no Δ _____     FamHx: no Δ _____     ED: no pain other Studies: no _____     ROS: no Δ _____

Medicines: effective: y p n     adverse: no _____          requests Δ: no_____
Duragesic Methadone Avinza Kadian MSContin Oxycontin Ultram/cet Darvocet Talacen Codiene
Panlor Lortab Lorcet Norco Xodol Roxicet Percocet Percodan Dilaudid MSIR OxyIR Actiq
Adjuvants _Neurontin     Clonopin_____

Current Pain: _9_ New Pain Symptoms: no _____ Health: stable _____

Pain Location:



PE: MSE _alert_ AMB _self_ POST _____ HEENT _____ CV _____ RESP _____
GI _____ SKIN _____ MUSK _____ NEURO _____

Interactions: review studies   patient education   review goals   review medication contract

Assessment: Pain Condition: stable _____ New Issues: none _____

Plan: Refill current meds   DC_____   Start _____
Schedule: intervention _____     study_____ referral_____

Visit Length: _10_

F/U: _1 month_

Comments: _____

_____ MD

# the
# CENTER for PAIN
### of Montgomery
#### DAVID HERRICK, MD ■ BRAD KATZ, MD

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_          Date: _9-19-05_

1. Are you: ☐ Better?   ☑ Worse?   ☐ Same?

2. Since your last visit, have you been to the Emergency Room?   ☐ YES   ☑ NO

   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ☐ YES   ☐ NO

   (If Yes, please explain) _I had an appt at the sleep ctr this morning but I waited from 11:15 - 1:10 and I had to leave to come here._

4. Since your last visit, have you had any X-rays?   ☐ YES   ☑ NO

   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES   ☑ NO

   (Please list all medications) _____

6. Do you have any allergies? ☑ YES   ☐ NO

   (If Yes, Please list all your allergies) _CiPRO_

7. What do you want to discuss today? (medicine, pain, refills, etc.)

   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.



0  1  2 · 3  4  5  6  7  8  9  10
No                    Moderate          Worst
Pain                    Pain            Pain

LINA/Cleiland 0759

The Center for Pain of Montgomery          East      South

Name _Cathy Cleland_          ID _14495_          Date _8/9/05_

Pain Problems: ddd c t l / radiculitis c t l / stenosis c t l / facet c t l / failed back c t l
Headache / PHN / Fibromyalgia / Restless leg / Periph neuropathy (DM) / Cancer / carpal tunnel
SI r l / myofascial pain / DJD _____ / crps _____ / other _____

Comorbidities: (DM) CAD COPD HBP CVA PVD GERD RA OA OSA Osteo Obesity Psych _____

SocHx: noΔ          FamHx: noΔ          ED: no pain other Studies: no          ROS: noΔ

Medicines: effective: y p n     adverse: no _____ requests Δ: no _____
Duragesic (Methadone) Avinza Kadian MSContin Oxycontin Ultram/cet Darvocet Talacen Codiene
Panlor Lortab Lortab Neuro Xodol Roxicet Percocet Percodan Dilaudid MSIR OxyIR Actiq
Adjuvants _Neurontin_

Current Pain: _8_ New Pain Symptoms: no _____ Health: stable _____

Pain Location:



PE: MSE _alert_ AMB ____ POST ____ HEENT ____ CV ____ RESP ____
GI ____ SKIN ____ MUSK ____ NEURO ____

Interactions: review studies  patient education  review goals  review medication contract

Assessment: Pain Condition: (stable) _____ New Issues: none _____

Plan: (Refill current meds) DC _____ Start _____
Schedule: intervention _____ study _____ referral _____

Visit Length: _10_
F/U: _1 month_

Comments:

LINA/Cleiland 0760



### The
# Center for Pain
### of M O N T G O M E R Y, P.C.

**DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.**

☒ 2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

☐ 432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _CATHY Cleiland_          Date: _8-17-05_

1. Are you: ☐ Better?    ~~Worse?~~    ☐ Same?

2. Since your last visit, have you been to the Emergency Room?   ☐ YES    ☒ NO

   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?   ☐ YES    ☒ NO

   (If Yes, please explain) _____

4. Since your last visit, have you had any X-rays?    ☐ YES    ☒ NO

   (If Yes, what kind and where were they done) _____

5. Since your last visit, have you had any medication changes? ☐ YES    ☒ NO

   (Please list all medications) _Insulin, Neurontin, methadone, phenergrin, protonic, Robatin, Clonipin, over the counter benadryl for sinus allergy_

6. Do you have any allergies? ☒ YES   ☐ NO

   (If Yes, Please list all your allergies) _Outdoor (flowers) pet dander_

7. What do you want to discuss today? (medicine, pain, refills, etc.)

   _I had a bad fall during the wee hrs of last Sat. morning_

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0  1  2  3  4  5  6  7  8  9  10
No           Moderate        Worst
Pain           Pain            Pain

RIGHT    LEFT          LEFT    RIGHT

LINA/Cleiland 0761

The Center for Pain of Montgomery     East     (South)

Name _Cathy Cleiland_     ID _14475_     Date _6/21/05_

**Pain Problems:** ddd, (g) t (l) / radiculitis (c) t l / stenosis c t l / facet c t l / failed back c t l
Headache / PHN / Fibromyalgia / Restless leg / Periph neuropathy (DM) / Cancer / carpal tunnel
SI r l / myofascial pain / DJD _____ / crps _____ / other _____

**Comorbidities:** (DM) CAD COPD HBP CVA PVD GERD RA OA OSA Ospo Obesity Psych _____

SocHx: noΔ /    FamHx: noΔ    ED: no pain other Studies (no) _____ ROS: noΔ ____

**Medicines:** effective (y) p n   adverse (no) /    requests Δ (no) _____
Duragesic (Methadone) Avinza Kadian MSContin Oxycontin Ultram/cet Darvocet Talacen Codiene
Panlor Lortab Lorcet Norco Xodol Roxicet Percocet Percodan Dilaudid MSIR OxyIR Actiq
Adjuvants _____

Current Pain: _9_   New Pain Symptoms: no _____ Health: stable _____

**Pain Location:**



PE: MSE _alert_   AMB _self_   POST _____ HEENT _____ CV _____ RESP _____
GI _____ SKIN _warm_   MUSK _____ NEURO _____

**Interactions:** review studies   patient education   review goals   review medication contract

**Assessment:** Pain Condition: stable _____ New Issues: none _____

**Plan:** Refill current meds   DC _____ Start _Klonopin_ _____
Schedule: intervention _____ study _____ referral _____

Visit Length: _10_ _____

F/U: _1 month_

**Comments:** _____

_____ MD



### *The* Center for Pain
*of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone; 334-387-7246

Patient Name: _Cathy Cleiland_      Date: _6-21-05_

1.  Are you: ☐ Better?   ☑ Worse?   ☐ Same?

2.  Since your last visit, have you been to the Emergency Room?   ☐ YES   ☑ NO

    (If Yes, please explain) _____

3.  Since your last visit, have you seen any other doctor(s) or had any surgery?   ☐ YES   ☑ NO
    (If Yes, please explain) _Dr Jukes (yesderday) when his office called w/appt. I had already made one in Dothan Fo 6/2_

4.  Since your last visit, have you had any X-rays?   ☐ YES   ☑ NO

    (If Yes, what kind and where were they done) _____

5.  Since your last visit, have you had any medication changes? ☐ YES   ☑ NO

    (Please list all medications) _____

6.  Do you have any allergies? ☑ YES   ☐ NO

    (If Yes, Please list all your allergies) _Cipeo_

7.  What do you want to discuss today? (medicine, pain, refills, etc.)
    _pain, medication_

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW

0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.





**The**
# Center for Pain
*of* M O N T G O M E R Y, P.C.

David Herrick, M.D. ▪ Brad Katz, M.D.
432 St. Lukes Drive
Montgomery, AL 36117
Phone (334) 387-7246    Fax (334) 387-7250

### PROGRESS NOTE

**NAME:**    CATHY K. CLEILAND
**DATE:**    03/02/05
**ACCT:**    4495
**DOB:**

This is a 47-year-old, white female with lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain and diabetes. She has been on Methadone 5 mg up to five pills a day, Effexor, and Klonopin.

Ms. Cleiland states that she has been having some upset stomach problems. We called in Protonix. She says this has really been pre-helpful. Ms. Cleiland states that she has had a fair amount of nausea with Methadone, but on the whole it is livable with Phenergan. She really has not had to go to the hospital for any IV fluids. She has had worse problems with GI upset from other opioids and does not wish to try switching out.

Ms. Cleiland has been having some muscle spasms in the legs. She says she is not very active, and she thinks that her sugars have been running higher than they usually have. She states that she has fallen down some steps. She says she just miscalculated the last step. Once she said the trunk of the car fell on her back when she was leaning over into the trunk, just minor life traumas.

Ms. Cleiland describes her pain as an 8 today. Again, there are more areas marked off on the pain chart than not. There is pain in the right upper extremity, left leg and back. She states really no chest pain and no unusual dysuria. She states life is not in total turmoil as it has been in the past few visits.

**PHYSICAL EXAMINATION:** This is a 47-year-old, white female who is alert and cooperative. She is fairly pleasant today and less upbeat. She has no gross rashes. Skin is warm and dry. She has no respiratory difficulties noted, no obvious hemodynamic instability noted, no acute hot joints, and no acute localizing weakness.

**ASSESSMENT:** Cervical degenerative disc disease, cervical radiculitis, lumbar degenerative disc disease, lumbar radiculitis, and insulin dependent diabetes.

**PLAN:** We will refill Neurontin 800 mg 4x/day, Robaxin 750 mg 3x/day, Phenergan 25 ½ - 1 three times daily, Effexor 75 XR one at bedtime, Protonix 40 mg one daily, Klonopin 1 mg at bedtime, and we will switch her to Methadone 10 mg ½ - 1 p.o. three times a day rather than the 5s. We plan on seeing the patient back in one month's time. Today's office visit has been 20 minutes.

_Nortick_
ADAM NORTICK, M.D.

AN/aww



### *The* Center for Pain
### *of* M O N T G O M E R Y, P.C.

DAVID HERRICK, M.D. ■ BRAD KATZ, M.D.

2055 East South Blvd., Ste. 812
Montgomery, AL 36116
Telephone: 334-288-7808

432 St. Lukes Drive
Montgomery, AL 36117
Telephone: 334-387-7246

Patient Name: _Cathy Cleiland_     Date: _5-17-05_

1. Are you: ☐ Better?    ☐ Worse?    ☑ Same?

2. Since your last visit, have you been to the Emergency Room?    ☐ YES    ☑ NO
   (If Yes, please explain) _____

3. Since your last visit, have you seen any other doctor(s) or had any surgery?    ☐ YES    ☑ NO
   (If Yes, please explain) _____

4. Since your last visit, have you had any X-rays?    ☑ YES    ☐ NO
   (If Yes, what kind and where were they done) _mammogram_

5. Since your last visit, have you had any medication changes? ☐ YES    ☑ NO
   (Please list all medications) _____

6. Do you have any allergies? ☑ YES    ☐ NO
   (If Yes, Please list all your allergies) _Cipro_

7. What do you want to discuss today? (medicine, pain, refills, etc.)
   _____

## PLEASE RATE YOUR PAIN AS IT IS RIGHT NOW



0 means no pain.
10 means the worst pain you can imagine.

Mark all the places you feel pain.

0 No Pain   1   2   3   4   5 Moderate Pain   6   7   8   9   10 Worst Pain

LINA/Cleiland 0765



## Montgomery Breast Center

**4147 Carmichael Road Montgomery, AL 36106-2801  334-387-1120**

| | | | |
|---|---|---|---|
| **PATIENT NAME**<br>CLEILAND,CATHY | **ACCOUNT N0**<br>58380 | **AGE/SEX**<br>47/F | **MPI NUMBER**<br>55181 |

| | |
|---|---|
| **REFERRING PHYSICIAN:**<br>TIM HUGHES MD<br>1412 Elba Highway<br>TROY AL 36079- | **DATE OF BIRTH**<br><br>**DATE OF SERVICE**<br>05/11/05 |

**COPY TO:**
TIM  HUGHES MD
DAVID P. HERRICK MD

**05/11/05: MG MAMMO DIGITAL SCREENING BIL**

| **RECOMMENDATION:** | **DIAGNOSIS:** |
|---|---|
| Routine Follow-up<br>Repeat Mammogram: 12 mos | Right Breast: Negative<br>⇨ Left Breast: Negative |

**SCREENING MAMMOGRAM**
Two view digital mammogram was done of each breast.  This is compared to the pervious study from Monroeville dated 09/13/02.  No significant change is seen in the overall appearance of the breast parenchyma.  There is a moderate amount of glandular tissue present.  There is no spiculated mass or distortion.  There are no malignant calcifications.

**IMPRESSION:**
1.  THERE ARE NO FINDINGS SEEN WHICH ARE THOUGHT TO REPRESENT MALIGNANCY AT THIS TIME.

Computer aided detection also utilized.
Patient was given verbal and written results on day of examination.

**REVIEWED AND INTERPRETED BY:**
CYNTHIA  LORINO, MD

**ELECTRONICALLY VERIFIED BY:**
CYNTHIA  LORINO, MD

CL/EE

tation Date/Time:05/12/05 08:02
fered Date: 03/04/05 10:13

CLEILAND, CATHY K
Exam #: E-00087253
Page 1

LINA/Cleiland 0766



# Invoice

| DATE |
|------|
| 09/15/2005 |

**ADVANTAGE 2000 CONSULTANTS**

*4121 Union Road*
*Suite 216*
*St. Louis, MO 63129*
*1-800-899-3433*

**BILL TO**

Sam Mariskanish
CIGNA Group Insurance
P.O. Box 22325
Pittsburgh, PA  15222

PITTSBURGH
SEP 1 9 2005
GROUP LIFE AND DISABILITY
BENEFITS OFFICE

| INVOICE # |
|-----------|
| COR20051141 |

| CGI Case Manager | Kelli Archacki |
|------------------|----------------|

| INSURED |
|---------|
| Cathy Cleiland |
| SSN |
| 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 |

| Policy Holder and Number |
|--------------------------|
| Temple Inland FLK20104 |

| SERVICE DATE | DESCRIPTION | RATE | AMOUNT |
|--------------|-------------|------|--------|
| 09/06/2005 | Integration Recovery Fee @3.5% | 861.00 | 861.00 |
| | Reported LTD Refund Amount: $25,240.66 | | |
| | Recovered LTD Refund Amount: $24,600.00 | | |
| | Refund Outstanding: $640.66 | | |

PAID

RECEIVED
OCT 0 6 2005
CIGNA DALLAS

| A2K REPRESENTATIVE | DRS | **Total** | **$861.00** |
|--------------------|-----|-----------|-------------|

**WE APPRECIATE YOUR BUSINESS!**

## SOCIAL SECURITY DISABILITY ENTITLEMENT REPRESENTATION SERVICE
## TAX ID 43-1705035

LINA/Cleiland 0767

GXIDM04            SRO EXPENSE TRANSACTION INQUIRY            09/28/0

                                                      OPID L649

TRANS NO    01
TRANS TYPE I        EXP RECVD DT 09 26 2005        PROV NAME    A2K

EXPENSE CD NX       EXP FROM DT  09 15 2005        EXP THRU DT  09 15 2005

CHARGE AMT   861.00  NOT COV AMT          RC    TOTAL PAYABLE   861.00

PROVIDER ID 2 431705035 001

PAYEE CODE  XX
NAME1 /ADVANTAGE 2000 CONSULTANTS        N2 ACCOUNTING DEPT.
ADDR1 4121 UNION RD., SUITE 216          A2 INV. #: COR20051141
CITY  ST. LOUIS            ST/PROV MO  ZIP 63129

DATE PAID   09 26 2005        CHECK NO 06766603
REV VOID                      STOP PAY IND

NEXT TASK:   FUNCTION:  KEYS : FLK         0020104        001
             KEYS CONTINUED  : S422802332 0001 01 80B 09262005 01

LINA/Cleiland 0768



**The Release of Information Specialists**

### Medical Record Requestor

Cigna
12225 Greenville Ave
Suite 1000
Dallas TX 75243
Attn: Kelli Archacki

| Invoice Number | 179425 |
|---|---|
| Invoice Date | 9/26/2005 |
| Invoice Due Date | 10/26/2005 |
| Your Reference # | ELK20104 |

| Patient's Name | Records Requested From: |
|---|---|
| Cathy Cleiland | Pain Center |

| Release of Information Item | | Price |
|---|---|---|
| 9 | Pages Copied | $9.00 |
| | Alabama Processing Fee | $5.00 |
| | $0.60 Postage | $0.60 |
| | | $0.00 |
| | | $0.00 |
| | | $0.00 |
| | | $0.00 |

| Subtotal |
|---|
| $14.60 |

| Amount Paid |
|---|
| $0.00 |

| AMOUNT DUE |
|---|
| $14.60 |

### Comments

**To Avoid Further
Delays, Please
Pay the Balance
of Your Account**

All charges are regulated by state law where applicable. A late fee service charge of 1.5% per month (18% annual rate) will be made against all total fees not paid on or before the invoice due date.

**TAX ID NUMBER**
**72-1355541**

 

To pay by credit card please call
**1-205-981-4534**

**PREBILL NOTICE. Records will be sent out once payment has been received.**

*pd 10/4/6
20*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

↑ Detach and mail this portion with your check to Acton Corporation ↑

**INVOICE DUE DATE:** 10/26/2005

| Invoice Number | AMOUNT DUE |
|---|---|
| 179425 | $14.60 |

| Medical Record Requestor |
|---|
| Cigna |

**TAX ID NUMBER**
**72-1355541**

 MasterCard  VISA

Please make checks payable to:
**Acton Corporation**
P.O. Box 380213
Birmingham, AL 35238-0213

To pay by credit card please call
**1-205-981-4534**

LINA/Cleiland 0769

SEP-21-2005 13:25 From:CIGNA DALLAS      913342888089    P.1/2

## *Facsimile Transmission Cover Sheet*

3rd request
9/21/05

**SECOND REQUEST**
9/14/05



**CIGNA** Group Insurance
Life · Accident · Disability

| Transmit to FAX number<br>334.288.8089 | Date<br>August 31, 2005 | Time<br>12:43 PM | Total number of pages<br>(including this sheet): 4 2 |
|---|---|---|---|

| To | From |
|---|---|
| Name<br>Center for Pain of Montgomery | Name<br>Kelli Archacki |
| Company | Department |
| Phone | Phone<br>800.352.0611, Ext. 1294 |
| Address | Address<br>212<br>12225 Greenville Ave<br>Suite 1000<br>Dallas, TX 75243 |

Re:   Cathy Cleiland
DOB:
Policy#   FLK 20104
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland. We received the message from Kitty stating that they are not disabling her. Ms Cleiland has stated that this is her only treating provider. So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

- **Complete office/progress notes January 1, 2005 through present. Please include the results of all diagnostic studies.**

We request that you have this information to us no later than September 8, 2005. Thank you very much for your assistance and prompt attention to this letter.

9/21/05

9-23-05

*CONFIDENTIALITY NOTICE:* If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

[ ] Acknowledgment Requested       To Fax a reply, dial: 860.731.3413

LINA/Cleiland 0770

# EXHIBIT 1 TO EXHIBIT A Part 15

Acenza: Task

Page 1 of 2

## Task: Claimant Contact

Re-route | Void | Pend | Alert | Task | Contents | Notes (0/0) | Update

Logs (0)

**Start Date:** 09/27/2005          **Due Date:**          10/04/2005

## Details

| | | | | |
|---|---|---|---|---|
| Name | CATHY CLEILAND | SSN | DOB | |
| Account Name | TEMPLE INLAND CORPORATE | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 11/18/2003 - Active |

Contact Information - Interview Documentation - Spouse Information

### Contact Information                                                   Top

Title Status of medical records

☐ First Phone Call
  Result                                    Date                  User ID

☐ Second Phone Call
  Result                                    Date                  User ID

☐ Generate Letter/Fax                       Date                  User ID

☒ Incoming Call                             Date 09/27/2005 04:03 PM   User ID Kelli Archacki

☒ Mail Received                             Date                  User ID

Contact Comments

### Interview Documentation                                               Top

Primary Diagnosis/Symptoms/Co-Morbid Conditions

Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization

LINA/Cleiland 0771

Acenza: Task

Functionality/Job Duties/Set Expectations

**Spouse Information**

| First Name | MI | Last Name |
| SSN | Date of Birth | |
| Is Spouse Employed? | If Employed | |
| Date of Birth of Youngest Dependent | | |
| Other Income Benefits | | |

IQR

**Comments**

Cx called and stated that she had talked to her AP office who stated that they mailed the records on 9/23/05 and they also mailed her medical records back in June, 2005. Told her that we have not received anything but if they mailed the records 9/23/05 we would not have received them by now. Told her I would watch for the records and let her know if we do not receive them. She stated that she has gone to see a Rheumatologist 3-4 weeks ago due to her knees locking. He advised her to get blood drawn and they would do lab work. She has been falling a lot and the AP from the pain clinic set up a sleep study due to this for this week. She cancelled it because she does not feel up to it but plans to reschedule it for next week. Thanked her for the assistance in contacting her AP's office for the records. She stated concern that we would close her claim 10/10/05 if we did not receive the records. Stated I would call her prior to that if we do not receive the information.

**Active Contents**

| Type | Due Date | Created By | Assigned To | Title |
|------|----------|-----------|-------------|-------|
| LTD | 05/14/2003 | Kelli Archacki | Kelli Archacki | CLEILAND,CATHY -- 422802332 -- 07/11/1957 |

Created: 09/27/2005 05:20 PM

Status: **Active**   Assigned To: **Kelli Archacki**

LINA/Cleiland 0772

Kelli Archacki
Claim Manager

September 21, 2005

**CIGNA Group Insu**
Life · Accident · Disability

CATHY CLEILAND

CLIO, AL 36017

RE:    CLAIMANT:        Cathy Cleiland
       ACCT NAME:       Temple Inland
       ACCT NUMBER:     FLK 20104
       Life Insurance Company of North America

Routing  212
12225 Greenville Ave
Suite 1000
Dallas, TX 75243
Telephone  800.352.0611, E
1294
Facsimile  860.731.3413
Kelli.Archacki@cigna.com

Dear Ms. Cleiland:

We regret the delay in making a decision on your claim.  To properly evaluate your claim to determine if you are considered disabled under the any occupation definition, we have faxed a request on 8/31/05, 9/14/05, and 9/21/05 for office visit notes from January 1, 2005 through present from The Center for Pain of Montgomery. We need this information to determine whether you qualify for continued Disability benefits as defined under your contract.

We hope to receive all of this information by **10/10/05,** and if possible, we will make a decision with the information received.  If we do not receive the above information within thirty days, or additional information is needed, we will notify you of the reason for the delay.  At that time, we will advise you of the outcome of your claim.

If you are still claiming benefits under your Long-Term Disability group insurance plan, please contact the medical providers and urge them to respond as soon as possible.  If we do not receive the requested information on **10/10/05,** a determination will be made based on the information that is currently on file.

Should you have any questions, please contact me at 800.352.0611, extension 1294 regarding your claim for Long Term Disability benefits.

Sincerely,

Kelli Archacki
Claim Manager

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

## *Facsimile Transmission Cover Sheet*

3rd request
9/21/05



9/14/05



**CIGNA Group Insuranc**
Life · Accident · Disability

| Transmit to FAX number 334.288.8089 | Date August 31, 2005 | Time 12:43 PM | Total number of pages (including this sheet) : 4 2 |
|---|---|---|---|

| To | From |
|---|---|
| Name Center for Pain of Montgomery | Name Kelli Archacki |
| Company | Department |
| Phone | Phone 800.352.0611, Ext. 1294 |
| Address | Address 212 12225 Greenville Ave Suite 1000 Dallas, TX 75243 |

Re:    Cathy Cleiland
DOB:
Policy#    FLK 20104
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland.  We received the message from Kitty stating that they are not disabling her.  Ms Cleiland has stated that this is her only treating provider.  So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

- **Complete office/progress notes January 1, 2005 through present.  Please include the results of all diagnostic studies.**

We request that you have this information to us no later than ~~September 8, 2005~~.  Thank you very much for your assistance and prompt attention to this letter.

9/21/05

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation.  Products and services are provided by these subsidiaries and not by CIGNA Corporation.  These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

| [ ] Acknowledgment Requested | To Fax a reply, dial : 860.731.3413 |
|---|---|

  

## Message Confirmation Report

### SEP-14-2005 01:15 PM WED

Fax Number  :
Name        :  CIGNA DALLAS

Name/Number  :  913342888089---79160
Page         :  2
Start Time   :  SEP-14-2005 01:14PM WED
Elapsed Time :  00' 39"
Mode         :  STD ECM
Results      :  [O.K]

---

*Facsimile Transmission Cover Sheet*



**CIGNA** Group Insurance
Life - Accident - Disability

**SECOND REQUEST**
9/14/05

| Transmit to FAX number | Date | Time | Total number of pages (including this sheet) : 2 |
|---|---|---|---|
| 334.288.8089 | August 31, 2005 | 12:43 PM | |

| To | | From | |
|---|---|---|---|
| **Name** Center for Pain of Montgomery | | **Name** Kelli Archacki | |
| **Company** | | **Department** | |
| **Phone** | | **Phone** 800.352.0611, Ext. 1294 | |
| **Address** | | **Address** 212 12225 Greenville Ave Suite 1000 Dallas, TX 75243 | |

Re:        Cathy Cleiland
DOB:
Policy#    FLK 29104
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland. We received the message from Kitty stating that they are not disabling her. Ms Cleiland has stated that this is her only treating provider. So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

- **Complete office/progress notes January 1, 2005 through present. Please include the results of all diagnostic studies.**

We request that you have this information to us no later than ~~September 8, 2005~~. Thank you very much for your assistance and prompt attention to this letter.

9/21/05

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

[ ] Acknowledgment Requested                    To Fax a reply, dial : 860.731.3413




## Message Confirmation Report

### AUG-31-2005 11:58 AM WED

Fax Number    :
Name          :   CIGNA DALLAS

| | | |
|---|---|---|
| Name/Number | : | 913342888089——79160 |
| Page | : | 2 |
| Start Time | : | AUG-31-2005 11:57AM WED |
| Elapsed Time | : | 00'37" |
| Mode | : | STD ECM |
| Results | : | [O.K] |

---

### *Facsimile Transmission Cover Sheet*

**CIGNA Group Insurance**
Life · Accident · Disability

| Transmit to FAX number 334.288.8089 | Date August 31, 2005 | Time 12:43 PM | Total number of pages (including this sheet) 4 2 |
|---|---|---|---|

| To | From |
|---|---|
| Name Center for Pain of Montgomery | Name Kelli Archacki |
| Company | Department |
| Phone | Phone 800.352.0611, Ext. 1294 |
| Address | Address 212 12225 Greenville Ave Suite 1000 Dallas, TX 75243 |

Re:    Cathy Cleiland
DOB:
Policy#   FLK 20104
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland. We received the message from Kitty stating that they are not disabling her. Ms Cleiland has stated that this is her only treating provider. So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

- **Complete office/progress notes January 1, 2005 through present. Please include the results of all diagnostic studies.**

We request that you have this information to us no later than **September 8, 2005.** Thank you very much for your assistance and prompt attention to this letter.

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

| [ ] Acknowledgment Requested | To Fax a reply, dial : 860.731.3413 |
|---|---|

LINA/Cleiland 0776

Acenza: Task

📋 Task | 🔖 Contents | 📋 Notes (0/0)

## Task: Provider Contact

**Start Date:** 08/29/2005                    **Due Date:**                    08/30/2005

Logs (0)

### Details

| | | | | | |
|---|---|---|---|---|---|
| Name | CATHY CLEILAND | SSN | | DOB | |
| Account Name | TEMPLE INLAND CORPORATE | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 11/18/2003 - Active |

Contact · Interview Documentation · Obj, Findings · Treatment · Functionality · Referral

Top

### Contact Information

Title Pain Center 334.288.7808

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ First Phone Call | Result | Left Message - Answering Machine | Date | 08/23/2005 01:32 PM | User | Kelli Archacki |
| ☒ Second Phone Call | Result | Left Message - Answering Machine | Date | 08/25/2005 12:22 PM | User | Kelli Archacki |
| ☒ Generate Letter/Fax | | | Date | 08/31/2005 11:40 AM | User | Kelli Archacki |
| ☒ Burden of Proof Letter Sent | | | Date | | User | |
| ☒ Incoming Call | | | Date | | User | |
| ☒ Mail Received | | | Date | | User | |

Contact Comments:
Left message for call back.  Need to know if she has been released to RTW and need office
visit notes.  Per Cx, only AP seeing at this time.

Top

### Interview Documentation

| | | | |
|---|---|---|---|
| Provider First Name | PAIN CENTER | Provider Last Name | Provider Specialty |
| Contact First Name | KITTY | Contact Last Name | Contact Role |

LINA/Cleiland 0777



Acenza: Task

Primary ICD Code
Comments

Primary ICD Description

Secondary ICD Code
Comments

Secondary ICD Description

ICD Code 3
Comments

ICD Code 3 Description

ICD Code 4
Comments

ICD Code 4 Description

ICD Code 5
Comments

ICD Code 5 Description

**Objective Findings**                                                                Top
☐ Physical Exam Findings
☐ Test Results
☐ Provider Observations
Comments

**Treatment Information**                                                              Top
Medication (1)            Dosage (1)            Frequency (1)
Medication (2)            Dosage (2)            Frequency (2)

Page 2 of 4

LINA/Cleiland 0778

**Task | Contents | Notes (0/0)**

## Task: Claimant Contact

| | | | |
|---|---|---|---|
| **Start Date:** | 08/23/2005 | **Due Date:** | 09/01/2005 |

**Details**

| Name | CATHY CLEILAND | SSN | | DOB | |
|---|---|---|---|---|---|
| Account Name | TEMPLE INLAND CORPORATE | Account # | FLK0020104 | Incurred Date | 05/14/2003 |
| Claim Manager | Kelli Archacki | Incident # | 613165 | Claim Eff Dt-Status | 11/18/2003 - Active |

Contact Information - Interview Documentation - Spouse Information

**Contact Information**                                                                                   Top

Title  Disabling AP

☒ First Phone Call
   Result  Successful                                    Date  08/23/2005 01:08 PM     User ID  Kelli Archacki
☒ Second Phone Call
   Result                                                Date                          User ID
☐ Generate Letter/Fax                                   Date                          User ID
☐ Incoming Call                                         Date                          User ID
☐ Mail Received                                         Date                          User ID
   Contact Comments

**Interview Documentation**                                                                              Top
Primary Diagnosis/Symptoms/Co-Morbid Conditions

Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization

LINA/Cleiland 0779

Acenza: Task

Functionality/Job Duties/Set Expectations

**Spouse Information**

First Name _____ MI __ Last Name| _____

SSN _____ Date of Birth| _____

Is Spouse Employed? _____ If Employed| _____

Date of Birth of Youngest Dependent

Other Income Benefits

**Comments**

Called Cx to find out who treating physicians are and which AP is disabling her. She
stated that the Center for Pain of Montgomery is disabling her. She has moved to this
location a year ago and she has not secured a regular AP, she needs to do that. She is
taking pain medications, narcotics and the doctor their told her she would be on them for
the rest of her life. Advised her that Kitty from the Pain Center called and stated that
they are not disabling her and referred us to her other doctors. Cx stated that she
feels that we are trying to get out of paying her and with all that she has been through
that is pretty shabby of us. Advised her that per policy we are investigating to
determine if she is considered disabled under any occupation. We requested the doctors
that are treating her from her and based on the information that she provided we
requested updated medical information. That AP's office stated that they are not
disabling her and referred us to her other AP's so I was following up with her to see if
there was another AP and to give her a status. Told her I would Kitty back and request
the records and we would go from there. She stated that she had an AP for 6 years but he
is two hours away and she has not seen him in a year. Thanked her and call ended.

Last Changed User    Kelli Archacki    Last Changed Date    08/23/2005 02:14 PM

**Active Contents**

| | Type | Due Date | Created By | Assigned To | Title |
|---|---|---|---|---|---|
| | LTD | 05/14/2003 | Kelli Archacki | Kelli Archacki | CLEILAND,CATHY |

**Status:** Completed    **Assigned To:** Kelli Archacki    **Created:** 08/23/2005 02:13 PM

https://dms-acclaim.group.cigna.com/acenza/Task/TaskOTCTASK_CLAIMANT_CONTACTDisplay.asp?id=14158499&wd=5...    8/23/2005

LINA/Cleiland 0780

Acenza: Task

Task | Contents | Notes (0/0)

Logs (0)

## Task: Provider Contact

**Start Date:** 08/23/2005        **Due Date:**        09/01/2005

### Details

| | | |
|---|---|---|
| Name | CATHY CLEILAND | |
| Account Name | TEMPLE INLAND CORPORATE | |
| Claim Manager | Kelli Archacki | |

SSN

DOB

Account # FLK0020104    Incurred Date 05/14/2003

Incident # 613165    Claim Eff Dt-Status 11/18/2003 - Active

Contact - Interview Documentation - Obj. Findings - Treatment - Functionality - Referral

Top

### Contact Information

**Title** Request for medical

| | | | | |
|---|---|---|---|---|
| ☑ First Phone Call | Result | | Date | User |
| ☑ Second Phone Call | Result | | Date | User |
| ☑ Generate Letter/Fax | | | Date | User |
| ☑ Burden of Proof Letter Sent | | | Date | User |
| ☒ Incoming Call | | | Date 08/23/2005 01:05 PM | User |
| ☑ Mail Received | | | Date | User |

**Contact Comments:**
received call 8/16/05

Top

### Interview Documentation

| | | | |
|---|---|---|---|
| Provider First Name | CENTER FOR PAIN | Provider Last Name | |
| | | Provider Specialty | |
| Contact First Name | KITTY | Contact Last Name | |
| | | Contact Role | |
| Primary ICD Code | | Primary ICD Description | |
| Comments | | | |

LINA/Cleiland 0781



LINA/Cleiland 0782

# FILE REVIEW

CLAIMANT: _Cathy Cleiland_
CASE MGR: _Archacki_
DATE: _8/18/05_

STATS: _/_
AGE: _48_
OCC: _AF Manager_      DOT ON FILE?: Y/N
DX: _Back Sprain_ _Tumbar laminectomy 5/21/05_
L&RS:_____

OFFSETS IN PLACE?
*SS— awarded? _yes_
    If awarded, is there a dependent offset?

*Pension—Awarded? _N/A_
    If 50 yrs of age & at least 5 yrs of srvc----needs yrly f/u
*W/C—Awarded?
    If W/C claim was denied did EE appeal? Settlement? Rehab?

F/U TASKS SET? Y/N

A/O APPROVED? _N_
SAM FILE- Y/N

ADDITIONAL COMMENTS:

_—Reg. meds_
_—DO infile._

 

## Message Confirmation Report

**AUG-12-2005 01:03 PM FRI**

Fax Number : 
Name : CIGNA DALLAS

| | | |
|---|---|---|
| Name/Number | : | 913342888089---79160 |
| Page | : | 4 |
| Start Time | : | AUG-12-2005 01:02PM FRI |
| Elapsed Time | : | 00'54" |
| Mode | : | STD ECM |
| Results | : | [O.K] |

---

### Facsimile Transmission Cover Sheet



**CIGNA Group Insurance**
Life - Accident - Disability

| Transmit to FAX number 334.288.8089 | Date August 12, 2005 | Time 12:43 PM | Total number of pages (including this sheet): 4 |
|---|---|---|---|

| To | From |
|---|---|
| Name Center for Pain of Montgomery | Name Kelli Archacki |
| Company | Department |
| Phone | Phone 800.352.0611, Ext. 1294 |
| Address | Address 212 12225 Greenville Ave Suite 1000 Dallas, TX 75243 |

Re: Cathy Cleiland
DOB:
Policy# FLK 20104
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland. So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

- **Complete office/progress notes January 1, 2005 through present. Please include the results of all diagnostic studies.**

- **Please provide us with her current limitations and restrictions by completing the enclosed Physical Abilities Assessment form.**

- **Please indicate the date she will be released to return to her any occupation full time, full duty.**

We request that you have this information to us no later than August 19, 2005. Thank you very much for your assistance and prompt attention to this letter.

CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

[ ] Acknowledgment Requested    To Fax a reply, dial: 800.731.3413

*Facsimile Transmission Cover Sheet*



**CIGNA Group Insuranc**
Life · Accident · Disability

| Transmit to FAX number<br>334.288.8089 | Date<br>August 12, 2005 | Time<br>12:43 PM | Total number of pages<br>(including this sheet) : 4 |
|---|---|---|---|

| **To** | | **From** | |
|---|---|---|---|
| Name<br>Center for Pain of Montgomery | | Name<br>Kelli Archacki | |
| Company | | Department | |
| Phone | | Phone<br>800.352.0611, Ext. 1294 | |
| Address | | Address<br>212<br>12225 Greenville Ave<br>Suite 1000<br>Dallas, TX 75243 | |

Re:    Cathy Cleiland
DOB:
Policy#   FLK 20104
Policyholder: Temple Inland
Life Insurance Company of North America

I am managing a Long Term Disability claim for your patient, Cathy Cleiland.  So that we may have a better understanding of your patient's condition, I ask that you please provide me with the following:

- **Complete office/progress notes January 1, 2005 through present.  Please include the results of all diagnostic studies.**

- **Please provide us with her current limitations and restrictions by completing the enclosed Physical Abilities Assessment form.**

- **Please indicate the date she will be released to return to her or any occupation full time, full duty.**

We request that you have this information to us no later than **August 19, 2005**.  Thank you very much for your assistance and prompt attention to this letter.

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation.  Products and services are provided by these subsidiaries and not by CIGNA Corporation.  These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

[ ] Acknowledgment Requested                    To Fax a reply, dial : 860.731.3413

LINA/Cleiland 0785

 

## PHYSICAL ABILITY ASSESSMENT

We are evaluating your patient's disability claim in order to determine functional impairment Please check the boxes corresponding to the patient's level of physical functioning.  **Please substantiate your findings with medical documentation.  (Failure to provide the requested reports/data may result in delay in claim determinations).**

Patient Name_____ Date of Birth_____
Diagnosis(es)/ICD-9 Code_____

*Throughout* an 8-hour workday, the patient can tolerate, *with positional changes and meal breaks,* the following activities for the specified durations:

| | | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|---|
| **Sitting:** | | | | | | |
| **Standing:** | | | | | | |
| **Walking:** | | | | | | |
| **Reaching:** | Overhead | | | | | |
| | Desk Level | | | | | |
| | Below Waist | | | | | |
| **Fine Manipulation:** | Right: | | | | | |
| | Left: | | | | | |
| **Simple Grasp:** | Right: | | | | | |
| | Left: | | | | | |
| **Firm Grasp:** | Right: | | | | | |
| | Left: | | | | | |
| **Lifting:** | 10 lbs. | | | | | |
| | 11-20 lbs. | | | | | |
| | 21-50 lbs. | | | | | |
| | 51-100 lbs. | | | | | |
| | 100+ lbs. | | | | | |
| **Carrying:** | 10 lbs. | | | | | |
| | 11-20 lbs. | | | | | |
| | 21-50 lbs. | | | | | |
| | 51-100 lbs | | | | | |
| | 100+ lbs. | | | | | |

| | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| **Pushing:** (Max. Wt.:_____) | | | | | |
| **Pulling:** (Max. Wt.:_____) | | | | | |
| **Climbing:** Regular Stairs | | | | | |
| Regular Ladders | | | | | |
| **Balancing:** | | | | | |
| **Stooping:** | | | | | |
| **Kneeling:** | | | | | |
| **Crouching:** | | | | | |
| **Crawling:** | | | | | |
| **Seeing:** | | | | | |
| **Hearing:** | | | | | |
| **Smell/Taste:** | | | | | |
| **Environmental Conditions:** | | | | | |
| Exposure to extremes in heat | | | | | |
| Exposure to extremes in cold | | | | | |
| Exposure to wet / humid conditions | | | | | |
| Exposure to vibration | | | | | |
| Exposure to odors / fumes / particles | | | | | |
| Can work around machinery | | | | | |
| **Ability to work extended shifts/ overtime:** | | | | | |
| **Use lower extremities for foot controls:** | | | | | |

*Please use this space to elaborate on ANY of the above categories:*

_____
_____
_____
_____

**Name:** _____     **Signature:** _____
Medical Specialty: _____     Date: _____
Address: _____     Phone: _____
Federal ID tax number:_____

> **Please include any objective test or narrative if available.**
> **Thank you for your time.**

**Please return this form in the enclosed addressed envelope.**

LINA/Cleiland 0787

Page 1 of 1

**Archacki, Kelli 212**

| | |
|---|---|
| **From:** | Mary Boyd [mary.boyd@advantage2k.com] |
| **Sent:** | Wednesday, August 10, 2005 11:23 AM |
| **To:** | CGI Overpayment Recovery Unit |
| **Cc:** | COR Team; Archacki, Kelli 212 |
| **Subject:** | COR Status Update/Claimant: Cathy Cleiland - FINAL AWARD - Policy ID #: FLK 20104 - DOB: |

08/10/2005 11:21:03 AM
DOB: ·
Policy ID #: FLK 20104
Claimant: Cathy Cleiland - FINAL AWARD
Client: CIGNA Group Insurance - Dallas TX FCO / Kelli Archacki (800) 352-0611 - kelli.archacki@cigna.com

Attached is the refund request letter sent to Cathy Cleiland. She will review the calc sheet and forward her Cigna repayment.

Thank you,

Mary E Boyd, Benefit Coordinator, Advantage 2000 Consultants

CONFIDENTIALITY NOTICE:

If you are not the intended recipient and have received this e-mail in error,
then please notify the sender immediately. This e-mail transmission may contain
confidential or sensitive information that is for use of the intended recipient only
Please delete this e-mail from your files if you are not the intended recipient.
Thank you for your compliance.

8/10/2005

LINA/Cleiland 0788



ADVANTAGE 2000
CONSULTANTS INC.
*"Your Gateway to Social Security"*

*Visit Us Online at: www.advantage2k.com*

4121 Union Rd. Ste. 216 St. Louis Mo 63129
Telephone:(800) 899-3433 - Fax:(314) 845-6141
Email: advantage2000@advantage2k.com

Wednesday, August 10, 2005

Ms. Cathy A Cleiland

Clio, AL 36017

Dear Ms. Cleiland:

This letter is to confirm our conversation today regarding the coordination of your Social Security Disability benefits with your CIGNA Group Insurance Long Term Disability benefits.

Please review the attached CIGNA Group Insurance Overpayment Calculation Worksheet. This information indicates you received Long Term Disability benefits from CIGNA Group Insurance that did not offset for your Social Security Disability Insurance benefits for the period 11/10/2003 through 7/9/2005. Consequently, CIGNA Group Insurance overpaid you in the amount of $25,240.66.

According to the Reimbursement Agreement you originally signed, this amount is due back to CIGNA Group Insurance. Please remit a check made payable to Advantage 2000 Consultants, Inc. in the amount of $25,240.66 with the understanding that this money will be sent to CIGNA Group Insurance and applied toward your Long Term Disability benefits overpayment.

If you have any questions or concerns regarding this process, please contact me at 1-800-899-3433, ext 212. Thank you for your consideration.

Sincerely,

Mary E Boyd
Benefit Coordinator

Enclosures

**FRAUD WARNING:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. For residents of the following states, please see the reverse side of this form: *California, Colorado, District of Columbia, Florida, Kentucky, Maryland, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Tennessee, Texas or Virginia.*

| Name: CATHY R. Cleiland | Social Security No.: |
|---|---|
| Address: Clio, AL 36017 | Telephone No.: 334 807 0396 |

1. In your own words, tell us why you cannot work in your own or in any occupation.
   I am in constant pain due to back injuries & surgery's. It affects my arms, back, and legs. I go to a pain center on a monthly basis and I am on high dosages of medications, including narcotic meds

2. What is primary physical and/or mental condition preventing you from working now?
   pain and permanent nerve injuries. The medications I take have really affected my memory

3. Can you drive? ☑ Yes ☐ No    How far? About 50 miles without stopping but I have to juggle my medications

4. What time do you get up in the morning? 9:00    What time do you go to bed? 8:00 usually take a 2hr nap during day

5. Where do you live? ☐ Apartment   ☑ House   mobile home
   How many floors in the apartment/house? 1    Does it have an elevator? ☐ Yes ☑ No
   Do you use any special equipment - ramps, handrails, wheelchair? ☑ Yes ☐ No
   If yes, describe At times I have to use a walker. I have had some bad falls due to weakness in my legs

6. How often do you use the computer? → Once every 2 wks (approx)
   What computer programs or software can you use? WORD

7. Check the things you do regularly:

| Activity | Hours per day? | Days per week? |
|---|---|---|
| ☐ Cook | | |
| ☐ Clean | | |
| ☐ Shop | | |
| ☐ Laundry | | |
| ☐ Yardwork | | |
| ☐ Gardening | | |
| ☐ Read | | |
| ☑ Watch TV | | |
| ☐ Other (school, attend religious services, volunteer work, etc.) | | |

What do you do for recreation? Nothing

8. Are there things you attend to with regard to your personal needs (grooming, dressing, etc.)?
   I go to my Dr. appts on a monthly basis. (Montgomery pain center)

9. Do you go for walks? ☐ Yes ☑ No    How often? 
   How far do you walk?    For how long? 
   I tried to walk about 1/4 mile too daily but I quit due to pain in my back & legs.

GB-60942B (04/2004)

LINA/Cleiland 0790

10. Do you engage in a regular exercise program?    ☐ Yes  ☑ No
Where (home, gym, etc.) _____
How often? _____
Describe your exercise program _____

11. Please circle the highest grade you completed in school:

1  2  3  4  5  6  7  8  9  10  11 (12)   GED    High School Diploma

College?   1 yr.   2 yrs.   3 yrs.  (4 yrs.)  BA/BS Degree   Masters Degree Other

Type of degree? (Business, History, Social Sciences, etc.) _____
Date Received _____ June 1988 _____

List any professional/educational certificates, licenses, etc. awarded _____
_____

List any vocational programs you have attended/completed _____

In the last 3 years, what type of certificates or licenses have you received? _____
None that I can recall .

12. Are you taking any professional/educational/vocational classes now?   ☐ Yes  ☑ No
Please list them _____

13. Are you working?   ☐ Yes  ☑ No
If so, please list how many hours per day you work, and the name of your employer. _____

14. Have you discussed return to work with your physician?   ☐ Yes  ☑ No
What does your physician say about returning to work? Due to info from many physicians
I have been approved for social security
15. When do you expect to return to work? unknown if I will
Will you return to your regular occupation?   ☐ Yes   ☐ No  If no, why not? unknown
Will you return to Modified job?   ☐ Yes   ☐ No  If no, why not? N/A

16. Do you know of any positions within your company that you would be interested in?   ☐ Yes  ☑ No
If yes, what position? _____

17. If unable to return to regular position, would you be interested in exploring your career options?   ☐ Yes  ☑ No
I am in constant severe pain.

**Employment History**

| 1. Job Title: | Employed date: From: | Through: |
|---|---|---|
| Major Duties: Temple-Inland | Minor Duties: Human Resources Mgr | |
| Tools/Equipment used: | Machinery/Computers used: | |

| 2. Job Title: | Employed date: From: | Through: |
|---|---|---|
| Major Duties: Medline and Human Resources Mgr | Minor Duties: | |
| Tools/Equipment used: | Machinery/Computers used: | |

| 3. Job Title: | Employed date: From: | Through: |
|---|---|---|
| Major Duties: Teledyne Brown Eng. Human Resources Mgr | Minor Duties: | |
| Tools/Equipment used: | Machinery/Computers used: | |

18. Have you ever owned or operated your own business?   ☐ Yes  ☑ No
Do you own, operate or have ownership interest in a business now?   ☐ Yes  ☑ No
Business Name _____

**19. Are you married?** ☐ Yes ☒ No

If yes, please provide: Spouse's Name: _____  DOB: __ / __ / __

Spouse's SSN: _____

Do you have any children under age 18? ☐ Yes ☒ No
Please list their names and dates of birth in order:

_____

_____

_____

Do you have any handicapped children over 18? ☐ Yes ☒ No

**20.** List any prescription medications you take: Use other side if you need more space.

| Medication | Dose | Frequency | Medication | Dose | Frequency |
|---|---|---|---|---|---|
| Robaxin | 750 mg | X 3 daily | Effexor XR | 75 mg | X 1 |
| Neurontin | 800 mg | X 4 " | Protonix | 40 mg | X 1 |
| Humulin N Q R | 25/20 | X 2 " | Clonazepam | 1 mg | X 1 |
| Methadone | 10 mg | X 4 " | Phenergan | 25 mg | X 3 |

**21.** List any doctor(s) you see regularly. Use the other side if you need more room.

| Doctor's Name/Specialty: David Herrick, Adam Norticle | Doctor's Name/Speciality: |
|---|---|
| The Center for Pain of Montgomery | |
| Address: Morrow Medical Tower Suite 112 Montgomery, AL | Address: |
| Telephone #: 334 288 7808  Fax #: 334 | Telephone #:  Fax #: |
| Frequency of visits: Monthly  Date of last visit: 6/21/05 | Frequency of visits:  Date of last visit: |
| Doctor's Name/Specialty: | Doctor's Name/Speciality: |
| Address: | Address: |
| Telephone #:  Fax #: | Telephone #:  Fax #: |
| Frequency of visits:  Date of last visit: | Frequency of visits:  Date of last visit: |

**22.** Are you right handed or left handed? ☒ Right ☐ Left

What is your height? 5'4"   What is your date of birth? 7-11-1957

What is your weight? 170

**23.** Are you a veteran? ☐ Yes ☒ No

If yes, have you applied for VA benefits for this disability? ☐ Yes ☐ No
Please attach a copy of your VA disability award.

**24.** What other types of income/money/compensation/benefits are you receiving or eligible to receive?

| | | $ Amount/Frequency | Date Began | Date Paid Through |
|---|---|---|---|---|
| ☐ Yes ☒ No | Salary Continuance | | | |
| ☐ Yes ☒ No | State Disability Benefits | | | |
| ☐ Yes ☒ No | Group Disability Benefits | | | |
| ☐ Yes ☒ No | Workers' Compensation | | | |
| ☐ Yes ☒ No | Pension Benefits | | | |
| ☒ Yes ☐ No | Social Security Disability Benefits | Have just received partially favorable letter | | |
| ☐ Yes ☒ No | No-Fault Auto Disability Insurance | I have not received any info on more | | |
| ☐ Yes ☒ No | Any Other Disability Income | | | |

I certify that the information in this document is true and correct.

Signature _Cathy K. Cleiland_   Date 6/28/05

LINA/Cleiland 0792



**SOCIAL SECURITY ADMINISTRATION**

Refer To:

*Kelli, d81c*

Office of Hearings and Appeals
SSA/OHA Hearing Office
550 Government Street
Suite 200
Mobile, AL 36602-2010

Date: **MAY 2 6 2005**

*Kelli,
 this is per your
 request*

Cathy A. Key

Clio, AL 36017

## NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

### This Decision is Fully Favorable To You

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

### The Appeals Council May Review The Decision On Its Own

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

### If You Disagree With The Decision

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

### How to File an Appeal

To file an appeal you or your representative must request that the Appeals Council review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the **Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255.** Please put the Social Security number shown above on any appeal you file.

See Next Page

LINA/Cleiland 0793

### Disability Benefit Adjustment

| | | Version Date: 1/04/05 |
|---|---|---|

Date:  7/18/2005

Claimant Name: Cathy Cleiland   Policyholder: Temple Inland
Minimum Benefit: $  50.00   Policy Number: FLK 020104
Reason for Adjustment:  SSDI award

| What has been Paid | | Corrected Payments | |
|---|---|---|---|

**Period 1**

| From: 11/18/03 Through: 12/09/03 # of Months: 1 | | From: 11/18/03 Through: 12/09/03 # of Months: 1 | |
|---|---|---|---|
| Gross Benefit | $2,500.00 | Gross Benefit | $2,500.00 |
| Other Benefits: | | Other Benefits: | $1,217.00 ssdi award |
| Tax Year: 2003 | | Tax Year: 2003 | |
| | Totals this period: | | Totals this period: |
| Net Benefit $2,500.00 X #of Months: | $2,500.00 | Net Benefit $1,283.00 X #of Months: | $1,283.00 |
| - FICA | $0.00 | - FICA | $0.00 |
| - FIT | $0.00 | - FIT | $0.00 |
| Payment Amount: $2,500.00 | $2,500.00 | Payment Amount: $1,283.00 | $1,283.00 |

**Period 2**

| From: 12/10/03 Through: 01/09/04 # of Months: 1 | | From: 12/10/03 Through: 01/09/04 # of Months: 1 | |
|---|---|---|---|
| Gross Benefit | $2,500.00 | Gross Benefit | $2,500.00 |
| Other Benefits: | | Other Benefits: | $933.03 ssdi award $1217/30 x 22 days |
| | | | $379.20 ssdi award $1284/30 x 9 days |
| Tax Year: 2004 | | Tax Year: 2004 | |
| | Totals this period: | | Totals this period: |
| Net Benefit $2,500.00 X #of Months: | $2,500.00 | Net Benefit $1,187.77 X #of Months: | $1,187.77 |
| - FICA | $0.00 | - FICA | $0.00 |
| - FIT | $0.00 | - FIT | $0.00 |
| Payment Amount: $2,500.00 | $2,500.00 | Payment Amount: $1,187.77 | $1,187.77 |

**Period 3**

| From: 01/10/04 Through: 01/09/05 # of Months: 12 | | From: 01/10/04 Through: 01/09/05 # of Months: 12 | |
|---|---|---|---|
| Gross Benefit | $2,500.00 | Gross Benefit | $2,500.00 |
| Other Benefits: | | Other Benefits: | $1,264.00 ssdi award |
| Tax Year: 2004 | | Tax Year: 2004 | |
| | Totals this period: | | Totals this period: |
| Net Benefit $2,500.00 X #of Months: | $30,000.00 | Net Benefit $1,236.00 X #of Months: | $14,832.00 |
| - FICA | $0.00 | - FICA | $0.00 |
| - FIT | $0.00 | - FIT | $0.00 |
| Payment Amount: $2,500.00 | $30,000.00 | Payment Amount: $1,236.00 | $14,832.00 |

**Period 4**

| From: 01/10/05 Through: 07/09/05 # of Months: 6 | | From: 01/10/05 Through: 07/09/05 # of Months: 6 | |
|---|---|---|---|
| Gross Benefit | $2,500.00 | Gross Benefit | $2,500.00 |
| Other Benefits: | | Other Benefits: | $1,264.00 ssdi award |
| Tax Year: 2005 | | Tax Year: 2005 | |
| | Totals this period: | | Totals this period: |
| Net Benefit $2,500.00 X #of Months: | $15,000.00 | Net Benefit $1,236.00 X #of Months: | $7,416.00 |
| - FICA | $0.00 | - FICA | $0.00 |
| - FIT | $0.00 | - FIT | $0.00 |
| Payment Amount: $2,500.00 | $15,000.00 | Payment Amount: $1,236.00 | $7,416.00 |

**Period 5**

| From: Through: # of Months: | | From: Through: # of Months: | |
|---|---|---|---|
| Gross Benefit | | Gross Benefit | |
| Other Benefits: | | Other Benefits: | |
| Tax Year: | | Tax Year: | |
| | Totals this period: | | Totals this period: |
| Net Benefit $0.00 X #of Months: | $0.00 | Net Benefit $0.00 X #of Months: | $0.00 |
| - FICA | $0.00 | - FICA | $0.00 |
| - FIT | $0.00 | - FIT | $0.00 |
| Payment Amount: $0.00 | $0.00 | Payment Amount: $0.00 | $0.00 |

**Period 6**

| From: Through: # of Months: | | From: Through: # of Months: | |
|---|---|---|---|
| Gross Benefit | | Gross Benefit | |
| Other Benefits: | | Other Benefits: | |
| Tax Year: | | Tax Year: | |
| | Totals this period: | | Totals this period: |
| Net Benefit $0.00 X #of Months: | $0.00 | Net Benefit $0.00 X #of Months: | $0.00 |
| - FICA | $0.00 | - FICA | $0.00 |
| - FIT | $0.00 | - FIT | $0.00 |
| Payment Amount: $0.00 | $0.00 | Payment Amount: $0.00 | $0.00 |

| Totals | | Totals | |
|---|---|---|---|
| Benefits Paid | $50,000.00 | Corrected Benefits | $24,718.77 |
| FICA Withheld | $0.00 | Corrected FICA | $0.00 |
| FIT Withheld | $0.00 | Corrected FIT | $0.00 |
| Total of all payments: | $50,000.00 | Total of Corrected Payments: | $24,718.77 |

#### Overpayment Totals

Case Manager: Kelli Archacki   Credit for Attorney Fees (if applicable) :
Phone Number: 972.952.1294   Overpayment Total : $25,281.23
Claim Office: D212   $0.00
$0.00

LINA/Cleiland 0794

**Archacki, Kelli    212**

| | |
|---|---|
| **From:** | Archacki, Kelli    212 |
| **Sent:** | Thursday, July 14, 2005 9:12 AM |
| **To:** | 'customer.service@advantage2k.com' |
| **Cc:** | SecureMessage; CGI Overpayment Recovery Unit |
| **Subject:** | Cathy Cleiland |

  

op temple inland    op temple inland    temple inland
ssdi cleiland...    ssdi cleiland...    cleiland.doc (44...

*Kelli Archacki*
Case Manager, Dallas Claims Office
CIGNA Disability Management Solutions
E Mail: Kelli.Archacki@CIGNA.com
1-800-352-0611 ext. 1294
Local:  972.952.1294
Network:  933.1294
Fax:  860.731.3413

***Confidentiality Notice***:  If you have received this e-mail in error, please immediately notify the sender by e-mail at the address shown.  This e-mail transmission may contain confidential information.  This information is intended only for the use of the individual(s) or entity to whom it was intended even if addressed incorrectly.  Please delete from your files if you are not the intended recipient.  Thank you for your compliance.

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2004 by CIGNA

LINA/Cleiland 0795

## Disability Benefit Adjustment

Version Date: 1/04/05

Date: 7/14/2005

Claimant Name: Cathy Cleiland

Minimum Benefit: $   50.00

Reason for Adjustment:    SSDI award

Policyholder: Temple Inland

Policy Number: FLK 020104

| What has been Paid | Corrected Payments |
|---|---|

**What has been Paid**

From: 1/10/03   Through: 1/10/03   # of Months: 1

| Gross Benefit | $2,500.00 | | |
|---|---|---|---|
| Other Benefits: | | | |
| Tax Year: 2003 | | | |
| | | | Totals this period: |
| Net Benefit | $2,500.00 | X # of Months: | $2,500.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $2,500.00 | | $2,500.00 |

From: 1/10/03   Through: 01/10/04   # of Months:

| Gross Benefit | $2,500.00 | | |
|---|---|---|---|
| Other Benefits: | | | |
| Tax Year: 2004 | | | |
| | | | Totals this period: |
| Net Benefit | $2,500.00 | X # of Months: | $2,500.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $2,500.00 | | $2,500.00 |

From: 01/10/04   Through: 01/09/05   # of Months: 12

| Gross Benefit | $2,500.00 | | |
|---|---|---|---|
| Other Benefits: | | | |
| Tax Year: 2004 | | | |
| | | | Totals this period: |
| Net Benefit | $2,500.00 | X # of Months: | $30,000.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $2,500.00 | | $30,000.00 |

From: 01/10/05   Through: 07/09/05   # of Months: 6

| Gross Benefit | $2,500.00 | | |
|---|---|---|---|
| Other Benefits: | | | |
| Tax Year: 2005 | | | |
| | | | Totals this period: |
| Net Benefit | $2,500.00 | X # of Months: | $15,000.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $2,500.00 | | $15,000.00 |

From:   Through:   # of Months:

| Gross Benefit | | | |
|---|---|---|---|
| Other Benefits: | | | |
| Tax Year: | | | |
| | | | Totals this period: |
| Net Benefit | $0.00 | X # of Months: | $0.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $0.00 | | $0.00 |

From:   Through:   # of Months:

| Gross Benefit | | | |
|---|---|---|---|
| Other Benefits: | | | |
| Tax Year: | | | |
| | | | Totals this period: |
| Net Benefit | $0.00 | X # of Months: | $0.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $0.00 | | $0.00 |

**Corrected Payments**

From: 1/10/03   Through: 1/09/03   # of Months: 1

| Gross Benefit | $2,500.00 | | |
|---|---|---|---|
| Other Benefits: | $1,217.00 ssdi award | | |
| Tax Year: 2003 | | | |
| | | | Totals this period: |
| Net Benefit | $1,283.00 | X # of Months: | $1,283.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $1,283.00 | | $1,283.00 |

From: 1/10/03   Through: 01/09/04   # of Months:

| Gross Benefit | $2,500.00 | | |
|---|---|---|---|
| Other Benefits: | $1,217.00 ssdi award | | |
| Tax Year: 2004 | | | |
| | | | Totals this period: |
| Net Benefit | $1,283.00 | X # of Months: | $1,283.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $1,283.00 | | $1,283.00 |

From: 01/10/04   Through: 01/09/05   # of Months: 12

| Gross Benefit | $2,500.00 | | |
|---|---|---|---|
| Other Benefits: | $1,264.00 ssdi award | | |
| Tax Year: 2004 | | | |
| | | | Totals this period: |
| Net Benefit | $1,236.00 | X # of Months: | $14,832.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $1,236.00 | | $14,832.00 |

From: 01/10/05   Through: 07/09/05   # of Months: 6

| Gross Benefit | $2,500.00 | | |
|---|---|---|---|
| Other Benefits: | $1,264.00 ssdi award | | |
| Tax Year: 2005 | | | |
| | | | Totals this period: |
| Net Benefit | $1,236.00 | X # of Months: | $7,416.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $1,236.00 | | $7,416.00 |

From:   Through:   # of Months:

| Gross Benefit | | | |
|---|---|---|---|
| Other Benefits: | | | |
| Tax Year: | | | |
| | | | Totals this period: |
| Net Benefit | $0.00 | X # of Months: | $0.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $0.00 | | $0.00 |

From:   Through:   # of Months:

| Gross Benefit | | | |
|---|---|---|---|
| Other Benefits: | | | |
| Tax Year: | | | |
| | | | Totals this period: |
| Net Benefit | $0.00 | X # of Months: | $0.00 |
| - FICA | | | $0.00 |
| - FIT | | | $0.00 |
| Payment Amount: | $0.00 | | $0.00 |

LINA/Cleiland 0796

| | What has been Paid | | | Corrected Payments | |
|---|---|---|---|---|---|
| Totals | Benefits Paid | $50,000.00 | Totals | Corrected Benefits | $24,814.00 |
| | FICA Withheld | $0.00 | | Corrected FICA | $0.00 |
| | FIT Withheld | $0.00 | | Corrected FIT | $0.00 |
| | Total of all payments: | $50,000.00 | | Total of Corrected Payments: | $24,814.00 |

**Overpayment Totals**

| | | | |
|---|---|---|---|
| Case Manager: Kelli Archacki | Credit for Attorney Fees (if applicable) : | | |
| Phone Number: 972.952.1294 | Overpayment Total : | $25,186.00 | |
| Claim Office: D212 | : | $0.00 | |
| | : | $0.00 | |

LINA/Cleiland 0797

7/14/2005

## OVERPAYMENT RECOVERY TAX FORM

This form MUST be completed upon receipt of an overpayment. Please FAX completed form to the Tax Compliance Unit, W-49.
FAX # 1-860-226-8512    TELEPHONE # 1-800-248-7468.
Please note that this form cannot be processed unless all applicable information is provided.    (Revised 5/97)

Account / Policy #          FLK 020104          Claimant Name:          Cathy Clelland                                    SS #

**Reason for overpayment:**

☒ Social Security Award          ☒ Workers Compensation          ☒ Other (please explain)
☐ Return to Work                 ☒ No-Fault Wage-Loss Benefits.   ☒ NY State

Has the overpayment been recovered in full?  Y / N          If no, are full or partial benefits being withheld?
Refund check amount _____                            Date of refund
Amount Withheld     _____                            From _____          07/09/05

Overpayment period          From:          11/10/03          Through:          07/09/05

***PLEASE BE SURE THAT THE REFUND AMOUNT REPRESENTS ONLY THOSE PAYMENTS ISSUED WITHIN THE TAX YEAR INDICATED.
IT IS IMPORTANT THAT THE PAYMENT DATE AND NOT THE PERIOD COVERED IS USED SINCE THE PAYMENT DATE DETERMINES THE TAX
YEAR IN WHICH THE BENEFIT WAS REPORTED. ***
Refund Benefit and Tax Information by year:

| | Benefit Amount | Overwithheld FICA | Overwithheld FIT | Refund |
|---|---|---|---|---|
| a.) Refund applicable to CURRENT Tax year : | | | | |
| 2005 | $7,584.00 | $0.00 | $0.00 | *** |
| b.) Refund applicable to prior tax years: | (Letter must be sent to claimant outlining each prior year's refund amount) | | | |
| 2004 | $16,385.00 | n/a | n/a | |
| 2003 | $1,217.00 | n/a | n/a | |
| 2002 | $0.00 | n/a | n/a | |
| 2001 | $0.00 | n/a | n/a | |
| 2000 | $0.00 | n/a | n/a | |
| c.) Credit for Attorney's Fees (if applicable) | $0.00 | | | |
| d.) Gross Amount of Over-payment (a+b-c) | $25,186.00 | $0.00 | $0.00 | $0.00 |

Case Manager:          Kelli Archacki          Phone Number:          972.952.1294          Field Claim Office:   D212

LINA/Cleiland 0798

● ●

# Overpayment Recovery Team
## Referral Form
### E-Mail to: CGI Overpayment Recovery Unit

Referrer's Name:     Kelli Archacki          Telephone # 972.952.1294

Date of Referral:     07/14/2005

Product Type:     Life ☐     Accident ☐     Disability ☒
(Please check box)

Claim Status:     Open ☒     Closed ☐
(Please check box)

Reason for Overpayment:     SSDI ☒     Pension ☐     RTW ☐
(Please check box)     WC ☐     Other: ☐ _____

Claimant Name:     Cathy Cleiland
Claimant SSN:
Claimant Address:     _____
                     Clio, AL 36017
Claimant Telephone #:     _____

CIGNA Vendor Name:     Allsup ☐     A2K ☒     Other: ☐ _____
(Please check box)

If Payee other than Claimant:     _____
Payee Address:     _____
Payee Telephone #:     _____

Reimbursement Agreement in file:     Yes ☐     No ☒
(Please check box)

If applicable, date Claimant notified of OP:     _____
If applicable, date Case Manager notified Claimant of OP:     _____
If applicable, date Case Manager sent OP Letter to Claimant:     _____

**Please be sure to e-mail a copy of the Overpayment Letter, if applicable, along
with this Referral Form to the CGI Overpayment Recovery Unit.**
Comments:

LINA/Cleiland 0799

Cleiland, Cathy Policy: FLK 20104 Policy Holder: Temple Inland DOB: 7/11/1957          Page 1 of 1

**Archacki, Kelli 212**

| | |
|---|---|
| **From:** | Tammy Isaak [tammy.isaak@advantage2k.com] |
| **Sent:** | Tuesday, July 05, 2005 1:17 PM |
| **To:** | Archacki, Kelli 212 |
| **Cc:** | Brady, Chris 212; CGI Overpayment Recovery Unit |
| **Subject:** | Cleiland, Cathy Policy: FLK 20104 Policy Holder: Temple Inland DOB: |

<<Cleiland, Cathy.rtf>> <<Cleiland, Cathy FACT Query.pdf>> <<OP Calc Sheet.xls>> <<Referral Overpayment Form.doc>>

Please complete the attached LTD Overpayment Calculation Sheet and return it to Advantage 2000 Benefit Coordination Team (RecoveryTeam@advantage2k.com) within 72 hours of receipt. In addition, the attached CGI Recovery Team Referral Guide is to be completed and forwarded to the CGI Recovery Team along with a copy of the completed calculation sheet. Once received, our Benefit Coordination Team will contact the claimant to coordinate the repayment of their LTD Overpayment.

**PLEASE NOTIFY ADVANTAGE 2000 IMMEDIATELY IF YOU HAVE REASON TO BELIEVE THE LTD CLAIM WILL CLOSE WITHIN THE NEXT TWO MONTHS**

Thank you for allowing us to be of service.

**Tammy Isaak**
Awards Processing Specialist
tammy.isaak@advantage2k.com
**Advantage 2000 Consultants, Inc.**
One Corporate Drive
Swansea, IL 62226

Toll Free: 1-800-580-5299

CONFIDENTIALITY NOTICE:

If you are not the intended recipient and have received this e-mail in error, then please notify the sender immediately. This e-mail transmission may contain confidential or sensitive information that is for use of the intended recipient only. Please delete this e-mail from your files if you are not the intended recipient. Thank you for your compliance.

7/11/2005

# ADVANTAGE 2000 CONSULTANTS, Inc.

Telephone 1-800-899-3433
Fax 1-314-845-6141

Date:   7/5/2005

To:  Kelli Archacki
CIGNA Group Insurance - Dallas TX FCO

From:  Tammy Isaak for Dan Schulte of ADVANTAGE 2000 Consultants Inc

## SOCIAL SECURITY DISABILITY ENTITLEMENT
## CONFIRMATION

RE:  **Cathy Cleiland**        SSN: _____        FLK 20104
Phone: _____        Level of Decision = ALJ Hearing

---

**PLEASE NOTIFY ADVANTAGE 2000 IMMEDIATELY IF YOU HAVE REASON TO
BELIEVE THE LTD CLAIM WILL CLOSE WITHIN THE NEXT TWO MONTHS**

---

**Entitlement Data Based On:** 07/01/2005 - Fact Query
**AWARD PROCESSED DATE:** 06/24/2005

| | |
|---|---|
| Date of Disability Established by SS: | 05/14/2003 |
| Date of Entitlement to SS Disability: | 11/01/2003 |
| Retroactive Benefits paid: | $24,600.00 |
| This represents payment through: | 05/01/2005 |

**Diagnosis Code:** 7240 - Disorders of Back (discogenic and degenerative)
**Secondary Diagnosis Code:** 2500 - Diabetes Mellitus

**PRIMARY BENEFIT HISTORY:**

| Date | PIA | Benefit Paid | Basis |
|---|---|---|---|
| 11/2003-11/2003 | $1,217.70 | $1,217.00 | Original Award |
| 12/2003-12/2003 | $1,243.02 | $1,243.00 | Cost of Living Adjustment |
| 01/2004-11/2004 | $1,290.30 | $1,290.00 | Additional Earnings Increase |
| 12/2004-Cont'g | $1,325.10 | $1,325.00 | Cost of Living Adjustment |

---

**Amounts for Offset Consideration:** *[Your Jurisdiction per Plan Provisions]*
**Primary -**

| | | | |
|---|---|---|---|
| 11/2003 – 12/2003 | @ | $1,217.00 | |
| 01/2004 – Cont'g | @ | $1,217.00 + $47.00 Additional Earnings Increase | |

---

**No Dependents are Noted!**

LINA/Cleiland 0801

_____

**_IF CHECKED_**, THE FOLLOWING SPECIAL COMMENT APPLIES TO THIS CASE

_____ Benefits for dependents are payable on this claim, but have not yet been processed by SSA.

_____ The monthly benefits payable from SSA have been reduced to the amounts shown abo because the worker receives workers compensation payments  or some other public disability benefit based on employment that was not covered by F.I.C.A. tax provisions

__X__ **The SSA disability benefit shown above was increased to include additional earnings in the primary insurance amount calculation.**

_____ SSI Windfall Offset Provisions Involved.  Retroactive Benefits Not Released

THANK YOU FOR THIS REFERRAL !

LINA/Cleiland 0802

*** REC 2005182  085854 HA711CE0 1A70  CIPQYA4   PQA4   (F-1A7 )   ***

```
FACT    DTE:07/01/05 SSN:            BIC:A    ████████ UNIT:ADVAN2 PG: 001
STATUS  MBR YES LOU-07/01 DATA FILES YES LOU-07/01 SSACCS NO  LOU-06/30
        CPS NO
ACCOUNT PCOC-7 NOP-01 SP-F CIS-N TAC-D LUM-07 LMM-07/05 RCC-5 ERC-03 FLI-M
        SEC-D CDY-0 DRAMS READ
INSURED CLAIM TYPE-DISABILITY DATE OF FILING-10/10/2003 FIRST MET-04/1998
        LAST MET-12/2008 WAIT PER START-06/2003 NONX NO GMS USED-04/1998
        EXC NO GMS USED-04/1998  20/40 EXCLUSION-TEST MET
        20/40 NON EXCL-TEST MET   DIB QC REQUIRE-20  DIB QC EARNED-40
        FULL INS EXCL-TEST MET  FULL INS NONEXCL-TEST MET
        FULL QC REQUIRE-24  FULL QC EARNED-40  CURR QC EARNED-00
        HLTHBEN QC EARN-00
PMT CYC CYI-3 PCEFD-02/17/2004 PCCOM-02/04 PCCR-I
PRIMARY CATHY K CLEILAND DOB-        LSPA-$0.00
PIA HIS 11/03 $1217.70 L2  FMAX-$1826.50D ELY-03 IME-$2707 YOC-00
        12/03 $1243.20 L2K FMAX-$1864.80D ELY-03 IME-$2707 YOC-00
        01/04 $1290.30 L22 FMAX-$1935.50D ELY-03 IME-$2851 YOC-00
        12/04 $1325.10 L2K FMAX-$1987.70D ELY-03 IME-$2851 YOC-00
PAYMENT PIC-A MPA-$1325.00 DOC-628 SCC-01020  RD-06/24/05 LAP-T PSC-C
        F/LLOA-2/3  2DPC-082 EDA-06/24/05 EDL-06/23/05
TELE NO BTN-251-342-5545 BTC1-O CPND-06/05
PAYEE   CATHY K CLEILAND
ADDRESS                   MONROEVILLE AL 36017-8508
BANK    ████████████████████61 BDCD-06/23/05
SCH PAY PAID-06/24/2005 PMA-$0.00 THRU 05/05 CMA-$1325.00 FOR 06/05 SPI-P
        PPI-M
HLD CHK $1325.00 FOR 06/05 TOH-1 SPM-TAPE
BENEFIT BIC-A  CATHY K CLEILAND SB-F DOB-       B  DOEI-11/03 DOEC-11/
        ABN-3TFX LAF-C  MBP-$1325.00 DRD-06/24/05 LANG-E TOC-5
HBAD01  HAP-01 HEDA-06/23/05
BENE ENT START-11/2003 DATE OF FILING-10/10/2003 APP RECEIPT-00/00/0000
        ID CODE-A  CUR ENT CODE-DISABLED  FULL RETIRE AGE-01/2024
BEN DENY DATE OF FILING-10/15/2003 APP RECEIPT-00/00/0000 ID CODE-A
        CUR ENT CODE-DISABLED  DIB ONSET-05/14/2003  DISALOW/DEN RSN-0E3
        LEVEL OF DENIAL-INITIAL  CONVERTED
DIB     DDO-05/14/03 LOD-1 BDC-E3 DSD-02/04

        DDO-05/14/03 DIG-7240 SDIG-2500 DOED-11/03 DSD-06/05

CITIZEN START-07/11/1957 COUNTRY-UNITED STATES PROVEN
HISTORY 11/03 $1217.70 $ 0.00 700  01         R   $1217.00
        12/03 $1243.20 $ 0.00 200  01         R   $1243.00
        01/04 $1290.30 $ 0.00 300  01         R   $1290.00
        12/04 $1325.10 $ 0.00 100  01         R   $1325.00

+++ TRANS UPDATED THRU 07/01 +++

TRANS   RD-6/23/05 LAP-X  MCS PIC-A
        RD-6/24/05 LAP-TB  TITLE II PROCESS PIC-A
```

LINA/Cleiland 0803

FW: Claimant: Cathy Cleiland – Administrative Law Judge Hearing - Policy ID #: FLK 2...    Page 1 of

**Archacki, Kelli 212**

*Kelly*
*Clark*

| | |
|---|---|
| **From:** | Trudy Wagner [trudy.wagner@advantage2k.com] |
| **Sent:** | Thursday, June 16, 2005 8:09 AM |
| **To:** | Archacki, Kelli 212 |
| **Subject:** | FW: Claimant: Cathy Cleiland – Administrative Law Judge Hearing - Policy ID #: FLK 20104 - DOB: |

Hello Kelli,

This is the information I sent to Yvonne. Are you the new Claim Manager for Ms. Cleiland?

Thanks,

Trudy
-----Original Message-----
**From:** Trudy Wagner
**Sent:** Tuesday, May 31, 2005 2:18 PM
**To:** Yvonne Smith (yvonne.smith@cigna.com)
**Subject:** Claimant: Cathy Cleiland - Administrative Law Judge Hearing - Policy ID #: FLK 20104 - DOB: 7/11/1957

05/31/2005 2:16:02 PM
DOB:
Policy ID #: FLK 20104
Claimant: Cathy Cleiland - Administrative Law Judge Hearing
Client: CIGNA Group Insurance – Dallas TX FCO / Yvonne Smith (800) 352-0611 - yvonne.smith@cigna.com

**Hello Yvonne,**

Attached is the Notice of Decision – Fully Favorable OTR for Ms. Key. We will forward the payment information once received. Dan Schulte is the Case Manager handling this claim. If you have any questions, you may reach Mr. Schulte at (800)580-5299 ext. 123.

<<FF OTR Dec 5-26-05.pdf>>
Thank you,

**Trudy Wagner**
**Case Manager Assistant**
**Advantage 2000 Consultants**
**One Corporate Drive**
**Swansea, IL 62226**
**(800)580-5299 x144  (618)212-1144**
**Fax: (314)894-4891**
**trudy.wagner@advantage2k.com**

6/16/2005

LINA/Cleiland 0804

CONFIDENTIALITY NOTICE:

If you are not the intended recipient and have received this e-mail in error,
then please notify the sender immediately.  This e-mail transmission may contain
confidential or sensitive information that is for use of the intended recipient on.
Please delete this e-mail from your files if you are not the intended recipient.
Thank you for your compliance.

6/16/2005



**SOCIAL SECURITY ADMINISTRATION**

Refer To: -

Office of Hearings and Appeals
SSA/OHA Hearing Office
550 Government Street
Suite 200
Mobile, AL 36602-2010

Date: MAY 2 6 2005

Cathy A. Key

Clio, AL 36017

### NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case.  Please read this notice and the decision carefully.

**This Decision is Fully Favorable To You**

Another office will process the decision and send you a letter about your benefits.  Your local Social Security office or another may first ask you for more information.  If you do not hear anything for 60 days, contact your local office.

**The Appeals Council May Review The Decision On Its Own**

The Appeals Council may decide to review my decision even though you do not ask it to do so.  To do that, the Council must mail you a notice about its review within 60 days from the date shown above.  Review at the Council's own motion could make the decision less favorable or unfavorable to you.

**If You Disagree With The Decision**

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

**How to File an Appeal**

To file an appeal you or your representative must request that the Appeals Council review the decision.  You must make the request in writing.  You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office.  You may also mail your request right to the **Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255.**  Please put the Social Security number shown above on any appeal you file.

**See Next Page**

LINA/Cleiland 0806

Cathy A. Key (              )                                    Page 2 of 3

## Time to File an Appeal

To file an appeal, you must file your request for review within 60 days from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period. The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

## Time to Submit New Evidence

You should submit any new evidence you wish to the Appeals Council to consider with your request for review.

## How an Appeal Works

Our regulations state the rules the Appeals Council applies to decide when and how to review a case. These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It will review your case if one of the reasons for review listed in our regulation exists. Section 404.970 of the regulation lists these reasons.

Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case. The Council may also send it back to an Administrative Law Judge for a new decision.

## The Appeals Council May Review The Decision On Its Own

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

## If No Appeal and No Appeals Council Review

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

See Next Page

LINA/Cleiland 0807

Cathy A. Key (            )                                    Page 3 of 3

**Your Right To Representation In An Appeal**

You may have a lawyer or other person help you in any appeal you file with the Appeals Council. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with an appeal.

If you get someone to help you with an appeal, you or that person should let the Appeals Council know. If you hire someone, we must approve the fee before he can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past-due insurance benefits to pay towards the fee.

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office. If you visit an office, please bring this notice and decision with you. The telephone number of the local office that serves your area is (251)246-6018. Its address is Social Security, 4249 N College Ave, Jackson, AL 36545.

Ricardo M Ryan
Administrative Law Judge

cc: Dan Schulte
One Corporate Drive
Swansea, IL 62226

LINA/Cleiland 0808

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings and Appeals**

**DECISION**

**IN THE CASE OF**                                **CLAIM FOR**

                                                 Period of Disability and
Cathy A. Key                                     Disability Insurance Benefits
(Claimant)


(Wage Earner)                                    (Social Security Number)


**PROCEDURAL HISTORY**

On October 10, 2003, the claimant protectively filed an application for a period of disability and
Disability Insurance Benefits. This case is before the Administrative Law Judge on a request for
a hearing filed by the claimant, who is dissatisfied with the previous determination at the state
agency level which found that she was not disabled. Dan Shulte, a non-attorney, represents the
claimant in this matter. Prior to the scheduling of a hearing in this matter, the undersigned
arranged for a disability evaluation to further ascertain the claimant's capacity to perform work-
related activities (Exhibit 28F). Based on same, the undersigned is convinced that a full hearing
is not necessary in this matter. Instead, a "wholly favorable" decision may be issued in this
matter with respect to all disability issues in dispute based on information already available for
review (20 C.F.R. § 404.948(a)). The following discussion will highlight the evidentiary support
contained in the record for reaching such a conclusion.


**ISSUES**

The issues in this case are whether the claimant is under a disability as defined by the Social
Security Act and if so, when the disability commenced, the duration of the disability, and
whether the insured requirements of the Act are met for the purpose of entitlement to a period of
disability and disability insurance benefits.

**HOLDING**

After a thorough evaluation of the record, the Administrative Law Judge concludes that the
claimant has been disabled since her alleged onset date of disability, i.e., May 14, 2003. The
claimant meets the insured status requirements of the Social Security Act through December 31,
2008.

LINA/Cleiland 0809

## LAWS AND REGULATIONS

Section 216(i) of the Social Security Act provides for the establishment of a period of disability, and Section 223 provides for the payment of disability insurance benefits where the requirements specified therein are met.

## EVALUATION OF THE EVIDENCE

The claimant was born on July 11, 1957, making her forty-seven (47) years of age. She has a high school education and four years of college education. In her application for benefits, the claimant alleged that she is disabled due to "multiple back surgeries" and "low back pain." The claimant expressed that these conditions limited her ability to work because she can't walk for more than thirty minutes and can only stay in one position for twenty minutes. In addition, the claimant stated that pain radiated down her left leg and the lower half of her body is very weak. The claimant expressed that she stopped working due to her conditions on May 14, 2003.

A claimant is considered disabled under the Social Security Act when she is unable to engage in any substantial gainful activity because of a physical or mental impairment, or combination thereof, which is expected to last for a continuous twelve month period or result in death. The Commissioner has established a five-step sequential evaluation process by which to evaluate the extent of a claimant's impairment(s) in determining whether the statutory definition of "disability" is met.

Briefly, the sequential evaluation process requires consideration of :(1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly affects her ability to work; (3) whether her impairment meets a listing; (4) whether the claimant can return to her past relevant work; and (5) whether, if the claimant cannot perform her past relevant work, she can perform other work (20 CFR section 404.1520).

The first inquiry in the disability evaluation process involves a determination as to whether the claimant has engaged in substantial gainful activity. The undersigned finds that the claimant has not engaged in work activity since her alleged disability onset date of May 14, 2003. Therefore, a determination in the present case cannot be based on work activity alone.

The evidence establishes that the claimant is suffering from a combination of impairments which is more than a slight abnormality and which has more than a minimal effect on her ability to work, irrespective of age, education and work experience. The undersigned finds at step two of the evaluation process that the claimant has the following impairments which are considered to be "severe" under Social Security Regulations: status post C4-5, C5-6, C6-7 anterior cervical fusions, status post L4-5 diskectomy and L4-5 internal fixation, lumbar radiculitis, insulin dependent diabetes, status post right carpal tunnel release and right shoulder bursitis.

LINA/Cleiland 0810

Cathy A. Key (                )                                    Page 3 of 6

Although the claimant has impairments which are considered to be "severe," as set forth above, they are not attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments (Appendix 1 to Subpart P, 20 C.F.R. Part 404).

The medical evidence reflects that the claimant has a history of treatment for lumbar spinal instability with radiculopathy (Exhibit 20F)(Exhibit 22F). On November 17, 2003, Mark N. Hadley, M.D., a neurosurgeon, examined the claimant based on a referral from the claimant's treating physician, Dr. John Hackman (Exhibit 21F). Dr. Hadley noted that the claimant had previously had a "good bit of spinal surgery performed" to include three separate anterior cervical procedures, a lumbar spinal surgery in 2002 and a second spinal procedure on July 16, 2003. He noted that the claimant continued to experience intractable pain despite the previous surgeries and moved with precision so as to avoid injury. Dr. Hadley reviewed the claimant's MR studies and opined that she had developed lumbar spinal instability with recurrent nerve root compression. He opined that she should undergo an operative procedure to provide decompression, internal fixation and fusion. Dr. Hadley opined that this procedure would not totally eliminate the claimant's symptoms; rather she would have "an opportunity to benefit" from same. On December 18, 2003, Dr. Hadley performed a L4-5 laminectomy and diskectomy with L4-5 internal fixation and fusion and L4-5 posterior lumbar interbody fusion (Exhibit 22F). Two months post surgery, Dr. Hadley examined the claimant and noted that she continued to experience pain despite surgery and pain medications. He additionally noted that she continued to experience burning sensations and residual left side weakness. He noted his discussion with the claimant that her symptoms were not "positive signs for complete recovery." The record reflects that the claimant participated in pain management therapy at the Center for Pain of Montgomery (Exhibit 26F). On March 29, 2004, treatment records reflected that the claimant presented with complaints of back and leg pain judged to be an eight on a scale of one to ten. Treatment notes reflected that the claimant had been prescribed Robaxin, Lortab and Neurontin medications to alleviate her symptom of pain.

The undersigned finds that a determination in this case cannot be based on medical considerations alone. Therefore, it is necessary to proceed to steps four and five of the sequential evaluation. Steps four and five require a determination of whether the claimant has, during the time at issue, retained the residual functional capacity to perform her past relevant work, and if not, to perform other work existing in significant numbers in the national economy consistent with her age, education and past work experience. In order to make these determinations, it is necessary to assess the claimant's mental and physical residual functional capacity. Residual functional capacity is the most that a claimant can still do despite limitations caused by her impairments.

On April 12, 2005, Keith G. Vanderzyl, M.D., examined the claimant and completed a report to the record (Exhibit 28F). Dr. Vanderzyl noted that the claimant had in the past had numerous

LINA/Cleiland 0811

Cathy A. Key (        )                                      Page 4 of 6

surgeries to include C5-6 disk fusion, a C6-7 anterior cervical fusion, a C4-5 cervical fusion, a diskectomy at L4-5, and a PLIF surgery. He noted that she had participated in pain management therapy. In addition, he noted that she continued to experience recurrent discomfort, to include, burning dysesthesias, posterior occipital headaches and symptoms of leg and back pain. Dr. Vanderzyl noted that her current medications included Methadone, Robaxin, Neurontin, Klonopin and Effexor. He diagnosed the claimant as follows: status post C4-5, C5-6, C6-7 and anterior cervical fusions with anterior curve leading to now significant degenerative changes at the atlantal axis joint with marked restriction of motion and constant pain and numbness in both arms from probably anterior cord syndrome and known spinal stenosis and status post L4-5 diskectomy times two followed by L4-5 PLIF operation with internal fixation. Dr. Vanderzyl indicated that the claimant's symptoms were not alleviated with "chronic medication." He opined that she was "totally disabled from both her lumbar and cervical problems which will not resolve and will probably worsen with time with significant posterior column deficits leading to a loss of walking stability and bowel and bladder incontinence." Dr. Vanderzyl completed a medical source opinion (physical) and opined that the claimant could stand, walk or sit for a total of thirty minutes at one time. He opined that the claimant could not lift any weight at all. He opined that the claimant could never climb, balance, stoop, kneel, crawl, drive automobile equipment or be exposed to extreme weather conditions.

The Administrative Law Judge finds the claimant's statements regarding her functional limitations and pain credible and consistent with the record when considered in its entirety. The claimant's credibility is bolstered by her excellent work history. Although the issue as to whether a claimant is disabled is one reserved to the Commissioner, the undersigned finds persuasive Vanderzyl's findings regarding the extent to which the claimant's physical impairments and symptoms significantly interfere with her daily activities and her performance of work activity. His opinion regarding the extent to which the claimant's physical impairments preclude her performance of work activity to any appreciable degree is well supported by the record as a whole.

In accordance with Social Security Ruling 96-6p, the Administrative Law Judge considered the administrative findings of fact made by the State agency medical physicians and other consultants. These opinions were weighed as statements from non-examining experts. The undersigned notes that medical records received after their review revealed a worsening of the claimant's condition (Exhibit 28F).

Based on the foregoing and evidence of record, the undersigned finds that the claimant does not retain the residual functional capacity to perform even the minimal exertional or non-exertional demands of any level of work on a regular and sustained basis. The undersigned finds that the combination of the claimant's physical impairments and symptoms precludes her sustained performance of work activity at any exertional level (SSR 83-14)(SSR 96-9).

LINA/Cleiland 0812

Cathy A. Key (          )                                          Page 5 of 6

With the above-stated residual functional capacity, the undersigned finds at step four of the disability evaluation process, that the claimant is incapable of performing her past relevant work as a human resource manager. Since the claimant cannot perform her past relevant work, the burden of proof shifts to the Commissioner to show, at step five of the disability evaluation process, that the claimant can perform other jobs which exist in significant numbers in the national economy given her impairments, residual functional capacity and vocational profile.

The claimant is a younger individual with a high school education and four years of college education. She has past relevant work as a human resource manager; however is no longer able to perform this work. The claimant has a residual functional capacity which has rendered her unable to perform even the minimal exertional and non-exertional demands of work on a regular and sustained basis. The Medical-Vocational Guidelines of the Regulations recognize that an individual's occupational base may become so eroded by exertional and non-exertional limitations that she becomes functionally unable to perform most of the jobs existing in the national economy at the sedentary level of exertion (20 CFR, Part 404, Subpart P, Appendix 2, Section 201.00(h)(3)). Therefore, because the claimant can perform significantly less than a full range of sedentary-type work, and giving great weight to the opinion of Dr. Vanderzyl; the Administrative Law Judge concludes, at step five of the disability evaluation process, that other jobs which the claimant is capable of performing do not exist in significant numbers in the national economy.

Accordingly, the Administrative Law Judge finds that the claimant has been disabled since her alleged disability onset date of May 14, 2003.

## FINDINGS

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

1.    The claimant has not engaged in any substantial gainful activity since her alleged disability onset date of May 14, 2003.

2.    The claimant's impairments which are considered to be "severe" under the Social Security Act are as follows: status post C4-5, C5-6, C6-7 anterior cervical fusions, status post L4-5 diskectomy and L4-5 internal fixation, lumbar radiculitis, insulin dependent diabetes, status post right carpal tunnel release and right shoulder bursitis.

3.    The claimant's impairments do not, singly or in combination, meet or equal in severity the appropriate medical findings contained in 20 CFR Part 404, Appendix 1 to Subpart P (Listing of Impairments).

LINA/Cleiland 0813

Cathy A. Key (          )                                    Page 6 of 6

4.   The claimant's allegations of functional limitations and pain are considered credible.

5.   The claimant retains the residual functional capacity to perform no work on a regular and continuing basis.

6.   The claimant is unable to perform her past relevant work as a human resource manager.

7.   The claimant was forty-five(45) years old (a younger individual) on the date her disability began. The claimant is currently forty-seven (47) (a younger individual age 18-49). The claimant has a high school education and four years of college education.

8.   Based upon the claimant's residual functional capacity, and vocational factors, there are no jobs existing in significant numbers which she can perform. The combination and severity of the claimant's physical impairments, as well as symptom of pain, has reduced her functional capacity to a point where no work exists in significant numbers in the national economy which she can perform on a regular and sustained basis at acceptable levels of performance. (Social Security Rulings 83-14 and 96-9p).

9.   The claimant met the disability insured status requirements of the Social Security Act on the date her disability began, and through December of 2008.

10.  The claimant has been under a disability as defined by the Social Security Act and Regulations since her alleged disability onset date of May 14, 2003.

## DECISION

Based on the Title II application filed on October 10, 2003, the claimant is entitled to a period of disability commencing May 14, 2003 and to disability insurance benefits pursuant to Sections 216(i) and 223 of the Social Security Act, as amended. The claimant's disability has continued at least through the date of this decision.

Ricardo M Ryan
Administrative Law Judge

MAY 2 6 2005
Date

LINA/Cleiland 0814

**Kelli Archacki**
Claim Manager

June 17, 2005

**CIGNA Group Insu**
Life · Accident · Disability

**CATHY CLEILAND**

**CLIO, AL 36017**

Routing 212
12225 Greenville Ave
Suite 1000
Dallas, TX 75243
Telephone 800.352.0611, E
1294
Facsimile 860.731.3413
Kelli.Archacki@cigna.com

Claimant's Name:              Cathy Cleiland
Policy Number:               FLK 20104
Policyholder:                Temple Inland
Administered by:             Life Insurance Company of North America

Dear Ms. Cleiland:

We are reviewing your claim for Long Term Disability Benefits and need some additional information.  According to our records we have not received the information that was requested on May 18, 2005.

Please complete and sign the enclosed Disability Questionnaire and Disclosure Authorization form and return it to us no later than June 30, 2005.  A return envelope is enclosed for your convenience.

Thank you very much for your assistance.  If you have any questions, please call me toll free at 800.352.0611, extension 1294.  I can be reached Monday through Friday, between the hours of 8:00 a.m. and 4:30 p.m. Central Time.  If you happen to get my voice mail, please leave a message and your call will be returned within one business day.

Sincerely,

Kelli Archacki
Claim Manager

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

**Smith, Yvonne W 212**

| | |
|---|---|
| **From:** | Trudy Wagner [trudy.wagner@advantage2k.com] |
| **Sent:** | Tuesday, May 31, 2005 2:18 PM |
| **To:** | Smith, Yvonne W 212 |
| **Subject:** | Claimant: Cathy Cleiland - Administrative Law Judge Hearing - Policy ID #: FLK 20104 - DOB: |

05/31/2005 2:16:02 PM
DOB:
Policy ID #: FLK 20104
Claimant: Cathy Cleiland - Administrative Law Judge Hearing
Client: CIGNA Group Insurance - Dallas TX FCO / Yvonne Smith (800) 352-0611 - yvonne.smith@cigna.com

**Hello Yvonne,**

Attached is the Notice of Decision – Fully Favorable OTR for Ms. Key. We will forward the payment information once received. Dan Schulte is the Case Manager handling this claim. If you have any questions, you may reach Mr. Schulte at (800)580-5299 ext. 123.

<<FF OTR Dec 5-26-05.pdf>>
Thank you,

## Trudy Wagner

Case Manager Assistant
Advantage 2000 Consultants
One Corporate Drive
Swansea, IL 62226
(800)580-5299 x144  (618)212-1144
Fax: (314)894-4891
trudy.wagner@advantage2k.com

CONFIDENTIALITY NOTICE:

If you are not the intended recipient and have received this e-mail in error, then please notify the sender immediately. This e-mail transmission may contain confidential or sensitive information that is for use of the intended recipient only Please delete this e-mail from your files if you are not the intended recipient. Thank you for your compliance.

06/01/2005

LINA/Cleiland 0816



**SOCIAL SECURITY ADMINISTRATION**

Refer To:

Office of Hearings and Appeals
SSA/OHA Hearing Office
550 Government Street
Suite 200
Mobile, AL 36602-2010

Date: MAY 2 6 2005

Cathy A. Kev

Clio, AL 36017

## NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

### This Decision is Fully Favorable To You

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

### The Appeals Council May Review The Decision On Its Own

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

### If You Disagree With The Decision

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

### How to File an Appeal

To file an appeal you or your representative must request that the Appeals Council review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the **Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255.** Please put the Social Security number shown above on any appeal you file.

See Next Page

LINA/Cleiland 0817

Cathy A. Key (                    )                                    Page 2 of 3

## Time to File an Appeal

To file an appeal, you must file your request for review **within 60 days** from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period. The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

## Time to Submit New Evidence

You should submit any new evidence you wish to the Appeals Council to consider with your request for review.

## How an Appeal Works

Our regulations state the rules the Appeals Council applies to decide when and how to review a case. These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It will review your case if one of the reasons for review listed in our regulation exists. Section 404.970 of the regulation lists these reasons.

Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case. The Council may also send it back to an Administrative Law Judge for a new decision.

## The Appeals Council May Review The Decision On Its Own

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

## If No Appeal and No Appeals Council Review

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

See Next Page

LINA/Cleiland 0818

Cathy A. Key (                                                    Page 3 of 3

**Your Right To Representation In An Appeal**

You may have a lawyer or other person help you in any appeal you file with the Appeals Council. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with an appeal.

If you get someone to help you with an appeal, you or that person should let the Appeals Council know. If you hire someone, we must approve the fee before he can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past-due insurance benefits to pay towards the fee.

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office. If you visit an office, please bring this notice and decision with you. The telephone number of the local office that serves your area is (251)246-6018. Its address is Social Security, 4249 N College Ave, Jackson, AL 36545.

Ricardo M Ryan
Administrative Law Judge

cc:  Dan Schulte
     One Corporate Drive
     Swansea, IL 62226

LINA/Cleiland 0819

●                    ●

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings and Appeals**

**DECISION**

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability and |
| | Disability Insurance Benefits |
| Cathy A. Key | |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

### PROCEDURAL HISTORY

On October 10, 2003, the claimant protectively filed an application for a period of disability and Disability Insurance Benefits. This case is before the Administrative Law Judge on a request for a hearing filed by the claimant, who is dissatisfied with the previous determination at the state agency level which found that she was not disabled. Dan Shulte, a non-attorney, represents the claimant in this matter. Prior to the scheduling of a hearing in this matter, the undersigned arranged for a disability evaluation to further ascertain the claimant's capacity to perform work-related activities (Exhibit 28F). Based on same, the undersigned is convinced that a full hearing is not necessary in this matter. Instead, a "wholly favorable" decision may be issued in this matter with respect to all disability issues in dispute based on information already available for review (20 C.F.R. § 404.948(a)). The following discussion will highlight the evidentiary support contained in the record for reaching such a conclusion.

### ISSUES

The issues in this case are whether the claimant is under a disability as defined by the Social Security Act and if so, when the disability commenced, the duration of the disability, and whether the insured requirements of the Act are met for the purpose of entitlement to a period of disability and disability insurance benefits.

### HOLDING

After a thorough evaluation of the record, the Administrative Law Judge concludes that the claimant has been disabled since her alleged onset date of disability, i.e., May 14, 2003. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

LINA/Cleiland 0820



Cathy A. Key (                    )                                   Page 2 of 6

## LAWS AND REGULATIONS

Section 216(i) of the Social Security Act provides for the establishment of a period of disability, and Section 223 provides for the payment of disability insurance benefits where the requirements specified therein are met.

## EVALUATION OF THE EVIDENCE

The claimant was born on July 11, 1957, making her forty-seven (47) years of age. She has a high school education and four years of college education. In her application for benefits, the claimant alleged that she is disabled due to "multiple back surgeries" and "low back pain." The claimant expressed that these conditions limited her ability to work because she can't walk for more than thirty minutes and can only stay in one position for twenty minutes. In addition, the claimant stated that pain radiated down her left leg and the lower half of her body is very weak. The claimant expressed that she stopped working due to her conditions on May 14, 2003.

A claimant is considered disabled under the Social Security Act when she is unable to engage in any substantial gainful activity because of a physical or mental impairment, or combination thereof, which is expected to last for a continuous twelve month period or result in death. The Commissioner has established a five-step sequential evaluation process by which to evaluate the extent of a claimant's impairment(s) in determining whether the statutory definition of "disability" is met.

Briefly, the sequential evaluation process requires consideration of :(1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly affects her ability to work; (3) whether her impairment meets a listing; (4) whether the claimant can return to her past relevant work; and (5) whether, if the claimant cannot perform her past relevant work, she can perform other work (20 CFR section 404.1520).

The first inquiry in the disability evaluation process involves a determination as to whether the claimant has engaged in substantial gainful activity. The undersigned finds that the claimant has not engaged in work activity since her alleged disability onset date of May 14, 2003. Therefore, a determination in the present case cannot be based on work activity alone.

The evidence establishes that the claimant is suffering from a combination of impairments which is more than a slight abnormality and which has more than a minimal effect on her ability to work, irrespective of age, education and work experience. The undersigned finds at step two of the evaluation process that the claimant has the following impairments which are considered to be "severe" under Social Security Regulations: status post C4-5, C5-6, C6-7 anterior cervical fusions, status post L4-5 diskectomy and L4-5 internal fixation, lumbar radiculitis, insulin dependent diabetes, status post right carpal tunnel release and right shoulder bursitis.

LINA/Cleiland 0821

Although the claimant has impairments which are considered to be "severe," as set forth above, they are not attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments (Appendix 1 to Subpart P, 20 C.F.R. Part 404).

The medical evidence reflects that the claimant has a history of treatment for lumbar spinal instability with radiculopathy (Exhibit 20F)(Exhibit 22F). On November 17, 2003, Mark N. Hadley, M.D., a neurosurgeon, examined the claimant based on a referral from the claimant's treating physician, Dr. John Hackman (Exhibit 21F). Dr. Hadley noted that the claimant had previously had a "good bit of spinal surgery performed" to include three separate anterior cervical procedures, a lumbar spinal surgery in 2002 and a second spinal procedure on July 16, 2003. He noted that the claimant continued to experience intractable pain despite the previous surgeries and moved with precision so as to avoid injury. Dr. Hadley reviewed the claimant's MR studies and opined that she had developed lumbar spinal instability with recurrent nerve root compression. He opined that she should undergo an operative procedure to provide decompression, internal fixation and fusion. Dr. Hadley opined that this procedure would not totally eliminate the claimant's symptoms; rather she would have "an opportunity to benefit" from same. On December 18, 2003, Dr, Hadley performed a L4-5 laminectomy and diskectomy with L4-5 internal fixation and fusion and L4-5 posterior lumbar interbody fusion (Exhibit 22F). Two months post surgery; Dr. Hadley examined the claimant and noted that she continued to experience pain despite surgery and pain medications. He additionally noted that she continued to experience burning sensations and residual left side weakness. He noted his discussion with the claimant that her symptoms were not "positive signs for complete recovery." The record reflects that the claimant participated in pain management therapy at the Center for Pain of Montgomery (Exhibit 26F). On March 29, 2004, treatment records reflected that the claimant presented with complaints of back and leg pain judged to be an eight on a scale of one to ten. Treatment notes reflected that the claimant had been prescribed Robaxin, Lortab and Neurontin medications to alleviate her symptom of pain.

The undersigned finds that a determination in this case cannot be based on medical considerations alone. Therefore, it is necessary to proceed to steps four and five of the sequential evaluation. Steps four and five require a determination of whether the claimant has, during the time at issue, retained the residual functional capacity to perform her past relevant work, and if not, to perform other work existing in significant numbers in the national economy consistent with her age, education and past work experience. In order to make these determinations, it is necessary to assess the claimant's mental and physical residual functional capacity. Residual functional capacity is the most that a claimant can still do despite limitations caused by her impairments.

On April 12, 2005, Keith G. Vanderzyl, M.D., examined the claimant and completed a report to the record (Exhibit 28F). Dr. Vanderzyl noted that the claimant had in the past had numerous

LINA/Cleiland 0822

Cathy A. Key (          )                                    Page 4 of 6

surgeries to include C5-6 disk fusion, a C6-7 anterior cervical fusion, a C4-5 cervical fusion, a diskectomy at L4-5, and a PLIF surgery. He noted that she had participated in pain management therapy. In addition, he noted that she continued to experience recurrent discomfort, to include, burning dysesthesias, posterior occipital headaches and symptoms of leg and back pain. Dr. Vandrzyl noted that her current medications included Methadone, Robaxin, Neurontin, Klonopin and Effexor. He diagnosed the claimant as follows: status post C4-5, C5-6, C6-7 and anterior cervical fusions with anterior curve leading to now significant degenerative changes at the atlantal axis joint with marked restriction of motion and constant pain and numbness in both arms from probably anterior cord syndrome and known spinal stenosis and status post L4-5 diskectomy times two followed by L4-5 PLIF operation with internal fixation. Dr. Vanderzyl indicated that the claimant's symptoms were not alleviated with "chronic medication." He opined that she was "totally disabled from both her lumbar and cervical problems which will not resolve and will probably worsen with time with significant posterior column deficits leading to a loss of walking stability and bowel and bladder incontinence." Dr. Vanderzyl completed a medical source opinion (physical) and opined that the claimant could stand, walk or sit for a total of thirty minutes at one time. He opined that the claimant could not lift any weight at all. He opined that the claimant could never climb, balance, stoop, kneel, crawl, drive automobile equipment or be exposed to extreme weather conditions.

The Administrative Law Judge finds the claimant's statements regarding her functional limitations and pain credible and consistent with the record when considered in its entirety. The claimant's credibility is bolstered by her excellent work history. Although the issue as to whether a claimant is disabled is one reserved to the Commissioner, the undersigned finds persuasive Vanderzyl's findings regarding the extent to which the claimant's physical impairments and symptoms significantly interfere with her daily activities and her performance of work activity. His opinion regarding the extent to which the claimant's physical impairments preclude her performance of work activity to any appreciable degree is well supported by the record as a whole.

In accordance with Social Security Ruling 96-6p, the Administrative Law Judge considered the administrative findings of fact made by the State agency medical physicians and other consultants. These opinions were weighed as statements from non-examining experts. The undersigned notes that medical records received after their review revealed a worsening of the claimant's condition (Exhibit 28F).

Based on the foregoing and evidence of record, the undersigned finds that the claimant does not retain the residual functional capacity to perform even the minimal exertional or non-exertional demands of any level of work on a regular and sustained basis. The undersigned finds that the combination of the claimant's physical impairments and symptoms precludes her sustained performance of work activity at any exertional level (SSR 83-14)(SSR 96-9).

With the above-stated residual functional capacity, the undersigned finds at step four of the disability evaluation process, that the claimant is incapable of performing her past relevant work as a human resource manager. Since the claimant cannot perform her past relevant work, the burden of proof shifts to the Commissioner to show, at step five of the disability evaluation process, that the claimant can perform other jobs which exist in significant numbers in the national economy given her impairments, residual functional capacity and vocational profile.

The claimant is a younger individual with a high school education and four years of college education. She has past relevant work as a human resource manager; however is no longer able to perform this work. The claimant has a residual functional capacity which has rendered her unable to perform even the minimal exertional and non-exertional demands of work on a regular and sustained basis. The Medical-Vocational Guidelines of the Regulations recognize that an individual's occupational base may become so eroded by exertional and non-exertional limitations that she becomes functionally unable to perform most of the jobs existing in the national economy at the sedentary level of exertion (20 CFR, Part 404, Subpart P, Appendix 2, Section 201.00(h)(3)). Therefore, because the claimant can perform significantly less than a full range of sedentary-type work, and giving great weight to the opinion of Dr. Vanderzyl; the Administrative Law Judge concludes, at step five of the disability evaluation process, that other jobs which the claimant is capable of performing do not exist in significant numbers in the national economy.

Accordingly, the Administrative Law Judge finds that the claimant has been disabled since her alleged disability onset date of May 14, 2003.

## FINDINGS

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

1.  The claimant has not engaged in any substantial gainful activity since her alleged disability onset date of May 14, 2003.

2.  The claimant's impairments which are considered to be "severe" under the Social Security Act are as follows: status post C4-5, C5-6, C6-7 anterior cervical fusions, status post L4-5 diskectomy and L4-5 internal fixation, lumbar radiculitis, insulin dependent diabetes, status post right carpel tunnel release and right shoulder bursitis.

3.  The claimant's impairments do not, singly or in combination, meet or equal in severity the appropriate medical findings contained in 20 CFR Part 404, Appendix 1 to Subpart P (Listing of Impairments).

Cathy A. Key (                )                                    Page 6 of 6

4.    The claimant's allegations of functional limitations and pain are considered credible.

5.    The claimant retains the residual functional capacity to perform no work on a regular and continuing basis.

6.    The claimant is unable to perform her past relevant work as a human resource manager.

7.    The claimant was forty-five(45) years old (a younger individual) on the date her disability began. The claimant is currently forty-seven (47) (a younger individual age 18-49). The claimant has a high school education and four years of college education.

8.    Based upon the claimant's residual functional capacity, and vocational factors, there are no jobs existing in significant numbers which she can perform. The combination and severity of the claimant's physical impairments, as well as symptom of pain, has reduced her functional capacity to a point where no work exists in significant numbers in the national economy which she can perform on a regular and sustained basis at acceptable levels of performance. (Social Security Rulings 83-14 and 96-9p).

9.    The claimant met the disability insured status requirements of the Social Security Act on the date her disability began, and through December of 2008.

10.    The claimant has been under a disability as defined by the Social Security Act and Regulations since her alleged disability onset date of May 14, 2003.

## DECISION

Based on the Title II application filed on October 10, 2003, the claimant is entitled to a period of disability commencing May 14, 2003 and to disability insurance benefits pursuant to Sections 216(i) and 223 of the Social Security Act, as amended. The claimant's disability has continued at least through the date of this decision.

Ricardo M Ryan
Administrative Law Judge
MAY 2 6 2005
Date

LINA/Cleiland 0825

# EXHIBIT 1 TO EXHIBIT A Part 16

# OCCUPATIONAL REQUIREMENTS 

**Title:** Manager, Personnel
**Industry:** Professional and Kindred

**DOT Code:** 166.117-018

**Specific Vocational Preparation:** Level 8 (4 to 10 years)

**General Educational Development:**
Reasoning Level 5
Mathematics Level 5
Language Level 5

**Strength:** Sedentary — Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situations: | Performing a Variety of Duties | | |
|---|---|---|---|
| | Directing, Controlling, or Planning Activities of Others | **Data:** | Coordinating |
| | Dealing with People (Beyond receiving work instructions) | **People:** | Negotiating |
| | Making Judgments and Decisions | **Things:** | Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 1 (Above 89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 1 (Above 89 Percentile) | 3- (34 - 44 Percentile) |
| Numerical Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | 3 (46 - 54 Percentile) |
| Motor Coordination | 4 (11-33 Percentile) | Not Included |
| Finger Dexterity | 4 (11-33 Percentile) | Not Included |
| Manual Dexterity | 4 (11-33 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 5 (Below 11 Percentile) | |

LINA/Cleiland 0826

# OCCUPATIONAL DESCRIPTION

**Title:** Manager, Personnel
**O\*NET SOC Code:** 11-3040.00   Human Resources Managers

**DOT Code:** 166.117-018

Plans and carries out policies relating to all phases of personnel activity:

**Tasks**

1. Recruits, interviews, and selects employees to fill vacant positions.

2. Plans and conducts new employee orientation to foster positive attitude toward company goals.

3. Keeps record of insurance coverage, pension plan, and personnel transactions, such as hires, promotions, transfers, and terminations.

4. Investigates accidents and prepares reports for insurance carrier.

5. Conducts wage survey within labor market to determine competitive wage rate.

6. Prepares budget of personnel operations.

7. Meets with shop stewards and supervisors to resolve grievances.

8. Writes separation notices for employees separating with cause and conducts exit interviews to determine reasons behind separations.

9. Prepares reports and recommends procedures to reduce absenteeism and turnover.

10. Represents company at personnel-related hearings and investigations.

11. Contracts with outside suppliers to provide employee services, such as canteen, transportation, or relocation service

**May Also Include:**

1. May prepare budget of personnel operations, using computer terminal.

2. May administer manual and dexterity tests to applicants.

3. May supervise clerical workers.

4. May keep records of hired employee characteristics for governmental reporting purposes.

5. May negotiate collective bargaining agreement with BUSINESS REPRESENTATIVE, LABOR UNION (profess & kin.) 187.167-018.

**Alternate Titles:**  Manager, Human Resources

**DLU:**  1988

**O\*NET SOC Title:** Human Resources Managers
**O\*NET SOC Code:** 11-3040.00

Plan, direct, and coordinate human resource management activities of an organization to maximize the strategic use of human resources and maintain functions such as employee compensation, recruitment, personnel policies, and regulatory compliance.

LINA/Cleiland 0827

# OCCUPATIONAL DESCRIPTION 

1. Administer compensation, benefits and performance management systems, and safety and recreation programs.

2. Advise managers on organizational policy matters such as equal employment opportunity and sexual harassment, and recommend needed changes.

3. Allocate human resources, ensuring appropriate matches between personnel.

4. Analyze statistical data and reports to identify and determine causes of personnel problems and develop recommendations for improvement of organization's personnel policies and practices.

5. Analyze training needs to design employee development, language training and health and safety programs.

6. Conduct exit interviews to identify reasons for employee termination.

7. Develop, administer and evaluate applicant tests.

8. Identify staff vacancies and recruit, interview and select applicants.

9. Maintain records and compile statistical reports concerning personnel-related data such as hires, transfers, performance appraisals, and absenteeism rates.

10. Negotiate bargaining agreements and help interpret labor contracts.

11. Oversee the evaluation, classification and rating of occupations and job positions.

12. Perform difficult staffing duties, including dealing with understaffing, refereeing disputes, firing employees, and administering disciplinary procedures.

13. Plan and conduct new employee orientation to foster positive attitude toward organizational objectives.

14. Plan, direct, supervise, and coordinate work activities of subordinates and staff relating to employment, compensation, labor relations, and employee relations.

15. Plan, organize, direct, control or coordinate the personnel, training, or labor relations activities of an organization.

16. Prepare and follow budgets for personnel operations.

17. Prepare personnel forecast to project employment needs.

18. Provide current and prospective employees with information about policies, job duties, working conditions, wages, opportunities for promotion and employee benefits.

19. Provide terminated employees with outplacement or relocation assistance.

20. Serve as a link between management and employees by handling questions, interpreting and administering contracts and helping resolve work-related problems.

21. Analyze and modify compensation and benefits policies to establish competitive programs and ensure compliance with legal requirements.

22. Develop and/or administer special projects in areas such as pay equity, savings bond programs, day-care, and employee awards.

23. Represent organization at personnel-related hearings and investigations.

24. Study legislation, arbitration decisions, and collective bargaining contracts to assess industry trends.

25. Contract with vendors to provide employee services, such as food service, transportation, or relocation service.

LINA/Cleiland 0828

# OCCUPATIONAL DESCRIPTION



26. Investigate and report on industrial accidents for insurance carriers.

Preliminary Crosswalk shows this DOT Occupation is 1 of 6 DOT's under this O*NET Code.

**Please note: O*NET Codes are under development and subject to change.**

LINA/Cleiland 0829

**Kelli Archacki**
Claims Manager

May 18, 2005

**CIGNA Group Insu**
Life · Accident · Disability

CATHY CLEILAND

CLIO, AL 36017

Routing 212
12225 Greenville Ave
Suite 1000
Dallas, TX 75243
Telephone 800.352.0611, E
1294
Facsimile 860.731.3413
Kelli.Archacki@cigna.com

| Re: | Name | : | Cathy Cleiland |
| --- | --- | --- | --- |
| | Date of Birth | : | |
| | Policy # | : | FLK 20104 |
| | Account Name | : | Temple Inland |
| | Underwriting by | : | Life Insurance Company or North America |

Dear Ms Cleiland:

This letter is in reference to the above claim for Long Term Disability (LTD).

Under the terms of the contract, Disability is defined as:

"An Employee is Disabled if, solely because of Injury or Sickness, he or she is earning 80% or less of his or her Indexed Covered Earnings.

Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation."

After Disability Benefits have been payable for 24 months, the Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she is may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn 80% or more of his or her Indexed Covered Earnings."

Since your claim is approaching the 24 month point, we have begun investigating your claim to determine if you are eligible for continuing benefits. This evaluation includes requesting information from both you and the physicians who treat you. We ask that you complete the enclosed disability questionnaire and return to us as soon as possible. If you have changed physicians or have seen a new physician in the last six months, be sure to indicate that on your Disability Questionnaire. Please be sure to sign and date the authorization on the last page of the questionnaire. We may not be able to obtain information from your doctors without this authorization. We have enclosed a return envelope for your convenience in returning this to us.

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

LINA/Cleiland 0830

CATHY CLEILAND
May 18, 2005
Page 2

Should you have any questions regarding this correspondence, please feel free to call me at 1.800.352.0611 extension 1294 from 8:00 a.m. to 4:30 p.m. Central Time, Monday through Friday.  If you reach my voice mail, leave a message and your call will be returned within one business day.

Sincerely,


Kelli Archacki

Cc: File

47 YOF, HR manager c̄ lumbar instability. AP will not provide FMLA. Has trouble w/ pain. She states she is on narcotics for long term pain tx. She states she can't think clearly due to drugs.

Clt says she is house confined and sleeps all day

She moved recently so may call clnt & see who current AP is @ this time + get medical. Consider FCE/

Rusty Jatro.
4/14/05

Claimant: Cathy Cleiland - Administrative Law Judge Hearing - Policy ID #: FLK 20104 ...    Page 1 of 1

**Smith, Yvonne W 212**

| | |
|---|---|
| **From:** | Trudy Wagner [trudy.wagner@advantage2k.com] |
| **Sent:** | Friday, April 15, 2005 3:34 PM |
| **To:** | Smith, Yvonne W 212 |
| **Subject:** | Claimant: Cathy Cleiland - Administrative Law Judge Hearing - Policy ID #: FLK 20104 - DOB: |

04/15/2005 3:33:08 PM
DOB:
Policy ID #:  FLK 20104
Claimant:  Cathy Cleiland - Administrative Law Judge Hearing
Client:  CIGNA Group Insurance - Dallas TX FCO / Yvonne Smith (800) 352-0611 - yvonne.smith@cigna.com

**Hello Yvonne,**

**We are still waiting for a Hearing date for Ms. Cleiland and will inform you when we do have a date. Dan Schulte is the case Manager handling this claim. If you have any questions, you may reach Mr. Schulte at (800) 580-5299 ext. 123.**

**Thank you,**

**Trudy Wagner**
Case Manager Assistant
Advantage 2000 Consultants
One Corporate Drive
Swansea, IL  62226
(800)580-5299 x144  (618)212-1144
Fax: (314)894-4891
trudy.wagner@advantage2k.com

CONFIDENTIALITY NOTICE:

If you are not the intended recipient and have received this e-mail in error,
then please notify the sender immediately.  This e-mail transmission may contain
confidential or sensitive information that is for use of the intended recipient only
Please delete this e-mail from your files if you are not the intended recipient.
Thank you for your compliance.

04/18/2005

## Smith, Yvonne W 212

**From:**    Trudy Wagner [trudy.wagner@advantage2k.com]
**Sent:**    Wednesday, March 09, 2005 8:09 AM
**To:**    Smith, Yvonne W 212
**Subject:** Claimant: Cathy Key - Administrative Law Judge Hearing - Policy ID #: FLK 20104 - DOB:

03/09/2005 8:02:56 AM
DOB:
Policy ID #: FLK 20104
Claimant: Cathy Key - Administrative Law Judge Hearing
Client:  CIGNA Group Insurance - Dallas TX FCO / Yvonne Smith (800) 352-0611 - yvonne.smith@cigna.com

Hello Yvonne,

I spoke to the claimant yesterday and she has changed her name back to Cleiland and has already done so at SSA. We will be referring to her as Cathy Cleiland in the future.

Thank you,

# Trudy Wagner

**Case Manager Assistant**
**Advantage 2000 Consultants**
**One Corporate Drive**
**Swansea, IL  62226**
**(800)580-5299 x144  (618)212-1144**
**Fax: (314)894-4891**
**trudy.wagner@advantage2k.com**

CONFIDENTIALITY NOTICE:

If you are not the intended recipient and have received this e-mail in error,
then please notify the sender immediately.  This e-mail transmission may contain
confidential or sensitive information that is for use of the intended recipient only.
Please delete this e-mail from your files if you are not the intended recipient.
Thank you for your compliance.

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

03/11/2005

LINA/Cleiland 0834

# OCCUPATIONAL D●SCRIPTION

Name: DOT Job Description                                                    SSN:

Title:  Manager, Personnel                                          DOT Code:  166.117-018
O*NET SOC Code: 11-3040.00   Human Resources Managers

Plans and carries out policies relating to all phases of personnel activity:

**Tasks**

1. Recruits, interviews, and selects employees to fill vacant positions.

2. Plans and conducts new employee orientation to foster positive attitude toward company goals.

3. Keeps record of insurance coverage, pension plan, and personnel transactions, such as hires, promotions, transfers, and terminations.

4. Investigates accidents and prepares reports for insurance carrier.

5. Conducts wage survey within labor market to determine competitive wage rate.

6. Prepares budget of personnel operations.

7. Meets with shop stewards and supervisors to resolve grievances.

8. Writes separation notices for employees separating with cause and conducts exit interviews to determine reasons behind separations.

9. Prepares reports and recommends procedures to reduce absenteeism and turnover.

10. Represents company at personnel-related hearings and investigations.

11. Contracts with outside suppliers to provide employee services, such as canteen, transportation, or relocation service

**May Also Include:**

1. May prepare budget of personnel operations, using computer terminal.

2. May administer manual and dexterity tests to applicants.

3. May supervise clerical workers.

4. May keep records of hired employee characteristics for governmental reporting purposes.

5. May negotiate collective bargaining agreement with BUSINESS REPRESENTATIVE, LABOR UNION (profess & kin.) 187.167-018.

Alternate Titles:  Manager, Human Resources

DLU:  1988

O*NET SOC Title: Human Resources Managers
O*NET SOC Code: 11-3040.00

Plan, direct, and coordinate human resource management activities of an organization to maximize the strategic use of human resources and maintain functions such as employee compensation, recruitment, personnel policies, and regulatory compliance.

LINA/Cleiland 0835

# OCCUPATIONAL DCRIPTION

Name: DOT Job Description                                                            SSN:

1. Administer compensation, benefits and performance management systems, and safety and recreation programs.

2. Advise managers on organizational policy matters such as equal employment opportunity and sexual harassment, and recommend needed changes.

3. Allocate human resources, ensuring appropriate matches between personnel.

4. Analyze statistical data and reports to identify and determine causes of personnel problems and develop recommendations for improvement of organization's personnel policies and practices.

5. Analyze training needs to design employee development, language training and health and safety programs.

6. Conduct exit interviews to identify reasons for employee termination.

7. Develop, administer and evaluate applicant tests.

8. Identify staff vacancies and recruit, interview and select applicants.

9. Maintain records and compile statistical reports concerning personnel-related data such as hires, transfers, performance appraisals, and absenteeism rates.

10. Negotiate bargaining agreements and help interpret labor contracts.

11. Oversee the evaluation, classification and rating of occupations and job positions.

12. Perform difficult staffing duties, including dealing with understaffing, refereeing disputes, firing employees, and administering disciplinary procedures.

13. Plan and conduct new employee orientation to foster positive attitude toward organizational objectives.

14. Plan, direct, supervise, and coordinate work activities of subordinates and staff relating to employment, compensation, labor relations, and employee relations.

15. Plan, organize, direct, control or coordinate the personnel, training, or labor relations activities of an organization.

16. Prepare and follow budgets for personnel operations.

17. Prepare personnel forecast to project employment needs.

18. Provide current and prospective employees with information about policies, job duties, working conditions, wages, opportunities for promotion and employee benefits.

19. Provide terminated employees with outplacement or relocation assistance.

20. Serve as a link between management and employees by handling questions, interpreting and administering contracts and helping resolve work-related problems.

21. Analyze and modify compensation and benefits policies to establish competitive programs and ensure compliance with legal requirements.

22. Develop and/or administer special projects in areas such as pay equity, savings bond programs, day-care, and employee awards.

23. Represent organization at personnel-related hearings and investigations.

LINA/Cleiland 0836

# OCCUPATIONAL D SCRIPTION



Name: DOT Job Description                                                                 SSN:

24.  Study legislation, arbitration decisions, and collective bargaining contracts to assess industry trends.

25.  Contract with vendors to provide employee services, such as food service, transportation, or relocation service.

26.  Investigate and report on industrial accidents for insurance carriers.

Preliminary Crosswalk shows this DOT Occupation is 1 of 6 DOT's under this O*NET Code.

Please note: O*NET Codes are under development and subject to change.

LINA/Cleiland 0837

# OCCUPATIONAL REQUIREMENTS 

Name: DOT Job Description                                    SSN:

Title: Manager, Personnel                        DOT Code: 166.117-018
Industry: Professional and Kindred

Specific Vocational Preparation:    Level 8 (4 to 10 years)

General Educational Development:    Reasoning Level 5
                                    Mathematics Level 5
                                    Language Level 5

Strength: Sedentary          Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may
                             involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situations: | Performing a Variety of Duties | Data: | Coordinating |
|---|---|---|---|
| | Directing, Controlling, or Planning Activities of Others | People: | Negotiating |
| | Dealing with People (Beyond receiving work instructions) | Things: | Handling |
| | Making Judgments and Decisions | | |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 1 (Above 89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 1 (Above 89 Percentile) | 3- (34 - 44 Percentile) |
| Numerical Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | 3 (46 - 54 Percentile) |
| Motor Coordination | 4 (11-33 Percentile) | Not Included |
| Finger Dexterity | 4 (11-33 Percentile) | Not Included |
| Manual Dexterity | 4 (11-33 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 5 (Below 11 Percentile) | |

LINA/Cleiland 0838

# Interoffice / Mail Route Slip          Date: _8/19/04_

## DALLAS CLAIM OFFICE:

**From: (Analyst Name)**

**To: (Employee's Name)**

## OTHER CLAIM / HOME OFFICE:

**To: (Employee's Name)**

*Kim Przybylek*

**Located in:**

| | | | |
|---|---|---|---|
| Pittsburgh | ☐ | Hartford/Bloom. | ☐ |
| Philadelphia | ☐ | Tarrytown | ☐ |
| Sherman | ☐ | Bethlehem C.S. | ☐ |

## ITEM DESCRIPTION (*MUST* be included for Interoffice Shipment)

*mail*

LINA/Cleiland 0839

**FRAUD WARNING:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. For residents of the following states, please see the reverse side of this form: *California, Colorado, District of Columbia, Florida, Kentucky, Maryland, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Tennessee, Texas or Virginia.*

Name: CATHY KEY Cleiland

Social Security No.:

Address:

Clio, AL 36017

Telephone No.:

1. In your own words, tell us why you cannot work in your own or in any occupation.
   I have had multiple unsuccessful back operations resulting in permanent nerve damage and excruciating back pain resulting in long term narcotic drug use with the outlook for continued long term pain treatment w/narcotic drugs - Thro has also had

2. What is primary physical and/or mental condition preventing you from working now? a negative impact on my juvenille diat
   Back + leg pain + pain medication which affects my ability to think properly.

3. Can you drive? ☒ Yes ☐ No    How far? off for several hrs and plan my driving. I have to leave my pain meds

4. What time do you get up in the morning? 8:30 am    What time do you go to bed? 9:00 pm
   I also sleep throughout the day.

5. Where do you live? ☐ Apartment  ☒ House  I have moved in w/my parents.
   How many floors in the apartment/house? 1    Does it have an elevator? ☐ Yes ☐ No
   Do you use any special equipment - ramps, handrails, wheelchair? ☐ Yes ☒ No
   If yes, describe

6. How often do you use the computer? Once a month.
   What computer programs or software can you use? I don't remember - I can use the internet.

7. Check the things you do regularly:

| Activity | Hours per day? | Days per week? |
|---|---|---|
| ☐ Cook | | |
| ☐ Clean | | |
| ☐ Shop | | |
| ☐ Laundry | | |
| ☐ Yardwork | | |
| ☐ Gardening | | |
| ☐ Read | | |
| ☒ Watch TV | | |
| ☐ Other (school, attend religious services, volunteer work, etc.) | | |

What do you do for recreation? Nothing - occasionally I will ride w/ my mother to the mall just to get out of the house.

8. Are there things you attend to with regard to your personal needs (grooming, dressing, etc.)?
   No. my mom + dad help me with picking up my medication

9. Do you go for walks? ☐ Yes ☒ No    How often? 
   How far do you walk?    For how long? 

GB-609428 (04/2004)

PITTSBURGH
AUG 2 5 2004
GROUP CLAIMS

0. Do you engage in a regular exercise program?  ☐ Yes  ☒ No
   Where (home, gym, etc.) _____
   How often? _____
   Describe your exercise program _____

11. Please circle the highest grade you completed in school:

   1  2  3  4  5  6  7  8  9  10 11 12     GED        High School Diploma

   College?   1 yr.   2 yrs.  3 yrs.  4 yrs.  (BA/BS Degree)   Masters Degree  Other

   Type of degree? (Business, History, Social Sciences, etc.) _Business_
   Date Received  1988

   List any professional/educational certificates, licenses, etc. awarded _____
   _____

   List any vocational programs you have attended/completed _____

   In the last 3 years, what type of certificates or licenses have you received? _____
   _____

12. Are you taking any professional/educational/vocational classes now?   ☐ Yes  ☒ No
    Please list them _____

13. Are you working?  ☐ Yes  ☒ No
    If so, please list how many hours per day you work, and the name of your employer. _____
    _____

14. Have you discussed return to work with your physician?  ☒ Yes  ☐ No
    What does your physician say about returning to work?  _He states that I will be treated with long term narcotics._

15. When do you expect to return to work? ___?___
    Will you return to your regular occupation?  ☐ Yes  ☒ No  If no, why not?  _My job was filled_
    Will you return to Modified job?  ☐ Yes  ☒ No  If no, why not?  _My employer will not honor non-compete_

16. Do you know of any positions within your company that you would be interested in?  ☐ Yes  ☒ No
    If yes, what position? _____

17. If unable to return to regular position, would you be interested in exploring your career options?  ☐ Yes  ☒ No

### Employment History

| Job Title: | Employed date: From 198__ Through 198__ |
|---|---|
| Major Duties: | Minor Duties: |
| Human Resources mgr | |
| Tools/Equipment used: Decision making skills | Machinery/Computers used: |
| Computer | |
| Job Title: | Employed date: From 198__ Through 198__ |
| Major Duties: | Minor Duties: |
| Human Resources mgr | |
| Tools/Equipment used: Decision mka | Machinery/Computers used: |
| Computer | |
| 3. Job Title: Human Resources mgr | Employed date: From 1986 Through 1988 |
| Major Duties: Decision mkg skills | Minor Duties: 1988 — 2003 |
| Tools/Equipment used: | Machines/Computers used: |
| | Computers - email, peoplesoft |

18. Have you ever owned or operated your own business?  ☐ Yes  ☒ No
    Do you own, operate or have ownership interest in a business now?  ☐ Yes  ☒ No
    Business Name _____

LINA/Cleiland 0841

19. Are you married?   ☐ Yes  ☑ No
   If yes, please provide:   Spouse's Name: _____ DOB: __/__/__
                            Spouse's SSN: _____

   Do you have any children under age 18?   ☐ Yes  ☑ No
   Please list their names and dates of birth in order:
   _____
   _____
   _____

   Do you have any handicapped children over 18?   ☐ Yes  ☑ No

20. List any prescription medications you take: Use other side if you need more space.

| Medication | Dose | Frequency | Medication | Dose | Frequency |
|---|---|---|---|---|---|
| Robaxin | 750 mg | 3 x daily | Methadone | 10 mg | 2 x daily |
| Effexor | 75 mg | 1 x daily | Humulin R | 15 units | 2 x daily |
| Neurontin | 800 mg | 4 x daily | " N | 25 " | 2 x daily |

21. List any doctor(s) you see regularly. Use the other side if you need more room.

| Doctor's Name/Specialty: | | Doctor's Name/Specialty: |
|---|---|---|
| Dr Herrick Dr Nortick Center for Pain of Montgomery | | |
| Address: Morrow Medical Tower Suite 812 Montgomery, AL | | Address: |
| Telephone #: 334 288 7808  Fax #: ? | | Telephone #:   Fax #: |
| Frequency of visits: Monthly  Date of last visit: 5/26/04 | | Frequency of visits:   Date of last visit: |
| Doctor's Name/Specialty: Dr Charles Eddins (General practitioner) | | Doctor's Name/Specialty: |
| Address: Whetstone St Monroeville, AL 36461 | | Address: |
| Telephone #: 251 Phone 575-4825  Fax #: ? | | Telephone #:   Fax #: |
| Frequency of visits:  Date of last visit: in hospital approx 5/25/03 | | Frequency of visits:   Date of last visit: |

on 6/21 I moved from Monroeville AL to Clio, AL. I will not be seeing Dr Eddins I have to find a new regular Dr

22. Are you right handed or left handed?   ☑ Right  ☐ Left
   What is your height? 5'4"        What is your date of birth? 7-11-1957
   What is your weight? 116b

23. Are you a veteran?   ☐ Yes  ☑ No
   If yes, have you applied for VA benefits for this disability?   ☐ Yes  ☐ No
   Please attach a copy of your VA disability award.

24. What other types of income/money/compensation/benefits are you receiving or eligible to receive?

| | | $ Amount/Frequency | Date Began | Date Paid Through |
|---|---|---|---|---|
| ☐ Yes ☑ No | Salary Continuance | | | |
| ☐ Yes ☑ No | State Disability Benefits | | | |
| ☐ Yes ☑ No | Group Disability Benefits | | | |
| ☐ Yes ☑ No | Workers' Compensation | | | |
| ☑ Yes ☐ No | Pension Benefits | | | |
| ☑ Yes ☐ No | Social Security Disability Benefits | | | |
| ☑ Yes ☐ No | No-Fault Auto Disability Insurance | | | |
| ☑ Yes ☐ No | Any Other Disability Income | | | |

**I certify that the information in this document is true and correct.**

Signature _Cathy Dej Cleiland_          Date 6-28-04

## DISCLOSURE AUTHORIZATION

Claimant's Name (Please Print): CATHY KEY Cleiland

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome), as well as communicable diseases and genetic testing. If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a) reinsuring companies; b) the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c) fraud or overinsurance detection bureaus; d) anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e) for audit or statistical purposes; f) as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: Cathy Key Cleiland   Date: 6/28/04

Relationship,
if other than Claimant: _____   Claimant's Social Security Number: _____

Company Name: Temple Inland Forest Products Corp

### PROHIBITION ON RE-DISCLOSURE

If the medical information contains information regarding drug or alcohol abuse, it may be protected under federal law. Federal regulations (42 CFR Part 2) prohibit any person or entity who receives such protected information from the Company from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulation. A general authorization for the release of medical or other information is not sufficient for this purpose. The federal rules restrict any use of such protected information to criminally investigate or prosecute any alcohol or drug abuse patient.

LINA/Cleiland 0843



01/13/2005 THU 15:43 FAX                                                      @001

```
                        ********************
                   ***    TX REPORT    ***
                        ********************

        TRANSMISSION OK

        TX/RX NO              1506
        CONNECTION TEL                913348089125
        CONNECTION ID
        ST. TIME             01/13 15:43
        USAGE T              00'51
        PGS. SENT            1
        RESULT               OK
```

# *Facsimile Transmission Cover Sheet*



**CIGNA** Group Insurance
Life · Accident · Disability

| Transmit to FAX number 334.808.9125 | Date January 13, 2005 | Time 2:41 PM | Total number of pages (including this sheet) : 1 |
|---|---|---|---|

| To | From |
|---|---|
| **Name** Cathy Cleiland | **Name** Angie Lukasik |
| **Company** | **Department** |
| **Phone** | **Phone** 800.238.2125 extension 3032 |
| **Address** | **Address** P250 PO Box 22325 Pittsburgh, PA 15222-0325 |

**Comments**

RE:    Claimant – Cathy Cleiland              Date of Birth –
       Policyholder – Temple Inland          Policy Number – FLK 0020104
       Underwriting Company – Life Insurance Company of North America

Dear Ms. Cleiland:

This fax is in follow-up to your request.

Per your request, you received $2,500 in Long Term Disability benefits in 2003. In 2004, you received a total of $32,500.00 in Long Term Disability benefits.

Should you have any questions regarding this matter, please do not hesitate to call me.

LINA/Cleiland 0844

# *Facsimile Transmission Cover Sheet*





**CIGNA** Group Insuranc
Life · Accident · Disability

| Transmit to FAX number | Date | Time | Total number of pages |
|---|---|---|---|
| 334.808.9125 | January 13, 2005 | 2:41 PM | (including this sheet) : 1 |

| To | From |
|---|---|

| Name | Name |
|---|---|
| Cathy Cleiland | Angie Lukasik |

| Company | Department |
|---|---|

| Phone | Phone |
|---|---|
| | 800.238.2125 extension 3032 |

| Address | Address |
|---|---|
| | P250 |
| | PO Box 22325 |
| | Pittsburgh, PA 15222-0325 |

**Comments**

| RE: | Claimant – Cathy Cleiland | Date of Birth – |
|---|---|---|
| | Policyholder - Temple Inland | Policy Number – FLK 0020104 |
| | Underwriting Company – Life Insurance Company of North America | |

Dear Ms. Cleiland:

This fax is in follow-up to your request.

Per your request, you received $2,500 in Long Term Disability benefits in 2003. In 2004, you received a total of $32,500.00 in Long Term Disability benefits.

Should you have any questions regarding this matter, please do not hesitate to call me.

Sincerely,

Angie Lukasik

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

[ ] Acknowledgment Requested                    To Fax a reply, dial : 412.402.3318

**Drusilla Gamez**
Case Manager I
CIGNA Disability Management Solutions



**CIGNA Group Insuran**
Life · Accident · Disability

June 1, 2004

CATHY K. CLEILAND

MONROEVILLE, AL 36460

**COPY**

Routing 212
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243
Telephone 800.352.0611 ext. 650
Facsimile 800.325.7016

Re:  Name              :    Cathy K. Cleiland
     Date of Birth     :
     Policy #          :    FLK 20104 (LTD)
     Account Name      :    Temple-Inland
     Underwriting by   :    Life Insurance Company or North America

Dear Ms. Cleiland:

This letter is in reference to your claim for Long Term Disability benefits.

A review of your file reveals the need for updated medical information.  One of the provisions of your contract specifics that you may not be considered totally disabled for any period if you are not under the regular care of a licensed physician.

We ask that you complete the enclosed disability questionnaire and return to us within the next 30 days.  A self-addressed envelope is enclosed for your convenience.  Please be sure to sign and date the authorization on the last page of the questionnaire.  We may not be able to obtain information from your doctors without this authorization.

Thank you for your cooperation.  Should you have any questions regarding this correspondence, please feel free to call me at 1.800.352.0611 extension 6505 from 7:30 a.m. to 4:00 p.m. Central Time, Monday through Friday.  If you reach my voice mail, leave a message and your call will be returned within one business day.

Sincerely,

Drusilla Gamez

Cc: File                    **SSN: 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**

IGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, IGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.  "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

Acenza: Task

Page 1 of 1

🗏 **Task**  👥 **Contents**  📄 **Notes (0/0)**

Re-route  Void  Pend  Alert

Update

Logs
(0)

# Task: Phone Contact

**Start Date:** 06/01/2004                **Due Date:**                06/02/2004

▪ Details

| | | | |
|---|---|---|---|
| **Name** | CATHY CLEILAND | **SSN** | **DOB** |
| **Account Name** | TEMPLE INLAND CORPORATE | **Account #** FLK0020104 | **Incurred Date** 05/14/2003 |
| **Claim Manager** | Drusilla Gamez | **Incident #** 613165 | **Claim Eff Dt-Status** 11/18/2003 - Active |
| **Type** | Incoming | Date | 06/01/2004 10:49 AM | **User ID** | Cleiland | Drusilla Gamez |
| **First Name** | Cathy | **Last Name** | Cleiland | |
| **Role** | Employee | **Specify Other** | |
| **Call Reason** | Claim Status Check | **Action Taken** | Other |
| **Call Summary** | | | |

Clmt wanted to advise that she will be going to Center for Pain Managment with Dr. David
Herrick and their phone number is 334.288.7808. Clmt also advised that she was in
intensive care from 05/22/04 - 05/25/04 at Monroe County Hospital in Monroeville, AL.
Clmt says she will see Dr. Hadley on June 9, 2004.

① **Active Contents**

| Type | Due Date | Created By | Assigned To | Name |
|---|---|---|---|---|
| LTD | 05/14/2003 | Drusilla Gamez | Drusilla Gamez | CLEILAND,CATHY -- |

**Status:** Active    **Assigned To:** Drusilla Gamez

Created: 06/01/2004 11:50 AM

06/01/2004

LINA/Cleiland 0847



## Facsimile Transmission Cover Sheet



**CIGNA Group Insurance**
Life · Accident · Disability

| Transmit to FAX number | Date | Time | Total number of pages |
|---|---|---|---|
| (205)934-6507 | February 12, 2004 | 10:25 AM | (including this sheet): 5 |

| To: | From: |
|---|---|
| **Name** | **Name** |
| Dr. Hadley | Drusilla Gamez |
| **Company** | **Department** |
| | Disability Management Solutions |
| **Phone** | **Phone** |
| (205)934-7170 | 800.352.0611 ext. 6505 |
| **Address** | **Address** |
| | 12225 Greenville Avenue |
| | Suite 1000 |
| | Dallas, TX 75243 |

**Comments** FLK 20104  Life Insurance Company of North America

RE: Cathy Cleiland        DOB:

We are requesting an update for the above referenced patient. The continuation of benefits is pending the information requested.

> **Please include recent office notes/lab tests/diagnostics/consultations and test results from October 2003 to the present.**

> **Please complete the following Physical Abilities Assessment and Medical Request form.**

If there are any problems or questions feel free to call me at 1.800.352.0611, ext. 6505.

Please fax your response to 800.325.7016. If you provide us with your tax identification number, we will be glad to honor a reasonable fee for the request.

We will need this information to us by February 26, 2004.

Thank you for your time and assistance in this matter.

*CONFIDENTIALITY NOTICE- If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

[ ] Acknowledgment Requested                    To Fax a reply, dial: 800.325.7016

LINA/Cleiland 0848

*Disability Management Solutions* ™
*Medical Request Form*



CIGNA Group Insurance
Life • Accident • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



We are evaluating your patient's disability claim. Please respond to the following questions.
Please provide copies of supporting reports, such as office notes/consultations/testing.
*(Failure to provide the reports may result in delay in the claim determination).*

| Claimant Name: | Date of Birth: |
|---|---|
| CATHY CLEILAND | |

**What is the primary diagnosis responsible for your patient's impairment that - in your opinion - is preventing return to work?**

Lumbar spinal instability with L5 radiculopathy, ® greater than ℗

| What is the ICD-9 code for the above diagnosis? | Date of Injury/Illness: | Is this condition work related? |
|---|---|---|
| 724.02 or 724.06 | | ☐ Yes  ☐ No |

**What are the specific additional (medical/non-medical) factors impacting return to work, if any?**

See attached records

| When did you first treat your patient for this current impairment episode? | Have you treated your patient for this impairment prior to this episode? ☐ Yes ☑ No If yes, when? | Date of last visit: | When is your patient's next office visit? |
|---|---|---|---|
| 11·17·03 | | 2/4/04 | 6/9/2004 |

**Does treatment plan for this impairment episode include any of the following?** *(Please list as appropriate and provide supporting documentation)*

☑ Physical Therapy: _____
☑ Surgery: 12/16/03 or Dc'd 12/18/03
☐ Specialty Referral: _____
☐ Electrodiagnostic Studies: _____
☐ Imaging Studies: _____
☐ Other: _____

**Please list all current medications that are related to this impairment or impact return to work?** *(Please include dosage and frequency)*

Neurontin 300 mg T.I.D; Robaxin, Lortab and advil as Needed for pain

**What are the specific restrictions that you have placed on your patient?**

At Work   Dr Hadley does not do FCE or PCE

At Home *(Activities of Daily Living)*:

**Could your patient return to work at this time if accommodations were made for the listed restrictions?** ☐ Yes ☐ No

If no, why not? Cannot assess ability to work at this time. Pt has Long standing Problems. Several which persist despite recent surgery.

If no, based on your experience, what is your best estimate of when your patient can return to work?
With Restrictions: _____   Without Restrictions: _____

| Physician Name *(Please PRINT)* | Degree & Specialty: |
|---|---|
| Mark N Hadley, MD | MD Neurosurgery |
| Address: *(Street, City, State, Zip Code)* | |
| FOT 1030, 1530 3rd Ave So. Bham Al 35294-3410 | |
| Telephone Number: | Federal Tax ID #: |
| (205) 934 1439 | 63-0649108 |
| Physician Signature: | Date: |
| [signature] | 2/24/04 |

618136 Rev. 00/00

*To Whom It May Concern,*

**Dr Hadley does not do**
  **Functional Capacity Evaluations**
              **Or**
  **Physical Capacity Evaluations**

*These tests would be administered by Physical Therapy or a Work Hardening clinic.*

*Thank you*

LINA/Cleiland 0850

*Disability Management Solutions™*
*Physical Abilities Assessment Form*



CIGNA Group Insurance
Life · Accident · Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



**We are evaluating your patient's disability claim in order to determine functional impairment.**
Please document your objective findings (check below) and provide copies of supporting reports such as office notes/consultations/testing.
*(Failure to provide the requested reports/data may result in delay in claim determination).*

| Claimant Name: CATHY CLEILAND | Date of Birth: |
|---|---|

| ICD-9 Diagnosis: |
|---|

Please check (✓) the boxes corresponding to the patient's level of physical functionality. Please substantiate your findings with medical documentation.

In an 8 hour workday, the patient can tolerate, with positional changes and meal breaks, the following activities for the specified durations:

| ASSESSMENT OF PHYSICAL ABILITIES | CONTINUOUSLY (67% - 100%) (5.5+ hrs.) | FREQUENTLY (34% - 66%) (2.5 - 5 hrs.) | OCCASIONALLY (1% - 33%) (<2.5 hrs.) | NONE (0%) (0 hrs.) | CHECK (✓) IF SUPPORTED BY OBJECTIVE FINDINGS |
|---|---|---|---|---|---|
| Sitting: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Standing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Walking: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Climbing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Balancing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Kneeling: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Crawling: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Crouching: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Stooping: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Hearing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Reaching: Overhead | ☐ | ☐ | ☐ | ☐ | ☐ |
| Desk Level | ☐ | ☐ | ☐ | ☐ | ☐ |
| Below Waist | ☐ | ☐ | ☐ | ☐ | ☐ |
| Seeing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Smelling/Tasting: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Extremes in Heat: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Extremes in Cold: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Odors/Fumes/Particles: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Ability to Work Extended Hours/OT: | | ☐ | ☐ | ☐ | ☐ |
| Use of Lower Extremities for Foot Control: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Vibration: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Wet/Humid Conditions: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Can Work Around Machinery: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Fine Manipulation: Specify frequency and L or R | | | | | |
| Simple Grasp: Specify frequency and L or R | | | | | |
| Firm Grasp: Specify frequency and L or R | | | | | |

*(Continued on Reverse Side)*

LINA/Cleiland 0851

In the last column check (✓) the box which corresponds to the patient's level of physical work function.  Please substantiate your findings with medical documentation.

In an 8 hour workday, the patient can tolerate, with positional changes and meal breaks, the following:

| PHYSICAL WORK LEVEL (Lift, Carry, Push, Pull) | CONTINUOUSLY Over 2/3 of the day (5 or more Hrs/shift.) | FREQUENTLY 1/3 to 2/3 of the day (Up to 4 Hrs/shift.) | OCCASIONALLY Up to 1/3 of the day (1 Hr./5 min.) | APPROXIMATE ENERGY REQUIRED IN WORK METS* | MOST APPLICABLE IN YOUR OPINION (Check (✓) One) |
|---|---|---|---|---|---|
| No Work | None | None | None | None | ☐ |
| Sedentary | Negligible (mostly sitting) | Negligible | 10 lbs. (stand/walk occasionally) | 1.5 - 2.1 | ☐ |
| Light | Negligible | 10 lbs. (stand/walk occasionally) | 20 lbs. | 2.2 - 3.5 | ☐ |
| Medium | 10 lbs. | 10 - 25 lbs. | 20 - 50 lbs. | 3.6 - 6.3 | ☐ |
| Heavy | 10 - 20 lbs. | 25 - 50 lbs. | 50 - 100 lbs. | 6.4 - 7.5 | ☐ |
| Very Heavy | 20 - 50 lbs. | 50 - 100 lbs. | 100+ lbs. | Over 7.5 | ☐ |

*One MET is equivalent to the amount of energy expended in a resting state, for example sitting in a chair and not moving.  Activities can be calculated as multiples of the resting state.  Therefore a 3 MET activity would mean the activity requires 3 times the amount of energy required to sit in a chair.

Additional Comments on Functionality:




Physician Name  (Please Print): | Medical Specialty:

Address:  (Street, City, State, Zip Code)

Telephone Number: | Federal Tax ID #:

Physician Signature: | Date:

*Thanks in advance for your prompt response to this request.*

LINA/Cleiland 0852



## DISCLOSURE AUTHORIZATION

Claimant's Name (Please Print): CATHY CLEILAND

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome). If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a)reinsuring companies; b)the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c)fraud or overinsurance detection bureaus; d)anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e)for audit or statistical purposes; f)as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: *Cathy Cleiland*                    Date: 11-12-2003

Relationship,
if other than Claimant: _____     Claimant's Social Security Number: _____

Company Name: *Temple Inland Forest Products Corp.*

### PROHIBITION ON RE-DISCLOSURE

If the medical information contains information regarding drug or alcohol abuse, it may be protected under federal law. Federal regulations (42 CFR Part 2) prohibit any person or entity who receives such protected information from the Company from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulation. A general authorization for the release of medical or other information is not sufficient for this purpose. The federal rules restrict any use of such protected information to criminally investigate or prosecute any alcohol or drug abuse patient

LINA/Cleiland 0853



## THE KIRKLIN NEUROSURGERY CLINIC
## CLINIC NOTE

| CLEILAND, CATHY K. | 000000698678 | 01/14/2004 |
|---|---|---|
| Patient Name | Record Number | Visit Date |

Cathy Cleiland is seen back in the Neurosurgery Clinic today. She is four weeks out after re-operative lumbar spine surgery at L4-5 with posterior lumbar interbody fusion and internal fixation. While she is standing better and has better function in her left lower extremity, she still has severe, burning dysesthetic pain in her legs, worse in the left leg than the right. This is very similar to her preoperative circumstance. She is using Neurontin 300 mg to 600 mg three times per day. She is still using a fair bit of pain medication. Her wound was giving her trouble but she has no tenderness or soreness there.

On examination, her wound looks good. She has a scab on the bottom but it is not erythematous, not leaking. The skin edges are simply healing. There is no fullness or fluid here. She can bend and move her spine and certainly her posture is much better than it was prior to surgery. She cannot yet walk on her heels but can on her toes. Independent testing reveals improved strength in the extensor hallucis longis and anterior tibialis on the left compared to preoperatively.

Imaging studies were not performed today. We will obtain these in four weeks. I am going to put her on an elevated dose of Neurontin 800 mg qid. We will continue to offer supportive care. We will get her involved in physical therapy as an outpatient. I will see her back in four weeks.

MNH/tr/2823
D: 2004-01-14
T: 1/15/04 12:12 PM
DOB: 07/11/1957

Mark N. Hadley, M.D.
Professor of Neurosurgery

cc:

job#:0114-176

LINA/Cleiland 0854

THE KIRKLIN CLINIC
Birmingham, Alabama

**Progress Notes**

Patient Name: _Cleiland, Calty_
Date of Birth: _____
MR Number: _698678_
Date of Service: _12/29/03_
Physician: _Hadley/Pritchard_

12/16/03 - s/p L4-5 decompression
and fusion - PLIF

Bionic feeling better. Still
has some burning in left leg
No _____ _____ _____.

Exam - wound - intact & dry
Motor 5/5 & R TA & EHL 4/5
Sensory - ↓ lateral left foot

A/P) stable post op. Start PT
in 2 weeks. Fitted for bone
stimulator by Dr Spurlock
RTC in 10 weeks c films.
Refilled Lortab

_____ Pritchard

Form # KF001TKC (Rev. 10/03)

LINA/Cleiland 0855



**SCHOOL OF**
**MEDICINE**

Department of Surgery
Division of Neurosurgery

November 17, 2003

Dr. John Hackman
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106

Re: CATHY CLEILAND
UAB #: 000000698678

Dear John:

I saw your patient, Cathy Cleiland, in the Neurosurgery Clinic today. She is a pleasant woman of 46 years and has had a good bit of spinal surgery performed. She has had three separate anterior cervical procedures accomplished over time. She was in a motor vehicle accident in April 2002 and ultimately had lumbar spinal surgery, left-sided L4-5 discectomy, in May 2003. She says she did not have much improvement from this, or at least any lasting improvement. It has become increasingly troublesome to her. She ultimately sought re-evaluation and a second procedure in July 16, 2003 for recurrent disc She unfortunately states that she is no better. She has developed important back pain, which is different than what she has experienced previously. The left lower extremity pain and dysfunction remains but she now has severe burning dysesthesia in the bottom of the foot, which radiates up to the knee. She is also developing right lower extremity complaints. You have discussed with her the options of additional therapy and she would like my thoughts regarding her circumstance.

Of importance with this woman is that she is a bit overweight for her frame. She is 171 pounds on a 5 foot 4 inch frame. She has juvenile diabetes and has been treated for same for 25 years. She is utilizing Neurontin, Darvocet, Lortab and Flexeril in treatment of her pain syndrome but is really not much better. She has not had much in the way of physical therapy of late. She tried this after her first operation.

She describes mechanical type pain, sharp, stabbing, lancinating pain with motion. She cannot always anticipate which motion is going to give her the trouble. Rolling over in bed, for example, sometimes causes a sharp, stabbing pain that then radiates down her left leg. At other times she can stand and walk and get around reasonably well with just an underlying, severe low backache but will have superimposed sharp, stabbing pains that literally take her breath away. Her pain tends to follow the L5 distribution and also S1 on this left side. She is developing some right-sided complaints as well. She walks with a

LINA/Cleiland 0856

limp and the more she walks, the more she limps. She walks in a flexed position too, very careful with the positioning of her spine and her step. She really tries to avoid any jarring. She cannot keep shoes on her feet more than two to three hours because of the burning dysesthesias, particularly on the left but the right as well.

As we examine her, she does have pain that appears mechanical. She has a real tough time with flexion, extension, laterally bending or rotation of the lumbar spine. This tends to cause focal back pain, sometimes sharp with lancination down the left leg. She appears to be weak in the extensor hallucis longis and anterior tibialis on that left side compared to the right. She indeed has burning dysesthesias in the L5 and S1 distribution on the left. She has reduced ankle response on the left.

I reviewed films on Cathy from prior to her original surgery to her most recent three sets of MR studies with two different sets of plain spine films. She has what appears to be collapse and degeneration despite attempted discectomy times two. I think she has developed failure of the facet complex on this left side and then subluxation and collapse, which is causing further canal compromise. There is a good bit of scar in around the previous operative site. I do not see specific disc material, which has re-herniated, but significant collapse with narrowing and angulation with a grade I spondylosis.

I think Cathy Cleiland has developed lumbar spinal instability with recurrent nerve root compression. I think some of her components, particularly the burning dysesthesias in the left lower extremity, are probably the result of nerve root injury from her pathology and its attempted treatment. I do think her mechanical instability and ongoing neuro compression can be improved with an operative procedure to provide decompression, internal fixation and fusion with the hope to restore her normal lumbar lordosis and interspace height. While I do not think she will have alleviation of her severe burning dysesthesias in her left lower extremity, she does have a very good opportunity to benefit from the above-mentioned procedure. Cathy would like to proceed. We have tentatively selected the date of December 9 as an operative date. We will complete the history, physical and preoperative counseling today. I will keep you posted on our progress. Thank you for asking me to provide an opinion on this pleasant woman.

Sincerely,

Mark N. Hadley, M.D.
Professor of Neurosurgery

MNH/br

DSCiob#1117-507

Page 1

 **The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

## Operation Note

*NAME:* CLEILAND, CATHY   *MED. REC. NO.:* 000000598678   *ROOM:*

*SURG:* Mark N. Hadley, M.D.                *ASSIST:* Ajay K. Ananda, M.D.

*SURG#:* 2823

*SURG.SIGN:* **Electronically Signed by Mark N. Hadley, M.D. on 12/19/2003**

*DATE OPER.:* 12/16/2003   *ADMITTED:*   *DISCHARGED:*

*SERVICE:* Mark N. Hadley, M.D.   *DICTATED:* 12/16/03   *TRANSCRIBED:* 12/16/03

*DOCTOR/SERV. SIGN:* _____


PREOPERATIVE DIAGNOSIS:  Lumbar spinal instability, with L5
     radiculopathy, left greater than right.

POSTOPERATIVE DIAGNOSIS: Same.

PROCEDURES PERFORMED:   1.  L4-L5 laminectomy for
decompression.
                         2.  L4-5 diskectomy, bilateral, with L4-5
                             posterior lumbar interbody fusion,
                             bilateral.
                         3.  Internal fixation L4-L5, bilateral.
                         4.  Autologous bone dorsolateral fusion
                             L4-L5, bilateral.

ANESTHESIA:  General with endotracheal intubation.

INDICATIONS:  This is a 46-year-old female who has had previous
L4-5 surgery.  She has developed collapse and instability at L4-5,
with marked L5 root compression and foot drop.  She has horrific
pain, both mechanical in nature and radicular in nature,
bilateral, again left more than right.  She is a candidate for
operative decompression at the L4-5 level, followed by L4-5
posterior lumbar interbody fusion and internal fixation and
dorsolateral fusion.  She understands the indications for as well



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

as the risks of the procedure. She wishes to proceed. Consent has been obtained.

OPERATIVE TECHNIQUE: After smooth induction of anesthesia and intubation, the patient was carefully moved from the hospital bed to the operating table and placed in the prone position on the Wilson frame. The patient's lumbosacral spine was shaved, prepped, and draped in the usual sterile fashion. I used the previous skin incision but essentially extended the incision from the inferior portion of L3 down to the superior portion of S1. There was a great deal of scar on this left side, particularly at L4-5. I dissected down bilaterally, exposing the spinous process and lamina of L4 and the spinous process and lamina of L5. There was marked facet mobility, in fact fractured facet at the L4-5 level on the left with collapse. I dissected out laterally bilaterally and exposed the facet complex at L4-5 and then the transverse process of L5. I worked up in a careful manner in a cephalad direction and exposed the transverse processes of L4 bilaterally, using great care to avoid any compromise or exposure of the L3-4 facet complex. I irrigated the wound with antibiotic solution. I then used a double-action rongeur to remove the spinous processes and lamina which remained at L4 and L5. I had dissected around the L4-5 scar on the left side, of course, but was able to do so and then fully decompress the thecal sac from superior L4 through L5. Working from the patient's left side toward the right, I undercut the medial facet complex and decompressed the lateral recess stenosis here. I took the L4-5 facet down as well. I went around to the patient's right, worked back toward the left, worked around and through scar, and decompressed the exiting L5 root which was markedly compromised, as well as the exiting L4 root. There was tremendous scar here from this collapsed, fractured, and failed facet. I then worked underneath the L5 root on the left, worked in a cephalad direction, and found recurrent disc herniation. I was able to dissect through this using both blunt and sharp dissection techniques, avoiding injury to the L5 and the L4 root, and then retract the nerve root medially. The markedly collapsed interspace here was identified. Posterior lumbar interbody fusion instruments were then sequentially used, beginning with an 8 mm blade up to an 11 mm blade, decorticating the inferior left

 

**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

endplate of L4 as well as the superior endplate of L5. Disc material was removed with interspace rongeurs. I then dissected on the patient's right side, careful to avoid any compromise of the L4-5 root on the right. Again, posterior lumbar interbody blades were used to remove disc material and decorticate the endplates sequentially from 8 mm to 11. I then used a box cutter to decorticate the endplates even better at the inferior L4 and superior L5 bilaterally. I then placed a distraction device in the interspace 12 mm. I used a 13 mm allograft posterior lumbar interbody fusion substrate and tapped these as interposition grafts, first on the patient's left and then the right. These appeared to be in good position, and we had markedly increased, although not quite to normal, the interspace height from her preoperative collapsed circumstance. There was immediate firmness and stability to this previously very unstable joint. I then passed bone screws via the pedicles into the bodies with the use of intraoperative fluoroscopy into L4 and L5 bilaterally. I decorticated the exposed dorsolateral surfaces of L4 and L5. I morselized all the patient's bone which I had removed during the laminectomy and facetectomy completely of L4 and L5, admixed this with bone morphogenic protein putty and paste, and then packed it over the exposed dorsolateral surfaces of L4 and L5. Contoured rods were then secured to the bone screws at L4 and L5 bilaterally and locked into position, completing the procedure. I irrigated the wound with antibiotic solution. There was no evidence of nerve root compromise, thecal sac compression, or CSF leak. Bleeding was well controlled. I placed a drain. We closed the wound in multiple layers. The skin edges were approximated with a running nylon suture.

I personally supervised the entirety of the procedure and performed the essential elements outlined above.

Mark N. Hadley, M.D. / 07120 / TL030

LINA/Cleiland 0860

**UAB**    The University of Alabama at Birmingham    PAGE 1
The Medical Center/University of Alabama Hospitals

## DISCHARGE SUMMARY

NAME: CLEILAND, CATHY

MED.REC.NO.: 00698678    ROOM:

SERVICE: Mark N. Hadley, M.D./2823

ADMITTED: 12/16/03    DISCHARGED: 12/18/03

DICTATED: 12/18/03    TRANSCRIBED: 12/18/03

ADMISSION DIAGNOSIS:    Lumbar instability.

DISCHARGE DIAGNOSIS:    Same.

PROCEDURE:    L4-5 laminectomy and diskectomy with
L4-5 internal fixation and fusion and
L4-5 posterior lumbar interbody fusion
by Dr. Hadley on 12/16.

HISTORY OF PRESENT ILLNESS:  The patient is a 46-year-old white
female with a one and a half year history of low back pain and
left leg pain with numbness in the lateral left leg and plantar
surface of the left foot.  She has a history of prior lumbar
surgery.  Exam and imaging is consistent with L4-5 instability.
She presents now for elective decompression with L4-5 posterior
lumbar interbody fusion.

Please see history and physical for further details.

HOSPITAL COURSE:  The patient underwent the aforementioned
procedure which she tolerated without difficulty.  She was
followed on the floor postoperatively where she had an
uncomplicated hospital course and mobilized in a timely fashion
and she remained neurologically stable in comparison to her
preoperative exam.  She had a slight foot drop on the left
preoperatively and this was felt to have improved actually
somewhat on postoperative day one with almost normal strength on
the left side with dorsiflexion.  She was fitted with an LSO bra
and approved for discharge the morning of 12/18.

DISCHARGE CONDITION:  Good.

DISPOSITION:  Home.

DISCHARGE MEDICATIONS: Neurontin 300 mg t.i.d.; Robaxin, Lortab
and Advil as needed for pain.

LINA/Cleiland 0861



**The University of Alabama at Birmingham**
**The Medical Center/University of Alabama Hospitals**

PAGE 2

### DISCHARGE SUMMARY

NAME: CLEILAND, CATHY                MED.REC.NO.: 00698878   ROOM:

Followup is on 12/29 for a wound check with Dr. Hadley.

Kevin N. Ammar, M.D./07734/TL032

Mark N. Hadley, M.D.

UNIVERSITY OF ALABAMA HOSPITAL LABORATORIES
THE KIRKLIN CLINIC
2000 5TH AVENUE SOUTH
BIRMINGHAM, AL 35233          (205) 801-8723

PATIENT NAME:    CLEILAND, CATHY K
MEDICAL RECORD:  (00000)00000-0698678
AGE:  46 YRS     SEX: F     RACE: W
LOCATION:  PAC
ADMIT DATE: 11/17/03   DISCH DATE: 11/22/03
PHYSICIAN:  HADLEY, MARK M.
CONSULTING PHYSICIANS:  HADLEY, MARK M.

**************************************************************************************
GENERAL CHEMISTRY
**************************************************************************************

| PROCEDURE | SODIUM | POTASSIUM | CHLORIDE | BICARBONATE | ANION GAP | GLUCOSE RANDOM |
|---|---|---|---|---|---|---|
| UNITS | MEQ/L | MEQ/L | MEQ/L | MEQ/L | MEQ/L | MG/DL |
| REF RANGE | [133-145] | [3.3-5.1] | [96-108] | [23-29] | [8.0-16.0] | [70-105] |
| 11/17/03  1552 | 141 | 4.6 | 102 | 30 H | 9.0 | 367 H |

| PROCEDURE | BUN | CREATININE | CALCIUM | C-REACTIVE PROT |
|---|---|---|---|---|
| UNITS | MG/DL | MG/DL | MG/DL | |
| REF RANGE | [6-19] | [0.4-1.2] | [8.4-10.2] | |
| 11/17/03  1552 | 6 | 0.7 | 9.6 | IN LAB |

**************************************************************************************
URINALYSIS
**************************************************************************************

- MACROSCOPIC AND CHEMICAL SCREENING -

| PROCEDURE | COLLECT TIME | RECEIPT TIME | ANALYSIS TIME | COLOR | CLARITY | SPEC GRAVITY | pH |
|---|---|---|---|---|---|---|---|
| UNITS | HOURS | HOURS | HOURS | | | | |
| REF RANGE | | | | [YELLOW] | [CLEAR] | [1.003-1.035] | [4.5-8.0] |
| 11/17/03  1552 | 1620 | 1625 | 1630 | STRAW | HAZY * | 1.018 | 5.0 |

| PROCEDURE | PROTEIN | GLUCOSE | KETONES | BILIRUBIN | BLOOD | NITRITE | LEUKOCYTE ESTER |
|---|---|---|---|---|---|---|---|
| REF RANGE | [NEGATIVE] | [NEGATIVE] | [NEGATIVE] | [NEGATIVE] | [NEGATIVE] | [NEGATIVE] | |
| 11/17/03  1552 | NEGATIVE | 3+ * | NEGATIVE | NEGATIVE | NEGATIVE | NEGATIVE | NEGATIVE |

- CELLULAR COMPONENTS -

| PROCEDURE | WBC | SQUAMOUS |
|---|---|---|
| UNITS | /HPF | /LPF |
| 11/17/03  1552 | 0-5 * | FEW * |

LEGEND:
H = HIGH.  * = ABNORMAL

PATIENT NAME: CLEILAND, CATHY K                              PAGE:   1

*****************************************************
*          OUTPATIENT LABORATORY REPORT             *
*****************************************************

PRINTED: 11/17/03 103

CHEMISTRY     URINALYSIS

LINA/Cleiland 0863

UNIVERSITY OF ALABAMA HOSPITAL LABORATORIES
THE KIRKLIN CLINIC
2000 5TH AVENUE SOUTH
BIRMINGHAM, AL 35233          (205) 801-8723

PATIENT NAME:     CLEILAND, CATHY K
MEDICAL RECORD:  (00000)00000-0698678
AGE:  46 YRS      SEX: F      RACE: W
LOCATION:  PAC
ADMIT DATE: 11/17/03   DISCH DATE: 11/22/03
PHYSICIAN: HADLEY, MARK M.
CONSULTING PHYSICIANS: HADLEY, MARK M.

**************************************************************************
                              URINALYSIS
**************************************************************************

- MISCELLANEOUS -

    PROCEDURE     BACTERIA
    REF RANGE     [NEGATIVE]
11/17/03  1552    MANY *

**************************************************************************
                            BLOOD CELL PROFILE
**************************************************************************

- BLOOD CELL PROFILE -

| PROCEDURE | HEMATOCRIT | HEMOGLOBIN | RBC | MCV | MCH | MCHC | RDW | %PLATELET COUNT |
|---|---|---|---|---|---|---|---|---|
| UNITS | % | GM/DL | MI/CMM | FL | PG | G/DL | % | 10 X3 |
| REF RANGE | [33-45] | [11.3-15.2] | [3.80-5.20] | [80-96] | [27-33] | [32-36] | [11.0-16.0] | [150.0-400.0] |
| 11/17/03  1552 | 39 | 12.9 | 4.38 | 88 | 29 | 33 | 11.9 | 455.9 H |

    PROCEDURE     MPV
11/17/03  1552    7

---WBC INSTRUMENT (AUTOMATED) DIFFERENTIAL---

    PROCEDURE     WBC
    UNITS         10 X3
    REF RANGE     [4.80-11.00]
11/17/03  1552    9.15

**************************************************************************
                         MISCELLANEOUS HEMATOLOGY
**************************************************************************

    PROCEDURE     SED RATE
11/17/03  1552    IN LAB

LEGEND:
H = HIGH, * = ABNORMAL

PATIENT NAME: CLEILAND, CATHY K                          PAGE:  2
                **********************************
                *    OUTPATIENT LABORATORY REPORT    *
                **********************************
                                                   PRINTED: 11/17/03 183

        URINALYSIS      HEMATOLOGY      MISC HEMATOLOGY

LINA/Cleiland 0864

UNIVERSITY OF ALABAMA HOSPITAL LABORATORIES
THE KIRKLIN CLINIC
2000 5TH AVENUE SOUTH
BIRMINGHAM, AL 35233          (205) 801-8723

PATIENT NAME:    CLEILAND, CATHY E
MEDICAL RECORD:  (00000)00000-0698678
AGE:  44 YRS      SEX: F      RACE: W
LOCATION:  PAC
ADMIT DATE: 11/17/03    DISCH DATE: 11/22/03
PHYSICIAN: HADLEY, MARK N.
CONSULTING PHYSICIANS:  HADLEY, MARK N.

*************************************************************************************
                                   COAGULATION
*************************************************************************************

- PROTHROMBIN TIME AND PARTIAL THROMBOPLASTIN TIME -

| PROCEDURE | PT PATIENT | I N R | PTT PATIENT |
| UNITS | SEC | | SEC |
| REF RANGE | [12.6-14.6] | | [24-38] |
| 11/17/03  1552 | 13.1 | 1.00 | 25 |

PATIENT (10/31/02 -- Current)
    LTV: GREATER THAN 100 SECONDS.
    THERAPEUTIC GOALS FOR HEPARIN THERAPY:
    52-75 SECONDS FOR PREVENTION OF DVT
    68-100 SECONDS FOR TREATMENT OF DVT

** LAST PAGE OF PATIENT REPORT **

PATIENT NAME: CLEILAND, CATHY E                           PAGE:  3
                    *****************************************
                    *    OUTPATIENT LABORATORY REPORT    *
                    *****************************************
                                                    PRINTED: 11/17/03 18:
                                        COAGULATION

LINA/Cleiland 0865

*Facsimile Transmission Cover Sheet*



**CIGNA Group Insurance**
Life • Accident • Disability

| Transmit to FAX number (334)834-1936 | Date February 12, 2004 | Time 9:47 AM | Total number of pages (including this sheet): 5 |
|---|---|---|---|

| To: | From |
|---|---|

| **Name** Dr. John Hackman | **Name** Drusilla Gamez |
| **Company** | **Department** Disability Management Solutions |
| **Phone** (334)834-1663 | **Phone** 800.352.0611 ext. 6505 |
| **Address** | **Address** 12225 Greenville Avenue Suite 1000 Dallas, TX 75243 |

Comments FLK 20104  Life Insurance Company of North America

RE: Cathy Cleiland     DOB:

We are requesting an update for the above referenced patient. The continuation of benefits is pending the information requested.

> ➤ **Please include recent office notes/lab tests/diagnostics/consultations and test results from September 19, 2003 to the present.** The patient has not been seen since 09-18-03. Patient is currently being treated at UAB.
> ➤ **Please complete the following Physical Abilities Assessment and Follow-Up Medical Request form.**

If there are any problems or questions feel free to call me at 1.800.352.0611, ext. 6505.

Please fax your response to 800.325.7016. If you provide us with your tax identification number, we will be glad to honor a reasonable fee for the request.

We will need this information to us by February 26, 2004.

Thank you for your time and assistance in this matter.

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

[ ] Acknowledgment Requested                    To Fax a reply, dial: 800.325.7016

LINA/Cleiland 0866

***Disability Management Solutions*** ™
***Follow-Up Medical Request Form***



CIGNA Group Insurance
Life • Accident • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



We are continuing to evaluate your patient's disability claim.  Please respond to the following questions.
Attached is a Department of Labor description of your patient's occupation for your reference.
**Please document your medical findings by providing copies of supporting reports; such as office notes/consultations/testing.**
*(Failure to provide the requested reports may result in delay in the claim determination).*

| Claimant Name: | Date of Birth: |
|---|---|
| **CATHY CLEILAND** | |

How has the patient's condition changed since the last update?  ☐ No change   ☐ Improved   ☐ Worse

| Date of your patient's last office visit: | When is your patient's next office visit? |
|---|---|

Please list any change in the treatment plan since the last update:

Please list all current medications that are related to this impairment or impact return to work:

What are the specific restrictions that you have placed on your patient at this time?

At Work:

At Home  *(Activities of Daily Living)*:

Do you expect functional deficits to prevent your patient from performing essential job functions?   ☐ Yes   ☐ No
Please specify:

Could your patient return to work at this time if accommodations were made for the listed restrictions?   ☐ Yes   ☐ No
If no, why not?

If no, based on your experience, what is your best estimate of when your patient can return to work?
With Restrictions: _____     Without Restrictions: _____

| Physician Name  *(Please Print)*: | Degree & Specialty: |
|---|---|
| Address: *(Street, City, State, Zip Code)* | |
| Telephone Number: ( ) | Federal Tax ID #: |
| Physician Signature: | Date: |

618261 5-03

***Thank you for your time.***

***Disability Management Solutions*** ℠
***Physical Abilities Assessment Form***

**CIGNA Group Insurance**
Life • Accident • Disability

Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



We are evaluating your patient's disability claim in order to determine functional impairment.
Please document your objective findings *(check below)* and provide copies of supporting reports such as office notes/consultations/testing.
*(Failure to provide the requested reports/data may result in delay in claim determination).*

| Claimant Name: | | Date of Birth: |
|---|---|---|
| CATHY CLEILAND | | |

ICD-9 Diagnosis:

Please check (✓) the boxes corresponding to the patient's level of physical functionality. Please substantiate your findings with medical documentation.

In an 8 hour workday, the patient can tolerate, with positional changes and meal breaks, the following activities for the specified durations:

| ASSESSMENT OF PHYSICAL ABILITIES | CONTINUOUSLY (67% - 100%) (5.5+ hrs.) | FREQUENTLY (34% - 66%) (2.5 - 5 hrs.) | OCCASIONALLY (1% - 33%) (<2.5 hrs.) | NONE (0%) (0 hrs.) | CHECK (✓) IF SUPPORTED BY OBJECTIVE FINDINGS |
|---|---|---|---|---|---|
| Sitting: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Standing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Walking: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Climbing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Balancing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Kneeling: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Crawling: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Crouching: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Stooping: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Hearing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Reaching: Overhead | ☐ | ☐ | ☐ | ☐ | ☐ |
| Desk Level | ☐ | ☐ | ☐ | ☐ | ☐ |
| Below Waist | ☐ | ☐ | ☐ | ☐ | ☐ |
| Seeing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Smelling/Tasting: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Extremes in Heat: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Extremes in Cold: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Odors/Fumes/Particles: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Ability to Work Extended Hours/OT: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Use of Lower Extremities for Foot Control: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Vibration: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Wet/Humid Conditions: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Can Work Around Machinery: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Fine Manipulation: Specify frequency and L or R | | | | | |
| Simple Grasp: Specify frequency and L or R | | | | | |
| Firm Grasp: Specify frequency and L or R | | | | | |

618253  5-03

*(Continued on Reverse Side)*

LINA/Cleiland 0868

In the last column check (√) the box which corresponds to the patient's level of physical work function. Please substantiate your findings with medical documentation.

In an 8 hour workday, the patient can tolerate, with positional changes and meal breaks, the following:

| PHYSICAL WORK LEVEL (Lift, Carry, Push, Pull) | CONTINUOUSLY Over 2/3 of the day (5 or more lifts/min.) | FREQUENTLY 1/3 to 2/3 of the day (Up to 4 lifts/min.) | OCCASIONALLY Up to 1/3 of the day (1 lift/5=min.) | APPROXIMATE ENERGY REQUIRED IN WORK METS* | MOST APPLICABLE IN YOUR OPINION (Check (√) One) |
|---|---|---|---|---|---|
| No Work | None | None | None | None | ☑ |
| Sedentary | Negligible (mostly sitting) | Negligible | 10 lbs. (stand/walk occasionally) | 1.5 - 2.1 | ☐ |
| Light | Negligible | 10 lbs. (stand/walk occasionally) | 20 lbs. | 2.2 - 3.5 | ☐ |
| Medium | 10 lbs. | 10 - 25 lbs. | 20 - 50 lbs. | 3.6 - 6.3 | ☐ |
| Heavy | 10 - 20 lbs. | 25 - 50 lbs. | 50 - 100 lbs. | 6.4 - 7.5 | ☐ |
| Very Heavy | 20 - 50 lbs. | 50 - 100 lbs. | 100+ lbs. | Over 7.5 | ☐ |

*One MET is equivalent to the amount of energy expended in a resting state, for example sitting in a chair and not moving. Activities can be calculated as multiples of the resting state. Therefore a 3 MET activity would mean the activity requires 3 times the amount of energy required to sit in a chair.

Additional Comments on Functionality:




Physician Name  (Please Print):                                    Medical Specialty:

Address: (Street, City, State, Zip Code)

Telephone Number:                                                    Federal Tax ID #:

Physician Signature:                                                 Date:

*Thanks in advance for your prompt response to this request.*

LINA/Cleiland 0869

## DISCLOSURE AUTHORIZATION

Claimant's Name (Please Print): CATHY CLEILAND

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome). If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a)reinsuring companies; b)the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c)fraud or overinsurance detection bureaus; d)anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e)for audit or statistical purposes; f)as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: _Cathy Cleiland_ _____ Date: 11-12-2003

Relationship,
if other than Claimant: _____ Claimant's Social Security Number: _____

Company Name: _Temple Inland Forest Products Corp._

### PROHIBITION ON RE-DISCLOSURE

If the medical information contains information regarding drug or alcohol abuse, it may be protected under federal law. Federal regulations (42 CFR Part 2) prohibit any person or entity who receives such protected information from the Company from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulation. A general authorization for the release of medical or other information is not sufficient for this purpose. The federal rules restrict any use of such protected information to criminally investigate or prosecute any alcohol or drug abuse patient.

LINA/Cleiland 0870



Page 1 of

| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: FLK 0020104 | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

(first record)     Add a New Incident Note     

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 03/12/2004 01:25:55 PM Edit | Financial Management | Narrative | GAMEZ, DRUSILLA | ICARE |

### ICARE Note Text

-----Original Message-----
From: Trudy Wagner [mailto:trudy.wagner@advantage2k.com]
Sent: Tuesday, March 09, 2004 2:12 PM
To: drusilla.gamez@cigna.com
Subject: Claimant: Cathy Cleiland - Administrative Law Judge Hearing - Policy ID #: FLK 20104


03/09/2004 1:59:52 PM
SSN: 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
Policy ID #: FLK 20104
Claimant: Cathy Cleiland - Administrative Law Judge Hearing
Client: CIGNA Group Insurance - Dallas TX FCO / Drusilla Gamez (800) 352-0611 - drusilla.gamez@cigna.com

Drusilla,

We received the signed Hearing Request forms back from Ms. Cleiland and are forwarding them to Social Security. Dan Schulte is the Case Manager handling this claim. If you have any questions, you may reach Mr. Schulte at (800)580-5299 ext. 123.

Also, please send us any medical information you have for Ms. Cleiland.

Thank you,

Trudy Wagner
Claims Unit Assistant
Advantage 2000 Consultants
One Corporate Drive
Swansea, IL 62226
(800)580-5299 x144 (618)212-1144
Fax: (314)894-4891
trudy.wagner@advantage2k.com

LINA/Cleiland 0871

Claimant: Cathy Cleiland – Administrative Law Judge Hearing – Policy ID #: FLK 20104    Page 1 of 1

## Gamez, Drusilla A 212

**From:** Trudy Wagner [trudy.wagner@advantage2k.com]
**Sent:** Tuesday, March 09, 2004 2:12 PM
**To:** drusilla.gamez@cigna.com
**Subject:** Claimant: Cathy Cleiland - Administrative Law Judge Hearing - Policy ID #: FLK 20104

03/09/2004 1:59:52 PM
SSN:
Policy ID #: FLK 20104
Claimant: Cathy Cleiland - Administrative Law Judge Hearing
Client: CIGNA Group Insurance - Dallas TX FCO / Drusilla Gamez (800) 352-0611 - drusilla.gamez@cigna.com

### Drusilla,

We received the signed Hearing Request forms back from Ms. Cleiland and are forwarding them to Social Security. Dan Schulte is the Case Manager handling this claim. If you have any questions, you may reach Mr. Schulte at (800)580-5299 ext. 123.

Also, please send us any medical information you have for Ms. Cleiland.

Thank you,

## Trudy Wagner
Claims Unit Assistant
Advantage 2000 Consultants
One Corporate Drive
Swansea, IL 62226
(800)580-5299 x144  (618)212-1144
Fax: (314)894-4891
trudy.wagner@advantage2k.com

03/12/2004

TRANSMISSION VERIFICATION REPORT

```
                                    TIME : 02/12/2004 10:42
                                    NAME :
                                    FAX  :
                                    TEL  :
```

```
DATE,TIME          02/12 10:40
FAX NO./NAME       912059346507-31477
DURATION           00:02:21
PAGE(S)            05
RESULT             OK
MODE               STANDARD
                   ECM
```

LINA/Cleiland 0873

*Facsimile Transmission Cover Sheet*




**CIGNA** Group Insuranc
Life · Accident · Disability

| Transmit to FAX number (205)934-6507 | Date February 12, 2004 | Time 10:25 AM | Total number of pages (including this sheet): 5 |
|---|---|---|---|

| To: | From |
|---|---|
| Name Dr. Hadley | Name Drusilla Gamez |
| Company | Department Disability Management Solutions |
| Phone (205)934-7170 | Phone 800.352.0611 ext. 6505 |
| Address | Address 12225 Greenville Avenue Suite 1000 Dallas, TX 75243 |

Comments  FLK 20104  Life Insurance Company of North America

RE: Cathy Cleiland        DOB:

We are requesting an update for the above referenced patient. The continuation of benefits is pending the information requested.

> ➢  **Please include recent office notes/lab tests/diagnostics/consultations and test results from October 2003 to the present.**

> ➢  **Please complete the following Physical Abilities Assessment and Medical Request form.**

If there are any problems or questions feel free to call me at 1.800.352.0611, ext. 6505.

Please fax your response to 800.325.7016. If you provide us with your tax identification number, we will be glad to honor a reasonable fee for the request.

We will need this information to us by February 26, 2004.

Thank you for your time and assistance in this matter.

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

[ ] Acknowledgment Requested                To Fax a reply, dial: 800.325.7016

*Disability Management Solutions* ℠
*Medical Request Form*



**CIGNA Group Insurance**
Life ● Accident ● Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



CIGNA

We are evaluating your patient's disability claim. Please respond to the following questions.
Please provide copies of supporting reports, such as office notes/consultations/testing.
*(Failure to provide the reports may result in delay in the claim determination).*

| Claimant Name: CATHY CLEILAND | Date of Birth: |
|---|---|

What is the primary diagnosis responsible for your patient's impairment that - in your opinion - is preventing return to work?

| What is the ICD-9 code for the above diagnosis? | Date of Injury/Illness: | Is this condition work related? ☐ Yes ☐ No |
|---|---|---|

What are the specific additional *(medical/non-medical)* factors impacting return to work, if any?

| When did you first treat your patient for this current impairment episode? | Have you treated your patient for this impairment prior to this episode? ☐ Yes ☐ No If yes, when? _____ | Date of last visit: | When is your patient's next office visit? |
|---|---|---|---|

Does treatment plan for this impairment episode include any of the following? *(Please list as appropriate and provide supporting documentation)*

☐ Physical Therapy: _____     ☐ Electrodiagnostic Studies: _____
☐ Surgery: _____     ☐ Imaging Studies: _____
☐ Specialty Referral: _____     ☐ Other: _____

Please list all current medications that are related to this impairment or impact return to work: *(Please include dosage and frequency)*

What are the specific restrictions that you have placed on your patient?

At Work:

At Home *(Activities of Daily Living):*

Could your patient return to work at this time if accommodations were made for the listed restrictions? ☐ Yes ☐ No
If no, why not?

If no, based on your experience, what is your best estimate of when your patient can return to work?
With Restrictions: _____     Without Restrictions: _____

| Physician Name *(Please Print):* | Degree & Specialty: |
|---|---|
| Address: *(Street, City, State, Zip Code)* | |
| Telephone Number: ( ) | Federal Tax ID #: |
| Physician Signature: | Date: |

618136  Rev. 09-2003

LINA/Cleiland 0875

TRANSMISSION VERIFICATION REPORT

```
                                    TIME : 02/12/2004 10:07
                                    NAME :
                                    FAX  :
                                    TEL  :
```

```
DATE,TIME              02/12 10:04
FAX NO./NAME           912515757730-31477
DURATION               00:02:22
PAGE(S)                05
RESULT                 OK
MODE                   STANDARD
                       ECM
```

LINA/Cleiland 0876

*Facsimile Transmission Cover Sheet*



**CIGNA** Group Insurance
Life · Accident · Disability

| Transmit to FAX number (251)575-7730 | Date February 12, 2004 | Time 9:55 AM | Total number of pages (including this sheet): 5 |
|---|---|---|---|

| To: | From |
|---|---|
| **Name** Dr. Charles Eddins | **Name** Drusilla Gamez |
| **Company** | **Department** Disability Management Solutions |
| **Phone** (251)575-4825 | **Phone** 800.352.0611 ext. 6505 |
| **Address** | **Address** 12225 Greenville Avenue Suite 1000 Dallas, TX 75243 |

Comments  FLK 20104   Life Insurance Company of North America

RE: Cathy Cleiland      DOB:

We are requesting an update for the above referenced patient.  The continuation of benefits is pending the information requested.

> ➤ **Please include recent office notes/lab tests/diagnostics/consultations and test results from May 2003 to the present.**

> ➤ **Please complete the following Physical Abilities Assessment and Follow-Up Medical Request form.**

If there are any problems or questions feel free to call me at 1.800.352.0611, ext. 6505.

Please fax your response to 800.325.7016.  If you provide us with your tax identification number, we will be glad to honor a reasonable fee for the request.

We will need this information to us by February 26, 2004.

Thank you for your time and assistance in this matter.

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America and Connecticut General Life Insurance Company.  "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

[ ] Acknowledgment Requested                    To Fax a reply, dial: 800.325.7016

LINA/Cleiland 0877

TRANSMISSION VERIFICATION REPORT

```
                                      TIME : 02/12/2004 09:59
                                      NAME :
                                      FAX  :
                                      TEL  :
```

```
DATE,TIME            02/12 09:57
FAX NO./NAME         913340341936-31477
DURATION             00:02:15
PAGE(S)              05
RESULT               OK
MODE                 STANDARD
                     ECM
```

LINA/Cleiland 0878

*Facsimile Transmission Cover Sheet*



**CIGNA Group Insuranc**
Life - Accident - Disability

| Transmit to FAX number<br>(334)834-1936 | Date<br>February 12, 2004 | Time<br>9:47 AM | Total number of pages<br>(including this sheet): 5 |
|---|---|---|---|

| To: | From |
|---|---|

| Name<br>Dr. John Hackman | Name<br>Drusilla Gamez |
| Company | Department<br>Disability Management Solutions |
| Phone<br>(334)834-1663 | Phone<br>800.352.0611 ext. 6505 |
| Address | Address<br>12225 Greenville Avenue<br>Suite 1000<br>Dallas, TX 75243 |

Comments  FLK 20104  Life Insurance Company of North America

RE: Cathy Cleiland     DOB:

We are requesting an update for the above referenced patient. The continuation of benefits is
pending the information requested.

> ➢ **Please include recent office notes/lab tests/diagnostics/consultations
>    and test results from September 19, 2003 to the present.**

> ➢ **Please complete the following Physical Abilities Assessment and Follow-
>    Up Medical Request form.**

If there are any problems or questions feel free to call me at 1.800.352.0611, ext. 6505.

Please fax your response to 800.325.7016. If you provide us with your tax identification number, we
will be glad to honor a reasonable fee for the request.

We will need this information to us by February 26, 2004.

Thank you for your time and assistance in this matter.

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The
documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s)
or entity named above. Thank you for your compliance.*

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America and
Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

[ ] Acknowledgment Requested                To Fax a reply, dial: 800.325.7016

LINA/Cleiland 0879

*Disability Management Solutions*™
*Follow–Up Medical Request Form*



CIGNA Group Insurance
Life • Accident • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



CIGNA

We are continuing to evaluate your patient's disability claim. Please respond to the following questions.
Attached is a Department of Labor description of your patient's occupation for your reference.
**Please document your medical findings by providing copies of supporting reports, such as office notes/consultations/testing.**
*(Failure to provide the requested reports may result in delay in the claim determination).*

| Claimant Name: | Date of Birth: |
|---|---|
| **CATHY CLEILAND** | |

How has the patient's condition changed since the last update?   ☐ No change   ☐ Improved   ☐ Worse

| Date of your patient's last office visit: | When is your patient's next office visit? |
|---|---|

Please list any change in the treatment plan since the last update:

Please list all current medications that are related to this impairment or impact return to work:

What are the specific restrictions that you have placed on your patient at this time?

At Work:

At Home  *(Activities of Daily Living):*

Do you expect functional deficits to prevent your patient from performing essential job functions?   ☐ Yes   ☐ No
Please specify:

Could your patient return to work at this time if accommodations were made for the listed restrictions?   ☐ Yes   ☐ No
If no, why not?

If no, based on your experience, what is your best estimate of when your patient can return to work?
With Restrictions: _____   Without Restrictions: _____

| Physician Name  *(Please Print):* | Degree & Specialty: |
|---|---|
| Address: *(Street, City, State, Zip Code)* | |
| Telephone Number:<br>(     ) | Federal Tax ID #: |
| Physician Signature: | Date: |

618281  5-03

*Thank you for your time.*

LINA/Cleiland 0880

# EXHIBIT 1 TO EXHIBIT A Part 17

*Disability Management Solutions*℠
*Physical Abilities Assessment Form*



**CIGNA Group Insurance**
Life • Accident • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



CIGNA

We are evaluating your patient's disability claim in order to determine functional impairment.
Please document your objective findings *(check below)* and provide copies of supporting reports such as office notes/consultations/testing.
*(Failure to provide the requested reports/data may result in delay in claim determination).*

| Claimant Name: | Date of Birth: |
|---|---|
| **CATHY CLEILAND** | |

ICD-9 Diagnosis:

Please check (√) the boxes corresponding to the patient's level of physical functionality. Please substantiate your findings with medical documentation.

In an 8 hour workday, the patient can tolerate, with positional changes and meal breaks, the following activities for the specified durations:

| ASSESSMENT OF PHYSICAL ABILITIES | CONTINUOUSLY (67% - 100%) (5.5+ hrs.) | FREQUENTLY (34% - 66%) (2.5 - 5 hrs.) | OCCASIONALLY (1% - 33%) (<2.5 hrs.) | NONE (0%) (0 hrs.) | CHECK (√) IF SUPPORTED BY OBJECTIVE FINDINGS |
|---|---|---|---|---|---|
| Sitting: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Standing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Walking: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Climbing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Balancing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Kneeling: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Crawling: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Crouching: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Stooping: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Hearing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Reaching:  Overhead | ☐ | ☐ | ☐ | ☐ | ☐ |
|  Desk Level | ☐ | ☐ | ☐ | ☐ | ☐ |
|  Below Waist | ☐ | ☐ | ☐ | ☐ | ☐ |
| Seeing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Smelling/Tasting: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Extremes in Heat: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Extremes in Cold: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Odors/Fumes/Particles: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Ability to Work Extended Hours/OT: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Use of Lower Extremities for Foot Control: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Vibration: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Wet/Humid Conditions: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Can Work Around Machinery: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Fine Manipulation: Specify frequency and L or R | | | | | |
| Simple Grasp: Specify frequency and L or R | | | | | |
| Firm Grasp: Specify frequency and L or R | | | | | |

618253  5-03    *(Continued on Reverse Side)*

LINA/Cleiland 0881

In the last column check (✓) the box which corresponds to the patient's level of physical work function. Please substantiate your findings with medical documentation.

In an 8 hour workday, the patient can tolerate, with positional changes and meal breaks, the following:

| PHYSICAL WORK LEVEL (Lift, Carry, Push, Pull) | CONTINUOUSLY Over 2/3 of the day (5 or more lifts/min.) | FREQUENTLY 1/3 to 2/3 of the day (Up to 4 lifts/min.) | OCCASIONALLY Up to 1/3 of the day (1 lift/5 min.) | APPROXIMATE ENERGY REQUIRED IN WORK METS* | MOST APPLICABLE IN YOUR OPINION (Check (✓) One) |
|---|---|---|---|---|---|
| No Work | None | None | None | None | ☐ |
| Sedentary | Negligible (mostly sitting) | Negligible | 10 lbs. (stand/walk occasionally) | 1.5 - 2.1 | ☐ |
| Light | Negligible | 10 lbs. (stand/walk occasionally) | 20 lbs. | 2.2 - 3.5 | ☐ |
| Medium | 10 lbs. | 10 - 25 lbs. | 20 - 50 lbs. | 3.6 - 6.3 | ☐ |
| Heavy | 10 - 20 lbs. | 25 - 50 lbs. | 50 - 100 lbs. | 6.4 - 7.5 | ☐ |
| Very Heavy | 20 - 50 lbs. | 50 - 100 lbs. | 100+ lbs. | Over 7.5 | ☐ |

*One MET is equivalent to the amount of energy expended in a resting state, for example sitting in a chair and not moving. Activities can be calculated as multiples of the resting state. Therefore a 3 MET activity would mean the activity requires 3 times the amount of energy required to sit in a chair.

Additional Comments on Functionality:

| Physician Name  (Please Print): | Medical Specialty: |
|---|---|
| Address: (Street, City, State, Zip Code) | |
| Telephone Number: | Federal Tax ID #: |
| Physician Signature: | Date: |

*Thanks in advance for your prompt response to this request.*

LINA/Cleiland 0882



## DISCLOSURE AUTHORIZATION

Claimant's Name (Please Print): _CATHY CLEILAND_

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome). If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a)reinsuring companies; b)the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c)fraud or overinsurance detection bureaus; d)anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e)for audit or statistical purposes; f)as may be required or permitted by law;g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: _Cathy Cleiland_    Date: _11-12-2003_

Relationship,
if other than Claimant: _____    Claimant's Social Security Number: _____

Company Name: _Temple Inland Forest Products Corp._

## PROHIBITION ON RE-DISCLOSURE

If the medical information contains information regarding drug or alcohol abuse, it may be protected under federal law. Federal regulations (42 CFR Part 2) prohibit any person or entity who receives such protected information from the Company from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulation. A general authorization for the release of medical or other information is not sufficient for this purpose. The federal rules restrict any use of such protected information to criminally investigate or prosecute any alcohol or drug abuse patient.

*Backflow Request Form*

| FROM: | BA | Dratella Gumez | | DATE: | 2-3-04 |
|---|---|---|---|---|---|
| TO: | | CLERICAL PROCESSING | | | |

**CIGNA**

☐ ADD Certholder Record    Social Security Number _____

Remarks: _____
_____
_____
_____

Completed:
DATE: / /    INITIALS:
Not Completed:
DATE: / /    REASON:

☐ ADD Claimant Record

Remarks: _____
_____
_____

Completed:
DATE: / /    INITIALS:
Not Completed:
DATE: / /    REASON:

☐ CHANGE the following

A) Certholder Record:

Last Name to _____
First Name/MI to _____
Certholder DOB to _____
Spouse DOB to _____
DOB Indicator to _____

B) Claimant Record:

Last Name to _____
Social Security Number to _____
Claimant DOB _____

Completed:
DATE: / /    INITIALS:
Not Completed:
DATE: / /    REASON:

*Cathy Cleiland    SSN?*

☒ CHANGE Certholder Address:

A) ADDR1 _____
ADDR2 _____
CITY _____
ST/PRCV _____

Completed:
DATE: 2/4/04    INITIALS: CW
Not Completed:
DATE: / /    REASON:

☐ OTHER: _____
_____
_____
_____

Completed:
DATE: / /    INITIALS:
Not Completed:
DATE: / /    REASON:

Cat. #421085 GF 4655 Rev. 7-97

*Backflow Request Form*

**CIGNA**

| | |
|---|---|
| FROM: BA *Bridgett Taylor* | DATE: *1/15/04* |
| TO: CLERICAL PROCESSING *Cathy Cleiland* | |

---

☐ **ADD Certholder Record**    Social Security Number _____

Remarks: _____
_____
_____

Completed:
DATE: / /    INITIALS:
Not Completed:
DATE: / /    REASON:

---

☐ **ADD Claimant Record**

Remarks: _____
_____
_____

Completed:
DATE: / /    INITIALS:
Not Completed:
DATE: / /    REASON:

---

☐ **CHANGE the following**

A) Certholder Record:

Last Name to _____
First Name/MI to _____
Certholder DOB to _____
Spouse DOB to _____
DOB Indicator to _____

B) Claimant Record:

Last Name to _____
Social Security Number to _____
Claimant DOB _____

Completed:
DATE: / /    INITIALS:
Not Completed:
DATE: / /    REASON:

---

☒ **CHANGE Certholder Address:**

A) ADDR1 _____
ADDR2 _____
CITY *Monroeville*
ST/PRCV *AL    36460*

Completed:
DATE: *1/15/04*    INITIALS: *Cw*
Not Completed:
DATE: / /    REASON:

---

☐ **OTHER:** _____
_____
_____
_____

Completed:
DATE: / /    INITIALS:
Not Completed:
DATE: / /    REASON:

Cat. #42106S GF 4655 Rev. 7-97

LINA/Cleiland 0885



**CIGNA Group Insurance**
Life · Accident · Disability

# DIRECT DEPOSIT SERVICE AUTHORIZATION FORM

**FOLLOW THESE EASY INSTRUCTIONS TO ENROLL:**

**1.** Please complete all of the information requested whether you are enrolling for direct deposit service, requesting changes or canceling the service.

**2.** If you are receiving Survivor Income Benefits, please include the name of the deceased insured ("Certificate Holder").

**3.** Be sure to include a voided check (if requesting direct deposit to your checking account) or a deposit slip (if requesting direct deposit to your savings account).

**4.** Sign, date and return in the envelope provided. Please allow 4 to 6 weeks to process your authorization form.

Please call 1-800-352-0611 if you have any questions. Thank you!

---

*1. Please provide the following information:*

Your Name: _CATHY K. Cleiland_
Certificate Holder's Name*:

Address: _Monroeville    AL    36460_
City:            State:            Zip:

Telephone No ·
area code (        )

CIGNA Policy/Account No.: _FLK 020104_            Social Security No.:

\* Include the name of the deceased only if you are receiving Survivor Income Benefits (please disregard if you are receiving Disability Benefits).

*2. Select type of transaction:*
☑ Request to enroll
☐ Request to cancel

Change the following information
☐ Account Number
☐ Account Type
☐ Financial institution

*3. Indicate type of account:*
☑ Checking account (include a blank personal check marked "void")
☐ Savings account (include a deposit slip if available)

*4. Provide the following bank information:*
Name of Bank: _1st United Security Bank_            Branch Office: _Jackson, AL    36 54_
City: _251-246-2445_            State:            Zip:
Branch Telephone No.:                Bank Account No.:
Bank Routing No.: (First nine digits of check code line)

---

*5. Sign and date this authorization statement:*

I authorize the Insurer of the policy/account number identified above ("Company") to deposit my monthly net benefit into the account and bank I have indicated above or to such other account as the bank or any successor designates as my account. I also authorize you to debit my account for any deposits made in error. I understand that the direct deposit service is only available for personal accounts, not business or corporate. I also understand that the direct deposit service will stay in effect until I notify the company of cancellation on the direct deposit service authorization form. I accept the responsibility to notify the Company if there are any errors in my account and will not hold the Company liable if there are any errors or omissions in depositing benefit payments to my designated account.

Signature X _Cathy K. Cleiland_            Date _12-5-2003_

PM-605773

LINA/Cleiland 0886



| EE: CLEILAND, CATHY | SSN: | DOI:<br>05/14/2003 | ER: TEMPLE INLAND<br>(DIS) | ID:<br>589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD<br>0020035 | ICMS: | Other: |

### View the Details for an Incident Note

    Add a New Incident Note        (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 12/08/2003 09:22:46<br>AM Edit | Telephone Call | Narrative | TAYLOR, BRIDGETT | ICARE |

### ICARE Note Text

Call from cx

Cx called to inform CM that her date of surgery has been changed to December 16, 2003, as her physician had a death in the family and had to reschedule. Cx is now at her mom's house and will be there until after her surgery. CM thanked cx for phone call.

    Add a New Incident Note        (last record)

LINA/Cleiland 0887




# PRIORITY CLAIM CHECKLIST

Please circle all that apply and staple to the outside of the claim file:


PENDING

A/O

MAIL

PRIORITY DIARY

REP PAY < 3 WEEKS

MEDICAL APPROVE THROUGH DATE
< THREE WEEKS

EST. RTW within ONE MONTH (date)
_____

DOT       LMS       TSA
VRC OTHER _____

OTHER Need ~~DDO~~ ①DO, PA Requested med from
AP OV w/Surge
11/17/03.

Upcoming Unilynx Diary Date _____

SS VENDOR NAME (if LTD) __A2K .__

LINA/Cleiland 0888

**CX. NAME:** CLEILAND, CATHY

**SS #:**

**CM Name:** KAREN KIRBY

## Compliance Checklist

**Date Received:** 10/01/03

**Acknowledgement Must Be Sent By:** 10/10/03    **Alert to Other Benefits as required.**

**Call to claimant must be made by:** 10/07/03

| 1st Delay Date Must be Sent | If 1st Delay Sent on: | 2nd Delay Must be Sent By: | If 2nd Delay Sent on: | 3rd Delay Must Be Sent By: |
|---|---|---|---|---|
| 10/30/03 | 10/15/03 | 11/14/03 | 10/29/03 | 11/27/03 |
| | 10/16/03 | 11/14/03 | 10/30/03 | 11/28/03 |
| | 10/17/03 | 11/15/03 | 10/31/03 | 11/29/03 |
| | 10/18/03 | 11/16/03 | 11/01/03 | 11/30/03 |
| | 10/19/03 | 11/17/03 | 11/02/03 | 12/01/03 |
| | 10/20/03 | 11/18/03 | 11/03/03 | 12/02/03 |
| | 10/21/03 | 11/19/03 | 11/04/03 | 12/03/03 |
| | 10/22/03 | 11/20/03 | 11/05/03 | 12/04/03 |
| | 10/23/03 | 11/21/03 | 11/06/03 | 12/05/03 |
| | 10/24/03 | 11/22/03 | 11/07/03 | 12/06/03 |
| | 10/25/03 | 11/23/03 | 11/08/03 | 12/07/03 |
| | 10/26/03 | 11/24/03 | 11/09/03 | 12/08/03 |
| | 10/27/03 | 11/25/03 | 11/10/03 | 12/09/03 |
| | 10/28/03 | 11/26/03 | 11/11/03 | 12/10/03 |
| | 10/29/03 | 11/27/03 | 11/12/03 | 12/11/03 |
| | 10/30/03 | 11/28/03 | 11/13/03 | 12/12/03 |
| | | | 11/14/03 | 12/13/03 |
| | | | 11/15/03 | 12/14/03 |
| | | | 11/16/03 | 12/15/03 |
| | | | 11/17/03 | 12/16/03 |
| | | | 11/18/03 | 12/17/03 |
| | | | 11/19/03 | 12/18/03 |
| | | | 11/20/03 | 12/19/03 |
| | | | 11/21/03 | 12/20/03 |
| | | | 11/22/03 | 12/21/03 |
| | | | 11/23/03 | 12/22/03 |
| | | | 11/24/03 | 12/23/03 |
| | | | 11/25/03 | 12/24/03 |
| | | | 11/26/03 | 12/25/03 |
| | | | 11/27/03 | 12/26/03 |
| | | | 11/28/03 | 12/27/03 |

**Date Sent:** _____    _____    _____

**In Compliance ?:** _____    _____    _____

LINA/Cleiland 0889

| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND (DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

## View the Details for an Incident Note

    Add a New Incident Note    (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 12/01/2003 11:17:59 AM Edit | Telephone Call | Narrative | TAYLOR, BRIDGETT | ICARE |

### ICARE Note Text

Call from cx.

Cx called to inquire about when her first check will be issued. CM informed cx that her check will be released this week. Cx again informed CM of surgery scheduled for 12/9/03. Cx stated that she will be at her mom's house until she gets stitches taken out following her surgery, which will be 7-10 days post-op. Cx's mom's phone number is 334.397.4707.

    Add a New Incident Note    (last record)

LINA/Cleiland 0890

**Bridgette Taylor**
Case Manager

**CIGNA Group Ins**
Life · Accident · Disability
12225 Greenville Ave
Suite 1000
Dallas, TX 75243-9382
Telephone 800-352-0611
Extension 5646
Facsimile 860.731.3041

November 26, 2003

Cathy Cleiland

Monroeville, AL 36460

**COPY**

| | |
|---|---|
| Claimant: | Cathy Cleiland |
| Policy: | FLK 020104 |
| Policy Name: | Temple Inland |
| Company: | Life Insurance Company of North America |

Dear Ms. Cleiland:

Your claim for Long Term Disability (LTD) benefits has been approved. Benefits will begin after the Elimination Period, which ends on November 10, 2003. Your first check in the amount of $2500.00 represents benefits for the time period of November 10, 2003, through December 9, 2003. Your current gross benefit of $2500.00 per month will be issued at monthly intervals at the **end** of each benefit period.

Please refer to the enclosed calculation sheets for further explanation of how your benefit was calculated.

The Gross Disability Benefit for an Employee of Employer Mutual Casualty is the lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit.

Your LTD benefits may be reduced by any other benefits you (and your dependents, if applicable) receive. Please call us if you are receiving or should become entitled to receive any income from other sources such as:

- Social Security Disability or Retirement
- Statutory Disability**
- VA
- Worker's Compensation
- No-Fault
- Employer Pension, etc.
- Any other benefit related to your disability

**If you work in California, Hawaii, New Jersey, New York, Rhode Island, or Puerto Rico, you should be eligible for disability benefits under Statutory Disability Benefit Plans.

We will continue to evaluate your claim, and will request additional information as needed. To continue receiving benefits, you must meet the following:

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

LINA/Cleiland 0891

September 4, 2003
Page 2

<u>Disability</u>

*An Employee is Disabled if, solely because of Injury of Sickness, he or she is earning 80% or less of his or her Indexed Covered Earnings.*
*Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation.*

<u>Indexed Covered Earnings:</u>

*For the first 12 months Monthly Benefits, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:*

    *1.    10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or*
    *2.    the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.*

<u>Termination of Disability Benefits</u>

*Benefits will end on the earliest of the following dates:*

    *1.    the date the Employee earns 80% or more of his or her Indexed Covered Earnings*
    *2.    the date the Insurance Company determines he or she is not Disabled*
    *3.    the end of the Maximum Benefit Period*
    *4.    the date the Employee dies*
    *5.    the date the Employee refuses to participate in rehabilitation efforts as required by the Insurance Company*
    *6.    the date the Employee is no longer receiving Appropriate Care*

Federal Income Taxes may be deducted from your Long-Term Disability benefits on an entirely <u>voluntary</u> basis. Should you wish to have all or a portion of your FIT taxes due on your LTD benefits withheld from your Long Term Disability check, you will need to complete a Federal Tax Withholding Form (W-4S), which you may obtain through our office or your local IRS office, and submit it to our office in order for withholding to commence on future checks. The law requires that you designate on the Form W-4S the amount you want withheld and this amount cannot be less than $88.00 per month and must be expressed in whole dollars. You may cancel or change your deduction amount at any time by completing another Form W-4S.

If you have any questions in regard to the contractual definitions listed above, please feel free to contact me.

Sincerely,

Bridgette Taylor
Case Manager

LINA/Cleiland 0892

**CIGNA**
Group Insurance

# Long Term Disability Benefit Statement

**Computation Method: Direct Offset**

| | |
|---|---|
| Claimant Name: | Cathy Cleiland |
| Social Security#: | |

| | |
|---|---|
| Policy Holder: | Temple Inland |
| Policy #: | FLK 20104 |

**Benefit Levels for this case:**

| | | |
|---|---|---|
| Basic %: | 60.000% | Maximum: $ | $2,500.00 |
| Basic Monthly Earnings: | $4,291.67 | Minimum: $ | $50.00 |
| Employee Contribution %: | 0.000% | | |
| Requested Monthly FIT deduction: | | | |

☑ Round Gross Benefit
☐ Mandatory FIT Withholding

**Other Benefits Information:**

| Other Benefit: | From | Through | Monthly Amount | |
|---|---|---|---|---|
| ▼ | | | | ☐ Amount estimated |
| ▼ | | | | ☐ Amount estimated |
| ▼ | | | | ☐ Amount estimated |
| ▼ | | | | ☐ Amount estimated |

**Payment Dates:**

| | |
|---|---|
| Date of Disability: | 05/14/2003 |
| Benefit Waiting Period: | 180 ▲▼ Days ▼ |
| RTW days during BWP: | |

| | Pay from | Pay through | Check Issue Date |
|---|---|---|---|
| Benefit Start Date: | 11/10/2003 | 12/09/2003 | 11/26/03 |

FICA End Date

| Length of Payment Period : | Months | 1 | | |
|---|---|---|---|---|
| | Days | 0 | Total Payable | $2,500.00 |

**Payment Summary:**

| | From | Through | | Amount |
|---|---|---|---|---|
| 1st Period | 11/10/2003 | 12/09/2003 | 1 month | $2,500.00 |

LINA/Cleiland 0893

B884

0063

*Bridgette Taylor*

# *Disability Questionnaire &*
# *Activities of Daily Living*



**CIGNA Group Insurance**
Life • Accident • Disability
Connecticut General Life Insurance Company
Insurance Company of North America
CIGNA Life Insurance Company of New York

GB-609428b

LINA/Cleiland 0894

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact, commits a fraudulent insurance act. For residents of the following states, please see the reverse side of this form: *Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon or Virginia.*

Name: CATHY K. Cleiland

Social Security No.:

Address:

Monroeville, AL 36460

Telephone No.:

1. In your own words, tell us why you cannot work in your own or in any occupation.
   I cannot stand or sit for any period of time; It feels like my pelvic area is crushed. I spend most of my time flat on my back. My legs have "withered" up due to my injuries.

2. What is primary physical and/or mental condition preventing you from working now?
   Unable to sit or stand for very long (just a few minutes). If I am in a recliner some of the pressure is off my spine but being flat on my back with my knees pulled to my chest is my most comfortable position.

3. Can you drive? ☒ Yes ☐ No   How far? I have driven a couple of miles about 4 times since May 14th. I have driven twice a greater distance.

4. What time do you get up in the morning? approx 8:30   What time do you go to bed? approx 9:00 pm

5. Where do you live? ☐ Apartment ☒ House
   How many floors in the apartment/house? 1   Does it have an elevator? ☐ Yes ☒ No
   Do you use any special equipment - ramps, handrails, wheelchair? ☐ Yes ☒ No
   If yes, describe _____

6. Do you own a personal computer? ☒ Yes ☐ No
   Is it connected to the Internet? ☒ Yes ☐ No   ?
   What computer programs or software can you use? _____
   
   How often do you use the computer? _____

7. Check the things you do regularly:

| Activity | Hours per day? | Days per week? |
|---|---|---|
| ☐ Cook | | |
| ☐ Clean | | |
| ☐ Shop | | |
| ☐ Laundry | | |
| ☐ Yardwork | | |
| ☐ Gardening | | |
| ☒ Read | 1 hr | 5 |
| ☒ Watch TV | 2 ½ hrs. | 5 |
| ☐ Other (school, attend religious services, volunteer work, etc.) | | |

   What do you do for recreation? NOTHING

8. Are there things you attend to with regard to your personal needs (grooming, dressing, etc.)?
   I have a difficult time getting back and forth and up and down to the bathroom. I don't go as often as I should because of the pain. This has let to ER visits because of UTI and constipation. Last week I was put on a prolong treatment of antibiotics (6 months) for preventative measures. (Had CATSCANS of pelvic area)

GB-609428b

LINA/Cleiland 0895

9. Do you go for walks? ☐ Yes ☑ No    How often? _____
   How far do you walk? _____    For how long? _____

10. Do you engage in a regular exercise program? ☐ Yes ☑ No
    Where (home, gym, etc.) _____
    How often? _____
    Describe your exercise program _____

11. Please circle the highest grade you completed in school:

    1  2  3  4  5  6  7  8  9  10 11 12    GED    High School Diploma

    College?  1 yr.  2 yrs.  3 yrs.  4 yrs. (BA/BS Degree)    Masters Degree Other

    Type of degree? (Business) History, Social Sciences, etc.)
    Date Received ~~Oct 19~~ June 1988
    List any professional/educational certificates, licenses, etc. awarded _____

    _____
    List any vocational programs you have attended/completed _____
    In the last 3 years, what type of certificates or licenses have you received? _____

    _____

12. Are you taking any professional/educational/vocational classes now? ☐ Yes ☑ No
    Please list them _____

13. Are you working? ☐ Yes ☑ No
    If so, please list how many hours per day you work, and the name of your employer.

**Employment History**

| Job Title: Human Resources Mgr | Employed date: From 1998 through 2003 |
|---|---|
| Major Duties: Hiring, Interpreting Union Contract, Disciplinary Actions | Minor Duties: |
| Tools/Equipment used: | Machinery/Computers used: |
| Job Title: HR Mgr | Employed date: From 94 through 98 |
| Major Duties: Hiring, benefits, disciplinary actions | Minor Duties: |
| Tools/Equipment used: | Machinery/Computers used: |
| Job Title: HR Mgr | Employed date: From 1994 through 1997 |
| Major Duties: Hiring, benefits, Disciplinary actions | Minor Duties: |
| Tools/Equipment used: | Machinery/Computers used: |

14. Have you ever owned or operated your own business? ☐ Yes ☑ No
    Do you own, operate or have ownership interest in a business now? ☐ Yes ☑ No
    Business Name _____
    Address _____
    City _____
    Telephone Number (_____) _____
    Date business began _____
    Describe the business _____

LINA/Cleiland 0896

15. Are you married?  ☐ Yes  ☑ No
    If yes, please provide:  Spouse's Name: _____  DOB: __/__/__
                            Spouse's SSN: _____

    Do you have any children under age 18?  ☐ Yes  ☑ No
    Please list their names and dates of birth in order:
    _____
    _____

    Do you have any handicapped children over 18?  ☑ Yes  ☐ No
    I have a disabled daughter (she is on SSI)

16. List any prescription medications you take: Use other side if you need more space.

| Medication | Dose | Frequency | Medication | Dose | Frequency |
|---|---|---|---|---|---|
| Darvocet | 100-650 | 4 X Daily | Insulin | 15 R 25 N | 2 per day |
| Flexeril | 10 mg | 4 X Daily | Effexor XR | 75 | 1 child |
| Neurontin | 300 mg | 4 X Daily | Macrodantin | 100 g | daily |

17. List any doctor(s) you see regularly. Use the other side if you need more room.

| Doctor's Name/Specialty: | | Doctor's Name/Specialty: | |
|---|---|---|---|
| Dr. John Hackman – Neurosurgery | | | |
| Address: | | Address: | |
| Montgomery, Al | | | |
| Telephone #: 334-834-1663 | Fax #: | Telephone #: | Fax #: |
| Frequency of visits: Varies by Pain | Date of last visit: | Frequency of visits: | Date of last visit: |
| Doctor's Name/Specialty: Dr Charles Eddins | | Doctor's Name/Specialty: | |
| Address: Monroeville, Al 36460 | | Address: | |
| Telephone #: 251-575-4825 | Fax #: | Telephone #: | Fax #: |
| Frequency of visits: | Date of last visit: October | Frequency of visits: | Date of last visit: |

18. Are you right handed or left handed?  ☑ Right  ☐ Left
    What is your height? 5'3"      What is your date of birth? M-11-1951
    What is your weight? 160

19. Are you a veteran?  ☐ Yes  ☑ No
    If yes, have you applied for VA benefits for this disability?  ☐ Yes  ☐ No
    Please attach a copy of your VA disability award.

20. What other types of income/money/compensation/benefits are you receiving or eligible to receive?

|  |  | $ Amount/Frequency | Date Began | Date Paid Through |
|---|---|---|---|---|
| ☐ Yes ☑ No | Salary Continuance | _____ | _____ | _____ |
| ☐ Yes ☑ No | State Disability Benefits | _____ | _____ | _____ |
| ☐ Yes ☑ No | Group Disability Benefits | _____ | _____ | _____ |
| ☐ Yes ☑ No | Workers' Compensation | _____ | _____ | _____ |
| ☐ Yes ☑ No | Pension Benefits | _____ | _____ | _____ |
| ☐ Yes ☑ No | No-Fault Auto Disability Insurance | _____ | _____ | _____ |
| ☐ Yes ☑ No | Any Other Disability Income | _____ | _____ | _____ |

I certify that the information in this document is true and correct.

Signature _Cathy Cleiland_        Date 11-12-2003

LINA/Cleiland 0897

## IMPORTANT CLAIM NOTICE

**Colorado Residents:** It is unlawful to knowingly provide false, incomplete or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**District of Columbia Residents:** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida Residents:** Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**Maryland Residents:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any fact material thereto, may be committing a fraudulent insurance act.

**New Jersey:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New York Residents:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed $5000 and the stated value of the claim for each such violation.

**Pennsylvania Residents:** Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Oregon Residents:** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Virginia Residents:** Any person who, with the intent to defraud or knowing that he is facilitating a fraud against an insurer, submits applicaiton or files a claim containing a false or deceptive statement may have violated state law.

LINA/Cleiland 0898

# CLAIM STAFFING SESSION FORM

| | | | |
|---|---|---|---|
| **Date of Staffing:** | 11/18/2003 | **Case Manager:** | Bridgette Taylor |
| **Claimant Name:** | Cathy Cleiland | **SS #:** | |
| **Age:** | 46 | **Height/Weight:** | |
| **Occupation:** | HR Manager | **Date of Hire:** | 08/24/1998 |
| **Diagnosis:** | Laminectomy 5/21/03 | | |
| **Eligibility:** | | | |
| **Incur Date:** | 05/14/2003 | **BSD or AO date:** | 11/10/2003 |
| **ICD9 Code:** | | **Date Rcvd:** | 10/01/2003 |

**Occupation Requirements** (JD/JR/DOT must be TAGGED): ☑ Sedentary ☐ Light ☐ Medium ☐ Heavy ☐ Very Heavy
**Discrepancy between requirements/DOT:**

**Training/Education/Experience:**

**Attending Physician Information (Specialty, date of first/last office visit, frequency of treatment):**
Dr. Hackman, Neurosurgeon

**Subjective & Objective Findings (MUST BE TAGGED FOR STAFFING):**     Testing/surgery/finding dates
c/o leg pain MRI shows disc protruding into the foramen at L4-5 on the right which was not there previously

**Limitations and Restrictions per Attending Physician (PAA/reference info must be TAGGED):**
Dr. Hackman will not complete PAA; he would recommend FCE; however, cx is not in any condition for FCE. Cx is having another back surgery in December because of complications. Cx went to see a different neurosurgeon for surgery consult.

**CGT:**                                 **Projected RTW:**

**AMD Comments:**

**Other Benefits:** ☐ None ☐ STD ☐ WC ☐ SSDI ☐ SSR ☐ Pension ☐ State Disability ☐ Other

**Review Outcome/Direction/Plan:**
f/u c new AP & approve

**Staffing Participants Signatures (AMD, VRC, NCM, etc)**
Karen Willis

LINA/Cleiland 0899

| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND (DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

  Add a New Incident Note        (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 11/19/2003 05:05:27 PM Edit | Telephone Call | Narrative | TAYLOR, BRIDGETT | ICARE |

### ICARE Note Text

Call from cx.

Cx returned CM's phone call. Cx stated that she is scheduled to have pins and screws put in her back (she was unsure of procedure) on 12/9/03, by Dr. Mark Hadley at University of Alabama at Birmingham. He is in the department of surgery, division of Neurosurgery. She was referred to Dr. Hadley by Dr. Hackman. Dr. Hadley's phone number is 205.934.7170 or 205.934.1439. The fax number is 205.934.6507 or 205.975.6081. Cx's fiance's number is                    She can also be reached at that number. CM informed cx that her claim has been approved and that her check will go out in December. CM explained that an approval letter will be mailed detailing the information. CM also informed cx that Dr. Hadley will be contacted to obtain additional information.

  Add a New Incident Note        (last record)

LINA/Cleiland 0900

Page 1 of 1

| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND (DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

## View the Details for an Incident Note

     Add a New Incident Note     (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 11/20/2003 10:35:06 AM Edit | Telephone Call | Narrative | TAYLOR, BRIDGETT | ICARE |

## ICARE Note Text

Call from cx.

Cx called inquiring about the Direct Deposit. CM informed cx of the process and informed her that a form will be mailed to her. Cx also provided the type of surgery that she is scheduled to have in December: L4-5 decompression with internal fixation and fusion. CM thanked cx for the information. Call terminated.

Add a New Incident Note     (last record)

| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND (DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

     Add a New Incident Note        (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 11/18/2003 12:18:34 PM Edit | Telephone Call | Narrative | TAYLOR, BRIDGETT | ICARE |

### ICARE Note Text

Call from cx.

Cx left message that Dr. Hackman does not complete the PAA form and would recommend cx do an FCE. However, he feels that in cx's condition, she will not be able to complete an FCE. She is scheduled to have more surgery on 12/9/03. CM called Dr. Hackman's office and spoke with Brenda. She verified that Dr. Hackman will not complete the PAA and would recommend FCE; however, cx is not in any condition to do an FCE. She stated that cx cannot sit or stand for long periods and is having another back surgery soon as cx went to see another neurosurgeon. CM thanked Brenda for the information.

Add a New Incident Note        (last record)

LINA/Cleiland 0902

# CLAIM STAFFING SESSION FORM

| | | | |
|---|---|---|---|
| **Date of Staffing:** | 11/11/2003 | **Case Manager:** | Bridgette Taylor |
| **Claimant Name:** | Cathy Cleiland | **SS #:** | |
| **Age:** | 46 | **Height/Weight:** | |
| **Occupation:** | HR Manager | **Date of Hire:** | 08/24/1998 |
| **Diagnosis:** | Laminectomy 5/21/03 | | |
| **Eligibility:** | | | |
| **Incur Date:** | 05/14/2003 | **BSD or AO date:** | 11/10/2003 |
| **ICD9 Code:** | | **Date Rcvd:** | 10/01/2003 |

**Occupation Requirements** (JOB/JR/DOT must be TAGGED): ☑ Sedentary ☐ Light ☐ Medium ☐ Heavy ☐ Very Heavy
**Discrepancy between requirements/DOT:**

**Training/Education/Experience:**

**Attending Physician Information (Specialty,date of first/last office visit, frequency of treatment):**
Dr. Hackman, Neurosurgeon

**Subjective & Objective Findings (MUST BE TAGGED FOR STAFFING):**   Testing/surgery/finding dates
c/o leg pain MRI shows disc protruding into the foramen at L4-5 on the right which was not there previously

**Limitations and Restrictions per Attending Physician (PAA/reference info must beTAGGED):**

**CGT:**                                   **Projected RTW:**

**AMD Comments:**

**Other Benefits:** ☐ None ☐ STD ☐ WC ☐ SSDI ☐ SSR ☐ Pension ☐ State Disability ☐ Other

**Review Outcome/Direction/Plan:**
Obtain DOT, 2nd Request PAA; DA Request, RA request, POA request

**Staffing Participants Signatures (AMD, VRC, NCM,etc)**

t-30-03   01:18pm   From-TIFPC HUMAN RESOURCES           9368297406        T-432  P.01/02  F-651

# �ib Temple
### A Temple-Inland Company

*bridgette taylor*

**Human Resources**
303 S. Temple Drive
P.O. Drawer N
Diboll, TX 75941
Phone: 936/829-1603
Fax:   936/829-1537

To: _Karen Kirby_          From: _Cathy Dover_

Fax: _860-687-9664_        Pages: _2_

Phone: _____     Dates: _10/30/03_

Re: _Cathy Cleiland_       CC: _____

| Urgent | For Review | Please Comment | Please Reply | Please Recycle |

**Comments:**

LINA/Cleiland 0904

30-03  01:19pm   From-TIFPC HUMAN RESOURCES          9368297406          T-432   P.02/02   F-661

August 22, 2003

To Whom It May Concern:

Cathy Cleiland is the Human Resources Manager at the Temple-Inland Monroeville Alabama Particleboard Operation. At Cathy's request, I am writing this letter in order to provide you with a general understanding of some of the physical demands of her job position.

While some of Cathy's job duties can be accomplished at her desk in her office, some of the more critical elements of her job require her to spend time in the manufacturing plant. The Human Resources Manger is expected to spend time in the plant on a daily basis. This will require Cathy to go up and down stairwells and walk considerable distances on a cement surface. Finally, in order to visit with certain employees, Cathy will be required to walk up stairs and walk on catwalks in order to reach their workstations.

If you need additional information please fell free to call me at (936) 829-7499. You may also contact Cathy's supervisor, Joe Pridgen, at (251) 575-4876.

Sincerely,

Jim Cumbie
Human Resources Director,
Panel Products Division

LINA/Cleiland 0905

recd message from Brenda @ Drs office
faxing med over
clmt needs additional surgery
she is in bad shape.
don't feel LSA appropriate do complete
now
any? pls call - 334 834 1663
Ruby 10/02/0?

10/29/2003 12:53 FAX  1 334 834 1936     DR JOHN HACKMAN                    ⓘ001/016

# John E. Hackman, M.D., P.A.

*Neurosurgery*
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106-1107

Office: (334) 834-1663
Fax: (334) 834-1936

**SEND TO:** *Cigna*

**ATTENTION:** *Karin Kirby*

**DATE:** *10-29-03*

**FAX #:** *860-687-9664*          **PHONE #:**

( ) URGENT        ( ) REPLY ASAP        ( ) PLEASE COMMENT        ( ) PLEASE REVIEW

**TOTAL PAGES, INCLUDING COVER:** *16*

**PATIENT'S NAME** *Cathy Cleiland*

**COMMENTS:**

**FROM:**

( )  JOHN E. HACKMAN, M.D.

( )  LINDA C. THOMPSON

( )  KATHY WILKES

(X)  BRENDA GILLILAND

CONFIDENTIALITY NOTE – The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above. If the receiver of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify us by telephone so we can correct the error.     THANK YOU.

LINA/Cleiland 0907

0/29/2003 12:53 FAX  1 334 834 1936      DR JOHN HACKMAN                    ☑002/01(
10/27/2003 09:33 FAX                     CIGNA                             ☑001

CIGNA Disability Management Solutions



**CIGNA**

---

### FACSIMILE TRANSMITTAL SHEET

| TO: Dr. Hackman | FROM: KAREN KIRBY CIGNA Disability Management Solutions |
|---|---|
| DATE: 10/27/03 | TOTAL PAGES INCLUDING COVER: 4 |
| FAX NUMBER: 3348341936 | PHONE NUMBER: 334 834 1663 |
| RE: Cathy Cleiland | DATE OF BIRTH: |

In order to process the above claim, we need the following information:

- Copies of medical records; including office notes, laboratory and radiological test results, hospital admission- & discharge summaries and any consultant's reports from 7/11/03 to present.

Please complete the enclosed Physical Abilities Assessment form.

A signed authorization enabling you to release this information is attached.

If possible, to expedite this claim, please fax the information directly to me, at 860-687-9664.

I would appreciate having this information returned to me by 11/13/03, if possible.

If you have any questions, please call me toll-free at 1-800-376-0725, ext. 1518.

Thank you for taking time from your hectic schedule to provide this information for your patient.

---

**PO BOX 2052  TARRYTOWN NY 10591**

LINA/Cleiland 0908

10/29/2003 12:53 FAX  1 334 834 1936        DR JOHN HACKMAN                    ☒003/016

CLEILAND, CATHY K.

> JOHN E. HACKMAN, M.D., P.A.
> 1722 PINE ST., SUITE 1001
> MONTGOMERY, AL 36106-1107

BIRTHDATE:
S.S.#:

09-18-03

Mrs. Cleiland comes in for followup.  She is having increasing problems.  She is now having a
lot of pain down the right leg.  This has changed from when she was here last.  We reviewed
her MRI scan and compared it with the one that was done on 08-11-03.  She now has disk
protruding into the foramen at L4-5 on the right which was not there a month and a half ago.
She also has some recurrent disk protrusion on the left which was not there a month and a
half ago.  She says she can't live with the leg pain.  I offered her re-exploration at L4-5
bilateral.  She says she has been looking on the internet and she is interested in talking to
somebody about instrumentation.  We are going to try to get her up to see Dr. Mark Hadley at
UAB.

10/29/2003 12:54 FAX  1 334 834 1936    DR JOHN HACKMAN                    ☒004/016

CLEILAND, CATHY K.              JOHN E. HACKMAN, M.D., P.A.
                                  1722 PINE ST., SUITE 1001
BIRTHDATE:                      MONTGOMERY, AL 36106-1107
S.S. #:

07-14-03 – Hospital admission.

07-16-03 – Re-exploration laminectomy, L4-5, left.

07-17-03 – Discharged home.

DIAGNOSIS– Recurrent HNP, L4-5, left.

_____

07-18-03

We had a deposition with Mr. Tom Galloway and Mr. Terry Key.  During the deposition they
wanted impairment ratings.  I gave impairment ratings of 7% for her C5-6 disc, 2% for the
C6-7 disc, 1% for the C4-5, 10% for the first low back operation and 2% for the second low
back operation.

07-22-03

Cathy called up to talk about physical therapy.  I don't want her taking physical therapy
until she is at least 12 weeks post op.

_____

08-21-03 – Refill on Darvocet N-100 called into Walmart 334-774-5508.

_____

08-04-03 – Refill on Darvocet N-100 and Medrol Dosepak called to pharmacy (251) 749-3784.

08-28-03

Mrs. Cleiland comes in for follow up.  On a weekend when I was out of town, she had to come
up and see Dr. Pat Ryan.  He had an MRI scan done and I reviewed it.  It was done on 08-11-
03.  It shows good decompression of the central canal and the nerve root canal.  There is
marked narrowing of the interspace.

She saw Dr. Herrick yesterday and had an injection but she says it didn't help very much.

She is still having trouble with her left leg.

She has a diminished left knee reflex but no foot drop.  She has got negative straight leg
raising.  Ankle reflexes are intact.

We had a discussion about activities.  I am going to see her back in six to eight weeks.

_____

09-09-03 – Darvocet N100 #30, one three times a day as needed with one refill called into
            Wal-Mart 251-666-6988.

09-16-03 – Darvocet N100 #30, one four times a day as needed with one refill and Flexeril
            10 mg., #100, one four times a day as needed with one refill called to Wal-Mart
            251-666-6988.

_____

LINA/Cleiland 0910

10/29/2003 12:54 FAX  1 334 834 1936     DR JOHN HACKMAN                    ☑005/016

i

**JOHN E. HACKMAN, M.D., P.A.**
**1722 PINE ST., SUITE 1001**
**MONTGOMERY, AL 36106-1107**

CLEILAND, CATHY K.

BIRTHDATE:
S.S.#:

04-23-03

Mrs. Cleiland comes in because she is having increasing problems in her left hip and leg
with numbness in the left lateral thigh. She has already schedule surgery for May 21,
2003, lumbar laminectomy at L4-5 on the left. We went over her x-rays. We discussed
alternatives. Risks and benefits of surgery were discussed. She is going to come in on
May 21, 2003 for lumbar laminectomy at L4-5 on the left.

She said if anything might delay the surgery she would like to give it a try. So we are
going to try some physical therapy and if the physical therapy does not help, then we will
plan on surgery as scheduled.

05-12-03 – Letter to George K. Elbrecht, P.C., Attorney at Law – faxed and mailed 05-13-03.

05-13-03 – Lortab 5 #30, one three times a day as needed with one refill called into
          Wal-Mart 251-575-3383.     (FAX # 251-575-7063)

05-21-03 – Hospital admission.
05-21-03 – Lumbar laminectomy, L4-5, left.
05-22-03 – Discharged home.
DIAGNOSIS– Lumbar radiculitis, L4-5, left.

06-02-03

Patient called up because her Darvocet is not strong enough.  We calle
Neurontin 300 mg four times a day.

06-10-03

 Cathy called and said she needed something stronger for pain.  We are going to call in
Tylenol #3, #30, one every four hours as needed with two refills. Called in to Wal-Mart
(334) 774-5508 or (334) 774-5651.

07-07-03 – Records mailed to Kathy Underwood, Legal Assistant to Terry G. Key, COCHRAN,
          CHERRY, GIVENS & SMITH, P.C.

07-10-03

Cathy comes in for follow up. She says she is still having a lot of trouble with her left
leg. She says it hurts and it feels sort of swollen and heavy. She has got negative
straight leg raising. Knee reflexes are intact. Ankle reflexes are both absent today. She
does not have a foot drop.

I asked her about her medication. She says she is not taking Neurontin because it was too
expensive. I told her the Neurontin might help. We are going to give her a Medrol Dosepak.
We are going to get an MRI scan and see her back.

LINA/Cleiland 0911

I/29/2003 12:54 FAX  1 334 834 1936    DR JOHN HACKMAN    Ø006/016

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street * Montgomery, Alabama  36106

DISCHARGE SUMMARY

PATIENT NAME:   CLEILAND, CATHY          MR#:  28-51-42     Pg 1
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     7/14/03
                                        DISCHARGE:   7/17/2003

BS#:  0717-023

REASON FOR ADMISSION:  This 45-year-old white female diabetic had a
laminectomy on May 21, 2003 at L4-5 on the left and initially did
well.  She then developed a recurrence of pain down the left hip and
leg, which has gotten progressively worse.  She presented to our
emergency room in extreme pain.  She was admitted for pain control
and evaluation.

HOSPITAL COURSE:  The patient was admitted to the hospital and placed
on pain control.  The next day we did an MRI scan and this showed a
large extruded fragment at L4-5.  Surgery was recommended.  The
patient was taken to surgery on July 16, 2003 where she had re-
exploration of her laminectomy at L4-5 on the left.  She had
immediate improvement in her leg pain, did well, and was discharged
home the following day.  The wounds looked good and she was given
instructions.  She will be followed up in the office.

DISCHARGE DIAGNOSIS:
1.  Recurrent disk herniation at L4-5, left.

OPERATIVE PROCEDURE THIS ADMISSION:
1.  Re-exploration laminectomy at L4-5, left.

2AC0717                          _____
D: 7/17/03                       JOHN E. HACKMAN, M.D.
T: 7/17/03

PHYSICIAN COPY

0/29/2003 12:55 FAX  1 334 834 1936      DR JOHN HACKMAN                                    @007/016

## JACKSON HOSPITAL & CLINIC, INC.
### 1725 Pine Street * Montgomery, Alabama  36106

### HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY                 MR#:   28-51-42    Pg 1
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     7/14/03

**CHIEF COMPLAINT:** Left hip and leg pain.

**HISTORY OF PRESENT ILLNESS:** This is 45-year-old white female, diabetic. She recently had a laminectomy on 5/21/03 at L4-5 on the left. She initially did well. She has had a recurrence of pain in the left hip and leg. We have talked to her a couple of times and I saw her in the office this past week. She complained about increasing weakness. I put her on medication but she has gotten progressively worse and she presented to the emergency room and was admitted for reevaluation and pain control.

**PAST MEDICAL HISTORY:** Positive for insulin-dependent diabetes. She is noncompliant. She has been otherwise healthy.

**PRIOR SURGERY:** Includes two cesarean sections, tubal ligation, reversal of the tubal ligation, removal of the right tube and ovary, anterior cervical fusion, carpel tunnel surgery, lumbar laminectomy.

**HOME MEDICATIONS:**
1. Humulin insulin 70/30, 40 units twice a day.
2. Effexor.
3. Klonopin.
4. Pain pills.

**ALLERGIES:** None reported.

**FAMILY HISTORY:** Positive for diabetes.

**SOCIAL HISTORY:** Shows the patient is a nonsmoker.

**PHYSICAL EXAM:**
**GENERAL:** Shows a generally healthy appearing white female. She is alert and oriented. Cranial nerves are intact.
**NECK:** She has a good range of motion of the neck.
**CHEST:** Clear.
**HEART:** Regular.
**ABDOMEN:** Soft.
**EXTREMITIES:** She has pain with straight leg raising on the left. Knee reflexes are intact. The ankle are both absent. She has weakness of toe extension on the left.

PHYSICIAN COPY

LINA/Cleiland 0913

/29/2003 12:55 FAX  1 334 834 1936       DR JOHN HACKMAN                    ☑008/(

## JACKSON HOSPITAL & CLINIC, INC.
### 1725 Pine Street * Montgomery, Alabama  36106

## HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY              MR#:   28-51-42     Pg 2
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     7/14/03

ADMISSION IMPRESSION:
1. Recurrent lumbar radiculitis at L4-5 left.

4JB0715
D: 7/15/03                              _____
T: 7/15/03                              JOHN E. HACKMAN, M.D.

PHYSICIAN COPY

LINA/Cleiland 0914

9/2003 12:55 FAX  1 334 834 1936    DR JOHN HACKMAN    @009/016

# JACKSON HOSPITAL & CLINIC, INC.

## 1725 PINE STREET
### MONTGOMERY, ALABAMA 36106

**Name:** CLEILAND, CATHY K.          **DOB:**          **Age:** 46 YEARS
**Physician:** HACKMAN, JOHN E          Patient Location: 6301
MR#: 285142          X-RAY#: 463643          Account#: 10560803
Order ID: 1182215          Result ID: 1066800          Addendum Number: 0

**Clinical Data:** BACK AND LEG PAIN
**Procedure:** MRI L SPINE W & W/O CONTRAST    **Date of Exam:** 07/14/2003

Comparison is made October 02.

Surgical change is now seen on the left at L4-5 with enhancing scar in the left lateral recess and portion of the left neural foramen. There is a prominent focus of non-enhancing material that protrudes from the disc space posteriorly to the left. This is consistent with a recurrent disc extrusion. This fills the lateral recess and impinges on the left neural foramen. The remainder of the discs are intact. The L4-5 disc is more narrowed and desiccated with secondary spondylotic change along the end plates. Vertebral height and alignment is maintained. No intradural abnormalities are seen.

**IMPRESSION:**
RECURRENT OR RESIDUAL LARGE FOCAL EXTRUSION OF DISC MATERIAL TO THE LEFT AT L4-5.  UNDERLYING SURGICAL CHANGE AND ENHANCING SCAR IS ALSO PRESENT IN THIS AREA.

Dictated by: GARY W. SCOTT
Verified by: GARY W. SCOTT

Transcriptionist: TAC

JACKSON HOSPITAL
Jackson Hospital & Clinic, Inc.
1725 Pine Street
Montgomery, AL 36106-1117
A Non Profit Organization

1-2 (2/99)

**X-RAY REPORT**

LINA/Cleiland 0915

9/2003 12:57 FAX  1 334 834 1936    DR JOHN HACKMAN    @010/016

# JACKSON HOSPITAL & CLINIC, INC.

## 1725 PINE STREET
## MONTGOMERY, ALABAMA 36106

| | |
|---|---|
| Name: CLEILAND, CATHY K. | DOB:          Age: 46 YEARS |
| Physician: HACKMAN, JOHN E | Patient Location: 6301 |
| MR#: 285142     X-RAY#: 463643 | Account#: 10560803 |
| Order ID: 1182214     Result ID: 1066801 | Addendum Number: 0 |

Clinical Data: BACK AND LEG PAIN

Procedure:  L-SPINE COMPLETE        Date of Exam: 07/14/2003

L4-5 and L5-S1 disc spaces are narrowed. There is a surgical defect seen in the left posterior elements at L4-5. Mild facet hypertrophy and sclerosis is noted at the lower three disc levels. Vertebral height and alignment is maintained. No fractures are seen.

**IMPRESSION:**

SURGICAL CHANGE ON THE LEFT AT L4-5.

NARROWING OF THE DISC AND SPONDYLOTIC CHANGES AT L4-5 AND L5-S1.

Dictated by: GARY W. SCOTT
Verified by: GARY W. SCOTT

Transcriptionist: TAC

JACKSON HOSPITAL
Jackson Hospital & Clinic, Inc
1725 Pine Street
Montgomery, AL 36106-1117
A Non Profit Organization

:-2 (2/99)

**X-RAY REPORT**

LINA/Cleiland 0916

## JACKSON HOSPITAL & CLINIC, INC.
### 1725 Pine Street * Montgomery, Alabama  36106

### REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY            MR#:   28-51-42    Pg 1
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     7/14/03
DATE OF OPERATION:  7/16/2003

BS job # 0716-058

**PREOPERATIVE DIAGNOSIS**
Recurrent disc herniation at L4-5, left.

**POSTOPERATIVE DIAGNOSIS**
Recurrent disc herniation at L4-5, left.

**PROCEDURE**
Re-exploration laminectomy at L4-5, left.

**SURGEON**
Dr. John Hackman.

**INDICATIONS**
This 45-year-old white female had a laminectomy nearly two months ago
at L4-5 on the left and initially did well. She did start having some
recurrence of pain in her left hip and leg. That pain has become very
severe over the last week. She presented to the emergency room and
was admitted for pain control. On evaluation, we found, on an MRI
scan, that she has large recurrent disc herniation at L4-5 on the
left with extruded fragments.

**PROCEDURE**
The patient was taken to the operating room where she underwent
general endotracheal anesthesia. She was turned to the prone position
on chest rolls. The operative site was shaved, prepped and draped in
sterile manner. Midline incision was made over L4-5, at old lumbar
scar. It was carried down to the lumbar fascia, left of the midline.
Paravertebral muscles were stripped off the spinous processes and
lamina, exposing the intralaminar space at L4-5 on the left.
Previous laminectomy site was enlarged. Scar tissue was removed. We
found several huge fragments of cartilage out under the dural sac and
the nerve root. These were all cleaned out. It appeared that she had
avulsed some of the cartilage end plate. We cleaned out all loose
fragments and made sure we had a good decompression. Bleeding was
controlled with Gelfoam and thrombin.  The wound was closed in
multiple layers of Vicryl suture.

**ESTIMATED BLOOD LOSS**
Blood loss during the procedure was 150 cc.

**COMPLICATIONS**
There were no obvious complications.

PHYSICIAN COPY

LINA/Cleiland 0917

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street * Montgomery, Alabama   36106

REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY          MR#:   28-51-42    Pg 2
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     7/14/03


Sterile dressings were applied and the patient was taken to the
recovery room in satisfactory condition.


3AI0716
D:                                  _____
T: 7/16/03                          JOHN E. HACKMAN, M.D.


PHYSICIAN COPY

LINA/Cleiland 0918

# JACKSON HOSPITAL & CLINIC, INC.

1725 PINE STREET

MONTGOMERY, ALABAMA 36106

**Name: CLEILAND, CATHY K.**      DOB:      Age: 46 YEARS
**Physician: HACKMAN, JOHN E**      Patient Location: ORAD
MR#: 285142      X-RAY#: 463643      Account#: 10576197
Order ID: 1202907      Result ID: 1084039      Addendum Number: 0

Clinical Data: back and leg pain  bc  linda
**Procedure: MRI L SPINE W & W/O CONTRAST    Date of Exam: 09/18/2003**
INDICATION: Low back and right leg pain with previous surgery most recently July 03.
PROTOCOL:
Parasagittal T1 and T2 weighted images with axial T1 and T2 weighted images. Gadolinium was
then injected followed by repeat parasagittal and axial T1 weighted images of the lumbar spine.
FINDINGS:
The disc space is considerably narrowed at L4-5 with degenerative end plate signal changes at
that level. The remaining lumbar vertebral bodies are normal but the disc space is also narrowed
at L5-S1.

At L4-5, there are operative changes upon the left lamina, foramen, facet and posterior margin
of the disc with enhancing soft tissue in that location as well as encasing the left L5 nerve root
proximally. The enhancing soft tissue fills the left neural foramen. I suspect a small residual
disc fragment on the left at L4-5 adjacent to the exiting L5 nerve root proximally. It appears to
be more closely approximating the root than on the previous examination of 8-11-03 but there
have been no other changes since the previous study.

**IMPRESSION:**
DEGENERATIVE CHANGES L5-S1, UNCHANGED.

SEVERE DEGENERATIVE DISC DISEASE L4-5 AND OPERATIVE CHANGES UPON THE
LEFT LAMINA, FORAMEN, FACET AND DISC AT THAT POINT WITH PROBABLE
RETAINED DISC FRAGMENT TO THE LEFT OF MIDLINE AT L4-5 SURROUNDED BY
ENHANCING SCAR. THIS MAY ACTUALLY SLIGHTLY INDENT UPON THE LEFT L4
NERVE ROOT PROXIMALLY AND THE LEFT L5 NERVE ROOT DOES APPEAR TO BE
ENCASED BY SCAR. THE RETAINED FRAGMENT IS SLIGHTLY MORE PROMINENT
THAN ON 8-11-03.

LINA/Cleiland 0919

10/29/2003  12:59 FAX  1 334 834 1936     DR JOHN HACKMAN                    ☑014/01ξ

?/18/03   12:35 PM CDT     via VSI-FAX                            Page 2 of 2 #3652

Faxed to Dr. Hackman's office.
Dictated by: DONALD H. DAHLENE
Verified by:

Transcriptionist: JAJ

Name:CLEILAND, CATHY K.              Order ID:1202907
Physician:HACKMAN, JOHN E            Date:09/18/2003

LINA/Cleiland 0920

003  12:59 FAX  1 334 834 1936        DR JOHN HACKMAN                              ☒01

# JACKSON HOSPITAL & CLINIC, INC.

## 1725 PINE STREET
## MONTGOMERY, ALABAMA 36106

**Name: CLEILAND, CATHY K.**            DOB:            Age: 46 YEARS
**Physician: RYAN, PATRICK G**          Patient Location: 6301
MR#: 285142            X-RAY#: 463643        Account#: 10567192
Order ID: 1190671        Result ID: 1073900      Addendum Number: 0

---

Clinical Data: BACKK PAIN  TO LEFT LEG BACK SURGERY
Procedure:  MRI L SPINE W & W/O CONTRAST    Date of Exam: 08/11/2003

**TECHNIQUE:**
Pre and post contrast T1 axial and sagittal imaging was performed along with multi-echo T2 sagittal and fast spin echo T2 axial imaging was performed.

**FINDINGS:**
Comparison is made to a recent examination from 07/14/2003. The previously described moderate sized disc extrusion in the left lateral recess of L4-5 has apparently been removed. There is a very small, 5mm area of low signal intensity that is surrounded by enhancing scar tissue that is adjacent to the posterolateral aspect of the intervertebral disc at L4-5 seen only on the post contrast axial images (image 10). This is adjacent to the superior end plate of L5 and is not seen on the parasagittal images. This does not abut or displace the exiting nerve roots. I cannot tell with certainty whether this represents a small piece of bone or a small residual disc fragment but may be clinically insignificant given its small size and no apparent abutment of the nerve roots. There is a fairly extensive amount of enhancing soft tissue in the left epidural space of L4-5. The enhancing soft tissue extends along the anterior aspect of the thecal sac as well as into the left neural foramen. There is no displacement or distortion of the thecal sac. The exiting left L5 nerve root is encased by the enhancing tissue. The patient has significant degenerative disc disease at this level with disc space loss and end plate sclerosis. The remaining intervertebral disc spaces show only some mild disc desiccation. No other areas of disc bulging or protrusion. The conus is normal.

**IMPRESSION:**
EXTENSIVE POST OPERATIVE CHANGES ON THE LEFT AT L4-5 WITH A LARGE AMOUNT OF ENHANCING EPIDURAL SCAR TISSUE AS DESCRIBED. THE MODERATE SIZED DISC EXTRUSION AT THIS LEVEL IS NO LONGER VISIBLE, HOWEVER THERE IS A SMALL NON-ENHANCING AREA OF LOW SIGNAL INTENSITY NEAR THE LEFT NEURAL FORAMEN AT L4-5. PROBABLY AND CLINICALLY INSIGNIFICANT GIVEN

LINA/Cleiland 0921

003 12:59 FAX  1 334 834 1936      DR JOHN HACKMAN              

ITS SMALL SIZE AND LACK OF ABUTMENT TO THE NERVE ROOTS BUT COULD
REPRESENT A SMALL END PLATE FRAGMENT OR DISC FRAGMENT. THIS IS SEEN
ONLY ON ONE VIEW.

SEVERE DEGENERATIVE DISC DISEASE AT L4-5.

Dictated by: KEN RICHARDSON
Verified by: KEN RICHARDSON

Transcriptionist: EE

Name:CLEILAND, CATHY K.              Order ID:1190671
Physician:RYAN, PATRICK G            Date:08/11/2003



**Karen Kirby**
Case Manager
Cigna Disability Management Solutions



**CIGNA** Group Insu
Life · Accident · Disability

October 28, 2003

Routing  1115
PO Box 2052
Tarrytown, NY 10591-9052
Telephone  800-376-0725
Facsimile  860-687-9664

CATHY CLEILAND    

MONROEVILLE, AL 36460

| | |
|---|---|
| Claimant: | Cathy Cleiland |
| Policy Number: | FLK 20104 |
| Policyholder Name: | Temple Inland |
| Underwriting Company: | Life Insurance Company of North America |

Dear Ms. Cleiland:

I realize you are waiting for a decision about disability benefits, so I am writing to advise you of the status of your claim.  Right now I am still waiting for information from, Dr. Hackman and information from you per our letter dated October 2, 2003.  We need this information to determine your functional ability, and whether you qualify for Disability benefits as defined under your contract.

I hope to get this information within the next 30 days.  As soon as I receive it I will continue my evaluation and let you know the outcome of your claim.  Any assistance you can offer to obtain this information is appreciated.

Please, if you have any questions, please call me toll-free at 800-376-0725 ext. 1518.

Sincerely,

Karen Kirby

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

10/27/03
3:56pm - Cathy Cleiland
LM
returned call -
wanted mention few things
weak bad limp can't walk straight
dt to atrophy
important part of not stu.
Job required out in plant walking
real long distances
explained having occ reviewed
by Voc Consult.
She had said after first surgery
asked re accomodation u no walking
they had none.
diabetes for 26 yrs
walking an issue have a dragging
leg. need to watch what do b/c
leg not picking up as should.
                                        K Kirby 10/27/03

LINA/Cleiland 0924

10/27/03 –
2:17pm – Kathy Cleiland

Returned call 3:13pm –
5/14/03. all day.
scheduled surgery 5/21
back so bad couldn't handle
MVA 4/2002.
neck surgery 6/02 missed 9 days
of work.
5/21/03 lumbar laminectomy
serious trouble
3rd day after surgery pain before
surgery then worse
7/03 by ambulance to hosp.
explosive herniation same disc
Cleaned up more discs
Latest MRI collapsed again
unless take 3 meds can't walk.
Cannot put weight on legs
UAB – 11/17/03 See dr specializes
screws rods etc
90% certainty put is back
Meds - Darvocet & interchange
      Lortab  / every 6 hrs
           can't sleep @ night
      Neurontin 3/d.
      Flexeril 4/d.

LINA/Cleiland 0925

no pt
b/c 1st surgery after 8wks had
2nd Dr wanted wait 12wks.
After 7/03 + 12wks still problems
Tx med + see specialist
Hackman NOV 10/28 but may
not go b/c seeing specialist
LOV @ 4 wks ago MRI cant do
anything else
Noway describe kind of pain
different quality of life - depressing
convinced self to have surgery
if dr say needs it
Cant skip dose of med
ADL - get up 7-8 wake up early.
Take pain pill than before so
can get up + get to bathroom.
need to hold onto something
Once start moving takes 4 hrs
can walk but w/ constant pain
(R) hip. leg pain area
Live alone but been staying
w/ mom or good friend - w/ friend
now. (since end of Aug)
stairs friends house has 8 stairs
go down 1 time in am stay downstairs
till bedtime

LINA/Cleiland 0926

Drive do now leg & hip hurt least
not much
since May out of house @ dozen times
no house cleaning / cook
Going thru divorce, final any day
now.
Children youngest 22 yrs
Rew - no date    no way to sell
Sal Cont
SSDI thru A2K.
no other income
Today still have job, but they
are starting today, fill job.
Dy of dis elim ben % offset
pending med from AP
will resend forms.    A Kirby 10/27/03
may go back to mom
phone # is cell.

LINA/Cleiland 0927



| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

## View the Details for an Incident Note

    Add a New Incident Note    (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 10/28/2003 07:57:03 AM Edit | RTW Management | Narrative | SCHWARTZKOPF, GREGG | ICARE |

### ICARE Note Text

OWN OCC IDENTIFICATION: Clmt is Manager, Personnel (DOT 166.117-018). It is classified SEDENTARY, lifting to 10# occasionally and primarily performed seated. It involves frequent reaching/ handling/ fingering. Most Personnel Managers work from a particular location, but some do travel between business locations within a region.

    Add a New Incident Note    (last record)

LINA/Cleiland 0928

## HUMAN RESOURCES MANAGER II
### Monroeville Particleboard

Name: _____ By: _____ Date:_____

*Reports to Plant Manager*

**PURPOSE:**

The Human Resources Manager II is responsible for the implementation and administration of all human resource related functions within the scope of company policies and procedures. This position is also responsible for coordination of the development of plant policies and procedures, as well as making recommendations for any changes needed in Corporate policies and procedures. Responsibility also includes supervision of office personnel and management of the accounting function.

**DESIRED RESULTS:**

- Key member of the management team
- Compliance with all applicable federal and state labor laws and regulations
- Timely and effective implementation of all Company human resource policies and procedures
- Accurate reporting of financial information
- Adequate staffing with competent employees
- Good employee relations
- Positive reputation in community/visible presence
- Healthy union-free work culture
- Effective employee/supervisor training and development

**RESPONSIBILITIES:**

- Managerial responsibility for the clerical/ administrative staff and plant security
- Manage and administer the competency improvement process within the facility/group
- Stay abreast of pertinent legislation and regulations affecting the workplace
- Coach, counsel and advise on policies, procedures and Company rules
- Coordinate the recruiting and hiring process
- Promote workplace diversity
- Administer mandated and company provided benefit programs
- Oversee safety program
- Assist Safety Coordinator with safety issues
- Fill in for Safety Coordinator in his or her absence
- Work closely with Safety Coordinator concerning policies, procedures and regulatory requirements
- Supervision of accounting function
- Facilitate employee development and training
- Ensure open and honest communication at all levels
- Coordinate participation in community activities
- Encourage fair, consistent and participative management
- Ensure human resource issues are considered in all decisions

Job Summary / Competency Checklist last modified on 12/13/1999

LINA/Cleiland 0929

**Kirby, Karen   1115**

| | |
|---|---|
| **From:** | Cumbie, Peggy (TIFPC) [PCumbie@templeinland.com] |
| **Sent:** | Monday, October 27, 2003 10:35 AM |
| **To:** | 'Kirby, Karen   1115' |
| **Subject:** | RE: LTD Claim Cathy Cleiland |

I have forwarded this on to our Corporate Human Resource Director.  Thank you. Peggy
Cumbie

    -----Original Message-----
    From: Kirby, Karen   1115 [SMTP:Karen.Kirby@CIGNA.com]
    Sent: Monday, October 27, 2003 8:58 AM
    To:   psigler@templeinland.com
    Subject:   LTD Claim Cathy Cleiland

    Good Morning,
    I am working on an LTD claim for Ms. Cleiland and was hoping to get a job
description for her.
    If you could fax to 860-687-9664 or email me at Karen.Kirby@cigna.com, I would
appreciate it.
    Thanks,
    Karen

    +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
    CONFIDENTIALITY NOTICE: If you have received this e-mail in error, please
immediately notify the sender by e-mail at the address shown. This e-mail transmission
contain confidential information. This information is intended only for the use of the
individual(s) or entity to whom it is intended even if addressed incorrectly. Please
delete it from your files if you are not the intended recipient. Thank you for your
compliance. Copyright
(c) 2003 CIGNA

    +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++


********* Confidentiality Notice   *********
This electronic transmission and any attached documents or other
writings are confidential and are for the sole use of the intended
recipient(s) identified above.  This message may contain information
that is privileged, confidential or otherwise protected from disclosure
under applicable law.  If the receiver of this information is not the
intended recipient, or the employee, or agent responsible for
delivering the information to the intended recipient, you are hereby
notified that any use, reading, dissemination, distribution, copying or
storage of this information is strictly prohibited. If you have
received this information in error, please notify the sender by return
email and delete the electronic transmission, including all attachments
from your system.

LINA/Cleiland 0930

called clmt - 10.14 Am
got machine LmTC

L Kuby 10/27/03

LINA/Cleiland 0931

**Kirby, Karen    1115**

| | |
|---|---|
| **From:** | Kirby, Karen   1115 |
| **Sent:** | Monday, October 27, 2003 9:58 AM |
| **To:** | 'psigler@templeinland.com' |
| **Subject:** | LTD Claim Cathy Cleiland |

Good Morning,
I am working on an LTD claim for Ms. Cleiland and was hoping to get a job description for her
If you could fax to 860-687-9664 or email me at Karen.Kirby@cigna.com, I would appreciate it
Thanks,
Karen



| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

 Add a New Incident Note 

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 05/27/2003 04:31:15 PM | Correspondence | Narrative | HEATH, ELAINE | ICARE |

### ICARE Note Text

ER VERIFICATION IS AS FOLLOWS:
-----Original Message-----
From: Cumbie, Peggy (TIFPC) [mailto:PCumbie@templeinland.com]
Sent: Tuesday, May 27, 2003 2:14 PM
To: Screening and Creation Team 212
Subject: RE: ET/ER VERIFICATION - CATHY CLEILAND

Peggy Cumbie

-----Original Message-----
From: Screening and Creation Team 212
[SMTP:ScreeningandCreationTeam@cigna.com]
Sent: Tuesday, May 27, 2003 2:06 PM
To: 'psigler@templeinland.com'
Subject: ET/ER VERIFICATION - CATHY CLEILAND

The purpose of this e-mail is to advise you that we have received notification of a disability claim for the following Temple Inland employee:

Employee Name: CATHY CLEILAND
DOB:
Date claim received by CIGNA: 5/27/03

Last day worked: 05/13/03
Earnings: hourly rate of pay or salary? $51,500
Effective date of coverage: 08/24/98

Thank you for your time and prompt attention to this verification.

Screening and Creation Unit
CIGNA Disability Management Solutions
(800) 362-4462, #2

LINA/Cleiland 0933

CIGNA Disability Management Solutions



**CIGNA**

---

### FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: KAREN KIRBY |
|---|---|
| Dr. Hackman | CIGNA Disability Management Solutions. |
| DATE: 10/27/03 | TOTAL PAGES INCLUDING COVER: 4 |
| FAX NUMBER: 3348341936 | PHONE NUMBER: 334 834 1663 |
| RE: Cathy Cleiland | DATE OF BIRTH: |

---

In order to process the above claim, we need the following information:

♦ Copies of medical records; including office notes, laboratory and radiological test results, hospital admission & discharge summaries and any consultant's reports from 7/11/03 to present .

Please complete the enclosed Physical Abilities Assessment form.

A signed authorization enabling you to release this information is attached.

If possible, to expedite this claim, please fax the information directly to me, at 860-687-9664.

I would appreciate having this information returned to me by 11/13/03 , if possible.

If you have any questions, please call me toll-free at 1-800-376-0725, ext. 1518.

Thank you for taking time from your hectic schedule to provide this information for your patient.

---

**PO BOX 2052  TARRYTOWN NY 10591**

LINA/Cleiland 0934

***Disability Management Solutions*** ℠
***Physical Abilities Assessment Form***

**CIGNA Group Insurance**
Life • Accident • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



We are evaluating your patient's disability claim in order to determine functional impairment.
Please document your objective findings *(check below)* and provide copies of supporting reports such as office notes/consultations/testing.
*(Failure to provide the requested reports/data may result in delay in claim determination).*

| Claimant Name: **Cathy Cleiland** | Date of Birth: |
|---|---|

**ICD-9 Diagnosis:**

Please check (✓) the boxes corresponding to the patient's level of physical functionality. Please substantiate your findings with medical documentation.

In an 8 hour workday, the patient can tolerate, with positional changes and meal breaks, the following activities for the specified durations:

| ASSESSMENT OF PHYSICAL ABILITIES | CONTINUOUSLY (67% - 100%) (5.5+ hrs.) | FREQUENTLY (34% - 66%) (2.5 - 5 hrs.) | OCCASIONALLY (1% - 33%) (<2.5 hrs.) | NONE (0%) (0 hrs.) | CHECK (✓) IF SUPPORTED BY OBJECTIVE FINDINGS |
|---|---|---|---|---|---|
| Sitting: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Standing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Walking: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Climbing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Balancing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Kneeling: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Crawling: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Crouching: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Stooping: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Hearing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Reaching:  Overhead | ☐ | ☐ | ☐ | ☐ | ☐ |
|            Desk Level | ☐ | ☐ | ☐ | ☐ | ☐ |
|            Below Waist | ☐ | ☐ | ☐ | ☐ | ☐ |
| Seeing: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Smelling/Tasting: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Extremes in Heat: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Extremes in Cold: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Odors/Fumes/Particles: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Ability to Work Extended Hours/OT: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Use of Lower Extremities for Foot Control: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Vibration: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Exposure to Wet/Humid Conditions: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Can Work Around Machinery: | ☐ | ☐ | ☐ | ☐ | ☐ |
| Fine Manipulation: Specify frequency and L or R | | | | | |
| Simple Grasp: Specify frequency and L or R | | | | | |
| Firm Grasp: Specify frequency and L or R | | | | | |

616253  5-03

*(Continued on Reverse Side)*

LINA/Cleiland 0935

# EXHIBIT 1 TO EXHIBIT A Part 18

In the last column check (√) the box which corresponds to the patient's level of physical work function. Please substantiate your findings with medical documentation.

In an 8 hour workday, the patient can tolerate, with positional changes and meal breaks, the following:

| PHYSICAL WORK LEVEL (Lift, Carry, Push, Pull) | CONTINUOUSLY Over 2/3 of the day (5 or more lifts/min.) | FREQUENTLY 1/3 to 2/3 of the day (Up to 4 lifts/min.) | OCCASIONALLY Up to 1/3 of the day (1 lift/5 min.) | APPROXIMATE ENERGY REQUIRED IN WORK METS* | MOST APPLICABLE IN YOUR OPINION (Check (√) One) |
|---|---|---|---|---|---|
| No Work | None | None | None | None | ☐ |
| Sedentary | Negligible (mostly sitting) | Negligible | 10 lbs. (stand/walk occasionally) | 1.5 - 2.1 | ☐ |
| Light | Negligible | 10 lbs. (stand/walk occasionally) | 20 lbs. | 2.2 - 3.5 | ☐ |
| Medium | 10 lbs. | 10 - 25 lbs. | 20 - 50 lbs. | 3.6 - 6.3 | ☐ |
| Heavy | 10 - 20 lbs. | 25 - 50 lbs. | 50 - 100 lbs. | 6.4 - 7.5 | ☐ |
| Very Heavy | 20 - 50 lbs. | 50 - 100 lbs. | 100+ lbs. | Over 7.5 | ☐ |

*One MET is equivalent to the amount of energy expended in a resting state, for example sitting in a chair and not moving. Activities can be calculated as multiples of the resting state. Therefore a 3 MET activity would mean the activity requires 3 times the amount of energy required to sit in a chair.

Additional Comments on Functionality:

| Physician Name (Please Print): | Medical Specialty: |
|---|---|
| Address: (Street, City, State, Zip Code) | |
| Telephone Number: | Federal Tax ID #: |
| Physician Signature: | Date: |

*Thanks in advance for your prompt response to this request.*

LINA/Cleiland 0936



10/27/2003 09:35 FAX          CIGNA                              ☑001

```
                    ********************
                *** TX REPORT ***
                    ********************


    TRANSMISSION OK

    TX/RX NO              1275
    CONNECTION TEL              913348341936
    CONNECTION ID
    ST. TIME              10/27 09:33
    USAGE T               01'57
    PGS. SENT             4
    RESULT               OK
```

CIGNA Disability Management Solutions



**CIGNA**

### FACSIMILE TRANSMITTAL SHEET

| TO: Dr. Hackman | FROM: KAREN KIRBY <br> CIGNA Disability Management Solutions. |
|---|---|
| DATE: 10/27/03 | TOTAL PAGES INCLUDING COVER: 4 |
| FAX NUMBER: 3348341936 | PHONE NUMBER: 334 834 1663 |
| RE: Cathy Cleiland | DATE OF BIRTH: |

In order to process the above claim, we need the following information:

♦ Copies of medical records; including office notes, laboratory and radiological test results, hospital admission & discharge summaries and any consultant's reports from 7/11/03 to present.

Please complete the enclosed Physical Abilities Assessment form.

A signed authorization enabling you to release this information is attached.

If possible, to expedite this claim, please fax the information directly to me, at 860-687-9664.

I would appreciate having this information returned to me by 11/13/03, if possible.

If you have any questions, please call me toll-free at 1-800-376-0725, ext. 1518.

Claimant: Cathy Cleiland - Initial Claim - PolicyID: FLK 20104                    Page 1 of 1

## Kirby, Karen 1115

**From:**    Jamie Fonger [jamie.fonger@advantage2k.com]
**Sent:**    Wednesday, October 22, 2003 12:11 PM
**To:**    karen.kirby@cigna.com
**Subject:** Claimant: Cathy Cleiland - Initial Claim - PolicyID: FLK 20104

10/22/2003 11:10:11 AM
SSN:
Policy Holder: Temple Inland / Employer Group: Temple Inland / PolicyID: FLK 20104
Claimant: Cathy Cleiland - Initial Claim
Client: CIGNA / Karen Kirby (800) 376-0725 - karen.kirby@cigna.com


Dear Karen:

We submitted the initial claim for this individual to the Social Security Administration today. Included in the mailing was a cover letter to be forwarded to the state Disability Determination Service (DDS.) Once we receive the proof application we will let you know.

We will ensure that DDS has received the claim for medical evaluation. Should you have any questions about this case in the interim, please contact Lynn Kniker the representative for this individual.


Thank you for the opportunity to serve CIGNA Group Insurance - Tarrytown NY FCO.

Sincerely,

Jamie Fonger
Claims Assistant
Advantage 2000 Consultants
One Corporate Drive
Swansea, IL 62226
(618) 212-1135
(800)580-5299
jamie.fonger@advantage2k.com

10/27/2003

LINA/Cleiland 0938

Claimant: Cathy Cleiland - Initial Claim - PolicyID: FLK 20104                           Page 1 of 1

## Kirby, Karen 1115

**From:** Mary Lynn Kniker [marylynn.kniker@advantage2k.com]
**Sent:** Monday, October 13, 2003 11:36 AM
**To:** karen.kirby@cigna.com
**Subject:** Claimant: Cathy Cleiland - Initial Claim - PolicyID: FLK 20104


10/13/2003 10:34:25 AM
SSN:
Policy Holder: Temple Inland / Employer Group: Temple Inland / PolicyID: FLK 20104
Claimant: Cathy Cleiland - Initial Claim
Client: CIGNA / Karen Kirby (800) 376-0725 - karen.kirby@cigna.com


Karen,
    I completed the initial claim interview with Cathy Cleiland. The forms will be forwarded to the claimant for her signature.

# Lynn Kniker

Claims Analyst
Advantage 2000 Consultants, Inc.
One Corporate Drive
Swansea, IL 62226
800-580-5299
618-212-1100
marylynn.kniker@advantage2k.com

10/16/2003

LINA/Cleiland 0939

called Benefits Service Center
P/w William
2002  50 K taxfree
2003  50 K taxfree
Salary- no salary listed
                        Kirby 10/14/03

LINA/Cleiland 0940

called cmt -
got vm LMTC

X Kirby 10/13/03

called clmt 4:47pm
got vm LMTC

KKuby 10/2/0

LINA/Cleiland 0942



**Karen Kirby**
Case Manager
Cigna Disability Management Solutions



**CIGNA** Group Insu
Life · Accident · Disability

October 2, 2003



Routing 1115
PO Box 2052
Tarrytown, NY 10591-9052
Telephone 800-376-0725
Facsimile 860-687-9664

CATHY CLEILAND

MONROEVILLE, AL 36460

| | |
|---|---|
| Claimant: | Cathy Cleiland |
| Policy Number: | FLK 20104 |
| Policyholder Name: | Temple Inland |
| Underwriting Company: | Life Insurance Company of North America |

Dear Ms. Cleiland:

We received your claim for Long Term Disability (LTD) benefits. You may be entitled to benefits however, we are unable to make a decision at this time.

To fully understand how your condition limits your ability to work, we must request additional information from your physicians. We need this information to determine your functional ability, and whether you qualify for disability benefits as defined under your contract.

I will be requesting this information, however, you can assist us by contacting them and asking them to respond as soon as possible. However, if we are unable to obtain the information, it is your responsibility to provide us with the necessary documentation. If we do not receive the information within 45 days, we will make a decision based upon the information in our file at that time.

To assist us in managing your claim, we ask that you provide us with:

1. The enclosed Disability Questionnaire (completed in full)

2. Proof of your age (a copy of your driver's license or birth certificate is acceptable)

3. The enclosed Reimbursement Agreement (signed and dated)

We ask that you return these items in the envelope provided by October 20, 2003.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.



CATHY CLEILAND
October 2, 2003
Page 2

When we receive all of this information, we hope to be able to make a decision on your claim. If we are unable to make the decision, within 30 days of the day we received your claim, we will contact you and explain the reason for the delay.

Your benefits are generally reduced by the amount of any other benefits you receive as described in your policy because of your Disability. This includes any Social Security disability or retirement benefits you and your dependents receive, if so stated in your policy Please notify us immediately if you are receiving or become entitled to receive any income from sources such as:

- Social Security Disability or Retirement
- Statutory Disability*
- Employer Sick Leave
- Veterans Administration
- Worker's Compensation
- No-Fault automobile insurance
- Employer Pension

*If you work in California, Hawaii, New Jersey, New York, Rhode Island, or Puerto Rico, you should be eligible for disability benefits under Statutory Disability benefit plans.

If you are eligible for Social Security disability benefits, you should apply for these benefits now. If you are not sure if you would qualify, we can help. If we feel that you would qualify for Social Security benefits, and you choose not to apply for these benefits, your group policy allows us to reduce your Long Term Disability benefit by an amount that we estimate you would be eligible to receive. By returning proof of application and the signed Reimbursement Agreement to us by October 20, 2003, no estimate will be placed. You may call the Social Security Administration at 1-800-772-1213 to begin the application process. Please remember that your policy indicates that you must fully cooperate with us regarding the status of these benefits. Your lack of cooperation may result in a reduction of your Disability benefits by an estimated amount that we will assume that you are receiving.

We also have Medical Consultants and Occupational Consultants on staff who may be contacting you in the future to discuss other issues that may affect your disability claim. We ask that you extend your full cooperation to these consultants.

If you have other types of coverage with us that may pay benefits for this condition, you may submit a claim. For example, if your life insurance plan includes a waiver of premium for disability, you may be eligible to submit a waiver claim. Please review the provisions of your employee booklet or certificate.

LINA/Cleiland 0944

CATHY CLEILAND
October 2, 2003
Page 3

Thank you for your cooperation in completing and returning the requested forms and information. If you have any questions, please call me. I can be reached at our toll free number 1.800.376-0725, ext. 1518.

Sincerely,

Karen Kirby

Enc.

LINA/Cleiland 0945

**Kirby, Karen 1115**

**From:**     Marilyn Brown [marilyn.brown@advantage2k.com]
**Sent:**     Thursday, October 02, 2003 10:53 AM
**To:**        karen.kirby@cigna.com
**Subject:** Claimant: Cathy Cleiland - SSA-1696 Pending - Policy ID #: FLK 20104

10/02/2003 9:52:04 AM
SSN:
Policy ID #:  FLK 20104
Claimant:  Cathy Cleiland - SSA-1696 Pending
Client:  CIGNA Group Insurance - Tarrytown NY FCO / Karen Kirby (800) 376-0725 - karen.kirby@cigna.com


Dear Karen:

We are pleased to acknowledge that we have received your referral on **Cathy Cleiland.**

I will contact and review with the CIGNA Group Insurance insured:
  - The financial advantages to applying for SSDI
  - The Social Security Disability application/appeals process

I just wanted to let you know that this referral is greatly appreciated!

I will keep you informed of significant events in the process and will let you know if there are any unusual factors that would assist you in managing the LTD claim.  We will also add the claimant to all regularly scheduled status and event reports.

Should your office receive any additional medical evidence while we are pursuing Social Security benefits, it would be most helpful if you could please send a copy to me.

As always, your business is appreciated.  I look forward to working with you and your insured!

Sincerely,


Janelle Caponi
Customer Service Specialist


10/2/2003

LINA/Cleiland 0946



| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

   Add a New Incident Note     (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 10/02/2003 10:32:49 AM | Telephone Call | Narrative | LEAHY, JENNIFER | ICARE |

### ICARE Note Text

**Call to AP**
**Dr. Hackman**
**Spoke w/Brenda**
**confirms protruding disc that was there before, will fax over LOV notes**

Add a New Incident Note     (last record)

LINA/Cleiland 0947



| EE: CLEILAND, CATHY | SSN- | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

    Add a New Incident Note

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 10/02/2003 10:30:02 AM | Current Case Plan | Narrative | LEAHY, JENNIFER | ICARE |

### ICARE Note Text

**Extension thru 111103 max**
**CX remains OOW in excrutiating pain, will have another surgery, f/u w/surgeon 111703. File already in LTD.**

    Add a New Incident Note    

LINA/Cleiland 0948



| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

## View the Details for an Incident Note

    Add a New Incident Note

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 10/02/2003 10:28:20 AM | Telephone Call | Narrative | LEAHY, JENNIFER | ICARE |

### ICARE Note Text

Call to CX

CX is in constant pain, hasn't given form to AP for completion

CX is to have more surgery, possible a fusion, or rods.

CX is in tremendous amount of pain, can't get out of bed, can't even sit up in her bed. can only walk if she has pain meds.

Went for pain management for 1 appt, never made 2nd appt b/c 1 1/2 hour drive from home, couldn't even get out of bed to go.

Repeat MRI, disc material is pinching nerve.

f/u visit 111703 for consult on surgery w/surgeon at teaching HSPTL UAB.

Legs are becoming useless.

    Add a New Incident Note

LINA/Cleiland 0949



**ADVANTAGE 2000 CONSULTANTS**
*"Your Gateway to Social Security"*

One Corporate Drive · Swansea, IL 62226
P.O. Box 24157 · Belleville, IL 62223
Telephone: 1-800-580-5299 · Fax: 1-314-845-6141
E-mail: ccms.customer.service@advantage2k.com

*Date of Referral:* 10 / 2 / 03

## SOCIAL SECURITY ASSISTANCE PROGRAM - REFERRAL GUIDE

**Company Name:**
**FCO:** Tarrytown

CIGNA Group Insurance

**Company Address:**
**City, State and Zip:**
**Case Manager:** C. Karen Kirby
**CM Phone Number:** 800 326 0725
**CM Fax Number:**
**CM Email:** Karen.Kirby @cigna.com

**Disabled Person's Name:** Cathy Cleiland

**Policyholder:** Temple Inland

**Policy Number:** FLK 20104

**Claim Number:**

**Social Security Number:**

**Date of Birth:** __

**Telephone Number:** __

Sex: Male ☐  Female ☒

**Address:** __ Monroeville AL 36460

**Nature of Disability [Diagnosis]:** Mult Back Surgy

**Date the Disability Began:** 5 / 14 / 2003

| What is their marital status? | Married ☐ | Widowed ☐ | unknown |
| | Divorced ☐ | Single ☐ | |

Does the disabled person have any minor or disabled children?  YES ☐  NO ☐
Does Family Benefit Offset Apply?  YES ☐  NO ☐

Has the Disabled Person applied for Social Security before?  unknown
☐ Unknown
☐ Current application or appeal pending
☐ Previous SS application denied.   Date of Last Denial (If Available) __/__/__

**Level of Latest Denial:**  Initial App ☐  Recon ☐  Hearing ☐  Appeals Council ☐

Con Date: __/__/__

LINA/Cleiland 0950

## STD TO LTD REFERRAL FORM

| PH NAME: | Temple | | STD POL #: | SHD 020035 | LTD POL #: | FLK 020104 |
|---|---|---|---|---|---|---|
| STD CM NAME: | | Jennifer Leahy | | LTD CM NAME: | | Karen Kirby |
| CLAIMANT: | Cathy Cleiland | SSN: | | | AGE: | 46 |
| DOI: | 05/14/03 | BEN PD THRU: | 10/07/03 | STD MAX: | | 11/11/03 |
| OCC: | | HR Manager | | DIAGNOSIS: | | L4-5 radiculitis |
| ICD-9: | | | | MVA OR WC: (CIRCLE ONE) | | |
| MED REVIEW IN FILE: | | Yes | | IF YES, DATE REVIEWED: | | 09/29/03 |

**CLAIM SUMMARY:**

Scheduled RTW 100803, but is possible tht CX will not RTW at that time based on past hx of pain. I will let you know when I hear back from CX. 052103 L4-5 Laminectomy & 071603 re-exploration laminectomy.

| JD IN FILE? | No | EST RTW DATE: | 100803 |
|---|---|---|---|

| PLEASE SET DIARY FOR LTD SCM AND CHECK HERE WHEN COMPLETED! | done |
|---|---|

**STD TO LTD REFERRAL INFO:**

TO: LTD SA: _Laura_    FROM: SCM/TL _JLeahy_    DATE _10/1/03_

✓ LTD SA – Copy/Create LTD File, refer to LTD SCM. Return original to: _Jen Leahy_

_____ LTD SA – Shared Policyholder. Do NOT copy file. Create LTD file and refer to LTD SCM

LTD SA: _Donna Zacchio_    Dated Completed: _10/1/03_

LINA/Cleiland 0951

**ACCOUNT POLICY SUMMARY**

*PLEASE COMPLETE ONE FOR EVERY POLICY NUMBER, EVEN IF THE SAME POLICYHOLDER*

**Account Information:**

| | |
|---|---|
| Account Name: | Temple Inland |
| Address 1: | 1 North Brentwood #700 |
| Address 2: | |
| City, State, Zip: | St. Louis MO 63105 |
| Contact: | |
| Phone #: | 330-626-7300 |
| Effective Date: | 01/01/1999 |
| Cancellation Date: | |
| ASO or Insured: | ASO |
| Advise to Pay:(Y or N) | Yes |

**Benefits:**

| | |
|---|---|
| Max Duration: | 26 Weeks |
| Benefit % or Rate: | n/a |
| Ben. Max. Amt. (LTD) | n/a |
| Ben. Min. Amt. (LTD) | n/a |
| Rounded?:(YorN) | n/a |
| Intergration Method: | |
| Ben. Waiting period for | |
| Accident: | 0 |
| Sickness: | 0 |
| Hospitalization: | 0 |
| Checks to PH or CX? | No checks |
| Ben. Freq. (Weekly 7 or 5 days, Monthly etc. | 7 |
| Mandatory FIT?(YorN) | No checks |

**SRO Loading Information:**

| | |
|---|---|
| Policy Number: | SHD 20035 |
| Pol Code/Major Minor Code: | n/a |
| Suffix Codes: Attach list with description if multiple. | 001/002/003/006 |
| Coverage Code (s) | 821 ** |
| Division Code: | n/a |
| Location Code: Attach list with description if multiple. | varies |
| Rating Code: | n/a |
| Subminor Code: | n/a |

**Eligibility:**

| | |
|---|---|
| Covered ees: | |
| Elig. Waiting Period: | Information supplied b |
| Initial ees | |
| New ees: | |
| Hrs week required: | |
| Classes:Attach list with description if multiple. | n/a |
| EE contribution%: Pre/Post Tax | n/a |
| Pre-ex Definition: | none |

**LTD ONLY**

| | |
|---|---|
| Any Occ. Language: | |
| Mental Illness Limit | |

**Account Assignment:**

| | |
|---|---|
| CM assigned to account: | Jennifer Leahy |
| CMs Ext: | 1230 |
| CMs OP ID: | J504 |

**Special Instructions:**    We manage part time return to work.  Code f6 screen correctly.

| |
|---|
| LTD FLK 20104 |
| Benefit Period Code: | 1 |
| Term Type: | 3 |
| No letters to CX or ER.  APS may be faxed to AP. |
| Use CES checks:  Make sure bank code is 998 |
| Verify elig. on unikmx. See work structure ID below |
| Verify location code on CCC. |
| Update coverage screen in SRO for the weekly automated report. |
| Suffix codes: 001-Forest Products, 002 Financial Services, 003-Inland Eastex, 006-Inland |
| **New York employees: dual set up under NYD 067170 & SHD 020035; pay CX directly for NYD 067170 |

**Work Structure ID Codes**

| Work Structure ID | If Pay Type | and Company Numbers = |
|---|---|---|
| 2106 - Salary Continuance Salary | | All except 10216 & 20009 |
| 2106 - Salary Continuance Hourly | | 30027, 30080 & 31091 |
| 2107 - STD Only | Hourly | All except 10216. |
| 2108 - STD & LTD | Hourly | 30009, 30037, 30050, 30058, 30081, 30158 & 31092 |
| 2128 - STD Only (MO & S | All | 10216 & 20009    (LK 08370) |

LINA/Cleiland 0952

Claimant Name: CLEILAND, CATHY

SS #: _____

CM Name: _XKC,_

**Compliance Checklist**

Date Received: ___05/27/03___

Acknowledgement Must Be Sent By: ___06/05/03___    Alert to Other Benefits as required.

Call to claimant must be made by: ___06/02/03___

| 1st Delay Date Must be Sent | | If 1st Delay Sent on | 2nd Delay Must be Sent By | If 2nd Delay Sent on | 3rd Delay Must Be Sent By |
|---|---|---|---|---|---|
| 06/25/03 | | 06/10/03 | 07/09/03 | 06/24/03 | 07/23/03 |
| | | 06/11/03 | 07/10/03 | 06/25/03 | 07/24/03 |
| | | 06/12/03 | 07/11/03 | 06/26/03 | 07/25/03 |
| | | 06/13/03 | 07/12/03 | 06/27/03 | 07/26/03 |
| | | 06/14/03 | 07/13/03 | 06/28/03 | 07/27/03 |
| | | 06/15/03 | 07/14/03 | 06/29/03 | 07/28/03 |
| | | 06/16/03 | 07/15/03 | 06/30/03 | 07/29/03 |
| | | 06/17/03 | 07/16/03 | 07/01/03 | 07/30/03 |
| | | 06/18/03 | 07/17/03 | 07/02/03 | 07/31/03 |
| | | 06/19/03 | 07/18/03 | 07/03/03 | 08/01/03 |
| | | 06/20/03 | 07/19/03 | 07/04/03 | 08/02/03 |
| | | 06/21/03 | 07/20/03 | 07/05/03 | 08/03/03 |
| | | 06/22/03 | 07/21/03 | 07/06/03 | 08/04/03 |
| | | 06/23/03 | 07/22/03 | 07/07/03 | 08/05/03 |
| | | 06/24/03 | 07/23/03 | 07/08/03 | 08/06/03 |
| | | 06/25/03 | 07/24/03 | 07/09/03 | 08/07/03 |
| | | | | 07/10/03 | 08/08/03 |
| | | | | 07/11/03 | 08/09/03 |
| | | | | 07/12/03 | 08/10/03 |
| | | | | 07/13/03 | 08/11/03 |
| | | | | 07/14/03 | 08/12/03 |
| | | | | 07/15/03 | 08/13/03 |
| | | | | 07/16/03 | 08/14/03 |
| | | | | 07/17/03 | 08/15/03 |
| | | | | 07/18/03 | 08/16/03 |
| | | | | 07/19/03 | 08/17/03 |
| | | | | 07/20/03 | 08/18/03 |
| | | | | 07/21/03 | 08/19/03 |
| | | | | 07/22/03 | 08/20/03 |
| | | | | 07/23/03 | 08/21/03 |
| | | | | 07/24/03 | 08/22/03 |

45 y/o HR manager

dob 7/11/1957

ddh -8/24/98

lbo 1/1/99

ldw 5/13/03

doi 5/14/03

beg 5/14/03

RTW est 7/7

may 11/11/03

LTD FCK 020104

enrolled yes

low back surgery

5/21/03

est RTW 7/7/03

about 6-7 wks

Date Sent: _____

In Compliance ?: _____

approve thru 6/15

2/06

102o6

Peggy Sigler 001/

LINA/Cleiland 0953

# TEAM STAFFING
## QUICK FILE REVIEW FORM

Date of Staffing: ___9/29___

| | |
|---|---|
| **CM NAME:** | J. Leahy |
| **CX's NAME:** | Cathy Cleiland |
| **AGE:** | 45 |
| **SSN:** | |
| **OCCUPATION:** | HR Manager |
| **DX:** | L4-L5 radiculitis |
| **DOI:** | 5/14/03 |
| **SURGERY DATE:** | 5/21/03 #5 laminectomy & re-exploration laminectomy 7/10/03 |
| **LTD?** | yes | **STD MAX DATE:** 11/11/03 |

| | |
|---|---|
| **SUGGESTED STRATEGY** | prepare for LTD referral <br><br> Cx S/P 2 disc surgeries. Cx continues c̄ L4-L5 radiculitis. <br><br> Cx has a RTW of 10/8/03. CM concerned this may not occur because of extreme pain |
| **RECOMMENDED DURATION OF DISABILITY** | SD to RTW - please get mobility status. See how symptomatic Cx is c̄ sitting. this could b... <br> ☐ Check here if this needs to be Assigned to NCM for Medical Management |

a problem

| | | | |
|---|---|---|---|
| **NCM:** | Dele Upton | | |
| **TL/SCM:** | | **CM:** | |

LINA/Cleiland 0954

Jennifer L. Leahy
Case Manager III
Disability Management Solutions



**CIGNA** Group Insuraı
Life · Accident · Disability

FILE COPY

August 12, 2003

Routing  1115
P.O. Box 2052
Tarrytown, NY 10591
Telephone  1-800-376-0725 ext
1230
Facsimile  1-860-298-6555

CATHY CLEILAND

MONROEVILLE, AL 36460

| | |
|---|---|
| **Name of Insured:** | **Cathy Cleiland** |
| **Policy Number:** | **SHD 020035** |
| **Policyholder:** | **Temple Inland** |
| **Administered By:** | **Life Insurance Company of North America** |

Dear Ms. Cleiland:

We have completed a thorough review of a claim submitted on your behalf from your employer, Temple Inland

We have informed your employer that your claim has been approved through **October 7, 2003.**

If you are able to return to work prior to **October 8, 2003** please contact our office immediately.

If you are unable to return to work on **October 8, 2003** for medical reasons, please have your physician complete the attached Disability Extension Form.

Please be certain to keep your employer informed of your return to work status.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy.  This determination has been made in good faith without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. We will be pleased to review any information you have that would prove contrary to our findings.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

CATHY CLEILAND
August 12, 2003
Page 2

If you have any questions or concerns, please do not hesitate to call me at 1
Ext 1230.

Sincerely,


Jennifer L. Leahy



*Disability Management Solutions* ℠
*Follow-Up Medical Request Form*



CIGNA Group Insurance
Life • Accident • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



CIGNA

**We are continuing to evaluate your patient's disability claim. Please respond to the following questions.**
**Attached is a Department of Labor description of your patient's occupation for your reference.**
**Please document your medical findings by providing copies of supporting reports, such as office notes/consultations/testing.**
*(Failure to provide the requested reports may result in delay in the claim determination.)*

| Claimant Name: | Date of Birth: |
|---|---|
| Cathy Cleiland:  Please fax response to JLeahy (860) 298-6555 | |

How has the patient's condition changed since the last update?   ☐ No change   ☐ Improved   ☐ Worse

| Date of your patient's last office visit: | When is your patient's next office visit? |
|---|---|

Please list any change in the treatment plan since the last update:

Please list all current medications that are related to this impairment or impact return to work:

What are the specific restrictions that you have placed on your patient at this time?

At Work:

At Home  *(Activities of Daily Living)*:

Do you expect functional deficits to prevent your patient from performing essential job functions?   ☐ Yes   ☐ No
Please specify:

Could your patient return to work at this time if accommodations were made for the listed restrictions?   ☐ Yes   ☐ No
If no, why not?

If no, based on your experience, what is your best estimate of when your patient can return to work?
With Restrictions: _____     Without Restrictions: _____

| Physician Name  *(Please Print)*: | Degree & Specialty: |
|---|---|
| Address: *(Street, City, State, Zip Code)* | |
| Telephone Number:  (     ) | Federal Tax ID #: |
| Physician Signature: | Date: |

618261  5-03                           *Thank you for your time.*

LINA/Cleiland 0957

## John E. Hackman, M.D., P.A.

*Neurosurgery*
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106-1107

Office: (334) 834-1663
Fax: (334) 834-1936

SEND TO: *Disability Management*

ATTENTION: *Jennifer Leahy*

DATE: *7/21/03*

FAX #: _____   PHONE #: _____
*1-860-298-6555*

FROM:

( ) JOHN E. HACKMAN, M.D.

( ) LINDA C. THOMPSON

( ) KATHY WILKES

(X) BRENDA GILLILAND

( ) URGENT    ( ) REPLY ASAP    ( ) PLEASE COMMENT    (✓) PLEASE REVIEW

TOTAL PAGES, INCLUDING COVER: _____8_____

PATIENT'S NAME *Cathy Cleiland*

COMMENTS:

CONFIDENTIALITY NOTE – The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above. If the receiver of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify us by telephone so we can correct the error.    THANK YOU.

LINA/Cleiland 0958

07/18/2003 11:38 FAX  1 334 834 1936     DR JOHN HACKMAN            @002/008
07/17/2003 10:25 FAX                     Cigna                                          @002

***Disability Management Solutions***℠
***Follow-Up Medical Request Form***

CIGNA Group Insurance
Life • Accident • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



We are continuing to evaluate your patient's disability claim. Please respond to the following questions.
Attached is a Department of Labor description of your patient's occupation for your reference.
**Please document your medical findings by providing copies of supporting reports, such as office notes/consultations/testing.**
*(Failure to provide the requested reports may result in delay in the claim determination).*

| Claimant Name: | Date of Birth: |
|---|---|
| **Cathy Cleiland, Please fax response to JLeahy (860) 298-6555** | |

How has the patient's condition changed since the last update?   ☐ No change   ☐ Improved   ☐ Worse

Patient had additional back surgery on 7/16/03

| Date of your patient's last office visit: | When is your patient's next office visit? |
|---|---|
| 7/17/03 - discharged from hospital | 8/28/03 |

Please list any change in the treatment plan since the last update:

Patient had a recurrence of pain in her left hip and leg, MRI scan showed   a large
recurrent disc herniation at L4-5 on the left with extruded fragments

Please list all current medications that are related to this impairment or impact return to work:

What are the specific restrictions that you have placed on your patient at this time?   See post-op discharge instructions
At Work: Patient is recovering from back surgeries done on 5/21/03 and 7/16/03

At Home *(Activities of Daily Living)*:

Do you expect functional deficits to prevent your patient from performing essential job functions?   ☒ Yes   ☐ No
Please specify:

Could your patient return to work at this time if accommodations were made for the listed restrictions?   ☐ Yes   ☒ No
If no, why not?   She is recovering from back surgery done on 7/16/03

If no, based on your experience, what is your best estimate of when your patient can return to work?   approx 10/8/03
With Restrictions: _____   Without Restrictions: _____

| Physician Name *(Please Print)*: | Degree & Specialty: |
|---|---|
| John E. Hackman, M.D. | Neurosurgeon |
| Address: *(Street, City, State, Zip Code)* | |
| 1722 Pine Street, Suite 1001, Montgomery, AL  36106 | |
| Telephone Number: | Federal Tax ID #: |
| (334 )  834-1663 | 63-0759811 |
| Physician Signature: | Date: |
| | 7/18/03 |

612292. 8-93                              *Thank you for your time.*

LINA/Cleiland 0959

**JOHN E. HACKMAN, M.D., P.A.**
**1722 PINE ST., SUITE 1001**
**MONTGOMERY, AL 36106-1107**

CLEILAND, CATHY K.

BIRTHDATE:
S.S.#:

04-23-03

Mrs. Cleiland comes in because she is having increasing problems in her left hip and leg with numbness in the left lateral thigh. She has already schedule surgery for May 21, 2003, lumbar laminectomy at L4-5 on the left. We went over her x-rays. We discussed alternatives. Risks and benefits of surgery were discussed. She is going to come in on May 21, 2003 for lumbar laminectomy at L4-5 on the left.

She said if anything might delay the surgery she would like to give it a try. So we are going to try some physical therapy and if the physical therapy does not help, then we will plan on surgery as scheduled.

05-12-03 - Letter to George K. Elbrecht, P.C., Attorney at Law - faxed and mailed 05-13-03.

05-13-03 - Lortab 5 #30, one three times a day as needed with one refill called into
           Wal-Mart 251-575-3383.      (FAX # 251-575-7063)

05-21-03 - Hospital admission.

05-21-03 - Lumbar laminectomy, L4-5, left.

05-22-03 - Discharged home.

DIAGNOSIS- Lumbar radiculitis, L4-5, left.

06-02-03

Patient called up because her Darvocet is not strong enough. We called in Ultram and Neurontin 300 mg four times a day.

06-10-03

Cathy called and said she needed something stronger for pain. We are going to call in Tylenol #3, #30, one every four hours as needed with two refills. Called in to Wal-Mart (334) 774-5508 or (334) 774-5651.

07-07-03 - Records mailed to Kathy Underwood, Legal Assistant to Terry G. Key, COCHRAN,
           CHERRY, GIVENS & SMITH, P.C.

07-10-03

Cathy comes in for follow up. She says she is still having a lot of trouble with her left leg. She says it hurts and it feels sort of swollen and heavy. She has got negative straight leg raising. Knee reflexes are intact. Ankle reflexes are both absent today. She does not have a foot drop.

I asked her about her medication. She says she is not taking Neurontin because it was too expensive. I told her the Neurontin might help. We are going to give her a Medrol Dosepak. We are going to get an MRI scan and see her back.

LINA/Cleiland 0960

'/18/2003 11:39 FAX  1 334 834 1936      DR JOHN HACKMAN                    ☒00'

# John E. Hackman, M.D., P.A.

*Neurosurgery*
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106-1107

Office: (334) 834-1663
Fax: (334) 834-1936

## POST-OP DISCHARGE INSTRUCTIONS

## FOR

## LUMBAR LAMINECTOMY AND ANTERIOR CERVICAL FUSION

(1)   You are not to lift anything heavier than five (5) pounds for the first six (6) weeks.

(2)   No bending, stooping, pulling or twisting.

(3)   No riding in a vehicle for the first two (2) weeks except for your trip home.  We prefer you to be house-bound for the first two (2) weeks.

(4)   You are not to lift anything heavier than five (5) pounds for the first six (6) weeks.

(5)   After two (2) weeks you may start walking for exercise.  You may begin to walk for ten (10) minutes twice a day, building up your walking time as tolerated.  When you are walking outside, try to avoid uneven ground.  If walking is uncomfortable, then give it some more time before you start into a walking program.

(6)   You may shower when you go home, but tub baths should wait until after complete healing of your wound.

(7)   You may experience some nerve pain to return in the next few days after you go home.  This may last for a few weeks or longer.  This would be hip and leg pain in back surgery patients or shoulder and arm pain in neck surgery patients.  This is very common and is caused by irritation of the nerve and should improve with time.

(8)   Watch your wound for signs of infection: redness, swelling and pus, or any kind of drainage.  If you have drainage that looks like water or pus or if you have a temperature greater than 101.5 orally, you should call us immediately.

(9)   You will need to see Dr. Hackman in six (6) to eight (8) weeks.  If the nurses did not made an appointment for you, you need to call Dr. Hackman's office to set up an  appointment.  Please do this the next working day after leaving the hospital as we need to get you on the schedule  for an appointment.

(10)  Be patient.  It takes a long time to get over spinal surgery.  Most people are three (3) to four (4) months from surgery before they can start to act normal.

LINA/Cleiland 0961

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street * Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:  CLEILAND, CATHY            MR#:  28-51-42     Pg 1
PHYSICIAN:     JOHN E. HACKMAN, M.D.
ADMIT DATE:    7/14/03
DATE OF OPERATION:  7/16/2003

BS job # 0716-058

PREOPERATIVE DIAGNOSIS
Recurrent disc herniation at L4-5, left.

POSTOPERATIVE DIAGNOSIS
Recurrent disc herniation at L4-5, left.

PROCEDURE
Re-exploration laminectomy at L4-5, left.

SURGEON
Dr. John Hackman.

INDICATIONS
This 45-year-old white female had a laminectomy nearly two months ago
at L4-5 on the left and initially did well. She did start having some
recurrence of pain in her left hip and leg. That pain has become very
severe over the last week.  She presented to the emergency room and
was admitted for pain control. On evaluation, we found, on an MRI
scan, that she has large recurrent disc herniation at L4-5 on the
left with extruded fragments.

PROCEDURE
The patient was taken to the operating room where she underwent
general endotracheal anesthesia. She was turned to the prone position
on chest rolls. The operative site was shaved, prepped and draped in
sterile manner. Midline incision was made over L4-5, at old lumbar
scar. It was carried down to the lumbar fascia, left of the midline.
Paravertebral muscles were stripped off the spinous processes and
lamina, exposing the intralaminar space at L4-5 on the left.
Previous laminectomy site was enlarged. Scar tissue was removed. We
found several huge fragments of cartilage out under the dural sac and
the nerve root. These were all cleaned out. It appeared that she had
avulsed some of the cartilage end plate. We cleaned out all loose
fragments and made sure we had a good decompression. Bleeding was
controlled with Gelfoam and thrombin.  The wound was closed in
multiple layers of Vicryl suture.

ESTIMATED BLOOD LOSS
Blood loss during the procedure was 150 cc.

COMPLICATIONS
There were no obvious complications.

PHYSICIAN COPY

LINA/Cleiland 0962

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street * Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:    CLEILAND, CATHY             MR#:   28-51-42    Pg 2
PHYSICIAN:       JOHN E. HACKMAN, M.D.
ADMIT DATE:      7/14/03


Sterile dressings were applied and the patient was taken to the
recovery room in satisfactory condition.


3AI0716
D:                                    _____
T: 7/16/03                           JOHN E. HACKMAN, M.D.


PHYSICIAN COPY

LINA/Cleiland 0963

### JACKSON HOSPITAL & CLINIC, INC.
#### 1725 Pine Street * Montgomery, Alabama  36106

### HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY            MR#:  28-51-42    Pg 1
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     7/14/03

---

CHIEF COMPLAINT: Left hip and leg pain.

HISTORY OF PRESENT ILLNESS: This is 45-year-old white female, diabetic. She recently had a laminectomy on 5/21/03 at L4-5 on the left. She initially did well. She has had a recurrence of pain in the left hip and leg. We have talked to her a couple of times and I saw her in the office this past week. She complained about increasing weakness. I put her on medication but she has gotten progressively worse and she presented to the emergency room and was admitted for reevaluation and pain control.

PAST MEDICAL HISTORY: Positive for insulin-dependent diabetes. She is noncompliant. She has been otherwise healthy.

PRIOR SURGERY: Includes two cesarean sections, tubal ligation, reversal of the tubal ligation, removal of the right tube and ovary, anterior cervical fusion, carpel tunnel surgery, lumbar laminectomy.

HOME MEDICATIONS:
1. Humulin insulin 70/30, 40 units twice a day.
2. Effexor.
3. Klonopin.
4. Pain pills.

ALLERGIES: None reported.

FAMILY HISTORY: Positive for diabetes.

SOCIAL HISTORY: Shows the patient is a nonsmoker.

PHYSICAL EXAM:
GENERAL: Shows a generally healthy appearing white female. She is alert and oriented. Cranial nerves are intact.
NECK: She has a good range of motion of the neck.
CHEST: Clear.
HEART: Regular.
ABDOMEN: Soft.
EXTREMITIES: She has pain with straight leg raising on the left. Knee reflexes are intact. The ankle are both absent. She has weakness of toe extension on the left.

PHYSICIAN COPY

LINA/Cleiland 0964

## JACKSON HOSPITAL & CLINIC, INC.
### 1725 Pine Street * Montgomery, Alabama  36106

### HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY              MR#:   28-51-42    Pg 2
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     7/14/03

ADMISSION IMPRESSION:
1. Recurrent lumbar radiculitis at L4-5 left.

4JB0715
D: 7/15/03                          _____
T: 7/15/03                          JOHN E. HACKMAN, M.D.

PHYSICIAN COPY

LINA/Cleiland 0965



07/17/2003 10:26 FAX                    Cigna                          ☑001

```
                        *********************
                        ***   TX REPORT   ***
                        *********************

            TRANSMISSION OK

            TX/RX NO              0095
            CONNECTION TEL                 913348341936
            CONNECTION ID
            ST. TIME              07/17 10:25
            USAGE T               00'47
            PGS. SENT             2
            RESULT                OK
```

## *Facsimile Transmission Cover Sheet*



**CIGNA Group Insurance**
Life · Accident · Disability

| Transmit to FAX number<br>(334) 834-1936 | Date<br>July 16, 2003 | Time<br>10:28 AM | Total number of pages<br>(including this sheet) : 2 |
|---|---|---|---|

| To | | From | |
|---|---|---|---|
| **Name**<br>Dr. John Hackman | | **Name**<br>Jennifer L. Leahy | |
| **Company**<br>Attn: Brenda Gilliland | | **Department**<br>Disability Management Solutions | |
| **Phone**<br>(334) 834-1663 | | **Phone**<br>1-800-376-0725 ext. 1230 | |
| **Address** | | **Address**<br>1115<br>P.O. Box 2052<br>Tarrytown, NY 10591 | |

**Comments**

RE:     Cathy Cleiland

Please complete and return the attached form.


Thanks,

JLeahy

LINA/Cleiland 0966

*Facsimile Transmission Cover Sheet*



**CIGNA** Group Insuranc
Life · Accident · Disability

| Transmit to FAX number (334) 834-1936 | Date July 16, 2003 | Time 10:28 AM | Total number of pages (including this sheet) : 2 |
|---|---|---|---|

| To | From |
|---|---|

| Name Dr. John Hackman | Name Jennifer L. Leahy |
|---|---|

Company
Attn: Brenda Gilliland

Department
Disability Management Solutions

Phone
(334) 834-1663

Phone
1-800-376-0725 ext. 1230

Address

Address
1115
P.O. Box 2052
Tarrytown, NY 10591

**Comments**

RE:       Cathy Cleiland

Please complete and return the attached form.


Thanks,

JLeahy

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

[ ] Acknowledgment Requested                    To Fax a reply, dial : 1-860-298-6555

LINA/Cleiland 0967

*Disability Management Solutions* ℠
*Follow-Up Medical Request Form*

CIGNA Group Insurance
Life • Accident • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



**CIGNA**

We are continuing to evaluate your patient's disability claim. Please respond to the following questions.
Attached is a Department of Labor description of your patient's occupation for your reference.
**Please document your medical findings by providing copies of supporting reports, such as office notes/consultations/testing.**
*(Failure to provide the requested reports may result in delay in the claim determination).*

| Claimant Name: Cathy Cleiland, Please fax response to JLeahy (860) 298-6555 | Date of Birth: |
|---|---|

How has the patient's condition changed since the last update?  ☐ No change  ☐ Improved  ☐ Worse

| Date of your patient's last office visit: | When is your patient's next office visit? |
|---|---|

Please list any change in the treatment plan since the last update:

Please list all current medications that are related to this impairment or impact return to work:

What are the specific restrictions that you have placed on your patient at this time?

At Work:

At Home  *(Activities of Daily Living):*

Do you expect functional deficits to prevent your patient from performing essential job functions?  ☐ Yes  ☐ No
Please specify:

Could your patient return to work at this time if accommodations were made for the listed restrictions?  ☐ Yes  ☐ No
If no, why not?

If no, based on your experience, what is your best estimate of when your patient can return to work?
With Restrictions: _____    Without Restrictions: _____

| Physician Name *(Please Print):* | Degree & Specialty: |
|---|---|

Address: *(Street, City, State, Zip Code)*

| Telephone Number:  (    ) | Federal Tax ID #: |
|---|---|

| Physician Signature: | Date: |
|---|---|

618261  5-03

*Thank you for your time.*

LINA/Cleiland 0968

06/10/2003 11:42 FAX  1 334 834 1936     DR JOHN HACKMAN                    ☒001/007

# John E. Hackman, M.D., P.A.
*Neurosurgery*
1722 Pine Street, Suite 1001                    Office: (334) 834-1663
Montgomery, Alabama 36106-1107                  Fax: (334) 834-1936

**SEND TO:**                                    **FROM:**

Cigna                                           ( )    JOHN E. HACKMAN, M.D.

**ATTENTION:**                                  ( )    LINDA C. THOMPSON
Jennifer L. Leahy
                                                ( )    KATHY WILKES
**DATE:**
6/10/03                                         (X)    BRENDA GILLILAND

**FAX #:**                    **PHONE #:**
1 860-298-6555        1-800-376-0725 Ext 1230

( ) URGENT        ( ) REPLY ASAP        ( ) PLEASE COMMENT        ( ) PLEASE REVIEW

**TOTAL PAGES, INCLUDING COVER:**  7

**PATIENT'S NAME**  Cathy C. Cleiland

**COMMENTS:**

**CONFIDENTIALITY NOTE** – The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above.  If the receiver of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited.  If you have received this telecopy in error, please notify us by telephone so we can correct the error.     THANK YOU.

**LINA/Cleiland 0969**

6/10/2003 11:42 FAX  1 334 834 1936      DR JOHN HACKMAN                          ☑002/007

**JOHN E. HACKMAN, M.D., P.A.**
**1722 PINE ST., SUITE 1001**
CLEILAND, CATHY K.                **MONTGOMERY, AL 36106-1107**

BIRTHDATE:
S.S.#:

04-23-03

Mrs. Cleiland comes in because she is having increasing problems in her left hip and leg
with numbness in the left lateral thigh.  She has already schedule surgery for May 21,
2003, lumbar laminectomy at L4-5 on the left.  We went over her x-rays.  We discussed
alternatives.  Risks and benefits of surgery were discussed.  She is going to come in on
May 21, 2003 for lumbar laminectomy at L4-5 on the left.

She said if anything might delay the surgery she would like to give it a try.  So we are
going to try some physical therapy and if the physical therapy does not help, then we will
plan on surgery as scheduled.

─────────────────────────────

05-12-03 – Letter to George K. Elbrecht, P.C., Attorney at Law.– faxed and mailed 05-13-03.

─────────────────────────────

05-13-03 – Lortab 5 #30, one three times a day as needed with one refill called into
              Wal-Mart 251-575-3383.       (FAX # 251-575-7063)

─────────────────────────────
05-21-03 – Hospital admission.

05-21-03 – Lumbar laminectomy, L4-5, left.

05-22-03 – Discharged home.

DIAGNOSIS– Lumbar radiculitis, L4-5, left.

─────────────────────────────

LINA/Cleiland 0970

10/2003 11:43 FAX  1 334 834 1936      DR JOHN HACKMAN                    Ø003/00

06/10/2003  11:14      2938965                        4                        PAGE  02

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street
Montgomery, Alabama  36106

DISCHARGE SUMMARY

PATIENT NAME:  CLEILAND, CATHY              MR#:  28-51-42
ATTENDING:                                 ACT#: 10547947
ADMIT DATE:     5/21/2003                   RM#:
DISCHARGE DATE: 5/22/2003

Bytescribe #0522-063

REASON FOR ADMISSION:  This 45-year-old, diabetic white female comes in with persistent left hip and leg pain with numbness.  This has gotten progressively worse for a year.  Magnetic resonance imaging scan shows disc bulging at L4-5 on the left with osteophytes.  This protrudes into the foramen.  She now comes in for surgery.

HOSPITAL COURSE:  The patient was admitted to the hospital and taken to surgery where she had a lumbar laminectomy at L4-5 on the left.  She had immediate improvement, did well and was discharged home the following day.  The wound looked good, and she was given instructions.  She will be followed up in the office.

DISCHARGE DIAGNOSIS:  Lumbar radiculitis L4-5 on the left.

OPERATIVE PROCEDURE THIS ADMISSION: Lumbar laminectomy L4-5 on the left.

JOHN E. HACKMAN, M.D.

8DW0522
D:  5/22/2003 08:17
T:  5/22/2003 10:56
143166

LINA/Cleiland 0971

## JACKSON HOSPITAL & CLINIC, INC.
### 1725 Pine Street * Montgomery, Alabama  36106

## REPORT OF OPERATION

**PATIENT NAME:**  CLEILAND, CATHY            MR#:  28-51-42      Pg 1
**PHYSICIAN:**     JOHN E. HACKMAN, M.D.
**ADMIT DATE:**    5/21/03
**DATE OF OPERATION:**  5/21/2003

**PREOPERATIVE DIAGNOSIS:**  Lumbar radiculitis L4-5 left.

**POSTOPERATIVE DIAGNOSIS:**  Lumbar radiculitis L4-5 left.

**NAME OF PROCEDURE:**  Lumbar laminectomy L4-5 left.

**ASSISTANT:**

**ANESTHESIA:**  General endotracheal anesthesia.

**INDICATIONS FOR PROCEDURE:** This is a 45-year-old white female comes in with persistent back and left leg pain with numbness and weakness. She has had conservative treatment without improvement.  The MRI scan shows a protruding disk with associated osteophyte at L4-5 on the left.

**DESCRIPTION OF PROCEDURE:**  The patient was taken to the operating room where she underwent general endotracheal anesthesia.  She was turned in the prone position on chest rolls.  The operative sites were shaved, prepped, and draped in the sterile manner.  A midline incision was made over L4-5.  This was carried down to the lumbar fascia, which was opened to the left of the midline.  The paravertebral muscles were stripped off the spinous processes and lamina exposing the interlaminar space at L4-5 on the left.

A portion of the inferior lamina of L4 was removed.  The ligamentum flavum was removed.  The nerve roots were identified.  Underneath we found a soft protruding disk. There was some associated osteophyte going off the rim of the inferior part of L4 and extending out into the foramen along with protruding disk.

We opened the ligament.  We used pituitary rongeurs and curets and cleaned out fragmented disk material until all loose fragments were removed.  We then removed the associated osteophytes with curets.  We made sure we had a good decompression in the central canal and the nerve root canal.  Bleeding was controlled with Gelfoam and thrombin.

The wound was closed in multiple layers of Vicryl suture.  Blood loss during the procedure 350 cc.  There were no obvious complications. Sterile dressings were applied.

**PHYSICIAN COPY**

LINA/Cleiland 0972

'10/2003 11:44 FAX  1 334 834 1936    DR JOHN HACKMAN                    @005/007

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street * Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY          MR#:  28-51-42    Pg 2
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     5/21/03

The patient was taken to the recovery room in satisfactory condition

6HI0521
D: 5/21/03                    _____
T: 5/21/03                    JOHN E. HACKMAN, M.D.

PHYSICIAN COPY

LINA/Cleiland 0973

# John E. Hackman, M.D., P.A.

*Neurosurgery*
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106-1107

Office: (334) 834-1663
Fax: (334) 834-1936

## POST-OP DISCHARGE INSTRUCTIONS

### FOR

### LUMBAR LAMINECTOMY AND ANTERIOR CERVICAL FUSION

(1)  You are not to lift anything heavier than five (5) pounds for the first six (6) weeks.

(2)  No bending, stooping, pulling or twisting.

(3)  No riding in a vehicle for the first two (2) weeks except for your trip home. We prefer you to be house-bound for the first two (2) weeks.

(4)  You are not to lift anything heavier than five (5) pounds for the first six (6) weeks.

(5)  After two (2) weeks you may start walking for exercise. You may begin to walk for ten (10) minutes twice a day, building up your walking time as tolerated. When you are walking outside, try to avoid uneven ground. If walking is uncomfortable, then give it some more time before you start into a walking program.

(6)  You may shower when you go home, but tub baths should wait until after complete healing of your wound.

(7)  You may experience some nerve pain to return in the next few days after you go home. This may last for a few weeks or longer. This would be hip and leg pain in back surgery patients or shoulder and arm pain in neck surgery patients. This is very common and is caused by irritation of the nerve and should improve with time.

(8)  Watch your wound for signs of infection: redness, swelling and pus, or any kind of drainage. If you have drainage that looks like water or pus or if you have a temperature greater than 101.5 orally, you should call us immediately.

(9)  You will need to see Dr. Hackman in six (6) to eight (8) weeks. If the nurses did not made an appointment for you, you need to call Dr. Hackman's office to set up an appointment. Please do this the next working day after leaving the hospital as we need to get you on the schedule for an appointment.

(10)  Be patient. It takes a long time to get over spinal surgery. Most people are three (3) to four (4) months from surgery before they can start to act normal.

LINA/Cleiland 0974





**CIGNA** Group Insurance
Life · Accident · Disability

**Please return to Jennifer Leahy at fax #(860) 298-6555**

### EXTENSION OF DISABILITY REQUEST FORM

| Claimant Name: | Cathy Cleiland | Claimant DOB: | |
|---|---|---|---|

If you feel your patient will be unable to return to work on **July 16, 2003**, we require additional information to substantiate a continuing disability. Please provide a copy of office visit notes and diagnostic testing results from the date you began treating this patient for this condition through the present. In addition, we would appreciate a response to the following questions.

1. What is the primary diagnosis?

   Lumbar radiculitis, L4-5, left

2. Are there any other diagnoses?

3. What are the specific limitations you have placed on your patient, if any?

   See post-operative instructions

4. What are the complicating factors preventing recovery, if any?

5. What is your patient's expected return to work date?    approx 8/13/03

6. What is your current treatment plan for this patient?    rest and recovery for lumbar laminectomy

   done on 5/21/03

7. When is your patient's next office visit?    07/08/03

8. When was your patient's last office visit?    4/23/03

Completion of this form without accompanying medical records will not be sufficient to consider extension of disability.

| | |
|---|---|
| Written Name | Signature and date |
| | John E. Hackman, M.D. |
| Neurosurgeon | 1722 Pine Street, Suite 1001, Montgome |
| Specialty, if applicable | Telephone Number 36109 |
| | (334) 834-563 |

*Confidential, unpublished property of CIGNA. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2003 CIGNA*

LINA/Cleiland 0975



06/09/2003 15:32 FAX                  Cigna                                    ☒001

```
                    ***********************
                    ***   TX REPORT   ***
                    ***********************

        TRANSMISSION OK

        TX/RX NO                4494
        CONNECTION TEL                    913348341936
        CONNECTION ID
        ST. TIME                06/09 15:31
        USAGE T                 00'50
        PGS. SENT               2
        RESULT                  OK
```

## *Facsimile Transmission Cover Sheet*



**CIGNA** Group Insurance
Life · Accident · Disability

| Transmit to FAX number (334) 834-1936 | Date June 9, 2003 | Time 2:52 PM | Total number of pages (including this sheet) : 2 |
|---|---|---|---|

| To | From |
|---|---|

| Name Dr.John Hackman | Name Jennifer L. Leahy |
|---|---|
| Company | Department Disability Management Solutions |
| Phone (334) 834-1663 | Phone 1-800-376-0725 ext. 1230 |
| Address | Address 1115 P.O. Box 2052 Tarrytown, NY 10591 |

**Comments**

RE:       Cathy Cleiland

Please complete the attached form and provide requested medical records for your patient.


Thanks,

JLeahy

LINA/Cleiland 0976

 

*Facsimile Transmission Cover Sheet*



**CIGNA Group Insuranc**
Life · Accident · Disability

| Transmit to FAX number<br>(334) 834-1936 | Date<br>June 9, 2003 | Time<br>2:52 PM | Total number of pages<br>(including this sheet) : 2 |
|---|---|---|---|
| **To** | | **From** | |

| **To** | **From** |
|---|---|
| Name<br>Dr.John Hackman | Name<br>Jennifer L. Leahy |
| Company | Department<br>Disability Management Solutions |
| Phone<br>(334) 834-1663 | Phone<br>1-800-376-0725 ext. 1230 |
| Address | Address<br>1115<br>P.O. Box 2052<br>Tarrytown, NY 10591 |

**Comments**

RE:      Cathy Cleiland

Please complete the attached form and provide requested medical records for your patient.


Thanks,

JLeahy

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

| [ ] Acknowledgment Requested | To Fax a reply, dial : 1-860-298-6555 |
|---|---|

LINA/Cleiland 0977



**CIGNA Group Insurance**
Life · Accident · Disability

**Please return to Jennifer Leahy at fax #(860) 298-6555**

## EXTENSION OF DISABILITY REQUEST FORM

| Claimant Name: | Cathy Cleiland | Claimant DOB: | |
|---|---|---|---|

If you feel your patient will be unable to return to work on **July 16, 2003**, we require additional information to substantiate a continuing disability. **Please provide a copy of office visit notes and diagnostic testing results from the date you began treating this patient for this condition through the present.** In addition, we would appreciate a response to the following questions.

1. What is the primary diagnosis?

_____

2. Are there any other diagnoses?

_____

_____

3. What are the specific limitations you have placed on your patient, if any?

_____

_____

4. What are the complicating factors preventing recovery, if any?

_____

_____

5. What is your patient's expected return to work date? _____

6. What is your current treatment plan for this patient? _____

_____

7. When is your patient's next office visit? _____

8. When was your patient's last office visit? _____

**Completion of this form without accompanying medical records will not be sufficient to consider extension of disability.**

_____          _____
Written Name                   Signature and date

_____          _____
Specialty, if applicable       Telephone Number

*Confidential, unpublished property of CIGNA. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel.* © Copyright 2003 CIGNA

*Policy / Coverage Nos.*  *UNKNOWN*
*Disability Proof of Loss*

CIGNA Group Insurance
Life • Acc • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

 **CIGNA**

**FRAUD WARNING:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. *For residents of the following states, please see the reverse side of this form: Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon, or Virginia.*

### INSTRUCTIONS FOR FILING A CLAIM

This form is a single application for Short Term and Long Term Disability Benefits and contains the information reported to our service center.

To The Employee:  A. Please review this information carefully.
  B. Make any changes you feel are necessary.
  C. Sign the section marked Employee Certification and the Disclosure Authorization.
  D. Return the signed forms to our office.

If these instructions are not followed, your claim may be subject to a delay or return.

### EMPLOYEE INFORMATION

| Name of Employee (Last, First, Middle): | | Date of Birth: | Social Security Number: | Sex: |
|---|---|---|---|---|
| CLEILAND, CATHY B. | | | | ○Male ◉Female ○Unknown |

Address (Street, Apt):

| City: | State: | Zip Code: | Telephone No.: |
|---|---|---|---|
| MOBILE VILLE | AL | 36460 | |

Please describe your condition: (Tense Of Surgery Unsure) Pinched Nerve

### PLEASE COMPLETE SECTIONS A, B OR C - AND THE REMAINDER OF THE APPLICATION

**A** Is this an Injury?
○Yes ○No ○Unknown

| Date of Injury: 4/25/02 ~04/24/2002 | Time of Injury: 07:00 AM | Is this work related? ○Yes ◉No ○Unknown |
|---|---|---|

Describe the cause of injury:
Car accident?

**B** Is this an Illness?
○Yes ◉No ○Unknown

| Date of Illness: | | Is this work related? ○Yes ◉No ○Unknown |
|---|---|---|

Describe the cause of the illness:

**C** Is this an Pregnancy?
○Yes ◉No ○Unknown

| Delivery/Due Date: | Delivery Method: | Were there complications? ○Yes ○No ○Unknown |
|---|---|---|

Describe the complications:

Are you currently losing time from work?
◉Yes ○No ○Unknown

If yes, what specifically prevents you from working?

| Last Day Worked: 12:00 05/13/2003  # hours worked: 10:00 | Date first unable to work: 05/14/2003 | Date You Plan to Return to Work 07/07/2003 |
|---|---|---|

Have you had the same or similar condition in the past? ○Yes ◉No ○Unknown

If yes, when did it occur (dates)?

Please describe:

Please list any states in which you may be liable for filing tax returns:
AL

Are you receiving any other income or benefits? If so, please complete the following.

| Benefit Type | Gross Weekly Amount | Date Began | Paid thru Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

612286 (03/2003)    STD

Page 3 of 9

LINA/Cleiland 0979

Please list any hospitals, clinics or physicians that treated you for your condition:

| Name & Address | Telephone No. | Specialty | First Treatment Date | Last Treatment Date |
|---|---|---|---|---|
| John Hackman<br>Unknown<br>MONTGOMERY, AL 36106 | (334) 834-1663 | Surgery,<br>Neurological | | 05/22/2003 |
| | | | | |
| | | | | |

## EMPLOYMENT INFORMATION

| Occupation: | Date Hired: | Basic Earnings: | Frequency: | Date of last change in earnings: |
|---|---|---|---|---|
| Human Resource Manager | 08/24/1998 | $2,000.00 | BI-WEEKLY | 08/01/1998 |

Please provide a brief description of daily job duties:
Management Employee Relations

Please check the appropriate items regarding this employee:

- [x] Exempt
- [x] Non-Exempt
- [ ] Management
- [ ] Non-Management
- [x] Supervisory
- [x] Non-Supervisory
- [x] Salaried
- [ ] Hourly
- [x] Full Time
- [ ] Part Time
- Hours/Week 40.00
- [ ] Union - Local #
- [x] Non-Union

*Please corre...*

| Has Employee been laid off? | Or terminated? | If yes, please indicate the date and reason: |
|---|---|---|
| ○ Yes ◉ No ○ Unknown | ○ Yes ◉ No ○ Unknown | |

| STD Policy / Covg. Number: | Effective date of employee's STD coverage: | Was STD insurance issued on the basis of a statement of physical condition? |
|---|---|---|
| LYFYYN | 6-24-1998 | ○ Yes ○ No ◉ Unknown |

| Percent of Employee's STD contribution: | Employee's contributions were made on: | Premium Paid Thru Date: |
|---|---|---|
| 0.00 % | ○ Pre-Tax Basis ○ Post-Tax Basis | |

| LTD Policy / Covg. Number: | Effective date of employee's LTD coverage: | Was LTD insurance issued on the basis of a statement of physical condition? |
|---|---|---|
| | | ○ Yes ○ No ○ Unknown |

| Percent of Employee's LTD contribution: | Employee's contributions were made on: | Premium Paid Thru Date: |
|---|---|---|
| % | ○ Pre-Tax Basis ○ Post-Tax Basis | |

## EMPLOYEE WORK LOCATION

| Employer Name: | Contact Person: |
|---|---|
| TEMPLE INLAND | |
| Address (include Street, City, State & Zip):<br>P.O. BOX 966 MONROEVILLE AL 36461 | Telephone No.: |

## ADDITIONAL EMPLOYERS (if applicable)

| Employer Name: | Title | Contact Person: |
|---|---|---|
| Address (include Street, City, State & Zip): | | Telephone No.: |

| Name of Employee (Last, First, Middle): | Social Security Number: |
|---|---|
| CLEILAND, CATHY K | 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 |

## CERTIFICATION

This is to certify the facts as indicated above are true to the best of my knowledge and belief.

| Signature of Employee: *Cathy K. Cleiland* | Date of signature: 6-4-03 |
|---|---|

The issuance of this form is not an admission of the existence, nor does it recognize the validity, of any claim and is without prejudice to the company's legal rights in the premises.

612286 (03/2003)    STD

Page 4 of 9

LINA/Cleiland 0980

*Disclosure Authorization* 

CIGNA Group Insurance
Life · Accident · Disability

Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

 CIGNA

---

### FRAUD WARNING

**Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. For residents of the following states, please see the reverse side of this form: *Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon or Virginia.***

---

Claimant's Name (Please Print): Cathy K. Cleland

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome), as well as communicable diseases and genetic testing. If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings, or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a)reinsuring companies; b)the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c)fraud or overinsurance detection bureaus; d)anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e)for audit or statistical purposes; f)as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: Cathy L Cleland    Date: 6/4/03

Relationship,
if other than Claimant: _____    Claimant's Social Security Number: _____

Company Name: Temple Inland Forest Products Corp

612286 (03/2003)    STD

Page 5 of 9

LINA/Cleiland 0981

Jennifer L. Leahy
Case Manager III
Disability Management Solutions



**CIGNA** Group Insurar
Life · Accident · Disability

### FILE COPY

June 4, 2003

Routing 1115
P.O. Box 2052
Tarrytown, NY 10591
Telephone 1-800-376-0725 ext
1230
Facsimile 1-860-298-6555

CATHY CLEILAND

MONROEVILLE, AL 36460

| | |
|---|---|
| **Name of Insured:** | **Cathy Cleiland** |
| **Policy Number:** | **SHD 020035** |
| **Policyholder:** | **Temple Inland** |
| **Administered By:** | **Life Insurance Company of North America** |

Dear Ms. Cleiland:

We have evaluated the circumstances that are preventing you from working. We have been unable to reach you or your physician to confirm the type of procedure you had on May 21, 2003. Therefore, with the current information of file we would assume you would be able to return to work after 4 weeks of recovery as of **June 18, 2003**. Please call our office to clarify your diagnosis and type of surgery.

If you are able to return to work prior to **June 18, 20033** please contact our office immediately.

If you are unable to return to work on **June 18, 2003** for medical reasons, please have your physician complete the attached Disability Extension Form.

Please be certain to keep your employer informed of your return to work status.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. We will be pleased to review any information you have that would prove contrary to our findings.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

CATHY CLEILAND
June 4, 2003
Page 2


If you have any questions or concerns, please do not hesitate to call
Ext 1230.


Sincerely,


Jennifer L. Leahy

LINA/Cleiland 0983



**CIGNA** Group Insurance
Life · Accident · Disability

**Please return to Jennifer Leahy at fax #(860) 298-6555**

## EXTENSION OF DISABILITY REQUEST FORM

| Claimant Name: | Cathy Cleiland | Claimant DOB: | |
|---|---|---|---|

If you feel your patient will be unable to return to work on **June 18, 2003**, we require additional information to substantiate a continuing disability. We appreciate you responding to the following questions:

1. What is the primary diagnosis?

_____

2. Are there any other diagnoses?

_____

_____

3. What are the specific limitations you have placed on your patient, if any?

_____

_____

4. What are the complicating factors preventing recovery, if any?

_____

_____

5. When is your patient's expected return to work date? _____

6. What is your current treatment plan for this patient?_____

7. When is your patient's next office visit? _____

8. When was your patient's last office visit? _____

Please provide a copy of your office notes from the date you began treating this patient for this condition through the present. Please return to the Attention of Jennifer Leahy.

_____          _____
Written Name                     Signature and date

_____          _____
Specialty, if applicable         Telephone Number

*Confidential, unpublished property of CIGNA. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2003 CIGNA*


| EE: CLEILAND, CATHY | SSN: - | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: | ICMS: | Other: |



**Intake Number:** 589813409422531

**Employer Name:** TEMPLE INLAND

**DOI:** 05/14/2003

**INTAKE CLAIM TYPE :** Short Term Disability

**HMO Code:**

**Type of Incident:** Injury

**First Day Off:** 05/14/2003

**LOB:** DIS

Collapse All

## Employee Information

**SSN :**
**Name:** CLEILAND, CATHY K
**DOB:**
**Marital Status:** SEPARATED

**Employee ID :** 0422802332

**Age:** 45
**Preferred Language:** ENGLISH

**Work Permit No :** 0000

**Gender:** FEMALE
**Tax State:** AL

### Addresses

**Residence :**
**Addr1:**
**Addr2:**
**City:** MONROEVILLE
**County:**
**State:** AL    **Zip:** 36460    **Country:** US

**Work Location :**
**Addr1:**
**Addr2:**
**City:** MONROEVILLE
**County:** MONROE
**State:** AL    **Zip:** 36461    **Country:** US

### Phone

| Type | Number |
|---|---|
| | |

LINA/Cleiland 0985

| Mobile - Telephone | |
|---|---|
| Office - Telephone | . . . . |

## Email Addresses

**Address1:** None

## Condition

**Description:** Lower Back Surgery (Name Of Surgery Unsure)Pinched Nerve
**Incident Type:** Injury
**Diagnosis(ICD9):** 847 SPRAIN OF BACK NEC/NOS
**Condition Fatal?** N                **Date of Death:**

## Injury

Date of Injury: 04/24/2002                    **Working at time of injury?** N
Time of Injury: 07:00:00 AM                  **Is employee claiming WC?** N
**Is Condition Related to Work Activities?** N    **How did Injury Occur?** Car Accident
Jurisdiction: ALABAMA                        **Other Carrier WC Claim Number:**
**Dispute WC?**
**Why?**

### Location

**Place of Injury:** Other                    **Address1:**
**Loc. Desc:**                               **Address2:**
                                             **City:**
                                             **County:**
                                             **St:**
                                             **Zip:**
                                             **Country:**

### Witnesses

**Were there Witnesses?**

### Injury Specifics

**Body Section:**                            **Side:**
**Body Part:** Low Back Area (Inc: Lumbar and    **Nature of Injury:** All Other Specific Injury
Lumbo-Sacral)
**Cause of Injury:** Injury - Non Occupational    **Other Medical Conditions:**
**Describe:**

LINA/Cleiland 0986

**Prior Information**
Prior Related Injury? N                          Prior Injury Date:
Prior Injury Comments:

## Medical

Receiving or Scheduled Treatment: Y
Hospitalized: Y          Date Admitted: 05/21/2003
                        Date Discharged: 05/22/2003
Surgery: Y              Date Performed: 05/21/2003
Verbal Auth:            Restrictions:          Restriction Description:

**Medical Instruction**

### Providers

Name: John Hackman          Type: Specialist          MedReturns: N
Facility/Group:             TIN:                      Specialty: Surgery, Neurologic

Business:                   Addr1: Unknown
                            Addr2:
                            City: MONTGOMERY
                            County: MONTGOMERY
                            State: AL   Zip: 36106    Country: US
Phone:
Office - Telephone          334.834.1663
Office - Fax Machine        999.999.9999           (334) 834-1936 fax

Treatment(Date/Description):
05/22/2003

TreatmentNotes:
Jackson Hospital

## Employer Information

Employer Name: TEMPLE INLAND              Company Number: 000000552
Eligibility Loc ID Number: 6045           Eligibility Client Loc Code: 10206

LINA/Cleiland 0987

Master Summary Report   Page 4 of 7

Location ID Number: 000006045          Client Location Code: 10206
Location Name: BLDG. PRODUCTS - MONROEVILLE 10206
Address1: P.O. BOX 966
Address2:
City: MONROEVILLE
County: MONROE
State: AL        Zip: 36461      Country: US

## Contacts

| | |
|---|---|
| Name: JIM CONVERY | Type: X |
| Business : | Addr1: 248 INDUSTRIAL ROAD |
| | Addr2: P.O. BOX 120 |
| | City: LEOMINSTER |
| | County: WORCESTER |
| | State: MA   Zip: 01453   Country: US |

Phone:
Office - Telephone            508.537.1701

Name: SUPERVISOR JOE PRIDGEN       Type: Reported To
Phone:
Office - Telephone            251.575.4876

## Intake Selected Policy Coverage Information

### Eligibility Enrollment Information

| | | |
|---|---|---|
| Product: SC | Coverage Code: SC | Enrollment Effectiv |
| Enrollment Cancel Date: | Employee Paid Thru Date: | Account Number: |
| SRO ID: | SRO Div/Suffix: | SRO Cov Eff Date: |
| Elected Effective Date: 01/01/2003 | Provision Eff Date: 01/01/2001 | Elected Benefit %: |
| Elected Benefit Count: 0 | | |

## Initial Caller Information

| | | |
|---|---|---|
| Received Date: 05/27/2003 | Received Time: 12:49:17 PM | Source: Inboun |
| Caller Name: CATHY K CLEILAND | Phone: | |
| Role: Employee | Reason for Call: Intake | |

## Employment Information

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp          05/27/2003

LINA/Cleiland 0988

Master Summary Report  Page 5 of 7

**Hire Date:** 08/24/1998          **Emp. Status:** ACTIVE          **Effective Date:** 08/
**Union Indicator:** N             **Union Local #:**                **Union Name:**
**Organization Code:**             **Organization Name:**
**Employer Name:** TEMPLE INLAND   **Present Position Start Date:**
**Nature of Business:** Plant      **Department Name:**
**Job Title:** Human Resource Manager   **Occupation Class:** Professionals
**Description of Job Duties:** Management Employee Relations

## Wages and Pay Data

**Full Time:** Y                   **Amount:** $2,000.00             **Earnings Mode:** BI-\
**Bonus Eligibility Indicator:** N  **Date of Last Earnings Change:**   **Salary Mode:** ANNU_
                                    08/01/1998

| Compensation List Types |
| --- |
| Salary |

| Any other income or benefits | | |
| --- | --- | --- |
| Offset Code | Weekly Amt | Start |

| Regular Weekly Work Schedule (Hours) | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Shift | Shift Start Time | Shift End Time | Mon | Tue | Wed | Thu | Fri | Sat | Sun |
| Day | 12:00:00 AM | 04:30:00 PM | x | x | x | x | x | | |

## Return to Work

**Lost Time Indicator:** Y          **Last Date Worked:** 05/13/2003   **LDW Paid in Full:** Y
**Employee Returned to Work?** N    **Expected Return Date:** 07/07/2003  **# of Hrs Wkd Last Day**
**What specifically prevents work:**

| Period of Lost Time | | | | |
| --- | --- | --- | --- | --- |
| First Day Off | RTW Date | Duty Type | Job | RTW Hou_ |
| 05/14/2003 | | | | |

**RTW Notes:**

LINA/Cleiland 0989

Master Summary Report  

## Notes

---

CDCHAP                                          05/27/2003

Salary Estimated /Lower Back Surgery (Name Of Surgery Unsure)Pinched Nerve


CDCHAP                                          05/27/2003

No Policy #


## Employer Confirmation Information

---

| Data Element | Value | Confirmation Met |
|---|---|---|
| EE Work Address | Addr1: P.O. BOX 966<br>Addr2:<br>City: MONROEVILLE<br>County: MONROE<br>State: AL Zip: 36461 Country: US | None |
| Department Name | | None |
| Job Title | Human Resource Manager | None |
| Occupation Classification | Professionals | None |
| Description of Job Duties | Management Employee Relations | None |
| Union Indicator | N | None |
| Union Number | | None |
| Date of Hire | 08/24/1998 | None |
| Date of Last Earnings Change | 08/01/1998 | None |
| Last Day Worked | 05/13/2003 | None |
| # Hours Worked Last Day | 18 | None |
| Expected RTW Date | 07/07/2003 | None |
| Full Time | Y | None |
| Earnings Amount | 2,000.00 | None |
| Payment Mode | BI-WEEKLY | None |
| Compensation Type 1 | Salary | None |

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp                    05/27/2003

LINA/Cleiland 0990

# EXHIBIT 1 TO EXHIBIT A Part 19



| First Day Off | 05/14/2003 | None |
|---|---|---|
| Coverage Type | STD | None |
| Policy Number | | None |
| Policy Effective Date | 06/01/1997 | None |
| Premium Paid Thru Date | 06/01/1997 | None |
| Contribution % | 0 | None |
| Contribution Method | Pre Tax | None |

## Other Contacts

**Name:** C C                                    **Type:** Other
**Phone:**
Residence - Telephone                            972.997.8722

LINA/Cleiland 0991



**CIGNA** Group Insurance
Life • Accident • Disability

May 27, 2003

P.O. Box 2052
Tarrytown, NY 10591-9052
1.800.376.0725

TO: CLEILAND. CATHY K

MONROEVILLE, AL 36460

RE: CLEILAND, CATHY K
DATE OF BIRTH:
POLICY/PLAN HOLDER: TEMPLE INLAND
POLICY/PLAN #: UNKNOWN
COMPANY NAME: Life Insurance Company of North America

Dear Ms. Cleiland:

We acknowledge receipt of your claim for Short Term Disability (STD) benefits. We will do everything we can to ensure your satisfaction and to make this process as simple as possible during this difficult time.

We are unable to make a determination on your claim based upon the information submitted. Therefore, we are requesting additional medical information from John Hackman.

We must obtain medical information in order to verify your diagnosis and current functional abilities, and your current treatment plan. We also ask that you review and sign the enclosed claim form (if any information is missing or incorrect, please change it on the form) and Disclosure Authorization form, and return them to us at the address listed above.

We expect to receive this information from either you or your physician within two weeks from the date that we received your claim. We hope to be able to make a decision on your claim at that time. If we are unable to make the decision within 30 days of the day we received your claim, we will contact you and explain the reason for the delay.

As we mentioned above, we ask that you sign and return the enclosed Disclosure Authorization form to us as soon as possible. To expedite processing of your claim, please feel free to fax the authorization to 800-377-4286 . (If you cannot fax the authorization to our office, please return it to the address listed above.) We may be unable to obtain medical information relevant to your claim without a signed authorization to release form. If we cannot get this information, we cannot make a determination on your claim and any potential benefit payments may be delayed.

Please note that we are pursuing the information needed to make a decision on your claim. However, in the event that we are unable to obtain this information, it is your responsibility to provide us with the required information. Please contact your physicians and ask that they cooperate with us and respond to our requests as soon as possible. If we do not receive the information needed by 07/10/2003, we will make a decision based on the information in our file.

We expect that you will return to work as soon as you are safely able to do so. In order to facilitate your return to work, you may be contacted by one of our Nurse Case Managers or Vocational Rehabilitation Counselors. Please cooperate with these individuals if you are contacted. Please keep us up-to-date on your condition by calling us after each of your doctor's visits. Also, notify us immediately if you are released to return to work or if you actually do return to work.

612286 (03/2003)   STD

Page 1 of 9

 

If you have other types of coverage that may pay benefits for this condition, you may submit a claim. For example, if your life insurance plan includes a waiver of premium for disability, you may be eligible to submit a waiver claim. Please review the provisions of your booklet or certificate. Please review your Summary Plan Description or benefit booklet for more information on your benefits and to determine if you are eligible for additional benefits.

Please notify us if you begin to receive any other sources of income. This may include, but is not limited to: Social Security Disability or Retirement, Worker's Compensation, No-Fault disability insurance, pension, Veteran's benefits or any other disability payments from another group insurance policy.

Should you have any questions regarding this correspondence, please feel free to contact us.

Sincerely,
CIGNA Group Insurance

¹ Your employee benefit plan's Plan Administrator has selected the insurance company as the fiduciary for the review and determination of claims for benefits under federal law. The insurance company shall have the authority, in its discretion, to interpret plan documents, to decide questions of eligibility for coverage or benefits, to make findings of fact and to decide appeals of denied claims. Such decisions shall be final and binding on plan participants and beneficiaries to the full extent permitted by law.

LINA/Cleiland 0993

*Policy / Coverage Nos.* *NKNOWN*
*Disability Proof of Loss*





Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

**FRAUD WARNING:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. *For residents of the following states, please see the reverse side of this form: Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon, or Virginia.*

### INSTRUCTIONS FOR FILING A CLAIM

This form is a single application for Short Term and Long Term Disability Benefits and contains the information reported to our service center.

To The Employee:  A. Please review this information carefully.
B. Make any changes you feel are necessary.
C. Sign the section marked Employee Certification and the Disclosure Authorization.
D. Return the signed forms to our office.

If these instructions are not followed, your claim may be subject to a delay or return.

### EMPLOYEE INFORMATION

| Name of Employee (Last, First, Middle): | Date of Birth: | Social Security Number: | Sex: |
|---|---|---|---|
| CLEILAND, CATHY K | | | ○Male ◉Female ○Unknown |

| Address (Street, Apt): | | | |
|---|---|---|---|
| City: MONROEVILLE | State: AL | Zip Code: 36460 | Telephone No.: |

Please describe your condition:
Lower Back Surgery (Name Of Surgery Unsure) Pinched Nerve

### PLEASE COMPLETE SECTIONS A, B OR C - AND THE REMAINDER OF THE APPLICATION

**A** | Is this an Injury? ◉Yes ○No ○Unknown | Date of Injury: 04/24/2002 | Time of Injury: 07:00 AM | Is this work related? ○Yes ◉No ○Unknown

Describe the cause of Injury:
Car Accident

**B** | Is this an Illness? ○Yes ◉No ○Unknown | Date of Illness: | | Is this work related? ○Yes ○No ○Unknown

Describe the cause of Illness:

**C** | Is this a Pregnancy? ○Yes ◉No ○Unknown | Delivery/Due Date: | Delivery Method: | Were there complications? ○Yes ○No ○Unknown

Describe the Complications:

| Are you currently losing time from work? ◉Yes ○No ○Unknown | If yes, what specifically prevents you from working? |
|---|---|

| Last Day Worked: 05/13/2003  # hours worked: 18.00 | Date first unable to work: 05/14/2003 | Date You Plan to Return to Work 07/07/2003 |
|---|---|---|

| Have you had the same or similar condition in the past? ○Yes ◉No ○Unknown | If yes, when did it occur (dates)? | Please describe: |
|---|---|---|

Please list any states in which you may be liable for filing tax returns:
AL

Are you receiving any other income or benefits? If so, please complete the following.

| Benefit Type | Gross Weekly Amount | Date Began | Paid thru Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

LINA/Cleiland 0994

Please list any hospitals, clinics or phys... that treated you for your condition:

| Name & Address | Telephone No. | Specialty | First Treatment Date | Last Treatment Date |
|---|---|---|---|---|
| John Hackman Unknown MONTGOMERY, AL 36106 | (334)834-1663 | Surgery, Neurological | | 05/22/2003 |
| | | | | |
| | | | | |
| | | | | |

## EMPLOYMENT INFORMATION

| Occupation: Human Resource Manager | Date Hired: 08/24/1998 | Basic Earnings: $2,000.00 | Frequency: BI-WEEKLY | Date of last change in earnings: 08/01/1998 |
|---|---|---|---|---|

Please provide a brief description of daily job duties:
Management Employee Relations

Please check the appropriate items regarding this employee:

☐ Exempt ☒ Non-Exempt ☐ Management ☒ Non-Management
☐ Supervisory ☒ Non-Supervisory ☒ Salaried ☐ Hourly
☒ Full Time ☐ Part Time   Hours/Week 40.00
☐ Union - Local # _____
☒ Non-Union

Has Employee been laid off?
○ Yes ● No ○ Unknown

Or terminated?
○ Yes ● No ○ Unknown

If yes, please indicate the date and reason:

STD Policy / Covg. Number:
UNKNOWN

Effective date of employee's STD coverage:

Was STD Insurance issued on the basis of a statement of physical condition?
○ Yes ○ No ● Unknown

Percent of Employee's STD contribution:
0.00 %

Employee's contributions were made on:
○ Pre-Tax Basis ○ Post-Tax Basis

Premium Paid Thru Date:

LTD Policy / Covg. Number:

Effective date of employee's LTD coverage:

Was LTD Insurance issued on the basis of a statement or physical condition?
○ Yes ○ No ○ Unknown

Percent of Employee's LTD contribution:
%

Employee's contributions were made on:
○ Pre-Tax Basis ○ Post-Tax Basis

Premium Paid Thru Date:

## EMPLOYEE WORK LOCATION

Employer Name: TEMPLE INLAND

Contact Person:

Address (include Street, City, State & Zip):
P.O. BOX 966 MONROEVILLE AL 36461

Telephone No.:

## ADDITIONAL EMPLOYERS (If applicable)

Employer Name:

Title

Contact Person:

Address (include Street, City, State & Zip):

Telephone No.:

Name of Employee (Last, First, Middle):
CLEILAND, CATHY K

Social Security Number:

## CERTIFICATION

This is to certify the facts as indicated above are true to the best of my knowledge and belief.

Date of signature:

Signature of Employee:

The issuance of this form is not an admission of the existence, nor does it recognize the validity, of any claim and is without prejudice to the company's legal rights in the premises.

LINA/Cleiland 0995



*Disclosure Authorization*



CIGNA Group Insurance ®
Life · Accident · Disability

Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



CIGNA

## FRAUD WARNING

Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. For residents of the following states, please see the reverse side of this form: *Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon or Virginia.*

Claimant's Name (Please Print): _____

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome), as well as communicable diseases and genetic testing. If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a)reinsuring companies; b)the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c)fraud or overinsurance detection bureaus; d)anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e)for audit or statistical purposes; f)as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: _____   Date: _____

Relationship,
if other than Claimant:_____   Claimant's Social Security Number: _____

Company Name: _____

612286 (03/2003)    STD

LINA/Cleiland 0996

 

**CIGNA Disability Management Solutions**
**Frequently Asked Questions**
**For Claimants**

## Intake Questions

*What happens after I file my claim?*
After you file your claim, your case manager may contact you by phone to discuss the claim process, or in some cases, contact you by letter. If your disability absence is planned for the future, you will receive a claim letter acknowledging your anticipated disability and asking you to contact us on your last day of work before your disability begins. You will be asked to sign a release of information for your doctor (which you can download from our website CIGNA.com), so we can obtain your medical reports.
Your employer will be contacted for eligibility information and a description of your job requirements to help us determine if you are eligible for benefits and how long your absence may be. Our goal is to help you return to a productive work environment and to assist you in the process.

*Who contacts my doctor? Do I need to call my doctor?*
During the first three to five business days after we receive your claim, your case manager will attempt to reach your doctor to obtain medical information. You can speed this up by contacting your doctor's office and asking them to send us your medical information.
Your case manager may ask you to contact your doctor's office to help collect this information if we are having difficulty obtaining a timely response.

*What will I receive in the mail from CIGNA, and when?*
You should receive a copy of your claim form and a release of information in a week to ten (10) days. To expedite your claim, CIGNA asks that you make any corrections to your claim form and return it along with the signed release of information form, to your case manager. If you do not receive your claim form in 10 days, you should contact your case manager to obtain another copy.

*How long will it take to make a decision about my claim?*
Once we get the necessary information from your employer and your doctor, we will reach a decision on your claim as soon as possible, generally within 10 days for short-term disabilities and 25 days for long-term disabilities.

*What will delay a decision on my claim?*
A delay in receiving any of the following:
  · Verification of your eligibility for benefits from your employer,
  · A signed release of information from you, or
  · Medical information from your doctor
can delay our decision and consequently delay payment to you.

*Why would my claim be denied?*
Some examples of reasons why your claim may be denied include: if you are not eligible; if you do not meet the definition of disability in your employer's benefits contract; if the condition you have is not covered by your benefits contract; or if your medical information supports a determination that you are able to work.

*What happens if my claim is denied?*
You will receive a letter from your case manager providing the reason(s) for the denial, and in some cases your case manager may contact you by phone to discuss the claim denial. You will receive specific instructions on how to appeal the denial if you wish to do so. Your employer may be notified of your claim denial, but not the reason for the denial, in which case you should contact your manager to schedule your return to work.

LINA/Cleiland 0997

 IGN Disability Management Solutions 

**Frequently Asked Questions**
**For Claimaints**

**CIGNA**

*What happens if my claim is approved?*
You'll receive an approval letter explaining the provisions of the approval and payment information. The letter may indicate your expected Return-to-Work date (if one has been set). Call your case manager if you have questions about your coverage.

*Will you notify my employer about how long I will be off?*
Your employer will be notified of your claim approval and your anticipated Return-to-Work date. While we will provide approval and anticipated RTW dates, no medical or personal information will be shared with your employer unless we have your authorization to do so.

*What can I expect while I am not working?*
Our goal is to help you get well and return to work as quickly and safely as possible. While you are not working, CIGNA will call you regularly to discuss your progress. As appropriate to your situation, CIGNA will work with you, your employer, and your physician to explore job accommodation opportunities that could help speed your return to work. Your employer may also contact you periodically to check on your progress and to offer support.

*What happens if I can not return-to-work by the estimated return-to-work date?*
If something occurs that prolongs the disability you should call your case manager as soon as possible to discuss your situation. Your case manager will contact your physician for an update on your condition and may need your assistance to obtain medical information. In some cases we may send you a disability claim form for your doctor to complete. You should contact your employer to keep them informed of your progress.

## Payment Questions

*How much money will I get paid? How often will I get paid?*
This is different for every employer's benefit plan. Disability benefits may be a percentage of your weekly or monthly income, or a set amount. Your case manager or Human Resources representative can tell you what benefits you are entitled to receive, and when your benefits start. Depending on your employer's benefit policy your checks may be issued on a weekly, bi-weekly, or monthly basis. Checks are generally issued at the end of each payment period.

For example, if your benefits are due to begin on 7/15/02 and are paid on a weekly basis, you should receive your first check for the period of 7/15/02-7/21/02 on or around 7/21/02. If your benefits are paid on a monthly basis, you should expect your first check for the period of 7/15/02-8/14/02 on or around 8/14/02. Benefits will be issued in a similar manner for the duration of your claim. You can also check your employee benefits booklet or summary plan description to confirm your specific benefit amount, as well as any other income that would reduce your benefit amount.

*How long will my benefits last?*
It depends on your employer's benefit plan, on continuing evidence that your condition prohibits you from being able to work, and on evidence that you remain entitled to benefits. If your claim is approved, and if CIGNA issues your benefits, the approval letter will address the amount and duration of your benefits. If your employer issues your benefits, you'll be advised of the approval duration in the letter, however, you should also contact your local human resources department for the amount of your benefits.

LINA/Cleiland 0998

CIGNA Disability Management Solutions

**Frequently Asked Questions**
**For Claimaints**



**CIGNA**

*Can I have direct deposit?*
Yes, for long-term disability (not short-term disability) benefits, as long as your bank has the capability to participate in direct deposit programs. If you wish to have your benefits directly deposited into your checking or savings account, you can contact your case manager and make this request. A form will then be mailed to you for you to complete, and return to our office. Once received, your benefit payment method will be updated. If your employer issues benefits to you directly, then you would need to contact your local Human Resources representative for this option. In some cases, we may not be able to accommodate your request (i.e., if you are to return to work in a few days, this option may not be feasible).

*Is my benefit taxable?*
Your benefit or a portion of it may be taxable. If your employer pays the premiums for your disability benefits it may be taxable to you. If you pay the premiums on a post-tax basis it may not be not taxed. If you and your employer share the cost of the premiums, the portion of the premium that is paid on a pre-tax basis may be taxable to you. Contact your Human Resources department and your tax advisor for more information about the tax effects of your specific benefit plan.

*What happens if I receive other benefits?*
If you are receiving, or are eligible to receive other benefits as a result of your disability, such as Workers' Compensation, statutory disability benefits, Social Security benefits, etc., this will affect your benefits from CIGNA. Your employer's benefit contract will indicate if any other benefits are a reduction to your disability benefits, and at what rate that reduction may be. Your case manager will discuss this issue with you once your claim is submitted. If you are receiving other benefits, you will need to inform your case manager accordingly.

*Do I need to apply for Social Security? How do I do that?*
If you become eligible for LTD, most employer's contracts require that you apply for this benefit. Social Security benefits generally can become payable beginning with your 6th month of disability.
Your LTD case manager will notify you, and can inform you how to contact the Social Security Administration to apply for this benefit. Or you can find your local Social Security Administration number in your telephone book. There are many other benefits associated with receiving Social Security benefits if you are truly not able to work. Your case manager can discuss these benefits with you.

LINA/Cleiland 0999

10/27/03

12.09

TEMPLE INLAND
SS#              SHD2003
CLEILAND, CATHY

LINA/Cleiland 1000





| EE: CLEILAND, CATHY | SSN- | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

## Current Case Plan

Add a New Current Case Plan Entry                                Bottom of Page

TEMPLE INLAND SALARY CONTINUANCE ATP 2106/10206 PEGGY SIGLER 001/09 LEVEL 2 CLAIM W/SURGERY 45 Y/O HR MANAGER DOB            DOH 082498 EFF 010199 LDW 051303 DOI 051403 BEG 051403 RTW EST 070703 MAX 111103 LTD FLK 020104 ENROLLED YES ELIGIBILITY VERIFIED PER FEED & EMAIL FROM ER Date of surgery confirmed by ER. Unable to get in touch w/AP or CX. CX had unspecified surgery of L-S spine on 052103. CX indicates OOW 6-7 weeks. As we don't know particulars about surgery type, approve 4 weeks & send CX contact letter to get APS completed w/specifics. Approve thru 061703.
06-04-2003 1:30 PM - LEAHY, JENNIFER

Top of Page
Extension thru 071503 L4-L5 laminectomy 052103 standard duration 8-10 weeks CX is having comps that include terrible, unrelenting pain that is un-responsive to pain killers. Approve 8 weeks & request f/u from AP.
06-09-2003 12:57 PM - LEAHY, JENNIFER

Top of Page
Claim status CX also has diabetes for 26 weeks. CX remains in terrible pain, 1st thing in morning it is unbearable. Needs to put heating pad on her leg.
06-16-2003 10:21 AM - LEAHY, JENNIFER

Top of Page
Extension thru 081203 061003 Extension form indicates RTW approx 081303 ER called today to advise that CX was having addtl surgery today. extend & f/u for update on this addtl surgery.
07-16-2003 10:14 AM - LEAHY, JENNIFER

Top of Page
Extension thru 100703 f/u for recovery notes CX had a recurrence of pain in her L hip & leg, MRI scan showed a large recurrent disc herniation at L4-5 on the left with extruded fragments CX is in recovery from re-exploration laminectomy at L4-5, left on 071603 AP indicates RTW 100803 which is approx 10 weeks post-op. Standard guidelines 5-10 weeks recovery for light occ. Due to recurrent issue, it is reasonable that CX would need the 10 weeks recovery. Extend & f/u for recovery
08-12-2003 3:01 PM - LEAHY, JENNIFER

Top of Page
Extension thru 111103 max CX remains OOW in excrutiating pain, will have another surgery, f/u w/surgeon 111703. File already in LTD.
10-02-2003 10:30 AM - LEAHY, JENNIFER

Top of Page

LINA/Cleiland 1001

 

| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### Current Case Plan

Add a New Current Case Plan Entry                    Bottom of Page

TEMPLE INLAND SALARY CONTINUANCE ATP 2106/10206 PEGGY SIGLER 001/09 LEVEL 2 CLAIM W/SURGERY 45 Y/O HR MANAGER DOB          ! DOH 082498 EFF 010199 LDW 051303 DOI 051403 BEG 051403 RTW EST 070703 MAX 111103 LTD FLK 020104 ENROLLED YES ELIGIBILITY VERIFIED PER FEED & EMAIL FROM ER Date of surgery confirmed by ER. Unable to get in touch w/AP or CX. CX had unspecified surgery of L-S spine on 052103. CX indicates OOW 6-7 weeks. As we don't know particulars about surgery type, approve 4 weeks & send CX contact letter to get APS completed w/specifics. Approve thru 061703.
06-04-2003 1:30 PM - LEAHY, JENNIFER

Top of Page
Extension thru 071503 L4-L5 laminectomy 052103 standard duration 8-10 weeks CX is having comps that include terrible, unrelenting pain that is un-responsive to pain killers. Approve 8 weeks & request f/u from AP.
06-09-2003 12:57 PM - LEAHY, JENNIFER

Top of Page
Claim status CX also has diabetes for 26 weeks. CX remains in terrible pain, 1st thing in morning it is unbearable. Needs to put heating pad on her leg.
06-16-2003 10:21 AM - LEAHY, JENNIFER

Top of Page
Extension thru 081203 061003 Extension form indicates RTW approx 081303 ER called today to advise that CX was having addtl surgery today. extend & f/u for update on this addtl surgery.
07-16-2003 10:14 AM - LEAHY, JENNIFER

Top of Page
Extension thru 100703 f/u for recovery notes CX had a recurrence of pain in her L hip & leg, MRI scan showed a large recurrent disc herniation at L4-5 on the left with extruded fragments CX is in recovery from re-exploration laminectomy at L4-5, left on 071603 AP indicates RTW 100803 which is approx 10 weeks post-op. Standard guidelines 5-10 weeks recovery for light occ. Due to recurrent issue, it is reasonable that CX would need the 10 weeks recovery. Extend & f/u for recovery
08-12-2003 03:01 PM - LEAHY, JENNIFER

Top of Page
Add a New Current Case Plan Entry

LINA/Cleiland 1002



| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

**Current Case Plan**

Add a New Current Case Plan Entry                    Bottom of Page

TEMPLE INLAND SALARY CONTINUANCE ATP 2106/10206 PEGGY SIGLER 001/09
LEVEL 2 CLAIM W/SURGERY 45 Y/O HR MANAGER DOB '          DOH 082498 EFF
010199 LDW 051303 DOI 051403 BEG 051403 RTW EST 070703 MAX 111103 LTD FLK
020104 ENROLLED YES ELIGIBILITY VERIFIED PER FEED & EMAIL FROM ER Date of
surgery confirmed by ER. Unable to get in touch w/AP or CX. CX had unspecified surgery of L-S
spine on 052103. CX indicates OOW 6-7 weeks. As we don't know particulars about surgery type,
approve 4 weeks & send CX contact letter to get APS completed w/specifics. Approve thru 061703.
06-04-2003 1:30 PM - LEAHY, JENNIFER

Top of Page
Extension thru 071503 L4-L5 laminectomy 052103 standard duration 8-10 weeks CX is having
comps that include terrible, unrelenting pain that is un-responsive to pain killers. Approve 8 weeks
& request f/u from AP.
06-09-2003 12:57 PM - LEAHY, JENNIFER

Top of Page
Claim status CX also has diabetes for 26 weeks. CX remains in terrible pain, 1st thing in morning it
is unbearable. Needs to put heating pad on her leg.
06-16-2003 10:21 AM - LEAHY, JENNIFER

Top of Page
Extension thru 081203 061003 Extension form indicates RTW approx 081303 ER called today to
advise that CX was having addtl surgery today. extend & f/u for update on this addtl surgery.
07-16-2003 10:14 AM - LEAHY, JENNIFER

Top of Page
                    Add a New Current Case Plan Entry

LINA/Cleiland 1003



| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### Current Case Plan

<u>Add a New Current Case Plan Entry</u>                                          <u>Bottom of Page</u>

TEMPLE INLAND SALARY CONTINUANCE ATP 2106/10206 PEGGY SIGLER 001/09
LEVEL 2 CLAIM W/SURGERY 45 Y/O HR MANAGER DOB            DOH 082498 EFF
010199 LDW 051303 DOI 051403 BEG 051403 RTW EST 070703 MAX 111103 LTD FLK
020104 ENROLLED YES ELIGIBILITY VERIFIED PER FEED & EMAIL FROM ER Date of
surgery confirmed by ER. Unable to get in touch w/AP or CX. CX had unspecified surgery of L-S
spine on 052103. CX indicates OOW 6-7 weeks. As we don't know particulars about surgery type,
approve 4 weeks & send CX contact letter to get APS completed w/specifics. Approve thru 061703.
06-04-2003 1:30 PM - LEAHY, JENNIFER

<u>Top of Page</u>
Extension thru 071503 L4-L5 laminectomy 052103 standard duration 8-10 weeks CX is having
comps that include terrible, unrelenting pain that is un-responsive to pain killers. Approve 8 weeks
& request f/u from AP.
06-09-2003 12:57 PM - LEAHY, JENNIFER

<u>Top of Page</u>
<u>Add a New Current Case Plan Entry</u>

LINA/Cleiland 1004

 

| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

## View the Details for an Incident Note

(first record)   Add a New Incident Note   

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 06/04/2003 01:32:06 PM Edit | Current Case Plan | Narrative | LEAHY, JENNIFER | ICARE |

### ICARE Note Text

TEMPLE INLAND SALARY CONTINUANCE
ATP
2106/10206
PEGGY SIGLER 001/09
LEVEL 2 CLAIM W/SURGERY
45 Y/O HR MANAGER
DOB
DOH 082498
EFF 010199
LDW 051303
DOI 051403
BEG 051403
RTW EST 070703
MAX 111103
LTD FLK 020104
ENROLLED YES

*more surgery today 7/16/03*

ELIGIBILITY VERIFIED PER FEED & EMAIL FROM ER

Date of surgery confirmed by ER. Unable to get in touch w/AP or CX.

CX had unspecified surgery of L-S spine on 052103. CX indicates OOW 6-7 weeks.

As we don't know particulars about surgery type, approve 4 weeks & send CX contact letter to get APS completed w/specifics. Approve thru 061703.

(first record)   Add a New Incident Note   

LINA/Cleiland 1005

## ACCOUNT POLICY SUMMARY

*PLEASE COMPLETE ONE FOR EVERY POLICY NUMBER, EVEN IF THE SAME POLICYHOLDER*

**Account Information:**

| | |
|---|---|
| Account Name: | Temple Inland |
| Address 1: | 1 North Brentwood #700 |
| Address 2: | |
| City, State, Zip: | St. Louis MO 63105 |
| Contact: | |
| Phone #: | 330-828-7300 |
| Effective Date: | 01/01/1999 |
| Cancellation Date: | |
| ASO or Insured: | ASO |
| Advise to Pay:(Y or N) | Yes |

**SRO Loading Information:**

| | |
|---|---|
| Policy Number: | SHD 20035 |
| Pol Code/Major.Minor Code: | n/a |
| Suffix Codes: Attach list with description if multiple. | 001/002/003/006 |
| Coverage Code (s) | 821 ** |
| Division Code: | n/a |
| Location Code: Attach list with description if multiple. | varies |
| Rating Code: | n/a |
| Subminor Code: | n/a |

**Benefits:**

| | |
|---|---|
| Max Duration: | 26 Weeks |
| Benefit % or Rate: | n/a |
| Ben. Max. Amt. (LTD) | n/a |
| Ben. Min. Amt. (LTD) | n/a |
| Rounded?:(YorN) | n/a |
| Intergration Method: | |
| Ben. Waiting period for | |
| Accident: | 0 |
| Sickness: | 0 |
| Hospitalization: | 0 |
| Checks to PH or CX? | No checks |
| Ben. Freq. (Weekly 7 or 5 days, Monthly etc. | 7 |
| Mandatory FIT?(YorN) | No checks |

**Eligibility:**

| | |
|---|---|
| Covered ees: | |
| Elig. Waiting Period: | Information supplied b |
| Initial ees: | |
| New ees: | |
| Hrs week required: | |
| Classes:Attach list with description if multiple. | n/a |
| EE contribution%: Pre/Post Tax | n/a |
| Pre-ex Definition: | none |

**LTD ONLY**

| | |
|---|---|
| Any Occ. Language: | |
| Mental Illness Limit: | |

**Account Assignment:**

| | |
|---|---|
| CM assigned to account: | Jennifer Leahy |
| CMs Ext: | 1230 |
| CMs OP ID: | J504 |

**Special Instructions:**   We manage part time return to work.  Code f8 screen correctly.

| |
|---|
| LTD FLK 20104 |
| Benefit Period Code:          1 |
| Term Type:                         3 |
| No letters to CX or ER.. APS may be faxed to AP. |
| Use CES checks. Make sure bank code is 998 |
| Verify elig. on unilyze. See work structure ID below |
| Verify location code on CCC. |
| Update coverage screen in SRO for the weekly automated report. |
| Suffix codes: 001-Forest Products, 002 Financial Services, 003-Inland Eastex, 006-Inland |
| **New York employees: dual set up under NYD 067170 & SHD 020035; pay CX directly for NYD 067170 |

**Work Structure ID Codes**

| Work Structure ID | If Pay Type | and Company Numbers = |
|---|---|---|
| 2106 - Salary Continuance | Salary | All except 10216 & 20009 |
| 2106 - Salary Continuance | Hourly | 30027, 30080 & 31091 |
| 2107 - STD Only | Hourly | All except 10216. |
| 2108 - STD & LTD | Hourly | 30009, 30037, 30050, 30058, 30081, 30158 & 31092 |
| 2128 - STD Only (MO & S | All | 10216 & 20009          (LK 06370) |

LINA/Cleiland 1006

Claimant Name: CLEILAND, CATHY

SS #: _____

CM Name: _XnC,_

Compliance Checklist

Date Received: 05/27/03

Acknowledgement Must Be Sent By: ___06/05/03___    Alert to Other Benefits as required.

Call to claimant must be made by: ___06/02/03___

| 1st Delay Date Must be Sent | If 1st Delay Sent on: | 2nd Delay Must be Sent By: | If 2nd Delay Sent on: | 3rd Delay Must Be Sent By: |
|---|---|---|---|---|
| 06/25/03 | 06/10/03 | 07/09/03 | 06/24/03 | 07/23/03 |
| | 06/11/03 | 07/10/03 | 06/25/03 | 07/24/03 |
| | 06/12/03 | 07/11/03 | 06/26/03 | 07/25/03 |
| | 06/13/03 | 07/12/03 | 06/27/03 | 07/26/03 |
| | 06/14/03 | 07/13/03 | 06/28/03 | 07/27/03 |
| | 06/15/03 | 07/14/03 | 06/29/03 | 07/28/03 |
| | 06/16/03 | 07/15/03 | 06/30/03 | 07/29/03 |
| | 06/17/03 | 07/16/03 | 07/01/03 | 07/30/03 |
| | 06/18/03 | 07/17/03 | 07/02/03 | 07/31/03 |
| | 06/19/03 | 07/18/03 | 07/03/03 | 08/01/03 |
| | 06/20/03 | 07/19/03 | 07/04/03 | 08/02/03 |
| | 06/21/03 | 07/20/03 | 07/05/03 | 08/03/03 |
| | 06/22/03 | 07/21/03 | 07/06/03 | 08/04/03 |
| | 06/23/03 | 07/22/03 | 07/07/03 | 08/05/03 |
| | 06/24/03 | 07/23/03 | 07/08/03 | 08/06/03 |
| | 06/25/03 | 07/24/03 | 07/09/03 | 08/07/03 |
| | | | 07/10/03 | 08/08/03 |
| | | | 07/11/03 | 08/09/03 |
| | | | 07/12/03 | 08/10/03 |
| | | | 07/13/03 | 08/11/03 |
| | | | 07/14/03 | 08/12/03 |
| | | | 07/15/03 | 08/13/03 |
| | | | 07/16/03 | 08/14/03 |
| | | | 07/17/03 | 08/15/03 |
| | | | 07/18/03 | 08/16/03 |
| | | | 07/19/03 | 08/17/03 |
| | | | 07/20/03 | 08/18/03 |
| | | | 07/21/03 | 08/19/03 |
| | | | 07/22/03 | 08/20/03 |
| | | | 07/23/03 | 08/21/03 |
| | | | 07/24/03 | 08/22/03 |

_46 y/o HR manger_

_dob 7/11/1957_

_doh 8/24/98_

_lff 1/1/99_

_ldw 5/13/03_

_doi 5/14/03_

_beg 5/14/03_

_RTW est 7/7_

_may 11/11/03_

_LTD FCK 020104_

_enrolled yes_

_Low back surgery 5/21/03 est RTW 7/7/03 about 6-7 wks_

Date Sent: _____

In Compliance ?: _____

_approve thru 6/15_

_2/06 10206 Peggy Sigler 001/1_

10/02/2003 10:12 FAX  1 334 834 1936        DR JOHN HACKMAN                    @004/004

CLEILAND, CATHY K.

BIRTHDATE:
S.S.#:

JOHN E. HACKMAN, M.D., P.A.
1722 PINE ST., SUITE 1001
MONTGOMERY, AL 36106-1107

09-18-03

Mrs. Cleiland comes in for followup.  She is having increasing problems.  She is now having a
lot of pain down the right leg.  This has changed from when she was here last.  We reviewed
her MRI scan and compared it with the one that was done on 08-11-03.  She now has disk
protruding into the foramen at L4-5 on the right which was not there a month and a half ago.
She also has some recurrent disk protrusion on the left which was not there a month and a
half ago.  She says she can't live with the leg pain.  I offered her re-exploration at L4-5
bilateral.  She says she has been looking on the internet and she is interested in talking to
somebody about instrumentation.  We are going to try to get her up to see Dr. Mark Hadley at
UAB.

LINA/Cleiland 1008

# John E. Hackman, M.D., P.A.

*Neurosurgery*
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106-1107

Office: (334) 834-1663
Fax: (334) 834-1936

**SEND TO:** *Cigna*

**ATTENTION:** *Jennifer Leedy*

**DATE:** *10/2/03*

**FAX #:** *860-298-6555*          **PHONE #:**

**FROM:**

( )  JOHN E. HACKMAN, M.D.

( )  LINDA C. THOMPSON

( )  KATHY WILKES

(X)  BRENDA GILLILAND

( ) URGENT          ( ) REPLY ASAP          ( ) PLEASE COMMENT          ( ) PLEASE REVIEW

**TOTAL PAGES, INCLUDING COVER:** *4*

**PATIENT'S NAME** *Cathy Cleiland*

**COMMENTS:**

_____

_____

_____

_____

_____

_____

_____

CONFIDENTIALITY NOTE – The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above. If the receiver of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify us by telephone so we can correct the error.     THANK YOU.

LINA/Cleiland 1009

02/2003 10:12 FAX  1 334 834 1936    DR JOHN HACKMAN    ☑002/004

# JACKSON HOSPITAL & CLINIC, INC.
## 1725 PINE STREET
## MONTGOMERY, ALABAMA 36106

**Name: CLEILAND, CATHY K.**                    DOB:            Age: 46 YEARS
**Physician: HACKMAN, JOHN E**            Patient Location: ORAD
MR#: 285142            X-RAY#: 463643        Account#: 10576197
Order ID: 1202907        Result ID: 1084039        Addendum Number: 0

Clinical Data: back and leg pain  bc  linda
**Procedure: MRI L SPINE W & W/O CONTRAST    Date of Exam: 09/18/2003**
INDICATION: Low back and right leg pain with previous surgery most recently July 03.
PROTOCOL:
Parasagittal T1 and T2 weighted images with axial T1 and T2 weighted images. Gadolinium was
then injected followed by repeat parasagittal and axial T1 weighted images of the lumbar spine.
FINDINGS:
The disc space is considerably narrowed at L4-5 with degenerative end plate signal changes at
that level. The remaining lumbar vertebral bodies are normal but the disc space is also narrowed
at L5-S1.

At L4-5, there are operative changes upon the left lamina, foramen, facet and posterior margin
of the disc with enhancing soft tissue in that location as well as encasing the left L5 nerve root
proximally. The enhancing soft tissue fills the left neural foramen. I suspect a small residual
disc fragment on the left at L4-5 adjacent to the exiting L5 nerve root proximally. It appears to
be more closely approximating the root than on the previous examination of 8-11-03 but there
have been no other changes since the previous study.

**IMPRESSION:**
DEGENERATIVE CHANGES L5-S1, UNCHANGED.

SEVERE DEGENERATIVE DISC DISEASE L4-5 AND OPERATIVE CHANGES UPON THE
LEFT LAMINA, FORAMEN, FACET AND DISC AT THAT POINT WITH PROBABLE
RETAINED DISC FRAGMENT TO THE LEFT OF MIDLINE AT L4-5 SURROUNDED BY
ENHANCING SCAR. THIS MAY ACTUALLY SLIGHTLY INDENT UPON THE LEFT L4
NERVE ROOT PROXIMALLY AND THE LEFT L5 NERVE ROOT DOES APPEAR TO BE
ENCASED BY SCAR. THE RETAINED FRAGMENT IS SLIGHTLY MORE PROMINENT
THAN ON 8-11-03.

**JACKSON HOSPITAL**
Jackson Hospital & Clinic, Inc.
1725 Pine Street
Montgomery, AL 36106-1117
A Non Profit Organization

C-2 (2/99)

**X-RAY REPORT**



LINA/Cleiland 1010

/02/2003 10:12 FAX  1 334 834 1936     DR JOHN HACKMAN                    ☒003/004

Faxed to Dr. Hackman's office.
Dictated by: DONALD H. DAHLENE
Verified by: DONALD H. DAHLENE

Transcriptionist: JAJ

Name:CLEILAND, CATHY K.                   Order ID:1202907
Physician:HACKMAN, JOHN E                 Date:09/18/2003

JACKSON HOSPITAL
Jackson Hospital & Clinic, Inc.
1725 Pine Street
Montgomery, AL 36106-1117
A Non-Profit Organization

X-2 (2-99)

**X-RAY REPORT**

LINA/Cleiland 1011

## TEAM STAFFING
## QUICK FILE REVIEW FORM

Date of Staffing: _____9/29_____

(251) 342 5545

| CM NAME: | J Leahy |
|---|---|
| CX's NAME: | Cathy Cleiland |
| AGE: | 45 |
| SSN: | |
| OCCUPATION: | HR Manager |
| DX: | L4-5 radiculitis |
| DOI: | 5/14/03 |
| SURGERY DATE: | #5 5/21/03 laminectomy + rc-exploration laminectomy 7/10/03 |
| LTD? | yes | STD MAX DATE: | 11/11/03 |

| SUGGESTED STRATEGY | prepare for LTD referral<br><br>Cx s/p 2 disc surgeries. Cx continues c L4-L5 radiculitis.<br><br>Cx has a RTW of 10/8/03. CM concerned this this may not occur because of extreme pain. |
|---|---|
| RECOMMENDED DURATION OF DISABILITY | ? to RTW — please get mobility status. See how symptomatic Cx is c sitting. this could be |
| | Check here if this needs to be Assigned to NCM for Medical Management |

| NCM: | Dele Rifton | a Miller |
|---|---|---|
| TL/SCM: | | CM: |

LINA/Cleiland 1012

 

| EE: CLELAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

(first record)    Add a New Incident Note    

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 10/02/2003 10:28:20 AM Edit | Telephone Call | Narrative | LEAHY, JENNIFER | ICARE |

### ICARE Note Text

Call to CX

CX is in constant pain, hasn't given form to AP for completion

CX is to have more surgery, possible a fusion, or rods.

CX is in tremendous amount of pain, can't get out of bed, can't even sit up in her bed. can only walk if she has pain meds.

Went for pain management for 1 appt, never made 2nd appt b/c 1 1/2 hour drive from home, couldn't even get out of bed to go.

Repeat MRI, disc material is pinching nerve.

f/u visit 111703 for consult on surgery w/surgeon at teaching HSPTL UAB.

Legs are becoming useless.

(first record)    Add a New Incident Note     

LINA/Cleiland 1013

## STD TO LTD REFERRAL FORM

| PH NAME: | Temple | STD POL #: | SHD 020035 | LTD POL #: | FLK 020104 |
|---|---|---|---|---|---|
| STD CM NAME: | Jennifer Leahy | | LTD CM NAME: | Karen Kirby | |
| CLAIMANT: | Cathy Cleiland | SSN: | | AGE: | 46 |
| DOI: | 05/14/03 | BEN PD THRU: | 10/07/03 | STD MAX: | 11/11/03 |
| OCC: | HR Manager | | DIAGNOSIS: | L4-5 radiculitis | |
| ICD-9: | | | MVA OR WC: (CIRCLE ONE) | | |
| MED REVIEW IN FILE: | Yes | | IF YES, DATE REVIEWED: | 09/29/03 | |
| CLAIM SUMMARY: | | | | | |

Scheduled RTW 100803, but is possible tht CX will not RTW at that time based on past hx of pain.  I will let you know when I hear back from CX.  052103 L4-5 Laminectomy & 071603 re-exploration laminectomy.

| JD IN FILE? | No | EST RTW DATE: | 100803 |
|---|---|---|---|

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| PLEASE SET DIARY FOR LTD SCM AND CHECK HERE WHEN COMPLETED! | done |
|---|---|

*STD TO LTD REFERRAL INFO:*

TO: LTD SA: _Louse_          FROM: SCM/TL _Kirui_          DATE _10/1/03_

___✓___ LTD SA – Copy/Create LTD File, refer to LTD SCM. Return original to: _Jen Leahy_

_____ LTD SA – Shared Policyholder. Do NOT copy file. Create LTD file and refer to LTD SCM

LTD SA: _Donna Zacchio_          Dated Completed: _10/1/03_

LINA/Cleiland 1014

Jennifer L. Leahy
Case Manager III
Disability Management Solutions



**CIGNA** Group Insurai
Life - Accident - Disability

FILE COPY

August 12, 2003

Routing 1115
P.O. Box 2052
Tarrytown, NY 10591
Telephone 1-800-376-0725 ext
1230
Facsimile 1-860-298-6555

CATHY CLEILAND

MONROEVILLE, AL 36460

| | |
|---|---|
| **Name of Insured:** | **Cathy Cleiland** |
| **Policy Number:** | **SHD 020035** |
| **Policyholder:** | **Temple Inland** |
| **Administered By:** | **Life Insurance Company of North America** |

Dear Ms. Cleiland:

We have completed a thorough review of a claim submitted on your behalf from your employer, Temple Inland

We have informed your employer that your claim has been approved through **October 7, 2003.**

If you are able to return to work prior to **October 8, 2003** please contact our office immediately.

If you are unable to return to work on **October 8, 2003** for medical reasons, please have your physician complete the attached Disability Extension Form.

Please be certain to keep your employer informed of your return to work status.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. We will be pleased to review any information you have that would prove contrary to our findings.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

CATHY CLEILAND
August 12, 2003
Page 2

If you have any questions or concerns, please do not hesitate to call
Ext 1230.

Sincerely,

Jennifer L. Leahy

LINA/Cleiland 1016

*Disability Management Solutions* ℠
*Follow-Up Medical Request Form*

 

CIGNA Group Insurance
Life • Accident • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

We are continuing to evaluate your patient's disability claim. Please respond to the following questions.
Attached is a Department of Labor description of your patient's occupation for your reference.
**Please document your medical findings by providing copies of supporting reports, such as office notes/consultations/testing.**
*(Failure to provide the requested reports may result in delay in the claim determination.)*

| Claimant Name: | Date of Birth: |
|---|---|
| **Cathy Cleiland: Please fax response to JLeahy (860) 298-6555** | |

How has the patient's condition changed since the last update?   ☐ No change   ☐ Improved   ☐ Worse

| Date of your patient's last office visit: | When is your patient's next office visit? |
|---|---|

Please list any change in the treatment plan since the last update:

Please list all current medications that are related to this impairment or impact return to work:

What are the specific restrictions that you have placed on your patient at this time?

At Work:

At Home  *(Activities of Daily Living)*:

Do you expect functional deficits to prevent your patient from performing essential job functions?   ☐ Yes   ☐ No
Please specify:

Could your patient return to work at this time if accommodations were made for the listed restrictions?   ☐ Yes   ☐ No
If no, why not?

If no, based on your experience, what is your best estimate of when your patient can return to work?
With Restrictions: _____   Without Restrictions: _____

| Physician Name  *(Please Print)*: | Degree & Specialty: |
|---|---|
| Address: *(Street, City, State, Zip Code)* | |
| Telephone Number: ( ) | Federal Tax ID #: |
| Physician Signature: | Date: |

618261  5-03

*Thank you for your time.*

LINA/Cleiland 1017

07/18/2003 11:38 FAX  1 334 834 1936     DR JOHN HACKMAN                    @001/008

# John E. Hackman, M.D., P.A.
*Neurosurgery*
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106-1107

Office: (334) 834-1663
Fax: (334) 834-1936

SEND TO: *Disability Management*

ATTENTION: *Jennifer Leahy*

DATE: 7/21/03

FAX #: 1-860-298-6555     PHONE #:

( ) URGENT      ( ) REPLY ASAP      ( ) PLEASE COMMENT      (✓) PLEASE REVIEW

TOTAL PAGES, INCLUDING COVER: 8

PATIENT'S NAME *Cathy Cleiland*

COMMENTS:

FROM:

( )  JOHN E. HACKMAN, M.D.

( )  LINDA C. THOMPSON

( )  KATHY WILKES

(✗)  BRENDA GILLILAND

CONFIDENTIALITY NOTE – The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above. If the receiver of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify us by telephone so we can correct the error.    THANK YOU.

LINA/Cleiland 1018

07/18/2003 11:38 FAX  1 334 834 1936      DR JOHN HACKMAN                    @002/008
07/17/2003 10:25 FAX              Cigna                  @002

*Disability Management Solutions*™
*Follow-Up Medical Request Form*

CIGNA Group Insurance
Life • Accident • Disability
Life Issuance Company of North America
Connecticut General Life Issuance Company
CIGNA Life Insurance Company of New York



We are continuing to evaluate your patient's disability claim. Please respond to the following questions.
Attached is a Department of Labor description of your patient's occupation for your reference.
**Please document your medical findings by providing copies of supporting reports, such as office notes/consultations/testing.**
*(Failure to provide the requested reports may result in delay in the claim determination).*

| Claimant Name: | Date of Birth: |
|---|---|
| **Cathy Cleiland, Please fax response to JLeahy (860) 298-6555** | |

How has the patient's condition changed since the last update?    ☐ No change    ☐ Improved    ☐ Worse

Patient had additional back surgery on 7/16/03

| Date of your patient's last office visit: | When is your patient's next office visit? |
|---|---|
| 7/17/03 - discharged from hospital | 8/28/03 |

Please list any change in the treatment plan since the last update:

    Patient had a recurrence of pain in her left hip and leg, MRI scan showed   a large
    recurrent disc herniation at L4-5 on the left with extruded fragments

Please list all current medications that are related to this impairment or impact return to work:

What are the specific restrictions that you have placed on your patient at this time?    See post-op discharge instructions

At Work: Patient is recovering from back surgeries done on 5/21/03 and 7/16/03

At Home  *(Activities of Daily Living)*:

Do you expect functional deficits to prevent your patient from performing essential job functions?    ☒ Yes    ☐ No
Please specify:

Could your patient return to work at this time if accommodations were made for the listed restrictions?    ☐ Yes    ☒ No
If no, why not?    She is recovering from back surgery done on 7/16/03

If no, based on your experience, what is your best estimate of when your patient can return to work?    approx 10/8/03
With Restrictions: _____    Without Restrictions: _____

| Physician Name  *(Please Print)*: | Degree & Specialty: |
|---|---|
| John E. Hackman, M.D. | Neurosurgeon |
| Address:  *(Street, City, State, Zip Code)* | |
| 1722 Pine Street, Suite 1001, Montgomery, AL  36106 | |
| Telephone Number: | Federal Tax ID #: |
| (334 )  834-1663 | 63-0759811 |
| Physician Signature: | Date: |
| | 7/18/03 |

810281 5-03                    *Thank you for your time.*

LINA/Cleiland 1019

**JOHN E. HACKMAN, M.D., P.A.**
**1722 PINE ST., SUITE 1001**
**MONTGOMERY, AL 36106-1107**

CLEILAND, CATHY K.

BIRTHDATE:
S.S.#:

04-23-03

Mrs. Cleiland comes in because she is having increasing problems in her left hip and leg with numbness in the left lateral thigh.  She has already schedule surgery for May 21, 2003, lumbar laminectomy at L4-5 on the left.  We went over her x-rays.  We discussed alternatives.  Risks and benefits of surgery were discussed.  She is going to come in on May 21, 2003 for lumbar laminectomy at L4-5 on the left.

She said if anything might delay the surgery she would like to give it a try.  So we are going to try some physical therapy and if the physical therapy does not help, then we will plan on surgery as scheduled.

05-12-03 - Letter to George K. Elbrecht, P.C., Attorney at Law - faxed and mailed 05-13-03.

05-13-03 - Lortab 5 #30, one three times a day as needed with one refill called into
          Wal-Mart 251-575-3383.          (FAX # 251-575-7063)

05-21-03 - Hospital admission.
05-21-03 - Lumbar laminectomy, L4-5, left.
05-22-03 - Discharged home.
DIAGNOSIS- Lumbar radiculitis, L4-5, left.

06-02-03

Patient called up because her Darvocet is not strong enough.  We called in Ultram and Neurontin 300 mg four times a day.

06-10-03

Cathy called and said she needed something stronger for pain.  We are going to call in Tylenol #3, #30, one every four hours as needed with two refills.  Called in to Wal-Mart (334) 774-5508 or (334) 774-5651.

07-07-03 - Records mailed to Kathy Underwood, Legal Assistant to Terry G. Key, COCHRAN,
          CHERRY, GIVENS & SMITH, P.C.

07-10-03

Cathy comes in for follow up.  She says she is still having a lot of trouble with her left leg.  She says it hurts and it feels sort of swollen and heavy.  She has got negative straight leg raising.  Knee reflexes are intact.  Ankle reflexes are both absent today.  She does not have a foot drop.

I asked her about her medication.  She says she is not taking Neurontin because it was too expensive.  I told her the Neurontin might help.  We are going to give her a Medrol Dosepak. We are going to get an MRI scan and see her back.

LINA/Cleiland 1020

'/18/2003 11:39 FAX  1 334 834 1936       DR JOHN HACKMAN                        ☒00·

# John E. Hackman, M.D., P.A.

*Neurosurgery*
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106-1107

Office: (334) 834-1663
Fax: (334) 834-1936

## POST-OP DISCHARGE INSTRUCTIONS

### FOR

### LUMBAR LAMINECTOMY AND ANTERIOR CERVICAL FUSION

(1)    You are not to lift anything heavier than five (5) pounds for the first six (6) weeks.

(2)    No bending, stooping, pulling or twisting.

(3)    No riding in a vehicle for the first two (2) weeks except for your trip home. We prefer you to be house-bound for the first two (2) weeks.

(4)    You are not to lift anything heavier than five (5) pounds for the first six (6) weeks.

(5)    After two (2) weeks you may start walking for exercise. You may begin to walk for ten (10) minutes twice a day, building up your walking time as tolerated. When you are walking outside, try to avoid uneven ground. If walking is uncomfortable, then give it some more time before you start into a walking program.

(6)    You may shower when you go home, but tub baths should wait until after complete healing of your wound.

(7)    You may experience some nerve pain to return in the next few days after you go home. This may last for a few weeks or longer. This would be hip and leg pain in back surgery patients or shoulder and arm pain in neck surgery patients. This is very common and is caused by irritation of the nerve and should improve with time.

(8)    Watch your wound for signs of infection: redness, swelling and pus, or any kind of drainage. If you have drainage that looks like water or pus or if you have a temperature greater than 101.5 orally, you should call us immediately.

(9)    You will need to see Dr. Hackman in six (6) to eight (8) weeks. If the nurses did not made an appointment for you, you need to call Dr. Hackman's office to set up an appointment. Please do this the next working day after leaving the hospital as we need to get you on the schedule for an appointment.

(10)   Be patient. It takes a long time to get over spinal surgery. Most people are three (3) to four (4) months from surgery before they can start to act normal.

LINA/Cleiland 1021

/18/2003 11:39 FAX  1 334 834 1936    DR JOHN HACKMAN    ☑005/008

## JACKSON HOSPITAL & CLINIC, INC.
### 1725 Pine Street * Montgomery, Alabama  36106

### REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY            MR#:  28-51-42     Pg 1
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     7/14/03
DATE OF OPERATION:  7/16/2003

BS job # 0716-058

**PREOPERATIVE DIAGNOSIS**
Recurrent disc herniation at L4-5, left.

**POSTOPERATIVE DIAGNOSIS**
Recurrent disc herniation at L4-5, left.

**PROCEDURE**
Re-exploration laminectomy at L4-5, left.

**SURGEON**
Dr. John Hackman.

**INDICATIONS**
This 45-year-old white female had a laminectomy nearly two months ago
at L4-5 on the left and initially did well. She did start having some
recurrence of pain in her left hip and leg. That pain has become very
severe over the last week.  She presented to the emergency room and
was admitted for pain control. On evaluation, we found, on an MRI
scan, that she has large recurrent disc herniation at L4-5 on the
left with extruded fragments.

**PROCEDURE**
The patient was taken to the operating room where she underwent
general endotracheal anesthesia. She was turned to the prone position
on chest rolls. The operative site was shaved, prepped and draped in
sterile manner. Midline incision was made over L4-5, at old lumbar
scar. It was carried down to the lumbar fascia, left of the midline.
Paravertebral muscles were stripped off the spinous processes and
lamina, exposing the intralaminar space at L4-5 on the left.
Previous laminectomy site was enlarged. Scar tissue was removed. We
found several huge fragments of cartilage out under the dural sac and
the nerve root. These were all cleaned out. It appeared that she had
avulsed some of the cartilage end plate. We cleaned out all loose
fragments and made sure we had a good decompression. Bleeding was
controlled with Gelfoam and thrombin.  The wound was closed in
multiple layers of Vicryl suture.

**ESTIMATED BLOOD LOSS**
Blood loss during the procedure was 150 cc.

**COMPLICATIONS**
There were no obvious complications.

PHYSICIAN COPY

LINA/Cleiland 1022

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street * Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:  CLEILAND, CATHY          MR#:  28-51-42    Pg 2
PHYSICIAN:     JOHN E. HACKMAN, M.D.
ADMIT DATE:    7/14/03


Sterile dressings were applied and the patient was taken to the
recovery room in satisfactory condition.


3AI0716
D:                              _____
T: 7/16/03                      JOHN E. HACKMAN, M.D.


PHYSICIAN COPY

LINA/Cleiland 1023

## JACKSON HOSPITAL & CLINIC, INC.
### 1725 Pine Street * Montgomery, Alabama  36106

### HISTORY AND PHYSICAL

PATIENT NAME:  CLEILAND, CATHY          MR#:  28-51-42    Pg 1
PHYSICIAN:     JOHN E. HACKMAN, M.D.
ADMIT DATE:    7/14/03

---

**CHIEF COMPLAINT:** Left hip and leg pain.

**HISTORY OF PRESENT ILLNESS:** This is 45-year-old white female, diabetic. She recently had a laminectomy on 5/21/03 at L4-5 on the left. She initially did well. She has had a recurrence of pain in the left hip and leg. We have talked to her a couple of times and I saw her in the office this past week. She complained about increasing weakness. I put her on medication but she has gotten progressively worse and she presented to the emergency room and was admitted for reevaluation and pain control.

**PAST MEDICAL HISTORY:** Positive for insulin-dependent diabetes. She is noncompliant. She has been otherwise healthy.

**PRIOR SURGERY:** Includes two cesarean sections, tubal ligation, reversal of the tubal ligation, removal of the right tube and ovary, anterior cervical fusion, carpel tunnel surgery, lumbar laminectomy.

**HOME MEDICATIONS:**
1. Humulin insulin 70/30, 40 units twice a day.
2. Effexor.
3. Klonopin.
4. Pain pills.

**ALLERGIES:** None reported.

**FAMILY HISTORY:** Positive for diabetes.

**SOCIAL HISTORY:** Shows the patient is a nonsmoker.

**PHYSICAL EXAM:**
**GENERAL:** Shows a generally healthy appearing white female. She is alert and oriented. Cranial nerves are intact.
**NECK:** She has a good range of motion of the neck.
**CHEST:** Clear.
**HEART:** Regular.
**ABDOMEN:** Soft.
**EXTREMITIES:** She has pain with straight leg raising on the left. Knee reflexes are intact. The ankle are both absent. She has weakness of toe extension on the left.

PHYSICIAN COPY

LINA/Cleiland 1024

/18/2003 11:40 FAX  1 334 834 1936     DR JOHN HACKMAN                    Ø008/0

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street * Montgomery, Alabama  36106

HISTORY AND PHYSICAL

PATIENT NAME:   CLEILAND, CATHY          MR#:  28-51-42     Pg 2
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     7/14/03

ADMISSION IMPRESSION:
1. Recurrent lumbar radiculitis at L4-5 left.

4JB0715
D: 7/15/03                    _____
T: 7/15/03                    JOHN E. HACKMAN, M.D.

PHYSICIAN COPY

LINA/Cleiland 1025



07/17/2003 10:26 FAX                    Cigna                                    ☑001

```
                        ***********************
                        ***   TX REPORT   ***
                        ***********************


        TRANSMISSION OK

        TX/RX NO              0095
        CONNECTION TEL                    913348341936
        CONNECTION ID
        ST. TIME              07/17 10:25
        USAGE T               00'47
        PGS. SENT                2
        RESULT                OK
```

## *Facsimile Transmission Cover Sheet*



**CIGNA Group Insurance**
Life · Accident · Disability

| Transmit to FAX number | Date | Time | Total number of pages |
|---|---|---|---|
| **(334) 834-1936** | July 16, 2003 | 10:28 AM | (including this sheet) : 2 |

| To | | From | |
|---|---|---|---|

| Name | From Name |
|---|---|
| Dr. John Hackman | Jennifer L. Leahy |

| Company | Department |
|---|---|
| Attn: Brenda Gilliland | Disability Management Solutions |

| Phone | Phone |
|---|---|
| (334) 834-1663 | 1-800-376-0725 ext. 1230 |

| Address | Address |
|---|---|
| | 1115 |
| | P.O. Box 2052 |
| | Tarrytown, NY 10591 |

**Comments**

RE:       Cathy Cleiland

Please complete and return the attached form.


Thanks,

JLeahy

LINA/Cleiland 1026

 

## *Facsimile Transmission Cover Sheet*



**CIGNA Group Insuranc**
Life · Accident · Disability

| Transmit to FAX number<br>(334) 834-1936 | Date<br>July 16, 2003 | Time<br>10:28 AM | Total number of pages<br>(including this sheet) : 2 |
|---|---|---|---|

| To | From |
|---|---|
| Name<br>Dr. John Hackman | Name<br>Jennifer L. Leahy |
| Company<br>Attn: Brenda Gilliland | Department<br>Disability Management Solutions |
| Phone<br>(334) 834-1663 | Phone<br>1-800-376-0725 ext. 1230 |
| Address | Address<br>1115<br>P.O. Box 2052<br>Tarrytown, NY 10591 |

**Comments**

RE:      Cathy Cleiland

Please complete and return the attached form.


Thanks,

JLeahy

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

| [ ] Acknowledgment Requested | To Fax a reply, dial : 1-860-298-6555 |
|---|---|

LINA/Cleiland 1027



*Disability Management Solutions*℠
*Follow–Up Medical Request Form*



CIGNA Group Insurance
Life • Accident • Disability
Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

**CIGNA**

We are continuing to evaluate your patient's disability claim. Please respond to the following questions.
Attached is a Department of Labor description of your patient's occupation for your reference.
**Please document your medical findings by providing copies of supporting reports, such as office notes/consultations/testing.**
*(Failure to provide the requested reports may result in delay in the claim determination).*

| Claimant Name: | Date of Birth: |
|---|---|
| **Cathy Cleiland, Please fax response to JLeahy (860) 298-6555** | |

How has the patient's condition changed since the last update?   ☐ No change   ☐ Improved   ☐ Worse

| Date of your patient's last office visit: | When is your patient's next office visit? |
|---|---|

Please list any change in the treatment plan since the last update:

Please list all current medications that are related to this impairment or impact return to work:

What are the specific restrictions that you have placed on your patient at this time?

At Work:

At Home  *(Activities of Daily Living)*:

Do you expect functional deficits to prevent your patient from performing essential job functions?   ☐ Yes   ☐ No
Please specify:

Could your patient return to work at this time if accommodations were made for the listed restrictions?   ☐ Yes   ☐ No
If no, why not?

If no, based on your experience, what is your best estimate of when your patient can return to work?
With Restrictions: _____   Without Restrictions: _____

| Physician Name *(Please Print)*: | Degree & Specialty: |
|---|---|
| Address: *(Street, City, State, Zip Code)* | |
| Telephone Number: ( ) | Federal Tax ID #: |
| Physician Signature: | Date: |

618261  5-03

*Thank you for your time.*

LINA/Cleiland 1028

# John E. Hackman, M.D., P.A.
*Neurosurgery*
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106-1107

Office: (334) 834-1663
Fax: (334) 834-1936

**SEND TO:**

ATTENTION: *Cigna*

*Jennifer L. Leahy*

DATE:

*6/10/03*

FAX #: *1 860-298-6555*

PHONE #: *1-800-376-0725  Ext 1230*

( ) URGENT        ( ) REPLY ASAP        ( ) PLEASE COMMENT        ( ) PLEASE REVIEW

TOTAL PAGES, INCLUDING COVER: *7*

PATIENT'S NAME *Cathy Cleiland*

COMMENTS:

**FROM:**

( )    JOHN E. HACKMAN, M.D.

( )    LINDA C. THOMPSON

( )    KATHY WILKES

(X)    BRENDA GILLILAND

CONFIDENTIALITY NOTE – The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above. If the receiver of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify us by telephone so we can correct the error.    THANK YOU.

LINA/Cleiland 1029

6/10/2003 11:42 FAX  1 334 834 1936        DR JOHN HACKMAN                              002/007

**JOHN E. HACKMAN, M.D., P.A.**
**1722 PINE ST., SUITE 1001**
**MONTGOMERY, AL 36106-1107**

CLEILAND, CATHY K.

BIRTHDATE:
S.S.#:

04-23-03

Mrs. Cleiland comes in because she is having increasing problems in her left hip and leg with numbness in the left lateral thigh. She has already schedule surgery for May 21, 2003, lumbar laminectomy at L4-5 on the left. We went over her x-rays. We discussed alternatives. Risks and benefits of surgery were discussed. She is going to come in on May 21, 2003 for lumbar laminectomy at L4-5 on the left.

She said if anything might delay the surgery she would like to give it a try. So we are going to try some physical therapy and if the physical therapy does not help, then we will plan on surgery as scheduled.

---

05-12-03 – Letter to George K. Elbrecht, P.C., Attorney at Law.– faxed and mailed 05-13-03.

---

05-13-03 – Lortab 5 #30, one three times a day as needed with one refill called into
           Wal-Mart 251-575-3383.      (FAX # 251-575-7063)

05-21-03 – Hospital admission.

05-21-03 – Lumbar laminectomy, L4-5, left.

05-22-03 – Discharged home.

DIAGNOSIS– Lumbar radiculitis, L4-5, left.

---

LINA/Cleiland 1030

10/2003 11:43 FAX  1 334 834 1936    DR JOHN HACKMAN    @003/00

06/10/2003  11:14    2938965    4    PAGE  02

## JACKSON HOSPITAL & CLINIC, INC.
### 1725 Pine Street
### Montgomery, Alabama 36106

### DISCHARGE SUMMARY

| | | |
|---|---|---|
| **PATIENT NAME:** CLEILAND, CATHY | **MR#:** 28-51-42 | |
| **ATTENDING:** | **ACT#:** 10547947 | |
| **ADMIT DATE:** 5/21/2003 | **RM#:** | |
| **DISCHARGE DATE:** 5/22/2003 | | |

Bytescribe #0522-063

**REASON FOR ADMISSION:** This 45-year-old, diabetic white female comes in with persistent left hip and leg pain with numbness. This has gotten progressively worse for a year. Magnetic resonance imaging scan shows disc bulging at L4-5 on the left with osteophytes. This protrudes into the foramen. She now comes in for surgery.

**HOSPITAL COURSE:** The patient was admitted to the hospital and taken to surgery where she had a lumbar laminectomy at L4-5 on the left. She had immediate improvement, did well and was discharged home the following day. The wound looked good, and she was given instructions. She will be followed up in the office.

**DISCHARGE DIAGNOSIS:** Lumbar radiculitis L4-5 on the left.

**OPERATIVE PROCEDURE THIS ADMISSION:** Lumbar laminectomy L4-5 on the left.

JOHN E. HACKMAN, M.D.

8DW0522
D: 5/22/2003 08:17
T: 5/22/2003 10:56
143166

LINA/Cleiland 1031

'10/2003 11:43 FAX  1 334 834 1936     DR JOHN HACKMAN                    ☒004/007

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street * Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:  CLEILAND, CATHY          MR#:  28-51-42     Pg 1
PHYSICIAN:     JOHN E. HACKMAN, M.D.
ADMIT DATE:    5/21/03
DATE OF OPERATION: 5/21/2003

---

PREOPERATIVE DIAGNOSIS:  Lumbar radiculitis L4-5 left.

POSTOPERATIVE DIAGNOSIS:  Lumbar radiculitis L4-5 left.

NAME OF PROCEDURE:  Lumbar laminectomy L4-5 left.

ASSISTANT:

ANESTHESIA:  General endotracheal anesthesia.

INDICATIONS FOR PROCEDURE: This is a 45-year-old white female comes
in with persistent back and left leg pain with numbness and weakness.
She has had conservative treatment without improvement.  The MRI scan
shows a protruding disk with associated osteophyte at L4-5 on the
left.

DESCRIPTION OF PROCEDURE:  The patient was taken to the operating
room where she underwent general endotracheal anesthesia.  She was
turned in the prone position on chest rolls.  The operative sites
were shaved, prepped, and draped in the sterile manner.  A midline
incision was made over L4-5.  This was carried down to the lumbar
fascia, which was opened to the left of the midline.  The
paravertebral muscles were stripped off the spinous processes and
lamina exposing the interlaminar space at L4-5 on the left.

A portion of the inferior lamina of L4 was removed.  The ligamentum
flavum was removed.  The nerve roots were identified.  Underneath we
found a soft protruding disk. There was some associated osteophyte
going off the rim of the inferior part of L4 and extending out into
the foramen along with protruding disk.

We opened the ligament.  We used pituitary rongeurs and curets and
cleaned out fragmented disk material until all loose fragments were
removed.  We then removed the associated osteophytes with curets.  We
made sure we had a good decompression in the central canal and the
nerve root canal.  Bleeding was controlled with Gelfoam and thrombin.

The wound was closed in multiple layers of Vicryl suture.  Blood loss
during the procedure 350 cc.  There were no obvious complications.
Sterile dressings were applied.

PHYSICIAN COPY

LINA/Cleiland 1032

'10/2003 11:44 FAX  1 334 834 1936      DR JOHN HACKMAN                    ☑005/00?

JACKSON HOSPITAL & CLINIC, INC.
1725 Pine Street * Montgomery, Alabama  36106

REPORT OF OPERATION

PATIENT NAME:   CLEILAND, CATHY          MR#:   28-51-42    Pg 2
PHYSICIAN:      JOHN E. HACKMAN, M.D.
ADMIT DATE:     5/21/03

The patient was taken to the recovery room in satisfactory condition

6HI0521                        _____
D: 5/21/03                     JOHN E. HACKMAN, M.D.
T: 5/21/03

PHYSICIAN COPY

LINA/Cleiland 1033

0/2003 11:44 FAX  1 334 834 1936      DR JOHN HACKMAN                          ☑006/0

## John E. Hackman, M.D., P.A.

*Neurosurgery*
1722 Pine Street, Suite 1001
Montgomery, Alabama 36106-1107

Office: (334) 834-1663
Fax: (334) 834-1936

## POST-OP DISCHARGE INSTRUCTIONS

### FOR

### LUMBAR LAMINECTOMY AND ANTERIOR CERVICAL FUSION

(1)  You are not to lift anything heavier than five (5) pounds for the first six (6) weeks.

(2)  No bending, stooping, pulling or twisting.

(3)  No riding in a vehicle for the first two (2) weeks except for your trip home. We prefer you to be house-bound for the first two (2) weeks.

(4)  You are not to lift anything heavier than five (5) pounds for the first six (6) weeks.

(5)  After two (2) weeks you may start walking for exercise. You may begin to walk for ten (10) minutes twice a day, building up your walking time as tolerated. When you are walking outside, try to avoid uneven ground. If walking is uncomfortable, then give it some more time before you start into a walking program.

(6)  You may shower when you go home, but tub baths should wait until after complete healing of your wound.

(7)  You may experience some nerve pain to return in the next few days after you go home. This may last for a few weeks or longer. This would be hip and leg pain in back surgery patients or shoulder and arm pain in neck surgery patients. This is very common and is caused by irritation of the nerve and should improve with time.

(8)  Watch your wound for signs of infection: redness, swelling and pus, or any kind of drainage. If you have drainage that looks like water or pus or if you have a temperature greater than 101.5 orally, you should call us immediately.

(9)  You will need to see Dr. Hackman in six (6) to eight (8) weeks. If the nurses did not made an appointment for you, you need to call Dr. Hackman's office to set up an appointment. Please do this the next working day after leaving the hospital as we need to get you on the schedule for an appointment.

(10)  Be patient. It takes a long time to get over spinal surgery. Most people are three (3) to four (4) months from surgery before they can start to act normal.

LINA/Cleiland 1034

10/2003 11:44 FAX  1 334 834 1936     DR JOHN HACKMAN                    ☑007/007
3/09/2003 15:32 FAX                    Cigna                             ☑002



**CIGNA** Group Insurance
Life · Accident · Disability

**Please return to Jennifer Leahy at fax #(860) 298-6555**

### EXTENSION OF DISABILITY REQUEST FORM

| Claimant Name: | Cathy Cleiland | Claimant DOB: | |
|---|---|---|---|

If you feel your patient will be unable to return to work on **July 16, 2003**, we require additional information to substantiate a continuing disability. **Please provide a copy of office visit notes and diagnostic testing results from the date you began treating this patient for this condition through the present.** In addition, we would appreciate a response to the following questions.

1. What is the primary diagnosis?

   Lumbar radiculitis, L4-5, left

2. Are there any other diagnoses?

3. What are the specific limitations you have placed on your patient, if any?

   See post-operative instructions

4. What are the complicating factors preventing recovery, if any?

5. What is your patient's expected return to work date?     approx 8/13/03
6. What is your current treatment plan for this patient?     rest and recovery for lumbar laminectomy

   done on 5/21/03

7. When is your patient's next office visit?     07/08/03
8. When was your patient's last office visit?     4/23/03

Completion of this form without accompanying medical records will not be sufficient to consider extension of disability.

Written Name _____

Signature and date
John E. Hackman, M.D.

Neurosurgeon _____
Specialty, if applicable

1722 Pine Street, Suite 1001, Montgomer

Telephone Number 36107
(334) 834-1662

*Confidential, unpublished property of CIGNA. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel.* © *Copyright 2003 CIGNA*



06/09/2003 15:32 FAX                    Cigna                                    ☒001

```
                    *********************
                ***    TX REPORT    ***
                    *********************

        TRANSMISSION OK

        TX/RX NO            4494
        CONNECTION TEL              913348341936
        CONNECTION ID
        ST. TIME           06/09 15:31
        USAGE T            00'50
        PGS. SENT          2
        RESULT             OK
```

# *Facsimile Transmission Cover Sheet*



**CIGNA** Group Insurance
Life · Accident · Disability

| Transmit to FAX number<br>(334) 834-1936 | Date<br>June 9, 2003 | Time<br>2:52 PM | Total number of pages<br>(Including this sheet) : 2 |
|---|---|---|---|

| To | From |
|---|---|
| Name<br>Dr.John Hackman | Name<br>Jennifer L. Leahy |
| Company | Department<br>Disability Management Solutions |
| Phone<br>(334) 834-1663 | Phone<br>1-800-376-0725 ext. 1230 |
| Address | Address<br>1115<br>P.O. Box 20S2<br>Tarrytown, NY 10591 |

Comments

RE:    Cathy Cleiland

Please complete the attached form and provide requested medical records for your patient.


Thanks,

JLeahy

LINA/Cleiland 1036

*Facsimile Transmission Cover Sheet*



**CIGNA Group Insuranc**
Life · Accident · Disability

| Transmit to FAX number<br>(334) 834-1936 | Date<br>June 9, 2003 | Time<br>2:52 PM | Total number of pages<br>(including this sheet) : 2 |
|---|---|---|---|

| To | From |
|---|---|
| Name<br>Dr.John Hackman | Name<br>Jennifer L. Leahy |
| Company | Department<br>Disability Management Solutions |
| Phone<br>(334) 834-1663 | Phone<br>1-800-376-0725 ext. 1230 |
| Address | Address<br>1115<br>P.O. Box 2052<br>Tarrytown, NY 10591 |

**Comments**

RE:    Cathy Cleiland

Please complete the attached form and provide requested medical records for your patient.


Thanks,

JLeahy

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

[ ] Acknowledgment Requested                    To Fax a reply, dial : 1-860-298-6555

LINA/Cleiland 1037



**CIGNA Group Insurance**
Life · Accident · Disability

**Please return to Jennifer Leahy at fax #(860) 298-6555**
## EXTENSION OF DISABILITY REQUEST FORM

| Claimant Name: | Cathy Cleiland | Claimant DOB: | |
|---|---|---|---|

If you feel your patient will be unable to return to work on **July 16, 2003, we require additional** **information to substantiate a continuing disability. Please provide a copy of office visit notes and** **diagnostic testing results from the date you began treating this patient for this condition through** **the present.** In addition, we would appreciate a response to the following questions.

1. What is the primary diagnosis?

_____

2. Are there any other diagnoses?

_____

_____

3. What are the specific limitations you have placed on your patient, if any?

_____

_____

4. What are the complicating factors preventing recovery, if any?

_____

_____

5. What is your patient's expected return to work date? _____

6. What is your current treatment plan for this patient? _____

_____

7. When is your patient's next office visit? _____

8. When was your patient's last office visit? _____

**Completion of this form without accompanying medical records will not be sufficient to consider** **extension of disability.**

_____          _____
Written Name                               Signature and date

_____          _____
Specialty, if applicable                  Telephone Number

*Confidential, unpublished property of CIGNA. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2003 CIGNA*

*Policy / Coverage Nos.* **UNKNOWN**
*Disability Proof of Loss*




CIGNA Group Insurance
Life • Accident • Disability

Life Insurance Company of North America;
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

 CIGNA

---

**FRAUD WARNING:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. *For residents of the following states, please see the reverse side of this form: Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon, or Virginia.*

---

### INSTRUCTIONS FOR FILING A CLAIM

This form is a single application for Short Term and Long Term Disability Benefits and contains the information reported to our service center.

To The Employee:  A. Please review this information carefully.
B. Make any changes you feel are necessary.
C. Sign the section marked Employee Certification and the Disclosure Authorization.
D. Return the signed forms to our office.

If these instructions are not followed, your claim may be subject to a delay or return.

---

### EMPLOYEE INFORMATION

| Name of Employee (Last, First, Middle): | Date of Birth: | Social Security Number: | Sex: |
|---|---|---|---|
| CLEILAND, CATHY  K | | | ○Male ◉Female ○Unknown |

Address (Street, Apt):

| City: | State: | Zip Code: | Telephone No.: |
|---|---|---|---|
| MONROEVILLE | AL | 36460 | |

Please describe your condition:
Lower Back Surgery (Name Of Surgery Unsure) Pinched Nerve

---

### PLEASE COMPLETE SECTIONS A, B OR C - AND THE REMAINDER OF THE APPLICATION:

**A** | Is this an Injury? ◉Yes ○No ○Unknown | Date of Injury: ~~04/24/2002~~ 4-25-02 | Time of Injury: 07:00 AM | Is this work related? ○Yes ◉No ○Unknown

Describe the cause of Injury:
Car Accident

**B** | Is this an Illness? ○Yes ◉No ○Unknown | Date of Illness: | | Is this work related? ○Yes ○No ○Unknown

Describe the cause of Illness:

**C** | Is this an Pregnancy? ○Yes ◉No ○Unknown | Delivery/Due Date: | Delivery Method: | Were there complications? ○Yes ○No ○Unknown

Describe the Complications:

---

Are you currently losing time from work? ◉Yes ○No ○Unknown | If yes, what specifically prevents you from working?

| Last Day Worked: 05/13/2003   # hours worked: ~~10:00~~ 12:00 | Date first unable to work: 05/14/2003 | Date You Plan to Return to Work 07/07/2003 |
|---|---|---|

Have you had the same or similar condition in the past? ○Yes ◉No ○Unknown | If yes, when did it occur (dates)? | Please describe:

Please list any states in which you may be liable for filing tax returns:
AL

Are you receiving any other income or benefits? If so, please complete the following.

| Benefit Type | Gross Weekly Amount | Date Began | Paid thru Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

---

612286 (03/2003)   STD

Page 3 of 9

LINA/Cleiland 1039

Please list any hospitals, clinics or physicians that treated you for your condition:

| Name & Address | Telephone No. | Specialty | First Treatment Date | Last Treatment Date |
|---|---|---|---|---|
| John Hackman<br>Unknown<br>MONTGOMERY, AL 36106 | (334)834-1663 | Surgery,<br>Neurological | | 05/22/2003 |
| | | | | |
| | | | | |
| | | | | |

## EMPLOYMENT INFORMATION

*Please correct

| Occupation: | Date Hired: | Basic Earnings: | Frequency: | Date of last change in earnings: |
|---|---|---|---|---|
| Human Resource Manager | 08/24/1998 | $2,000.00 | BI-WEEKLY | 08/01/1998 |

Please provide a brief description of daily job duties:
Management Employee Relations

Please check the appropriate items regarding this employee:

☒ Exempt  ☒ Non-Exempt  ☐ Management  ☒ Non-Management
☒ Supervisory  ☒ Non-Supervisory  ☒ Salaried  ☐ Hourly
☒ Full Time  ☐ Part Time  Hours/Week _40.00_
☐ Union - Local #  ☒ Non-Union

Has Employee been laid off?  ☐ Yes  ☒ No  ☐ Unknown
Or terminated?  ☐ Yes  ☒ No  ☐ Unknown
If yes, please indicate the date and reason:

| STD Policy / Covg. Number: Unknown | Effective date of employee's STD coverage: 8-24-1998 | Was STD Insurance issued on the basis of a statement of physical condition? ☐ Yes ☐ No ☒ Unknown |
|---|---|---|
| Percent of Employee's STD contribution: 0.00% | Employee's contributions were made on: ☐ Pre-Tax Basis ☐ Post-Tax Basis | Premium Paid Thru Date: |
| LTD Policy / Covg. Number: | Effective date of employee's LTD coverage: | Was LTD Insurance issued on the basis of a statement or physical condition? ☐ Yes ☐ No ☐ Unknown |
| Percent of Employee's LTD contribution: % | Employee's contributions were made on: ☐ Pre-Tax Basis ☐ Post-Tax Basis | Premium Paid Thru Date: |

## EMPLOYEE WORK LOCATION

| Employer Name: TEMPLE INLAND | Contact Person: |
|---|---|
| Address (include Street, City, State & Zip): P.O. BOX 966  MONROEVILLE AL  36461 | Telephone No.: |

## ADDITIONAL EMPLOYERS (if applicable)

| Employer Name: | Title | Contact Person: |
|---|---|---|
| Address (include Street, City, State & Zip): | | Telephone No.: |

| Name of Employee (Last, First, Middle): CLEILAND, CATHY K | Social Security Number: |
|---|---|

## CERTIFICATION

This is to certify the facts as indicated above are true to the best of my knowledge and belief.

Signature of Employee: _Cathy K. Cleiland_    Date of signature: 6-4-03

The issuance of this form is not an admission of the existence, nor does it recognize the validity, of any claim and is without prejudice to the company's legal rights in the premises.

612286 (03/2003)    STD

Page 4 of 9

LINA/Cleiland 1040

# Disclosure Authorization



CIGNA Group Insurance
Life · Accident · Disability

Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



CIGNA

---

## FRAUD WARNING

**Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. For residents of the following states, please see the reverse side of this form: *Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon or Virginia.***

---

Claimant's Name (Please Print): Cathy K Cleiland

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome), as well as communicable diseases and genetic testing. If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating my claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings, or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a)reinsuring companies; b)the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c)fraud or overinsurance detection bureaus; d)anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e)for audit or statistical purposes; f)as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: Cathy K Cleiland    Date: 6/14/03

Relationship,
if other than Claimant: _____    Claimant's Social Security Number: _____

Company Name: Temple Inland Forest Products Corp

LINA/Cleiland 1041

Jennifer L. Leahy
Case Manager III
Disability Management Solutions



**CIGNA Group Insura**
Life · Accident · Disability

FILE COPY

June 4, 2003

Routing 1115
P.O. Box 2052
Tarrytown, NY 10591
Telephone 1-800-376-0725 ext
1230
Facsimile 1-860-298-6555

CATHY CLEILAND

MONROEVILLE, AL 36460

| | |
|---|---|
| **Name of Insured:** | **Cathy Cleiland** |
| **Policy Number:** | **SHD 020035** |
| **Policyholder:** | **Temple Inland** |
| **Administered By:** | **Life Insurance Company of North America** |

Dear Ms. Cleiland:

We have evaluated the circumstances that are preventing you from working.  We have been unable to reach you or your physician to confirm the type of procedure you had on May 21, 2003.  Therefore, with the current information of file we would assume you would be able to return to work after 4 weeks of recovery as of **June 18, 2003.**  Please call our office to clarify your diagnosis and type of surgery.

If you are able to return to work prior to **June 18, 20033** please contact our office immediately.

If you are unable to return to work on **June 18, 2003** for medical reasons, please have your physician complete the attached Disability Extension Form.

Please be certain to keep your employer informed of your return to work status.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy.  This determination has been made in good faith without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.  We will be pleased to review any information you have that would prove contrary to our findings.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

CATHY CLEILAND
June 4, 2003
Page 2

If you have any questions or concerns, please do not hesitate to call me at 1.800.3
Ext 1230.

Sincerely,

Jennifer L. Leahy

LINA/Cleiland 1043



**CIGNA Group Insurance**
Life · Accident · Disability

Please return to Jennifer Leahy at fax #(860) 298-6555
## EXTENSION OF DISABILITY REQUEST FORM

| Claimant Name: | Cathy Cleiland | Claimant DOB: | |

If you feel your patient will be unable to return to work on **June 18, 2003,** we require additional information to substantiate a continuing disability. We appreciate you responding to the following questions:

1. What is the primary diagnosis?

   _____

2. Are there any other diagnoses?

   _____

   _____

3. What are the specific limitations you have placed on your patient, if any?

   _____

   _____

4. What are the complicating factors preventing recovery, if any?

   _____

   _____

5. When is your patient's expected return to work date? _____

6. What is your current treatment plan for this patient? _____

7. When is your patient's next office visit? _____

8. When was your patient's last office visit? _____

Please provide a copy of your office notes from the date you began treating this patient for this condition through the present. Please return to the Attention of Jennifer Leahy.

_____                    _____
Written Name                                Signature and date

_____                    _____
Specialty, if applicable                    Telephone Number

*Confidential, unpublished property of CIGNA. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2003 CIGNA*

LINA/Cleiland 1044

Master Summary Report  

| EE: CLEILAND, CATHY | SSN: | DOI: 05/14/2003 | ER: TEMPLE INLAND(DIS) | ID: 589813409422531 |
|---|---|---|---|---|
| WCC: | LTD: | STD: | ICMS: | Other: |



**Intake Number:** 589813409422531

**Type of Incident:** Injury

**Employer Name:** TEMPLE INLAND

**DOI:** 05/14/2003

**First Day Off:** 05/14/2003

**INTAKE CLAIM TYPE :** Short Term Disability

**LOB:** DIS

**HMO Code:**

Collapse All

## Employee Information

**SSN :**
**Name:** CLEILAND, CATHY K
**DOB:** 07/11/1957
**Marital Status:** SEPARATED

**Employee ID :**

**Age:** 45
**Preferred Language:** ENGLISH

**Work Permit No :** 0000

**Gender:** FEMALE
**Tax State:** AL

### Addresses

**Residence :**
Addr1:
Addr2:
**City:** MONROEVILLE
**County:**
**State:** AL    **Zip:** 36460    **Country:** US

**Work Location :**
Addr1:
Addr2:
**City:** MONROEVILLE
**County:** MONROE
**State:** AL    **Zip:** 36461    **Country:** US

### Phone

| Type | Number |
|---|---|

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp

05/27/2003

LINA/Cleiland 1045

# EXHIBIT 1 TO EXHIBIT A
# Part 20



| Mobile - Telephone | |
| Office - Telephone | |

## Email Addresses

**Address1:** None

## Condition

**Description:** Lower Back Surgery (Name Of Surgery Unsure)Pinched Nerve
**Incident Type:** Injury
**Diagnosis(ICD9):** 847 SPRAIN OF BACK NEC/NOS
**Condition Fatal?** N          **Date of Death:**

## Injury

**Date of Injury:** 04/24/2002              **Working at time of injury?** N
**Time of Injury:** 07:00:00 AM             **Is employee claiming WC?** N
**Is Condition Related to Work Activities?** N   **How did Injury Occur?** Car Accident
**Jurisdiction:** ALABAMA                  **Other Carrier WC Claim Number:**
**Dispute WC?**
**Why?**

### Location
**Place of Injury:** Other                 **Address1:**
**Loc. Desc:**                             **Address2:**
                                           **City:**
                                           **County:**
                                           **St:**
                                           **Zip:**
                                           **Country:**

### Witnesses
**Were there Witnesses?**

### Injury Specifics
**Body Section:**                          **Side:**
**Body Part:** Low Back Area (Inc: Lumbar and   **Nature of Injury:** All Other Specific Injury
Lumbo-Sacral)
**Cause of Injury:** Injury - Non Occupational   **Other Medical Conditions:**
**Describe:**

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp          05/27/2003

LINA/Cleiland 1046

 
**Prior Information**
**Prior Related Injury?** N          **Prior Injury Date:**
**Prior Injury Comments:**

## Medical

**Receiving or Scheduled Treatment:** Y
**Hospitalized:** Y      **Date Admitted:** 05/21/2003
                         **Date Discharged:** 05/22/2003
**Surgery:** Y           **Date Performed:** 05/21/2003
**Verbal Auth:**         **Restrictions:**          **Restriction Description:**

### Medical Instruction

### Providers

**Name:** John Hackman          **Type:** Specialist          **MedReturns:** N
**Facility/Group:**             **TIN:**                      **Specialty:** Surgery, Neurologic

**Business:**                   **Addr1:** Unknown
                                **Addr2:**
                                **City:** MONTGOMERY
                                **County:** MONTGOMERY
                                **State:** AL    **Zip:** 36106    **Country:** US

**Phone:**
Office - Telephone              334.834.1663
Office - Fax Machine            999.999.9999      (334) 834-1936 fax

**Treatment(Date/Description):**
05/22/2003

**TreatmentNotes:**
Jackson Hospital

## Employer Information

**Employer Name:** TEMPLE INLAND          **Company Number:** 000000552
**Eligibility Loc ID Number:** 6045        **Eligibility Client Loc Code:** 10206

LINA/Cleiland 1047

 
Location ID Number: 000006045                    Client Location Code: 10206
Location Name: BLDG. PRODUCTS - MONROEVILLE 10206
Address1: P.O. BOX 966
Address2:
City: MONROEVILLE
County: MONROE
State: AL    Zip: 36461    Country: US

## Contacts

Name: JIM CONVERY                    Type: X
Business :                          Addr1: 248 INDUSTRIAL ROAD
                                    Addr2: P.O. BOX 120
                                    City: LEOMINSTER
                                    County: WORCESTER
                                    State: MA    Zip: 01453    Country: US

Phone:
Office - Telephone                  508.537.1701

Name: SUPERVISOR JOE PRIDGEN        Type: Reported To

Phone:
Office - Telephone

## Intake Selected Policy Coverage Information

### Eligibility Enrollment Information

| | | |
|---|---|---|
| Product: SC | Coverage Code: SC | Enrollment Effecti |
| Enrollment Cancel Date: | Employee Paid Thru Date: | Account Number: |
| SRO ID: | SRO Div/Suffix: | SRO Cov Eff Date: |
| Elected Effective Date: 01/01/2003 | Provision Eff Date: 01/01/2001 | Elected Benefit %: |
| Elected Benefit Count: 0 | | |

## Initial Caller Information

Received Date: 05/27/2003        Received Time: 12:49:17 PM    Source: Inboun
Caller Name: CATHY K CLEILAND     Phone:
Role: Employee                    Reason for Call: Intake

## Employment Information

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp              05/27/2003

LINA/Cleiland 1048

Master Summary Report  

**Hire Date:** 08/24/1998                 **Emp. Status:** ACTIVE                **Effective Date:** 08/
**Union Indicator:** N                     **Union Local #:**                      **Union Name:**
**Organization Code:**                     **Organization Name:**
**Employer Name:** TEMPLE INLAND           **Present Position Start Date:**
**Nature of Business:** Plant              **Department Name:**
**Job Title:** Human Resource Manager      **Occupation Class:** Professionals
**Description of Job Duties:** Management Employee Relations

## Wages and Pay Data

**Full Time:** Y                 **Amount:** $2,000.00                **Earnings Mode:** BI-\

**Bonus Eligibility Indicator:** N    **Date of Last Earnings Change:**    **Salary Mode:** ANNU.
                                      08/01/1998

| Compensation List Types |
|---|
| Salary |

| Any other income or benefits | | |
|---|---|---|
| Offset Code | Weekly Amt | Start | |

| Regular Weekly Work Schedule (Hours) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Shift | Shift Start Time | Shift End Time | Mon | Tue | Wed | Thu | Fri | Sat | Sun |
| Day | 12:00:00 AM | 04:30:00 PM | x | x | x | x | x | | |

## Return to Work

**Lost Time Indicator:** Y              **Last Date Worked:** 05/13/2003      **LDW Paid in Full:** Y
**Employee Returned to Work?** N        **Expected Return Date:** 07/07/2003   **# of Hrs Wkd Last Day**
**What specifically prevents work:**

| Period of Lost Time | | | | |
|---|---|---|---|---|
| First Day Off | RTW Date | Duty Type | Job | RTW Hour |
| 05/14/2003 | | | | |

**RTW Notes:**

LINA/Cleiland 1049

 
## Notes

| CDCHAP | 05/27/2003 |
|---|---|

Salary Estimated /Lower Back Surgery (Name Of Surgery Unsure)Pinched Nerve

| CDCHAP | 05/27/2003 |
|---|---|

No Policy #

## Employer Confirmation Information

| Data Element | Value | Confirmation Met |
|---|---|---|
| EE Work Address | Addr1: P.O. BOX 966<br>Addr2:<br>City: MONROEVILLE<br>County: MONROE<br>State: AL Zip: 36461 Country: US | None |
| Department Name | | None |
| Job Title | Human Resource Manager | None |
| Occupation Classification | Professionals | None |
| Description of Job Duties | Management Employee Relations | None |
| Union Indicator | N | None |
| Union Number | | None |
| Date of Hire | 08/24/1998 | None |
| Date of Last Earnings Change | 08/01/1998 | None |
| Last Day Worked | 05/13/2003 | None |
| # Hours Worked Last Day | 18 | None |
| Expected RTW Date | 07/07/2003 | None |
| Full Time | Y | None |
| Earnings Amount | 2,000.00 | None |
| Payment Mode | BI-WEEKLY | None |
| Compensation Type 1 | Salary | None |

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp

05/27/2003

LINA/Cleiland 1050

Master Summary Report   Page 7 of 7

| First Day Off | 05/14/2003 | None |
|---|---|---|
| Coverage Type | STD | None |
| Policy Number | | None |
| Policy Effective Date | 06/01/1997 | None |
| Premium Paid Thru Date | 06/01/1997 | None |
| Contribution % | 0 | None |
| Contribution Method | Pre Tax | None |

## Other Contacts

**Name: C C**                                          **Type:** Other
**Phone:**
Residence - Telephone                                 972.997.8722

LINA/Cleiland 1051





**CIGNA** Group Insurance
Life • Accident • Disability

May 27, 2003

P.O. Box 2052
Tarrytown, NY 10591-9052
1.800.376.0725

TO: CLEILAND, CATHY K

MONROEVILLE, AL 36460

RE: CLEILAND, CATHY K
DATE OF BIRTH:
POLICY/PLAN HOLDER: TEMPLE INLAND
POLICY/PLAN #: UNKNOWN
COMPANY NAME: Life Insurance Company of North America

Dear Ms. Cleiland:

We acknowledge receipt of your claim for Short Term Disability (STD) benefits. We will do everything we can to
ensure your satisfaction and to make this process as simple as possible during this difficult time.

We are unable to make a determination on your claim based upon the information submitted. Therefore, we are requesting
additional medical information from John Hackman.

We must obtain medical information in order to verify your diagnosis and current functional abilities, and your current
treatment plan. We also ask that you review and sign the enclosed claim form (if any information is missing or
incorrect, please change it on the form) and Disclosure Authorization form, and return them to us at the address
listed above.

We expect to receive this information from either you or your physician within two weeks from the date that we received
your claim. We hope to be able to make a decision on your claim at that time. If we are unable to make the decision within
30 days of the day we received your claim, we will contact you and explain the reason for the delay.

As we mentioned above, we ask that you sign and return the enclosed Disclosure Authorization form to us as soon as
possible. To expedite processing of your claim, please feel free to fax the authorization to 800-377-4286 .
(If you cannot fax the authorization to our office, please return it to the address listed above.) We may be unable to obtain
medical information relevant to your claim without a signed authorization to release form. If we cannot get this
information, we cannot make a determination on your claim and any potential benefit payments may be delayed.

Please note that we are pursuing the information needed to make a decision on your claim. However, in the event that we
are unable to obtain this information, it is your responsibility to provide us with the required information. Please contact
your physicians and ask that they cooperate with us and respond to our requests as soon as possible. If we do not receive
the information needed by 07/10/2003, we will make a decision based on the information in our file.

We expect that you will return to work as soon as you are safely able to do so. In order to facilitate your return to work,
you may be contacted by one of our Nurse Case Managers or Vocational Rehabilitation Counselors. Please cooperate with
these individuals if you are contacted. Please keep us up-to-date on your condition by calling us after each of your doctor's
visits. Also, notify us immediately if you are released to return to work or if you actually do return to work.

612286 (03/2003)    STD

Page 1 of 5

LINA/Cleiland 1052

 

If you have other types of coverage that may pay benefits for this condition, you may submit a claim. For example, if yo life insurance plan includes a waiver of premium for disability, you may be eligible to submit a waiver claim. Please review the provisions of your booklet or certificate. Please review your Summary Plan Description or benefit booklet for more information on your benefits and to determine if you are eligible for additional benefits.

Please notify us if you begin to receive any other sources of income. This may include, but is not limited to: Social Security Disability or Retirement, Worker's Compensation, No-Fault disability insurance, pension, Veteran's benefits or any other disability payments from another group insurance policy.

Should you have any questions regarding this correspondence, please feel free to contact us.

Sincerely,
CIGNA Group Insurance

[1] Your employee benefit plan's Plan Administrator has selected the insurance company as the fiduciary for the review and determination of claims for benefits under federal law. The insurance company shall have the authority, in its discretion, to interpret plan documents, to decide questions of eligibility for coverage or benefits, to make findings of fact and to decide appeals of denied claims. Such decisions shall be final and binding on plan participants and beneficiaries to the full extent permitted by law.

LINA/Cleiland 1053

*Policy / Coverage Nos.* UNKNOWN
*Disability Proof of Loss*




CIGNA Group Insurance
Life • Acc... • Disability

Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

**CIGNA**

**FRAUD WARNING:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. *For residents of the following states, please see the reverse side of this form: Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon, or Virginia.*

### INSTRUCTIONS FOR FILING A CLAIM

This form is a single application for Short Term and Long Term Disability Benefits and contains the information reported to our service center.

To The Employee:  A. Please review this information carefully.
B. Make any changes you feel are necessary.
C. Sign the section marked Employee Certification and the Disclosure Authorization.
D. Return the signed forms to our office.

If these instructions are not followed, your claim may be subject to a delay or return.

### EMPLOYEE INFORMATION

| Name of Employee (Last, First, Middle): | Date of Birth: | Social Security Number: | Sex: |
|---|---|---|---|
| CLEILAND, CATHY   K | | | ○Male  ◉Female  ○Unknown |

| Address (Street, Apt): | | | |
|---|---|---|---|

| City: | State: | Zip Code: | Telephone No.: |
|---|---|---|---|
| MONROEVILLE | AL | 36460 | |

Please describe your condition:
Lower Back Surgery (Name Of Surgery Unsure)Pinched Nerve

### PLEASE COMPLETE SECTIONS A, B OR C - AND THE REMAINDER OF THE APPLICATION

| **A** Is this an Injury? | Date of Injury: | Time of Injury: | Is this work related? |
|---|---|---|---|
| ◉Yes ○No ○Unknown | 04/24/2002 | 07:00 AM | ○Yes ◉No ○Unknown |

Describe the cause of Injury:
Car Accident

| **B** Is this an Illness? | Date of Illness: | | Is this work related? |
|---|---|---|---|
| ○Yes ◉No ○Unknown | | | ○Yes ○No ○Unknown |

Describe the cause of Illness:

| **C** Is this a Pregnancy? | Delivery/Due Date: | Delivery Method: | Were there complications? |
|---|---|---|---|
| ○Yes ◉No ○Unknown | | | ○Yes ○No ○Unknown |

Describe the Complications:

| Are you currently losing time from work? | If yes, what specifically prevents you from working? |
|---|---|
| ◉Yes ○No ○Unknown | |

| Last Day Worked: | Date first unable to work: | Date You Plan to Return to Work |
|---|---|---|
| 05/13/2003  # hours worked = 18.00 | 05/14/2003 | 07/07/2003 |

| Have you had the same or similar condition in the past? ○Yes ◉No ○Unknown | If yes, when did it occur (dates)? | Please describe: |
|---|---|---|

Please list any states in which you may be liable for filing tax returns:
AL

Are you receiving any other income or benefits? If so, please complete the following.

| Benefit Type | Gross Weekly Amount | Date Began | Paid thru Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

LINA/Cleiland 1054

Please list any hospitals, clinics or physicians that treated you for your condition:

| Name & Address | Telephone No. | Specialty | First Treatment Date | Last Treatment Date |
|---|---|---|---|---|
| John Hackman Unknown MONTGOMERY, AL 36106 | (334)834-1663 | Surgery, Neurological | | 05/22/2003 |
| | | | | |
| | | | | |
| | | | | |

## EMPLOYMENT INFORMATION

Occupation:
Human Resource Manager

| Date Hired: 08/24/1998 | Basic Earnings: $2,000.00 | Frequency: BI-WEEKLY | Date of last change in earnings: 08/01/1998 |
|---|---|---|---|

Please provide a brief description of daily job duties:
Management Employee Relations

Please check the appropriate items regarding this employee:

☐ Exempt  ☒ Non-Exempt  ☐ Management  ☒ Non-Management
☐ Supervisory  ☒ Non-Supervisory  ☒ Salaried  ☐ Hourly
☒ Full Time  ☐ Part Time  Hours/Week __40.00__
☐ Union - Local # _____  ☒ Non-Union

| Has Employee been laid off? ☐ Yes ☒ No ☐ Unknown | Or terminated? ☐ Yes ☒ No ☐ Unknown | If yes, please indicate the date and reason: |
|---|---|---|

| STD Policy / Covg. Number: UNKNOWN | Effective date of employee's STD coverage: | Was STD Insurance issued on the basis of a statement of physical condition? ☐ Yes ☐ No ☒ Unknown |
|---|---|---|

| Percent of Employee's STD contribution: 0.00 % | Employee's contributions were made on: ☐ Pre-Tax Basis  ☐ Post-Tax Basis | Premium Paid Thru Date: |
|---|---|---|

| LTD Policy / Covg. Number: | Effective date of employee's LTD coverage: | Was LTD Insurance issued on the basis of a statement or physical condition? ☐ Yes ☐ No ☐ Unknown |
|---|---|---|

| Percent of Employee's LTD contribution: % | Employee's contributions were made on: ☐ Pre-Tax Basis  ☐ Post-Tax Basis | Premium Paid Thru Date: |
|---|---|---|

## EMPLOYEE WORK LOCATION

| Employer Name: TEMPLE INLAND Address (include Street, City, State & Zip): P.O. BOX 966  MONROEVILLE AL  36461 | Contact Person: Telephone No.: |
|---|---|

## ADDITIONAL EMPLOYERS (If applicable)

| Employer Name: | Title | Contact Person: |
|---|---|---|
| Address (include Street, City, State & Zip): | | Telephone No.: |

| Name of Employee (Last, First, Middle): CLEILAND, CATHY K | Social Security Number: |
|---|---|

## CERTIFICATION

This is to certify the facts as indicated above are true to the best of my knowledge and belief.

Date of signature:

Signature of Employee:

The issuance of this form is not an admission of the existence, nor does it recognize the validity, of any claim and is without prejudice to the company's legal rights in the premises.

612286 (03/2003)    STD

LINA/Cleiland 1055

*Disclosure Authorizio*



CIGNA Gr...nsu...e
Life . Acci...t . Dis...y

Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

**CIGNA**

---

### FRAUD WARNING

**Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. For residents of the following states, please see the reverse side of this form: *Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon or Virginia.***

---

Claimant's Name (Please Print): _____

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome), as well as communicable diseases and genetic testing. If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a) reinsuring companies; b) the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c) fraud or overinsurance detection bureaus; d) anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e) for audit or statistical purposes; f) as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse, I understand that my records may be protected under federal (42 CFR Part 2) and some state laws. To the extent permitted under law, I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative: _____  Date: _____

Relationship,
if other than Claimant: _____  Claimant's Social Security Number: _____

Company Name: _____

612286 (03/2003)   STD

LINA/Cleiland 1056

 

**CIGNA Disability Management Solutions**

**Frequently Asked Questions**
**For Claimaints**

**CIGNA**

## Intake Questions

*What happens after I file my claim?*
After you file your claim, your case manager may contact you by phone to discuss the claim process, or in some cases, contact you by letter. If your disability absence is planned for the future, you will receive a future claim letter acknowledging your anticipated disability and asking you to contact us on your last day of work before your disability begins. You will be asked to sign a release of information for your doctor (which you can download from our website CIGNA.com), so we can obtain your medical reports.
Your employer will be contacted for eligibility information and a description of your job requirements to help us determine if you are eligible for benefits and how long your absence may be. Our goal is to help you return to a productive work environment and to assist you in the process.

*Who contacts my doctor? Do I need to call my doctor?*
During the first three to five business days after we receive your claim, your case manager will attempt to reach your doctor to obtain medical information. You can speed this up by contacting your doctor's office and asking them to send us your medical information.
Your case manager may ask you to contact your doctor's office to help collect this information if we are having difficulty obtaining a timely response.

*What will I receive in the mail from CIGNA, and when?*
You should receive a copy of your claim form and a release of information in a week to ten (10) days. To expedite your claim, CIGNA asks that you make any corrections to your claim form and return it along with the signed release of information form, to your case manager. If you do not receive your claim form in 10 days, you should contact your case manager to obtain another copy.

*How long will it take to make a decision about my claim?*
Once we get the necessary information from your employer and your doctor, we will reach a decision on your claim as soon as possible, generally within 10 days for short-term disabilities and 25 days for long-term disabilities.

*What will delay a decision on my claim?*
A delay in receiving any of the following:
- · Verification of your eligibility for benefits from your employer,
- · A signed release of information from you, or
- · Medical information from your doctor
can delay our decision and consequently delay payment to you.

*Why would my claim be denied?*
Some examples of reasons why your claim may be denied include: if you are not eligible; if you do not meet the definition of disability in your employer's benefits contract; if the condition you have is not covered by your benefits contract; or if your medical information supports a determination that you are able to work.

*What happens if my claim is denied?*
You will receive a letter from your case manager providing the reason(s) for the denial, and in some cases your case manager may contact you by phone to discuss the claim denial. You will receive specific instructions on how to appeal the denial if you wish to do so. Your employer may be notified of your claim denial, but not the reason for the denial, in which case you should contact your manager to schedule your return to work.

LINA/Cleiland 1057

CIGNA Disability Management Solutions

**Frequently Asked Questions**
**For Claimaints**



CIGNA

*What happens if my claim is approved?*
You'll receive an approval letter explaining the provisions of the approval and payment information.  The letter may indicate your expected Return-to-Work date (if one has been set).  Call your case manager if you have questions about your coverage.

*Will you notify my employer about how long I will be off?*
Your employer will be notified of your claim approval and your anticipated Return-to-Work date.  While we will provide approval and anticipated RTW dates, no medical or personal information will be shared with your employer unless we have your authorization to do so.

*What can I expect while I am not working?*
Our goal is to help you get well and return to work as quickly and safely as possible.  While you are not working, CIGNA will call you regularly to discuss your progress.  As appropriate to your situation, CIGNA will work with you, your employer, and your physician to explore job accommodation opportunities that could help speed your return to work.  Your employer may also contact you periodically to check on your progress and to offer support.

*What happens if I can not return-to-work by the estimated return-to-work date?*
If something occurs that prolongs the disability you should call your case manager as soon as possible to discuss your situation. Your case manager will contact your physician for an update on your condition and may need your assistance to obtain medical information.  In some cases we may send you a disability claim form for your doctor to complete. You should contact your employer to keep them informed of your progress.

## Payment Questions

*How much money will I get paid? How often will I get paid?*
This is different for every employer's benefit plan. Disability benefits may be a percentage of your weekly or monthly income, or a set amount. Your case manager or Human Resources representative can tell you what benefits you are entitled to receive, and when your benefits start.  Depending on your employer's benefit policy your checks may be issued on a weekly, bi-weekly, or monthly basis. Checks are generally issued at the end of each payment period.

For example, if your benefits are due to begin on 7/15/02 and are paid on a weekly basis, you should receive your first check for the period of 7/15/02-7/21/02 on or around 7/21/02.  If your benefits are paid on a monthly basis, you should expect your first check for the period of 7/15/02-8/14/02 on or around 8/14/02.  Benefits will be issued in a similar manner for the duration of your claim. You can also check your employee benefits booklet or summary plan description to confirm your specific benefit amount, as well as any other income that would reduce your benefit amount.

*How long will my benefits last?*
It depends on your employer's benefit plan, on continuing evidence that your condition prohibits you from being able to work, and on evidence that you remain entitled to benefits.  If your claim is approved, and if CIGNA issues your benefits, the approval letter will address the amount and duration of your benefits.  If your employer issues your benefits, you'll be advised of the approval duration in the letter, however, you should also contact your local human resources department for the amount of your benefits.

LINA/Cleiland 1058

 **CIGNA Disability Management Solutions**

**Frequently Asked Questions
For Claimaints**

 **CIGNA**

### Can I have direct deposit?
Yes, for long-term disability (not short-term disability) benefits, as long as your bank has the capability to participate in direct deposit programs. If you wish to have your benefits directly deposited into your checking or savings account, you can contact your case manager and make this request. A form will then be mailed to you for you to complete, and return to our office. Once received, your benefit payment method will be updated. If your employer issues benefits to you directly, then you would need to contact your local Human Resources representative for this option. In some cases, we may not be able to accommodate your request (i.e., if you are to return to work in a few days, this option may not be feasible).

### Is my benefit taxable?
Your benefit or a portion of it may be taxable. If your employer pays the premiums for your disability benefits it may be taxable to you. If you pay the premiums on a post-tax basis it may not be not taxed. If you and your employer share the cost of the premiums, the portion of the premium that is paid on a pre-tax basis may be taxable to you. Contact your Human Resources department and your tax advisor for more information about the tax effects of your specific benefit plan.

### What happens if I receive other benefits?
If you are receiving, or are eligible to receive other benefits as a result of your disability, such as Workers' Compensation, statutory disability benefits, Social Security benefits, etc., this will affect your benefits from CIGNA. Your employer's benefit contract will indicate if any other benefits are a reduction to your disability benefits, and at what rate that reduction may be. Your case manager will discuss this issue with you once your claim is submitted. If you are receiving other benefits, you will need to inform your case manager accordingly.

### Do I need to apply for Social Security? How do I do that?
If you become eligible for LTD, most employer's contracts require that you apply for this benefit. Social Security benefits generally can become payable beginning with your 6th month of disability.
Your LTD case manager will notify you, and can inform you how to contact the Social Security Administration to apply for this benefit. Or you can find your local Social Security Administration number in your telephone book. There are many other benefits associated with receiving Social Security benefits if you are truly not able to work. Your case manager can discuss these benefits with you.

LINA/Cleiland 1059

# ROUND TABLE SUMMARY

II: _____ or Active Case Mgmt: _BM_

Cx Name: _Cathy Cleiland_ _____ SS#: _,_____ _.

Policy Name: _____ Incur Date: _5-1-01_

Age: _43_ _____ # Mos./Paid: _____ Chg in Def date: _____

Dx: _Elemental Disc_ _____ Occ: _Resource Mgt._ _____

## Issues:

_had surgery_
_poor W.C._
_Overpayment issues_

## Action Plan:

_1. Advise Employer (HR)_
_2. Not for LTD Transfer_

Date _6-13-01_

Team Leader _Grace Barksdale_
Senior Case Manager
Case Manager
Med / Voc / Econ. Consult _B Bennicasa, ec_

LINA/Cleiland 1060



STD/LTD

TEMPLE INLAND
SS# SH030035
CLEILAND, CATHY K.

# *ROUND TABLE SUMMARY*   II: _____ or Active Case Mgmt: *BM*

Cx Name: *Cathy Cleiland* _____   SS#: _____

Policy Name: _____   Incur Date: *5-1-01*

Age: *43*   # Mos./Paid: _____   Chg in Def date: _____

Dx: *Herniated Disc* _____   Occ: *Resource Mgt.*

## Issues:

*Bad surgery*
*Poor W.C.*
*Overpayment issues*

## Action Plan:

*1. Advise Employer (HR)*
*2. Not for LTD transfer*

**Date** *6-13-01*

Team Leader _____
Senior Case Manager *Vince Barksdale*
Case Manager _____
Med / Voc / Econ. Consult *J Bennecasa ca*

LINA/Cleiland 1062

| EE: CLEILAND, CATHY | SSN: | - | DOI: 05/01/2001 | ER: TEMPLE INLAND(DIS) | ID: 578593343514414 |
|---|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | | Other: |

### View the Details for an Incident Diary

(first record)    Add a New Incident Diary    

| Date Due | Responsible | Subject | Detail | Author | Source |
|---|---|---|---|---|---|
| 05/24/2001 Edit | MERRILL, BRIAN | Correspondence | Review Response | HILL, CELESTE | ICARE |

| Responsible: MERRILL, BRIAN | Status: Not Read | Priority: High |
|---|---|---|
| Re-Assigned: N | Re-Scheduled: N | Return Receipt: None |
| Created At: 05/24/2001 04:06:42 PM | Updated At: 05/24/2001 04:06:42 PM | Updated By: HILL, CELESTE |
| Due Time: | Complete Date: | Complete Time: |

### Diary Text

| CLAIM FORM AND SIGNED AUTH |
|---|

LINA/Cleiland 1063

*Policy / Coverage Nos.* UNKNOWN
*Integrated STD/LTD*
*Disability Proof of Loss*    *Brian M*

CIGNA Group Insurance
Life • Accident • Disability
Administered by:
Life Insurance Company of North America
Connecticut General Life Insurance Company
Life Insurance Company of New York
CIGNA Claim Office
1(800) 36-CIGNA , 1(800) 362-4462


CIGNA

Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purposes of misleading, information concerning any material fact, commits a fraudulent insurance act. For residents of the following states, please see enclosure: Colorado, Florida, Maryland, New Jersey, New York, Oregon, Pennsylvania, or Virginia.

| INSTRUCTIONS FOR FILING A CLAIM |
|---|
| This form is a single application for Short Term and Long Term Disability Benefits and contains the information reported to our service center. |
| To The Employee: A. Please review this information carefully.<br>B. Make any changes you feel are necessary.<br>C. Sign the section marked Employee Certification and the Disclosure Authorization.<br>D. Return the signed forms to our office. |
| If these instructions are not followed, your claim may be subject to a delay or return. |

| EMPLOYEE INFORMATION | | | |
|---|---|---|---|
| Name of Employee (Last, First, Middle):<br>CLEILAND, CATHY  K | Date of Birth: | Social Security Number: | Sex:<br>○Male ●Female ○Unknown |
| Address (Street, Apt): | | | |
| City:<br>JACKSON | State:<br>AL | Zip Code:<br>36545 | Telephone No.: |
| Please describe your condition:<br>Herniated disc in back, causing pain and discomfort, requiring surgery. | | | |

| PLEASE COMPLETE SECTIONS A, B OR C - AND THE REMAINDER OF THE APPLICATION | | | |
|---|---|---|---|
| **A** Is this an Injury?<br>●Yes ○No ○Unknown | Date of Injury:<br>4-24-97 | Time of Injury:<br>approx 5:00 p.m | Is this work related?<br>●Yes ○No ○Unknown  Former Employer |
| Describe the cause of Injury: | | | |
| **B** Is this an Illness?<br>●Yes ○No ○Unknown | Date of Illness:<br>05/01/2001 | | Is this work related?<br>○Yes ●No ○Unknown |
| Describe the cause of Illness:<br>Unknown | | | |
| **C** Is this an Pregnancy?<br>○Yes ●No ○Unknown | Delivery/Due Date: | Delivery Method: | Were there complications?<br>○Yes ○No ○Unknown |
| Describe the Complications: | | | |

| Are you currently losing time from work?<br>●Yes ○No ○Unknown | If yes, what specifically prevents you from working?<br>Recovering from surgery | |
|---|---|---|
| Last Day Worked:<br>04/30/2001  # hours worked: 8.00 | Date first unable to work:<br>05/01/2001 | Date You Plan to Return to Work<br>unknown |
| Have you had the same or similar condition in the past? ●Yes ○No ○Unknown | If yes, when did it occur (dates)?<br>Surgery on C5 C6  11/97 | Please describe: |
| Please list any states in which you may be liable for filing tax returns:<br>AL | | |
| Are you receiving any other income or benefits? If so, please complete the following. | | |

| Benefit Type | Gross Weekly Amount | Date Began | Paid thru Date |
|---|---|---|---|
| NONE | | | |
| | | | |
| | | | |

LINA/Cleiland 1064

Please list any hospitals, clinics or physicians that treated you for your condition:

| Name & Address | Telephone No. | Specialty | First Treatment Date | Last Treatment Date |
|---|---|---|---|---|
| Jackson Hospital<br>1725 Pine Street<br>MONTGOMERY, AL 36106 | (334)293-8000 | Other | | |
| John Hackman<br>1722 Pine Street<br>MONTGOMERY, AL 36106 | (334)834-1663 | Surgery,<br>Neurological | | |
| | | | | |
| | | | | |

## EMPLOYMENT INFORMATION

| Occupation:<br>Human Resources Manager | Date Hired:<br>08/24/1998 | Basic Earnings:<br>$48,500.00 | Frequency:<br>ANNUAL | Date of last change in earnings:<br>08/01/1998 |
|---|---|---|---|---|

Please provide a brief description of daily job duties:
Manage Human Reources

Please check the appropriate items regarding this employee:

☒ Exempt ☐ Non-Exempt ☒ Management ☒ Non-Management
☐ Supervisory ☒ Non-Supervisory ☒ Salaried ☐ Hourly
☒ Full Time ☐ Part Time Hours/Week  40.00
☐ Union - Local # ☒ Non-Union

| Has Employee been laid off?<br>○ Yes ◉ No ○ Unknown | Or terminated?<br>○ Yes ◉ No ○ Unknown | If yes, please indicate the date and reason: |
|---|---|---|

STD Policy / Covg. Number:
UNKNOWN

Effective date of employee's STD coverage:
8-24-98

Was STD Insurance issued on the basis of a statement of physical condition?
○ Yes ◉ No ○ Unknown

Percent of Employee's STD contribution:
0.00 %

Employee's contributions were made on:
○ Pre-Tax Basis ○ Post-Tax Basis

Premium Paid Thru Date:

LTD Policy / Covg. Number:

Effective date of employee's LTD coverage:

Was LTD Insurance issued on the basis of a statement or physical condition?
○ Yes ○ No ○ Unknown

Percent of Employee's LTD contribution:
%

Employee's contributions were made on:
○ Pre-Tax Basis ○ Post-Tax Basis

Premium Paid Thru Date:

## EMPLOYEE WORK LOCATION

Employer Name:
TEMPLE INLAND

Address (include Street, City, State & Zip):
PO BOx 966 MONROEVILLE AL 36461

Contact Person:

Telephone No.:

## ADDITIONAL EMPLOYERS (if applicable)

Employer Name:

Title

Contact Person:

Address (include Street, City, State & Zip):

Telephone No.:

Name of Employee (Last, First, Middle):
CLEILAND, CATHY K

Social Security Number:

## CERTIFICATION

This is to certify the facts as indicated above are true to the best of my knowledge and belief.

Signature of Employee: *Cathy L. Cleiland*

Date of signature:
5-21-01

The issuance of this form is not an admission of the existence, nor does it recognize the validity, of any claim and is without prejudice to the company's legal rights in the premises.

612286

Page 2 of 2

LINA/Cleiland 1065



*Disclosure Authorization*



**CIGNA Group Insurance**
Life • Accident • Disability

**CIGNA**

Insured's Name (Please Print)  CLEILAND, CATHY K

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, or pharmacy to give the Insurance Company named below (Company) or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: I) cause, treatment, diagnoses, prognoses, consultations, examinations, tests or prescriptions of advice of my physical or mental condition of information concerning me which may be needed to determine policy claim benefits with respect to Insured. This may also include (but is not limited to) information concerning: mental illness, psychiatric, alcohol or drug use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome.)

I AUTHORIZE: any financial institution, accountant, tax preparer, insurer or reinsurance consumer reporting agency, insurance support organization, Insured's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim history, work history, and work related activities.

I AUTHORIZE: the Company to contact my employer to investigate and evaluate return to work opportunities. I understand that in doing so the Company may release medical information and other information related to my physical limitations to my employer.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used by the Company to determine eligibility for claim benefits and any amounts payable with respect to the Claimant. This authorization shall apply to all records, information and events that occur over the duration of the claim. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I may revoke this authorization at any time for information not then obtained by writing to the Company. The information obtained will not be released to anyone else EXCEPT: a) reinsuring companies; b) the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c) fraud or overinsurance detection bureaus; d) anyone performing business, medical or legal functions with respect to the claim; e) for audit or statistical purposes; f) as may be required by law; g) as I may further authorize.

Claimant's Signature  *Cathy J. Cleiland*                    Date:  5-21-01
(Claimant or Claimant's authorized representative)

Relationship, if other than Claimant  _____

Claimant's Social Security Number  _____

Insurance Company Name  Life Insurance Company of North America

612286

LINA/Cleiland 1066

| EE: CLEILAND, CATHY | SSN: | DOI: 05/01/2001 | ER: TEMPLE INLAND(DIS) | ID: 578593343514414 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

(first record)    Add a New Incident Note    (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 05/11/2001 11:23:07 AM Edit | Telephone Call | Narrative | LAMPLEY, MARIA | ICARE |

### Note Text

MADE INITIAL CALL TO CX TO VERIFY INFO SUBMITTED IN CLAIM SUMMARY. CX WAS AVAILABLE & ALL INFO WAS VERIFIED. ER CONTACT IS SUPERVISOR J. PRIDGEN. EUGENE JONES WORKS @ A DIFFERENT PLANT.

CX NAME & SS #: Cleiland, Cathy K.

# VERIFICATION OF CLAIM SUMMARY FOR TEMPLE INLAND

| INFORMATION | CORRECT | CHANGE |
|---|---|---|
| **Employee Information** | | |
| SSN | ✓ | |
| Name | ✓ | |
| DOB | ✓ | |
| Age | ✓ | |
| Gender | ✓ | |
| Address | ✓ | |
| City | ✓ | |
| State | ✓ | |
| Zip | ✓ | |
| Telephone | ✓ | |
| Office Telephone | ✓ | |
| **Employer Information** | | |
| Employer Name | ✓ | |
| Location Name | ✓ | |
| Address | ✓ | |
| City | ✓ | |
| State | ✓ | |
| Zip | ✓ | |
| Contact/s Name | Incorrect | Joe Pridgen |
| Type | ✓ | |
| Telephone | ✓ | |
| LDW | ✓ | |
| LDW Paid in Full | ✓ | |
| Employee RTW | ✓ | |
| Expected RTW | | appox. 5 weeks |
| **Providers** | | |
| Name/s | ✓ | |
| Type | ✓ | |
| Address | ✓ | |
| City | ✓ | |
| State | ✓ | |
| Zip | ✓ | |
| Telephone | ✓ | |
| Fax | ✓ | |
| Treatment (Date/Description) | ✓ | |
| **Other** | | |
| | | |
| | | |
| | | |
| | | |
| | | |

LINA/Cleiland 1068

*2*

**Compliance Checklist**

Claimant Name: CLEILAND, CATHY K.
SS #: _____
CM Name: *CA.* BRIAN MERRILL

Date Received:    05/08/01

Acknowledgement Must Be Sent By:    **05/17/01**

Call to claimant must be made by:    **05/14/01**

Alert to Other Benefits as required.

| 1st Delay | Date Must be Sent |
|-----------|-------------------|
|           | 06/06/01          |

| If 1st Delay Sent on: | 2nd Delay Must be Sent By: |
|-----------------------|----------------------------|
| 05/22/01 | 06/20/01 |
| 05/23/01 | 06/21/01 |
| 05/24/01 | 06/22/01 |
| 05/25/01 | 06/23/01 |
| 05/26/01 | 06/24/01 |
| 05/27/01 | 06/25/01 |
| 05/28/01 | 06/26/01 |
| 05/29/01 | 06/27/01 |
| 05/30/01 | 06/28/01 |
| 05/31/01 | 06/29/01 |
| 06/01/01 | 06/30/01 |
| 06/02/01 | 07/01/01 |
| 06/03/01 | 07/02/01 |
| 06/04/01 | 07/03/01 |
| 06/05/01 | 07/04/01 |
| 06/06/01 | 07/05/01 |

| If 2nd Delay Sent on: | 3rd Delay Must Be Sent By: |
|-----------------------|----------------------------|
| 06/05/01 | 07/04/01 |
| 06/06/01 | 07/05/01 |
| 06/07/01 | 07/06/01 |
| 06/08/01 | 07/07/01 |
| 06/09/01 | 07/08/01 |
| 06/10/01 | 07/09/01 |
| 06/11/01 | 07/10/01 |
| 06/12/01 | 07/11/01 |
| 06/13/01 | 07/12/01 |
| 06/14/01 | 07/13/01 |
| 06/15/01 | 07/14/01 |
| 06/16/01 | 07/15/01 |
| 06/17/01 | 07/16/01 |
| 06/18/01 | 07/17/01 |
| 06/19/01 | 07/18/01 |
| 06/20/01 | 07/19/01 |
| 06/21/01 | 07/20/01 |
| 06/22/01 | 07/21/01 |
| 06/23/01 | 07/22/01 |
| 06/24/01 | 07/23/01 |
| 06/25/01 | 07/24/01 |
| 06/26/01 | 07/25/01 |
| 06/27/01 | 07/26/01 |
| 06/28/01 | 07/27/01 |
| 06/29/01 | 07/28/01 |
| 06/30/01 | 07/29/01 |
| 07/01/01 | 07/30/01 |
| 07/02/01 | 07/31/01 |
| 07/03/01 | 08/01/01 |
| 07/04/01 | 08/02/01 |
| 07/05/01 | 08/03/01 |

Date Sent: _____
In Compliance ?: _____



# STD/LTD SHARED CASE
# IDENTIFICATION FORM

INITIAL REFERRAL_____                    FINAL REFERRAL_____

## CLAIMANTS INFORMATION

| | |
|---|---|
| CXS NAME & SS#: | |
| AGE: | |
| OCCUPATION: | |
| DIAGNOSIS: | |
| SURGERY PERFORMED: | |
| LDW: | |
| INCUR DATE: | |
| STD BENEFITS PAID FROM & THRU: | |
| STD MAX DATE | |

## POLICYHOLDER INFORMATION

| | |
|---|---|
| PH NAME: | |
| PH ADDRESS: | |
| STD POLICY #: | |
| LTD POLICY #: | |
| CONTACT PERSON: | |
| CONTACTS PHONE#: | |

## BRIEF SYNOPSIS

| |
|---|
| |
| |
| |
| |
| |
| |
| |

| | |
|---|---|
| STD CMS NAME & EXT: | |
| REFERRAL DATE: | |

LINA/Cleiland 1070

Page 1 of 1

| EE: CLEILAND, CATHY | SSN: | DOI: 05/01/2001 | ER: TEMPLE INLAND(DIS) | ID: 578593343514414 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

    Add a New Incident Note    (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 07/03/2001 11:06:40 AM Edit | Account Management | Narrative | MERRILL, BRIAN | ICARE |

### ICARE Note Text

**Decision:**
Based on the calls and the PofL from the claimant, the claimant is indicating the dis is the result of a WR incident with her prior ER. Since the claimant indicated the claim is work related, based on policy, benefits for the claimant will be denied.

**Action:**
Sending the denial letter

    Add a New Incident Note    (last record)

**Brian Merrill**
Case Manager
Integrated Care



**CIGNA**

July 3, 2001

Routing 1115
P.O. 2050
Tarrytown NY 10591
Telephone 1-800-376-0725
Facsimile 1-800-377-4286

BUILDING PRODUCTS-MONROEVILLE
ATTEN: PEGGY SIGLER
P.O. BOX 966
MONROEVILLE, AL 36461

CATY CLEILAND

JACKSON, AL 36545

Re:  Claimant    :    Cathy Cleiland
     SS#         :
     Employer    :    Temple Inland
     Policy      :    **SHD 0020035**
     Company     :    Life Insurance Company of North America

Dear: Ms. Cleiland;

We have completed the process of reviewing your claim for Short Term Disability Benefits.

According to the information in our claim file, your disability appears to be work related.   According to the terms of your employers contract there is no coverage for: *any injury or illness for which the employee is entitled to benefits from Workers Compensation or occupational disease law; or any injury of illness that is work related.*

Therefore, no benefits are available at this time.

Please contact your employer for procedures in filing a Workers' Compensation claim.  If the workers compensation carrier denies your claim, please forward a copy of the denial to us for review.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy.  This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Life Insurance Company of North Americ
Connecticut General Life Insurance Com;
Insurance Company of North America
INA Life Insurance Company of New Yorl
Subsidiaries Of CIGNA Corporation

LINA/Cleiland 1072



**Page 2**

You may request a review of this denial by writing to the Life Insurance Company of North America Representative signing the letter. The written request for a review must be sent within 60 days of receipt of this letter and state the reason why you feel your claim should not have been denied. Include any documentation (e.g. vocational information, medical testing) that you feel supports your claim. Under normal circumstances, you will be notified of the final decision within 60 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the final decision no later than 120 days after your request is received.

We realize there may be factors of which we are unaware, and if you feel this determination is incorrect, we shall be pleased to review any clinical evidence such as office notes, test results or lab reports you or your physician may wish to submit and, if the information warrants, alter our decision. If you will be submitting additional medical information, we respectfully request that you have the attending most familiar with your condition provide us with a medical narrative which objectively discusses the basis of the physician=s opinion

This claim determination is based on the information that you and your health care providers have submitted. If you do not agree with the reasons for your denial, you may appeal the decision to:

*CIGNA Group Insurance*
*P.O. Box 2052*
*Tarrytown, NY 10591*

If you have any questions regarding your disability, please do not hesitate to contact us at the toll-free number listed below.

Sincerely,


Brian Merrill
Case Manager

 

| EE: CLEILAND, CATHY | SSN: | DOI: 05/01/2001 | ER: TEMPLE INLAND(DIS) | ID: 578593343514414 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

**View the Details for an Incident Note**

 [Add a New Incident Note](#) 

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 05/15/2001 08:02:08 AM Edit | Account Management | Narrative | MERRILL, BRIAN | ICARE |

**Note Text**

CASE PLAN

AGE: 43
SEX: Female
DX: Herniated disc
Surgery: Y (type and date not indicated)
Hospitalized:

Occupation: Human Resource Manager
DOH: 8/24/98
LDW: 4/30/01
Incur date: 5/1/01
Benefits begin date: 5/1/01
Bens paid from and Thru:
RTW date:
Elim: 0/0
Max date: 26 weeks
Wkly earnings: Sal contin based on years
Wkly Benefit:

Claim Synopsis: EE is a 43 yr old female Human Resource Manager for Temple Inland. EE LDW was 4/30/01. EE indicated the first day off work was 5/1/01. EE stated the AP Dx the EE with a herniated disc that is requiring Sx.

Action:
Call the AP for medical confirmation.

LINA/Cleiland 1074



Page 1 of 1

| EE: CLEILAND, CATHY | SSN: · - | DOI: 05/01/2001 | ER: TEMPLE INLAND(DIS) | ID: 578593343514414 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

    Add a New Incident Note

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 05/15/2001 12:55:52 PM Edit | Account Management | Narrative | MERRILL, BRIAN | ICARE |

### Note Text

Called AP:
John Hackman
Spoke to Brenda

EE had Sx on 5/2/01. Interiour disckectomy and interbody fusoin C-6-7 with bone graft at the illiac crest.

Fax attention:
334-834-1936

LINA/Cleiland 1075



| EE: CLEILAND, CATHY | SSN: | DOI: 05/01/2001 | ER: TEMPLE INLAND(DIS) | ID: 578593343514414 |
|---|---|---|---|---|
| WCC: | LTD: | STD: SHD 0020035 | ICMS: | Other: |

### View the Details for an Incident Note

    Add a New Incident Note    (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 05/15/2001 02:35:17 PM Edit | Account Management | Narrative | MERRILL, BRIAN | ICARE |

### Note Text

Decision:
EE is a 43 yr old female Human Resource Manager for Temple Inland. Dis for the EE will be 5/1/01. EE had Sx on 5/2/01. Sx for the claimant was a
EE had Sx on 5/2/01. Interioir disckectomy and interbody fusoin C-6-7 with bone graft at the illiac crest. Based on the Sx and comps, bens for the claimant will be approved thru 6/17/01.

LINA/Cleiland 1076

*Policy / Coverage Nos.* U KNOWN
*Integrated STD/LTD*
*Disability Proof of Loss*

CIGNA Group Insurance
Life • Accide Disability
Administered
Life Insurance Company of North America
Connecticut General Life Insurance Company
Life Insurance Company of New York
CIGNA Claim Office
1(800) 36-CIGNA , 1(800) 362-4462



CIGNA

Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purposes of misleading, information concerning any material fact, commits a fraudulent insurance act. For residents of the following states, please see enclosure: Colorado, Florida, Maryland, New Jersey, New York, Oregon, Pennsylvania, or Virginia.

| INSTRUCTIONS FOR FILING A CLAIM |
|---|

This form is a single application for Short Term and Long Term Disability Benefits and contains the information reported to our service center.

To The Employee: A. Please review this information carefully.
  B. Make any changes you feel are necessary.
  C. Sign the section marked Employee Certification and the Disclosure Authorization.
  D. Return the signed forms to our office.

If these instructions are not followed, your claim may be subject to a delay or return.

| EMPLOYEE INFORMATION | | | |
|---|---|---|---|
| Name of Employee (Last, First, Middle):<br>CLEILAND, CATHY K | Date of Birth: | Social Security Number: | Sex:<br>○Male ⦿Female ○Unknown |
| Address (Street, Apt): | | | |
| City:<br>JACKSON | State:<br>AL | Zip Code:<br>36545 | Telephone No.: |
| Please describe your condition:<br>Herniated disc in back, causing pain and discomfort, requiring surgery. | | | |

| PLEASE COMPLETE SECTIONS A, B OR C - AND THE REMAINDER OF THE APPLICATION | | | |
|---|---|---|---|
| **A** Is this an Injury?<br>○Yes ⦿No ○Unknown | Date of Injury: | Time of Injury: | Is this work related?<br>○Yes ○No ○Unknown |
| Describe the cause of Injury: | | | |
| **B** Is this an Illness?<br>⦿Yes ○No ○Unknown | Date of Illness:<br>05/01/2001 | | Is this work related?<br>○Yes ⦿No ○Unknown |
| Describe the cause of Illness:<br>Unknown | | | |
| **C** Is this a Pregnancy?<br>○Yes ⦿No ○Unknown | Delivery/Due Date: | Delivery Method: | Were there complications?<br>○Yes ○No ○Unknown |
| Describe the Complications: | | | |

| Are you currently losing time from work?<br>⦿Yes ○No ○Unknown | If yes, what specifically prevents you from working?<br>Recovering from surgery | |
|---|---|---|
| Last Day Worked:<br>04/30/2001   # hours worked: 8.00 | Date first unable to work:<br>05/01/2001 | Date You Plan to Return to Work |
| Have you had the same or similar condition in the past? ○Yes ⦿No ○Unknown | If yes, when did it occur (dates)? | Please describe: |

Please list any states in which you may be liable for filing tax returns:
AL

Are you receiving any other income or benefits? If so, please complete the following.

| Benefit Type | Gross Weekly Amount | Date Began | Paid thru Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

LINA/Cleiland 1077

Please list any hospitals, clinics or physicians that treated you for your condition:

| Name & Address | Telephone No. | Specialty | First Treatment Date | Last Treatment Date |
|---|---|---|---|---|
| Jackson Hospital<br>1725 Pine Street<br>MONTGOMERY, AL 36106 | (334)293-8000 | Other | | |
| John Hackman<br>1722 Pine Street<br>MONTGOMERY, AL 36106 | (334)834-1663 | Surgery,<br>Neurological | | |
| | | | | |

## EMPLOYMENT INFORMATION

| Occupation:<br>Human Resources Manager | Date Hired:<br>08/24/1998 | Basic Earnings:<br>$48,500.00 | Frequency:<br>ANNUAL | Date of last change in earnings:<br>08/01/1998 |
|---|---|---|---|---|

Please provide a brief description of daily job duties:
Manage Human Reources

Please check the appropriate items regarding this employee:

☐ Exempt   ☒ Non-Exempt   ☐ Management   ☒ Non-Management
☐ Supervisory   ☒ Non-Supervisory   ☒ Salaried   ☐ Hourly
☒ Full Time   ☐ Part Time   Hours/Week  40.00
☐ Union - Local # _____   ☒ Non-Union

Has Employee been laid off?   ☐ Yes  ☒ No  ☐ Unknown
Or terminated?   ☐ Yes  ☒ No  ☐ Unknown
If yes, please indicate the date and reason:

STD Policy / Covg. Number:
UNKNOWN

Effective date of employee's STD coverage:

Was STD Insurance issued on the basis of a statement of physical condition?
☐ Yes  ☐ No  ☒ Unknown

Percent of Employee's STD contribution:
0.00 %

Employee's contributions were made on:
☐ Pre-Tax Basis   ☐ Post-Tax Basis

Premium Paid Thru Date:

LTD Policy / Covg. Number:

Effective date of employee's LTD coverage:

Was LTD Insurance issued on the basis of a statement or physical condition?
☐ Yes  ☐ No  ☐ Unknown

Percent of Employee's LTD contribution:
%

Employee's contributions were made on:
☐ Pre-Tax Basis   ☐ Post-Tax Basis

Premium Paid Thru Date:

## EMPLOYEE WORK LOCATION

Employer Name:
TEMPLE INLAND

Address (include Street, City, State & Zip):
PO BOx 966  MONROEVILLE AL  36461

Contact Person:

Telephone No.:

## ADDITIONAL EMPLOYERS (if applicable)

Employer Name:

Title

Contact Person:

Address (include Street, City, State & Zip):

Telephone No.:

Name of Employee (Last, First, Middle):
CLEILAND, CATHY K

Social Security Number:

## CERTIFICATION

This is to certify the facts as indicated above are true to the best of my knowledge and belief.

Date of signature:

Signature of Employee:

The issuance of this form is not an admission of the existence, nor does it recognize the validity, of any claim and is without prejudice to the company's legal rights in the premises.

612286

Page 2 of 2

LINA/Cleiland 1078

Master Summary Report                                                    Page 1 of 7

| EE: CLEILAND, CATHY | SSN: | DOI: 05/01/2001 | ER: TEMPLE INLAND(DIS) | ID: 578593343514414 |
|---|---|---|---|---|
| WCC: | LTD: | STD: | ICMS: | Other: |



**Intake Number:** 578593343514414

**Type of Incident:** Illness

**Employer Name:** TEMPLE INLAND

**DOI:** 05/01/2001

**First Day Off:** 05/01/2001

**INTAKE CLAIM TYPE :** Short Term Disability

**LOB:** DIS

**HMO Code:**

## Employee Information

SSN :

Employee ID :

Work Permit No : 00(

Name: CLEILAND, CATHY K

DOB:

Age: 43

Gender: FEMALE

Marital Status: MARRIED

Preferred Language: ENGLISH

Tax State: AL

### Addresses

Residence :

Addr1:

Addr2:

City: JACKSON

County:

State: AL     Zip: 36545     Country: US

Work Location :

Addr1:

Addr2:

City: MONROEVILLE

County: MONROE

State: AL     Zip: 36461     Country: US

### Phone

LINA/Cleiland 1079

Master Summary Report  Page 2 of 7

| Type | Number |
|------|--------|
| Residence - Telephone | |
| Office - Telephone | |

## Email Addresses

**Address1:** ccleil@aol.com

## Condition

**Description:** Herniated disc in back, causing pain and discomfort, requiring surgery.
**Incident Type:** Illness
**Diagnosis(ICD9):** 724 BACK DISORDER NEC & NOS
**Condition Fatal?** N          **Date of Death:**

## Illness

**Is Illness Work Related?** N                    **Date Symptoms First Appeared:** (
**Are You Claiming WC?** N                        **Prior Related Illness?** N
**Jurisdiction:** TEXAS                           **Other Carrier WC Claim Number:**
**Dispute WC?**
**Why:**

**Claimant Location**
**Symptoms First Appeared:** Home
**Place Description:**
**Address1:** 401 FOREST AVE
**Address2:**
**City:** JACKSON
**State:** AL                      **Zip:** 36545     **Country:** US

**Illness Specifics**
**Describe Cause of Illness:** Unknown
**Cause of Illness:** Illness – Non Occupational     **Other Medical Conditions:** N
**Describe:**

## Medical

LINA/Cleiland 1080

**Receiving or Scheduled Treatment:** Y
**Hospitalized:** Y          **Date Admitted:** 05/02/2001
                            **Date Discharged:** 05/03/2001
**Surgery:** Y              **Date Performed:** 05/02/2001
**Verbal Auth:**            **Restrictions:**          **Restriction Description:**

## Medical Instruction

## Providers

---

**Name:**                   **Type:** Hospital         **MedReturns:** N
**Facility/Group:** Jackson Hospital    **TIN:**        **Specialty:** Other

**Business:**               **Addr1:** 1725 Pine Street
                            **Addr2:**
                            **City:** MONTGOMERY
                            **County:** MONTGOMERY
                            **State:** AL    **Zip:** 36106    **Country:** US
**Phone:**
Office - Telephone          334.293.8000

**Treatment(Date/Description):**

**TreatmentNotes:**

**Name:** John Hackman      **Type:** Specialist       **MedReturns:** N
**Facility/Group:**         **TIN:**                   **Specialty:** Surgery, Neurolog

**Business:**               **Addr1:** 1722 Pine Street
                            **Addr2:** Suite 1001
                            **City:** MONTGOMERY
                            **County:** MONTGOMERY
                            **State:** AL    **Zip:** 36106    **Country:** US
**Phone:**
Office - Telephone          334.834.1663
Office – Fax Machine        334.834.1936

**Treatment(Date/Description):**

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp          05/10/2001

LINA/Cleiland 1081

01/01/1901

**TreatmentNotes:**

## Employer Information

**Employer Name:** TEMPLE INLAND                    **Company Number:** 000000552
**Eligibility Loc ID Number:** 6045                 **Eligibilty Client Loc Code:** 10206
**Location ID Number:** 000006045                   **Client Location Code:** 10206
**Location Name:** BLDG. PRODUCTS - MONROEVILLE 10206
**Address1:** P. O. DRAWER N
**Address2:**
**City:** DIBOLL
**County:** ANGELINA
**State:** TX      **Zip:** 75941      **Country:** US

### Contacts

**Name:** EUGENE JONES              **Type:** X
**Business :**                      **Addr1:** P.O. BOX 1551
                                    **Addr2:**
                                    **City:** ROME
                                    **County:** FLOYD
                                    **State:** GA    **Zip:** 30162    **Country:** US
**Phone:**
Office - Telephone                  706.236.5529

**Name:** MANAGER JOE PRIDGEN       **Type:** Reported To
**Phone:**
Office - Telephone                  334.575.4876

### Intake Selected Policy Coverage Information

### Eligility Enrollment Information

* **NO Eligibility Enrollment Data**

## Initial Caller Information

Master Summary Report  Page 5 of 7

Received Date: 05/08/2001 | Received Time: 03:52:52 PM | Source: Inbou
Caller Name: CATHY K CLEILAND | Phone:
Role: Employee | Reason for Call: Intake

## Employment Information

Hire Date: 08/24/1998 | Emp. Status: ACTIVE | Effective Date: 0
Union Indicator: N | Union Local #: | Union Name:
Organization Code: FP | Organization Name: FOREST PRODUCTS
Employer Name: TEMPLE INLAND | Present Position Start Date: 08/24/1998
Nature of Business: Manufacturing | Department Name: Human Resources
Job Title: Human Resources Manager | Occupation Class: Officials and Managers
Description of Job Duties: Manage Human Reources

## Wages and Pay Data

Full Time: Y | Amount: $48,500.00 | Earnings Mode: Al
Bonus Eligibility Indicator: N | Date of Last Earnings Change: 08/01/1998 | Salary Mode: ANN

| Compensation List Types |
| --- |
| Salary |

| Any other income or benefits | | |
| --- | --- | --- |
| Offset Code | Weekly Amt | Start |

| Regular Weekly Work Schedule (Hours) | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Shift | Shift Start Time | Shift End Time | Mon | Tue | Wed | Thu | Fri | Sat | Sun |
| Day | 07:30:00 AM | 04:30:00 PM | x | x | x | x | x | | |

## Return to Work

Lost Time Indicator: Y | Last Date Worked: 04/30/2001 | LDW Paid in Full: Y
Employee Returned to Work? N | Expected Return Date: | # of Hrs Wkd Last Da
What specifically prevents work: Recovering from surgery

LINA/Cleiland 1083

| Period of Lost Time: | | | | |
|---|---|---|---|---|
| First Day Off | RTW Date | Duty Type | Job | RTW Ho |
| 05/01/2001 | | | | |

**RTW Notes:**

## Notes

RADAVI                                           05/08/2001

I changed work address. RTW aprox 6 weeks.


RADAVI                                           05/08/2001

EE is Salary. EE is the HR contact. No policy # on JQ.


## Employer Confirmation Information

| Data Element | Value | Confirmation M |
|---|---|---|
| EE Work Address | Addr1: PO BOx 966<br>Addr2:<br>City: MONROEVILLE<br>County: MONROE<br>State: AL Zip: 36461 Country: US | None |
| Department Name | Human Resources | None |
| Job Title | Human Resources Manager | None |
| Occupation Classification | Officials and Managers | None |
| Description of Job Duties | Manage Human Reources | None |
| Union Indicator | N | None |
| Union Number | | None |
| Date of Hire | 08/24/1998 | None |
| Date of Last Earnings Change | 08/01/1998 | None |
| Last Day Worked | 04/30/2001 | None |
| # Hours Worked Last Day | 8 | None |
| Expected RTW Date | | None |

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp                    05/10/2001

LINA/Cleiland 1084

Master Summary Report 

| Full Time | Y | None |
|---|---|---|
| Earnings Amount | 48,500.00 | None |
| Payment Mode | ANNUAL | None |
| Compensation Type 1 | Salary | None |
| First Day Off | 05/01/2001 | None |
| Coverage Type | STD | None |
| Policy Number | | None |
| Policy Effective Date | | None |
| Premium Paid Thru Date | | None |
| Contribution % | | None |
| Contribution Method | | None |

**Other Contacts**

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp          05/10/2001



**CIGNA** Group Insurance
Life • Accident • Disability

May 10, 2001

120 White Plains Rd
Suite 208
Tarrytown, NY 10591
Telephone 800-376-0725
Facsimile 800-377-4286

To:  CLEILAND, CATHY K

JACKSON, AL 36545

Re:  CLEILAND, CATHY K

TEMPLE INLAND
Policy / Coverage #  SHD0020035
Short  Term Disability Claim

Dear Ms. Cleiland:

We have received the information you reported to our customer service center on 05/08/2001.

Please review the information on the enclosed Proof of Loss Form. **If any information is incorrect, please make the necessary changes, sign, and date the Proof of Loss Form and the Disclosure Authorization. Please return the forms to our office within 10 days of receipt of this letter.**   Your claim will be handled by the following office:

**CIGNA Group Insurance
120 WHITE PLAINS ROAD
TARRYTOWN, NY 10591
1-800-376-0725**

**To certify the information reported, you must return a *signed* Proof of Loss Form and Disclosure Authorization to our office, whether changes were made or not.** Your claim will continue to be processed while we are waiting for receipt of these forms.

Please be advised, the authorization to release information form will be used by CIGNA Group Insurance for the following reasons:

- To obtain medical information from your attending physician regarding the disability for which you filed your disability claim.
- To obtain pre disability earnings from your employer, and any offset information that may apply.
- To facilitate return to work efforts with your employer.

You may wish to review your insurance coverage with your employer, to determine if you are eligible for other benefits.

Thank you for your cooperation. Should you have any questions, please do not hesitate to call the office noted above.

Sincerely,
CIGNA Group Insurance

612286

LINA/Cleiland 1086

*Disclosure Authorization*



CIGNA Group Insurance
Life • Accident • Disability

CIGNA

Insured's Name (Please Print)  CLEILAND, CATHY K

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, or pharmacy to give the Insurance Company named below (Company) or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: I) cause, treatment, diagnoses, prognoses, consultations, examinations, tests or prescriptions of advice of my physical or mental condition of information concerning me which may be needed to determine policy claim benefits with respect to Insured. This may also include (but is not limited to) information concerning: mental illness, psychiatric, alcohol or drug use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome.)

I AUTHORIZE: any financial institution, accountant, tax preparer, insurer or reinsurance consumer reporting agency, insurance support organization, Insured's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim history, work history, and work related activities.

I AUTHORIZE: the Company to contact my employer to investigate and evaluate return to work opportunities. I understand that in doing so the Company may release medical information and other information related to my physical limitations to my employer.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used by the Company to determine eligibility for claim benefits and any amounts payable with respect to the Claimant. This authorization shall apply to all records, information and events that occur over the duration of the claim. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I may revoke this authorization at any time for information not then obtained by writing to the Company. The information obtained will not be released to anyone else EXCEPT: a) reinsuring companies; b) the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c) fraud or overinsurance detection bureaus; d) anyone performing business, medical or legal functions with respect to the claim; e) for audit or statistical purposes; f) as may be required by law; g) as I may further authorize.

Claimant's Signature _____  Date: _____
(Claimant or Claimant's authorized representative)

Relationship, if other than Claimant  _____

Claimant's Social Security Number  _____

Insurance Company Name  Life Insurance Company of North America

612286

LINA/Cleiland 1087



## IMPORTANT CLAIM NOTICE FOR THE FOLLOWING STATES:

**Colorado Residents:** It is unlawful to knowingly provide false, incomplete or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**Florida Residents:** Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**Maryland Residents:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information ; or (2) conceals for the purpose of misleading, information concerning any fact material thereto, may be committing a fraudulent insurance act.

**New Jersey Residents:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**New York Residents:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5000 and the stated value of the claim for each such violation.

**Pennsylvania Residents:** Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Oregon Residents:** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

**Virginia Residents:** Any person who, with the intent to defraud or knowing that he is facilitating a fraud against an insurer, submits application or files a claim containing a false or deceptive statement may have violated state law.

512286

LINA/Cleiland 1088

# EXHIBIT 2 TO EXHIBIT A

LIFE INSURANCE COMPANY OF NORTH AMERICA
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Temple-Inland Forest Products Corporation
(herein called the Policyholder)

Effective Date: January 1, 1999

Group Policy No.: FLK-020104

This Amendment will be in effect only for eligible employees in Active Service on the Effective Date shown above. If an Employee is not in Active Service on the date he would otherwise become eligible, he will become eligible on the date he returns to Active Service provided any required Waiting Period has been satisfied.

As of the Effective Date shown above, the Company and the Policyholder hereby agree that the Policy is amended as follows:

1.    The Eligibility Waiting Period on the page entitled SCHEDULE OF BENEFITS FOR CLASS 1 is hereby replaced by the following:

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

Initial Group:  No Waiting Period.

New Hires:

Each Full-time salaried exempt Employee, commission II Employee, commission III Employee, and commission IV Employee shall be eligible to participate in the Plan on the first day he becomes an Employee provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time salaried nonexempt Employee who is not a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time salaried non-exempt Employee who is a Financial Services Employee, and each hourly Employee, part-time hourly Employee, part-time salaried Employee, or commission I Employee shall be eligible to participate in the Plan on the first day of the month following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service. For this group, Waiting Period is defined as follows:

For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees, Waiting Period means 31 days of Active Service from an Employee's most recent date of hire as an Employee.

2.    The page entitled **EFFECTIVE DATE OF INSURANCE** is hereby replaced by the following:

## EFFECTIVE DATE OF INSURANCE

An Employee, his or her eligible Spouse or Dependent Child will be insured for an amount not to exceed the Guaranteed Issue Amount on the date he or she becomes eligible, if the Employee is not required to contribute to the cost of this insurance.

An Employee, his or her eligible Spouse or Dependent Child will be insured for an amount that exceeds the Guaranteed Issue Amount on the date the Insurance Company agrees in writing to insure that eligible person. The Insurance Company will require the eligible person to satisfy the Insurability Requirement before it agrees to insure him or her.

An Employee who is required to contribute to the cost of this insurance may elect insurance for himself or herself and an eligible Spouse or Dependent Child only by authorizing payroll deduction in a form approved by the Employer and the Insurance Company. The effective date of this insurance depends on the date and amount of insurance elected.

If the coverage is elected within 31 days after the individual becomes eligible, during an Annual Enrollment Period or within 31 days after a Life Status Change, the Guaranteed Issue Amount will be effective on the latest of the following dates.
1.    The Policy Effective Date.
2.    The date payroll deduction is authorized for this insurance.
3.    The date the Employer or Insurance Company receives the completed enrollment form.
4.    The effective date determined by the Employer's benefit plan.

If coverage is elected in an amount that exceeds the Guaranteed Issue Amount or an enrollment form is received more than 60 days after an individual is eligible to elect coverage, the amount over the Guaranteed Issue Amount will be effective on the date the Insurance Company agrees in writing to insure that eligible person. The Insurance Company will require the eligible person to satisfy the Insurability Requirement before it agrees to insure him or her.

If coverage for a Dependent Child is in force and another Dependent Child is acquired, coverage for that child is effective on the date the child qualifies as a Dependent Child.

If an eligible person is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to Active Service.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

Temple-Inland Forest Products Corporation
(herein called the Policyholder)

Effective Date: September 1, 1998

Group Policy No.: FLK-020104

This Amendment will be in effect only for eligible employees in Active Service on the Effective Date shown above. If an Employee is not in Active Service on the date he would otherwise become eligible, he will become eligible on the date he returns to Active Service provided any required Waiting Period has been satisfied.

As of the Effective Date shown above, the Company and the Policyholder hereby agree that the Policy is amended as follows:

1. The section entitled TERMINATION OF INSURANCE is hereby replaced by the following:

   ## TERMINATION OF INSURANCE

   An Insured's coverage will end on the earliest of the following dates.
   1. The date the Employee is eligible for coverage under a plan intended to replace this coverage.
   2. The date the Policy is terminated by the Insurance Company.
   3. The end of the month following the date the Insured is no longer eligible.
   4. The day after the end of the period for which premiums are paid.
   5. The date an Employee is no longer in Active Service.

2. The definition of Covered Earnings on the page entitled SCHEDULE OF BENEFITS FOR CLASS 1 is hereby replaced by the following:

   Covered Earnings is defined as:
   a. For All Purposes: For all purposes under the Temple-Inland Benefit Solutions Plan, "Covered Earnings" includes only compensation paid to an Employee by an Employer for services performed by the Employee for the Employer as reflected on the Employer's payroll system which meets all of the definitions set forth in this paragraph a. and the applicable paragraphs b. or c. below. "Covered Earnings" does not include any amounts that are not paid through the Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

LINA/Cleiland 0482

"Covered Earnings" includes the Employee's base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan. "Covered Earnings" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, have accrued, or are otherwise payable at the time of the calculation).

"Covered Earnings" excludes all other compensation including, but not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by an Employer to an Employee on behalf of an entity that is not a member of the Employer's controlled group of corporations for services rendered by the Employee on behalf of such entity, and any other compensation.

<u>For Costs and Credits</u>: For purposes of determining Costs and Credits, an Employee's "Covered Earnings" is the Employee's "Covered Earnings" in effect at the time the Solutions enrollment data is produced as determined below:

I.  For a salaried Employee, "Covered Earnings" is the annual base salary.

ii. For an hourly Employee, "Covered Earnings" is the Employee's base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

iii. For newly hired commission I Employees, commission II Employees, commission III Employees and commission IV Employees, "Covered Earnings" is the greater of:

(1) base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever applicable), or

(2) $20,000

iv. For all other commission I Employees, commission II Employees, commission III Employees, and for any other hourly Employees or salaried Employees with commission pay, "Covered Earnings" is determined by:

(1) adding the Employee's base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

(2) annualizing that amount based on a full 12-month year.

v. For all other commission IV Employees, "Covered Earnings" is determined by:

(1)    adding the Employee's base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

(2)    annualizing that amount based on a full 12-month year; provided, however, that "Covered Earnings" shall not exceed the maximum salary in the range for salary grade 19-1 for commission IV Employees.

ii.    For Employees hired after the Solutions enrollment data is produced or Employees who have a change in pay or change in status after the Solutions enrollment data is produced, "Covered Earnings" will be determined as of the date of hire or the date of change in pay or change in status, respectively; provided, however, that the Plan Administrator may elect in his sole discretion to use the "Frozen pay" determined at the time the Solutions enrollment data is produced to determine Costs and Credits for any group or classification of Employees with commission pay.

For Benefit Payments: For the purpose of determining the amount of a benefit to be paid, an Employee's "Covered Earnings" in effect on the date of the event for which the claim is paid will be used, as determined below:

I.    For a salaried Employee, "Covered Earnings" is the annual base salary.

ii.    For an hourly Employee, "Covered Earnings" is the Employee's base hourly rate multiplied by the number of hours the Employee is regularly scheduled to work, up to a maximum of 2,080 hours.

iii.    For commission I Employees, commission II Employees, and commission III Employees, and for any other hourly Employees or salaried Employees with commission pay, "Covered Earnings" is the greater of:

(1)    the Employee's base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if the Employee has been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period), or

(2)    $20,000.

LINA/Cleiland 0484

iv. For commission IV Employees, "Covered Earnings" is the greater of:

(1) the Employee's base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if the Employee has been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period); provided, however, that "Covered Earnings" shall not exceed the maximum salary in the range for salary grade 19-1 for commission IV Employees, or

(2) $20,000.

Except for the above, this amendment does not change the Policy in any way.

FOR THE COMPANY

By:

John K. Leonard, President

Date: June 17, 1999

Amendment No. 1

TL-0047E0

Except for the above, this amendment does not change the Policy in any way.

FOR THE COMPANY

By:

John K. Leonard, President

Date: April 28, 1999

Amendment No. 2

TL-004780

LIFE INSURANCE COMPANY OF NORTH AMERICA                                    **GROUP POLICY**
1601 CHESTNUT STREET, PHILADELPHIA, PA  19192-2235
215-761-1000
A STOCK INSURANCE COMPANY

**POLICYHOLDER:**                         Temple-Inland Forest Products Corporation

**POLICY NUMBER:**                        FLK-020104

**POLICY EFFECTIVE DATE:**                January 1, 1998

**POLICY ANNIVERSARY DATE:**              January 1

This Policy describes the terms and conditions of coverage. The Policy is issued in Texas and shall be governed by it: laws. The Policy goes into effect on the Policy Effective Date, 12:01 AM at the Policyholder's address.

The Insurance Company and the Policyholder have agreed to all the terms of this Policy.


*George D Mulligan*                                          *John K. Leonard*

George D. Mulligan, Secretary                               John K. Leonard, President


TL-004700

IMPORTANT NOTICE

To obtain information or make a complaint:

You may call the Life Insurance Company of North America, Group Insurance's toll-free telephone number for information or to make a complaint at:

1-800-441-1832

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance P.O. Box 149104 Austin, TX 78714-9104 .X # (512) 475-1771

PREMIUM OR CLAIM DISPUTES: Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY: This notice is for information only and does not become a part or condition of the attached document.

TL-004424

AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis del Life Insurance Company of North America, Group Insurance Division para informacion o para someter una queja al:

1-800-441-1832

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas P.O. Box 149104 Austin, TX 78714-9104 FAX # (512) 475-1771

DISPUTAS SOBRE PRIMAS O RECLAMOS: Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

UNA ESTE AVISO A SU POLIZA: Este aviso es solo para proposito de informacion y se convierte en parte o condicion del documento adjunto.

LINA/Cleiland 0488

## IMPORTANT INFORMATION ABOUT COVERAGE UNDER THE TEXAS LIFE, ACCIDENT, HEALTH AND HOSPITAL SERVICE INSURANCE GUARANTY ASSOCIATION

Texas law establishes a system, administered by the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association (the "Association"), to protect policyholders if their life or health insurance company fails to or cannot meet its contractual obligations. Only the policyholders of insurance companies which are members of the Association are eligible for this protection. However, even if a company is a member of the Association, protection is limited and policyholders must meet certain guidelines to qualify. (The law is found in the Texas Insurance Code, Article 21.28-D.)

BECAUSE OF STATUTORY LIMITATIONS ON POLICYHOLDER PROTECTION, IT IS POSSIBLE THAT THE ASSOCIATION MAY NOT COVER YOUR POLICY OR MAY NOT COVER YOUR POLICY IN FULL.

### ELIGIBILITY FOR PROTECTION BY THE ASSOCIATION

When an insurance company which is a member of the Association is designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:

- residents of Texas at the time that their insurance company is impaired;
- residents of other states, ONLY if the following conditions are met:
  1) The policyholder has a policy with a company based in Texas;
  2) The company has never held a license in the policyholder's state of residence;
  3) The policyholder's state of residence has a similar guaranty association; and
  4) The policyholder is not eligible for coverage by the guaranty association of the policyholder's state of residence.

### LIMITS OF PROTECTION BY THE ASSOCIATION

Accident, Accident and Health, or Health Insurance:
- up to a total of $200,000 for one or more policies for each individual covered.

Life Insurance
- net cash surrender value up to a total of $100,000 under one or more policies on any one life; or
- death benefits up to a total of $300,000 under one or more policies on any one life.

Individual Annuities:
- net cash surrender amount up to a total of $100,000 under one or more policies owned by one contract holder.

Group Annuities:
- net cash surrender amount up to $100,000 in allocated benefits under one or more policies owned by one contract holder; or
- net cash surrender amount up to $5,000,000 in unallocated benefits under one contract holder regardless of the number of contracts.

THE INSURANCE COMPANY AND ITS AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE ASSOCIATION FOR THE PURPOSE OF SALES, SOLICITATION, OR INDUCEMENT TO PURCHASE ANY FORM OF INSURANCE.

When you are selecting an insurance company, you should not rely on coverage by the Association.

Texas Life, Accident, Health and Hospital
Service Insurance Guaranty Association
301 Congress, Suite 500
Austin, Texas 78701
800-982-6362

Texas Department of Insurance
P.O. Box 149104
Austin, Texas 78714-9104
800-252-3439

LINA/Cleiland 0489

## TABLE OF CONTENTS

ELIGIBILITY FOR INSURANCE ............................................................................ 1

EFFECTIVE DATE OF INSURANCE ..................................................................... 1

TERMINATION OF INSURANCE ........................................................................... 1

CONTINUATION OF INSURANCE ......................................................................... 2

SCHEDULE OF BENEFITS ..................................................................................... 3

SCHEDULE OF BENEFITS FOR CLASS 1 ........................................................... 4

DESCRIPTION OF BENEFITS ............................................................................... 10

EXCLUSIONS ......................................................................................................... 16

CLAIM PROVISIONS ............................................................................................. 16

ADMINISTRATIVE PROVISIONS ........................................................................ 18

GENERAL PROVISIONS ........................................................................................ 19

DEFINITIONS ......................................................................................................... 20

SCHEDULE OF AFFILIATES ................................................................................ 23

LINA/Cleiland 0490

## ELIGIBILITY FOR INSURANCE

An Employee in one of the Classes of Eligible Employees shown in the Schedule of Benefits is eligible to be insured on the Policy Effective Date, or the day after he or she completes the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

Except as noted in the Reinstatement Provision, if an Employee terminates coverage and later wishes to reapply, or if a former Employee is rehired, a new Eligibility Waiting Period must be satisfied. An Employee is not required to satisfy a new Eligibility Waiting Period if insurance ends because he or she is no longer in a Class of Eligible Employees, but continues to be employed by the Employer, and becomes a member of an eligible class.

TL-004710

## EFFECTIVE DATE OF INSURANCE

An Employee will be insured on the date he or she becomes eligible, if the Employee is not required to contribute to the cost of this insurance.

An Employee who is required to contribute to the cost of this insurance may elect to be insured only by authorizing payroll deduction in a form approved by the Employer and the Insurance Company. The effective date of this insurance depends on the date coverage is elected.

Insurance for an Employee who applies for coverage within 30 days after he or she becomes eligible, during an Annual Enrollment Period or within 30 days after a Life Status Change, is effective on the latest of the following dates.
1.   The Policy Effective Date.
2.   The date payroll deduction is authorized.
3.   The date the Employer or Insurance Company receives the completed enrollment form.
4.   The effective date determined by the Employer's benefit plan.

If an Employee's enrollment form is received more than 60 days after he or she is eligible for this insurance, the Insurability Requirement must be satisfied before this insurance is effective. If approved, this insurance is effective on the date the Insurance Company agrees in writing to insure the Employee.

If an Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to any occupation for the Employer on a Full-time basis.

TL-004712

## TERMINATION OF INSURANCE

The insurance on an Employee will end on the earliest date below.
1.   The date the Employee is eligible for coverage under a plan intended to replace this coverage.
2.   The date the Policy is terminated.
3.   The date the Employee is no longer in an eligible class.
4.   The day after the period for which premiums are paid.
5.   The date the Employee is no longer in Active Service.

TL-004714

LINA/Cleiland 0491

## CONTINUATION OF INSURANCE

Insurance continues if an Employee's Active Service ends due to a Disability for which benefits under the Policy are may become payable. Premiums for the Employee will be waived while Disability Benefits are payable. If the Employee does not return to Active Service, this insurance ends when the Disability ends or when benefits are no longer payable, if earlier.

If an Employee's Active Service ends due to an Employer approved unpaid family medical leave of absence, insurance for that Employee will continue for up to 12 weeks if the required premium is paid. If an Employee's Active Service ends due to an Employer approved unpaid leave of absence or layoff, excluding family medical leave, insurance for that Employee will continue for the period specified by the Employer, if any, not to exceed 6 months if the required premium is paid.

If an Employee's insurance is continued and he or she becomes Disabled during the leave of absence, Disability Benefits will not begin until the later of the following dates.
1.    the date the Benefit Waiting Period is satisfied
2.    the date the Employee was scheduled to return to Active Service

TL-004716

LINA/Cleiland 0492

## SCHEDULE OF BENEFITS

**Premium Due Date**

Premiums are due monthly in advance on the date coinciding with the day of the Policy Anniversary Date or the last day of the month, if earlier. Premiums will be based upon the amount of coverage in effect for an insured during the prior month one single annual settlement will be made.

**Participation Requirements**

For Contributory Plans

The greater of 75% of Eligible Employees or a minimum of 10 Employee

For Non-Contributory Plans

100% of Eligible Employees, but not less than 25 Employees.

**Classes of Eligible Employees**

Class 1  All active, Full-time and part-time salaried, commissioned I, II, III and IV Employees and designated non-union hourly Employees (Streetsboro, Crawfordsville, Lexington Box, Harrington, Maysville and Ontario Mill locations) of the Employer who are a participant in the Temple-Inland Benefit Solutions Plan and who are regularly scheduled to work a minimum of 20 hours or more per week.

LINA/Cleiland 0493

## SCHEDULE OF BENEFITS FOR CLASS 1

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:    None.

For Employees hired after the Policy Effective Date:

- Each Full-time Salaried Exempt Employee, Commission II Employee, Commission III Employee and Commission IV Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

- Each Full-time Salaried Nonexempt Employee who is not a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

- Each Salaried Nonexempt Employee who is a Financial Services Employee, and each Hourly Employee, Part-time Hourly Employee, Part-time Salaried Employee, or Commission I Employee shall be eligible to participate in the plan upon the first day of the month following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service. For this group the waiting period is defined as follows:

   For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees, Waiting Period means one month of Active Service from an Employee's most recent date of hire as an Employee.

**Definition of Disability**

An Employee is Disabled if, solely because of Injury or Sickness, he or she is earning 80% or less of his or her Indexed Covered Earnings.

Or, an Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of his or her regular occupation.

After Disability Benefits have been payable for 24 months, an Employee is Disabled if, because of Injury or Sickness he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings.

LINA/Cleiland 0494

## Definition of Covered Earnings

a.    <u>For All Purposes:</u> For all purposes under the Temple-Inland Benefit Solutions Plan, "Covered Earnings" includes only compensation paid to an Employee by an Employer for services performed by the Employee for the Employer as reflected on the Employer's payroll system which meets all of the definitions set forth in this paragraph a. and the applicable paragraphs b. or c. below. Covered Earnings does not include any amounts that are not paid through the Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

    "Covered Earnings" includes the Employee's base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan. "Covered Earnings" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, has accrued, or are otherwise payable at the time of the calculation).

    "Covered Earnings" excludes all other compensation including, not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by an Employer to an Employee on behalf of an entity that is not a member of the Employer's controlled group of corporations for services rendered by the Employee on behalf of such entity, and any other compensation.

b.    <u>For Costs and Credits:</u> For purposes of determining Costs and Credits, an Employee's "Covered Earnings" is the Employee's Covered Earnings in effect at the time the Solutions enrollment data is produced as determined below:

    I.    For a salaried Employee, "Covered Earnings" is the annual base salary.

    ii.    For an hourly Employee, "Covered Earnings" is the Employee's base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

    iii.    For newly hired commission I Employees, commission II Employees, commission III Employees and commission IV Employees, "Covered Earnings" is the greater of:

        (1)    base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever applicable), or

        (2)    $20,000

    iv.    For all other commission I Employees, commission II Employees, commission III Employees, and for any other hourly Employees or salaried Employees with commission pay, "Covered Earnings" is determined by:

        (1)    adding the Employee's base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

        (2)    annualizing that amount based on a full 12-month year.

LINA/Cleiland 0495

**Benefit Waiting Period**          180 days

A period of Disability is continuous even if the Employee can return to Active Service for up to 30 days during the Benefit Waiting Period. The length of the Benefit Waiting Period will not be extended by the number of days the Employee can return to Active Service.

**Disability Benefits**

Option 1 (tax free premiums)          The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearer dollar or $2,500, reduced by any Other Income Benefits.

Option 2 (after tax premiums)          The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearer dollar or $2,500, reduced by any Other Income Benefits.

Option 3 (tax free premiums)          The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearer dollar or $7,500, reduced by any Other Income Benefits.

Option 4 (after tax premiums)          The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearer dollar or $7,500, reduced by any Other Income Benefits.

**Minimum Disability Benefit**          $50

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

*Work Incentive Benefits*
For the first 12 months the Employee returns to work, the Disability Benefit is as figured above. If for any month during this period, the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of his or her Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 12 months the Employee returns to work, the Disability Benefit is as figured above, reduced by 50% of his or her current earnings received during any month he or she returns to work. If the sum of the Employee's Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of his or her monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

No Disability Benefits will be paid if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and he or she refuses to do so.

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If an Employee is working for another employer on a regular basis when Disability begins, current earnings will include an increase in the amount he or she earned from this work during the period for which Disability Benefits are payable.

*Decreases in Coverage Amount*

An Employee may elect a decrease in his or her benefit amount at future annual enrollments or within 30 days after a Life Status Change by signing a change form. The lesser benefit amount will be effective on the date the completed change form is received by the Employer or Insurance Company.

LINA/Cleiland 0496

*Increases in Coverage Amount*

During an Annual Enrollment Period an Employee may elect an increased benefit amount up to the Maximum Benefit Amount. If an Employee requests an increased benefit amount after the Annual Enrollment Period, this request will not be considered for eligibility until the following Annual Enrollment Period.

However, an Employee who has initially declined coverage for the higher benefits of Options 3 or 4 must satisfy the Insurability requirement for that amount.

If an Employee is not actively at work on the date an increased benefit amount would otherwise be effective, the Employee will become insured on the date he or she returns to work at his or her regular occupation for the Employer on a Full-time basis.

*Limit on Increases or Decreases*

The Insurance Company reserves the right to limit or deny the amounts of insurance available to individuals who do not meet our underwriting requirements or where limited by law.

**Additional Benefits**

| *Rehabilitation During Disability* | Please refer to the Description of Benefits for an explanation of this benefit. |
| *Reasonable Accommodation Benefit* | Please refer to the Description of Benefits for an explanation of this benefit. |

*Specified Loss Benefits*
Time Period for Accident                90 days

Table for Accidental Loss



| <u>Loss</u> | <u>Benefit Period</u> |
|---|---|
| Both hands or feet, the entire sight in both eyes, hearing in both ears, speech, one hand and one foot, one hand or foot and the entire sight of one eye | 46 Months |
| One arm or leg | 35 Months |
| One hand or foot | 23 Months |
| The entire sight in one eye or hearing in one ear | 15 Months |
| Thumb and index finger of either hand | 12 Months |

The loss of a hand or foot means the complete severance through or above the wrist or ankle joint. The loss of an arm or leg means complete severance through or above the elbow or knee joint. The loss of a thumb and index finger means complete severance through or above the metacarpophalangeal joints (the joints between the fingers and the hand). "Severance" means complete separation and dismemberment of the limb from the body. The loss of sight, speech or hearing means total and irrecoverable loss of the function.

LINA/Cleiland 0497

If more than one loss results from an Accident, the Insurance Company will pay for the longest benefit period of the losses incurred.

*Survivor Benefit*

| | |
|---|---|
| Benefit Waiting Period | After 6 Disability Benefits are payable. |
| Amount of Benefit | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits. |

**Maximum Benefit Period**

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

**Initial Premium Rates**

| Options 1 and 2 | $.60 per $100 of Covered Payroll |
|---|---|
| Options 3 and 4 | An additional $.60 per $100 of Covered Payroll in excess of Options 1 and 2. |

Covered Payroll for an Employee will mean his or her covered earnings for the insurance month prior to the date the determination is made. For the Options 1 and 2, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $4,167. For Options 3 and 4, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $12,500.

TL-004774

LINA/Cleiland 0498

## DESCRIPTION OF BENEFITS

The following provisions explain the benefits available under the Policy. Please see the Schedule of Benefits for the applicability of these benefits on a class level.

### Disability Benefits

The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician. Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

The Insurance Company will require continued proof of the Employee's Disability, provided at the Employee's expense, for benefits to continue.

### Benefit Waiting Period

The Benefit Waiting Period is the period of time an Employee must be continuously Disabled before Disability Benefits may be payable. The Benefit Waiting Period is shown in the Schedule of Benefits.

The Insurance Company will waive the Benefit Waiting Period for an Employee if benefits under a Prior Plan were payable on the Policy Effective Date and the Employee returns to Active Service within 6 months after that date. The return to Active Service must be for more than 14 consecutive days but less than 6 months. The later Disability must be caused by the same or related causes.

### Termination of Disability Benefits

Disability Benefits will end on the earliest of the following dates.
1.  The date an Employee earns more than 80% of his or her Indexed Covered Earnings
2.  The date the Insurance Company determines an Employee is not Disabled
3.  The end of the Maximum Benefit Period
4.  The date an Employee dies
5.  The date the Employee refuses to participate in rehabilitation efforts as required by the Insurance Company
6.  The date the Employee is no longer receiving Appropriate Care

### Successive Periods of Disability

Once an Employee is eligible to receive Disability Benefits under the Policy, separate periods of Disability resulting from the same or related causes are a continuous period of Disability unless the Employee can return to Active Service for 6 or more consecutive months.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes or the later Disability occurs after coverage under the Policy ends.

The Successive Periods of Disability provision will not apply if an Employee is eligible for coverage under a plan that replaces this Policy.



## Mental Illness, Alcoholism and Drug Abuse Limitation

The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 months of Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1. Alcoholism
2. Anxiety Disorders
3. Delusional (paranoid) disorders
4. Depressive disorders
5. Drug addiction or abuse
6. Eating disorders
7. Mental Illness
8. Somatoform disorders (psychosomatic illness)

If, before reaching the lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against the lifetime limit. The confinement must be for the Appropriate Care of any of the conditions listed above.

## Pre-Existing Condition Limitation

The Insurance Company will not pay Disability Benefits for any period of Disability caused by or contributed to by, or resulting from, a Pre-Existing Condition. A "pre-existing condition" means any Injury or Sickness for which the Employee incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a physician within 3 months before his or her most recent effective date of insurance.

The Pre-Existing Condition Limitation will apply to any added benefits or increases in benefits. It will not apply to a period of Disability that begins after an Employee is in Active Service for at least 12 months after his or her most recent effective date of insurance or the effective date of any added or increased benefits.

The Pre-Existing Condition Limitation will not apply to an Employee covered under a Prior Plan who satisfied the pre-existing condition limitation, if any, under that plan. If an Employee, covered under a Prior Plan, did not fully satisfy the pre-existing condition limitation of that plan, credit will be given for any time that was satisfied.

Time will not be credited for any day an Employee is not actively at work due to his or her Injury or Sickness. The Pre-Existing Condition Limitation will be extended by the number of days the Employee is not actively at work due to his or her Injury or Sickness.

## Disability Benefit Calculation

The Disability Benefit for any month Disability Benefits are payable is shown in the Schedule of Benefits. Disability Benefits are based on a 30 day period. They will be prorated if payable for any period less than a month.

## Work Incentive Benefit

If an Employee is covered for Work Incentive Benefits, he or she may return to work while Disabled and Disability Benefits will continue. The conditions under which an Employee may return to work and the amount of this benefit is shown in the Schedule of Benefits.

The Insurance Company will review the Employee's status and will require satisfactory proof of earnings and continued Disability.

**Other Income Benefits**

While an Employee is Disabled, he or she may be eligible for benefits from other income sources. If so, the Insurance Company may reduce the Disability Benefits payable by the amount of such Other Income Benefits. The extent to which Other Income Benefits will reduce any Disability Benefits payable under the policy is shown in the Schedule of Benefits.

Other Income Benefits include:

1. any amounts which the Employee or any dependents, if applicable, receive (or are assumed to receive*) under:
   a. the Canada and Quebec Pension Plans;
   b. the Railroad Retirement Act;
   c. any local, state, provincial or federal government disability or retirement plan or law;
   d. any sick leave or salary continuation plan of the Employer;
   e. any work loss provision in "No-Fault" auto insurance;
   f. any Disability Benefits received from the Veterans' Administration;
   g. any Workers' Compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.

2. any Social Security disability or retirement benefits the Employee or any third party receives (or is assumed to receive*) on the Employee's behalf or for his or her dependents; or, if applicable, which his or her dependents receive (or are assumed to receive*) because of the Employee's entitlement to such benefits.

3. any retirement plan benefits funded by the Employer. "Retirement plan" means any defined benefit or defined contribution plan sponsored or funded by an employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or any Employee contributions under a 401(k) plan or any Employer match thereon.

4. any proceeds payable under any group insurance or similar plan. If there is other insurance that applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, the Insurance Company will pay for its pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.

5. any wage or salary for work performed. If an Employee is covered for Work Incentive Benefits, the Insurance Company will only reduce Disability Benefits to the extent provided under the Work Incentive Benefit in the Schedule of Benefits.

Dependents include any person who receives (or is assumed to receive)* benefits under any applicable law on account of an Employee's entitlement to benefits.

* See the Assumed Receipt of Benefits provision.

LINA/Cleiland 0501

*Increases in Other Income Benefits*

After the first deduction for any Other Income Benefit (except wage or salary) is made, benefits will not be further reduced during that period of Disability due to any cost of living increase in that Other Income Benefit.

*Lump Sum Payments*

Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated the lump sum will be prorated monthly over a five year period.

If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

*Assumed Receipt of Benefits*

The Insurance Company will assume the Employee (or his or her dependents, if applicable) are receiving Other Income Benefits if they may be eligible for them. These assumed benefits will be the amount the Insurance Company estimates the Employee (or his or her dependents, if applicable) may be eligible to receive. Disability Benefits will be reduced by the amount of any assumed benefits as if they were actually received.

Except for any wage or salary for work performed while Disability Benefits are payable, this assumption will not be made if the Employee gives the Insurance Company proof of the following events.
1.  Application was made for these benefits
2.  A Reimbursement Agreement is signed
3.  Any and all appeals were made for these benefits or the Insurance Company determines further appeals will not be successful
4.  Payments were denied

The Insurance Company will not assume receipt of, nor reduce benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until the Employee actually receives them.

*Social Security Assistance*

The Insurance Company will, at its discretion, assist the Employee in applying for Social Security Disability Income (SSDI) benefits. Disability Benefits will not be reduced by the assumed receipt of SSDI benefits while the Employee participates in the Social Security Assistance Program.

The Insurance Company may require the Employee to file an appeal if it believes a reversal of a prior decision is possible. If the Employee refuses to participate in, or cooperate with, the Social Security Assistance Program, the Insurance Company will assume receipt of SSDI benefits until the Employee gives us proof that all administrative remedies are exhausted.

**Minimum Benefit**

The Insurance Company will pay the Minimum Benefit regardless of any reductions made for Other Income Benefits However, if there is an overpayment due, this benefit may be reduced to recover the overpayment.

LINA/Cleiland 0502

## Recovery of Overpayment

If benefits are overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods.
1.    A request for lump sum payment of the overpaid amount
2.    A reduction of any amounts payable under the Policy

If there is an overpayment due when an Employee dies, any benefits payable under the Policy will be reduced to recover the overpayment.

TL-004771

# ADDITIONAL BENEFITS

## Rehabilitation During A Period of Disability

If, while an Employee is Disabled, the Insurance Company determines that he or she is a suitable candidate for rehabilitation he or she may participate in a Rehabilitation Plan. The terms and conditions of the Rehabilitation Plan must be mutually agreed upon by the Employee and the Insurance Company.

The Insurance Company may require an Employee to participate in a rehabilitation assessment or a Rehabilitation Plan at our expense. The Insurance Company will work with the Employee, the Employer and the Employee's Physician and others, as appropriate, to develop a Rehabilitation Plan. If the Employee refuses to participate in the rehabilitation efforts, Disability Benefits will not be payable.

The Rehabilitation Plan may, at the Insurance Company's discretion, allow for payment of the Employee's medical expense, education expense, moving expense, accommodation expense or family care expense while he or she participates in the program.

A "Rehabilitation Plan" is a written agreement between the Employee and the Insurance Company in which the Insurance Company agrees to provide, arrange or authorize vocational or physical rehabilitation services.

## Reasonable Accommodation Benefit

The Insurance Company may reimburse the Employer for expenses incurred in making a Reasonable Accommodation. For the Employer to be eligible for this benefit, the Reasonable Accommodation must meet the following conditions.
1.    It must be made on behalf of a Disabled Employee and result in his or her ability to return to any occupation for the Employer.
2.    It must be approved by the Insurance Company in writing before it is implemented or any expense is incurred.
3.    It must meet federal standards of a Reasonable Accommodation as detailed in the Americans with Disabilities Act of 1990 and any later amendments.

"Reasonable Accommodation" means any modification or adjustment to a job, an employment practice, or the work environment that makes it possible for a person with a disability to perform the material duties of any occupation without causing undue hardship to the Employer.

LINA/Cleiland 0503

**Spouse Rehabilitation Benefit**

While an Employee is Disabled, his or her Spouse may, at the option of the Insurance Company, be eligible to participate in a Rehabilitation Plan. To be eligible, the following conditions must be met.

1. The Employee must be continuously Disabled for 12 months
2. The Spouse's earnings must be 60% or less than the Employee's Covered Earnings
3. The Spouse must be determined by the Insurance Company to be a suitable candidate for re-employment.

The Spouse's Rehabilitation Plan may include, at the Insurance Company's discretion, payment of the Spouse's education expenses, reasonable job placement expenses and moving expenses. It may also include family care expenses if necessary for the Spouse to be retrained under the Rehabilitation Plan.

Disability Benefits will be reduced by 50% of a Spouse's earnings from Rehabilitative Work. If the Spouse was working before the Rehabilitation Plan begins, Disability Benefits will be reduced by 50% of the increase in income that results from a Spouse's participation in the program.

"Spouse" means the Employee's lawful spouse living with the Employee on the date his or her Disability begins. The Rehabilitation Plan will end if the Spouse is not living with the Employee during the term of the agreement.

TL-005105

**Specified Loss Benefit**

If an Employee suffers a loss from an Accident, the Insurance Company will pay Disability Benefits as shown in the Table for Accidental Loss. For an Employee to be eligible for benefits, the following conditions must be met.

1. The loss must occur within the Time Period for Accident and must be shown in the Table for Accidental Loss.
2. The Accident must be the sole cause of the loss.
3. The Accident and the resulting loss must occur while coverage is effective.
4. The Benefit Waiting Period has been satisfied.

If an Employee dies within the Time Period for Accident, the Insurance Company will pay benefits for the period between the date Monthly Benefits are payable and the date the Employee dies. If the Employee dies after this time, but before the end of the Guaranteed Benefit Period, the Insurance Company will pay the rest in a lump sum.

"Accident" means a sudden, unforeseeable external event that causes bodily injury to an Employee.

TL-005108

**Survivor Benefit**

The Insurance Company will pay a Survivor Benefit if an Employee dies while Monthly Benefits are payable. The Employee must have been continuously Disabled for the Survivor Benefit Waiting Period before the first benefit is payable. These benefits will be payable for the Maximum Benefit Period for Survivor Benefits.

Benefits will be paid to the Employee's Spouse. If there is no Spouse, benefits will be paid in equal shares to the Employee's surviving Children. If there are no Spouse and no Children, benefits will be paid to the Employee's estate

LINA/Cleiland 0504



"Spouse" means an Employee's lawful spouse. "Children" means an Employee's unmarried children under age 21 who are chiefly dependent upon the Employee for support and maintenance.

TL-005107

## EXCLUSIONS

The Insurance Company will not pay Disability Benefits for a Disability that results, directly or indirectly, from any of the following events.

1. attempted suicide, or whenever an Employee injures himself or herself on purpose.
2. war or any act of war, whether or not declared.
3. serving on full-time active duty in any armed forces. If the Employee sends proof of military service, the Insurance Company will refund the portion of the premium paid to cover the Employee during a period of such service.
4. terrorism or active participation in a riot.
5. commission of a felony.
6. the revocation, restriction or non-renewal of an Employee's license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Sickness otherwise covered by the Policy.
7. incarceration in a penal or corrections institution.

The Insurance Company will not pay Disability Benefits for any period of Disability during which the Employee does any of the following.

1. refuses to participate in rehabilitation efforts as required by the Insurance Company.
2. is not receiving Appropriate Care.
3. refuses to participate in a Transitional Work Arrangement or other modified work arrangement. These work arrangements mean any work offered to the Employee by the Employer or an affiliated company while the Employee is Disabled and which may be his or her own or any occupation. The work arrangements include, but are not limited to reassigned duties, work site modification, flexible work arrangements, job adaption or special equipment.
4. fails to cooperate with the Insurance Company in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

TL-004772

## CLAIM PROVISIONS

**Notice of Claim**
Written notice, or notice by any other electronic or telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If this notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice, or notice by any other electronic or telephonic means authorized by the Insurance Company, was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Policyholder's name and Policy Number and the claimant's name and address.

LINA/Cleiland 0505



**Claim Forms**
When the Insurance Company receives written notice of a claim, or notice by any other electronic or telephonic means authorized by the Insurance Company, it will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by the Insurance Company, the proof requirements will be met by submitting, within the time required under "Proof of Loss" section, written proof of the nature and extent of the loss.

**Claimant Cooperation Provision**
Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

**Insurance Data**
The Employer is required to cooperate with the Insurance Company in the review of claims and applications for insurance. Any information the Insurance Company provides in these areas is confidential and may not be used or released by the Employer if not permitted by applicable privacy laws.

**Proof of Loss**
Written proof of loss must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made. If written proof of loss is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof of loss was given as soon as was reasonably possible. In any case, written proof must be given not more than a year after the time otherwise required unless proof is not given solely due to the lack of legal capacity.

Within 30 days of a request, written proof of continued Disability and of regular attendance by a Physician must be given to the Insurance Company.

**Time of Payment**
Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which the Insurance Company is liable, will be paid at that time.

**To Whom Payable**
Disability Benefits will be paid to the Employee. If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, the Insurance Company, may at its option, make payment to the person or institution appearing to have assumed custody and support.

If an Employee dies while any Disability Benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother and father, natural or adopted children, brothers and sisters; or to the executors or administrators of the Employee's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release the Insurance Company from all liability for any payment made.

**Physical Examination and Autopsy**
The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. The Insurance Company may, at its expense, require an autopsy unless prohibited by law.

**Legal Actions**
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time written proof of loss must be furnished.

LINA/Cleiland 0506



**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**
The Employee will have the right to choose any Physician who is practicing legally. The Insurance Company will in no way disturb the Physician/patient relationship.

TL-004724

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

**Changes in Premium Rates**
The premium rates may be changed by the Insurance Company from time to time with at least 120 days advance written notice. No change in rates will be made until 24 months after the Policy Effective Date. An increase in rates will not be made more often than once in a 12 month period and will take effect on the Policy Anniversary Date. However, the Insurance Company reserves the right to change the rates at any time if any of the following events take place.

1. The terms of the Policy change.
2. A division, subsidiary, affiliated company or eligible class is added or deleted from the Policy, causing a change in the group demographic composition by 10% or more.
3. There is a change in the factors bearing on the risk assumed because of a change in the group demographic composition by 10% or more.
4. Any federal or state law or regulation is amended to the extent it affects the Insurance Company's benefit obligation.
5. The Insurance Company determines that the Employer has failed to promptly furnish any necessary information requested by the Insurance Company, or has failed to perform any other obligations in relation to the Policy.

If an increase or decrease in rates takes place on a date that is not a Premium Due Date, a pro rata adjustment will apply from the date of the change to the next Premium Due Date.

As of any premium due date after the Policy has been in force for 24 months, the Insurance Company may grant a premium holiday in such amount as it may determine based on experience.

**Reporting Requirements**
The Employer must, upon request, give the Insurance Company any information required to determine who is insured, the amount of insurance in force and any other information needed to administer the plan of insurance.

**Payment of Premium**
The first premium is due on the Policy Effective Date. After that, premiums will be due monthly unless the Policyholder and the Insurance Company agree on some other method of premium payment.

If any premium is not paid when due, the Policy will be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.



**Notice of Cancellation**
The Policyholder or the Insurance Company may cancel the Policy as of any Premium Due Date by giving 31 days advance written notice. If a premium is not paid when due, the Policy will automatically be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

**Policy Grace Period**
A Policy Grace Period of 31 days will be granted for the payment of the required premiums under the Policy. The Policy will be in force during the Policy Grace Period. If the required premiums are not paid during the Policy Grace Period, insurance will end on the last Premium Due Date. The Policyholder will be liable to the Insurance Company for any unpaid premium for the time the Policy was in force.

**Grace Period for the Employee**
If the required premium is not paid on the Premium Due Date there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

**Reinstatement of Insurance**
An Employee's insurance may be reinstated if it ends because the Employee is on an unpaid leave of absence or an Employee is rehired within three months of the date of termination of employment and he or she applies for Reinstatement within 31 days of his return to Active Service.

An Employee's insurance may be reinstated only if reinstatement occurs within 6 months from the date insurance ends due to an Employer approved unpaid leave of absence or on any date in which he or she returns from active duty in the armed forces as defined by the Uniformed Services Employment and Reemployment Act of 1994 (USERRA) if the following conditions are met:

1.  An Employee must be in a Class of Eligible Employees.
2.  The required premium must be paid.
3.  A written request for reinstatement must be received by the Insurance Company within 31 days from the date an Employee returns to Active Service.

Reinstated insurance will be effective on the date the Employee returns to Active Service. If an Employee did not fully satisfy the Eligibility Waiting Period or the Pre-Existing Condition Limitation before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004720

## GENERAL PROVISIONS

**Entire Contract**
The entire contract will be made up of the Policy, the application of the Policyholder, a copy of which is attached to the Policy, and the applications, if any, of the Employees.

**Incontestability**
All statements made by the Policyholder or by an Employee are representations not warranties. No statement will be used to deny or reduce benefits or be used as a defense to a claim, unless a copy of the instrument containing the statement is signed by the Employee and has been furnished to the claimant. In the event of death or incapacity, the beneficiary or representative must receive the copy.

After two years from an Employee's effective date of insurance, or from the effective date of any added or increased benefits, the validity of an Employee's insurance under the Policy may not be contested using such statements.

LINA/Cleiland 0508

**Misstatement of Age**
If an Employee's age has been misstated, the Insurance Company will adjust all benefits to the amounts that would have been purchased for the correct age.

**Policy Changes**
No change in the Policy will be valid until approved by an executive officer of the Insurance Company. This approval must be endorsed on, or attached to, the Policy. No agent may change the Policy or waive any of its provisions.

**Workers' Compensation Insurance**
The Policy is not in lieu of and does not affect any requirements for coverage under any Workers' Compensation Insurance.

**Certificates**
An individual certificate of insurance will be delivered to the Policyholder for delivery to Employees. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid.

**Assignment of Benefits**
The Insurance Company will not be affected by the assignment of an Employee's certificate until the original assignment or a certified copy of the assignment is filed with us. The Insurance Company will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided coverage under the Policy is in effect. This insurance may not be levied on, attached, garnished, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

**Conformity with State Statutes**
Any provision of the Policy in conflict on the Policy Effective Date with the laws of the state where the Policy is delivered is amended to conform to the minimum requirements of such laws.

**Clerical Error**
A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**Agency**
The Employer and plan administrator are agents of the Employee for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.

TL-004726

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**
An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.

1.  He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.

2.  The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

LINA/Cleiland 0509

 

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

**Annual Enrollment Period**
The period in each calendar year agreed upon by the Employer and the Insurance Company when an eligible Employee may enroll for or change benefit elections under the Policy.

**Appropriate Care**
Appropriate Care means the determination of an accurate and medically supported diagnosis of the Employee's Disability, or ongoing medical treatment and care of the Employee's Disability by a Physician that conforms to generally-accepted medical standards, including frequency of treatment and care.

**Consumer Price Index (CPI-W)**
The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

**Employee**
For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is covered under the Policy.

**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is the agent of the Employee for transactions relating to this insurance. The actions of the Employer shall not be considered actions of the Insurance Company.

**Flexible Benefits Plan**
The Flexible Benefits Plan is the Employee Benefits Plan arrangement sponsored by the Employer for eligible Employees.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

**Indexed Covered Earnings**
For the first 12 months Monthly Benefits are payable, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.    10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or
2.    the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**
The term Injury means an accidental loss or bodily harm.

**Insurability Requirement**
An Employee will satisfy the Insurability Requirement on the day the Insurance Company agrees in writing to accept the Employee as covered under the Policy. To determine an Employee's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on the Policy cover page.

21

LINA/Cleiland 0510




**Conformity with State Statutes**
Any provision of the Policy in conflict on the Policy Effective Date with the laws of the state where the Policy is delivered is amended to conform to the minimum requirements of such laws.

**Clerical Error**
A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**Agency**
The Employer and plan administrator are agents of the Employee for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.

TL-004726

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**
An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.
1.   He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.
2.   The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

**Annual Enrollment Period**
The period in each calendar year agreed upon by the Employer and the Insurance Company when an eligible Employee may enroll for or change benefit elections under the Policy.

**Appropriate Care**
Appropriate Care means the determination of an accurate and medically supported diagnosis of the Employee's Disability, or ongoing medical treatment and care of the Employee's Disability by a Physician that conforms to generally-accepted medical standards, including frequency of treatment and care.

**Consumer Price Index (CPI-W)**
The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

**Employee**
For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is covered under the Policy.

22

LINA/Cleiland 0511

 

**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is the agent of the Employee for transactions relating to this insurance. The actions of the Employer shall not be considered actions of the Insurance Company.

**Flexible Benefits Plan**
The Flexible Benefits Plan is the Employee Benefits Plan arrangement sponsored by the Employer for eligible Employees.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

**Indexed Covered Earnings**
For the first 12 months Monthly Benefits are payable, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.  10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or
2.  the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**
The term Injury means an accidental loss or bodily harm.

**Insurability Requirement**
An Employee will satisfy the Insurability Requirement on the day the Insurance Company agrees in writing to accept the Employee as covered under the Policy. To determine an Employee's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on the Policy cover page.

**Life Status Change**
A Life Status Change is an event recognized by the Employer's Flexible Benefits Plan as qualifying an Employee to make changes in benefit selections at a time other than an Annual Enrollment Period.

If there is no Employer sponsored Flexible Benefits Plan, or if it is no longer in effect, the following events are Life Status Changes.
1.  Marriage
2.  Divorce, annulment or legal separation
3.  Birth or adoption of a child
4.  Death of a spouse
5.  Termination of a spouse's employment
6.  A change in the benefit plan available to the Employee's spouse
7.  A change in the Employee's or spouse's employment status that affects either's eligibility for benefits

23

LINA/Cleiland 0512



**Physician**
Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Employee that is appropriate for the condition and locality. The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage), of an Employee or spouse, or a person living in an Employee's household.

**Prior Plan**
The Prior Plan refers to the plan of insurance providing similar benefits to an Employee sponsored by the Employer and in effect directly prior to the Policy Effective Date.

**Sickness**
The term Sickness means a physical or mental illness.

TL-004708

LINA/Cleiland 0513



## IMPORTANT INFORMATION ABOUT COVERAGE UNDER THE TEXAS LIFE, ACCIDENT, HEALTH AND HOSPITAL SERVICE INSURANCE GUARANTY ASSOCIATION

Texas law establishes a system, administered by the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association (the "Association"), to protect policyholders if their life or health insurance company fails to or cannot meet its contractual obligations. Only the policyholders of insurance companies which are members of the Association are eligible for this protection. However, even if a company is a member of the Association, protection is limited and policyholders must meet certain guidelines to qualify. (The law is found in the Texas Insurance Code, Article 21.28-D.)

BECAUSE OF STATUTORY LIMITATIONS ON POLICYHOLDER PROTECTION, IT IS POSSIBLE THAT THE ASSOCIATION MAY NOT COVER YOUR POLICY OR MAY NOT COVER YOUR POLICY IN FULL.

### ELIGIBILITY FOR PROTECTION BY THE ASSOCIATION

When an insurance company which is a member of the Association is designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:

- residents of Texas at the time that their insurance company is impaired;
- residents of other states, ONLY if the following conditions are met:
  1) The policyholder has a policy with a company based in Texas;
  2) The company has never held a license in the policyholder's state of residence;
  3) The policyholder's state of residence has a similar guaranty association; and
  4) The policyholder is not eligible for coverage by the guaranty association of the policyholder's state of residence.

### LIMITS OF PROTECTION BY THE ASSOCIATION

Accident, Accident and Health, or Health Insurance:
- up to a total of $200,000 for one or more policies for each individual covered.

Life Insurance
- net cash surrender value up to a total of $100,000 under one or more policies on any one life; or
- death benefits up to a total of $300,000 under one or more policies on any one life.

Individual Annuities:
- net cash surrender amount up to a total of $100,000 under one or more policies owned by one contract holder.

Group Annuities:
- net cash surrender amount up to $100,000 in allocated benefits under one or more policies owned by one contract holder; or
- net cash surrender amount up to $5,000,000 in unallocated benefits under one contract holder regardless of the number of contracts.

THE INSURANCE COMPANY AND ITS AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE ASSOCIATION FOR THE PURPOSE OF SALES, SOLICITATION, OR INDUCEMENT TO PURCHASE ANY FORM OF INSURANCE.

When you are selecting an insurance company, you should not rely on coverage by the Association.

Texas Life, Accident, Health and Hospital
Service Insurance Guaranty Association
301 Congress, Suite 500
Austin, Texas 78701
800-982-6362

Texas Department of Insurance
P.O. Box 149104
Austin, Texas 78714-9104
800-252-3439

LINA/Cleiland 0514

IMPORTANT NOTICE

To obtain information or make a complaint:

You may call the Life Insurance Company of North America, Group Insurance's toll-free telephone number for information or to make a complaint at:

1-800-441-1832

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write the
Texas Department of Insurance
P.O. Box 149104
Austin, TX  78714-9104
FAX # (512) 475-1771

PREMIUM OR CLAIM DISPUTES: Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY: This notice is for information only and does not become a part or condition of the attached document.

TL-004426

AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis del Life Insurance Company of North America, Group Insurance Division para informacion o para someter
una queja al:

1-800-441-1832

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

1-800-252-3439

Puede escribir al Departamento de
Seguros de Texas
P.O. Box 149104
Austin, TX  78714-9104
FAX # (512) 475-1771

DISPUTAS SOBRE PRIMAS O RECLAMOS: Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con e agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

UNA ESTE AVISO A SU POLIZA: Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

LINA/Cleiland 0515

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CATHY CLEILAND,                          )
                                         )
              Plaintiff,                 )
                                         )
vs.                                      )
                                         )    CIVIL ACTION NO. :
LIFE INSURANCE COMPANY OF NORTH          )    2:07-CV-00486-MEF-SRW
AMERICA, TEMPLE INLAND                   )
DISABILITY HEALTH AND WELFARE            )
PLAN, and TEMPLE INLAND FOREST           )
PRODUCTS CORPORATION,                    )
                                         )
              Defendants.                )

## AFFIDAVIT OF CECILIA CORNELIUS

STATE OF TEXAS                )

COUNTY OF TRAVIS              )

BEFORE ME, the undersigned authority in, and for said County and State, this day personally appeared Cecilia Cornelius, who, being first duly sworn, deposes and says as follows:

1.     My name is Cecilia Cornelius. I am currently employed by TIN Inc., formerly known as Temple Inland Forest Products Corporation, as the Health and Welfare Administrator. Based upon my position and involvement with TIN Inc. and my review of relevant documents, I have personal knowledge of the facts set forth herein. I am over the age of nineteen (19) years and am competent to execute this Affidavit.

2.     Life Insurance Company of North America issued Group Policy FLK-020104 (hereinafter referred to as "Policy") to Temple-Inland Forest Products Corporation, now TIN Inc. Life Insurance Company of North America also serves as the Claims Administrator with responsibility for adjudicating claims for long-term disability benefits made under the Policy by participants of the company's Long-Term Disability Plan.

3.    TIN Inc. maintains records in the ordinary course of business relative to requests for documents such as the exhibits attached hereto, which records are made at the time of the acts, transactions, occurrences and/or events reflected in the records, or within a reasonable time thereafter, by someone with personal knowledge of such acts, transactions, occurrences and/or events. A true and correct copy of Plaintiff's request for documents and TIN Inc.'s response thereto, as well as correspondence with Life Insurance Company of North America regarding Plaintiff's long-term disability claim, is attached hereto as Exhibit "1".

FURTHER AFFIANT SAYETH NOT.

Executed on the _7_ day of _February_, 2008.

_Cecilia Cornelius_
Cecilia Cornelius

Sworn to and subscribed before me on this the _7th_ day of _February_, 2008.

_Barbara J. Steinle_
Notary Public
My Commission Expires: _10-4-2008_

BARBARA J. STEINLE
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-04-2008

# EXHIBIT 1 TO EXHIBIT B
# Part 1

*Temple FPC*

## Temple-Inland

Anissa Valdez
Retirement Plans Administrator
Benefits Administration Department

August 15, 2006

1300 S. MoPac Expressway
Austin, TX 78746
512.434.3945
512.434.5626
anissavaldez@templeinland.com

Personal & Confidential
Campbell, Waller, & Poer
Attn: Thomas O. Sinclair
2100 A Southbridge Parkway, Suite 450
Birmingham, AL 35209



Dear Mr. Sinclair:

We recently received your letter concerning Cathy Cleiland. Enclosed is Summary Plan Description for the Temple-Inland Salaried Retirement Plan.

If you have any questions, please contact the Benefits Administration Department, 1300 S. MoPac Expressway, Austin, TX 78746, 1(877) 437-3497.

Sincerely,

Anissa Valdez
Retirement Plans Administrator

TempleInland/Cleiland 001



CAMPBELL
WALLER &
POER, L.L.C.

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

September 5, 2006

**VIA CERTIFIED MAIL**
CIGNA Group Insurance
Routing 212
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243

Life Insurance Company of North America
1601 Chestnut Street
Philadelphia, PA 19192-2235

Temple-Inland, Inc.
Benefits Administration Committee
Plan Administrator
303 South Temple Drive
Post Office Drawer N
Diboll, TX 75941

Re:    **Cathy Cleiland**

Dear Sirs:

This firm has been retained by Cathy Cleiland with regard to a claim for benefits under the terms of the employee welfare benefit plan(s) or pension plan(s) in which the above referenced individual was a participant or beneficiary. Please direct any and all correspondence, and all contact regarding this matter, to this firm.

If it is your company's contention that the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et. seq. applies in this matter, then please produce any and all "relevant" (as defined within 29 C.F.R. § 2560.503-1) documents to include the policy, summary plan description, or any other documents specified within 29 U.S.C. § 1001 et. seq. and 29 C.F.R. § 2560.503-1. These documents should include any and all information upon which you based your decision regarding any claim for benefits, and all documents pertaining to or referencing the employee welfare benefit plan(s) and/or employee pension plans under the terms of which the above referenced individual is or was a beneficiary and/or participants.

These documents are requested pursuant to the rights specified within 29 U.S.C. § 1132 (c). Your response should include any "relevant" ERISA documents, plan documents, claim file documents, any manuals, disability guidelines, or any other documents pertaining to the guidelines under which the claim

was determined, and any brochures, handbooks, employee benefit guides, pension plan documents detailing any and all benefits provided to the above referenced individual.

Sincerely,

**"DICTATED, BUT NOT READ**
**IN ORDER TO AVOID DELAY"**

Thomas O. Sinclair, Esq.

TOS/me
Enclosure
cc: Cathy Cleiland

*HiPAA-Compliant PHI Release Form*

## <u>Authorization for Disclosure of Protected Health Information</u>

I, <u>**Cathy Cleiland**</u>, authorize the disclosure of my protected health information[1] as described herein. I understand that this authorization is voluntary and made to confirm my direction. I understand that, if the person(s) or organization(s) that I authorize to receive my protected health information are not subject to federal and state health information privacy laws,[2] subsequent disclosure by such person(s) or organization(s) may not be protected by those laws.

1. I authorize the following person(s) and/or organization(s) <u>to disclose</u> my protected health information (as specified below):

   Name: <u>Benefits Administration Committee, Temple-Inland Forest Products Corp.</u>

   Organization: <u>Temple-Inland, Inc.</u>

   Address: <u>P. O. Drawer N, 303 South Temple Drive, Diboll, TX  75941</u>

2. I authorize the following person(s) and/or organization(s) <u>to receive</u> my protected health information, as disclosed by the person(s) and/or organization(s) above.

   Name(s) <u>Thomas O. Sinclair</u>

   Organization(s) <u>Campbell, Waller, & Poer</u>

   Address <u>2100A Southbridge Parkway, Suite 450, Birmingham, AL 35209</u>

3. Specific description of the protected health information that I authorize for disclosure (authorization to disclose psychotherapy notes must be separate):

   **Any and all documents and records relating in any manner to <u>Cathy Cleiland, DOB</u> <u>'1957, SSN # :2332</u>, including but not limited to all insurance files, underwriting files, investigation files, application files, insurance policies, applications for insurance, all documents containing the signature of claimant, documents involving claims submitted on the policies, all correspondence and communications with claimant, records of all transactions, agreements, records stored on any computer system, computer printouts, and any and all other writings of any nature prepared at any time which related in any way to claimant including, without limitation, all such records and documents until the date the response is made to this request**

4. Specific description of the purpose for each use or disclosure (or write "At the request of the individual" in this space): <u>**At the request of the individual**</u>

*\*\*\*Please complete reverse side.\*\*\**

5. I understand that I may revoke this authorization at any time by sending a letter to the person or organization listed in paragraph one, except to the extent that the person(s) and/or organization(s) named above have taken action in reliance on this authorization. If I do not sign this form or if I later revoke my authorization, the services provided to me by the person or organization listed in paragraph one will not be affected in any way.

6. This authorization expires on <u>1 calendar year from receipt of this notice</u>, or in the event that
                                                                                                    (date)

<u>UPON RECEIPT OF MEDICAL RECORDS BY THOMAS SINCLAIR</u>, whichever occurs first.
                                                                                           (event)

I have had the opportunity to read and consider the contents of this authorization. I confirm that the contents are consistent with my direction.

*Cathy Cleiland*
Signed                                                      7-27-06
                                                            Date

Name: <u>Cathy Cleiland</u>

Address: _____ Clio, AL _____ 1

Telephone: _____          Social Security No.: <u>2332</u>

_____
Relationship or Authority of Personal Representative
(if applicable)

---

[1] Protected health information ("PHI") is health information that is created or received by a health care provider, health plan, or health care clearinghouse which relates to: 1) the past, present, or future physical or mental health of an individual; 2) the provision of health care to an individual; or 3) the past, present, or future payment for the provision of health care to an individual. To be protected, the information must be such that it identifies the individual or provides a reasonable basis to believe that the information can identify the individual. <u>45 C.F.R. 164.508</u>.
[2] These laws apply to health plans, health care providers, and health care clearinghouses.



**CAMPBELL WALLER & POER, L.L.C.**

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

Received
Benefits Administration

AUG 2 1 2006

Ron Truex
Retirement Plans

August 4, 2006

**VIA CERTIFIED MAIL**
Temple-Inland Benefits
Administrative Committee
1300 South Mopac Expressway
Austin, TX 78746

    Re:    **Cathy Cleiland**

Dear Sir/Madam:

    This firm has been retained by Cathy Cleiland with regard to a claim for benefits under the terms of the employee welfare benefit plan(s) or pension plan(s) in which the above referenced individual was a participant and/or beneficiary. Please direct any and all correspondence, and all contact regarding this matter, to this firm.

    If it is your company's contention that the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et. seq. applies in this matter, then please produce any and all "relevant" (as defined within 29 C.F.R. § 2560.503-1) documents to include the policy, summary plan description, or any other documents specified within 29 U.S.C. § 1001 et. seq. and 29 C.F.R. § 2560.503-1. These documents should include any and all information upon which you based your decision regarding any claim for benefits, and all documents pertaining to or referencing the employee welfare benefit plan(s) and/or employee pension plans under the terms of which the above referenced individual is or was a beneficiary and/or participants.

    These documents are requested pursuant to the rights specified within 29 U.S.C. § 1132 (c). Your response should include any "relevant" ERISA documents, plan documents, claim file documents, any manuals, disability guidelines, or any other documents pertaining to the guidelines under which the claim was determined, and any brochures, handbooks, employee benefit guides, pension plan documents detailing any and all benefits provided to the above referenced individual.

    Sincerely,

    'DICTATED, BUT NOT READ"

    Thomas O. Sinclair, Esq.

TOS/me
Enclosure
cc: Cathy Cleiland

*HIPAA-Compliant PHI Release Form*

## Authorization for Disclosure of Protected Health Information

I, **Cathy Cleiland**, authorize the disclosure of my protected health information[1] as described herein. I understand that this authorization is voluntary and made to confirm my direction. I understand that, if the person(s) or organization(s) that I authorize to receive my protected health information are not subject to federal and state health information privacy laws,[2] subsequent disclosure by such person(s) or organization(s) may not be protected by those laws.

1. I authorize the following person(s) and/or organization(s) <u>to disclose</u> my protected health information (as specified below):

   Name(s): <u>Administrative Committee</u>

   Organization: <u>Temple-Inland Benefits</u>

   Address: <u>1300 South Mopac Expressway, Austin, TX 78746</u>

   Received
   Benefits Administration

   AUG **2 1** 2006

   Ron Truex
   Retirement Plans

2. I authorize the following person(s) and/or organization(s) <u>to receive</u> my protected health information, as disclosed by the person(s) and/or organization(s) above.

   Name(s) <u>Thomas O. Sinclair</u>

   Organization(s) <u>Campbell, Waller, & Poer</u>

   Address <u>2100A Southbridge Parkway, Suite 450, Birmingham, AL 35209</u>

3. Specific description of the protected health information that I authorize for disclosure (authorization to disclose psychotherapy notes must be separate):

   **Any and all documents and records relating in any manner to <u>Cathy Cleiland, DOB</u>
   <u>_____/1957, SSN_____2332</u>, including but not limited to all insurance files,
   underwriting files, investigation files, application files, insurance policies, applications
   for insurance, all documents containing the signature of claimant, documents involving
   claims submitted on the policies, all correspondence and communications with
   claimant, records of all transactions, agreements, records stored on any computer
   system, computer printouts, and any and all other writings of any nature prepared at
   any time which related in any way to claimant including, without limitation, all such
   records and documents until the date the response is made to this request**

4. Specific description of the purpose for each use or disclosure (or write "At the request of the individual" in this space): **<u>At the request of the individual</u>**

*\*\*\*Please complete reverse side.\*\*\**

5. I understand that I may revoke this authorization at any time by sending a letter to the person or organization listed in paragraph one, except to the extent that the person(s) and/or organization(s) named above have taken action in reliance on this authorization. If I do not sign this form or if I later revoke my authorization, the services provided to me by the person or organization listed in paragraph one will not be affected in any way.

6. This authorization expires on <u>1 calendar year from receipt of this notice</u>, or in the event that
(date)

<u>UPON RECEIPT OF MEDICAL RECORDS BY THOMAS SINCLAIR</u>, whichever occurs first.
(event)

I have had the opportunity to read and consider the contents of this authorization. I confirm that the contents are consistent with my direction.

*Cathy Cleiland*
Signed

8-4-06
Date

Name: <u>Cathy Cleiland</u>

Address: _____ Clio, AL _____

Telephone: _____   Social Security No.: ___ -2332

Received
Benefits Administration

AUG 2 1 2006

Ron Truex
Retirement Plans

_____
Relationship or Authority of Personal Representative
(if applicable)

---

[1] Protected health information ("PHI") is health information that is created or received by a health care provider, health plan, or health care clearinghouse which relates to: 1) the past, present, or future physical or mental health of an individual; 2) the provision of health care to an individual; or 3) the past, present, or future payment for the provision of health care to an individual. To be protected, the information must be such that it identifies the individual or provides a reasonable basis to believe that the information can identify the individual. <u>45 C.F.R. 164.508</u>.
[2] These laws apply to health plans, health care providers, and health care clearinghouses.

**Temple·Inland**

September 12, 2006

Thomas O. Sinclair, Esq.
Campbell Waller & Poer, L.L.C.
2100-A Southbridge Parkway, Suite 450
Birmingham, AL 35209

Re: Cathy Cleiland

Dear Mr. Sinclair:

Per your request dated August 4, 2006, enclosed please find the following health and
welfare plan documents:

1. Summary Plan Description for the Temple-Inland Disability Health and Welfare
   Plan as Amended and Restated Effective January 1, 2002.
2. Group Long Term Disability Insurance Certificate, Life Insurance Company of
   North America, Policy Number FLK-020104 inclusive of Amendments through
   February 14, 2005.
3. Summary Plan Description for the Temple-Inland Group Medical Plan
   Administered by Blue Cross and Blue Shield of Texas, Group #90189 PPO
   effective January 1, 2005.
4. Summary Plan Description for Temple-Inland Group Benefits Plan, Volume II-A
   dated January 1, 2000. This SPD is being provided for the Life Insurance
   Benefits.

If you have any other questions or need additional information, please let me know.

Sincerely,

*Sharon McClish*

Sharon McClish, CEBS
Lead Health and Welfare Administrator
512.434.3909

1300 South Mopac Austin, Texas 78746  Tel 512.434.5800



**CAMPBELL WALLER & POER, L.L.C.**

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

August 4, 2006

**VIA CERTIFIED MAIL**
Temple-Inland Forest Products Corporation
P. O. Drawer N
303 South Temple Drive
Diboll, TX 75941

      Re:    **Cathy Cleiland**

Dear Sir/Madam:

      This firm has been retained by Cathy Cleiland with regard to a claim for benefits under the terms of the employee welfare benefit plan(s) or pension plan(s) in which the above referenced individual was a participant and/or beneficiary. Please direct any and all correspondence, and all contact regarding this matter, to this firm.

      If it is your company's contention that the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et. seq. applies in this matter, then please produce any and all "relevant" (as defined within 29 C.F.R. § 2560.503-1) documents to include the policy, summary plan description, or any other documents specified within 29 U.S.C. § 1001 et. seq,.and 29 C.F.R. § 2560.503-1. These documents should include any and all information upon which you based your decision regarding any claim for benefits, and all documents pertaining to or referencing the employee welfare benefit plan(s) and/or employee pension plans under the terms of which the above referenced individual is or was a beneficiary and/or participants.

      These documents are requested pursuant to the rights specified within 29 U.S.C. § 1132 (c). Your response should include any "relevant" ERISA documents, plan documents, claim file documents, any manuals, disability guidelines, or any other documents pertaining to the guidelines under which the claim was determined, and any brochures, handbooks, employee benefit guides, pension plan documents detailing any and all benefits provided to the above referenced individual.

      Sincerely,

      'DICTATED, BUT NOT READ"

      Thomas O. Sinclair, Esq.

TOS/me
Enclosure
cc: Cathy Cleiland

RECEIVED
512.434.4942
AUG 0 8 2006
Initials
Health/Welfare

TempleInland/Cleiland 010

# COPY

From: Origin ID: (512)434-8519
Donna Henson
Temple-Inland Corp Services
1300 S. Mopac Expressway

Austin, TX 78746

**FedEx**
Express

**E**

Ship Date: 13SEP06
ActWgt: 1 LB
System#: 3374830/INET2500
Account#: S *********

REF: 33801444

Delivery Address Bar Code

SHIP TO: (205)803-0051          BILL SENDER
**Thomas Sinclair**
**Campbell Waller & Poer, L.L.C.**
**2100-A Southbridge Parkway**
**Suite 450**
**Birmingham, AL 35209**

**PRIORITY OVERNIGHT**                    **THU**
                                          Deliver By:
                                          14SEP06
TRK# **7911 1950 9554**   FORM
                          0201            **BHM**    A1

**35209**   -AL-US

## XH RLIA



Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

CAMPBELL
WALLER &
POER, L.L.C.

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

November 27, 2006

Temple-Inland Benefits
Administrative Committee
1300 South Mopac Expressway
Austin, TX 78746

Re:    **Cathy Cleiland**

Dear Sir/Madam:

Attached hereto you will find a copy of correspondence from CIGNA indicating that your company apparently failed to provide notice to CIGNA that Ms. Cleiland was a participant in the life insurance policy program. Please provide them with that notice and produce any documents pertaining to life insurance policies under which Ms. Cleiland was a participant and/or beneficiary.

Please file the necessary documents with CIGNA and/or any life insurance policy carrier to properly document Ms. Cleiland's claim for any available benefits under that policy.

Also, please note that CIGNA is claiming that they didn't administer the short-term disability claim. Please produce all documents pertaining to Ms. Cleiland's short-term disability claim.

You have previously been provided with Ms. Cleiland's authorization to produce these documents and we look forward to your production within the time periods set out under ERISA.

Sincerely,

Thomas O. Sinclair, Esquire

TOS/me
Enclosure
cc:    Temple-Inland Forest Products Corporation
       Ms. Cathy Cleiland
       Terry Key, Esquire

Cornelius, Cecilia

| From: | Archacki, Kelli 212 [KELLI.ARCHACKI@cigna.com] |
|---|---|
| Sent: | Thursday, June 28, 2007 3:35 PM |
| To: | Cornelius, Cecilia |
| Subject: | RE: Cathy Cleiland-LTD Denied |

Hello Cecilia,

I reviewed the information in our system regarding Cathy Cleiland and this is what I show:

| 11/21/05 | claim was originally denied, the medical we received did not support her continued disability |
|---|---|
| 12/29/05 | appeal submitted |
| 03/13/06 | denial was upheld |
| 01/23/07 | she submitted a second appeal |
| 03/20/07 | denial was once again upheld |

Let me know if you need anything else.

Thanks,
Kelli

*Kelli Archacki*
Claim Manager, Dallas Claims Office
CIGNA Disability Management Solutions
E Mail: Kelli.Archacki@CIGNA.com
1-800-352-0611 ext. 1294
Local: 972.952.1294
Network: 933.1294
Fax: 860.731.3413

***Confidentiality Notice***: If you have received this e-mail in error, please immediately notify the sender by e-mail at the address shown. This e-mail transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it was intended even if addressed incorrectly. Please delete from your files if you are not the intended recipient. Thank you for your compliance.

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2007 by CIGNA

-----Original Message-----
From: Cornelius, Cecilia [mailto:CeciliaCornelius@templeinland.com]
Sent: Thursday, June 28, 2007 3:19 PM
To: Archacki, Kelli 212
Subject: Cathy Cleiland-LTD Denied
Importance: High

Kelli, could you please see if you can help me. I need to know the exact date as to when LTD ended and the reason without giving private health information, did she file an appeal and when(need date), was her appeal denied again(need date). The reason I need this information right away is because we need to provide it to our legal dept. Thank you, CC

From: Archacki, Kelli 212 [mailto:KELLI.ARCHACKI@cigna.com]
Sent: Wednesday, December 07, 2005 9:09 AM
To: Cornelius, Cecilia

6/28/2007

Cecilia,

This is to let you know that we have closed Cathy Cleiland's claim at the any occupation phase. Attached is the letter for your records.

Thank you,

<<temple inland cleiland.doc>>

**Kelli Archacki**
Case Manager, Dallas Claims Office
CIGNA Disability Management Solutions
E Mail: Kelli.Archacki@CIGNA.com
1-800-352-0611 ext. 1294
Local: 972.952.1294
Network: 933.1294
Fax: 860.731.3413

***Confidentiality Notice***:  If you have received this e-mail in error, please immediately notify the sender by e-mail at the address shown.  This e-mail transmission may contain confidential information.  This information is intended only for the use of the individual(s) or entity to whom it was intended even if addressed incorrectly.  Please delete from your files if you are not the intended recipient.  Thank you for your compliance.

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2004 by CIGNA

**********    Confidentiality Notice    **********
This electronic transmission and any attached documents or other writings
 are confidential and are for the sole use of the intended recipient(s)
identified above. This message may contain information that is privileged,
confidential or otherwise protected from disclosure under applicable law.
If the receiver of this information is not the intended recipient, or the
employee, or agent responsible for delivering the information to the
intended recipient, you are hereby notified that any use, reading,
dissemination, distribution, copying or storage of this information is
strictly prohibited. If you have received this information in error, please
notify the sender by return email and delete the electronic transmission,
including all attachments from your system.

--------------------------------------------------------------------
CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the
sender by e-mail at the address shown. This email transmission may contain confidential information.
This information is intended only for the use of the individual(s) or entity to whom it is intended even if
addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for
your compliance. Copyright 2005 CIGNA

--------------------------------------------------------------------
CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender
by e-mail at the address shown. This email transmission may contain confidential information. This information

6/28/2007

Kelli Archacki
Claim Manager

December 7, 2005    F I L E     A Group Insurance

Life · Accident · Disability

TEMPLE INLAND
ATTN: CECILIA CORNELIUS

Routing 212
12225 Greenville Ave
Suite 1000
Dallas, TX 75243
Telephone  800.352.0611,
Ext. 1294
Facsimile  860.731.3413
Kelli.Archacki@cigna.com

Re:  Name              :    Cathy Cleiland
     Policy #          :    FLK 20104 (LTD)
     Account Name      :    Temple Inland
     Underwriting by   :    Life Insurance Company or
North America

Dear Ms Cornelius:

This letter is in reference to the above mentioned Long Term Disability
(LTD) Benefits. We have completed our investigation of the above
captioned claim for Long Term Disability benefits.

Ms. Cleiland does not meet the "Definition of Disability" as
defined in the LTD Policy. Therefore, his claim has been denied
for continued Long-Term Disability (LTD) benefits.    No further
benefits are payable.

The right to appeal our denial under the Employee Retirement Income
Security Act of 1974 (ERISA) has been explained to this employee.

If either you or the employee has any questions regarding the appeal
rights under ERISA, please let us know.  Please feel free to contact our
office or to call me at 1.800.352.0611 extension 1294 from 8:00 a.m. to
4:30 p.m. Central Time, Monday through Friday.  If you reach my voice
mail, leave a message and your call will be returned within one business
day.


Sincerely,


Kelli Archacki

Cc: File

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA
Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries
include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life
Insurance Company.

ornelius, Cecilia

---

**rom:**      Archacki, Kelli 212 [KELLI.ARCHACKI@cigna.com]
**ent:**      Wednesday, December 07, 2005 9:09 AM
**o:**      Cornelius, Cecilia
**ubject:** Cathy Cleiland

ecilia,

his is to let you know that we have closed Cathy Cleiland's claim at the any occupation phase.  Attached is the letter for your cords.

hank you,

<temple inland cleiland.doc>>

*elli Archacki*
ase Manager, Dallas Claims Office
IGNA Disability Management Solutions
 Mail: Kelli.Archacki@CIGNA.com
-800-352-0611 ext. 1294
ocal: 972.952.1294
etwork: 933.1294
ax: 860.731.3413

***Confidentiality Notice***:  If you have received this e-mail in error, please immediately notify the sender by e-mail at the address shown.  This e-mail transmission may contain confidential information.  This information is intended only for the use of the individual(s) or entity to whom it was intended even if addressed incorrectly.  Please delete from your files if you are not the intended recipient.  Thank you for your compliance.

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2004 by CIGNA

---

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2005 CIGNA

12/7/2005

TempleInland/Cleiland 016

Bridgette Taylor
Case Manager

November 26, 2003

A Group Insurance

| Claimant: | Cathy Cleiland |
| Policy: | FLK 020104 |
| Policy Name: | Temple Inland |
| Company: | Life Insurance Company of North America |

12225 Greenville Ave
Suite 1000
Dallas, TX 75243-9382
Telephone 800-352-0611
Extension 5646
Facsimile 860.731.3041

Dear Ms. Cleiland:

Your claim for Long Term Disability (LTD) benefits has been approved. Benefits will begin after the Elimination Period, which ends on November 10, 2003. Your first check in the amount of $2500.00 represents benefits for the time period of November 10, 2003, through December 9, 2003. Your current gross benefit of $2500.00 per month will be issued at monthly intervals at the **end** of each benefit period.

Please refer to the enclosed calculation sheets for further explanation of how your benefit was calculated.

The Gross Disability Benefit for an Employee of Employer Mutual Casualty is the lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit.

Your LTD benefits may be reduced by any other benefits you (and your dependents, if applicable) receive. Please call us if you are receiving or should become entitled to receive any income from other sources such as:

- Social Security Disability or Retirement
- Statutory Disability**
- VA
- Worker's Compensation
- No-Fault
- Employer Pension, etc.
- Any other benefit related to your disability

Ms. Koepp, we were informed that you are receiving Social Security Retirement benefits. Please send us a copy of your award letter for Social Security Retirement for your file.

**If you work in California, Hawaii, New Jersey, New York, Rhode Island, or Puerto Rico, you should be eligible for disability benefits under Statutory Disability Benefit Plans.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

November 26, 2003
Page 2

We will continue to evaluate your claim, and we will request additional information as needed.  To continue receiving benefits, you must meet the following:

Disability

The Employee is considered Disabled if, solely because of Injury or
    Sickness, he or she is either:
    1. unable to perform all the material duties of his or her Regular
        Occupation or a Qualified Alternative, or
    2. unable to earn 80% or more of his or her Indexed Covered
        Earnings.

Regular Occupation

The occupation the Employee routinely performs at the time the
Disability begins.  In evaluating the Disability, the insurance Company
will consider the duties of the occupation as it is normally performed
in the general labor market in the national economy.

Qualified Alternative

An occupation that meets all of the conditions that follow:
    1. the material duties of the occupation can be performed by the
        Employee based on his or her training, experience or education
    2. it is within the same geographic area as the Regular Occupation
        the Employee holds with the Employer on the date the Employee's
        Disability begins
    3. a job in that occupation is offered to the Employee by the
        Employer; and
    4. the wages for that occupation, including commissions and bonus
        are 80% or more of the Employee's Indexed Covered Earnings.

Definition of Covered Earnings

Covered Earnings mans an Employee's annual wage or salary as reported by
the Employer of work performed for the Employer as in effect just prior
to the date Disability begins.  Covered Earnings are determined
initially on the date an Employee applies for coverage.  A change in the
amount of Covered Earnings is effective on the date of the change, if
the Employer gives us written notice of the change and the required
premium is paid.

Indexed Covered Earnings:

For the first 12 months Monthly Benefits are payable, Indexed Covered
Earnings will be equal to Covered Earnings.  After 12 Monthly Benefits
are payable, Indexed Covered Earnings will be an Employee's Covered
Earnings plus an increase applied on each anniversary of the date

TempleInland/Cleiland 018

November 26, 2003
Page 3

*Monthly Benefits became payable. The amount of each increase will be
the lesser of:*

1. *10% of the Employee's Indexed Covered Earnings during the
   preceding year of Disability; or*
2. *the rate of increase in the Consumer Price Index (CPI-W) during
   the preceding calendar year.*

Termination of Disability Benefits

*Benefits will end on the earliest of the following dates:*

1. *the date the Employee earns 80% or more of his or her Indexed
   Covered Earnings;*
2. *the date the Insurance Company determines he or she is not
   Disabled;*
3. *the end of the Maximum Benefit Period;*
4. *the date the Employee dies*
5. *the date the Employee refuses, without Good Cause, to fully
   cooperate in all required phases of the Rehabilitation Plan;*
6. *the date the Employee refuses, without Good Cause, to fully
   cooperate in a Transitional Work Arrangement;*
7. *the date the Employee is no longer receiving Appropriate Care;*
8. *the date the Employee fails to cooperate with the Insurance
   Company in the administration of the claim. Such cooperation
   includes, but is not limited to, providing any information or
   documents needed to determine whether benefits are payable or
   the actual benefit amount due.*

Federal Income Taxes may be deducted from your Long-Term Disability
benefits on an entirely voluntary basis. Should you wish to have all or
a portion of your FIT taxes due on your LTD benefits withheld from your
Long Term Disability check, you will need to complete a Federal Tax
Withholding Form (W-4S), which you may obtain through our office or your
local IRS office, and submit it to our office in order for withholding
to commence on future checks. The law requires that you designate on
the Form W-4S the amount you want withheld and this amount cannot be
less than $88.00 per month and must be expressed in whole dollars. You
may cancel or change your deduction amount at any time by completing
another Form W-4S.

If you have any questions in regard to the contractual definitions
listed above, please feel free to contact me.

Sincerely,


Bridgette Taylor
Case Manager







TempleInland/Cleiland 022



TempleInland/Cleland 023

## TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN
## ELECTION OF MEDICAL BENEFITS

CATHY K CLEILAND

MONROEVILLE  AL

*Please indicate any corrections in your name, address, etc. in this section. Remember that a new address could result in different options.*

Social Security Number:        ⸝-2332
Date of Birth:                 ⸍ /1957
Date of Disability:            05/14/2003
Effective Date:                12/01/2003
Amount of Life Insurance:      $309,000

**MEDICAL OPTIONS**

Write the appropriate option code and the dependent coverage level in the box below to indicate the option you are electing.

| | | COVERAGE LEVEL | | | | Option Code |
|---|---|---|---|---|---|---|
| Option Code | AL01 | 1<br>Individual | 2<br>Employee & Spouse | 3<br>Employee & Children | 4<br>Family | 0 6 4 |
| 064 | BCBS of Alabama PPO | 0.00 | 0.00 | 0.00 | 0.00 | Coverage Level<br>1 |

**REMINDER:** If you elect a medical option other than one of the options available through Cigna, Benefit Planners or Aetna, you may need to complete a separate enrollment form. If a separate enrollment form is required, the form will be included in the information packet for that option. Return that form along with this enrollment form  in the enclosed stamped, self-addressed envelope or to the the address on page 2.

**DEPENDENT INFORMATION**

Please list eligible dependents to be covered.  In addition, if you elect an HMO or HMO-type option that requires a Primary Care Physician (PCP), please list the PCP number of the primary care physician you have selected for each covered family member, including yourself. The PCP numbers are listed in the provider directory under the physician's name.

| Social Security Number | Name | Relationship* | Gender | Birth Date | PCP Number |
|---|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |

*Relationship:  SP-spouse, CH-child, ST-student, HC-disabled child

Tuesday, November 11, 2003          FP-TD-10206          Page 1 of 2

TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN

ELECTION OF MEDICAL BENEFITS

## DECLINATION OF COVERAGE

Check the box below if you do not want to participate in the Temple-Inland Disability Health and Welfare Plan. If you decline to participate, you may not enroll at any time in the future.

☐    I DECLINE to participate in the Temple-Inland Disability Health and Welfare Plan.

## PARTICIPANT AUTHORIZATION & SIGNATURE

I agree to the terms of any welfare benefit plan(s) in which I may be enrolled from time to time, as they may be amended, and have designated my current elections above. Any previous elections relating to the same or similar benefits are hereby revoked.

I understand this plan may be amended or terminated at any time.

Participant Signature _Cathy L. Cleland_ Date _11-18-2003_

Phone Number (optional) _____

Please return the completed enrollment form(s) to Human Resources or mail to the address shown below within 31 days of your loss of active coverage date.

Temple-Inland Inc.
Teah Bowling - Corporate Benefits
P. O. Drawer N
Diboll, TX 75941

TempleInland/Cleland 025

# -FAX TRANSMISSION-

## TEMPLE-INLAND CORPORATE SERVICES

### BENEFITS ADMINISTRATION
#### 1300 S. MOPAC
#### AUSTIN, TX 78746
#### PHONE (512) 434-3900
#### FAX (512) 434-5626

*FAXED 12/2/03*

**DATE:** *Maria Crawford*

**TO:** _____

**FAX #** _____

**FROM:**   To contact the follow     *800.239.9610*     r 4 digit extension

*BCBS Alabama*
*Fax #*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Roger Marietti | 3913 | | | ] Carolyn Penna | 3920 |
| ☐ Jerry Fischer | 5645 | | | ] Anissa Valdez | 3945 |
| ☐ Sharon McClish | 3909 | ☐ Dan Smith | 3105 | ☐ Shannon Barrow | 5665 |
| ☐ Stacy Russell | 3924 | ☐ Sue Stanford | 5850 | ☐ Ron Truex | 5659 |
| ☒ Cecilia Cornelius | 4942 | ☑ Charles Hopkins | 5598 | ☐ Pat McClintick | |

**# OF PAGES:** *4* , including this cover sheet.

**COMMENTS:** *Urgent Eligibility Update Thank you*

*This communication is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited without the express consent of the sender or intended recipient. If you receive this communication in error, please contact Shannon Barrow at 512/434-3900.*

Cornelius, Cecilia (TIFPC)

*877 912 9020*
*BCBS — FAX #*

| | |
|---|---|
| **From:** | Frank, Laura [lfrank@synhrgy.com] |
| **Sent:** | Tuesday, December 02, 2003 4:06 PM |
| **To:** | Frank, Laura; Cornelius, Cecilia (TIFPC) |
| **Cc:** | McManus, Tracy; McClish, Sharon (Inland); Russell, Stacy (TIFPC) |
| **Subject:** | RE: Urgent Eligibility Update-Cathy K Cleland |

Good Afternoon. This participant has been terminated from active coverage. Maria from BCBS of AL said to go ahead and send over the disabled enrollment form.


-----Original Message-----
From: Frank, Laura
Sent: Tuesday, December 02, 2003 12:52 PM
To: 'Cornelius, Cecilia (TIFPC)'; Frank, Laura
Cc: McManus, Tracy; McClish, Sharon (Inland); Russell, Stacy (TIFPC)
Subject: RE: Urgent Eligibility Update-Cathy K Cleland


Sure, we'll let you know when she's taken care of.


-----Original Message-----
From: Cornelius, Cecilia (TIFPC) [mailto:Ccorneli@templeinland.com]
Sent: Tuesday, December 02, 2003 11:31 AM
To: 'lfrank@synhrgy.com'
Cc: 'tmcmanus@synhrgy.com'; McClish, Sharon (Inland); Russell, Stacy (TIFPC)
Subject: Urgent Eligibility Update-Cathy K Cleland
Importance: High


Laura, could you please assist us on the following issue. (Above employee is changing from active to disabled coverage effective 12/01/03). We are trying to manually add above disabled employee on BCBS of Alabama, but they need the termination information to be passed on to them so that they can add her on BCBS. Can we get synhrgy to contact BCBS (Maria Crawford-800.239.9610) and provide the information they need to manually add above member.

ID .

Thank you,
Cecilia Cornelius
Health & Welfare Administrator
E-Mail: ccorneli@templeinland.com
Phone: (512) 434-4942
Fax: (512) 434-5626

CONFIDENTIALITY NOTICE: This e-mail transmission and any attachments may contain confidential or legally privileged information. This information is intended only for the necessary business use of the individual(s) or entity to whom it is intended even if addressed incorrectly. If you have received this e-mail in error, please immediately notify the sender by e-mail at the address shown. You should delete this entire transmission from your files if you are not the intended recipient and you are prohibited from retaining, distributing, disclosing or using any information contained herein. Thank


12/2/2003

**TEMPLE-INLAND**
**2007 ANNUAL ENROLLMENT FORM**
**FOR DISABLED PARTICIPANTS**

CATHY CLEILAND

CLIO AL .

| | |
|---|---|
| Date of Birth: | 1957 |
| Date of Disability: | 05/14/2003 |
| Amount of Life Insurance: | $309,000.00 |

---

**Medical Information:**

Your current medical election and coverage level is shown below. If you would like to change your election for 2007, write the appropriate option code and coverage level in the box below to indicate the coverage you are electing for 2007.

> **Return this form only if you are making changes. If you are not making changes keep this enrollment form for your 2007 records.**

**Your current medical election is: PB01   Coverage Level 1**

|  | | Coverage Level | |
|---|---|---|---|
| Option Code | | You Only 1 | |
| PA01 | Aetna PPO 300 | $0.00 | |
| PB01 | Blue Cross Blue Shield PPO 300 | $0.00 | |
| 999 | No Coverage | $0.00 | |

| Option Code |
|---|
| |
| Coverage Level |
| ——— |

Benefit Summaries are available on the internet at www.tinbenefits.mercerhrs.com. To login, use SSN 000000097 and PIN 000097. For further instructions see the enclosed letter.

**Over**       422802332

FP-TD-10206—Group 3

TempleInland/Cleiland 028

**Temple·Inland**

November 14, 2006

Dear Temple-Inland Retiree and Eligible Dependents:

Enclosed is your Temple-Inland 2007 Annual Enrollment Form, which includes your current medical election and coverage level. If you want to change carriers or drop dependents, if any, return your enrollment form to the address on the back of your enrollment form by November 25, 2006.

There are no plan design changes to the Preferred Provider Organization (PPO) for 2007.

If you would like to view or print a 2007 Schedule of Benefits for any plan listed on your enrollment form, please logon to the Internet at www.tinbenefits.mercerhrs.com. To proceed at the "login" menu, enter the following information:

- SSN is 000000097
- PIN is 000097
- Click on the "login" button
- Go to the second bullet under "Non-Union" and click on the word "here" at the end of that line.
- Benefit summaries are listed in numeric order based on the 4-digit medical option code (example: PB01) shown on your enrollment form. Scroll down the page until you find the benefit summary you would like to view or print. Then click on the name of the plan option (example: Blue Cross Blue Shield PPO) to view or print the summary.

If you do not have access to the Internet, please call 877.437.3497, extension 4942, to request a Schedule of Benefits be mailed to you.

> **Remember, if you are satisfied with your medical elections, and you do not need to drop dependents, you do not need to return your enrollment form. Your current medical option will continue in 2007.**

If you have any questions regarding your plan options or your eligibility, please contact Temple-Inland Benefits Administration at 877.437.3497, ext. 4942.

Sincerely,

Temple-Inland Benefits Administration
512.434.4942

1300 South Mopac  Austin, Texas 78746  Tel 512.434.5800

Group 3-Disabled U85

**TEMPLE-INLAND**
**2006 ANNUAL ENROLLMENT FORM**
**FOR DISABLED PARTICIPANTS**

CATHY CLEILAND

Identification Number:
Date of Birth:
Date of Disability:        05/14/2003
Amount of Life Insurance: $309,000

**Medical Information:**

Your current medical election and coverage level is shown below. If you would like to change your election for 2006, write the appropriate option code and coverage level in the box below to indicate the coverage you are electing for 2006.

**Return this form only if you are making changes. If you are not making changes keep this enrollment form for your 2006 records.**

**Your current medical election is: PB01     Coverage Level 1**

| Option Code | | Coverage Level — You Only 1 |
|---|---|---|
| PA01 | Aetna PPO 300 | $0.00 |
| PB01 | Blue Cross Blue Shield PPO 300 | $0.00 |
| 999 | No Coverage | $0.00 |

| Option Code |
|---|
| |
| Coverage Level |
| _____ |

**Benefit Summaries are available on the internet at www.tinbenefits.mercerhrs.com. To proceed at the "login" screen enter the following information: SSN is 000000097, PIN is 000097. For further instructions see the enclosed letter.**

Over

TempleInland/Cleiland 030

**Temple-Inland**

November 11, 2005

Dear Temple-Inland Disabled Participant:

Enclosed is your 2006 Annual Enrollment Form, which includes your current medical election and coverage level. Please carefully review your current plan and carrier choice before making changes. If you want to change carriers or drop dependents, if any, return your enrollment form by November 25, 2005.

If you do not wish to make changes, you do not need to return your enrollment form. Your current medical option will continue in 2006.

There are no changes to the Preferred Provider Organization (PPO) plan for 2006.

If you would like to view or print a 2006 Benefit Summary for any plan listed on your enrollment form, please logon to the Internet at www.tinbenefits.mercerhrs.com. To proceed at the "login" menu, enter the following information:

- SSN is 000000097
- PIN is 000097
- Click on the "login" button
- Go to the second bullet under "Non-Union" and click on the word "here" at the end of that line.
- Benefit summaries are listed in numeric order based on the 4-digit medical option code (example: PB01) shown on your enrollment form. Scroll down the page until you find the benefit summary you would like to view or print. Then click on the name of the plan option (example: BlueCross BlueShield PPO) to view or print the summary.

If you do not have access to the Internet, please call 877.437.3497, extension 4942, to request a Benefit Summary be mailed to you.

> **Remember, if you are satisfied with your medical elections, and you do not need to drop dependents, you do not need to return your enrollment form. Your 2005 elections will continue for 2006.**

If you have any questions regarding these plans or your eligibility, please contact Temple-Inland Benefits Administration at 877.437.3497, ext. 4942.

Sincerely,

Temple-Inland Benefits Administration
512.434.4942

1300 South Mopac  Austin, Texas 78746  Tel 512.434.5800

Group IV Disableds

TempleInland/Cleiland 031

**TEMPLE-INLAND**
## 2005 ANNUAL ENROLLMENT FORM FOR DISABLED PARTICIPANTS

*Please indicate any corrections in your name, address, etc. in this section.*

CATHY CLEILAND

Social Security Number:
Date of Birth:
Date of Disability:          05/14/2003
Amount of Life Insurance:    $309,000

You must actively enroll in benefits during Annual Enrollment to ensure you have benefits in 2005. Write the appropriate option code and the coverage level in the box below to indicate the coverage you are electing for 2005. If you do not return your enrollment form you will automatically be enrolled in the Aetna PPO plan (Option PA01). Please return your form no later than November 22, 2004.

**MEDICAL OPTIONS**

Please elect coverage under one of the following medical options for you and your covered dependents.

|  |  | Coverage Level | Option Code |
|--|--|---|---|
| Option Code |  | You Only 1 | PB01 |
| PA01 | Aetna PPO 300 | $0.00 | Coverage Level |
| PB01 | Blue Cross Blue Shield PPO 300 | $0.00 | 1 |
| 999 | No Coverage | $0.00 | |

**Over**

11/22/04

TempleInland/Cleiland 032

**TEMPLE-INLAND**

2005 Anual Enrollment Form for Disabled Participants

**DEPENDENT COVERAGE**

To continue coverage on your covered dependents, please list them below.

| Name | Relationship | Social Security Number | Birth Date |
|------|--------------|------------------------|------------|
| | | | |
| | | | |
| | | | |

**Authorization**

I agree to the terms of any welfare benefit plan(s) in which I may be enrolled from time to time, as they may be amended, and authorize the elections and/or corrections as shown above. Any previous elections relating to the same or similar benefits are hereby revoked.

I understand this plan may be amended or terminated at any time. I also understand that contribution requirements for this plan may be amended at any time.

_Cathy X Cleiland_
Your Signature

_11/22/04_
Date

_____
Your phone number

Your completed enrollment form may be faxed to 1-512-434-5626 or mailed in the enclosed stamped, self addressed envelope no later than **November 22, 2004.**

Temple-Inland
Benefits Administration
Attn: Cecilia Cornelius
1300 South MoPac Expressway
Austin, TX 78746
Phone: 1-877-437-3497 ext. 4942

TempleInland/Cleiland 033

**TEMPLE-INLAND**

**2005 ANNUAL ENROLLMENT FORM FOR DISABLED PARTICIPANTS**

*Please indicate any corrections in your name, address, etc. in this section.*

CATHY CLEILAND

Social Security Number:
Date of Birth:
Date of Disability:          05/14/2003
Amount of Life Insurance:    $309,000

You must actively enroll in benefits during Annual Enrollment to ensure you have benefits in 2005. Write the appropriate option code and the coverage level in the box below to indicate the coverage you are electing for 2005. If you do not return your enrollment form you will automatically be enrolled in the Aetna PPO plan (Option PA01). Please return your form no later than November 22, 2004.

**MEDICAL OPTIONS**

Please elect coverage under one of the following medical options for you and your covered dependents.

| | | Coverage Level | | |
|---|---|---|---|---|
| Option Code | | *You Only* 1 | | **Option Code** |
| PA01 | Aetna PPO 300 | $0.00 | | |
| PB01 | Blue Cross Blue Shield PPO 300 | $0.00 | | **Coverage Level** |
| 999 | No Coverage | $0.00 | | |

**Over**

TempleInland/Cleiland 034

TEMPLE-INLAND

*2005 Anual Enrollment Form for Disabled Participants*

**DEPENDENT COVERAGE**

To continue coverage on your covered dependents, please list them below.

| Name | Relationship | Social Security Number | Birth Date |
|------|--------------|------------------------|------------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Authorization**

I agree to the terms of any welfare benefit plan(s) in which I may be enrolled from time to time, as they may be amended, and authorize the elections and/or corrections as shown above. Any previous elections relating to the same or similar benefits are hereby revoked.

I understand this plan may be amended or terminated at any time. I also understand that contribution requirements for this plan may be amended at any time.

_____        _____
Your Signature                          Date

_____
Your phone number

Your completed enrollment form may be faxed to 1-512-434-5626 or mailed in the enclosed stamped, self addressed envelope no later than **November 22, 2004.**

Temple-Inland
Benefits Administration
Attn: Cecilia Cornelius
1300 South MoPac Expressway
Austin, TX 78746
Phone: 1-877-437-3497 ext. 4942

TempleInland/Cleiland 035

*Temple-Inland*

November 11, 2004

Dear Temple-Inland Disabled Participant:

Temple-Inland will spend approximately $110 million on health care for its employees and retirees in 2004. Health care costs have been rising at a rate of 12% to 15% each year, and if that continues it will impact the Company's ability to remain competitive.

For the past several months, a taskforce has worked to explore new options that will not only help control these costs, but also provide high quality health care coverage for you and your family. As a first step to save costs, Temple-Inland is consolidating its many vendors and will offer two choices next year: Aetna and Blue Cross and Blue Shield. These two carriers offer extensive national networks of providers. HMOs have become prohibitively expensive and will not be offered next year.

The enclosed materials contain many more details about your choice of plans and carriers. Please read them carefully and be sure to enroll by the deadline indicated on your enrollment form.

Because all plans offered to you in 2004 are being terminated as of December 31, 2004, you must make a new election for 2005. If you do not return your enrollment form by the deadline, you will automatically be enrolled in the Aetna PPO plan for 2005.

If you have any questions regarding these plans or your eligibility, please contact Temple-Inland Benefits Administration at 1.877.437.3497, ext. 4942.

Sincerely,

Temple-Inland Benefits Administration
512.434.4942

TempleInland/Cleland 036

Templeinland/Cleiland 037



Templeland/Cleiland 038



Part A — Hospital

Part B — Medical Cost — $70.00
(Cathy is confused/can't understand/completed the disability



TempleInland/Cleiland 039



| EFFECTIVE DATE | PLAN | PLAN | OPTION | AMOUNT OF COVERAGE | EFF. DATE |
|---|---|---|---|---|---|
| 01/01/2003 | Child Life and AD&D | No Coverage | No Coverage | $0.00 | 11/30/2003 |
| 01/01/2003 | Dental | CIGNA Comprehen | You Only | $0.00 | 11/30/2003 |
| 01/01/2003 | Dependent Care Spe | No Coverage | No Coverage | $0.00 | 11/30/2003 |
| 01/01/2003 | Employee AD&D | 6 x pay | 6 x pay | $309,000.00 | 11/30/2003 |
| 01/01/2003 | Employee Life | 6 x pay | 6 x pay | $309,000.00 | 11/30/2003 |
| 01/01/2003 | Employee Life Credit | Employee Life Cred | Employee Life Credi | $52,000.00 | 11/30/2003 |
| 01/01/2003 | Health Care Spendin | No Coverage | No Coverage | $0.00 | 11/30/2003 |
| 01/01/2003 | Long Term Disability | $50,000 (tax-free) | $50,000 (tax-free) | $2,575.00 | 11/30/2003 |
| 01/01/2003 | LTD Credit | LTD Credit | LTD Credit | $0.00 | 11/30/2003 |
| 01/01/2003 | Medical | BCBS of Alabama | You Only | $0.00 | 11/30/2003 |
| 01/01/2003 | Medical Credit | Medical Credit | You Only | $0.00 | 11/30/2003 |
| 01/01/2003 | Spouse Life and AD | $25,000 | $25,000 | $25,000.00 | 11/30/2003 |
| 01/01/2002 | CLIFEADD | 10K | 10K | $10,000.00 | 07/04/2002 |

*(handwritten note)* Wants all SPD's ✓



TempleInland/Cleiland 041

Templeland/Cleiland 042





Templeinland/Clelland 043





**Hunter, Vera (TIFPC)**

| | |
|---|---|
| **From:** | Dover, Cathy (TIFPC) |
| **Sent:** | Thursday, July 15, 2004 9:53 AM |
| **To:** | Cornelius, Cecilia (TIFPC); Hunter, Vera (TIFPC) |
| **Subject:** | Disabled Participant - Address Change |

Please update the address for the following disabled participant:

Cathy Cleiland (xxx-xx-2332)
:
Clio, AL 36017

When you update the database, does that also update the carrier's files?

**Cathy Dover, PHR**
**Human Resources Manager, Benefits**
**Temple-Inland**
Phone:    (936)829-1643
E-mail: cathydover@templeinland.com

1

```
************************
***    TX REPORT    ***
************************

TRANSMISSION OK

TX/RX NO            1681
CONNECTION TEL                 918779129020
CONNECTION ID
ST. TIME            07/15 10:36
USAGE T             00'45
PGS. SENT           2
RESULT              OK
```

# -FAX TRANSMISSION-

## TEMPLE-INLAND CORPORATE SERVICES

### BENEFITS ADMINISTRATION
### 1300 S. MOPAC
### AUSTIN, TX 78746
### PHONE (512) 434-3900
### FAX (512) 434-5626

DATE: 7/15/04

TO: Maria Crawford

FAX# 877- 912-7020

FROM: To contact the following, please dial (512) 434 + their 4 digit extension

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ Roger Marietti | 3913 | ☐ Lisa Hudson | 5571 | ☐ Anissa Valdez | 3945 |
| ☐ Jerry Fischer | 5645 | ☐ Diana Brittain | 3941 | ☐ Shannon Barrow | 5665 |
| ☐ Sharon McClish | 3909 | ☐ Sue Stanford | 5850 | ☐ Ron Truex | 5659 |
| ☐ Stacy Russell | 3924 | ☐ Charles Hopkins | 5598 | ☐ Pat McClintick | 7830 |
| ☐ Cecilia Cornelius | 4942 | ☐ Carolyn Penna | 3920 | ☒ Vera Hunter | 7902 |

# OF PAGES: _____2_____, including this cover sheet.

COMMENTS:

Please update address change
Thanks Vera Hunter

7/15/2004

Dear Maria Crawford,

Please update the address for the following disabled participant:

Cathy Cleiland (xxx-xx-2332)

Clio, AL 36017

42395-00D is the plan #.

Any questions, please contact me at 512-486-7902

Thank you.

Vera Hunter

*Vera Hunter*



**TEMPLE-INLAND**

**Corporate Services**

**Cecilia Cornelius**
Health & Welfare Administrator
Benefits Administration

1300 S MoPac Expressway
Austin, TX 78746
Phone: (512) 434.4942
Fax: (512) 434.5626
Email: ccorneli@templeinland.com

Memo To:          Cathy Dover

Memo From:     Cecilia Cornelius

Date:                November 11, 2003

Enclosed is a Temple-Inland Disability Health and Welfare Plan Election of Medical Benefits enrollment form.  Please have the participant complete, sign and return it to the address shown on the bottom of the second page no later than December 31, 2003.  They MUST return the form by the deadline.

Be sure they understand they can only enroll those dependents who were eligible for coverage on the date of eligibility for the Temple-Inland Disability Health and Welfare plan.  No new additions allowed later.

If you have any questions, please let me know.

Thank you.

## TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN
## ELECTION OF MEDICAL BENEFITS

CATHY K CLEILAND
8 CHEROKEE DR #27
MONROEVILLE AL 36460

*Please indicate any corrections in your name, address, etc. in this section. Remember that a new address could result in different options.*

| | |
|---|---|
| Social Security Number: | .2332 |
| Date of Birth: | '1957 |
| Date of Disability: | 05/14/2003 |
| Effective Date: | 12/01/2003 |
| Amount of Life Insurance: | $309,000 |

**MEDICAL OPTIONS**

Write the appropriate option code and the dependent coverage level in the box below to indicate the option you are electing.

| | | COVERAGE LEVEL | | | | Option Code |
|---|---|---|---|---|---|---|
| Option Code | AL01 | 1<br>Individual | 2<br>Employee & Spouse | 3<br>Employee & Children | 4<br>Family | ___ ___ ___ |
| 064 | BCBS of Alabama PPO | 0.00 | 0.00 | 0.00 | 0.00 | Coverage Level<br>___ |

REMINDER: If you elect a medical option other than one of the options available through Cigna, Benefit Planners or Aetna, you may need to complete a separate enrollment form. If a separate enrollment form is required, the form will be included in the information packet for that option. Return that form along with this enrollment form in the enclosed stamped, self-addressed envelope or to the the address on page 2.

**DEPENDENT INFORMATION**

Please list eligible dependents to be covered. In addition, if you elect an HMO or HMO-type option that requires a Primary Care Physician (PCP), please list the PCP number of the primary care physician you have selected for each covered family member, including yourself. The PCP numbers are listed in the provider directory under the physician's name.

| Social Security Number | Name | Relationship* | Gender | Birth Date | PCP Number |
|---|---|---|---|---|---|
| _____ | _____ | _____ | ___ | _____ | _____ |
| _____ | _____ | _____ | ___ | _____ | _____ |
| _____ | _____ | _____ | ___ | _____ | _____ |
| _____ | _____ | _____ | ___ | _____ | _____ |

*Relationship: SP-spouse, CH-child, ST-student, HC-disabled child

TempleInland/Cleiland 048

**TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN**

**ELECTION OF MEDICAL BENEFITS**

---

**DECLINATION OF COVERAGE**

Check the box below if you do not want to participate in the Temple-Inland Disability Health and Welfare Plan.  If you decline to participate, you may not enroll at any time in the future.

☐  I DECLINE to participate in the Temple-Inland Disability Health and Welfare Plan.

**PARTICIPANT AUTHORIZATION & SIGNATURE**

I agree to the terms of any welfare benefit plan(s) in which I may be enrolled from time to time, as they may be amended, and have designated my current elections above.  Any previous elections relating to the same or similar benefits are hereby revoked.

I understand this plan may be amended or terminated at any time.

Participant Signature _____     Date _____

Phone Number (optional) _____

Please return the completed enrollment form(s) to Human Resources or mail to the address shown below within 31 days of your loss of active coverage date.

Temple-Inland Inc.
Teah Bowling - Corporate Benefits
P. O. Drawer N
Diboll, TX 75941

TempleInland/Cleiland 049

**Cornelius, Cecilia**

| | |
|---|---|
| From: | Christina Certo [ccerto@benefitconcepts.com] |
| Sent: | Thursday, August 25, 2005 10:13 AM |
| To: | CeciliaCornelius@templeinland.com |
| Subject: | Temple Inland COBRA~ Cathy Cleiland |

Hello Cecilia-

Our three guidelines we follow to determine if a participant qualifies for the extension
are the following:

1) The participant must be deemed disabled within 60 days of the Qualifying Event date or
before!
        The participants QED is 11/30/03. She was deemed disabled on 5/14/03.

2) It is the participants responsibility to present the disability determination to the
plan administrator within 60 days of the determination and within 18 months of the initial
coverage.                                                    √OK
        The participant did try sending us the notification within the 60 days but not
within her 18 months of initial coverage. *(18 mos. ended around 5/31/05)*

3) Social Security has to determine the participant is disabled.

Our Vice President has reviewed Cathy Cleiland's paperwork and has denied Cathy of the
extension based on the following:

1) Cathy did not notify Benefit Concepts within her 18 months of coverage.

I am very sorry for any confusion!
Please feel free to contact me with any questions!

Thanks,

Christina Certo
Benefits Administrator
Benefit Concepts
(P) 800-969-2009, ext. 561
(F) 401-427-8701
Ccerto@benefitconcepts.com

Confidentiality Notice: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure, or distribution is prohibited.  If you are not
the intended recipient, please contact the sender by reply e-mail and destroy all copies
of the original message.

1



**CompLink**
P.O. Box 226101
Dallas, TX 75222-6101

Date: 12/17/2003
Form: CLC02-EN
Doc ID: 4588833
Account #: 0103188258

To CATHY K CLEILAND and Covered Dependents
8 CHEROKEE DR # 27
MONROEVILLE, AL 36460-8508



## Election Form and Plan Alternatives

Applicant Name: CATHY K CLEILAND (Account Number: 0103188258)

Employer/Plan Sponsor: Temple-Inland Forest Products Corporation

Election Deadline: 2/18/2004

Date of Notice: 12/17/2003
Date of Coverage Loss: 11/30/2003
Coverage Start Date if Electing: 12/1/2003

To Employee and any Covered Dependents of: CATHY K CLEILAND

Please use this document to notify us of your decision to continue coverage under the above referenced employer's group health plan.
If you need further information about your alternatives, please contact CompLink toll free at 1-877-630-7215.

CompLink has been retained by the above named employer to notify you of your group health plan benefits continuation rights. Please see the enclosed sheet titled "Additional Information on COBRA Rights." If you elect to continue coverage, and if you meet all other requirements explained on the above referenced "Additional Information" sheet, your continuation coverage would begin on 12/1/2003. Please understand that if cancellation of COBRA continuation coverage occurs it is without possibility of reinstatement.

If you wish to elect coverage, your completed election form must be postmarked on or before 2/18/2004. Please visit our website at www.complink.info. If you wish to elect online, you will need your social security number and your birthdate to log in to the Employees & Continuants section. Your initial premium payment(s) must be postmarked within 45 days of the postmark date of your election.    To avoid cancellation, your initial payment must include premiums due from the date of coverage loss through the end of the month in which your payment is postmarked. Subsequent payments are due on the first of each month and will be returned if not postmarked within 30 days of this due date. Claims will not be paid until your account is current. Incomplete election forms will be returned.

You should receive payment coupons within 2 weeks of the date we receive your election. Premiums are due regardless of your receipt of payment coupons, so please contact CompLink at 1-877-630-7215 if you do not receive them.

*Please fill out and return the form on the following page.*

Please mail forms and make checks payable to CompLink, P.O. Box 226101, Dallas, TX 75222

Applicant Name: **CATHY K CLEILAND**

Employer/Plan Sponsor: **Temple-Inland Forest Products Corporation**    Election Deadline: **2/18/2004**    PID: **3188258**

### Section A.  Plan Alternatives

Place an "X" in the box adjacent to the monthly cost of the coverage(s) you are selecting.  Circle the dependents that you wish to cover.  Please note that you may not obtain coverage above that which was in effect on your Date of Coverage Loss.

| Available Coverages | Employee Only | | | | | | Circle dependents you wish to cover |
|---|---|---|---|---|---|---|---|
| BCBS of Alabama PPO - ☐ | $ 222.60 | ☐ | ☐ | ☐ | ☐ | ☐ | a  b  c  d  e<br>f  g  h  i  j |
| Cigna Comprehensive De ☐ | $ 27.58 | ☐ | ☐ | ☐ | ☐ | ☐ | a  b  c  d  e<br>f  g  h  i  j |

### Section B.  Applicant's Authorization and Agreement

Your first premium payment must be postmarked no later than 45 days after the postmark date of your completed election.  By my signature below, I elect to continue the coverage(s) checked in Section A.

!"###$$

Applicants Signature: _____    Date: _____

### Section C.  Dependent Information

Dependent Coverage:

| Code | Dependent Name | Relationship | Birth Date | Gender |
|---|---|---|---|---|
|  |  |  |  |  |



05335110038602

## ADDITIONAL INFORMATION
### ENCLOSED WITH ELECTION NOTICE AND PLAN ALTERNATIVES CONCERNING COVERAGE CONTINUATION RIGHTS (COBRA)

Under the terms of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended, current or former participants and their eligible dependents who are covered under a group health plan have the right to elect to temporarily continue health coverage if coverage terminates due to a "Qualifying Event." Those eligible to continue coverage become "Qualified Beneficiaries" under this federal law.

**IMPORTANT: IF A QUALIFIED BENEFICIARY ELECTS TO CONTINUE COVERAGE FOR HIMSELF/HERSELF AND/OR FOR ANY DEPENDENT CHILDREN WHO ARE QUALIFIED BENEFICIARIES (i.e. WERE ELIGIBLE AND COVERED ON THE DAY BEFORE THE QUALIFYING EVENT OCCURRED) OR BORN TO OR PLACE FOR ADOPTION WITH A COVERED PARTICIPANT DURING THE PERIOD OF COBRA COVERAGE, THE ENCLOSED ELECTION AGREEMENT MUST BE COMPLETED, SIGNED, AND SENT TO COMPLINK WITHIN 60 DAYS OF THE DATE COVERAGE TERMINATES OR THE DATE OF THE ENCLOSED "ELECTION FORM AND PLAN ALTERNATIVES" (WHICHEVER IS LATER). IF A QUALIFIED BENEFICIARY DOES NOT SEND THIS ELECTION WITHIN THE 60-DAY TIME PERIOD ALLOWED BY LAW, THE QUALIFIED BENEFICIARY WILL LOSE RIGHTS TO CONTINUE COVERAGE.**

*Note 1: If you are acting on behalf of an incompetent Beneficiary, call CompLink for assistance.*
*Note 2: Some states offer financial aid to help certain individuals pay for COBRA coverage. Contact your appropriate state agency regarding availability and eligibility requirements.*

### A)   Who is a Qualified Beneficiary?
A Qualified Beneficiary is any participant, former participant, spouse, or dependent child who was covered under the plan on the day before the Qualifying Event shown on the enclosed "NOTICE OF PLAN ALTERNATIVE". The definition includes a child born to or placed for adoption with a covered participant during the period of COBRA coverage.

### B)   What is a Qualifying Event?
1. A Qualifying Event is any of the following events which would cause a (employee) participant, former participant, covered spouse, or covered dependent child to lose coverage under the employer's group health plan. These events include:
   a) Termination of employment (including voluntary resignation, involuntary termination, retirement, or layoff) except for termination due to gross misconduct;
   b) Reduction of work hours (includes work stoppage [strike] or participant takes leave of absence);
   c) Death of the participant or retired participant;
   d) Divorce from covered participant (or legal separation if plan provision allow);
   e) Ineligibility of dependent child, due to plan eligibility provisions;
   f) When dependents would lose coverage due to participant/retiree becoming entitled to Medicare;
   g) When a retiree, spouse or child of a retiree loses coverage within one year before or after the commencement of proceedings under the Title 11 (bankruptcy), United States Code.
2. A Second Qualifying Event is any of the following events which would cause a (employee) participant, former participant, covered spouse, or covered dependent child to lose coverage under the employer's group health plan. These events include:

### C)   How long may continuation coverage last?
In the case of a loss of coverage due to end of employment or reduction in hours of employment, coverage may be continued for up to 18 months. In the case of losses of coverage due to an employee's death, divorce or legal separation, the employee's enrollment in Medicare or a dependent child ceasing to be a dependent under the terms of the plan, coverage maybe continued for up to 36 months.

### D)   How can the length of continuation coverage extend?
If you elect continuation coverage, an extension of the maximum period of 18 months of coverage maybe  available if a qualified beneficiary is disabled or a second qualifying event occurs. You must notify CompLink of a disability or a second qualifying event in order to extend the period of continuation coverage. Failure to provide notice of a disability or second qualifying event may affect the right to extend the period of continuation coverage.

**Disability:** A Qualified Beneficiary, who is determined under Title II of XVI of the Social Security Act (SSA), to have been disabled at the time of a Qualify Event or within the first 60 days of COBRA coverage, may be eligible to continue coverage for an additional 11 months (29 months total) if the Qualified Beneficiary provides the written determination of disability from the Social Security Administration (SSA) to CompLink within 60 days of the date of the SSA's determination of disability and before the end of the first 18-month continuation period. All of the qualified beneficiaries listed on the Election Form (next page) who elect continuation coverage will be entitled to the 11-month disability extension if one of them qualifies. The employer can charge up to 150% of the group rate during the 11-month disability extension. If the Qualified Beneficiary is determined by the SSA to no longer be disabled, you must notify CompLink of that fact within 30 days of SSA's determination.

**Second Qualifying Event:** An 18-month extension of coverage will be available to spouses and dependent children who elect continuation coverage if a second qualifying event occurs during the first 18 months of continuation coverage. The maximum amount of continuation coverage available when a second qualifying event occurs is 36 months. Such second qualifying events include the death of a covered employee, divorce (or legal separation as allowed by the group health plan), the covered employee's enrolling in Medicare, or a dependent child's ceasing to be eligible for coverage as a dependent under the Plan. You must notify CompLink within 60 days after a second qualifying event occurs.

**COVERAGE WILL END EARLIER IF ANY ONE OF THE FOLLOWING OCCURS:**
1. the continuant fails to pay the required premium in a timely manner;
2. the participant first becomes, after the date of election, entitled to and enrolled in Medicare;
3. the employer ceases to provide any group health plan for its employees;
4. the participant first becomes, after the date of election, covered under another group health plan (as a participant or otherwise) which does not impose any pre-existing condition exclusion or limitation with respect to any pre-existing condition of the qualified beneficiary.
5. Any reason the Plan would terminate coverage of participant or beneficiary not receiving continuation coverage (such as fraud).

### E)   What coverage may be continued?
Each qualified beneficiary who elect continuation coverage will have the same rights under the Plan as other participants or beneficiaries covered under the plan, including special enrollment rights. Qualified Beneficiaries may continue some or all of the group health coverage they had in effect on the day before the Qualifying Event. The coverage available is shown on the enclosed "ELECTION FORM AND PLAN ALTERNATIVES"

### F)   What is a Timely Election?
To be considered timely, your election must be either:
1. Postmarked by the U.S. Postal Service or an Express Delivery Service on or before the Expiration Date shown on the enclosed "NOTICE OF PLAN ALTERNATIVES", and received by CompLink, or
2. Successfully sent by participant via the CompLink website at www.complink.info (if this option is available) (We recommend that you retain a copy for your records.)
3. Delivered in person to a CompLink representative during normal business hours at its offices on or before the Expiration Date shown on the enclosed "ELECTION FORM AND PLAN ALTERNATIVES." A receipt will be issued by CompLink.

### G)   Can Qualified Beneficiaries make separate coverage elections?
Yes, Qualified Beneficiary may make separate elections. Each Qualified Beneficiary may choose any benefit plan for which he or she is eligible, as shown on the enclosed "ELECTION FORM AND PLAN ALTERNATIVES". If a Qualified Beneficiary wishes to make an independent election, he/she must complete a separate form and return it by the election deadline. Failure to do so will result in loss of the right to elect continuation coverage under the Plan.



053351100336603

A qualified beneficiary may change a prior rejection of continuation coverage any time until that date. You may call the number provided on the enclosed form marked Election Form and Plan Alternatives to request additional forms. Parents or guardians may sign for minor dependent children.

A)   How much does it cost to continue coverage?
The cost to continue coverage is the full group premium rate for coverage elected, plus an administration fee, if applicable. Premium rates (including administration fees where applicable) are shown on the enclosed "ELECTION FORM AND PLAN ALTERNATIVES". These rates are subject to change.

B)   When does COBRA continuation coverage begin?
Continuation coverage begins on the day after the date that coverage would otherwise terminate if the election is timely made and all other eligibility requirements are satisfied.

C)   How do I pay for continuation coverage?
Upon election, you are billed for the period from the date your group health benefits terminated through the current month and for 5 subsequent months.. You will receive a billing for each 6 month period thereafter, assuming your continuation coverage has not been cancelled. Your billing will provide a remittance address and payment coupons that include the amount and due date. A coupon should be signed, detached and enclosed with each month's premium payment.

D)   When are premium payments due?
You must make your first payment for continuation coverage within 45 days after the date of your election. If you do not make your first payment for continuation coverage within those 45 days, you will lose all continuation coverage rights under the Plan. Your first payment must cover the cost of continuation coverage from the time your coverage under the Plan would have otherwise terminated up to the time you make the first payment. You are responsible for making sure that the amount of your first payment is enough to cover this entire period. You may contact CompLink to confirm the correct amount of your first payment. Subsequent month's premiums are due on the premium due date shown on your billing coupons. You are responsible for paying the full premium on time even if you do not receive a bill. Premiums not post marked within the grace period, usually 30 days after the due date, will be returned and coverage cancelled without possibility of reinstatement. If you wish to send a check with your election, please ensure the check is signed, properly dated, made payable to "CompLink", and written in the exact amount required to fully pay the premium due. Be sure to include continuant's name and account number (PID or SSN) on each check.

E)   What is a Timely Payment?
To be considered a timely payment, your premium payment must be post marked by CompLink within 30 days after the due date (unless the employer plan provides for additional time). To access information regarding your premium payment and status of your account, call CompLink using the number provided on the attached election notice. Late payments cannot be accepted and will be returned, resulting in cancellation of your coverage with no possibility for reinstatement.

*Note: Your premium is due on the "due date" shown on your invoice. However, CompLink will NOT update eligibility for you or any covered dependents until the monthly premium due is received and applied. In addition, payment of claims for medical procedures or prescription drugs, physician office visits or other covered expenses will not be considered until the premium is received, posted and communicated to the insurance carrier. Depending upon the timing of receipt of payment and scheduled communication update, it may take several days to update eligibility with the carrier. For this reason, to ensure timely eligibility updates, we recommend that you pay the premium due prior to the due date and before attempting to use your coverage. Waiting until the end of the grace period to pay could also put you at risk of not having sufficient time to correct errors. These errors (e.g. unsigned checks, checks returned for insufficient funds, incorrect payment amounts, premiums sent to the wrong address, or late/missed pickups by the U.S. Postal Service) delay payment and may or may not be within your control. If such delays cause your payment to be post marked after the grace period expires, your coverage will be cancelled with no possibility of reinstatement.*

L)   CompLink does not pay claims. If you have any questions about claims, please contact your sponsoring employer, group insurance carrier or the claims office indicated on your claim forms or insurance card. If your premium payments are not made in a timely manner coverage will be cancelled retroactively, and claims incurred during the period for which premiums were not paid will not be paid by the carrier.

M)   This notice or the ELECTION FORM AND PLAN ALTERNATIVES does not fully describe continuation coverage or other rights under the plan. More complete information regarding such rights is available from the plan administrator and in the plan's summary plan description. To obtain a copy contact the plan administrator.

N)   In considering whether to elect continuation coverage, you should take into account that a failure to continue your group health coverage will affect your future rights under federal law. First, you can lose the right to avoid having a pre-existing condition exclusions applied to you by other group health plans if you have more than a 63-day gap in health coverage, and election of continuation coverage may help you not have such a gap. Second, you will lose the guaranteed right to purchase individual health insurance policies that do not impose such pre-existing condition exclusions if you do not obtain continuation coverage for the maximum time available to you. Finally, you should take into account that you have special enrollment rights under federal law. You have the right to request special enrollment in another group health plan for which you are otherwise eligible (such as a plan sponsored by your spouse's employer) within 30 days after your group health coverage ends because of the qualifying event. You will also have the same special enrollment right at the end of the continuation coverage if you get continuation coverage for the maximum time available to you.

O)   In order to protect you and your family's rights, it is vital that you keep CompLink or the appropriate Plan or COBRA administrator informed of the current address(es) of all participants or beneficiaries under the plan that are or may become qualified beneficiaries.

P)   For more information about your rights under ERISA, including COBRA, the Health Insurance Portability and Accountability Act (HIPAA), and other laws affecting group health plan, contact the U.S. Department of Labor's Employee Benefits Security Administration (EBSA) in your area or visit the EBSA website at www.dol.gov/ebsa.

Rev. 06/03

FROM :0                               FAX NO. :3348089125              Aug. 04 2005 02:11PM  P3



## SOCIAL SECURITY ADMINISTRATION

Refer To:        -2332

Office of Hearings and Appeals
SSA/OHA Hearing Office
550 Government Street
Suite 200
Mobile, AL 36602-2010

Date: MAY 2 6 2005

*Send to*
*Temple Inland Bere*
*Ad*

*Rttn Cec*
*1800 South mopac*
*Austin        78746*

Cathy A. Key

Clio, AL 36017

### NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision
carefully.

**This Decision Is Fully Favorable To You**

Another office will process the decision and send you a letter about your benefits. Your local
Social Security office or another may first ask you for more information. If you do not hear
anything for 60 days, contact your local office.

**The Appeals Council May Review The Decision On Its Own**

The Appeals Council may decide to review my decision even though you do not ask it to do
so. To do that, the Council must mail you a notice about its review within 60 days from the
date shown above. Review at the Council's own motion could make the decision less
favorable or unfavorable to you.

**If You Disagree With The Decision**

If you believe my decision is not fully favorable to you, or if you disagree with it for any
reason, you may file an appeal with the Appeals Council.

**How to File an Appeal**

To file an appeal you or your representative must request that the Appeals Council review the
decision. You must make the request in writing. You may use our Request for Review form,
HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may
also mail your request right to the Appeals Council, Office of Hearings and Appeals,
5107 Leesburg Pike, Falls Church, VA 22041-3255. Please put the Social Security number
shown above on any appeal you file.

See Next Page

# EXHIBIT 1 TO EXHIBIT B
# Part 2

## SOCIAL SECURITY ADMINISTRATION
### Office of Hearings and Appeals

## DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability and Disability Insurance Benefits |
| Cathy A. Key | |
| (Claimant) | |
| | 2332 |
| (Wage Earner) | (Social Security Number) |

### PROCEDURAL HISTORY

On October 10, 2003, the claimant protectively filed an application for a period of disability and Disability Insurance Benefits. This case is before the Administrative Law Judge on a request for a hearing filed by the claimant, who is dissatisfied with the previous determination at the state agency level which found that she was not disabled. Dan Shulte, a non-attorney, represents the claimant in this matter. Prior to the scheduling of a hearing in this matter, the undersigned arranged for a disability evaluation to further ascertain the claimant's capacity to perform work-related activities (Exhibit 28F). Based on same, the undersigned is convinced that a full hearing is not necessary in this matter. Instead, a "wholly favorable" decision may be issued in this matter with respect to all disability issues in dispute based on information already available for review (20 C.F.R. § 404.948(a)). The following discussion will highlight the evidentiary support contained in the record for reaching such a conclusion.

### ISSUES

The issues in this case are whether the claimant is under a disability as defined by the Social Security Act and if so, when the disability commenced, the duration of the disability, and whether the insured requirements of the Act are met for the purpose of entitlement to a period of disability and disability insurance benefits.

### HOLDING

After a thorough evaluation of the record, the Administrative Law Judge concludes that the claimant has been disabled since her alleged onset date of disability, i.e., May 14, 2003. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

FROM :0                              FAX NO. :                     5          Aug. 04 2005 02:10PM P1

To: Cecilia Cornelius - 512-434-5626              # of pages = 4
& Cathy Dover: Benefits                                  FILE

        This is the info I am faxing
to Benefits Concepts today. Can
you please fax it to Cecilia
and if she needs anything else please
let me know. I don't want to mail
something and it is not what she
needs. You can leave a message for
me with my mom at 334 397 4707.
Thank you so much!

                                Cathy Cleiland
                                8/4/05

TempleInland/Cleiland 057

Date: 8/4/05                              # of pages  3

To: Benefit Concepts
Attn: JMP

From: Cathy Cleiland
                    2332

Re: Cobra Dental

In our phone conversation
earlier ~~to at~~ today you indicated
you needed additional info. This
is what you requested

                    Cathy Cleiland
                    8/4/05

TempleInland/Cleiland 058

```
        **********************
        ***   TX REPORT   ***
        **********************

   TRANSMISSION OK

   TX/RX NO            2979
   CONNECTION TEL              914014278701
   CONNECTION ID
   ST. TIME            08/23 15:55
   USAGE T             01'42
   PGS. SENT           5
   RESULT              OK
```

# Temple-Inland

## Fax Transmission Cover Sheet From:

### Cecilia Cornelius
Benefits Administration Department
1300 S MoPac Expressway
Austin, TX 78746
Phone: (512) 434.4942
Fax:    (512) 434.5626
Email: ceciliacornelius@templeinland.com

To: _Linda DaRosa_     Fax: _401. 427. 8701_

Date: _8/23/05_     Pages: _____ (Including coversheet)

Re: _Cathy Cleiland_

☑ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Comment: _Thankyou —_

_I placed a call to employee_
_I sent more copies of what_

TempleInland/Cleiland 059

# Temple-Inland

## Fax Transmission Cover Sheet From:

**Cecilia Cornelius**
Benefits Administration Department
1300 S MoPac Expressway
Austin, TX 78746
Phone: (512) 434.4942
Fax:     (512) 434.5626
Email: ceciliacornelius@templeinland.com

To: _Antoine Carter_          Fax: _713. 596. 1987_

Date: _8/23/05_          Pages: _6_     (Including coversheet)

Re: _Cathy Cleiland — Disabled_

☒ Urgent          ☐ For Review          ☐ Please Comment          ☐ Please Reply          ☐ Please Recycle

Comment: _Please help._

_Thank you_

CONFIDENTIALITY NOTICE:  This fax transmission and any attachments may contain confidential or legally privileged information. This information is intended only for the necessary business use of the individual(s) or entity to whom it is intended even if addressed incorrectly.  If you have received this fax in error, please immediately notify the sender by fax at the address shown. You should delete this entire transmission from your files if you are not the intended recipient and you are prohibited from retaining, distributing, disclosing or using any information contained herein.  Thank you for your compliance.

NOV 0 3 2003



**ADVANTAGE 2000
CONSULTANTS INC.**
*"Your Gateway to Social Security"*

*Visit Us Online at: www.advantage2k.com*
*One Corporate Drive  Swansea, IL 62226*
*Telephone: (800) 580-5299 - Fax: (314) 894-4891*
*Email: advantage2000@advantage2k.com*

## TO: SOCIAL SECURITY CLAIMS REPRESENTATIVE

D-10206

Social Security Administration
Jackson, AL 36545
RE:  Cathy Cleiland
SSN:      2332

I have been appointed the Representative for Ms. Cleiland. **PLEASE SEND ME
AN ACKNOWLEDGEMENT OF YOUR RECEIPT OF MY SSA-1696, AND
PROVIDE THE REQUESTED INFORMATION BELOW. THANK YOU!**

Claims Representative:  _C. Singleton_
CR Telephone No.:  _251-2846-6018_

Claims filed or pending:
___✓___ Title II          Alleged Onset Date _05/14/03_
_____ Title XVI       Date Last Insured _12/31/07_
_____ Concurrent

_10/10/03_ Protected Filing Date
_10/27/03_ SSA-1696 Receipt Date

History of Current Claim:
_10/27/03_ Date Initial Claim Filed
_N/A_ Date Reconsideration Filed
_N/A_ Date Hearing Request Filed
_N/A_ Date Appeals Council Request Filed

Current Claim sent to:  __✓__ DDS _____ Screening Unit _____ OHA

Any Prior Applications: Yes_____  No __✓__
Date of Filing for Prior Application  _N/A_
Level of Last Decision  _N/A_

Thanks for your assistance.
Mary Lynn Kniker
Claims Analyst
Advantage 2000 Consultants, One Corporate Drive, Swansea, IL 62226

11/05/2003  16:05    3148944891              ADVANTAGE 2000 CCMS                    PAGE 03/04

MCS    TRANSFER TO:                  CHECK/NOTICE 2                              NOT2
    NH    2332    CATHY CLEILAND      CL    2332    CATHY CLEILAND

MAILING METHOD INDICATOR (BLIND NOTICE INFORMATION) TYPE: _ 1.CERTIFIED MAIL
                                                           2.TELEPHONE CONTACT
AUTHORIZED REPRESENTATIVE                                   3.REGULAR MAIL
    TYPE: 2   1. ATTORNEY    2. NON-ATTORNEY   3. QUESTIONABLE
    FEE WAIVED (Y/N): Y
IF ATTORNEY,
    DIRECT PAYMENT WAIVED (Y/N): _    LAST WITHHOLDING DATE (MMYY): ____
    ATTORNEY/REP NAME: MARY _____ LYNN _____ KNIKER _____ __
        ADDRESS: REP FOR C CLEILAND _____    ONE CORPORATE DR _____

        CITY: SWANSEA _____       STATE: IL    ZIP: 52226
        COUNTRY: _____        CONSUL CODE: ___
    POSTAL ZONE: _____
        PHONE: 800 580 5299 _____         FOREIGN PHONE: _____
    PENDING FEE AGREEMENT AMOUNT: _____
    FEE AGREEMENT TYPE: _   1. APPROVED    2. DISAPPROVED    3. UNDECIDED
    IF FEE PETITION APPROVED, ENTER FEE: _____

TempleInland/Cleiland 062

Nov-07-03 12:21pm    From-TIPPC HUMAN RESOURCES    8368287408    T-461    P.05/05    F-798

```
11/05/2003  16:06      3148944891           ADVANTAGE 2000 CCMS              PAGE  04/04

MCS                           EARNINGS COMP DETERMINATION                    MCR1
NH SSN:        2332     NH NAME: CATHY      K CLEILAND                    10/28/03
                                                                     COM: 11/03
CASE DISPLAY  | 1. ALL          4. CIVIL SERVICE  7.
  1 - - - -   | 2. REMARKS      5. PIA CALCS      8. PRINT
              | 3. EARNGS, I/S  6. WC/PDB                |
----------------------------------------------------------------------------------
PIA:   1217.70    FAMILY MAX:  1826.50     COMPUTATION TYPE:   NS 78 DIS EX
PIA REDUCED FOR AGE:                       LOW TWO YEARS: 1977    12382.18 IND
DATE LAST INSURED:                12/07                     1979    12861.81 IND
----------------------------------------------------------------------------------
CLAIM                           CLAIM   ENTITLED          NEXT PAYMENT     ONGOING
DISPLAY BIC   CL NAME           TYPE     DATE  LAF      AMT - DATE       PAYMENT
  1 _   HA  CATHY   CLEILAND    DIB   Y  11/03  C      1217.00 11/03     1217.00



--------------------------------------------------------------------------------
   CLAIM DISPLAY     1. ALL          3. ENTITLEMENT/ELIGIBILITY
     OPTIONS         2. REMARKS      4. PAYMENT CALCULATIONS    MORE (Y/N): N
ALERT CASE - SEE REMARKS
```

TempleInland/Cleiland 063



**Human Resources**
**303 S. Temple Drive**
**P.O. Drawer N**
**Diboll, TX 75941**
**Phone: 936/829-1603**
**Fax:   936/829-1537**

To: _Sharon McClish_  From: _Cathy Dover_

Fax: _(512)434-5626_  Pages: _5._

Phone: _____  Dates: _11/7/03_

Re: _SSDI_  CC: _____

| Urgent | For Review | Please Comment | Please Reply | Please Recycle |

**Comments:**

TempleInland/Cleiland 064

Nov-07-03  12:20pm  From-TIPC HUMAN RESOURCES        6368287406         T-467  P.02/05  F-738
11/05/2003  16:06    3148944891              ADVANTAGE 2000 CCMS              PAGE  01/04

# *ADVANTAGE 2000 CONSULTANTS, Inc.*

# 1 Corporate Drive
Swansea, Illinois 62226

Telephone 1-800-580-5299
Fax 1-314-845-5250

## FAX COVER

| | |
|---|---|
| **To: Kathy Dover** | **Fax #: 936-829-7537** |
| **From: Lynn Kniker** of Advantage 2000 Consultants | |
| **RE: Cathy Cleiland** SS#: | |
| **Date: 11-05-2003** | |

Please call if you have any questions or did not receive the number of pages
indicated.

Number of Pages  (including cover sheet):  X 4

**Please find included the proof of filing for the Social Security
disability claim for Cathy Cleiland.**

**Thanks,**
**Lynn Kniker**
**Claims Analyst**
**Advantage 2000 Consultants, Inc.**

TempleInland/Cleiland 065

# IMPORTANT INFORMATION

## NEWBORNS' AND MOTHERS' HEALTH PROTECTION ACT OF 1996

Group health care plans and health insurance issuers generally may not, under federal law, restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, federal law generally does not prohibit the mother's or newborn's attending provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours as applicable). In any case, plans and insurers may not, under federal law, require that a provider obtain authorization from the plan or the issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours).

## WOMEN'S HEALTH AND CANCER RIGHTS ACT OF 1998

In October 1998, Congress signed into law a bill known as the Women's Health and Cancer Rights Act of 1998. This legislation requires all group health care plans to provide coverage for certain services related to mastectomies, reconstructive surgery following mastectomies, and prostheses required after mastectomies. All health care plans sponsored by Temple-Inland, whether insured or self-funded, currently cover reconstructive surgery. However, the law mandates that we provide you with this notice.

Coverage For Reconstruction Surgery Following Mastectomy

When a covered individual receives benefits for a mastectomy and decides to have breast reconstruction, based on consultation between the attending physician and the patient, the health plan must cover:

- Reconstruction of the breast on which the mastectomy has been performed;

- Surgery and reconstruction of the other breast to produce a symmetrical appearance; and

- Prostheses and treatment of physical complications of all stages of mastectomy, including lymph edema.

This coverage will be subject to plan deductible, coinsurance, and co-payment provisions consistent with those established for other benefits under the plan.

## NOTICE OF SPECIAL ENROLLMENT RIGHTS UNDER
## HEALTH INSURANCE PORTABILITY & ACCOUNTABILITY ACT (HIPAA)

If you are declining enrollment for yourself or your dependents (including your spouse) because of other health insurance coverage, you may in the future be able to enroll yourself or your dependents in this plan, provided that you request enrollment within 30 days after your other coverage ends. In addition, if you have a new dependent as a result of marriage, birth, adoption, or placement for adoption, you may be able to enroll yourself and your dependents, provided that you request enrollment within 30 days after the marriage, birth, adoption, or placement for adoption.

## VERY IMPORTANT NOTICE

1

## CONCERNING HEALTH CARE CONTINUATION COVERAGE

It is important that all individuals covered under a group health care plan take the time to read this notice carefully and be familiar with its contents. **This notice generally explains COBRA continuation coverage, when it may become available to you and your family, and what you need to do to protect the right to receive it.**

Under federal law, group health care plans are required to offer to covered employees and covered family members the opportunity to elect temporary health care continuation coverage (also referred to as COBRA continuation coverage) at group rates when coverage under the group health care plan would otherwise end due to certain qualifying events. The right to COBRA continuation coverage was created by the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). This notice is intended to inform you (and any covered dependents) in a summary fashion of your options and obligations under the continuation coverage provisions of the law. For more information about your COBRA continuation rights and obligations, you should review the group health care plan's Summary Plan Description.

The Plan Administrator for the Temple-Inland sponsored group health care plans is the Temple-Inland Benefits Administration Committee, in care of Temple-Inland Corporate Services, Benefits Administration, 1300 South Mopac Expressway, Austin, TX 78746, telephone number (512) 434-5665. The right to COBRA continuation coverage for these group health care plans is administered through the Temple-Inland Benefits Service Center,
P. O. Box 744931, Houston, TX 77274.

### QUALIFIED BENEFICIARIES

Group health care plans must offer the right to COBRA continuation coverage to each person who is a qualified beneficiary. A qualified beneficiary is someone who will lose coverage under a group health care plan because of a qualifying event. Depending on the type of qualifying event, employees, spouses of employees, and dependent children of employees may be qualified beneficiaries.

### QUALIFYING EVENTS

A qualifying event is any life event as described below that would cause a qualified beneficiary to actually lose health care coverage under the terms of the group health care plan.

For covered employees: If you are a covered employee in one of the group health care plans, you have a right to elect continuation coverage if you lose your group health care plan coverage because of a termination of your employment (for reasons other than gross misconduct), or your hours of employment are reduced.

For covered spouses: If you are the spouse of a covered employee and are covered in one of the group health care plans, you have a right to elect continuation coverage if you lose group health care coverage for any of the following qualifying events:

1.    The death of your spouse;
2.    A termination of your spouse's employment (for reasons other than gross misconduct), or a reduction in your spouse's hours of employment;
3.    Divorce or legal separation from your spouse; or
4.    Your spouse becomes enrolled in Medicare (Part A, Part B, or both).

For covered dependent children: If you are the dependent child of a covered employee and are covered by one of the group health care plans, you have the right to elect continuation coverage if you lose group health care coverage for any of the following qualifying events:

1.    The death of the parent-employee;
2.    A termination of the parent-employee's employment (for reasons other than gross misconduct), or a reduction in the parent-employee's hours of employment;
3.    Parents' divorce or legal separation;

2

TempleInland/Cleiland 067

4.    The parent-employee becomes enrolled in Medicare (Part A, Part B, or both); or
5.    You cease to be a "dependent child" in one of the group health care plans. (Check the dependent eligibility rules in the Summary Plan Description carefully to determine when a child loses "dependent status" under the plan in which you are covered.)

If you are a child born or placed for adoption with a covered employee during the continuation coverage period, you may also elect COBRA continuation coverage.

For retirees:  If you are a retiree, the spouse of a retiree, the surviving spouse of a retiree, or a dependent child of a retiree and you are covered by one of the group health care plans, you have the right to elect COBRA continuation coverage if you lose group health care coverage due to the commencement of a bankruptcy proceeding by the Company under federal bankruptcy laws found in title 11 of the United States Code.

## NOTIFICATION REQUIREMENTS FOR COVERED EMPLOYEES, SPOUSES, and DEPENDENTS

Group health care plans will offer the right to COBRA continuation coverage to qualified beneficiaries only after the Plan Administrator has been notified in a timely manner that a qualifying event has occurred.

Under the law, the covered employee, spouse, or other family member has the responsibility to inform the Plan Administrator of a divorce, legal separation, or a child losing "dependent status" under one of the group health care plans.  This notification must be made within 60 days from whichever date is later:  the date of the qualifying event or the date that coverage would be lost under the terms of the group health care plan because of the qualifying event.  You must also notify the Plan Administrator of a Social Security Administration determination of disability or a secondary Qualifying Event (see "Length of Coverage" for notice deadlines).

You must contact the Temple-Inland Benefits Service Center using the Temple-Inland Benefits Online website at www.tinbenefits.synhrgy.com or by calling the Temple-Inland Benefits Service Center Interactive Voice Response (IVR) system at 1-877-459-6164 to report a qualifying event.  You will need to specify the plan under which you are covered, the covered employee and qualifying beneficiaries who have coverage, the type of qualifying event, and the date the qualifying event occurred (or the date of the Social Security Administration determination of disability.)  No other form of notice will be accepted.  If this notification is not done in a timely manner, then your rights to COBRA continuation coverage will be forfeited.

The Company has the responsibility of notifying the Plan Administrator of the employee's termination of employment, reduction in employment hours, death, commencement of a proceeding in bankruptcy with respect to the Company, or the employee's enrollment in Medicare (Part A, Part B, or both).  The Company will notify the Plan Administrator of the qualifying event within 30 days from the date of the qualifying event.

## ELECTION PERIOD

Once the Plan Administrator is notified that a qualifying event has occurred, the Plan Administrator will notify qualified beneficiaries of their right to elect COBRA continuation coverage.  Each qualified beneficiary has an independent election right and will have 60 days from the later of the date coverage is lost under the group health care plan or from the date of notification to elect COBRA continuation coverage.  The law does not allow for an extension of this maximum election period.  If a qualified beneficiary does not elect COBRA continuation coverage within this period, all rights to elect COBRA continuation coverage will end.

If a qualified beneficiary does elect to continue coverage and pays the applicable premium, then the Company is required to provide the qualified beneficiary with coverage that is identical to the coverage provided under the group health care plan to similarly situated employees and/or covered dependents.  If coverage is changed or modified for similarly situated active employees, then COBRA continuation coverage for qualified beneficiaries may be similarly changed and/or modified.

## LENGTH OF COVERAGE

3

TempleInland/Cleiland 068

COBRA continuation coverage is a temporary continuation of coverage under a group health care plan. The duration of COBRA continuation coverage is determined based on the qualifying event that has occurred.

18-month period: If the original qualifying event causing the loss of coverage is a termination of employment (other than for reasons of gross misconduct) or a reduction in employment hours, then each qualified beneficiary will have the opportunity to continue coverage for an 18-month period starting with the date of the qualifying event.

Disability extension: The 18 months of continuation coverage may be extended to 29 months for all qualified beneficiaries if the Social Security Administration determines that a qualified beneficiary was disabled during the first 60 days of continuation coverage according to Title II or XVI of the Social Security Act. You must obtain this disability determination from the Social Security Administration and provide a copy of the determination letter to the Plan Administrator at Temple-Inland Benefits Service Center, P. O. Box 744931, Houston, TX 77274 within 60 days of the date of determination and before the original 18 months of COBRA continuation coverage ceases. If there is a final determination that the qualified beneficiary is no longer disabled, the Plan Administrator must be notified within 30 days of the determination by the qualified beneficiary.

Secondary qualifying events: You can obtain an extension of the 18-month period if during the 18 months of continuation coverage, a second qualifying event occurs (divorce, legal separation, death, enrollment in Medicare, or ceasing to be a dependent child). If a second qualifying event occurs, then the 18 months of COBRA continuation coverage may be extended to 36 months from the date of the original qualifying event. If a second qualifying event occurs, you must notify the Temple-Inland Benefits Service Center, P. O. Box 744931, Houston, TX 77274, telephone number 1-877-459-6164 of the second qualifying event within 60 days of the event and within the original 18-month period. In no event, however, will COBRA continuation coverage continue beyond thirty-six months from the date of the original qualifying event.

36-month period: If the original qualifying event causing the loss of coverage is the death of the employee, divorce, legal separation, enrollment in Medicare (Part A, Part B, or both), or loss of "dependent status" of a dependent child under the group health care plans, then each qualified beneficiary will have the opportunity to elect 36 months of COBRA continuation coverage from the date of the qualifying event.

## ELIGIBILITY, PREMIUMS AND CONVERSION RIGHTS

You do not have to show that you are insurable to elect COBRA continuation coverage. However, you must be covered under a group health care plan at the time of a qualifying event in order to be eligible to elect COBRA continuation coverage (except for children born or placed for adoption with a covered employee during the COBRA continuation coverage period). The Plan Administrator reserves the right to verify eligibility and terminate COBRA continuation coverage retroactively if you are determined to be ineligible or if there has been a material misrepresentation of the facts.

A qualified beneficiary will have to pay all of the applicable premium plus a 2% administration charge for COBRA continuation coverage. These premiums will be adjusted in the future if the applicable premium amount changes. In addition, if the COBRA continuation period is extended due to a Social Security Administration determination of disability, the group health care plan may charge up to 150% of the applicable premium during the extended period for any coverage group that includes the disabled qualified beneficiary. There is a grace period of 30 days for the regularly scheduled monthly premiums. This is the maximum grace period, as the group health care plans do not allow for an extension beyond what is required by law.

At the end of the COBRA continuation period, a qualified beneficiary must be allowed to enroll in any individual conversion plan as provided under the group health care plan, if such conversion plan is available.

## TERMINATION OF CONTINUATION COVERAGE

The law allows continuation coverage to be terminated prior to the maximum continuation period for any of the following reasons:

4

1.  The Company ceases to provide group health coverage to any of its employees;
2.  Any required premium is not paid on time;
3.  A qualified beneficiary becomes covered under another group health care plan after electing continuation coverage that does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary (other than an exclusion or limitation that may be disregarded under the law);
4.  A qualified beneficiary becomes entitled to Medicare after electing continuation coverage;
5.  A qualified beneficiary whose coverage has been extended due to a disability is determined by the Social Security Administration to be no longer disabled;
6.  A qualified beneficiary notifies the Plan Administrator that he/she wishes to cancel continuation coverage; or
7.  The qualified beneficiary commits fraud or obtains benefits under a group health care plan through misrepresentation or otherwise as set forth in the plan.

## ADDRESS CHANGES

**In order to protect your family's rights, you should keep the Plan Administrator informed of any changes in address for you and your covered dependents. Failure on your part to do so may result in loss of COBRA continuation coverage rights.** You should also keep a copy, for your records, of any notices you send to the Plan Administrator.

## QUESTIONS?

If you do not understand any part of this notice or if you have questions regarding the information or your obligations, please contact the Temple-Inland Benefits Service Center, P. O. Box 744931, Houston, TX 77274, telephone number 1-877-459-6164.

You may also contact the nearest Regional or District Office of the U. S. Department of Labor's Employee Benefits Security Administration (EBSA). Addresses and phone numbers of Regional and District EBSA Offices are available through EBSA's website at www.dol.gov/EBSA.

Temple-Inland Corporate Services
Benefits Administration
9/2003

TempleInland/Cleland 070

**Bowling, Teah (TIFPC)**

| | |
|---|---|
| **From:** | Russell, Stacy (TIFPC) |
| **Sent:** | Monday, October 20, 2003 4:20 PM |
| **To:** | Bowling, Teah (TIFPC) |
| **Cc:** | Cornelius, Cecilia (TIFPC) |
| **Subject:** | RE: Disability - Cathy Cleiland |

BCBS of Ala ee only
6 X life     = 309,000

**Stacy Russell**
**Sr. Health & Welfare Administrator**
**Temple-Inland Corporate Services**
**1300 Mopac Expressway**
**Austin, TX 78746**
**512-434-3924 - phone**
**512-434-3933 - fax**

-----Original Message-----
**From: Bowling, Teah (TIFPC)**
**Sent:**   Monday, October 20, 2003 3:53 PM
**To:**     Russell, Stacy (TIFPC)
**Cc:**     Cornelius, Cecilia (TIFPC)
**Subject:**      FW: Disability - Cathy Cleiland

Please provide current medical and life options.

Thanks,
Teah

-----Original Message-----
**From:**   Dover, Cathy (TIFPC)
**Sent:**   Tuesday, October 07, 2003 12:09 PM
**To:**     Bowling, Teah (TIFPC)
**Subject:** Disability - Cathy Cleiland

On November 12, 2003, Cathy Cleiland (xxx-xx-2332) will have been off 26 weeks and will be changed to inactive. Her last day worked way May 13, 2003 and I do not know the amount of her life insurance.  The employee has been advised that she must provide proof of a pending SSDI claim prior to the end of the 26 weeks in order to be eligible for the DH&W plan.

*Cathy Dover*
**Human Resources Manager, Benefits**
**Temple-Inland Forest Products Corporation**
Phone:   (936)829-1643
E-mail: cdover@templeinland.com

1

TempleInland/Cleiland 071

**Bowling, Teah (TIFPC)**

| | |
|---|---|
| **From:** | Dover, Cathy (TIFPC) |
| **Sent:** | Tuesday, October 07, 2003 12:09 PM |
| **To:** | Bowling, Teah (TIFPC) |
| **Subject:** | Disability – Cathy Cleiland |

On November 12, 2003, Cathy Cleiland (xxx-xx-2332) will have been off 26 weeks and will be changed to inactive. Her last day worked way May 13, 2003 and I do not know the amount of her life insurance. The employee has been advised that she must provide proof of a pending SSDI claim prior to the end of the 26 weeks in order to be eligible for the DH&W plan.

*Cathy Dover*
**Human Resources Manager, Benefits**
**Temple–Inland Forest Products Corporation**
Phone:    (936)829-1643
E-mail: cdover@templeinland.com

1

```
> C      10206, 4228023320                                          ON HOBID
                                                      LEVEL 01 LINK FROM HM6EN
              ------BASIC EMPLOYEE IDENTIFICATION------

      COMPANY--> 10206 EMPLOYEE NUMBER--> 0     23320
__    EMPLOYEE NAME-----> CATHY       K CLEILAND
      PO BOX/APT/SUITE-->
      STREET ADDRESS--->
      CITY STATE ZIP----> MONROEVILLE    AL
      HOME PHONE-------->                    BUSINESS PHONE---->
      PAY TYPE----------> SALARY            SALARY OR RATE----> 0001980.77
      STANDARD HOURS----->  80.00           STANDARD HOURS 2--> 999.99
      TIME CARD STATUS--> AUTOMATIC         SOCIAL SECURITY--->        2332
      BIRTH DATE-------->      /1957        PAY FREQUENCY-----> 40
      EMPLOYMENT DATE---> 08/24/1998        SEX---------------> FEMALE
      ANNUAL SALARY-----> 0051500.02        AMT LAST PAY CHG--> 00057.69
      ORGANIZATION------> 02115125300       DATE LAST PAY CHG-> 06/30/2002
      SALARY GRADE------> 17                SALARY STEP------->  __
      MARITAL STATUS----> 2                 ADJUSTED EMP DATE-> 00/00/0000
      START PAY DATE----> 00/00/0000        START DAY OF WEEK-> 2
      WORK DAYS/WEEK----> 5                  STD HOURS/DAY-----> 8.0

A205W-END OF LIST
                                11/11/03  14:28:32 1 M3LL TX91  ____
```

TempleInland/Cleiland 073

```
> GUH   10206,    J23320                                              ON HOBES
                                                          LEVEL 02 LINK FROM HOBID
                  -------EMPLOYEE STATUS INFORMATION------

        COMPANY--> 10206 EMPLOYEE NUMBER--> 0      23320
        NAME-----> CATHY       K CLEILAND

_       EMPLOYMENT STATUS-----> 5          TERMINATION CODE----> 50
        TERMINATION DATE------> 00/00/0000  RETIREMENT DATE------> 00/00/0000
        START LEAVE DATE------> 00/00/0000  RETURN LEAVE DATE---> 00/00/0000
        CONT SERVICE DATE-----> 00/00/0000  DT LAST STATUS CHG--> 08/24/1998
        DATE OF LAST CHANGE---> 11/10/2003  DATE LAST PAY CHG---> 06/30/2002
        DATE OF LAST REVIEW---> 00/00/0000  LAST CHECK DATE-----> 11/14/2003
        PREVIOUS W-2 ISSUED---> 0          REASON LAST PAY CHG-> 0
        COMP HOURS TO DATE----> 00000.00   COMP HOURS YTD------> 00000.00
        INCOME OUT OF CNTRY->        .00   DAYS OUT OF CNTRY---> 000
        FLEX SPENDING AMT--->        .00   FLEX NON TAXABLE---->        .00
        TOTAL 401K AMT--->      1489.22

                              11/11/03  14:29:37 1 M3LL TX91 _____
```

TempleInland/Cleiland 074

FILE

  

BlueCross BlueShield of Illinois    BlueCross BlueShield of New Mexico    BlueCross BlueShield of Texas



**Inbox > Package**                                                    **Help**

**IME Menu**

Package  PHI Cathy Cleiland-Disabled Participant
From  amanda_greer (amanda_greer@bcbstx.com)
To  ceciliacornelius@templeinland.com
CC  ime_mailer.4-3920545-3003289-Y3K7JPCB@tmail.hcsc.net
Sent  Today, 01/18/2007 08:29:22, CST6
Expires  30 days later, 02/17/2007 08:30:22, CST6

Inbox
Outbox

Find Package

New Package
Folders
Address Book

Account Info
Preferences

Help
Logout



(Reply) (Reply to All) (Forward)

(Delete) (Extend Expiration) (Move to (Select a Folder))

    Message from Sender

POWERED BY
**TUMBLEWEED**

Good Morning Cecilia,

I received confirmation from Peggy yesterday afternoon that Medicare Crossover had been set up on this member. Going forward, claims that are filed to Medicare should automatically crossover to us for secondary payment.

Thanks!
Amanda Greer
Group Benefit Specialist
BCBS of Texas/ Marshall FSU
Amanda_Greer@BCBSTX.com
Ph: 903-934-7137
Fax: 903-934-6051


"CECILIA
CORNELIUS"
<ceciliacornelius              To
@templeinland.com  amanda_greer@bcbstx.com
>                                    cc
Sent by: "CECILIA
CORNELIUS"          Subject
<ime_mailer.4-392  Re: PHI Cathy Cleiland-Disabled
0545-3003289-Y3K7  Participant
JPCB@tmail.hcsc.n
et>


01/17/2007 06:09



IME Inbox > Package

 BlueCross BlueShield of Illinois    BlueCross BlueShield of New Mexico    BlueCross BlueShield of Texas 



**Inbox > Package**                                                          **Help**

| | |
|---|---|
| **Package** | PHI Cathy Cleiland-Disabled Participant |
| **From** | amanda_greer (amanda_greer@bcbstx.com) |
| **To** | ceciliacornelius@templeinland.com |
| **Sent** | 4 days ago, 01/13/2007 10:23:02, CST6 |
| **Expires** | 26 days later, 02/12/2007 10:24:02, CST6 |

**IME Menu**

::Inbox
Outbox

Find Package

New Package
Folders
Address Book

Account Info
Preferences

Help
Logout

◄Reply►  ◄Reply to All►  ◄Forward►

◄Delete►  ◄Extend Expiration►  ◄Move to  (Select a Folder)

Message from Sender

POWERED BY
TUMBLEWEED

Cecilia,

I have sent this information to our membership area (Peggy Rowe) to set this account up on Medicare Crossover. This means that once Medicare has processed payment on a claim, the claim will be forwarded to us from Medicare. It is important to remember that even if we do set the account up as Medicare Crossover, the process will not work unless the provider files the claim to Medicare. The member must tell all of her providers to file to Medicare first, otherwise there is nothing for Medicare to send to us for secondary payment.

I have reviewed all claims on this account, and only found the following claims that have not been processed for secondary payment. Based on the information that we have received, all of these claims were filed to us by the provider as if we were primary, and the claims have not been filed to Medicare. In other words, the provider needs to file the claims to Medicare as the primary payer. We can not process as secondary if the provider doesn't first file to Medicare.

Date of Service: 06/13/2006
Provider: Mid S. HME Services (this is a Durable Medical Equipment Provider)

Date of Service: 08/23/2006
Provider: Dothan Medical Associates

Date of Service: 12/08/2006
Provider: Gut PC

All other claims have been processed for secondary payment.

https://tmail.hcsc.net/ime?x=4-3899981-2986835-IHKZJOU6

1/17/2007

TempleInland/Cleiland 076

Thanks!
Amanda Greer
Group Benefit Specialist
BCBS of Texas/ Marshall FSU
Amanda_Greer@BCBSTX.com
Ph: 903-934-7137
Fax: 903-934-6051


"CECILIA
CORNELIUS"
<ceciliacornelius    To
@templeinland.com  amanda_greer@bcbstx.com
>                   cc
Sent by: "CECILIA
CORNELIUS"          Subject
<ime_mailer.4-386  Re: PHI Cathy Cleiland-Disabled
8384-2962041-NYB0  Participant
UYFZ@tmail.hcsc.n
et>


01/09/2007 01:35
PM


Please respond to
ceciliacornelius@
templeinland.com


Amanda, I received a call from the member and she spoke with Medicare
and they told her that the company should have a Medicare Coordination
Agreement with Medicare and that BCBS would get a weekly report of what
has and not been paid by Medicare is that correct?

The issue I believe Cathy has it is that she does not want or have the
capability to deal with claim issues due to her health problems or to be
inconvenient by sending the Medicare EOB's to BCBS to release and paid
her BCBS claims.

"amanda_greer" <amanda_greer@bcbstx.com> wrote:
>
>
> I am researching this one, and will get back to you today.
>
> Thanks!

https://tmail.hcsc.net/ime?x=4-3899981-2986835-IHKZJOU6                1/17/2007

> Amanda Greer
> Group Benefit Specialist
> BCBS of Texas/ Marshall FSU
> Amanda_Greer@BCBSTX.com
> Ph: 903-934-7137
> Fax: 903-934-6051
>
>
>

> "Cornelius,

> Cecilia"

> <CeciliaCornelius
To
> @templeinland.com "'Amanda_Greer@BCBSTX.COM'"

> > <Amanda_Greer@BCBSTX.COM>

>
cc
> 01/08/2007 04:42

> PM
Subject
> Cathy Cleiland-Disabled
Participant
>

>

>

>

>

>
>
>
>
>
> Amanda, could you please help us do some research and verify that all
the
> medical claims on the above disabled member have been coordinated/paid
> correctly since she became Medicare eligible and elected Part A and B
> effective 11/01/2005?
>
> She called very upset and stated that BCBS was not paying anything on

TempleInland/Cleiland 078

her
> claims and that BCBS is always requesting for the Medicare EOB's before
> releasing or paying her claims.
>
>        )-XXXX
>
> Thank you,
> Cecilia Cornelius
> Health and Welfare Administrator
> Temple-Inland Corporate Services
> 1300 S Mopac, Austin, TX 78746
> Ph:512.434.4942
> Ph:877.437.3497 Ext.4942
> Fx:512.434.5626
>
> THIS E-MAIL, INCLUDING ATTACHMENTS, MAY INCLUDE PROTECTED HEALTH
> INFORMATION
> (PHI), CONFIDENTIAL AND/OR PROPRIETARY INFORMATION AND MAY BE USED
ONLY BY
> THE PERSON OR ENTITY TO WHICH IT IS ADDRESSED OR THE INDIVIDUALS
DESIGNATED
> TO VIEW SUCH INFORMATION PER HIPAA REGULATIONS. IF THE READER OF THIS
> E-MAIL
> IS NOT THE INTENDED RECIPIENT, OR HIS/HER AUTHORIZED AGENT, THE READER
IS
> HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF
THIS
> E-MAIL IS PROHIBITED. IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR,
PLEASE
> NOTIFY THE SENDER BY REPLYING TO THIS MESSAGE, AND DELETING THIS
E-MAIL
> IMMEDIATELY.
> ********** Confidentiality Notice **********
> This electronic transmission and any attached documents or other writings
> are confidential and are for the sole use of the intended recipient(s)
> identified above. This message may contain information that is privileged,
> confidential or otherwise protected from disclosure under applicable law.
> If the receiver of this information is not the intended recipient, or the

TempleInland/Cleland 079

> employee, or agent responsible for delivering the information to the
> intended recipient, you are hereby notified that any use, reading,
> dissemination, distribution, copying or storage of this information is
> strictly prohibited. If you have received this information in error,
please
>
> notify the sender by return email and delete the electronic
transmission,
> including all attachments from your system.
>
>
>
>
>
> **********
>
> The information contained in this communication is confidential,
private, proprietary, or otherwise privileged and is intended only for
the use of the addressee. Unauthorized use, disclosure, distribution or
copying is strictly prohibited and may be unlawful. If you have
received this communication in error, please notify the sender
immediately at (312)653-6000 in Illinois; (800)835-8699 in New Mexico;
(918)560-3500 in Oklahoma; or (972)766-6900 in Texas.
>
> **********
>

**********

The information contained in this communication is confidential, private, proprietary,
or otherwise privileged and is intended only for the use of the addressee. Unauthorized
use, disclosure, distribution or copying is strictly prohibited and may be unlawful. If
you have received this communication in error, please notify the sender immediately at
(312)653-6000 in Illinois; (800)835-8699 in New Mexico; (918)560-3500 in
Oklahoma; or (972)766-6900 in Texas.

**********

❮Save Message Text...❯

Blue Cross and Blue Shield of Illinois; Blue Cross and Blue Shield of New Mexico; Blue Cross and Blue Shield
of Texas, a Divisions of Health Care Service Corporation, a Mutual Legal Reserve Company, an Independent
Licensee of the Blue Cross and Blue Shield Association.
© Copyright 2003. Health Care Service Corporation. All Rights Reserved.

Legal Disclaimer | Privacy Statement | Code Of Conduct

TempleInland/Cleiland 080

   

BlueCross BlueShield of Illinois   BlueCross BlueShield of New Mexico   BlueCross BlueShield of Texas



## Outbox > Package                                                     Help

| | |
|---|---|
| **Package** | Re: PHI Cathy Cleiland-Disabled Participant |
| **From** | CECILIA CORNELIUS (ceciliacornelius@templeinland.com) |
| **To** | amanda_greer@bcbstx.com |
| **Sent** | 19 days ago, 01/18/2007 10:45:58, CST6 |
| **Expires** | 11 days later, 02/17/2007 10:45:59, CST6 |
| **Tracking** | Sent |

**IME Menu**

Inbox
Outbox

Find Package

New Package
Folders
Address Book

Account Info
Preferences

Help
Logout

POWERED BY
TUMBLEWEED

 Reply  Reply to All  Forward        2 of 7 package(s)  

Delete  Extend Expiration  Move to  (Select a Folder)

Message from Sender

Thank you so much Amanda for all your help. CC

"amanda_greer" <amanda_greer@bcbstx.com> wrote:
>
>
> Good Morning Cecilia,
>
> I received confirmation from Peggy yesterday afternoon that Medicare
> Crossover had been set up on this member. Going forward, claims that are
> filed to Medicare should automatically crossover to us for secondary
> payment.
>
> Thanks!
> Amanda Greer
> Group Benefit Specialist
> BCBS of Texas/ Marshall FSU
> Amanda_Greer@BCBSTX.com
> Ph: 903-934-7137
> Fax: 903-934-6051
>
>
>
> "CECILIA
> CORNELIUS"
> <ceciliacornelius To
> @templeinland.com amanda_greer@bcbstx.com
> > cc
> Sent by: "CECILIA
> CORNELIUS" Subject
> <ime_mailer.4-392 Re: PHI Cathy Cleiland-Disabled
> 0545-3003289-Y3K7 Participant
> JPCB@tmail.hcsc.n
> et>

TempleInland/Cleiland 081

>
>
> 01/17/2007 06:09
> PM
>
>
> Please respond to
> ceciliacornelius@
> templeinland.com
>
>
>
>
>
>
> Thank you very much for all your help. Will Peggy e-mail me to confirm
> once the account has been setup for Medicare Crossover?
>
> "amanda_greer" <amanda_greer@bcbstx.com> wrote:
> >
> >
> > Cecilia,
> >
> > I have sent this information to our membership area (Peggy Rowe) to
> set
> > this account up on Medicare Crossover. This means that once Medicare
> has
> > processed payment on a claim, the claim will be forwarded to us from
> > Medicare. It is important to remember that even if we do set the
> account
> > up as Medicare Crossover, the process will not work unless the
> provider
> > files the claim to Medicare. The member must tell all of her
> providers to
> > file to Medicare first, otherwise there is nothing for Medicare to
> send to
> > us for secondary payment.
> >
> > I have reviewed all claims on this account, and only found the
> following
> > claims that have not been processed for secondary payment. Based on
> the
> > information that we have received, all of these claims were filed to
> us by
> > the provider as if we were primary, and the claims have not been filed
> to
> > Medicare. In other words, the provider needs to file the claims to
> > Medicare as the primary payer. We can not process as secondary if the
> > provider doesn't first file to Medicare.
> >
> > Date of Service: 06/13/2006
> > Provider: Mid S. HME Services (this is a Durable Medical Equipment

TempleInland/Cleiland 082

```
>> Provider)
>>
>> Date of Service: 08/23/2006
>> Provider: Dothan Medical Associates
>>
>> Date of Service: 12/08/2006
>> Provider: Gut PC
>>
>>
>> All other claims have been processed for secondary payment.
>>
>> Thanks!
>> Amanda Greer
>> Group Benefit Specialist
>> BCBS of Texas/ Marshall FSU
>> Amanda_Greer@BCBSTX.com
>> Ph: 903-934-7137
>> Fax: 903-934-6051
>>
>>
>>
>
>> "CECILIA
>
>> CORNELIUS"
>
>> <ceciliacornelius
> To
>> @templeinland.com amanda_greer@bcbstx.com
>
>>>
> cc
>> Sent by: "CECILIA
>
>> CORNELIUS"
> Subject
>> <ime_mailer.4-386 Re: PHI Cathy Cleiland-Disabled
>
>> 8384-2962041-NYB0 Participant
>
>> UYFZ@tmail.hcsc.n
>
>> et>
>
>>
>
>>
>
>>
>
>> 01/09/2007 01:35
>
>> PM
>
```

TempleInland/Cleiland 083

```
>>
>
>>
>
>> Please respond to
>
>> ceciliacornelius@
>
>> templeinland.com
>
>>
>
>>
>
>>
>>
>>
>> Amanda, I received a call from the member and she spoke with Medicare
>> and they told her that the company should have a Medicare Coordination
>> Agreement with Medicare and that BCBS would get a weekly report of
> what
>> has and not been paid by Medicare is that correct?
>>
>> The issue I believe Cathy has it is that she does not want or have the
>> capability to deal with claim issues due to her health problems or to
> be
>> inconvenient by sending the Medicare EOB's to BCBS to release and paid
>> her BCBS claims.
>>
>> "amanda_greer" <amanda_greer@bcbstx.com> wrote:
>>>
>>>
>>> I am researching this one, and will get back to you today.
>>>
>>> Thanks!
>>> Amanda Greer
>>> Group Benefit Specialist
>>> BCBS of Texas/ Marshall FSU
>>> Amanda_Greer@BCBSTX.com
>>> Ph: 903-934-7137
>>> Fax: 903-934-6051
>>>
>>>
>>>
>>
>>> "Cornelius,
>>
>>> Cecilia"
>>
>>> <CeciliaCornelius
>> To
```

TempleInland/Cleiland 084

> > > @templeinland.com "'Amanda_Greer@BCBSTX.COM'"
> >
> > > > <Amanda_Greer@BCBSTX.COM>
> >
> > >
> > cc
> > > 01/08/2007 04:42
> >
> > > PM
> > Subject
> > > Cathy Cleiland-Disabled
> > Participant
> > >
> >
> > >
> >
> > >
> >
> > >
> >
> > >
> >
> > >
> >
> > >
> > >
> > >
> > >
> > >
> > > Amanda, could you please help us do some research and verify that
> all
> > the
> > > medical claims on the above disabled member have been
> coordinated/paid
> > > correctly since she became Medicare eligible and elected Part A and
> B
> > > effective 11/01/2005?
> > >
> > > She called very upset and stated that BCBS was not paying anything
> on
> > her
> > > claims and that BCBS is always requesting for the Medicare EOB's
> > before
> > > releasing or paying her claims.
> > >
> > > ¿      XXXX
> > >
> > > Thank you,
> > > Cecilia Cornelius
> > > Health and Welfare Administrator
> > > Temple-Inland Corporate Services
> > > 1300 S Mopac, Austin, TX 78746

# VOLUME II-a

# TEMPLE-INLAND
## Group Benefits Plan

**January 1, 2000**

**LIFE0003A**
**ADD0001A**
**ADD0004A**
**LTD0001A**
**STD0002A**

TempleInland/Cleiland 086

# TEMPLE-INLAND
## GROUP BENEFITS PLAN

**Group Life Insurance**
**Policy FLI-50710** . . . . . . . . . . . . . . . . . . . . . . . . . . .  Section I

**Group Accident Insurance**
**Policy OK-810692** . . . . . . . . . . . . . . . . . . . . . . . . . Section II

**Group Business Travel Accident Insurance**
**Policy ABL-670620** . . . . . . . . . . . . . . . . . . . . . . . Section III

**Group Long Term Disability Insurance**
**Policy FLK-020104** . . . . . . . . . . . . . . . . . . . . . . . Section IV

**Temple-Inland**
**Short-Term Disability Plan** . . . . . . . . . . . . . . . . . . Section V

508508

TempleInland/Cleiland 087

# SECTION I

TempleInland/Cleiland 088

# GROUP LIFE INSURANCE CERTIFICATE

# POLICY NUMBER FLI-050710

# TEMPLE-INLAND

**LIFE0003A**

TempleInland/Cleiland 089

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call the Life Insurance Company of North America, Group Insurance's toll-free telephone number for information or to make a complaint at:

**1-800-457-5515**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the
Texas Department of Insurance
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

TL-004426

**AVISO IMPORTANTE**

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis del Life Insurance Company of North America, Group Insurance Division para informacion o para someter una queja al:

**1-800-457-5515**

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de
Seguros de Texas
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

TempleInland/Cleland 090

**IMPORTANT INFORMATION ABOUT COVERAGE UNDER
THE TEXAS LIFE, ACCIDENT, HEALTH AND HOSPITAL SERVICE
INSURANCE GUARANTY ASSOCIATION**

Texas law establishes a system, administered by the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association (the "Association"), to protect policyholders if their life or health insurance company fails to or cannot meet its contractual obligations. Only the policyholders of insurance companies which are members of the Association are eligible for this protection. However, even if a company is a member of the Association, protection is limited and policyholders must meet certain guidelines to qualify. (The law is found in the Texas Insurance Code, Article 21.28-D.)

**BECAUSE OF STATUTORY LIMITATIONS ON POLICYHOLDER PROTECTION, IT IS POSSIBLE THAT THE ASSOCIATION MAY NOT COVER YOUR POLICY OR MAY NOT COVER YOUR POLICY IN FULL.**

**ELIGIBILITY FOR PROTECTION BY THE ASSOCIATION**

When an insurance company which is a member of the Association is designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:

- residents of Texas at the time that their insurance company is impaired;
- residents of other states, ONLY if the following conditions are met:
  1) The policyholder has a policy with a company based in Texas;
  2) The company has never held a license in the policyholder's state of residence;
  3) The policyholder's state of residence has a similar guaranty association; and
  4) The policyholder is **not eligible** for coverage by the guaranty association of the policyholder's state of residence.

**LIMITS OF PROTECTION BY THE ASSOCIATION**

Accident, Accident and Health, or Health Insurance:
- up to a total of $200,000 for one or more policies for each individual covered.

Life Insurance
- net cash surrender value up to a total of $100,000 under one or more policies on any one life; or
- death benefits up to a total of $300,000 under one or more policies on any one life.

Individual Annuities:
- net cash surrender amount up to a total of $100,000 under one or more policies owned by one contract holder.

Group Annuities:
- net cash surrender amount up to $100,000 in allocated benefits under one or more policies owned by one contract holder; or
- net cash surrender amount up to $5,000,000 in unallocated benefits under one contract holder regardless of the number of contracts.

**THE INSURANCE COMPANY AND ITS AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE ASSOCIATION FOR THE PURPOSE OF SALES, SOLICITATION, OR INDUCEMENT TO PURCHASE ANY FORM OF INSURANCE.**

When you are selecting an insurance company, you should not rely on coverage by the Association.

Texas Life, Accident, Health and Hospital
Service Insurance Guaranty Association
301 Congress, Suite 500
Austin, Texas 78701
800-982-6362

Texas Department of Insurance
P.O. Box 149104
Austin, Texas 78714-9104
800-252-3439

TempleInland/Cleiland 091

**NOTICE**

Benefits paid under the Accelerated Benefits provision will reduce the Death Benefit payable for life insurance.

Benefits payable under the Accelerated Benefits provision may be taxable. If so, the Employee or the Employee's beneficiary may incur a tax obligation. As with all tax matters, an Employee should consult with a personal tax advisor to assess the impact of this benefit. Accelerated Benefits are not payable if life insurance coverage under the Policy is not in force.

TL-004788

## FOREWORD

Life insurance provides individuals and their families with financial protection. The Life Insurance Benefit described in this booklet will help secure your family's financial security in the event of your death.

The need for life insurance protection depends on individual circumstances and financial situations. This valuable coverage should add an extra dimension to your personal insurance portfolio.

Insurance benefits described in the following pages will apply to you if your Employer has made this coverage available to you at no cost or you have elected the benefit and authorized payroll deduction for the required premium.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 CHESTNUT STREET
PHILADELPHIA, PA 19192-2235
(800) 732-1603  TDD (800) 552-5744
**A STOCK INSURANCE COMPANY**

**GROUP INSURANCE
CERTIFICATE**

We, the LIFE INSURANCE COMPANY OF NORTH AMERICA, certify that we have issued a Group Life Insurance Policy, FLI-050710, to Temple-Inland Forest Products Corporation.

We certify that we insure all eligible persons, who are enrolled according to the terms of the Policy. Your coverage will begin and end according to the terms set forth in this certificate.

This certificate describes the benefits and basic provisions of your coverage. You should read it with care so you will understand your coverage.

This is not the insurance contract. It does not waive or alter any of the terms of the Policy. If questions arise, the Policy will govern. You may examine the Policy at the office of the Policyholder or the Administrator.

This certificate replaces any and all certificates which may have been issued to you in the past under the Policy.

John K. Leonard, President

TL-004704

**TABLE OF CONTENTS**

SCHEDULE OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SCHEDULE OF BENEFITS FOR CLASS 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SCHEDULE OF BENEFITS FOR CLASS 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

SCHEDULE OF BENEFITS FOR CLASS 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SCHEDULE OF BENEFITS FOR CLASS 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SCHEDULE OF BENEFITS FOR CLASS 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

SCHEDULE OF BENEFITS FOR CLASS 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SCHEDULE OF BENEFITS FOR CLASS 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SCHEDULE OF BENEFITS FOR CLASS 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

SCHEDULE OF BENEFITS FOR CLASS 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

SCHEDULE OF BENEFITS FOR CLASS 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

SCHEDULE OF BENEFITS FOR CLASS 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

SCHEDULE OF BENEFITS FOR CLASS 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

WHO IS ELIGIBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

WHEN COVERAGE BEGINS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

WHEN COVERAGE ENDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

WHEN COVERAGE CONTINUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

LIFE INSURANCE BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

LIFE INSURANCE EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

ACCIDENT INSURANCE BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

ACCIDENT INSURANCE EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CLAIM PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

ADMINISTRATIVE PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

SUPPLEMENTAL INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

## SCHEDULE OF BENEFITS

**Classes of Eligible Employees**

On the pages following the definition of eligible Employees there is a Schedule of Benefits for each Class of Eligible Employees listed below. For an explanation of these benefits, please see the Description of Benefits provision.

If you are eligible under one Class of Eligible Employees and later becomes eligible under a different Class of Eligible Employees, changes in your insurance due to the class change will be effective on the date of the change in class.

| | |
|---|---|
| Class 1 | All active, Full-time and part-time salaried, hourly and commissioned I, II, III and V Employees of the Employer who are eligible for the Temple-Inland Benefit Solutions Plan and who are regularly working a minimum of 20 hours per week. |
| Class 2 | All retired Inland Paperboard and Packaging, Inc. salaried Employees, commissioned salesmen, officers, or production Employees located in Crawfordsville, Indiana, Maysville, Kentucky and Streetsboro, Ohio who worked for an Employer participating in this Plan; who retired on January 1, 1998 and after under the Employer's IRS qualified Retirement Plan and will receive a pension and are eligible for salaried retiree medical coverage. |
| Class 3 | All grandfathered retired Inland Paperboard and Packaging, Inc. salaried Employees, commissioned salesmen, officers, or production Employees of facilities located in Crawfordsville, Indiana and Maysville, Kentucky who worked for an Employer participating in this Plan; who retired prior to January 1, 1998 under the Employer's IRS qualified Retirement Plan and will receive a pension. (A closed group.) |
| Class 4 | All named grandfathered Employees disabled prior to January 1, 1998 as on record with the Employer and the Insurance Company. (A closed group.) |
| Class 5 | All grandfathered Employees of Inland Paperboard Packaging, Inc. who ported coverage prior to January 1, 1998 as on record with the Employer and the Insurance Company. (A closed group.) |
| Class 6 | All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-bargaining hourly Employees of St. Louis Box Plant located in St. Louis, Missouri who worked for an Employer participating in this Plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension. |
| Class 7 | All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-union hourly Employees of the Wheat Ridge Box Plant located in Wheat Ridge, Colorado who worked for an Employer participating in this Plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension. |
| Class 8 | All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-bargaining hourly Employees of the Bell Box Plant located in Los Angeles, California who worked for an Employer participating in this Plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension. |
| Class 9 | All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-bargaining hourly Employees of Ontario Mill located in Ontario, California who worked for an Employer participating in this plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension. |
| Class 10 | All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-bargaining hourly Employees of Ontario Box Plant located in Ontario, California who worked for an Employer participating in this plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension. |

1

TempleInland/Cleland 096

Class 11    All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-bargaining hourly Employees of Inland-Rand Whitney located in Ontario, California who worked for an Employer participating in this plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension.

Class 12    All retired, Full-time bargaining Employees of the Rome Forest facility located in Rome, Georgia, who are represented by PACE Local 518, who retired under the Employer's IRS qualified Retirement Plan and will receive a pension.

2

TempleInland/Cleiland 097

**SCHEDULE OF BENEFITS FOR CLASS 1**

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

Initial Group: No Waiting Period.

New Hires:

Each Full-time salaried exempt Employee, commission II Employee, commission III Employee, and each part-time salaried exempt Employee who is a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time salaried non-exempt Employee who is not a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time or part-time salaried non-exempt Employee who is a Financial Services Employee, and each hourly Employee, part-time hourly Employee, part-time salaried Employee (who is not a Financial Services Employee), commission I Employee, or commission V Employee shall be eligible to participate in the Plan upon the first day of the month coinciding with or following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service. For this group, Waiting Period is defined as follows:

> For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees, Waiting Period means 31 days of Active Service from an Employee's most recent date of hire as an Employee.

**LIFE INSURANCE BENEFITS**

**Employee Benefits**

| | |
|---|---|
| Life Benefit | 1, 2, 3, 4, 5 or 6 times Annual Compensation rounded to the next higher $1,000, if not already a multiple thereof. |
|     Minimum Benefit: | the greater of 1 times Annual Compensation or $20,000 |
|     Guaranteed Issue Amount: | the lesser of 3 times Annual Compensation or $1,000,000 |
|     Maximum Benefit: | the lesser of 6 times Annual Compensation or $1,000,000 |
| Seatbelt Benefit | 10% of your Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

3

TempleInland/Cleiland 098

**Continuation Options**

For Layoff
    Maximum Benefit Period:    For the period specified by your Employer, not to exceed 6 months
For Leave of Absence
    Maximum Benefit Period:    For the period specified by your Employer, not to exceed 12 months
For Family Medical Leave
    Maximum Benefit Period:    12 weeks

For Disability
    Maximum Benefit Period:    To the Retirement Eligible date.
    Applicable Coverages    Life Insurance Benefits for you.

**Portability Options**

For Employees    See the Former Employee and Spouse of Former Employee sections in this Schedule of Benefits for the amounts of insurance an Insured is eligible to continue under this option.

Seatbelt Benefit    10% of your Life Insurance Benefits in force on the date of the Accident or $10,000, if less.  The Limited Seatbelt Benefit is $1,000.

Terminal Illness Benefit    50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000.

**Automatic Increase Feature**

If your Life Insurance Benefits are based on Annual Compensation, these benefits will automatically increase, provided the following events occur.
1.   Your Employer provides us with the required notice of an increase in Annual Compensation; and
2.   You are in Active Service on that date.  If you are not in Active Service on the date of the increase, Life Insurance Benefits will not increase until you return to Active Service.

You will not be required to satisfy the Insurability Requirement for the increased amount.

If you are initially approved for Life Insurance Benefits in excess of the Guaranteed Issue Amount, these benefits will not increase in excess of the Maximum Benefit Amount.

If you revoke this Automatic Increase Feature, you may not elect it at a later date.  If you are not covered under the Automatic Increase Feature, you must satisfy the Insurability Requirement before an increase in Life Insurance Benefits based on an increase in your Annual Compensation is effective.

4

TempleInland/Cleland 099

Annual Re-Enrollment Feature

During the 1998 Annual Enrollment Period if you are currently insured under the Policy, you may increase your Life Insurance Benefits by one benefit level not to exceed $500,000.

During the 1999 Annual Enrollment Period or within 31 days after a permitted Life Status Change during 1999, you may increase your Life Insurance Benefits by one benefit level not to exceed the Guaranteed Issue amount.

For future annual enrollments or within 31 days after a permitted Life Status Change, you may increase your Life Insurance Benefits by one benefit level. Increases above one benefit level are not permitted regardless of health status.

You may reduce Life Insurance Benefits at future annual enrollments or within 31 days after a permitted Life Status Change. The reduced amount is effective on the date the completed change form is received by your Employer or us.

### Spouse Benefits

| Life Benefit | $10,000; $25,000; $50,000; $75,000 and $100,000 |
| Guaranteed Issue Amount: | The greater of $25,000 or an amount equal to your Spouse's Life Insurance Benefit in effect on the termination date of the Prior Plan. |
| Maximum Benefit: | $100,000 |
| | |
| Seatbelt Benefit | 10% of your Spouse's Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |
| | |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

If your Spouse's current coverage from a Prior Plan is not available on January 1, 1998, then your Spouse can select the next higher benefit amount without having to satisfy the Insurability Requirement.

For Residents of Texas only:
Your Spouse's Life Insurance Benefits cannot exceed 100% of your eligible Life Insurance Benefit amount.

Annual Re-Enrollment Feature

During the 2000 Annual Enrollment Period and for future annual enrollment periods or 31 days after a permitted Life Status Change, you may elect or increase your Spouse's Life Insurance Benefit not to exceed the Guaranteed Issue Amount.

| Portability Options | |
| For Spouses | See the Former Spouse section in this Schedule of Benefits for the amounts of insurance an Insured is eligible to continue under this option. |
| | |
| Seatbelt Benefit | 10% of your Spouse's Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |
| | |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

TempleInland/Cleiland 100

**Dependent Child Benefits**

| | |
|---|---|
| Life Benefit | Units of $5,000 |
|    Maximum Benefit: | $10,000 |
| | The Maximum Benefit for a Dependent Child who is less than 6 months old is $500. |
|    Seatbelt Benefit | 10% of your Child's Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |

For Residents of Texas only:
Your Dependent Child's Life Insurance Benefits cannot exceed 100% of your eligible Life Insurance Benefit amount.

Annual Re-Enrollment Period

During the 2000 Annual Enrollment Period and for future annual enrollment periods or 31 days after a permitted Life Status Change, you may elect or increase your Dependent Child's Life Insurance Benefit not to exceed the Maximum Benefit amount.

| | |
|---|---|
| Portability Options | |
|    For Dependent Children | See the Former Dependent Child section in this Schedule of Benefits for the amounts of insurance an Insured is eligible to continue under this option. |
|    Seatbelt Benefit | 10% of your Child's Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |

**Former Employee Benefits**

| | |
|---|---|
| Amount of Insurance | An amount elected subject to the Maximum Benefit amount for Life Insurance Benefits you are allowed, less any amount of conversion insurance issued under the Conversion Privilege for Life Insurance. |
| | Any amount elected in excess of your Life Insurance Benefits in effect on the date you no longer qualify as an Employee will be effective on the date we agree in writing to insure you. |
| | Life Insurance Benefits for a Former Employee age 65 and over will reduce to 25% of the Life Insurance Benefit amount payable on the day prior to the date the reduction becomes effective. |
| Maximum Benefit Period | To Age 75 |
| Seatbelt Benefit | 10% of your Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

TempleInland/Cleiland 101

**Spouse of Former Employee Benefits**

| | |
|---|---|
| Amount of Insurance | An amount elected subject to the Maximum Benefit amount for Life Insurance Benefits available to your Spouse. |
| | Any amount elected in excess of your Spouse's Life Insurance Benefits in effect on the date he or she no longer qualifies as a Spouse will be effective on the date the we agree in writing to insure him or her. |
| | Life Insurance Benefits for your Spouse, who is age 65 or over, of a Former Employee will reduce to 25% of the Life Insurance Benefit amount payable on the day prior to the date the reduction becomes effective. |
| Maximum Benefit Period | To Age 75 |
| Seatbelt Benefit | 10% of your Spouse's Life Insurance Benefits in force on the date of the Accident or $10,000, if less.  The Limited Seatbelt Benefit is $1,000. |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

**Former Spouse Benefits**

| | |
|---|---|
| Amount of Insurance | An amount elected subject to the Maximum Benefit amount for Life Insurance Benefits available to your Spouse. |
| | Any amount elected in excess of your Former Spouse's Life Insurance Benefits in effect on the date he or she no longer qualifies as a Spouse will be effective on the date the Insurance Company agrees in writing to insure him or her. |
| | Life Insurance Benefits for your Former Spouse age 65 and over will reduce to 25% of the Life Insurance Benefit amount payable on the day prior to the date the reduction becomes effective. |
| Maximum Benefit Period | To Age 75 |
| Seatbelt Benefit | 10% of your Spouse's Life Insurance Benefits in force on the date of the Accident or $10,000, if less.  The Limited Seatbelt Benefit is $1,000. |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

7

TempleInland/Cleiland 102

**Former Dependent Child Benefits**

| | |
|---|---|
| Amount of Insurance | Units of $25,000 |
|     Guaranteed Issue Amount: | $25,000 |
|     Maximum Benefit: | $50,000 |
| | |
| Maximum Benefit Period | To Age 75 |
| | |
| Seatbelt Benefit | 10% of your Child's Life Insurance Benefits in force on the date of the Accident or $10,000, if less.  The Limited Seatbelt Benefit is $1,000. |

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774 (50710)

8

TempleInland/Cleland 103

**SCHEDULE OF BENEFITS FOR CLASS 2**

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:    No Waiting Period.

For Employees hired after the Policy Effective Date:    No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | $4,000 |
| Guaranteed Issue Amount: | $4,000 |
| Maximum Benefit: | $4,000 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit    This option does not apply to this class of Employee.

Terminal Illness Benefit    This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

**Former Employee Benefits**    This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**    This option does not apply to this class of Employee.

**Former Spouse Benefits**    This option does not apply to this class of Employee.

**Former Dependent Child Benefits**    This option does not apply to this class of Employee.

TempleInland/Cleland 104

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

10

**SCHEDULE OF BENEFITS FOR CLASS 3**

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:     No Waiting Period.

For Employees hired after the Policy Effective Date:     A Closed Group.

**LIFE INSURANCE BENEFITS**

**Employee Benefits**

| | |
|---|---|
| Employees who retired between January 1, 1970 and August 31, 1973: | $1,000 |
| Employees who retired between September 1, 1973 and December 31, 1974: | $2,000 |
| Employees who retired on or after January 1, 1975: | $4,000 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

| | |
|---|---|
| Seatbelt Benefit | This option does not apply to this class of Employee. |
| Terminal Illness Benefit | This option does not apply to this class of Employee. |

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

| | |
|---|---|
| **Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Spouse of Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Former Spouse Benefits** | This option does not apply to this class of Employee. |
| **Former Dependent Child Benefits** | This option does not apply to this class of Employee. |

11

TempleInland/Cleiland 106

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

TempleInland/Cleiland 107

## SCHEDULE OF BENEFITS FOR CLASS 4

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:                 No Waiting Period.

For Employees hired after the Policy Effective Date:                 A Closed Group.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

Life Benefit                 Your benefit amount on January 1, 1998, will be your coverage amount in effect on your date of Disability as on file with your Employer and us.

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | |
|     Maximum Benefit Period | To the Retirement Eligible date. |
|     Applicable Coverages | Life Insurance Benefits for the Employee. |

Seatbelt Benefit                 This option does not apply to this class of Employee.

Terminal Illness Benefit                 This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

**Former Employee Benefits**                 This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**                 This option does not apply to this class of Employee.

**Former Spouse Benefits**                 This option does not apply to this class of Employee.

**Former Dependent Child Benefits**                 This option does not apply to this class of Employee.

TempleInland/Cleland 108

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

14

## SCHEDULE OF BENEFITS FOR CLASS 5

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:     No Waiting Period.

For Employees hired after the Policy Effective Date:     A Closed Group.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | 1, 2 or 3 times Annual Compensation rounded to the next higher $1,000, if not already a multiple thereof. |
| Minimum Benefit: | $10,000 |
| Maximum Benefit: | the lesser of 3 times Annual Compensation or $600,000 |
| Maximum Benefit Period: | To age 75 |

If you are age 65 or over, your Life Insurance Benefits will reduce to 25% of the Life Insurance Benefit amount payable on the day prior to the date the reduction becomes effective.

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

| | |
|---|---|
| Seatbelt Benefit | This option does not apply to this class of Employee. |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

**Spouse Benefits**

| | |
|---|---|
| Life Benefit | Units of $10,000 |
| Maximum Benefit: | $100,000 |
| Maximum Benefit Period: | To age 75 |

Life Insurance Benefits for your Spouse age 65 and over will reduce to 25% of the Life Insurance Benefit amount payable on the day prior to the date the reduction becomes effective.

For Residents of Texas only:
Your Spouse's Life Insurance Benefits cannot exceed 100% of your eligible Life Insurance Benefit amount.

TempleInland/Cleland 110

# EXHIBIT 1 TO EXHIBIT B
# Part 3

Terminal Illness Benefit

50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000.

**Dependent Child Benefits**

Life Benefit
    Maximum Benefit:

Units of $5,000
$10,000
The Maximum Benefit for a Dependent Child who is less than 6 months old is $500.

For Residents of Texas only:
Your Dependent Child's Life Insurance Benefits cannot exceed 100% of your eligible Life Insurance Benefit amount.

**Former Employee Benefits**

This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**

This option does not apply to this class of Employee.

**Former Spouse Benefits**

This option does not apply to this class of Employee.

**Former Dependent Child Benefits**

This option does not apply to this class of Employee.

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Amount of Insurance

Same as Life Insurance Benefit

**Spouse Benefits**

Amount of Insurance

Same as Life Insurance Benefit

TL-004774

16

TempleInland/Cleiland 111

## SCHEDULE OF BENEFITS FOR CLASS 6

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:          No Waiting Period.

For Employees hired after the Policy Effective Date:          No Waiting Period.

### LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | $1,500 |
| Guaranteed Issue Amount: | $1,500 |
| Maximum Benefit: | $1,500 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit          This option does not apply to this class of Employee.

Terminal Illness Benefit          This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

**Former Employee Benefits**          This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**          This option does not apply to this class of Employee.

**Former Spouse Benefits**          This option does not apply to this class of Employee.

**Former Dependent Child Benefits**          This option does not apply to this class of Employee.

TempleInland/Cleiland 112

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

18

TempleInland/Cleiland 113

## SCHEDULE OF BENEFITS FOR CLASS 7

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage.  It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:

No Waiting Period.

For Employees hired after the Policy Effective Date:

No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | $5,000 |
| Guaranteed Issue Amount: | $5,000 |
| Maximum Benefit: | $5,000 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

| | |
|---|---|
| Seatbelt Benefit | This option does not apply to this class of Employee. |
| Terminal Illness Benefit | This option does not apply to this class of Employee. |

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

| | |
|---|---|
| **Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Spouse of Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Former Spouse Benefits** | This option does not apply to this class of Employee. |
| **Former Dependent Child Benefits** | This option does not apply to this class of Employee. |

TempleInland/Cleland 114

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

20

TempleInland/Cleiland 115

## SCHEDULE OF BENEFITS FOR CLASS 8

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:                    No Waiting Period.

For Employees hired after the Policy Effective Date:                          No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | $1,500 |
|     Guaranteed Issue Amount: | $1,500 |
|     Maximum Benefit: | $1,500 |

Continuation Options

| | |
|---|---|
|     For Layoff | This option does not apply to this class of Employee. |
|     For Leave of Absence | This option does not apply to this class of Employee. |
|     For Family Medical Leave | This option does not apply to this class of Employee. |
|     For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit                              This option does not apply to this class of Employee.

Terminal Illness Benefit                      This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

**Former Employee Benefits**                  This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**        This option does not apply to this class of Employee.

**Former Spouse Benefits**                    This option does not apply to this class of Employee.

**Former Dependent Child Benefits**           This option does not apply to this class of Employee.

21

TempleInland/Cleiland 116

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

22

TempleInland/Cleiland 117

**SCHEDULE OF BENEFITS FOR CLASS 9**

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

| | |
|---|---|
| For Employees hired on or before the Policy Effective Date: | No Waiting Period. |
| For Employees hired after the Policy Effective Date: | No Waiting Period. |

**LIFE INSURANCE BENEFITS**

**Employee Benefits**

| | |
|---|---|
| Life Benefit | $1,500 |
|     Guaranteed Issue Amount: | $1,500 |
|     Maximum Benefit: | $1,500 |

Continuation Options

| | |
|---|---|
|     For Layoff | This option does not apply to this class of Employee. |
|     For Leave of Absence | This option does not apply to this class of Employee. |
|     For Family Medical Leave | This option does not apply to this class of Employee. |
|     For Disability | This option does not apply to this class of Employee. |
| Seatbelt Benefit | This option does not apply to this class of Employee. |
| Terminal Illness Benefit | This option does not apply to this class of Employee. |

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

| | |
|---|---|
| **Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Spouse of Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Former Spouse Benefits** | This option does not apply to this class of Employee. |
| **Former Dependent Child Benefits** | This option does not apply to this class of Employee. |

TempleInland/Cleland 118

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

24

TempleInland/Cleiland 119

## SCHEDULE OF BENEFITS FOR CLASS 10

### Eligibility Waiting Period

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

| | |
|---|---|
| For Employees hired on or before the Policy Effective Date: | No Waiting Period. |
| For Employees hired after the Policy Effective Date: | No Waiting Period. |

## LIFE INSURANCE BENEFITS

### Employee Benefits

| | |
|---|---|
| Life Benefit | $1,500 |
|     Guaranteed Issue Amount: | $1,500 |
|     Maximum Benefit: | $1,500 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |
| Seatbelt Benefit | This option does not apply to this class of Employee. |
| Terminal Illness Benefit | This option does not apply to this class of Employee. |

### Spouse Benefits

This benefit does not apply to this class of Employee.

### Dependent Child Benefits

This benefit does not apply to this class of Employee.

| | |
|---|---|
| **Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Spouse of Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Former Spouse Benefits** | This option does not apply to this class of Employee. |
| **Former Dependent Child Benefits** | This option does not apply to this class of Employee. |

TempleInland/Cleland 120

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

26

**TempleInland/Cleiland 121**

## SCHEDULE OF BENEFITS FOR CLASS 11

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:          No Waiting Period.

For Employees hired after the Policy Effective Date:          No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | $1,500 |
| Guaranteed Issue Amount: | $1,500 |
| Maximum Benefit: | $1,500 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

| | |
|---|---|
| Seatbelt Benefit | This option does not apply to this class of Employee. |
| Terminal Illness Benefit | This option does not apply to this class of Employee. |

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

| | |
|---|---|
| **Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Spouse of Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Former Spouse Benefits** | This option does not apply to this class of Employee. |
| **Former Dependent Child Benefits** | This option does not apply to this class of Employee. |

TempleInland/Cleland 122

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

28

TempleInland/Cleiland 123

## SCHEDULE OF BENEFITS FOR CLASS 12

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:          No Waiting Period.

For Employees hired after the Policy Effective Date:          No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

For Employees who retired prior to September 1, 1993:
| | |
|---|---|
| Life Benefit | $2,000 |
|    Guaranteed Issue Amount: | $2,000 |
|    Maximum Benefit: | $2,000 |

For Employees who retired on or after September 1, 1993:
| | |
|---|---|
| Life Benefit | $5,000 |
|    Guaranteed Issue Amount: | $5,000 |
|    Maximum Benefit: | $5,000 |

Continuation Options

| | |
|---|---|
|    For Layoff | This option does not apply to this class of Employee. |
|    For Leave of Absence | This option does not apply to this class of Employee. |
|    For Family Medical Leave | This option does not apply to this class of Employee. |
|    For Disability | This option does not apply to this class of Employee. |
| Seatbelt Benefit | This option does not apply to this class of Employee. |
| Terminal Illness Benefit | This option does not apply to this class of Employee. |

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

| | |
|---|---|
| **Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Spouse of Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Former Spouse Benefits** | This option does not apply to this class of Employee. |
| **Former Dependent Child Benefits** | This option does not apply to this class of Employee. |

29

TempleInland/Cleiland 124

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

30

TempleInland/Cleiland 125

## WHO IS ELIGIBLE

### Classes of Eligible Persons

A person may be insured only once under the Policy, even though he or she may be eligible under more than one class.

### EMPLOYEE

If you qualify under the Class Definition shown in the Schedule of Benefits, you are eligible to be insured under the Policy on the Policy Effective Date, or the day after you complete the applicable Eligibility Waiting Period, if later.

If you have previously converted your insurance under the Policy, you will not become eligible until your converted policy is surrendered. This does not apply to any amount of insurance that was previously converted under the Policy due to a reduction in your Life Insurance Benefits based on age or a change in class unless those conditions no longer affect the amount of insurance available to you.

Except as noted in the Reinstatement Provision, if you terminate coverage and later wish to reapply, or if you are a former Employee who is rehired, a new Eligibility Waiting Period must be satisfied. You are not required to satisfy a new Eligibility Waiting Period, if insurance ends because you are no longer in a Class of Eligible Employees, but continue to be employed by the Employer, and become a member of an eligible class.

### SPOUSE

Your Spouse is eligible to be insured on the date you are eligible or the date he or she becomes your Spouse, if later. You must be insured in order to elect spouse coverage.

For eligibility purposes, your Spouse must be a lawful Spouse and not legally separated from, divorced from, or widowed by you.

### DEPENDENT CHILD

Your Dependent Child is eligible to be insured on the date you are eligible or the date the child becomes a Dependent Child, if later.

In no event will a Dependent Child be eligible to be insured more than once under the Policy.

TL-004710a (TX)

## WHEN COVERAGE BEGINS

If you are required to contribute to the cost of this insurance, you may elect insurance for yourself, your Spouse and Dependent Children only by authorizing payroll deduction in a form approved by your Employer and us. The effective date of this insurance depends on the date and amount of insurance elected.

If you elect coverage within 31 days after you, your Spouse or Dependent Children are eligible, during an Annual Enrollment Period or within 31 days after a Life Status Change, any amount that does not exceed the Guaranteed Issue Amount is effective on the latest of the following dates.
1.    The Policy Effective Date.
2.    The date payroll deduction is authorized for this insurance.
3.    The date the completed enrollment form is received by your Employer or us.
4.    The effective date determined by your Employer's benefit plan

31

If you elect insurance in an amount that exceeds the Guaranteed Issue Amount or if your enrollment form is received more than 60 days after you become eligible to elect coverage, this insurance is effective on the date we agree in writing to provide this coverage. We will require an eligible person to satisfy the Insurability Requirement before we agree to insure him or her.

If coverage for a Dependent Child is in force and you acquire another Dependent Child, coverage for that child is effective on the date he or she qualifies as a Dependent Child.

If you, your Spouse or Dependent Children are not in Active Service on the date insurance would otherwise go into effect, it will be effective on the date you, your Spouse or Dependent Children return to Active Service.

TL-004712a (TX)

## WHEN COVERAGE ENDS

Coverage will end on the earliest of the following dates.
1. The date you are eligible for coverage under a plan intended to replace this coverage.
2. The date we terminate the Policy.
3. The end of the month following date you, your Spouse or Dependent Children are no longer eligible.
4. The day after the end of the period for which required premiums are paid.
5. If you are an Employee, the date you are no longer in Active Service.
6. If you are an Employee, Spouse or Dependent Child, the date your Employer cancels participation under the Policy.

In addition, coverage for your Spouse or Dependent Child, if any, will end on the date your insurance ends.

TL-004714 (TX)

## WHEN COVERAGE CONTINUES

If you are no longer in Active Service, you may be eligible to continue insurance. The following provisions explain the continuation options available under the Policy. Please see the Schedule of Benefits to determine the applicability of these benefits on a class level.

### Continuation for Layoff, Temporary Leave of Absence or Family Medical Leave

If your Active Service ends due to a layoff, Employer approved leave of absence, or family medical leave of absence, insurance will continue for up to the Maximum Benefit Period shown in the Schedule of Benefits, if the required premium is paid.

### Continuation for Retirees

If your Active Service ends because you are retired, Life Insurance Benefits will continue in the amount shown in the Schedule of Benefits until the earliest of the following dates.
1. The date the Policy is terminated by us
2. The day after the end of the period for which premiums are paid.
3. The date your Employer cancels participation under the Policy.
4. The date the Maximum Benefit Period for Retirees Coverage, if any, ends.

32

TempleInland/Cleiland 127

**Continuation for Disability**

If your Active Service ends due to a Disability, Life Insurance Benefits as shown in the Schedule of Benefits will continue until the earliest of the following dates.
1.       The date you are no longer Disabled.
2.       The date the end of the Maximum Benefit Period for this benefit ends.
3.       The day after the period for which premiums are paid.

If you die during this period, we will pay the Life Insurance Benefit in effect on the day before you became Disabled. However, the Life Insurance Benefit payable will be subject to the provisions of the Policy that may reduce or terminate coverage on account of age, retirement, acceleration or a change in eligible class.

For purposes of this benefit, your Disability must be certified by Social Security, Long Term Disability or your Employer's qualified pension plan.

**Portability Options**

*For Employees*

If your employment with your Employer ends prior to age 75, you may continue Life Insurance Benefits up to the Maximum Benefit shown in the Schedule of Benefits for this option. To continue coverage, you must submit an application to us and pay the required premium to us. If you continue coverage, you may also continue coverage for your Spouse or Dependent Child if they are covered under the Policy on the date coverage would otherwise end. If you do not elect to continue insurance within 31 days after employment ends, you may not elect this coverage at a later date.

If you continue coverage in this manner, you will become a Former Employee. A Spouse whose coverage is continued will become a Spouse of a Former Employee. Coverage will be effective on the first of the month following the date your coverage ends, provided that we receive the completed application and the required premium is paid.

If as a Former Employee you later acquire a Spouse or Dependent Child, you may elect coverage for them by submitting an application to us and paying the required premium. The Spouse's or Dependent Child's coverage will be effective on the date we agree in writing to insure them. We may require your Spouse or Dependent Child to satisfy the Insurability Requirement before we agree to insure him or her.

Coverage continued in this manner will end on the earliest of the following dates.
1.       The date we cancel coverage for all members of the Insured's class.
2.       The day after the end of the period for which premiums are paid.
3.       The date an Insured is age 75.
4.       The date the Maximum Benefit Period for this option ends.

Also, coverage for any Dependent Child will end on any of the dates listed above or when he or she no longer qualifies as a Dependent Child, if earlier.

*For Spouses*

If a Spouse is legally separated or divorced from, or widowed by, an insured Employee or Former Employee prior to age 75, he or she may continue Life Insurance Benefits up to the Maximum Benefit shown in the Schedule of Benefits for this option. To continue coverage, the Spouse must submit an application to us and pay the required premium.

If a Spouse continues coverage, he or she may also continue coverage for a Dependent Child if the child is covered under the Policy on the date coverage would otherwise end. If a Spouse does not elect to continue insurance within 31 days after coverage ends, he or she may not elect this coverage at a later date.

A Spouse who continues coverage in this manner will become a Former Spouse and will be issued a separate certificate of insurance. Coverage will be effective on the first of the month following the date his or her coverage as a Spouse ends, provided we receive the completed application and the required premium is paid.

TempleInland/Cleiland 128

Coverage continued in this manner will end on the earliest of the following dates.
1.    The date we cancel coverage for all members of the Insured's class.
2.    The day after the end of the period for which premiums are paid.
3.    The date an Insured is age 75.
4.    The date the Maximum Benefit Period for this option ends.

In addition, coverage for a Dependent Child will end on any of the dates listed above or when he or she no longer qualifies as a Dependent Child, if earlier.

*For Dependent Children*

If a Dependent Child is insured under the Policy and is at least 19 years of age, he or she may continue Life Insurance Benefits up to the Maximum Benefit shown in the Schedule of Benefits. To continue coverage, the Dependent Child must submit an application to us and pay the required premium.

If a Dependent Child does not elect to continue insurance within 31 days after reaching age 19 or the date he or she no longer qualifies as a Dependent Child, if later, he or she may not elect to be insured under this option at a later date.

A Dependent Child who continues coverage in this manner will become a Former Dependent Child and will be issued a separate certificate of insurance. Coverage for a Former Dependent Child will be effective on the following dates.
1.    For any Guaranteed Issue Amount, the first of the month following the date his or her coverage as a Dependent Child ends, provided we receive the completed application and required premium.
2.    For any amount of insurance that exceeds the Guaranteed Issue Amount, the date the Insurance Company agrees in writing to insure him or her. We will require the Former Dependent Child to satisfy the Insurability Requirement before we agree to insure him or her.

Coverage continued in this manner will end on the earliest of the following dates.
1.    The date we cancel coverage for all members of the Insured's class.
2.    The day after the end of the period for which premiums are paid.
3.    The date an Insured is age 75.
4.    The date the Maximum Benefit Period for this option ends.

TL-004716a (TX)

## WHAT IS COVERED

The following provisions explain the benefits available under the Policy. Please see the Schedule of Benefits for the applicability of these benefits on a class level.

## LIFE INSURANCE BENEFITS

### Death Benefit

If an Insured dies, we will pay the Life Insurance Benefit in force for that Insured on the date of his or her death.

TL-004730

### Seatbelt Benefit

We will pay a Seatbelt Benefit if an Insured dies as a result of an Accident and the following conditions are met.
1.    The Accident occurs while the Insured is covered under the Policy.
2.    The Insured is driving or riding as a passenger in a Private Passenger Car, the car is equipped with seatbelts and the seatbelt was in actual use and properly fastened at the time of the Accident. The use and position of the seatbelt must be certified in the official report of the Accident. However, if an official report is not available or it is unclear if the Insured was properly wearing a seatbelt, we will pay the Limited Seatbelt Benefit. If such report indicates that a seatbelt was not in use, we will not pay the Seatbelt Benefit nor the Limited Seatbelt Benefit.

34

TempleInland/Cleland 129

The Seatbelt Benefit will not be paid for an Accident which occurs while the Insured is participating in a race, speed or endurance test.

"Private Passenger Car" means a validly registered four-wheel vehicle limited to private passenger cars, station wagons, jeeps, pick-up trucks and van-type cars. In the case of a child, seatbelt means a child restraint, as required by the state law and approved by the National Highway Traffic Safety Administration, properly secured and being used as recommended by its manufacturer for children of like age and weight at the time of the Accident.

The Seatbelt Benefit is payable to the Insured's designated beneficiary, or if there is none, to the person determined to be entitled to receive the death benefit under the Plan.

TL-004734 (50710)

## Accelerated Benefits

Any benefits payable under this Accelerated Benefits provision will reduce the Death Benefit payable for Life Insurance. Any automatic increases in Life Insurance Benefits will end when benefits are payable under this provision.

### Terminal Illness Benefit

We will pay a Terminal Illness Benefit to an Insured who has been determined by us to be Terminally Ill.

The Terminal Illness Benefit is payable only once in an Insured's lifetime.

### Determination of Terminal Illness

For the purpose of determining the existence of a Terminal Illness, we will require the Insured submit the following proof.
1. A written diagnosis and prognosis by two Physicians licensed to practice in the United States.
2. Supportive evidence satisfactory to us, including but not limited to radiological, histological or laboratory reports documenting the Terminal Illness.

We may require, at its expense, an examination of the Insured and a review of the documented evidence by a Physician of its choice.

"Terminal Illness" means a person has a prognosis of 12 months or less to live, as diagnosed by a Physician.

TL-004748

## Conversion Privilege for Life Insurance

If coverage for an Insured ends for any reason, except for non-payment of premium, he or she may apply for a conversion policy of life insurance.

The conversion insurance may be a type of life insurance currently being offered for conversion by us at the Insured's age and in the amount requested. It may not be term insurance and it may not be for an amount greater than the Life Insurance Benefits in force under the Policy. Conversion life insurance will not provide accident, disability or other benefits.

However, if coverage ends because the Policy is terminated or amended to terminate any class of Insureds, or the Employer cancels participation under the Policy, coverage cannot be converted unless the individual has been insured under the Policy for at least 5 years. In this case, the amount of conversion insurance will be the lesser of the Life Insurance Benefit in force under the Policy, or $2,000.

To apply for conversion insurance, the Insured must within 31 days after coverage under the Policy ends, submit an application to us and pay the required premium. Evidence of insurability is not required. Premium for the conversion insurance will be based on the age and class of risk of the Insured and the type and amount of coverage issued.

35

TempleInland/Cleiland 130

Conversion insurance will become effective on the 31st day after the date coverage under the Policy ends, if the application is received by us and the required premium is paid on that date.

If the Insured dies during the 31 day conversion period, the Death Benefit will be paid under the Policy regardless of whether he or she applied for conversion insurance. If a conversion policy is issued, it will be in exchange for any benefits payable for that type and amount of insurance under the Policy.

*Extension of Conversion Period*

If an Insured is eligible for conversion insurance and is not notified of this right at least 15 days prior to the end of the 31 day conversion period, the conversion period will be extended. The Insured will have 15 days from the date notice is given to apply for conversion insurance. In no event will the conversion period be extended beyond 90 days. Notice, for the purpose of this section, means written notice presented to the Insured by the Employer or mailed to the Insured's last known address as reported by the Employer.

If the Insured dies during the extended conversion period, but more than 31 days after his or her coverage under the Policy terminates, Life Insurance Benefits will not be paid under the Policy. If the Insured's application for conversion insurance is received by the Insurance Company and the required premium is paid, Life Insurance Benefits will be payable under the conversion insurance.

*Prior Conversion Limitation*

If an Insured is covered under a life insurance conversion policy previously issued by us, he or she will not be eligible for this Conversion Privilege unless the prior coverage has ended. This does not apply to any amount of insurance that was previously converted under the Policy due to a reduction in the Insured's Life Insurance Benefits based on age or a change in class unless that condition no longer effects the amount of coverage available to the Insured.

TL-004750

# LIFE INSURANCE EXCLUSIONS

If an Insured commits suicide, while sane or insane, within 2 years from the date his or her insurance under the Policy becomes effective, Life Insurance Benefits will be limited to a refund of the premiums paid on the Insured's behalf. The suicide exclusion applies from the effective date of any additional benefits or increases in Life Insurance Benefits.

Except for any amount of benefits in excess of the Prior Plan's benefits, this exclusion will not apply to any person covered under the Prior Plan for more than two years. If a person was not insured for two years under the Prior Plan, credit will be given for the time he or she was insured.

If a Dependent Child commits suicide and is survived by other Dependent Children covered under the same certificate, no refund of premiums will be paid.

TL-004752

# ACCIDENT INSURANCE BENEFITS

We will pay the Accident Insurance Benefits, if an Employee or Spouse dies within 365 days of an Accident that occurs while he or she is insured under the Policy for Accident Insurance. The Employee's or Spouse's death must be the direct result of an Accident for these benefits to be payable.

TL-004754

TempleInland/Cleiland 131

## ACCIDENT INSURANCE EXCLUSIONS

We will not pay Accident Insurance Benefits for a loss which in any way results directly or indirectly from any of the following.

1. Suicide, attempted suicide or intentionally self-inflicted injury, while sane or insane (except in Missouri, this applies only while sane).
2. Sickness, disease or bodily infirmity; medical or surgical treatment; or bacterial or viral infection, no matter how contracted. (This does not include bacterial infection that is the natural and foreseeable result of an accidental bodily injury or accidental food poisoning.)
3. An Accident occurring while an Insured is on full-time active duty for more than 30 days in the Armed Forces. If the Insured sends proof of service, we will refund any premiums paid for coverage during this time. Reserve or National Guard active duty or training are not excluded unless it extends beyond 31 days.
4. Commission of a felony.
5. Voluntary self-administration of any drug or chemical substance not prescribed by, and taken according to the directions of a doctor. (Accidental ingestion of a poisonous substance is not excluded.)
6. War or an act of war, whether or not declared.
7. Travel or flight in, or getting in or out of: an aircraft being used for test or experiment; an aircraft the Insured is flying, is learning to fly, or is part of the crew of; a military aircraft, other than transport aircraft flown by the U.S. Military Airlift Command (MAC) or a similar air transport service of another country; an aircraft owned or leased by or for the Employer, its subsidiaries or affiliates, or the Insured or a member of his or her household; an aircraft that does not have a valid FAA normal or transport type certificate of airworthiness; or an aircraft that is not flown by a pilot with a valid license.

TL-004768

## CLAIM PROVISIONS

### Notice of Claim

Written notice, or notice by any other electronic or telephonic means authorized by us, must be given to us within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If this notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice, or notice by any other electronic or telephonic means authorized by us, was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Policyholder's name and Policy Number and the claimant's name and address.

Written notice of a diagnosis of a Terminal Illness on which claim is based must be given to us within 60 days after the diagnosis. If notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice was given as soon as reasonably possible.

### Claim Forms

When we receive written notice of a claim, or notice by any other electronic or telephonic means authorized by us, we will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by us, the proof requirements will be met by submitting, within the time required under "Proof of Loss" section, written proof of the nature and extent of the loss.

### Claimant Cooperation Provision

If you fail to cooperate with us in our administration of your claim, we may terminate the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

### Insurance Data

The Employer is required to cooperate with us in the review of claims and applications for coverage. Any information we provide to the Employer in these areas is confidential and may not be used or released by the Employer if not permitted by applicable laws.

TempleInland/Cleland 132

**Proof of Loss**

Written proof of loss must be given to us within 90 days after the date of the loss for which a claim is made. If written proof of loss is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof of loss was given as soon as was reasonably possible. In any case, written proof must be given not more than a year after the time it is otherwise required, unless proof is not given solely due to the lack of legal capacity.

In case of claim for any other loss, proof must be furnished within 90 days after the date of such loss.

If it is not reasonably possible to submit proof of loss within these time periods, we will not deny or reduce any claim if proof is furnished as soon as reasonably possible. Proof must, in any case, be furnished not more than a year later, except for lack of legal capacity.

**Time of Payment**

Benefits due under the Policy for a loss, other than a loss for which the Policy provides installment payments, will be paid within 60 days of receipt of due written proof of such loss.

Subject to the receipt of satisfactory written proof of loss, all accrued benefits for loss for which the Policy provides installment payments will be paid monthly; any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof, unless otherwise stated in the Description of Benefits.

**To Whom Payable**

Death Benefits will be paid to the Insured's named beneficiary, if any, on file at the time of payment or to the certificate owner if alive. If there is no named beneficiary or surviving beneficiary, Death Benefits will be paid to the first surviving class of the following living relatives: spouse, a natural or adopted child or children, mother and father, brothers and sisters; or to the executors or administrators of the Insured's estate. We may reduce the amount payable by any indebtedness due.

All benefits payable under the Accelerated Benefits section are payable to the Insured, if living. If the Insured dies prior to the payment of an eligible claim for an Accelerated Benefit, benefits will be paid in accordance with the provisions applicable to the payment of Life Insurance proceeds, unless the Insured has directed us otherwise in writing. However, any payment made by us prior to notice of the Insured's death shall discharge us of any benefit that was paid.

All other benefits unless otherwise stated in the Policy, will be payable to the Insured or the certificate owner if other than the Insured.

Any other accrued benefits which are unpaid at your death may, at our option, be paid either to your beneficiary or to the executor or administrator of your estate.

If we pay benefits to the executor or administrator of your estate or to a person who is incapable of giving a valid release, we may pay up to $1,000 to a relative by blood or marriage whom we believe is equitably entitled. This good faith payment satisfies our legal duty to the extent of that payment.

**Change of Beneficiary**

You may change your beneficiary at any time by giving written notice to the Employer or to us. The beneficiary's consent is not required for this or any other change which you may make unless your designation of beneficiary is irrevocable or if community property state regulations apply.

No change in beneficiary will take effect until the form is received by the Employer or us. When this form is received, it will take effect as of the date of the form. If you die before the form is received, we will not be liable for any payment that was made before receipt of the form.

**Physical Examination and Autopsy**

We may, at our expense, exercise the right to examine any person for whom a claim is pending as often as we may reasonably require. Also, we may, at our expense, require an autopsy unless prohibited by law.

38

TempleInland/Cleland 133

**Legal Actions**
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time written proof of loss must be furnished.

**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which you live when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**
You have the right to choose any Physician who is practicing legally. We will in no way disturb the Physician/patient relationship.

TL-004724a (TX)

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

If an Insured's coverage amount is reduced due to acceleration of a Death Benefit, premium will be based on the amount of coverage in force on the day before the reduction took place.

**Your Grace Period**
If your required premium is not paid on the Premium Due Date, there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

**Reinstatement of Insurance**
Your insurance may be reinstated if it ends because you are on an Employer approved unpaid leave of absence or you are rehired within three months of the date of termination of employment and you apply for Reinstatement within 31 days of your return to Active Service.

Your insurance may be reinstated only if reinstatement occurs within two years from the date insurance ends due to an Employer approved unpaid leave of absence or on any date in which you return from active duty in the armed forces as defined by the Uniformed Services Employment and Reemployment Act of 1994 (USERRA) if the following conditions are met:
1. You must be in a Class of Eligible Employees.
2. The required premium must be paid.
3. A written request for reinstatement must be received by the Insurance Company within 31 days from the date you return to Active Service.
4. The Insurability Requirement, if any, is satisfied.

Reinstated insurance will be effective on the date you return to Active Service. If you did not fully satisfy the Eligibility Waiting Period before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004720

39

TempleInland/Cleiland 134

## GENERAL PROVISIONS

**Incontestability**
All statements made by the Policyholder or by an Insured are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement is signed by and has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

After two years from an Insured's effective date of insurance, or from the effective date of any added or increased benefits, the validity of an Insured's coverage will not be contested using such statements.

**Misstatement of Age**
If an Insured's age has been misstated, we will adjust all benefits to the amounts that would have been purchased for the correct age.

**Workers' Compensation Insurance**
The Policy is not in lieu of and does not affect any requirements for insurance under any Workers' Compensation Insurance.

**Assignment of Benefits**
We will not be affected by the assignment of your certificate until the original assignment or a certified copy of the assignment is filed with us. We will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided insurance under the Policy is in effect. This insurance may not be levied on, attached, garnished, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

**Conformity with State Statutes**
Any provision of the Policy in conflict with the applicable laws of your state on the date your insurance first becomes effective is amended to conform to the minimum requirements of such laws.

**Clerical Error**
A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

TL-004726a (TX)

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Accident**
An Accident is a sudden, unforeseeable external event that causes bodily Injury to an Insured while coverage is in force under the Policy.

**Active Service**
An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.

1.      He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.

2.      The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

40

TempleInland/Cleiland 135

A person other than an Employee is considered in Active Service if he or she is able to perform all the activities another person of the same age and sex could normally perform and is not:

1. a patient in a hospital or hospice, or receiving outpatient care for chemotherapy or radiation therapy;
2. confined at home under the care of a Physician for sickness or injury;
3. unable to perform any of the activities of daily living expected of a person of the same age (i.e., mobility, transferring, feeding, dressing or toileting) without human supervision or assistance; or
4. receiving disability benefits from any source due to his or her sickness or injury.

**Annual Compensation is defined as:**

a. <u>For All Purposes</u>: For all purposes under the Temple-Inland Benefit Solutions Plan, "Annual Compensation" includes only compensation paid to you by your Employer for services performed by you for your Employer as reflected on your Employer's payroll system which meets all of the definitions set forth in this subparagraph a. and the applicable subparagraphs b. or c. below. "Annual Compensation" does not include any amounts that are not paid through your Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

"Annual Compensation" includes your base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan. For commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Annual Compensation" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, have accrued, or are otherwise payable at the time of the calculation). For all other Employees, "Annual Compensation" excludes commissions.

"Annual Compensation" excludes all other compensation, including, but not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by your Employer to you on behalf of an entity that is not a member of your Employer's controlled group of corporations for services rendered by you on behalf of such entity, and such other payments or income as may be designated by the Company.

b. <u>For Costs and Credits</u>: For purposes of determining Costs and Credits, your "Annual Compensation" is your "Annual Compensation" in effect at the time the Solutions enrollment data is produced as determined below:

    i. For a salaried Employee, "Annual Compensation" is your annual base salary for a Full-time Employee or 0.5 times the annual base salary for a part-time Employee, regardless of the number of hours regularly worked.

    ii. For an hourly Employee, "Annual Compensation" is your base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

    iii. For newly hired commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Annual Compensation" is the greater of:

        (1) base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable), or

        (2) $20,000

TempleInland/Cleiland 136

    iv.    For all other commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Annual Compensation" is determined by:

        (1)    adding your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

        (2)    annualizing that amount based on a full 12-month year.

    v.    For Employees hired after the Solutions enrollment data is produced or Employees who have a change in pay or change in status after the Solutions enrollment data is produced, "Annual Compensation" will be determined as of the date of hire or the date of change in pay or change in status, respectively; provided, however, that the Plan Administrator may elect in his sole discretion to use the "frozen pay" determined at the time the Solutions enrollment data is produced to determine Costs and Credits for commission I Employees, commission II Employees, commission III Employees, and commission V Employees.

c.    <u>For Benefit Payments</u>: For the purpose of determining the amount of a benefit to be paid, your "Annual Compensation" in effect on the date of the event for which the claim is paid will be used, as determined below:

    i.    For a Full-time salaried Employee, "Annual Compensation" is your annual base salary. For a part-time salaried Employee, "Annual Compensation" is your annual base salary for the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

    ii.    For an hourly Employee, "Annual Compensation" is your base hourly rate multiplied by the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

    iii.    For commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Annual Compensation" is the greater of:

        (1)    your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if you have been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period), or

        (2)    $20,000.

    iv.    Not withstanding the above, if the underlying Benefit Plan under which the claim is to be paid has a different definition of pay for purposes of calculating benefits thereunder, such Benefit Plan's definition shall govern.

**Annual Enrollment Period**
The period in each calendar year when you may enroll for or change benefit elections under the Policy, if you are eligible. This period must be agreed upon by your Employer and us.

TempleInland/Cleiland 137

**Dependent Child**
Your unmarried child if he or she meets the following requirements:

1.    A child 14 days of age but less than 19 years old;
2.    A child who is 19 or more years old but less than 25 years old, enrolled in a school as a full-time student and primarily supported by you;
3.    A child who is 19 or more years old, primarily supported by you and incapable of self-sustaining employment by reason of mental or physical handicap. Proof of the child's condition and dependence must be submitted to us within 31 days after the date the child ceases to qualify as a Dependent for the reasons listed above. During the next two years, we may, from time to time, require proof of the continuation of such condition and dependence. After that, we may require proof no more than once a year.

The term "child" means a child born to or legally adopted by you. It includes a child during any waiting period prior to the finalization of the child's adoption. It also means a stepchild living with you or any other child who lives with you where you care for the child in place of the child's natural parents and claim the child on your federal income tax return.

**Disabled**
You are Disabled, if, because of Injury or Sickness, you are unable to perform all the material duties of any occupation for which you are or may reasonably become qualified based on your education, training or experience.

**Employee**
For eligibility purposes, you are an Employee if you work for the Employer and are in one of the "Classes of Eligible Employees." Otherwise, you are an Employee if you are an employee of the Employer who is insured under the Policy.

**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is acting as your agent for transactions relating to this insurance. You shall not consider any actions of the Employer as actions of the Insurance Company.

**Flexible Benefits Plan**
The Flexible Benefits Plan is the Employee Benefits Plan arrangement sponsored by your Employer for eligible Employees and their eligible dependents.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in your eligibility class.

**Injury**
Any accidental loss or bodily harm that results directly or indirectly from all other causes from an accident.

**Insurability Requirement**
An eligible person satisfies the Insurability Requirement for an amount of coverage on the day we agree in writing to accept you as insured for that amount. To determine a person's acceptability for coverage, we will require you to provide evidence of good health and may require it be provided at your expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on your certificate cover page. References to the Insurance Company have been changed to "we", "our", "ours", and "us" throughout the certificate.

**Insured**
You are an Insured if you are eligible for insurance under the Policy, insurance is elected for you, the required premium is paid and your coverage is in force under the Policy.

**Life Status Change**
A Life Status Change is an event recognized by your Employer's Flexible Benefits Plan as qualifying you to make changes in benefit selections at a time other than an Annual Enrollment Period.

43

If there is no Employer sponsored Flexible Benefits Plan, or if it is no longer in effect, the following events are Life Status Changes.

1. Marriage
2. Divorce, annulment or legal separation
3. Birth or adoption of a child
4. Death of a spouse
5. Termination of a spouse's employment
6. A change in the benefit plan available to the Employee's spouse
7. A change in the Employee's or his or her spouse's employment status that affects either person's eligibility for benefits

**Physician**
Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include you, your spouse, your immediate family (including parents, children, siblings, or spouses of any of the foregoing, whether the relationship derives from blood or marriage), or a person living in your household.

**Prior Plan**
The Prior Plan refers to the plan of insurance providing similar benefits sponsored by your Employer in effect directly prior to the Policy Effective Date.

**Retirement Eligible**
Retirement Eligible means the earlier of a) the date on which you would become eligible to draw benefits under the Retirement Plan absent disability (the "Normal Retirement Age" as defined in the Retirement Plan, or, in the case of the Temple-Inland Savings and Retirement Plan, the maximum date until which a terminated Employee may defer a distribution), or b) the date on which you would become eligible to draw full, unreduced old age insurance benefits under the Social Security Act absent disability as if you were born in 1937 or earlier, notwithstanding the fact that in any particular case you (i) might have become eligible for (or actually commenced) early retirement benefits (whether or not subsidized or reduced to reflect early commencement) under the Retirement Plan or the Social Security Act, (ii) might have become eligible for (or actually commenced) postponed retirement benefits beyond the "normal retirement age" defined in the Retirement Plan or the earliest eligibility set forth in the Social Security Act, (iii) might be a participant in (or have actually received benefits under) a Retirement Plan that does not have a "normal retirement age", (iv) might have a birth date causing your date for commencement of unreduced Social Security benefits to be age 66 or age 67, or (v) might not be eligible for benefits under the Retirement Plan or the Social Security Act.

**Sickness**
Any physical or mental illness or disease.

**Spouse**
The lawful Spouse of an Employee.

TL-00470 8a (TX)

44

SUPPLEMENTAL INFORMATION
for

Temple-Inland Health and Welfare Benefits Plan

required by the Employee Retirement
Income Security Act of 1974

As a Plan participant in Temple-Inland's Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

## IMPORTANT INFORMATION ABOUT THE PLAN

- The Plan is established and maintained by Temple-Inland Forest Products Corporation.

- The Employer Identification Number (EIN) is 75-1462427.

- The Plan Number is 515.

- The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, FLI-050710, issued by LIFE INSURANCE COMPANY OF NORTH AMERICA.

- The Plan Administrator is:        Temple-Inland Inc. Benefits Administration Committee
                                    303 S. Temple Drive, P.O. Drawer N
                                    Diboll, TX 75941

    The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy. (Your rights upon termination or amendment of the Plan are set forth in your Certificate.)

- The agent for service of legal process is the Plan Administrator.

- The Plan of benefits is financed by the Employer and Employees.

- The date of the end of the Plan Year is December 31.

## YOUR RIGHTS AS SET FORTH BY ERISA

As a Plan participant, ERISA gives you certain rights and protection. To ensure the protection of these rights, ERISA requires any person or entity who is responsible for the operation of the Plan to administer the Plan in a fiduciary capacity. This means that this person, or entity, must act prudently and with the sole purpose of the Plan participants in mind.

If you request, the Plan Administrator must:

a.    Allow you to examine, without charge, at the Plan Administrator's office, all Plan documents including insurance contracts, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as, annual reports and Plan descriptions.

45

TempleInland/Cleland 140

b.  Provide you with Plan documents and other Plan information. Any request you make for this information must be in writing to the Plan Administrator. There may be a reasonable charge for the copies.

c.  Provide you with a summary of the Plan's annual financial report. (On certain plans, the law requires the Plan Administrator to provide you with this information.)

Unless there are reasons beyond the Plan Administrator's control, materials you request should be received within 30 days. If you do not receive these materials within that time, you may file suit in a federal court. The court may require the Plan Administrator to pay you up to $110 for each day the material is delayed.

No one, not even your employer, may fire you or discriminate against you in order to prevent you from obtaining a benefit or exercising the rights you have under ERISA.

You may file suit in a federal or state court if any of the following situations arise:

a.  You believe you have been improperly denied a benefit, in whole, or in part.
b.  You believe the Plan fiduciaries are misusing Plan funds.
c.  You believe you have been discriminated against for asserting your rights. (In this case, you may file suit in court or request assistance from the U.S. Department of Labor.)

The court will decide who should pay court costs and legal fees. If you win your case, the court may order the person you have sued to pay the costs and fees. However, if you lose, or if the court finds that your suit is frivolous, you may be required to pay the costs and fees.

## WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM

When you are eligible to receive benefits under the Plan, you must request a claim form from the Plan Administrator. All claims you submit must be on the claim form provided by the Insurance Company. You must complete the form according to the directions on the form. If these forms are not available, you must provide a written statement outlining proof and extent of the loss. After you have completed the claim form or written statement, you must submit it to the Insurance Company.

The Insurance Company has 90 days, from the date it receives your notice of claim, to determine whether or not benefits are payable to you in accordance with the terms and provisions of the Policy. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 90 days. You should receive this written notification before the end of the initial 90 day review period.

During the review period, the Insurance Company may require a medical examination of the Insured, at its own expense; or additional information regarding the loss. If a medical examination is required, the Insurance Company will notify you of the date and time of the examination and the physician's name and location. (It is important that you keep any appointments made since rescheduling examinations will delay the claim process.) If additional information is required, the Insurance Company must notify you, in writing, specifying the nature of the information needed and an explanation as to why it is needed.

If your claim is approved, you will receive the appropriate benefit from LIFE INSURANCE COMPANY OF NORTH AMERICA.

If your claim is denied, in whole or in part, you must receive written notice from the Insurance Company within the 90 day review period (or within 180 days if the review period was extended). The Insurance Company's written notice must include the following information:

1.  The specific reason(s) the claim was denied.
2.  Specific reference to the Policy provision(s) upon which the denial is based.
3.  A statement informing you of your right to appeal the decision, and an explanation of the appeal procedure, as outlined in "Appeal Procedure for Denied Claims" below.

TempleInland/Cleland 141

**Appeal Procedure for Denied Claims**

Whenever a claim is denied, you have the right to appeal the decision. You, or your duly authorized representative, must make a written request for appeal to the Insurance Company within 60 days from the date you receive the denial. If you do not make this request within that time frame, you will have waived your right to appeal.

Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. During the review, you, or your duly authorized representative, have the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. You may also submit issues and comments that you feel might affect the outcome of the review.

The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days. You should receive this written notification before the end of the initial 60 day review period. Once its review is complete, the Insurance Company must notify you, in writing, of the results for the review and indicate the Plan provisions upon which it based its decision.

## WHO YOU SHOULD CONTACT IF YOU HAVE QUESTIONS ABOUT THE PLAN

If you have any questions about the Plan, contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

LM-SB35a

TempleInland/Cleiland 142

UNDERWRITTEN BY:
**LIFE INSURANCE COMPANY OF NORTH AMERICA**
a CIGNA Company

Classes 1-12
4/2001



CIGNA Group Insurance
Life ● Accident ● Disability

TempleInland/Cleiland 143

# SECTION II

TempleInland/Cleiland 144

# GROUP ACCIDENT INSURANCE CERTIFICATE

## POLICY NUMBER  OK-810692

# TEMPLE-INLAND

**ADD0001A**

| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
|---|---|

To obtain information or make a complaint:

Para obtener informacion o para someter una queja:

You may call the Life Insurance Company of North America, Group Insurance Division toll-free telephone number for information or to make a complaint at:

Usted puede llamar al numero de telefono gratis del Life Insurance Company of North America, Group Insurance Division para informacion o para someter una queja al:

**1-800-547-5515**

**1-800-547-5515:**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

**1-800-252-3439**

You may write the
Texas Department of Insurance
P.O. Box 149104
Austin, TX 78714-9104
FAX #(512) 475-1771

Puede escribir al Departamento de
Seguros de Texas
P.O. Box 149104
Austin, TX 78714-9104
FAX #(512) 475-1771

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the is not resolved, you may contact the Texas Department of Insurance. of Insurance.

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se compania primero. Si no se resuelve la disputa, peude entonces communicarse con el departmento (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 CHESTNUT STREET, PHILADELPHIA, PA. 19192
A STOCK INSURANCE COMPANY

**ACCIDENT ONLY**
**CERTIFICATE OF INSURANCE**

(Please refer to the Policy
Number in any communication
concerning this insurance.)

We, the Life Insurance Company of North America, have issued a group insurance policy to the Organization named on the Certificate Schedule. The Schedule also shows the group policy number.

We certify that we insure all employees (or members) of the Organization who are in an eligible class described in the Schedule. Your coverage begins on the date you become eligible. This does not apply if you are not regularly performing the duties of your occupation on the date your coverage would begin. In that case, your coverage will start on the date you return to those duties.

Your benefits are described in this Certificate. You should read it with care so you will understand your coverage. This is not the insurance contract. The group policy is the only contract under which benefits are paid. You may examine it at the office of the Organization.

This Certificate replaces any certificates which may have been issued to you in the past under this group policy.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

## TABLE OF CONTENTS

Certificate Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Family Plan Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Scope of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Description of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Templeinland/Cleiland 147

## CERTIFICATE SCHEDULE

| | |
|---|---|
| Policyholder: | TEMPLE-INLAND FOREST PRODUCTS CORPORATION |
| Policy Numbers: | OK-810692 |

Eligible Class(es):

| Class | Description |
|---|---|
| 1 | All active, Full-time and part-time, salaried, hourly and commissioned I, II, III and V Employees and pilots of the Policyholder who are eligible for the Temple-Inland Benefit Solutions Plan and who are regularly working a minimum of 20 hours per week. |
| 2 | All spouses of Class 1 eligible employees |
| 3 | All child/ren of Class 1 eligible employees. |

New Hires: Each Full-time salaried exempt Employee, commission II Employee, commission III Employee, and each part-time salaried exempt Employee who is a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service on that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time salaried non-exempt Employee who is not a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time or part-time salaried non-exempt Employee who is a Financial Services Employee, and each hourly Employee, part-time hourly Employee, part-time salaried Employee (who is not a Financial Services Employee), commission I Employee, or commission V Employee shall be eligible to participate in the Plan upon the first day of the month coinciding with or following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service. For this group, Waiting Period is defined as follows:

For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees, Waiting Period means 31 days of Active Service from an Employee's most recent date of hire as an Employee.

**Benefit Amounts:**

| Class | Coverage | Principal Sum |
|---|---|---|
| 1 | Accidental Death and Dismemberment, Speech and Hearing, Paralysis, the Seatbelt, Owned Air, Medical Continuation Premium Reimbursement Benefit, and Violent Crime Benefit | 1, 2, 3, 4, 5 or 6 times Basic Annual Earnings adjusted to next higher $1,000 if not a multiple of $1,000; Minimum of $20,000; Maximum of $1,000,000 |
| 2 | Accidental Death and Dismemberment, Speech and Hearing, Paralysis Seatbelt, Medical Continuation Premium Reimbursement Benefit, and Special Education - Spouse Benefit | Flat benefit of $10,000, $25,000, $50,000, $75,000 or $100,000 (benefit amount to match amount selected under FLI-050710) |

1

TempleInland/Cleland 148

| 3 | Accidental Death and Dismemberment, Speech and Hearing, Paralysis, Seatbelt, Medical Continuation Premium Reimbursement Benefit, and Special Education - Child Benefit | Flat benefit of $5,000 or $10,000 (benefit amount to match amount selected under FLI-050710) (see note a) |

Note a): The maximum benefit for a dependent child who is less than six (6) months old is $500.

Basic Annual Earnings is defined as:

a.  For All Purposes: For all purposes under the Temple-Inland Benefit Solutions Plan, "Basic Annual Earnings" includes only compensation paid to you by your Employer for services performed by you for your Employer as reflected on your Employer's payroll system which meets all the definitions set forth in this subparagraph a. and the applicable subparagraphs b. or c. below.  "Basic Annual Earnings" does not include any amounts that are not paid through your Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

"Basic Annual Earnings" includes your base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan.  For commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Basic Annual Earnings" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, have accrued, or are otherwise payable at the time of the calculation).  For all other Employees, "Basic Annual Earnings" excludes commissions.

"Basic Annual Earnings" excludes all other compensation, including, but not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by your Employer to you on behalf of an entity that is not a member of your Employer's controlled group of corporations for services rendered by you on behalf of such entity, and such other payments or income as may be designated by the Company.

b.  For Costs and Credits: For purposes of determining Costs and Credits, your "Basic Annual Earnings" is your "Basic Annual Earnings" in effect at the time the Solutions enrollment data is produced as determined below:

    i.  For a salaried Employee, "Basic Annual Earnings" is your annual base salary for a Full-time Employee or 0.5 times the annual base salary for a part-time Employee, regardless of the number of hours regularly worked.

    ii.  For an hourly Employee, "Basic Annual Earnings" is your base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

    iii.  For newly hired commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Basic Annual Earnings" is the greater of:

        (1)  base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable), or

        (2)  $20,000

2

   iv.    For all other commission I Employees, commission II Employees, and commission III Employees, and commission V Employees, "Basic Annual Earnings" is determined by:

        (1)    adding your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

        (2)    annualizing that amount based on a full 12-month year.

   v.    For Employees hired after the Solutions enrollment data is produced or Employees who have a change in pay or change in status after the Solutions enrollment data is produced, "Basic Annual Earnings" will be determined as of the date of hire or the date of change in pay or change in status, respectively; provided, however, that the Plan Administrator may elect in his sole discretion to use the "frozen pay" determined at the time the Solutions enrollment data is produced to determine Costs and Credits for commission I Employees, commission II Employees, commission III Employees, and commission V Employees.

c.    <u>For Benefit Payments:</u> For the purpose of determining the amount of a benefit to be paid, your "Basic Annual Earnings" in effect on the date of the event for which the claim is paid will be used, as determined below:

   i.    For a Full-time salaried Employee, "Basic Annual Earnings" is your annual base salary. For a part-time salaried Employee, "Basic Annual Earnings" is your annual base salary for the number of hours you are regularly scheduled to work, up to a maximum of 2080 hours.

   ii.    For an hourly Employee, "Basic Annual Earnings" is your base hourly rate multiplied by the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

   iii.    For commission I Employees, commission II Employees, commission III Employees and commission V Employees, "Basic Annual Earnings" is the greater of:

        (1)    your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if you have been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period), or

        (2)    $20,000.

   iv.    Not withstanding the above, if the underlying Benefit Plan under which the claim is to be paid has a different definition of pay for purposes of calculating benefits thereunder, such Benefit Plan's definition shall govern.

3

TempleInland/Cleiland 150

## TERMINATION

Your coverage will end when any of these things happen:
1)     On the date that the group policy is terminated.
2)     On the next premium due date, if you enter full time military service for more than 30 days.
3)     On the next premium due date, if you are no longer in an eligible class.
4)     At the end of the period for which you have paid your premium, if you do not pay the required premium contribution. This is subject to the 31 day grace period.

## FAMILY PLAN COVERAGE

If "Family Plan" is selected, we certify that the family members described below are also covered:
a)     Your spouse.
b)     Your unmarried children 14 days and under 19 years of age (under 25 years of age if the child is enrolled full time in an accredited school or college). "Child" means (a) an Employee's natural (biological) child (whether born in or out of wedlock and whether or not the child lives with the Insured or is claimed as a dependent on the Insured's Federal Income Tax Return); (b) an adopted child, (including a child during any waiting period to finalization of the child's adoption); (c) a stepchild who lives with the Insured; and (d) any other child who lives with the Insured who is cared for by the Insured in place of his natural or legal parents, and who is claimed as a dependent on the Insured's Federal Income Tax Return.

The "Family Plan" provides coverage for: (1) the Insured's spouse; and/or (2) the Insured's dependent children (as defined above).

**Termination** - If you have family plan coverage, a family member's coverage will end:
1)     when your coverage ends; or
2)     on the next premium due date, if the family member is no longer eligible; or
3)     at the end of the period for which you have paid the family plan premium, if you do not pay the required premium contribution. This is subject to the 31 day grace period.

**Handicapped Dependents** - Coverage may be kept in force for any child who reaches the age limit, and is both: (1) totally incapable of self-sustaining employment due to a physical or mental handicap; and (2) chiefly dependent on you for support and maintenance. To keep this coverage in force, you must give us proof of the child's incapacity and dependence not more than 31 days after the child reaches the age limit. We may require proof from time to time, but not more than once a year after the 2 years that follow the date that the child reaches the age limit.

## SCOPE OF COVERAGE

We will pay benefits for loss from bodily injuries:
a)     caused by an accident which happens while a person is covered by the policy; and
b)     which directly, and from no other cause, result in a covered loss (see the Description of Coverage).

We will not pay benefits if the loss was caused by:
a)     sickness, disease or bodily infirmity; or
b)     any of the exclusions listed on the next page.

**YOU ARE COVERED FOR ACCIDENTS ONLY.**
**THE POLICY DOES NOT PAY BENEFITS FOR LOSS CAUSED BY SICKNESS.**
**READ YOUR CERTIFICATE WITH CARE.**

4

## EXCLUSIONS

No benefits will be paid for loss resulting from:

1.  Intentionally self-inflicted injuries, or any attempt thereat, while sane or insane (in Missouri, while sane).

2.  Declared or undeclared war or act of war.

3.  Accident which occurs while the covered person is serving on full time active duty for more than 30 days in any armed forces. (Send us proof of service. We will refund any premium paid for this time.)(Reserve or National Guard active duty for training is not excluded.)

4.  Travel or flight (including getting in or out, on or off) in any aircraft or device which can fly above the earth's surface, if:

    A.  the aircraft or device is being used:
        (1)  for test or experimental purposes; or
        (2)  by or for any military authority (Aircraft flown by the U.S. Military Airlift Command (MAC) or a similar service of another country are not excluded); or
        (3)  for travel, or is designed for travel, beyond the earth's atmosphere; or
        (4)  by or for the named organization or any of its subsidiaries or affiliates (This exclusion applies whether the aircraft or device is owned, leased, operated or controlled, as defined. Chartered aircraft, as defined, are not excluded); or

    B.  the Insured is:
        (1)  serving as pilot or crew member (or student taking a flying lesson) and is not riding as a passenger; or
        (2)  hang gliding; or
        (3)  parachuting, except when the covered person has to make a parachute jump for self-preservation.

5.  The commission of a felony by the Insured.

6.  Sickness, disease, bodily or mental infirmity, or medical or surgical treatment thereof, or bacterial or viral infection, regardless of how contracted. This does not include bacterial infection that is the natural and foreseeable result of an accidental external cut or wound, or accidental food poisoning.

7.  Voluntary self-administration of any drug or chemical substance not prescribed by a licensed physician. (Accidental ingestion of a poisonous substance is not excluded.)

## DEFINITIONS

"Owned aircraft" means one to which the organization holds legal or equitable title. It may use, alter or sell its property as it wishes.

"Leased aircraft" means one the organization does not own. It may use the aircraft as it wishes for the term of the written lease. The time will be longer than a few days or one or two trips. It may not alter or sell the aircraft without the consent of the owner.

"Operated or controlled aircraft" means one the organization does not own. It will be leased, rented or borrowed for more than 10 straight days. The organization may use it as it wishes. It may not alter or sell the aircraft without consent of the owner.

5

TempleInland/Cleiland 152

"Chartered aircraft" means one the organization does not own. It will be hired for one purpose or one trip or for general use. The time the organization has it may not exceed 10 straight days, nor more than 15 days in any one year. One or more aircraft hired on a regular or frequent basis are not chartered.

## PROVISIONS

**NOTICE OF CLAIM:**
Written notice must be given within 30 days (Kentucky: 60 days) after a covered loss begins, or as soon as reasonably possible. Notice may be given to us, at our home office at Philadelphia, Pennsylvania, or to our agent. This notice should include your name, address, and the policy number.

**CLAIM FORMS:**
When we receive the notice of claim, we will send forms for filing proof of loss. If claim forms are not sent within 15 days, the proof requirements will be met by submitting, within 90 days, written proof of the nature and extent of the loss.

**PROOF OF LOSS:**
Written proof must be given to us within 90 days after the date of loss. If that is not reasonably possible, we will not deny or reduce any claim if proof is furnished as soon as reasonably possible.

**TIME OF PAYMENT OF CLAIMS:**
Benefits for loss covered by the policy will be paid as soon as we receive proper written proof of such loss.

**PAYMENT OF CLAIMS:**
Loss of life benefits will be paid to the beneficiary named in our files. The benefits can be paid in one lump sum; or, at your written request, in accordance with one of our available settlement plans. If you have not chosen any such settlement plan, the beneficiary may do so after your death. The beneficiary should request in writing to be paid from an available settlement plan. We must agree to the plan chosen. If there is no surviving beneficiary, your loss of life benefits will be paid in one lump sum to the first surviving class of the following classes of beneficiaries: (a) wife or husband; (b) child or children; (c) mother and father; (d) sisters and brothers. If there is no surviving member of any of the above classes, the benefits will be paid to your estate. All other benefits will be paid to you. If we are to make payments to your estate, or to a family member who is incapable of giving a valid release, we may pay up to $1000 to a relative by blood or marriage who we believe is equitably entitled to it. This does not apply where the total payment will be over $1000. This good faith payment satisfies our legal duty to the extent of that payment.

**PHYSICAL EXAMINATIONS AND AUTOPSY:**
We will pay the cost and have the right to have the covered person examined as often as reasonably necessary while a claim is pending. We may have an autopsy made, at our expense, unless prohibited by law. (Autopsies are not permitted in Massachusetts, Mississippi and South Carolina.)

**LEGAL ACTIONS:**
No legal action to get policy benefits may be brought less than 60 days nor more than 3 years (Kansas: 5 years; South Carolina: 6 years) after written proof of loss has been furnished as required by the policy.

**CHANGE OF BENEFICIARY:**
The beneficiary may be changed at any time. The beneficiary's consent is not required. No change is binding until we receive written notice of it.

**WORKERS' COMPENSATION INSURANCE:**
The policy is not in lieu of and does not affect any requirement for coverage under any Workers' Compensation insurance.

6

TempleInland/Cleland 153

# DESCRIPTION OF COVERAGE

**Benefits for Accidental Loss of Life, Limb, Sight, Speech, Hearing and Paralysis:** _    _.

If within one year from the date of accident covered by the policy, bodily injuries result in: (1) the death of the Insured; or (2) dismemberment or loss of sight, speech, hearing or paralysis, we will pay the benefits provided for such loss; provided, however, that if the Insured sustains more than one such loss as the result of any one accident, we will pay only the one largest amount to which the Insured is entitled. This amount will not exceed the Principal Sum.

| | |
|---|---|
| Loss of Life | The Principal Sum |
| Loss of two or More Members | The Principal Sum |
| Loss of Speech and Hearing (both ears) | The Principal Sum |
| Quadriplegia (total paralysis of both upper and lower limbs) | The Principal Sum |
| Loss of One Member | One-Half The Principal Sum |
| Paraplegia (total paralysis of both lower limbs) | Three-Quarters The Principal Sum |
| Loss of Speech | One-Half The Principal Sum |
| Loss of Hearing (both ears) | One-Half The Principal Sum |
| Hemiplegia (total paralysis of upper and lower limbs on one side of body) | One-Half The Principal Sum |
| Loss of Thumb and Index Finger of the same hand | One Quarter The Principal Sum |

"The Principal Sum" is stated elsewhere in the Certificate.

"Member" means hand, foot, and eye.

"Loss" means, with regard to hand or foot, complete severance through or above the wrist or ankle joint; loss of an eye means total and irrecoverable loss of sight; loss of speech means complete inability to communicate audibly in any degree; loss of hearing means irrecoverable loss of hearing which cannot be corrected by any hearing aid or device; loss of thumb and index finger means severance of each through or above the joint closest to the wrist. (In California, loss of a thumb and index finger means loss by complete severance of at least one whole phalanx of each.) (In South Carolina, the loss of four whole fingers from one hand equals the loss of one hand.)

"Paralysis" means loss of use, without severance, of a limb. This loss must be determined by a physician to be complete and not reversible.

"Severance" means complete separation and dismemberment of the limb from the body.

TempleInland/Cleiland 154

DESCRIPTION OF COVERAGE

## MEDICAL CONTINUATION PREMIUM REIMBURSEMENT BENEFIT

We will pay an additional benefit if:

1. an Insured Employee dies as a result of a covered accident;
2. benefits are payable under the policy because of the Employee's accidental death;
3. the Employee is survived by a spouse or dependent child covered under the policy;
4. the Survivor is covered under the Employer's medical plan at the time of the Employee's death; and
5. the Survivor elects to continue medical plan coverage under the Employer's medical plan as permitted by COBRA or state continuation law.

The Medical Continuation Premium Reimbursement Benefit is payable for each Survivor who qualifies:

(a) in an amount up to 2% of the Employee's Principal sum, but not more than $2,500 per year; and

(b) only while the Survivor continues to pay the premium for the continued coverage.

We will pay this benefit once a year for not more than 3 years provided:

(1) we are notified in writing of the Survivor's eligibility for the benefit within 60 days of the Employee's death; and

(2) the request for reimbursement and valid proof of claim are received within 60 days after a 12-month period of continued coverage.

A 12-month period starts: a) when the Survivor elects to continue coverage under the Employer's medical plan; or b) the first of the month following the expiration of the previous 12 month period if benefits are exhausted prior to the end of any 12 month period.

Benefits are payable to the Survivor, or the person who actually paid the premium of the Survivor's behalf, if other than the Survivor.

"Survivor" means a spouse or dependent child who is:

(a) covered under the group policy at the time of the Employee's death; and
(b) eligible to continue coverage under the Employer's medical plan at the time of the Employee's death.

TL-005523-TX                                            8

## LIFE INSURANCE COMPANY OF NORTH AMERICA

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It is in force only while the policy is in force.

In return for the premium, the following benefits are added:

### SPECIAL EDUCATION BENEFITS

We will pay "special education" benefits if the Insured:
  a)    is covered under the Family Plan; and
  b)    dies as the result of a covered accident; and
  c)    is survived by a spouse and/or one or more dependent children.

### A.  CHILD BENEFIT

"Dependent child" means a child insured under the Family Plan who has not attained the maximum age stated in the General Provisions Concerning Dependent Insurance at the time of the Insured's death.

A "special education" benefit will be payable for each child who qualifies as follows:
  a)    enrolls as a full-time student at a school of higher learning before reaching age 25 and
  b)    incurs expense for tuition, fees, books, room and board, transportation and any other costs payable directly to, or approved and certified by, such school.

We will pay the cost of such incurred expense for not more than:
  a)    4 straight years after enrollment begins;
  b)    2% Insured's Principal Sum or $5,000 whichever is less, each year per child.

### B.  SPOUSE BENEFIT

A "special education" benefit will be payable for the Insured's surviving spouse who:
  a)    enrolls within one year after the Insured's death in any accredited school for the purpose of retaining or refreshing skills needed for employment; and
  b)    incurs expenses payable directly to, or approved and certified by, such school.

We will pay the cost of such incurred expense for not more than:
  a)    1 year after enrollment begins;
  b)    $3,000.

If, at the time of accident, Family Plan coverage is in force but there is no dependent who is or could become eligible for "special education" benefits, we will pay an additional benefit of $1,000 to the Insured's designated beneficiary.

Payment will be in addition to all other policy benefits.

Except for the above, this rider does not change the policy in any way.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

LM-21367                                    9

TempleInland/Cleiland 156

LIFE INSURANCE COMPANY OF NORTH AMERICA

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It is in force only while the policy is in force.

It is hereby understood and agreed that exclusion 4-B(1) is deleted in its entirety, and the following shall take its place.

"Except for those persons who have completed Pilot History Data Form (Form #AN 3006e or its replacement), and based on that information have been accepted by the Life Insurance Company of North America in writing. Also, these persons must maintain the same degree or better qualification, or coverage will cease".

All other terms and conditions of the policy or certificate shall remain unchanged.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

TL-005369

10

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

**AMENDATORY RIDER**

This rider amends the policy or certificate to which it is attached.  It expires at the same time as the policy or certificate.

In consideration of the premium air travel Exclusion 4A(4) is deleted.

No other policy provision or condition is changed in any way by this rider.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

LM-9232                                  11

TempleInland/Cleiland 158

## LIFE INSURANCE COMPANY OF NORTH AMERICA

It is understood and agreed that the following benefit amends the policy or certificate to which it is attached. It takes effect on the date shown, and is in force only while the policy is in force. It terminates on the same date as the policy or certificate. In return for the payment of premium, the following benefit is added:

### AMENDATORY RIDER

### VIOLENT CRIME BENEFIT

We will pay the additional benefit amounts listed below due to the Employee's Loss resulting from any of the violent crimes listed below. Such loss must occur within 365 days of the date the violent crime was committed. We will also pay an additional benefit for hospital confinement that is the result of a violent crime.

1.    Actual or attempted robbery or holdup; or
2.    Actual or attempted kidnaping; or
3.    Any other type of international assault that is a crime classified as a felony based on governing statute or common law in the state where the felony occurred.

**Accidental Death and Dismemberment, Sight, Speech, Hearing and Paralysis.**  We will pay an additional amount equal to 20% of the Principal Sum payable for death or dismemberment; provided, however, that this additional amount shall not exceed $25,000. The Loss must occur while the Employee is covered for this benefit. The Employee must provide proof that the Loss was the direct result of an attempted violent crime prior to the payment of this benefit.

**Hospital Indemnity.**  We will pay equal payments of $100.00 per day up to a maximum of 10 days for each day the Employee is confined to a Hospital. The confinement must begin within 30 days of the violent crime and while the Employee is covered for this benefit. The Employee must provide proof, satisfactory to the Company, that the Employee was confined to a Hospital for the period of time for which the payments are due. If the Employee dies while confined to a Hospital, payment for hospital confinement shall be in addition to the payment for Accidental Death.

A copy of a police report providing proof that the Loss was the direct result of an attempted robbery, kidnaping or assault that falls within the condition of a felony must be provided prior to the payment of any benefits under this rider.

All exclusions listed in the policy or certificate to which this rider is attached are also applicable to this rider. The following exclusions are in addition to those listed in the policy or certificate:

Violent crimes committed by a family member or a member of the same household, as a fellow employee;

Violent crimes committed by the Employee.

Violent Crime Benefit, Continued

**Definitions**

"Family member" means the Employee's parents, step-parents, spouse or former spouse, son, daughter, brother, sister, mother-in-law, father-in-law, brother-law, sister-in-law, aunt, uncle, grandparent, grandchild and stepchild.

"Fellow Employee" means a person employed by the same employer of the Employee or by an employer that is an affiliated or subsidiary corporation. It shall also include any person who was so employed, but was terminated not more than forty-five (45) days prior to the date on which the violent crime was committed.

"Hospital" means an institution which:
1) is licensed as a hospital pursuant to applicable law;
2) is primarily and continuously engaged in providing medical care and treatment to sick and injured persons;
3) is under the supervision of a staff of doctors;
4) provides 24-hour nursing service by or under the supervision of a graduate registered nurse (R.N.)
5) has medical, diagnostic and treatment facilities, with major surgical facilities on its premises, or available to it on a prearranged basis; and
6) charges for its services.

"Member of the same household" means a person who maintains residence at the same address as the insured.

"Loss" means bodily injury or death resulting from a violent crime, as defined.

All other terms and conditions shall remain unchanged.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

TempleInland/Cleiland 160

## LIFE INSURANCE COMPANY OF NORTH AMERICA

This rider amends the policy or certificate to which it is attached and ends at the same time. The following provision is added.

### CONVERSION PRIVILEGE

We will issue a converted policy to you (the Insured) if the accidental death insurance under the policy or certificate ends for any of the following reasons:

a) employment or membership ends; or
b) eligibility ends (except for age); or
c) the group or blanket policy or plan ends.

**Age:** You must be under age 70 to get a converted policy.

**Health:** We will not ask for your proof of insurability.

**Application:** To get a converted policy, you must: (1) apply within 31 days after group coverage ends; and (2) pay the first premium. If you have assigned ownership of your group coverage, the owner must apply for you.

**Cost:** Your premium will be based on: (1) the class of risk to which you belong; (2) your age; and (3) the form and the amount of coverage issued.

**Effective Date:** Your converted policy will take effect on: (1) the date group coverage ends; or, if later, (2) the date you apply for the converted policy.

**Benefits:** The converted policy will cover accidental death and dismemberment. The amount you apply for must be: (1) in $1,000 increments; and (2) not less than $25,000 nor more than the amount of your group insurance if greater than $25,000; and not more than $250,000.

**Exclusions:** The converted policy may exclude the hazards or conditions that apply to your group coverage at the time it ends. We will reduce payment under the converted policy by the amount of any benefits paid under the group policy if both cover the same loss.

**Dependents:** Dependents may also convert group coverage when they cease to be eligible for any reason except age.

**Renewability:** The converted policy may provide that it can be renewed on any anniversary with the consent of the Company subject to a maximum age limit.

**Prior Converted Policy:** If you convert your group coverage and later again be insured under the same group plan, you may not convert a second time unless: (1) you give us, at your expense, proof of your insurability; or (2) the prior converted policy is no longer in force.

TempleInland/Cleland 161

**State Laws:** If the converted policy we provide in the state where the group policy was issued cannot lawfully be provided in the state where you reside at time of conversion, you may choose a form that is available for conversion in your state.

No other policy provisions or condition is changed in any other way by this rider.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

LM-9L78a                                            15                                            12/87

TempleInland/Cleiland 162

### LIFE INSURANCE COMPANY OF NORTH AMERICA

This rider amends the policy or certificate to which it is attached. It is in force only while the policy is in force.

### SEATBELT BENEFIT

We will pay an additional accidental death benefit of a minimum of $1,000 per covered person up to a maximum of 10% of the covered person's benefit not to exceed $10,000. We will pay this benefit if a covered person suffers loss of life, as the result of a covered accident which occurs while he is driving or riding in a Private Passenger Car, if:

1)    The car is equipped with seatbelts; and

2)    The seatbelt was in actual use and properly fastened at the time of the accident; and

3)    The position of the seatbelt is certified in the official report of the accident; or by the investigating officer. A copy of the police accident report must be submitted with the claim.

If such certification is not available, and it is unclear whether the covered person was properly wearing a seatbelt, then we will pay a fixed benefit of $1,000 to the designated beneficiary.

"Private Passenger Car" means: a validly registered four-wheel private passenger car (including Policyholder owned cars), station wagons, jeeps, pick-up trucks, and van-type cars.

In the case of a child, seatbelt means a child restraint, as required by the state law and approved by the National Highway Traffic Safety Administration, properly secured and being used as recommended by its manufacturer for children of like age and weight at the time of an accident.

Except for the above, this rider does not change the policy in any way.

### LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

LM-3244

16

TempleInland/Cleland 163

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
(Herein called the Company)

This rider is attached to and made a part of
**Group Policy No. OK-810692**
A contract between the Company and

**TEMPLE-INLAND FOREST PRODUCTS CORPORATION**
(herein called the Policyholder)

Effective Date: **January 1, 1998**

The Company and the Policyholder hereby agree that the Policy and any Certificates delivered under the Policy are amended, as of the Effective Date shown above, as follows:

The following provision has been added:

> Continuation of Coverage - If an Employee is no longer in a class of eligible persons, due to their being on an Employer approved family or medical leave of absence, coverage for such Employee and any eligible dependents may be continued for 12 weeks, provided the necessary premium payments are made.

> Coverage for such employee or eligible dependents will be continued without regard to the availability of ongoing payroll deduction or central collection of premiums.

This rider terminates at the same time as the Policy or Certificate to which it is attached. Except for the above, this rider does not change the Policy or Certificates in any way.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

FAMILY AND MEDICAL LEAVE PROVISION FOR CONTINUATION OF COVERAGE

TL-004898                                    17

TempleInland/Cleiland 164

**SUPPLEMENTAL INFORMATION**
for

**Temple-Inland Health and Welfare Benefits Plan**

**required by the Employee Retirement
Income Security Act of 1974**

As a Plan participant in Temple-Inland's Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

## IMPORTANT INFORMATION ABOUT THE PLAN

- The Plan is established and maintained by Temple-Inland Forest Products Corporation.

- The Employer Identification Number (EIN) is 75-1462427.

- The Plan Number is 530.

- The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, OK-810692, issued by LIFE INSURANCE COMPANY OF NORTH AMERICA.

- The Plan Administrator is:  Temple-Inland Inc. Benefits Administration Committee
  303 S. Temple Drive, P.O. Drawer N
  Diboll, TX 75941

  The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy. (Your rights upon termination or amendment of the Plan are set forth in your Certificate.)

- The agent for service of legal process is the Plan Administrator.

- The Plan of benefits is financed by the Employee.

- The date of the end of the Plan Year is December 31.

## YOUR RIGHTS AS SET FORTH BY ERISA

As a Plan participant, ERISA gives you certain rights and protection. To ensure the protection of these rights, ERISA requires any person or entity who is responsible for the operation of the Plan to administer the Plan in a fiduciary capacity. This means that this person, or entity, must act prudently and with the sole purpose of the Plan participants in mind.

If you request, the Plan Administrator must:

a.  Allow you to examine, without charge, at the Plan Administrator's office, all Plan documents including insurance contracts, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as, annual reports and Plan descriptions.

TempleInland/Cleiland 165

# EXHIBIT 1 TO EXHIBIT B Part 4

b.    Provide you with Plan documents and other Plan information. Any request you make for this information must be in writing to the Plan Administrator. There may be a reasonable charge for the copies.

c.    Provide you with a summary of the Plan's annual financial report. (On certain plans, the law requires the Plan Administrator to provide you with this information.)

Unless there are reasons beyond the Plan Administrator's control, materials you request should be received within 30 days. If you do not receive these materials within that time, you may file suit in a federal court. The court may require the Plan Administrator to pay you up to $110 for each day the material is delayed.

No one, not even your employer, may fire you or discriminate against you in order to prevent you from obtaining a benefit or exercising the rights you have under ERISA.

You may file suit in a federal or state court if any of the following situations arise:

a.    You believe you have been improperly denied a benefit, in whole, or in part.
b.    You believe the Plan fiduciaries are misusing Plan funds.
c.    You believe you have been discriminated against for asserting your rights. (In this case, you may file suit in court or request assistance from the U.S. Department of Labor.)

The court will decide who should pay court costs and legal fees. If you win your case, the court may order the person you have sued to pay the costs and fees. However, if you lose, or if the court finds that your suit is frivolous, you may be required to pay the costs and fees.

## WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM

When you are eligible to receive benefits under the Plan, you must request a claim form from the Plan Administrator. All claims you submit must be on the claim form provided by the Insurance Company. You must complete the form according to the directions on the form. If these forms are not available, you must provide a written statement outlining proof and extent of the loss. After you have completed the claim form or written statement, you must submit it to the Insurance Company.

The Insurance Company has 90 days, from the date it receives your notice of claim, to determine whether or not benefits are payable to you in accordance with the terms and provisions of the Policy. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 90 days. You should receive this written notification before the end of the initial 90 day review period.

During the review period, the Insurance Company may require a medical examination of the Insured, at its own expense; or additional information regarding the loss. If a medical examination is required, the Insurance Company will notify you of the date and time of the examination and the physician's name and location. (It is important that you keep any appointments made since rescheduling examinations will delay the claim process.) If additional information is required, the Insurance Company must notify you, in writing, specifying the nature of the information needed and an explanation as to why it is needed.

If your claim is approved, you will receive the appropriate benefit from LIFE INSURANCE COMPANY OF NORTH AMERICA.

TempleInland/Cleiland 166

If your claim is denied, in whole or in part, you must receive written notice from the Insurance Company within the 90 day review period (or within 180 days if the review period was extended). The Insurance Company's written notice must include the following information:

1.  The specific reason(s) the claim was denied.
2.  Specific reference to the Policy provision(s) upon which the denial is based.
3.  A statement informing you of your right to appeal the decision, and an explanation of the appeal procedure, as outlined in "Appeal Procedure for Denied Claims" below.

**Appeal Procedure for Denied Claims**

Whenever a claim is denied, you have the right to appeal the decision. You, or your duly authorized representative, must make a written request for appeal to the Insurance Company within 60 days from the date you receive the denial. If you do not make this request within that time frame, you will have waived your right to appeal.

Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. During the review, you, or your duly authorized representative, have the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. You may also submit issues and comments that you feel might affect the outcome of the review.

The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days. You should receive this written notification before the end of the initial 60 day review period. Once its review is complete, the Insurance Company must notify you, in writing, of the results for the review and indicate the Plan provisions upon which it based its decision.

**WHO YOU SHOULD CONTACT IF YOU HAVE QUESTIONS ABOUT THE PLAN**

If you have any questions about the Plan, contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

TempleInland/Cleiland 167

UNDERWRITTEN BY:
**LIFE INSURANCE COMPANY OF NORTH AMERICA**
a CIGNA Company

Class I
4/2001



CIGNA Group Insurance
Life ● Accident ● Disability

# SECTION III

TempleInland/Cleiland 169

# GROUP BUSINESS TRAVEL ACCIDENT
# INSURANCE CERTIFICATE

## POLICY NUMBER ABL-670620

# TEMPLE-INLAND INC.

**ADD0004A**

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call the Life Insurance Company of North America, Group Insurance Division toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono grantis del Life Insurance Company of North America, Group Insurance Division para informacion acerca de companias, coberturas, derechos o queja al: |
| **1-800-547-5515** | **1-800-547-5515** |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write the Texas Department of Insurance P.O. Box 149104 Austin, TX 78714-9104 FAX #(512) 475-1771 | Puede escribir al Departamento de Seguros de Texas P.O. Box 149104 Austin, TX 78714-9104 FAX #(512) 475-1771 |
| **PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the agent or company first If the dispute is not resolved, you may contact the Texas Department of Insurance. | **DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe communicarse con el agente o la compania primero. Si no se resuelve la disputa, puedo entonces communicarse con el departmento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

TL-004426

**TempleInland/Cleiland 171**

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 Chestnut Street
Philadelphia, PA 19192
A Stock Insurance Company

ACCIDENT ONLY
CERTIFICATE OF
INSURANCE

Covered Person:
Effective Date:
Beneficiary:

We, the Life Insurance Company of North America, have issued Blanket Accident Policy No. **ABL-670620** to the Policyholder:

TEMPLE-INLAND INC.

We certify that you are covered by the Blanket Policy while you are a member of the classes of the Policyholder, as described:

1    All active employees of the Policyholder

2    All active pilots of the Policyholder

3    All non-employee directors of the Policyholder not included in Class 1 or Class 2

Your coverage will begin on the later of: (1) the effective date shown above; or (2) the date you entered the class described above. Your coverage will end on the date that: (1) you are no longer in the class described above; or (2) the Blanket Policy is terminated. Termination will not affect a claim for a loss which occurs while you are covered by the Blanket Policy.

Your coverage is described in this Certificate. You should read it with care so you will understand your coverage. This is not the insurance contract. The Blanket Policy is the only contract under which benefits are paid. You may examine it at the office of the Policyholder.

John K. Leonard, President

**TABLE OF CONTENTS**

Schedule of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
Scope of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
Total Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
Description of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Applicable Hazards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Payment of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## SCHEDULE OF BENEFITS

Your benefit amounts are shown below. If no benefit amount is shown, then you are not covered for that benefit.

| Class 1: | Coverage A: Principal Sum: | 3 times Base Annual Earnings to a maximum principal sum of $450,000 |
| --- | --- | --- |
| | Coverage B: Maximum Amount: | 1% of the principal sum each month, subject to a maximum of 100 consecutive months |
| | Coverage C: Weekly Disability:<br>Maximum Period: | (Does not apply under this policy)<br>N/A weeks; Waiting Period: days |
| | Coverage D: Maximum Amount: | Deductible: (Does not apply under this Policy) |
| | Applicable Hazards: | LM-9D84(2229); LM-9D84(2205); TL-002810(2252); LM-1E46(2239) |
| Class 2 | Coverage A: Principal Sum: | 3 times Base Annual Earnings to a maximum principal sum of $450,000 |
| | Coverage B: Maximum Amount: | 1% of the principal sum each month, subject to a maximum of 100 consecutive months |
| | Coverage C: Weekly Disability:<br>Maximum Period: | (Does not apply under this policy)<br>N/A weeks; Waiting Period: days |
| | Coverage D: Maximum Amount: | Deductible: (Does not apply under this Policy) |
| | Applicable Hazards: | LM-9D84(2229); LM-9D84(2259); TL-002810(2252); LM-1E46(2239) |
| Class 3 | Coverage A: Principal Sum: | $100,000 |
| | Coverage B: Maximum Amount: | 1% of the principal sum each month, subject to a maximum of 100 consecutive months |
| | Coverage C: Weekly Disability:<br>Maximum Period: | (Does not apply under this policy)<br>N/A weeks; Waiting Period: days |
| | Coverage D: Maximum Amount: | Deductible: (Does not apply under this Policy) |
| | Applicable Hazards: | LM-6P61(2299); LM-9D84(2205); TL-002810(2252);LM-1E46(2239) |

LM-2385

TempleInland/Cleiland 173

"Basic Annual Earnings," as used above, means:

a.    For All Purposes: For all purposes under the Temple-Inland Benefit Solutions Plan, "Basic Annual Earnings" includes only compensation paid to you by your Employer for services performed by you for your Employer as reflected on your Employer's payroll system which meets all the definitions set forth in this subparagraph a. and the applicable subparagraphs b. or c. below. "Basic Annual Earnings" does not include any amounts that are not paid through your Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

"Basic Annual Earnings" includes your base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan. For commission I Employees, commission II Employees, commission III employees, and commission V Employees, "Basic Annual Earnings" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, have accrued, or are otherwise payable at the time of the calculation). For all other Employees, "Basic Annual Earnings" excludes commissions.

"Basic Annual Earnings" excludes all other compensation, including, but not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by your Employer to you on behalf of an entity that is not a member of your Employer's controlled group of corporations for services rendered by you on behalf of such entity, and such other payments or income as may be designated by the Company.

b.    For Costs and Credits: For purposes of determining Costs and Credits, your "Basic Annual Earnings" is your "Basic Annual Earnings" in effect at the time the Solutions enrollment data is produced as determined below:

i.    For a salaried Employee, "Basic Annual Earnings" is your annual base salary for a Full-time Employee or 0.5 times the annual base salary for a part-time employee, regardless of the number of hours regularly worked.

ii.    For an hourly Employee, "Basic Annual Earnings" is your base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

iii.    For newly hired commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Basic Annual Earnings" is the greater of:

(1)    base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable), or

(2)    $20,000

iv.    For all other commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Basic Annual Earnings" is determined by:

(1)    adding your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

(2)    annualizing the amount based on a full 12-month year.

TempleInland/Cleland 174

v. For Employees hired after the Solutions enrollment data is produced or Employees who have a change in pay or change in status after the Solutions enrollment data is produced, "Basic Annual Earnings" will be determined as of the date of hire or date of change in pay or change in status respectively; provided, however, that the Plan administrator may elect in his sole discretion to use the "frozen pay" determined at the time the Solutions enrollment data is produced to determine Costs and Credits for commission I Employees, commission II Employees, commission III Employees and commission V Employees.

c. <u>For Benefit Payments</u>: For the purpose of determining the amount of a benefit to be paid, your "Basic Annual Earnings" in effect on the date of the event for which the claim is paid will be used, as determined below:

i. For a Full-time salaried Employee, "Basic Annual Earnings" is your annual base salary. For a part-time salaried Employee, "Basic Annual Earnings" is your annual base salary for the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

ii. For an hourly Employee, "Basic Annual Earnings" is your base hourly rate multiplied by the number of hours the you are regularly scheduled to work, up to a maximum of 2,080 hours.

iii. For commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Basic Annual Earnings" is the greater of:

(1) your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if you have been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period), or

(2) $20,000.

iv. Not withstanding the above, if the underlying Benefit Plan under which the claim is to be paid has a different definition of pay for purposes of calculating benefits thereunder, such Benefit Plan's definition shall govern.

**Total Limit of Liability** - We will not pay more than $7,500,000 per accident.

If, but for this provision, we would pay more than this amount, then the benefits we will pay to each covered person will be reduced in the same proportion, so that the total amount we will pay is the maximum amount shown above.

## SCOPE OF COVERAGE

We will pay the benefits described in this Certificate only for the types of accidents described in Schedule IV of the policy. A copy of this schedule is attached. **The policy covers accidents only. It does not pay benefits for loss caused by sickness. Please read your Certificate with care.**

LM-2385

3

## DESCRIPTION OF COVERAGE

**Coverage A: Accidental Death and Dismemberment Benefit -** We will pay this benefit if:
  a)    you are injured by one of the types of accidents described in Schedule IV, which happens while you are covered by this policy; and
  b)    you suffer one of the losses listed below as a direct result of the injuries, and from no other cause, within a year of the accident.

The amount of this benefit is shown in the table below. The Principal Sum is shown on page 1.

```
Loss of Life . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . The Principal Sum
Loss of Two or more Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . The Principal Sum
Loss of Speech and Hearing (both Ears) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . The Principal Sum
Quadriplegia (total paralysis of both upper
and lower limbs) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . The Principal Sum
Loss of One Member . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . One-half The Principal Sum
Paraplegia (total paralysis of both lower limbs) . . . . . . . . . . . . . . . . . . Three-quarters The Principal Sum
Loss of Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . One-half The Principal Sum
Loss of Hearing (both ears) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . One-half The Principal Sum
Hemiplegia (total paralysis of
upper and lower limbs on one side of the body) . . . . . . . . . . . . . . . . . . One-half The Principal Sum
Loss of Thumb and Index finger of the same hand . . . . . . . . . . . . . . . . . One-quarter The Principal Sum
```

"Principal Sum" is stated elsewhere in the Certificate.

"Member" means hand, foot, and eye.

"Loss" means, with regard to hand or foot, complete severance through or above the wrist or ankle joint; loss of an eye means total and irrecoverable loss of sight; loss of speech means complete inability to communicate audibly in any degree; loss of hearing means irrecoverable loss of hearing, which cannot be corrected by any hearing aid or device; loss of thumb and index finger means severance of each through or above the joint closest to the wrist. (In California, loss of a thumb and index finger means loss by complete severance of at least one whole phalanx of each.) (In South Carolina, the loss of four whole fingers from one hand equals the loss of one hand.)

"Paralysis" means loss of use, without severance, of a limb. This loss must be determined by a physician to be complete and not reversible.

"Severance" means complete separation and dismemberment of the limb from the body.

**Coverage B: Permanent Total Disability -** We will pay this benefit if:
  a)    you are injured in one of the types of accidents described in Schedule IV, which happens while you are covered for this benefit; and
  b)    you become totally disabled as a direct result, and from no other cause, within 365 days of the accident; and
  c)    you remain totally disabled for 12 straight months; and
  d)    you are then permanently and totally disabled.

The amount of this benefit is the maximum amount shown in the Schedule of Benefits, minus any amounts we have paid under Coverage A for the accident. If the amount shown is a periodic amount, then we will pay this amount until:
  a)    you die, or are no longer permanently and totally disabled; or
  b)    the total we have paid for the accident under Coverages A and B is the Principal Sum shown in your Schedule of Benefits.

TempleInland/Cleland 176

## DESCRIPTION OF COVERAGE  (Continued)

You will be deemed "totally disabled" if you can not do all the substantial and material duties of your type of work.  You will be deemed "permanently and totally disabled" if you are not able to do any work for which you are or may become qualified by reason of your education, experience, or training: and if you are not expected to be able to do any such work for the rest of your life.

**Coverage C: Total Disability Weekly Benefit -** We will pay this benefit if:
   a)  you are injured in one of the types of accidents described in Schedule IV, which happens while you are covered for this benefit; and
   b)  you become totally disabled as a direct result of the injuries, and from no other cause, within 30 days of the accident.

The amount of this benefit is shown in your Schedule of Benefits.  This benefit will begin on the first day after the end of the Waiting Period (shown in your Schedule).  We will pay this benefit until:
   a)  you die, or are no longer totally disabled; or
   b)  we have paid this benefit for the Maximum Period shown in your Schedule; or
   c)  you qualify for benefits under Coverages A or B.

You will be deemed "totally disabled" if:
   a)  during the Waiting Period and for the next 12 months after that, you can not do all the substantial and material duties of your type of work.
   b)  after that, if you can not do any work for which you are or may become qualified by reason of your education, experience, or training.

**Coverage D: Medical Expense Benefit -** If you are injured in one of the types of accidents described in Schedule IV, which happens while you are covered for this benefit, then we will pay this benefit for the services listed below, which you need as a direct result of the injuries, and from no other cause, within a year of the accident:
   a)  stays in a hospital
   b)  medical or surgical treatment by a doctor
   c)  the services of licensed or graduate nurses
   d)  x-ray examinations
   e)  professional ambulance service from the scene of the accident to the nearest hospital.

The treatment must begin not more than 60 days after the accident.

The amount of this benefit will be the actual cost of these services, minus the deductible amount (if any) shown in your Schedule.  The deductible must be satisfied once for each accident.

This benefit will be reduced to the extent that benefits are payable for the medical services under: (i) any employer sponsored health care plan: or (ii) any government program or any law, including any Worker's Compensation law.

We will not pay more than the maximum amount shown in your Schedule, for all medical treatment needed as a result of any one accident.

TL-007128

5

TempleInland/Cleiland 177

## EXCLUSIONS

We will not pay benefits for loss caused by or resulting from:

a) Suicide or attempted suicide, or whenever a covered person injures himself on purpose, while sane. (In Missouri only, this does not apply if he was insane.)

b) War or acts of war, whether or not declared; except to the extent that it is provided for in Schedule IV-W or IV-H.

c) Injury while you are on full time active duty in any armed forces. We will return the pro rata portion of premiums paid to cover a person during a period of such service.

d) Taking part in a felony.

e) Travel or flight in any spacecraft; or flight in any aircraft, except to the extent that this hazard is provided for by name in Schedule IV.

f) Any bacterial infection that was not caused by an accidental cut, wound or food poisoning.

The policy is accident only. We will not pay benefits for loss caused by or resulting from illness, disease, or bodily infirmity.

TL-007128

6

**TempleInland/Cleiland 178**

**BLANKET ACCIDENT POLICY**

| Policyholder: | Temple-Inland Inc. | Schedule Date: January 1, 1999 |
|---|---|---|
| Part of Policy No. ABL-670620 | | Applies To Class(es): 1 and 2 |

### SCHEDULE IV- A
### HAZARDS INSURED AGAINST

**24 HOUR COVERAGE WHILE TRAVELING ON BUSINESS
AWAY FROM THE PREMISES OF THE POLICYHOLDER (Owned Aircraft Not Covered) 2229**

We will pay the benefits described in the policy for any accident which occurs anywhere in the world while you, on a business trip, are traveling or making a short stay:
  a)  away from the Policyholder's premises in the city of permanent assignment; and
  b)  on business for the Policyholder, and in the course of the Policyholder's business.
All such trips must be authorized by the Policyholder.
This coverage does not apply:
  a)  while you are commuting between your home and place of work; or
  b)  during personal deviations made by you.

"Personal deviation," as used here, means an activity that is not reasonably related to the Policyholder's business, and not incidental to the business trip.

This coverage will start at the actual start of a trip.  It does not matter whether the trip starts at the your home, place of work, or other place.  This coverage will end when you:
  a)  arrive at your home or place of work, whichever happens first; or
  b)  make a personal deviation.
If you travel to another city, and are expected to remain there for more than 60 days, this shall be deemed a change in your city of permanent assignment.

**Exposure And Disappearance**--This coverage includes exposure to the elements, after the forced landing, stranding, sinking, or wrecking of a vehicle in which you were traveling on business for the Policyholder.

You will be presumed to have died, for purposes of this coverage, if:
  a)  you are in a vehicle which disappears, sinks, or is stranded or wrecked, in the course of a trip which would be covered by the policy; and
  b)  your body is not found within a year of the accident.

**Aircraft Restrictions**--If the accident happens while you are riding in, or getting on or off of, an aircraft, we will pay benefits, but only if:
  a)  you are riding as a passenger only, and not as a pilot or member of the crew; and
  b)  the aircraft has a valid certificate of airworthiness; and
  c)  the aircraft is flown by a pilot with a valid license; and
  d)  the aircraft is not being used for:  (i) crop dusting, spraying, or seeding; fire fighting; sky writing; sky diving or hang gliding; pipeline or power line inspection; racing, endurance tests, stunt or acrobatic flying; or (ii) any operation which requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on).

TempleInland/Cleiland 179

**Owned Aircraft Not Covered**—We will not pay benefits if the aircraft is owned, leased or controlled by the Policyholder, or any of its subsidiaries or affiliates.  An aircraft will be deemed to be "controlled" by the Policyholder  if the Policyholder may use it as it wishes for more than 10 straight days, or more than 15 days in any year.

Unless otherwise provided, we will pay benefits only once for any one covered loss, even if it was caused by more than one covered hazard.

TempleInland/Cleiland 180

**BLANKET ACCIDENT POLICY**

| Policyholder: | Temple-Inland Inc. | Schedule Date: January 1, 1999 |
|---|---|---|

| Part of Policy No.  ABL-670620 | Applies To Class(es):  3 |
|---|---|

## SCHEDULE IV- B
## HAZARDS INSURED AGAINST

### NON-EMPLOYEE DIRECTOR

We will pay the benefits described in the policy for any accident which occurs while a covered person is traveling to, during the course of, or returning from:
   a)   a meeting of the committee or other similar duties; or
   b)   a trip taken at the Policyholder's specific request; or
   c)   any trip for which the insured director received reimbursement from the Policyholder for expenses or services performed.
All such trips must be authorized by the Policyholder .

This coverage does not include:
   a)   commuting between the covered person's home and place of work; or
   b)   personal deviations by the covered person.
"Personal deviation," as used here, means an activity that is not reasonably related to the Policyholder's business, and not incidental to the business trip.

This coverage will start at the actual start of a trip.  It does not matter whether the trip starts at the covered person's home, place of work, or other place.  This coverage will end when the covered person:
   a)   arrives at his home or place of work, whichever happens first; or
   b)   makes a personal deviation.

**Exposure And Disappearance**--This coverage includes exposure to the elements, after the forced landing, stranding, sinking, or wrecking of a vehicle in which the covered person was traveling on business for the Policyholder.

A covered person will be presumed to have died, for purposes of this coverage, if:
   a)   he is in a vehicle which disappears, sinks, or is stranded or wrecked, in the course of a trip which would be covered by the policy; and
   b)   his body is not found within a year of the accident.

**Aircraft Restrictions**--If the accident happens while a covered person is riding in, or getting on or off of, an aircraft, we will pay benefits, but only if:
   a)   he is riding as a passenger only, and not as a pilot or member of the crew; and
   b)   the aircraft has a valid certificate of airworthiness; and
   c)   the aircraft is flown by a pilot with a valid license; and
   d)   the aircraft is not being used for:  (i) crop dusting, spraying, or seeding; fire fighting; sky writing; sky diving or hang gliding; pipeline or power line inspection; racing, endurance tests, stunt or acrobatic flying; or (ii) any operation which requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on).

TempleInland/Cleiland 181

**Owned Aircraft Not Covered**--We will not pay benefits if the aircraft is owned, leased or controlled by the Policyholder, or any of the Policyholder's subsidiaries or affiliates. An aircraft will be deemed to be "controlled" by the Policyholder, if the Policyholder may use it as the Policyholder wishes for more than 10 straight days, or more than 15 days in any year.

Unless otherwise provided, we will pay benefits only once for any one covered loss, even if it was caused by more than one covered hazard.

TempleInland/Cleiland 182

### BLANKET ACCIDENT POLICY

| | |
|---|---|
| Policyholder:    Temple-Inland Inc. | Schedule Date: January 1, 1999 |
| Part of Policy No.  ABL-670620 | Applies To Class(es):  1 and 3 |

## SCHEDULE IV- C
## HAZARDS INSURED AGAINST

**OWNED AIRCRAFT (INDUSTRIAL AID) (Passengers Only)**

We will pay the benefits described in the policy for any of the types of accidents described below.

**A.  Travel In An Aircraft**—We will pay benefits for injuries caused by an accident which happens while a covered person is riding in, or getting on or off of, the aircraft described below:

    a)  if it has a valid certificate of airworthiness; and

    b)  if it is flown by a pilot with a valid license; and

    c)  if it is not being used for:  (i) crop dusting, spraying, or seeding; fire fighting; sky writing; sky diving or hang gliding; pipeline or power line inspection; aerial photography or exploration; racing, endurance tests, stunt or acrobatic flying; or (ii) any operation which requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on); or (iii) any use for which a charge is made; and

    d)  if the covered person is riding as a passenger only, and not as a pilot or member of the crew.

We will also pay benefits if a covered person has to make a parachute jump from the aircraft described below, to save his life.

**B.  Being Struck By An Aircraft**—We will pay benefits for injuries which occur as a result of being struck by the aircraft described below.

**C.  Exposure And Disappearance**—This coverage includes exposure to the elements, after the forced landing, stranding, sinking, or wrecking of the aircraft described below, in which the covered person was riding as a passenger.

A covered person will be presumed to have died, for purposes of this coverage, if:

    a)  he is in the aircraft described below, which disappears, sinks, or is stranded or wrecked, in the course of a trip which would be covered by the Policy; and

    b)  his body is not found within a year of the accident.

**Description Of Aircraft Covered**—This coverage applies only to the aircraft described below (include make, model, license number, and passenger seating capacity):

| Aircraft Make | Aircraft Model | License Number | Seating Capacity |
|---|---|---|---|
| 1978 Falcon ($5,850,000 agg) | 20F | N120TF | 2 crew/11 passengers |
| 1978 Falcon ($5,850,000 agg) | 20F | N120WH | 2 crew/11 passengers |
| 1988 Cessna ($4,050,000 agg) | 500 | N120HC | 2 crew/7 passengers |
| 1983 Falcon ($5,400,000 agg) | 50 | N77TE | 2 crew/10 passengers |
| 1985 Beech King ($4,050,000 agg) | Air 300 | N79TE | 2 crew/8 passengers |
| 1995 Lear Jet ($4,050,000 agg) | 31 | N2935SA | 2 crew/7 passengers |
| 1978 Bell ($2,700,000 agg) | 206L | N78TE | 1 crew/5 passengers |
| 1989 Agusta ($2,700,000 agg) | 109 | N71TE | 1 crew/5 passengers |
| 1992 Lear Jet ($3,600,000 agg) | 31 | N74OF | 2 crew/6 passengers |

TempleInland/Cleiland 183

This coverage also includes the temporary use of a substitute aircraft, with no greater seating capacity, if the aircraft described above is withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

Unless otherwise provided, we will pay benefits only once for any one covered loss, even if it was caused by more than one covered hazard.

TempleInland/Cleiland 184

## BLANKET ACCIDENT POLICY

| | | | |
|---|---|---|---|
| Policyholder: | Temple-Inland Inc. | | Schedule Date: January 1, 1999 |
| Part of Policy No. ABL-670620 | | | Applies To Class(es):  2 |

## SCHEDULE IV- D
## HAZARDS INSURED AGAINST

**PILOTS' AND CREW MEMBERS' COVERAGE**
**(Business Travel Only)**

We will pay the benefits described in the policy for any of the types of accidents described below, which occur:
    a)  while the covered person is traveling on business for the Policyholder; and
    b)  in the course of the Policyholder's business.
All such trips must be authorized by the Policyholder.

**Pilots' And Crew Members' Coverage**—We will pay benefits for an accident which happens while a covered person is flying as a licensed pilot or member of the crew of the aircraft described below.  We will not pay benefits if:
    a)  the aircraft does not have a valid certificate of airworthiness; or
    b)  the aircraft is being used for: (i) crop dusting, spraying, or seeding; fire fighting; sky writing; sky diving or hang gliding; pipeline or power line inspection; aerial photography or exploration; racing, endurance tests, stunt or acrobatic flying; or (ii) any operation which requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on).

**Exposure And Disappearance**—This coverage includes exposure to the elements, after the forced landing, stranding, sinking or wrecking of the aircraft described below, in which a covered person was traveling on business for the Policyholder, as a pilot or member of the crew.

A covered person will be presumed to have died, for purposes of this coverage, if:
    a)  he is in the aircraft described below, which disappears, sinks, or is stranded or wrecked, while he is traveling on business for the Policyholder, as a pilot or member of the crew; and
    b)  his body is not found within a year of the accident.

**Description Of Aircraft Covered**—This coverage applies only to the aircraft described below (include make, model, license number, and passenger seating capacity):

| Aircraft Make | Aircraft Model | License Number | Seating Capacity |
|---|---|---|---|
| 1978 Falcon ($5,850,000 agg) | 20F | N120TF | 2 crew/11 passengers |
| 1978 Falcon ($5,850,000 agg) | 20F | N120WH | 2 crew/11 passengers |
| 1988 Cessna ($4,050,000 agg) | 500 | N120HC | 2 crew/7 passengers |
| 1983 Falcon ($5,400,000 agg) | 50 | N77TE | 2 crew/10 passengers |
| 1985 Beech King ($4,050,000 agg) | Air 300 | N79TE | 2 crew/8 passengers |
| 1995 Lear Jet ($4,050,000 agg) | 31 | N2935SA | 2 crew/7 passengers |
| 1978 Bell ($2,700,000 agg) | 206L | N78TE | 1 crew/5 passengers |
| 1989 Agusta ($2,700,000 agg) | 109 | N71TE | 1 crew/5 passengers |
| 1992 Lear Jet ($3,600,000 agg) | 31 | N740F | 2 crew/6 passengers |

TempleInland/Cleiland 185

This coverage also includes the temporary use of a substitute aircraft, with no greater seating capacity, if the aircraft described above is withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

Unless otherwise provided, we will pay benefits only once for any one covered loss, even if it was caused by more than one covered hazard.

TempleInland/Cleiland 186

**BLANKET ACCIDENT POLICY**

| | | | |
|---|---|---|---|
| Policyholder: | Temple-Inland Inc. | Schedule Date: | January 1, 1998 |
| Part of Policy No. | ABL-670620 | Applies To Class(es): | 1, 2 and 3 |

### SCHEDULE IV- E
### HAZARDS INSURED AGAINST

**PERSONAL DEVIATIONS COVERAGE**

We will pay the benefits described in the policy for any accident which occurs while a Covered Person engages in Personal Deviations while traveling:
    (1)  outside his city of permanent assignment; and
    (2)  on business for the Policyholder.

**"Personal Deviations"** as used here, means an activity that:
    (1)  is not reasonably related to the Policyholder's business;
    (2)  is not incidental to the Policyholder's business; and
    (3)  occurs up to 10 days before or after the scheduled end of the business travel.

TempleInland/Cleiland 187

**POLICY AMENDMENT**

| | |
|---|---|
| Policyholder:    Temple-Inland Inc. | Schedule Date: January 1, 1998 |

Part of Policy No.  ABL-670620

This rider amends the policy named above.  It is in force only while the policy is in force, but not before the date shown above.

In exchange for the payment of $250.00  which is

         X       included in the premium for the policy shown in Schedule III; or

         ☐       in addition to the policy premium;

the war risk coverage below is added.

**SCHEDULE IV-W -- WAR RISK INSURANCE**

We agree to pay the benefits described in this policy for accidents described in Schedule IV which are caused by war or acts of war.  Exclusion (b) is hereby deleted.  This coverage is subject to the terms set forth below.

**Area Covered--**This coverage includes loss caused by or resulting from war or acts of war only in the area described below:

             World Wide except Iraq, Libya, Yugoslavia (Serbia and Montenegro).

This coverage does not include:  (i) the United States; and (ii) any nation of which the covered person is a citizen.

**Total Limit of Liability--**We will not pay more than $7,500,000 per accident occurrence for the war risk benefits provided by this amendment.  This limit shall apply to injuries sustained from all acts of war in any consecutive 72 hour period.  If, but for this provision, we would pay more than the above stated amount, then the benefits we will pay to each covered person will be reduced in the same proportion, so that the total amount we will pay for war risk coverage is the maximum shown above.

**Premiums and Coverage Subject to Change--**The premiums, benefits, and area covered may be changed at any time by agreement between the Policyholder and us.  This may be done as needed to reflect conditions which, in the opinion of the Policyholder or us, change the war risk exposure.

**Termination--**The Policyholder may cancel this war risk coverage at any time by sending written notice to us at our home office, at the address shown on the cover page of the policy.  This coverage will be canceled when we receive the Policyholder's notice, or later if so specified.

We may cancel this coverage at any time by sending the Policyholder at least 10 days written notice to their most recent address in our records.

We will promptly return any unearned premium that the Policyholder has paid.  However, this is not a condition of termination.

TempleInland/Cleiland 188

Change or termination of this coverage will not affect a claim which begins while this coverage is in force.

Except for the above, this rider does not change the policy or certificate in any way.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

TempleInland/Cleiland 189

## LIFE INSURANCE COMPANY OF NORTH AMERICA

| Policyholder: | Temple-Inland Inc. | | Policy Number: | ABL-670620 |
|---|---|---|---|---|
| Effective Date: | March 24, 1998 | | Applicable to Class(es): | 1, 2, 3 |

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It takes effect on the date shown above, and ends on the date the policy ends.

In consideration of the premium, the following benefit is added:

### NEWLY ACQUIRED AIRCRAFT COVERAGE

If the Policyholder acquires an aircraft after the effective date of this rider, the newly acquired aircraft may be considered an aircraft covered for purposes of Schedules IV-C and IV-D which designate aircraft that are covered effective on the date the aircraft is delivered if:

1. The aircraft has a current, valid Airworthiness Certificate;
2. The Policyholder notifies the Company of the acquisition of the aircraft on or before the 90th day after its delivery date; and
3. The aircraft is an addition to the fleet of already covered aircraft for the specified Schedule IV(s). The Policyholder agrees to pay any additional required premium retroactive to its delivery date.

If the Policyholder notifies the company of the acquisition of the aircraft after the 90th day after its delivery date and agrees to pay any additional required premium retroactive to the date of such notification, and if the aircraft has a current, valid Airworthiness Certificate, the aircraft may be considered covered for the purposes of the specified Schedule IV(s) effective on the date of notification.

All other terms and conditions of the Policy and Certificate remain unchanged.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

**TempleInland/Cleiland 190**

LIFE INSURANCE COMPANY OF NORTH AMERICA

| Policyholder: | Temple-Inland Inc. | | Policy Number: | ABL-670620 |
|---|---|---|---|---|
| Effective Date: | March 24, 1998 | | Applicable to Class(es) | 1, 2, 3 |

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It takes effect on the date shown above, and ends on the date the policy ends.

In consideration of the premium, the following benefit is added:

### SUBSTITUTE AND REPLACEMENT AIRCRAFT COVERAGE

The sentence "This coverage also includes the temporary use of a substitute aircraft, with no greater seating capacity, if the aircraft described above is withdrawn form normal use due to breakdown, repair, servicing, loss or destruction." which appears in the paragraph **Description of Aircraft Covered** on Schedule IV-C and IV-D is deleted

**Substitute Aircraft Coverage-** If any covered aircraft specified on Schedule IV-C and IV-D is temporarily withdrawn from normal use due to mechanical breakdown, servicing or accident, a substitute aircraft may also be considered a covered aircraft for the purposes of such Schedule IV(s), but only while the covered aircraft is temporarily withdrawn from normal use due to the stated reason(s) and only if the substitute aircraft:

1. has a current, valid Airworthiness Certificate in the same class as the aircraft withdrawn from normal use; and
2. is piloted by a person holding a current, valid certificate of competence for that type of aircraft; and
3. is not more than 3 seats, and also not more than 25% larger in passenger and crew member seat capacity than the aircraft withdrawn from normal use.

**Replacement Aircraft Coverage.** If any covered aircraft specified on Schedule IV-C and IV-D is replaced with a newly acquired aircraft, the replacement aircraft may also be considered a covered aircraft for the purposes of such Schedule IV(s) only if the replacement aircraft:
1. has a current, valid Airworthiness Certificate in the same class as the replace aircraft; and
2. has the same or lesser passenger and crew member seat capacity as the replaced aircraft.

All other terms and conditions of the Policy and Certificate remain unchanged.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

TempleInland/Cleiland 191

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

| | | | |
|---|---|---|---|
| Policyholder: | Temple-Inland Inc. | Policy Number: | ABL-670620 |
| Effective Date: | March 24, 1998 | Applicable to Class(es) | 1, 2, 3 |

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It takes effect on the date shown above, and ends on the date the policy ends.

In consideration of the premium, the following benefit is added:

### COMA BENEFIT RIDER

This rider applies only with respect to accidents that occur on or after the Effective Date shown above. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

If Injury renders a Covered Person Comatose within 90 days of the date of the accident that caused the Injury, and if the Coma continues for a period of 30 consecutive days, we will pay a monthly benefit of 1% of the Principal Sum. No benefit is provided for the first 30 days of Coma. The benefit is payable monthly as long as the Covered Person remains Comatose due to that Injury, but ceases on the earliest of: (1) The date the Covered Person ceases to be Comatose due to that Injury; (2) the date the Covered Person dies; or (3) the date the total amount of monthly Coma benefits paid for all Injuries caused by the same accident equals 100% of the Principal Sum. We will pay benefits calculated at a rate of 1/30th of the monthly benefit for each day for which we are liable when the Covered Person is Comatose for less than a full month. Only one benefit is provided for any one month of Coma regardless of the number of Injuries causing the Coma.

We reserve the right, at the end of the first 30 consecutive days of Coma, and as often as it may reasonably require thereafter, to determine, on the basis of all the facts and circumstances, that the Covered Person is Comatose, including, but not limited to, requiring an independent medical examination provided at our expense.

**Coma/Comatose** - as used in this Rider, means a profound state of unconsciousness from which the Covered Person cannot be aroused to consciousness, except by powerful stimulation, as determined by a Physician.

All other terms and conditions of the Policy and Certificate remain unchanged.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

TempleInland/Cleland 192

LIFE INSURANCE COMPANY OF NORTH AMERICA

| Policyholder: | Temple-Inland Inc. | | Policy Number: | ABL-670620 |
|---|---|---|---|---|

| Effective Date: | March 24, 1998 | | Applicable to Class(es) | 1, 2, 3 |
|---|---|---|---|---|

## AMENDATORY RIDER

This rider amends the Policy or Certificate to which it is attached. It takes effect on the date shown above, and ends on the date the Policy ends.

In consideration of the premium, the following benefit is added:

## SEATBELT AND AIR BAG BENEFIT RIDER

This rider applies only to accidents that occur on or after the Amendment Effective Date shown above. It is subject to all of the provisions, limitations and exclusions of the Policy, except as they are specifically modified by this rider.

**Seatbelt Benefit.** We will pay a benefit under this rider when the Covered Person dies as the result of a covered accident, and the death benefit is payable under this Policy. The accident causing death must occur while the Covered Person is operating, or riding as a passenger in an Automobile, and wearing a properly fastened, original, factory-installed seatbelt. The amount payable under this rider is 10% of the covered person's benefit not to exceed $25,000.

**Air Bag Benefit.** We will pay an additional 5% of the Insured Person's Principal Sum or $12,500 whichever is less, under this rider if a Seatbelt Benefit is payable under this rider, and if the Covered Person is positioned in a seat protected by a properly functioning, original, factory-installed Supplemental Restraint System that inflates on impact.

Verification of the actual use of the seatbelt at the time of the accident and that the Supplemental Restraint System inflated properly upon impact must be a part of an official report of the accident or be certified, in writing, by the investigating officer(s).

**Automobile** means a self-propelled private passenger motor vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highway of any state or country. Automobile includes, but is not limited to, a sedan, station wagon, or jeep-type vehicle, or a motor vehicle of the pickup, van, camper or motor home type. Automobile does not include a mobile home or any motor vehicle which is used in mass or public transit.

**Supplemental Restraint System** means an AIR BAG which inflates for added protection to the head and chest areas.

All other terms and conditions of the Policy and Certificate shall remain unchanged.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

TempleInland/Cleiland 193

## LIFE INSURANCE COMPANY OF NORTH AMERICA

| | |
|---|---|
| Policyholder: Temple-Inland Inc. | Policy Number: ABL 670620 |
| Effective Date: January 1, 1998 | Applicable to Class(es): 1, 2, 3 |

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It takes effect on the date shown above, and ends on the date the policy ends.

In consideration of the premium, the following is added:

### REHABILITATION BENEFIT RIDER

This Rider applies only to accidents that occur on or after the Effective Date shown above. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this rider.

**Rehabilitation Benefit.** If a Covered Person suffers an accidental loss for which benefits are payable under the Policy, we will reimburse the Covered Person for Covered Rehabilitative Expenses that are due to the Injury causing the loss. The Covered Rehabilitative Expenses must be incurred within two years after the date of the accident causing the loss and will be payable up to a maximum of $2,500 for all injuries caused by the same accident.

**Hospital** means a facility that: (1) is operated according to law for the care and treatment of injured people; (2) has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis; (3) has 24 hour nursing service by registered nurses (R.N.); and (4) is supervised by one or more Doctors. A Hospital does not include: (1) a nursing, convalescent or geriatric unit of a hospital when a patient is confined mainly to receive nursing care; (2) a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged; nor does it include any ward, room, wing, or other section of the hospital that is used for such purposes; or (3) any military or veterans hospital or soldiers home or any hospital contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces.

**Medically Necessary Rehabilitative Training Service** - as used in this Rider, means any medical service, medical supply, medical treatment or Hospital confinement (or part of a Hospital confinement) that: (1) is essential for physical rehabilitative training due to the Injury for which it is prescribed or performed; (2) meets generally accepted standards of medical practice; and (3) is ordered by a Doctor.

**Doctor** means a licensed physician practicing within the scope of his or her license and rendering care and treatment that is appropriate for the condition and locality. The term does not include a Covered Person, spouse, immediate family (including parents, children, siblings, or spouses of any of the foregoing, whether the relationship derives from blood or marriage), or a person living in the Covered Person's household.

**Covered Rehabilitative Expense(s)** means an expense that: (1) is charged for a Medically Necessary Rehabilitative Training Service of the Covered Person performed under the care, supervision or order of a Doctor; (2) does not exceed the usual level of charges for similar treatment, supplies or services in the locality where the expense is incurred (for a Hospital room and board charge, does not exceed the most common charge for Hospital semi-private room and board in the Hospital where the expense is incurred); and (3) does not include charges that would not have been made if no insurance existed.

TL-007010                                         22

TempleInland/Cleiland 194

**Rehabilitation Rider (Continued)**

**Exclusions.**  In addition to the Exclusions in the General Exclusions section of the Policy, Covered Rehabilitative Expenses do not include any expenses for, or resulting from, any condition for which the Covered Person is entitled to benefits under  (1) any Workers' Compensation Act or similar law; or (2) the Accident Medical Expense Benefit Rider.

All other terms and conditions of the Policy and Certificate shall remain unchanged.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

TempleInland/Cleland 195

## PAYMENT OF CLAIMS

**Claim Procedures: Notice of Claim**—If any covered loss occurs or begins, you must send us written notice within 30 days, or as soon after that as is reasonably possible. This notice should state your name and the policy number. This notice should be sent to us at our home office, at the address shown on the ABL-670620 cover page, or to an agent authorized by us. We will then send you claim forms.

**Claim Procedures: Proof Of Loss**—The claim forms must be sent back to us no more than 90 days after a covered loss occurs or ends, or as soon after that as is reasonably possible. If we have not provided claim forms within 15 days after the notice of claim, you should send us other proof of loss by the date claim forms would be due. This proof of loss should include written proof of the occurrence, type and amount of loss.

**Payment Of Claims: When Paid**--Claims will be paid as soon as we receive due proof of loss. If a claim covers benefits for more than 4 weeks, we will pay all amounts due at the end of each 4 weeks. If there are any benefits due at the end of the period claimed, we will pay them as soon as we receive due proof of loss.

**Payment Of Claims: Accidental Death Benefits**—Benefits paid on account of your death will be paid to the beneficiary you have chosen. This choice must be in writing and filed with us; or filed with the Policyholder, if we have agreed in advance.

If you have not chosen a beneficiary, or if there is no beneficiary alive when you die, we will pay this benefit:

1) to your spouse, if living.
2) If not, in equal shares to your living children.
3) If there are none, in equal shares to your living parents.
4) If there are none, in equal shares to your living brothers and sisters.
5) If there are none, to your estate.

Instead of a lump sum payment, you (while you are living) or your beneficiary (after your death) may choose installment payments from one of the settlement options we are then offering.

**Payment Of Claims: Other Benefits**—All other benefits will be paid to you, if you are living. If not, we will pay your beneficiary or your estate.

**Selection Or Change Of Beneficiary; Assignment**—You have the right to select or change the beneficiary. You do not need the consent of the beneficiary to make such a change, to assign your rights or benefits, or to change your coverage. We will not be bound by an assignment, or by a selection or change of beneficiary, until we receive a signed copy of it. We are not responsible for its validity or sufficiency.

TempleInland/Cleiland 196

## GENERAL PROVISIONS

**Entire Contract; Changes**—The policy (including the endorsements and attached papers) is the entire contract. The Policyholder's application, and the applications of persons for coverage (if any), are not a part of the policy; we may not use any statement contained in them to contest this policy or deny a claim. No change in the policy is valid unless it has been approved by one of our executive officers. This approval must be attached to or endorsed on the policy. No agent may change the policy or waive any provision.

**Termination Of The Policy**—The Policyholder may terminate this policy at any time on or after the first anniversary of its effective date, by sending us written notice. The policy will be terminated on the date that we receive their notice, or later if so specified by the Policyholder. We will return pro rata the unearned portion (if any) of the premiums that were paid.

We may terminate this policy as of any anniversary of its effective date, by sending the Policyholder at least 31 days written notice to their most recent address in our records. This policy will also be terminated if renewal premiums are not paid by the end of the 31 day grace period (see page 4).

Termination will not affect a claim for a loss which occurs while this policy is in force.

**Premiums Subject To Change**—We may change the premium rates as follows:
  a)    When a class of persons is made eligible or not eligible; or
  b)    When it is required by the experience of the risk, or by a change in our tables of rates for a risk. In this case, a rate change will go into effect on the next policy anniversary.

We may only change premium rates if we give the Policyholder at least 31 days written notice.

**Physical Examinations And Autopsy**—At our expense, we may have a person claiming benefits examined as often as reasonably necessary while a claim is pending. We may also make an autopsy in case of death where it is not forbidden by law.

**Legal Actions**—No one may sue for benefits less than 60 days after due proof of loss is submitted, nor more than 3 years (Kansas: 5 years; South Carolina: 6 years) after the date claim forms are due.

**Conformity With State Law**—If any part of this policy conflicts with the law of the state of delivery on the date that the policy goes into effect, then this policy is amended to meet the minimum requirements of such law.

**Records Maintained; Examination And Audit**—The Policyholder or the agent shall keep records showing the essential facts of each person's coverage. We may examine these records at any time that this policy is in force, within 3 years after this policy is terminated, or later if claims are still pending.

**Not In Lieu Of Workers' Compensation**—The policy is not in lieu of and does not affect requirements for coverage under any Workers' Compensation law.

**Certificates Of Insurance**—If required by state law, we will give the Policyholder or your agent certificates of insurance. These will contain the major provisions of this policy, and will state to whom benefits are payable. These shall be issued to all covered persons.

**Examination Of The Policy**—The policy shall be available for inspection by all covered persons during business hours at the Policyholder's office or the office of the administrator.

25

TempleInland/Cleiland 197

SUPPLEMENTAL INFORMATION
for

Temple-Inland Health and Welfare Benefits Plan

required by the Employee Retirement
Income Security Act of 1974

As a Plan participant in Temple-Inland's Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

## IMPORTANT INFORMATION ABOUT THE PLAN

- The Plan is established and maintained by Temple-Inland Forest Products Corporation.

- The Employer Identification Number (EIN) is 75-1462427.

- The Plan Number is 530.

- The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, ABL-670620, issued by LIFE INSURANCE COMPANY OF NORTH AMERICA.

- The Plan Administrator is:        Temple-Inland Inc. Benefits Administration Committee
                                     303 S. Temple Drive,  P.O. Drawer N
                                     Diboll, TX  75941

  The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy. (Your rights upon termination or amendment of the Plan are set forth in your Certificate.)

- The agent for service of legal process is the Plan Administrator.

- The Plan of benefits is financed by the Employer.

- The date of the end of the Plan Year is December 31.

## YOUR RIGHTS AS SET FORTH BY ERISA

As a Plan participant, ERISA gives you certain rights and protection. To ensure the protection of these rights, ERISA requires any person or entity who is responsible for the operation of the Plan to administer the Plan in a fiduciary capacity. This means that this person, or entity, must act prudently and with the sole purpose of the Plan participants in mind.

If you request, the Plan Administrator must:

a.    Allow you to examine, without charge, at the Plan Administrator's office, all Plan documents including insurance contracts, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as, annual reports and Plan descriptions.

LM-5B35a                                26

b.  Provide you with Plan documents and other Plan information. Any request you make for this information must be in writing to the Plan Administrator. There may be a reasonable charge for the copies.

c.  Provide you with a summary of the Plan's annual financial report. (On certain plans, the law requires the Plan Administrator to provide you with this information.)

Unless there are reasons beyond the Plan Administrator's control, materials you request should be received within 30 days. If you do not receive these materials within that time, you may file suit in a federal court. The court may require the Plan Administrator to pay you up to $110 for each day the material is delayed.

No one, not even your employer, may fire you or discriminate against you in order to prevent you from obtaining a benefit or exercising the rights you have under ERISA.

You may file suit in a federal or state court if any of the following situations arise:

a.  You believe you have been improperly denied a benefit, in whole, or in part.
b.  You believe the Plan fiduciaries are misusing Plan funds.
c.  You believe you have been discriminated against for asserting your rights. (In this case, you may file suit in court or request assistance from the U.S. Department of Labor.)

The court will decide who should pay court costs and legal fees. If you win your case, the court may order the person you have sued to pay the costs and fees. However, if you lose, or if the court finds that your suit is frivolous, you may be required to pay the costs and fees.

**WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM**

When you are eligible to receive benefits under the Plan, you must request a claim form from the Plan Administrator. All claims you submit must be on the claim form provided by the Insurance Company. You must complete the form according to the directions on the form. If these forms are not available, you must provide a written statement outlining proof and extent of the loss. After you have completed the claim form or written statement, you must submit it to the Insurance Company.

The Insurance Company has 90 days, from the date it receives your notice of claim, to determine whether or not benefits are payable to you in accordance with the terms and provisions of the Policy. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 90 days. You should receive this written notification before the end of the initial 90 day review period.

During the review period, the Insurance Company may require a medical examination of the Insured, at its own expense; or additional information regarding the loss. If a medical examination is required, the Insurance Company will notify you of the date and time of the examination and the physician's name and location. (It is important that you keep any appointments made since rescheduling examinations will delay the claim process.) If additional information is required, the Insurance Company must notify you, in writing, specifying the nature of the information needed and an explanation as to why it is needed.

If your claim is approved, you will receive the appropriate benefit from LIFE INSURANCE COMPANY OF NORTH AMERICA.

TempleInland/Cleiland 199

If your claim is denied, in whole or in part, you must receive written notice from the Insurance Company within the 90 day review period (or within 180 days if the review period was extended). The Insurance Company's written notice must include the following information:

1.    The specific reason(s) the claim was denied.
2.    Specific reference to the Policy provision(s) upon which the denial is based.
3.    A statement informing you of your right to appeal the decision, and an explanation of the appeal procedure, as outlined in "Appeal Procedure for Denied Claims" below.

**Appeal Procedure for Denied Claims**

Whenever a claim is denied, you have the right to appeal the decision. You, or your duly authorized representative, must make a written request for appeal to the Insurance Company within 60 days from the date you receive the denial. If you do not make this request within that time frame, you will have waived your right to appeal.

Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. During the review, you, or your duly authorized representative, have the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. You may also submit issues and comments that you feel might affect the outcome of the review.

The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days. You should receive this written notification before the end of the initial 60 day review period. Once its review is complete, the Insurance Company must notify you, in writing, of the results for the review and indicate the Plan provisions upon which it based its decision.

**WHO YOU SHOULD CONTACT IF YOU HAVE QUESTIONS ABOUT THE PLAN**

If you have any questions about the Plan, contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

TempleInland/Cleiland 200

**UNDERWRITTEN BY:**
**LIFE INSURANCE COMPANY OF NORTH AMERICA**
a CIGNA Company

Classes 1-3
04/2001



CIGNA Group Insurance
Life ● Accident ● Disability

# SECTION IV

TempleInland/Cleland 202

# Group Long Term Disability Insurance Certificate

## Policy Number FLK-020104

# TEMPLE INLAND

**LTD0001A**

## IMPORTANT INFORMATION ABOUT COVERAGE UNDER
## THE TEXAS LIFE, ACCIDENT, HEALTH AND HOSPITAL SERVICE
## INSURANCE GUARANTY ASSOCIATION

Texas law establishes a system, administered by the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association (the "Association"), to protect policyholders if their life or health insurance company fails to or cannot meet its contractual obligations. Only the policyholders of insurance companies which are members of the Association are eligible for this protection. However, even if a company is a member of the Association, protection is limited and policyholders must meet certain guidelines to qualify. (The law is found in the Texas Insurance Code, Article 21.28-D.)

**BECAUSE OF STATUTORY LIMITATIONS ON POLICYHOLDER PROTECTION, IT IS POSSIBLE THAT THE ASSOCIATION MAY NOT COVER YOUR POLICY OR MAY NOT COVER YOUR POLICY IN FULL.**

**ELIGIBILITY FOR PROTECTION BY THE ASSOCIATION**
When an insurance company which is a member of the Association is designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:
- residents of Texas at the time that their insurance company is impaired;
- residents of other states, ONLY if the following conditions are met:
  1) The policyholder has a policy with a company based in Texas;
  2) The company has never held a license in the policyholder's state of residence;
  3) The policyholder's state of residence has a similar guaranty association; and
  4) The policyholder is **not eligible** for coverage by the guaranty association of the policyholder's state of residence.

**LIMITS OF PROTECTION BY THE ASSOCIATION**
Accident, Accident and Health, or Health Insurance:
- up to a total of $200,000 for one or more policies for each individual covered.
Life Insurance
- net cash surrender value up to a total of $100,000 under one or more policies on any one life; or
- death benefits up to a total of $300,000 under one or more policies on any one life.
Individual Annuities:
- net cash surrender amount up to a total of $100,000 under one or more policies owned by one contract holder.
Group Annuities:
- net cash surrender amount up to $100,000 in allocated benefits under one or more policies owned by one contract holder; or
- net cash surrender amount up to $5,000,000 in unallocated benefits under one contract holder regardless of the number of contracts.

**THE INSURANCE COMPANY AND ITS AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE ASSOCIATION FOR THE PURPOSE OF SALES, SOLICITATION, OR INDUCEMENT TO PURCHASE ANY FORM OF INSURANCE.**

*When you are selecting an insurance company, you should not rely on coverage by the Association.*

Texas Life, Accident, Health and Hospital          Texas Department of Insurance
Service Insurance Guaranty Association              P.O. Box 149104
301 Congress, Suite 500                             Austin, Texas 78714-9104
Austin, Texas 78701                                 800-252-3439
800-982-6362

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call the Life Insurance Company of North America, Group Insurance's toll-free telephone number for information or to make a complaint at:

**1-800-441-1832**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the
Texas Department of Insurance
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

TL-004426

**AVISO IMPORTANTE**

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis del Life Insurance Company of North America, Group Insurance Division para informacion o para someter una queja al:

**1-800-441-1832**

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de
Seguros de Texas
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

TempleInland/Cleiland 205

**FOREWORD**

Disability insurance provides individuals and their families with financial protection. The Disability Insurance Benefit described in this booklet will help secure your family's financial security in the event of your disability.

The need for disability insurance protection depends on individual circumstances and financial situations. A portion of the cost of this coverage is provided by your Employer. You may need to contribute to the remaining cost of coverage through payroll deduction so that your benefit program is more comprehensive and responsive to your needs.

The following pages describe the main provisions of the disability insurance plan available to you.

Insurance benefits described in the following pages will apply to you if your Employer has made this coverage available to you at no cost or you have elected the benefit and authorized payroll deduction for the required premium.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 CHESTNUT STREET
PHILADELPHIA, PA 19192-2235
(215) 761-1000
**A STOCK INSURANCE COMPANY**

**GROUP INSURANCE
CERTIFICATE**

We the Life Insurance Company of North America, have issued a Group Policy, FLK-020104, to Temple-Inland Forest Products Corporation.

We certify that we insure all eligible persons who are enrolled according to the terms of the Policy and for whom the required premium is paid.

This Certificate describes the benefits and basic provisions of your coverage. Please read it with care so you understand your coverage.

This is not the insurance contract. It does not waive or alter any terms of the Policy. If questions arise, the Policy governs. You may examine the Policy at the office of the Policyholder or the Administrator.

This Certificate replaces any and all Certificates which may have been issued to you in the past under the Policy.

John K. Leonard, President

TL-004704

# TABLE OF CONTENTS

WHO IS ELIGIBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

WHEN COVERAGE BEGINS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

WHEN COVERAGE ENDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

WHEN COVERAGE CONTINUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SCHEDULE OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

WHAT IS COVERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

WHAT IS NOT COVERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CLAIM PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ADMINISTRATIVE PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

SUPPLEMENTAL INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TempleInland/Cleiland 208

## WHO IS ELIGIBLE

If you qualify under the Class Definition shown in the Schedule of Benefits you are eligible for coverage under the Policy on the Policy Effective Date, or the day after you complete the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. Your Eligibility Waiting Period will be extended by the number of days you are not in Active Service.

Except as noted in the Reinstatement Provision, if you terminate your coverage and later wish to reapply, or if you are a former Employee who is rehired, you must satisfy a new Eligibility Waiting Period. You are not required to satisfy a new Eligibility Waiting Period if your insurance ends because you no longer qualify under your Class Definition, but you continue to be employed, and within one year you qualify again.

TL-004710

## WHEN COVERAGE BEGINS

You will be insured on the date you become eligible, if you are not required to contribute to the cost of this insurance.

If you are required to contribute to the cost of your insurance you may elect to be insured only by authorizing payroll deduction in a form approved by the Employer and us. The effective date of your insurance depends on the date coverage is elected.

If you elect coverage within 31 days after you become eligible, during an Annual Enrollment Period, or within 31 days after a permitted Life Status Change, your insurance is effective on the latest of the following dates.
1.      The Policy Effective Date.
2.      The date you authorized payroll deduction.
3.      The date the completed enrollment form is received by the Employer or us.
4.      The effective date determined by the Employer's benefit plan.

If your enrollment form is received more than 60 days after you are eligible for insurance, you must satisfy the Insurability Requirement before your insurance is effective. If approved, your insurance is effective on the date we agree in writing to insure you.

If you are not actively at work on the date your insurance would otherwise be effective, it will be effective on the date you return to any occupation for your Employer on a Full-time basis.

TL-004712

## WHEN COVERAGE ENDS

Your coverage will end on the earliest of the following dates.
1.      The date you are eligible for coverage under a plan intended to replace this coverage.
2.      The date the Policy is terminated by us.
3.      The end of the month following the date you are no longer eligible.
4.      The day after the end of the period for which premiums are paid.
5.      The date you are no longer in Active Service.

TL-004714

1

TempleInland/Cleiland 209

**WHEN COVERAGE CONTINUES**

Your insurance will continue if your Active Service ends because of a Disability for which benefits under the Policy are or may become payable. Your premiums will be waived while Disability Benefits are payable. If you do not return to Active Service, this insurance ends when your Disability ends or when benefits are no longer payable, if earlier.

If your Active Service ends due to an Employer approved unpaid family medical leave of absence, your insurance will continue for up to 12 weeks if the required premium is paid. If your Active Service ends due to an Employer approved unpaid leave of absence or layoff, excluding family medical leave, your insurance will continue for the period specified by your Employer, if any, not to exceed 6 months if the required premium is paid.

If your insurance continues and you become Disabled during the leave of absence or layoff, Disability Benefits will not begin until you satisfy your Benefit Waiting Period, or the date you are scheduled to return to Active Service, if later.

TL-004716

2

TempleInland/Cleiland 210

## SCHEDULE OF BENEFITS

**Class Definition**

You are eligible for insurance if you are a member of the class defined below.

All active, Full-time and part-time salaried, commissioned I, II, and III Employees and designated non-union hourly Employees (Streetsboro, Crawfordsville, Lexington Box, Harrington, Maysville and Ontario Mill locations) of the Employer who are a participant in the Temple-Inland Benefit Solutions Plan and who are regularly scheduled to work a minimum of 20 hours or more per week.

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:   None.

For Employees hired after the Policy Effective Date:

- Each Full-time salaried exempt Employee, commission II Employee, commission III Employee, and each part-time salaried exempt Employee who is a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

- Each Full-time salaried non-exempt Employee who is not a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

- Each Full-time or part-time salaried non-exempt Employee who is a Financial Services Employee and each non-union hourly Employee at certain designated locations, part-time salaried Employee (who is not a Financial Services Employee), or commission I Employee shall be eligible to participate in the Plan upon the first day of the month coinciding with or following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service. For this group, the Waiting Period is defined as follows:

    For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees, Waiting Period means 31 days of Active Service from an Employee's most recent date of hire as an Employee.

3

**Definition of Disability**

You are Disabled if, solely because of Injury or Sickness, you are earning 80% or less of your Indexed Covered Earnings.

Or, you are Disabled if, because of Injury or Sickness, you are unable to perform all the material duties of your regular occupation.

After Disability Benefits have been payable for 24 months, you are Disabled if, because of Injury or Sickness, you are unable to perform all the material duties of any occupation for which you may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, you are unable to earn more than 80% of your Indexed Covered Earnings.

**Definition of Covered Earnings**

**Covered Earnings is defined as:**

a.    <u>For All Purposes:</u> For all purposes under the Temple-Inland Benefit Solutions Plan, "Covered Earnings" includes only compensation paid to you by your Employer for services performed by you for your Employer as reflected on your Employer's payroll system which meets all the definitions set forth in this subparagraph a. and the applicable subparagraphs b. or c. below. "Covered Earnings" does not include any amounts that are not paid through your Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

"Covered Earnings" includes your base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan. For commission I Employees, commission II Employees, and commission III Employees, "Covered Earnings" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, have accrued, or are otherwise payable at the time of the calculation). For all other Employees, "Covered Earnings" excludes commissions.

"Covered Earnings" excludes all other compensation, including, but not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by your Employer to you on behalf of an entity that is not a member of your Employer's controlled group of corporations for services rendered by you on behalf of such entity, and such other payments or income as may be designated by the Company.

b.    <u>For Costs and Credits</u>: For purposes of determining Costs and Credits, your "Covered Earnings" is your "Covered Earnings" in effect at the time the Solutions enrollment data is produced as determined below:

i.    For a salaried Employee, "Covered Earnings" is your annual base salary for a Full-time Employee or 0.5 times the annual base salary for a part-time Employee, regardless of the number of hours regularly worked.

ii.    For an hourly Employee, "Covered Earnings" is your base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

4

TempleInland/Cleiland 212

iii.   For newly hired commission I Employees, commission II Employees, and commission III Employees, "Covered Earnings" is the greater of:

    (1)   base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable), or

    (2)   $20,000

iv.   For all other commission I Employees, commission II Employees, and commission III Employees, "Covered Earnings" is determined by:

    (1)   adding your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

    (2)   annualizing that amount based on a full 12-month year.

v.   For Employees hired after the Solutions enrollment data is produced or Employees who have a change in pay or change in status after the Solutions enrollment data is produced, "Covered Earnings" will be determined as of the date of hire or the date of change in pay or change in status, respectively; provided, however, that the Plan Administrator may elect in his sole discretion to use the "frozen pay" determined at the time the Solutions enrollment data is produced to determine Costs and Credits for commission I Employees, commission II Employees, and commission III Employees.

c.   <u>For Benefit Payments</u>: For the purpose of determining the amount of a benefit to be paid, your "Covered Earnings" in effect on the date of the event for which the claim is paid will be used, as determined below:

i.   For a Full-time salaried Employee, "Covered Earnings" is your annual base salary. For a part-time salaried Employee, "Covered Earnings" is your annual base salary for the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

ii.   For an hourly Employee, "Covered Earnings" is your base hourly rate multiplied by the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

iii.   For commission I Employees, commission II Employees, and commission III Employees, "Covered Earnings" is the greater of:

    (1)   your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if you have been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period), or

    (2)   $20,000.

iv.   Not withstanding the above, if the underlying Benefit Plan under which the claim is to be paid has a different definition of pay for purposes of calculating benefits thereunder, such Benefit Plan's definition shall govern.

TempleInland/Cleiland 213

**Benefit Waiting Period**

The Benefit Waiting Period is the period of time you must be continuously Disabled before Disability
Benefits may be payable.

| Benefit Waiting Period | 180 days |
| --- | --- |

A period of Disability is continuous even if you can return to Active Service for up to 30 days during the
Benefit Waiting Period. The length of the Benefit Waiting Period will not be extended by the number of
days you can return to Active Service.

**Amounts of Insurance**

**Disability Benefits**

| Option 1 (tax free premiums) | The lesser of 60% of your monthly Covered Earnings rounded to the nearer dollar or $2,500, reduced by any Other Income Benefits. |
| --- | --- |
| Option 2 (after tax premiums) | The lesser of 60% of your monthly Covered Earnings rounded to the nearer dollar or $2,500, reduced by any Other Income Benefits. |
| Option 3 (tax free premiums) | The lesser of 60% of your monthly Covered Earnings rounded to the nearer dollar or $7,500, reduced by any Other Income Benefits. |
| Option 4 (after tax premiums) | The lesser of 60% of your monthly Covered Earnings rounded to the nearer dollar or $7,500, reduced by any Other Income Benefits. |

*Decreases in Coverage Amount*

You may elect a decrease in your benefit amount at future annual enrollments or within 31 days after a
permitted Life Status Change by signing a change form. The lesser benefit amount will be effective on the
date the completed change form is received by your Employer or by us.

*Increases in Coverage Amount*

During an Annual Enrollment Period, you may elect an increased benefit amount up to the Maximum
Benefit Amount. If you request an increased benefit amount after the Annual Enrollment Period, your
request will not be considered for eligibility until the following Annual Enrollment Period. If you initially
declined coverage for the higher benefits of Options 3 or 4, you may elect these Options at Annual
Enrollment Period or upon a permitted Life Status Change event.

If you are not actively at work on the date an increased benefit amount would otherwise be effective, you
will become insured for the increase on the date you return to work at your regular occupation for the
Employer on a Full-time basis.

*Limit on Increases or Decreases*

We reserve the right to limit or deny the amounts of insurance available to individuals who do not meet our
underwriting requirements or where limited by law.

6

TempleInland/Cleiland 214

*Work Incentive Benefits*

For the first 12 months you return to work, the Disability Benefit is as figured above. If for any month during this period, the sum of your Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of your Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 12 months you return to work, the Disability Benefit is as figured above, reduced by 50% of your current earnings received during any month you return to work. If the sum of your Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of your monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

No Disability Benefits will be paid if we determine you are able to work under a Transitional Work Arrangement or other modified work arrangement and you refuse to do so.

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If you are working for another employer on a regular basis when Disability begins, current earnings will include any increase in the amount you earn from this work during the period for which Disability Benefits are payable.

**Minimum Monthly Benefit**        $50

We will pay the Minimum Benefit regardless of any reductions made for Other Income Benefits. However, if there is an overpayment due, this benefit may be reduced to recover the overpayment.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that you receive on your own behalf or for your dependents, or which your dependents receive because of your entitlement to Other Income Benefits.

**Additional Benefits**

*Rehabilitation During Disability*
      Please refer to the Description of Benefits for an explanation of this benefit.

*Reasonable Accommodation Benefit*
      Please refer to the Description of Benefits for an explanation of this benefit.

*Specified Loss Benefits*
      Time Period for Accident    90 days

Table for Accidental Loss

| Loss | Benefit Period |
|------|----------------|
| Both hands or feet, the entire sight in both eyes, hearing in both ears, speech, one hand and one foot, one hand or foot and the entire sight of one eye | 46 Months |
| One arm or leg | 35 Months |
| One hand or foot | 23 Months |

7

TempleInland/Cleiland 215

| The entire sight in one eye or hearing in one ear | 15 Months |
|---|---|
| Loss of thumb and index finger of either hand | 12 Months |

The loss of a hand or foot means the complete severance through or above the wrist or ankle joint. The loss of an arm or leg means complete severance through or above the elbow or knee joint. The loss of a thumb and index finger means complete severance through or above the metacarpophalangeal joints (the joints between the fingers and the hand). "Severance" means complete separation and dismemberment of the limb from the body. The loss of sight, speech or hearing means total and irrecoverable loss of the function.

If more than one loss results from an Accident, we will pay for the longest benefit period of the losses incurred.

*Survivor Benefit*

| Benefit Waiting Period | After 6 Disability Benefits are payable. |
|---|---|
| Amount of Benefit | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits. |

TempleInland/Cleiland 216

**Maximum Benefit Period**

*For Monthly Benefits*

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | Your 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

TL-004774

# DESCRIPTION OF BENEFITS
## WHAT IS COVERED

**Disability Benefits**

If you become Disabled, as we define the term in your Schedule of Benefits, while you are covered under the Policy, we will pay you Disability Benefits. After you are Disabled, you must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician. Also, we ask you to provide us with satisfactory proof of your Disability, at your expense, before benefits will be paid.

We will require continued proof of your Disability be provided at your expense for benefits to continue.

**Benefit Waiting Period**

The Benefit Waiting Period is the period of time you must be continuously Disabled before Disability Benefits may be payable. Your Benefit Waiting Period is shown in the Schedule of Benefits.

We will not require you to satisfy the Benefit Waiting Period if benefits were payable to you under a Prior Plan on the Policy Effective Date and you return to Active Service within 6 months after this date. Your return to Active Service must be for more than 14 consecutive days but less than 6 months. Your later period of Disability must be caused by the same or related causes for your Benefit Waiting Period to be waived.

**Termination of Your Disability Benefits**

Disability Benefits will end on the earliest of the following dates.
1. The date you earn more than 80% of your Indexed Covered Earnings
2. The date we determine you are not Disabled
3. The end of the Maximum Benefit Period
4. The date you die
5. The date you refuse to participate in rehabilitation efforts as required by us
6. The date you are no longer receiving Appropriate Care

9

TempleInland/Cleiland 217

**Successive Periods of Disability**

Once you are eligible to receive Disability Benefits under the Policy, separate periods of Disability resulting from the same or related causes are a continuous period of Disability unless you can return to Active Service for 6 or more consecutive months.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes, or your later Disability occurs after your coverage under the Policy ends.

The Successive Periods of Disability provision will not apply if you are eligible for coverage under a plan that replaces the Policy.

**Mental Illness, Alcoholism and Drug Abuse Limitation**

We will pay Monthly Benefits on a limited basis for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 Monthly Benefits have been paid, no further benefits will be payable for any of these conditions.

1.    Alcoholism
2.    Anxiety Disorders
3.    Delusional (paranoid) disorders
4.    Depressive disorders
5.    Drug addiction or abuse
6.    Eating disorders
7.    Mental Illness
8.    Somatoform disorders (psychosomatic illness)

If you are confined in a hospital for more than 14 consecutive days before reaching your lifetime maximum benefit, any Disability Benefits payable during that confinement will not count against your lifetime maximum benefit. Your confinement must be for the Appropriate Care or treatment of any of the conditions listed above.

**Pre-Existing Condition Limitation**

We will not pay Disability Benefits if your Disability is caused or contributed to by, or results from, a Pre-Existing Condition. A "pre-existing condition" is any Injury or Sickness for which you incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a physician within 3 months before your most recent effective date of insurance.

The Pre-Existing Condition Limitation will apply to any added benefits or increases in benefits. It will not apply to a period of Disability that begins after you are in Active Service for at least 12 months after your most recent effective date of insurance, or the effective date of any added or increased benefits.

We will not apply the Pre-Existing Condition Limitation to your Disability if you were covered under your Employer's Prior Plan and satisfied the pre-existing condition of that plan. This is true only for the amount of benefit covered under that Prior Plan. If you were covered under your Employer's Prior Plan, but did not fully satisfy the pre-existing condition limitation of that plan, we will credit you for any time you did satisfy.

Time will not be credited toward this limitation for any day you are not actively at work due to your Injury or Sickness. We will extend the limitation by the number of days you are not actively at work due to your Injury or Sickness.

10

TempleInland/Cleland 218

**Disability Benefit Calculation**

Your Disability Benefit for any month Disability Benefits are payable to you is shown in the Amounts of Insurance section of the Schedule of Benefits. We base our calculation of Monthly Benefits on a 30 day period. Benefits will be prorated if payable for any period less than a month.

**Work Incentive Benefit**

If Work Incentive Benefits apply to you, you may return to work while you are Disabled and continue to receive Disability Benefits. The conditions under which you may return to work and the amount of your benefit, if any, is shown in the Schedule of Benefits.

We will review your status and will require satisfactory proof of your earnings and continued Disability.

**Other Income Benefits**

While you are Disabled, you may be eligible to receive benefits from other income sources. If so, we may reduce the Disability Benefits payable to you under the Policy by all, or a portion of, the amount of these other income benefits. The extent to which Other Income Benefits will reduce your Disability Benefits is shown in the Amounts of Insurance section of the Schedule of Benefits.

Other Income Benefits include:

1. any amounts you or your dependents, if applicable, receive (or are assumed to receive*) under:
    a. the Canada and Quebec Pension Plans;
    b. the Railroad Retirement Act;
    c. any local, state, provincial or federal government disability or retirement plan or law;
    d. any sick leave or salary continuation plan of your Employer;
    e. any work loss provision in "No-Fault" auto insurance;
    f. any Disability Benefits received from the Veterans' Administration;
    g. any Workers' Compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.

2. any Social Security disability or retirement benefits you or any third party receive (or are assumed to receive*) either on your own behalf or for dependents; or, if applicable, which your dependents receive (or are assumed to receive*) because of your entitlement to such benefits.

3. any retirement plan benefits funded by your Employer. "Retirement plan" means any defined benefit or defined contribution plan sponsored or funded by your Employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or any Employee contributions under a 401(k) plan or any Employer match thereon.

4. any proceeds payable under any group insurance or similar plan. If there is other insurance that applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, we will pay our pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.

11

5.      any wage or salary for work performed. If Work Incentive Benefits apply to you, we will only reduce your Disability Benefits to the extent provided under your Work Incentive Benefit.

Dependents include any person who receives (or is assumed to receive*) benefits under any applicable law on account of your entitlement to benefits.  *See the Assumed Receipt of Benefits provision.

*Increases in Other Income Benefits*

After we make the first deduction for any Other Income Benefit (except wage or salary), we will not reduce your Disability Benefits further during that period of Disability due to any cost of living increase in the Other Income Benefit.

*Lump Sum Payments*

We will prorate over the period for which the sum is given any Other Income Benefits or earnings that are paid in a lump sum.  If the period for which the sum is given is not stated, the lump sum will be prorated over a five year period.

If no specific allocation of a lump sum payment is made, we will assume the total payment is an Other Income Benefit.

*Assumed Receipt of Benefits*

We will assume you or your dependents, if applicable, are receiving Other Income Benefits if you may be eligible for them.  We will estimate the amount of these assumed benefits on the basis of what you may be eligible to receive and reduce your Disability Benefits as if you actually received them.

Except for any wage or salary for work performed while Disability Benefits are payable, we will not assume your receipt of Other Income Benefits if you give us proof of the following events.
1.      Application was made for these benefits.
2.      Reimbursement Agreement is signed by you.
3.      Any and all appeals were made for these benefits, or we have determined further appeals will not be successful.
4.      Payments were denied.

We will not assume you have received, nor will we reduce your Disability Benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until you actually receive them.

*Social Security Assistance*

We will, at our own discretion, assist you in applying for Social Security Disability Income (SSDI) benefits.  Disability Benefits will not be reduced by your assumed receipt of SSDI benefits while you participate in the Social Security Assistance Program.

We may require you to file an appeal if we believe a reversal of a prior decision is possible.  If you refuse to participate in, or cooperate with, the Social Security Assistance Program, we will assume receipt of SSDI benefits until you give us proof that you have exhausted all the administrative remedies available to you.

12

TempleInland/Cleiland 220

# EXHIBIT 1 TO
# EXHIBIT B
## Part 5

**Recovery of Overpayment**

If we overpay your benefits, we have the right to recover the amount overpaid by either requesting you to pay the overpaid amount in a lump sum or by reducing any amounts payable to you by the amount due. If there is an overpayment due when you die, we will reduce any benefits payable under the Policy to recover the overpayment.

TL-004771

# ADDITIONAL BENEFITS

## Rehabilitation During A Period of Disability

If, while you are Disabled, we determine that you are a suitable candidate for rehabilitation you may participate in a Rehabilitation Plan. The terms and conditions of the Rehabilitation Plan must be mutually agreed upon by you and us.

We may require you to participate in a rehabilitation assessment or a Rehabilitation Plan at our expense. We will work with you, your Employer and your Physician and others, as appropriate, to develop a Rehabilitation Plan. If you refuse to participate in the rehabilitation efforts, Disability Benefits will not be payable.

The Rehabilitation Plan may, at our discretion, allow for payment of your medical expense, education expense, moving expense, accommodation expense or family care expense while you participate in the program.

A "Rehabilitation Plan" is a written agreement between you and us in which we agree to provide, arrange or authorize vocational or physical rehabilitation services.

## Reasonable Accommodation Benefit

If you are Disabled, we may reimburse your Employer for expenses incurred in making a Reasonable Accommodation. To be eligible for this benefit, the Reasonable Accommodation must meet the following conditions.
1.      It must be made on your behalf and result in your ability to return to any occupation for your Employer.
2.      It must be approved by us in writing before it is implemented or any expense is incurred.
3.      It must meet federal standards of a Reasonable Accommodation as detailed in the Americans with Disabilities Act of 1990 and any later amendments.

"Reasonable Accommodation" means any modification or adjustment to a job, an employment practice, or the work environment that makes it possible for a person with a disability to perform the material duties of any occupation without causing undue hardship to the Employer.

TL-005107

## Spouse Rehabilitation Benefit

While you are Disabled, your Spouse may, our option, be eligible to participate in a Rehabilitation Plan. To be eligible, the following conditions must be met.
1.      You must be continuously Disabled for 12 months
2.      Your Spouse's earnings must be 60% or less than your Covered Earnings
3.      Your Spouse must be determined by us to be a suitable candidate for re-employment.

13

Your Spouse's Rehabilitation Plan may include, at our discretion, payment of your Spouse's education expenses, reasonable job placement expenses and moving expenses. It may also include family care expenses if necessary for your Spouse to be retrained under the Rehabilitation Plan.

Disability Benefits will be reduced by 50% of your Spouse's earnings from Rehabilitative Work. If your Spouse was working before your Rehabilitation Plan begins, Disability Benefits will be reduced by 50% of the increase in income that results from your Spouse's participation in the program.

"Spouse" means your lawful spouse living with you on the date your Disability begins. The Rehabilitation Plan will end if your Spouse is not living with you during the term of the agreement.

TL-005105

## Specified Loss Benefit

If you are in an Accident and suffer a loss shown in the Table for Accidental Loss under the Amounts Of Insurance section of your Schedule of Benefits, we will pay Disability Benefits for the time specified in the Table. However, for you to be eligible for benefits, the following conditions must be met.

1. Your loss must occur within the Time Period for Accident specified in the Schedule of Benefits.
2. The Accident must be the sole cause of your loss.
3. The Accident and the resulting loss must occur while your coverage under the Policy is effective.
4. Your Benefit Waiting Period must be satisfied.

If you die within the Time Period for an Accident, we will pay benefits for the period of time between the date Monthly Benefits are first payable and the date you die. If you die after this time, but before the end of the Guaranteed Benefit Period specified in the Table, we will pay the rest of your Monthly Benefits in a lump sum.

"Accident" means a sudden, unforeseeable external event that causes you bodily injury.

TL-005108

## Survivor Benefit

We will pay a Survivor Benefit if you die while Monthly Benefits are payable to you. You must have been continuously Disabled for the Survivor Benefit Waiting Period shown in the Schedule of Benefits before we will pay this benefit. These benefits will be payable for the Maximum Benefit Period for Survivor Benefits shown in the Schedule of Benefits.

We will pay the Survivor Benefit to your Spouse. If you do not have a Spouse, we will pay your surviving Children in equal shares. If you do not have a Spouse or any Children, we will pay your estate.

"Spouse" means your lawful spouse. "Children" means your unmarried children under age 21 who are chiefly dependent upon you for support and maintenance.

TL-005109

14

TempleInland/Cleland 222

## WHAT IS NOT COVERED

We will not pay Disability Benefits for a Disability that results, directly or indirectly, from any of the following events.

1.  attempted suicide, or whenever you injure yourself on purpose.
2.  war or any act of war, whether or not declared.
3.  serving on full-time active duty in any armed forces. If you send proof of military service, we will refund the portion of the premium paid to cover you during a period of such service.
4.  terrorism or active participation in a riot.
5.  commission of a felony.
6.  the revocation, restriction or non-renewal of your license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Sickness otherwise covered by the Policy.
7.  incarceration in a penal or corrections institution.

We will not pay Disability Benefits for any period of Disability during which you do any of the following.

1.  refuse to participate in rehabilitation efforts as required by the us.
2.  are not receiving Appropriate Care.
3.  refuse to participate in a Transitional Work Arrangement or other modified work arrangement. These work arrangements mean any work offered to you by your Employer or an affiliated company while you are Disabled and which may be your own or any occupation. The work arrangements include, but are not limited to reassigned duties, work site modification, flexible work arrangements, job adaption or special equipment.
4.  fail to cooperate with us in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

TL-004772

## CLAIM PROVISIONS

**Notice of Claim**

Written notice, or notice by any other electronic or telephonic means authorized by us, must be given to us within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If this notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice, or notice by any other electronic or telephonic means authorized by us, was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Policyholder's name and Policy Number and the claimant's name and address.

**Claim Forms**

When the we receive written notice of a claim, or notice by any other electronic or telephonic means authorized by us, it will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by us, the proof requirements will be met by submitting, within the time required under "Proof of Loss" section, written proof of the nature and extent of the loss.

**Claimant Cooperation Provision**

If you fail to cooperate with us in our administration of your claim, we may terminate the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

15

**Insurance Data**

Your Employer is required to cooperate with us in the review of claims and applications for insurance. Any information we provide to your Employer in these areas is confidential and may not be used or released by your Employer if not permitted by applicable laws.

**Proof of Loss**

Written proof of loss must be given to us within 90 days after the date of the loss for which a claim is made. If written proof of loss is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof of loss was given as soon as was reasonably possible. In any case, written proof must be given not more than a year after the time it is otherwise required, unless proof is not given solely due to the lack of legal capacity.

You must provide us, within 30 days of a request, with written proof of continued Disability and of regular attendance of a Physician.

**Time of Payment**

Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which we are liable, will be paid at that time.

**To Whom Payable**

Disability Benefits will be paid to you. If any person to whom benefits are payable is a minor or, in our opinion, is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, we may, at our option, make payment to the person or institution appearing to have assumed custody and support.

If you die while any Disability Benefits remain unpaid, we may, at our option, make direct payment to any of your following living relatives: spouse, mother and father, natural or adopted children, brothers and sisters; or to the executors or administrators of the Employee's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release us from all liability for any payment made.

**Physical Examination and Autopsy**

We may, at our expense, exercise the right to examine you as often as we may reasonably require. Also, we may, at our expense, require an autopsy unless prohibited by law.

**Legal Actions**

No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time written proof of loss must be furnished.

**Time Limitations**

If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which you live when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**

You have the right to choose any Physician who is practicing legally. We will in no way disturb the Physician/patient relationship.

TL-004724

16

TempleInland/Cleland 224

**ADMINISTRATIVE PROVISIONS**

**Premiums**

Your premiums are based on the rates currently in force, the plan and the amount of insurance in effect. Premiums are due monthly unless we agree with the Policyholder on some other mode of premium payment.

**Your Grace Period**

If your required premium is not paid on the Premium Due Date there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during this grace period, your insurance will end on the last day for which premium was paid.

If benefits are paid during your grace period, we will deduct any overdue premium from the proceeds payable under the Policy.

**Reinstatement of Insurance**

Your insurance may be reinstated if it ends because you are on an unpaid leave of absence or you are rehired within three months of the date of termination of employment and you apply for Reinstatement within 31 days of your return to Active Service.

Your insurance may be reinstated only if reinstatement occurs within 6 months from the date insurance ends due to an Employer approved unpaid leave of absence or on any date in which you return from active duty in the armed forces as defined by the Uniformed Services Employment and Reemployment Act of 1994 (USERRA) if the following conditions are met:

1.    You must be in a Class of Eligible Employees.
2.    The required premium must be paid.
3.    A written request for reinstatement must be received by us within 31 days from the date you return to Active Service.

Reinstated insurance will be effective on the date you return to Active Service. If you did not fully satisfy the Eligibility Waiting Period or the Pre-Existing Condition Limitation before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004722

**GENERAL PROVISIONS**

**Incontestability**

All statements made by the Policyholder or by you are representations not warranties. No statement will be used by us to deny or reduce benefits or as a defense to a claim, unless a copy of the writing containing the statement is signed by you and has been given to the you. In the event of your death or legal incapacity, your beneficiary or representative will receive the copy.

The validity of your insurance under the Policy may not be contested using such statements after two years from the effective date of your coverage or from the effective date of any additional or increased benefits.

**Misstatement of Age**

If your age is misstated, we will adjust all benefits to the amounts that would have been purchased for your correct age.

**Workers' Compensation Insurance**

Benefits payable under the Policy are not in lieu of and do not affect any requirements for coverage under any Workers' Compensation Insurance.

TempleInland/Cleiland 225

**Assignment of Benefits**

We will not be affected by the assignment of your certificate until the original assignment or a certified copy of the assignment is filed with us. We will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided coverage under the Policy is in effect. Your insurance may not be levied on, attached, garnished, or otherwise taken for your debts. This prohibition does not apply where contrary to law.

**Conformity with State Statutes**

Any provision of the Policy in conflict on the Policy Effective Date with the laws of the state where the Policy is delivered is amended to conform to the minimum requirements of such laws.

**Clerical Error**

Your insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

TL-004728

# DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**

You are in Active Service on a day which is one of your Employer's scheduled work days if either of the following conditions are met.

1.      You are actively at work. This means you are performing your regular occupation for your Employer on a Full-time basis, either at one of your Employer's usual places of business or at some location to which your Employer's business requires you to travel.

2.      The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

You are in Active Service on a day which is not one of your Employer's scheduled work days only if you were in Active Service on the preceding scheduled work day.

**Annual Enrollment Period**

The period in each calendar year agreed upon by your Employer and us when you may enroll for, or change benefit elections, under the Policy.

**Appropriate Care**

Appropriate Care means the determination of an accurate and medically supported diagnosis of your Disability, or ongoing medical treatment and care of your Disability by a Physician that conforms to generally-accepted medical standards, including frequency of treatment and care.

**Consumer Price Index (CPI-W)**

The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

**Employee**

For eligibility purposes, an Employee is an employee of the Employer who qualifies under the Class Definition. Otherwise, Employee means an employee of the Employer who is covered under the Policy.

18

TempleInland/Cleiland 226

**Employer**

The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is your agent for transactions relating to this insurance. You should not consider the actions of your Employer to be our actions.

**Full-Time**

Full-time means the number of hours set by your Employer as a regular work day for Employees in your eligible class.

**Indexed Covered Earnings**

For the first 12 months Monthly Benefits are payable, your Indexed Covered Earnings are equal to your Covered Earnings. After 12 Monthly Benefits are payable, your Indexed Covered Earnings are your Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:

1.     10% of your Indexed Covered Earnings during your preceding year of Disability; or
2.     the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**

The term Injury means an accidental loss or bodily harm.

**Insurability Requirement**

You have satisfied the Insurability Requirement on the day we agree in writing to accept you as covered under the Policy. To determine your acceptability for coverage, we will require evidence of good health and may require it be provided at your expense.

**Insurance Company**

The Insurance Company underwriting the Policy is named on your certificate cover page. References to the Insurance Company have been changed to 'we', 'our', 'ours' and 'us' throughout this certificate.

**Life Status Change**

A Life Status Change is an event recognized by your Employer's Flexible Benefits Plan as qualifying you to make changes in your benefit selections at a time other than an Annual Enrollment Period.

If the Employer does not sponsor a Flexible Benefits Plan, or if it is no longer in effect, the following events are Life Status Changes.

1.     Marriage
2.     Divorce, annulment or legal separation
3.     Birth or adoption of a child
4.     Death of your spouse
5.     Termination of your spouse's employment
6.     A change in the benefit plan available to your spouse
7.     A change in your or your spouse's employment status that affects either's eligibility for benefits

**Physician**

Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to you that is appropriate for the condition and locality. The term does not include you, your spouse, your immediate family (including parents, children, siblings, or spouses of any of the foregoing, whether the relationship derives from blood or marriage), or a person living in your household.

**Policy Anniversary Date**

The Policy Anniversary Date is January 1, unless changed, this date will be the same date each year for as long as the Policy is in effect.

19

**Policy Effective Date**

This term refers to the date the group policy under which you are covered became effective.  This date is January 1, 1998.

**Prior Plan**

The Prior Plan refers to the plan of insurance providing similar benefits to you, sponsored by the Employer and in effect directly prior to the Policy Effective Date.

**Sickness**

The term Sickness means a physical or mental illness.

TL-004708

20

TempleInland/Cleiland 228

SUPPLEMENTAL INFORMATION
for

**Temple-Inland Group Disability Plan**

**required by the Employee Retirement
Income Security Act of 1974**

As a Plan participant in Temple-Inland's Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

## IMPORTANT INFORMATION ABOUT THE PLAN

- The Plan is established and maintained by Temple-Inland Forest Products Corporation.

- The Employer Identification Number (EIN) is 75-1462427.

- The Plan Number is 504.

- The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, FLK-020104, issued by LIFE INSURANCE COMPANY OF NORTH AMERICA.

- The Plan Administrator is:    Temple-Inland Inc. Benefits Administration Committee
  303 S. Temple Drive, P.O. Drawer N
  Diboll, TX  75941

  The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy. (Your rights upon termination or amendment of the Plan are set forth in your Certificate.)

- The agent for service of legal process is The Plan Administrator.

- The Plan of benefits is financed by the Employer/Employee.

- The date of the end of the Plan Year is December 31.

## YOUR RIGHTS AS SET FORTH BY ERISA

As a Plan participant, ERISA gives you certain rights and protection. To ensure the protection of these rights, ERISA requires any person or entity who is responsible for the operation of the Plan to administer the Plan in a fiduciary capacity. This means that this person, or entity, must act prudently and with the sole purpose of the Plan participants in mind.

21

TempleInland/Cleiland 229

If you request, the Plan Administrator must::

a.    Allow you to examine, without charge, at the Plan Administrator's office, all Plan documents including insurance contracts, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as, annual reports and Plan descriptions.

b.    Provide you with Plan documents and other Plan information.  Any request you make for this information must be in writing to the Plan Administrator.  There may be a reasonable charge for the copies.

c.    Provide you with a summary of the Plan's annual financial report.  (On certain plans, the law requires the Plan Administrator to provide you with this information.)

Unless there are reasons beyond the Plan Administrator's control, materials you request should be received within 30 days.  If you do not receive these materials within that time, you may file suit in a federal court.  The court may require the Plan Administrator to pay you up to $110 for each day the material is delayed.

No one, not even your employer, may fire you or discriminate against you in order to prevent you from obtaining a benefit or exercising the rights you have under ERISA.

You may file suit in a federal or state court if any of the following situations arise:

a.    You believe you have been improperly denied a benefit, in whole, or in part.
b.    You believe the Plan fiduciaries are misusing Plan funds.
c.    You believe you have been discriminated against for asserting your rights.  (In this case, you may file suit in court or request assistance from the U.S. Department of Labor.)

The court will decide who should pay court costs and legal fees.  If you win your case, the court may order the person you have sued to pay the costs and fees.  However, if you lose, or if the court finds that your suit is frivolous, you may be required to pay the costs and fees.

## WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM

When you are eligible to receive benefits under the Plan, you must request a claim form from the Plan Administrator. All claims you submit must be on the claim form provided by the Insurance Company. You must complete the form according to the directions on the form.  If these forms are not available, you must provide a written statement outlining proof and extent of the loss.  After you have completed the claim form or written statement, you must submit it to the Insurance Company.

The Insurance Company has 90 days, from the date it receives your notice of claim, to determine whether or not benefits are payable to you in accordance with the terms and provisions of the Policy.  Under special circumstances, the Insurance Company may require more time to review your claim.  If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 90 days. You should receive this written notification before the end of the initial 90 day review period.

During the review period, the Insurance Company may require a medical examination of the Insured, at its own expense; or additional information regarding the loss.  If a medical examination is required, the Insurance Company will notify you of the date and time of the examination and the physician's name and location. (It is important that you keep any appointments made since rescheduling examinations will delay the claim process.) If additional information is required, the Insurance Company must notify you, in writing, specifying the nature of the information needed and an explanation as to why it is needed.

22

TempleInland/Cleiland 230

If your claim is approved, you will receive the appropriate benefit from LIFE INSURANCE COMPANY OF NORTH AMERICA.

If your claim is denied, in whole or in part, you must receive written notice from the Insurance Company within the 90 day review period (or within 180 days if the review period was extended). The Insurance Company's written notice must include the following information:

1. The specific reason(s) the claim was denied.
2. Specific reference to the Policy provision(s) upon which the denial is based.
3. A statement informing you of your right to appeal the decision, and an explanation of the appeal procedure, as outlined in "Appeal Procedure for Denied Claims" below.

**Appeal Procedure for Denied Claims**

Whenever a claim is denied, you have the right to appeal the decision. You, or your duly authorized representative, must make a written request for appeal to the Insurance Company within 60 days from the date you receive the denial. If you do not make this request within that time frame, you will have waived your right to appeal.

Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. During the review, you, or your duly authorized representative, have the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. You may also submit issues and comments that you feel might affect the outcome of the review.

The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days. You should receive this written notification before the end of the initial 60 day review period. Once its review is complete, the Insurance Company must notify you, in writing, of the results for the review and indicate the Plan provisions upon which it based its decision.

**WHO YOU SHOULD CONTACT IF YOU HAVE QUESTIONS ABOUT THE PLAN**

If you have any questions about the Plan, contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

LM-5835A

23

**TempleInland/Cleiland 231**

UNDERWRITTEN BY:
**Life Insurance Company of North America**
a CIGNA Company

Class 1
4/2001



CIGNA Group Insurance
Life ● Accident ● Disability

TempleInland/Cleiland 232

# SECTION V

TempleInland/Cleiland 233

SUMMARY PLAN DESCRIPTION

FOR THE

**TEMPLE-INLAND**

**SHORT TERM DISABILITY PLAN**

**(As Amended and Restated Effective January 1, 2000)**

**The Short-Term Disability Plan is a self-insured plan funded by Temple-Inland**

IMPORTANT NOTE: This Summary Plan Description contains a summary of the Plan only. In the event of any conflict between this Summary and the Plan's full legal plan documents, the full legal plan documents shall control.

# TEMPLE-INLAND

**STD0002A**

# TEMPLE-INLAND

## SHORT TERM DISABILITY PLAN

## TABLE OF CONTENTS

ARTICLE I

DEFINITIONS

| | | |
|---|---|---|
| 1.0 | Accident | 1 |
| 1.1 | Active Service | 1 |
| 1.2 | Approved Leave of Absence | 1 |
| 1.3 | Base Hourly Rate | 1 |
| 1.4 | Benefits | 1 |
| 1.5 | Claims Administrator | 1 |
| 1.6 | Code | 1 |
| 1.7 | Collective Bargaining Agreement | 1 |
| 1.8 | Company | 1 |
| 1.9 | Covered Earnings | 1 |
| 1.10 | Current Earnings | 1 |
| 1.11 | Designated Joint Venture | 2 |
| 1.12 | Disabled Person | 2 |
| 1.13 | Disability Plan | 2 |
| 1.14 | Effective Date | 2 |
| 1.15 | Employee | 2 |
| 1.16 | Employer | 2 |
| 1.17 | ERISA | 2 |
| 1.18 | FMLA | 2 |
| 1.19 | FMLA Leave | 2 |
| 1.20 | Full-time Employee | 3 |
| 1.21 | Hourly Employee | 3 |
| 1.22 | Illness | 3 |
| 1.23 | Injury | 3 |
| 1.24 | Medically Necessary | 3 |
| 1.25 | Mental Illness | 3 |
| 1.26 | Notice | 3 |
| 1.27 | Other Income Benefits | 3 |
| 1.28 | Participant | 3 |
| 1.29 | Part-time Employee | 3 |
| 1.30 | Pay Frequency Coding Matrix | 3 |
| 1.31 | Period of Disability | 3 |
| 1.32 | Physician | 3 |
| 1.33 | Plan | 3 |
| 1.34 | Plan Administrator | 3 |
| 1.35 | Plan Year | 4 |
| 1.36 | Retiree | 4 |
| 1.37 | Retirement Plan | 4 |
| 1.38 | Spouse | 4 |
| 1.39 | Totally Disabled or Total Disability | 4 |
| 1.40 | Transactions | 4 |
| 1.41 | Trust | 4 |

TempleInland/Cleiland 235

1.42    Trustee ......................................................... 4
1.43    Trust Fund ..................................................... 4
1.44    Waiting Period ................................................. 4

# ARTICLE II

## ELIGIBILITY

2.0    Geographic Eligibility .......................................... 5
2.1    Hourly Employees ............................................. 5
2.2    Transferred Employees ........................................ 5
2.3    Rehired Employees ............................................ 5
2.4    Designated Joint Ventures ..................................... 6
2.5    Acquisitions .................................................. 6
2.6    Change in Eligibility Status ................................... 6

# ARTICLE III

## ENROLLMENT AND CONTRIBUTIONS

3.0    Enrollment .................................................... 6
3.1    Effect of Enrollment .......................................... 6
3.2    Effective Date of Coverage .................................... 6
3.3    FMLA Leave ................................................... 7
3.4    Contributions ................................................. 7
3.5    Changes by Plan Administrator ................................. 7

# ARTICLE IV

## SHORT TERM DISABILITY BENEFITS

4.0    Conditions to Payment ......................................... 7
4.1    Covered Disabilities .......................................... 7
4.2    Disabilities Not Covered ...................................... 8
4.3    Timing of Benefits ........................................... 8
4.4    Amount of Benefits ........................................... 9
4.5    Reduction in Benefits ........................................ 9

# ARTICLE V

## PAYMENT OF BENEFITS

5.0    Claims Procedures ............................................ 11
5.1    Consent ...................................................... 11
5.2    To Whom Payable ............................................. 12
5.3    Time of Payment ............................................. 12
5.4    Conditional Claim Payment; Reduction of Benefits .............. 12
5.5    Recovery of Overpayment ...................................... 13
5.6    Subrogation .................................................. 13

## ARTICLE VI

### TERMINATION OF COVERAGE

6.0    Participants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
6.1    Effect of Termination of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## ARTICLE VII

### ADMINISTRATION OF PLAN

7.0    Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
7.1    Liability of Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
7.2    Claims for Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## ARTICLE VIII

### AMENDMENT AND TERMINATION OF PLAN

8.0    Amendment and Termination of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## ARTICLE IX

### MISCELLANEOUS PROVISIONS

9.0    Limitation of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
9.1    No Right to Continued Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
9.2    Rules of Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
9.3    Governing Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
9.4    Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## ARTICLE X

### IMPORTANT INFORMATION

10.0    Plan Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10.1    Plan Sponsor and Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10.2    Employer ID Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10.3    Participating Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10.4    Type of Welfare Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10.5    Claims Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.6    Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.7    Agent for Service of Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.8    Plan Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.9    Collective Bargaining Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.10   Sources of Contributions to the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.11   Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.12   Plan Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.13   Statement of ERISA Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**TempleInland/Cleiland 237**

# TEMPLE-INLAND

# SHORT TERM DISABILITY PLAN

The purpose of the Temple-Inland Short Term Disability Plan is to provide Participants up to 26 weeks' partial replacement of income lost when they become Totally Disabled from nonoccupational illnesses or injuries and cannot work. Except as otherwise noted, this Amendment and Restatement of the Plan shall only apply to persons who are Participants (as hereinafter defined) on or after January 1, 2000.

## ARTICLE I

## DEFINITIONS:

The following terms when used in this Plan shall have the meanings set forth below:

1.0 **Accident:** means a sudden, unforeseeable external event that causes bodily Injury to an Employee within 90 days of the event, and occurs while coverage for an Employee is in effect.

1.1 **Active Service:** An Employee will be considered in Active Service if:

    a.    On any of his Employer's scheduled work days if he is performing the regular duties of his work for his regularly scheduled hours on that day either at his Employer's place of business or at some location to which he is required to travel for his Employer's business;

    b.    On a day which is not one of his Employer's scheduled work days if he was in Active Service on the preceding scheduled work day; and

    c.    On a day during the first six months of an Approved Leave of Absence.

1.2 **Approved Leave of Absence:** means a leave of absence that has been approved by an Employer (or the applicable business unit thereof).

1.3 **Base Hourly Rate:** means the Employee's base hourly rate paid by his Employer as in effect on the date the Employee becomes Totally Disabled, excluding any bonuses, commissions, shift differential, overtime or other pay.

1.4 **Benefits:** means the benefits described in the Plan.

1.5 **Claims Administrator:** means the person, corporation or other entity designated by the Plan Administrator to review, adjudicate, and process claims.

1.6 **Code:** means the Internal Revenue Code of 1986, as amended.

1.7 **Collective Bargaining Agreement:** means a collective bargaining agreement entered into by an Employer as set forth in the applicable schedule hereto.

1.8 **Company:** means Temple-Inland Forest Products Corporation.

1.9 **Covered Earnings:** means an Employee's Base Hourly Rate multiplied by the number of hours he is regularly scheduled to work per week up to a maximum of 40 hours per week.

1.10 **Current Earnings:** means any wage or salary for work performed during the Period of Disability.

1

**1.11**   **Designated Joint Venture:** means a joint venture between the Company or an Employer and an unaffiliated party that is designated in the Solutions Plan.

**1.12**   **Disabled Person:** means a former Employee who meets the eligibility criteria set forth in the Disability Plan. This term does not apply to an Employee with a disability who is in active service.

**1.13**   **Disability Plan:** means the Temple-Inland Disability Health and Welfare Plan, as amended.

**1.14**   **Effective Date:** The Plan was originally adopted effective January 1, 1998. This Amendment and Restatement of the Plan is effective January 1, 2000.

**1.15**   **Employee:**

   a.   The term Employee means a person who is employed by an Employer and who is an Hourly Employee; provided, however, that the term "Employee" shall not include any employee who regularly works less than twenty (20) hours per week. The term Employee does not include any person who is covered by a Collective Bargaining Agreement entered into by an Employer unless such agreement, by specific reference to the Plan, provides for coverage under the Plan.

   b.   The term Employee shall not include any person who is treated or classified by the Employer as an independent contractor, leased employee, contract labor, temporary employee, seasonal employee, consultant, or part-time employee regularly scheduled to work less than 20 hours per week.

   c.   The Plan shall rely exclusively on data contained in the Employer's regular payroll system for all determinations as to whether a person is or is not an eligible Employee. The term Employee shall not include any person who (i) is not coded as an eligible Employee on the payroll system, or (ii) is paid through an employment or temporary agency or other employee leasing entity, or (iii) is retained in any category excluded under subsection b. above (whether or not such classification is ultimately determined to be correct under applicable law and whether or not pursuant to a written agreement), or (iv) is paid through a check issued by the Employer's accounting department or any method other than through the regular payroll system.

   d.   At the end of the sixth month of an Approved Leave of Absence, a person shall no longer be in Active Service, shall be considered to have terminated his employment for all purposes under this Plan, and shall no longer be considered an Employee. A person who retires from any employment within the Company's controlled group of corporations shall not be considered an Employee unless he is rehired by an Employer as set forth in Article

**1.16**   **Employer:** means the Company and each of its affiliates or any business segment, unit, division or subsidiary thereof that is designated a participating Employer in Table I attached hereto. By adopting the Plan, each Employer shall be deemed to have appointed the Company as its agent to exercise on its behalf all the powers and authorities conferred upon the Company by the terms of the Plan, including, but not limited to, the power to amend and/or terminate the Plan. Such authority shall continue unless and until the Employer withdraws from the Plan.

**1.17**   **ERISA:** means the Employee Retirement Income Security Act of 1974, as amended.

**1.18**   **FMLA:** means the Family and Medical Leave Act of 1993, as amended.

**1.19**   **FMLA Leave:** means an Approved Leave of Absence that qualifies under the FMLA.

TempleInland/Cleiland 239

**1.20**   <u>Full-time Employee:</u>  means an Employee who is designated as "full-time" by his Employer.

**1.21**   <u>Hourly Employee:</u>  means, solely for the purposes of this Plan, an Employee who is coded as an Hourly Employee on the Plan Administrator's Pay Frequency Coding Matrix and who is not (i) covered by a collective bargaining agreement entered into by an Employer unless such agreement, by specific reference to the Plan, provides for coverage under the Plan, or (ii) an Inland sheet plant employee except at locations designated by Inland as eligible to participate.  Unless the context indicates otherwise, Hourly Employee includes both Part-time Employees and Full-time Employees.

**1.22**   <u>Illness:</u>  means a physical illness or Mental Illness. It also includes pregnancy.

**1.23**   <u>Injury:</u>  means an accidental loss or bodily harm.

**1.24**   <u>Medically Necessary:</u>  means the surgical procedure is: (a) prescribed by a Physician as required treatment of the Injury or Illness; and (b) appropriate according to conventional medical practice for the Injury or Illness in the locality in which the surgery is performed.

**1.25**   <u>Mental Illness:</u>  means any disorder, other than a disorder induced by alcohol or drug abuse, which impairs the behavior, emotional reaction or thought process of a person, regardless of medical origin.

**1.26**   <u>Notice:</u>  means a notice, application or request in such form (which may be written, telephonic, electronic, or another means of communication) as may be provided or specified by the Plan Administrator or the Claims Administrator for a particular purpose.  To be effective, such Notice must be accurate, truthful, and complete, must meet all of the requirements specified by the party to receive such Notice (including any required information, documentation, consents, or data), must actually be received by such party, and must be received within any specified time limits.

**1.27**   <u>Other Income Benefits:</u>  has the meaning set forth in Section 4.5 hereof.

**1.28**   <u>Participant:</u>  means any Employee who meets the eligibility requirements set forth in the Plan, who is validly enrolled in the Plan, and whose coverage has not been terminated for any reason.

**1.29**   <u>Part-time Employee:</u>  means an Employee who is an Hourly Employee and who is regularly scheduled to work twenty (20) hours or more per week, but less than a Full-time Employee.

**1.30**   <u>Pay Frequency Coding Matrix:</u>  means a list maintained by the Plan Administrator of the Employers' pay frequency codes and Employee classifications for the purposes of determining eligibility dates and assigning credit formulas.

**1.31**   <u>Period of Disability:</u>  has the meaning set forth in Section 4.3 hereof.

**1.32**   <u>Physician:</u>  means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Employee that is appropriate for the condition and locality.  The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage) of an Employee or spouse, or a person living in an Employee's household.

**1.33**   <u>Plan:</u> means the Temple-Inland Short Term Disability Plan, as amended from time to time.

**1.34**   <u>Plan Administrator:</u> means such person or committee as may be appointed from time to time by the Company to administer the Plan.

TempleInland/Cleiland 240

1.35    **Plan Year:** means the calendar year commencing on January 1 and ending on the following December 31.

1.36    **Retiree:** means a participant in the Retiree Health and Welfare Plan or any other retiree health plan sponsored by the Company or any of its affiliates. Retirees are not eligible to participate in this Plan.

1.37    **Retirement Plan:** means any defined benefit or defined contribution retirement plan sponsored or funded by an Employer. It does not include an individual deferred compensation agreement; a stock option or stock bonus plan; an individual retirement account; or any employee contributions under a 401(k) plan or any Employer match thereon.

1.38    **Spouse:** means the person to whom the Participant is lawfully married under the laws of the state in which the Participant resides, provided that such person meets the requirements to be considered a spouse under Section 105(b) of the Code.

1.39    **Totally Disabled or Total Disability:** An Employee will be considered Totally Disabled if, because of an Injury or a Illness:

a.      He is unable to perform all of the material duties of his occupation; and

b.      He is not performing any other work or engaging in any other occupation for wage or profit for which he is earning substantially the same compensation as he did prior to his disability.

An Employee will be considered Totally Disabled on any day only if he is not working for any part of that day.

1.40    **Transactions:** means enrollments, status changes, deduction changes, inquiries, elections or coverage changes, or any other action or transaction allowed under the Plan. The Plan Administrator may specify that certain inquiries and Transactions can or must be made through a paper form, a telephone call, an automated or interactive voice response system, the Internet, an intranet, or any other oral, written, digital or electronic means of communication. The Participant (and Dependent, if applicable) may be required to take some action to make a Transaction happen or may be required to take some action to keep a Transaction from happening. A Personal Identification Number (PIN) may or may not be issued for Transaction and inquiry purposes.

1.41    **Trust:** means the Temple-Inland Health and Welfare Benefits Trust.

1.42    **Trustee:** means the person or persons appointed by the Company to serve as trustee under the Trust.

1.43    **Trust Fund:** means the assets of the Trust.

1.44    **Waiting Period:** For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees who are subject to a Waiting Period under Article II hereof, Waiting Period means 31 days of Active Service from an Employee's most recent date of hire as an Employee unless a different period is specified in a Collective Bargaining Agreement.

TempleInland/Cleiland 241

**ARTICLE II**

**ELIGIBILITY**

2.0    **Geographic Eligibility:**  Eligibility to participate in this Plan may be limited to persons who reside within geographic areas specified by the Plan Administrator from time to time.  Such geographic areas must be located within the 50 United States.  Persons who reside in or work for Employer facilities located in Puerto Rico, other United States territories or jurisdictions, or foreign countries, territories or jurisdictions are not eligible to participate in the Plan; provided, however, that this rule shall not apply to an Employee who is on temporary assignment outside of the 50 United States at the request of an Employer (or business unit thereof).

2.1    **Hourly Employees:**  Each Hourly Employee shall be eligible to participate in the Plan on the first day of the month coinciding with or following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.  This Plan is for Employees only; dependents are not eligible to participate in the Plan.

2.2    **Transferred Employees:**    If an Employee has transferred his employment from another company that is a member of the Employer's controlled group of corporations, his continuous service with that other company shall count toward his Waiting Period. The Plan Administrator may also (i) waive the Waiting Period with respect to all similarly situated Employees who were covered under the other company's group short term disability plan at the time of such transfer, and/or (ii) honor any shorter waiting period contained in such other company's group short term disability plan.

2.3    **Rehired Employees:**

    a.    An Employee who was previously covered under the Plan or another Company short term disability plan and whose coverage ceased due to termination of his employment shall be eligible to participate in the Plan on the first day he is rehired as an Employee if such rehire date is within three months of the date of his termination of employment and if he otherwise meets the eligibility requirements under the Plan.

    b.    An Employee who is not covered under this Plan or another Company short term disability plan at the time of his termination of employment must satisfy a new Waiting Period upon his rehire as an Employee.

    c.    An Employee who was previously covered under the Plan or another Company short term disability plan and whose coverage ceased due to termination of employment who is rehired more than three months after the date of his termination of employment must satisfy a new Waiting Period upon his rehire as an Employee.

    d.    If an Employee's coverage under the Plan was terminated by reason of disability and the Employee has had continuous coverage under the Disability Plan, the Waiting Period will be waived if the Employee is rehired and returns to work immediately upon recovery from the disabling condition.  For this purpose, "immediately" means within two weeks of the date as of which the Employee is released to return to work by the Employee's Physician or by the end of the month during which the Employee is released, whichever is longer.  For example, if an Employee is released to return to work on March 2, the Waiting Period will be waived as long as the Employee returns to work by March 31.  If the Employee is released on March 29, the Waiting Period will be waived if the Employee returns to work by April 12.

5

TempleInland/Cleiland 242

This provision is designed to assist such person's return to work; it is not a guarantee that a job will be available at the time such person recovers, that such person will have any sort of hiring preference or that such person has any extension of coverage through the Disability Plan.

**2.4** **Designated Joint Ventures**: If a person becomes an Employee within three months of his termination of employment with a Designated Joint Venture, his employment service with the Designated Joint Venture shall count toward his Waiting Period.

**2.5** **Acquisitions**: If a person becomes an Employee as a result of the acquisition of his employer or his employer's assets by the Company or a member of its controlled group of corporations, his continuous service with the acquired employer shall count toward his Waiting Period. The Plan Administrator may also (i) waive the Waiting Period with respect to all similarly situated Employees who were covered under the other employer's group short term disability plan at the time of such acquisition, and/or (ii) honor any shorter waiting period contained in such other employer's group short term disability plan.

**2.6** **Change in Eligibility Status**: If a person's status is changed from ineligible person to eligible Employee, such person's previous service with an Employer or any of its affiliates shall be counted toward any applicable Waiting Period. If a person's status is changed from ineligible person to eligible Employee retroactively due to a previous error, misclassification, or for any other reason, the Plan Administrator may, in his sole discretion, count such previous service toward any applicable Waiting Period; provided, however, that any enrollment in or coverage under this Plan shall be prospective only and there shall be no retroactive enrollment, coverage or Benefits payable for any such prior period.

## ARTICLE III

## ENROLLMENT AND CONTRIBUTIONS

**3.0** **Enrollment**: The Plan Administrator shall enroll eligible Employees in the Plan. By being enrolled in the Plan, an Employee agrees to the terms of the Plan.

**3.1** **Effect of Enrollment**: By enrolling or being enrolled (including a deemed enrollment) in the Plan, each person (on behalf of himself and his Dependents):

a.   agrees to the terms of the Plan;

b.   authorizes the deduction by the Company or Employer from his payroll compensation or agrees to make any payments required under this Plan; and

c.   authorizes all Transactions and the release of any information in response to such inquiries without the need for any written signature or further action on such person's part.

**3.2** **Effective Date of Coverage**: The effective date of an enrollment or a change in coverage shall be the later of (i) the date the Employee is eligible to participate or to elect such change in coverage, and (ii) the date Notice is provided to the Plan Administrator or a deemed enrollment or automatic change occurs; provided, however, that if other documentation is required, any such enrollment or change in coverage shall be effective only if and when the Claims Administrator agrees to such enrollment or change in coverage in writing; and further provided that any such enrollment or change in coverage shall be void ab initio (from the beginning) if any information provided in the Notice or any other required documentation is not supplied or accepted, or contains a misstatement, misrepresentation, falsification or other untruth, whether by commission or omission.

6

TempleInland/Cleiland 243

3.3     **FMLA Leave:** An Employee's coverage under the Plan shall remain in effect during the Employee's FMLA Leave.

3.4     **Contributions:** From time to time, the Plan Administrator shall determine the contributions required to pay for the cost of this Plan. Contributions shall be made by the Employer and/or Employee in the proportion specified by the Employer. The Trust has sole responsibility for funding benefit payments from such contributions and bears all risk thereof.

3.5     **Changes by Plan Administrator:** If the Plan Administrator determines, before or during any Plan Year, that the Plan may fail to satisfy for such Plan Year any nondiscrimination requirement or benefit limitation imposed by the Code, the Plan Administrator may take such action as the Plan Administrator deems appropriate, under rules uniformly applicable to similarly situated Participants, so as to ensure compliance with such requirements or limitations.

**ARTICLE IV**

**SHORT TERM DISABILITY BENEFITS**

4.0     **Conditions to Payment:** Before the Plan pays any amount, the Employee must meet each and every one of the following conditions:

      a.     The Employee must be <u>eligible</u> to participate in the Plan as set forth in Article II of the Plan;

      b.     The Employee must be validly <u>enrolled</u> for coverage under this Plan as set forth in Article III of the Plan;

      c.     The Employee's coverage must have become <u>effective</u> under Article III of the Plan;

      d.     The Employee's coverage must <u>not</u> have been <u>terminated</u> under Article VI of the Plan;

      e.     The Employee must meet the conditions set forth in Section 4.1; and

      f.     The Employee must file a <u>claim</u> and any other required documentation and/or provide Notice as set forth in Article V of this Plan.

4.1     **Covered Disabilities:** To be eligible for Benefits, an Employee must have suffered a Total Disability that is not excluded under Section 4.2 and must be under the appropriate care of a Physician for such Total Disability. The Claims Administrator may require an opinion from the Employee's Physician and other satisfactory proof of Total Disability to be provided at the Employee's expense and/or may require the Employee to take a physical examination by a Physician of the Claims Administrator's choice to prove his initial or continuing Total Disability. Proof of continuing eligibility may be required at any time and from time to time hereunder. It is not necessary that an Employee be confined in a hospital to receive Benefits hereunder. However, an Employee must provide the Claims Administrator and the Employer with Notice of his whereabouts, condition, ability to work, and such other information as the Claims Administrator and the Employer may require.

7

**4.2**    **Disabilities Not Covered:**

    a.    No Benefits will be paid for Total Disability that results, directly or indirectly, from:

        i.    attempted suicide, or whenever an Employee injures himself or herself on purpose;

        ii.    war or any act of war, whether or not declared;

        iii.    terrorism or active participation in a riot;

        iv.    commission of a felony;

        v.    the revocation, restriction or non-renewal of an Employee's license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Illness otherwise covered by the Plan;

        vi.    any cosmetic surgery or surgical procedure that is not Medically Necessary, unless the Total Disability is caused by the Employee donating an organ in a non-experimental organ transplant procedure;

        vii.    an Injury or Illness for which the Employee is entitled to benefits from Workers' Compensation or occupational disease law; or

        viii.    any Injury or Illness that is work related.

    b.    Benefits will **not** be paid for any period of time during which:

        i.    an Employee is incarcerated for any reason in a penal or corrections institution;

        ii.    an Employee is serving on full time active duty in any armed forces; or

        iii.    an Employee (or his Physician, other health care provider, family member, guardian, or other agent or representative) fails or refuses to cooperate or provide any required information as set forth in Section 4.1.

**4.3**    **Timing of Benefits:**

    a.    A Period of Disability begins (i) on the same day an Employee becomes Totally Disabled due to an Injury or (ii) on the fourth continuous day that an Employee is Totally Disabled due to Illness. However, if an Employee is Totally Disabled for more than 21 days or must be in the hospital for more than 21 days as a result of Illness, the Period of Disability will be retroactive to the first day of his Total Disability.

    b.    A Period of Disability will end on the earlier of:

        i.    the date the Employee recovers from his Total Disability as determined by the Claims Administrator in its sole discretion;

        ii.    the date the Employee earns more than 80% of his Covered Earnings;

8

TempleInland/Cleiland 245

     iii.    the date the Employee returns to Active Service;

     iv.    the date the Employee's Active Service ends;

     v.    the date the Employee's coverage under the Plan terminates under Article VI, except as set forth in Section 6.1;

     vi.    the date the Employee fails to provide proof of initial or continuing disability or otherwise fails to cooperate or meet the eligibility conditions contained in Section 4.1;

     vii.    26 weeks after the Period of Disability began; or

     viii.    the date the Employee dies.

c.    If an Employee has Periods of Disability that result from the same or related Illness or Injury, those periods will be considered one Period of Disability for purposes of determining the maximum payment under the Plan unless the Employee returns to work for two consecutive weeks in between the Periods of Disability. If an Employee has Periods of Disability that are not the result of the same or related Illness or Injury, those periods will be considered one Period of Disability for purposes of determining the maximum payment under this Plan unless the Employee returns to work for at least one full day in between the Periods of Disability.

**4.4**    **Amount of Benefits:**  Except as specified in any Schedule attached hereto, benefit payments are equal to 50% of an Employee's Covered Earnings. No payments are made for Periods of Disability less than a day. Benefits will normally be paid on a weekly basis during a Period of Disability. If an Employee is Totally Disabled for a period of less than one week, the benefit amount paid will be prorated; the benefit payment for one day of Total Disability is 1/7th of the weekly amount. Benefits are reduced 100% by Current Earnings and Other Income Benefits.

**4.5**    **Reduction in Benefits:**

a.    <u>Reduction</u>: While an Employee is Totally Disabled, he may be eligible for benefits from other income sources ("Other Income Benefits"). If so, the Benefits otherwise payable under the Plan shall be reduced by the amount of such Other Income Benefits.

b.    <u>Other Income Benefits</u>: Other Income Benefits include:

     i.    any amounts which the Employee or any dependents, if applicable, receive (or are assumed to receive) under:

        1.    the Canada and Quebec Pension Plans;

        2.    the Railroad Retirement Act;

        3.    any local, state, provincial or federal government disability or retirement plan or law;

        4.    any sick leave or salary continuation plan of the Employer;

        5.    any work loss provision in "No-Fault" auto insurance;

        6.    any Disability Benefits received from the Veterans' Administration;

9

     ii.     any Social Security disability or retirement benefits the Employee or any third party receives (or is assumed to receive) on the Employee's behalf or for his or her dependents; or, if applicable, which his or her dependents receive (or are assumed to receive) because of the Employee's entitlement to such benefits;

     iii.     any Retirement Plan benefits;

     iv.     any proceeds payable under any group insurance or similar plan.  If there is other insurance that applies to the same claim for Total Disability, and contains the same or similar provision for reduction because of other insurance, the Plan will pay for its pro rata share of the total claim.  "Pro rata share" means the proportion of the total benefit that the amount payable under one policy or plan, without other insurance or plan benefits, bears to the total benefits under all such policies or plans.

     v.     any Current Earnings or any wage or salary for work performed during the Period of Disability, whether on a part-time basis in his regular occupation or on a full-time or part-time basis in any other occupation.

"Dependents" include any person who receives (or is assumed to receive) benefits under any applicable law on account of an Employee's entitlement to benefits.

c.     <u>Increases in Other Income Benefits</u>:  After the first deduction for any Other Income Benefit (except Current Earnings, wage or salary) is made, benefits will not be further reduced during that Period of Disability due to any cost of living increase in that Other Income Benefit.

d.     <u>Lump Sum Payments</u>:  Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given.  If no time is stated, the lump sum will be prorated monthly over a five year period.  The Claims Administrator will determine the expected duration of disability.  If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

e.     <u>Assumed Receipt of Benefits</u>:  The Claims Administrator will assume the Employee (or his or her dependents, if applicable) are receiving Other Income Benefits if they may be eligible for them.  These assumed benefits will be the amount the Claims Administrator estimates the Employee (or his or her dependents, if applicable) may be eligible to receive.  Benefits otherwise payable under the Plan will be reduced by the amount of any assumed benefits as if they were actually received.

Except for any wage or salary for work performed while Benefits are payable, this assumption will not be made if the Employee gives the Claims Administrator satisfactory proof of the following events:

     i.     application was made for these benefits;

     ii.     a Reimbursement Agreement is signed;

     iii.     any and all appeals were made for these benefits or the Claims Administrator determines further appeals will not be successful; and

     iv.     payments were denied.

10

TempleInland/Cleiland 247

The Claims Administrator will not assume receipt of, nor reduce benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until the Employee actually receives them.

f.   <u>Other Reductions</u>:  The amount the Plan would otherwise pay will also be reduced to the extent set forth in Article V:  Payment of Benefits.

# ARTICLE V

## PAYMENT OF BENEFITS

5.0   <u>Claims Procedures</u>:  The Plan Administrator shall designate a Claims Administrator to review all claims for payment under the Plan.  The Claims Administrator shall establish claims procedures, including any required Notice.  All fully completed claim forms (if required) must be sent by Covered Persons directly to the Claims Administrator, along with any other information required for the Claims Administrator to determine whether Benefits are payable under the Plan, including the Participant's consent to the release of medical information.

5.1   <u>Consent</u>:

a.   <u>Consent</u>:  By enrolling or being enrolled in the Plan, an Employee consents (on behalf of himself and his dependents) to the release of any information or medical records to:

   i.   the Claims Administrator,

   ii.   any health care provider,

   iii.   the Plan Administrator, or

   iv.   any of the foregoing persons' or entities' auditors, agents or employees.

b.   <u>Purpose</u>: such information and/or medical records may be used for any of the following purposes:

   i.   enabling such person(s) to determine whether and to what extent Benefits are payable under this Plan,

   ii.   management audits, financial audits, or other such audits of the Plan or of any of the persons or entities listed above,

   iii.   to enable any of such persons to assist the Employee, explain his benefits hereunder to him, or to review or resolve any claims hereunder, or

   iv.   to comply with any federal or state law.

c.   <u>Other Consents</u>:  Notwithstanding the fact that such consent is deemed to have been given under this Plan by virtue of a person's enrollment under the Plan, the Employee shall sign any written consents required by a health care provider, the Claims Administrator, or Plan Administrator consistent with the above purposes.  If the patient is a minor or, in the opinion of the Claims Administrator, is not able to give valid consent to the release of such information, his parent or legal guardian must give such consent.

11

TempleInland/Cleiland 248

5.2     **To Whom Payable:**  Except as otherwise provided in the Plan, all benefits are payable to the Employee. All payments are subject to any payroll deductions, reductions, withholdings, liens and garnishments applicable to the Employee; provided, however, that withholding of Federal income tax shall be voluntary as specified by the Employee on Form W-4S.  Responsibility for the employer part of Social Security, Medicare, and FUTA taxes is hereby transferred to the Employer.

If any person to whom benefits are payable is a minor or, in the opinion of the Claims Administrator, is not able to give a valid receipt for any payment due him, such payment will be made to his legal guardian. If no request for payment has been made by his legal guardian, the Claims Administrator may, at its option, make payment to the person or institution appearing to have assumed his custody and support.

If the Employee dies while any of these benefits remain unpaid, the Claims Administrator may choose to make direct payment to any of the Employee's following living relatives: spouse, mother, father, child or children, brothers or sisters; or to the executors or administrators of the Employee's estate.

Payment as described above will release the Plan, Plan Administrator, and Claims Administrator from all liability to the extent of any payment made.

5.3     **Time of Payment:**  Benefits will be paid by the Claims Administrator as soon as administratively practicable after it receives due proof of the Total Disability and other information required pursuant to Section 5.0.

5.4     **Conditional Claim Payment; Reduction of Benefits:**

a.      If an Employee becomes Totally Disabled as a result of Injuries received in an accident for which, in the opinion of the Claims Administrator, a third party may be liable, the Plan will pay the amount of benefits otherwise payable under the Plan. However, the Employee must first agree in writing to refund the lesser of:

i.      the amount actually paid for such Benefits by the Plan; or

ii.     an amount equal to the sum actually received from the third party for such loss of income;

at the time such third party liability is determined and satisfied; whether by settlement, judgment, arbitration or otherwise.

b.      Benefits under the Plan will be reduced to the extent that benefits are paid or payable for an Employee's loss of income under the mandatory part of any auto insurance policy written to comply with:

i.      a "no fault" insurance law; or

ii.     an uninsured motorist insurance law;

provided, that the Plan will take into account any adjustment option (e.g., lump sum vs. installment payments) chosen under such part by the Participant.

12

TempleInland/Cleiland 249

5.5 **Recovery of Overpayment:** When an overpayment has been made by the Claims Administrator, the Claims Administrator will have the right at any time to: (a) recover that overpayment from the person to whom or on whose behalf it was made, or (b) offset the amount of that overpayment from a future claim payment, or (c) inform the Employer and the Employer shall have the right to deduct the amount of the overpayment from any pay or other sums due the Employee. As used herein, the term "overpayment" shall include all payments made in error, payments to ineligible persons, payments made pursuant to misstatements, misrepresentations or fraud (whether by commission or omission), and payments for which any third party is liable. The "make whole" doctrine shall not apply and the Covered Person agrees that the Plan shall have "first dollar" priority to receive reimbursement from the Covered Person out of any funds recovered from such third party.

5.6 **Subrogation:** The Plan shall be subrogated to any and all rights of Covered Persons for recovery against any third party because of a condition, Illness, or Injury caused by such third party or for which such third party may be liable. This right of subrogation is limited to the extent of Benefits payable under this Plan for such condition, Illness, or Injury. The Plan and the Plan Administrator shall be entitled to institute an action in the name of such Covered Person or to join in an action brought by such Covered Person against such third party and to participate in any judgment, award or settlement to the extent of the Plan's interest. The "make whole" doctrine shall not apply and the Covered Person agrees that the Plan shall have "first dollar" priority to receive any funds recovered from such third party. The Participant shall execute such instruments as may be necessary for the Plan to perfect its rights of subrogation and shall refrain from taking any action which may prejudice the Plan's right of subrogation. The Plan may withhold payment of Benefits if the Claims Administrator determines in its sole discretion that such withholding is necessary or appropriate for the enforcement of the Plan's subrogation rights, or may offset Benefits payable under the Plan by any amounts received or receivable by the Participant from or on behalf of such third party.

## ARTICLE VI

## TERMINATION OF COVERAGE

6.0 **Participants:** A Participant's coverage will cease on the earliest date below:

a.     The date the Participant ceases to be eligible to participate in the Plan;

b.     The date the Participant dies;

c.     The date the Plan is terminated;

d.     The end of the month during which the Participant's Active Service ends;

e.     The last day of the sixth month of an Approved Leave of Absence;

f.     The date of the Participant's death;

g.     The date specified by the Plan Administrator in the event of a sale of a business or other divestiture;

h.     The date as of which the Covered Person commits fraud or obtains benefits under the Plan through misrepresentation or otherwise, or fails to comply with Plan rules;

i.     The date as of which an Employer no longer participates in this Plan; or

13

j.    The date specified in the Collective Bargaining Agreement, or the date as of which coverage hereunder is no longer provided for in the Collective Bargaining Agreement; provided, however, that if no date is specified participation shall end on the earliest of the date of termination of employment, the date a lay-off begins, or the date the Collective Bargaining Agreement ends or provides for different coverage.

**6.1**    **Effect of Termination of Coverage:** The Plan will not pay for any loss of income after termination of coverage, even if the loss of income relates to or otherwise arises out of an Injury or Illness that occurred, was contracted, or otherwise began prior to the date of termination of coverage; provided, however, that an Employer may in its sole discretion authorize the continuation of Benefits already in pay status on the date of a lay-off, termination, or sale or shutdown of a business unit until the date the Period of Disability would otherwise end. Benefits or rights to benefits under this Plan do not vest.

## ARTICLE VII

## ADMINISTRATION OF PLAN

**7.0**    **Plan Administrator:**

a.    <u>Authority of Plan Administrator</u>: The Plan Administrator shall be responsible for the administration, operation and interpretation of the Plan. The Plan Administrator shall establish rules and regulations appropriate for the administration of the Plan. The Plan Administrator shall have the exclusive right to interpret the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan in his sole discretion, and all such decisions, actions and records of the Plan Administrator shall be conclusive and binding upon Participants, the Company and all persons having or claiming to have any right or interest in or under the Plan. Notwithstanding the foregoing sentence, to the extent that the Claims Administrator has been delegated the authority to administer claims under the Plan, the Claims Administrator shall be considered the Plan Administrator and shall have the exclusive right to interpret the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan in its sole discretion, and all such decisions, actions and records of the Claims Administrator shall be conclusive and binding upon the Company and all persons having or claiming to have any right or interest in or under the Plan. The Plan Administrator shall have the exclusive authority to determine whether a defect has occurred (or is alleged to have occurred) in the operation of the Plan and, if so, to correct such defect (or alleged defect) inside or outside of the Plan, which may include such equitable remedies (including waivers or modifications of Plan provisions) as he, in his sole discretion, shall deem appropriate.

b.    <u>Outside Assistance</u>: The Plan Administrator may employ such counsel, accountants, claims administrators, utilization or patient care review organizations, consultants, actuaries and other person or persons as it shall deem advisable. To the extent not paid by the Plan, the Company shall pay the compensation of such person or persons and any other reasonable expenses incurred by the Plan Administrator in the administration of the Plan.

c.    <u>Delegation of Authority</u>: The Plan Administrator may delegate to (i) any agent or agents of the Company or any of its affiliates or (ii) any employee or employees of the Company or any of its affiliates, severally or jointly, the authority to perform any ministerial or routine act in connection with the administration of the Plan.

14

**TempleInland/Cleiland 251**

d.     Records:  The Plan Administrator shall maintain such records as are required under ERISA or under the Code and such additional records as he deems necessary or appropriate showing the fiscal transactions of the Plan.

7.1     **Liability of Plan Administrator:**  The Plan Administrator shall not be liable for any act or omission on its own part, excepting only its own willful misconduct or gross negligence except as is otherwise expressly provided by ERISA.  To the fullest extent permitted by applicable laws, the Company shall indemnify and save harmless the Plan Administrator against any and all claims, demands, suits or proceedings in connection with the Plan that may be brought by  Employees, former Employees, Retirees, Disabled Persons, Participants, Dependents, or their spouses or dependents or by any other person, corporation, entity, government or agency thereof; provided, however, that such indemnification shall not apply with respect to acts or omissions of willful misconduct or gross negligence.  The Company, at the Company's expense, may settle any such claim or demand asserted or suit or proceeding brought against the Plan Administrator when such settlement appears to be in the best interests of the Company or any Employer.

7.2     **Claims for Benefits:**

a.     Processing of Claims:  Claims for benefits shall be processed by the Claims Administrator, or other person or entity designated by the Plan Administrator.  The claims procedure provided for by subsections (b) and (c) of this Section shall only apply to the extent that the Claims Administrator does not provide a claims procedure.

b.     Claims Procedure:  If any person believes he is being denied any rights or benefits under the Plan, such person may file a claim in writing with the Plan Administrator.  If any such claim is wholly or partially denied, the Plan Administrator will notify such person of its decision in writing.  Such notification will be written in a manner calculated to be understood by such person and will contain (i) specific reasons for the denial, (ii) specific reference to pertinent Plan provisions, (iii) a description of any additional material or information necessary for such person to perfect such claim and an explanation of why such material or information is necessary, and (iv) information as to the steps to be taken if the person wishes to submit a request for review.  Such notification will be given within 90 days after the claim is received by the Plan Administrator (or within 180 days, if special circumstances require an extension of time for processing the claim, and if written notice of such extension and circumstances is given to such person within the initial 90 day period).  If such notification is not given within such period, the claim will be considered denied as of the last day of such period and such person may request a review of his claim.

c.     Review Procedure:  Within 60 days after the date on which a person receives a written notice of a denied claim (or, if applicable, within 60 days after the date on which such denial is considered to have occurred) such person (or his duly authorized representative) may (i) file a written request with the Plan Administrator for a review of his denied claim and of pertinent documents and (ii) submit written issues and comments to the Plan Administrator.  The Plan Administrator will notify such person of its decision in writing.  Such notification will be written in a manner calculated to be understood by such person and will contain specific reasons for the decision as well as specific references to pertinent Plan provisions.  The decision on review will be made within 60 days after the request for review is received by the Plan Administrator (or within 120 days, if special circumstances require an extension of time for processing the request, such as an election by the Plan Administrator to hold a hearing, and if written notice of such extension and circumstances is given to such person within the initial 60 day period).  If the decision on review is not made within such period, the claim will be considered denied.

15

TempleInland/Cleiland 252

## ARTICLE VIII

## AMENDMENT AND TERMINATION OF PLAN

8.0 **Amendment and Termination of Plan:** The Plan may be amended or terminated at any time by action of the Board of Directors of the Company. In addition, the Plan Administrator may add, amend, delete, or terminate any Tables or Schedules attached hereto at any time. In addition to the authority of the Board to amend or terminate the Plan, the Plan Administrator may at any time amend the contents of the Appendices, Schedules and Tables.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

9.0 **Limitation of Rights:** It is the express purpose and intention of the Plan that, except as otherwise provided by ERISA, no liability whatsoever shall attach to or be incurred by the shareholders, directors, officers or employees of the Company or of any representatives appointed hereunder by the Company under or by reason of any of the terms and conditions of the Plan. Neither the establishment and maintenance of the Plan, nor any provision or amendment thereof, nor any act or omission under or resulting from the operation of the Plan, shall be construed:

   a.   as conferring upon any Employee, former Employee, Retiree, Disabled Person, Participant, dependent, spouse, beneficiary or any other person, firm, corporation or association, any legal or equitable right or claim against the Plan Administrator, or against the Company or any of its affiliates, except to the extent that such right or claim shall be specifically and expressly provided in the Plan or provided by law, nor against any shareholder, director, officer, or employee of the Company or any of its affiliates. Any and all such rights and claims, whether arising by common law or in equity or created by statute, are hereby expressly waived and released to the fullest extent permitted by law by every Participant and every Employee or former Employee, Retiree, Disabled Person, on behalf of himself, his dependents, his spouse, or other beneficiary and any and all other persons who might claim through him as a condition of and as a part of the consideration for participation in the Plan;

   b.   as an agreement, consideration or inducement of employment or affecting in any manner the rights or obligations of the Company, an Employer, or of any Employee to continue or to terminate the employment relationship at any time; or

   c.   as creating any responsibility or liability of the Plan Administrator or the Company for the validity or effect of the Plan.

9.1 **No Right to Continued Employment:** The establishment of the Plan shall not be construed as conferring any rights upon any person for a continuation of employment, nor shall it be construed as limiting in any way the right of the Company or an Employer to discharge any person or to treat him without regard to the effect which such treatment might have upon him as a Participant under the Plan. Any failure to enforce any provision of this Plan in any instance shall not be construed as a waiver of the right to enforce such provision in that instance or any other instance or as a waiver of any other provision of this Plan.

16

TempleInland/Cleiland 253

9.2 **Rules of Construction:** The masculine pronoun wherever used shall include the feminine pronoun, and the singular shall include the plural unless the context clearly indicates the distinction. The headings contained in the Plan are for convenience of reference only, and shall not be construed as defining or limiting the matter contained thereunder. Any failure to enforce any provision of this Plan in any instance shall not be construed as a waiver of the right to enforce such provision in that instance or any other instance or as a waiver of any other provision of this Plan.

9.3 **Governing Plan:** This Plan is not a stand alone plan; it may be funded in whole or in part through the Temple-Inland Health and Welfare Benefits Plan and Trust, all as amended from time to time. In the event of any conflict between the terms of this Plan and the Temple-Inland Health and Welfare Benefits Plan and Trust, the more restrictive provision shall control unless the Plan Administrator in his sole discretion determines otherwise.

9.4 **Governing Law:** Solely to the extent not preempted by the Code or ERISA (if any), this Plan shall be construed, administered and enforced according to the laws of the State of Texas.

## ARTICLE X

## IMPORTANT INFORMATION

10.0 **Plan Name:** The name of the Plan is Temple-Inland Short Term Disability Plan.

10.1 **Plan Sponsor and Employer:** The name and address of the Plan Sponsor and Employer is:

> Temple-Inland Forest Products Corporation
> P.O. Drawer N
> 303 South Temple Drive
> Diboll, Texas 75941

A complete list of the employers sponsoring the plan may be obtained by participants and beneficiaries upon written request to the Plan Administrator, and is available for examination by participants and beneficiaries at the office of the Plan Administrator. A list will also be made available at any employer facility at which at least 50 employees customarily work within 10 days of a request to the Plan Administrator or Human Resources representative at such facility. Participants and beneficiaries may receive from the Plan Administrator, upon written request, information as to whether a particular employer is a sponsor of the Plan and, if the employer is a Plan Sponsor, the Sponsor's address.

10.2 **Employer ID Number:** The Employer identification number assigned by the Internal Revenue Service to the Plan Sponsor is 75-1462427.

10.3 **Participating Plan:** This plan is a participating plan in the Temple-Inland Health and Welfare Benefits Plan, a voluntary employees' beneficiary association, and its plan number is 515.

10.4 **Type of Welfare Plan:** Short Term Disability.

17

TempleInland/Cleiland 254

10.5 **Claims Administration:** Claims are administered by Life Insurance Company of North America, CIGNA Group Insurance, Dallas Claims Office which has a claims office at 12225 Greenville Avenue, Dallas, Texas 75243. However, for fastest service, participants should send any claims to the claims office whose address appears on their claim form.

Life Insurance Company of North America processes claims and performs other administrative services as the Claims Administrator under this plan pursuant to a contract with the Employer. Life Insurance Company of North America does not insure this Plan or guarantee benefits under this Plan in any manner.

10.6 **Plan Administrator:** The name, business address and business telephone number of the Plan Administrator is:

Temple-Inland Inc. Benefits Administration Committee
Temple-Inland Forest Products Corporation
P. O. Drawer N
303 South Temple Drive
Diboll, Texas 75941

(409) 829-1422

10.7 **Agent for Service of Process:** Service of legal process may be made upon the Plan Administrator at the address above or upon the Plan Trustee.

10.8 **Plan Trustee:** The Trustee of the Temple-Inland Health and Welfare Benefits Trust is:

State Street Bank and Trust Company
One Enterprise Drive
North Quincy, Massachusetts 02171-2197

10.9 **Collective Bargaining Agreements:** For certain participants, the Plan is maintained pursuant to one or more collective bargaining agreements. A copy of any such agreement may be obtained by such participants and beneficiaries upon written request to the Plan Administrator, and is available for examination by such participants and beneficiaries at the office of the Plan Administrator. A copy will also be made available at any employer facility covered by the collective bargaining agreement at which at least 50 employees customarily work within 10 days of a request to the Plan Administrator or Human Resources representative at such facility. A copy may also be available at the meeting hall or office of the local union.

10.10 **Sources of Contributions to the Plan:** The Plan Administrator calculates the amount of contributions required from Participants and/or Employers.

10.11 **Funding:** This Plan is self-funded. All assets through which benefits are provided are accumulated in the Temple-Inland Health and Welfare Benefits Trust. Life Insurance Company of North America does not insure this Plan or guarantee benefits under this Plan in any manner.

10.12 **Plan Year:** The Plan Year for purposes of maintaining the Plan's fiscal records is the calendar year (January 1 through December 31).

18

**10.13**    **Statement of ERISA Rights:** As a participant in the plan named above you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as work sites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor.

Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies.

Receive a summary of the plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

Continue health care coverage for yourself, spouse or dependents if there is a loss of coverage under the plan as a result of a qualifying event. You or your dependents may have to pay for such coverage. Review this summary plan description and the documents governing the plan on the rules governing your COBRA continuation coverage rights.

Reduction or elimination of exclusionary periods of coverage for preexisting conditions under your group health plan, if you have creditable coverage from another plan. You should be provided a certificate of creditable coverage, free of charge, from your group health plan or health insurance issuer when you lose coverage under the plan, when you become entitled to elect COBRA continuation coverage, when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to 24 months after losing coverage. Without evidence of creditable coverage, you may be subject to a preexisting condition exclusion for 12 months (18 months for late enrollees) after your enrollment date in your coverage.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA. If your claim for a welfare benefit is denied in whole or in part you must receive a written explanation of the reason for the denial. You have the right to have the plan review and reconsider your claim. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the plan's decision or lack thereof concerning the qualified status of a medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

19

TempleInland/Cleiland 256

If you have any questions about your plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

20

TempleInland/Cleiland 257

**TABLE I**

TO THE
TEMPLE-INLAND SHORT TERM DISABILITY PLAN

**EMPLOYERS**

Inland Paperboard and Packaging, Inc.

Temple-Inland Forest Products Corporation

Texas South-Eastern Railroad Company

Effective: January 1, 2000

UNDERWRITTEN BY:
**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**a CIGNA Company**

04/2001

508508



**CIGNA Group Insurance**
Life ● Accident ● Disability

SUMMARY PLAN DESCRIPTION

FOR THE

## TEMPLE-INLAND
## DISABILITY HEALTH AND WELFARE PLAN

**(As Amended and Restated Effective January 1, 2002)**

IMPORTANT NOTE: This Summary Plan Description contains a summary of the Plan only. In the event of any conflict between this Summary and the Plan's full legal plan documents, the full legal plan documents shall control.

**WLF-PKG0006D**

**TempleInland/Cleland 260**

# TABLE OF CONTENTS

## ARTICLE I

### DEFINITIONS

| | | |
|---|---|---|
| 1.0 | Active Service | 1 |
| 1.1 | Claims Administrator | 1 |
| 1.2 | COBRA | 1 |
| 1.3 | Code | 1 |
| 1.4 | Collective Bargaining Agreement | 1 |
| 1.5 | Company | 1 |
| 1.6 | Consulting Company | 1 |
| 1.7 | Covered Person | 1 |
| 1.8 | Date of Disability | 1 |
| 1.9 | Dependents | 1 |
| 1.10 | Disabled Person | 1 |
| 1.11 | Effective Date | 2 |
| 1.12 | Employee | 2 |
| 1.13 | Employer | 2 |
| 1.14 | ERISA | 2 |
| 1.15 | Flex Plan | 2 |
| 1.16 | Illness | 2 |
| 1.17 | Injury | 2 |
| 1.18 | Inland | 2 |
| 1.19 | Life Insurance Policy | 2 |
| 1.20 | Long Term Disability Benefits | 2 |
| 1.21 | Long Term Disability Policy | 2 |
| 1.22 | Loss of Coverage Date | 2 |
| 1.23 | Medical Opt Out Election | 2 |
| 1.24 | Medical Plan | 2 |
| 1.25 | Medicare | 2 |
| 1.26 | Notice | 2 |
| 1.27 | Plan | 2 |
| 1.28 | Plan Administrator | 3 |
| 1.29 | Plan Year | 3 |
| 1.30 | Retirement Eligible | 3 |
| 1.31 | Retirement Plans | 3 |
| 1.32 | Social Security Act | 3 |
| 1.33 | Social Security Benefits | 3 |
| 1.34 | Solutions Plan | 3 |
| 1.35 | Solutions Medical Plan | 3 |
| 1.36 | Totally Disabled | 3 |
| 1.37 | Transactions | 4 |

## ARTICLE II

### ELIGIBILITY

| | | |
|---|---|---|
| 2.0 | Disabled Persons | 4 |
| 2.1 | Medical Benefits Eligibility | 5 |
| 2.2 | Dependents | 5 |
| 2.3 | Life Insurance Benefits | 6 |
| 2.4 | Acquisitions | 6 |
| 2.5 | Effect of Enrollment | 6 |
| 2.6 | Additional Provisions | 6 |
| 2.7 | Fraud | 6 |

ARTICLE III

BENEFITS

3.0     Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
3.1     Social Security Entitlement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
3.2     Medical Benefits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
3.3     Life Insurance Benefits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
3.4     Acquisitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

ARTICLE IV

CONTRIBUTIONS

4.0     Contributions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
4.1     Change in Cost  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
4.2     Collection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

ARTICLE V

TERMINATION OF PARTICIPATION

5.0     Disability Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
5.1     Other Termination Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
5.2     Dependents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
5.3     Effect of Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE VI

ADMINISTRATION OF PLAN

6.0     Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
6.1     Liability of Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
6.2     Claims for Benefits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARTICLE VII

AMENDMENT AND TERMINATION OF PLAN

7.0     Amendment and Termination of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
7.1     Other Changes by Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARTICLE VIII

MISCELLANEOUS PROVISIONS

8.0     Limitation of Rights  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
8.1     No Right to Continued Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
8.2     Rules of Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
8.3     Governing Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
8.4     Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE I

PARTICIPATING MEDICAL PLANS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . T-1

SCHEDULE I

ELIGIBLE HOURLY EMPLOYEES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . S-1

TempleInland/Cleiland 262

SCHEDULE II

INELIGIBLE EMPLOYEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  S-2

SUMMARY PLAN DESCRIPTION
APPENDIX

<u>IMPORTANT INFORMATION</u>

| 1.  | Plan Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-1 |
| 2.  | Plan Sponsor and Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-1 |
| 3.  | Employer ID Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-1 |
| 4.  | Participating Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-1 |
| 5.  | Type of Welfare Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-1 |
| 6.  | Claims Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-1 |
| 7.  | Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-1 |
| 8.  | Agent for Service of Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-1 |
| 9.  | Plan Trustee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-1 |
| 10. | Sources of Contributions to the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-2 |
| 11. | Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-2 |
| 12. | Plan Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-2 |
| 14. | Statement of ERISA Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-2 |
| 15. | Newborns' and Mothers' Health Protection Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-3 |
| 16. | Reconstructive Surgery Following Mastectomy  . . . . . . . . . . . . . . . . . . . . . . . . . . . . | SPD-3 |

**TempleInland/Cleiland 263**

# TEMPLE-INLAND
# DISABILITY HEALTH AND WELFARE PLAN

The purpose of the Temple-Inland Disability Health and Welfare Plan is to provide financial protection against certain high medical bills and to provide financial protection through life insurance benefits to eligible Disabled Persons who were Employees of an Employer on their Date of Disability for the period of time beginning on the date of a person's loss of income through termination of employment and lasting until the person would otherwise become eligible for income through new employment or through retirement or Social Security old age insurance benefits, or until participation is otherwise terminated as set forth herein. Except as otherwise noted, this Amendment and Restatement of the Plan shall only apply to persons who are Participants (as hereinafter defined) on or after January 1, 2002.

## ARTICLE I
## DEFINITIONS

The following terms when used in this Plan shall have the meanings set forth below:

**1.0** **Active Service:** An Employee will be considered to have been in "Active Service":

   a.   On any of his Employer's scheduled work days if he was performing the regular duties of his work for his regularly scheduled hours on that day either at his Employer's place of business or at some location to which he was required to travel for his Employer's business; or

   b.   On a day that was not one of his Employer's scheduled work days if he was in Active Service on the preceding scheduled work day.

**1.1** **Claims Administrator:** means the plan administrator and/or claims administrator of the applicable Medical Plan, Life Insurance Policy, or Long Term Disability Policy.

**1.2** **COBRA:** means Title X of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.

**1.3** **Code:** means the Internal Revenue Code of 1986, as amended.

**1.4** **Collective Bargaining Agreement:** means a collective bargaining agreement entered into by an Employer as set forth in the applicable schedule hereto.

**1.5** **Company:** means Temple-Inland Forest Products Corporation.

**1.6** **Consulting Company:** means a consulting company that assists people in filing for and obtaining Social Security Benefits and/or Medicare.

**1.7** **Covered Person:** means any Disabled Person or Dependent who is eligible to participate in the Plan, who is validly enrolled in the Plan, and whose coverage has not been terminated for any reason. Where the context requires, a reference to a Covered Person shall include a reference to that person's parent or legal guardian.

**1.8** **Date of Disability:** means the date the Injury occurred or the Illness began.

**1.9** **Dependents:** means a Disabled Person's spouse and/or children who meet the Dependent definition and eligibility criteria under the Medical Plan.

**1.10** **Disabled Person:** means a person who meets the eligibility criteria set forth in Section 2.0.

TempleInland/Cleiland 264

**1.11**   **Effective Date:**   The Plan was originally adopted effective January 1, 1998.  This Amendment and Restatement of the Plan is effective January 1, 2002.

**1.12**   **Employee:**  means a person who met the definition of an Employee under the Solutions Plan and who was a participant in the Solutions Plan on his Date of Disability; provided, however, that "Employee" does not include (i) any person who was an Inland employee compensated on an hourly basis except at designated locations set forth in a Schedule to the Plan, or (ii) any person who was compensated on an hourly basis and who was covered by a Collective Bargaining Agreement entered into by the Company or an Employer unless such agreement, by specific reference to this Plan, provides for coverage under this Plan.  Prior to January 1, 1999, the term Employee does not include any person who was an Inland employee.

**1.13**   **Employer:**  means the Company and each of its affiliates or any business segment, unit, division or subsidiary thereof that is designated a participating Employer under the Solutions Plan.  By adopting the Plan, each Employer shall be deemed to have appointed the Company as its agent to exercise on its behalf all the powers and authorities conferred upon the Company by the terms of the Plan, including, but not limited to, the power to amend and/or terminate the Plan.  Such authority shall continue unless and until the Employer withdraws from the Plan.

**1.14**   **ERISA:**  means the Employee Retirement Income Security Act of 1974, as amended.

**1.15**   **Flex Plan:**   means the Temple-Inland Flexible Benefits Plan, prior to its termination effective December 31, 1997.

**1.16**   **Illness:**  means a physical or mental illness.

**1.17**   **Injury:**  means an accidental bodily injury.

**1.18**   **Inland:**  means Inland Paperboard and Packaging, Inc. and its subsidiaries.

**1.19**   **Life Insurance Policy:**   means an Employee group term life insurance policy sponsored by the Company and offered under the Solutions Plan.

**1.20**   **Long Term Disability Benefits:**   means monthly disability income benefits under the Long Term Disability Policy.

**1.21**   **Long Term Disability Policy:**  means a group long term disability insurance policy sponsored by the Company and offered under the Solutions Plan.

**1.22**   **Loss of Coverage Date:**   means the date the person's participation in the Solutions Plan ceased.

**1.23**   **Medical Opt Out Election:**   means a medical opt out election as defined in the Solutions Plan.

**1.24**   **Medical Plan:** means a Company-sponsored medical plan listed on Table I hereto from time to time.

**1.25**   **Medicare:**   means the program of medical care benefits provided under Title XVIII of the Social Security Act of 1965, as amended.

**1.26**   **Notice:**   means a notice, application or request in such form (which may be written, telephonic, electronic, or another means of communication) as may be provided or specified by the Plan Administrator, the claims administrator of a benefit plan, or the review organization of a benefit plan for a particular purpose.  To be effective, such Notice must be accurate, truthful, and complete, must meet all of the requirements specified by the party to receive such Notice (including any required information, documentation, consents, or data), must actually be received by such party, and must be received within any specified time limits.

**1.27**   **Plan:** means the Temple-Inland Disability Health and Welfare Plan, as amended from time to time.

TempleInland/Cleiland 265

1.28   **Plan Administrator:** means such person or committee as may be appointed from time to time by the Company to administer the Plan.

1.29   **Plan Year:** means the calendar year commencing on January 1 and ending on the following December 31.

1.30   **Retirement Eligible:** means the average date on which an Employee would become eligible to draw benefits under the Retirement Plan absent disability (the "Normal Retirement Age" as defined in the Retirement Plan, or, in the case of the Temple-Inland Savings and Retirement Plan, the maximum date until which a terminated employee may defer a distribution) or the average date on which a person would become eligible to draw full, unreduced old age insurance benefits under the Social Security Act absent disability if he were born in 1937 or earlier, notwithstanding the fact that in any particular case a person (i) might have become eligible for (or actually commenced) early retirement benefits (whether or not subsidized or reduced to reflect early commencement) under the Retirement Plan or the Social Security Act, (ii) might have become eligible for (or actually commenced) postponed retirement benefits beyond the "normal retirement age" defined in the Retirement Plan or the earliest eligibility set forth in the Social Security Act, (iii) might be a participant in (or have actually received benefits under) a Retirement Plan that does not have a "normal retirement age", (iv) might have a birth date causing his date for commencement of unreduced Social Security benefits to be age 66 or age 67, or (v) might not be eligible for benefits under the Retirement Plan or the Social Security Act.

1.31   **Retirement Plans:** means: the Temple-Inland Salaried Retirement Plan; the Retirement Plan for Nonsalaried Employees of Temple-Inland Forest Products Corporation; or the Temple-Inland Savings and Retirement Plan. Prior to June 1, 1999, "Retirement Plans" means: the Retirement Plan for Salaried Employees of Temple-Inland Forest Products Corporation; the Retirement Plan for Nonsalaried Employees of Temple-Inland Forest Products Corporation; the Inland Master Pension Plan; or the Temple-Inland Savings and Retirement Plan.

1.32   **Social Security Act:** means the Social Security Act of 1965, as amended.

1.33   **Social Security Benefits:** means monthly disability income benefits under Title II of the Social Security Act.

1.34   **Solutions Plan:** means the Temple-Inland Benefit Solutions Plan, as amended from time to time. For a person whose Date of Disability occurred prior to the original Effective Date, any reference to the Solutions Plan shall be deemed to be a reference to the Flex Plan.

1.35   **Solutions Medical Plan:** means a Company-sponsored medical plan offered under the Solutions Plan.

1.36   **Totally Disabled:**

    a.    Prior to certification as described in subsection b. below, a person will be considered "Totally Disabled" or to have a "Total Disability" if, because of an Injury or an Illness:

        i.    He is unable to perform the basic duties of his occupation; and

        ii.    He is not performing any other work or engaging in any other occupation for wage or profit for which he is earning substantially the same compensation as he did prior to his disability.

    b.    Once a person is certified as entitled to receive Social Security Benefits and/or Long Term Disability Benefits for the original Injury or Illness that rendered him Totally Disabled on his Date of Disability, a person will be considered "Totally Disabled" or to have a "Total Disability" only if he continues to meet the requirements under the Long Term Disability Policy to continue receiving Long Term Disability Benefits or the requirements under the Social

TempleInland/Cleiland 266

Security Act to continue receiving Social Security Benefits, as such requirements may change from time to time.

1.37    **Transactions:** means enrollments, status changes, deduction changes, inquiries, elections or coverage changes, or any other action or transaction allowed under the Plan. The Plan Administrator may specify that certain inquiries and Transactions can or must be made through a paper form, a telephone call, an automated or interactive voice response system, the Internet, an intranet, or any other oral, written, digital or electronic means of communication. The Disabled Person (and Dependent, if applicable) may be required to take some action to make a Transaction happen or may be required to take some action to keep a Transaction from happening. A Personal Identification Number (PIN) may or may not be issued for Transaction and inquiry purposes.

**ARTICLE II**

**ELIGIBILITY**

2.0    **Disabled Persons:** To be eligible to participate (or continue to participate) in this Plan, a person must meet all of the criteria to be considered a "Disabled Person" as set forth below:

    a.    The person must have suffered an Injury or an Illness that rendered him Totally Disabled.

    b.    The person must have been an Employee of an Employer on his Date of Disability.

    c.    The Date of Disability must have been a date when the Employee was in Active Service.

    d.    On his Date of Disability, the Employee must have been a participant in one of the Retirement Plans.

    e.    On his Date of Disability, the person must have been eligible for benefits under one of the following Employer policies as a result of his Injury or Illness:

        i.    Worker's Compensation;

        ii.    the Temple-Inland Short Term Disability Plan (or any prior plan); or

        iii.    Salary Continuation Policy.

    The person must not have ceased to be eligible to receive benefits under one of the above policies unless the ineligibility was due solely to the fact that the Disabled Person had received the maximum benefits allowable for that Disabled Person.

    f.    The person must provide the Plan Administrator with proof that he has filed a claim for Social Security Benefits and, if applicable, for Long Term Disability Benefits, <u>prior to</u> the expiration of twenty-six (26) weeks from his Date of Disability;

    g.    On his Date of Disability, the person must have been a participant in the Solutions Plan.

    h.    The person must have ceased his participation in the Solutions Plan solely as a result of his inability to work due to his Total Disability. For an Inland Employee, the Loss of Coverage Date must be on or after January 1, 1999.

    i.    The events listed in Section 5.0-a. must not have occurred, except as otherwise provided in Section 5.0-b.

    j.    The events listed in Section 5.1 must not have occurred.

**TempleInland/Cleiland 267**

k.  The person must provide the Claims Administrator and Plan Administrator with Notice of his whereabouts, condition, ability to work, and such other information as the Claims Administrator and Plan Administrator may require from time to time.

l.  Additional requirements for eligibility to participate in the benefits offered under this Plan are set forth below and in Article III.

**2.1    Medical Benefits Eligibility:**  To be eligible for Medical Benefits, the Disabled Person must meet each of the following conditions:

a.  On his Loss of Coverage Date, the Disabled Person must have been a participant in a Solutions Medical Plan. A Disabled Person who had a Medical Opt Out Election in effect on his Loss of Coverage Date is not eligible for Medical Benefits under this Plan.

b.  The Disabled Person must have ceased his participation in the Solutions Medical Plan on his Loss of Coverage Date solely as a result of his inability to work due to his Total Disability.

c.  The Disabled Person must not be eligible for coverage under any medical plan sponsored or contributed to by the Company or an Employer on the basis of "current employment status" as defined in applicable Medicare law at 42 USC § 1395y(b)(1)(E)(ii) and regulations thereunder.

d.  The Disabled Person must not have continued coverage under any Solutions Medical Plan or any medical plan sponsored or contributed to by the Company or an Employer in any capacity, whether as a participant or a dependent, or under any other provisions of the Solutions Medical Plan, the Solutions Plan, or applicable law; it being the express intention of the Plan to avoid any duplication of benefits or coverage. For example, if a Disabled Person has elected to continue his coverage under the Solutions Medical Plan under COBRA or has converted his coverage to an individual policy, he is not eligible for medical benefits under this Plan.

e.  The Disabled Person must not be enrolled in a Medicare + Choice (Medicare Part C) plan.

f.  The Disabled Person must meet any eligibility requirements contained in the Medical Plan from time to time.

**2.2    Dependents:**

a.  Only Dependents who meet the eligibility criteria for coverage under a Medical Plan on the Loss of Coverage Date, or who are conceived by the Loss of Coverage Date, are eligible to participate in this Plan. Within 31 days of his Loss of Coverage Date (including his Loss of Coverage Date), the Disabled Person may enroll any eligible Dependents in the same Medical Plan in which the Disabled Person is enrolled. A Disabled Person may add a Dependent who was conceived on or before his Loss of Coverage Date to his coverage under the Medical Plan within thirty-one (31) days of the Dependent's birth (including the date of birth). No other Dependents are eligible for coverage under this Plan. If a Disabled Person does not enroll his eligible Dependents within the time period specified above, the Dependents will never be eligible to participate in the Medical Plan. If the Disabled Person acquires new Dependents subsequent to his Loss of Coverage Date, such new Dependents are not eligible to participate in a Medical Plan. A Disabled Person may drop a Dependent from his coverage at any time upon notice to the Plan Administrator, but such Dependent will not be eligible to participate in a Medical Plan again at any later date.

b.  Notwithstanding the above, if the spouse of a Disabled Person is an employee of the Company or any of its affiliates and is enrolled for medical coverage as an active employee under a medical plan sponsored by the Company or any of its affiliates immediately prior to

TempleInland/Cleiland 268

his or her retirement or other termination of service from the Company or any of its affiliates, but is <u>not</u> eligible to become a participant in the Temple-Inland Retiree Health and Welfare Plan or this Plan at the time of his or her retirement or termination of service from the Company or any of its affiliates, the employee spouse and any Dependents covered under the employee spouse's coverage at the time of termination of service may be enrolled as Dependent(s) under the Disabled Person's coverage under the Plan at the time of the employee spouse's retirement or other termination of service from the Company or any of its affiliates provided the employee spouse and any dependents meet the definition of a Dependent under the applicable Medical Plan and any other eligibility requirement set forth therein and enroll in the Plan within 31 days of the employee spouse's retirement or other termination of service from the Company or any of its affiliates.

2.3     <u>Life Insurance Benefits:</u> To be eligible for Life Insurance Benefits, the Disabled Person must have had Life Insurance coverage in effect under the Solutions Plan on his Date of Disability. The Disabled Person must continue to meet any eligibility requirements contained in the Life Insurance Policy from time to time.

2.4     <u>Acquisitions:</u> If an Employer acquires another entity and such entity's Employees in Active Service become covered under the Solutions Plan, the Employer may, but is not required to, adopt this Plan on behalf of any former employees of such entity who would otherwise meet the eligibility criteria herein except for the fact that they were not enrolled in the Solutions Plans on the Date of Disability, but only if such former employees have existing medical coverage and/or life insurance coverage that will continue beyond the date of such acquisition. If such former employees do not have existing medical benefits and/or life insurance benefits, no new benefits or rights shall be created hereunder.

2.5     <u>Effect of Enrollment:</u> A Disabled Person must enroll in the Plan within 31 days of his Loss of Coverage Date (including his Loss of Coverage Date). By enrolling or being enrolled (including a deemed enrollment) in the Plan, each person (on behalf of himself and his Dependents):

      a.      agrees to the terms of the Plan;

      b.      agrees to make any payments required under this Plan; and

      c.      authorizes all Transactions and the release of any information in response to such inquiries without the need for any written signature or further action on such person's part.

2.6     <u>Additional Provisions:</u> Additional benefits or additional provisions with respect to any classification of Participants under the Plan may be contained in any Schedule hereto.

2.7     <u>Fraud:</u> Any cards issued by the Plan, the Claims Administrator, or any other entity in connection with this Plan are for identification purposes only. Possession of said card(s) confers no rights to benefits hereunder. The card is not transferable. Any person who receives benefits or other services to which he or she is not then entitled pursuant to the provisions of this Plan must pay for such benefits or other services at non-Plan rates specified by the Claims Administrator. If a Covered Person misrepresents his or her status or coverage, or misuses or permits the misuse of a Plan identification card, the Plan may retain the identification card, terminate the Covered Person's coverage (and, if the Covered Person is the Participant, his Dependents' coverage will also be terminated), and hold the Covered Person responsible for payment of the benefits or services at non-Plan rates specified by the Claims Administrator.

TempleInland/Cleiland 269

## ARTICLE III

### BENEFITS

**3.0**   **Benefits:** A Disabled Person may be eligible for one or more of the benefits described in this Article III.

**3.1**   **Social Security Entitlement:** The Plan may, but is not required to, retain a Consulting Company to review the status of all Disabled Persons or Employees who (i) have suffered an Injury or Illness, (ii) have been or are expected to be absent from Active Service for five months or longer, and (iii) are expected to become Disabled Persons. If the Consulting Company determines in its sole judgment and discretion that (i) a Disabled Person or Employee who is expected to become a Disabled Person appears to meet the eligibility requirements for Social Security Benefits, and (ii) the Consulting Company can provide meaningful assistance to such person in applications and appeals to establish or continue entitlement to such Social Security Benefits, and if such person agrees to appoint such Consulting Company as his representative, the Plan will pay a fee to such Consulting Company to assist the person. Such fee will be paid directly to the Consulting Company retained by the Plan. If the Consulting Company determines in its sole judgment and discretion that a person does not appear to meet the eligibility requirements for Social Security Benefits or that the Consulting Company cannot provide meaningful assistance to such person in his applications and appeals, or if the person does not agree to appoint such Consulting Company as his representative, or if such person desires to act on his own behalf or retain a different representative, agent, or attorney, or if such assistance is provided through the Long Term Disability Policy, no fees will be payable hereunder, regardless of whether or not the person is subsequently determined to be entitled to Social Security Benefits.

**3.2**   **Medical Benefits:**

   a.    Medical benefits will be provided under a Medical Plan similar to the Solutions Medical Plan in which the Disabled Person was a participant on his Loss of Coverage Date if a similar plan is available in the Disabled Person's zip code area.   In the alternative, the Disabled Person may enroll in a Medical Plan that is a more cost effective (higher managed care) Medical Plan as determined by the Plan Administrator in his sole discretion.   If a similar plan is not available, the Disabled Person may enroll in any available Medical Plan offered in his zip code area.

   b.    The Plan Administrator shall designate an annual enrollment period each year during which a Participant may change his enrollment to a more highly managed Medical Plan (as determined by the Plan Administrator) if one is available in his zip code area. Participants are not allowed to change to a less managed Medical Plan except as determined by the Plan Administrator due to changes in the Medical Plans offered. If a Participant does not change his election during the annual enrollment period, his former election shall continue except as determined by the Plan Administrator due to changes in the Medical Plans offered.

   c.    Reference is hereby made to the applicable Medical Plan for a more complete description of the medical benefits and any further eligibility requirements.

**3.3**   **Life Insurance Benefits:**  Life insurance is provided in an amount equal to the lesser of (i) the amount of the Disabled Person's life insurance coverage in effect under the Solutions Plan on the Disabled Person's Date of Disability, or (ii) the amount specified in the applicable Life Insurance Policy. This benefit is provided under the Life Insurance Policy, to which reference is hereby made for a more complete description of said benefit and any further eligibility requirements. The amount of such life insurance may not be increased. No life insurance is provided for Dependents.

**3.4**   **Acquisitions:** The benefits provided to former employees of an acquired entity shall not exceed the level of benefits provided under any plan or policy of such acquired entity.

**TempleInland/Cleiland 270**

## ARTICLE IV

### CONTRIBUTIONS

**4.0**    **Contributions:** The Plan Administrator shall determine the amount of contributions (if any) required to be paid by the Disabled Person and his Dependent(s) from time to time to pay for the benefits hereunder.

**4.1**    **Change in Cost:** If the cost of the coverage increases or decreases during a Plan Year, Participants' required cash contributions may, in the discretion of the Plan Administrator, be automatically increased or decreased to reflect such change in cost. Any change in a Participant's required cash contributions shall be processed as soon as administratively practicable as determined in the Plan Administrator's sole discretion.

**4.2**    **Collection:** The Plan Administrator may prescribe rules requiring a Disabled Person to deliver cash or a check or money order to the Company or its designee at such time, locations, and in such form as the Plan Administrator shall prescribe to pay for his required contributions. In his discretion, the Plan Administrator may also provide for the collection of any amounts that remain unpaid upon a person's termination of coverage or otherwise, or for the offset of such amounts from any benefits otherwise payable under the Plan.

## ARTICLE V

### TERMINATION OF PARTICIPATION

**5.0**    **Disability Certification:**

    **a.**    **Before Certification:** A Disabled Person's participation shall cease as of the <u>earliest</u> of the following to occur:

        **i.**    the Disabled Person's <u>initial</u> claim for <u>either</u> Social Security Benefits or Long Term Disability Benefits is denied (even if his claim for the other of such benefits is still pending), unless the Disabled Person files proof with the Plan Administrator within one hundred eighty (180) days after the denial that an appeal of such denial has been filed; or

        **ii.**    the denial of the Disabled Person's <u>initial</u> claim for <u>either</u> Social Security Benefits or Long Term Disability Benefits is upheld on appeal (even if his claim for the other of such benefits is still pending); or

        **iii.**    one hundred and four (104) weeks from the Disabled Person's Date of Disability, if he has still not been certified as entitled to receive Social Security Benefits or Long Term Disability Benefits, whether or not his claim for such benefits is pending, or if the Disabled Person has been certified but fails to provide proof of such certification to the Plan Administrator.

    **b.**    **After Certification:** A Disabled Person's participation shall cease as of the <u>earliest</u> of the follow to occur:

        **i.**    if the Disabled Person was only certified for Social Security Benefits, the Disabled Person ceases to be entitled to receive Social Security Benefits or his certification expires or is cancelled or revoked for any reason, whether or not his appeal of loss of certification is pending; or

TempleInland/Cleland 271

ii.   if the Disabled Person was only certified for Long Term Disability Benefits, the Disabled Person ceases to be entitled to receive Long Term Disability Benefits or his certification expires or is cancelled or revoked for any reason, whether or not his appeal of loss of certification is pending; or

iii.  if the Disabled Person was certified for both Social Security Benefits and Long Term Disability Benefits, the Disabled Person ceases to be entitled to receive both his Social Security Benefits and his Long Term Disability Benefits or his certifications expire or are cancelled or revoked for any reason, whether or not his appeal of loss of certification is pending. [If the Disabled Person loses his certification for Social Security Benefits, but is still certified for Long Term Disability Benefits, his participation under the Plan will not cease under this section until he also loses his Long Term Disability Benefits certification.   If the Disabled Person loses his certification for Long Term Disability Benefits, but is still certified for Social Security Benefits, his participation under the Plan will not cease under this section until he also loses his Social Security Benefits certification.

c.    <u>Reinstatement</u>: If a Disabled Person's participation terminates solely due to an event described in subsection 5.0-a. or 5.0-b and the Disabled Person is subsequently certified or recertified as entitled to receive either Social Security Benefits or Long Term Disability Benefits for the original Injury or Illness that rendered him Totally  Disabled on his Date of Disability, the Disabled Person may re-enroll for coverage under the Plan upon providing proof of such certification or recertification to the Plan Administrator. The Plan, the Medical Plan, and the Life Insurance Policy shall not have any liability or responsibility whatsoever for expenses, claims, losses, or damages the Disabled Person or his Dependents may have incurred during the interruption of coverage or prior to reinstatement of coverage. Coverage will be reinstated as of the date proof of certification is received by the Plan Administrator.

5.1   <u>Other Termination Events</u>: A Disabled Person's participation shall cease as of the <u>earliest</u> of the following to occur:

a.    the end of the month during which the Disabled Person recovers or is no longer Totally Disabled;

b.    the Disabled Person is employed by another employer or is re-employed by an Employer, except to the extent that (i) such employment constitutes "rehabilitative employment" as defined by the Social Security Administration or (if applicable) the Company's Long Term Disability Benefits carrier, (ii) the Disabled Person is not eligible for medical benefits or life insurance benefits (whether or not enrolled) as a result of such employment, and (iii) such employment does not extend beyond the maximum term for "rehabilitative employment" under the foregoing definitions;

c.    the Disabled Person fails to pay any required contributions;

d.    the Disabled Person ceases to be eligible to participate under the Plan, the Medical Plan, or the Life Insurance Policy;

e.    the Medical Plan or Life Insurance Policy is terminated or amended to eliminate coverage of persons including the Disabled Person (unless a substitute plan is selected by the Plan Administrator) or the Disabled Person's coverage is terminated thereunder for any reason;

f.    the Plan is terminated;

g.    the first day of the month during which the Disabled Person becomes Retirement Eligible;

h.    the Disabled Person dies;

TempleInland/Cleiland 272

i.    the person (or his physician, other health care provider, family member, guardian, or other agent or representative) fails or refuses to cooperate or provide any required information to the Claims Administrator or the Plan Administrator;

j.    any other date specified in the Medical Plan or Life Insurance Policy;

k.    the date specified by the Plan Administrator in the event of a sale of a business or other divestiture;

l.    the date as of which the Covered Person commits fraud or obtains benefits under the Plan through misrepresentation or otherwise, or fails to comply with Plan rules;

m.    the date as of which an Employer no longer participates in this Plan;

n.    The date specified in the Collective Bargaining Agreement, or the date as of which coverage hereunder is no longer provided for in the Collective Bargaining Agreement; provided, however, that if no date is specified participation shall end on the earliest of the date of termination of employment, the date a lay-off begins, or the date the Collective Bargaining Agreement ends or provides for different coverage;

o.    the date the Disabled Person is enrolled in a Medicare + Choice (Medicare Part C) plan.

5.2    **Dependents:** Coverage under the Medical Plan for any <u>one</u> of a Disabled Person's Dependents will cease on the earlier of (a) the end of the month during which the Dependent no longer qualifies as a Dependent under the Medical Plan, or (b) the earliest date specified below. Coverage for <u>all</u> of a Disabled Persons' Dependents will cease on the earliest date below:

a.    the date the Disabled Person's coverage ceases;

b.    the date the Disabled Person ceases to be eligible to cover his Dependents;

c.    the last day for which the Disabled Person or Dependent has made any required contributions for the coverage;

d.    the day before the date as of which the Disabled Person has elected a level of coverage that does not include the Dependent(s), drops the Dependent(s) from his coverage, or otherwise fails to enroll or re-enroll the Dependent(s);

e.    the date the Medical Plan is terminated or Dependent coverage is eliminated (unless a substitute plan is selected by the Plan Administrator);

f.    the date specified in the Medical Plan;

g.    the date this Plan is terminated or Dependent coverage is eliminated;

h.    the date specified by the Plan Administrator in the event of a sale of a business or other divestiture;

i.    the date as of which the Covered Person commits fraud or obtains benefits under the Plan through misrepresentation or otherwise, or fails to comply with Plan rules;

j.    the date as of which an Employer no longer participates in this Plan;

k.    The date specified in the Collective Bargaining Agreement, or the date as of which coverage hereunder is no longer provided for in the Collective Bargaining Agreement; provided, however, that if no date is specified participation shall end on the earliest of the date of

TempleInland/Cleiland 273

termination of employment, the date a lay-off begins, or the date the Collective Bargaining Agreement ends or provides for different coverage;

I.    the date the Dependent is enrolled in a Medicare + Choice (Medicare Part C) plan.

**5.3**    **Effect of Termination:** Except as provided in subsection 5.0-c., once a Disabled Person's or Dependent's participation under a Medical Plan ceases, he can <u>never</u> enroll in a Medical Plan again. If a Disabled Person's medical coverage ceases but he is otherwise still qualified to participate in the Plan, he may continue to participate in the Life Insurance Policy until the date specified in Section 5.0 or Section 5.1.

For example:

1.    Mary drops her Medical Plan coverage because she is covered as a dependent under a group health plan offered by her husband's employer. She can continue her Life Insurance Coverage under this Plan. If her husband later loses his job and his group health coverage, Mary cannot re-enroll in a Medical Plan under this Plan.

2.    John enrolls in a Medicare + Choice plan. He is therefore no longer eligible to participate in a Medical Plan, but he is still eligible to continue his Life Insurance coverage. If John decides to drop his Medicare + Choice coverage the next year and re-enroll in traditional Medicare Part A and Part B, he cannot re-enroll in a Medical Plan under this Plan.

## ARTICLE VI

## ADMINISTRATION OF PLAN

**6.0**    **Plan Administrator:**

a.    <u>Authority of Plan Administrator:</u>  The Plan Administrator shall be responsible for the administration, operation and interpretation of the Plan. The Plan Administrator shall establish rules and regulations appropriate for the administration of the Plan.  The Plan Administrator shall have the exclusive right to interpret the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan in his sole discretion, and all such decisions, actions and records of the Plan Administrator shall be conclusive and binding upon Participants, Dependents, the Company, the Employers, and all persons having or claiming to have any right or interest in or under the Plan.  Notwithstanding the foregoing sentence, to the extent that the Claims Administrator has been delegated the authority to administer claims under the Medical Plan, including the determinations of whether expenses are covered expenses, medically necessary, or otherwise eligible for reimbursement hereunder, or to administer claims under the Life Insurance Policy, the Claims Administrator shall be considered the Plan Administrator and shall have the exclusive right to interpret the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan in its sole discretion, and all such decisions, actions and records of the Claims Administrator shall be conclusive and binding upon Participants, Dependents, the Company and all persons having or claiming to have any right or interest in or under the Plan.  The Plan Administrator shall have the exclusive authority to determine whether a defect has occurred (or is alleged to have occurred) in the operation of the Plan and, if so, to correct such defect (or alleged defect) inside or outside of the Plan, which may include such equitable remedies (including waivers or modifications of Plan provisions) as he, in his sole discretion, shall deem appropriate.

b.    <u>Outside Assistance:</u> The Plan Administrator may employ such counsel, accountants, claims administrators, utilization or patient care review organizations, consultants, actuaries and other person or persons as it shall deem advisable.  To the extent not paid by the Plan, the

TempleInland/Cleiland 274

Company shall pay the compensation of such person or persons and any other reasonable expenses incurred by the Plan Administrator in the administration of the Plan.

c.   <u>Delegation of Authority</u>: The Plan Administrator may delegate to (i) any agent or agents of the Company or any Employer or (ii) any employee or employees of the Company or any Employer, severally or jointly, the authority to perform any ministerial or routine act in connection with the administration of the Plan.

d.   <u>Records</u>: The Plan Administrator shall maintain such records as are required under ERISA or under the Code and such additional records as he deems necessary or appropriate showing the fiscal transactions of the Plan.

6.1   <u>Liability of Plan Administrator</u>: The Plan Administrator shall not be liable for any act or omission on its own part, excepting only its own willful misconduct or gross negligence except as is otherwise expressly provided by ERISA. To the fullest extent permitted by applicable laws, the Company shall indemnify and save harmless the Plan Administrator against any and all claims, demands, suits or proceedings in connection with the Plan that may be brought by Employees, Participants, Dependents, or their Spouses or dependents or by any other person, corporation, entity, government or agency thereof; <u>provided</u>, <u>however</u>, that such indemnification shall not apply with respect to acts or omissions of willful misconduct or gross negligence. The Company, at the Company's expense, may settle any such claim or demand asserted or suit or proceeding brought against the Plan Administrator when such settlement appears to be in the best interests of the Company or any Employer.

6.2   <u>Claims for Benefits</u>: If the Claims Administrator offers an external review program that has been approved by the Plan Administrator, the decision of the external reviewer shall be final and no further review or appeal shall be offered under the Plan.

a.   <u>Processing of Claims</u>: Claims for benefits shall be processed by the insurer, Claims Administrator, or other person or entity designated by the plan administrator of the Medical Plan or the Life Insurance Policy. Each Covered Person must follow the claims procedure and review procedure set forth by the Claims Administrator.

b.   <u>Claims Procedure</u>: If any person believes he is being denied any rights or benefits under the Plan, such person may file a claim in writing with the Plan Administrator. If any such claim is wholly or partially denied, the Plan Administrator will notify such person of its decision in writing. Such notification will be written in a manner calculated to be understood by such person and will contain (i) specific reasons for the denial, (ii) specific reference to pertinent Plan provisions, (iii) a description of any additional material or information necessary for such person to perfect such claim and an explanation of why such material or information is necessary, and (iv) information as to the steps to be taken if the person wishes to submit a request for review. Such notification will be given within 90 days after the claim is received by the Plan Administrator (or within 180 days, if special circumstances require an extension of time for processing the claim, and if written notice of such extension and circumstances is given to such person within the initial 90 day period). If such notification is not given within such period, the claim will be considered denied as of the last day of such period and such person may request a review of his claim.

c.   <u>Review Procedure</u>: Within 60 days after the date on which a person receives a written notice of a denied claim (or, if applicable, within 60 days after the date on which such denial is considered to have occurred) such person (or his duly authorized representative) may (i) file a written request with the Plan Administrator for a review of his denied claim and of pertinent documents and (ii) submit written issues and comments to the Plan Administrator. The Plan Administrator will notify such person of its decision in writing. Such notification will be written in a manner calculated to be understood by such person and will contain specific reasons for the decision as well as specific references to pertinent Plan provisions. The decision on review will be made within 60 days after the request for review is received by the Plan

TempleInland/Cleiland 275

# EXHIBIT 1 TO EXHIBIT B
# Part 6

Administrator (or within 120 days, if special circumstances require an extension of time for processing the request, such as an election by the Plan Administrator to hold a hearing, and if written notice of such extension and circumstances is given to such person within the initial 60 day period). If the decision on review is not made within such period, the claim will be considered denied.

## ARTICLE VII

### AMENDMENT AND TERMINATION OF PLAN

**7.0**   **Amendment and Termination of Plan:** The Plan may be amended or terminated at any time by action of the Board of Directors of the Company. In addition to the authority of the Board to amend or terminate the Plan, the Plan Administrator may at any time amend the contents of any appendices, schedules and tables.

**7.1**   **Other Changes by Plan Administrator:** If the Plan Administrator determines, before or during any Plan Year, that the Plan may fail to satisfy for such Plan Year any nondiscrimination requirement or benefit limitation imposed by the Code, ERISA, or any applicable federal law, the Plan Administrator may take such action as the Plan Administrator deems appropriate, under rules uniformly applicable to similarly situated Participants and/or Dependents, so as to ensure compliance with such requirements or limitations.

## ARTICLE VIII

### MISCELLANEOUS PROVISIONS

**8.0**   **Limitation of Rights:** It is the express purpose and intention of the Plan that, except as otherwise provided by ERISA, no liability whatsoever shall attach to or be incurred by the shareholders, directors, officers or employees of the Company or any Employer or of any representatives appointed hereunder by the Company under or by reason of any of the terms and conditions of the Plan. Neither the establishment and maintenance of the Plan, nor any provision or amendment thereof, nor any act or omission under or resulting from the operation of the Plan, shall be construed:

   a.    as conferring upon any Employee, former Employee, Disabled Person, Participant, Dependent, Spouse, beneficiary or any other person, firm, corporation or association, any legal or equitable right or claim against the Plan Administrator, the Investment Committee, the Trust, the Trustee, the Trust Fund, or against the Company or any Employer or any of their affiliates, except to the extent that such right or claim shall be specifically and expressly provided in the Plan or provided by law, nor against any shareholder, director, officer, or employee of the Company or any Employer or any of their affiliates. Any and all such rights and claims, whether arising by common law or in equity or created by statute, are hereby expressly waived and released to the fullest extent permitted by law by every Participant and every Employee, former Employee, or Disabled Person, on behalf of himself, his Dependents, his Spouse, dependent or other beneficiary and any and all other persons who might claim through him as a condition of and as a part of the consideration for participation in the Plan;

   b.    as an agreement, consideration or inducement of employment or affecting in any manner the rights or obligations of the Company or any Employer or of any Employee to continue or to terminate the employment relationship at any time; or

   c.    as creating any responsibility or liability of the Plan Administrator or the Company or any Employer for the validity or effect of the Plan.

**8.1**   **No Right to Continued Employment:** The establishment of the Plan shall not be construed as conferring any rights upon any person for a continuation of employment or for reemployment, nor shall

TempleInland/Cleiland 276

it be construed as limiting in any way the right of the Company or an Employer to discharge any person or to treat him without regard to the effect which such treatment might have upon him as a Participant under the Plan.

8.2     **Rules of Construction:** The masculine pronoun wherever used shall include the feminine pronoun, and the singular shall include the plural unless the context clearly indicates the distinction.  The headings contained in the Plan are for convenience of reference only, and shall not be construed as defining or limiting the matter contained thereunder.  Any failure to enforce any provision of this Plan in any instance shall not be construed as a waiver of the right to enforce such provision in that instance or any other instance or as a waiver of any other provision of this Plan.

8.3     **Governing Plan:** This Plan is not a stand alone plan; Benefits are provided through the Medical Plan and/or Life Insurance Policy, and it may be funded in whole or in part through the Temple-Inland Health and Welfare Benefits Plan and Trust, all as amended from time to time.  In the e vent of any conflict between a provision in this Plan and a provision in the Medical Plan, Life Insurance Policy, or Temple-Inland Health and Welfare Benefits Plan and Trust, the more restrictive provision shall control unless the Plan Administrator in his sole discretion determines otherwise.

8.4     **Governing Law:**  Solely to the extent not preempted by the Code or ERISA (if any), this Plan shall be construed, administered and enforced according to the laws of the State of Texas.

TempleInland/Cleiland 277

TABLE I

TO THE

TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN

PARTICIPATING MEDICAL PLANS

| | |
|---|---|
| WLF-MED0159D | AmCare HMO (Dallas) Group No. 301142. |
| WLF-MED0160D | AmCare HMO (Oklahoma) Group No. 600174 |
| WLF-MED0156D | BCBS of Michigan Blue Care HMO For Disabled Persons Group No. 07849-393 |
| WLF-MED0155D | BCBS of Michigan Community Blue PPO 260 for Disabled Persons Group No. 54607-000 |
| WLF-MED0153D | BCBS of NW NY Blue Advantage POS for Disabled Persons Group No. 00315059/ADV |
| WLF-MED0009D | Blue Cross and Blue Shield of Alabama  Plan for Disabled Persons - Group No. 42395 |
| WLF-MED0013D | Blue Cross Blue Shield Blue Choice POS for Disabled Persons (d/b/a for HMO Georgia, Inc.) Blue Cross - Policy No. 1002803-000-001 |
| WLF-MED0148D | Blue Cross Blue Shield of Central NY BluePoint POS for Disabled Persons Group No. 845020 |
| WLF-MED0075D | Blue Cross Blue Shield of Maryland for Disabled Persons Group Enrollment No. 900619 |
| WLF-MED0152D | Blue Cross Blue Shield of NW NY Community Blue HMO for Disabled Persons Group No. 00315059/NCB |
| WLF-MED0057D | Exclusive Provider Plan for Disabled Persons - Humana Health Plan of Texas, Inc. Groups L 7248 and L7274 |
| WLF-MED0008D | First Priority Health Active Plan for Disabled Persons - Group Master Contract - Group No. 62558 |
| WLF-MED0048D | Kaiser Foundation Health Plan of Colorado, Inc. for Disabled Persons Contract 853-001; 853-002 |
| WLF-MED0046D | Kaiser Foundation Health Plan, Inc (Northern California) Insurance Policy for Disabled Persons Group No. 35855-0000 |
| WLF-MED0044D | Kaiser Foundation Health Plan, Inc (Southern California) - Insurance Policy for Disabled Persons Group No. 105070 |
| WLF-MED0050D | Medica Choice Select POS for Disabled Persons Group No. 62160 |
| WLF-MED0141D | Medica Elect HMO for Disabled Persons Group No. 84689 |
| WLF-MED0164D | Mohawk Valley Plan Scotia, NY for Disabled Persons  Group No. 23822 |
| WLF-MED0111D | Pacificare Health Systems, Inc. Standard 10 Plan for Disabled Persons Group No. 144798 |
| WLF-MED0018D | Temple-Inland Designated Provider Plan for Disabled Persons * – * |
| WLF-MED0127D | Temple-Inland Exclusive Provider Organization Plan VI for Disabled Persons (Aetna Group 606066-17-978) |

Effective: January 1, 2002

T-1

WLF-PKG0006D

TempleInland/Cleiland 278

WLF-MED0033D    Temple-Inland Exclusive Provider Plan for Disabled Persons • •

WLF-MED0027D    Temple-Inland Fee-For-Service Plan for Disabled Persons • • •

WLF-MED0032D    Temple-Inland GateKeeper Preferred Provider Organization Plan for Disabled Persons • •

WLF-MED0022D    Temple-Inland Preferred Provider Organization Plan for Disabled Persons • • •

WLF-MED0128D    Temple-Inland Preferred Provider Organization Plan VI for Disabled Persons (Aetna Group No. 606068-17-977) • • • •

WLF-MED0103D    Temple-Inland's Exclusive Provider Plan I for Disabled Persons (Benefit Planners Group No. 99041-B) • • • •

WLF-MED0129D    Temple-Inland's Exclusive Provider Plan V for Disabled Persons (Benefit Planners Group No. 99041-F) • •

WLF-MED0114D    Temple-Inland's Fee-For-Service Plan I for Disabled Persons (Benefit Planners Group No. 99041-C) • • •

WLF-MED0106D    Temple-Inland's Preferred Provider Organization Plan I for Disabled Persons (Benefit Planners Group No. 99041-A) • • •

WLF-MED0113D    Temple-Inland's Preferred Provider Organization Plan II for Disabled Persons (Benefit Planners Group No. 99041-A) • • •

WLF-MED0063D    Welborn Health Plan of Indiana For Disabled Persons - Group No. 4492

• •    **Prescription Drug Benefits:**

—    Participants who elect and remain covered by a plan marked with ( • ) will also be covered under the Temple-Inland Prescription Drug Plan for Disabled Persons or the Temple-Inland's Prescription Drug Plan I for Disabled Persons to which reference is hereby made for a more complete description of said benefit. This Benefit is not available to Employees who elect a Medical Plan option that provides its own prescription drug benefits.

—    Copayments and other amounts paid by Employees and/or Dependents under the Temple-Inland Prescription Drug Plan for Disabled Persons or the Temple-Inland's Prescription Drug Plan I for Disabled Persons do not count toward deductibles, copayment limits, out-of-pocket limits, or any other payments required under any of the Medical Plans. Likewise, copayments and other amounts paid by Employees and/or Dependents under a Medical Plan do not count toward deductibles, copayments, or any other payments required under the Temple-Inland Prescription Drug Plan for Disabled Persons or the Temple-Inland's Prescription Drug Plan I for Disabled Persons.

• •    **Behavioral Health Benefits:**

—    Participants who elect and remain covered by a plan marked with ( • ) will also be covered under the Temple-Inland Behavioral Health Plan for Disabled Persons or Temple-Inland's Behavioral Health Plan I for Disabled Persons, to which reference is hereby made for a more complete description of said benefit. This Benefit is not available to Employees who elect a Medical Plan option that provides its own mental health/substance abuse benefits.

Effective: January 1, 2002                    T-2                    WLF-PKG0006D

TempleInland/Cleiland 279

– Copayments and other amounts paid by Employees and/or Dependents under the Temple-Inland Behavioral Health Plan for Disabled Persons or Temple-Inland's Behavioral Health Plan I for Disabled Persons do not count toward deductibles, copayment limits, out-of-pocket limits, or any other payments required under any of the Medical Plans. Likewise, copayments and other amounts paid by Employees and/or Dependents under a Medical Plan do not count toward deductibles, copayments, or any other payments required under the Temple-Inland Behavioral Health Plan for Disabled Persons or Temple-Inland's Behavioral Health Plan I for Disabled Persons.

Employee Assistance Program:

– Disabled Persons are also eligible to participate in the Temple-Inland Employee Assistance Program for Disabled Persons, to which reference is hereby made for a more complete description of said benefit. The cost of such coverage is included in the rates for the applicable Medical Plan and it cannot be separately elected or rejected.

Effective: January 1, 2002

T-3

WLF-PKG0006D

**SCHEDULE I**

TO THE

TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN

**ELIGIBLE HOURLY EMPLOYEES**

Hourly employees at the following Inland locations are eligible to participate in the Plan:

Crawfordsville, Indiana
Maysville, Kentucky
Harrington, Delaware
Streetsboro, Ohio

Effective: January 1, 2002                    S-1

SCHEDULE II

TO THE

TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN

**INELIGIBLE EMPLOYEES**

Employees who were employees of Gaylord Container Corporation on February 28, 2002 are not eligible to participate in the Plan.

TempleInland/Cleiland 282

## SUMMARY PLAN DESCRIPTION
## APPENDIX

### IMPORTANT INFORMATION

1.  **Plan Name:** The name of the Plan is Temple-Inland Disability Health and Welfare Plan.

2.  **Plan Sponsor and Employer:** The name and address of the Plan Sponsor and Employer is:

    Temple-Inland Forest Products Corporation
    P.O. Drawer N
    303 South Temple Drive
    Diboll, Texas 75941

    A complete list of the employers sponsoring the Plan may be obtained by participants and beneficiaries upon written request to the Plan Administrator, and is available for examination by participants and beneficiaries at the office of the Plan Administrator. A list will also be made available at any employer facility at which at least 50 employees customarily work within 10 days of a request to the Plan Administrator or Human Resources representative at such facility. Participants and beneficiaries may receive from the Plan Administrator, upon written request, information as to whether a particular employer is a sponsor of the Plan and, if the employer is a Plan Sponsor, the Sponsor's address.

3.  **Employer ID Number:** The Employer identification number assigned by the Internal Revenue Service to the Plan Sponsor is 75-1462427.

4.  **Participating Plan:** This plan is a participating plan in the Temple-Inland Health and Welfare Benefits Plan, a voluntary employees' beneficiary association, and its plan number is 515.

5.  **Type of Welfare Plan:** Group health.

6.  **Claims Administration:** Medical claims and life claims are administered by the Claims Administrator of the applicable Medical Plan or Life Insurance Policy. For fastest service, participants should send any claims to the claims office whose address appears on their member identification card or in the summary plan description of the applicable Medical Plan or Life Insurance Policy.

7.  **Plan Administrator:** The name, business address and business telephone number of the Plan Administrator is:

    Temple-Inland Inc. Benefits Administration Committee
    Temple-Inland Forest Products Corporation
    P. O. Drawer N
    303 South Temple Drive
    Diboll, Texas 75941

    (936) 829-1422

8.  **Agent for Service of Process:** Service of legal process may be made upon the Plan Administrator at the address above or upon the Plan Trustee.

9.  **Plan Trustee:** The Trustee of the Temple-Inland Health and Welfare Benefits Trust is:

    State Street Bank and Trust Company
    One Enterprise Drive
    North Quincy, Massachusetts 02171-2197

Effective: February 28, 2002                    SPD-1                    WLF-PKG0006D

TempleInland/Cleiland 283

10. **Sources of Contributions to the Plan:** The Plan Administrator calculates the amount of contributions required from Participants and/or Employers.

11. **Funding:** Certain of the Medical Plans are insured, while other Medical Plans are self-funded, as described in the summary plan description for the applicable Medical Plan. All assets through which benefits are provided are accumulated in the Temple-Inland Health and Welfare Benefits Trust. A Claims Administrator of a self-funded Medical Plan does not insure this Plan or guarantee benefits under this Plan in any manner. The Life Insurance Policy is insured.

12. **Plan Year:** The Plan Year for purposes of maintaining the Plan's fiscal records is the calendar year (January 1 through December 31).

13. **Qualified Medical Child Support Orders:** A description of the Plan's procedures governing qualified medical child support order (QMCSO) determinations is included in the summary plan description volume under the heading "Temple-Inland Qualified Medical Child Support Order Procedures." You may also obtain a copy of these procedures from the Plan Administrator free of charge.

14. **Statement of ERISA Rights:** As a participant in the Plan named above, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

**Receive Information About Your Plan and Benefits**

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

**Continue Group Health Plan Coverage**

Continue health care coverage for yourself, spouse or dependents if there is a loss of coverage under the Plan as a result of a qualifying event. You or your dependents may have to pay for such coverage. Review this summary plan description and the documents governing the Plan on the rules governing your COBRA continuation coverage rights.

Reduction or elimination of exclusionary periods of coverage for preexisting conditions under your group health plan, if you have creditable coverage from another plan. You should be provided a certificate of creditable coverage, free of charge, from your group health plan or health insurance issuer when you lose coverage under the Plan, when you become entitled to elect COBRA continuation coverage, when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to 24 months after losing coverage. Without evidence of creditable coverage, you may be subject to a preexisting condition exclusion for 12 months (18 months for late enrollees) after your enrollment date in your coverage.

Effective: February 28, 2002              SPD-2              WLF-PKG0006D

TempleInland/Cleiland 284

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

15. **Newborns' and Mothers' Health Protection Act:** Group health plans and health insurance issuers generally may not, under Federal law, restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, Federal law generally does not prohibit the mother's or newborn's attending provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours as applicable). In any case, plans and issuers may not, under Federal law, require that a provider obtain authorization from the plan or the insurance issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours).

16. **Reconstructive Surgery Following Mastectomy:** When a covered individual receives benefits for a mastectomy and decides to have breast reconstruction, based on consultation between the attending physician and the patient, the health plan must cover:

   a.    Reconstruction of the breast on which the mastectomy was performed;

Effective: February 28, 2002                    SPD-3                    WLF-PKG0006D

TempleInland/Cleiland 285

b.    Surgery and reconstruction of the other breast to produce a symmetrical appearance; and

c.    Prostheses and treatment of physical complications in all stages of mastectomy, including lymphedema.

This coverage is subject to the same deductibles, copayments, and coinsurance provisions that apply to other benefits under the Plan.

TempleInland/Cleiland 286

# TEMPLE-INLAND SALARIED RETIREMENT PLAN

## Amended and Restated June 1, 1999

## SUMMARY PLAN DESCRIPTION

## Publication Date:  December 1, 2001

TempleInland/Cleiland 287

**Summary Plan Description**
**Temple-Inland Salaried Retirement Plan**

**TABLE OF CONTENTS**

| Section | | Page |
|---|---|---|
| 1 | Introduction | 1 |
| 2 | Plan Administration | 2 |
| 3 | How the Plan Works | 3 |
| 4 | Special Terms - What They Mean | 4 |
| 5 | Becoming a Participant of the Plan | 7 |
| 6 | Retirement Benefits | 9 |
| 7 | Accrued Benefit | 16 |
| 8 | Vested Benefits | 16 |
| 9 | Payment of Retirement and Termination Benefits | 17 |
| 10 | Death Benefits | 20 |
| 11 | Claim Procedures | 22 |
| 12 | Leaves of Absence and Military Service | 23 |
| 13 | Rights Upon Reemployment | 24 |
| 14 | Loss of Benefit | 26 |
| 15 | Investment of the Trust Fund | 27 |
| 16 | Plan Amendment and Termination | 28 |
| 17 | Your Legal Rights | 30 |
| 18 | Top-Heavy Rules | 32 |
| 19 | Social Security Benefits | 33 |
| 20 | Special Provisions Applicable to Inland Employees Who Were Participants Prior to June 1999 | 33 |
| 21 | Schedule of Participating Employers | 34 |

# SECTION 1 - INTRODUCTION

Your Employer is aware of the need for a comprehensive employee benefits program. It is an important factor in obtaining and keeping qualified people. Because financial security after retirement is important, your Employer adopted the Temple-Inland Salaried Retirement Plan to provide retirement benefits for certain of its salaried employees as included on the attached "Schedule of Participating Employers".

This Summary Plan Description explains the Plan as it applies to all such salaried employees in active service who end their employment on or after June 1, 1999.

Former employees whose employment ended before June 1, 1999, may have certain rights under this Plan. This Summary Plan Description, however, is not intended to explain the Plan as it applies to these employees.

We recommend that you take the time to read this Summary Plan Description carefully. Your retirement plan includes several options from which you may select in your retirement planning. These options will affect such things as when and how your benefits are paid. In order to make full use of these options, it is important that you fully understand them.

Your retirement benefits can only be paid to you if you can be located. Therefore, be sure your Human Resources Department always has your current address. Also, you should read your legal rights in Section 17.

This Summary Plan Description has been prepared as accurately as possible. It outlines a complex and technical legal document (the Plan itself). The resolution of any specific question depends upon the precise terms of the Plan document rather than the explanation in this Summary Plan Description. The information in this booklet describes the major aspects of the Plan as amended and restated as of June 1, 1999, including all amendments made through the date of publication. **In the event of any discrepancy between the terms of the Plan document and this Summary Plan Description, the Plan document, as in effect at the relevant time, will control.**

Copies of the Plan document are available for your inspection and you are encouraged to examine them at the Corporate Benefits office. If you have any questions after reading this Summary Plan Description or if you would like to discuss the details further, your Human Resources Department or the Retirement Committee will be glad to help you.

TempleInland/Cleiland 289

## SECTION 2 - PLAN ADMINISTRATION

**Sponsor:**            This plan is maintained by:

Temple-Inland Forest Products Corporation
303 S. Temple Drive
Diboll, TX 75941
(936) 829-1422

**Plan Administrator:**            The Retirement Committee is the Plan Administrator. The Retirement Committee is appointed by the Board of Directors of Temple-Inland Forest Products Corporation.

c/o:

Temple-Inland Forest Products Corporation
303 S. Temple Drive
Diboll, TX 75941
(936) 829-1422

**Plan Name:**            Temple-Inland Salaried Retirement Plan

**Identification Numbers:**            Employer Number:            75-1462427

Plan Number:            002

**Plan Trustee:**            State Street Bank and Trust Company
P.O. Box 1389
Boston, MA 02104

**Type of Plan:**            Defined Benefit Pension Plan

**Type of Administration:**            Employer Administered

**Agent for Legal Process:**            Service of legal process should be made on the Retirement Committee at the address shown above. Service of legal process may also be made upon the Plan Trustee at the address shown above.

**Other Sponsors:**            See attached "Schedule of Participating Employers" (Employer).

–2–

## SECTION 3 - HOW THE PLAN WORKS

### Normal Retirement Benefit

The Normal Retirement Benefit is payable to each Participant of the Plan who retires on or after age 65. See Section 6 for details.

### Postponed Retirement Benefit

You may continue to work after your Normal Retirement Date and be entitled to receive a Postponed Retirement Benefit. See Section 6 for details.

### Early Retirement Benefit

Early Retirement Benefits are payable if you are a Participant who retires on or after the date you have both (1) attained the age of 55 and (2) completed at least 5 years of Vesting Service. This date will be referred to as your Early Retirement Eligibility Date. See Section 6 for details.

### Disability Benefit

A Disability Benefit is provided to all actively employed Participants who become totally disabled, prior to their Normal Retirement Date. See Section 6 for details.

### Termination of Employment

Employees who leave the Employer prior to Normal Retirement Age of 65 but after completing at least 5 years of Vesting Service are eligible to receive a Vested Benefit. See Section 8 for details.

### Death Benefit in Service

A Death Benefit is payable to the spouse of a vested Participant who dies while still working or to the beneficiary of an unmarried vested Participant who (1) is at least age 55 or (2) has children under age 21, and who dies while still in active employment. See Section 10 for details.

### Cost ·

Your Employer pays the entire cost of the Plan. Contributions are made to the trust fund based on information furnished annually by an independent actuary. Employees are not required nor permitted to contribute to this Plan.

TempleInland/Cleiland 291

# SECTION 4 - SPECIAL TERMS - WHAT THEY MEAN

**It is important to understand the following terms, which are used throughout this booklet.**

## Break in Service

A Break in Service occurs when you leave your Employer, and then are reemployed and your period of termination lasts 12 consecutive months or more. Any approved leave of absence will not cause a Break in Service provided you return to work on or before the date your approved leave ends. An approved leave of absence may not exceed 24 months. A leave of absence for military duty will not cause a Break in Service as long as you return to work while you have reemployment rights under the law. If you do not return to your Employer at the end of an approved leave, you will be considered terminated as of the earliest of:

    (a) the date on which your leave expired;

    (b) the first anniversary of the date your leave began; or

    (c) the date of your retirement, termination, discharge, resignation, or death.

In determining the length of your Break in Service for the above purposes, you should exclude up to the first two years of any absence that is due to maternity or paternity leaves. (Note: You may be required to provide proof of these absences.)

If you are reemployed after you become a Participant or after you have completed one year of Eligibility Service, you will be eligible to participate upon reemployment.

If you are reemployed after a one-year Break in Service, you will not lose credit for your prior Credited and Vesting Service if you were entitled to any vested benefits prior to reemployment. If you were not entitled to any vested benefits, you will lose credit for prior Credited and Vesting Service if the number of your consecutive Breaks in Service equal or exceed 5 years.

## Compensation

Compensation means your earnings from your Employer for services rendered during the calendar year, as reported on your Form W-2 but exclusive of severance pay, stock option income, payments made with respect to performance units, restricted stock, any form of non-cash compensation, allowances, fringe benefits (cash or non-cash), moving expenses, welfare benefits, excess cafeteria plan or solutions credits, insured weekly disability pay, industrial injury compensation, and such other payments or income designated by the Employer. Compensation also includes amounts you contribute to the Section 125 Plan (cafeteria plan) or 401(k) Plan as pretax contributions.

–4–

Compensation in excess of $200,000 (indexed after 2002 for cost of living) is not included.

It should be noted that sales representatives whose aggregate Compensation is based only on commissions are limited in the amount of earnings used under the Plan based upon certain maximum salary grade assumptions.

## Final Average Monthly Compensation

Final Average Monthly Compensation is used to calculate the amount of your retirement benefit. Your Final Average Monthly Compensation is the average of the highest 5 years of your Compensation during the 10 calendar years before your termination of service.

## Average Social Security Wage Base

Average Social Security Wage Base is determined as the average of the Social Security maximum taxable wage base over the 35 year period before your termination of service. This amount is used to calculate the amount of your retirement benefit.

## Credited Service

Credited Service is used to calculate your benefit. Generally speaking, Credited Service is the number of years and completed months from your last date of hire by your Employer to your date of termination or retirement. Nonpaid leaves of absence are excluded, although absences of less than one month and certain absences due to military service will be included.

If you leave your Employer and are later reemployed, you may or may not lose the Credited Service that you had when you left. See Section 13 for your rights upon reemployment.

## Eligibility Service

Eligibility Service determines if you have met the requirements to participate in the Plan. You will receive a year of Eligibility Service for each Eligibility Computation Period in which you complete 1,000 or more Hours of Service. "Eligibility Computation Period" means the 12-month period beginning on your date of hire. If you do not complete 1,000 hours of service in the initial Eligibility Computation Period, the Eligibility Computation Period will become the 12-month period beginning on the first day of each Plan Year (January 1), starting with the Plan Year in which the first anniversary of your date of hire occurs.

TempleInland/Cleiland 293

### Hour of Service

Hour of Service means each hour for which you are paid or entitled to payment by your Employer.

### Participant

You become a Participant of the Plan on the date you become eligible as explained in Section 5 of this booklet.

### Plan Year

The Plan Year is the calendar year beginning on January 1 and ending on December 31.

### Retirement Committee

Retirement Committee means the individuals who are appointed by the Board of Directors of Temple-Inland Forest Products Corporation and are responsible for the administration and interpretation of the Plan.

### Vesting Service

Vesting Service is used to determine if you are eligible for a benefit and will not necessarily be the same as your Credited Service. Once you have completed 5 or more years of Vesting Service, you have earned the right to receive a retirement benefit. Vesting Service generally means your total period of service in years from your last date of hire. Up to the first 12 months of any approved leave of absence is included as Vesting Service. The portion of any absence that exceeds 12 months is not included in your Vesting Service unless it was included in your Credited Service.

If you leave your Employer without having 5 years of Vesting Service and are later reemployed, you will lose the Vesting Service you had when you left if you are gone longer than 5 years. See Section 13 for your rights upon reemployment.

TempleInland/Cleiland 294

# SECTION 5 - BECOMING A PARTICIPANT OF THE PLAN

## Eligible Employees

You are eligible to become a Participant of the Plan if you are a salaried employee of your Employer. However, you are not eligible if you are: (1) a leased employee, (2) an employee covered by a collective bargaining agreement and such agreement does not provide that you are eligible to be a Participant of the Plan, (3) a Participant (or will be a Participant) in any other qualified defined benefit plan maintained by the Employer, or (4) a nonresident alien with no U.S. source income.

Please note that if you are with a newly acquired branch or division, you may not be covered under the Plan. Check with the Retirement Committee to see if your branch or division is covered under the Plan.

## Becoming a Participant

Eligible employees become Participants after completing a year of Eligibility Service without incurring a Break in Service.

Participation begins automatically on the first day of the month on or next following the date the requirements are met, provided you are in active service of your Employer at that time. If you are not in active service, your participation will not begin until the first day of the month on or after your return. You are not required to take any action in order to participate.

For example, you will become a Participant in the Plan on the first day of the month after your first anniversary of your date of hire provided you worked 1,000 or more Hours of Service in that year. Otherwise you will become a Participant as of January 1 next following the 12-month period ending December 31 that you completed 1,000 or more Hours of Service.

## Change in Status

If you are not an eligible employee when you are hired but later become an eligible employee, you will become a Participant of the Plan if you have completed a year of Eligibility Service without incurring a Break in Service. A Participant who becomes an ineligible employee will stop earning benefits under the Plan during the period of ineligibility.

## Transfers While Employed

**Transfers Between Participating Sponsors:** If you transfer directly between any of the Sponsors that have adopted and are participating in this Plan, you will continue to be a Plan Participant as if you had not transferred.

—7—

**Transfers Out of the Plan**:  If you transfer directly to a subsidiary or other controlled group member of **Temple-Inland Inc.** that has not adopted this Plan, you will no longer be an active Plan Participant.  In this case, you will be eligible for a retirement plan benefit that equals the vested Accrued Benefit you have earned to your date of transfer. If you are not 100% vested on your date of transfer, your later service will count toward your Vesting Service, but not your Credited Service.

**Transfers Into the Plan**:  If you were a salaried employee of a subsidiary or other controlled group member of Temple-Inland Inc. that is not a Participating Employer under this Plan, generally, the time you worked for the subsidiary or other controlled group member will count toward your Vesting and Credited Service.  However, any benefits, which you may be entitled to receive under any retirement plan of the non Participating Employer, will be subtracted from your benefits under this Plan.

**TempleInland/Cleiland 296**

## SECTION 6 - RETIREMENT BENEFITS

### Normal Retirement

Your Normal Retirement Date is the first day of the month falling on or next following the date you reach age 65.

**Normal Retirement Benefit:** If you retire on your Normal Retirement Date, you will receive a monthly benefit equal to the larger of the amounts determined under Formula 1 or Formula 2 shown below:

### Normal Retirement Formula 1

| | |
|---|---|
| **Part A** | .95% x Final Average Monthly Compensation x years of Credited Service *up to 35 years* |
| | plus |
| **Part B** | .65% x Final Average Monthly Compensation in excess of Average Social Security Wage Base x years of Credited Service *up to 35 years* |
| | plus |
| **Part C** | .80% x Final Average Monthly Compensation x years of Credited Service *over 35 years* |
| | equals |
| | Your monthly benefit amount |

### Normal Retirement Formula 2

$16 x total years of Credited Service

equals

Your monthly benefit amount

### Normal Retirement Benefit Example:

Suppose you were hired on January 1, 1971, and retired at age 65 effective December 31, 2000 with a Final Average Monthly Compensation of $3,000. Your Monthly Average Social Security Wage Base would be $2,925.

### Formula 1 Calculation

| | |
|---|---|
| **Part A** | .95% x $3,000 x 30 years of Credited Service --- $855.00 |
| | plus |
| **Part B** | .65% x $75* x 30 years of Credited Service --- $14.70 |
| | equals |
| | monthly benefit amount --- $869.70 |

−9−

*This $75 is the difference between Final Average Monthly Compensation and the Average Social Security Wage Base ($2,925 for 2000).

*Please note*, since you did not work in excess of 35 years in our example, Part C of the plan formula does not apply; therefore, it is not used to calculate your retirement benefit.

**Formula 2 Calculation**

$16 x 30 years of Credited Service

equals

monthly benefit amount --- $480.00

**Larger of Formula 1 and Formula 2 = $869.70**

**If you are not married when you retire** and do not choose another method of benefit payment, your monthly Normal Retirement Benefit (as calculated under the above example) payable for your lifetime would be $869.70.

**If you are married when you retire** and do not choose another method of benefit payment with your spouse's consent, your monthly Normal Retirement Benefit would be payable under the Qualified Joint and 50% Survivor Option. Your life only benefit would be modified using the Qualified Joint and 50% Survivor Option factor. Let us assume a factor of 90% in our example:

| Your Monthly Life Only Benefit | | Qualified Joint and 50% Survivor Option Factor | | Your Monthly Age 65 Qualified Joint and 50% Survivor Benefit |
|---|---|---|---|---|
| $869.70 | X | .90 | = | $782.73 |

You would receive $782.73 per month for the rest of your life. After your death, your qualified surviving spouse would receive 50% of the monthly benefit, or $391.37.

**Postponed Retirement**

If you continue working past your Normal Retirement Date, your monthly Postponed Retirement Benefit will be equal to the benefit you have accrued as of your date of termination of service which includes any additional benefits earned beyond your Normal Retirement Date.

TempleInland/Cleiland 298

### Early Retirement

Your Early Retirement Eligibility Date is the first day of the month on or following the date you have both (1) attained age 55 and (2) completed 5 years of Vesting Service.

### Early Retirement Benefit

If you elect to receive your Early Retirement Benefit immediately on or after your Early Retirement Eligibility Date, you will receive a monthly benefit equal to the larger of the amounts determined under Formula 1 or Formula 2 shown below:

### Formula 1 Calculation

**Part A**      .95% x Final Average Monthly Compensation x years of Credited Service *up to 35 years*, multiplied by the Early Retirement Adjustment Factor specified in Schedule A below based upon your attained age (in years and months) on your Early Retirement Date and based upon your number of years of Vesting Service as of your Early Retirement Date

plus

**Part B**      .65% x Final Average Monthly Compensation in excess of Average Social Security Wage Base x years of Credited Service *up to 35 years*, multiplied by the Early Retirement Adjustment Factor specified in Schedule B below based upon your attained age (in years and months) on your Early Retirement Date and based upon your Social Security Retirement Age

plus

**Part C**      .80% x Final Average Monthly Compensation x years of Credited Service *over 35 years*, multiplied by the Early Retirement Adjustment Factor specified in Schedule A below based upon your attained age (in years and months) on your Early Retirement Date and based upon your number of years of Vesting Service as of your Early Retirement Date

equals

Your monthly benefit

TempleInland/Cleiland 299

### Formula 2 Calculation

$16 x total years of Credited Service multiplied by the Early Retirement Adjustment Factor specified in Schedule A below based upon your attained age (in years and months) on your Early Retirement Date and based upon your number of years of Vesting Service as of your Early Retirement Date

equals

Your monthly benefit amount

**TempleInland/Cleiland 300**

## SCHEDULE A

| Attained Age on Early Retirement Date | Early Retirement Adjustment Factor If Vesting Service on Early Retirement Date Is: | |
|---|---|---|
| | Less than 20 Years | 20 Years or More |
| 65 | 1.000 | 1.000 |
| 64 | .970 | 1.000 |
| 63 | .940 | 1.000 |
| 62 | .910 | 1.000 |
| 61 | .880 | .940 |
| 60 | .850 | .880 |
| 59 | .790 | .820 |
| 58 | .730 | .760 |
| 57 | .670 | .700 |
| 56 | .610 | .640 |
| 55 | .550 | .580 |

## SCHEDULE B

| Attained Age on Early Retirement Date | Early Retirement Adjustment Factor If Your Social Security Retirement Age Is: | | |
|---|---|---|---|
| | 65 | 66 | 67 |
| 65 | 1.000 | 1.000 | 1.000 |
| 64 | 1.000 | 1.000 | .923 |
| 63 | 1.000 | .923 | .846 |
| 62 | .923 | .846 | .769 |
| 61 | .846 | .769 | .730 |
| 60 | .769 | .730 | .692 |
| 59 | .730 | .692 | .653 |
| 58 | .692 | .653 | .615 |
| 57 | .653 | .615 | .576 |
| 56 | .615 | .576 | .529 |
| 55 | .576 | .529 | .486 |

Straight line interpolation between the next higher age and the next lower age shall be used in Schedules A and B above to determine the factor that applies to a Participant whose attained age in years and months on his Early Retirement Date is not a whole number of years.

– 13 –

TempleInland/Cleiland 301

**If you are not married when you retire** and do not choose another method of payment, your monthly Early Retirement Benefit (as calculated under the above formulas) will be payable for your lifetime.

**If you are married when you retire** and do not choose another method of payment with your spouse's consent, a Joint and 50% Survivor Option factor based on your age and the age of your spouse will reduce your lifetime benefit. See Section 9 for other payment options.

If your Early Retirement Benefit does not start immediately, you may have death benefit protection for your beneficiary in the event that you should die before your payments are scheduled to start. See **Death After Termination and Before Payments Start** in Section 10.

### Disability Retirement

If you become disabled while you are employed by your Employer after you have become a participant in the Plan, you may apply for Disability Retirement. To be considered totally disabled, you must provide medical proof, satisfactory to the Retirement Committee, that you are prevented from engaging in any regular remunerative employment or occupation for the Employer and that you have been certified as totally disabled by the Social Security Administration or the Employer's insured long term disability program. Also, you must make written application for the payment of a Disability Benefit.

No disability benefit is payable if your disability results from any of the following causes:

1. use or misuse of alcohol, drugs, intoxicants or other controlled substances;

2. injury or disease contracted, suffered or incurred while engaged in, or which resulted from having engaged in, a criminal enterprise;

3. an intentionally self-inflicted injury;

4. injury or disease sustained while serving in any armed forces and which results in receiving any governmental pension or other regular governmental allotment for such disability and prevented a return to employment with the Employer; or

5. injury or disease sustained which was diagnosed or discovered subsequent to the date your employment was terminated.

TempleInland/Cleland 302

**Disability Retirement Benefit:** If your employment ended as a result of disability, you will be eligible to receive a Disability Retirement Benefit payable on your Normal Retirement Date. You will not be eligible for an Early Retirement Benefit.

Your monthly Disability Retirement Benefit is equal to the anticipated monthly retirement income you would have been eligible to receive if you had continued working until your Normal Retirement Date at the same rate of Compensation you received in the calendar year prior to your termination of service.

Your monthly Disability Retirement Income is payable for your lifetime. However, other forms of payment are available, including the Qualified Joint and 50% Survivor Option for married Participants.

If you become eligible for a Disability Retirement Benefit but die before your Normal Retirement Date and before you have recovered from your disability, **Death After Disability and Before Payments Start** in Section 10 describes the death benefit that may be payable on your behalf.

### Recovery from Disability

If you recover from disability prior to your Normal Retirement Date, you will not be entitled to a Disability Retirement Benefit. If you do not return to the active service of the Employer, you will still qualify for a retirement benefit if you meet the necessary requirements to qualify for a Vested Benefit (as described in Section 8) at the date of your recovery from disability, assuming you had worked until the date of your recovery. Your Vested Benefit will begin at age 65 or you may elect a reduced amount beginning after you have met the eligibility requirements for an Early Retirement Benefit.

TempleInland/Cleiland 303

## SECTION 7 - ACCRUED BENEFIT

Your **Accrued Benefit** is equal to the benefit you have accrued as of your date of termination of service.

Your Accrued Benefit is payable in the form of a monthly Life Only Option subject to certain requirements if you are married (see Section 9.) This benefit commences on your Normal Retirement Date.

## SECTION 8 - VESTED BENEFITS

If you leave your Employer for any reason before your Normal Retirement Age of 65, you may receive a **Vested Benefit**. The Vested Benefit is the portion of your Accrued Benefit (as described in Section 7), which is vested (owned by you). Your Accrued Benefit will vest according to the following schedule:

| Years of Vesting Service | Percentage Vested |
|---|---|
| Less than 5 | 0% |
| 5 or more | 100% |

Your monthly Vested Benefit will normally start on your Normal Retirement Date. However, you may elect to start receiving your Vested Benefit after termination of your service beginning as early as age 55. If your payments start early, your benefit will be reduced to take into account the early commencement of payments as described in Section 6 under **Early Retirement Benefit**.

If your Vested Benefit does not start immediately, you may be entitled to death benefit protection for your beneficiary in the event that you should die before your payments are scheduled to start. See **Death After Termination and Before Payments Start** in Section 10.

Your vested benefit is payable under the Life Only Option, subject to certain requirements if you are married. See Section 9 for other payment options.

– 16 –

## SECTION 9 - PAYMENT OF RETIREMENT AND TERMINATION BENEFITS

The amount of your Accrued Benefit is payable under the Life Only Option if you are single, and the Joint and 50% Survivor Option if you are married, as described below. Other forms of payment are available. The amount of retirement income that is payable under each form of payment is different. This is because payments may be spread out over different periods of time under each of the forms of payment. Naturally, the longer the time period over which the retirement income is expected to be paid, the smaller the monthly amount will be.

In determining the amount of retirement income that is payable under each form of payment, it is assumed that each person who may receive payments is in good health and has a normal remaining life expectancy. Based on this assumption, all of the forms of payment have the same starting value based upon the average time that each person is expected to live.

### Available Forms of Payment

You may elect to receive your retirement benefit in one of the following forms of payment. The Plan specifies the assumptions to be used to convert to these alternative forms of payment. You can check with the Retirement Committee for the specific factors that apply to you. You, and your spouse if you are married, must waive the automatic form of payment in order to choose one of the other options.

**Life Only Option:** *(This is the automatic form for single participants.)* Under this form of payment, you receive a monthly benefit that will be payable to you for as long as you live. No additional payments will be paid after your death even if you should die after receiving only one payment.

**5 Years Certain and Life Option:** Under this form of payment, you receive a monthly benefit that will be payable to you for as long as you live, but your retirement income payments will be made for a minimum of 5 years. That is, if you die before you have received payments for 5 years, the same monthly benefit that you were receiving will be continued to a person that you designate as your beneficiary for the remainder of the 5 years. If you die after you have received payments for 5 years, no additional payments will be made after your death. You may also elect this option with payments guaranteed for a period certain of either 10, 15 or 20 years.

**Joint and Survivor Option:** Under this form of payment, you receive a monthly benefit that will be payable to you for as long as you live. If the person that you have named as your joint pensioner is still living at the time of your death, 50%, 75% or 100% (specified by your election) of the monthly income that you were receiving will be paid to that person for as long as he or she lives. If your joint pensioner is not living at the time of your death, no additional payments will be made after your death. When the percentage you elected is 50% and the joint pensioner is your spouse, this form is known as the Qualified Joint and 50% Survivor Annuity and is the automatic form of payment to married participants.

– 17 –

TempleInland/Cleiland 305

The following summary lists some of the advantages and disadvantages of each method of payment:

| Method | Advantages | Disadvantages |
|---|---|---|
| Life Only | Usually the largest income. | No additional payments after death. |
| 5 Years Certain and Life<br><br>(You may also elect a period certain of 10, 15, or 20 years and monthly payments are adjusted accordingly.) | Provides for payments for at least 5 years. | Payments are usually smaller than under Life Only method.<br><br>Payments stop at the end of 5 years if your death occurs before you have received payments for 5 years.<br><br>No additional payments if your death occurs after you have received payments for 5 years. |
| Joint and Survivor<br><br>(A percentage of the amount that you were receiving, which is either 50%, 75% or 100% specified by you, is payable to your joint pensioner after your death.) | Payments will be made for as long as either you or your designated joint pensioner is living. | Payments are usually smaller than under Life Only method.<br><br>If you elect a percentage less than 100%, only a portion of the amount you were receiving is payable to your joint pensioner after your death. |

### Important Factors in Deciding Upon the Form of Payment

Before choosing the way you want to receive your retirement income, you need to give serious consideration to your own special circumstances. You should consider such things as your own health and, if applicable, the health of your wife or husband, and what will happen to your dependents after your death. You should also consider any additional money that will be available to provide for the security of your family after your death from sources such as other employer-sponsored plans, Social Security, and your own savings and insurance.

### Electing Form of Payment

Before your payments start, you will be given information to help you decide on the form of payment that you want. If you have questions regarding the forms of payment or want additional information, you may request the Retirement Committee to provide you with additional information. Requests for any specific detailed information should be made in writing.

After you make your decision, your election must be properly completed and filed with the Retirement Committee no earlier than 90 days before the date your retirement income payments actually start and no later than your filing deadline date. Your filing deadline date is the date your retirement income payments are scheduled to start or, if later, the date 90 days after the date you were furnished with a description of the benefits you are entitled to receive. If you should request any specific detailed

– 18 –

additional information concerning your benefits, your filing deadline date will be extended, if applicable, to the date that is 90 days after the date you are furnished such information.

If you do not file your election with the Retirement Committee before the date your retirement benefits are scheduled to start, the commencement of your retirement benefit payments will be delayed until your election is completed and filed with the Retirement Committee. If you do not indicate a specific form of payment, you will be considered to have elected the **Joint and 50% Survivor Option** if you are married or the **Life Only Option** if you are not married.

### Protected Rights of Your Spouse

Under federal law, your husband or wife has a protected right to receive a benefit payable for life if you die after your benefit payments have started. He or she may waive this protected right, however. What this means is that, if you are married, you must have the consent of your husband or wife before you can receive payment of your benefit in the form that you want. This consent will not be required if at least 50% of the monthly payments you were receiving will be continued after your death to your surviving husband or wife for as long as he or she lives. If the consent of your husband or wife is required, it must be in writing, must be witnessed by a notary public or a Plan representative, and must be filed with the Retirement Committee at the same time you file your election as described above. If you elect an option and have the proper consent of your husband or wife, but you later want to change the person or persons you had named as your beneficiary or joint pensioner under that option or want to make any other changes in the option, it will normally be necessary for you to again obtain the consent of your husband or wife.

### Changing Election

You may change your option election at any time before payments begin. No changes are permitted once your retirement income payments have commenced.

### Small Benefits

If the lump-sum value of your vested Accrued Benefit is $10,000 or less, you may elect to receive the value of your vested benefit in a single lump-sum cash payment. If the lump-sum value of your vested Accrued Benefit is $5,000 or less, the Plan will automatically pay the value of your vested benefit in a single lump-sum cash payment.

– 19 –

TempleInland/Cleiland 307

## SECTION 10 - DEATH BENEFITS

### Benefit If You Die While Employed

If you are a married employee of your Employer who is vested in the plan and you die prior to the date that your benefit payments commence, a death benefit will be payable to your surviving spouse. The amount of benefit payable to your spouse under these circumstances would be the same amount she or he could have received if you had terminated employment on the day before death occurred and you had elected the Joint and 50% Survivor Option as your form of payment with your spouse as the designated beneficiary to begin (i) on your earliest retirement date under the Plan, or (ii) immediately after your death, if later.

**Please note** that this benefit only applies if you are married and vested at the date of your death.

If you are an unmarried employee of your Employer who is vested at date of death and has attained age 55 and you die prior to the date that your benefit payments commence, your designated beneficiary will receive a monthly income payable for a period certain of 5 years with payments beginning on the first day of the month following your death. The amount of the monthly payments is an amount equal to the monthly retirement income that would have been payable as your Early Retirement Benefit (see Section 6) if you had elected the 5 Years Certain and Life Option. If you are an unmarried employee of your Employer who is vested and you die before age 55, a monthly death benefit is also payable for a period certain of 5 years to any surviving children who have not attained age 21 prior to the date you would have attained age 55.

**Please note** that this benefit only applies if you are unmarried and vested at the date of your death.

### Death After Disability and Before Payments Start

If you leave your Employer because of disability and are eligible for a Disability Retirement Benefit under Section 6 and you die before your Normal Retirement Date and before you have recovered from your disability, a death benefit may be payable on your behalf. Your death benefit will be determined and payable in the same manner as though you had been an active employee working during the time of your disability and you had died as an active employee.

### Death After Termination and Before Payments Start

If you leave your Employer with a vested right to your Accrued Benefit and payment of your Vested Benefit will not start until some later date, you may be entitled to death benefit protection during the period after you left your Employer and before payment of

– 20 –

your Vested Benefit starts. If you die during this period and have a surviving spouse at the date of your death or have attained age 55, the amount which would have been used to provide your Vested Benefit will be used to provide your beneficiary with a benefit at the date of your death.

This death benefit will be payable in the same manner as the death benefit that is payable to the beneficiary of a Participant whose death occurs while actively employed. Of course, if you receive a lump-sum settlement at termination, no death benefit protection will be available.

### Death After Retirement

Whether or not a benefit will be payable to your beneficiary upon your death after retirement depends on the form of retirement income you were receiving. Each form provides different protection for your spouse or other beneficiary. In many cases there will not be any additional payments due after your death. See Section 9 for a description of the different forms of payment that are available.

TempleInland/Cleiland 309

## SECTION 11 - CLAIM PROCEDURES

If you wish to file a claim for benefits under the Plan, the Retirement Committee will supply you with all the forms necessary for the proper filing of your claim. You should contact your Human Resources Department for these forms.

It is your responsibility to inform the Retirement Committee of any change in address.

If you apply for a benefit and all or part of it is denied, the Retirement Committee will notify you by written statement within 90 days after the receipt of your claim of either (1) reasons for such denial, or (2) a statement indicating that an extension of time to 180 days is needed to process your claim. This statement will be mailed by certified or registered mail to the Participant's last known mailing address.

When you receive this initial statement from the Retirement Committee, it will contain:

- the specific reason(s) for the denial of benefits;

- a specific reference to the pertinent provisions of the Plan upon which the denial is based;

- a description of any additional material or information that is needed to process your claim, if any; and

- an explanation of any further review or appeal procedure on your part.

If you decide to appeal the Retirement Committee's decision, you must do so by written application within 60 days after the receipt of the above written statement from the Retirement Committee. You may request to appear personally to give further evidence and to review the documents.

The Retirement Committee will notify you by written statement within 60 days of the receipt of your appeal of either (1) a final decision on the matter, or (2) a statement indicating that an extension to 120 days is needed to process your claim. This notice will be sent by certified or registered mail and delivered to the participant's known address.

The Retirement Committee's decision on an appeal will be final. Once the above appeal process has been followed, there will be no further appeal on any ruling by the Retirement Committee.

TempleInland/Cleiland 310

## SECTION 12 - LEAVES OF ABSENCE AND MILITARY SERVICE

Any leave of absence approved by your Employer will not terminate your employment if you return to work on or before the date that your approved leave time ends.  Your leave of absence cannot exceed 24 months except for military service as described below.  If you do not return to work before the end of your leave time, your employment will be considered terminated as of the earlier of:  (1) date that your leave time ends or (2) the first anniversary of the date your leave began.  However, if you should retire, resign, be discharged, or terminate your employment for any other reason before the end of your leave time, your employment will be considered terminated as of the date of your retirement, resignation, discharge, or other termination.

If you leave your Employer because of military service, your employment will not be terminated if you return to work with your Employer within the period of time that you have reemployment rights under Federal law.  Contributions, benefits and service credit with respect to qualified military service will be provided as required by law.

TempleInland/Cleiland 311

## SECTION 13 - RIGHTS UPON REEMPLOYMENT

If you leave your Employer and are later reemployed, you may be treated under the Plan as a new employee or you may start participating immediately and have your prior years of Credited Service and Vesting Service restored. Your rights depend upon the length of your prior service and the length of your absence. Briefly, the rules which apply to absences are:

- If you return to work within one year after you left, you will be treated as though you had been on an approved leave of absence.

- If it is longer than a year before you return to work, you will become a Participant immediately and your prior years of Credited Service and Vesting Service will be restored if either of the following conditions apply:

    ◆ You are a vested participant when you leave (see Section 8),

    ◆ You had not completed 5 years of Vesting Service when you left but you were gone for less than 5 years.

- If neither of the above conditions applies, you will be treated as a new employee and only your Credited Service and Vesting Service after you return to work will be counted.

### Reemployment After Receiving Distribution

If you were vested in your Accrued Benefit when you left and you received the value of your Accrued Benefit in a lump-sum payment, your prior years of Credited and Vesting Service will still be restored but the value of your Accrued Benefit when you later retire or terminate your employment will be reduced by the value of the lump-sum payment that you received.

If you are rehired and are receiving monthly retirement benefit payments at the time of your reemployment, your payments will normally be suspended during your period of full-time reemployment. Your prior years of Credited Service and Vesting Service will be restored, but your Accrued Benefit at your later retirement or termination will be reduced to reflect the payments you have already received.

**TempleInland/Cleiland 312**

### Special Rules for Maternity and Paternity Absences

A Qualified Maternity or Paternity Leave refers to an approved absence from work because:

- You are pregnant,
- You or your spouse give birth to a child,
- You adopt a child, or
- You need to care for your child for a period of time following birth or adoption.

A part (up to 12 months) of a Qualified Maternity or Paternity Leave may be included as Vesting Service. If your employment should be terminated before you return to work, you may exclude up to the first two years of such absence in determining the length of your absence.

For example: You have been with your Employer for 3 years. On March 1, 1999, you go on Qualified Maternity or Paternity Leave. You do not return to work until December 1, 2005. The first 2 years of your absence, that is, the period beginning March 1, 1999, and ending March 1, 2001, is not counted when determining the length of time that you were absent. When you return on December 1, 2005, the length of your absence is considered to be only 4 years and 9 months, which is less than 5 years, so you do not lose your prior Credited Service and Vesting Service.

– 25 –

TempleInland/Cleiland 313

## SECTION 14 - LOSS OF BENEFIT

The Plan is a valuable tool in planning for your retirement years. As you work for your Employer, you continue to build years of Credited Service and Vesting Service. Obviously, the longer you work for your Employer, and receive more pay, the greater your Accrued Benefit becomes.

### Termination

If your employment with your Employer ends before your benefit is vested, you will not receive any benefits under the Plan.

### Change of Address

If you leave your Employer and have a Vested Benefit under the Plan, you need to keep the Retirement Committee informed of your current mailing address so your checks may be mailed to you. If there is any doubt as to whether or not you are receiving your checks, you will be notified by mail at your last known address in the Retirement Committee's records that your checks will be stopped until you provide evidence you are still alive and your checks are being sent to the proper mailing address. If your checks are stopped but are started again at a later date, you will be entitled to a make-up payment equal to the sum of the checks you did not receive.

### Loss of Service

You may lose the Credited Service and Vesting Service you have earned if you leave your Employer after becoming a Participant in the Plan and are later reemployed. Section 13 describes the conditions that may cause you to lose this service.

### Death

If you die while an active Participant and before you (1) have a Vested Benefit or (2) attain age 55 if you are single without any children under age 21, no benefits are payable from the plan.

### Non-Assignability of Benefits, Qualified Domestic Relations Orders (QDROs)

The Plan's assets are used exclusively to provide benefits to you and your survivors while the Plan continues. They cannot be used for any other purpose. This applies both to your Employer and to you, because you cannot assign, transfer or encumber your benefits nor use them as collateral for a loan.

However, plans such as ours must obey certain court orders (such as divorce decrees) that require a percentage of your benefits to be paid to your spouse, former spouse, child, or dependent. If such an order is a **"Qualified Domestic Relations Order"**

TempleInland/Cleiland 314

**(QDRO)** from a court, any such payments will not violate this rule. In order to be "qualified," the court order has to meet certain standards. You should understand that the Plan has no discretion in these matters. The Plan must obey the order of the court. You may obtain a free copy of the Plan's QDRO procedures from the Corporate Benefits office.

## SECTION 15 - INVESTMENT OF THE TRUST FUND

The contributions to the Plan are deposited and held in the Temple-Inland Master Retirement Trust. Current contributions by your Employer to the Plan are being deposited with the Plan Trustee, and are invested under the terms of a trust agreement between your Employer and the Trustee. Benefit payments are currently being paid by the Trustee from the assets held in the trust fund.

TempleInland/Cleiland 315

## SECTION 16 - PLAN AMENDMENT AND TERMINATION

No amendment to this Plan can retroactively reduce benefits already accrued by you, except when required to comply with an act of Congress or an Internal Revenue Service rule. Although your Employer intends the Plan to be permanent, it reserves the right to amend or to terminate the Plan at any time. Upon termination of the Plan, you will become 100% vested in your current Accrued Benefit. However, benefits will be provided only by the assets of the Trust Fund at the time of Plan termination and ordinarily no further contributions will be made. The assets will be distributed in a manner approved by the Internal Revenue Service and in accordance with rules administered by the Pension Benefit Guaranty Corporation (PBGC).

### Distributions in Event of Plan Termination

In the event that the Plan should be terminated, annuities may be purchased from an insurance company to provide the benefit to which you are entitled. However, small benefits with a value of $5,000 or less may be paid in a lump sum.

The Retirement Committee expects the assets of the Plan to be sufficient to fund your retirement benefits. However, if, on termination, there are not sufficient assets to fund the Accrued Benefits of all Participants, the assets will be allocated according to the following priorities:

First, to that portion of the Accrued Benefits derived from voluntary contributions, if any;

Next, to that portion of the Accrued Benefits derived from mandatory contributions, if any;

Next, equally to:

(1) Retired or terminated participants who started receiving benefits at least three years prior to Plan termination; and

(2) Beneficiaries of any deceased, retired or terminated participants who started commencement of benefits at least three years prior to Plan termination; and

(3) Participants who could have retired (i.e., met eligibility requirements for Normal or Early Retirement) but did not receive payment of benefits at least three years prior to Plan termination or beneficiaries of such participants who could have retired but did not at least three years prior to Plan termination;

Next, all benefits guaranteed by the Pension Benefit Guaranty Corporation (PBGC), if any (see next subsection);

Next, all vested (determined prior to termination) benefits not guaranteed by PBGC.

– 28 –

Lastly, all other Accrued Benefits.

If there are assets remaining after all the benefits in the above priorities have been paid in full, the remaining assets will be distributed to the Employer.

### Benefits Insured by PBGC

Your pension benefits under this plan are insured by the Pension Benefit Guaranty Corporation (PBGC), a federal insurance agency. If the plan terminates (ends) without enough money to pay all benefits, the PBGC will step in to pay pension benefits. Most people receive all of the pension benefits they would have received under their plan, but some people may lose certain benefits.

The PBGC guarantee generally covers: (1) Normal and early retirement benefits; (2) disability benefits if you become disabled before the plan terminates; and (3) certain benefits for your survivors.

The PBGC guarantee generally does not cover: (1) Benefits greater than the maximum guaranteed amount set by law for the year in which the plan terminates; (2) some or all of benefit increases and new benefits based on plan provisions that have been in place for fewer than 5 years at the time the plan terminates; (3) benefits that are not vested because you have not worked long enough for the company; (4) benefits for which you have not met all of the requirements at the time the plan terminates; (5) certain early retirement payments (such as supplemental benefits that stop when you become eligible for Social Security) that result in an early retirement monthly benefit greater than your monthly benefit at the plan's normal retirement age; (6) non-pension benefits, such as health insurance, life insurance, certain death benefits, vacation pay, and severance pay.

Even if certain of your benefits are not guaranteed, you still may receive some of those benefits from the PBGC depending on how much money your plan has and on how much the PBGC collects from employers.

For more information about the PBGC and the benefits it guarantees, ask your plan administrator or contact the PBGC's Technical Assistance Division, 1200 K Street N.W., Suite 930, Washington, D.C. 20005-4026 or call 202-326-4000 (not a toll-free number). TTY/TDD users may call the federal relay service toll-free at 1-800-877-8339 and ask to be connected to 202-326-4000.

Additional information about the PBGC's pension insurance program is available through the PBGC's website on the Internet at http://www.pbgc.gov.

– 29 –

TempleInland/Cleiland 317

## SECTION 17 - YOUR LEGAL RIGHTS

If you believe that your rights under the Plan have been violated, you have the right to bring legal action against the Plan in a court of law. The Retirement Committee is the agent named to receive service of legal process. The Trustee may also receive service of legal process.

As a participant in the Temple-Inland Salaried Retirement Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

### Receive Information About Your Plan and Benefits

Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure room of the Pension and Welfare Benefit Administration.

Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies.

Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

Obtain a statement telling you whether you have a right to receive a pension at normal retirement age (age 65) and if so, what your benefits would be at normal retirement age if you stop working under the plan now. If you do not have a right to a pension, the statement will tell you how many more years you have to work to get a right to a pension. This statement must be requested in writing and is not required to be given more than once every twelve (12) months. The plan must provide the statement free of charge.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise

TempleInland/Cleiland 318

discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a pension benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits, which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the plan's decision or lack thereof concerning the qualified status of a domestic relations order or medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

TempleInland/Cleiland 319

## SECTION 18 - TOP-HEAVY RULES

The Internal Revenue Code contains a test that must be performed every year on qualified plans such as this one. The test was designed to ensure that all employees benefit from the Plan on a fair and equitable basis. In general, if key employees (owners, shareholders, highly compensated employees, etc.) are entitled to more than 60% of the benefits, the Plan is determined to be "Top Heavy".

This Plan is not currently top-heavy but could become top-heavy in some future year. Therefore, the Department of Labor requires that these top-heavy rules be included in this booklet.

### Minimum Benefit

If the Plan is top-heavy, your Accrued Benefit can never be less than your Minimum Benefit. Your Minimum Benefit is 2% of your highest 5-year average monthly compensation multiplied by the number of your years of Vesting Service, up to a maximum of 10 years, that you earned during Plan Years that the Plan is top-heavy.

If you are a participant in another plan maintained by your Employer, the Minimum Benefit may be provided in or combined with the benefit under that plan. If the other plan is a defined contribution plan, a contribution equal to 5% of compensation will equal the 2% per year benefit accrual.

### Minimum Vesting

In the first year this Plan becomes top-heavy, the vesting schedule will switch from the one described in Section 8 to the one below:

| Years of Vesting Service | Percentage Vested |
|---|---|
| Less than 2 years | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 or more | 100% |

This vesting schedule will remain in effect until the Plan is no longer top-heavy. However, if you have three or more years of Vesting Service when the Plan ceases to be top-heavy, the above Minimum Vesting schedule will continue to apply to you. If you have two but less than three years of Vesting Service, you will continue to be 20% vested until your vested percentage under Section 8 is greater.

– 32 –

TempleInland/Cleiland 320

## SECTION 19 - SOCIAL SECURITY BENEFITS

Retired participants can start receiving Social Security benefits as early as age 62. Your retirement income under the Plan will not in any way limit the amount of Social Security benefit that you are eligible to receive.

Social Security changes from time to time, so it is impossible to tell exactly how much you will receive until you apply for benefits. Your nearest Social Security Administration Office can estimate what your benefit may be when you retire.

It is best to apply for Social Security three months in advance of your retirement, or if later, within three months of the date you want payments to commence. When you apply, you should take your birth certificate as proof of your age. You might need to show your marriage certificate. It is also helpful to take your W-2 form from the year before. Do not put off applying because you do not have these three things. Social Security will accept other proof of your age, marriage, and earnings.

If you are married when you start receiving your Social Security check, your spouse may be able to receive a check also, if he or she has turned 62. In addition, if you have eligible dependent children, additional benefits may be payable on their behalf.

## SECTION 20 - SPECIAL PROVISIONS APPLICABLE TO INLAND PAPERBOARD AND PACKAGING, INC. EMPLOYEES WHO WERE PARTICIPANTS IN THE INLAND MASTER PENSION PLAN PRIOR TO JUNE 1, 1999

In order to protect those employees who are nearing retirement age at the time of the adoption of the amended and restated Plan and to assure that no employee's Accrued Benefit at that time is being reduced, the following minimum benefits are being provided on behalf of Inland Paperboard and Packaging, Inc. employees who were participants in The Inland Master Pension Plan prior to June 1, 1999.

### Minimum Accrued Benefit

If you were a Participant in the above superseded retirement plan prior to June 1, 1999, the amount of your Accrued Benefit determined as of any given date after June 1, 1999, will not be less than the amount of the monthly benefit that you had earned as of May 31, 1999.

### Special Early Retirement Eligibility

If you were a Participant in the above-superseded retirement plan prior to June 1, 1999 and you were also employed on January 1, 1987, by your Employer, you shall be eligible for early retirement if you have completed at least 25 years of vesting service.

– 33 –

## SECTION 21 – SCHEDULE OF PARTICIPATING EMPLOYERS

Guaranty Bank:   employees of the former Kilgore Federal Savings and Loan Association hired prior to January 1, 1991 only (excluding employees of Kilgore branches or operations managed by Guaranty Federal Bank prior to January 1, 1991)

Inland Paperboard & Packaging, Inc.

Lumbermen's Investment Corporation and its subsidiaries:   employees hired prior to January 1, 1991 only

Sabine Investment Company of Texas, Inc.

Temple-Inland Forest Products Corporation

Temple-Inland Inc.

Guaranty Residential Lending, Inc.:  employees of the former Lumbermen's Investment Corporation of Texas hired prior to January 1, 1991 only

Texas South-Eastern Railroad Company

Guaranty Insurance Managers, Inc.:  employees hired prior to January 1, 1991 only

Temple-Inland Land and Timber, Inc.

– 34 –

TempleInland/Cleiland 322