**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **CATHY CLEILAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **LIFE INSURANCE COMPANY OF NORTH** | ) | **2:07-CV-00486-MEF-SRW** |
| **AMERICA, TEMPLE-INLAND** | ) | |
| **DISABILITY HEALTH AND WELFARE** | ) | |
| **PLAN, and TEMPLE INLAND FOREST** | ) | |
| **PRODUCTS CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

<div style="margin-left:50%">

William B. Wahlheim, Jr.
John David Collins
Grace Robinson Murphy


Attorneys for Defendants,
Life Insurance Company of North America,
Temple Inland Disability Health and Welfare
Plan, and TIN, Inc.

</div>

**OF COUNSEL:**

MAYNARD, COOPER & GALE, P.C.
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2602
(205) 254-1000

# TABLE OF CONTENTS

I.      INTRODUCTION ..............................................................................................1

II.     STATEMENT OF UNDISPUTED FACTS .................................................................2

        A.      Response to Plaintiff's Statement of Facts ............................................2

        B.      Statement of Additional Undisputed Facts .................................................9

III.    ARGUMENT ...................................................................................................9

        A.      Scope of Review ..............................................................................9

        B.      LINA Correctly Concluded from the Evidence in the Claim File that Plaintiff Failed
                to Meet her Burden of Proving She is Unable to Perform Any, Alternative Occupation.....11
                1.      *Advantage 2000 Consultants, Inc.'s Assistance to Plaintiff in Obtaining
                        SSDI Benefits is Irrelevant to Her Claim for LTD Benefits from LINA*...................11
                2.      *LINA's Claims Decision was Correct, and Certainly Not Arbitrary and
                        Capricious, in Light of the Ample Evidence in the Record that Plaintiff Had
                        Recovered from Earlier Surgeries Sufficiently to be Capable of Performing
                        Sedentary Work*.................................................................................15

        C.      Plaintiff's Penalty Claim Fails Against All Defendants ...........................................16

IV.     CONCLUSION..................................................................................................18

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

Plaintiff's lead argument in her Motion for Summary Judgment is that LINA should be charged with the knowledge of an outside SSDI benefits consulting firm that it engaged to assist Plaintiff in navigating the SSDI benefit application process and in securing an award.  In advancing this argument and implying an improper motive, Plaintiff conveniently ignores the fact that the Policy expressly allowed LINA to reduce Plaintiff's benefits by an "assumed" amount of benefits.  Therefore, LINA could have offset Plaintiff's gross monthly benefit without her actually receiving such benefits.  LINA did not choose that route.  Now that Plaintiff's LTD benefits have been terminated pursuant to the terms and conditions of the applicable policy, she is in a much better position due to LINA's efforts in that she is receiving concrete SSDI benefits, as opposed to the "assumed" benefits that would have ended with her claim termination.  Also, it is entirely inaccurate and misleading to describe LINA as "profiting" from its collection of an overpayment, when this very practice is contemplated and authorized by the insurance contract and a standard practice throughout the disability insurance industry.

Plaintiff's companion argument that LINA's benefits decision was arbitrary and capricious fails because the evidence in the record reflects an appropriate healing time from her back surgeries, the last of which occurred in December 2003, before benefits were terminated in November 2005.  Plaintiff's reliance on her self-reported pain symptoms ignores governing case law requiring objective proof of disability, despite the absence of express "objective proof" language in the applicable policy.  Plaintiff's argument also ignores the essential fact that it was Plaintiff's burden, not LINA's, to supply continuing evidence of disability, including any pertinent functional capacity testing.  Therefore, LINA's decision to terminate her benefits was

1

correct.  However, even if this Court would have reached a different conclusion, LINA's decision must be upheld if it falls somewhere on a continuum of reasonableness, and is not arbitrary and capricious.

Plaintiff's final argument that Defendants should be subject to ERISA penalties for withholding documents also must fail.  Contrary to the timeline suggested by Plaintiff, Defendants responded to her document requests in a timely manner.  Plaintiff's Complaint falls far short of any actionable conduct against Defendants, as she has not even identified any specific plan documents which she argues the Temple-Inland Defendants should have produced, nor has she articulated any prejudice suffered because of this "failure" to produce non-specified documents.  Rather, the claims files of LINA and TIN, Inc. conclusively demonstrate Defendants' prompt response to each of Plaintiff's document requests.  Moreover, Plaintiff's brief does not cite to any cases suggesting why penalties are appropriate against LINA, the insurer, when Plaintiff has already conceded that TIN, Inc. is the Plan Administrator against whom ERISA penalties may be asserted.  *See* Compl. at ¶ 16.  Nor does Plaintiff's Brief cite to any cases supporting her broad interpretation of the penalty clauses and why penalties should be assessed for any alleged failure to produce documents she deems "relevant" to her claim.

For these reasons, and as established in Defendants' own brief, summary judgment should be entered in favor of Defendants, not Plaintiff.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    Response to Plaintiff's Statement of Facts.

1.    Admitted to the extent LINA insured Group Disability Policy No. FLK-020104; Denied to the extent the statement infers LINA issued coverage for all plans under the Temple-Inland Disability Health and Welfare Plan.

2.    Admitted.

2

3.       Admitted that Plaintiff underwent back surgery on May 21, 2003, but states that Plaintiff's full medical records included in LINA's Administrative Record and presented to the Court in connection with LINA's Motion for Summary Judgment will speak for themselves. In further response, LINA states that the cited provisions of http://www.webmd.com in footnote 1 should be read as general descriptions of Plaintiff's 2003 procedure and not information specific to her individual condition.

4.       Admitted.

5.       Admitted.

6.       Admitted.

7.       Admitted.

8.       Admitted that Plaintiff underwent additional back surgery on July 16, 2003. (AR at 1019).

9.       Admitted.

10.      Admitted.

11.      Defendants state that LINA's claims file reflects the best evidence of LINA's knowledge of Plaintiff's alleged disabling conditions.

12.      LINA admits that it engaged the services of outside consultant Advantage 2000 Consultants to assist Plaintiff in applying for Social Security Disability ("SSDI") Benefits. In further response, see Defendants' Motion to Strike filed contemporaneously herewith.

13.      Denied. In further response, Defendants state that the referenced letter as well as the applicable offset provisions of the Policy speak for themselves regarding Plaintiff's receipt of SSDI benefits. (AR at 501-03, 789)

14.    Defendants are without sufficient information to admit or deny this statement.  In further response, see Defendants' Motion to Strike filed contemporaneously herewith.

15.    Defendants are without sufficient information to admit or deny this statement.  In further response, see Defendants' Motion to Strike filed contemporaneously herewith.

16.    Defendants are without sufficient information to admit or deny this statement.  In further response, see Defendants' Motion to Strike filed contemporaneously herewith.

17.    Admitted in part, Denied in part.  Admitted to the extent Plaintiff was awarded SSDI benefits by Notice of Fully Favorable Decision dated May 26, 2005.  Denied to the extent Plaintiff characterizes the SSA decision as resulting from Advantage 2000's representations.

18.    Admitted, but state that the full and complete correspondence speaks for itself.

19.    Admitted, but state that the full and complete correspondence speaks for itself.

20.    Admitted, but state that the full and complete correspondence speaks for itself.

21.    Admitted in part, Denied in part.  Admitted to the extent the letter referenced in ¶ 21 speaks for itself.  Denied to the extent Plaintiff refers to "LINA's alleged overpayment of LTD benefits."  *See also* Policy (AR at 501).  In further response, and particularly in response to footnote 2, please see correspondence with Plaintiff located at AR at 667.

22.    Admitted, but state that the full and complete correspondence speaks for itself.

23.    Admitted in part; Denied in part.  Admitted that LINA paid Advantage 2000 $2150 for its services in assisting Plaintiff with her SSDI benefit application.  Also, admitted that under the terms of the Policy (see AR at 503), Plaintiff partially reimbursed LINA over time for the overpayment due to her receipt of retroactive SSDI benefits, but denied that the overpayment was fully reimbursed.  In further response, see Defendants' Motion to Strike filed contemporaneously herewith.

24.    Admitted, but state that the full and complete correspondence speaks for itself.

25.    In response, Defendants state that the letter referenced in paragraph 25 speaks for itself.  In further response, Defendants refer this Court to the references to this call documented in LINA's claims file.  *See, e.g.*, AR at 93.

26.    Admitted, but state that the full and complete correspondence speaks for itself.

27.    Admitted, but state that the full and complete correspondence speaks for itself.

28.    Admitted.

29.    Admitted, but state that the full and complete report of Dr. Scott Taylor, D.O. dated March 7, 2006 speaks for itself.  (AR at 61, 65).

30.    Admitted, but state that the full and complete correspondence located at AR 677-79 speaks for itself.

31.    Admitted in part, Denied in part.  Admitted that Plaintiff accurately quoted a portion of LINA's letter dated March 10, 2006, but state that the full and complete correspondence located at AR 677-79 speaks for itself.  Denied to the extent Plaintiff characterizes the sentence as "the basis for LINA's denial of benefits."

32.    Admitted, but state that the full and complete correspondence located at AR 677-79 speaks for itself.

33.    Admitted.

34.    Admitted in part, Denied in part.  Admitted that Plaintiff submitted certain documents to LINA in support of her administrative appeal.  Denied to the extent Plaintiff infers these documents demonstrated her "disability and resulting inability to perform in any occupation."

35.    Admitted.

36.    Admitted that Plaintiff submitted a medical form from Dr. Wise (AR at 339-41), but state that the full and complete document will speak for itself.

37.    Admitted, but state that the full and complete document will speak for itself.  (AR at 339-41).

38.    Admitted, but state that the full and complete document will speak for itself.  (AR at 339-41).

39.    Admitted in part, Denied in part.  In further response, Defendants state that the full and complete document will speak for itself.  (AR at 339-41).

40.    Admitted.

41.    Admitted, but state that the full and complete document will speak for itself.  (AR at 429-31).

42.    Admitted, but state that the full and complete document will speak for itself.  (AR at 429-31).

43.    Admitted, but state that the full and complete document will speak for itself.  (AR at 429-31).

44.    Admitted, but state that the full and complete document will speak for itself.  (AR at 429-31).

45.    Admitted, but state that the full and complete document will speak for itself.  (AR at 429-31).

46.    Admitted, but state that the full and complete document will speak for itself.  (AR at 429-31).

47.    Admitted, but state that the full and complete document will speak for itself.  (AR at 429-31).

48.    Admitted, but state that the full and complete document will speak for itself.  (AR at 429-31).

49.    Admitted in part, Denied in part.  Admitted that Plaintiff submitted records from the Center for Pain of Montgomery, P.C. from September and October 2006 in which the doctor reflected she was alert and demonstrated a "comfortable" posture and in which Plaintiff self-reported her pain as a 9-10 on a scale of 10.  (AR at 299-302).  Denied to the extent Plaintiff characterizes these pain scale rankings as the doctor's comments.

50.    Admitted in part, Denied in part.  Admitted that on the records referenced above, Plaintiff indicated that her condition was "worse" than her prior visit.  Denied to the extent Plaintiff characterizes these notations as the doctor's comments.

51.    Admitted, but state that the full and complete MRI report will speak for itself including the fact that the "acromioclavicular joint osteoarthritis" mentioned in the report is "mild" and "otherwise no focal abnormalities are seen."  (AR at 304-05).

52.    Admitted.

53.    In response, Defendants state that the testimony taken by Plaintiff's counsel, and without being subject to cross examination, speaks for itself.

54.    In response, Defendants state that the testimony taken by Plaintiff's counsel, and without being subject to cross examination, speaks for itself.

55.    In response, Defendants state that the testimony taken by Plaintiff's counsel, and without being subject to cross examination, speaks for itself.

56.    In response, Defendants state that the testimony taken by Plaintiff's counsel, and without being subject to cross examination, speaks for itself.

57.    In response, Defendants state that the testimony taken by Plaintiff's counsel, and without being subject to cross examination, speaks for itself.

58.    In response, Defendants state that the testimony taken by Plaintiff's counsel, and without being subject to cross examination, speaks for itself.

59.    In response, Defendants state that the testimony taken by Plaintiff's counsel, and without being subject to cross examination, speaks for itself.

60.    In response, Defendants state that the testimony taken by Plaintiff's counsel, and without being subject to cross examination, speaks for itself.

61.    Admitted that Plaintiff's counsel submitted a vocational analysis and paper record review report of Mark Boatner on January 18, 2007.  In further response, Defendants state that said report speaks for itself.

62.    Admitted that Plaintiff accurately quotes from Boatner's paper review, but state that the complete report speaks for itself.

63.    Admitted that Plaintiff accurately quotes from Boatner's paper review, but state that the complete report speaks for itself.

64.    Admitted.

65.    Admitted.   In further response, Defendants state that LINA's complete letter speaks for itself.

66.    Admitted.   In further response, Defendants state that LINA's complete letter speaks for itself.

67.    Admitted.

68.    Admitted that Plaintiff accurately quotes from 29 U.S.C. § 1132(c).

69.    Admitted that Plaintiff accurately quotes 29 C.F.R. § 2575.502c-1.

70.     Admitted in part, Denied in part.  Admitted to the extent that Plaintiff sent Temple-Inland Benefits a letter dated August 4, 2006.  Denied to the extent Plaintiff infers she was entitled to the full range of documents requested in this letter.

71.     Denied.  *See* TempleInland/Cleiland 010.

72.     Admitted in part, Denied in part.  Admitted to the extent that Plaintiff sent Defendants a letter requesting documents dated September 5, 2006.  Denied to the extent Plaintiff infers she was entitled to the full range of documents requested in this letter.

73.     Admitted with respect to the letter addressed to Temple-Inland Inc. Benefits Administration Committee Plan Administrator but denied with respect to Defendant LINA.  *See* AR at 522 (stamped with arrival date of October 16, 2006).

74.     Admitted.

75.     Admitted, but state that the full and complete correspondence speaks for itself.

76.     Denied.

77.     Admitted.

78.     Admitted.

79.     Admitted, but state that the full and complete correspondence speaks for itself.

**B.     Statement of Additional Undisputed Facts**

Defendants hereby incorporate by reference undisputed facts 1 – 58 set forth in their February 8, 2008 Memorandum of Law in Support of Motion for Summary Judgment.  To avoid duplication, Defendants will not restate those facts herein.

## III.    <u>ARGUMENT</u>

**A.     Scope of Review**

Plaintiff states that "Defendants … have not met their burden in showing that they are entitled to the arbitrary and capricious standard of review."  Plaintiffs' Br. at p. 20.  To the

9

contrary, Defendants have pointed to specific language in the LINA policy requiring Plaintiff to produce "satisfactory proof of Disability" to LINA. (AR at 499). Under binding authority, this language affords LINA a heightened standard of review under ERISA. *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1233-34 (11th Cir. 2006). As LINA acknowledged in its moving brief, it both insures the Plan and administers claims for the Plan. Accordingly, this case should be reviewed under the heightened arbitrary and capricious standard of review according to the analytical framework established by the Eleventh Circuit in *Williams v. Bellsouth Telecommunications, Inc.*, 373 F.3d 1132, 1137-38 (11th Cir. 2004).

Under this standard, a District Court's review of an administrator's decision need not even reach the "conflict of interest" stage of analysis. *Eldridge v. Wachovia Corp. Long-Term Disability Plan*, 2006 U.S. Dist. LEXIS 11633, *11-12 (N.D. Ga. Mar. 6, 2006). The Eleventh Circuit in *Williams* makes clear that the first stage of analysis is a *de novo* review. Thus, if this Court determines that LINA's claims decision was correct, then the inquiry ends and this Court should affirm LINA's decision. Only if LINA's decision is found to be wrong, but reasonable, must this Court examine whether the administrator's decision was tainted by self-interest. *Eldridge*, 2006 U.S. Dist. LEXIS 11633 at *12-13. Then, and only then, does the burden shift to the conflicted plan administrator who may meet its burden by demonstrating "that the opinions and evidence it relied on in denying Plaintiff's claim were, viewed both from a qualitative and quantitative perspective, at least as objectively reliable as the countervailing opinions and evidence then before it." *Wise v. Hartford Life and Accident Ins. Co.*, 403 F. Supp. 2d 1266, 1268 (N.D. Ga. 2005); *see also Tookes v. Metro. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 19416, *36-37 (N.D. Ga. Mar. 31, 2006). In this case, LINA has produced more than ample evidence

demonstrating its decision was correct, and at the bare minimum reasonable, and not arbitrary and capricious, as its decision was based on objectively reliable evidence.

      **B.**     **LINA Correctly Concluded from the Evidence in the Claim File that Plaintiff Failed to Meet Her Burden of Proving She is Unable to Perform Any Alternative Occupation.**

            1.    *Advantage 2000 Consultants, Inc.'s Assistance to Plaintiff in Obtaining SSDI Benefits is Irrelevant to Her Claim for LTD Benefits from LINA.*

Plaintiff's arguments that Advantage 2000 Consultants, Inc. ("A2K") was an agent of LINA, and that any knowledge A2K acquired representing Plaintiff before the Social Security Administration should be imputed to LINA are due to be rejected by this Court for a host of reasons. First, Plaintiff has not met her burden of showing A2K is an agent of LINA. Under Alabama law, when a defendant's liability is based on the theory of agency, "agency may not be presumed, and to support a finding of liability, the plaintiff must present substantial evidence of any agency relationship. The party asserting the existence of an agency relationship has the burden of adducing sufficient evidence to prove its existence." *Wallace v. Frontier Bank, N.A.*, 903 So.2d 792, 801 (Ala. 2004) (citations omitted).

Here, Plaintiff has not presented any evidence suggesting agency other than the fact that LINA paid for A2K's services in representing Plaintiff. In the *Wallace* case, the plaintiffs obtained a judgment lien over a piece of property. When defendants later purchased the land, the plaintiffs/lien holders argued that the title insurance company was an agent of the purchasers and thus the title company's knowledge of a prior judgment lien on the subject property should have been imputed to the purchasers. The Alabama Supreme Court held that the plaintiffs had not met their burden when the only fact they pointed to in support of agency was that the purchasers <u>paid</u> the premiums for the title insurance as part of the closing costs. The Court stated, "[t]hat fact is in no way indicative of an agency relationship between the [purchasers and the title company];

rather it is indicative of a transaction between an insured and an independent-contractor insurer." *Id.* at 801. The Court further held that if the title company did have any knowledge of the plaintiffs' judgment, it was <u>not</u> imputed to the defendant purchasers. Similarly, LINA engaged A2K to represent Plaintiff before the SSA and LINA paid A2K's fees. The transaction between the two entities, standing alone, does not create an agency relationship and certainly does not cause A2K's knowledge to be imputed to LINA. Plaintiff has simply not met her burden of demonstrating an agency relationship between A2K and LINA, and thus knowledge obtained by A2K during its representation of Plaintiff cannot be imputed to LINA to somehow discredit its claims decision.

Second, LINA clearly did not have the documents obtained or utilized by A2K during the SSDI process before it when it made its claims decision. As Heather Zapf attested to in the Affidavit filed in support of LINA's Motion for Summary Judgment, the claims file submitted to the Court was the true and correct copy of the Administrative Record which LINA maintained on Plaintiff's claim for long-term disability benefits and the A2K documents are conspicuously absent (with the notable exception of the SSDI decision itself and related correspondence). *See* Ex. A to Defendants' Notice of Evidentiary Submission. [Doc. 23-2]. Plaintiff only argues that LINA <u>could</u> have reviewed A2K's SSDI file, but she does not present any evidence that LINA did, in fact, review this file in connection with rendering its claims decision. Moreover, it is Plaintiff's burden to submit sufficient proof of loss showing her entitlement to benefits. *See Horton v. Reliance Std. Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998). Although Plaintiff was certainly able to request and provide the A2K file to LINA during its claims review process, she did not. The Administrative Record documents which A2K records, namely correspondence and the SSDI decision, were submitted and reviewed by LINA prior to its LTD benefits decision.

*See e.g.*, AR at 816-825.  A2K did not furnish additional medical records or opinions to LINA. For example, the Administrative Law Judge gave "great weight" to the opinion of a Dr. Keith Vanderzyl in finding Plaintiff disabled under the Social Security Act.  (AR at 824).  Dr. Vanderzyl's name is located nowhere else in LINA's claims file.  As Defendants argue in their contemporaneously filed Motion to Strike, since A2K's file was not reviewed by the claims administrator before it made its claims decision, it should be stricken at this late hour.  Under the ERISA standard of review applicable to this case, it is well known that documents that were never considered in connection with a claims decision cannot later be used to overturn the decision after the fact.  *See Jett v. Blue Cross and Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir. 1989); *Menard v. Hartford Life and Accident Ins. Co.*, 2007 U.S. App. LEXIS 29719, *2-3 (11th Cir. Dec. 21. 2007); *see also* § IV.B. of Defendants' Memorandum of Law in Support of Summary Judgment.  [Doc. 25].

Third, LINA was contractually entitled to recover any amount overpaid to Plaintiff due to Plaintiff's receipt of "other income benefits" as defined by the Policy.  In fact, the Court may take judicial notice of the fact that the recovery of overpayments due to retroactive SSDI awards is standard in this industry.  Under the heading "Recovery of Overpayment," the Policy provides that "[i]f benefits are overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods: (1) a request for lump sum payment of the overpaid amount; or (2) a reduction of any amounts payable under the Policy."  (AR at 503).  Moreover, the Policy, selected and negotiated by Plaintiff's employer, specifically addresses "Social Security Assistance" and provides that the Insurance Company

> will, at its discretion, assist the Employee in applying for Social
> Security Disability Income (SSDI) benefits.  Disability Benefits
> will not be reduced by the assumed receipt of SSDI benefits while
> the Employee participates in the Social Security Assistance

Program … If the Employee refuses to participate in, or cooperate with, the Social Security Assistance Program, the Insurance Company will assume receipt of SSDI benefits until the Employee gives us proof that all administrative remedies are exhausted.

(AR at 502). Therefore, since LINA had the ability to offset an estimated amount of SSDI benefits in the event Plaintiff refused to apply for SSDI benefits, it cannot now be said to have "profited" by assisting her obtain the <u>actual</u> receipt of such benefits that continue past the termination of any LTD benefits. The practical effect of LINA's assistance is that Plaintiff is now receiving SSDI benefits that she otherwise would not have received – and Plaintiff continues to receive these benefits today.

Lastly, as recounted in LINA's initial Memorandum of Law, any benefits decision by the Social Security Administration is legally distinguishable from the benefits decision made by an insurance plan. *See, e.g., Pari-Fasano v. ITT Hartford*, 230 F.3d 415 (1st Cir. 2000). In this Circuit, courts have routinely held that disability benefit determinations by the Social Security Administration have no binding effect on a plan's decision to discontinue benefits. *Id.*; *Whatley v. CNA Ins.*, 189 F.3d 1310 (11th Cir. 1999); *Paramore v. Delta Air Lines*, 129 F.3d 1446 (11th Cir. 1997); *Wilcox v. Std. Ins. Co.*, 340 F. Supp. 2d 1266, 1281 (N.D. Ala. 2004); *Nixon v. Life Ins. Co. of N. Am.*, 130 F. Supp. 2d  1279, 1293 (M.D. Ala. 2001). As noted above, the Administrative Law Judge in this case had evidence before him in making his decision that was never even presented to LINA, including a significant opinion from Dr. Keith Vanderzyl. (AR at 822-25). *See also Archible v. Met. Life Ins. Co.*, 85 F. Supp.2d 1203, 1219 n.9 (S.D. Ala. 2000) ("…the determination of continuing disability by the SSA cannot be dispositive of the issues before this Court, particularly since there is no indication that the SSA considered the medical evidence in this case."). Moreover, the Social Security Administration determined Plaintiff was disabled as of May 14, 2003. (AR at 824). LINA's denial letter indicated Plaintiff did not meet

the Policy's definition of disability as of November 21, 2005, over two years later. (AR at 734). Finally, it is critical to emphasize that decisions by an insurer and the SSA are distinguishable as benefits decisions are determined under completely different standards. *See, e.g. Curran v. Kemper Nat'l Services, Inc.*, 2005 WL 894840, *7-8 (11th Cir. Mar. 16, 2005); *Lane v. Hartford Life and Accident Ins. Co.*, 2005 WL 2978163, *11 (M.D. Fla. Nov. 7, 2005). Therefore, as a matter of law, any receipt of SSDI benefits, whether or not LINA "assisted" in the award, cannot create a presumption of correctness or error as to LINA's benefits decision. In essence, this is a novel argument raised in an apparent attempt to prejudice LINA or distract from the true issue before the Court – whether LINA's claims decision was arbitrary and capricious.

> 2.     *LINA's Claims Decision was Correct, and Certainly Not Arbitrary and Capricious, in Light of the Ample Evidence in the Record that Plaintiff Had Recovered from Earlier Surgeries Sufficiently to be Capable of Performing Sedentary Work.*

Plaintiff received STD benefits through the Policy's maximum payable period and received LTD benefits for two years from November 2003 to November 2005. (AR at 732-35, 891-92, 951). After undergoing her last back surgery in December 2003, the medical records demonstrated an uncomplicated post-operative recovery period and Plaintiff's surgeon discharged her in "good condition." (AR at 860-61). After this time, she underwent no physical therapy or other rehabilitation services, but instead began a prescription maintenance plan with a Pain Center in Montgomery. On visits to the Pain Center in late 2006, Plaintiff consistently reported her condition as "worse" rating her pain high on a scale of 1-10. (AR at 299, 301). During these same visits, however, the doctor consistently noted her as "alert" when he had the option to describe her as "depressed," "agitated," "sedated," or "tearful". (AR at 300, 302). He also described her posture as "comfortable" as opposed to "pacing," "fidgeting," "slouching," or "antalgic" and indicated she was ambulating by herself without use of a cane, scooter,

wheelchair or walker. *Id.* Thus, when her doctor's <u>objective</u> observations are considered, Plaintiff's self-reported descriptions of pain are put in context and do not provide "satisfactory proof" of her inability to perform even a sedentary occupation.

Plaintiff's Brief emphasizes the evidence submitted on appeal which consisted of additional medical records described above, a deposition transcript that was not subject to cross-examination from one of her treating physicians, and a vocational assessment. The sworn statement and the vocational assessment should be given decreased deference since the opinions were solicited by Plaintiff's own litigation counsel during Plaintiff's administrative appeal. LINA's counsel was not present to cross-examine or otherwise elicit the sworn testimony. The vocational assessment only entailed a paper review, and therefore did not present an individual assessment of Plaintiff's functional capacity or cognitive abilities – which again falls short of the requisite objective proof required in this Circuit. For the reasons addressed in Defendants' Memorandum of Law, taken as a whole, Plaintiff's evidence presented to LINA during its claims review process did not include objective evidence speaking to Plaintiff's functional capacity in November 2005 and beyond. *Bailey v. Provident Life & Accident Ins. Co.*, 2000 U.S. Dist. LEXIS 22495, at *12 (N.D. Fla. June 13, 2000) (recognizing that "reliance on [subjective] complaints, without more, would result in insurance companies paying virtually all claims. [The insurance company] owes its policy-holders a duty to investigate and seek objective support for the claimant's subjective complaints.") Without this proof, LINA's decision to terminate continuing benefits was correct, and at the very least not arbitrary and capricious, and should not be disturbed by this Court.

### C. Plaintiff's Penalty Claim Fails Against All Defendants.

Plaintiff's penalty claim is doomed from the outset. First, Plaintiff cites the wrong code provision for ERISA's penalty claim, 11 U.S.C. § 1132(c), instead of 29 U.S.C. § 1132(c).

Perhaps if Plaintiff had reviewed the correct code provision, she would have realized that the section does not authorize penalties for the failure to produce "all relevant plan documents". Plaintiff's Brief at p. 29. Instead, § 1132(c)(1)(B) specifies that penalties are awardable, in a court's discretion, against plan administrators "who fail or refuse to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary…" The four corners of the ERISA statute do not allow for the broad reading of the penalty statute espoused by Plaintiff. As established in Defendants' initial brief, Section 1024 of ERISA specifies which documents a plan administrator must furnish to participants upon request: "the latest summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Plaintiff's overreaching claim is contrary to the statute and must be rejected.

In addition, Plaintiff's Brief demonstrates why a penalty claim is not appropriate under the facts of this case. First, with respect to the Temple-Inland Defendants, Plaintiff's first document request, dated August 4, 2006, did not reach Defendants until August 8, 2006. *See* TempleInland/Cleiland 10. Within thirty days of receipt, the Temple-Inland Defendants produced a Summary Plan Description for the Temple-Inland Salaried Retirement Plan. *See id.* at 1. This mailing was followed a few days later with four additional plan documents including Plan documents for the Disability Health and Welfare Plan, the Long Term Disability Plan, the Group Medical Plan and the Group Life Insurance Plan. *Id.* at 9. Although Plaintiff alleges that "[t]he Temple-Inland Defendants still have not produced copies of all 'relevant' plan documents, including copies of all plans to which plaintiff is entitled benefits," Plaintiff failed to identify a single missing Plan document. In light of the thorough document production detailed above,

Plaintiff's conclusory allegations cannot support a colorable penalty claim against the Temple-Inland Defendants.

Prejudice is another factor that a court should consider in exercising its discretion. *See Eldridge v. Wachovia Corp. Long-Term Disability Plan, et al.*, 2007 U.S. App. LEXIS 1004, *7 (11th Cir. Jan. 18, 2007). Plaintiff has not, because she cannot, allege any prejudice arising from any arguable failure to produce the requested documents. Moreover, any such failure would have been corrected on September 17, 2007 when, in connection with their Initial Disclosures, the Temple-Inland Defendants produced 322 pages of Plan documents and correspondence regarding Plaintiff's employee benefits.

Plaintiff's Brief also presents no authority or justification why penalties should be assessed against LINA, the claims administrator in this case. Plaintiff has admitted that LINA is not the Plan Administrator. *See* Compl. at ¶ 16. The record also demonstrates that LINA timely responded to Plaintiff's document request, even though it was not legally required to do so. The Administrative Record confirms that LINA did not receive Plaintiff's document request until October 16, 2006. (AR at 522). By October 23, 2006, it forwarded to Plaintiff's counsel a copy of the applicable disability policy, claim file and electronic claims notes. (AR at 516). Given LINA's timely compliance and its status as the <u>claims</u> administrator (not the <u>Plan</u> administrator), Plaintiff's penalty claim against LINA should also be rejected.

## IV.    <u>CONCLUSION</u>

Plaintiff's main argument that LINA's engagement of an outside firm specializing in SSDI benefits should somehow require them to also admit she is disabled under the terms and conditions of Group Policy FLK-020104 is a thinly veiled attempt to distract this Court's attention away from Plaintiff's failure to meet her burden of showing entitlement to continuing LTD benefits. Given the exhaustive claims review process, LINA's reasonable conclusions from

that process, and the absence of any suggestion of taint by self-interest, there is no basis to disturb LINA's ERISA benefits determination.    Plaintiff's Brief also fails to present any substantive arguments as to why a judgment as a matter of law should not issue as to all Defendants on Plaintiff's ERISA penalty claim.    As explained above, and for all of the reasons set forth in Defendants' initial Memorandum Brief, Defendants are entitled to summary judgment on all counts of Plaintiff's Complaint.

Respectfully submitted this 27th day of February, 2008.

s/ Grace Robinson Murphy_____
William B. Wahlheim, Jr.
John David Collins
Grace Robinson Murphy
Attorneys for Defendants
Life Insurance Company of North America,
Temple Inland Disability Health and
Welfare Plan and TIN, Inc.

**OF COUNSEL**:
MAYNARD, COOPER AND GALE, P.C.
1901 6th Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
(205) 254-1000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

      Thomas O. Sinclair
      Jenifer Champ Wallis

                    s/ Grace Robinson Murphy._____
                    OF COUNSEL