# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| CATHY CLEILAND;        )<br>                              )<br>    Plaintiff,           )<br>                              )<br>v.                            )<br>                              )<br>LIFE INSURANCE COMPANY OF )<br>NORTH AMERICA;              )<br>TEMPLE-INLAND DISABILITY    )<br>HEALTH AND WELFARE PLAN; and )<br>TEMPLE INLAND FOREST PRODUCTS )<br>CORPORATION;                )<br>                              )<br>    Defendants.          )  | Civil Action No.:<br>2:07-CV-00486-MEF-SRW |

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, Cathy Cleiland, and files this Response in Opposition to Defendants' Motion for Summary Judgment. Defendants are <u>judicially</u> <u>estopped</u> from asserting in this action that Plaintiff is capable of working in any occupation due to their representations in a prior judicial proceeding that Plaintiff cannot work in any occupation. Further, Defendants fail to set forth the applicable facts in their entirety and attempt to obfuscate the applicable law by an inappropriate burden shifting. First, Defendants assign their burden under the heightened arbitrary and capricious standard of review to the Plaintiff. Finally, and perhaps most telling, Defendants do not address the reasonableness of their final

1

decision, which was that "[t]he available medical records on file do not provide documentation of significant measured physical limitations <u>time-concurrent with the denial date</u> to support continuation of work restrictions recommended by treating physicians"[1].

For these reasons and those reasons set forth more fully herein, Defendants' Motion for Summary Judgment is due to be denied.

## I. Defendants' "Undisputed" Facts Fail to Convey the Whole Truth.

Defendants' Statement of "Undisputed" Facts is misleading for several reasons. First, Defendants selectively quote from Plaintiff's attending physicians in such a manner as to obscure the attending physicians' diagnoses, which are that Plaintiff cannot work. Second, Defendants fail to acknowledge their role in procuring Plaintiff's Social Security Disability Benefits. Finally, Defendants continue to rely on certain facts that have been disproven, specifically an alleged telephone conversation with a "Kitty" at Dr. Herrick's office. Defendants' specific omissions and misrepresentations are fully addressed as follows:

4-12[2]. Although Defendants attempt to marginalize Plaintiff's painful and chronic diagnoses, it is undisputed that Plaintiff has undergone at least <u>five</u> back

---

[1] Doc. # 24-14 (Exhibit N) at CLE0225. (Emphasis added).
[2] For this Honorable Court's ease of reference, Plaintiff's numbered paragraphs will correspond to the paragraph numbers of Defendants' "Statement of Undisputed Facts" in their Memorandum of Law in Support of Motion for Summary Judgment (Doc. # 25).

surgeries since 2001 and must undergo extensive pain management, including cervical epidural injections and powerful narcotic medications[3], as a result.

15. Defendants represented Plaintiff in her claim for Social Security Disability benefits, certifying to the Administrative Law Judge that Plaintiff "has not been able to return to [her] work, *or any work* since her onset date of 5/14/03[.]" Doc. # 24-4 (Exhibit H) at ADVANTAGE165[4]. The Policy itself provides that Defendants "will, at its discretion, assist the Employee in applying for Social Security Disability Income (SSDI) benefits." Doc. # 23-12 at LINA/Cleiland 0502. Defendant's representations resulted in the Social Security Administration's issuance of a fully favorable decision and Defendants' subsequent demand that Plaintiff repay $25,240.66 for an alleged "overpayment" of LTD benefits. *See* Doc. # 24-8 (Exhibit I) at LINA/Cleiland 0789.

18. Inexplicably, Defendants continue to assert that "Kitty from Dr. Herrick's office … stated that the Pain Center had 'not disabled [Plaintiff]'" and include this alleged conversation as part of its "investigation" of Plaintiff's claim. Doc. # 25 at ¶¶ 18 & 23. Defendants are well aware that Dr. Herrick has testified that Kitty is a nurse not qualified to disable patients; that he is not aware of any physician stating they would not disable Plaintiff and that he disagreed with

---

[3] *See* Doc. # 24-12 (Exhibit N) at CLE000075. (Listing Plaintiff's medications, which include Neurontin, Methadone and Clonipin).
[4] For this Honorable Court's ease of reference, Plaintiff will cite to all previously filed evidentiary material in the record by docket number and Bates number. Where references to exhibits are made, they refer to the exhibits filed in support of Plaintiff's Brief in Support of Plaintiff's Motion for Partial Summary Judgment.

Defendants' new position that Plaintiff could work. *See* Doc. # 24-4 (Exhibit N) at CLE00161-195. Moreover, Dr. Herrick stated under oath that he doesn't think Kitty made the statement to which Defendants continue to cling. *Id.* at CLE00180-181.

34. Defendants characterize the medical records submitted in support of Plaintiff's claim for LTD benefits as being mainly "from 2001 through 2003" to support their contention that Plaintiff's inability to work was not documented beyond 2003. Defendants fail to disclose that Plaintiff's submission included medical records through 2006 and deposition testimony by Plaintiff's attending physician, Dr. Herrick and a vocational analysis expert's report both describing Plaintiff's inability to work through 2006. *See* Doc. # 24-1 to 24-6 (Exhibit N) at CLE00001-0229.

38. Plaintiff's medical records reflect that her pain continued to be so severe that she underwent ***cervical epidural steroid injections*** in February and April 2006.

45. Defendants selectively quote Dr. Herrick's testimony, which is provided in full in Exhibit N to Plaintiff's Brief in Support of Motion for Summary Judgment (Doc. # 24-4 at CLE00161-195). The entire quote from which Defendants chose their excerpts is:

> Okay. To me, it's kind of like a demolition derby. You know, the cars they use in demolition derby are not – you know, they're pretty

4

> much – they're damaged to begin with.  And she's, you know, still driving around in the demolition derby, but she's looking pretty rough right now.  So she's stable, if you want to put it that way, from the point of view that she's still moving.  She still functions to some degree.  She certainly does not function in a normal fashion, and she doesn't function as well as somebody else her age who didn't have all these problems would be functioning.

Doc. # 24-4 at CLE00171-172.

50.    Defendants rely heavily on conclusions reached by their employee, Dr. John Mendez, who has never examined the Plaintiff in person and without any objective evidence to support his opinion disregards the medical opinions of Plaintiff's own examining physicians.  *See* Doc. # 24-14 (Exhibit N) at CLE00227.  Indeed, none of Defendants' physicians ever examined Plaintiff.

52-58.    It is undisputed that Defendants did not produce a copy of the applicable policy within thirty days after its receipt of Plaintiff's request for the same and have continued to refuse to produce all plan documents.  *See* Doc. # 24-15 (Exhibits P and Q).  Defendants received Plaintiff's request on September 11, 2006.  *See* Doc. # 24-15 (Exhibit Q).  Defendant LINA admits that it sent Plaintiff a copy of one insurance policy "[b]y letter dated October 23, 2006" ( Doc. # 25 at ¶ 54) but Defendants continue to refuse to produce all applicable plan documents to which Plaintiff is entitled.

While Defendants mischaracterize the applicable law, most telling is their failure to identify their "decision" which they claim deserves this Court's

deference. First and foremost, Defendants are judicially estopped from making any representations to this Court that Plaintiff is able to work in any occupation due to their representations to the contrary in a prior judicial proceeding.

## II. Defendants Are Judicially Estopped From Asserting That Plaintiff Can Work In Any Occupation.

Defendants are judicially estopped from refuting that Plaintiff is unable to work in any occupation because of their representations to the Administrative Law Judge in the social security proceeding. In that prior proceeding, Defendants represented that Plaintiff "has not been able to return to [her] work, ***or any work*** since her onset date of 5/14/03" and that "the limitations posed by her continued impairments would limit her ability to perform even a full range of sedentary work." Doc. # 24-5 at ADVANTAGE236-237.

This Court has recognized that judicial estoppel "precludes a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Lett v. Reliable Ruskin*, 2006 WL 2056582 at *3 (M.D. Ala. 2006). The United States Supreme Court has set forth the factors to be applied in determining whether to invoke judicial estoppel:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, … whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position at a later proceeding would create "the perception that either the first or the second court was misled." … A third consideration is whether the party seeking to

6

>assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750-751, 121 S. Ct. 1808, 1815 (2001).

Defendants undisputedly represented, through their agent, Advantage 2000 Consultants, to an Administrative Law Judge in a prior judicial proceeding that Plaintiff is <u>not capable of working</u> in any occupation. *See* Doc. # 24-4 (Exhibit H) at ADVANTAGE165. (Plaintiff "has not been able to return to [her] work, ***or any work*** since her onset date of 5/14/03[.]"). Defendants now assert that "Plaintiff could perform at least sedentary work[.]" Doc. # 25 at 23. Defendants' new position, that Plaintiff can work, is clearly inconsistent with the position they took before the Administrative Law Judge.

Moreover, the second factor is met here, where Defendant's representations to the Administrative Law Judge were successful in obtaining a fully favorable opinion and an award of disability benefits for the Plaintiff (an award they immediately pocketed). *See* Doc. # 24-8 (Exhibit I) at LINA/Cleiland 0806-0814. The third factor is also met in this case, where allowing Defendants to profit in the amount of $25,240.66 based upon their contradictory representations to the Administrative Law Judge, will impose an unfair detriment upon Plaintiff. It is patently unfair that Defendants should be allowed to force Plaintiff to give up all of her social security award based upon their representations that she is incapable of

7

work then cut off her LTD benefits and assert that she is capable of work to avoid having to pay her themselves.

Apparently the only determinative factor regarding Defendants' position on Plaintiff's inability to work is what position will benefit Defendants. Before the Administrative Law Judge, where they stood to gain in excess of $25,000, Defendants represented that Plaintiff was unable to work. Before this Honorable Court, where Defendants stand to lose funds upon a finding that they should not have denied Plaintiff's claim for disability benefits, Defendants claim that Plaintiff can work. Clearly Defendants should be judicially estopped from taking such a contradictory position in this case.

Moreover, Defendants cannot dispute that Advantage 2000 Consultants acted on their behalf where Defendants were continually kept apprised of the Social Security claim for benefits, profited from those representations in the amount of $25,240.66, and the Plan itself expressly gives Defendants the "discretion to assist [Plaintiff] in applying for Social Security Income (SSDI) benefits." Doc. #23-12 at LINA/Cleiland 0502. The facts supporting Advantage 2000 Consultants' actions on Defendants' behalf are fully set forth in Plaintiff's Brief in Support of her Motion for Partial Summary Judgment and are incorporated herein. *See* Doc. # 24 at ¶¶ 12-23 and pp. 20-22. *See also* Doc. #24-3 to 24-7 (Exhibit H) ADVANTAGE001-299.

As the documents submitted to Plaintiff by Advantage 2000 Consultants make clear, "CIGNA Group Insurance," *i.e.*, <u>LINA</u>, is Advantage's client in procuring Plaintiff's Social Security Disability benefits. *See* Doc. # 24-3 at ADVANTAGE014, 024, 026, 028. Moreover, all representations to the Social Security Administration were made on Defendants' behalf, pursuant to Defendants' direction and for their benefit. *See* Doc. # 24-3 to 24-7.

Even assuming *arguendo* that Defendants are not judicially stopped from their new contradictory position on Plaintiff's ability to work, Defendants do not meet their burden in showing that their decision was reasonable.

**III.    Defendants' Decision is not Reasonable and Does Not Benefit Other Plan Participants.**

Defendants acknowledge that the appropriate standard of review is the heightened arbitrary and capricious standard due to LINA's conflict of interest as both the insurer and administrator of the Plan. *See* Doc. # 25 at 17-18. Defendants, however, fail to fully address the "burden-shifting method of evaluating [an] ERISA administrator's decision" devised by the Eleventh Circuit for cases, such as this case, requiring the heightened arbitrary and capricious standard of review.

Moreover, although Defendants correctly set forth the six-step analysis the Eleventh Circuit implements in judicial review of ERISA benefit denial cases[5], Defendants incorrectly sum up their analysis of the applicable standard of review by stating that "[u]nder the arbitrary and capricious standard, a 'wrong' benefits determination is nevertheless entitled to deference so long as it was not 'completely unreasonable.'" Doc. # 25 at 19 (quoting *Brown v. Blue Cross and Blue Shield of Ala.*, 898 F.2d 1556 at 1564 (11th Cir. 1990), *cert. denied*, 498 U.S. 1040 (1991). Under the appropriate heightened arbitrary and capricious standard of review, Defendants are not entitled to this level of deference. Defendants brief would have revealed this if the quote had not been cut short, in which case the next line would have stated "'a conflict of interest triggers a *less deferential* standard of review[.]'" *Williams*, 373 F.3d at 1138. (Emphasis added).

---

[5] (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

Doc. # 25 at 19 (quoting *Williams v. Bellsouth*, 373 F.3d 1132, 1138 (11th Cir. 2004)).

This less deferential standard provides that even a <u>reasonable</u> interpretation and resulting wrongful denial "is arbitrary and capricious if it advances the conflicting interest of the administrator at the expense of the beneficiary." *Featherston v. Metropolitan Life Insurance Co.*, 223 F.R.D. 647, 653 (N.D. Fla. 2004) (citing *Brown*, 898 F.2d at 1566-67). It is undisputed that Defendants' wrongful denial of Plaintiff's claim for benefits advances its own interest, by not paying Plaintiff's claim for benefits, to Plaintiff's clear detriment. Rather than dispute this fact, Defendants attempt to justify their wrongful denial by arguing that it "benefited all the participants and beneficiaries of the Plan" and citing *Brown*, 898 F.2d at 1566-1567, for justification.

Although the Eleventh Circuit recognizes the limited application of such a justification it also maintains that the <u>fiduciary</u> "should bear the burden of dispelling the notion that its conflict of interest has tainted its judgment." *Brown*, 898 F.2d at 1568. In order to do so, the insurance company must bear out the facts that show "its interpretation of the policy is calculated to maximize the benefits available to plan participants and beneficiaries." *Id.* This is because:

> Decisions made by the issuing company on behalf of a plan based on a contract of insurance … inherently implicate the hobgoblin of self-interest. Adverse benefits determinations save considerable sums that are returned to the fiduciary's corporate coffers. The presumption that the fiduciary is acting for the future stability of the fund cannot be entertained.

*Id.* Merely stating that its interpretation provides such a benefit, as Defendants have done here, is not enough to meet the burden imposed.

Rather than meet their burden in proving that Defendants have not acted in self-interest, Defendants erroneously attempt to shift this burden onto Plaintiff. *See* Doc. # 25 at 27. ("Plaintiff has not … offered any evidence that LINA's decision was tainted by self-interest."). However, it is clear that "the Eleventh Circuit shifts the burden to the claims administrator to prove that its interpretation of the plan is not tainted by self-interest." *Featherston v. Metropolitan Life Insurance Company*, 223 F.R.D. 647, 653 (N.D. Fla. 2004). (Emphasis added).

Because Defendants have failed to meet the burdens imposed on them by the heightened arbitrary and capricious standard of review, Defendants' denial of Plaintiff's claim for benefits should be deemed arbitrary and capricious as a matter of law. Defendants' Motion for Summary Judgment is therefore due to be denied on this ground alone.

However, even if this Honorable Court chooses to look past judicial estoppel and Defendants' failure to meet their burden pursuant to the heightened arbitrary and capricious standard of review, Defendants' decision is arbitrary and capricious as a matter of law because they impermissibly refused to consider the mountain of evidence submitted by Plaintiff in support of her claim for benefits.

**IV.   Defendants Attempt to Divert This Court's Attention From Their Arbitrary Refusal to Credit the Information Submitted by Plaintiff.**

Defendants' final decision in its determination of Plaintiff's claim for disability benefits, issued by letter dated March 15, 2007, is that "[t]he available medical records on file do not provide documentation of significant measured physical limitations <u>time-concurrent with the denial date</u> to support continuation of work restrictions recommended by treating physicians." Doc. # 24-14 at CLE00225. (Emphasis added). Defendants do not quote this final decision anywhere in their Memorandum, ostensibly because it reveals the crux of this case – that they impermissibly and arbitrarily refused to credit Plaintiff's reliable evidence in support of her claim for LTD benefits.

A plan administrator "'may not 'arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.'" *Helms v. General Dynamics Corp.*, 222 Fed. Appx. 821, 832 (11th Cir. 2007) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003)). In *Helms*, the Eleventh Circuit held that where an ERISA plan administrator "excised narrow snippets of [the attending physician]'s notes, while it discredited or ignored whole tracts of his medical evaluation that supported [plaintiff's] claim," its review was "malignant at worst, and arbitrary at best." 222 Fed. Appx. at 832.

*Helms* is directly on point here.  In *Helms*, the plaintiff's Short Term Disability (STD) benefits were terminated after only four months because the plan administrator concluded "'there [was] not enough objective medical information to support continued disability.'"  222 Fed. Appx. at 825.  During the appeal process, plaintiff's attending physician submitted letters and office notes in support of plaintiff's claim for benefits.  *See* Fed. Appx. at 825-827.  The defendant refused to afford any consideration to the plaintiff's attending physician's remarks but instead doggedly upheld its denial on the basis that "the medical information does not contain any objective conditions which would support a disability of such a severe nature to preclude him from returning to work."  222 Fed. Appx. at 826.

Moreover, and as the Defendants have done in this case, the defendant quoted only snippets of the attending physician's remarks in an effort to support their denial of the plaintiff's claim.  *See Helms*, 222 Fed. Appx. at 833.  The Eleventh Circuit found such behavior distasteful and held that the defendant "was unreasonable to have ignored submitted restrictions and limitations and excised only snippets of [the attending physician's] evaluations without the context of the sedating medications in discrediting or ignoring overwhelming portions of … medical evidence that supported" Plaintiff's claim for benefits.  222 Fed. Appx. at 833.

It is undisputed that Plaintiff submitted hundreds of pages of medical records, attending physician testimony, and attending physician restrictions and limitations in support of her claim during the time period between Defendants' initial denial by letter dated December 7, 2005 and its final decision on March 15, 2007.  *See* Docs. # 24-8 (Exhibit J) at LINA/Cleiland 0258 and # 24-9 to 24-14 (Exhibit N).  Upon Defendants' receipt of these records, Defendants' reviewing physician, Dr. John Mendez afforded <u>absolutely no</u> consideration to the attending physicians' sworn statements or the voluminous records evidencing Plaintiff's condition.  *See* Doc. # 24-14 (Exhibit N) at CLE00227.  Upon their willful refusal to consider these key medical records, Dr. Mendez concluded "the original assessment remains unchanged because there is still no documentation of significant measured physical limitations <u>time-current with the denial date</u> to support continuation of work restrictions recommended by treating physicians."  Doc. # 24-14 (Exhibit N) at CLE00228.

The deposition testimony of Dr. Herrick, one of Plaintiff's attending physicians, submitted to Defendants on November 27, 2006, provides Defendants with a road map of objective evidence regarding Plaintiff's diagnoses and inability to work.   Dr. Herrick lists Plaintiff's diagnoses as "cervical and lumbar degenerative disc disease and both cervical and lumbar Failed Surgery Syndrome."  Doc. # 24-12 (Exhibit N) at CLE00166-167.   Dr. Herrick provides an extensive

history of Plaintiff's <u>six</u> back surgeries, beginning in 1997 and ending in December 2003. *See* Doc. # 24-12 (Exhibit N) at CLE00175, 00177, 00178, 00179, 00180 and 00181. Dr. Herrick testified that the cumulative effect of all the spinal procedures is that it "makes the spine more vulnerable" but they were necessary because "Plaintiff's back has been … for lack of a better term, falling apart." Doc. # 24-12 (Exhibit N) at CLE00182-183. Dr. Herrick further testified that Plaintiff's "current pain complaints [are absolutely] reasonably related to her diagnosed conditions." Doc. # 24-12 (Exhibit N) at CLE00183. Perhaps most telling is that Dr. Herrick testifies that not only did Plaintiff currently have "complaints of radiating pain" … "numbness and tingling" but that she had such pains "when they first issued [their] denial letter at the end of last year in December." Doc. # 24-12 (Exhibit N) at CLE00188.

Dr. Herrick testified that whether Plaintiff's medication usage is stable "has no relationship to a quantitative rating of disability." Doc. # 24-12 (Exhibit N) at CLE00188-189. Dr. Herrick also testified that Plaintiff was taking ***50 milligrams*** per day of Methadone, a Schedule 2 opioid and 25 micrograms of Duragesic, also a Schedule opioid, every 72 hours, as pain medications "reasonably necessary to treat her condition." Doc. # 24-12 (Exhibit N) at CLE00173. Dr. Herrick testified that Plaintiff's prescribed pain medications are "used for chronic, severe pain, in other words, pain that is really bad and that doesn't respond to simple medications

16

and pain that you don't expect to go away." Doc. # 24-12 (Exhibit N) at CLE00174. Dr. Herrick testified that Plaintiff's restrictions and limitations resulting from her condition, which include but are not limited to necessary bed rests, breaks and lapses in concentration and memory, would render her unreliable in performing a forty-hour workweek. *See* Doc. # 24-12 (Exhibit N) at CLE00191-192. Moreover, "[t]here is no cure" for Plaintiff's chronic condition. Doc. # 24-12 (Exhibit N) at CLE00192.

Defendants refused to credit this reliable evidence during Plaintiff's claim. Now, rather than admit their mistake, Defendants continue their wrongful behavior by quoting mere snippets of Plaintiff's medical records and attending physician testimony in order to mischaracterize the same in support of their decision to deny benefits. Pursuant to *Helms*, Defendant's continued denial of Plaintiff's claim for LTD benefits, in the face of a mountain of supportive evidence is "malignant at worst, and arbitrary at best." 222 Fed. Appx. at 832. Defendants' Motion for Summary Judgment is clearly due to be denied.

## V.     Conclusion

Defendants' Motion for Summary Judgment misconstrues the evidence and attempts to shift their own burdens to Plaintiff in order to further obstruct Plaintiff's collection of the LTD benefits to which she is entitled. Moreover, Defendants impermissibly assert in this action a position contradictory to their

position in the action involving Plaintiff's claim for Social Security Disability Benefits. For the reasons set forth herein and those reasons set forth in Plaintiff's Motion for Partial Summary Judgment (Doc. # 22) and Brief in Support thereof (Doc. # 24), Defendants' Motion for Summary Judgment is due to be denied and Plaintiff's Motion for Partial Summary Judgment is due to be granted.

/s/ Jenifer Champ Wallis
One of the Attorneys for Plaintiff

**OF COUNSEL:**
Thomas O. Sinclair
Jenifer Champ Wallis
CAMPBELL, GIDIERE, LEE, SINCLAIR & WILLIAMS
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
T: (205) 803-0051
F: (205) 803-0053

## **CERTIFICATE OF SERVICE**

  The undersigned attorney certifies that on the 27th day of February, 2008, a copy of the foregoing was filed electronically using this Court's electronic filing system. Notice of this filing is due to be served by operation of the Court's electronic filing system to the following parties indicated on the electronic filing receipt as participants in the Courts CM/ECF system:

**Attorneys for Defendants**
William B. Wahlheim, Jr.
John David Collins
Grace Robinson Murphy
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203-2602

              /s/Jenifer Champ Wallis
              Of Counsel