**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **CATHY CLEILAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **LIFE INSURANCE COMPANY OF NORTH** | ) | **2:07-CV-00486-MEF-SRW** |
| **AMERICA, TEMPLE-INLAND** | ) | |
| **DISABILITY HEALTH AND WELFARE** | ) | |
| **PLAN, and TEMPLE INLAND FOREST** | ) | |
| **PRODUCTS CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT LIFE INSURANCE COMPANY OF NORTH AMERICA'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL AND REQUEST FOR A PROTECTIVE ORDER

COMES NOW Defendant Life Insurance Company of North America ("LINA"), by and through its counsel, and hereby responds to Plaintiff's First Motion to Compel.

### Introduction

This ERISA action arises out of a dispute over entitlement to long-term disability benefits under an insurance policy issued by LINA to Plaintiff's former employer, TIN, Inc. Plaintiff argues that LINA's engagement of a third party company, Advantage 2000 Consultants, Inc. ("A2K"), to assist Plaintiff with her application for **Social Security Disability Income** ("SSDI") benefits should somehow estop LINA from denying Plaintiff's **Long-Term Disability** ("LTD") benefits. LINA has already addressed and refuted this argument in multiple pleadings already before this Court. *See* Doc. 25 Defendants' Memorandum of Law in Support of Summary Judgment at pp. 32-34, Doc. 30 Defendants' Motion to Strike, Doc. 31 Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment at pp. 11-15. In these pleadings, LINA has demonstrated that Plaintiff's equitable estoppel argument fails as a matter of law and any

A2K documents that were not before LINA at the time it made its benefits decision cannot be submitted after the fact. Moreover, Plaintiff's agency argument fails as a matter of law, as well, since LINA's engagement of A2K to assist Plaintiff with her SSDI application, standing alone, does not create an agency relationship. *See Wallace v. Frontier Bank, N.A.*, 903 So.2d 792, 801 (Ala. 2004).

Plaintiff has already subpoenaed Plaintiff's SSDI file directly from A2K. Now, Plaintiff has taken this red herring argument too far seeking confidential and proprietary contracts between these independent business entities that are <u>completely</u> <u>irrelevant</u> to the question of Plaintiff's eligibility for LTD benefits under a group insurance policy. Plaintiff's Motion to Compel production of the service agreements between A2K and LINA must fail for two reasons. First, Plaintiff has exceeded the limits on request for production agreed to by the parties and incorporated in the Court's Scheduling Order. Second, Plaintiff is not entitled to these confidential and proprietary documents in this ERISA-preempted LTD benefit lawsuit subject to a heightened arbitrary and capricious standard of review. Accordingly, this Court should deny Plaintiff's First Motion to Compel and enter a protective order in LINA's favor.

<u>**Argument**</u>

**A.**     <u>**Plaintiff Has Exceeded the Allowed Number of Requests for Production.**</u>

The parties expressly agreed during their parties planning meeting to a "maximum of <u>**30**</u> Request for Production by each party to any other party without prior approval of the Court." *See* Doc. 16 at ¶ 5(c). The Court's Scheduling Order provided that the "Discovery Plan contained in the Report of Parties' Planning Meeting, filed on August 17, 2007, is adopted and incorporated herein." *See* Doc. 18-2 at § 13. Plaintiff served her First Request for Production on LINA on November 19, 2007. Plaintiff included thirty-three (<u>**33**</u>) separate Request for

Production, some of which included multiple sub-parts.  *See* Plaintiff's First Request for Production attached hereto as Ex. "A".  Although already in excess of the 30 requests allowed by this Court, Plaintiff served three underlined(additional) request for production on January 16, 2008.  *See* Plaintiff's Second Request for Production attached hereto as Ex. "B".  Plaintiff has not sought leave of Court for permission to serve these surplus requests and LINA specifically objected to these Requests on this basis.  *See* Ex. 1 to Plaintiff's First Motion to Compel.  Plaintiff should not be allowed to render the parties' agreed-to discovery limits (that were specifically adopted by this Court) meaningless by seeking to compel responses to requests beyond the set limits. Therefore, for this reason alone, this Court should deny Plaintiff's Motion.

**B.**      **Additionally, the Scope of Discovery in ERISA cases, Including Cases Like This One Subject to a Heightened Arbitrary and Capricious Standard of Review, is Highly Limited.**

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that actions for termination of ERISA plan benefits should be judicially reviewed under the *de novo* standard "... unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115; *see Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir. 1990) (The arbitrary and capricious standard of review is appropriate when the Plan gives the administrator some degree of discretion to construe eligibility for benefits and to interpret policy terms).

In the instant case, the Policy vests LINA with the discretionary authority to find facts and determine eligibility for benefits: "**Satisfactory proof** of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid."  (AR at 499) (emphasis added).  In fact, such language requiring a claimant to submit "satisfactory" proof has been held by district courts in the Eleventh Circuit to confer discretionary authority.  *See, e.g.,*

3

*Serauskus v. Sun Life Assurance Co. of Canada*, 205 F. Supp. 2d 1369 (N.D. Ga. 2001); *Sorrells v. Sun Life Assurance Co. of Canada*, 85 F. Supp. 2d 1221 (S.D. Ala. 2000); *Morency v. Rudnick & Wolfe Staff Group Long Term Disability Ins.*, 2001 WL 737531, *3 (M.D. Fla. Jan. 31, 2001). Indeed, the Eleventh Circuit more recently instructed that it was bound by prior precedent in holding that similar ERISA policy language constituted a sufficient grant of discretion to afford a deferential standard of review. *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1233-34 (11th Cir. 2006).

LINA both insures the Plan and administers claims for the Plan. The Eleventh Circuit has developed a "modified" arbitrary and capricious standard of review in an effort to account for the possible conflict of interest on the part of the plan fiduciary that both insures and decides claims under a plan. *See Brown v. Blue Cross and Blue Shield of Ala.*, 898 F.2d 1556, 1563 (11th Cir. 1990), *cert. denied*, 498 U.S. 1040 (1991); *Torres v. Pittson Co.*, 346 F.3d 1324, 1332 (11th Cir. 2003). Therefore, the proper standard of review applicable to the Court's review of this case is the heightened arbitrary and capricious standard of review.

When applying the heightened arbitrary and capricious standard of review, the Eleventh Circuit and district courts within the Eleventh Circuit overwhelmingly limit their review to the administrative record. *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321 (11th Cir. 2001) (affirming the rule of *Jett v. Blue Cross and Blue Shield of Alabama*, 890, F 2d 1137, 1139 (11th Cir. 1989) and *Lee v. Blue Cross Blue Shield of Alabama*, 10 F.3d 1547, 1549 (11th Cir. 1994) in heightened arbitrary and capricious standard of review cases); *Menard v. Hartford Life and Accident Insurance Company*, 2007 U.S. App. LEXIS 29719, *2-3 (11th Cir. Dec. 21, 2007) (reversing district court judgment based in part on extra-record evidence and remanding with instructions to court to "confine its review to the administrative record before Hartford Life at

the time of its final denial decision."); *see also Buckley v. Metro. Life*, 115 F.3d 936, 941 (11th Cir. 1997) (declining to consider affidavits not presented to administrator at time of its decision); *Richards v. Hartford Life & Accident Ins. Co.*, 153 Fed. Appx. 694, 696 n.1 (11th Cir. 2005) (unpublished); *see also Wilcox v. The Standard Ins. Co.*, 340 F. Supp. 2d 1266, 1281-82 (N.D. Ala. 2004) (denying motion to allow additional evidence and finding that the court, in applying the heightened arbitrary and capricious standard, is limited to the information before the plan administrator at the time the decision was made to terminate plaintiff's claim and through the administrative appeals process); *Pace v. Liberty Life Assur. of Boston*, 2006 U.S. Dist. LEXIS 43949, *2-3 (S.D. Ala. 2006).

Plaintiff's claim that she is entitled to production of two service agreements between LINA and A2K is misguided. As addressed in LINA's Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff cannot meet her burden of proving an agency relationship between LINA and A2K. As this "agency" argument sheds no light on the correctness or reasonableness of LINA's decision on Plaintiff's continued eligibility for LTD benefits, it is essentially a request for <u>irrelevant</u> information. This fishing expedition must be stopped, especially in light of both the strict standard of review applicable to this case and the confidential nature of the documents sought.

In the event Plaintiff seeks these documents on the issue of a possible "taint of self-interest" because LINA also insures the applicable LTD Policy, case law instructs that the question of whether the presumed conflict under *Williams* actually influenced the claims decision at issue can be answered from the administrative record itself. *See Wise v. Hartford Life and Accident Ins. Co.*, 360 F. Supp. 2d. 1310 (N.D. Ala. 2005). The *Wise* case determined that when the question is primarily factual, *i.e.* whether or not Plaintiff was disabled, then the question of

whether an insurer's claims decision was "tainted" by the conflict of interest can be resolved from the four corners of the administrative record. The Court in *Wise* stated:

> [t]he Court concludes that a conflicted plan administrative may carry its burden in a suit challenging a "wrong but reasonable" factual determination if it can demonstrate that the opinions and evidence it relied on in denying the plaintiff's claim were, viewed both from a qualitative and quantitative perspective, at least as objectively reliable as the countervailing opinions and evidence then before it. By demonstrating that it chose to follow what it reasonably perceived as equally or more objectively reliable data, the insurer substantially ameliorates any fears that its decision was motivated by self-interest rather than by a good faith effort to exercise its discretion to interpret and apply the plan.

*Id.* at 1323. Thus, as this Court can analyze the question of conflict by weighing the objective data (from both a qualitative and a quantitative perspective) from the Administrative Record, Plaintiff cannot justify using LINA's presumed conflict of interest to obtain its proprietary agreement with a third party vendor. Plaintiff's request should be rejected as an onerous and unnecessary measure in this simple ERISA case – to rule otherwise would frustrate the legislative mandate of ERISA which was to promote the inexpensive and expedient handling of claims.

As summary judgment briefing on this case is coming to a close, requiring proof of confidential and proprietary information outside the Administrative Record is an excessive and prejudicial exercise. Indeed, LINA already met its burden under the Federal Rules of Civil Procedure and prevailing ERISA case law by voluntarily presenting to Plaintiff a complete copy (all 1088 pages) of the Administrative Record, including the insurance contract at issue, in connection with LINA's Rule 26 Initial Disclosures.

## CONCLUSION

Binding Eleventh Circuit authority, including cases from within this District, establish that, under the heightened arbitrary and capricious standard of review, the evidence to be

considered by the Court is limited to that which was before LINA at the time its benefits determination was made. Plaintiff's Motion to Compel seeking contracts with a third party regarding Social Security application assistance seeks to expand upon issues of fact previously determined by the administrator. Not only is the information Plaintiff seeks through this Motion to Compel impermissible, it is proprietary and confidential and Plaintiff has not demonstrated a sufficient showing of need, especially in light of LINA's prior production of its 1088 page claims file. Moreover, allowing this production would violate the limitations on discovery expressly agreed to by Plaintiff at the onset of this litigation. Binding precedent and the current circumstances of this case mandate that Plaintiff's Motion to Compel the production of two service agreements between LINA and A2K be denied, and LINA's Motion for a Protective Order to safeguard against this production in this matter be granted.

Respectfully submitted this 4th day of March, 2008.

s/ Grace Robinson Murphy
William B. Wahlheim, Jr.
John David Collins
Grace Robinson Murphy
Attorneys for Defendants
Life Insurance Company of North America,
Temple Inland Disability Health and
Welfare Plan and TIN, Inc.

**OF COUNSEL**:
MAYNARD, COOPER AND GALE, P.C.
1901 6th Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
(205) 254-1000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 4, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas O. Sinclair
Jenifer Champ Wallis

s/ Grace Robinson Murphy._____
OF COUNSEL

# EXHIBIT

# A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| CATHY CLEILAND; | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No.: |
| | )     2:07-CV-00486-MEF-SRW |
| LIFE INSURANCE COMPANY OF | ) |
| NORTH AMERICA; | ) |
| TEMPLE-INLAND DISABILITY HEALTH | ) |
| AND WELFARE PLAN; and | ) |
| TEMPLE INLAND FOREST PRODUCTS | ) |
| CORPORATION; | ) |
| | ) |
|      Defendants. | ) |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
## TO LIFE INSURANCE COMPANY OF NORTH AMERICA

COMES NOW the Plaintiff, Cathy Cleiland, and requests that the Defendant Life

Insurance Company of North America (hereinafter referred to as "You", "Your", or "Yours")

answer the following Requests for Production, separately, severally, fully, in writing and under

oath within thirty (30) days from the date of service hereof.

### INSTRUCTIONS

**A.**    **Use of Rule 33 in Responses**

If responding to a request for production by reference to documents produced, <u>specifically identify those</u>

<u>portions of specific documents identified by Bates number</u> that you contend respond to each individual request for

production.

**B.**    **Use of "General Objections"**

If offering in prefatory statements or referencing in specific responses "General Objections" in response to

a request for production, <u>cite specifically to each general objection applicable to the individual request for</u>

<u>production</u>.

**C.**    **Objections based on "Attorney / Client" privilege or the "Work Product" doctrine**

If objecting to a request for production on the basis of attorney / client or work product privilege (either through reference to General Objections or within the response to the individual request), produce a Privilege Log as required by the applicable Rules of Civil Procedure.

## REQUEST FOR PRODUCTION

1.     Produce any and all agreements or service agreements wherein you have agreed to certain terms governing the responsibilities in relation to the insurance policies purchased by the Plaintiff or the Plaintiff's employer.  This request for production is to encompass any service agreements whereby you agree to provide or had another entity agree to provide services relative to the Plaintiff's policies or the Plaintiff's employer's policies.

2.     Please produce any and all correspondence, memoranda or service agreements, or agreements known by any other name wherein Advantage 2000 and you agreed to certain compensation and/or consideration in exchange for certain services to be provided in the administration and/or adjudication of the Plaintiff's Social Security claim .  This request for production is to encompass any service agreements and/or agreements wherein you contracted with Advantage 2000 to perform any administrative duties.

3.     Produce and identify by Bates numbers those documents within your possession, custody or control that reference or pertain to the Plaintiff's claim for benefits, the Plaintiff's application for insurance, to include any claim file, the application file, independent medical examination file, or any other related file referencing or pertaining to the Plaintiff's claim or claims for benefits.  This request includes any files pertaining to any other policies or coverage purchased by the Plaintiff or the Plaintiff's employer.

4.     Produce and identify by Bates number every medical report (to include any generic medical reports not specifically pertaining to the Plaintiff but used in referencing the restrictions

and limitations pertaining to the Plaintiff's disability) considered or available for consideration in the process of evaluating the Plaintiff's application for benefits. This response should include any internal memorandum regarding the Plaintiff's claims, to include any documentation generated by your agents or employees reviewing information pertaining to the Plaintiff's application for benefits.

5.    Produce and identify by Bates number every report other than medical reports (for example, without limitation, the reports of rehabilitation services or any other such similar services) considered in or generated in the process of evaluating the Plaintiff's claim for benefits.

6.    Produce and identify by Bates number any other reports or opinions received or discovered in any manner that the Defendant received or relied upon in the evaluation of the Plaintiff's claim for benefits.

7.    Produce each rule, guideline, criteria, law, regulation, or other document considered by you in any way in your administration of Plaintiff's claim for benefits.

8.    Produce, and reference by Bates number, each and every policy ever purchased by the Plaintiff from you or any of your subsidiaries, to include group policies purchased by Plaintiff's employer.

9.    Produce any correspondence, emails, or memorandum between you and the Plaintiff's employer regarding administration or interpretation of policy terms for any policy purchased by Plaintiff or Plaintiff's employer. This response should include any correspondence between the Plaintiff's employer and any entity, subsidiary, broker, predecessor in interest, or your agents.

10.    Produce any and all internal memorandum, correspondence, email or guidelines detailing the manner in which the Plaintiff's claim was to be investigated, including any and all documents

3

of your subsidiaries, or predecessors in interest, detailing the steps to be undertaken in the

investigation of the Plaintiff's claim.

11.    Produce documents detailing the organizational structure of the claims handling

departments to include appellate departments, investigational departments, reference

departments, medical departments or any other departments which played any role in the

adjudication, administration and/or investigation of the Plaintiff's claim, or provided any

services in relation to the administration of the Plaintiff's claims.  These documents should

identify, among others, those persons who were involved in the adjudication and/or

administration of the Plaintiff's claims, and those individual supervisors and/or consultants who

were involved in the administration and/or adjudication of Plaintiff's claims.

12.    Produce all electronically stored information referencing or pertaining to the Plaintiff's

claim.

13.    Produce curriculum vitae for any medical personnel, to include nurses, doctors, surgeons,

whether RNs, LPNs, or MD's, or Ph.D.'s who reviewed and/or consulted on the Plaintiff's claim,

medical records or any other materials related to the Plaintiff's claim for benefits.

14.    Produce any and all documentation, to include checks, authorizations for payment, or any

other documentation detailing the amount paid or that may be paid to the Plaintiff under any

policy purchased by the Plaintiff or in which the Plaintiff is a designated beneficiary.

15.    Produce all file folders, adjacent exhibit folders, documents, communications, and/or

investigator reports pertaining to the Plaintiff.

16.    Produce all "administrative messages", emails, or any other form of internal

communication, reflecting or relating to any communications  referencing or pertaining to the

Plaintiff's claim for benefits.

17.    Produce all documents referencing or regarding to the Plaintiff prepared by or provided to any physician or medical professional employed by or retained by you or any person or entity acting on your behalf.

18.    Produce all documents created by or provided by you, your consultants, employees, subsidiaries, or predecessors or successors in interest, regarding the assessment of the Plaintiff's medical condition and how that condition may affect the Plaintiff's ability to work.

19.    Produce all documents reflecting financial bonuses, incentives, stock options, honors, awards, or any other type of compensation or program available to company personnel working with the departments directly responsible for the adjudication or assessment of the Plaintiff's claims.

20.    Produce all documents relating to rewards, bonuses, awards, incentives, or remuneration, whether financial or not, given to any of your employees who handled the Plaintiff's claims.

21.    Produce any internal audit reports, or any document evidencing said internal audit of the files handled by your employees who worked on the Plaintiff's claim.  This request for production is intended to garner those documents within your possession, custody or control, that document any internal audit conducted of the Plaintiff's claim files.

22.    Produce all documentation prepared by you or on your behalf that reflects, refers, or establishes those duties of the Plaintiff's occupation before the Plaintiff filed a claim.

23.    Produce any statement, telephone recording or tape conversation which reflects Plaintiff's conversations or communications with you, your employees, agents, or representatives.

24.    Produce any tapes or recordings in unedited format, by whatever media, including any surveillance tapes, of the Plaintiff.

5

25.     Produce a complete customer care center claims manual or claims manual or customer care manual and procedure manuals to include any additions, revisions, deletions, or other changes that have been made to said manuals which were used or available for use in the adjudication and/or administration of the Plaintiff's claims.

26.     Produce documents that in any way refer, reflect, or relate to the proper method of handling claims involving those medical conditions specified within the Plaintiff's claim and those conditions assessed by you or your employees or consultants. This response should include those documents used by your employees to evaluate the Plaintiff's medical condition; and studies you have undertaken with respect to the nature, treatment and care of the Plaintiff's medical condition.

27.     Produce the customer profiles/account management database documents referring or relating in any way to the Plaintiff's claim or the group policies.

28.     Produce any and all documents referring or relating in any way to the Plaintiff's claim or the manner in which the Plaintiff's claim is to be managed.

29.     Produce and identify by Bates number <u>every medical report</u> referencing or referring to the Plaintiff. This response should include any internal memorandum regarding the Plaintiff's claims, to include any documentation generated by your agents or employees reviewing information pertaining to the Plaintiff's application for benefits.

30.     Produce any documentation detailing the amount of reserves assigned to the Plaintiff's claim to include any documentation of the amount of benefits to be paid on the Plaintiff's claims.

31.     Produce copies of all computer database documents that refer or relate to Plaintiff and were not placed into the Plaintiff's claim file, especially those documents that indicate policies and procedures to be utilized in the adjudication of the Plaintiff's claim.

6

32.    Produce all records detailing your document retention policy with regard to what documents are to be maintained with the claim file, what documents are to be maintained in other databases, or other files, what documents are to be produced in response to requests for production, and what documents are to be destroyed.

33.    In responding to these requests for production, if you have, by way of reference to a general objection or by offering a specific objection to any individual request, claimed a right to protection from discovery of certain documents by operation of the attorney-client privilege, the work product doctrine, or any other privilege afforded under law, please state the following with respect to each such document for which said privilege is asserted:

    (a)    The date of the document;

    (b)    The author(s) of the document;

    (c)    Each addressee or recipient of the document including carbon copy and blind copyholders;

    (d)    The factual basis for your privilege claimed;

    (e)    The specific privilege claimed; and

    (f)    The location of the document.

Thomas O. Sinclair
Attorney for Plaintiff

**OF COUNSEL:**
Campbell, Gidiere, Lee, Sinclair & Williams
Suite 450, 2100-A SouthBridge Parkway
Birmingham, AL 35209
(205) 803-0051

7

## CERTIFICATE OF SERVICE

I hereby certify that on 19th day of November, 2007 I deposited the above and foregoing in the United States Mail, with correct postage and properly addressed to the following:

**Attorneys for Life Insurance**
**Company of North America**
Grace Robinson Murphy
William B. Wahlheim, Jr.
John David Collins
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203-2602


OF COUNSEL

8

# EXHIBIT
# B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

CATHY CLEILAND;                                    )
                                                   )
    Plaintiff,                                 )
                                                   )
v.                                                 )    Civil Action No.:
                                                   )    2:07-CV-00486-MEF-SRW
LIFE INSURANCE COMPANY OF                          )
NORTH AMERICA;                                     )
TEMPLE-INLAND DISABILITY HEALTH                    )
AND WELFARE PLAN; and                              )
TEMPLE INLAND FOREST PRODUCTS                      )
CORPORATION;                                       )
                                                   )
    Defendants.                                )

## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION
## TO LIFE INSURANCE COMPANY OF NORTH AMERICA

COMES NOW the Plaintiff, Cathy Cleiland, and requests that the Defendant Life

Insurance Company of North America (hereinafter referred to as "You", "Your", or "Yours")

answer the following Requests for Production, separately, severally, fully, in writing and under

oath within thirty (30) days from the date of service hereof.

### INSTRUCTIONS

A.    **Use of Rule 33 in Responses**

If responding to a request for production by reference to documents produced, <u>specifically identify those</u>

<u>portions of specific documents identified by Bates number</u> that you contend respond to each individual request for

production.

B.    **Use of "General Objections"**

If offering in prefatory statements or referencing in specific responses "General Objections" in response to

a request for production, <u>cite specifically to each general objection applicable to the individual request for</u>

<u>production</u>.

C.    **Objections based on "Attorney / Client" privilege or the "Work Product" doctrine**

If objecting to a request for production on the basis of attorney / client or work product privilege (either through reference to General Objections or within the response to the individual request), produce a Privilege Log as required by the applicable Rules of Civil Procedure.

## **REQUEST FOR PRODUCTION**

1.      Please produce the "services agreement" executed by CIGNA/LINA and Advantage 2000 Consultants, Inc., dated January 1, 2002."

2.      Please produce a second Amendatory Agreement executed by these parties, dated July 1, 2005.

3.      Please produce "an Addendum Request for Proposal submitted by Advantage 2000 Consultants, Inc., dated September 21, 2001."


_____
Thomas O. Sinclair
Attorney for Plaintiff

**OF COUNSEL:**
Campbell, Gidiere, Lee, Sinclair & Williams
Suite 450, 2100-A SouthBridge Parkway
Birmingham, AL 35209
(205) 803-0051

## CERTIFICATE OF SERVICE

I hereby certify that on 16th day of January, 2008 I deposited the above and foregoing in the United States Mail, with correct postage and properly addressed to the following:

**Attorneys for Life Insurance**
**Company of North America**
Grace Robinson Murphy
William B. Wahlheim, Jr.
John David Collins
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203-2602

OF COUNSEL

3