IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CATHY CLEILAND;          )<br>                          )<br>    Plaintiff,         )<br>                          )<br>v.                        )<br>                          )<br>LIFE INSURANCE COMPANY OF )<br>NORTH AMERICA;            )<br>TEMPLE-INLAND DISABILITY  )<br>HEALTH AND WELFARE PLAN; and )<br>TEMPLE INLAND FOREST PRODUCTS )<br>CORPORATION;              )<br>                          )<br>    Defendants.           ) | Civil Action No.:<br>2:07-CV-00486-MEF-SRW |

**REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, Cathy Cleiland, and files this Reply to Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. # 31). The Defendants have refused to produce evidence of the agency relationship between themselves and Advantage 2000 Consultants ("A2K") (*See* Doc. # 28, Plaintiff's Motion to Compel) at the same time they move to strike the evidence gathered by their agent (Doc. # 30) and now argue that Plaintiff must produce more evidence of that agency relationship. Defendants' assertions require the service agreements between A2K and LINA be produced. Defendants' Response also further illustrates their improper practice of selectively discrediting evidence

1

submitted by unbiased attending physicians by asserting that this Honorable Court should give *less* deference to and mischaracterizing that same evidence. Finally, Defendants fail to show why they should avoid the strict liability imposed by 29 U.S.C. § 1132(c).

For these reasons, as set forth more fully herein, and those reasons included in Plaintiff's Motion for Summary Judgment (Doc. # 22) and Response to Defendants' Motion for Summary Judgment (Doc. # 32), Plaintiff's Motion for Summary Judgment is due to be granted.

**I.     Defendants' Response Fails to Directly Address Plaintiff's Agency Argument and Makes Necessary the Production of the Service Agreements Between Defendants and A2K.**

In Defendants' Reply, they assert that Advantage 2000 Consultants' actions in representing Plaintiff in her claim for SSDI benefits are irrelevant in this ERISA action. It is clear that Defendants wish to avoid the liability resulting from the evidence gained and representations made during Plaintiff's claim for SSDI benefits. Unfortunately for Defendants, A2K was clearly acting as Defendants' agent in its investigation and representation of the Plaintiff and therefore Defendants are bound by the knowledge gained and representations made in that prior judicial action. Moreover, Defendants' strong assertions that A2K is merely "an outside SSDI benefits consulting firm" and is not their agent puts the service agreements between those Defendants and A2K directly at issue and this Court

should therefore order their production. Finally, Defendants attempt to obfuscate Plaintiff's judicial estoppel argument by arguing that they are not bound by the SSA determination of disability, where the issue is their representations to the SSA that Plaintiff could not work in any job in the national economy.

### A. Plaintiff Has Presented Sufficient Evidence of an Agency Relationship Between Defendants and A2K.

In their Reply, Defendants erroneously state that "Plaintiff has not presented any evidence [presumably Defendants are referring to the contract they refuse to produce] suggesting agency other than the fact that Defendants paid for A2K's services in representing Plaintiff." Defendants choose to ignore that, beginning in 2006, not only has Plaintiff attempted to obtain a copy of the service agreements between Defendants and A2K but she has also attempted to submit the medical documentation garnered by A2K to the Defendants in support of her claim. *See* Exhibits A[1] and B. It is disingenuous for Defendants to argue that Plaintiff should have submitted the A2K documents in support of her claim for LTD benefits when Plaintiff attempted to do just that and Defendants thwarted her efforts, perhaps

---

[1] Plaintiff's counsel attempted to obtain copies of the A2K documents and have that medical documentation submitted to Defendants by letter dated October 27, 2006, which states:

> I need copies of the information provided to the Social Security Administration by your agent Advantage 2000. I understand they collected substantial medical records in an effort to assist you in off-setting the amount of liability under the terms of the policy. Given the vast amount of correspondence between your offices and Advantage 2000, it appears to me that Advantage 2000 does a lot of work for you folks **and it would seem more than reasonable that you would want to get hold of the medical records that your agent used to assist [Plaintiff] in obtaining Social Security disability benefits.**

3

because the as-yet unproduced service agreements between the Defendants and A2K prohibits such information to be provided.

Defendants also ignore the evidence Plaintiff has submitted in support of her agency argument, namely that Defendants hired A2K and paid for its services and Defendants were constantly involved with and kept apprised of Plaintiff's claim for benefits, as is evidenced by Exhibit H (Doc. # 24-3 to 24-7) to Plaintiff's Motion for Summary Judgment. Moreover, Defendants profited from A2K's actions in obtaining SSDI benefits for the Plaintiff in the amount of approximately $25,000[2].

Exhibit H to Plaintiff's Motion for Summary Judgment provides more than sufficient evidence that A2K was acting as Defendants' agent in its investigation and representation of Plaintiff in her claim for SSDI benefits.[3] From the beginning of A2K's representation of Plaintiff, it notified her that its services were "provided by [Defendants]" and that an award of SSDI benefits would result in an "<u>LTD company representative</u>" contacting Plaintiff to coordinate her repayment to LINA. *See* Doc. # 24-3 at ADVANTAGE003 & 004. The "LTD company representative" who contacted Plaintiff to coordinate her repayment was none other than Advantage 2000 itself. *See* Exhibit I at LINA/Cleiland 0800-0801. Moreover,

---

[2] Defendants make the tenuous argument that they has not profited from A2K's actions because its assistance of Plaintiff in her claim for SSDI benefits and resulting recovery of $25,000 from Plaintiff is "contemplated and authorized by the insurance contract and a standard practice throughout the disability insurance industry." Obviously what constitutes standard industry practice or is authorized by the insurance contract is irrelevant as to whether Defendants *profited* by recovering $25,000 from Plaintiff.

[3] Not surprisingly, this is the Exhibit Defendants are desperate to strike from Plaintiff's Motion for Summary Judgment. *See* Doc. # 30 (Defendant's Motion to Strike Exhibit H).

4

A2K worked in concert with Defendants in every step of the process, notifying Defendants when A2K "received the initial claim proof of application for [Plaintiff]"[4], forwarding Defendants the Notice of SSDI's fully favorable decision,[5] working with Defendants to determine the amount of "overpayment" to collect from Plaintiff and keeping Defendants apprised of A2K's collection efforts on its behalf.  *See* Doc. # 24-3 to 24-7.

The authorizations signed by the Plaintiff provide further evidence of agency on behalf of Defendants and A2K, where those documents "authorized Advantage 2000 Consultants to release information about [Plaintiff's] Social Security claim and benefits to [Plaintiff's] LTD plan."  *See* Doc. # 24-4 at ADVANTAGE051. Moreover, the Authorization signed by Plaintiff expressly provides that "this information from Advantage 2000 ***will be used*** by my long term disability insurer/administrator[.]"  *Id.*  (Emphasis added).

Perhaps most telling is the fact that the record reveals that A2K actually requested Plaintiff's medical documentation from Defendants during Plaintiff's claim for SSDI benefits but, perhaps knowing that those records were purposely garnered to ***not*** evidence disability, continued to garner additional medical documentation of its own.  *See* Doc. # 24-3 (Exhibit H) at ADVANTAGE041

---

[4] Doc. # 24-3 at ADVANTAGE042.
[5] Doc. # 24-3 at ADVANTAGE033.

(Email from A2K to Defendants stating "please send us any medical information you have for Ms. Cleiland").

Defendants' assertion that Plaintiff has offered only the fact that Defendants paid for A2K's services in support of her agency argument is completely erroneous. Rather than rebut Plaintiff's agency argument, Defendants now attempt to strike their agent's files from the record in an effort to rid the record of clear evidence of disability and agency. Defendants' tactic is especially improper where, as here, Defendants have refused Plaintiff's attempts to obtain A2K's files and the service agreements between the Defendants and A2K for two years and have thwarted Plaintiff's efforts to have those files submitted to Defendants in her claim for LTD benefits.

> B. Defendants Should Be Required to Produce Their Service Agreements with A2K Due to Their Assertions that A2K is not Their Agent and that A2K is merely an "outside SSDI benefits consulting firm."

It is clear that A2K is not merely an "outside SSDI benefits consulting firm" but that it was Defendants' agent in representing Plaintiff in her claim for Social Security Disability benefits. If, however, this Honorable Court is not satisfied that the facts presented thus far sufficiently prove Defendants' and A2K's agency relationship, then it should order Defendants to produce the service agreement between Defendants and A2K, which Plaintiff has been attempting to obtain since

6

the beginning of this litigation. *See* Exhibits A & B; *see also* Doc. # 23, Plaintiff's Motion to Compel.

Whether a services agreement between two parties reserves the right to the principal to control the manner of its agent's performance is a factor that is properly considered in a Court's determination of whether an agency relationship exists. *See Ex parte Paulk*, 722 So. 2d 171, 173 (Ala. 1998) ("The test to be applied in determining the existence of an agency relationship under the doctrine of respondeat superior is whether the alleged principal reserved a right of control over the manner of the alleged agent's performance."). Defendants should not be permitted to benefit from their refusal to produce the service agreements by claiming Plaintiff has not proven an agency relationship between Defendants and A2K when Plaintiff has actively attempted to obtain this agreement from Defendants since at least 2006 and where there is an outstanding Motion to Compel its production. *See* Exhibits A & B; *see also* Doc. # 23, Plaintiff's Motion to Compel.

Plaintiff therefore respectfully requests that if this Honorable Court determines insufficient evidence has been presented to find an agency relationship between Defendants and A2K, which Plaintiff asserts sufficient evidence has been presented, that the Court order Defendants to produce their service agreements with A2K.

      C. Defendants Are Attributed With the Knowledge of Their Agent and Judicially Estopped by the Representations Made in the SSDI Proceeding.

In addition to attempting to remove evidence of agency from the record, Defendants attempt to obfuscate Plaintiff's argument that they are 1) charged with the knowledge of their agent, A2K, and 2) judicially estopped from asserting that Plaintiff can work. Rather than attack these arguments head-on, Defendants merely assert that they "clearly did not have the documents obtained or utilized by A2K during the SSDI process before it when it made its claims decision" and that they are not legally bound by the SSA's determination of disability.

The question of whether Defendants had possession of the documents garnered by A2K when Defendants made the decision to deny Plaintiff's claim for LTD benefits is irrelevant. Defendants' actual possession is irrelevant because the knowledge of one's agent is imputed to him, especially where a principal has accepted the benefit of its agent's actions. *See* Plaintiff's Brief in Support of Motion for Summary Judgment (Doc. # 24) at 20-21. Finally, Plaintiff does not argue that the Social Security Administration's finding of disability is binding on Defendants but rather that Defendants' representation that Plaintiff is not capable of working in any occupation in that prior judicial proceeding renders Defendants judicially estopped from asserting that Plaintiff is capable of working in any occupation in this judicial proceeding.

## II. Defendants' Response Further Illustrates Their Arbitrary Refusal to Credit Plaintiff's Reliable Evidence in Support of Her Claim.

Defendants' Reply asserts that this Court should give Plaintiff's attending physician's sworn deposition testimony and vocational analysis report less deference because they were submitted by Plaintiff during her administrative appeal, after she had obtained counsel. *See* Doc. # 31 at 16 ("The sworn statement [of Plaintiff's attending physician] and the vocational assessment ***should be given decreased deference***[.]"). Defendants offer no legal support for this argument, ostensibly because it is not a legally supported position.

Defendants' Reply clearly supports Plaintiff's argument that they "arbitrarily refuse[d] to credit [Plaintiff's] reliable evidence" in support of her claim for LTD benefits. *See* Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. # 32) at p. 13-17. Moreover, Defendants continue this improper practice to this day by mischaracterizing the deposition testimony of Plaintiff's attending physician in suggesting that his objective observations somehow contradict Plaintiff's subjective complaints of pain when his deposition clearly ***supports*** Plaintiff's complaints. *See* Doc. #31 at 15-16. ("Thus, when her doctor's <u>objective</u> observations are considered, Plaintiff's self-reported descriptions of pain are put in context and do not provide 'satisfactory proof' of her inability to perform even a sedentary occupation.").

Defendants have been in possession of Plaintiff's attending physician's sworn statement since November 2006, which provides as follows:

Q. Let me ask you, wouldn't Ms. Cleiland's complaints – in light of these procedures, would her current pain complaints be reasonable?

A. Absolutely.

Q. Okay. Are her current complaints of pain reasonably related to these surgical procedures or the – I'm sorry. Let me say that again. Are her current pain complaints reasonably related to her diagnosed conditions?

A. Absolutely.

Doc. # 24-12 (Exhibit N) at CLE00183.

Defendants' continued refusal to credit Plaintiff's reliable evidence in support of her claim for LTD benefits and their insistence on mischaracterizing the same is further evidence of their arbitrary and capricious denial of her claim.

### III. It is Undisputed that Defendants Did Not Satisfy the Requirements of 29 U.S.C. § 1132(c).

Defendants' Response fails to show why they should not be held strictly liable pursuant to 29 U.S.C. § 1132(c)[6] for their failure to produce all required documents to Plaintiff. Rather, Defendants assert that Plaintiff has suffered no prejudice as a result of their failure to produce and therefore they should not be

---

[6] Although Defendants eagerly assert that "Plaintiff cites the wrong code provision for ERISA's penalty claim, 11 U.S.C. § 1132(c), instead of 29 U.S.C. § 1132(c)," this admitted typo appears only on pages 29 and 30 of Plaintiff's Brief in Support of her Motion for Summary Judgment and does nothing to relieve Defendants of their liability. Contrary to Defendants' assertion, Plaintiff's Complaint properly assert a claim pursuant to 29 U.S.C. § 1132(c).

held liable. Defendants fail to acknowledge that 29 U.S.C. § 1132(c) imposes strict liability for failure to produce and that Plaintiff is not required to make a showing of prejudice. *See Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.2d 1223, 1232 (11th Cir. 2002). (In "*Curry*[7], [the Eleventh Circuit] explicitly rejected treating prejudice as a prerequisite to a penalty. The penalty under § 1132 is meant to be in the nature of punitive damages, designed more for the purpose of punishing the violator than compensating the participant or beneficiary.").

Moreover, Defendants incorrectly state the dates that they received Plaintiff's request for documents. Plaintiff sent her requests via certified mail and the certified mail receipts clearly show that the employer Defendants received their request on August 7, 2006 and the insurance company Defendants received their request on September 5, 2006. *See* Doc. # 24-15 (Exhibits P & Q).

Finally, it is undisputed that Defendants have failed to produce copies of <u>all</u> of the policies to which Plaintiff is entitled benefits, specifically including Plaintiff's own life insurance policy. *See* Exhibit B ("Please contact Temple-Inland Corporate Services" for a copy of the life insurance policy.). 29 CFR 2560.503-1 (h)(2)(iii) provides that Plaintiff should have been provided copies of "all documents, records and other information <u>relevant</u> to [her] claim for benefits." 29 CFR 2560.503-1(m)(8) defines "relevant" as all documents, records or other

---

[7] *Curry v. Contract Fabricators, Inc.*, 891 F.2d 842 (11th Cir. 1990), *abrogated on other grounds by*, *Murphy v. Reliance Stand. Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001).

11

information which was "relied upon in the making of the benefit determination", or "was submitted, considered, or generated in the course of making the benefit determination, "*without regard to whether such document, record or other information was relied upon in making the benefit determination*", and "demonstrates compliance with the administrative processes and safeguards required."  The Department of Labor defines "relevant" in order to ensure procedural safeguards.  Contrary to Defendants' assertion, the definition of what constitutes "relevant" documents is not left to Defendants.

Plaintiff's request included "any 'relevant ERISA documents, plan documents, claim file documents, any manuals, disability guidelines, or any other documents pertaining to the guidelines under which the claim was determined, and any brochures, handbooks, employee benefit guides, pension plan documents detailing any and all benefits provided to" Plaintiff.  Doc. # 24-15 (Exhibits P-Q).  Defendants have not provided Plaintiff with copies of all policies to which she may be entitled to benefits, including her own life insurance policy.  Defendants have also failed to produce copies of their claims manual or guidelines that were used in determining Plaintiff's claim for benefits, to determine whether Defendants followed their own administrative procedures in their determination of Plaintiff's claim.  Defendants have clearly failed to meet the burden imposed by 29 U.S.C. § 1132(c).

Moreover, the insurance company Defendants are not immune from the requirements of 29 U.S.C. § 1132(c) as Defendants assert in their Reply, especially where the insurance company Defendants characterize themselves as the administrator in numerous pleadings and claim that they alone are capable of determining what constitutes the administrative record. *See Hunt v. Hawthorne Associates, Inc.*, 119 F.3d 888 (11th Cir. 1997) (holding that the company actually administering the claim can be held liable for failing to produce the documents pertaining to the ERISA plan); and *Hamall-Desai v. Fortis Benefits Ins. Co.*, 370 F. Supp. 2d 1283, 1311-1312 (N.D. Ga. 2004) (Holding that an insurer was liable for failure to produce documents pursuant to 29 U.S.C. § 1132 (c) where, although not listed as "administrator" in the plan, the insurer was the "decision-maker" regarding benefits and argued that the only facts that should be considered by the Court in an ERISA action are those before it, the *administrator*.).

It is uncontroverted that the insurance company Defendants decide entitlement to benefits, exercise all discretionary authority and are responsible for paying out of their own funds any payments on Plaintiff's claim. While the Policy at issue may designate the employer Defendants as the "Administrator", the insurance company Defendants are in fact the *de facto* administrators given their involvement in the denial of benefits. See e.g., Rosen v. TRW, Inc., 979 F.2d 191, (11th Cir. 1992) ("Some older cases hold that the company is not the proper

defendant in an ERISA case solely because the plan instrument designates a plan administrator . . . We disagree with these opinions because they elevate form over substance.  If the company is acting as a plan administrator, then it should be held liable for such conduct regardless of a sham designation in the plan document.").

Defendants' argument that despite the insurance company defendants' involvement, they cannot be held liable under ERISA is nothing more than a shell game.  They are the *de facto* administrators of Plaintiff's policy and are clearly strictly liable pursuant to 29 U.S.C. § 1132(c).

## IV. Conclusion

For the reasons stated herein and those reasons set forth in Plaintiff's Motion for Partial Summary Judgment (Doc. # 22) and Response to Defendants' Motion for Summary Judgment (Doc. # 32), Plaintiff's Motion for Partial Summary Judgment is due to be granted.  Plaintiff therefore respectfully requests this Honorable Court grant her Motion for Partial Summary Judgment and deny Defendants' Motion for Summary Judgment.

In the alternative, and only if this Honorable Court is not satisfied by the evidence submitted thus far in support of Defendants' and A2K's agency relationship, Plaintiff respectfully requests this Honorable Court order Defendants to produce the service agreement between Defendants and A2K and reserve its

...

ruling until Plaintiff has had the opportunity to supplement its Motion for Summary Judgment with said agreement.

/s/ Jenifer Champ Wallis
One of the Attorneys for Plaintiff


**OF COUNSEL:**
Thomas O. Sinclair
Jenifer Champ Wallis
CAMPBELL, GIDIERE, LEE, SINCLAIR & WILLIAMS
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
T: (205) 803-0051
F: (205) 803-0053


## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 5th day of March, 2008, a copy of the foregoing was filed electronically using this Court's electronic filing system. Notice of this filing is due to be served by operation of the Court's electronic filing system to the following parties indicated on the electronic filing receipt as participants in the Courts CM/ECF system:

**Attorneys for Defendants**
William B. Wahlheim, Jr.
John David Collins
Grace Robinson Murphy
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203-2602

/s/Jenifer Champ Wallis
Of Counsel

# EXHIBIT A

CAMPBELL
WALLER &
POER, L.L.C.

2100-A Southbridge Pcay • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR

October 27, 2006

Ms. Karol Johnson
Senior Appeal Specialist
CIGNA Group Insurance
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

  **Re:**       **Cathy Cleiland**
  **Plan/Policy Holder:**  **TEMPLE INLAND CORPORATE SERVICES**

Dear Ms. Johnson:

  I am in receipt of your October 23, 2006 correspondence providing a copy of the long term disability claim file for Ms. Cleiland. I need the following information in addition to what you have produced:

  1. Copies of any other policies administered. Please be advised that this claim is not limited to simply the long term disability or the short term disability policies provided through Temple Inland Corporate Services. I understand there to be life insurance policies, which may in fact include life premium waivers, and as such those claims need to be processed as well.

  2. I need copies of the information provided to the Social Security Administration by your agent Advantage 2000. I understand they collected substantial medical records in an effort to assist you in off-setting the amount of liability under the terms of the policy. Given the vast amount of correspondence back and forth between your offices and Advantage 2000, it appears to me that Advantage 2000 does a lot of work for you folks and it would seem more than reasonable that you would want to get hold of the medical records that your agent used to assist Ms. Cleiland in obtaining Social Security disability benefits.

  3. I need a copy of the claims manual in order to assist me in assessing the manner in which this claim is be administered under the terms of the policy and the manner in which any parties may be exercising any specifically assigned discretion under the terms of the policy.

I look forward to receiving your production in the near future.

Sincerely yours,

Thomas O. Sinclair

TOS/me
Enclosures
cc:    Ms. Cathy Cleiland
       Terry G. Key, Esquire

# EXHIBIT B





*CIGNA Group Insurance*
D212
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243-9337

Phone: 800-352-0611 ext. 1249
Fax: 860-731-3211

**CIGNA Group Insurance**
Life · Accident · Disability

MR. THOMAS SINCLAIR, ATTORNEY AT LAW
2100-A SOUTHBRIDGE PARKWAY
SUITE 450
BIRMINGHAM, AL 35209

November 13, 2006

| | |
|---|---|
| Name: | CATHY CLEILAND |
| Incident Number: | 613165 |
| Plan/Policy Number: | FLK0020104 |
| Plan/Policy Holder: | TEMPLE INLAND CORPORATE SERVICES |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. SINCLAIR,

In reference to your request for information dated October 27, 2006 concerning Ms. Cleiland's Long Term Disability claim, please note the following:

1. Copies of any other policies administered: As the Appeals team did not administer the Short Term Disability claim, please contact Temple Inland Corporate Services for this information. In reference to the Life Insurance Policy, please contact Temple Inland Corporate Services for this information.
2. Copies of information provided to SSA by Advantage 2000: Please note that we do not have this information.
3. Request for claims manual: Please be advised that the information requested is considered to be confidential and proprietary information and is not intended for duplication or distribution. Furthermore, nothing contained in this requested information was solely relied upon in the determination of the above referenced claim.

Please contact our office at 800-352-0611 ext. 1249 should you have any questions.

Sincerely,

*Medha Bharadwaj*

Medha Bharadwaj, FLMI, ACS
Appeal Claim Manager

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.