IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CATHY CLEILAND,<br><br>　　Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA, TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN, and TEMPLE INLAND FOREST PRODUCTS CORPORATION,<br><br>　　Defendants. | CIVIL ACTION NO.<br>2:07-CV-00486-MEF-SRW |

## DEFENDANTS' REPLY SUBMISSION IN SUPPORT OF SUMMARY JUDGMENT

Defendants Life Insurance Company of North America ("LINA"), Temple-Inland Disability Health and Welfare Plan and TIN, Inc., formerly known as Temple Inland Forest Products Corporation (collectively "Defendants") submit this Reply in support of their Motion for Summary Judgment. For the reasons set forth in Defendants' initial submission and herein, the decision to deny Plaintiff's claim for continuing long-term disability ("LTD") benefits was correct and, at the very least, reasonable and not arbitrary and capricious. Accordingly, LINA's decision should be affirmed and summary judgment entered in Defendants' favor. Also, as Plaintiff did not oppose Defendants' Motion for Summary Judgment on her claim for document withholding penalties[1], judgment should be entered in all Defendants' favor on Count II of Plaintiff's Complaint as well. Lastly, although Plaintiff abandons her equitable estoppel claim in

---

[1] While Plaintiff does allege in her response to Defendants' Statement of Facts that "Defendants continue to refuse to produce all applicable plan documents to which Plaintiff is entitled," she does not identify <u>any</u> <u>specific</u> document for which she supplied a written request and failed to receive a response. She also does not counter LINA's position that document withholding penalties are not proper against any entity other than a plan administrator. Plaintiff's one conclusory statement regarding document does not constitute substantial evidence of a production violation sufficient to preclude entry of summary judgment in all Defendants' favor on Count II of Plaintiff's Complaint.

1

favor of a judicial estoppel argument, neither carries the day as Plaintiff cannot make out an ERISA equitable estoppel claim and because LINA did not make an inconsistent statement that unfairly advantaged Defendants, her judicial estoppel claim must fail as well.

## I. INTRODUCTION

Plaintiff's Opposition Brief clarifies that Plaintiff cannot dispute Defendants' Motion for Summary Judgment on her penalty claim and her equitable estoppel claim. Instead of admitting this, however, Plaintiff attempts to amend her Complaint mid-way through summary judgment briefing to substitute "judicial estoppel" for "equitable estoppel". This tactic is unavailing as Plaintiff cannot show that the third party who LINA engaged to provide Plaintiff with SSDI assistance is the "same party" as LINA and that these parties made "inconsistent statements" thereby gaining an "unfair advantage." Rather than focusing on the merits of this claim, Plaintiff's Opposition reads more like an indictment of the disability industry, as it is standard fare for insurers to collect overpayments and to assist claimants in obtaining social security benefits, regardless of the ultimate claims decision.

With respect to Plaintiff's claim for long-term disability ("LTD") benefits, LINA has always acknowledged that it both insures and administers the Policy under which Plaintiff sought benefits. If this Court's analysis even reaches the question of whether LINA's decision was wrong, but reasonable, case law in this Circuit is abundantly clear that LINA can meet its burden of showing its decision was not tainted by self-interest by requiring objectively reliable evidence of continued disability as acknowledged by district courts and as discussed herein. This is a hurdle that Plaintiff cannot get over. Despite multiple opportunities to produce documents in support of her claim for ongoing benefits, Plaintiff's proof falls short. Nothing produced by Plaintiff provided LINA with <u>objective</u> evidence as to her <u>functional</u> inability to perform a

sedentary occupation. Without this kind of evidence before it, LINA made the correct, and certainly reasonable, decision to terminate Plaintiff's LTD claim. Accordingly, Defendants' Motion for Summary Judgment should be granted in its entirety.

## II.    ARGUMENT

### A. **Whether Described as Equitable or Judicial Estoppel, Plaintiff's Estoppel Claim Still Fails**.

Plaintiff's creative attempt to reinvent her estoppel claim as judicial, as opposed to equitable, estoppel does not prevent this Court from entering judgment in Defendants' favor. In their initial brief, Defendants pointed out that Plaintiff's equitable estoppel claim was preempted by ERISA and fails as a matter of law as Plaintiff could point to no ambiguity in the Plan or a purported interpretation of that ambiguity. Plaintiff then turned to judicial estoppel to try to salvage her argument that LINA's engagement of a third party to assist Plaintiff with her SSDI benefits application before the Social Security Administration ("SSA") somehow estops it from arguing to this Court that Plaintiff is not entitled to ongoing LTD benefits under a group policy.

Judicial estoppel "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts." *Crider v. Misty Acres, Inc.*, 893 So.2d 1165, 1172 (Ala. Civ. App. 2004) quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996). There must be proof of actual prejudice to the other party. *Lewis v. First Tuskegee Bank*, 2007 WL 778559, *4 (Ala. Civ. App. Mar. 16, 2007) (determining judicial estoppel inapplicable where court could find no unfair detriment imposed upon other party).

Plaintiffs are unable to satisfy the requirements for judicial estoppel recited in Plaintiff's Opposition Brief. As an initial matter, Advantage 2000 Consultants, Inc., ("A2K") and LINA

are simply not the same parties. A2K is an independent firm specializing in Social Security disability benefits. LINA is an insurance company that issues and administers group long-term disability policies. As demonstrated in Defendants' Opposition Brief, A2K is not the agent of LINA. *See* Doc. 31 at pp. 11-15. Rather, LINA engaged the services of A2K on this claim to assist Plaintiff obtain governmental aid from the SSA. Therefore, A2K and LINA should not be treated as the same party and any position taken by A2K should not be imputed to LINA for estoppel purposes.

Moreover, A2K and LINA have not asserted "inconsistent" positions. A2K represented to the SSA in October 2003 that Plaintiff was disabled according to their government program standards and based on the evidence generated by the SSA and provided to the Administrative Law Judge. (AR at 809). LINA, on the other hand, determined, based on the record before it (which did not include the A2K file), that Plaintiff did not continue to meet the definition of disability in Group Policy No. FLK 20104 as of November 21, 2005 (two years later). (AR at 732-35). As discussed in previous submissions which arguments are incorporated herein, the SSA and group insurers use completely separate standards and one decision is not binding on another. *See* Doc. 31 at pp. 14-15; *see also Curran v. Kemper Nat'l Servs., Inc.*, 2005 WL 894840, *7-8 (11th Cir. Mar. 16, 2005). Thus, it is wholly inaccurate to describe A2K and LINA as taking "inconsistent" positions when their positions were necessarily never the same, nor even <u>related</u> to each other.

With respect to the last factor, Defendants have not gained an "unfair advantage" from Plaintiff's award of SSDI benefits. While Plaintiff may not like it, the offset of SSDI benefits is purely a contractual matter. The insurance contract entered into by Plaintiff's former employer and LINA specifically provided for a dollar for dollar offset of monthly benefits based upon

receipt of SSDI benefits. In fact, the Policy provided that LINA is entitled to "assume" Plaintiff's receipt of an estimated amount of SSDI benefits and offset accordingly. (AR at 502). Since LINA was <u>always</u> entitled to offset "assumed receipt of benefits," LINA cannot be "unfairly advantaged" by assisting Plaintiff obtain <u>actual</u> benefits. To the contrary, if anyone was advantaged by A2K's assistance and representations to the SSA it was Plaintiff who now receives a monthly SSDI benefit that has continued past the denial of LTD benefits.

By not opposing Defendants' arguments as to why her equitable estoppel claim fails as a matter of law in this ERISA-preempted case, Plaintiff has conceded judgment in Defendants' favor is warranted under Count III of her Complaint. Instead of overtly acknowledging this, Plaintiff now attempts to pass off her once-named "equitable estoppel" claim as "judicial estoppel." This maneuver does not rescue this claim, however, as Plaintiff cannot demonstrate how judicial estoppel is appropriate under these circumstances when two <u>different</u>, unrelated parties made <u>different</u> representations to <u>different</u> judicial bodies, and Plaintiff <u>benefited</u> from one of those representations.

### B. Even Under a Presumed Conflict of Interest, LINA's Decision Must be Upheld.

Contrary to Plaintiff's assertion, Defendants have not retreated from LINA's status as both the claims administrator and the underwriter for the Plan. Rather, Defendants agree that, if this Court finds its decision wrong, but reasonable, then this Court will need to examine the potential impact of LINA's dual role under the applicable *Williams* test. LINA's dual role is standard fare in the vast majority of insured plans. Importantly, the "conflict of interest" steps do not even come into play until the final steps of the analysis, and a district court's review of an administrator's decision routinely will not even reach this "conflict of interest" stage of analysis. *Eldridge v. Wachovia Corp. Long-Term Disability Plan,* 2006 U.S. Dist. LEXIS 11633, *11-12

5

(N.D. Ga. Mar. 6, 2006). As the Eleventh Circuit has stressed, "We cannot overemphasize the importance of the discretion afforded a claims administrator; the underlying premise of arbitrary and capricious, rather than *de novo*, review is that a court defers to the discretion afforded the claims administrator under the terms of the plan." *HCA Health Servs. Of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 994 (11th Cir. 2001). In the event this Court's analysis does necessitate this final step, however, district courts within this Circuit have provided guidance on how to assess the potential "taint of self-interest".

When the burden does shift to the conflicted plan administrator, it may meet its burden by demonstrating "that the opinions and evidence it relied on in denying Plaintiff's claim were, viewed both from a qualitative and quantitative perspective, at least as objectively reliable as the countervailing opinions and evidence then before it." *Wise v. Hartford Life & Accident Ins. Co.*, 360 F. Supp. 2d 1310, 1323 (N.D. Ga. 2005); *see also Tookes v. Metro. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 19416, *36-37 (N.D. Ga. Mar. 31, 2006).

Also, the Middle District of Florida very recently determined that a conflicted defendant "purged itself of its conflict of interest" by requiring <u>objective</u> evidence of a disability. *Creel v. Wachovia Corp.*, 2008 U.S. Dist. LEXIS 14248, *30 (M.D. Fla. Feb. 25, 2008). The Court granted summary judgment for the defendant finding that the defendant's decision was not tainted by self-interest because "requiring objective evidence of a disability benefits all of the participants of the Plan by ensuring that only legitimate claims are paid, thus maximizing assets available to pay legitimate claims." *Id.*

Contrary to Plaintiff's implication in her Opposition, this case is not *Helms v. General Dynamics Corp.*, 222 Fed. Appx. 821 (11th Cir. 2007). First, in the instant case, two medical doctors, as opposed to only nurses, reviewed Plaintiff's claim. Dr. Mendez, the physician who

6

reviewed Plaintiff's claim on appeal, specifically addressed the medical records and highlighted the deficiencies. For example, he reviewed Dr. Wise's medical opinion form where Dr. Wise indicated that although Plaintiff can sit for 8 hours a day and walk and stand for two hours a day, he does not believe Plaintiff can return to full-time work because of cognitive limitations caused by her medications. (AR at 339-41). Dr. Mendez pointed out that Dr. Wise did not provide any cognitive measurements to support this opinion. (AR at 17). Dr. Mendez also stated that Plaintiff's proof of disability was insufficient as it did not document "significant measured physical limitations time-concurrent with the denial date to support continuation of work restrictions." Dr. Mendez does not "hide the ball" with respect to what would have been "satisfactory proof," rather he gives concrete examples of "measured physical limitations" that could have been presented such as "measured range of motion limitations by inclinometry and/or lower extremity significant muscle strength deficits by manual muscle testing." (AR at 17). Instead of these objective reflections of physical capacity, Plaintiff's proof consisted of medical records reflecting her subjective pain ratings and a sworn statement from her treating physician who describes her as a car in a "demolition derby". While Dr. Herrick, who was never even shown the Policy or the definition of total disability that the Plaintiff must meet, discusses (at his one-sided deposition) what patients with Plaintiff's diagnoses <u>may</u> experience, his sworn testimony does not reflect that his office ever recommended Plaintiff undergo the kind of testing recommended by Dr. Mendez, or any other type of functional capacity testing. Although it is undisputed that Plaintiff has a history of back surgeries and is prescribed pain medication to manage her pain, these diagnoses and prescriptions do not support a conclusion that she is disabled under the terms of the Plan from performing <u>any</u> sedentary occupation. The lack of

objective evidence in this case, and in particular no FCE[2] or cognitive functioning test results, speaks more loudly than the evidence in the claims file.

As argued previously, "disability" is a defined term in the Policy that is not derived from mere diagnoses of degenerative disc disease or failed back syndrome. *See Stiltz v. Metro. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 65394, *34 (N.D. Ga. Aug. 30, 2006) *aff'd by* 2007 U.S. App. LEXIS 12973 (11th Cir. June 5, 2007). Under this Policy, Plaintiff must submit satisfactory proof that she is totally disabled from performing the essential duties of any occupation. Plaintiff's individual condition and ability to function in the workplace are the key indicators of whether she is disabled under this Policy definition. A sworn statement from a doctor discussing her diagnosis and treatment in general does not speak to her functional capacity. When, as Plaintiff admitted, she can drive up to fifty miles without stopping (AR at 790), her surgeon released her with "quite good" motor, sensory and reflex testing (AR at 644), and her pain management doctor described her as "comfortable", "alert" and "ambulating normally" (AR at 300, 302), LINA is entitled to require more objective evidence addressing her ability to perform a <u>sedentary</u> occupation. When Plaintiff failed to provide this evidence after multiple opportunities to do so, LINA was correct, and certainly reasonable, in terminating her claim.

## IV. CONCLUSION

As explained above, and for all of the reasons set forth in Defendants' Memorandum of Law in Support of Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, Defendants are entitled to summary judgment on all claims in Plaintiff's Complaint.

---

[2] Even in *Featherston v. Metropolitan Life Insurance Company*, 389 F. Supp. 2d 1302, 1319-20 (N.D. Fla. 2005), a case relied on by Plaintiff, the claims administrator was provided with FCE results to help assess Plaintiff's ability to perform any occupation. Despite these results showing diminished cognitive functioning and that Plaintiff was only able to sit 2 hours out of an 8 hour workday, the insurer's decision to deny benefits was upheld. *Id.* at 1319-20.

Respectfully submitted this 5th day of March, 2008.

s/ Grace Robinson Murphy_____
William B. Wahlheim, Jr.
John David Collins
Grace Robinson Murphy
Attorneys for Defendants
Life Insurance Company of North America,
Temple Inland Disability Health and
Welfare Plan and TIN, Inc.

**OF COUNSEL**:
MAYNARD, COOPER AND GALE, P.C.
1901 6th Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
(205) 254-1000

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 5, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    Thomas O. Sinclair
    Jenifer Champ Wallis

    s/ Grace Robinson Murphy._____
    OF COUNSEL