**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **CATHY CLEILAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **LIFE INSURANCE COMPANY OF NORTH** | ) | **2:07-CV-00486-MEF-SRW** |
| **AMERICA, TEMPLE-INLAND** | ) | |
| **DISABILITY HEALTH AND WELFARE** | ) | |
| **PLAN, and TEMPLE INLAND FOREST** | ) | |
| **PRODUCTS CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND MOTION TO COMPEL**

COME NOW Defendants Life Insurance Company of North America ("LINA"), Temple-Inland Disability Health and Welfare Plan, and TIN, Inc., formerly known as Temple Inland Forest Products Corporation (collectively "Defendants"), by and through their counsel, and hereby respond to Plaintiff's Second Motion to Compel.

**Introduction**

This ERISA action arises out of a dispute over entitlement to long-term disability benefits under an insurance policy issued by LINA to Plaintiff's former employer, TIN, Inc. Plaintiff maintains that, if she is determined to be disabled under the disability insurance policy, she may be entitled to ancillary benefits available under other plans sponsored by TIN, Inc. *See* Compl. at ¶ 1.

As an initial matter and for further reference for this Court, these document withholding issues have been thoroughly briefed in both Defendants' Memorandum of Law in Support of Summary Judgment and Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment. *See* Doc. 25 at pp. 28-32 and Doc. 31 at pp 16-18. The documents produced by the

Temple Inland Defendants and LINA in connection with their Initial Disclosures further address and defeat Plaintiff's allegations that she has not received certain unspecified ancillary plan documents.

<u>**Argument**</u>

Although Plaintiff alleges that "Defendants have still not produced all plan documents related to the ancillary benefit plans to which Plaintiff is an insured…," Plaintiff's Second Motion to Compel fails to identify a <u>single</u> Plan document which Defendants have not produced to Plaintiff.[1]  In response to Plaintiff's first document request, dated August 4, 2006, the Temple-Inland Defendants produced a Summary Plan Description for the Temple-Inland Salaried Retirement Plan.  *See* Initial Disclosures of Temple-Inland Defendants attached hereto as Ex. "A" at 1.  This production was followed a few days later with four additional Plan documents for the Disability Health and Welfare Plan, the Long Term Disability Plan, the Group Medical Plan and the Group Life Insurance Plan.  *Id.* at 9, 11.

Moreover, in connection with the Temple Inland Defendants' Initial Disclosures, they produced three hundred and twenty-two (322) pages of Plan documents and employee benefit information.  This production included the January 2000 Plan documents for TIN, Inc.'s Group Life Insurance Policy, Group Accident Insurance Policy, Group Business Travel Accident Insurance Policy, Group Long Term Disability Insurance Policy and the Temple-Inland Short Term Disability Plan as well as the January 1, 2002 Summary Plan Description for the Temple-Inland Disability Health and Welfare Plan and the December 1, 2001 Summary Plan Description

---

[1] In Plaintiff's Reply to Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment filed just yesterday, she acknowledges for the <u>first</u> time that her alleged penalty claim focuses on a life insurance policy she claims she did not receive from LINA.  *See* Doc. 38 at p. 11.  However, the record demonstrates that Plaintiff had <u>already</u> received a plan document for the life insurance plan from TIN, Inc. when she made this request to LINA. Ex. A at 9.  Moreover, Plaintiff cannot maintain a motion to compel regarding this life insurance policy as it was produced to her in connection with the Temple Inland Defendants' Initial Disclosures.  *See id.* at 89-143.

for the Temple-Inland Salaried Retirement Plan.  The Temple-Inland Defendants also supplied correspondence regarding Plaintiff's long-term disability claim, annual enrollment forms for disabled participants, correspondence regarding Plaintiff's address change, information on COBRA coverage, and correspondence regarding Plaintiff's health care claims.

LINA also produced to Plaintiff during the claims review process a copy of Group Policy FLK 20104, Plaintiff's claims file and a printout of LINA's electronic claims diary.  (AR at 516).[2]  In connection with LINA's Initial Disclosures, it reproduced to Plaintiff the 1088 page Administrative Record which included another copy of all of the items mentioned above.

Therefore, since Defendants previously produced a combined set of 1422 pages of documents including multiple Plan documents (policies, plans and SPDs) as well as miscellaneous election forms, benefit correspondence and her LTD claims file, when Plaintiff served Requests for Production seeking these exact documents, it was entirely appropriate, responsive and accurate to refer Plaintiff back to the documents previously produced.  See Defendants' Responses to Requests 11-13 attached as Exhibit "2" to Plaintiff's Second Motion to Compel.  The previously produced Plan documents provide the best evidence of what benefits are available to Plaintiff and are fully responsive to this Request.  If Plaintiff has a good faith basis for believing additional plan documents or enrollment forms were available, she has had multiple opportunities to inform Defendants.  Given that her Motion to Compel fails to identify any plan document or ancillary benefit she is not currently receiving, it should be denied in light of Defendants' prior production of numerous plan documents and employee benefit information.

Plaintiff's Request No. 13 sought "all … employee files or any other files within your possession, custody or control regarding the Plaintiff …"  The Temple-Inland Defendants

objected to this Request on the grounds that "it is overly broad and unduly burdensome and to the extent it seeks irrelevant information and documents not related to Plaintiff's claim for long-term disability benefits." *See* Ex. 2 to Plaintiff's Second Motion to Compel.  Because Plaintiff's Complaint does not assert any allegations or causes of action relating to Plaintiff's employment with TIN, Inc., this request is overbroad.  Any documents regarding Plaintiff's long-term disability benefits or other employee benefits were previously provided.

Moreover, this case focuses on Plaintiff's long-term disability benefits.  It is only if this Court overturns LINA's decision to terminate Plaintiff's LTD benefits that ancillary benefits from TIN, Inc. even become relevant.  As such, they are only tangentially related to this case and the Temple-Inland Defendants should not be burdened with production above and beyond the 322 documents already produced, especially in light of the fact Plaintiff cannot identify a single plan document that she needs to pursue her claim or any relevant documents not currently in her possession.

<u>**CONCLUSION**</u>

Plaintiff's Motion to Compel seeking additional ancillary plan documents and "employee files" is a fishing expedition not reasonably calculated to lead to the discovery of admissible or relevant evidence in this ERISA-preempted lawsuit regarding long-term disability benefits. Plaintiff's wholly unsupported motion has not demonstrated Defendants' failure to produce a single document, especially in light of their prior production of 1422 pages, including numerous plan documents and other employee welfare benefit forms.  Accordingly, this Court should deny this Motion to Compel and award Defendants their fees for having to respond to this unnecessary and frivolous motion.

---

[2] LINA's Administrative Record was previously produced to the Court in support of Defendants' Motion for Summary Judgment.  *See* Doc. 23.  Because of its voluminous nature, Defendants will not resubmit the Record to

Respectfully submitted this 6th day of March, 2008.


s/ Grace Robinson Murphy_____
William B. Wahlheim, Jr.
John David Collins
Grace Robinson Murphy
Attorneys for Defendants
Life Insurance Company of North America,
Temple Inland Disability Health and
Welfare Plan and TIN, Inc.


**OF COUNSEL**:
MAYNARD, COOPER AND GALE, P.C.
1901 6th Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
(205) 254-1000

the Court in connection with this Motion, but will reference page numbers by "AR at x".

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 6, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas O. Sinclair
Jenifer Champ Wallis

s/ Grace Robinson Murphy._____
OF COUNSEL

# EXHIBIT A
# PART 1

*Temple FPC*

**Temple-Inland**

Anissa Valdez
Retirement Plans Administrator
Benefits Administration Department

1300 S. MoPac Expressway
Austin, TX 78746
512.434.3945
512.434.5626
anissavaldez@templeinland.com

August 15, 2006

Personal & Confidential
Campbell, Waller, & Poer
Attn: Thomas O. Sinclair
2100 A Southbridge Parkway, Suite 450
Birmingham, AL 35209



MAILED
8/15/06

Dear Mr. Sinclair:

We recently received your letter concerning Cathy Cleiland. Enclosed is Summary Plan Description for the Temple-Inland Salaried Retirement Plan.

If you have any questions, please contact the Benefits Administration Department, 1300 S. MoPac Expressway, Austin, TX 78746, 1(877) 437-3497.

Sincerely,

Anissa Valdez
Retirement Plans Administrator

1300 South Mopac  Austin, Texas 78746  Tel 512.434.5800

**CAMPBELL WALLER & POER, L.L.C.**

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

September 5, 2006

**VIA CERTIFIED MAIL**
CIGNA Group Insurance
Routing 212
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243

Life Insurance Company of North America
1601 Chestnut Street
Philadelphia, PA 19192-2235

Temple-Inland, Inc.
Benefits Administration Committee
Plan Administrator
303 South Temple Drive
Post Office Drawer N
Diboll, TX 75941

Re:     **Cathy Cleiland**

Dear Sirs:

This firm has been retained by Cathy Cleiland with regard to a claim for benefits under the terms of the employee welfare benefit plan(s) or pension plan(s) in which the above referenced individual was a participant and/or beneficiary. Please direct any and all correspondence, and all contact regarding this matter, to this firm.

If it is your company's contention that the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et. seq. applies in this matter, then please produce any and all "relevant" (as defined within 29 C.F.R. § 2560.503-1) documents to include the policy, summary plan description, or any other documents specified within 29 U.S.C. § 1001 et. seq,.and 29 C.F.R. § 2560.503-1. These documents should include any and all information upon which you based your decision regarding any claim for benefits, and all documents pertaining to or referencing the employee welfare benefit plan(s) and/or employee pension plans under the terms of which the above referenced individual is or was a beneficiary and/or participants.

These documents are requested pursuant to the rights specified within 29 U.S.C. § 1132 (c). Your response should include any "relevant" ERISA documents, plan documents, claim file documents, any manuals, disability guidelines, or any other documents pertaining to the guidelines under which the claim

was determined, and any brochures, handbooks, employee benefit guides, pension plan documents detailing any and all benefits provided to the above referenced individual.

Sincerely,

**"DICTATED, BUT NOT READ
IN ORDER TO AVOID DELAY"**

Thomas O. Sinclair, Esq.

TOS/me
Enclosure
cc: Cathy Cleiland

TempleInland/Cleiland 003

*HIPAA-Compliant PHI Release Form*

## Authorization for Disclosure of Protected Health Information

I, **Cathy Cleiland**, authorize the disclosure of my protected health information[1] as described herein. I understand that this authorization is voluntary and made to confirm my direction. I understand that, if the person(s) or organization(s) that I authorize to receive my protected health information are not subject to federal and state health information privacy laws,[2] subsequent disclosure by such person(s) or organization(s) may not be protected by those laws.

1.  I authorize the following person(s) and/or organization(s) to disclose my protected health information (as specified below):

    Name:  Benefits Administration Committee, Temple-Inland Forest Products Corp.

    Organization:  Temple-Inland, Inc.

    Address:  P. O. Drawer N, 303 South Temple Drive, Diboll, TX  75941

2.  I authorize the following person(s) and/or organization(s) to receive my protected health information, as disclosed by the person(s) and/or organization(s) above.

    Name(s)  Thomas O. Sinclair

    Organization(s) Campbell, Waller, & Poer

    Address 2100A Southbridge Parkway, Suite 450, Birmingham, AL 35209

3.  Specific description of the protected health information that I authorize for disclosure (authorization to disclose psychotherapy notes must be separate):

    **Any and all documents and records relating in any manner to Cathy Cleiland, DOB** _____ **'1957, SSN #_____ -2332, including but not limited to all insurance files, underwriting files, investigation files, application files, insurance policies, applications for insurance, all documents containing the signature of claimant, documents involving claims submitted on the policies, all correspondence and communications with claimant, records of all transactions, agreements, records stored on any computer system, computer printouts, and any and all other writings of any nature prepared at any time which related in any way to claimant including, without limitation, all such records and documents until the date the response is made to this request**

4.  Specific description of the purpose for each use or disclosure (or write "At the request of the individual" in this space):
    ### At the request of the individual

*****Please complete reverse side.*****

5.  I understand that I may revoke this authorization at any time by sending a letter to the person
    or organization listed in paragraph one, except to the extent that the person(s) and/or
    organization(s) named above have taken action in reliance on this authorization. If I do not
    sign this form or if I later revoke my authorization, the services provided to me by the person
    or organization listed in paragraph one will not be affected in any way.

6.  This authorization expires on <u>1 calendar year from receipt of this notice</u>, or in the event that
                                               (date)

<u>UPON RECEIPT OF MEDICAL RECORDS BY THOMAS SINCLAIR</u>, whichever occurs first.
                                (event)

I have had the opportunity to read and consider the contents of this authorization. I confirm that
the contents are consistent with my direction.

_Cathy Cleiland_
Signed                                7-27-06
                                              Date

Name: <u>Cathy Cleiland</u>

Address: _____ Clio, AL ___

Telephone: _____       Social Security No.:     <u>·2332</u>

_____
Relationship or Authority of Personal Representative
(if applicable)

_____

[1] Protected health information ("PHI") is health information that is created or received by a health care provider,
health plan, or health care clearinghouse which relates to: 1) the past, present, or future physical or mental health of
an individual; 2) the provision of health care to an individual; or 3) the past, present, or future payment for the
provision of health care to an individual. To be protected, the information must be such that it identifies the
individual or provides a reasonable basis to believe that the information can identify the individual. <u>45 C.F.R.</u>
<u>164.508</u>.
[2] These laws apply to health plans, health care providers, and health care clearinghouses.

TempleInland/Cleiland 005



2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

Received
Benefits Administration

AUG **2 1** 2006

Ron Truex
Retirement Plans

August 4, 2006

**VIA CERTIFIED MAIL**
Temple-Inland Benefits
Administrative Committee
1300 South Mopac Expressway
Austin, TX 78746

        Re:     **Cathy Cleiland**

Dear Sir/Madam:

        This firm has been retained by Cathy Cleiland with regard to a claim for benefits under the terms of the employee welfare benefit plan(s) or pension plan(s) in which the above referenced individual was a participant and/or beneficiary. Please direct any and all correspondence, and all contact regarding this matter, to this firm.

        If it is your company's contention that the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 <u>et</u>. <u>seq</u>. applies in this matter, then please produce any and all "relevant" (as defined within 29 C.F.R. § 2560.503-1) documents to include the policy, summary plan description, or any other documents specified within 29 U.S.C. § 1001 <u>et</u>. <u>seq</u>,.and 29 C.F.R. § 2560.503-1. These documents should include any and all information upon which you based your decision regarding any claim for benefits, and all documents pertaining to or referencing the employee welfare benefit plan(s) and/or employee pension plans under the terms of which the above referenced individual is or was a beneficiary and/or participants.

        These documents are requested pursuant to the rights specified within 29 U.S.C. § 1132 (c). Your response should include any "relevant" ERISA documents, plan documents, claim file documents, any manuals, disability guidelines, or any other documents pertaining to the guidelines under which the claim was determined, and any brochures, handbooks, employee benefit guides, pension plan documents detailing any and all benefits provided to the above referenced individual.

                        Sincerely,

                        '**DICTATED, BUT NOT READ**"

                        Thomas O. Sinclair, Esq.

TOS/me
Enclosure
cc:  Cathy Cleiland

*HIPAA-Compliant PHI Release Form*

## Authorization for Disclosure of Protected Health Information

I, **Cathy Cleiland**, authorize the disclosure of my protected health information[1] as described herein. I understand that this authorization is voluntary and made to confirm my direction. I understand that, if the person(s) or organization(s) that I authorize to receive my protected health information are not subject to federal and state health information privacy laws,[2] subsequent disclosure by such person(s) or organization(s) may not be protected by those laws.

1. I authorize the following person(s) and/or organization(s) to disclose my protected health
   information (as specified below):

   Name(s): Administrative Committee

   Organization: Temple-Inland Benefits

   Address: 1300 South Mopac Expressway, Austin, TX 78746

<div style="text-align:right">

Received
Benefits Administration

AUG 2 1 2006

Ron Truex
Retirement Plans

</div>

2. I authorize the following person(s) and/or organization(s) to receive my protected health
   information, as disclosed by the person(s) and/or organization(s) above.

   Name(s) Thomas O. Sinclair

   Organization(s) Campbell, Waller, & Poer

   Address 2100A Southbridge Parkway, Suite 450, Birmingham, AL 35209

3. Specific description of the protected health information that I authorize for disclosure
   (authorization to disclose psychotherapy notes must be separate):

   **Any and all documents and records relating in any manner to Cathy Cleiland, DOB /1957, SSN 2332, including but not limited to all insurance files, underwriting files, investigation files, application files, insurance policies, applications for insurance, all documents containing the signature of claimant, documents involving claims submitted on the policies, all correspondence and communications with claimant, records of all transactions, agreements, records stored on any computer system, computer printouts, and any and all other writings of any nature prepared at any time which related in any way to claimant including, without limitation, all such records and documents until the date the response is made to this request**

4. Specific description of the purpose for each use or disclosure (or write "At the request of the individual" in this space):

   **At the request of the individual**

*\*\*\*Please complete reverse side.\*\*\**

**TempleInland/Cleiland 007**

5. I understand that I may revoke this authorization at any time by sending a letter to the person or organization listed in paragraph one, except to the extent that the person(s) and/or organization(s) named above have taken action in reliance on this authorization. If I do not sign this form or if I later revoke my authorization, the services provided to me by the person or organization listed in paragraph one will not be affected in any way.

6. This authorization expires on <u>1 calendar year from receipt of this notice</u>, or in the event that
<div style="text-align:center">(date)</div>

<u>UPON RECEIPT OF MEDICAL RECORDS BY THOMAS SINCLAIR</u>, whichever occurs first.
<div style="text-align:center">(event)</div>

I have had the opportunity to read and consider the contents of this authorization. I confirm that the contents are consistent with my direction.

*Cathy Cleiland*

Signed                                          8-4-06
                                                _____
                                                Date

Name: <u>Cathy Cleiland</u>

Received
Benefits Administration

Address: _____ Clio, AL ____

AUG 2 1 2006

Telephone: _____    Social Security No.: ____  -2332

Ron Truex
Retirement Plans

_____
Relationship or Authority of Personal Representative
(if applicable)

---

[1] Protected health information ("PHI") is health information that is created or received by a health care provider, health plan, or health care clearinghouse which relates to: 1) the past, present, or future physical or mental health of an individual; 2) the provision of health care to an individual; or 3) the past, present, or future payment for the provision of health care to an individual. To be protected, the information must be such that it identifies the individual or provides a reasonable basis to believe that the information can identify the individual. <u>45 C.F.R. 164.508</u>.

[2] These laws apply to health plans, health care providers, and health care clearinghouses.

TempleInland/Cleiland 008

**Temple-Inland**

September 12, 2006

Thomas O. Sinclair, Esq.
Campbell Waller & Poer, L.L.C.
2100-A Southbridge Parkway, Suite 450
Birmingham, AL 35209

Re: Cathy Cleiland

Dear Mr. Sinclair:

Per your request dated August 4, 2006, enclosed please find the following health and welfare plan documents:

1. Summary Plan Description for the Temple-Inland Disability Health and Welfare Plan as Amended and Restated Effective January 1, 2002.
2. Group Long Term Disability Insurance Certificate, Life Insurance Company of North America, Policy Number FLK-020104 inclusive of Amendments through February 14, 2005.
3. Summary Plan Description for the Temple-Inland Group Medical Plan Administered by Blue Cross and Blue Shield of Texas, Group #90189 PPO effective January 1, 2005.
4. Summary Plan Description for Temple-Inland Group Benefits Plan, Volume II-A dated January 1, 2000. This SPD is being provided for the Life Insurance Benefits.

If you have any other questions or need additional information, please let me know.

Sincerely,

*Sharon McClish*

Sharon McClish, CEBS
Lead Health and Welfare Administrator
512.434.3909



**CAMPBELL WALLER & POER, L.L.C.**

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

August 4, 2006

**VIA CERTIFIED MAIL**
Temple-Inland Forest Products Corporation
P. O. Drawer N
303 South Temple Drive
Diboll, TX 75941

      Re:    **Cathy Cleiland**

Dear Sir/Madam:

      This firm has been retained by Cathy Cleiland with regard to a claim for benefits under the terms of the employee welfare benefit plan(s) or pension plan(s) in which the above referenced individual was a participant and/or beneficiary. Please direct any and all correspondence, and all contact regarding this matter, to this firm.

      If it is your company's contention that the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et. seq. applies in this matter, then please produce any and all "relevant" (as defined within 29 C.F.R. § 2560.503-1) documents to include the policy, summary plan description, or any other documents specified within 29 U.S.C. § 1001 et. seq,.and 29 C.F.R. § 2560.503-1. These documents should include any and all information upon which you based your decision regarding any claim for benefits, and all documents pertaining to or referencing the employee welfare benefit plan(s) and/or employee pension plans under the terms of which the above referenced individual is or was a beneficiary and/or participants.

      These documents are requested pursuant to the rights specified within 29 U.S.C. § 1132 (c). Your response should include any "relevant" ERISA documents, plan documents, claim file documents, any manuals, disability guidelines, or any other documents pertaining to the guidelines under which the claim was determined, and any brochures, handbooks, employee benefit guides, pension plan documents detailing any and all benefits provided to the above referenced individual.

      Sincerely,

      **'DICTATED, BUT NOT READ"**

      Thomas O. Sinclair, Esq.

TOS/me
Enclosure
cc: Cathy Cleiland

RECEIVED
512. 434. 4942
AUG 0 8 2006
Initials
Health & Welfare

**TempleInland/Cleiland 010**

FedEx | Ship Manager | Label 7911 1950 9554
Page 1 of 1

From:   Origin ID:   (512)434-8519
Donna Henson
Temple-Inland Corp Services
1300 S. Mopac Expressway

Austin, TX 78746


FedEx
Express

Ship Date: 13SEP06
ActWgt: 1 LB
System#: 3374830/INET2500
Account#: S *********

**COPY**

REF: 33801444

Delivery Address Bar Code

SHIP TO:   (205)803-0051          BILL SENDER
**Thomas Sinclair**
**Campbell Waller & Poer, L.L.C.**
**2100-A Southbridge Parkway**
**Suite 450**
**Birmingham, AL 35209**



PRIORITY OVERNIGHT                    **THU**
                                       Deliver By:
TRK#   **7911  1950 9554**   FORM 0201   14SEP06
                                   **BHM**   A1
**35209**   -AL-US



XH RLIA

Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.

2. Fold the printed page along the horizontal line.

3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

TempleInland/Cleland 011

**CAMPBELL WALLER & POER, L.L.C.**

2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

November 27, 2006

Temple-Inland Benefits
Administrative Committee
1300 South Mopac Expressway
Austin, TX 78746

      Re:   **Cathy Cleiland**

Dear Sir/Madam:

     Attached hereto you will find a copy of correspondence from CIGNA indicating that your company apparently failed to provide notice to CIGNA that Ms. Cleiland was a participant in the life insurance policy program. Please provide them with that notice and produce any documents pertaining to life insurance policies under which Ms. Cleiland was a participant and/or beneficiary.

     Please file the necessary documents with CIGNA and/or any life insurance policy carrier to properly document Ms. Cleiland's claim for any available benefits under that policy.

     Also, please note that CIGNA is claiming that they didn't administer the short-term disability claim. Please produce all documents pertaining to Ms. Cleiland's short-term disability claim.

     You have previously been provided with Ms. Cleiland's authorization to produce these documents and we look forward to your production within the time periods set out under ERISA.

                 Sincerely,

                 Thomas O. Sinclair, Esquire

TOS/me
Enclosure
cc:    Temple-Inland Forest Products Corporation
      Ms. Cathy Cleiland
      Terry Key, Esquire

Message    Page 1 of 3

**Cornelius, Cecilia**

---

**From:** Archacki, Kelli 212 [KELLI.ARCHACKI@cigna.com]
**Sent:** Thursday, June 28, 2007 3:35 PM
**To:** Cornelius, Cecilia
**Subject:** RE: Cathy Cleiland-LTD Denied

Hello Cecilia,

I reviewed the information in our system regarding Cathy Cleiland and this is what I show:

11/21/05    claim was originally denied, the medical we received did not support her continued disability
12/29/05    appeal submitted
03/13/06    denial was upheld
01/23/07    she submitted a second appeal
03/20/07    denial was once again upheld

Let me know if you need anything else.

Thanks,
Kelli

*Kelli Archacki*
Claim Manager, Dallas Claims Office
CIGNA Disability Management Solutions
E Mail: Kelli.Archacki@CIGNA.com
1-800-352-0611 ext. 1294
Local: 972.952.1294
Network: 933.1294
Fax: 860.731.3413

***Confidentiality Notice***: If you have received this e-mail in error, please immediately notify the sender by e-mail at the address shown. This e-mail transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it was intended even if addressed incorrectly. Please delete from your files if you are not the intended recipient. Thank you for your compliance.

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2007 by CIGNA

-----Original Message-----
**From:** Cornelius, Cecilia [mailto:CeciliaCornelius@templeinland.com]
**Sent:** Thursday, June 28, 2007 3:19 PM
**To:** Archacki, Kelli 212
**Subject:** Cathy Cleiland-LTD Denied
**Importance:** High

Kelli, could you please see if you can help me. I need to know the exact date as to when LTD ended and the reason without giving private health information, did she file an appeal and when(need date), was her appeal denied again(need date). The reason I need this information right away is because we need to provide it to our legal dept. Thank you, CC

---

**From:** Archacki, Kelli 212 [mailto:KELLI.ARCHACKI@cigna.com]
**Sent:** Wednesday, December 07, 2005 9:09 AM
**To:** Cornelius, Cecilia

6/28/2007

**Subject:** Cathy Cleiland-LTD Denied

Cecilia,

This is to let you know that we have closed Cathy Cleiland's claim at the any occupation phase. Attached is the letter for your records.

Thank you,

<<temple inland cleiland.doc>>

*Kelli Archacki*
Case Manager, Dallas Claims Office
CIGNA Disability Management Solutions
E Mail: Kelli.Archacki@CIGNA.com
1-800-352-0611 ext. 1294
Local: 972.952.1294
Network: 933.1294
Fax: 860.731.3413

***Confidentiality Notice***: If you have received this e-mail in error, please immediately notify the sender by e-mail at the address shown. This e-mail transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it was intended even if addressed incorrectly. Please delete from your files if you are not the intended recipient. Thank you for your compliance.

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2004 by CIGNA

**********    Confidentiality Notice    **********
This electronic transmission and any attached documents or other writings
 are confidential and are for the sole use of the intended recipient(s)
identified above. This message may contain information that is privileged,
confidential or otherwise protected from disclosure under applicable law.
If the receiver of this information is not the intended recipient, or the
employee, or agent responsible for delivering the information to the
intended recipient, you are hereby notified that any use, reading,
dissemination, distribution, copying or storage of this information is
strictly prohibited. If you have received this information in error, please
notify the sender by return email and delete the electronic transmission,
including all attachments from your system.

-----------------------------------------------------------------------
CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from your files if you are not the intended recipient. Thank you for your compliance. Copyright 2005 CIGNA

-----------------------------------------------------------------------
CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-mail at the address shown. This email transmission may contain confidential information. This information

6/28/2007

Kelli Archacki
Claim Manager

December 7, 2005

F I L E

Group Insurance

Life · Accident · Disability

TEMPLE INLAND
ATTN: CECILIA CORNELIUS

Routing 212
12225 Greenville Ave
Suite 1000
Dallas, TX 75243
Telephone 800.352.0611,
Ext. 1294
Facsimile 860.731.3413
Kelli.Archacki@cigna.com

Re:  Name              :   Cathy Cleiland
     Policy #          :   FLK 20104 (LTD)
     Account Name      :   Temple Inland
     Underwriting by   :   Life Insurance Company or
North America

Dear Ms Cornelius:

This letter is in reference to the above mentioned Long Term Disability
(LTD) Benefits. We have completed our investigation of the above
captioned claim for Long Term Disability benefits.

Ms. Cleiland does not meet the "Definition of Disability" as
defined in the LTD Policy. Therefore, his claim has been denied
for continued Long-Term Disability (LTD) benefits. No further
benefits are payable.

The right to appeal our denial under the Employee Retirement Income
Security Act of 1974 (ERISA) has been explained to this employee.

If either you or the employee has any questions regarding the appeal
rights under ERISA, please let us know. Please feel free to contact our
office or to call me at 1.800.352.0611 extension 1294 from 8:00 a.m. to
4:30 p.m. Central Time, Monday through Friday. If you reach my voice
mail, leave a message and your call will be returned within one business
day.


Sincerely,



Kelli Archacki

Cc: File


"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA
Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries
include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life
Insurance Company.

ornelius, Cecilia
_____

rom:     Archacki, Kelli 212 [KELLI.ARCHACKI@cigna.com]
ent:     Wednesday, December 07, 2005 9:09 AM
o:       Cornelius, Cecilia
ubject:  Cathy Cleiland

ecilia,

ּis is to let you know that we have closed Cathy Cleiland's claim at the any occupation phase.  Attached is the letter for your
cords.

ּank you,

<temple inland cleiland.doc>>

·elli Archacki
ase Manager, Dallas Claims Office
IGNA Disability Management Solutions
Mail: Kelli.Archacki@CIGNA.com
·-800-352-0611 ext. 1294
ocal:  972.952.1294
etwork:  933.1294
ax:  860.731.3413

***Confidentiality Notice***:  If you have received this e-mail in error, please immediately notify the sender by e-mail at the address shown.  This
e-mail transmission may contain confidential information.  This information is intended only for the use of the individual(s) or entity to whom it
was intended even if addressed incorrectly.  Please delete from your files if you are not the intended recipient.  Thank you for your compliance.

Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2004 by CIGNA

_____

CONFIDENTIALITY NOTICE: If you have received this email in error, please immediately notify the sender by e-
nail at the address shown. This email transmission may contain confidential information. This information is intended
nly for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete it from
·our files if you are not the intended recipient. Thank you for your compliance. Copyright 2005 CIGNA

12/7/2005

Bridgette Taylor
Case Manager

A Group Insurance

November 26, 2003

12225 Greenville Ave
Suite 1000
Dallas, TX 75243-9382
Telephone 800-352-0611
Extension 5646
Facsimile 860.731.3041

Claimant:          Cathy Cleiland
Policy:            FLK 020104
Policy Name:       Temple Inland
Company:           Life Insurance Company of North
America

Dear Ms. Cleiland:

Your claim for Long Term Disability (LTD) benefits has been approved.
Benefits will begin after the Elimination Period, which ends on November
10, 2003. Your first check in the amount of $2500.00 represents benefits
for the time period of November 10, 2003, through December 9, 2003.
Your current gross benefit of $2500.00 per month will be issued at
monthly intervals at the **end** of each benefit period.

Please refer to the enclosed calculation sheets for further explanation
of how your benefit was calculated.

The Gross Disability Benefit for an Employee of Employer Mutual Casualty
is the lesser of 60% of an Employee's monthly Covered Earnings rounded
to the nearest dollar or the Maximum Disability Benefit.

Your LTD benefits may be reduced by any other benefits you (and your
dependents, if applicable) receive.  Please call us if you are receiving
or should become entitled to receive any income from other sources such
as:

- Social Security Disability or Retirement
- Statutory Disability**
- VA
- Worker's Compensation
- No-Fault
- Employer Pension, etc.
- Any other benefit related to your disability

Ms. Koepp, we were informed that you are receiving Social Security
Retirement benefits.  Please send us a copy of your award letter for
Social Security Retirement for your file.

**If you work in California, Hawaii, New Jersey, New York, Rhode Island,
or Puerto Rico, you should be eligible for disability benefits under
Statutory Disability Benefit Plans.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation,
including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life
Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

November 26, 2003
Page 2

We will continue to evaluate your claim, and will request additional information as needed.  To continue receiving benefits, you must meet the following:

Disability

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:
1. unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative, or
2. unable to earn 80% or more of his or her Indexed Covered Earnings.

Regular Occupation

The occupation the Employee routinely performs at the time the Disability begins.  In evaluating the Disability, the insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy.

Qualified Alternative

An occupation that meets all of the conditions that follow:
1. the material duties of the occupation can be performed by the Employee based on his or her training, experience or education
2. it is within the same geographic area as the Regular Occupation the Employee holds with the Employer on the date the Employee's Disability begins
3. a job in that occupation is offered to the Employee by the Employer; and
4. the wages for that occupation, including commissions and bonus are 80% or more of the Employee's Indexed Covered Earnings.

Definition of Covered Earnings

Covered Earnings mans an Employee's annual wage or salary as reported by the Employer of work performed for the Employer as in effect just prior to the date Disability begins.  Covered Earnings are determined initially on the date an Employee applies for coverage.  A change in the amount of Covered Earnings is effective on the date of the change, if the Employer gives us written notice of the change and the required premium is paid.

Indexed Covered Earnings:

For the first 12 months Monthly Benefits are payable, Indexed Covered Earnings will be equal to Covered Earnings.  After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date

TempleInland/Cleland 018

November 26, 2003
Page 3

*Monthly Benefits became payable.  The amount of each increase will be the lesser of:*
1.  *10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or*
2.  *the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.*

Termination of Disability Benefits

*Benefits will end on the earliest of the following dates:*

1.  *the date the Employee earns 80% or more of his or her Indexed Covered Earnings;*
2.  *the date the Insurance Company determines he or she is not Disabled;*
3.  *the end of the Maximum Benefit Period;*
4.  *the date the Employee dies*
5.  *the date the Employee refuses, without Good Cause, to fully cooperate in all required phases of the Rehabilitation Plan;*
6.  *the date the Employee refuses, without Good Cause, to fully cooperate in a Transitional Work Arrangement;*
7.  *the date the Employee is no longer receiving Appropriate Care;*
8.  *the date the Employee fails to cooperate with the Insurance Company in the administration of the claim.  Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.*

Federal Income Taxes may be deducted from your Long-Term Disability benefits on an entirely <u>voluntary</u> basis.  Should you wish to have all or a portion of your FIT taxes due on your LTD benefits withheld from your Long Term Disability check, you will need to complete a Federal Tax Withholding Form (W-4S), which you may obtain through our office or your local IRS office, and submit it to our office in order for withholding to commence on future checks.  The law requires that you designate on the Form W-4S the amount you want withheld and this amount cannot be less than $88.00 per month and must be expressed in whole dollars.  You may cancel or change your deduction amount at any time by completing another Form W-4S.

If you have any questions in regard to the contractual definitions listed above, please feel free to contact me.

Sincerely,


Bridgette Taylor
Case Manager



TempleInland/Cleiland 020



2006 Templeinland Retiree Health and Welfare Plan

TempleInland/Cleiland 021





(2004) Temple Inland Retiree Health and Welfare Plan

TempleInland/Cleiland 023

## TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN
### ELECTION OF MEDICAL BENEFITS

CATHY K CLEILAND

MONROEVILLE AL

*Please indicate any corrections in your name, address, etc. in this section. Remember that a new address could result in different options.*

| | |
|---|---|
| Social Security Number: | ;-2332 |
| Date of Birth: | ( /1957 |
| Date of Disability: | 05/14/2003 |
| Effective Date: | 12/01/2003 |
| Amount of Life Insurance: | $309,000 |

**MEDICAL OPTIONS**

Write the appropriate option code and the dependent coverage level in the box below to indicate the option you are electing.

| | COVERAGE LEVEL | | | | Option Code |
|---|---|---|---|---|---|
| Option AL01 Code | 1 | 2 Employee & Spouse | 3 Employee & Children | 4 | O 6 4 |
| | Individual | | | Family | |
| 064   BCBS of Alabama PPO | 0.00 | 0.00 | 0.00 | 0.00 | Coverage Level  1 |

REMINDER: If you elect a medical option other than one of the options available through Cigna, Benefit Planners or Aetna, you may need to complete a separate enrollment form. If a separate enrollment form is required, the form will be included in the information packet for that option. Return that form along with this enrollment form in the enclosed stamped, self-addressed envelope or to the the address on page 2.

**DEPENDENT INFORMATION**

Please list eligible dependents to be covered. In addition, if you elect an HMO or HMO-type option that requires a Primary Care Physician (PCP), please list the PCP number of the primary care physician you have selected for each covered family member, including yourself. The PCP numbers are listed in the provider directory under the physician's name.

| Social Security Number | Name | Relationship* | Gender | Birth Date | PCP Number |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

*Relationship: SP-spouse, CH-child, ST-student, HC-disabled child

Tuesday, November 11, 2003          FP-TD-10206          Page 1 of 2

TempleInland/Cleiland 024

TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN

ELECTION OF MEDICAL BENEFITS

---

**DECLINATION OF COVERAGE**

Check the box below if you do not want to participate in the Temple-Inland Disability Health and Welfare Plan. If you decline to participate, you may not enroll at any time in the future.

I DECLINE to participate in the Temple-Inland Disability Health and Welfare Plan.

---

**PARTICIPANT AUTHORIZATION & SIGNATURE**

I agree to the terms of any welfare benefit plan(s) in which I may be enrolled from time to time, as they may be amended, and have designated my current elections above. Any previous elections relating to the same or similar benefits are hereby revoked.

I understand this plan may be amended or terminated at any time.

Participant Signature _Cathy X Cleiland_ Date _11-18-2003_

Phone Number (optional) _

Please return the completed enrollment form(s) to Human Resources or mail to the address shown below within 31 days of your loss of active coverage date.

Temple-Inland Inc.
Teah Bowling - Corporate Benefits
P. O. Drawer N
Diboll, TX 75941

---

TempleInland/Cleiland 025

# -FAX TRANSMISSION-

## TEMPLE-INLAND CORPORATE SERVICES

### BENEFITS ADMINISTRATION
**1300 S. MOPAC**
**AUSTIN, TX 78746**
**PHONE (512) 434-3900**
**FAX (512) 434-5626**

*FAXED 12/2/03 CC*

**DATE:** *Maria Crawford*

**TO:** _____

**FAX #** _____

**FROM:** To contact the follow    *800.239.9610*    r 4 digit extension

*BCBS Alabama*
*Fax #*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Roger Marietti | 3913 | | | ] Carolyn Penna | 3920 |
| ☐ Jerry Fischer | 5645 | | | ] Anissa Valdez | 3945 |
| ☐ Sharon McClish | 3909 | ☐ Dan Smith | 3105 | ☐ Shannon Barrow | 5665 |
| ☐ Stacy Russell | 3924 | ☐ Sue Stanford | 5850 | ☐ Ron Truex | 5659 |
| ☒ Cecilia Cornelius | 4942 | ☒ Charles Hopkins | 5598 | ☐ Pat McClintick | |

**# OF PAGES:** *4* , including this cover sheet.

**COMMENTS:** *Urgent Eligibility Update Thank you CC*

*This communication is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited without the express consent of the sender or intended recipient. If you receive this communication in error, please contact Shannon Barrow at 512/434-3900.*

**TempleInland/Cleiland 026**

**Cornelius, Cecilia (TIFPC)**

*877 912 9020*
*BCBS - FAX #*

| | |
|---|---|
| **From:** | Frank, Laura [lfrank@synhrgy.com] |
| **Sent:** | Tuesday, December 02, 2003 4:06 PM |
| **To:** | Frank, Laura; Cornelius, Cecilia (TIFPC) |
| **Cc:** | McManus, Tracy; McClish, Sharon (Inland); Russell, Stacy (TIFPC) |
| **Subject:** | RE: Urgent Eligibility Update-Cathy K Cleiland |

Good Afternoon. This participant has been terminated from active coverage. Maria from BCBS of AL said to go ahead and send over the disabled enrollment form.

-----Original Message-----
From: Frank, Laura
Sent: Tuesday, December 02, 2003 12:52 PM
To: 'Cornelius, Cecilia (TIFPC)'; Frank, Laura
Cc: McManus, Tracy; McClish, Sharon (Inland); Russell, Stacy (TIFPC)
Subject: RE: Urgent Eligibility Update-Cathy K Cleiland

Sure, we'll let you know when she's taken care of.

-----Original Message-----
From: Cornelius, Cecilia (TIFPC) [mailto:Ccorneli@templeinland.com]
Sent: Tuesday, December 02, 2003 11:31 AM
To: 'lfrank@synhrgy.com'
Cc: 'tmcmanus@synhrgy.com'; McClish, Sharon (Inland); Russell, Stacy (TIFPC)
Subject: Urgent Eligibility Update-Cathy K Cleiland
Importance: High

Laura, could you please assist us on the following issue. (Above employee is
changing from active to disabled coverage effective 12/01/03). We are trying
to manually add above disabled employee on BCBS of Alabama, but they need
the termination information to be passed on to them so that they can add her
on BCBS. Can we get synhrgy to contact BCBS (Maria Crawford-800.239.9610)
and provide the information they need to manually add above member.

ID .

Thank you,
Cecilia Cornelius
Health & Welfare Administrator
E-Mail: ccorneli@templeinland.com
Phone: (512) 434-4942
Fax:    (512) 434-5626
CONFIDENTIALITY NOTICE: This e-mail transmission and any attachments may
contain confidential or legally privileged information. This information is
intended only for the necessary business use of the individual(s) or entity
to whom it is intended even if addressed incorrectly. If you have received
this e-mail in error, please immediately notify the sender by e-mail at the
address shown. You should delete this entire transmission from your files if
you are not the intended recipient and you are prohibited from retaining,
distributing, disclosing or using any information contained herein. Thank

12/2/2003

**TEMPLE-INLAND**
**2007 ANNUAL ENROLLMENT FORM**
**FOR DISABLED PARTICIPANTS**

CATHY CLEILAND

CLIO AL

| | |
|---|---|
| Date of Birth: | 1957 |
| Date of Disability: | 05/14/2003 |
| Amount of Life Insurance: | $309,000.00 |

**Medical Information:**

Your current medical election and coverage level is shown below. If you would like to change your election for 2007, write the appropriate option code and coverage level in the box below to indicate the coverage you are electing for 2007.

**Return this form only if you are making changes. If you are not making changes keep this enrollment form for your 2007 records.**

**Your current medical election is: PB01    Coverage Level  1**

| Option Code | | You Only 1 | Coverage Level |
|---|---|---|---|
| PA01 | Aetna PPO 300 | $0.00 | |
| PB01 | Blue Cross Blue Shield PPO 300 | $0.00 | |
| 999 | No Coverage | $0.00 | |

| Option Code |
|---|
| _____ |
| Coverage Level |
| _____ |

Benefit Summaries are available on the internet at www.tinbenefits.mercerhrs.com. To login, use SSN 000000097 and PIN 000097. For further instructions see the enclosed letter.

**Over**                    422802332

FP-TD-10206--Group 3

TempleInland/Cleiland 028

**Temple-Inland**

November 14, 2006

Dear Temple-Inland Retiree and Eligible Dependents:

Enclosed is your Temple-Inland 2007 Annual Enrollment Form, which includes your current medical election and coverage level. If you want to change carriers or drop dependents, if any, return your enrollment form to the address on the back of your enrollment form by November 25, 2006.

There are no plan design changes to the Preferred Provider Organization (PPO) for 2007.

If you would like to view or print a 2007 Schedule of Benefits for any plan listed on your enrollment form, please logon to the Internet at www.tinbenefits.mercerhrs.com. To proceed at the "login" menu, enter the following information:

- SSN is 000000097
- PIN is 000097
- Click on the "login" button
- Go to the second bullet under "Non-Union" and click on the word "here" at the end of that line.
- Benefit summaries are listed in numeric order based on the 4-digit medical option code (example: PB01) shown on your enrollment form. Scroll down the page until you find the benefit summary you would like to view or print. Then click on the name of the plan option (example: Blue Cross Blue Shield PPO) to view or print the summary.

If you do not have access to the Internet, please call 877.437.3497, extension 4942, to request a Schedule of Benefits be mailed to you.

> **Remember, if you are satisfied with your medical elections, and you do not need to drop dependents, you do not need to return your enrollment form. Your current medical option will continue in 2007.**

If you have any questions regarding your plan options or your eligibility, please contact Temple-Inland Benefits Administration at 877.437.3497, ext. 4942.

Sincerely,

Temple-Inland Benefits Administration
512.434.4942

1300 South Mopac  Austin, Texas 78746  Tel 512.434.5800

Group 3-Disabled U65

**TEMPLE-INLAND**
**2006 ANNUAL ENROLLMENT FORM**
**FOR DISABLED PARTICIPANTS**

CATHY  CLEILAND

Identification Number:
Date of Birth:
Date of Disability:          05/14/2003
Amount of Life Insurance: <u>$309,000</u>

**Medical Information:**

Your current medical election and coverage level is shown below.  If you would like to change your election for 2006, write the appropriate option code and coverage level in the box below to indicate the coverage you are electing for 2006.

**Return this form only if you are making changes.  If you are not making changes keep this enrollment form for your 2006 records.**

**Your current medical election is:  PB01    Coverage Level  1**

|  | | Coverage Level | |
|---|---|---|---|
| Option Code | | *You Only* 1 | |
| PA01 | Aetna PPO 300 | $0.00 | |
| PB01 | Blue Cross Blue Shield PPO 300 | $0.00 | |
| 999 | No Coverage | $0.00 | |

| Option Code |
|---|
| ——— |
| Coverage Level |
| ——— |

**Benefit Summaries are available on the internet at www.tinbenefits.mercerhrs.com. To proceed at the "login" screen enter the following information: SSN is 000000097, PIN is 000097. For further instructions see the enclosed letter.**

**Over**

TempleInland/Cleiland 030

## Temple-Inland

November 11, 2005

Dear Temple-Inland Disabled Participant:

Enclosed is your 2006 Annual Enrollment Form, which includes your current medical election and coverage level. Please carefully review your current plan and carrier choice before making changes. If you want to change carriers or drop dependents, if any, return your enrollment form by November 25, 2005.

If you do not wish to make changes, you do not need to return your enrollment form. Your current medical option will continue in 2006.

There are no changes to the Preferred Provider Organization (PPO) plan for 2006.

If you would like to view or print a 2006 Benefit Summary for any plan listed on your enrollment form, please logon to the Internet at www.tinbenefits.mercerhrs.com. To proceed at the "login" menu, enter the following information:

- SSN is 000000097
- PIN is 000097
- Click on the "login" button
- Go to the second bullet under "Non-Union" and click on the word "here" at the end of that line.
- Benefit summaries are listed in numeric order based on the 4-digit medical option code (example: PB01) shown on your enrollment form. Scroll down the page until you find the benefit summary you would like to view or print. Then click on the name of the plan option (example: BlueCross BlueShield PPO) to view or print the summary.

If you do not have access to the Internet, please call 877.437.3497, extension 4942, to request a Benefit Summary be mailed to you.

> **Remember, if you are satisfied with your medical elections, and you do not need to drop dependents, you do not need to return your enrollment form. Your 2005 elections will continue for 2006.**

If you have any questions regarding these plans or your eligibility, please contact Temple-Inland Benefits Administration at 877.437.3497, ext. 4942.

Sincerely,


Temple-Inland Benefits Administration
512.434.4942

## TEMPLE-INLAND
## 2005 ANNUAL ENROLLMENT FORM FOR DISABLED PARTICIPANTS

*Please indicate any corrections in your name, address, etc. in this section.*

CATHY CLEILAND

_____

_____

_____

Social Security Number:                    _____
Date of Birth:                             _____
Date of Disability:          05/14/2003
Amount of Life Insurance:    $309,000

You must actively enroll in benefits during Annual Enrollment to ensure you have benefits in 2005. Write the appropriate option code and the coverage level in the box below to indicate the coverage you are electing for 2005. If you do not return your enrollment form you will automatically be enrolled in the Aetna PPO plan (Option PA01). Please return your form no later than November 22, 2004.

**MEDICAL OPTIONS**

Please elect coverage under one of the following medical options for you and your covered dependents.

| Option Code | | You Only 1 | Coverage Level |
|---|---|---|---|
| PA01 | Aetna PPO 300 | $0.00 | |
| PB01 | Blue Cross Blue Shield PPO 300 | $0.00 | |
| 999 | No Coverage | $0.00 | |

Option Code **PB01**

Coverage Level **1**

**Over**

TempleInland/Cleiland 032

TEMPLE-INLAND

2005 Anual Enrollment Form for Disabled Participants

**DEPENDENT COVERAGE**

To continue coverage on your covered dependents, please list them below.

| Name | Relationship | Social Security Number | Birth Date |
|------|-------------|----------------------|-----------|
| | | | |
| | | | |
| | | | |
| | | | |

**Authorization**

I agree to the terms of any welfare benefit plan(s) in which I may be enrolled from time to time, as they may be amended, and authorize the elections and/or corrections as shown above. Any previous elections relating to the same or similar benefits are hereby revoked.

I understand this plan may be amended or terminated at any time. I also understand that contribution requirements for this plan may be amended at any time.



_____
Your Signature

_11/22/04_
Date

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
Your phone number

Your completed enrollment form may be faxed to 1-512-434-5626 or mailed in the enclosed stamped, self addressed envelope no later than **November 22, 2004.**

Temple-Inland
Benefits Administration
Attn: Cecilia Cornelius
1300 South MoPac Expressway
Austin, TX 78746
Phone: 1-877-437-3497 ext. 4942

TempleInland/Cleiland 033

**TEMPLE-INLAND**

**2005 ANNUAL ENROLLMENT FORM FOR DISABLED PARTICIPANTS**

*Please indicate any corrections in your name, address, etc. in this section.*

CATHY CLEILAND

Social Security Number:
Date of Birth:
Date of Disability:          05/14/2003
Amount of Life Insurance:   $309,000

You must actively enroll in benefits during Annual Enrollment to ensure you have benefits in 2005. Write the appropriate option code and the coverage level in the box below to indicate the coverage you are electing for 2005. If you do not return your enrollment form you will automatically be enrolled in the Aetna PPO plan (Option PA01). Please return your form no later than November 22, 2004.

**MEDICAL OPTIONS**

Please elect coverage under one of the following medical options for you and your covered dependents.

| Option Code | | You Only 1 | Coverage Level |
|---|---|---|---|
| PA01 | Aetna PPO 300 | $0.00 | |
| PB01 | Blue Cross Blue Shield PPO 300 | $0.00 | |
| 999 | No Coverage | $0.00 | |

| Option Code |
|---|
| Coverage Level |

**Over**

FP-TD-10206--Group IV

TempleInland/Cleiland 034

TEMPLE-INLAND

2005 Anual Enrollment Form for Disabled Participants

**DEPENDENT COVERAGE**

To continue coverage on your covered dependents, please list them below.

| Name | Relationship | Social Security Number | Birth Date |
|------|--------------|------------------------|------------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Authorization**

I agree to the terms of any welfare benefit plan(s) in which I may be enrolled from time to time, as they may be amended, and authorize the elections and/or corrections as shown above. Any previous elections relating to the same or similar benefits are hereby revoked.

I understand this plan may be amended or terminated at any time. I also understand that contribution requirements for this plan may be amended at any time.

_____          _____
Your Signature                                        Date

_____
Your phone number

Your completed enrollment form may be faxed to 1-512-434-5626 or mailed in the enclosed stamped, self addressed envelope no later than **November 22, 2004.**

Temple-Inland
Benefits Administration
Attn: Cecilia Cornelius
1300 South MoPac Expressway
Austin, TX 78746
Phone: 1-877-437-3497 ext. 4942

TempleInland/Cleland 035

**Temple-Inland**

November 11, 2004

Dear Temple-Inland Disabled Participant:

Temple-Inland will spend approximately $110 million on health care for its employees and retirees in 2004. Health care costs have been rising at a rate of 12% to 15% each year, and if that continues it will impact the Company's ability to remain competitive.

For the past several months, a taskforce has worked to explore new options that will not only help control these costs, but also provide high quality health care coverage for you and your family. As a first step to save costs, Temple-Inland is consolidating its many vendors and will offer two choices next year: Aetna and Blue Cross and Blue Shield. These two carriers offer extensive national networks of providers. HMOs have become prohibitively expensive and will not be offered next year.

The enclosed materials contain many more details about your choice of plans and carriers. Please read them carefully and be sure to enroll by the deadline indicated on your enrollment form.

Because all plans offered to you in 2004 are being terminated as of December 31, 2004, you must make a new election for 2005. If you do not return your enrollment form by the deadline, you will automatically be enrolled in the Aetna PPO plan for 2005.

If you have any questions regarding these plans or your eligibility, please contact Temple-Inland Benefits Administration at 1.877.437.3497, ext. 4942.

Sincerely,

Temple-Inland Benefits Administration
512.434.4942

*Group IV Disableds*

TempleInland/Cleland 036

TempleInland/Cleiland 037



Templeinland/Cleiland 038



FILE

# 2006 Temple-Inland Retiree Health and Welfare Plan

| Field | Value | Field | Value | Field | Value | Field | Value | Field | Value |
|---|---|---|---|---|---|---|---|---|---|
| Business Unit | FP | HMCoNo | | DOM | 01/01/2006 | CsMCP | 0 | Link To Dep | |
| CoNo | 10206 | Union/Non Union | N | Med Pln | PB01 | CsSpc | 0 | Branch Num | |
| Emp No | | Wrk Loc | | Med Lvl | 1 | CsCC | 0 | PCP Num | |
| Ssn | | Current Age | 49 | MedPrem | 923.91 | Life Amount | 309000 | Medical Term Dt | |
| Dep SSN | 0 | | | Co Med Cst | 923.91 | Co Life Cost | 38.32 | Life Vendor | 01 |
| Name | CATHY CLEILAND | | | Emp Med Cst | 0.00 | Orig Ret Name | | AD&D Coverage Amt | 0 |
| Addr | | | | Telephone | | Orig Ret Ssn | | Co AD&D Amt | 0 |
| City St Zip | AL | | | Review Date | | RhbCode | 3 | Dental Level | |
| DOB | | Relation | EE | ReviewDesc | SSDI Approved (See file). Cell 251-769-3 | | | Dental Plan | |
| DOH | | YCS | 0.000 | AETNA | | | | Dental Facility Num | |
| DOR | | Gender | F | BlueCross | PB01 - 0901890003 | | | Dental Effective Dt | |
| DOD | 05/14/2003 | Benefit Status | L | Kaiser | | | | Dental Term Dt | |
| Verp | | | | Kaiser | | | | DenPrem | 0.00 |
| Participant Type | TD | | | Medicare Flag | C | | | Co Den Cst | 0.00 |
| MRA | N | | | Medicare No | | | | Emp Den Cst | 0.00 |
| MRA Bal | 0 | | | Medicare Part A Date | 11/01/2005 | AARP Supp | 0.00 | | |
| MRA Bal As Of | | | | Medicare Part B Date | 11/01/2005 | AARP RX | 0.00 | | |

MRA Hist

10755

Xfer to Cancel Ins

Xfer to Cancel Ins Dependent Only

Per Cathy Cleiland storage misplaced the SPD's that were previously sent to her. Can them asking to re-mail a copy but also include Active EE Benefits

Dental SPD (Comprehensive) (1/1/02) Dated

Group Health Care Plan (1/1/03) Dated

OC.
7/26/06

| Election Eff Date | Benefit | Plan | Option | Amount Elected | Date Terminated | Notes |
|---|---|---|---|---|---|---|
| 01/01/2003 | Child Life and AD&D | No Coverage | No Coverage | $0.00 | 11/30/2003 | |
| 01/01/2003 | Dental | CIGNA Comprehen | You Only | $0.00 | 11/30/2003 | |
| 01/01/2003 | Dependent Care Sp | No Coverage | No Coverage | $0.00 | 11/30/2003 | |
| 01/01/2003 | Employee AD&D | 6 x pay | 6 x pay | $309,000.00 | 11/30/2003 | |
| 01/01/2003 | Employee Life | 6 x pay | 6 x pay | $309,000.00 | 11/30/2003 | |
| 01/01/2003 | Employee Life Credi | Employee Life Cred | Employee Life Credi | $52,000.00 | 11/30/2003 | |
| 01/01/2003 | Health Care Spendin | No Coverage | No Coverage | $0.00 | 11/30/2003 | |
| 01/01/2003 | Long Term Disability | $50,000 (tax-free) | $50,000 (tax-free) | $2,575.00 | 11/30/2003 | |
| 01/01/2003 | LTD Credit | LTD Credit | LTD Credit | $0.00 | 11/30/2003 | |
| 01/01/2003 | Medical | BCBS of Alabama P | You Only | $0.00 | 11/30/2003 | |
| 01/01/2003 | Medical Credit | Medical Credit | You Only | $0.00 | 11/30/2003 | |
| 01/01/2003 | Spouse Life and AD | $25,000 | $25,000 | $25,000.00 | 11/30/2003 | |
| 01/01/2002 | CLIFEADD | 10K | 10K | $10,000.00 | 07/04/2002 | |

*Wants all SPD's*   √



Templeland/Cleiland 042





Templeinland/Cleiland 043



## Hunter, Vera (TIFPC)

| | |
|---|---|
| **From:** | Dover, Cathy (TIFPC) |
| **Sent:** | Thursday, July 15, 2004 9:53 AM |
| **To:** | Cornelius, Cecilia (TIFPC); Hunter, Vera (TIFPC) |
| **Subject:** | Disabled Participant - Address Change |

Please update the address for the following disabled participant:

Cathy Cleiland (xxx-xx-2332)

Clio, AL 36017

When you update the database, does that also update the carrier's files?

**Cathy Dover, PHR**
**Human Resources Manager, Benefits**
**Temple-Inland**
Phone:    (936)829-1643
E-mail: cathydover@templeinland.com

1

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              1681
CONNECTION TEL                    918779129020
CONNECTION ID
ST. TIME              07/15 10:36
USAGE T               00'45
PGS. SENT             2
RESULT                OK
```

# -FAX TRANSMISSION-

## TEMPLE-INLAND CORPORATE SERVICES

### BENEFITS ADMINISTRATION
#### 1300 S. MOPAC
#### AUSTIN, TX 78746
#### PHONE (512) 434-3900
#### FAX (512) 434-5626

DATE: _7/15/04_

TO: _Maria Crawford_

FAX # _877- 912-9020_

FROM: To contact the following, please dial (512) 434 + their 4 digit extension

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ | Roger Marietti | 3913 | ☐ | Lisa Hudson | 5571 | ☐ | Anissa Valdez | 3945 |
| ☐ | Jerry Fischer | 5645 | ☐ | Diana Brittain | 3941 | ☐ | Shannon Barrow | 5665 |
| ☐ | Sharon McClish | 3909 | ☐ | Sue Stanford | 5850 | ☐ | Ron Truex | 5659 |
| ☐ | Stacy Russell | 3924 | ☐ | Charles Hopkins | 5598 | ☐ | Pat McClintick | 7830 |
| ☐ | Cecilia Cornelius | 4942 | ☐ | Carolyn Penna | 3920 | ☒ | Vera Hunter | 7902 |

# OF PAGES: _2_, including this cover sheet.

COMMENTS:

_Please update address change_
_Thanks Vera Hunter_

TempleInland/Cleland 045

7/15/2004

Dear Maria Crawford,

Please update the address for the following disabled participant:

Cathy Cleiland (xxx-xx-2332)

Clio, AL 36017

42395-00D is the plan #.

Any questions, please contact me at 512-486-7902

Thank you.

Vera Hunter

*[signature: Vera Hunter]*



## TEMPLE-INLAND
**Corporate Services**

**Cecilia Cornelius**
Health & Welfare Administrator
Benefits Administration

1300 S MoPac Expressway
Austin, TX 78746
Phone: (512) 434.4942
Fax: (512) 434.5626
Email: ccorneli@templeinland.com

Memo To:        Cathy Dover

Memo From:    Cecilia Cornelius

Date:             November 11, 2003

Enclosed is a Temple-Inland Disability Health and Welfare Plan Election of Medical Benefits enrollment form. Please have the participant complete, sign and return it to the address shown on the bottom of the second page no later than December 31, 2003. They <u>MUST</u> return the form by the deadline.

Be sure they understand they can only enroll those dependents who were eligible for coverage on the date of eligibility for the Temple-Inland Disability Health and Welfare plan. No new additions allowed later.

If you have any questions, please let me know.

Thank you.

## TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN
## ELECTION OF MEDICAL BENEFITS

CATHY K CLEILAND
8 CHEROKEE DR #27
MONROEVILLE AL 36460

*Please indicate any corrections in your name, address, etc. in this section. Remember that a new address could result in different options.*

| | |
|---|---|
| Social Security Number: | 2332 |
| Date of Birth: | '1957 |
| Date of Disability: | 05/14/2003 |
| Effective Date: | 12/01/2003 |
| Amount of Life Insurance: | $309,000 |

### MEDICAL OPTIONS

Write the appropriate option code and the dependent coverage level in the box below to indicate the option you are electing.

| | | COVERAGE LEVEL | | | Option Code |
|---|---|---|---|---|---|
| Option Code | AL01 | 1 Individual | 2 Employee & Spouse | 3 Employee & Children | 4 Family | |
| 064 | BCBS of Alabama PPO | 0.00 | 0.00 | 0.00 | 0.00 | Coverage Level |

REMINDER: If you elect a medical option other than one of the options available through Cigna, Benefit Planners or Aetna, you may need to complete a separate enrollment form. If a separate enrollment form is required, the form will be included in the information packet for that option. Return that form along with this enrollment form in the enclosed stamped, self-addressed envelope or to the the address on page 2.

### DEPENDENT INFORMATION

Please list eligible dependents to be covered. In addition, if you elect an HMO or HMO-type option that requires a Primary Care Physician (PCP), please list the PCP number of the primary care physician you have selected for each covered family member, including yourself. The PCP numbers are listed in the provider directory under the physician's name.

| Social Security Number | Name | Relationship* | Gender | Birth Date | PCP Number |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

*Relationship: SP-spouse, CH-child, ST-student, HC-disabled child

TempleInland/Cleiland 048

TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN

ELECTION OF MEDICAL BENEFITS

---

## DECLINATION OF COVERAGE

Check the box below if you do not want to participate in the Temple-Inland Disability Health and Welfare Plan. If you decline to participate, you may not enroll at any time in the future.

☐    I DECLINE to participate in the Temple-Inland Disability Health and Welfare Plan.

## PARTICIPANT AUTHORIZATION & SIGNATURE

I agree to the terms of any welfare benefit plan(s) in which I may be enrolled from time to time, as they may be amended, and have designated my current elections above. Any previous elections relating to the same or similar benefits are hereby revoked.

I understand this plan may be amended or terminated at any time.

Participant Signature _____    Date _____

Phone Number (optional) _____

Please return the completed enrollment form(s) to Human Resources or mail to the address shown below within 31 days of your loss of active coverage date.

Temple-Inland Inc.
Teah Bowling - Corporate Benefits
P. O. Drawer N
Diboll, TX 75941

TempleInland/Cleiland 049

**Cornelius, Cecilia**

| | |
|---|---|
| From: | Christina Certo [ccerto@benefitconcepts.com] |
| Sent: | Thursday, August 25, 2005 10:13 AM |
| To: | CeciliaCornelius@templeinland.com |
| Subject: | Temple Inland COBRA~ Cathy Cleiland |

Hello Cecilia-

Our three guidelines we follow to determine if a participant qualifies for the extension
are the following:

1) The participant must be deemed disabled within 60 days of the Qualifying Event date or
before!
        The participants QED is 11/30/03. She was deemed disabled on 5/14/03.

2) It is the participants responsibility to present the disability determination to the
plan administrator within 60 days of the determination and within 18 months of the initial
coverage.                            ✓OK
        The participant did try sending us the notification within the 60 days but not
within her 18 months of initial coverage. (18 mos. ended around 5/31/05)

3) Social Security has to determine the participant is disabled.

Our Vice President has reviewed Cathy Cleiland's paperwork and has denied Cathy of the
extension based on the following:

1) Cathy did not notify Benefit Concepts within her 18 months of coverage.

I am very sorry for any confusion!
Please feel free to contact me with any questions!

Thanks,

Christina Certo
Benefits Administrator
Benefit Concepts
(P) 800-969-2009, ext. 561
(F) 401-427-8701
Ccerto@benefitconcepts.com

Confidentiality Notice: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure, or distribution is prohibited.  If you are not
the intended recipient, please contact the sender by reply e-mail and destroy all copies
of the original message.

1



**CompLink**
P.O. Box 226101
Dallas, TX 75222-6101

Date:    12/17/2003
Form:    CLC02-EN
Doc ID:    4588833
Account #: 0103188258

IIıIIıııIIIıııIIIıIIıIıııIIIıııIIIıIıIIIıIIIıIIıIıIIIIIıI
To CATHY K CLEILAND and Covered Dependents
8 CHEROKEE DR # 27
MONROEVILLE, AL 36460-8508

IıIIıIIıııIıIıIIIıIIıIıIıIıIIIıIIııIıIIIIıııIıIııIıIII

## Election Form and Plan Alternatives

Applicant Name:  CATHY K CLEILAND (Account Number:  0103188258)

Employer/Plan Sponsor: Temple-Inland Forest Products Corporation

Election Deadline: 2/18/2004

Date of Notice: 12/17/2003
Date of Coverage Loss: 11/30/2003
Coverage Start Date if Electing: 12/1/2003

To Employee and any Covered Dependents of:  CATHY K CLEILAND

Please use this document to notify us of your decision to continue coverage under the above referenced employer's group
health plan.
If you need further information about your alternatives, please contact CompLink toll free at 1-877-630-7215.

CompLink has been retained by the above named employer to notify you of your group health plan benefits continuation
rights. Please see the enclosed sheet titled "Additional Information on COBRA Rights." If you elect to continue coverage, and
if you meet all other requirements explained on the above referenced "Additional Information" sheet, your continuation
coverage would begin on 12/1/2003.  Please understand that if cancellation of COBRA continuation coverage occurs it is
without possibility of reinstatement.

If you wish to elect coverage, your completed election form must be postmarked on or before 2/18/2004. Please visit our
website at www.complink.info. If you wish to elect online, you will need your social security number and your birthdate to
log in to the Employees & Continuants section. Your initial premium payment(s) must be postmarked within 45 days of the
postmark date of your election.    To avoid cancellation, your initial payment must include premiums due from the date of
coverage loss through the end of the month in which your payment is postmarked.  Subsequent payments are due on the first
of each month and will be returned if not postmarked within 30 days of this due date.  Claims will not be paid until your
account is current.  Incomplete election forms will be returned.

You should receive payment coupons within 2 weeks of the date we receive your election.  Premiums are due regardless of
your receipt of payment coupons, so please contact CompLink at 1-877-630-7215 if you do not receive them.

*Please fill out and return the form on the following page.*



Please mail forms and make checks payable to CompLink, P.O. Box 226101, Dallas, TX 75222

Applicant Name: CATHY K CLEILAND

Employer/Plan Sponsor: Temple-Inland Forest Products Corporation    Election Deadline: 2/18/2004    PID: 3188258

## Section A.  Plan Alternatives

Place an "X" in the box adjacent to the monthly cost of the coverage(s) you are selecting.  Circle the dependents that you wish to cover.  Please note that you may not obtain coverage above that which was in effect on your Date of Coverage Loss.

| Available Coverages | Employee Only | | | | | | Circle dependents you wish to cover |
|---|---|---|---|---|---|---|---|
| BCBS of Alabama PPO - ☐ | $ 222.60 | ☐ | ☐ | ☐ | ☐ | ☐ | a  b  c  d  e<br>f  g  h  i  j |
| Cigna Comprehensive De ☐ | $ 27.58 | ☐ | ☐ | ☐ | ☐ | ☐ | a  b  c  d  e<br>f  g  h  i  j |

## Section B.   Applicant's Authorization and Agreement

Your first premium payment must be postmarked no later than 45 days after the postmark date of your completed election.  By my signature below, I elect to continue the coverage(s) checked in Section A.

!"###$$

Applicants Signature: _____    Date: _____

## Section C.  Dependent Information

Dependent Coverage:

| Code | Dependent Name | Relationship | Birth Date | Gender |
|---|---|---|---|---|
|  |  |  |  |  |



# EXHIBIT A
# PART 2

ADDITIONAL INFORMATION
ENCLOSED WITH ELECTION NOTICE AND PLAN ALTERNATIVES CONCERNING
COVERAGE CONTINUATION RIGHTS (COBRA)

Under the terms of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended, current or former participants and their eligible dependents who are covered under a group health plan have the right to elect to temporarily continue health coverage if coverage terminates due to a "Qualifying Event." Those eligible to continue coverage become "Qualified Beneficiaries" under this federal law.

IMPORTANT: IF A QUALIFIED BENEFICIARY ELECTS TO CONTINUE COVERAGE FOR HIMSELF/HERSELF AND/OR FOR ANY DEPENDENT CHILDREN WHO ARE QUALIFIED BENEFICIARIES (i.e. WERE ELIGIBLE AND COVERED ON THE DAY BEFORE THE QUALIFYING EVENT OCCURRED OR BORN TO OR PLACE FOR ADOPTION WITH A COVERED PARTICIPANT DURING THE PERIOD OF COBRA COVERAGE, THE ENCLOSED ELECTION AGREEMENT MUST BE COMPLETED, SIGNED, AND SENT TO COMPLINK WITHIN 60 DAYS OF THE DATE COVERAGE TERMINATES OR THE DATE OF THE ENCLOSED "ELECTION FORM AND PLAN ALTERNATIVES" (WHICHEVER IS LATER). IF A QUALIFIED BENEFICIARY DOES NOT SEND THIS ELECTION WITHIN THE 60-DAY TIME PERIOD ALLOWED BY LAW, THE QUALIFIED BENEFICIARY WILL LOSE RIGHTS TO CONTINUE COVERAGE.

Note 1: If you are acting on behalf of an Incompetent Beneficiary, call CompLink for assistance.
Note 2: Some states offer financial aid to help certain individuals pay for COBRA coverage. Contact your appropriate state agency regarding availability and eligibility requirements.

A)    Who is a Qualified Beneficiary?
A Qualified Beneficiary is any participant, former participant, spouse, or dependent child who was covered under the plan on the day before the Qualifying Event date shown on the enclosed "NOTICE OF PLAN ALTERNATIVE". The definition includes a child born to or placed for adoption with a covered participant during the period of COBRA coverage.
B)    What is a Qualifying Event?
1. A Qualifying Event is any of the following events which would cause a (employee) participant, former participant, covered spouse, or covered dependent child to lose coverage under the employer's group health plan. These events include:
    a) Termination of employment (including voluntary resignation, involuntary termination, retirement, or layoff) except for termination due to gross misconduct;
    b) Reduction of work hours (includes work stoppage [strike] or participant takes leave of absence);
    c) Death of the participant or retired participant;
    d) Divorce from covered participant (or legal separation if plan provision allow);
    e) Ineligibility of dependent child, due to plan eligibility provisions;
    f) When dependents would lose coverage due to participant/retiree becoming entitled to Medicare;
    g) When a retiree, spouse or child of a retiree loses coverage within one year before or after the commencement of proceedings under the Title 11 (bankruptcy), United States Code.
2. A Second Qualifying Event is any of the following events which would cause a (employee) participant, former participant, covered spouse, or covered dependent child to lose coverage under the employer's group health plan. These events include:
C)    How long may continuation coverage last?
In the case of a loss of coverage due to end of employment or reduction in hours of employment, coverage may be continued for up to 18 months. In the case of losses of coverage due to an employee's death, divorce or legal separation, the employee's enrollment in Medicare or a dependent child ceasing to be a dependent under the terms of the plan, coverage maybe continued for up to 36 months.
D)    How can the length of continuation coverage extend?
If you elect continuation coverage, an extension of the maximum period of 18 months of coverage maybe available if a qualified beneficiary is disabled or a second qualifying event occurs. You must notify CompLink of a disability or a second qualifying event in order to extend the period of continuation coverage. Failure to provide notice of a disability or second qualifying event may affect the right to extend the period of continuation coverage.

Disability: A Qualified Beneficiary, who is determined under Title II of XVI of the Social Security Act (SSA), to have been disabled at the time of a Qualify Event or within the first 60 days of COBRA coverage, may be eligible to continue coverage for an additional 11 months (29 months total) if the Qualified Beneficiary provides the written determination of disability from the Social Security Administration (SSA) to CompLink within 60 days of the date of the SSA's determination of disability and before the end of the first 18-month continuation period. All of the qualified beneficiaries listed on the Election Form (next page) who elect continuation coverage will be entitled to the 11-month continuation extension if one of them qualifies. The employer can charge up to 150% of the group rate during the 11-month disability extension. If the Qualified Beneficiary is determined by the SSA to no longer be disabled, you must notify CompLink of that fact within 30 days of SSA's determination.

Second Qualifying Event: An 18-month extension of coverage will be available to spouses and dependent children who elect continuation coverage if a second qualifying event occurs during the first 18 months of continuation coverage. The maximum amount of continuation coverage available when a second qualifying event occurs is 36 months. Such second qualifying events include the death of a covered employee, divorce (or legal separation as allowed by the group health plan), the covered employee's enrolling in Medicare, or a dependent child's ceasing to be eligible for coverage as a dependent under the Plan. You must notify CompLink within 60 days after a second qualifying event occurs.

COVERAGE WILL END EARLIER IF ANY ONE OF THE FOLLOWING OCCURS:
1. the continuant fails to pay the required premium in a timely manner;
2. the participant first becomes, after the date of election, entitled to and enrolled in Medicare;
3. the employer ceases to provide any group health plan for its employees;
4. the participant first becomes, after the date of election, covered under another group health plan (as a participant or otherwise) which does not impose any pre-existing condition exclusion or limitation with respect to any pre-existing condition of the qualified beneficiary.
5. Any reason the Plan would terminate coverage of participant or beneficiary not receiving continuation coverage (such as fraud).
E)    What coverage may be continued?
Each qualified beneficiary who elect continuation coverage will have the same rights under the Plan as other participants or beneficiaries covered under the plan, including special enrollment rights. Qualified Beneficiaries may continue some or all of the group health coverage they had in effect on the day before the Qualifying Event. The coverage available is shown on the enclosed "ELECTION FORM AND PLAN ALTERNATIVES"
F)    What is a Timely Election?
To be considered timely, your election must be either:
1. Postmarked by the U.S. Postal Service or an Express Delivery Service on or before the Expiration Date shown on the enclosed "NOTICE OF PLAN ALTERNATIVES", and received by CompLink, or
2. Successfully sent by participant via the CompLink website at www.complink.info (if this option is available) (We recommend that you retain a copy for your records.)
3. Delivered in person to a CompLink representative during normal business hours at its offices on or before the Expiration Date shown on the enclosed "ELECTION FORM AND PLAN ALTERNATIVES." A receipt will be issued by CompLink.
G)    Can Qualified Beneficiaries make separate coverage elections?
Yes, Qualified Beneficiaries may make separate elections. Each Qualified Beneficiary may choose any benefit plan for which he or she is eligible, as shown on the enclosed "ELECTION FORM AND PLAN ALTERNATIVES". If a Qualified Beneficiary wishes to make an independent election, he/she must complete a separate form and return it by the election deadline. Failure to do so will result in loss of the right to elect continuation coverage under the Plan.




053351100388603

A qualified beneficiary may change a prior rejection of continuation coverage any time until that date. You may call the number provided on the enclosed form marked Election Form and Plan Alternatives to request additional forms. Parents or guardians may sign for minor dependent children.

A)    How much does it cost to continue coverage?

The cost to continue coverage is the full group premium rate for coverage elected, plus an administration fee, if applicable. Premium rates (including administration fees where applicable) are shown on the enclosed "ELECTION FORM AND PLAN ALTERNATIVES". These rates are subject to change.

B)    When does COBRA continuation coverage begin?

Continuation coverage begins on the day after the date that coverage would otherwise terminate if the election is timely made and all other eligibility requirements are satisfied.

C)    How do I pay for continuation coverage?

Upon election, you are billed for the period from the date your group health benefits terminated through the current month and for 5 subsequent months. You will receive a billing for each 6 month period thereafter, assuming your continuation coverage has not been cancelled. Your billing will provide a remittance address and payment coupons that include the amount and due date. A coupon should be signed, detached and enclosed with each month's premium payment.

D)    When are premium payments due?

You must make your first payment for continuation coverage within 45 days after the date of your election. If you do not make your first payment for continuation coverage within those 45 days, you will lose all continuation coverage rights under the Plan. Your first payment must cover the cost of continuation coverage from the time your coverage under the Plan would have otherwise terminated up to the time you make the first payment. You are responsible for making sure that the amount of your first payment is enough to cover this entire period. You may contact CompLink to confirm the correct amount of your first payment. Subsequent month's premiums are due on the premium due date shown on your billing coupons. You are responsible for paying the full premium on time even if you do not receive a bill. Premiums not post marked within the grace period, usually 30 days after the due date, will be returned and coverage cancelled without possibility of reinstatement. If you wish to send a check with your election, please ensure the check is signed, properly dated, made payable to "CompLink", and written in the exact amount required to fully pay the premium due. Be sure to include continuant's name and account number (PID or SSN) on each check.

E)    What is a Timely Payment?

To be considered a timely payment, your premium payment must be post marked by CompLink within 30 days after the due date (unless the employer plan provides for additional time). To access information regarding your premium payment and status of your account, call CompLink using the number provided on the attached election notice. Late payments cannot be accepted and will be returned, resulting in cancellation of your coverage with no possibility for reinstatement.

*Note: Your premium is due on the "due date" shown on your invoice. However, CompLink will NOT update eligibility for you or any covered dependents until the monthly premium due is received and applied. In addition, payment of claims for medical procedures or prescription drugs, physician office visits or other covered expenses will not be considered until the premium is received, posted and communicated to the insurance carrier. Depending upon the timing of receipt of payment and scheduled communication update, it may take several days to update eligibility with the carrier. For this reason, to ensure timely eligibility updates, we recommend that you pay the premium due prior to the due date and before attempting to use your coverage. Waiting until the end of the grace period to pay could also put you at risk of not having sufficient time to correct errors. These errors (e.g. unsigned checks, checks returned for insufficient funds, incorrect payment amounts, premiums sent to the wrong address, or late/missed pickups by the U.S. Postal Service) delay payment and may or may not be within your control. If such delays cause your payment to be post marked after the grace period expires, your coverage will be cancelled with no possibility of reinstatement.*

L)    CompLink does not pay claims. If you have any questions about claims, please contact your sponsoring employer, group insurance carrier or the claims office indicated on your claim forms or insurance card. If your premium payments are not made in a timely manner coverage will be cancelled retroactively, and claims incurred during the period for which premiums were not paid will not be paid by the carrier.

M)    This notice or the ELECTION FORM AND PLAN ALTERNATIVES does not fully describe continuation coverage or other rights under the plan. More complete information regarding such rights is available from the plan administrator and in the plan's summary plan description. To obtain a copy contact the plan administrator.

N)    In considering whether to elect continuation coverage, you should take into account that a failure to continue your group health coverage will affect your future rights under federal law. First, you can lose the right to avoid having a pre-existing condition exclusions applied to you by other group health plans if you have more than a 63-day gap in health coverage, and election of continuation coverage may help you not have such a gap. Second, you will lose the guaranteed right to purchase individual health insurance policies that do not impose such pre-existing condition exclusions if you do not obtain continuation coverage for the maximum time available to you. Finally, you should take into account that you have special enrollment rights under federal law. You have the right to request special enrollment in another group health plan for which you are otherwise eligible (such as a plan sponsored by your spouse's employer) within 30 days after your group health coverage ends because of the qualifying event. You will also have the same special enrollment right at the end of the continuation coverage if you get continuation coverage for the maximum time available to you.

O)    In order to protect you and your family's rights, it is vital that you keep CompLink and the appropriate Plan or COBRA administrator informed of the current address(es) of all participants or beneficiaries under the plan that are or may become qualified beneficiaries.

P)    For more information about your rights under ERISA, including COBRA, the Health Insurance Portability and Accountability Act (HIPAA), and other laws affecting group health plan, contact the U.S. Department of Labor's Employee Benefits Security Administration (EBSA) in your area or visit the EBSA website at www.dol.gov/ebsa.

Rev. 06/03

0533511003860 4

 **SOCIAL SECURITY ADMINISTRATION**

Refer To:     -2332

Office of Hearings and Appeals
SSA/OHA Hearing Office
550 Government Street
Suite 200
Mobile, AL 36602-2010

*Send to*
*Temple Inland Bene*
*Ad*
*Attn Cec*
*1800 South mopac*
*Austin         78746*

Date: MAY 2 6 2005

Cathy A. Key

Clio, AL 36017

## NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

**This Decision Is Fully Favorable To You**

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

**The Appeals Council May Review The Decision On Its Own**

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

**If You Disagree With The Decision**

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

**How to File an Appeal**

To file an appeal you or your representative must request that the Appeals Council review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the **Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255**. Please put the Social Security number shown above on any appeal you file.

See Next Page

# SOCIAL SECURITY ADMINISTRATION
## Office of Hearings and Appeals

## DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability and |
| Cathy A. Key | Disability Insurance Benefits |
| (Claimant) | |
| | 2332 |
| (Wage Earner) | (Social Security Number) |

## PROCEDURAL HISTORY

On October 10, 2003, the claimant protectively filed an application for a period of disability and Disability Insurance Benefits. This case is before the Administrative Law Judge on a request for a hearing filed by the claimant, who is dissatisfied with the previous determination at the state agency level which found that she was not disabled. Dan Shulte, a non-attorney, represents the claimant in this matter. Prior to the scheduling of a hearing in this matter, the undersigned arranged for a disability evaluation to further ascertain the claimant's capacity to perform work-related activities (Exhibit 28F). Based on same, the undersigned is convinced that a full hearing is not necessary in this matter. Instead, a "wholly favorable" decision may be issued in this matter with respect to all disability issues in dispute based on information already available for review (20 C.F.R. § 404.948(a)). The following discussion will highlight the evidentiary support contained in the record for reaching such a conclusion.

## ISSUES

The issues in this case are whether the claimant is under a disability as defined by the Social Security Act and if so, when the disability commenced, the duration of the disability, and whether the insured requirements of the Act are met for the purpose of entitlement to a period of disability and disability insurance benefits.

## HOLDING

After a thorough evaluation of the record, the Administrative Law Judge concludes that the claimant has been disabled since her alleged onset date of disability, i.e., May 14, 2003. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

FROM :0                              FAX NO. :               Aug. 04 2005 02:10PM P1

To: Cecilia Cornelius - 512-434-5626        # of pages = 4
&  Cathy Dover: Benefits                     **FILE**

This is the info I am

to Benefits Concepts today. Can

you please fax it to Cecilia

and if she needs anything else please

let me know. I don't want to mail

something and it is not what she

needs. You can leave a message for

me with my mom at 334 397 4707.

Thank you so much!

Cathy Cleiland
8/4/05

TempleInland/Cleiland 057

FROM :0                          FAX NO. :                    Aug. 04 2005 02:11PM  P2

Date: 8/4/05                          # of pages  3

To: Benefit Concepts
Attn: TMP

From: Cathy Cleiland
             2332

Re: Cobra Dental

    In our phone Conversation
earlier ~~to d~~ today you indicated
you needed additional info. This
is what you requested.

                              Cathy Cleiland
                                  8/4/05

TempleInland/Cleland 058

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO              2979
CONNECTION TEL                 914014278701
CONNECTION ID
ST. TIME              08/23 15:55
USAGE T               01'42
PGS. SENT                5
RESULT                OK
```

# Temple-Inland

## Fax Transmission Cover Sheet From:

### Cecilia Cornelius
Benefits Administration Department
1300 S MoPac Expressway
Austin, TX 78746
Phone: (512) 434.4942
Fax:    (512) 434.5626
Email: ceciliacornelius@templeinland.com

To: _Linda Da Rosa_           Fax: _401. 427. 8701_

Date: _8/23/05_              Pages: _____ (Including coversheet)

Re: _Cathy Cleiland_

☑ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Comment: _thankyou —_

_I placed a call to employee_

_I'm not sure _____ at what_

TempleInland/Cleiland 059

# Temple-Inland

## Fax Transmission Cover Sheet From:

**Cecilia Cornelius**
Benefits Administration Department
1300 S MoPac Expressway
Austin, TX 78746
Phone: (512) 434.4942
Fax:     (512) 434.5626
Email: ceciliacornelius@templeinland.com

To: _Antoine Carter_          Fax: _713. 596. 1987_

Date: _8/23/05_          Pages: _6_          (Including coversheet)

Re: _Cathy Cleiland — Disabled_

☑ Urgent     ☐ For Review     ☐ Please Comment     ☐ Please Reply     ☐ Please Recycle

Comment:     _Please help._

_Thank you_

CONFIDENTIALITY NOTICE: This fax transmission and any attachments may contain confidential or legally privileged information. This information is intended only for the necessary business use of the individual(s) or entity to whom it is intended even if addressed incorrectly. If you have received this fax in error, please immediately notify the sender by fax at the address shown. You should delete this entire transmission from your files if you are not the intended recipient and you are prohibited from retaining, distributing, disclosing or using any information contained herein. Thank you for your compliance.

NOV 0 3 2003



*Visit Us Online at: www.advantage2k.com*

ADVANTAGE 2000
CONSULTANTS INC.
*"Your Gateway to Social Security"*

*One Corporate Drive  Swansea, IL 62226*
*Telephone:(800) 580-5299- Fax:(314) 894-4891*
*Email: advantage2000@advantage2k.com*

## TO: SOCIAL SECURITY CLAIMS REPRESENTATIVE    D-10206

Social Security Administration
Jackson, AL 36545
RE:  Cathy Cleiland
SSN:      2332

I have been appointed the Representative for Ms. Cleiland. **PLEASE SEND ME
AN ACKNOWLEDGEMENT OF YOUR RECEIPT OF MY SSA-1696, AND
PROVIDE THE REQUESTED INFORMATION BELOW. THANK YOU!**

Claims Representative: _C. Singleton_
CR Telephone No.: _251-244-6018_

Claims filed or pending:
__✓__ Title II           Alleged Onset Date _05/14/03_
_____ Title XVI          Date Last Insured· _12/31/07_
_____ Concurrent

_10/10/03_ Protected Filing Date
_10/27/03_ SSA-1696 Receipt Date

History of Current Claim:
_10/27/03_ Date Initial Claim Filed
_N/A_ Date Reconsideration Filed
_N/A_ Date Hearing Request Filed
_N/A_ Date Appeals Council Request Filed

Current Claim sent to: _✓_ DDS _____ Screening Unit _____ OHA

Any Prior Applications: Yes_____ No _✓_
Date of Filing for Prior Application _N/A_
Level of Last Decision _N/A_

Thanks for your assistance.
Mary Lynn Kniker
Claims Analyst
Advantage 2000 Consultants, One Corporate Drive, Swansea, IL 62226

Nov-07-03 12:20pm  From-TIFPC HUMAN RESOURCES      9368297406      T-467  P.04/05  F-798

11/05/2003  16:05    3140944891              ADVANTAGE 2000 CCMS                    PAGE  03/04

MCS    TRANSFER TO:              CHECK/NOTICE 2                              NOT2
  NH    2332      CATHY CLEILAND          CL      2332        CATHY CLEILAND

MAILING METHOD INDICATOR (BLIND NOTICE INFORMATION) TYPE: _ 1.CERTIFIED MAIL
                                                          2.TELEPHONE CONTACT
AUTHORIZED REPRESENTATIVE                                  3.REGULAR MAIL
   TYPE: 2   1. ATTORNEY    2. NON-ATTORNEY   3. QUESTIONABLE
   FEE WAIVED (Y/N): Y
IF ATTORNEY,
   DIRECT PAYMENT WAIVED (Y/N): _    LAST WITHHOLDING DATE (MMYY): ____
   ATTORNEY/REP NAME: MARY_____ LYNN_____ KNIKER_____ ____
        ADDRESS: REP FOR C CLEILAND___      ONE CORPORATE DR_____

           CITY: SWANSEA_____        STATE: IL   ZIP: 62226
        COUNTRY: _____          CONSUL CODE: ___
     POSTAL ZONE: _____
          PHONE: 800 580 5299             FOREIGN PHONE: _____
   PENDING FEE AGREEMENT AMOUNT: _____
   FEE AGREEMENT TYPE: _  1. APPROVED    2. DISAPPROVED    3. UNDECIDED
   IF FEE PETITION APPROVED, ENTER FEE: _____

TempleInland/Cleiland 062

Nov-07-03 12:21pm From-TIPPC HUMAN RESOURCES        9368297406        T-467  P.05/05  F-735

```
11/05/2003  16:06    3148944891              ADVANTAGE 2000 OCMS                    PAGE  04/04

MCS                          EARNINGS COMP DETERMINATION                           MCR1
NH SSN:       2332       NH NAME: CATHY      K CLEILAND                           10/28/03
                                                                                 COM: 11/03

CASE DISPLAY  |  1. ALL         4. CIVIL SERVICE  7.
  1 _ _ _ _   |  2. REMARKS     5. PIA CALCS      8. PRINT
              |  3. EARNGS, I/S  6. WC/PDB
---------------------------------------------------------------------------------
PIA:    1217.70      FAMILY MAX:  1826.50     COMPUTATION TYPE:   NS 78 DIS EX
PIA REDUCED FOR AGE:                          LOW TWO YEARS: 1977   12382.18 IND
DATE LAST INSURED:                12/07                      1979   12861.81 IND
---------------------------------------------------------------------------------
CLAIM                            CLAIM    ENTITLED           NEXT PAYMENT    ONGOING
DISPLAY BIC   CL NAME            TYPE       DATE  LAF        AMT - DATE      PAYMENT
  1 _   HA  CATHY   CLEILAND     DIB    Y  11/03   C       1217.00 11/03     1217.00



---------------------------------------------------------------------------------
   CLAIM DISPLAY     1. ALL        3. ENTITLEMENT/ELIGIBILITY
      OPTIONS        2. REMARKS    4. PAYMENT CALCULATIONS      MORE (Y/N): N
ALERT CASE - SEE REMARKS
```

TempleInland/Cleiland 063



**A Temple-Inland Company**

**Human Resources**
303 S. Temple Drive
P.O. Drawer N
Diboll, TX 75941
Phone: 936/829-1603
Fax:   936/829-1537

To: _Sharon McClish_    From: _Cathy Dover_

Fax: _(512) 434-5626_    Pages: _5_

Phone: _____    Dates: _11/7/83_

Re: _SSDI_    CC: _____

**Urgent    For Review    Please Comment    Please Reply    Please Recycle**

Comments:

Nov-07-03 12:20pm  From-TIFPC HUMAN RESOURCES        8368207406          T-467  P.02/05  F-738
11/05/2003  16:06    3148944891          ADVANTAGE 2000 CCMS                      PAGE  01/04

# ADVANTAGE 2000 CONSULTANTS, Inc.

# 1 Corporate Drive
Swansea, Illinois 62226

Telephone 1-800-580-5299
Fax 1-314-845-5250

## FAX COVER

| | |
|---|---|
| **To: Kathy Dover** | **Fax #: 936-829-1537** |
| **From: Lynn Kniker** of Advantage 2000 Consultants | |
| **RE: Cathy Cleiland**  **SS#:** | |
| **Date: 11-05-2003** | |

Please call if you have any questions or did not receive the number of pages indicated.

Number of Pages  (including cover sheet):  ✗ 4

**Please find included the proof of filing for the Social Security disability claim for Cathy Cleiland.**

**Thanks,
Lynn Kniker
Claims Analyst
Advantage 2000 Consultants, Inc.**

TempleInland/Cleiland 065

# IMPORTANT INFORMATION

## NEWBORNS' AND MOTHERS' HEALTH PROTECTION ACT OF 1996

Group health care plans and health insurance issuers generally may not, under federal law, restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, federal law generally does not prohibit the mother's or newborn's attending provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours as applicable). In any case, plans and insurers may not, under federal law, require that a provider obtain authorization from the plan or the issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours).

## WOMEN'S HEALTH AND CANCER RIGHTS ACT OF 1998

In October 1998, Congress signed into law a bill known as the Women's Health and Cancer Rights Act of 1998. This legislation requires all group health care plans to provide coverage for certain services related to mastectomies, reconstructive surgery following mastectomies, and prostheses required after mastectomies. All health care plans sponsored by Temple-Inland, whether insured or self-funded, currently cover reconstructive surgery. However, the law mandates that we provide you with this notice.

Coverage For Reconstruction Surgery Following Mastectomy

When a covered individual receives benefits for a mastectomy and decides to have breast reconstruction, based on consultation between the attending physician and the patient, the health plan must cover:

- Reconstruction of the breast on which the mastectomy has been performed;

- Surgery and reconstruction of the other breast to produce a symmetrical appearance; and

- Prostheses and treatment of physical complications of all stages of mastectomy, including lymph edema.

This coverage will be subject to plan deductible, coinsurance, and co-payment provisions consistent with those established for other benefits under the plan.

## NOTICE OF SPECIAL ENROLLMENT RIGHTS UNDER
## HEALTH INSURANCE PORTABILITY & ACCOUNTABILITY ACT (HIPAA)

If you are declining enrollment for yourself or your dependents (including your spouse) because of other health insurance coverage, you may in the future be able to enroll yourself or your dependents in this plan, provided that you request enrollment within 30 days after your other coverage ends. In addition, if you have a new dependent as a result of marriage, birth, adoption, or placement for adoption, you may be able to enroll yourself and your dependents, provided that you request enrollment within 30 days after the marriage, birth, adoption, or placement for adoption.

## VERY IMPORTANT NOTICE

1

## CONCERNING HEALTH CARE CONTINUATION COVERAGE

It is important that all individuals covered under a group health care plan take the time to read this notice carefully and be familiar with its contents. **This notice generally explains COBRA continuation coverage, when it may become available to you and your family, and what you need to do to protect the right to receive it.**

Under federal law, group health care plans are required to offer to covered employees and covered family members the opportunity to elect temporary health care continuation coverage (also referred to as COBRA continuation coverage) at group rates when coverage under the group health care plan would otherwise end due to certain qualifying events. The right to COBRA continuation coverage was created by the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). This notice is intended to inform you (and any covered dependents) in a summary fashion of your options and obligations under the continuation coverage provisions of the law. For more information about your COBRA continuation rights and obligations, you should review the group health care plan's Summary Plan Description.

The Plan Administrator for the Temple-Inland sponsored group health care plans is the Temple-Inland Benefits Administration Committee, in care of Temple-Inland Corporate Services, Benefits Administration, 1300 South Mopac Expressway, Austin, TX 78746, telephone number (512) 434-5665. The right to COBRA continuation coverage for these group health care plans is administered through the Temple-Inland Benefits Service Center,
P. O. Box 744931, Houston, TX 77274.

### QUALIFIED BENEFICIARIES

Group health care plans must offer the right to COBRA continuation coverage to each person who is a qualified beneficiary. A qualified beneficiary is someone who will lose coverage under a group health care plan because of a qualifying event. Depending on the type of qualifying event, employees, spouses of employees, and dependent children of employees may be qualified beneficiaries.

### QUALIFYING EVENTS

A qualifying event is any life event as described below that would cause a qualified beneficiary to actually lose health care coverage under the terms of the group health care plan.

For covered employees: If you are a covered employee in one of the group health care plans, you have a right to elect continuation coverage if you lose your group health care plan coverage because of a termination of your employment (for reasons other than gross misconduct), or your hours of employment are reduced.

For covered spouses: If you are the spouse of a covered employee and are covered in one of the group health care plans, you have a right to elect continuation coverage if you lose group health care coverage for any of the following qualifying events:

    1.    The death of your spouse;
    2.    A termination of your spouse's employment (for reasons other than gross misconduct), or a reduction in your spouse's hours of employment;
    3.    Divorce or legal separation from your spouse; or
    4.    Your spouse becomes enrolled in Medicare (Part A, Part B, or both).

For covered dependent children: If you are the dependent child of a covered employee and are covered by one of the group health care plans, you have the right to elect continuation coverage if you lose group health care coverage for any of the following qualifying events:

    1.    The death of the parent-employee;
    2.    A termination of the parent-employee's employment (for reasons other than gross misconduct), or a reduction in the parent-employee's hours of employment;
    3.    Parents' divorce or legal separation;

<center>2</center>

4.    The parent-employee becomes enrolled in Medicare (Part A, Part B, or both); or
5.    You cease to be a "dependent child" in one of the group health care plans. (Check the dependent eligibility rules in the Summary Plan Description carefully to determine when a child loses "dependent status" under the plan in which you are covered.)

If you are a child born or placed for adoption with a covered employee during the continuation coverage period, you may also elect COBRA continuation coverage.

For retirees:  If you are a retiree, the spouse of a retiree, the surviving spouse of a retiree, or a dependent child of a retiree and you are covered by one of the group health care plans, you have the right to elect COBRA continuation coverage if you lose group health care coverage due to the commencement of a bankruptcy proceeding by the Company under federal bankruptcy laws found in title 11 of the United States Code.

## NOTIFICATION REQUIREMENTS FOR COVERED EMPLOYEES, SPOUSES, and DEPENDENTS

Group health care plans will offer the right to COBRA continuation coverage to qualified beneficiaries only after the Plan Administrator has been notified in a timely manner that a qualifying event has occurred.

Under the law, the covered employee, spouse, or other family member has the responsibility to inform the Plan Administrator of a divorce, legal separation, or a child losing "dependent status" under one of the group health care plans. This notification must be made within 60 days from whichever date is later: the date of the qualifying event or the date that coverage would be lost under the terms of the group health care plan because of the qualifying event. You must also notify the Plan Administrator of a Social Security Administration determination of disability or a secondary Qualifying Event (see "Length of Coverage" for notice deadlines).

You must contact the Temple-Inland Benefits Service Center using the Temple-Inland Benefits Online website at www.tinbenefits.synhrgy.com or by calling the Temple-Inland Benefits Service Center Interactive Voice Response (IVR) system at 1-877-459-6164 to report a qualifying event. You will need to specify the plan under which you are covered, the covered employee and qualifying beneficiaries who have coverage, the type of qualifying event, and the date the qualifying event occurred (or the date of the Social Security Administration determination of disability.) No other form of notice will be accepted. If this notification is not done in a timely manner, then your rights to COBRA continuation coverage will be forfeited.

The Company has the responsibility of notifying the Plan Administrator of the employee's termination of employment, reduction in employment hours, death, commencement of a proceeding in bankruptcy with respect to the Company, or the employee's enrollment in Medicare (Part A, Part B, or both). The Company will notify the Plan Administrator of the qualifying event within 30 days from the date of the qualifying event.

## ELECTION PERIOD

Once the Plan Administrator is notified that a qualifying event has occurred, the Plan Administrator will notify qualified beneficiaries of their right to elect COBRA continuation coverage. Each qualified beneficiary has an independent election right and will have 60 days from the later of the date coverage is lost under the group health care plan or from the date of notification to elect COBRA continuation coverage. The law does not allow for an extension of this maximum election period. If a qualified beneficiary does not elect COBRA continuation coverage within this period, all rights to elect COBRA continuation coverage will end.

If a qualified beneficiary does elect to continue coverage and pays the applicable premium, then the Company is required to provide the qualified beneficiary with coverage that is identical to the coverage provided under the group health care plan to similarly situated employees and/or covered dependents. If coverage is changed or modified for similarly situated active employees, then COBRA continuation coverage for qualified beneficiaries may be similarly changed and/or modified.

## LENGTH OF COVERAGE

3

COBRA continuation coverage is a temporary continuation of coverage under a group health care plan. The duration of COBRA continuation coverage is determined based on the qualifying event that has occurred.

18-month period: If the original qualifying event causing the loss of coverage is a termination of employment (other than for reasons of gross misconduct) or a reduction in employment hours, then each qualified beneficiary will have the opportunity to continue coverage for an 18-month period starting with the date of the qualifying event.

Disability extension: The 18 months of continuation coverage may be extended to 29 months for all qualified beneficiaries if the Social Security Administration determines that a qualified beneficiary was disabled during the first 60 days of continuation coverage according to Title II or XVI of the Social Security Act. You must obtain this disability determination from the Social Security Administration and provide a copy of the determination letter to the Plan Administrator at Temple-Inland Benefits Service Center, P. O. Box 744931, Houston, TX 77274 within 60 days of the date of determination and before the original 18 months of COBRA continuation coverage ceases. If there is a final determination that the qualified beneficiary is no longer disabled, the Plan Administrator must be notified within 30 days of the determination by the qualified beneficiary.

Secondary qualifying events: You can obtain an extension of the 18-month period if during the 18 months of continuation coverage, a second qualifying event occurs (divorce, legal separation, death, enrollment in Medicare, or ceasing to be a dependent child). If a second qualifying event occurs, then the 18 months of COBRA continuation coverage may be extended to 36 months from the date of the original qualifying event. If a second qualifying event occurs, you must notify the Temple-Inland Benefits Service Center, P. O. Box 744931, Houston, TX 77274, telephone number 1-877-459-6164 of the second qualifying event within 60 days of the event and within the original 18-month period. In no event, however, will COBRA continuation coverage continue beyond thirty-six months from the date of the original qualifying event.

36-month period: If the original qualifying event causing the loss of coverage is the death of the employee, divorce, legal separation, enrollment in Medicare (Part A, Part B, or both), or loss of "dependent status" of a dependent child under the group health care plans, then each qualified beneficiary will have the opportunity to elect 36 months of COBRA continuation coverage from the date of the qualifying event.

## ELIGIBILITY, PREMIUMS AND CONVERSION RIGHTS

You do not have to show that you are insurable to elect COBRA continuation coverage. However, you must be covered under a group health care plan at the time of a qualifying event in order to be eligible to elect COBRA continuation coverage (except for children born or placed for adoption with a covered employee during the COBRA continuation coverage period). The Plan Administrator reserves the right to verify eligibility and terminate COBRA continuation coverage retroactively if you are determined to be ineligible or if there has been a material misrepresentation of the facts.

A qualified beneficiary will have to pay all of the applicable premium plus a 2% administration charge for COBRA continuation coverage. These premiums will be adjusted in the future if the applicable premium amount changes. In addition, if the COBRA continuation period is extended due to a Social Security Administration determination of disability, the group health care plan may charge up to 150% of the applicable premium during the extended period for any coverage group that includes the disabled qualified beneficiary. There is a grace period of 30 days for the regularly scheduled monthly premiums. This is the maximum grace period, as the group health care plans do not allow for an extension beyond what is required by law.

At the end of the COBRA continuation period, a qualified beneficiary must be allowed to enroll in any individual conversion plan as provided under the group health care plan, if such conversion plan is available.

## TERMINATION OF CONTINUATION COVERAGE

The law allows continuation coverage to be terminated prior to the maximum continuation period for any of the following reasons:

4

1.  The Company ceases to provide group health coverage to any of its employees;
2.  Any required premium is not paid on time;
3.  A qualified beneficiary becomes covered under another group health care plan after electing continuation coverage that does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary (other than an exclusion or limitation that may be disregarded under the law);
4.  A qualified beneficiary becomes entitled to Medicare after electing continuation coverage;
5.  A qualified beneficiary whose coverage has been extended due to a disability is determined by the Social Security Administration to be no longer disabled;
6.  A qualified beneficiary notifies the Plan Administrator that he/she wishes to cancel continuation coverage; or
7.  The qualified beneficiary commits fraud or obtains benefits under a group health care plan through misrepresentation or otherwise as set forth in the plan.

## ADDRESS CHANGES

**In order to protect your family's rights, you should keep the Plan Administrator informed of any changes in address for you and your covered dependents. Failure on your part to do so may result in loss of COBRA continuation coverage rights.** You should also keep a copy, for your records, of any notices you send to the Plan Administrator.

## QUESTIONS?

If you do not understand any part of this notice or if you have questions regarding the information or your obligations, please contact the Temple-Inland Benefits Service Center, P. O. Box 744931, Houston, TX 77274, telephone number 1-877-459-6164.

You may also contact the nearest Regional or District Office of the U. S. Department of Labor's Employee Benefits Security Administration (EBSA). Addresses and phone numbers of Regional and District EBSA Offices are available through EBSA's website at www.dol.gov/EBSA.

<div align="right">Temple-Inland Corporate Services<br>Benefits Administration<br>9/2003</div>

TempleInland/Cleiland 070

**Bowling, Teah (TIFPC)**

| | |
|---|---|
| **From:** | Russell, Stacy (TIFPC) |
| **Sent:** | Monday, October 20, 2003 4:20 PM |
| **To:** | Bowling, Teah (TIFPC) |
| **Cc:** | Cornelius, Cecilia (TIFPC) |
| **Subject:** | RE: Disability - Cathy Cleiland |

BCBS of Ala ee only
6 X life   = 309,000

**Stacy Russell**
**Sr. Health & Welfare Administrator**
**Temple-Inland Corporate Services**
**1300 Mopac Expressway**
**Austin, TX 78746**
**512-434-3924 - phone**
**512-434-3933 - fax**

-----Original Message-----
**From: Bowling, Teah (TIFPC)**
**Sent:** Monday, October 20, 2003 3:53 PM
**To:** Russell, Stacy (TIFPC)
**Cc:** Cornelius, Cecilia (TIFPC)
**Subject:** FW: Disability - Cathy Cleiland

Please provide current medical and life options.

Thanks,
Teah

-----Original Message-----
**From:** Dover, Cathy (TIFPC)
**Sent:** Tuesday, October 07, 2003 12:09 PM
**To:** Bowling, Teah (TIFPC)
**Subject:** Disability - Cathy Cleiland

On November 12, 2003, Cathy Cleiland (xxx-xx-2332) will have been off 26 weeks and will be changed to inactive. Her last day worked way May 13, 2003 and I do not know the amount of her life insurance. The employee has been advised that she must provide proof of a pending SSDI claim prior to the end of the 26 weeks in order to be eligible for the DH&W plan.

*Cathy Dover*
**Human Resources Manager, Benefits**
**Temple-Inland Forest Products Corporation**
Phone: (936)829-1643
E-mail: cdover@templeinland.com

1

**Bowling, Teah (TIFPC)**

| | |
|---|---|
| **From:** | Dover, Cathy (TIFPC) |
| **Sent:** | Tuesday, October 07, 2003 12:09 PM |
| **To:** | Bowling, Teah (TIFPC) |
| **Subject:** | Disability - Cathy Cleiland |

On November 12, 2003, Cathy Cleiland (xxx-xx-2332) will have been off 26 weeks and will be changed to inactive.  Her last day worked way May 13, 2003 and I do not know the amount of her life insurance.  The employee has been advised that she must provide proof of a pending SSDI claim prior to the end of the 26 weeks in order to be eligible for the DH&W plan.

*Cathy Dover*

**Human Resources Manager, Benefits**
**Temple-Inland Forest Products Corporation**
Phone:    (936)829-1643
E-mail: cdover@templeinland.com

1

```
>  C      10206, 4228023320                                    ON H0BID
                                                   LEVEL 01 LINK FROM HM6EN
                   ------BASIC EMPLOYEE IDENTIFICATION------

     COMPANY--> 10206 EMPLOYEE NUMBER--> 0    23320
__   EMPLOYEE NAME-----> CATHY        K CLEILAND
     PO BOX/APT/SUITE-->
     STREET ADDRESS---->
     CITY STATE ZIP----> MONROEVILLE    AL
     HOME PHONE-------->              BUSINESS PHONE---->
     PAY TYPE----------> SALARY       SALARY OR RATE----> 0001980.77
     STANDARD HOURS----> 80.00        STANDARD HOURS 2--> 999.99
     TIME CARD STATUS--> AUTOMATIC    SOCIAL SECURITY--->         2332
     BIRTH DATE-------->     /1957    PAY FREQUENCY-----> 40
     EMPLOYMENT DATE---> 08/24/1998   SEX---------------> FEMALE
     ANNUAL SALARY-----> 0051500.02   AMT LAST PAY CHG--> 00057.69
     ORGANIZATION------> 02115125300  DATE LAST PAY CHG-> 06/30/2002
     SALARY GRADE------> 17           SALARY STEP------->
     MARITAL STATUS----> 2            ADJUSTED EMP DATE-> 00/00/0000
     START PAY DATE----> 00/00/0000   START DAY OF WEEK-> 2
     WORK DAYS/WEEK----> 5            STD HOURS/DAY-----> 8.0

  A205W-END OF LIST
                                11/11/03  14:28:32 1 M3LL TX91  ____
```

TempleInland/Cleiland 073

```
> GUH   10206,     J23320                .                           ON H0BES
                                                    LEVEL 02 LINK FROM H0BID
                    -------EMPLOYEE STATUS INFORMATION------

      COMPANY--> 10206 EMPLOYEE NUMBER--> 0     23320
      NAME-----> CATHY        K CLEILAND

      EMPLOYMENT STATUS-----> 5              TERMINATION CODE----> 50
      TERMINATION DATE------> 00/00/0000     RETIREMENT DATE-----> 00/00/0000
      START LEAVE DATE------> 00/00/0000     RETURN LEAVE DATE---> 00/00/0000
      CONT SERVICE DATE-----> 00/00/0000     DT LAST STATUS CHG--> 08/24/1998
      DATE OF LAST CHANGE---> 11/10/2003     DATE LAST PAY CHG---> 06/30/2002
      DATE OF LAST REVIEW---> 00/00/0000     LAST CHECK DATE-----> 11/14/2003
      PREVIOUS W-2 ISSUED---> 0              REASON LAST PAY CHG-> 0
      COMP HOURS TO DATE----> 00000.00       COMP HOURS YTD------> 00000.00
      INCOME OUT OF CNTRY->        .00       DAYS OUT OF CNTRY---> 000
      FLEX SPENDING AMT--->        .00       FLEX NON TAXABLE---->        .00
      TOTAL 401K AMT--->      1489.22



                         11/11/03  14:29:37 1 M3LL TX91 ____
```

TempleInland/Cleiland 074

F I L E

 **BlueCross BlueShield of Illinois**     **BlueCross BlueShield of New Mexico**     **BlueCross BlueShield of Texas**    



**Inbox > Package**                                                      **Help**

| | |
|---|---|
| **Package** | PHI Cathy Cleiland-Disabled Participant |
| **From** | amanda_greer (amanda_greer@bcbstx.com) |
| **To** | ceciliacornelius@templeinland.com |
| **CC** | ime_mailer.4-3920545-3003289-Y3K7JPCB@tmail.hcsc.net |
| **Sent** | Today, 01/18/2007 08:29:22, CST6 |
| **Expires** | 30 days later, 02/17/2007 08:30:22, CST6 |

**IME Menu**

Inbox
Outbox

Find Package

New Package
Folders
Address Book

Account Info
Preferences

Help
Logout

⟨Reply⟩  ⟨Reply to All⟩  ⟨Forward⟩

⟨Delete⟩  ⟨Extend Expiration⟩  ⟨Move to  (Select a Folder)⟩

  Message from Sender

POWERED BY
**TUMBLEWEED**



Good Morning Cecilia,

I received confirmation from Peggy yesterday afternoon that Medicare Crossover had been set up on this member. Going forward, claims that are filed to Medicare should automatically crossover to us for secondary payment.

Thanks!
Amanda Greer
Group Benefit Specialist
BCBS of Texas/ Marshall FSU
Amanda_Greer@BCBSTX.com
Ph: 903-934-7137
Fax: 903-934-6051

"CECILIA
CORNELIUS"
<ceciliacornelius    To
@templeinland.com    amanda_greer@bcbstx.com
>    cc
Sent by: "CECILIA
CORNELIUS"    Subject
<ime_mailer.4-392    Re: PHI Cathy Cleiland-Disabled
0545-3003289-Y3K7    Participant
JPCB@tmail.hcsc.n
et>

01/17/2007 06:09

https://tmail.hcsc.net/ime?x=4-3921567-3004021-Q42RQA41                    1/18/2007

FILE

   

**BlueCross BlueShield of Illinois**    **BlueCross BlueShield of New Mexico**    **BlueCross BlueShield of Texas**



**Inbox > Package**

**Help**

**IME Menu**



:::**Inbox**
**Outbox**

**Find Package**

**New Package**
**Folders**
**Address Book** 

**Account Info**
**Preferences**

**Help**
**Logout**

| | |
|---|---|
| **Package** | PHI Cathy Cleiland-Disabled Participant |
| **From** | amanda_greer (amanda_greer@bcbstx.com) |
| **To** | ceciliacornelius@templeinland.com |
| **Sent** | 4 days ago, 01/13/2007 10:23:02, CST6 |
| **Expires** | 26 days later, 02/12/2007 10:24:02, CST6 |

❮Reply❯ ❮Reply to All❯ ❮Forward❯

❮Delete❯ ❮Extend Expiration❯ ❮Move to❯ (Select a Folder)

**Message from Sender**

POWERED BY
TUMBLEWEED

Cecilia,

I have sent this information to our membership area (Peggy Rowe) to set this account up on Medicare Crossover. This means that once Medicare has processed payment on a claim, the claim will be forwarded to us from Medicare. It is important to remember that even if we do set the account up as Medicare Crossover, the process will not work unless the provider files the claim to Medicare. The member must tell all of her providers to file to Medicare first, otherwise there is nothing for Medicare to send to us for secondary payment.

I have reviewed all claims on this account, and only found the following claims that have not been processed for secondary payment. Based on the information that we have received, all of these claims were filed to us by the provider as if we were primary, and the claims have not been filed to Medicare. In other words, the provider needs to file the claims to Medicare as the primary payer. We can not process as secondary if the provider doesn't first file to Medicare.

Date of Service: 06/13/2006
Provider: Mid S. HME Services (this is a Durable Medical Equipment Provider)

Date of Service: 08/23/2006
Provider: Dothan Medical Associates

Date of Service: 12/08/2006
Provider: Gut PC

All other claims have been processed for secondary payment.

https://tmail.hcsc.net/ime?x=4-3899981-2986835-IHKZJOU6

1/17/2007

TempleInland/Cleiland 076

Thanks!
Amanda Greer
Group Benefit Specialist
BCBS of Texas/ Marshall FSU
Amanda_Greer@BCBSTX.com
Ph: 903-934-7137
Fax: 903-934-6051


"CECILIA
CORNELIUS"
<ceciliacornelius    To
@templeinland.com  amanda_greer@bcbstx.com
>                   cc
Sent by: "CECILIA
CORNELIUS"          Subject
<ime_mailer.4-386  Re: PHI Cathy Cleiland-Disabled
8384-2962041-NYB0  Participant
UYFZ@tmail.hcsc.n
et>


01/09/2007 01:35
PM


Please respond to
ceciliacornelius@
templeinland.com


Amanda, I received a call from the member and she spoke with Medicare and they told her that the company should have a Medicare Coordination Agreement with Medicare and that BCBS would get a weekly report of what has and not been paid by Medicare is that correct?

The issue I believe Cathy has it is that she does not want or have the capability to deal with claim issues due to her health problems or to be inconvenient by sending the Medicare EOB's to BCBS to release and paid her BCBS claims.

"amanda_greer" <amanda_greer@bcbstx.com> wrote:
>
>
> I am researching this one, and will get back to you today.
>
> Thanks!

https://tmail.hcsc.net/ime?x=4-3899981-2986835-IHKZJOU6                    1/17/2007

TempleInland/Cleiland 077

> Amanda Greer
> Group Benefit Specialist
> BCBS of Texas/ Marshall FSU
> Amanda_Greer@BCBSTX.com
> Ph: 903-934-7137
> Fax: 903-934-6051
>
>
>

> "Cornelius,

> Cecilia"

> <CeciliaCornelius
To
> @templeinland.com "'Amanda_Greer@BCBSTX.COM'"

> > <Amanda_Greer@BCBSTX.COM>

>
cc
> 01/08/2007 04:42

> PM
Subject
> Cathy Cleiland-Disabled
Participant
>

>

>

>

>

>

>
>
>
>
>
> Amanda, could you please help us do some research and verify that all
the
> medical claims on the above disabled member have been coordinated/paid
> correctly since she became Medicare eligible and elected Part A and B
> effective 11/01/2005?
>
> She called very upset and stated that BCBS was not paying anything on

TempleInland/Cleiland 078

her
> claims and that BCBS is always requesting for the Medicare EOB's
before
> releasing or paying her claims.
>
>        )-XXXX
>
> Thank you,
> Cecilia Cornelius
> Health and Welfare Administrator
> Temple-Inland Corporate Services
> 1300 S Mopac, Austin, TX 78746
> Ph:512.434.4942
> Ph:877.437.3497 Ext.4942
> Fx:512.434.5626
>
> THIS E-MAIL, INCLUDING ATTACHMENTS, MAY INCLUDE PROTECTED
HEALTH
> INFORMATION
> (PHI), CONFIDENTIAL AND/OR PROPRIETARY INFORMATION AND MAY
BE USED
ONLY BY
> THE PERSON OR ENTITY TO WHICH IT IS ADDRESSED OR THE
INDIVIDUALS
DESIGNATED
> TO VIEW SUCH INFORMATION PER HIPAA REGULATIONS. IF THE
READER OF THIS
> E-MAIL
> IS NOT THE INTENDED RECIPIENT, OR HIS/HER AUTHORIZED AGENT,
THE READER
IS
> HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF
THIS
> E-MAIL IS PROHIBITED. IF YOU HAVE RECEIVED THIS E-MAIL IN
ERROR,
PLEASE
> NOTIFY THE SENDER BY REPLYING TO THIS MESSAGE, AND DELETING
THIS
E-MAIL
> IMMEDIATELY.
> ********** Confidentiality Notice **********
> This electronic transmission and any attached documents or other
writings
> are confidential and are for the sole use of the intended
recipient(s)
> identified above. This message may contain information that is
privileged,
> confidential or otherwise protected from disclosure under applicable
law.
> If the receiver of this information is not the intended recipient, or
the

TempleInland/Cleiland 079

> employee, or agent responsible for delivering the information to the
> intended recipient, you are hereby notified that any use, reading,
> dissemination, distribution, copying or storage of this information is
> strictly prohibited. If you have received this information in error, please
>
> notify the sender by return email and delete the electronic transmission,
> including all attachments from your system.
>
>
>
>
>
> **********
>
> The information contained in this communication is confidential, private, proprietary, or otherwise privileged and is intended only for the use of the addressee. Unauthorized use, disclosure, distribution or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately at (312)653-6000 in Illinois; (800)835-8699 in New Mexico; (918)560-3500 in Oklahoma; or (972)766-6900 in Texas.
>
> **********
>

**********

The information contained in this communication is confidential, private, proprietary, or otherwise privileged and is intended only for the use of the addressee. Unauthorized use, disclosure, distribution or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately at (312)653-6000 in Illinois; (800)835-8699 in New Mexico; (918)560-3500 in Oklahoma; or (972)766-6900 in Texas.

**********

Save Message Text...

Blue Cross and Blue Shield of Illinois; Blue Cross and Blue Shield of New Mexico; Blue Cross and Blue Shield of Texas, a Divisions of Health Care Service Corporation, a Mutual Legal Reserve Company, an Independent Licensee of the Blue Cross and Blue Shield Association.
© Copyright 2003. Health Care Service Corporation. All Rights Reserved.

Legal Disclaimer | Privacy Statement | Code Of Conduct

   



## Outbox > Package                                                                 Help

|          |                                                          |
|----------|----------------------------------------------------------|
| **Package** | Re: PHI Cathy Cleiland-Disabled Participant |
| **From** | CECILIA CORNELIUS (ceciliacornelius@templeinland.com) |
| **To** | amanda_greer@bcbstx.com |
| **Sent** | 19 days ago, 01/18/2007 10:45:58, CST6 |
| **Expires** | 11 days later, 02/17/2007 10:45:59, CST6 |
| **Tracking** | Sent |

**IME Menu**

**Inbox**
::Outbox

**Find Package**

**New Package**
**Folders**
**Address Book**

**Account Info**
**Preferences**

**Help**
**Logout**

POWERED BY
TUMBLEWEED

Reply    Reply to All    Forward        2 of 7 package(s) 

Delete    Extend Expiration    Move to    (Select a Folder)

    Message from Sender    

Thank you so much Amanda for all your help. CC

"amanda_greer" <amanda_greer@bcbstx.com> wrote:
>
>
> Good Morning Cecilia,
>
> I received confirmation from Peggy yesterday afternoon that Medicare
> Crossover had been set up on this member. Going forward, claims that are
> filed to Medicare should automatically crossover to us for secondary
> payment.
>
> Thanks!
> Amanda Greer
> Group Benefit Specialist
> BCBS of Texas/ Marshall FSU
> Amanda_Greer@BCBSTX.com
> Ph: 903-934-7137
> Fax: 903-934-6051
>
>
>
> "CECILIA
> CORNELIUS"
> <ceciliacornelius To
> @templeinland.com amanda_greer@bcbstx.com
> > cc
> Sent by: "CECILIA
> CORNELIUS" Subject
> <ime_mailer.4-392 Re: PHI Cathy Cleiland-Disabled
> 0545-3003289-Y3K7 Participant
> JPCB@tmail.hcsc.n
> et>

TempleInland/Cleiland 081

> >
> >
> 01/17/2007 06:09
> PM
> >
> >
> Please respond to
> ceciliacornelius@
> templeinland.com
> >
> >
> >
> >
> >
> >
> Thank you very much for all your help. Will Peggy e-mail me to confirm
> once the account has been setup for Medicare Crossover?
> >
> "amanda_greer" <amanda_greer@bcbstx.com> wrote:
> >
> >
> > Cecilia,
> >
> > I have sent this information to our membership area (Peggy Rowe) to
> set
> > this account up on Medicare Crossover. This means that once Medicare
> has
> > processed payment on a claim, the claim will be forwarded to us from
> > Medicare. It is important to remember that even if we do set the
> account
> > up as Medicare Crossover, the process will not work unless the
> provider
> > files the claim to Medicare. The member must tell all of her
> providers to
> > file to Medicare first, otherwise there is nothing for Medicare to
> send to
> > us for secondary payment.
> >
> > I have reviewed all claims on this account, and only found the
> following
> > claims that have not been processed for secondary payment. Based on
> the
> > information that we have received, all of these claims were filed to
> us by
> > the provider as if we were primary, and the claims have not been filed
> to
> > Medicare. In other words, the provider needs to file the claims to
> > Medicare as the primary payer. We can not process as secondary if the
> > provider doesn't first file to Medicare.
> >
> > Date of Service: 06/13/2006
> > Provider: Mid S. HME Services (this is a Durable Medical Equipment

TempleInland/Cleiland 082

> > Provider)
> >
> > Date of Service: 08/23/2006
> > Provider: Dothan Medical Associates
> >
> > Date of Service: 12/08/2006
> > Provider: Gut PC
> >
> >
> > All other claims have been processed for secondary payment.
> >
> > Thanks!
> > Amanda Greer
> > Group Benefit Specialist
> > BCBS of Texas/ Marshall FSU
> > Amanda_Greer@BCBSTX.com
> > Ph: 903-934-7137
> > Fax: 903-934-6051
> >
> >
> >
>
> > "CECILIA
>
> > CORNELIUS"
>
> > <ceciliacornelius
> To
> > @templeinland.com amanda_greer@bcbstx.com
>
> > >
> cc
> > Sent by: "CECILIA
>
> > CORNELIUS"
> Subject
> > <ime_mailer.4-386 Re: PHI Cathy Cleiland-Disabled
>
> > 8384-2962041-NYB0 Participant
>
> > UYFZ@tmail.hcsc.n
>
> > et>
>
> >
>
> >
>
> > 01/09/2007 01:35
>
> > PM
>

https://tmail.hcsc.net/ime?s=ac&t=TW_TxnAccDeliveryPageEntry.tpl&i=881594611&k=90...    2/6/2007

> >
>
> >
>
> > Please respond to
>
> > ceciliacornelius@
>
> > templeinland.com
>
> >
>
> >
>
> >
>
> >
> >
> >
> >
> > Amanda, I received a call from the member and she spoke with Medicare
> > and they told her that the company should have a Medicare Coordination
> > Agreement with Medicare and that BCBS would get a weekly report of
> what
> > has and not been paid by Medicare is that correct?
> >
> > The issue I believe Cathy has it is that she does not want or have the
> > capability to deal with claim issues due to her health problems or to
> be
> > inconvenient by sending the Medicare EOB's to BCBS to release and paid
> > her BCBS claims.
> >
> > "amanda_greer" <amanda_greer@bcbstx.com> wrote:
> > >
> > >
> > > I am researching this one, and will get back to you today.
> > >
> > > Thanks!
> > > Amanda Greer
> > > Group Benefit Specialist
> > > BCBS of Texas/ Marshall FSU
> > > Amanda_Greer@BCBSTX.com
> > > Ph: 903-934-7137
> > > Fax: 903-934-6051
> > >
> > >
> > >
> >
> > > "Cornelius,
> >
> > > Cecilia"
> >
> > > <CeciliaCornelius
> > To

TempleInland/Cleiland 084

> > > @templeinland.com "'Amanda_Greer@BCBSTX.COM'"
> >
> > > > <Amanda_Greer@BCBSTX.COM>
> >
> > >
> > cc
> > > 01/08/2007 04:42
> >
> > > PM
> > Subject
> > > Cathy Cleiland-Disabled
> > Participant
> > >
> >
> > >
> >
> > >
> >
> > >
> >
> > >
> >
> > >
> >
> > >
> >
> > >
> > >
> > >
> > >
> > >
> > > Amanda, could you please help us do some research and verify that
> all
> > the
> > > medical claims on the above disabled member have been
> coordinated/paid
> > > correctly since she became Medicare eligible and elected Part A and
> B
> > > effective 11/01/2005?
> > >
> > > She called very upset and stated that BCBS was not paying anything
> on
> > her
> > > claims and that BCBS is always requesting for the Medicare EOB's
> > before
> > > releasing or paying her claims.
> > >
> > > ¿        XXXX
> > >
> > > Thank you,
> > > Cecilia Cornelius
> > > Health and Welfare Administrator
> > > Temple-Inland Corporate Services
> > > 1300 S Mopac, Austin, TX 78746

# VOLUME II-a

# TEMPLE-INLAND
## Group Benefits Plan

**January 1, 2000**

**LIFE0003A**
**ADD0001A**
**ADD0004A**
**LTD0001A**
**STD0002A**

TempleInland/Cleiland 086

# TEMPLE-INLAND
## GROUP BENEFITS PLAN

**Group Life Insurance**
**Policy FLI-50710** . . . . . . . . . . . . . . . . . . . . . . . . . . . **Section I**

**Group Accident Insurance**
**Policy OK-810692** . . . . . . . . . . . . . . . . . . . . . . . . . . **Section II**

**Group Business Travel Accident Insurance**
**Policy ABL-670620** . . . . . . . . . . . . . . . . . . . . . . . . **Section III**

**Group Long Term Disability Insurance**
**Policy FLK-020104** . . . . . . . . . . . . . . . . . . . . . . . . **Section IV**

**Temple-Inland**
**Short-Term Disability Plan** . . . . . . . . . . . . . . . . . . **Section V**

508508

# SECTION I

TempleInland/Cleiland 088

# GROUP LIFE INSURANCE CERTIFICATE

## POLICY NUMBER FLI-050710

# TEMPLE-INLAND

**LIFE0003A**

**TempleInland/Cleiland 089**

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call the Life Insurance Company of North America, Group Insurance's toll-free telephone number for information or to make a complaint at:

**1-800-457-5515**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the
Texas Department of Insurance
P.O. Box 149104
Austin, TX  78714-9104
FAX # (512) 475-1771

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

TL-004426

**AVISO IMPORTANTE**

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis del Life Insurance Company of North America, Group Insurance Division para informacion o para someter una queja al:

**1-800-457-5515**

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de
Seguros de Texas
P.O. Box 149104
Austin, TX  78714-9104
FAX # (512) 475-1771

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero.  Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

TempleInland/Cleiland 090

### IMPORTANT INFORMATION ABOUT COVERAGE UNDER
### THE TEXAS LIFE, ACCIDENT, HEALTH AND HOSPITAL SERVICE
### INSURANCE GUARANTY ASSOCIATION

Texas law establishes a system, administered by the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association (the "Association"), to protect policyholders if their life or health insurance company fails to or cannot meet its contractual obligations. Only the policyholders of insurance companies which are members of the Association are eligible for this protection. However, even if a company is a member of the Association, protection is limited and policyholders must meet certain guidelines to qualify. (The law is found in the Texas Insurance Code, Article 21.28-D.)

**BECAUSE OF STATUTORY LIMITATIONS ON POLICYHOLDER PROTECTION, IT IS POSSIBLE THAT THE ASSOCIATION MAY NOT COVER YOUR POLICY OR MAY NOT COVER YOUR POLICY IN FULL.**

### ELIGIBILITY FOR PROTECTION BY THE ASSOCIATION

When an insurance company which is a member of the Association is designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:

- residents of Texas at the time that their insurance company is impaired;
- residents of other states, ONLY if the following conditions are met:
  1) The policyholder has a policy with a company based in Texas;
  2) The company has never held a license in the policyholder's state of residence;
  3) The policyholder's state of residence has a similar guaranty association; and
  4) The policyholder is **not eligible** for coverage by the guaranty association of the policyholder's state of residence.

### LIMITS OF PROTECTION BY THE ASSOCIATION

Accident, Accident and Health, or Health Insurance:
- up to a total of $200,000 for one or more policies for each individual covered.

Life Insurance
- net cash surrender value up to a total of $100,000 under one or more policies on any one life; or
- death benefits up to a total of $300,000 under one or more policies on any one life.

Individual Annuities:
- net cash surrender amount up to a total of $100,000 under one or more policies owned by one contract holder.

Group Annuities:
- net cash surrender amount up to $100,000 in allocated benefits under one or more policies owned by one contract holder; or
- net cash surrender amount up to $5,000,000 in unallocated benefits under one contract holder regardless of the number of contracts.

**THE INSURANCE COMPANY AND ITS AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE ASSOCIATION FOR THE PURPOSE OF SALES, SOLICITATION, OR INDUCEMENT TO PURCHASE ANY FORM OF INSURANCE.**

**When you are selecting an insurance company, you should not rely on coverage by the Association.**

| | |
|---|---|
| Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association 301 Congress, Suite 500 Austin, Texas 78701 800-982-6362 | Texas Department of Insurance P.O. Box 149104 Austin, Texas 78714-9104 800-252-3439 |

**NOTICE**

Benefits paid under the Accelerated Benefits provision will reduce the Death Benefit payable for life insurance.

Benefits payable under the Accelerated Benefits provision may be taxable. If so, the Employee or the Employee's beneficiary may incur a tax obligation. As with all tax matters, an Employee should consult with a personal tax advisor to assess the impact of this benefit. Accelerated Benefits are not payable if life insurance coverage under the Policy is not in force.

TL-004788

TempleInland/Cleiland 092

## FOREWORD

Life insurance provides individuals and their families with financial protection. The Life Insurance Benefit described in this booklet will help secure your family's financial security in the event of your death.

The need for life insurance protection depends on individual circumstances and financial situations. This valuable coverage should add an extra dimension to your personal insurance portfolio.

Insurance benefits described in the following pages will apply to you if your Employer has made this coverage available to you at no cost or you have elected the benefit and authorized payroll deduction for the required premium.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 CHESTNUT STREET
PHILADELPHIA, PA 19192-2235
(800) 732-1603  TDD (800) 552-5744
**A STOCK INSURANCE COMPANY**

**GROUP INSURANCE
CERTIFICATE**

We, the LIFE INSURANCE COMPANY OF NORTH AMERICA, certify that we have issued a Group Life Insurance Policy, FLI-050710, to Temple-Inland Forest Products Corporation.

We certify that we insure all eligible persons, who are enrolled according to the terms of the Policy. Your coverage will begin and end according to the terms set forth in this certificate.

This certificate describes the benefits and basic provisions of your coverage. You should read it with care so you will understand your coverage.

This is not the insurance contract. It does not waive or alter any of the terms of the Policy. If questions arise, the Policy will govern. You may examine the Policy at the office of the Policyholder or the Administrator.

This certificate replaces any and all certificates which may have been issued to you in the past under the Policy.

John K. Leonard, President

TL-004704

## TABLE OF CONTENTS

SCHEDULE OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SCHEDULE OF BENEFITS FOR CLASS 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SCHEDULE OF BENEFITS FOR CLASS 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

SCHEDULE OF BENEFITS FOR CLASS 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SCHEDULE OF BENEFITS FOR CLASS 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SCHEDULE OF BENEFITS FOR CLASS 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

SCHEDULE OF BENEFITS FOR CLASS 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SCHEDULE OF BENEFITS FOR CLASS 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SCHEDULE OF BENEFITS FOR CLASS 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

SCHEDULE OF BENEFITS FOR CLASS 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

SCHEDULE OF BENEFITS FOR CLASS 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

SCHEDULE OF BENEFITS FOR CLASS 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

SCHEDULE OF BENEFITS FOR CLASS 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

WHO IS ELIGIBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

WHEN COVERAGE BEGINS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

WHEN COVERAGE ENDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

WHEN COVERAGE CONTINUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

LIFE INSURANCE BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

LIFE INSURANCE EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

ACCIDENT INSURANCE BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

ACCIDENT INSURANCE EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CLAIM PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

ADMINISTRATIVE PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

SUPPLEMENTAL INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

TempleInland/Cleiland 095

## SCHEDULE OF BENEFITS

**Classes of Eligible Employees**

On the pages following the definition of eligible Employees there is a Schedule of Benefits for each Class of Eligible Employees listed below.  For an explanation of these benefits, please see the Description of Benefits provision.

If you are eligible under one Class of Eligible Employees and later becomes eligible under a different Class of Eligible Employees, changes in your insurance due to the class change will be effective on the date of the change in class.

| | |
|---|---|
| Class 1 | All active, Full-time and part-time salaried, hourly and commissioned I, II, III and V Employees of the Employer who are eligible for the Temple-Inland Benefit Solutions Plan and who are regularly working a minimum of 20 hours per week. |
| Class 2 | All retired Inland Paperboard and Packaging, Inc. salaried Employees, commissioned salesmen, officers, or production Employees located in Crawfordsville, Indiana, Maysville, Kentucky and Streetsboro, Ohio who worked for an Employer participating in this Plan; who retired on January 1, 1998 and after under the Employer's IRS qualified Retirement Plan and will receive a pension and are eligible for salaried retiree medical coverage. |
| Class 3 | All grandfathered retired Inland Paperboard and Packaging, Inc. salaried Employees, commissioned salesmen, officers, or production Employees of facilities located in Crawfordsville, Indiana and Maysville, Kentucky who worked for an Employer participating in this Plan; who retired prior to January 1, 1998 under the Employer's IRS qualified Retirement Plan and will receive a pension. (A closed group.) |
| Class 4 | All named grandfathered Employees disabled prior to January 1, 1998 as on record with the Employer and the Insurance Company. (A closed group.) |
| Class 5 | All grandfathered Employees of Inland Paperboard Packaging, Inc. who ported coverage prior to January 1, 1998 as on record with the Employer and the Insurance Company. (A closed group.) |
| Class 6 | All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-bargaining hourly Employees of St. Louis Box Plant located in St. Louis, Missouri who worked for an Employer participating in this Plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension. |
| Class 7 | All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-union hourly Employees of the Wheat Ridge Box Plant located in Wheat Ridge, Colorado who worked for an Employer participating in this Plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension. |
| Class 8 | All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-bargaining hourly Employees of the Bell Box Plant located in Los Angeles, California who worked for an Employer participating in this Plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension. |
| Class 9 | All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-bargaining hourly Employees of Ontario Mill located in Ontario, California who worked for an Employer participating in this plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension. |
| Class 10 | All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-bargaining hourly Employees of Ontario Box Plant located in Ontario, California who worked for an Employer participating in this plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension. |

1

Class 11    All retired Inland Paperboard and Packaging, Inc. regular, Full-time non-bargaining hourly Employees of Inland-Rand Whitney located in Ontario, California who worked for an Employer participating in this plan; who retired under the Employer's IRS qualified Retirement Plan and will receive a pension.

Class 12    All retired, Full-time bargaining Employees of the Rome Forest facility located in Rome, Georgia, who are represented by PACE Local 518, who retired under the Employer's IRS qualified Retirement Plan and will receive a pension.

2

TempleInland/Cleiland 097

## SCHEDULE OF BENEFITS FOR CLASS 1

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

Initial Group:  No Waiting Period.

New Hires:

Each Full-time salaried exempt Employee, commission II Employee, commission III Employee, and each part-time salaried exempt Employee who is a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time salaried non-exempt Employee who is not a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time or part-time salaried non-exempt Employee who is a Financial Services Employee, and each hourly Employee, part-time hourly Employee, part-time salaried Employee (who is not a Financial Services Employee), commission I Employee, or commission V Employee shall be eligible to participate in the Plan upon the first day of the month coinciding with or following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service. For this group, Waiting Period is defined as follows:

> For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees, Waiting Period means 31 days of Active Service from an Employee's most recent date of hire as an Employee.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

Life Benefit

    Minimum Benefit:
    Guaranteed Issue Amount:
    Maximum Benefit:

1, 2, 3, 4, 5 or 6 times Annual Compensation rounded to the next higher $1,000, if not already a multiple thereof.
the greater of 1 times Annual Compensation or $20,000
the lesser of 3 times Annual Compensation or $1,000,000
the lesser of 6 times Annual Compensation or $1,000,000

    Seatbelt Benefit

10% of your Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000.

    Terminal Illness Benefit

50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000.

3

TempleInland/Cleiland 098

Continuation Options

| | |
|---|---|
| For Layoff | |
| Maximum Benefit Period: | For the period specified by your Employer, not to exceed 6 months |
| For Leave of Absence | |
| Maximum Benefit Period: | For the period specified by your Employer, not to exceed 12 months |
| For Family Medical Leave | |
| Maximum Benefit Period: | 12 weeks |
| | |
| For Disability | |
| Maximum Benefit Period: | To the Retirement Eligible date. |
| Applicable Coverages | Life Insurance Benefits for you. |

Portability Options

| | |
|---|---|
| For Employees | See the Former Employee and Spouse of Former Employee sections in this Schedule of Benefits for the amounts of insurance an Insured is eligible to continue under this option. |
| Seatbelt Benefit | 10% of your Life Insurance Benefits in force on the date of the Accident or $10,000, if less.  The Limited Seatbelt Benefit is $1,000. |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

Automatic Increase Feature

If your Life Insurance Benefits are based on Annual Compensation, these benefits will automatically increase, provided the following events occur.
1.  Your Employer provides us with the required notice of an increase in Annual Compensation; and
2.  You are in Active Service on that date.  If you are not in Active Service on the date of the increase, Life Insurance Benefits will not increase until you return to Active Service.

You will not be required to satisfy the Insurability Requirement for the increased amount.

If you are initially approved for Life Insurance Benefits in excess of the Guaranteed Issue Amount, these benefits will not increase in excess of the Maximum Benefit Amount.

If you revoke this Automatic Increase Feature, you may not elect it at a later date.  If you are not covered under the Automatic Increase Feature, you must satisfy the Insurability Requirement before an increase in Life Insurance Benefits based on an increase in your Annual Compensation is effective.

4

TempleInland/Cleiland 099

Annual Re-Enrollment Feature

During the 1998 Annual Enrollment Period if you are currently insured under the Policy, you may increase your Life Insurance Benefits by one benefit level not to exceed $500,000.

During the 1999 Annual Enrollment Period or within 31 days after a permitted Life Status Change during 1999, you may increase your Life Insurance Benefits by one benefit level not to exceed the Guaranteed Issue amount.

For future annual enrollments or within 31 days after a permitted Life Status Change, you may increase your Life Insurance Benefits by one benefit level. Increases above one benefit level are not permitted regardless of health status.

You may reduce Life Insurance Benefits at future annual enrollments or within 31 days after a permitted Life Status Change. The reduced amount is effective on the date the completed change form is received by your Employer or us.

**Spouse Benefits**

| | |
|---|---|
| Life Benefit | $10,000; $25,000; $50,000; $75,000 and $100,000 |
| Guaranteed Issue Amount: | The greater of $25,000 or an amount equal to your Spouse's Life Insurance Benefit in effect on the termination date of the Prior Plan. |
| Maximum Benefit: | $100,000 |
| Seatbelt Benefit | 10% of your Spouse's Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

If your Spouse's current coverage from a Prior Plan is not available on January 1, 1998, then your Spouse can select the next higher benefit amount without having to satisfy the Insurability Requirement.

For Residents of Texas only:
Your Spouse's Life Insurance Benefits cannot exceed 100% of your eligible Life Insurance Benefit amount.

Annual Re-Enrollment Feature

During the 2000 Annual Enrollment Period and for future annual enrollment periods or 31 days after a permitted Life Status Change, you may elect or increase your Spouse's Life Insurance Benefit not to exceed the Guaranteed Issue Amount.

| | |
|---|---|
| Portability Options | |
| For Spouses | See the Former Spouse section in this Schedule of Benefits for the amounts of insurance an Insured is eligible to continue under this option. |
| Seatbelt Benefit | 10% of your Spouse's Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

5

TempleInland/Cleiland 100

**Dependent Child Benefits**

| | |
|---|---|
| Life Benefit | Units of $5,000 |
| Maximum Benefit: | $10,000 |
| | The Maximum Benefit for a Dependent Child who is less than 6 months old is $500. |
| Seatbelt Benefit | 10% of your Child's Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |

For Residents of Texas only:
Your Dependent Child's Life Insurance Benefits cannot exceed 100% of your eligible Life Insurance Benefit amount.

Annual Re-Enrollment Period

During the 2000 Annual Enrollment Period and for future annual enrollment periods or 31 days after a permitted Life Status Change, you may elect or increase your Dependent Child's Life Insurance Benefit not to exceed the Maximum Benefit amount.

| | |
|---|---|
| Portability Options | |
| For Dependent Children | See the Former Dependent Child section in this Schedule of Benefits for the amounts of insurance an Insured is eligible to continue under this option. |
| Seatbelt Benefit | 10% of your Child's Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |

**Former Employee Benefits**

| | |
|---|---|
| Amount of Insurance | An amount elected subject to the Maximum Benefit amount for Life Insurance Benefits you are allowed, less any amount of conversion insurance issued under the Conversion Privilege for Life Insurance. |
| | Any amount elected in excess of your Life Insurance Benefits in effect on the date you no longer qualify as an Employee will be effective on the date we agree in writing to insure you. |
| | Life Insurance Benefits for a Former Employee age 65 and over will reduce to 25% of the Life Insurance Benefit amount payable on the day prior to the date the reduction becomes effective. |
| Maximum Benefit Period | To Age 75 |
| Seatbelt Benefit | 10% of your Life Insurance Benefits in force on the date of the Accident or $10,000, if less. The Limited Seatbelt Benefit is $1,000. |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

6

TempleInland/Cleiland 101

**Spouse of Former Employee Benefits**

Amount of Insurance

An amount elected subject to the Maximum Benefit amount for Life Insurance Benefits available to your Spouse.

Any amount elected in excess of your Spouse's Life Insurance Benefits in effect on the date he or she no longer qualifies as a Spouse will be effective on the date the we agree in writing to insure him or her.

Life Insurance Benefits for your Spouse, who is age 65 or over, of a Former Employee will reduce to 25% of the Life Insurance Benefit amount payable on the day prior to the date the reduction becomes effective.

Maximum Benefit Period

To Age 75

Seatbelt Benefit

10% of your Spouse's Life Insurance Benefits in force on the date of the Accident or $10,000, if less.  The Limited Seatbelt Benefit is $1,000.

Terminal Illness Benefit

50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000.

**Former Spouse Benefits**

Amount of Insurance

An amount elected subject to the Maximum Benefit amount for Life Insurance Benefits available to your Spouse.

Any amount elected in excess of your Former Spouse's Life Insurance Benefits in effect on the date he or she no longer qualifies as a Spouse will be effective on the date the Insurance Company agrees in writing to insure him or her.

Life Insurance Benefits for your Former Spouse age 65 and over will reduce to 25% of the Life Insurance Benefit amount payable on the day prior to the date the reduction becomes effective.

Maximum Benefit Period

To Age 75

Seatbelt Benefit

10% of your Spouse's Life Insurance Benefits in force on the date of the Accident or $10,000, if less.  The Limited Seatbelt Benefit is $1,000.

Terminal Illness Benefit

50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000.

7

TempleInland/Cleiland 102

**Former Dependent Child Benefits**

| | |
|---|---|
| Amount of Insurance | Units of $25,000 |
|    Guaranteed Issue Amount: | $25,000 |
|    Maximum Benefit: | $50,000 |
| Maximum Benefit Period | To Age 75 |
| Seatbelt Benefit | 10% of your Child's Life Insurance Benefits in force on the date of the Accident or $10,000, if less.  The Limited Seatbelt Benefit is $1,000. |

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774 (50710)

●

8

## SCHEDULE OF BENEFITS FOR CLASS 2

### Eligibility Waiting Period

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:    No Waiting Period.

For Employees hired after the Policy Effective Date:    No Waiting Period.

### LIFE INSURANCE BENEFITS

### Employee Benefits

| | |
|---|---|
| Life Benefit | $4,000 |
| Guaranteed Issue Amount: | $4,000 |
| Maximum Benefit: | $4,000 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit    This option does not apply to this class of Employee.

Terminal Illness Benefit    This option does not apply to this class of Employee.

### Spouse Benefits

This benefit does not apply to this class of Employee.

### Dependent Child Benefits

This benefit does not apply to this class of Employee.

**Former Employee Benefits**    This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**    This option does not apply to this class of Employee.

**Former Spouse Benefits**    This option does not apply to this class of Employee.

**Former Dependent Child Benefits**    This option does not apply to this class of Employee.

TempleInland/Cleiland 104

# EXHIBIT A
# PART 3

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

10

TempleInland/Cleiland 105

## SCHEDULE OF BENEFITS FOR CLASS 3

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:    No Waiting Period.

For Employees hired after the Policy Effective Date:    A Closed Group.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Employees who retired between January 1, 1970 and August 31, 1973: | $1,000 |
| Employees who retired between September 1, 1973 and December 31, 1974: | $2,000 |
| Employees who retired on or after January 1, 1975: | $4,000 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit    This option does not apply to this class of Employee.

Terminal Illness Benefit    This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

**Former Employee Benefits**    This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**    This option does not apply to this class of Employee.

**Former Spouse Benefits**    This option does not apply to this class of Employee.

**Former Dependent Child Benefits**    This option does not apply to this class of Employee.

11

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

12

## SCHEDULE OF BENEFITS FOR CLASS 4

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:     No Waiting Period.

For Employees hired after the Policy Effective Date:     A Closed Group.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

Life Benefit     Your benefit amount on January 1, 1998, will be your coverage amount in effect on your date of Disability as on file with your Employer and us.

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | |
|     Maximum Benefit Period | To the Retirement Eligible date. |
|     Applicable Coverages | Life Insurance Benefits for the Employee. |

Seatbelt Benefit     This option does not apply to this class of Employee.

Terminal Illness Benefit     This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

**Former Employee Benefits**     This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**     This option does not apply to this class of Employee.

**Former Spouse Benefits**     This option does not apply to this class of Employee.

**Former Dependent Child Benefits**     This option does not apply to this class of Employee.

TempleInland/Cleiland 108

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

14

## SCHEDULE OF BENEFITS FOR CLASS 5

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:        No Waiting Period.

For Employees hired after the Policy Effective Date:        A Closed Group.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | 1, 2 or 3 times Annual Compensation rounded to the next higher $1,000, if not already a multiple thereof. |
| Minimum Benefit: | $10,000 |
| Maximum Benefit: | the lesser of 3 times Annual Compensation or $600,000 |
| Maximum Benefit Period: | To age 75 |

If you are age 65 or over, your Life Insurance Benefits will reduce to 25% of the Life Insurance Benefit amount payable on the day prior to the date the reduction becomes effective.

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

| | |
|---|---|
| Seatbelt Benefit | This option does not apply to this class of Employee. |
| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

**Spouse Benefits**

| | |
|---|---|
| Life Benefit | Units of $10,000 |
| Maximum Benefit: | $100,000 |
| Maximum Benefit Period: | To age 75 |

Life Insurance Benefits for your Spouse age 65 and over will reduce to 25% of the Life Insurance Benefit amount payable on the day prior to the date the reduction becomes effective.

For Residents of Texas only:
Your Spouse's Life Insurance Benefits cannot exceed 100% of your eligible Life Insurance Benefit amount.

15

TempleInland/Cleiland 110

| Terminal Illness Benefit | 50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $50,000. |

**Dependent Child Benefits**

| Life Benefit | Units of $5,000 |
| Maximum Benefit: | $10,000 |
| | The Maximum Benefit for a Dependent Child who is less than 6 months old is $500. |

For Residents of Texas only:
Your Dependent Child's Life Insurance Benefits cannot exceed 100% of your eligible Life Insurance Benefit amount.

| **Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Spouse of Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Former Spouse Benefits** | This option does not apply to this class of Employee. |
| **Former Dependent Child Benefits** | This option does not apply to this class of Employee. |

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

| Amount of Insurance | Same as Life Insurance Benefit |

**Spouse Benefits**

| Amount of Insurance | Same as Life Insurance Benefit |

TL-004774

16

## SCHEDULE OF BENEFITS FOR CLASS 6

### Eligibility Waiting Period

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:                No Waiting Period.

For Employees hired after the Policy Effective Date:                No Waiting Period.

## LIFE INSURANCE BENEFITS

### Employee Benefits

| | |
|---|---|
| Life Benefit | $1,500 |
|    Guaranteed Issue Amount: | $1,500 |
|    Maximum Benefit: | $1,500 |

Continuation Options

| | |
|---|---|
|    For Layoff | This option does not apply to this class of Employee. |
|    For Leave of Absence | This option does not apply to this class of Employee. |
|    For Family Medical Leave | This option does not apply to this class of Employee. |
|    For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit                This option does not apply to this class of Employee.

Terminal Illness Benefit                This option does not apply to this class of Employee.

### Spouse Benefits

This benefit does not apply to this class of Employee.

### Dependent Child Benefits

This benefit does not apply to this class of Employee.

**Former Employee Benefits**                This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**                This option does not apply to this class of Employee.

**Former Spouse Benefits**                This option does not apply to this class of Employee.

**Former Dependent Child Benefits**                This option does not apply to this class of Employee.

17

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

18

## SCHEDULE OF BENEFITS FOR CLASS 7

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:        No Waiting Period.

For Employees hired after the Policy Effective Date:        No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | $5,000 |
|     Guaranteed Issue Amount: | $5,000 |
|     Maximum Benefit: | $5,000 |

Continuation Options

| | |
|---|---|
|     For Layoff | This option does not apply to this class of Employee. |
|     For Leave of Absence | This option does not apply to this class of Employee. |
|     For Family Medical Leave | This option does not apply to this class of Employee. |
|     For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit        This option does not apply to this class of Employee.

Terminal Illness Benefit        This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

**Former Employee Benefits**        This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**        This option does not apply to this class of Employee.

**Former Spouse Benefits**        This option does not apply to this class of Employee.

**Former Dependent Child Benefits**        This option does not apply to this class of Employee.

TempleInland/Cleland 114

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

20

**TempleInland/Cleiland 115**

## SCHEDULE OF BENEFITS FOR CLASS 8

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage.  It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:    No Waiting Period.

For Employees hired after the Policy Effective Date:    No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | $1,500 |
| Guaranteed Issue Amount: | $1,500 |
| Maximum Benefit: | $1,500 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit    This option does not apply to this class of Employee.

Terminal Illness Benefit    This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

| | |
|---|---|
| **Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Spouse of Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Former Spouse Benefits** | This option does not apply to this class of Employee. |
| **Former Dependent Child Benefits** | This option does not apply to this class of Employee. |

TempleInland/Cleiland 116

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

22

## SCHEDULE OF BENEFITS FOR CLASS 9

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:    No Waiting Period.

For Employees hired after the Policy Effective Date:    No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | $1,500 |
| Guaranteed Issue Amount: | $1,500 |
| Maximum Benefit: | $1,500 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit    This option does not apply to this class of Employee.

Terminal Illness Benefit    This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

| | |
|---|---|
| **Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Spouse of Former Employee Benefits** | This option does not apply to this class of Employee. |
| **Former Spouse Benefits** | This option does not apply to this class of Employee. |
| **Former Dependent Child Benefits** | This option does not apply to this class of Employee. |

23

TempleInland/Cleiland 118

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

24

**TempleInland/Cleiland 119**

## SCHEDULE OF BENEFITS FOR CLASS 10

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:                No Waiting Period.

For Employees hired after the Policy Effective Date:                No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

| | |
|---|---|
| Life Benefit | $1,500 |
|     Guaranteed Issue Amount: | $1,500 |
|     Maximum Benefit: | $1,500 |

Continuation Options

| | |
|---|---|
|     For Layoff | This option does not apply to this class of Employee. |
|     For Leave of Absence | This option does not apply to this class of Employee. |
|     For Family Medical Leave | This option does not apply to this class of Employee. |
|     For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit                This option does not apply to this class of Employee.

Terminal Illness Benefit                This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

**Former Employee Benefits**                This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**                This option does not apply to this class of Employee.

**Former Spouse Benefits**                This option does not apply to this class of Employee.

**Former Dependent Child Benefits**                This option does not apply to this class of Employee.

TempleInland/Cleiland 120

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

26

## SCHEDULE OF BENEFITS FOR CLASS 11

### Eligibility Waiting Period

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:     No Waiting Period.

For Employees hired after the Policy Effective Date:            No Waiting Period.

## LIFE INSURANCE BENEFITS

### Employee Benefits

| | |
|---|---|
| Life Benefit | $1,500 |
| Guaranteed Issue Amount: | $1,500 |
| Maximum Benefit: | $1,500 |

Continuation Options

| | |
|---|---|
| For Layoff | This option does not apply to this class of Employee. |
| For Leave of Absence | This option does not apply to this class of Employee. |
| For Family Medical Leave | This option does not apply to this class of Employee. |
| For Disability | This option does not apply to this class of Employee. |

Seatbelt Benefit                    This option does not apply to this class of Employee.

Terminal Illness Benefit            This option does not apply to this class of Employee.

### Spouse Benefits

This benefit does not apply to this class of Employee.

### Dependent Child Benefits

This benefit does not apply to this class of Employee.

**Former Employee Benefits**           This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**   This option does not apply to this class of Employee.

**Former Spouse Benefits**             This option does not apply to this class of Employee.

**Former Dependent Child Benefits**     This option does not apply to this class of Employee.

27

TempleInland/Cleiland 122

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

28

## SCHEDULE OF BENEFITS FOR CLASS 12

**Eligibility Waiting Period**

The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. It will be extended by the number of days you are not in Active Service.

For Employees hired on or before the Policy Effective Date:             No Waiting Period.

For Employees hired after the Policy Effective Date:             No Waiting Period.

## LIFE INSURANCE BENEFITS

**Employee Benefits**

For Employees who retired prior to September 1, 1993:
Life Benefit                                  $2,000
    Guaranteed Issue Amount:          $2,000
    Maximum Benefit:                  $2,000

For Employees who retired on or after September 1, 1993:
Life Benefit                                  $5,000
    Guaranteed Issue Amount:          $5,000
    Maximum Benefit:                  $5,000

Continuation Options

    For Layoff                        This option does not apply to this class of Employee.
    For Leave of Absence              This option does not apply to this class of Employee.
    For Family Medical Leave          This option does not apply to this class of Employee.
    For Disability                    This option does not apply to this class of Employee.

Seatbelt Benefit                              This option does not apply to this class of Employee.

Terminal Illness Benefit                      This option does not apply to this class of Employee.

**Spouse Benefits**

This benefit does not apply to this class of Employee.

**Dependent Child Benefits**

This benefit does not apply to this class of Employee.

**Former Employee Benefits**                  This option does not apply to this class of Employee.

**Spouse of Former Employee Benefits**        This option does not apply to this class of Employee.

**Former Spouse Benefits**                    This option does not apply to this class of Employee.

**Former Dependent Child Benefits**           This option does not apply to this class of Employee.

29

## ACCIDENT INSURANCE BENEFITS

**Employee Benefits**

Accident Benefits do not apply to this class of Employee.

TL-004774

TempleInland/Cleiland 125

## WHO IS ELIGIBLE

**Classes of Eligible Persons**

A person may be insured only once under the Policy, even though he or she may be eligible under more than one class.

### EMPLOYEE

If you qualify under the Class Definition shown in the Schedule of Benefits, you are eligible to be insured under the Policy on the Policy Effective Date, or the day after you complete the applicable Eligibility Waiting Period, if later.

If you have previously converted your insurance under the Policy, you will not become eligible until your converted policy is surrendered. This does not apply to any amount of insurance that was previously converted under the Policy due to a reduction in your Life Insurance Benefits based on age or a change in class unless those conditions no longer affect the amount of insurance available to you.

Except as noted in the Reinstatement Provision, if you terminate coverage and later wish to reapply, or if you are a former Employee who is rehired, a new Eligibility Waiting Period must be satisfied. You are not required to satisfy a new Eligibility Waiting Period, if insurance ends because you are no longer in a Class of Eligible Employees, but continue to be employed by the Employer, and become a member of an eligible class.

### SPOUSE

Your Spouse is eligible to be insured on the date you are eligible or the date he or she becomes your Spouse, if later. You must be insured in order to elect spouse coverage.

For eligibility purposes, your Spouse must be a lawful Spouse and not legally separated from, divorced from, or widowed by you.

### DEPENDENT CHILD

Your Dependent Child is eligible to be insured on the date you are eligible or the date the child becomes a Dependent Child, if later.

In no event will a Dependent Child be eligible to be insured more than once under the Policy.

TL-004710a (TX)

## WHEN COVERAGE BEGINS

If you are required to contribute to the cost of this insurance, you may elect insurance for yourself, your Spouse and Dependent Children only by authorizing payroll deduction in a form approved by your Employer and us. The effective date of this insurance depends on the date and amount of insurance elected.

If you elect coverage within 31 days after you, your Spouse or Dependent Children are eligible, during an Annual Enrollment Period or within 31 days after a Life Status Change, any amount that does not exceed the Guaranteed Issue Amount is effective on the latest of the following dates.

1.    The Policy Effective Date.
2.    The date payroll deduction is authorized for this insurance.
3.    The date the completed enrollment form is received by your Employer or us.
4.    The effective date determined by your Employer's benefit plan

31

If you elect insurance in an amount that exceeds the Guaranteed Issue Amount or if your enrollment form is received more than 60 days after you become eligible to elect coverage, this insurance is effective on the date we agree in writing to provide this coverage. We will require an eligible person to satisfy the Insurability Requirement before we agree to insure him or her.

If coverage for a Dependent Child is in force and you acquire another Dependent Child, coverage for that child is effective on the date he or she qualifies as a Dependent Child.

If you, your Spouse or Dependent Children are not in Active Service on the date insurance would otherwise go into effect, it will be effective on the date you, your Spouse or Dependent Children return to Active Service.

TL-004712a (TX)

## WHEN COVERAGE ENDS

Coverage will end on the earliest of the following dates.
1.    The date you are eligible for coverage under a plan intended to replace this coverage.
2.    The date we terminate the Policy.
3.    The end of the month following date you, your Spouse or Dependent Children are no longer eligible.
4.    The day after the end of the period for which required premiums are paid.
5.    If you are an Employee, the date you are no longer in Active Service.
6.    If you are an Employee, Spouse or Dependent Child, the date your Employer cancels participation under the Policy.

In addition, coverage for your Spouse or Dependent Child, if any, will end on the date your insurance ends.

TL-004714 (TX)

## WHEN COVERAGE CONTINUES

If you are no longer in Active Service, you may be eligible to continue insurance. The following provisions explain the continuation options available under the Policy. Please see the Schedule of Benefits to determine the applicability of these benefits on a class level.

### Continuation for Layoff, Temporary Leave of Absence or Family Medical Leave

If your Active Service ends due to a layoff, Employer approved leave of absence, or family medical leave of absence, insurance will continue for up to the Maximum Benefit Period shown in the Schedule of Benefits, if the required premium is paid.

### Continuation for Retirees

If your Active Service ends because you are retired, Life Insurance Benefits will continue in the amount shown in the Schedule of Benefits until the earliest of the following dates.
1.    The date the Policy is terminated by us
2.    The day after the end of the period for which premiums are paid.
3.    The date your Employer cancels participation under the Policy.
4.    The date the Maximum Benefit Period for Retirees Coverage, if any, ends.

TempleInland/Cleiland 127

**Continuation for Disability**

If your Active Service ends due to a Disability, Life Insurance Benefits as shown in the Schedule of Benefits will continue until the earliest of the following dates.
1.      The date you are no longer Disabled.
2.      The date the end of the Maximum Benefit Period for this benefit ends.
3.      The day after the period for which premiums are paid.

If you die during this period, we will pay the Life Insurance Benefit in effect on the day before you became Disabled. However, the Life Insurance Benefit payable will be subject to the provisions of the Policy that may reduce or terminate coverage on account of age, retirement, acceleration or a change in eligible class.

For purposes of this benefit, your Disability must be certified by Social Security, Long Term Disability or your Employer's qualified pension plan.

**Portability Options**

*For Employees*

If your employment with your Employer ends prior to age 75, you may continue Life Insurance Benefits up to the Maximum Benefit shown in the Schedule of Benefits for this option.  To continue coverage, you must submit an application to us and pay the required premium to us.  If you continue coverage, you may also continue coverage for your Spouse or Dependent Child if they are covered under the Policy on the date coverage would otherwise end.  If you do not elect to continue insurance within 31 days after employment ends, you may not elect this coverage at a later date.

If you continue coverage in this manner, you will become a Former Employee.  A Spouse whose coverage is continued will become a Spouse of a Former Employee.  Coverage will be effective on the first of the month following the date your coverage ends, provided that we receive the completed application and the required premium is paid.

If as a Former Employee you later acquire a Spouse or Dependent Child, you may elect coverage for them by submitting an application to us and paying the required premium.  The Spouse's or Dependent Child's coverage will be effective on the date we agree in writing to insure them.  We may require your Spouse or Dependent Child to satisfy the Insurability Requirement before we agree to insure him or her.

Coverage continued in this manner will end on the earliest of the following dates.
1.      The date we cancel coverage for all members of the Insured's class.
2.      The day after the end of the period for which premiums are paid.
3.      The date an Insured is age 75.
4.      The date the Maximum Benefit Period for this option ends.

Also, coverage for any Dependent Child will end on any of the dates listed above or when he or she no longer qualifies as a Dependent Child, if earlier.

*For Spouses*

If a Spouse is legally separated or divorced from, or widowed by, an insured Employee or Former Employee prior to age 75, he or she may continue Life Insurance Benefits up to the Maximum Benefit shown in the Schedule of Benefits for this option.  To continue coverage, the Spouse must submit an application to us and pay the required premium.

If a Spouse continues coverage, he or she may also continue coverage for a Dependent Child if the child is covered under the Policy on the date coverage would otherwise end.  If a Spouse does not elect to continue insurance within 31 days after coverage ends, he or she may not elect this coverage at a later date.

A Spouse who continues coverage in this manner will become a Former Spouse and will be issued a separate certificate of insurance.  Coverage will be effective on the first of the month following the date his or her coverage as a Spouse ends, provided we receive the completed application and the required premium is paid.

33

Coverage continued in this manner will end on the earliest of the following dates.
1.    The date we cancel coverage for all members of the Insured's class.
2.    The day after the end of the period for which premiums are paid.
3.    The date an Insured is age 75.
4.    The date the Maximum Benefit Period for this option ends.

In addition, coverage for a Dependent Child will end on any of the dates listed above or when he or she no longer qualifies as a Dependent Child, if earlier.

*For Dependent Children*

If a Dependent Child is insured under the Policy and is at least 19 years of age, he or she may continue Life Insurance Benefits up to the Maximum Benefit shown in the Schedule of Benefits. To continue coverage, the Dependent Child must submit an application to us and pay the required premium.

If a Dependent Child does not elect to continue insurance within 31 days after reaching age 19 or the date he or she no longer qualifies as a Dependent Child, if later, he or she may not elect to be insured under this option at a later date.

A Dependent Child who continues coverage in this manner will become a Former Dependent Child and will be issued a separate certificate of insurance. Coverage for a Former Dependent Child will be effective on the following dates.
1.    For any Guaranteed Issue Amount, the first of the month following the date his or her coverage as a Dependent Child ends, provided we receive the completed application and required premium.
2.    For any amount of insurance that exceeds the Guaranteed Issue Amount, the date the Insurance Company agrees in writing to insure him or her. We will require the Former Dependent Child to satisfy the Insurability Requirement before we agree to insure him or her.

Coverage continued in this manner will end on the earliest of the following dates.
1.    The date we cancel coverage for all members of the Insured's class.
2.    The day after the end of the period for which premiums are paid.
3.    The date an Insured is age 75.
4.    The date the Maximum Benefit Period for this option ends.

TL-004716a (TX)

## WHAT IS COVERED

The following provisions explain the benefits available under the Policy. Please see the Schedule of Benefits for the applicability of these benefits on a class level.

## LIFE INSURANCE BENEFITS

### Death Benefit

If an Insured dies, we will pay the Life Insurance Benefit in force for that Insured on the date of his or her death.

TL-004730

### Seatbelt Benefit

We will pay a Seatbelt Benefit if an Insured dies as a result of an Accident and the following conditions are met.
1.    The Accident occurs while the Insured is covered under the Policy.
2.    The Insured is driving or riding as a passenger in a Private Passenger Car, the car is equipped with seatbelts and the seatbelt was in actual use and properly fastened at the time of the Accident. The use and position of the seatbelt must be certified in the official report of the Accident. However, if an official report is not available or it is unclear if the Insured was properly wearing a seatbelt, we will pay the Limited Seatbelt Benefit. If such report indicates that a seatbelt was not in use, we will not pay the Seatbelt Benefit nor the Limited Seatbelt Benefit.

34

The Seatbelt Benefit will not be paid for an Accident which occurs while the Insured is participating in a race, speed or endurance test.

"Private Passenger Car" means a validly registered four-wheel vehicle limited to private passenger cars, station wagons, jeeps, pick-up trucks and van-type cars. In the case of a child, seatbelt means a child restraint, as required by the state law and approved by the National Highway Traffic Safety Administration, properly secured and being used as recommended by its manufacturer for children of like age and weight at the time of the Accident.

The Seatbelt Benefit is payable to the Insured's designated beneficiary, or if there is none, to the person determined to be entitled to receive the death benefit under the Plan.

TL-004734 (50710)

## Accelerated Benefits

Any benefits payable under this Accelerated Benefits provision will reduce the Death Benefit payable for Life Insurance. Any automatic increases in Life Insurance Benefits will end when benefits are payable under this provision.

### *Terminal Illness Benefit*

We will pay a Terminal Illness Benefit to an Insured who has been determined by us to be Terminally Ill.

The Terminal Illness Benefit is payable only once in an Insured's lifetime.

### *Determination of Terminal Illness*

For the purpose of determining the existence of a Terminal Illness, we will require the Insured submit the following proof.
1.    A written diagnosis and prognosis by two Physicians licensed to practice in the United States.
2.    Supportive evidence satisfactory to us, including but not limited to radiological, histological or laboratory reports documenting the Terminal Illness.

We may require, at its expense, an examination of the Insured and a review of the documented evidence by a Physician of its choice.

"Terminal Illness" means a person has a prognosis of 12 months or less to live, as diagnosed by a Physician.

TL-004748

## Conversion Privilege for Life Insurance

If coverage for an Insured ends for any reason, except for non-payment of premium, he or she may apply for a conversion policy of life insurance.

The conversion insurance may be a type of life insurance currently being offered for conversion by us at the Insured's age and in the amount requested. It may not be term insurance and it may not be for an amount greater than the Life Insurance Benefits in force under the Policy. Conversion life insurance will not provide accident, disability or other benefits.

However, if coverage ends because the Policy is terminated or amended to terminate any class of Insureds, or the Employer cancels participation under the Policy, coverage cannot be converted unless the individual has been insured under the Policy for at least 5 years. In this case, the amount of conversion insurance will be the lesser of the Life Insurance Benefit in force under the Policy, or $2,000.

To apply for conversion insurance, the Insured must within 31 days after coverage under the Policy ends, submit an application to us and pay the required premium. Evidence of insurability is not required. Premium for the conversion insurance will be based on the age and class of risk of the Insured and the type and amount of coverage issued.

35

TempleInland/Cleland 130

Conversion insurance will become effective on the 31st day after the date coverage under the Policy ends, if the application is received by us and the required premium is paid on that date.

If the Insured dies during the 31 day conversion period, the Death Benefit will be paid under the Policy regardless of whether he or she applied for conversion insurance. If a conversion policy is issued, it will be in exchange for any benefits payable for that type and amount of insurance under the Policy.

*Extension of Conversion Period*

If an Insured is eligible for conversion insurance and is not notified of this right at least 15 days prior to the end of the 31 day conversion period, the conversion period will be extended. The Insured will have 15 days from the date notice is given to apply for conversion insurance. In no event will the conversion period be extended beyond 90 days. Notice, for the purpose of this section, means written notice presented to the Insured by the Employer or mailed to the Insured's last known address as reported by the Employer.

If the Insured dies during the extended conversion period, but more than 31 days after his or her coverage under the Policy terminates, Life Insurance Benefits will not be paid under the Policy. If the Insured's application for conversion insurance is received by the Insurance Company and the required premium is paid, Life Insurance Benefits will be payable under the conversion insurance.

*Prior Conversion Limitation*

If an Insured is covered under a life insurance conversion policy previously issued by us, he or she will not be eligible for this Conversion Privilege unless the prior coverage has ended. This does not apply to any amount of insurance that was previously converted under the Policy due to a reduction in the Insured's Life Insurance Benefits based on age or a change in class unless that condition no longer effects the amount of coverage available to the Insured.

TL-004750

## LIFE INSURANCE EXCLUSIONS

If an Insured commits suicide, while sane or insane, within 2 years from the date his or her insurance under the Policy becomes effective, Life Insurance Benefits will be limited to a refund of the premiums paid on the Insured's behalf. The suicide exclusion applies from the effective date of any additional benefits or increases in Life Insurance Benefits.

Except for any amount of benefits in excess of the Prior Plan's benefits, this exclusion will not apply to any person covered under the Prior Plan for more than two years. If a person was not insured for two years under the Prior Plan, credit will be given for the time he or she was insured.

If a Dependent Child commits suicide and is survived by other Dependent Children covered under the same certificate, no refund of premiums will be paid.

TL-004752

## ACCIDENT INSURANCE BENEFITS

We will pay the Accident Insurance Benefits, if an Employee or Spouse dies within 365 days of an Accident that occurs while he or she is insured under the Policy for Accident Insurance. The Employee's or Spouse's death must be the direct result of an Accident for these benefits to be payable.

TL-004754

36

## ACCIDENT INSURANCE EXCLUSIONS

We will not pay Accident Insurance Benefits for a loss which in any way results directly or indirectly from any of the following.

1. Suicide, attempted suicide or intentionally self-inflicted injury, while sane or insane (except in Missouri, this applies only while sane).
2. Sickness, disease or bodily infirmity; medical or surgical treatment; or bacterial or viral infection, no matter how contracted. (This does not include bacterial infection that is the natural and foreseeable result of an accidental bodily injury or accidental food poisoning.)
3. An Accident occurring while an Insured is on full-time active duty for more than 30 days in the Armed Forces. If the Insured sends proof of service, we will refund any premiums paid for coverage during this time. Reserve or National Guard active duty or training are not excluded unless it extends beyond 31 days.
4. Commission of a felony.
5. Voluntary self-administration of any drug or chemical substance not prescribed by, and taken according to the directions of a doctor. (Accidental ingestion of a poisonous substance is not excluded.)
6. War or an act of war, whether or not declared.
7. Travel or flight in, or getting in or out of: an aircraft being used for test or experiment; an aircraft the Insured is flying, is learning to fly, or is part of the crew of; a military aircraft, other than transport aircraft flown by the U.S. Military Airlift Command (MAC) or a similar air transport service of another country; an aircraft owned or leased by or for the Employer, its subsidiaries or affiliates, or the Insured or a member of his or her household; an aircraft that does not have a valid FAA normal or transport type certificate of airworthiness; or an aircraft that is not flown by a pilot with a valid license.

TL-004768

## CLAIM PROVISIONS

### Notice of Claim

Written notice, or notice by any other electronic or telephonic means authorized by us, must be given to us within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If this notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice, or notice by any other electronic or telephonic means authorized by us, was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Policyholder's name and Policy Number and the claimant's name and address.

Written notice of a diagnosis of a Terminal Illness on which claim is based must be given to us within 60 days after the diagnosis. If notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice was given as soon as reasonably possible.

### Claim Forms

When we receive written notice of a claim, or notice by any other electronic or telephonic means authorized by us, we will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by us, the proof requirements will be met by submitting, within the time required under "Proof of Loss" section, written proof of the nature and extent of the loss.

### Claimant Cooperation Provision

If you fail to cooperate with us in our administration of your claim, we may terminate the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

### Insurance Data

The Employer is required to cooperate with us in the review of claims and applications for coverage. Any information we provide to the Employer in these areas is confidential and may not be used or released by the Employer if not permitted by applicable laws.

TempleInland/Cleiland 132

**Proof of Loss**
Written proof of loss must be given to us within 90 days after the date of the loss for which a claim is made. If written proof of loss is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof of loss was given as soon as was reasonably possible. In any case, written proof must be given not more than a year after the time it is otherwise required, unless proof is not given solely due to the lack of legal capacity.

In case of claim for any other loss, proof must be furnished within 90 days after the date of such loss.

If it is not reasonably possible to submit proof of loss within these time periods, we will not deny or reduce any claim if proof is furnished as soon as was reasonably possible. Proof must, in any case, be furnished not more than a year later, except for lack of legal capacity.

**Time of Payment**
Benefits due under the Policy for a loss, other than a loss for which the Policy provides installment payments, will be paid within 60 days of receipt of due written proof of such loss.

Subject to the receipt of satisfactory written proof of loss, all accrued benefits for loss for which the Policy provides installment payments will be paid monthly; any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof, unless otherwise stated in the Description of Benefits.

**To Whom Payable**
Death Benefits will be paid to the Insured's named beneficiary, if any, on file at the time of payment or to the certificate owner if alive. If there is no named beneficiary or surviving beneficiary, Death Benefits will be paid to the first surviving class of the following living relatives: spouse, a natural or adopted child or children, mother and father, brothers and sisters; or to the executors or administrators of the Insured's estate. We may reduce the amount payable by any indebtedness due.

All benefits payable under the Accelerated Benefits section are payable to the Insured, if living. If the Insured dies prior to the payment of an eligible claim for an Accelerated Benefit, benefits will be paid in accordance with the provisions applicable to the payment of Life Insurance proceeds, unless the Insured has directed us otherwise in writing. However, any payment made by us prior to notice of the Insured's death shall discharge us of any benefit that was paid.

All other benefits unless otherwise stated in the Policy, will be payable to the Insured or the certificate owner if other than the Insured.

Any other accrued benefits which are unpaid at your death may, at our option, be paid either to your beneficiary or to the executor or administrator of your estate.

If we pay benefits to the executor or administrator of your estate or to a person who is incapable of giving a valid release, we may pay up to $1,000 to a relative by blood or marriage whom we believe is equitably entitled. This good faith payment satisfies our legal duty to the extent of that payment.

**Change of Beneficiary**
You may change your beneficiary at any time by giving written notice to the Employer or to us. The beneficiary's consent is not required for this or any other change which you may make unless your designation of beneficiary is irrevocable or if community property state regulations apply.

No change in beneficiary will take effect until the form is received by the Employer or us. When this form is received, it will take effect as of the date of the form. If you die before the form is received, we will not be liable for any payment that was made before receipt of the form.

**Physical Examination and Autopsy**
We may, at our expense, exercise the right to examine any person for whom a claim is pending as often as we may reasonably require. Also, we may, at our expense, require an autopsy unless prohibited by law.

TempleInland/Cleiland 133

**Legal Actions**
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time written proof of loss must be furnished.

**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which you live when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**
You have the right to choose any Physician who is practicing legally. We will in no way disturb the Physician/patient relationship.

TL-004724a (TX)

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

If an Insured's coverage amount is reduced due to acceleration of a Death Benefit, premium will be based on the amount of coverage in force on the day before the reduction took place.

**Your Grace Period**
If your required premium is not paid on the Premium Due Date, there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

**Reinstatement of Insurance**
Your insurance may be reinstated if it ends because you are on an Employer approved unpaid leave of absence or you are rehired within three months of the date of termination of employment and you apply for Reinstatement within 31 days of your return to Active Service.

Your insurance may be reinstated only if reinstatement occurs within two years from the date insurance ends due to an Employer approved unpaid leave of absence or on any date in which you return from active duty in the armed forces as defined by the Uniformed Services Employment and Reemployment Act of 1994 (USERRA) if the following conditions are met:
1.    You must be in a Class of Eligible Employees.
2.    The required premium must be paid.
3.    A written request for reinstatement must be received by the Insurance Company within 31 days from the date you return to Active Service.
4.    The Insurability Requirement, if any, is satisfied.

Reinstated insurance will be effective on the date you return to Active Service. If you did not fully satisfy the Eligibility Waiting Period before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004720

TempleInland/Cleiland 134

## GENERAL PROVISIONS

**Incontestability**

All statements made by the Policyholder or by an Insured are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement is signed by and has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

After two years from an Insured's effective date of insurance, or from the effective date of any added or increased benefits, the validity of an Insured's coverage will not be contested using such statements.

**Misstatement of Age**

If an Insured's age has been misstated, we will adjust all benefits to the amounts that would have been purchased for the correct age.

**Workers' Compensation Insurance**

The Policy is not in lieu of and does not affect any requirements for insurance under any Workers' Compensation Insurance.

**Assignment of Benefits**

We will not be affected by the assignment of your certificate until the original assignment or a certified copy of the assignment is filed with us. We will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided insurance under the Policy is in effect. This insurance may not be levied on, attached, garnished, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

**Conformity with State Statutes**

Any provision of the Policy in conflict with the applicable laws of your state on the date your insurance first becomes effective is amended to conform to the minimum requirements of such laws.

**Clerical Error**

A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

TL-004726a (TX)

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Accident**

An Accident is a sudden, unforeseeable external event that causes bodily Injury to an Insured while coverage is in force under the Policy.

**Active Service**

An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.

1.  He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.
2.  The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

40

TempleInland/Cleiland 135

A person other than an Employee is considered in Active Service if he or she is able to perform all the activities another person of the same age and sex could normally perform and is not:

1.  a patient in a hospital or hospice, or receiving outpatient care for chemotherapy or radiation therapy;
2.  confined at home under the care of a Physician for sickness or injury;
3.  unable to perform any of the activities of daily living expected of a person of the same age (i.e., mobility, transferring, feeding, dressing or toileting) without human supervision or assistance; or
4.  receiving disability benefits from any source due to his or her sickness or injury.

**Annual Compensation is defined as:**

a.  <u>For All Purposes</u>: For all purposes under the Temple-Inland Benefit Solutions Plan, "Annual Compensation" includes only compensation paid to you by your Employer for services performed by you for your Employer as reflected on your Employer's payroll system which meets all of the definitions set forth in this subparagraph a. and the applicable subparagraphs b. or c. below. "Annual Compensation" does not include any amounts that are not paid through your Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

"Annual Compensation" includes your base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan. For commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Annual Compensation" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, have accrued, or are otherwise payable at the time of the calculation). For all other Employees, "Annual Compensation" excludes commissions.

"Annual Compensation" excludes all other compensation, including, but not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by your Employer to you on behalf of an entity that is not a member of your Employer's controlled group of corporations for services rendered by you on behalf of such entity, and such other payments or income as may be designated by the Company.

b.  <u>For Costs and Credits</u>: For purposes of determining Costs and Credits, your "Annual Compensation" is your "Annual Compensation" in effect at the time the Solutions enrollment data is produced as determined below:

    i.  For a salaried Employee, "Annual Compensation" is your annual base salary for a Full-time Employee or 0.5 times the annual base salary for a part-time Employee, regardless of the number of hours regularly worked.

    ii.  For an hourly Employee, "Annual Compensation" is your base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

    iii.  For newly hired commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Annual Compensation" is the greater of:

        (1)  base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable), or

        (2)  $20,000

41

**TempleInland/Cleiland 136**

iv.    For all other commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Annual Compensation" is determined by:

    (1)    adding your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

    (2)    annualizing that amount based on a full 12-month year.

v.    For Employees hired after the Solutions enrollment data is produced or Employees who have a change in pay or change in status after the Solutions enrollment data is produced, "Annual Compensation" will be determined as of the date of hire or the date of change in pay or change in status, respectively; provided, however, that the Plan Administrator may elect in his sole discretion to use the "frozen pay" determined at the time the Solutions enrollment data is produced to determine Costs and Credits for commission I Employees, commission II Employees, commission III Employees, and commission V Employees.

c.    <u>For Benefit Payments</u>: For the purpose of determining the amount of a benefit to be paid, your "Annual Compensation" in effect on the date of the event for which the claim is paid will be used, as determined below:

i.    For a Full-time salaried Employee, "Annual Compensation" is your annual base salary. For a part-time salaried Employee, "Annual Compensation" is your annual base salary for the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

ii.    For an hourly Employee, "Annual Compensation" is your base hourly rate multiplied by the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

iii.    For commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Annual Compensation" is the greater of:

    (1)    your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if you have been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period), or

    (2)    $20,000.

iv.    Not withstanding the above, if the underlying Benefit Plan under which the claim is to be paid has a different definition of pay for purposes of calculating benefits thereunder, such Benefit Plan's definition shall govern.

**Annual Enrollment Period**

The period in each calendar year when you may enroll for or change benefit elections under the Policy, if you are eligible. This period must be agreed upon by your Employer and us.

42

TempleInland/Cleiland 137

**Dependent Child**
Your unmarried child if he or she meets the following requirements:

1. A child 14 days of age but less than 19 years old;
2. A child who is 19 or more years old but less than 25 years old, enrolled in a school as a full-time student and primarily supported by you;
3. A child who is 19 or more years old, primarily supported by you and incapable of self-sustaining employment by reason of mental or physical handicap. Proof of the child's condition and dependence must be submitted to us within 31 days after the date the child ceases to qualify as a Dependent for the reasons listed above. During the next two years, we may, from time to time, require proof of the continuation of such condition and dependence. After that, we may require proof no more than once a year.

The term "child" means a child born to or legally adopted by you. It includes a child during any waiting period prior to the finalization of the child's adoption. It also means a stepchild living with you or any other child who lives with you where you care for the child in place of the child's natural parents and claim the child on your federal income tax return.

**Disabled**
You are Disabled, if, because of Injury or Sickness, you are unable to perform all the material duties of any occupation for which you are or may reasonably become qualified based on your education, training or experience.

**Employee**
For eligibility purposes, you are an Employee if you work for the Employer and are in one of the "Classes of Eligible Employees." Otherwise, you are an Employee if you are an employee of the Employer who is insured under the Policy.

**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is acting as your agent for transactions relating to this insurance. You shall not consider any actions of the Employer as actions of the Insurance Company.

**Flexible Benefits Plan**
The Flexible Benefits Plan is the Employee Benefits Plan arrangement sponsored by your Employer for eligible Employees and their eligible dependents.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in your eligibility class.

**Injury**
Any accidental loss or bodily harm that results directly or indirectly from all other causes from an accident.

**Insurability Requirement**
An eligible person satisfies the Insurability Requirement for an amount of coverage on the day we agree in writing to accept you as insured for that amount. To determine a person's acceptability for coverage, we will require you to provide evidence of good health and may require it be provided at your expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on your certificate cover page. References to the Insurance Company have been changed to "we", "our", "ours", and "us" throughout the certificate.

**Insured**
You are an Insured if you are eligible for insurance under the Policy, insurance is elected for you, the required premium is paid and your coverage is in force under the Policy.

**Life Status Change**
A Life Status Change is an event recognized by your Employer's Flexible Benefits Plan as qualifying you to make changes in benefit selections at a time other than an Annual Enrollment Period.

43

If there is no Employer sponsored Flexible Benefits Plan, or if it is no longer in effect, the following events are Life Status Changes.

1.    Marriage
2.    Divorce, annulment or legal separation
3.    Birth or adoption of a child
4.    Death of a spouse
5.    Termination of a spouse's employment
6.    A change in the benefit plan available to the Employee's spouse
7.    A change in the Employee's or his or her spouse's employment status that affects either person's eligibility for benefits

**Physician**
Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include you, your spouse, your immediate family (including parents, children, siblings, or spouses of any of the foregoing, whether the relationship derives from blood or marriage), or a person living in your household.

**Prior Plan**
The Prior Plan refers to the plan of insurance providing similar benefits sponsored by your Employer in effect directly prior to the Policy Effective Date.

**Retirement Eligible**
Retirement Eligible means the earlier of a) the date on which you would become eligible to draw benefits under the Retirement Plan absent disability (the "Normal Retirement Age" as defined in the Retirement Plan, or, in the case of the Temple-Inland Savings and Retirement Plan, the maximum date until which a terminated Employee may defer a distribution), or b) the date on which you would become eligible to draw full, unreduced old age insurance benefits under the Social Security Act absent disability as if you were born in 1937 or earlier, notwithstanding the fact that in any particular case you (i) might have become eligible for (or actually commenced) early retirement benefits (whether or not subsidized or reduced to reflect early commencement) under the Retirement Plan or the Social Security Act, (ii) might have become eligible for (or actually commenced) postponed retirement benefits beyond the "normal retirement age" defined in the Retirement Plan or the earliest eligibility set forth in the Social Security Act, (iii) might be a participant in (or have actually received benefits under) a Retirement Plan that does not have a "normal retirement age", (iv) might have a birth date causing your date for commencement of unreduced Social Security benefits to be age 66 or age 67, or (v) might not be eligible for benefits under the Retirement Plan or the Social Security Act.

**Sickness**
Any physical or mental illness or disease.

**Spouse**
The lawful Spouse of an Employee.

TL-004708a (TX)

44

SUPPLEMENTAL INFORMATION
for

**Temple-Inland Health and Welfare Benefits Plan**

**required by the Employee Retirement
Income Security Act of 1974**

As a Plan participant in Temple-Inland's Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

## IMPORTANT INFORMATION ABOUT THE PLAN

- The Plan is established and maintained by Temple-Inland Forest Products Corporation.

- The Employer Identification Number (EIN) is 75-1462427.

- The Plan Number is 515.

- The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, FLI-050710, issued by LIFE INSURANCE COMPANY OF NORTH AMERICA.

- The Plan Administrator is:      Temple-Inland Inc. Benefits Administration Committee
  303 S. Temple Drive,  P.O. Drawer N
  Diboll, TX  75941

  The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy. (Your rights upon termination or amendment of the Plan are set forth in your Certificate.)

- The agent for service of legal process is the Plan Administrator.

- The Plan of benefits is financed by the Employer and Employees.

- The date of the end of the Plan Year is December 31.

## YOUR RIGHTS AS SET FORTH BY ERISA

As a Plan participant, ERISA gives you certain rights and protection. To ensure the protection of these rights, ERISA requires any person or entity who is responsible for the operation of the Plan to administer the Plan in a fiduciary capacity. This means that this person, or entity, must act prudently and with the sole purpose of the Plan participants in mind.

If you request, the Plan Administrator must:

a.     Allow you to examine, without charge, at the Plan Administrator's office, all Plan documents including insurance contracts, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as, annual reports and Plan descriptions.

45

TempleInland/Cleiland 140

b.    Provide you with Plan documents and other Plan information. Any request you make for this information must be in writing to the Plan Administrator. There may be a reasonable charge for the copies.

c.    Provide you with a summary of the Plan's annual financial report. (On certain plans, the law requires the Plan Administrator to provide you with this information.)

Unless there are reasons beyond the Plan Administrator's control, materials you request should be received within 30 days. If you do not receive these materials within that time, you may file suit in a federal court. The court may require the Plan Administrator to pay you up to $110 for each day the material is delayed.

No one, not even your employer, may fire you or discriminate against you in order to prevent you from obtaining a benefit or exercising the rights you have under ERISA.

You may file suit in a federal or state court if any of the following situations arise:

a.    You believe you have been improperly denied a benefit, in whole, or in part.
b.    You believe the Plan fiduciaries are misusing Plan funds.
c.    You believe you have been discriminated against for asserting your rights. (In this case, you may file suit in court or request assistance from the U.S. Department of Labor.)

The court will decide who should pay court costs and legal fees. If you win your case, the court may order the person you have sued to pay the costs and fees. However, if you lose, or if the court finds that your suit is frivolous, you may be required to pay the costs and fees.

## WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM

When you are eligible to receive benefits under the Plan, you must request a claim form from the Plan Administrator. All claims you submit must be on the claim form provided by the Insurance Company. You must complete the form according to the directions on the form. If these forms are not available, you must provide a written statement outlining proof and extent of the loss. After you have completed the claim form or written statement, you must submit it to the Insurance Company.

The Insurance Company has 90 days, from the date it receives your notice of claim, to determine whether or not benefits are payable to you in accordance with the terms and provisions of the Policy. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 90 days. You should receive this written notification before the end of the initial 90 day review period.

During the review period, the Insurance Company may require a medical examination of the Insured, at its own expense; or additional information regarding the loss. If a medical examination is required, the Insurance Company will notify you of the date and time of the examination and the physician's name and location. (It is important that you keep any appointments made since rescheduling examinations will delay the claim process.) If additional information is required, the Insurance Company must notify you, in writing, specifying the nature of the information needed and an explanation as to why it is needed.

If your claim is approved, you will receive the appropriate benefit from LIFE INSURANCE COMPANY OF NORTH AMERICA.

If your claim is denied, in whole or in part, you must receive written notice from the Insurance Company within the 90 day review period (or within 180 days if the review period was extended). The Insurance Company's written notice must include the following information:

1.    The specific reason(s) the claim was denied.
2.    Specific reference to the Policy provision(s) upon which the denial is based.
3.    A statement informing you of your right to appeal the decision, and an explanation of the appeal procedure, as outlined in "Appeal Procedure for Denied Claims" below.

46

**Appeal Procedure for Denied Claims**

Whenever a claim is denied, you have the right to appeal the decision. You, or your duly authorized representative, must make a written request for appeal to the Insurance Company within 60 days from the date you receive the denial. If you do not make this request within that time frame, you will have waived your right to appeal.

Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. During the review, you, or your duly authorized representative, have the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. You may also submit issues and comments that you feel might affect the outcome of the review.

The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days. You should receive this written notification before the end of the initial 60 day review period. Once its review is complete, the Insurance Company must notify you, in writing, of the results for the review and indicate the Plan provisions upon which it based its decision.

## WHO YOU SHOULD CONTACT IF YOU HAVE QUESTIONS ABOUT THE PLAN

If you have any questions about the Plan, contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

LM-5B35a

47

UNDERWRITTEN BY:
**LIFE INSURANCE COMPANY OF NORTH AMERICA**
a CIGNA Company

Classes 1-12
4/2001



CIGNA Group Insurance
Life ● Accident ● Disability

# SECTION II

# GROUP ACCIDENT INSURANCE CERTIFICATE

## POLICY NUMBER  OK-810692

# TEMPLE-INLAND

**ADD0001A**

**TempleInland/Cleiland 145**

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call the Life Insurance Company of North America, Group Insurance Division toll-free telephone number for information or to make a complaint at:

**1-800-547-5515**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the
Texas Department of Insurance
P.O. Box 149104
Austin, TX 78714-9104
FAX #(512) 475-1771

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or company first.  If the is not resolved, you may contact the Texas Department of Insurance.
of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**  This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANTE**

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis del Life Insurance Company of North America, Group Insurance Division para informacion o para someter una queja al:

**1-800-547-5515:**

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de
Seguros de Texas
P.O. Box 149104
Austin, TX 78714-9104
FAX #(512) 475-1771

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero.  Si no se compania primero.  Si no se resuelve la disputa, peude entonces communicarse con el departmento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

TempleInland/Cleiland 146

**ACCIDENT ONLY
CERTIFICATE OF INSURANCE**

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 CHESTNUT STREET, PHILADELPHIA, PA. 19192
A STOCK INSURANCE COMPANY

(Please refer to the Policy
Number in any communication
concerning this insurance.)

We, the Life Insurance Company of North America, have issued a group insurance policy to the Organization named on the Certificate Schedule. The Schedule also shows the group policy number.

We certify that we insure all employees (or members) of the Organization who are in an eligible class described in the Schedule. Your coverage begins on the date you become eligible. This does not apply if you are not regularly performing the duties of your occupation on the date your coverage would begin. In that case, your coverage will start on the date you return to those duties.

Your benefits are described in this Certificate. You should read it with care so you will understand your coverage. This is not the insurance contract. The group policy is the only contract under which benefits are paid. You may examine it at the office of the Organization.

This Certificate replaces any certificates which may have been issued to you in the past under this group policy.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

**TABLE OF CONTENTS**

Certificate Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Family Plan Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Scope of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Description of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

TempleInland/Cleiland 147

## CERTIFICATE SCHEDULE

| | |
|---|---|
| Policyholder: | TEMPLE-INLAND FOREST PRODUCTS CORPORATION |
| Policy Numbers: | OK-810692 |

Eligible Class(es):

| Class | Description |
|---|---|
| 1 | All active, Full-time and part-time, salaried, hourly and commissioned I, II, III and V Employees and pilots of the Policyholder who are eligible for the Temple-Inland Benefit Solutions Plan and who are regularly working a minimum of 20 hours per week. |
| 2 | All spouses of Class 1 eligible employees |
| 3 | All child/ren of Class 1 eligible employees. |

New Hires: Each Full-time salaried exempt Employee, commission II Employee, commission III Employee, and each part-time salaried exempt Employee who is a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service on that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time salaried non-exempt Employee who is not a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

Each Full-time or part-time salaried non-exempt Employee who is a Financial Services Employee, and each hourly Employee, part-time hourly Employee, part-time salaried Employee (who is not a Financial Services Employee), commission I Employee, or commission V Employee shall be eligible to participate in the Plan upon the first day of the month coinciding with or following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service. For this group, Waiting Period is defined as follows:

> For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees, Waiting Period means 31 days of Active Service from an Employee's most recent date of hire as an Employee.

**Benefit Amounts:**

| Class | Coverage | Principal Sum |
|---|---|---|
| 1 | Accidental Death and Dismemberment, Speech and Hearing, Paralysis, the Seatbelt, Owned Air, Medical Continuation Premium Reimbursement Benefit, and Violent Crime Benefit | 1, 2, 3, 4, 5 or 6 times Basic Annual Earnings adjusted to next higher $1,000 if not a multiple of $1,000; Minimum of $20,000; Maximum of $1,000,000 |
| 2 | Accidental Death and Dismemberment, Speech and Hearing, Paralysis Seatbelt, Medical Continuation Premium Reimbursement Benefit, and Special Education - Spouse Benefit | Flat benefit of $10,000, $25,000, $50,000, $75,000 or $100,000 (benefit amount to match amount selected under FLI-050710) |

1

TempleInland/Cleiland 148

| 3 | Accidental Death and Dismemberment, Speech and Hearing, Paralysis, Seatbelt, Medical Continuation Premium Reimbursement Benefit, and Special Education - Child Benefit | Flat benefit of $5,000 or $10,000 (benefit amount to match amount selected under FLI-050710) (see note a) |

Note a): The maximum benefit for a dependent child who is less than six (6) months old is $500.

Basic Annual Earnings is defined as:

a.    For All Purposes: For all purposes under the Temple-Inland Benefit Solutions Plan, "Basic Annual Earnings" includes only compensation paid to you by your Employer for services performed by you for your Employer as reflected on your Employer's payroll system which meets all the definitions set forth in this subparagraph a. and the applicable subparagraphs b. or c. below. "Basic Annual Earnings" does not include any amounts that are not paid through your Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

"Basic Annual Earnings" includes your base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan. For commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Basic Annual Earnings" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, have accrued, or are otherwise payable at the time of the calculation). For all other Employees, "Basic Annual Earnings" excludes commissions.

"Basic Annual Earnings" excludes all other compensation, including, but not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by your Employer to you on behalf of an entity that is not a member of your Employer's controlled group of corporations for services rendered by you on behalf of such entity, and such other payments or income as may be designated by the Company.

b.    For Costs and Credits: For purposes of determining Costs and Credits, your "Basic Annual Earnings" is your "Basic Annual Earnings" in effect at the time the Solutions enrollment data is produced as determined below:

   i.    For a salaried Employee, "Basic Annual Earnings" is your annual base salary for a Full-time Employee or 0.5 times the annual base salary for a part-time Employee, regardless of the number of hours regularly worked.

   ii.    For an hourly Employee, "Basic Annual Earnings" is your base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

   iii.    For newly hired commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Basic Annual Earnings" is the greater of:

      (1)    base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable), or

      (2)    $20,000

TempleInland/Cleiland 149

    iv.    For all other commission I Employees, commission II Employees, and commission III Employees, and commission V Employees, "Basic Annual Earnings" is determined by:

        (1)    adding your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

        (2)    annualizing that amount based on a full 12-month year.

    v.    For Employees hired after the Solutions enrollment data is produced or Employees who have a change in pay or change in status after the Solutions enrollment data is produced, "Basic Annual Earnings" will be determined as of the date of hire or the date of change in pay or change in status, respectively; provided, however, that the Plan Administrator may elect in his sole discretion to use the "frozen pay" determined at the time the Solutions enrollment data is produced to determine Costs and Credits for commission I Employees, commission II Employees, commission III Employees, and commission V Employees.

c.    <u>For Benefit Payments:</u> For the purpose of determining the amount of a benefit to be paid, your "Basic Annual Earnings" in effect on the date of the event for which the claim is paid will be used, as determined below:

    i.    For a Full-time salaried Employee, "Basic Annual Earnings" is your annual base salary. For a part-time salaried Employee, "Basic Annual Earnings" is your annual base salary for the number of hours you are regularly scheduled to work, up to a maximum of 2080 hours.

    ii.    For an hourly Employee, "Basic Annual Earnings" is your base hourly rate multiplied by the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

    iii.    For commission I Employees, commission II Employees, commission III Employees and commission V Employees, "Basic Annual Earnings" is the greater of:

        (1)    your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if you have been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period), or

        (2)    $20,000.

    iv.    Not withstanding the above, if the underlying Benefit Plan under which the claim is to be paid has a different definition of pay for purposes of calculating benefits thereunder, such Benefit Plan's definition shall govern.

TempleInland/Cleiland 150

## TERMINATION

Your coverage will end when any of these things happen:

1) On the date that the group policy is terminated.
2) On the next premium due date, if you enter full time military service for more than 30 days.
3) On the next premium due date, if you are no longer in an eligible class.
4) At the end of the period for which you have paid your premium, if you do not pay the required premium contribution. This is subject to the 31 day grace period.

## FAMILY PLAN COVERAGE

If "Family Plan" is selected, we certify that the family members described below are also covered:

a) Your spouse.
b) Your unmarried children 14 days and under 19 years of age (under 25 years of age if the child is enrolled full time in an accredited school or college). "Child" means (a) an Employee's natural (biological) child (whether born in or out of wedlock and whether or not the child lives with the Insured or is claimed as a dependent on the Insured's Federal Income Tax Return); (b) an adopted child, (including a child during any waiting period to finalization of the child's adoption); (c) a stepchild who lives with the Insured; and (d) any other child who lives with the Insured who is cared for by the Insured in place of his natural or legal parents, and who is claimed as a dependent on the Insured's Federal Income Tax Return.

The "Family Plan" provides coverage for: (1) the Insured's spouse; and/or (2) the Insured's dependent children (as defined above).

**Termination** - If you have family plan coverage, a family member's coverage will end:

1) when your coverage ends; or
2) on the next premium due date, if the family member is no longer eligible; or
3) at the end of the period for which you have paid the family plan premium, if you do not pay the required premium contribution. This is subject to the 31 day grace period.

**Handicapped Dependents** - Coverage may be kept in force for any child who reaches the age limit, and is both: (1) totally incapable of self-sustaining employment due to a physical or mental handicap; and (2) chiefly dependent on you for support and maintenance. To keep this coverage in force, you must give us proof of the child's incapacity and dependence not more than 31 days after the child reaches the age limit. We may require proof from time to time, but not more than once a year after the 2 years that follow the date that the child reaches the age limit.

## SCOPE OF COVERAGE

We will pay benefits for loss from bodily injuries:

a) caused by an accident which happens while a person is covered by the policy; and
b) which directly, and from no other cause, result in a covered loss (see the Description of Coverage).

We will not pay benefits if the loss was caused by:

a) sickness, disease or bodily infirmity; or
b) any of the exclusions listed on the next page.

**YOU ARE COVERED FOR ACCIDENTS ONLY.
THE POLICY DOES NOT PAY BENEFITS FOR LOSS CAUSED BY SICKNESS.
READ YOUR CERTIFICATE WITH CARE.**

4

TempleInland/Cleiland 151

## EXCLUSIONS

No benefits will be paid for loss resulting from:

1. Intentionally self-inflicted injuries, or any attempt threat, while sane or insane (in Missouri, while sane).

2. Declared or undeclared war or act of war.

3. Accident which occurs while the covered person is serving on full time active duty for more than 30 days in any armed forces. (Send us proof of service. We will refund any premium paid for this time.)(Reserve or National Guard active duty for training is not excluded.)

4. Travel or flight (including getting in or out, on or off) in any aircraft or device which can fly above the earth's surface, if:

    A.   the aircraft or device is being used:
        (1)   for test or experimental purposes; or
        (2)   by or for any military authority (Aircraft flown by the U.S. Military Airlift Command (MAC) or a similar service of another country are not excluded); or
        (3)   for travel, or is designed for travel, beyond the earth's atmosphere; or
        (4)   by or for the named organization or any of its subsidiaries or affiliates (This exclusion applies whether the aircraft or device is owned, leased, operated or controlled, as defined. Chartered aircraft, as defined, are not excluded); or

    B.   the Insured is:
        (1)   serving as pilot or crew member (or student taking a flying lesson) and is not riding as a passenger; or
        (2)   hang gliding; or
        (3)   parachuting, except when the covered person has to make a parachute jump for self-preservation.

5. The commission of a felony by the Insured.

6. Sickness, disease, bodily or mental infirmity, or medical or surgical treatment thereof, or bacterial or viral infection, regardless of how contracted. This does not include bacterial infection that is the natural and foreseeable result of an accidental external cut or wound, or accidental food poisoning.

7. Voluntary self-administration of any drug or chemical substance not prescribed by a licensed physician. (Accidental ingestion of a poisonous substance is not excluded.)

## DEFINITIONS

"Owned aircraft" means one to which the organization holds legal or equitable title. It may use, alter or sell its property as it wishes.

"Leased aircraft" means one the organization does not own. It may use the aircraft as it wishes for the term of the written lease. The time will be longer than a few days or one or two trips. It may not alter or sell the aircraft without the consent of the owner.

"Operated or controlled aircraft" means one the organization does not own. It will be leased, rented or borrowed for more than 10 straight days. The organization may use it as it wishes. It may not alter or sell the aircraft without consent of the owner.

5

TempleInland/Cleiland 152

"Chartered aircraft" means one the organization does not own. It will be hired for one purpose or one trip or for general use. The time the organization has it may not exceed 10 straight days, nor more than 15 days in any one year. One or more aircraft hired on a regular or frequent basis are not chartered.

## PROVISIONS

**NOTICE OF CLAIM:**
Written notice must be given within 30 days (Kentucky:  60 days) after a covered loss begins, or as soon as reasonably possible. Notice may be given to us, at our home office at Philadelphia, Pennsylvania, or to our agent. This notice should include your name, address, and the policy number.

**CLAIM FORMS:**
When we receive the notice of claim, we will send forms for filing proof of loss. If claim forms are not sent within 15 days, the proof requirements will be met by submitting, within 90 days, written proof of the nature and extent of the loss.

**PROOF OF LOSS:**
Written proof must be given to us within 90 days after the date of loss. If that is not reasonably possible, we will not deny or reduce any claim if proof is furnished as soon as reasonably possible.

**TIME OF PAYMENT OF CLAIMS:**
Benefits for loss covered by the policy will be paid as soon as we receive proper written proof of such loss.

**PAYMENT OF CLAIMS:**
Loss of life benefits will be paid to the beneficiary named in our files. The benefits can be paid in one lump sum; or, at your written request, in accordance with one of our available settlement plans. If you have not chosen any such settlement plan, the beneficiary may do so after your death. The beneficiary should request in writing to be paid from an available settlement plan. We must agree to the plan chosen. If there is no surviving beneficiary, your loss of life benefits will be paid in one lump sum to the first surviving class of the following classes of beneficiaries:  (a) wife or husband; (b) child or children; (c) mother and father; (d) sisters and brothers. If there is no surviving member of any of the above classes, the benefits will be paid to your estate. All other benefits will be paid to you. If we are to make payments to your estate, or to a family member who is incapable of giving a valid release, we may pay up to $1000 to a relative by blood or marriage who we believe is equitably entitled to it. This does not apply where the total payment will be over $1000. This good faith payment satisfies our legal duty to the extent of that payment.

**PHYSICAL EXAMINATIONS AND AUTOPSY:**
We will pay the cost and have the right to have the covered person examined as often as reasonably necessary while a claim is pending. We may have an autopsy made, at our expense, unless prohibited by law. (Autopsies are not permitted in Massachusetts, Mississippi and South Carolina.)

**LEGAL ACTIONS:**
No legal action to get policy benefits may be brought less than 60 days nor more than 3 years (Kansas:  5 years; South Carolina:  6 years) after written proof of loss has been furnished as required by the policy.

**CHANGE OF BENEFICIARY:**
The beneficiary may be changed at any time. The beneficiary's consent is not required.  No change is binding until we receive written notice of it.

**WORKERS' COMPENSATION INSURANCE:**
The policy is not in lieu of and does not affect any requirement for coverage under any Workers' Compensation insurance.

TempleInland/Cleiland 153

## DESCRIPTION OF COVERAGE

**Benefits for Accidental Loss of Life, Limb, Sight, Speech, Hearing and Paralysis:** _

If within one year from the date of accident covered by the policy, bodily injuries result in: (1) the death of the Insured; or (2) dismemberment or loss of sight, speech, hearing or paralysis, we will pay the benefits provided for such loss; provided, however, that if the Insured sustains more than one such loss as the result of any one accident, we will pay only the one largest amount to which the Insured is entitled. This amount will not exceed the Principal Sum.

| | |
|---|---|
| Loss of Life . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | The Principal Sum |
| Loss of two or More Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | The Principal Sum |
| Loss of Speech and Hearing (both ears) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | The Principal Sum |
| Quadriplegia (total paralysis of both upper and lower limbs) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | The Principal Sum |
| Loss of One Member . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | One-Half The Principal Sum |
| Paraplegia (total paralysis of both lower limbs) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Three-Quarters The Principal Sum |
| Loss of Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | One-Half The Principal Sum |
| Loss of Hearing (both ears) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | One-Half The Principal Sum |
| Hemiplegia (total paralysis of upper and lower limbs on one side of body) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | One-Half The Principal Sum |
| Loss of Thumb and Index Finger of the same hand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | One Quarter The Principal Sum |

"The Principal Sum" is stated elsewhere in the Certificate.

"Member" means hand, foot, and eye.

"Loss" means, with regard to hand or foot, complete severance through or above the wrist or ankle joint; loss of an eye means total and irrecoverable loss of sight; loss of speech means complete inability to communicate audibly in any degree; loss of hearing means irrecoverable loss of hearing which cannot be corrected by any hearing aid or device; loss of thumb and index finger means severance of each through or above the joint closest to the wrist. (In California, loss of a thumb and index finger means loss by complete severance of at least one whole phalanx of each.) (In South Carolina, the loss of four whole fingers from one hand equals the loss of one hand.)

"Paralysis" means loss of use, without severance, of a limb. This loss must be determined by a physician to be complete and not reversible.

"Severance" means complete separation and dismemberment of the limb from the body.

TempleInland/Cleiland 154

## DESCRIPTION OF COVERAGE

**MEDICAL CONTINUATION PREMIUM REIMBURSEMENT BENEFIT**

We will pay an additional benefit if:

1.  an Insured Employee dies as a result of a covered accident;
2.  benefits are payable under the policy because of the Employee's accidental death;
3.  the Employee is survived by a spouse or dependent child covered under the policy;
4.  the Survivor is covered under the Employer's medical plan at the time of the Employee's death; and
5.  the Survivor elects to continue medical plan coverage under the Employer's medical plan as permitted by COBRA or state continuation law.

The Medical Continuation Premium Reimbursement Benefit is payable for each Survivor who qualifies:

(a)    in an amount up to 2% of the Employee's Principal sum, but not more than $2,500 per year; and

(b)    only while the Survivor continues to pay the premium for the continued coverage.

We will pay this benefit once a year for not more than 3 years provided:

(1)    we are notified in writing of the Survivor's eligibility for the benefit within 60 days of the Employee's death; and

(2)    the request for reimbursement and valid proof of claim are received within 60 days after a 12-month period of continued coverage.

A 12-month period starts: a) when the Survivor elects to continue coverage under the Employer's medical plan; or b) the first of the month following the expiration of the previous 12 month period if benefits are exhausted prior to the end of any 12 month period.

Benefits are payable to the Survivor, or the person who actually paid the premium of the Survivor's behalf, if other than the Survivor.

"Survivor" means a spouse or dependent child who is:

(a)    covered under the group policy at the time of the Employee's death; and
(b)    eligible to continue coverage under the Employer's medical plan at the time of the Employee's death.

TL-005523-TX                                    8

### LIFE INSURANCE COMPANY OF NORTH AMERICA

#### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached.  It is in force only while the policy is in force.

In return for the premium, the following benefits are added:

#### SPECIAL EDUCATION BENEFITS

We will pay "special education" benefits if the Insured:
- a) is covered under the Family Plan; and
- b) dies as the result of a covered accident; and
- c) is survived by a spouse and/or one or more dependent children.

#### A. CHILD BENEFIT

"Dependent child" means a child insured under the Family Plan who has not attained the maximum age stated in the General Provisions Concerning Dependent Insurance at the time of the Insured's death.

A "special education" benefit will be payable for each child who qualifies as follows:
- a) enrolls as a full-time student at a school of higher learning before reaching age 25 and
- b) incurs expense for tuition, fees, books, room and board, transportation and any other costs payable directly to, or approved and certified by, such school.

We will pay the cost of such incurred expense for not more than:
- a) 4 straight years after enrollment begins;
- b) 2% Insured's Principal Sum or $5,000 whichever is less, each year per child.

#### B. SPOUSE BENEFIT

A "special education" benefit will be payable for the Insured's surviving spouse who:
- a) enrolls within one year after the Insured's death in any accredited school for the purpose of retaining or refreshing skills needed for employment; and
- b) incurs expenses payable directly to, or approved and certified by, such school.

We will pay the cost of such incurred expense for not more than:
- a) 1 year after enrollment begins;
- b) $3,000.

If, at the time of accident, Family Plan coverage is in force but there is no dependent who is or could become eligible for "special education" benefits, we will pay an additional benefit of $1,000 to the Insured's designated beneficiary.

Payment will be in addition to all other policy benefits.

Except for the above, this rider does not change the policy in any way.

#### LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

LM-21367

9

TempleInland/Cleiland 156

# EXHIBIT A
# PART 4

LIFE INSURANCE COMPANY OF NORTH AMERICA

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It is in force only while the policy is in force.

It is hereby understood and agreed that exclusion 4-B(1) is deleted in its entirety, and the following shall take its place.

> "Except for those persons who have completed Pilot History Data Form (Form #AN 3006e or its replacement), and based on that information have been accepted by the Life Insurance Company of North America in writing. Also, these persons must maintain the same degree or better qualification, or coverage will cease".

All other terms and conditions of the policy or certificate shall remain unchanged.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

TempleInland/Cleiland 157

LIFE INSURANCE COMPANY OF NORTH AMERICA

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached.  It expires at the same time as the policy or certificate.

In consideration of the premium air travel Exclusion 4A(4) is deleted.

No other policy provision or condition is changed in any way by this rider.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

LM-9232

11

## LIFE INSURANCE COMPANY OF NORTH AMERICA

It is understood and agreed that the following benefit amends the policy or certificate to which it is attached. It takes effect on the date shown, and is in force only while the policy is in force. It terminates on the same date as the policy or certificate. In return for the payment of premium, the following benefit is added:

### AMENDATORY RIDER

### VIOLENT CRIME BENEFIT

We will pay the additional benefit amounts listed below due to the Employee's Loss resulting from any of the violent crimes listed below. Such loss must occur within 365 days of the date the violent crime was committed. We will also pay an additional benefit for hospital confinement that is the result of a violent crime.

1.   Actual or attempted robbery or holdup; or
2.   Actual or attempted kidnaping; or
3.   Any other type of international assault that is a crime classified as a felony based on governing statute or common law in the state where the felony occurred.

**Accidental Death and Dismemberment, Sight, Speech, Hearing and Paralysis.**  We will pay an additional amount equal to 20% of the Principal Sum payable for death or dismemberment; provided, however, that this additional amount shall not exceed $25,000. The Loss must occur while the Employee is covered for this benefit. The Employee must provide proof that the Loss was the direct result of an attempted violent crime prior to the payment of this benefit.

**Hospital Indemnity.**  We will pay equal payments of $100.00 per day up to a maximum of 10 days for each day the Employee is confined to a Hospital. The confinement must begin within 30 days of the violent crime and while the Employee is covered for this benefit. The Employee must provide proof, satisfactory to the Company, that the Employee was confined to a Hospital for the period of time for which the payments are due. If the Employee dies while confined to a Hospital, payment for hospital confinement shall be in addition to the payment for Accidental Death.

A copy of a police report providing proof that the Loss was the direct result of an attempted robbery, kidnaping or assault that falls within the condition of a felony must be provided prior to the payment of any benefits under this rider.

All exclusions listed in the policy or certificate to which this rider is attached are also applicable to this rider. The following exclusions are in addition to those listed in the policy or certificate:

Violent crimes committed by a family member or a member of the same household, as a fellow employee;

Violent crimes committed by the Employee.

TL-005377                                       12

Violent Crime Benefit, Continued

**Definitions**

"Family member" means the Employee's parents, step-parents, spouse or former spouse, son, daughter, brother, sister, mother-in-law, father-in-law, brother-law, sister-in-law, aunt, uncle, grandparent, grandchild and stepchild.

"Fellow Employee" means a person employed by the same employer of the Employee or by an employer that is an affiliated or subsidiary corporation. It shall also include any person who was so employed, but was terminated not more than forty-five (45) days prior to the date on which the violent crime was committed.

"Hospital" means an institution which:
1) is licensed as a hospital pursuant to applicable law;
2) is primarily and continuously engaged in providing medical care and treatment to sick and injured persons;
3) is under the supervision of a staff of doctors;
4) provides 24-hour nursing service by or under the supervision of a graduate registered nurse (R.N.)
5) has medical, diagnostic and treatment facilities, with major surgical facilities on its premises, or available to it on a prearranged basis; and
6) charges for its services.

"Member of the same household" means a person who maintains residence at the same address as the insured.

"Loss" means bodily injury or death resulting from a violent crime, as defined,

All other terms and conditions shall remain unchanged.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

TempleInland/Cleiland 160

## LIFE INSURANCE COMPANY OF NORTH AMERICA

This rider amends the policy or certificate to which it is attached and ends at the same time. The following provision is added.

### CONVERSION PRIVILEGE

We will issue a converted policy to you (the Insured) if the accidental death insurance under the policy or certificate ends for any of the following reasons:

      a)       employment or membership ends; or
      b)       eligibility ends (except for age); or
      c)       the group or blanket policy or plan ends.

**Age:** You must be under age 70 to get a converted policy.

**Health:** We will not ask for your proof of insurability.

**Application:** To get a converted policy, you must: (1) apply within 31 days after group coverage ends; and (2) pay the first premium. If you have assigned ownership of your group coverage, the owner must apply for you.

**Cost:** Your premium will be based on: (1) the class of risk to which you belong; (2) your age; and (3) the form and the amount of coverage issued.

**Effective Date:** Your converted policy will take effect on: (1) the date group coverage ends; or, if later, (2) the date you apply for the converted policy.

**Benefits:** The converted policy will cover accidental death and dismemberment. The amount you apply for must be: (1) in $1,000 increments; and (2) not less than $25,000 nor more than the amount of your group insurance if greater than $25,000; and not more than $250,000.

**Exclusions:** The converted policy may exclude the hazards or conditions that apply to your group coverage at the time it ends. We will reduce payment under the converted policy by the amount of any benefits paid under the group policy if both cover the same loss.

**Dependents:** Dependents may also convert group coverage when they cease to be eligible for any reason except age.

**Renewability:** The converted policy may provide that it can be renewed on any anniversary with the consent of the Company subject to a maximum age limit.

**Prior Converted Policy:** If you convert your group coverage and later again be insured under the same group plan, you may not convert a second time unless: (1) you give us, at your expense, proof of your insurability; or (2) the prior converted policy is no longer in force.

LM-9L78a                                  14                             12/87

Templelnland/Cleiland 161

**State Laws:**  If the converted policy we provide in the state where the group policy was issued cannot lawfully be provided in the state where you reside at time of conversion, you may choose a form that is available for conversion in your state.

No other policy provisions or condition is changed in any other way by this rider.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

LM-9L78a                                         15                                         12/87

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

This rider amends the policy or certificate to which it is attached.  It is in force only while the policy is in force.

### SEATBELT BENEFIT

We will pay an additional accidental death benefit of a minimum of $1,000 per covered person up to a maximum of 10% of the covered person's benefit not to exceed $10,000.  We will pay this benefit if a covered person suffers loss of life, as the result of a covered accident which occurs while he is driving or riding in a Private Passenger Car, if:

1)    The car is equipped with seatbelts; and

2)    The seatbelt was in actual use and properly fastened at the time of the accident; and

3)    The position of the seatbelt is certified in the official report of the accident; or by the investigating officer.  A copy of the police accident report must be submitted with the claim.

If such certification is not available, and it is unclear whether the covered person was properly wearing a seatbelt, then we will pay a fixed benefit of $1,000 to the designated beneficiary.

"Private Passenger Car" means: a validly registered four-wheel private passenger car (including Policyholder owned cars), station wagons, jeeps, pick-up trucks, and van-type cars.

In the case of a child, seatbelt means a child restraint, as required by the state law and approved by the National Highway Traffic Safety Administration, properly secured and being used as recommended by its manufacturer for children of like age and weight at the time of an accident.

Except for the above, this rider does not change the policy in any way.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

LM-3244

16

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
(Herein called the Company)

This rider is attached to and made a part of
**Group Policy No.** OK-810692
A contract between the Company and

**TEMPLE-INLAND FOREST PRODUCTS CORPORATION**
(herein called the Policyholder)

Effective Date: **January 1, 1998**

The Company and the Policyholder hereby agree that the Policy and any Certificates delivered under the Policy are amended, as of the Effective Date shown above, as follows:

The following provision has been added:

> Continuation of Coverage - If an Employee is no longer in a class of eligible persons, due to their being on an Employer approved family or medical leave of absence, coverage for such Employee and any eligible dependents may be continued for 12 weeks, provided the necessary premium payments are made.

> Coverage for such employee or eligible dependents will be continued without regard to the availability of ongoing payroll deduction or central collection of premiums.

This rider terminates at the same time as the Policy or Certificate to which it is attached.  Except for the above, this rider does not change the Policy or Certificates in any way.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

FAMILY AND MEDICAL LEAVE PROVISION FOR CONTINUATION OF COVERAGE

**TempleInland/Cleiland 164**

## SUPPLEMENTAL INFORMATION
### for

### Temple-Inland Health and Welfare Benefits Plan

### required by the Employee Retirement
### Income Security Act of 1974

As a Plan participant in Temple-Inland's Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

## IMPORTANT INFORMATION ABOUT THE PLAN

- The Plan is established and maintained by Temple-Inland Forest Products Corporation.

- The Employer Identification Number (EIN) is 75-1462427.

- The Plan Number is 530.

- The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, OK-810692, issued by LIFE INSURANCE COMPANY OF NORTH AMERICA.

- The Plan Administrator is:    Temple-Inland Inc. Benefits Administration Committee
  303 S. Temple Drive, P.O. Drawer N
  Diboll, TX 75941

  The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy. (Your rights upon termination or amendment of the Plan are set forth in your Certificate.)

- The agent for service of legal process is the Plan Administrator.

- The Plan of benefits is financed by the Employee.

- The date of the end of the Plan Year is December 31.

## YOUR RIGHTS AS SET FORTH BY ERISA

As a Plan participant, ERISA gives you certain rights and protection. To ensure the protection of these rights, ERISA requires any person or entity who is responsible for the operation of the Plan to administer the Plan in a fiduciary capacity. This means that this person, or entity, must act prudently and with the sole purpose of the Plan participants in mind.

If you request, the Plan Administrator must:

a.    Allow you to examine, without charge, at the Plan Administrator's office, all Plan documents including insurance contracts, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as, annual reports and Plan descriptions.

LM-5B35a                           18

b.   Provide you with Plan documents and other Plan information. Any request you make for this information must be in writing to the Plan Administrator. There may be a reasonable charge for the copies.

c.   Provide you with a summary of the Plan's annual financial report. (On certain plans, the law requires the Plan Administrator to provide you with this information.)

Unless there are reasons beyond the Plan Administrator's control, materials you request should be received within 30 days. If you do not receive these materials within that time, you may file suit in a federal court. The court may require the Plan Administrator to pay you up to $110 for each day the material is delayed.

No one, not even your employer, may fire you or discriminate against you in order to prevent you from obtaining a benefit or exercising the rights you have under ERISA.

You may file suit in a federal or state court if any of the following situations arise:

a.   You believe you have been improperly denied a benefit, in whole, or in part.
b.   You believe the Plan fiduciaries are misusing Plan funds.
c.   You believe you have been discriminated against for asserting your rights. (In this case, you may file suit in court or request assistance from the U.S. Department of Labor.)

The court will decide who should pay court costs and legal fees. If you win your case, the court may order the person you have sued to pay the costs and fees. However, if you lose, or if the court finds that your suit is frivolous, you may be required to pay the costs and fees.

## WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM

When you are eligible to receive benefits under the Plan, you must request a claim form from the Plan Administrator. All claims you submit must be on the claim form provided by the Insurance Company. You must complete the form according to the directions on the form. If these forms are not available, you must provide a written statement outlining proof and extent of the loss. After you have completed the claim form or written statement, you must submit it to the Insurance Company.

The Insurance Company has 90 days, from the date it receives your notice of claim, to determine whether or not benefits are payable to you in accordance with the terms and provisions of the Policy. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 90 days. You should receive this written notification before the end of the initial 90 day review period.

During the review period, the Insurance Company may require a medical examination of the Insured, at its own expense; or additional information regarding the loss. If a medical examination is required, the Insurance Company will notify you of the date and time of the examination and the physician's name and location. (It is important that you keep any appointments made since rescheduling examinations will delay the claim process.) If additional information is required, the Insurance Company must notify you, in writing, specifying the nature of the information needed and an explanation as to why it is needed.

If your claim is approved, you will receive the appropriate benefit from LIFE INSURANCE COMPANY OF NORTH AMERICA.

LM-5B35a                                    19

If your claim is denied, in whole or in part, you must receive written notice from the Insurance Company within the 90 day review period (or within 180 days if the review period was extended). The Insurance Company's written notice must include the following information:

1.    The specific reason(s) the claim was denied.
2.    Specific reference to the Policy provision(s) upon which the denial is based.
3.    A statement informing you of your right to appeal the decision, and an explanation of the appeal procedure, as outlined in "Appeal Procedure for Denied Claims" below.

**Appeal Procedure for Denied Claims**

Whenever a claim is denied, you have the right to appeal the decision. You, or your duly authorized representative, must make a written request for appeal to the Insurance Company within 60 days from the date you receive the denial. If you do not make this request within that time frame, you will have waived your right to appeal.

Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. During the review, you, or your duly authorized representative, have the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. You may also submit issues and comments that you feel might affect the outcome of the review.

The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days. You should receive this written notification before the end of the initial 60 day review period. Once its review is complete, the Insurance Company must notify you, in writing, of the results for the review and indicate the Plan provisions upon which it based its decision.

## WHO YOU SHOULD CONTACT IF YOU HAVE QUESTIONS ABOUT THE PLAN

If you have any questions about the Plan, contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

TempleInland/Cleiland 167

UNDERWRITTEN BY:
**LIFE INSURANCE COMPANY OF NORTH AMERICA**
a CIGNA Company

Class 1
4/2001



CIGNA Group Insurance
Life ● Accident ● Disability

TempleInland/Cleiland 168

# SECTION III

TempleInland/Cleiland 169

# GROUP BUSINESS TRAVEL ACCIDENT
# INSURANCE CERTIFICATE

## POLICY NUMBER ABL-670620

# TEMPLE-INLAND INC.

**ADD0004A**

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call the Life Insurance Company of North America, Group Insurance Division toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono grantis del Life Insurance Company of North America, Group Insurance Division para informacion acerca de companias, coberturas, derechos o queja al: |
| **1-800-547-5515** | **1-800-547-5515** |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write the Texas Department of Insurance P.O. Box 149104 Austin, TX 78714-9104 FAX #(512) 475-1771 | Puede escribir al Departamento de Seguros de Texas P.O. Box 149104 Austin, TX 78714-9104 FAX #(512) 475-1771 |
| **PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the agent or company first If the dispute is not resolved, you may contact the Texas Department of Insurance. | **DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe communicarse con el agente o la compania primero. Si no se resuelve la disputa, puedo entonces communicarse con el departemento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

TL-004426

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 Chestnut Street
Philadelphia, PA 19192
A Stock Insurance Company

**ACCIDENT ONLY
CERTIFICATE OF
INSURANCE**

Covered Person:
Effective Date:
Beneficiary:

We, the Life Insurance Company of North America, have issued Blanket Accident Policy No. **ABL-670620** to the Policyholder:·

### TEMPLE-INLAND INC.

We certify that you are covered by the Blanket Policy while you are a member of the classes of the Policyholder, as described:

1     All active employees of the Policyholder

2     All active pilots of the Policyholder

3     All non-employee directors of the Policyholder not included in Class 1 or Class 2

Your coverage will begin on the later of: (1) the effective date shown above; or (2) the date you entered the class described above. Your coverage will end on the date that: (1) you are no longer in the class described above; or (2) the Blanket Policy is terminated. Termination will not affect a claim for a loss which occurs while you are covered by the Blanket Policy.

Your coverage is described in this Certificate. You should read it with care so you will understand your coverage. This is not the insurance contract. The Blanket Policy is the only contract under which benefits are paid. You may examine it at the office of the Policyholder.

John K. Leonard, President

### TABLE OF CONTENTS

Schedule of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Scope of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Total Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Description of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Applicable Hazards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Payment of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## SCHEDULE OF BENEFITS

Your benefit amounts are shown below. If no benefit amount is shown, then you are not covered for that benefit.

Class 1:     Coverage A: Principal Sum:     3 times Base Annual Earnings to a maximum principal sum of $450,000

Coverage B: Maximum Amount:     1% of the principal sum each month, subject to a maximum of 100 consecutive months

Coverage C: Weekly Disability:     (Does not apply under this policy)
Maximum Period:     N/A weeks;  Waiting Period:   days

Coverage D: Maximum Amount:     Deductible: (Does not apply under this Policy)

Applicable Hazards:     LM-9D84(2229); LM-9D84(2205); TL-002810(2252); LM-1E46(2239)

Class 2     Coverage A: Principal Sum:     3 times Base Annual Earnings to a maximum principal sum of $450,000

Coverage B: Maximum Amount:     1% of the principal sum each month, subject to a maximum of 100 consecutive months

Coverage C: Weekly Disability:     (Does not apply under this policy)
Maximum Period:     N/A weeks;  Waiting Period:   days

Coverage D: Maximum Amount:     Deductible: (Does not apply under this Policy)

Applicable Hazards:     LM-9D84(2229); LM-9D84(2259); TL-002810(2252); LM-1E46(2239)

Class 3     Coverage A: Principal Sum:     $100,000

Coverage B: Maximum Amount:     1% of the principal sum each month, subject to a maximum of 100 consecutive months

Coverage C: Weekly Disability:     (Does not apply under this policy)
Maximum Period:     N/A weeks;  Waiting Period:   days

Coverage D: Maximum Amount:     Deductible: (Does not apply under this Policy)

Applicable Hazards:     LM-6P61(2299); LM-9D84(2205); TL-002810(2252);LM-1E46(2239)

LM-2385                                    1

TempleInland/Cleiland 173

"Basic Annual Earnings," as used above, means:

a.   For All Purposes: For all purposes under the Temple-Inland Benefit Solutions Plan, "Basic Annual Earnings" includes only compensation paid to you by your Employer for services performed by you for your Employer as reflected on your Employer's payroll system which meets all the definitions set forth in this subparagraph a. and the applicable subparagraphs b. or c. below. "Basic Annual Earnings" does not include any amounts that are not paid through your Employer's payroll system (including, but not limited to, benefits such as insured disability pay).

"Basic Annual Earnings" includes your base pay prior to any reduction for elective deferrals (within the meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-Inland Benefit Solutions Plan. For commission I Employees, commission II Employees, commission III employees, and commission V Employees, "Basic Annual Earnings" includes commissions actually paid, but excludes commissions that have not yet been paid (whether or not they have been earned, have accrued, or are otherwise payable at the time of the calculation). For all other Employees, "Basic Annual Earnings" excludes commissions.

"Basic Annual Earnings" excludes all other compensation, including, but not limited to, insured disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive or restricted stock, compensation in lieu of dividends, stock options, performance units, shift differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by your Employer to you on behalf of an entity that is not a member of your Employer's controlled group of corporations for services rendered by you on behalf of such entity, and such other payments or income as may be designated by the Company.

b.   For Costs and Credits: For purposes of determining Costs and Credits, your "Basic Annual Earnings" is your "Basic Annual Earnings" in effect at the time the Solutions enrollment data is produced as determined below:

i.   For a salaried Employee, "Basic Annual Earnings" is your annual base salary for a Full-time Employee or 0.5 times the annual base salary for a part-time employee, regardless of the number of hours regularly worked.

ii.   For an hourly Employee, "Basic Annual Earnings" is your base hourly rate multiplied by 2,080 hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the number of hours regularly worked.

iii.   For newly hired commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Basic Annual Earnings" is the greater of:

(1)   base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable), or

(2)   $20,000

iv.   For all other commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Basic Annual Earnings" is determined by:

(1)   adding your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

(2)   annualizing the amount based on a full 12-month year.

TempleInland/Cleland 174

  v. For Employees hired after the Solutions enrollment data is produced or Employees who have a change in pay or change in status after the Solutions enrollment data is produced, "Basic Annual Earnings" will be determined as of the date of hire or date of change in pay or change in status respectively; provided, however, that the Plan administrator may elect in his sole discretion to use the "frozen pay" determined at the time the Solutions enrollment data is produced to determine Costs and Credits for commission I Employees, commission II Employees, commission III Employees and commission V Employees.

c. <u>For Benefit Payments:</u> For the purpose of determining the amount of a benefit to be paid, your "Basic Annual Earnings" in effect on the date of the event for which the claim is paid will be used, as determined below:

  i. For a Full-time salaried Employee, "Basic Annual Earnings" is your annual base salary. For a part-time salaried Employee, "Basic Annual Earnings" is your annual base salary for the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

  ii. For an hourly Employee, "Basic Annual Earnings" is your base hourly rate multiplied by the number of hours the you are regularly scheduled to work, up to a maximum of 2,080 hours.

  iii. For commission I Employees, commission II Employees, commission III Employees, and commission V Employees, "Basic Annual Earnings" is the greater of:

    (1) your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if you have been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period), or

    (2) $20,000.

  iv. Not withstanding the above, if the underlying Benefit Plan under which the claim is to be paid has a different definition of pay for purposes of calculating benefits thereunder, such Benefit Plan's definition shall govern.

**Total Limit of Liability** - We will not pay more than $7,500,000 per accident.

If, but for this provision, we would pay more than this amount, then the benefits we will pay to each covered person will be reduced in the same proportion, so that the total amount we will pay is the maximum amount shown above.

<center>**SCOPE OF COVERAGE**</center>

We will pay the benefits described in this Certificate only for the types of accidents described in Schedule IV of the policy. A copy of this schedule is attached. **The policy covers accidents only. It does not pay benefits for loss caused by sickness. Please read your Certificate with care.**

TempleInland/Cleiland 175

## DESCRIPTION OF COVERAGE

**Coverage A: Accidental Death and Dismemberment Benefit -** We will pay this benefit if:

a)  you are injured by one of the types of accidents described in Schedule IV, which happens while you are covered by this policy; and

b)  you suffer one of the losses listed below as a direct result of the injuries, and from no other cause, within a year of the accident.

The amount of this benefit is shown in the table below. The Principal Sum is shown on page 1.

| | |
|---|---|
| Loss of Life | The Principal Sum |
| Loss of Two or more Members | The Principal Sum |
| Loss of Speech and Hearing (both Ears) | The Principal Sum |
| Quadriplegia (total paralysis of both upper and lower limbs) | The Principal Sum |
| Loss of One Member | One-half The Principal Sum |
| Paraplegia (total paralysis of both lower limbs) | Three-quarters The Principal Sum |
| Loss of Speech | One-half The Principal Sum |
| Loss of Hearing (both ears) | One-half The Principal Sum |
| Hemiplegia (total paralysis of upper and lower limbs on one side of the body) | One-half The Principal Sum |
| Loss of Thumb and Index finger of the same hand | One-quarter The Principal Sum |

"Principal Sum" is stated elsewhere in the Certificate.

"Member" means hand, foot, and eye.

"Loss" means, with regard to hand or foot, complete severance through or above the wrist or ankle joint; loss of an eye means total and irrecoverable loss of sight; loss of speech means complete inability to communicate audibly in any degree; loss of hearing means irrecoverable loss of hearing, which cannot be corrected by any hearing aid or device; loss of thumb and index finger means severance of each through or above the joint closest to the wrist. (In California, loss of a thumb and index finger means loss by complete severance of at least one whole phalanx of each.) (In South Carolina, the loss of four whole fingers from one hand equals the loss of one hand.)

"Paralysis" means loss of use, without severance, of a limb. This loss must be determined by a physician to be complete and not reversible.

"Severance" means complete separation and dismemberment of the limb from the body.

**Coverage B: Permanent Total Disability -** We will pay this benefit if:

a)  you are injured in one of the types of accidents described in Schedule IV, which happens while you are covered for this benefit; and

b)  you become totally disabled as a direct result, and from no other cause, within 365 days of the accident; and

c)  you remain totally disabled for 12 straight months; and

d)  you are then permanently and totally disabled.

The amount of this benefit is the maximum amount shown in the Schedule of Benefits, minus any amounts we have paid under Coverage A for the accident. If the amount shown is a periodic amount, then we will pay this amount until:

a)  you die, or are no longer permanently and totally disabled; or

b)  the total we have paid for the accident under Coverages A and B is the Principal Sum shown in your Schedule of Benefits.

TL-007128

4

TempleInland/Cleiland 176

## DESCRIPTION OF COVERAGE  (Continued)

You will be deemed "totally disabled" if you can not do all the substantial and material duties of your type of work.  You will be deemed "permanently and totally disabled" if you are not able to do any work for which you are or may become qualified by reason of your education, experience, or training: and if you are not expected to be able to do any such work for the rest of your life.

**Coverage C: Total Disability Weekly Benefit -** We will pay this benefit if:
  a) you are injured in one of the types of accidents described in Schedule IV, which happens while you are covered for this benefit; and
  b) you become totally disabled as a direct result of the injuries, and from no other cause, within 30 days of the accident.

The amount of this benefit is shown in your Schedule of Benefits.  This benefit will begin on the first day after the end of the Waiting Period (shown in your Schedule).  We will pay this benefit until:
  a) you die, or are no longer totally disabled; or
  b) we have paid this benefit for the Maximum Period shown in your Schedule; or
  c) you qualify for benefits under Coverages A or B.

You will be deemed "totally disabled" if:
  a) during the Waiting Period and for the next 12 months after that, you can not do all the substantial and material duties of your type of work.
  b) after that, if you can not do any work for which you are or may become qualified by reason of your education, experience, or training.

**Coverage D: Medical Expense Benefit -** If you are injured in one of the types of accidents described in Schedule IV, which happens while you are covered for this benefit, then we will pay this benefit for the services listed below, which you need as a direct result of the injuries, and from no other cause, within a year of the accident:
  a) stays in a hospital
  b) medical or surgical treatment by a doctor
  c) the services of licensed or graduate nurses
  d) x-ray examinations
  e) professional ambulance service from the scene of the accident to the nearest hospital.

The treatment must begin not more than 60 days after the accident.

The amount of this benefit will be the actual cost of these services, minus the deductible amount (if any) shown in your Schedule.  The deductible must be satisfied once for each accident.

This benefit will be reduced to the extent that benefits are payable for the medical services under: (i) any employer sponsored health care plan: or (ii) any government program or any law, including any Worker's Compensation law.

We will not pay more than the maximum amount shown in your Schedule, for all medical treatment needed as a result of any one accident.

TempleInland/Cleiland 177

## EXCLUSIONS

We will not pay benefits for loss caused by or resulting from:

a) Suicide or attempted suicide, or whenever a covered person injures himself on purpose, while sane. (In Missouri only, this does not apply if he was insane.)

b) War or acts of war, whether or not declared; except to the extent that it is provided for in Schedule IV-W or IV-H.

c) Injury while you are on full time active duty in any armed forces. We will return the pro rata portion of premiums paid to cover a person during a period of such service.

d) Taking part in a felony.

e) Travel or flight in any spacecraft; or flight in any aircraft, except to the extent that this hazard is provided for by name in Schedule IV.

f) Any bacterial infection that was not caused by an accidental cut, wound or food poisoning.

The policy is accident only. We will not pay benefits for loss caused by or resulting from illness, disease, or bodily infirmity.

TL-007128

6

**BLANKET ACCIDENT POLICY**

| | |
|---|---|
| Policyholder:    Temple-Inland Inc. | Schedule Date:  January 1, 1999 |
| Part of Policy No.  ABL-670620 | Applies To Class(es):  1 and 2 |

**SCHEDULE IV- A**
**HAZARDS INSURED AGAINST**

**24 HOUR COVERAGE WHILE TRAVELING ON BUSINESS**
**AWAY FROM THE PREMISES OF THE POLICYHOLDER (Owned Aircraft Not Covered) 2229**

We will pay the benefits described in the policy for any accident which occurs anywhere in the world while you, on a business trip, are traveling or making a short stay:
   a)  away from the Policyholder's premises in the city of permanent assignment; and
   b)  on business for the Policyholder, and in the course of the Policyholder's business.
All such trips must be authorized by the Policyholder.
This coverage does not apply:
   a)  while you are commuting between your home and place of work; or
   b)  during personal deviations made by you.

"Personal deviation," as used here, means an activity that is not reasonably related to the Policyholder's business, and not incidental to the business trip.

This coverage will start at the actual start of a trip.  It does not matter whether the trip starts at the your home, place of work, or other place.  This coverage will end when you:
   a)  arrive at your home or place of work, whichever happens first; or
   b)  make a personal deviation.
If you travel to another city, and are expected to remain there for more than 60 days, this shall be deemed a change in your city of permanent assignment.

**Exposure And Disappearance**--This coverage includes exposure to the elements, after the forced landing, stranding, sinking, or wrecking of a vehicle in which you were traveling on business for the Policyholder.

You will be presumed to have died, for purposes of this coverage, if:
   a)  you are in a vehicle which disappears, sinks, or is stranded or wrecked, in the course of a trip which would be covered by the policy; and
   b)  your body is not found within a year of the accident.

**Aircraft Restrictions**--If the accident happens while you are riding in, or getting on or off of, an aircraft, we will pay benefits, but only if:
   a)  you are riding as a passenger only, and not as a pilot or member of the crew; and
   b)  the aircraft has a valid certificate of airworthiness; and
   c)  the aircraft is flown by a pilot with a valid license; and
   d)  the aircraft is not being used for:  (i) crop dusting, spraying, or seeding; fire fighting; sky writing; sky diving or hang gliding; pipeline or power line inspection; racing, endurance tests, stunt or acrobatic flying; or (ii) any operation which requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on).

TempleInland/Cleiland 179

**Owned Aircraft Not Covered**—We will not pay benefits if the aircraft is owned, leased or controlled by the Policyholder, or any of its subsidiaries or affiliates. An aircraft will be deemed to be "controlled" by the Policyholder if the Policyholder may use it as it wishes for more than 10 straight days, or more than 15 days in any year.

Unless otherwise provided, we will pay benefits only once for any one covered loss, even if it was caused by more than one covered hazard.

TempleInland/Cleiland 180

## BLANKET ACCIDENT POLICY

| | | |
|---|---|---|
| Policyholder: | Temple-Inland Inc. | Schedule Date: January 1, 1999 |

Part of Policy No. ABL-670620                     Applies To Class(es): 3

## SCHEDULE IV- B
## HAZARDS INSURED AGAINST

### NON-EMPLOYEE DIRECTOR

We will pay the benefits described in the policy for any accident which occurs while a covered person is traveling to, during the course of, or returning from:

   a) a meeting of the committee or other similar duties; or
   b) a trip taken at the Policyholder's specific request; or
   c) any trip for which the insured director received reimbursement from the Policyholder for expenses or services performed.

All such trips must be authorized by the Policyholder .

This coverage does not include:

   a) commuting between the covered person's home and place of work; or
   b) personal deviations by the covered person.

"Personal deviation," as used here, means an activity that is not reasonably related to the Policyholder's business, and not incidental to the business trip.

This coverage will start at the actual start of a trip. It does not matter whether the trip starts at the covered person's home, place of work, or other place. This coverage will end when the covered person:

   a) arrives at his home or place of work, whichever happens first; or
   b) makes a personal deviation.

**Exposure And Disappearance**--This coverage includes exposure to the elements, after the forced landing, stranding, sinking, or wrecking of a vehicle in which the covered person was traveling on business for the Policyholder.

A covered person will be presumed to have died, for purposes of this coverage, if:

   a) he is in a vehicle which disappears, sinks, or is stranded or wrecked, in the course of a trip which would be covered by the policy; and
   b) his body is not found within a year of the accident.

**Aircraft Restrictions**--If the accident happens while a covered person is riding in, or getting on or off of, an aircraft, we will pay benefits, but only if:

   a) he is riding as a passenger only, and not as a pilot or member of the crew; and
   b) the aircraft has a valid certificate of airworthiness; and
   c) the aircraft is flown by a pilot with a valid license; and
   d) the aircraft is not being used for: (i) crop dusting, spraying, or seeding; fire fighting; sky writing; sky diving or hang gliding; pipeline or power line inspection; racing, endurance tests, stunt or acrobatic flying; or (ii) any operation which requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on).

TempleInland/Cleiland 181

**Owned Aircraft Not Covered**--We will not pay benefits if the aircraft is owned, leased or controlled by the Policyholder, or any of the Policyholder's subsidiaries or affiliates.  An aircraft will be deemed to be "controlled" by the Policyholder, if the Policyholder may use it as the Policyholder wishes for more than 10 straight days, or more than 15 days in any year.

Unless otherwise provided, we will pay benefits only once for any one covered loss, even if it was caused by more than one covered hazard.

TempleInland/Cleiland 182

**BLANKET ACCIDENT POLICY**

| | |
|---|---|
| Policyholder:    Temple-Inland Inc. | Schedule Date:  January 1, 1999 |

| | |
|---|---|
| Part of Policy No.   ABL-670620 | Applies To Class(es):  1 and 3 |

## SCHEDULE IV- C
## HAZARDS INSURED AGAINST

**OWNED AIRCRAFT (INDUSTRIAL AID) (Passengers Only)**

We will pay the benefits described in the policy for any of the types of accidents described below.

**A. Travel In An Aircraft**--We will pay benefits for injuries caused by an accident which happens while a covered person is riding in, or getting on or off of, the aircraft described below:

   a)  if it has a valid certificate of airworthiness; and
   b)  if it is flown by a pilot with a valid license; and
   c)  if it is not being used for:  (i) crop dusting, spraying, or seeding; fire fighting; sky writing; sky diving or hang gliding; pipeline or power line inspection; aerial photography or exploration; racing, endurance tests, stunt or acrobatic flying; or (ii) any operation which requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on); or (iii) any use for which a charge is made; and
   d)  if the covered person is riding as a passenger only, and not as a pilot or member of the crew.

We will also pay benefits if a covered person has to make a parachute jump from the aircraft described below, to save his life.

**B. Being Struck By An Aircraft**--We will pay benefits for injuries which occur as a result of being struck by the aircraft described below.

**C. Exposure And Disappearance**--This coverage includes exposure to the elements, after the forced landing, stranding, sinking, or wrecking of the aircraft described below, in which the covered person was riding as a passenger.

A covered person will be presumed to have died, for purposes of this coverage, if:

   a)  he is in the aircraft described below, which disappears, sinks, or is stranded or wrecked, in the course of a trip which would be covered by the Policy; and
   b)  his body is not found within a year of the accident.

**Description Of Aircraft Covered**--This coverage applies only to the aircraft described below (include make, model, license number, and passenger seating capacity):

| Aircraft Make | Aircraft Model | License Number | Seating Capacity |
|---|---|---|---|
| 1978 Falcon ($5,850,000 agg) | 20F | N120TF | 2 crew/11 passengers |
| 1978 Falcon ($5,850,000 agg) | 20F | N120WH | 2 crew/11 passengers |
| 1988 Cessna ($4,050,000 agg) | 500 | N120HC | 2 crew/7 passengers |
| 1983 Falcon ($5,400,000 agg) | 50 | N77TE | 2 crew/10 passengers |
| 1985 Beech King ($4,050,000 agg) | Air 300 | N79TE | 2 crew/8 passengers |
| 1995 Lear Jet ($4,050,000 agg) | 31 | N2935SA | 2 crew/7 passengers |
| 1978 Bell ($2,700,000 agg) | 206L | N78TE | 1 crew/5 passengers |
| 1989 Agusta ($2,700,000 agg) | 109 | N71TE | 1 crew/5 passengers |
| 1992 Lear Jet ($3,600,000 agg) | 31 | N74OF | 2 crew/6 passengers |

TempleInland/Cleiland 183

This coverage also includes the temporary use of a substitute aircraft, with no greater seating capacity, if the aircraft described above is withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

Unless otherwise provided, we will pay benefits only once for any one covered loss, even if it was caused by more than one covered hazard.

LM-9D84                                12                                2205

TempleInland/Cleiland 184

**BLANKET ACCIDENT POLICY**

| Policyholder: | Temple-Inland Inc. | Schedule Date: January 1, 1999 |
|---|---|---|
| Part of Policy No. ABL-670620 | | Applies To Class(es): 2 |

## SCHEDULE IV- D
## HAZARDS INSURED AGAINST

**PILOTS' AND CREW MEMBERS' COVERAGE**
**(Business Travel Only)**

We will pay the benefits described in the policy for any of the types of accidents described below, which occur:
    a) while the covered person is traveling on business for the Policyholder; and
    b) in the course of the Policyholder's business.
All such trips must be authorized by the Policyholder.

**Pilots' And Crew Members' Coverage**--We will pay benefits for an accident which happens while a covered person is flying as a licensed pilot or member of the crew of the aircraft described below. We will not pay benefits if:
    a) the aircraft does not have a valid certificate of airworthiness; or
    b) the aircraft is being used for: (i) crop dusting, spraying, or seeding; fire fighting; sky writing; sky diving or hang gliding; pipeline or power line inspection; aerial photography or exploration; racing, endurance tests, stunt or acrobatic flying; or (ii) any operation which requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on).

**Exposure And Disappearance**--This coverage includes exposure to the elements, after the forced landing, stranding, sinking or wrecking of the aircraft described below, in which a covered person was traveling on business for the Policyholder, as a pilot or member of the crew.

A covered person will be presumed to have died, for purposes of this coverage, if:
    a) he is in the aircraft described below, which disappears, sinks, or is stranded or wrecked, while he is traveling on business for the Policyholder, as a pilot or member of the crew; and
    b) his body is not found within a year of the accident.

**Description Of Aircraft Covered**--This coverage applies only to the aircraft described below (include make, model, license number, and passenger seating capacity):

| Aircraft Make | Aircraft Model | License Number | Seating Capacity |
|---|---|---|---|
| 1978 Falcon ($5,850,000 agg) | 20F | N120TF | 2 crew/11 passengers |
| 1978 Falcon ($5,850,000 agg) | 20F | N120WH | 2 crew/11 passengers |
| 1988 Cessna ($4,050,000 agg) | 500 | N120HC | 2 crew/7 passengers |
| 1983 Falcon ($5,400,000 agg) | 50 | N77TE | 2 crew/10 passengers |
| 1985 Beech King ($4,050,000 agg) | Air 300 | N79TE | 2 crew/8 passengers |
| 1995 Lear Jet ($4,050,000 agg) | 31 | N2935SA | 2 crew/7 passengers |
| 1978 Bell ($2,700,000 agg) | 206L | N78TE | 1 crew/5 passengers |
| 1989 Agusta ($2,700,000 agg) | 109 | N71TE | 1 crew/5 passengers |
| 1992 Lear Jet ($3,600,000 agg) | 31 | N740F | 2 crew/6 passengers |

TempleInland/Cleiland 185

This coverage also includes the temporary use of a substitute aircraft, with no greater seating capacity, if the aircraft described above is withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

Unless otherwise provided, we will pay benefits only once for any one covered loss, even if it was caused by more than one covered hazard.

TempleInland/Cleiland 186

**BLANKET ACCIDENT POLICY**

| Policyholder: | Temple-Inland Inc. | Schedule Date: January 1, 1998 |
|---|---|---|
| Part of Policy No. ABL-670620 | | Applies To Class(es): 1, 2 and 3 |

## SCHEDULE IV- E
## HAZARDS INSURED AGAINST

**PERSONAL DEVIATIONS COVERAGE**

We will pay the benefits described in the policy for any accident which occurs while a Covered Person engages in Personal Deviations while traveling:

    (1)   outside his city of permanent assignment; and

    (2)   on business for the Policyholder.

**"Personal Deviations"** as used here, means an activity that:

    (1)   is not reasonably related to the Policyholder's business;

    (2)   is not incidental to the Policyholder's business; and

    (3)   occurs up to 10 days before or after the scheduled end of the business travel.

TempleInland/Cleiland 187

**POLICY AMENDMENT**

| | |
|---|---|
| Policyholder:     Temple-Inland Inc. | Schedule Date: January 1, 1998 |

Part of Policy No.  ABL-670620

This rider amends the policy named above.  It is in force only while the policy is in force, but not before the date shown above.

In exchange for the payment of $250.00  which is

        X        included in the premium for the policy shown in Schedule III; or

        ☐        in addition to the policy premium;

the war risk coverage below is added.

**SCHEDULE IV-W — WAR RISK INSURANCE**

We agree to pay the benefits described in this policy for accidents described in Schedule IV which are caused by war or acts of war.  Exclusion (b) is hereby deleted.  This coverage is subject to the terms set forth below.

**Area Covered**--This coverage includes loss caused by or resulting from war or acts of war only in the area described below:

        World Wide except Iraq, Libya, Yugoslavia (Serbia and Montenegro).

This coverage does not include:  (i) the United States; and (ii) any nation of which the covered person is a citizen.

**Total Limit of Liability**—We will not pay more than $7,500,000 per accident occurrence for the war risk benefits provided by this amendment.  This limit shall apply to injuries sustained from all acts of war in any consecutive 72 hour period.  If, but for this provision, we would pay more than the above stated amount, then the benefits we will pay to each covered person will be reduced in the same proportion, so that the total amount we will pay for war risk coverage is the maximum shown above.

**Premiums and Coverage Subject to Change**--The premiums, benefits, and area covered may be changed at any time by agreement between the Policyholder and us.  This may be done as needed to reflect conditions which, in the opinion of the Policyholder or us, change the war risk exposure.

**Termination**--The Policyholder may cancel this war risk coverage at any time by sending written notice to us at our home office, at the address shown on the cover page of the policy.  This coverage will be canceled when we receive the Policyholder's notice, or later if so specified.

We may cancel this coverage at any time by sending the Policyholder at least 10 days written notice to their most recent address in our records.

We will promptly return any unearned premium that the Policyholder has paid.  However, this is not a condition of termination.

TempleInland/Cleiland 188

Change or termination of this coverage will not affect a claim which begins while this coverage is in force.

Except for the above, this rider does not change the policy or certificate in any way.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

TempleInland/Cleiland 189

## LIFE INSURANCE COMPANY OF NORTH AMERICA

| | |
|---|---|
| Policyholder:    Temple-Inland Inc. | Policy Number:   ABL-670620 |
| Effective Date:   March 24, 1998 | Applicable to Class(es):   1, 2, 3 |

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It takes effect on the date shown above, and ends on the date the policy ends.

In consideration of the premium, the following benefit is added:

### NEWLY ACQUIRED AIRCRAFT COVERAGE

If the Policyholder acquires an aircraft after the effective date of this rider, the newly acquired aircraft may be considered an aircraft covered for purposes of Schedules IV-C and IV-D which designate aircraft that are covered effective on the date the aircraft is delivered if:

1. The aircraft has a current, valid Airworthiness Certificate;
2. The Policyholder notifies the Company of the acquisition of the aircraft on or before the 90th day after its delivery date; and
3. The aircraft is an addition to the fleet of already covered aircraft for the specified Schedule IV(s). The Policyholder agrees to pay any additional required premium retroactive to its delivery date.

If the Policyholder notifies the company of the acquisition of the aircraft after the 90th day after its delivery date and agrees to pay any additional required premium retroactive to the date of such notification, and if the aircraft has a current, valid Airworthiness Certificate, the aircraft may be considered covered for the purposes of the specified Schedule IV(s) effective on the date of notification.

All other terms and conditions of the Policy and Certificate remain unchanged.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

TempleInland/Cleiland 190

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

| Policyholder: | Temple-Inland Inc. | | Policy Number: ABL-670620 |
|---|---|---|---|
| Effective Date: | March 24, 1998 | | Applicable to Class(es)  1, 2, 3 |

## AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached.  It takes effect on the date shown above, and ends on the date the policy ends.

In consideration of the premium, the following benefit is added:

### SUBSTITUTE AND REPLACEMENT AIRCRAFT COVERAGE

The sentence "This coverage also includes the temporary use of a substitute aircraft, with no greater seating capacity, if the aircraft described above is withdrawn form normal use due to breakdown, repair, servicing, loss or destruction." which appears in the paragraph **Description of Aircraft Covered** on Schedule IV-C and IV-D is deleted

**Substitute Aircraft Coverage**- If any covered aircraft specified on Schedule IV-C and IV-D is temporarily withdrawn from normal use due to mechanical breakdown, servicing or accident, a substitute aircraft may also be considered a covered aircraft for the purposes of such Schedule IV(s), but only while the covered aircraft is temporarily withdrawn from normal use due to the stated reason(s) and only if the substitute aircraft:

1. has a current, valid Airworthiness Certificate in the same class as the aircraft withdrawn from normal use; and
2. is piloted by a person holding a current, valid certificate of competence for that type of aircraft; and
3. is not more than 3 seats, and also not more than 25% larger in passenger and crew member seat capacity than the aircraft withdrawn from normal use.

**Replacement Aircraft Coverage.**  If any covered aircraft specified on Schedule IV-C and IV-D is replaced with a newly acquired aircraft, the replacement aircraft may also be considered a covered aircraft for the purposes of such Schedule IV(s) only if the replacement aircraft:
1. has a current, valid Airworthiness Certificate in the same class as the replace aircraft; and
2. has the same or lesser passenger and crew member seat capacity as the replaced aircraft.

All other terms and conditions of the Policy and Certificate remain unchanged.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

TL-007130

19

## LIFE INSURANCE COMPANY OF NORTH AMERICA

| | | |
|---|---|---|
| Policyholder: | Temple-Inland Inc. | Policy Number:  ABL-670620 |
| Effective Date: | March 24, 1998 | Applicable to Class(es)  1, 2, 3 |

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached.  It takes effect on the date shown above, and ends on the date the policy ends.

In consideration of the premium, the following benefit is added:

### COMA BENEFIT RIDER

This rider applies only with respect to accidents that occur on or after the Effective Date shown above.  It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider.

If Injury renders a Covered Person Comatose within 90 days of the date of the accident that caused the Injury, and if the Coma continues for a period of 30 consecutive days, we will pay a monthly benefit of 1% of the Principal Sum.  No benefit is provided for the first 30 days of Coma.  The benefit is payable monthly as long as the Covered Person remains Comatose due to that Injury, but ceases on the earliest of: (1) The date the Covered Person ceases to be Comatose due to that Injury; (2) the date the Covered Person dies; or (3) the date the total amount of monthly Coma benefits paid for all Injuries caused by the same accident equals 100% of the Principal Sum. We will pay benefits calculated at a rate of 1/30th of the monthly benefit for each day for which we are liable when the Covered Person is Comatose for less than a full month.  Only one benefit is provided for any one month of Coma regardless of the number of Injuries causing the Coma.

We reserve the right, at the end of the first 30 consecutive days of Coma, and as often as it may reasonably require thereafter, to determine, on the basis of all the facts and circumstances, that the Covered Person is Comatose, including, but not limited to, requiring an independent medical examination provided at our expense.

**Coma/Comatose** - as used in this Rider, means a profound state of unconsciousness from which the Covered Person cannot be aroused to consciousness, except by powerful stimulation, as determined by a Physician.

All other terms and conditions of the Policy and Certificate remain unchanged.

LIFE INSURANCE COMPANY OF NORTH AMERICA

John K. Leonard, President

TempleInland/Cleiland 192

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

| | | |
|---|---|---|
| Policyholder: | Temple-Inland Inc. | Policy Number: ABL-670620 |
| Effective Date: | March 24, 1998 | Applicable to Class(es)  1, 2, 3 |

**AMENDATORY RIDER**

This rider amends the Policy or Certificate to which it is attached. It takes effect on the date shown above, and ends on the date the Policy ends.

In consideration of the premium, the following benefit is added:

**SEATBELT AND AIR BAG BENEFIT RIDER**

This rider applies only to accidents that occur on or after the Amendment Effective Date shown above. It is subject to all of the provisions, limitations and exclusions of the Policy, except as they are specifically modified by this rider.

**Seatbelt Benefit.** We will pay a benefit under this rider when the Covered Person dies as the result of a covered accident, and the death benefit is payable under this Policy. The accident causing death must occur while the Covered Person is operating, or riding as a passenger in an Automobile, and wearing a properly fastened, original, factory-installed seatbelt. The amount payable under this rider is 10% of the covered person's benefit not to exceed $25,000.

**Air Bag Benefit.** We will pay an additional 5% of the Insured Person's Principal Sum or $12,500 whichever is less, under this rider if a Seatbelt Benefit is payable under this rider, and if the Covered Person is positioned in a seat protected by a properly functioning, original, factory-installed Supplemental Restraint System that inflates on impact.

Verification of the actual use of the seatbelt at the time of the accident and that the Supplemental Restraint System inflated properly upon impact must be a part of an official report of the accident or be certified, in writing, by the investigating officer(s).

**Automobile** means a self-propelled private passenger motor vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highway of any state or country. Automobile includes, but is not limited to, a sedan, station wagon, or jeep-type vehicle, or a motor vehicle of the pickup, van, camper or motor home type. Automobile does not include a mobile home or any motor vehicle which is used in mass or public transit.

**Supplemental Restraint System** means an AIR BAG which inflates for added protection to the head and chest areas.

All other terms and conditions of the Policy and Certificate shall remain unchanged.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

### LIFE INSURANCE COMPANY OF NORTH AMERICA

| | |
|---|---|
| Policyholder: Temple-Inland Inc. | Policy Number: ABL 670620 |
| Effective Date: January 1, 1998 | Applicable to Class(es): 1, 2, 3 |

### AMENDATORY RIDER

This rider amends the policy or certificate to which it is attached. It takes effect on the date shown above, and ends on the date the policy ends.

In consideration of the premium, the following is added:

### REHABILITATION BENEFIT RIDER

This Rider applies only to accidents that occur on or after the Effective Date shown above. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this rider.

**Rehabilitation Benefit.** If a Covered Person suffers an accidental loss for which benefits are payable under the Policy, we will reimburse the Covered Person for Covered Rehabilitative Expenses that are due to the Injury causing the loss. The Covered Rehabilitative Expenses must be incurred within two years after the date of the accident causing the loss and will be payable up to a maximum of $2,500 for all injuries caused by the same accident.

**Hospital** means a facility that: (1) is operated according to law for the care and treatment of injured people; (2) has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis; (3) has 24 hour nursing service by registered nurses (R.N.); and (4) is supervised by one or more Doctors. A Hospital does not include: (1) a nursing, convalescent or geriatric unit of a hospital when a patient is confined mainly to receive nursing care; (2) a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged; nor does it include any ward, room, wing, or other section of the hospital that is used for such purposes; or (3) any military or veterans hospital or soldiers home or any hospital contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces.

**Medically Necessary Rehabilitative Training Service** - as used in this Rider, means any medical service, medical supply, medical treatment or Hospital confinement (or part of a Hospital confinement) that: (1) is essential for physical rehabilitative training due to the Injury for which it is prescribed or performed; (2) meets generally accepted standards of medical practice; and (3) is ordered by a Doctor.

**Doctor** means a licensed physician practicing within the scope of his or her license and rendering care and treatment that is appropriate for the condition and locality. The term does not include a Covered Person, spouse, immediate family (including parents, children, siblings, or spouses of any of the foregoing, whether the relationship derives from blood or marriage), or a person living in the Covered Person's household.

**Covered Rehabilitative Expense(s)** means an expense that: (1) is charged for a Medically Necessary Rehabilitative Training Service of the Covered Person performed under the care, supervision or order of a Doctor; (2) does not exceed the usual level of charges for similar treatment, supplies or services in the locality where the expense is incurred (for a Hospital room and board charge, does not exceed the most common charge for Hospital semi-private room and board in the Hospital where the expense is incurred); and (3) does not include charges that would not have been made if no insurance existed.

TL-007010                           22

TempleInland/Cleiland 194

**Rehabilitation Rider (Continued)**

**Exclusions.**   In addition to the Exclusions in the General Exclusions section of the Policy, Covered Rehabilitative Expenses do not include any expenses for, or resulting from, any condition for which the Covered Person is entitled to benefits under  (1) any Workers' Compensation Act or similar law; or (2) the Accident Medical Expense Benefit Rider.

All other terms and conditions of the Policy and Certificate shall remain unchanged.

<div align="center">

**LIFE INSURANCE COMPANY OF NORTH AMERICA**

John K. Leonard, President

</div>

TempleInland/Cleiland 195

## PAYMENT OF CLAIMS

**Claim Procedures: Notice of Claim**--If any covered loss occurs or begins, you must send us written notice within 30 days, or as soon after that as is reasonably possible. This notice should state your name and the policy number. This notice should be sent to us at our home office, at the address shown on the ABL-670620 cover page, or to an agent authorized by us. We will then send you claim forms.

**Claim Procedures: Proof Of Loss**--The claim forms must be sent back to us no more than 90 days after a covered loss occurs or ends, or as soon after that as is reasonably possible. If we have not provided claim forms within 15 days after the notice of claim, you should send us other proof of loss by the date claim forms would be due. This proof of loss should include written proof of the occurrence, type and amount of loss.

**Payment Of Claims: When Paid**--Claims will be paid as soon as we receive due proof of loss. If a claim covers benefits for more than 4 weeks, we will pay all amounts due at the end of each 4 weeks. If there are any benefits due at the end of the period claimed, we will pay them as soon as we receive due proof of loss.

**Payment Of Claims: Accidental Death Benefits**--Benefits paid on account of your death will be paid to the beneficiary you have chosen. This choice must be in writing and filed with us; or filed with the Policyholder, if we have agreed in advance.

If you have not chosen a beneficiary, or if there is no beneficiary alive when you die, we will pay this benefit:

1) to your spouse, if living.
2) If not, in equal shares to your living children.
3) If there are none, in equal shares to your living parents.
4) If there are none, in equal shares to your living brothers and sisters.
5) If there are none, to your estate.

Instead of a lump sum payment, you (while you are living) or your beneficiary (after your death) may choose installment payments from one of the settlement options we are then offering.

**Payment Of Claims: Other Benefits**--All other benefits will be paid to you, if you are living. If not, we will pay your beneficiary or your estate.

**Selection Or Change Of Beneficiary; Assignment**--You have the right to select or change the beneficiary. You do not need the consent of the beneficiary to make such a change, to assign your rights or benefits, or to change your coverage. We will not be bound by an assignment, or by a selection or change of beneficiary, until we receive a signed copy of it. We are not responsible for its validity or sufficiency.

24

## GENERAL PROVISIONS

**Entire Contract; Changes**--The policy (including the endorsements and attached papers) is the entire contract. The Policyholder's application, and the applications of persons for coverage (if any), are not a part of the policy; we may not use any statement contained in them to contest this policy or deny a claim. No change in the policy is valid unless it has been approved by one of our executive officers. This approval must be attached to or endorsed on the policy. No agent may change the policy or waive any provision.

**Termination Of The Policy**--The Policyholder may terminate this policy at any time on or after the first anniversary of its effective date, by sending us written notice. The policy will be terminated on the date that we receive their notice, or later if so specified by the Policyholder. We will return pro rata the unearned portion (if any) of the premiums that were paid.

We may terminate this policy as of any anniversary of its effective date, by sending the Policyholder at least 31 days written notice to their most recent address in our records. This policy will also be terminated if renewal premiums are not paid by the end of the 31 day grace period (see page 4).

Termination will not affect a claim for a loss which occurs while this policy is in force.

**Premiums Subject To Change**--We may change the premium rates as follows:
   a)    When a class of persons is made eligible or not eligible; or
   b)    When it is required by the experience of the risk, or by a change in our tables of rates for a
          risk. In this case, a rate change will go into effect on the next policy anniversary.

We may only change premium rates if we give the Policyholder at least 31 days written notice.

**Physical Examinations And Autopsy**--At our expense, we may have a person claiming benefits examined as often as reasonably necessary while a claim is pending. We may also make an autopsy in case of death where it is not forbidden by law.

**Legal Actions**--No one may sue for benefits less than 60 days after due proof of loss is submitted, nor more than 3 years (Kansas:  5 years; South Carolina:  6 years) after the date claim forms are due.

**Conformity With State Law**--If any part of this policy conflicts with the law of the state of delivery on the date that the policy goes into effect, then this policy is amended to meet the minimum requirements of such law.

**Records Maintained; Examination And Audit**--The Policyholder or the agent shall keep records showing the essential facts of each person's coverage. We may examine these records at any time that this policy is in force, within 3 years after this policy is terminated, or later if claims are still pending.

**Not In Lieu Of Workers' Compensation**--The policy is not in lieu of and does not affect requirements for coverage under any Workers' Compensation law.

**Certificates Of Insurance**--If required by state law, we will give the Policyholder or your agent certificates of insurance. These will contain the major provisions of this policy, and will state to whom benefits are payable. These shall be issued to all covered persons.

**Examination Of The Policy**--The policy shall be available for inspection by all covered persons during business hours at the Policyholder's office or the office of the administrator.

25

TempleInland/Cleland 197

**SUPPLEMENTAL INFORMATION**
for

**Temple-Inland Health and Welfare Benefits Plan**

**required by the Employee Retirement
Income Security Act of 1974**

As a Plan participant in Temple-Inland's Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

**IMPORTANT INFORMATION ABOUT THE PLAN**

- The Plan is established and maintained by Temple-Inland Forest Products Corporation.

- The Employer Identification Number (EIN) is 75-1462427.

- The Plan Number is 530.

- The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, ABL-670620, issued by LIFE INSURANCE COMPANY OF NORTH AMERICA.

- The Plan Administrator is:     Temple-Inland Inc. Benefits Administration Committee
  303 S. Temple Drive, P.O. Drawer N
  Diboll, TX 75941

  The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy. (Your rights upon termination or amendment of the Plan are set forth in your Certificate.)

- The agent for service of legal process is the Plan Administrator.

- The Plan of benefits is financed by the Employer.

- The date of the end of the Plan Year is December 31.

**YOUR RIGHTS AS SET FORTH BY ERISA**

As a Plan participant, ERISA gives you certain rights and protection. To ensure the protection of these rights, ERISA requires any person or entity who is responsible for the operation of the Plan to administer the Plan in a fiduciary capacity. This means that this person, or entity, must act prudently and with the sole purpose of the Plan participants in mind.

If you request, the Plan Administrator must:

a.   Allow you to examine, without charge, at the Plan Administrator's office, all Plan documents including insurance contracts, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as, annual reports and Plan descriptions.

LM-5B35a                              26

TempleInland/Cleiland 198

b.    Provide you with Plan documents and other Plan information. Any request you make for this information must be in writing to the Plan Administrator. There may be a reasonable charge for the copies.

c.    Provide you with a summary of the Plan's annual financial report. (On certain plans, the law requires the Plan Administrator to provide you with this information.)

Unless there are reasons beyond the Plan Administrator's control, materials you request should be received within 30 days. If you do not receive these materials within that time, you may file suit in a federal court. The court may require the Plan Administrator to pay you up to $110 for each day the material is delayed.

No one, not even your employer, may fire you or discriminate against you in order to prevent you from obtaining a benefit or exercising the rights you have under ERISA.

You may file suit in a federal or state court if any of the following situations arise:

a.    You believe you have been improperly denied a benefit, in whole, or in part.
b.    You believe the Plan fiduciaries are misusing Plan funds.
c.    You believe you have been discriminated against for asserting your rights. (In this case, you may file suit in court or request assistance from the U.S. Department of Labor.)

The court will decide who should pay court costs and legal fees. If you win your case, the court may order the person you have sued to pay the costs and fees. However, if you lose, or if the court finds that your suit is frivolous, you may be required to pay the costs and fees.

## WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM

When you are eligible to receive benefits under the Plan, you must request a claim form from the Plan Administrator. All claims you submit must be on the claim form provided by the Insurance Company. You must complete the form according to the directions on the form. If these forms are not available, you must provide a written statement outlining proof and extent of the loss. After you have completed the claim form or written statement, you must submit it to the Insurance Company.

The Insurance Company has 90 days, from the date it receives your notice of claim, to determine whether or not benefits are payable to you in accordance with the terms and provisions of the Policy. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 90 days. You should receive this written notification before the end of the initial 90 day review period.

During the review period, the Insurance Company may require a medical examination of the Insured, at its own expense; or additional information regarding the loss. If a medical examination is required, the Insurance Company will notify you of the date and time of the examination and the physician's name and location. (It is important that you keep any appointments made since rescheduling examinations will delay the claim process.) If additional information is required, the Insurance Company must notify you, in writing, specifying the nature of the information needed and an explanation as to why it is needed.

If your claim is approved, you will receive the appropriate benefit from LIFE INSURANCE COMPANY OF NORTH AMERICA.

TempleInland/Cleiland 199

If your claim is denied, in whole or in part, you must receive written notice from the Insurance Company within the 90 day review period (or within 180 days if the review period was extended). The Insurance Company's written notice must include the following information:

1.   The specific reason(s) the claim was denied.
2.   Specific reference to the Policy provision(s) upon which the denial is based.
3.   A statement informing you of your right to appeal the decision, and an explanation of the appeal procedure, as outlined in "Appeal Procedure for Denied Claims" below.

**Appeal Procedure for Denied Claims**

Whenever a claim is denied, you have the right to appeal the decision. You, or your duly authorized representative, must make a written request for appeal to the Insurance Company within 60 days from the date you receive the denial. If you do not make this request within that time frame, you will have waived your right to appeal.

Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. During the review, you, or your duly authorized representative, have the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. You may also submit issues and comments that you feel might affect the outcome of the review.

The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days. You should receive this written notification before the end of the initial 60 day review period. Once its review is complete, the Insurance Company must notify you, in writing, of the results for the review and indicate the Plan provisions upon which it based its decision.

**WHO YOU SHOULD CONTACT IF YOU HAVE QUESTIONS ABOUT THE PLAN**

If you have any questions about the Plan, contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

TempleInland/Cleiland 200

UNDERWRITTEN BY:
**LIFE INSURANCE COMPANY OF NORTH AMERICA**
a CIGNA Company

Classes 1-3
04/2001



CIGNA Group Insurance
Life ● Accident ● Disability

TempleInland/Cleiland 201

# SECTION IV

# Group Long Term Disability Insurance Certificate

## Policy Number FLK-020104

# TEMPLE INLAND

**LTD0001A**

TempleInland/Cleiland 203

**IMPORTANT INFORMATION ABOUT COVERAGE UNDER
THE TEXAS LIFE, ACCIDENT, HEALTH AND HOSPITAL SERVICE
INSURANCE GUARANTY ASSOCIATION**

Texas law establishes a system, administered by the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association (the "Association"), to protect policyholders if their life or health insurance company fails or cannot meet its contractual obligations.  Only the policyholders of insurance companies which are members of the Association are eligible for this protection.  However, even if a company is a member of the Association, protection is limited and policyholders must meet certain guidelines to qualify. (The law is found in the Texas Insurance Code, Article 21.28-D.)

**BECAUSE OF STATUTORY LIMITATIONS ON POLICYHOLDER PROTECTION, IT IS POSSIBLE THAT THE ASSOCIATION MAY NOT COVER YOUR POLICY OR MAY NOT COVER YOUR POLICY IN FULL.**

**ELIGIBILITY FOR PROTECTION BY THE ASSOCIATION**
When an insurance company which is a member of the Association is designated as impaired by the Texas Commissioner of Insurance, the Association provides coverage to policyholders who are:
- residents of Texas at the time that their insurance company is impaired;
- residents of other states, ONLY if the following conditions are met:
  1) The policyholder has a policy with a company based in Texas;
  2) The company has never held a license in the policyholder's state of residence;
  3) The policyholder's state of residence has a similar guaranty association; and
  4) The policyholder is **not eligible** for coverage by the guaranty association of the policyholder's state of residence.

**LIMITS OF PROTECTION BY THE ASSOCIATION**
Accident, Accident and Health, or Health Insurance:
- up to a total of $200,000 for one or more policies for each individual covered.
Life Insurance
- net cash surrender value up to a total of $100,000 under one or more policies on any one life; or
- death benefits up to a total of $300,000 under one or more policies on any one life.
Individual Annuities:
- net cash surrender amount up to a total of $100,000 under one or more policies owned by one contract holder.
Group Annuities:
- net cash surrender amount up to $100,000 in allocated benefits under one or more policies owned by one contract holder; or
- net cash surrender amount up to $5,000,000 in unallocated benefits under one contract holder regardless of the number of contracts.

**THE INSURANCE COMPANY AND ITS AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE ASSOCIATION FOR THE PURPOSE OF SALES, SOLICITATION, OR INDUCEMENT TO PURCHASE ANY FORM OF INSURANCE.**

**When you are selecting an insurance company, you should not rely on coverage by the Association.**

| | |
|---|---|
| Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association 301 Congress, Suite 500 Austin, Texas 78701 800-982-6362 | Texas Department of Insurance P.O. Box 149104 Austin, Texas 78714-9104 800-252-3439 |

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call the Life Insurance Company of North America, Group Insurance's toll-free telephone number for information or to make a complaint at:

**1-800-441-1832**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the
Texas Department of Insurance
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

TL-004426

**AVISO IMPORTANTE**

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis del Life Insurance Company of North America, Group Insurance Division para informacion o para someter una queja al:

**1-800-441-1832**

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de
Seguros de Texas
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

## FOREWORD

Disability insurance provides individuals and their families with financial protection. The Disability Insurance Benefit described in this booklet will help secure your family's financial security in the event of your disability.

The need for disability insurance protection depends on individual circumstances and financial situations. A portion of the cost of this coverage is provided by your Employer. You may need to contribute to the remaining cost of coverage through payroll deduction so that your benefit program is more comprehensive and responsive to your needs.

The following pages describe the main provisions of the disability insurance plan available to you.

Insurance benefits described in the following pages will apply to you if your Employer has made this coverage available to you at no cost or you have elected the benefit and authorized payroll deduction for the required premium.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 CHESTNUT STREET
PHILADELPHIA, PA  19192-2235
(215) 761-1000
**A STOCK INSURANCE COMPANY**

**GROUP INSURANCE
CERTIFICATE**

We the Life Insurance Company of North America, have issued a Group Policy, FLK-020104, to Temple-Inland Forest Products Corporation.

We certify that we insure all eligible persons who are enrolled according to the terms of the Policy and for whom the required premium is paid.

This Certificate describes the benefits and basic provisions of your coverage.  Please read it with care so you understand your coverage.

This is not the insurance contract.  It does not waive or alter any terms of the Policy.  If questions arise, the Policy governs.  You may examine the Policy at the office of the Policyholder or the Administrator.

This Certificate replaces any and all Certificates which may have been issued to you in the past under the Policy.

John K. Leonard, President

TL-004704

## TABLE OF CONTENTS

WHO IS ELIGIBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

WHEN COVERAGE BEGINS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

WHEN COVERAGE ENDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

WHEN COVERAGE CONTINUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

SCHEDULE OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

WHAT IS COVERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

WHAT IS NOT COVERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

CLAIM PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

ADMINISTRATIVE PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

SUPPLEMENTAL INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

TempleInland/Cleiland 208

# EXHIBIT A
# PART 5

## WHO IS ELIGIBLE

If you qualify under the Class Definition shown in the Schedule of Benefits you are eligible for coverage under the Policy on the Policy Effective Date, or the day after you complete the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. Your Eligibility Waiting Period will be extended by the number of days you are not in Active Service.

Except as noted in the Reinstatement Provision, if you terminate your coverage and later wish to reapply, or if you are a former Employee who is rehired, you must satisfy a new Eligibility Waiting Period. You are not required to satisfy a new Eligibility Waiting Period if your insurance ends because you no longer qualify under your Class Definition, but you continue to be employed, and within one year you qualify again.

TL-004710

## WHEN COVERAGE BEGINS

You will be insured on the date you become eligible, if you are not required to contribute to the cost of this insurance.

If you are required to contribute to the cost of your insurance you may elect to be insured only by authorizing payroll deduction in a form approved by the Employer and us. The effective date of your insurance depends on the date coverage is elected.

If you elect coverage within 31 days after you become eligible, during an Annual Enrollment Period, or within 31 days after a permitted Life Status Change, your insurance is effective on the latest of the following dates.
1.    The Policy Effective Date.
2.    The date you authorized payroll deduction.
3.    The date the completed enrollment form is received by the Employer or us.
4.    The effective date determined by the Employer's benefit plan.

If your enrollment form is received more than 60 days after you are eligible for insurance, you must satisfy the Insurability Requirement before your insurance is effective. If approved, your insurance is effective on the date we agree in writing to insure you.

If you are not actively at work on the date your insurance would otherwise be effective, it will be effective on the date you return to any occupation for your Employer on a Full-time basis.

TL-004712

## WHEN COVERAGE ENDS

Your coverage will end on the earliest of the following dates.
1.    The date you are eligible for coverage under a plan intended to replace this coverage.
2.    The date the Policy is terminated by us.
3.    The end of the month following the date you are no longer eligible.
4.    The day after the end of the period for which premiums are paid.
5.    The date you are no longer in Active Service.

TL-004714

1

## WHEN COVERAGE CONTINUES

Your insurance will continue if your Active Service ends because of a Disability for which benefits under the Policy are or may become payable.  Your premiums will be waived while Disability Benefits are payable.  If you do not return to Active Service, this insurance ends when your Disability ends or when benefits are no longer payable, if earlier.

If your Active Service ends due to an Employer approved unpaid family medical leave of absence, your insurance will continue for up to 12 weeks if the required premium is paid.  If your Active Service ends due to an Employer approved unpaid leave of absence or layoff, excluding family medical leave, your insurance will continue for the period specified by your Employer, if any, not to exceed 6 months if the required premium is paid.

If your insurance continues and you become Disabled during the leave of absence or layoff, Disability Benefits will not begin until you satisfy your Benefit Waiting Period, or the date you are scheduled to return to Active Service, if later.

TL-004716

2

**SCHEDULE OF BENEFITS**

**Class Definition**

You are eligible for insurance if you are a member of the class defined below.

All active, Full-time and part-time salaried, commissioned I, II, and III Employees and designated non-union hourly Employees (Streetsboro, Crawfordsville, Lexington Box, Harrington, Maysville and Ontario Mill locations) of the Employer who are a participant in the Temple-Inland Benefit Solutions Plan and who are regularly scheduled to work a minimum of 20 hours or more per week.

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:   None.

For Employees hired after the Policy Effective Date:

- Each Full-time salaried exempt Employee, commission II Employee, commission III Employee, and each part-time salaried exempt Employee who is a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

- Each Full-time salaried non-exempt Employee who is not a Financial Services Employee shall be eligible to participate in the Plan on the first day he becomes an Employee, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.

- Each Full-time or part-time salaried non-exempt Employee who is a Financial Services Employee and each non-union hourly Employee at certain designated locations, part-time salaried Employee (who is not a Financial Services Employee), or commission I Employee shall be eligible to participate in the Plan upon the first day of the month coinciding with or following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.  For this group, the Waiting Period is defined as follows:

    For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee.  For all other Employees, Waiting Period means 31 days of Active Service from an Employee's most recent date of hire as an Employee.

**Definition of Disability**

You are Disabled if, solely because of Injury or Sickness, you are earning 80% or less of your Indexed
Covered Earnings.

Or, you are Disabled if, because of Injury or Sickness, you are unable to perform all the material duties of
your regular occupation.

After Disability Benefits have been payable for 24 months, you are Disabled if, because of Injury or
Sickness, you are unable to perform all the material duties of any occupation for which you may reasonably
become qualified based on education, training or experience, or solely due to Injury or Sickness, you are
unable to earn more than 80% of your Indexed Covered Earnings.

**Definition of Covered Earnings**

**Covered Earnings is defined as:**

a.    For All Purposes: For all purposes under the Temple-Inland Benefit Solutions Plan, "Covered
      Earnings" includes only compensation paid to you by your Employer for services performed by you
      for your Employer as reflected on your Employer's payroll system which meets all the definitions
      set forth in this subparagraph a. and the applicable subparagraphs b. or c. below. "Covered
      Earnings" does not include any amounts that are not paid through your Employer's payroll system
      (including, but not limited to, benefits such as insured disability pay).

      "Covered Earnings" includes your base pay prior to any reduction for elective deferrals (within the
      meaning of Section 402(g)(3) of the Code) or any salary reduction contributions under the Temple-
      Inland Benefit Solutions Plan.  For commission I Employees, commission II Employees, and
      commission III Employees, "Covered Earnings" includes commissions actually paid, but excludes
      commissions that have not yet been paid (whether or not they have been earned, have accrued, or
      are otherwise payable at the time of the calculation).  For all other Employees, "Covered Earnings"
      excludes commissions.

      "Covered Earnings" excludes all other compensation, including, but not limited to, insured
      disability pay, imputed income, overtime, bonuses, excess credits under a cafeteria plan, incentive
      or restricted stock, compensation in lieu of dividends, stock options, performance units, shift
      differentials, premium pay, severance pay, non-cash compensation, allowances, fringe benefits
      (cash and noncash), moving expenses, welfare benefits, deferred compensation, amounts paid by
      your Employer to you on behalf of an entity that is not a member of your Employer's controlled
      group of corporations for services rendered by you on behalf of such entity, and such other
      payments or income as may be designated by the Company.

b.    For Costs and Credits: For purposes of determining Costs and Credits, your "Covered Earnings" is
      your "Covered Earnings" in effect at the time the Solutions enrollment data is produced as
      determined below:

      i.    For a salaried Employee, "Covered Earnings" is your annual base salary for a Full-time
            Employee or 0.5 times the annual base salary for a part-time Employee, regardless of the
            number of hours regularly worked.

      ii.   For an hourly Employee, "Covered Earnings" is your base hourly rate multiplied by 2,080
            hours for a Full-time Employee or 1,040 hours for a part-time Employee, regardless of the
            number of hours regularly worked.

4

iii.    For newly hired commission I Employees, commission II Employees, and commission III Employees, "Covered Earnings" is the greater of:

    (1)    base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable), or

    (2)    $20,000

iv.    For all other commission I Employees, commission II Employees, and commission III Employees, "Covered Earnings" is determined by:

    (1)    adding your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable, but using only amounts actually paid), and commissions paid from January 1 through the time the Solutions enrollment data is produced, and then

    (2)    annualizing that amount based on a full 12-month year.

v.    For Employees hired after the Solutions enrollment data is produced or Employees who have a change in pay or change in status after the Solutions enrollment data is produced, "Covered Earnings" will be determined as of the date of hire or the date of change in pay or change in status, respectively; provided, however, that the Plan Administrator may elect in his sole discretion to use the "frozen pay" determined at the time the Solutions enrollment data is produced to determine Costs and Credits for commission I Employees, commission II Employees, and commission III Employees.

c.    <u>For Benefit Payments</u>: For the purpose of determining the amount of a benefit to be paid, your "Covered Earnings" in effect on the date of the event for which the claim is paid will be used, as determined below:

i.    For a Full-time salaried Employee, "Covered Earnings" is your annual base salary. For a part-time salaried Employee, "Covered Earnings" is your annual base salary for the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

ii.    For an hourly Employee, "Covered Earnings" is your base hourly rate multiplied by the number of hours you are regularly scheduled to work, up to a maximum of 2,080 hours.

iii.    For commission I Employees, commission II Employees, and commission III Employees, "Covered Earnings" is the greater of:

    (1)    your base pay, if any (as determined above for a salaried Employee or an hourly Employee, whichever is applicable) and commissions actually paid during the twelve months prior to the date of the event for which the claim is paid (or, if you have been employed for less than twelve months, an annualized amount based on commissions actually paid during such shorter period), or

    (2)    $20,000.

iv.    Not withstanding the above, if the underlying Benefit Plan under which the claim is to be paid has a different definition of pay for purposes of calculating benefits thereunder, such Benefit Plan's definition shall govern.

TempleInland/Cleiland 213

**Benefit Waiting Period**

The Benefit Waiting Period is the period of time you must be continuously Disabled before Disability
Benefits may be payable.

| | |
|---|---|
| **Benefit Waiting Period** | 180 days |

A period of Disability is continuous even if you can return to Active Service for up to 30 days during the
Benefit Waiting Period. The length of the Benefit Waiting Period will not be extended by the number of
days you can return to Active Service.

**Amounts of Insurance**

**Disability Benefits**

| | |
|---|---|
| Option 1 (tax free premiums) | The lesser of 60% of your monthly Covered Earnings rounded to the nearer dollar or $2,500, reduced by any Other Income Benefits. |
| Option 2 (after tax premiums) | The lesser of 60% of your monthly Covered Earnings rounded to the nearer dollar or $2,500, reduced by any Other Income Benefits. |
| Option 3 (tax free premiums) | The lesser of 60% of your monthly Covered Earnings rounded to the nearer dollar or $7,500, reduced by any Other Income Benefits. |
| Option 4 (after tax premiums) | The lesser of 60% of your monthly Covered Earnings rounded to the nearer dollar or $7,500, reduced by any Other Income Benefits. |

*Decreases in Coverage Amount*

You may elect a decrease in your benefit amount at future annual enrollments or within 31 days after a
permitted Life Status Change by signing a change form. The lesser benefit amount will be effective on the
date the completed change form is received by your Employer or by us.

*Increases in Coverage Amount*

During an Annual Enrollment Period, you may elect an increased benefit amount up to the Maximum
Benefit Amount. If you request an increased benefit amount after the Annual Enrollment Period, your
request will not be considered for eligibility until the following Annual Enrollment Period. If you initially
declined coverage for the higher benefits of Options 3 or 4, you may elect these Options at Annual
Enrollment Period or upon a permitted Life Status Change event.

If you are not actively at work on the date an increased benefit amount would otherwise be effective, you
will become insured for the increase on the date you return to work at your regular occupation for the
Employer on a Full-time basis.

*Limit on Increases or Decreases*

We reserve the right to limit or deny the amounts of insurance available to individuals who do not meet our
underwriting requirements or where limited by law.

6

*Work Incentive Benefits*

For the first 12 months you return to work, the Disability Benefit is as figured above. If for any month during this period, the sum of your Disability Benefit, current earnings and any additional Other Income Benefits exceeds 100% of your Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

After the first 12 months you return to work, the Disability Benefit is as figured above, reduced by 50% of your current earnings received during any month you return to work. If the sum of your Disability Benefit, current earnings and any additional Other Income Benefits exceeds 80% of your monthly Indexed Covered Earnings, the Disability Benefit will be reduced by the excess amount.

No Disability Benefits will be paid if we determine you are able to work under a Transitional Work Arrangement or other modified work arrangement and you refuse to do so.

Current earnings include any wage or salary for work performed while Disability Benefits are payable. If you are working for another employer on a regular basis when Disability begins, current earnings will include any increase in the amount you earn from this work during the period for which Disability Benefits are payable.

**Minimum Monthly Benefit**        $50

We will pay the Minimum Benefit regardless of any reductions made for Other Income Benefits. However, if there is an overpayment due, this benefit may be reduced to recover the overpayment.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that you receive on your own behalf or for your dependents, or which your dependents receive because of your entitlement to Other Income Benefits.

**Additional Benefits**

*Rehabilitation During Disability*
        Please refer to the Description of Benefits for an explanation of this benefit.

*Reasonable Accommodation Benefit*
        Please refer to the Description of Benefits for an explanation of this benefit.

*Specified Loss Benefits*
        Time Period for Accident   90 days

Table for Accidental Loss

| Loss | Benefit Period |
|---|---|
| Both hands or feet, the entire sight in both eyes, hearing in both ears, speech, one hand and one foot, one hand or foot and the entire sight of one eye | 46 Months |
| One arm or leg | 35 Months |
| One hand or foot | 23 Months |

TempleInland/Cleiland 215

| | |
|---|---|
| The entire sight in one eye or hearing in one ear | 15 Months |
| Loss of thumb and index finger of either hand | 12 Months |

The loss of a hand or foot means the complete severance through or above the wrist or ankle joint. The loss of an arm or leg means complete severance through or above the elbow or knee joint. The loss of a thumb and index finger means complete severance through or above the metacarpophalangeal joints (the joints between the fingers and the hand). "Severance" means complete separation and dismemberment of the limb from the body. The loss of sight, speech or hearing means total and irrecoverable loss of the function.

If more than one loss results from an Accident, we will pay for the longest benefit period of the losses incurred.

*Survivor Benefit*

| | |
|---|---|
| Benefit Waiting Period | After 6 Disability Benefits are payable. |
| Amount of Benefit | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits. |

8

**Maximum Benefit Period**

*For Monthly Benefits*

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | Your 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

TL-004774

## DESCRIPTION OF BENEFITS
## WHAT IS COVERED

**Disability Benefits**

If you become Disabled, as we define the term in your Schedule of Benefits, while you are covered under the Policy, we will pay you Disability Benefits. After you are Disabled, you must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician.  Also, we ask you to provide us with satisfactory proof of your Disability, at your expense, before benefits will be paid.

We will require continued proof of your Disability be provided at your expense for benefits to continue.

**Benefit Waiting Period**

The Benefit Waiting Period is the period of time you must be continuously Disabled before Disability Benefits may be payable.  Your Benefit Waiting Period is shown in the Schedule of Benefits.

We will not require you to satisfy the Benefit Waiting Period if benefits were payable to you under a Prior Plan on the Policy Effective Date and you return to Active Service within 6 months after this date.  Your return to Active Service must be for more than 14 consecutive days but less than 6 months.  Your later period of Disability must be caused by the same or related causes for your Benefit Waiting Period to be waived.

**Termination of Your Disability Benefits**

Disability Benefits will end on the earliest of the following dates.
1. The date you earn more than 80% of your Indexed Covered Earnings
2. The date we determine you are not Disabled
3. The end of the Maximum Benefit Period
4. The date you die
5. The date you refuse to participate in rehabilitation efforts as required by us
6. The date you are no longer receiving Appropriate Care

9

TempleInland/Cleiland 217

**Successive Periods of Disability**

Once you are eligible to receive Disability Benefits under the Policy, separate periods of Disability resulting from the same or related causes are a continuous period of Disability unless you can return to Active Service for 6 or more consecutive months.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes, or your later Disability occurs after your coverage under the Policy ends.

The Successive Periods of Disability provision will not apply if you are eligible for coverage under a plan that replaces the Policy.

**Mental Illness, Alcoholism and Drug Abuse Limitation**

We will pay Monthly Benefits on a limited basis for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 Monthly Benefits have been paid, no further benefits will be payable for any of these conditions.

1.    Alcoholism
2.    Anxiety Disorders
3.    Delusional (paranoid) disorders
4.    Depressive disorders
5.    Drug addiction or abuse
6.    Eating disorders
7.    Mental Illness
8.    Somatoform disorders (psychosomatic illness)

If you are confined in a hospital for more than 14 consecutive days before reaching your lifetime maximum benefit, any Disability Benefits payable during that confinement will not count against your lifetime maximum benefit. Your confinement must be for the Appropriate Care or treatment of any of the conditions listed above.

**Pre-Existing Condition Limitation**

We will not pay Disability Benefits if your Disability is caused or contributed to by, or results from, a Pre-Existing Condition. A "pre-existing condition" is any Injury or Sickness for which you incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a physician within 3 months before your most recent effective date of insurance.

The Pre-Existing Condition Limitation will apply to any added benefits or increases in benefits. It will not apply to a period of Disability that begins after you are in Active Service for at least 12 months after your most recent effective date of insurance, or the effective date of any added or increased benefits.

We will not apply the Pre-Existing Condition Limitation to your Disability if you were covered under your Employer's Prior Plan and satisfied the pre-existing condition of that plan. This is true only for the amount of benefit covered under that Prior Plan. If you were covered under your Employer's Prior Plan, but did not fully satisfy the pre-existing condition limitation of that plan, we will credit you for any time you did satisfy.

Time will not be credited toward this limitation for any day you are not actively at work due to your Injury or Sickness. We will extend the limitation by the number of days you are not actively at work due to your Injury or Sickness.

TempleInland/Cleiland 218

**Disability Benefit Calculation**

Your Disability Benefit for any month Disability Benefits are payable to you is shown-in the Amounts of Insurance section of the Schedule of Benefits. We base our calculation of Monthly Benefits on a 30 day period. Benefits will be prorated if payable for any period less than a month.

**Work Incentive Benefit**

If Work Incentive Benefits apply to you, you may return to work while you are Disabled and continue to receive Disability Benefits. The conditions under which you may return to work and the amount of your benefit, if any, is shown in the Schedule of Benefits.

We will review your status and will require satisfactory proof of your earnings and continued Disability.

**Other Income Benefits**

While you are Disabled, you may be eligible to receive benefits from other income sources. If so, we may reduce the Disability Benefits payable to you under the Policy by all, or a portion of, the amount of these other income benefits. The extent to which Other Income Benefits will reduce your Disability Benefits is shown in the Amounts of Insurance section of the Schedule of Benefits.

Other Income Benefits include:
1.     any amounts you or your dependents, if applicable, receive (or are assumed to receive\*) under:
   a.     the Canada and Quebec Pension Plans;
   b.     the Railroad Retirement Act;
   c.     any local, state, provincial or federal government disability or retirement plan or law;
   d.     any sick leave or salary continuation plan of your Employer;
   e.     any work loss provision in "No-Fault" auto insurance;
   f.     any Disability Benefits received from the Veterans' Administration;
   g.     any Workers' Compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.

2.     any Social Security disability or retirement benefits you or any third party receive (or are assumed to receive\*) either on your own behalf or for dependents; or, if applicable, which your dependents receive (or are assumed to receive\*) because of your entitlement to such benefits.

3.     any retirement plan benefits funded by your Employer. "Retirement plan" means any defined benefit or defined contribution plan sponsored or funded by your Employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or any Employee contributions under a 401(k) plan or any Employer match thereon.

4.     any proceeds payable under any group insurance or similar plan. If there is other insurance that applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, we will pay our pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.

11

5.     any wage or salary for work performed. If Work Incentive Benefits apply to you, we will only reduce your Disability Benefits to the extent provided under your Work Incentive Benefit.

Dependents include any person who receives (or is assumed to receive*) benefits under any applicable law on account of your entitlement to benefits. *See the Assumed Receipt of Benefits provision.

*Increases in Other Income Benefits*

After we make the first deduction for any Other Income Benefit (except wage or salary), we will not reduce your Disability Benefits further during that period of Disability due to any cost of living increase in the Other Income Benefit.

*Lump Sum Payments*

We will prorate over the period for which the sum is given any Other Income Benefits or earnings that are paid in a lump sum. If the period for which the sum is given is not stated, the lump sum will be prorated over a five year period.

If no specific allocation of a lump sum payment is made, we will assume the total payment is an Other Income Benefit.

*Assumed Receipt of Benefits*

We will assume you or your dependents, if applicable, are receiving Other Income Benefits if you may be eligible for them. We will estimate the amount of these assumed benefits on the basis of what you may be eligible to receive and reduce your Disability Benefits as if you actually received them.

Except for any wage or salary for work performed while Disability Benefits are payable, we will not assume your receipt of Other Income Benefits if you give us proof of the following events.

1.     Application was made for these benefits.
2.     Reimbursement Agreement is signed by you.
3.     Any and all appeals were made for these benefits, or we have determined further appeals will not be successful.
4.     Payments were denied.

We will not assume you have received, nor will we reduce your Disability Benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until you actually receive them.

*Social Security Assistance*

We will, at our own discretion, assist you in applying for Social Security Disability Income (SSDI) benefits. Disability Benefits will not be reduced by your assumed receipt of SSDI benefits while you participate in the Social Security Assistance Program.

We may require you to file an appeal if we believe a reversal of a prior decision is possible. If you refuse to participate in, or cooperate with, the Social Security Assistance Program, we will assume receipt of SSDI benefits until you give us proof that you have exhausted all the administrative remedies available to you.

TempleInland/Cleiland 220

**Recovery of Overpayment**

If we overpay your benefits, we have the right to recover the amount overpaid by either requesting you to pay the overpaid amount in a lump sum or by reducing any amounts payable to you by the amount due. If there is an overpayment due when you die, we will reduce any benefits payable under the Policy to recover the overpayment.

TL-004771

# ADDITIONAL BENEFITS

### Rehabilitation During A Period of Disability

If, while you are Disabled, we determine that you are a suitable candidate for rehabilitation you may participate in a Rehabilitation Plan. The terms and conditions of the Rehabilitation Plan must be mutually agreed upon by you and us.

We may require you to participate in a rehabilitation assessment or a Rehabilitation Plan at our expense. We will work with you, your Employer and your Physician and others, as appropriate, to develop a Rehabilitation Plan. If you refuse to participate in the rehabilitation efforts, Disability Benefits will not be payable.

The Rehabilitation Plan may, at our discretion, allow for payment of your medical expense, education expense, moving expense, accommodation expense or family care expense while you participate in the program.

A "Rehabilitation Plan" is a written agreement between you and us in which we agree to provide, arrange or authorize vocational or physical rehabilitation services.

### Reasonable Accommodation Benefit

If you are Disabled, we may reimburse your Employer for expenses incurred in making a Reasonable Accommodation. To be eligible for this benefit, the Reasonable Accommodation must meet the following conditions.
1.    It must be made on your behalf and result in your ability to return to any occupation for your Employer.
2.    It must be approved by us in writing before it is implemented or any expense is incurred.
3.    It must meet federal standards of a Reasonable Accommodation as detailed in the Americans with Disabilities Act of 1990 and any later amendments.

"Reasonable Accommodation" means any modification or adjustment to a job, an employment practice, or the work environment that makes it possible for a person with a disability to perform the material duties of any occupation without causing undue hardship to the Employer.

TL-005107

### Spouse Rehabilitation Benefit

While you are Disabled, your Spouse may, our option, be eligible to participate in a Rehabilitation Plan. To be eligible, the following conditions must be met.
1.    You must be continuously Disabled for 12 months
2.    Your Spouse's earnings must be 60% or less than your Covered Earnings
3.    Your Spouse must be determined by us to be a suitable candidate for re-employment.

13

Your Spouse's Rehabilitation Plan may include, at our discretion, payment of your Spouse's education expenses, reasonable job placement expenses and moving expenses. It may also include family care expenses if necessary for your Spouse to be retrained under the Rehabilitation Plan.

Disability Benefits will be reduced by 50% of your Spouse's earnings from Rehabilitative Work. If your Spouse was working before your Rehabilitation Plan begins, Disability Benefits will be reduced by 50% of the increase in income that results from your Spouse's participation in the program.

"Spouse" means your lawful spouse living with you on the date your Disability begins. The Rehabilitation Plan will end if your Spouse is not living with you during the term of the agreement.

TL-005105

## Specified Loss Benefit

If you are in an Accident and suffer a loss shown in the Table for Accidental Loss under the Amounts Of Insurance section of your Schedule of Benefits, we will pay Disability Benefits for the time specified in the Table. However, for you to be eligible for benefits, the following conditions must be met.
1.    Your loss must occur within the Time Period for Accident specified in the Schedule of Benefits.
2.    The Accident must be the sole cause of your loss.
3.    The Accident and the resulting loss must occur while your coverage under the Policy is effective.
4.    Your Benefit Waiting Period must be satisfied.

If you die within the Time Period for an Accident, we will pay benefits for the period of time between the date Monthly Benefits are first payable and the date you die. If you die after this time, but before the end of the Guaranteed Benefit Period specified in the Table, we will pay the rest of your Monthly Benefits in a lump sum.

"Accident" means a sudden, unforeseeable external event that causes you bodily injury.

TL-005108

## Survivor Benefit

We will pay a Survivor Benefit if you die while Monthly Benefits are payable to you. You must have been continuously Disabled for the Survivor Benefit Waiting Period shown in the Schedule of Benefits before we will pay this benefit. These benefits will be payable for the Maximum Benefit Period for Survivor Benefits shown in the Schedule of Benefits.

We will pay the Survivor Benefit to your Spouse. If you do not have a Spouse, we will pay your surviving Children in equal shares. If you do not have a Spouse or any Children, we will pay your estate.

"Spouse" means your lawful spouse. "Children" means your unmarried children under age 21 who are chiefly dependent upon you for support and maintenance.

TL-005109

14

**WHAT IS NOT COVERED**

We will not pay Disability Benefits for a Disability that results, directly or indirectly, from any of the following events.

1. attempted suicide, or whenever you injure yourself on purpose.
2. war or any act of war, whether or not declared.
3. serving on full-time active duty in any armed forces. If you send proof of military service, we will refund the portion of the premium paid to cover you during a period of such service.
4. terrorism or active participation in a riot.
5. commission of a felony.
6. the revocation, restriction or non-renewal of your license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Sickness otherwise covered by the Policy.
7. incarceration in a penal or corrections institution.

We will not pay Disability Benefits for any period of Disability during which you do any of the following.

1. refuse to participate in rehabilitation efforts as required by the us.
2. are not receiving Appropriate Care.
3. refuse to participate in a Transitional Work Arrangement or other modified work arrangement. These work arrangements mean any work offered to you by your Employer or an affiliated company while you are Disabled and which may be your own or any occupation. The work arrangements include, but are not limited to reassigned duties, work site modification, flexible work arrangements, job adaption or special equipment.
4. fail to cooperate with us in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

TL-004772

**CLAIM PROVISIONS**

**Notice of Claim**

Written notice, or notice by any other electronic or telephonic means authorized by us, must be given to us within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If this notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice, or notice by any other electronic or telephonic means authorized by us, was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Policyholder's name and Policy Number and the claimant's name and address.

**Claim Forms**

When the we receive written notice of a claim, or notice by any other electronic or telephonic means authorized by us, it will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by us, the proof requirements will be met by submitting, within the time required under "Proof of Loss" section, written proof of the nature and extent of the loss.

**Claimant Cooperation Provision**

If you fail to cooperate with us in our administration of your claim, we may terminate the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

15

TempleInland/Cleiland 223

**Insurance Data**
Your Employer is required to cooperate with us in the review of claims and applications for insurance. Any information we provide to your Employer in these areas is confidential and may not be used or released by your Employer if not permitted by applicable laws.

**Proof of Loss**
Written proof of loss must be given to us within 90 days after the date of the loss for which a claim is made. If written proof of loss is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof of loss was given as soon as was reasonably possible. In any case, written proof must be given not more than a year after the time it is otherwise required, unless proof is not given solely due to the lack of legal capacity.

You must provide us, within 30 days of a request, with written proof of continued Disability and of regular attendance of a Physician.

**Time of Payment**
Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which we are liable, will be paid at that time.

**To Whom Payable**
Disability Benefits will be paid to you. If any person to whom benefits are payable is a minor or, in our opinion is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, we may, at our option, make payment to the person or institution appearing to have assumed custody and support.

If you die while any Disability Benefits remain unpaid, we may, at our option, make direct payment to any of your following living relatives: spouse, mother and father, natural or adopted children, brothers and sisters; or to the executors or administrators of the Employee's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release us from all liability for any payment made.

**Physical Examination and Autopsy**
We may, at our expense, exercise the right to examine you as often as we may reasonably require. Also, we may, at our expense, require an autopsy unless prohibited by law.

**Legal Actions**
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time written proof of loss must be furnished.

**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which you live when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**
You have the right to choose any Physician who is practicing legally. We will in no way disturb the Physician/patient relationship.

TL-004724

16

## ADMINISTRATIVE PROVISIONS

**Premiums**
Your premiums are based on the rates currently in force, the plan and the amount of insurance in effect. Premiums are due monthly unless we agree with the Policyholder on some other mode of premium payment.

**Your Grace Period**
If your required premium is not paid on the Premium Due Date there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during this grace period, your insurance will end on the last day for which premium was paid.

If benefits are paid during your grace period, we will deduct any overdue premium from the proceeds payable under the Policy.

**Reinstatement of Insurance**
Your insurance may be reinstated if it ends because you are on an unpaid leave of absence or you are rehired within three months of the date of termination of employment and you apply for Reinstatement within 31 days of your return to Active Service.

Your insurance may be reinstated only if reinstatement occurs within 6 months from the date insurance ends due to an Employer approved unpaid leave of absence or on any date in which you return from active duty in the armed forces as defined by the Uniformed Services Employment and Reemployment Act of 1994 (USERRA) if the following conditions are met:
1.    You must be in a Class of Eligible Employees.
2.    The required premium must be paid.
3.    A written request for reinstatement must be received by us within 31 days from the date you return to Active Service.

Reinstated insurance will be effective on the date you return to Active Service. If you did not fully satisfy the Eligibility Waiting Period or the Pre-Existing Condition Limitation before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004722

## GENERAL PROVISIONS

**Incontestability**
All statements made by the Policyholder or by you are representations not warranties. No statement will be used by us to deny or reduce benefits or as a defense to a claim, unless a copy of the writing containing the statement is signed by you and has been given to the you. In the event of your death or legal incapacity, your beneficiary or representative will receive the copy.

The validity of your insurance under the Policy may not be contested using such statements after two years from the effective date of your coverage or from the effective date of any additional or increased benefits.

**Misstatement of Age**
If your age is misstated, we will adjust all benefits to the amounts that would have been purchased for your correct age.

**Workers' Compensation Insurance**
Benefits payable under the Policy are not in lieu of and do not affect any requirements for coverage under any Workers' Compensation Insurance.

17

TempleInland/Cleiland 225

**Assignment of Benefits**

We will not be affected by the assignment of your certificate until the original assignment or a certified copy of the assignment is filed with us. We will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided coverage under the Policy is in effect. Your insurance may not be levied on, attached, garnished, or otherwise taken for your debts. This prohibition does not apply where contrary to law.

**Conformity with State Statutes**

Any provision of the Policy in conflict on the Policy Effective Date with the laws of the state where the Policy is delivered is amended to conform to the minimum requirements of such laws.

**Clerical Error**

Your insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

TL-004728

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**

You are in Active Service on a day which is one of your Employer's scheduled work days if either of the following conditions are met.

1.  You are actively at work. This means you are performing your regular occupation for your Employer on a Full-time basis, either at one of your Employer's usual places of business or at some location to which your Employer's business requires you to travel.
2.  The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

You are in Active Service on a day which is not one of your Employer's scheduled work days only if you were in Active Service on the preceding scheduled work day.

**Annual Enrollment Period**

The period in each calendar year agreed upon by your Employer and us when you may enroll for, or change benefit elections, under the Policy.

**Appropriate Care**

Appropriate Care means the determination of an accurate and medically supported diagnosis of your Disability, or ongoing medical treatment and care of your Disability by a Physician that conforms to generally-accepted medical standards, including frequency of treatment and care.

**Consumer Price Index (CPI-W)**

The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

**Employee**

For eligibility purposes, an Employee is an employee of the Employer who qualifies under the Class Definition. Otherwise, Employee means an employee of the Employer who is covered under the Policy.

18

**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is your agent for transactions relating to this insurance. You should not consider the actions of your Employer to be our actions.

**Full-Time**
Full-time means the number of hours set by your Employer as a regular work day for Employees in your eligible class.

**Indexed Covered Earnings**
For the first 12 months Monthly Benefits are payable, your Indexed Covered Earnings are equal to your Covered Earnings. After 12 Monthly Benefits are payable, your Indexed Covered Earnings are your Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.      10% of your Indexed Covered Earnings during your preceding year of Disability; or
2.      the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**
The term Injury means an accidental loss or bodily harm.

**Insurability Requirement**
You have satisfied the Insurability Requirement on the day we agree in writing to accept you as covered under the Policy. To determine your acceptability for coverage, we will require evidence of good health and may require it be provided at your expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on your certificate cover page. References to the Insurance Company have been changed to 'we', 'our', 'ours' and 'us' throughout this certificate.

**Life Status Change**
A Life Status Change is an event recognized by your Employer's Flexible Benefits Plan as qualifying you to make changes in your benefit selections at a time other than an Annual Enrollment Period.

If the Employer does not sponsor a Flexible Benefits Plan, or if it is no longer in effect, the following events are Life Status Changes.
1.      Marriage
2.      Divorce, annulment or legal separation
3.      Birth or adoption of a child
4.      Death of your spouse
5.      Termination of your spouse's employment
6.      A change in the benefit plan available to your spouse
7.      A change in your or your spouse's employment status that affects either's eligibility for benefits

**Physician**
Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to you that is appropriate for the condition and locality. The term does not include you, your spouse, your immediate family (including parents, children, siblings, or spouses of any of the foregoing, whether the relationship derives from blood or marriage), or a person living in your household.

**Policy Anniversary Date**
The Policy Anniversary Date is January 1, unless changed, this date will be the same date each year for as long as the Policy is in effect.

TempleInland/Cleiland 227

**Policy Effective Date**

This term refers to the date the group policy under which you are covered became effective.  This date is January 1, 1998.

**Prior Plan**

The Prior Plan refers to the plan of insurance providing similar benefits to you, sponsored by the Employer and in effect directly prior to the Policy Effective Date.

**Sickness**

The term Sickness means a physical or mental illness.

TL-004708

20

**TempleInland/Cleiland 228**

**SUPPLEMENTAL INFORMATION**
for

**Temple-Inland Group Disability Plan**

**required by the Employee Retirement
Income Security Act of 1974**

As a Plan participant in Temple-Inland's Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

**IMPORTANT INFORMATION ABOUT THE PLAN**

- The Plan is established and maintained by Temple-Inland Forest Products Corporation.

- The Employer Identification Number (EIN) is 75-1462427.

- The Plan Number is 504.

- The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, FLK-020104, issued by LIFE INSURANCE COMPANY OF NORTH AMERICA.

- The Plan Administrator is:    Temple-Inland Inc. Benefits Administration Committee
303 S. Temple Drive, P.O. Drawer N
Diboll, TX  75941

    The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy. (Your rights upon termination or amendment of the Plan are set forth in your Certificate.)

- The agent for service of legal process is The Plan Administrator.

- The Plan of benefits is financed by the Employer/Employee.

- The date of the end of the Plan Year is December 31.

**YOUR RIGHTS AS SET FORTH BY ERISA**

As a Plan participant, ERISA gives you certain rights and protection. To ensure the protection of these rights, ERISA requires any person or entity who is responsible for the operation of the Plan to administer the Plan in a fiduciary capacity. This means that this person, or entity, must act prudently and with the sole purpose of the Plan participants in mind.

21

If you request, the Plan Administrator must::

a.  Allow you to examine, without charge, at the Plan Administrator's office, all Plan documents including insurance contracts, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as, annual reports and Plan descriptions.

b.  Provide you with Plan documents and other Plan information. Any request you make for this information must be in writing to the Plan Administrator. There may be a reasonable charge for the copies.

c.  Provide you with a summary of the Plan's annual financial report. (On certain plans, the law requires the Plan Administrator to provide you with this information.)

Unless there are reasons beyond the Plan Administrator's control, materials you request should be received within 30 days. If you do not receive these materials within that time, you may file suit in a federal court. The court may require the Plan Administrator to pay you up to $110 for each day the material is delayed.

No one, not even your employer, may fire you or discriminate against you in order to prevent you from obtaining a benefit or exercising the rights you have under ERISA.

You may file suit in a federal or state court if any of the following situations arise:

a.  You believe you have been improperly denied a benefit, in whole, or in part.
b.  You believe the Plan fiduciaries are misusing Plan funds.
c.  You believe you have been discriminated against for asserting your rights. (In this case, you may file suit in court or request assistance from the U.S. Department of Labor.)

The court will decide who should pay court costs and legal fees. If you win your case, the court may order the person you have sued to pay the costs and fees. However, if you lose, or if the court finds that your suit is frivolous, you may be required to pay the costs and fees.

## WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM

When you are eligible to receive benefits under the Plan, you must request a claim form from the Plan Administrator. All claims you submit must be on the claim form provided by the Insurance Company. You must complete the form according to the directions on the form. If these forms are not available, you must provide a written statement outlining proof and extent of the loss. After you have completed the claim form or written statement, you must submit it to the Insurance Company.

The Insurance Company has 90 days, from the date it receives your notice of claim, to determine whether or not benefits are payable to you in accordance with the terms and provisions of the Policy. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 90 days. You should receive this written notification before the end of the initial 90 day review period.

During the review period, the Insurance Company may require a medical examination of the Insured, at its own expense; or additional information regarding the loss. If a medical examination is required, the Insurance Company will notify you of the date and time of the examination and the physician's name and location. (It is important that you keep any appointments made since rescheduling examinations will delay the claim process.) If additional information is required, the Insurance Company must notify you, in writing, specifying the nature of the information needed and an explanation as to why it is needed.

22

TempleInland/Cleiland 230

If your claim is approved, you will receive the appropriate benefit from LIFE INSURANCE COMPANY OF NORTH AMERICA.

If your claim is denied, in whole or in part, you must receive written notice from the Insurance Company within the 90 day review period (or within 180 days if the review period was extended). The Insurance Company's written notice must include the following information:

1.    The specific reason(s) the claim was denied.
2.    Specific reference to the Policy provision(s) upon which the denial is based.
3.    A statement informing you of your right to appeal the decision, and an explanation of the appeal procedure, as outlined in "Appeal Procedure for Denied Claims" below.

**Appeal Procedure for Denied Claims**

Whenever a claim is denied, you have the right to appeal the decision. You, or your duly authorized representative, must make a written request for appeal to the Insurance Company within 60 days from the date you receive the denial. If you do not make this request within that time frame, you will have waived your right to appeal.

Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. During the review, you, or your duly authorized representative, have the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. You may also submit issues and comments that you feel might affect the outcome of the review.

The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision. Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days. You should receive this written notification before the end of the initial 60 day review period. Once its review is complete, the Insurance Company must notify you, in writing, of the results for the review and indicate the Plan provisions upon which it based its decision.

**WHO YOU SHOULD CONTACT IF YOU HAVE QUESTIONS ABOUT THE PLAN**

If you have any questions about the Plan, contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

LM-SB35A

TempleInland/Cleland 231

UNDERWRITTEN BY:
**Life Insurance Company of North America**
a CIGNA Company

Class 1
4/2001



CIGNA Group Insurance
Life ● Accident ● Disability

**TempleInland/Cleiland 232**

# SECTION V

TempleInland/Cleiland 233

SUMMARY PLAN DESCRIPTION

FOR THE

## TEMPLE-INLAND

## SHORT TERM DISABILITY PLAN

(As Amended and Restated Effective January 1, 2000)

**The Short-Term Disability Plan is a self-insured plan funded by Temple-Inland**

IMPORTANT NOTE:  This Summary Plan Description contains a summary of the Plan only.  In the event of any conflict between this Summary and the Plan's full legal plan documents, the full legal plan documents shall control.

# TEMPLE-INLAND

**STD0002A**

TempleInland/Cleiland 234

# TEMPLE-INLAND

## SHORT TERM DISABILITY PLAN

## TABLE OF CONTENTS

ARTICLE I

DEFINITIONS

| | | |
|---|---|---|
| 1.0 | Accident | 1 |
| 1.1 | Active Service | 1 |
| 1.2 | Approved Leave of Absence | 1 |
| 1.3 | Base Hourly Rate | 1 |
| 1.4 | Benefits | 1 |
| 1.5 | Claims Administrator | 1 |
| 1.6 | Code | 1 |
| 1.7 | Collective Bargaining Agreement | 1 |
| 1.8 | Company | 1 |
| 1.9 | Covered Earnings | 1 |
| 1.10 | Current Earnings | 1 |
| 1.11 | Designated Joint Venture | 2 |
| 1.12 | Disabled Person | 2 |
| 1.13 | Disability Plan | 2 |
| 1.14 | Effective Date | 2 |
| 1.15 | Employee | 2 |
| 1.16 | Employer | 2 |
| 1.17 | ERISA | 2 |
| 1.18 | FMLA | 2 |
| 1.19 | FMLA Leave | 2 |
| 1.20 | Full-time Employee | 3 |
| 1.21 | Hourly Employee | 3 |
| 1.22 | Illness | 3 |
| 1.23 | Injury | 3 |
| 1.24 | Medically Necessary | 3 |
| 1.25 | Mental Illness | 3 |
| 1.26 | Notice | 3 |
| 1.27 | Other Income Benefits | 3 |
| 1.28 | Participant | 3 |
| 1.29 | Part-time Employee | 3 |
| 1.30 | Pay Frequency Coding Matrix | 3 |
| 1.31 | Period of Disability | 3 |
| 1.32 | Physician | 3 |
| 1.33 | Plan | 3 |
| 1.34 | Plan Administrator | 3 |
| 1.35 | Plan Year | 4 |
| 1.36 | Retiree | 4 |
| 1.37 | Retirement Plan | 4 |
| 1.38 | Spouse | 4 |
| 1.39 | Totally Disabled or Total Disability | 4 |
| 1.40 | Transactions | 4 |
| 1.41 | Trust | 4 |

TempleInland/Cleiland 235

1.42    Trustee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
1.43    Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
1.44    Waiting Period  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## ARTICLE II

### ELIGIBILITY

2.0    Geographic Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2.1    Hourly Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2.2    Transferred Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2.3    Rehired Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2.4    Designated Joint Ventures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
2.5    Acquisitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
2.6    Change in Eligibility Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## ARTICLE III

### ENROLLMENT AND CONTRIBUTIONS

3.0    Enrollment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
3.1    Effect of Enrollment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
3.2    Effective Date of Coverage  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
3.3    FMLA Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
3.4    Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
3.5    Changes by Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## ARTICLE IV

### SHORT TERM DISABILITY BENEFITS

4.0    Conditions to Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
4.1    Covered Disabilities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
4.2    Disabilities Not Covered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
4.3    Timing of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
4.4    Amount of Benefits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
4.5    Reduction in Benefits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## ARTICLE V

### PAYMENT OF BENEFITS

5.0    Claims Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
5.1    Consent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
5.2    To Whom Payable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
5.3    Time of Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
5.4    Conditional Claim Payment; Reduction of Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
5.5    Recovery of Overpayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
5.6    Subrogation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**TempleInland/Cleiland 236**

## ARTICLE VI

### TERMINATION OF COVERAGE

6.0     Participants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
6.1     Effect of Termination of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## ARTICLE VII

### ADMINISTRATION OF PLAN

7.0     Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
7.1     Liability of Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
7.2     Claims for Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## ARTICLE VIII

### AMENDMENT AND TERMINATION OF PLAN

8.0     Amendment and Termination of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## ARTICLE IX

### MISCELLANEOUS PROVISIONS

9.0     Limitation of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
9.1     No Right to Continued Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
9.2     Rules of Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
9.3     Governing Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
9.4     Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## ARTICLE X

### IMPORTANT INFORMATION

10.0     Plan Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10.1     Plan Sponsor and Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10.2     Employer ID Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10.3     Participating Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10.4     Type of Welfare Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10.5     Claims Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.6     Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.7     Agent for Service of Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.8     Plan Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.9     Collective Bargaining Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.10     Sources of Contributions to the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.11     Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.12     Plan Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
10.13     Statement of ERISA Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TEMPLE-INLAND

## SHORT TERM DISABILITY PLAN

The purpose of the Temple-Inland Short Term Disability Plan is to provide Participants up to 26 weeks' partial replacement of income lost when they become Totally Disabled from nonoccupational illnesses or injuries and cannot work. Except as otherwise noted, this Amendment and Restatement of the Plan shall only apply to persons who are Participants (as hereinafter defined) on or after January 1, 2000.

### ARTICLE I

### DEFINITIONS:

The following terms when used in this Plan shall have the meanings set forth below:

**1.0**   **Accident:** means a sudden, unforeseeable external event that causes bodily Injury to an Employee within 90 days of the event, and occurs while coverage for an Employee is in effect.

**1.1**   **Active Service:** An Employee will be considered in Active Service:

    a.    On any of his Employer's scheduled work days if he is performing the regular duties of his work for his regularly scheduled hours on that day either at his Employer's place of business or at some location to which he is required to travel for his Employer's business;

    b.    On a day which is not one of his Employer's scheduled work days if he was in Active Service on the preceding scheduled work day; and

    c.    On a day during the first six months of an Approved Leave of Absence.

**1.2**   **Approved Leave of Absence:** means a leave of absence that has been approved by an Employer (or the applicable business unit thereof).

**1.3**   **Base Hourly Rate:** means the Employee's base hourly rate paid by his Employer as in effect on the date the Employee becomes Totally Disabled, excluding any bonuses, commissions, shift differential, overtime or other pay.

**1.4**   **Benefits:** means the benefits described in the Plan.

**1.5**   **Claims Administrator:** means the person, corporation or other entity designated by the Plan Administrator to review, adjudicate, and process claims.

**1.6**   **Code:** means the Internal Revenue Code of 1986, as amended.

**1.7**   **Collective Bargaining Agreement:** means a collective bargaining agreement entered into by an Employer as set forth in the applicable schedule hereto.

**1.8**   **Company:** means Temple-Inland Forest Products Corporation.

**1.9**   **Covered Earnings:** means an Employee's Base Hourly Rate multiplied by the number of hours he is regularly scheduled to work per week up to a maximum of 40 hours per week.

**1.10**   **Current Earnings:** means any wage or salary for work performed during the Period of Disability.

1

1.11    **Designated Joint Venture:** means a joint venture between the Company or an Employer and an unaffiliated party that is designated in the Solutions Plan.

1.12    **Disabled Person:** means a former Employee who meets the eligibility criteria set forth in the Disability Plan. This term does not apply to an Employee with a disability who is in active service.

1.13    **Disability Plan:** means the Temple-Inland Disability Health and Welfare Plan, as amended.

1.14    **Effective Date:** The Plan was originally adopted effective January 1, 1998. This Amendment and Restatement of the Plan is effective January 1, 2000.

1.15    **Employee:**

   a.    The term Employee means a person who is employed by an Employer and who is an Hourly Employee; provided, however, that the term "Employee" shall not include any employee who regularly works less than twenty (20) hours per week. The term Employee does not include any person who is covered by a Collective Bargaining Agreement entered into by an Employer unless such agreement, by specific reference to the Plan, provides for coverage under the Plan.

   b.    The term Employee shall not include any person who is treated or classified by the Employer as an independent contractor, leased employee, contract labor, temporary employee, seasonal employee, consultant, or part-time employee regularly scheduled to work less than 20 hours per week.

   c.    The Plan shall rely exclusively on data contained in the Employer's regular payroll system for all determinations as to whether a person is or is not an eligible Employee. The term Employee shall not include any person who (i) is not coded as an eligible Employee on the payroll system, or (ii) is paid through an employment or temporary agency or other employee leasing entity, or (iii) is retained in any category excluded under subsection b. above (whether or not such classification is ultimately determined to be correct under applicable law and whether or not pursuant to a written agreement), or (iv) is paid through a check issued by the Employer's accounting department or any method other than through the regular payroll system.

   d.    At the end of the sixth month of an Approved Leave of Absence, a person shall no longer be in Active Service, shall be considered to have terminated his employment for all purposes under this Plan, and shall no longer be considered an Employee. A person who retires from any employment within the Company's controlled group of corporations shall not be considered an Employee unless he is rehired by an Employer as set forth in Article

1.16    **Employer:** means the Company and each of its affiliates or any business segment, unit, division or subsidiary thereof that is designated a participating Employer in Table I attached hereto. By adopting the Plan, each Employer shall be deemed to have appointed the Company as its agent to exercise on its behalf all the powers and authorities conferred upon the Company by the terms of the Plan, including, but not limited to, the power to amend and/or terminate the Plan. Such authority shall continue unless and until the Employer withdraws from the Plan.

1.17    **ERISA:** means the Employee Retirement Income Security Act of 1974, as amended.

1.18    **FMLA:** means the Family and Medical Leave Act of 1993, as amended.

1.19    **FMLA Leave:** means an Approved Leave of Absence that qualifies under the FMLA.

2

1.20  **Full-time Employee:** means an Employee who is designated as "full-time" by his Employer.

1.21  **Hourly Employee:** means, solely for the purposes of this Plan, an Employee who is coded as an Hourly Employee on the Plan Administrator's Pay Frequency Coding Matrix and who is not (i) covered by a collective bargaining agreement entered into by an Employer unless such agreement, by specific reference to the Plan, provides for coverage under the Plan, or (ii) an Inland sheet plant employee except at locations designated by Inland as eligible to participate. Unless the context indicates otherwise, Hourly Employee includes both Part-time Employees and Full-time Employees.

1.22  **Illness:** means a physical illness or Mental Illness. It also includes pregnancy.

1.23  **Injury:** means an accidental loss or bodily harm.

1.24  **Medically Necessary:** means the surgical procedure is: (a) prescribed by a Physician as required treatment of the Injury or Illness; and (b) appropriate according to conventional medical practice for the Injury or Illness in the locality in which the surgery is performed.

1.25  **Mental Illness:** means any disorder, other than a disorder induced by alcohol or drug abuse, which impairs the behavior, emotional reaction or thought process of a person, regardless of medical origin.

1.26  **Notice:** means a notice, application or request in such form (which may be written, telephonic, electronic, or another means of communication) as may be provided or specified by the Plan Administrator or the Claims Administrator for a particular purpose. To be effective, such Notice must be accurate, truthful, and complete, must meet all of the requirements specified by the party to receive such Notice (including any required information, documentation, consents, or data), must actually be received by such party, and must be received within any specified time limits.

1.27  **Other Income Benefits:** has the meaning set forth in Section 4.5 hereof.

1.28  **Participant:** means any Employee who meets the eligibility requirements set forth in the Plan, who is validly enrolled in the Plan, and whose coverage has not been terminated for any reason.

1.29  **Part-time Employee:** means an Employee who is an Hourly Employee and who is regularly scheduled to work twenty (20) hours or more per week, but less than a Full-time Employee.

1.30  **Pay Frequency Coding Matrix:** means a list maintained by the Plan Administrator of the Employers' pay frequency codes and Employee classifications for the purposes of determining eligibility dates and assigning credit formulas.

1.31  **Period of Disability:** has the meaning set forth in Section 4.3 hereof.

1.32  **Physician:** means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Employee that is appropriate for the condition and locality. The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage) of an Employee or spouse, or a person living in an Employee's household.

1.33  **Plan:** means the Temple-Inland Short Term Disability Plan, as amended from time to time.

1.34  **Plan Administrator:** means such person or committee as may be appointed from time to time by the Company to administer the Plan.

TempleInland/Cleiland 240

**1.35** **Plan Year:** means the calendar year commencing on January 1 and ending on the following December 31.

**1.36** **Retiree:** means a participant in the Retiree Health and Welfare Plan or any other retiree health plan sponsored by the Company or any of its affiliates. Retirees are not eligible to participate in this Plan.

**1.37** **Retirement Plan:** means any defined benefit or defined contribution retirement plan sponsored or funded by an Employer. It does not include an individual deferred compensation agreement; a stock option or stock bonus plan; an individual retirement account; or any employee contributions under a 401(k) plan or any Employer match thereon.

**1.38** **Spouse:** means the person to whom the Participant is lawfully married under the laws of the state in which the Participant resides, provided that such person meets the requirements to be considered a spouse under Section 105(b) of the Code.

**1.39** **Totally Disabled or Total Disability:** An Employee will be considered Totally Disabled if, because of an Injury or a Illness:

    a.    He is unable to perform all of the material duties of his occupation; and

    b.    He is not performing any other work or engaging in any other occupation for wage or profit for which he is earning substantially the same compensation as he did prior to his disability.

An Employee will be considered Totally Disabled on any day only if he is not working for any part of that day.

**1.40** **Transactions:** means enrollments, status changes, deduction changes, inquiries, elections or coverage changes, or any other action or transaction allowed under the Plan. The Plan Administrator may specify that certain inquiries and Transactions can or must be made through a paper form, a telephone call, an automated or interactive voice response system, the Internet, an intranet, or any other oral, written, digital or electronic means of communication. The Participant (and Dependent, if applicable) may be required to take some action to make a Transaction happen or may be required to take some action to keep a Transaction from happening. A Personal Identification Number (PIN) may or may not be issued for Transaction and inquiry purposes.

**1.41** **Trust:** means the Temple-Inland Health and Welfare Benefits Trust.

**1.42** **Trustee:** means the person or persons appointed by the Company to serve as trustee under the Trust.

**1.43** **Trust Fund:** means the assets of the Trust.

**1.44** **Waiting Period:** For a Financial Services Employee, Waiting Period means three continuous months of Active Service from an Employee's most recent date of hire as an Employee. For all other Employees who are subject to a Waiting Period under Article II hereof, Waiting Period means 31 days of Active Service from an Employee's most recent date of hire as an Employee unless a different period is specified in a Collective Bargaining Agreement.

4

TempleInland/Cleiland 241

## ARTICLE II

### ELIGIBILITY

2.0 **Geographic Eligibility:**  Eligibility to participate in this Plan may be limited to persons who reside within geographic areas specified by the Plan Administrator from time to time.  Such geographic areas must be located within the 50 United States.  Persons who reside in or work for Employer facilities located in Puerto Rico, other United States territories or jurisdictions, or foreign countries, territories or jurisdictions are not eligible to participate in the Plan; provided, however, that this rule shall not apply to an Employee who is on temporary assignment outside of the 50 United States at the request of an Employer (or business unit thereof).

2.1 **Hourly Employees:**  Each Hourly Employee shall be eligible to participate in the Plan on the first day of the month coinciding with or following completion of the Waiting Period, provided he is in Active Service that day, or if not, on the first day thereafter when he is in Active Service.  This Plan is for Employees only; dependents are not eligible to participate in the Plan.

2.2 **Transferred Employees:**  If an Employee has transferred his employment from another company that is a member of the Employer's controlled group of corporations, his continuous service with that other company shall count toward his Waiting Period. The Plan Administrator may also (i) waive the Waiting Period with respect to all similarly situated Employees who were covered under the other company's group short term disability plan at the time of such transfer, and/or (ii) honor any shorter waiting period contained in such other company's group short term disability plan.

2.3 **Rehired Employees:**

   a.    An Employee who was previously covered under the Plan or another Company short term disability plan and whose coverage ceased due to termination of his employment shall be eligible to participate in the Plan on the first day he is rehired as an Employee if such rehire date is within three months of the date of his termination of employment and if he otherwise meets the eligibility requirements under the Plan.

   b.    An Employee who is not covered under this Plan or another Company short term disability plan at the time of his termination of employment must satisfy a new Waiting Period upon his rehire as an Employee.

   c.    An Employee who was previously covered under the Plan or another Company short term disability plan and whose coverage ceased due to termination of employment who is rehired more than three months after the date of his termination of employment must satisfy a new Waiting Period upon his rehire as an Employee.

   d.    If an Employee's coverage under the Plan was terminated by reason of disability and the Employee has had continuous coverage under the Disability Plan, the Waiting Period will be waived if the Employee is rehired and returns to work immediately upon recovery from the disabling condition. For this purpose, "immediately" means within two weeks of the date as of which the Employee is released to return to work by the Employee's Physician or by the end of the month during which the Employee is released, whichever is longer.  For example, if an Employee is released to return to work on March 2, the Waiting Period will be waived as long as the Employee returns to work by March 31.  If the Employee is released on March 29, the Waiting Period will be waived if the Employee returns to work by April 12.

TempleInland/Cleland 242

This provision is designed to assist such person's return to work; it is not a guarantee that a job will be available at the time such person recovers, that such person will have any sort of hiring preference or that such person has any extension of coverage through the Disability Plan.

2.4    **Designated Joint Ventures:** If a person becomes an Employee within three months of his termination of employment with a Designated Joint Venture, his employment service with the Designated Joint Venture shall count toward his Waiting Period.

2.5    **Acquisitions:** If a person becomes an Employee as a result of the acquisition of his employer or his employer's assets by the Company or a member of its controlled group of corporations, his continuous service with the acquired employer shall count toward his Waiting Period. The Plan Administrator may also (i) waive the Waiting Period with respect to all similarly situated Employees who were covered under the other employer's group short term disability plan at the time of such acquisition, and/or (ii) honor any shorter waiting period contained in such other employer's group short term disability plan.

2.6    **Change in Eligibility Status:** If a person's status is changed from ineligible person to eligible Employee, such person's previous service with an Employer or any of its affiliates shall be counted toward any applicable Waiting Period. If a person's status is changed from ineligible person to eligible Employee retroactively due to a previous error, misclassification, or for any other reason, the Plan Administrator may, in his sole discretion, count such previous service toward any applicable Waiting Period; provided, however, that any enrollment in or coverage under this Plan shall be prospective only and there shall be no retroactive enrollment, coverage or Benefits payable for any such prior period.

<div align="center">

**ARTICLE III**

**ENROLLMENT AND CONTRIBUTIONS**

</div>

3.0    **Enrollment:** The Plan Administrator shall enroll eligible Employees in the Plan. By being enrolled in the Plan, an Employee agrees to the terms of the Plan.

3.1    **Effect of Enrollment:** By enrolling or being enrolled (including a deemed enrollment) in the Plan, each person (on behalf of himself and his Dependents):

   a.    agrees to the terms of the Plan;

   b.    authorizes the deduction by the Company or Employer from his payroll compensation or agrees to make any payments required under this Plan; and

   c.    authorizes all Transactions and the release of any information in response to such inquiries without the need for any written signature or further action on such person's part.

3.2    **Effective Date of Coverage:** The effective date of an enrollment or a change in coverage shall be the later of (i) the date the Employee is eligible to participate or to elect such change in coverage, and (ii) the date Notice is provided to the Plan Administrator or a deemed enrollment or automatic change occurs; provided, however, that if other documentation is required, any such enrollment or change in coverage shall be effective only if and when the Claims Administrator agrees to such enrollment or change in coverage in writing; and further provided that any such enrollment or change in coverage shall be void ab initio (from the beginning) if any information provided in the Notice or any other required documentation is not supplied or accepted, or contains a misstatement, misrepresentation, falsification or other untruth, whether by commission or omission.

<div align="center">6</div>

TempleInland/Cleiland 243

3.3    **FMLA Leave:** An Employee's coverage under the Plan shall remain in effect during the Employee's FMLA Leave.

3.4    **Contributions:** From time to time, the Plan Administrator shall determine the contributions required to pay for the cost of this Plan. Contributions shall be made by the Employer and/or Employee in the proportion specified by the Employer. The Trust has sole responsibility for funding benefit payments from such contributions and bears all risk thereof.

3.5    **Changes by Plan Administrator:** If the Plan Administrator determines, before or during any Plan Year, that the Plan may fail to satisfy for such Plan Year any nondiscrimination requirement or benefit limitation imposed by the Code, the Plan Administrator may take such action as the Plan Administrator deems appropriate, under rules uniformly applicable to similarly situated Participants, so as to ensure compliance with such requirements or limitations.

## ARTICLE IV

### SHORT TERM DISABILITY BENEFITS

4.0    **Conditions to Payment:** Before the Plan pays any amount, the Employee must meet each and every one of the following conditions:

a.    The Employee must be <u>eligible</u> to participate in the Plan as set forth in Article II of the Plan;

b.    The Employee must be validly <u>enrolled</u> for coverage under this Plan as set forth in Article III of the Plan;

c.    The Employee's coverage must have become <u>effective</u> under Article III of the Plan;

d.    The Employee's coverage must <u>not</u> have been <u>terminated</u> under Article VI of the Plan;

e.    The Employee must meet the conditions set forth in Section 4.1; and

f.    The Employee must file a <u>claim</u> and any other required documentation and/or provide Notice as set forth in Article V of this Plan.

4.1    **Covered Disabilities:** To be eligible for Benefits, an Employee must have suffered a Total Disability that is not excluded under Section 4.2 and must be under the appropriate care of a Physician for such Total Disability. The Claims Administrator may require an opinion from the Employee's Physician and other satisfactory proof of Total Disability to be provided at the Employee's expense and/or may require the Employee to take a physical examination by a Physician of the Claims Administrator's choice to prove his initial or continuing Total Disability. Proof of continuing eligibility may be required at any time and from time to time hereunder. It is not necessary that an Employee be confined in a hospital to receive Benefits hereunder. However, an Employee must provide the Claims Administrator and the Employer with Notice of his whereabouts, condition, ability to work, and such other information as the Claims Administrator and the Employer may require.

7

TempleInland/Cleiland 244

**4.2**    **Disabilities Not Covered:**

a.    No Benefits will be paid for Total Disability that results, directly or indirectly, from:

    i.    attempted suicide, or whenever an Employee injures himself or herself on purpose;

    ii.    war or any act of war, whether or not declared;

    iii.    terrorism or active participation in a riot;

    iv.    commission of a felony;

    v.    the revocation, restriction or non-renewal of an Employee's license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Illness otherwise covered by the Plan;

    vi.    any cosmetic surgery or surgical procedure that is not Medically Necessary, unless the Total Disability is caused by the Employee donating an organ in a non-experimental organ transplant procedure;

    vii.    an Injury or Illness for which the Employee is entitled to benefits from Workers' Compensation or occupational disease law; or

    viii.    any Injury or Illness that is work related.

b.    Benefits will not be paid for any period of time during which:

    i.    an Employee is incarcerated for any reason in a penal or corrections institution;

    ii.    an Employee is serving on full time active duty in any armed forces; or

    iii.    an Employee (or his Physician, other health care provider, family member, guardian, or other agent or representative) fails or refuses to cooperate or provide any required information as set forth in Section 4.1.

**4.3**    **Timing of Benefits:**

a.    A Period of Disability begins (i) on the same day an Employee becomes Totally Disabled due to an Injury or (ii) on the fourth continuous day that an Employee is Totally Disabled due to Illness. However, if an Employee is Totally Disabled for more than 21 days or must be in the hospital for more than 21 days as a result of Illness, the Period of Disability will be retroactive to the first day of his Total Disability.

b.    A Period of Disability will end on the earlier of:

    i.    the date the Employee recovers from his Total Disability as determined by the Claims Administrator in its sole discretion;

    ii.    the date the Employee earns more than 80% of his Covered Earnings;

8

TempleInland/Cleland 245

iii.    the date the Employee returns to Active Service;

iv.    the date the Employee's Active Service ends;

v.    the date the Employee's coverage under the Plan terminates under Article VI, except as set forth in Section 6.1;

vi.    the date the Employee fails to provide proof of initial or continuing disability or otherwise fails to cooperate or meet the eligibility conditions contained in Section 4.1;

vii.    26 weeks after the Period of Disability began; or

viii.    the date the Employee dies.

c.    If an Employee has Periods of Disability that result from the same or related Illness or Injury, those periods will be considered one Period of Disability for purposes of determining the maximum payment under the Plan unless the Employee returns to work for two consecutive weeks in between the Periods of Disability. If an Employee has Periods of Disability that are not the result of the same or related Illness or Injury, those periods will be considered one Period of Disability for purposes of determining the maximum payment under this Plan unless the Employee returns to work for at least one full day in between the Periods of Disability.

4.4    **Amount of Benefits:**  Except as specified in any Schedule attached hereto, benefit payments are equal to 50% of an Employee's Covered Earnings. No payments are made for Periods of Disability less than a day. Benefits will normally be paid on a weekly basis during a Period of Disability. If an Employee is Totally Disabled for a period of less than one week, the benefit amount paid will be prorated; the benefit payment for one day of Total Disability is 1/7th of the weekly amount. Benefits are reduced 100% by Current Earnings and Other Income Benefits.

4.5    **Reduction in Benefits:**

a.    Reduction:  While an Employee is Totally Disabled, he may be eligible for benefits from other income sources ("Other Income Benefits"). If so, the Benefits otherwise payable under the Plan shall be reduced by the amount of such Other Income Benefits.

b.    Other Income Benefits:  Other Income Benefits include:

i.    any amounts which the Employee or any dependents, if applicable, receive (or are assumed to receive) under:

1.    the Canada and Quebec Pension Plans;

2.    the Railroad Retirement Act;

3.    any local, state, provincial or federal government disability or retirement plan or law;

4.    any sick leave or salary continuation plan of the Employer;

5.    any work loss provision in "No-Fault" auto insurance;

6.    any Disability Benefits received from the Veterans' Administration;

9

ii.     any Social Security disability or retirement benefits the Employee or any third party receives (or is assumed to receive) on the Employee's behalf or for his or her dependents; or, if applicable, which his or her dependents receive (or are assumed to receive) because of the Employee's entitlement to such benefits;

iii.    any Retirement Plan benefits;

iv.    any proceeds payable under any group insurance or similar plan.  If there is other insurance that applies to the same claim for Total Disability, and contains the same or similar provision for reduction because of other insurance, the Plan will pay for its pro rata share of the total claim.  "Pro rata share" means the proportion of the total benefit that the amount payable under one policy or plan, without other insurance or plan benefits, bears to the total benefits under all such policies or plans.

v.     any Current Earnings or any wage or salary for work performed during the Period of Disability, whether on a part-time basis in his regular occupation or on a full-time or part-time basis in any other occupation.

"Dependents" include any person who receives (or is assumed to receive) benefits under any applicable law on account of an Employee's entitlement to benefits.

c.     <u>Increases in Other Income Benefits</u>:  After the first deduction for any Other Income Benefit (except Current Earnings, wage or salary) is made, benefits will not be further reduced during that Period of Disability due to any cost of living increase in that Other Income Benefit.

d.     <u>Lump Sum Payments</u>:  Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given.  If no time is stated, the lump sum will be prorated monthly over a five year period.  The Claims Administrator will determine the expected duration of disability.  If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

e.     <u>Assumed Receipt of Benefits</u>:  The Claims Administrator will assume the Employee (or his or her dependents, if applicable) are receiving Other Income Benefits if they may be eligible for them.  These assumed benefits will be the amount the Claims Administrator estimates the Employee (or his or her dependents, if applicable) may be eligible to receive.  Benefits otherwise payable under the Plan will be reduced by the amount of any assumed benefits as if they were actually received.

Except for any wage or salary for work performed while Benefits are payable, this assumption will not be made if the Employee gives the Claims Administrator satisfactory proof of the following events:

i.     application was made for these benefits;

ii.    a Reimbursement Agreement is signed;

iii.    any and all appeals were made for these benefits or the Claims Administrator determines further appeals will not be successful; and

iv.    payments were denied.

TempleInland/Cleland 247

The Claims Administrator will not assume receipt of, nor reduce benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until the Employee actually receives them.

f.    <u>Other Reductions</u>: The amount the Plan would otherwise pay will also be reduced to the extent set forth in Article V: Payment of Benefits.

<div align="center">

**ARTICLE V**

**<u>PAYMENT OF BENEFITS</u>**

</div>

5.0    **<u>Claims Procedures</u>:** The Plan Administrator shall designate a Claims Administrator to review all claims for payment under the Plan.   The Claims Administrator shall establish claims procedures, including any required Notice.  All fully completed claim forms (if required) must be sent by Covered Persons directly to the Claims Administrator, along with any other information required for the Claims Administrator to determine whether Benefits are payable under the Plan, including the Participant's consent to the release of medical information.

5.1    **<u>Consent</u>:**

a.    <u>Consent</u>: By enrolling or being enrolled in the Plan, an Employee consents (on behalf of himself and his dependents) to the release of any information or medical records to:

    i.    the Claims Administrator,

    ii.    any health care provider,

    iii.    the Plan Administrator, or

    iv.    any of the foregoing persons' or entities' auditors, agents or employees.

b.    <u>Purpose</u>: such information and/or medical records may be used for any of the following purposes:

    i.    enabling such person(s) to determine whether and to what extent Benefits are payable under this Plan,

    ii.    management audits, financial audits, or other such audits of the Plan or of any of the persons or entities listed above,

    iii.    to enable any of such persons to assist the Employee, explain his benefits hereunder to him, or to review or resolve any claims hereunder, or

    iv.    to comply with any federal or state law.

c.    <u>Other Consents</u>: Notwithstanding the fact that such consent is deemed to have been given under this Plan by virtue of a person's enrollment under the Plan, the Employee shall sign any written consents required by a health care provider, the Claims Administrator, or Plan Administrator consistent with the above purposes.  If the patient is a minor or, in the opinion of the Claims Administrator, is not able to give valid consent to the release of such information, his parent or legal guardian must give such consent.

<div align="center">11</div>

TempleInland/Cleiland 248

5.2    **To Whom Payable:**  Except as otherwise provided in the Plan, all benefits are payable to the Employee. All payments are subject to any payroll deductions, reductions, withholdings, liens and garnishments applicable to the Employee; provided, however, that withholding of Federal income tax shall be voluntary as specified by the Employee on Form W-4S.  Responsibility for the employer part of Social Security, Medicare, and FUTA taxes is hereby transferred to the Employer.

If any person to whom benefits are payable is a minor or, in the opinion of the Claims Administrator, is not able to give a valid receipt for any payment due him, such payment will be made to his legal guardian. If no request for payment has been made by his legal guardian, the Claims Administrator may, at its option, make payment to the person or institution appearing to have assumed his custody and support.

If the Employee dies while any of these benefits remain unpaid, the Claims Administrator may choose to make direct payment to any of the Employee's following living relatives: spouse, mother, father, child or children, brothers or sisters; or to the executors or administrators of the Employee's estate.

Payment as described above will release the Plan, Plan Administrator, and Claims Administrator from all liability to the extent of any payment made.

5.3    **Time of Payment:**  Benefits will be paid by the Claims Administrator as soon as administratively practicable after it receives due proof of the Total Disability and other information required pursuant to Section 5.0.

5.4    **Conditional Claim Payment; Reduction of Benefits:**

a.    If an Employee becomes Totally Disabled as a result of Injuries received in an accident for which, in the opinion of the Claims Administrator, a third party may be liable, the Plan will pay the amount of benefits otherwise payable under the Plan. However, the Employee must first agree in writing to refund the lesser of:

i.    the amount actually paid for such Benefits by the Plan; or

ii.    an amount equal to the sum actually received from the third party for such loss of income;

at the time such third party liability is determined and satisfied; whether by settlement, judgment, arbitration or otherwise.

b.    Benefits under the Plan will be reduced to the extent that benefits are paid or payable for an Employee's loss of income under the mandatory part of any auto insurance policy written to comply with:

i.    a "no fault" insurance law; or

ii.    an uninsured motorist insurance law;

provided, that the Plan will take into account any adjustment option (e.g., lump sum vs. installment payments) chosen under such part by the Participant.

12

5.5 **Recovery of Overpayment:** When an overpayment has been made by the Claims Administrator, the Claims Administrator will have the right at any time to: (a) recover that overpayment from the person to whom or on whose behalf it was made, or (b) offset the amount of that overpayment from a future claim payment, or (c) inform the Employer and the Employer shall have the right to deduct the amount of the overpayment from any pay or other sums due the Employee. As used herein, the term "overpayment" shall include all payments made in error, payments to ineligible persons, payments made pursuant to misstatements, misrepresentations or fraud (whether by commission or omission), and payments for which any third party is liable. The "make whole" doctrine shall not apply and the Covered Person agrees that the Plan shall have "first dollar" priority to receive reimbursement from the Covered Person out of any funds recovered from such third party.

5.6 **Subrogation:** The Plan shall be subrogated to any and all rights of Covered Persons for recovery against any third party because of a condition, Illness, or Injury caused by such third party or for which such third party may be liable. This right of subrogation is limited to the extent of Benefits payable under this Plan for such condition, Illness, or Injury. The Plan and the Plan Administrator shall be entitled to institute an action in the name of such Covered Person or to join in an action brought by such Covered Person against such third party and to participate in any judgment, award or settlement to the extent of the Plan's interest. The "make whole" doctrine shall not apply and the Covered Person agrees that the Plan shall have "first dollar" priority to receive any funds recovered from such third party. The Participant shall execute such instruments as may be necessary for the Plan to perfect its rights of subrogation and shall refrain from taking any action which may prejudice the Plan's right of subrogation. The Plan may withhold payment of Benefits if the Claims Administrator determines in its sole discretion that such withholding is necessary or appropriate for the enforcement of the Plan's subrogation rights, or may offset Benefits payable under the Plan by any amounts received or receivable by the Participant from or on behalf of such third party.

## ARTICLE VI

### TERMINATION OF COVERAGE

6.0 **Participants:** A Participant's coverage will cease on the earliest date below:

a.    The date the Participant ceases to be eligible to participate in the Plan;

b.    The date the Participant dies;

c.    The date the Plan is terminated;

d.    The end of the month during which the Participant's Active Service ends;

e.    The last day of the sixth month of an Approved Leave of Absence;

f.    The date of the Participant's death;

g.    The date specified by the Plan Administrator in the event of a sale of a business or other divestiture;

h.    The date as of which the Covered Person commits fraud or obtains benefits under the Plan through misrepresentation or otherwise, or fails to comply with Plan rules;

i.    The date as of which an Employer no longer participates in this Plan; or

13

TempleInland/Cleiland 250

      j.     The date specified in the Collective Bargaining Agreement, or the date as of which coverage hereunder is no longer provided for in the Collective Bargaining Agreement; provided, however, that if no date is specified participation shall end on the earliest of the date of termination of employment, the date a lay-off begins, or the date the Collective Bargaining Agreement ends or provides for different coverage.

**6.1**    **Effect of Termination of Coverage:**  The Plan will not pay for any loss of income after termination of coverage, even if the loss of income relates to or otherwise arises out of an Injury or Illness that occurred, was contracted, or otherwise began prior to the date of termination of coverage; provided, however, that an Employer may in its sole discretion authorize the continuation of Benefits already in pay status on the date of a lay-off, termination, or sale or shutdown of a business unit until the date the Period of Disability would otherwise end.  Benefits or rights to benefits under this Plan do not vest.

## ARTICLE VII

## ADMINISTRATION OF PLAN

**7.0**    **Plan Administrator:**

    a.     <u>Authority of Plan Administrator</u>:  The Plan Administrator shall be responsible for the administration, operation and interpretation of the Plan. The Plan Administrator shall establish rules and regulations appropriate for the administration of the Plan.  The Plan Administrator shall have the exclusive right to interpret the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan in his sole discretion, and all such decisions, actions and records of the Plan Administrator shall be conclusive and binding upon Participants, the Company and all persons having or claiming to have any right or interest in or under the Plan. Notwithstanding the foregoing sentence, to the extent that the Claims Administrator has been delegated the authority to administer claims under the Plan, the Claims Administrator shall be considered the Plan Administrator and shall have the exclusive right to interpret the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan in its sole discretion, and all such decisions, actions and records of the Claims Administrator shall be conclusive and binding upon the Company and all persons having or claiming to have any right or interest in or under the Plan.  The Plan Administrator shall have the exclusive authority to determine whether a defect has occurred (or is alleged to have occurred) in the operation of the Plan and, if so, to correct such defect (or alleged defect) inside or outside of the Plan, which may include such equitable remedies (including waivers or modifications of Plan provisions) as he, in his sole discretion, shall deem appropriate.

    b.     <u>Outside Assistance</u>:  The Plan Administrator may employ such counsel, accountants, claims administrators, utilization or patient care review organizations, consultants, actuaries and other person or persons as it shall deem advisable.  To the extent not paid by the Plan, the Company shall pay the compensation of such person or persons and any other reasonable expenses incurred by the Plan Administrator in the administration of the Plan.

    c.     <u>Delegation of Authority</u>:  The Plan Administrator may delegate to (i) any agent or agents of the Company or any of its affiliates or (ii) any employee or employees of the Company or any of its affiliates, severally or jointly, the authority to perform any ministerial or routine act in connection with the administration of the Plan.

14

    d.    Records: The Plan Administrator shall maintain such records as are required under ERISA or under the Code and such additional records as he deems necessary or appropriate showing the fiscal transactions of the Plan.

**7.1**    **Liability of Plan Administrator:** The Plan Administrator shall not be liable for any act or omission on its own part, excepting only its own willful misconduct or gross negligence except as is otherwise expressly provided by ERISA. To the fullest extent permitted by applicable laws, the Company shall indemnify and save harmless the Plan Administrator against any and all claims, demands, suits or proceedings in connection with the Plan that may be brought by Employees, former Employees, Retirees, Disabled Persons, Participants, Dependents, or their spouses or dependents or by any other person, corporation, entity, government or agency thereof; provided, however, that such indemnification shall not apply with respect to acts or omissions of willful misconduct or gross negligence. The Company, at the Company's expense, may settle any such claim or demand asserted or suit or proceeding brought against the Plan Administrator when such settlement appears to be in the best interests of the Company or any Employer.

**7.2**    **Claims for Benefits:**

    a.    Processing of Claims: Claims for benefits shall be processed by the Claims Administrator, or other person or entity designated by the Plan Administrator. The claims procedure provided for by subsections (b) and (c) of this Section shall only apply to the extent that the Claims Administrator does not provide a claims procedure.

    b.    Claims Procedure: If any person believes he is being denied any rights or benefits under the Plan, such person may file a claim in writing with the Plan Administrator. If any such claim is wholly or partially denied, the Plan Administrator will notify such person of its decision in writing. Such notification will be written in a manner calculated to be understood by such person and will contain (i) specific reasons for the denial, (ii) specific reference to pertinent Plan provisions, (iii) a description of any additional material or information necessary for such person to perfect such claim and an explanation of why such material or information is necessary, and (iv) information as to the steps to be taken if the person wishes to submit a request for review. Such notification will be given within 90 days after the claim is received by the Plan Administrator (or within 180 days, if special circumstances require an extension of time for processing the claim, and if written notice of such extension and circumstances is given to such person within the initial 90 day period). If such notification is not given within such period, the claim will be considered denied as of the last day of such period and such person may request a review of his claim.

    c.    Review Procedure: Within 60 days after the date on which a person receives a written notice of a denied claim (or, if applicable, within 60 days after the date on which such denial is considered to have occurred) such person (or his duly authorized representative) may (i) file a written request with the Plan Administrator for a review of his denied claim and of pertinent documents and (ii) submit written issues and comments to the Plan Administrator. The Plan Administrator will notify such person of its decision in writing. Such notification will be written in a manner calculated to be understood by such person and will contain specific reasons for the decision as well as specific references to pertinent Plan provisions. The decision on review will be made within 60 days after the request for review is received by the Plan Administrator (or within 120 days, if special circumstances require an extension of time for processing the request, such as an election by the Plan Administrator to hold a hearing, and if written notice of such extension and circumstances is given to such person within the initial 60 day period). If the decision on review is not made within such period, the claim will be considered denied.

15

TempleInland/Cleiland 252

## ARTICLE VIII

### AMENDMENT AND TERMINATION OF PLAN

8.0 **Amendment and Termination of Plan:** The Plan may be amended or terminated at any time by action of the Board of Directors of the Company. In addition, the Plan Administrator may add, amend, delete, or terminate any Tables or Schedules attached hereto at any time. In addition to the authority of the Board to amend or terminate the Plan, the Plan Administrator may at any time amend the contents of the Appendices, Schedules and Tables.

## ARTICLE IX

### MISCELLANEOUS PROVISIONS

9.0 **Limitation of Rights:** It is the express purpose and intention of the Plan that, except as otherwise provided by ERISA, no liability whatsoever shall attach to or be incurred by the shareholders, directors, officers or employees of the Company or of any representatives appointed hereunder by the Company under or by reason of any of the terms and conditions of the Plan. Neither the establishment and maintenance of the Plan, nor any provision or amendment thereof, nor any act or omission under or resulting from the operation of the Plan, shall be construed:

    a.    as conferring upon any Employee, former Employee, Retiree, Disabled Person, Participant, dependent, spouse, beneficiary or any other person, firm, corporation or association, any legal or equitable right or claim against the Plan Administrator, or against the Company or any of its affiliates, except to the extent that such right or claim shall be specifically and expressly provided in the Plan or provided by law, nor against any shareholder, director, officer, or employee of the Company or any of its affiliates. Any and all such rights and claims, whether arising by common law or in equity or created by statute, are hereby expressly waived and released to the fullest extent permitted by law by every Participant and every Employee or former Employee, Retiree, Disabled Person, on behalf of himself, his dependents, his spouse, or other beneficiary and any and all other persons who might claim through him as a condition of and as a part of the consideration for participation in the Plan;

    b.    as an agreement, consideration or inducement of employment or affecting in any manner the rights or obligations of the Company, an Employer, or of any Employee to continue or to terminate the employment relationship at any time; or

    c.    as creating any responsibility or liability of the Plan Administrator or the Company for the validity or effect of the Plan.

9.1 **No Right to Continued Employment:** The establishment of the Plan shall not be construed as conferring any rights upon any person for a continuation of employment, nor shall it be construed as limiting in any way the right of the Company or an Employer to discharge any person or to treat him without regard to the effect which such treatment might have upon him as a Participant under the Plan. Any failure to enforce any provision of this Plan in any instance shall not be construed as a waiver of the right to enforce such provision in that instance or any other instance or as a waiver of any other provision of this Plan.

16

TempleInland/Cleland 253

9.2 **Rules of Construction:** The masculine pronoun wherever used shall include the feminine pronoun, and the singular shall include the plural unless the context clearly indicates the distinction. The headings contained in the Plan are for convenience of reference only, and shall not be construed as defining or limiting the matter contained thereunder. Any failure to enforce any provision of this Plan in any instance shall not be construed as a waiver of the right to enforce such provision in that instance or any other instance or as a waiver of any other provision of this Plan.

9.3 **Governing Plan:** This Plan is not a stand alone plan; it may be funded in whole or in part through the Temple-Inland Health and Welfare Benefits Plan and Trust, all as amended from time to time. In the event of any conflict between the terms of this Plan and the Temple-Inland Health and Welfare Benefits Plan and Trust, the more restrictive provision shall control unless the Plan Administrator in his sole discretion determines otherwise.

9.4 **Governing Law:** Solely to the extent not preempted by the Code or ERISA (if any), this Plan shall be construed, administered and enforced according to the laws of the State of Texas.

## ARTICLE X

### IMPORTANT INFORMATION

10.0 **Plan Name:** The name of the Plan is Temple-Inland Short Term Disability Plan.

10.1 **Plan Sponsor and Employer:** The name and address of the Plan Sponsor and Employer is:

> Temple-Inland Forest Products Corporation
> P.O. Drawer N
> 303 South Temple Drive
> Diboll, Texas 75941

A complete list of the employers sponsoring the plan may be obtained by participants and beneficiaries upon written request to the Plan Administrator, and is available for examination by participants and beneficiaries at the office of the Plan Administrator. A list will also be made available at any employer facility at which at least 50 employees customarily work within 10 days of a request to the Plan Administrator or Human Resources representative at such facility. Participants and beneficiaries may receive from the Plan Administrator, upon written request, information as to whether a particular employer is a sponsor of the Plan and, if the employer is a Plan Sponsor, the Sponsor's address.

10.2 **Employer ID Number:** The Employer identification number assigned by the Internal Revenue Service to the Plan Sponsor is 75-1462427.

10.3 **Participating Plan:** This plan is a participating plan in the Temple-Inland Health and Welfare Benefits Plan, a voluntary employees' beneficiary association, and its plan number is 515.

10.4 **Type of Welfare Plan:** Short Term Disability.

17

TempleInland/Cleiland 254

**10.5**   **Claims Administration:** Claims are administered by Life Insurance Company of North America, CIGNA Group Insurance, Dallas Claims Office which has a claims office at 12225 Greenville Avenue, Dallas, Texas 75243. <u>However, for fastest service, participants should send any claims to the claims office whose address appears on their claim form.</u>

Life Insurance Company of North America processes claims and performs other administrative services as the Claims Administrator under this plan pursuant to a contract with the Employer. Life Insurance Company of North America does not insure this Plan or guarantee benefits under this Plan in any manner.

**10.6**   **Plan Administrator:** The name, business address and business telephone number of the Plan Administrator is:

> Temple-Inland Inc. Benefits Administration Committee
> Temple-Inland Forest Products Corporation
> P. O. Drawer N
> 303 South Temple Drive
> Diboll, Texas  75941
>
> (409) 829-1422

**10.7**   **Agent for Service of Process:** Service of legal process may be made upon the Plan Administrator at the address above or upon the Plan Trustee.

**10.8**   **Plan Trustee:** The Trustee of the Temple-Inland Health and Welfare Benefits Trust is:

> State Street Bank and Trust Company
> One Enterprise Drive
> North Quincy, Massachusetts 02171-2197

**10.9**   **Collective Bargaining Agreements:** For certain participants, the Plan is maintained pursuant to one or more collective bargaining agreements. A copy of any such agreement may be obtained by such participants and beneficiaries upon written request to the Plan Administrator, and is available for examination by such participants and beneficiaries at the office of the Plan Administrator. A copy will also be made available at any employer facility covered by the collective bargaining agreement at which at least 50 employees customarily work within 10 days of a request to the Plan Administrator or Human Resources representative at such facility. A copy may also be available at the meeting hall or office of the local union.

**10.10**   **Sources of Contributions to the Plan:** The Plan Administrator calculates the amount of contributions required from Participants and/or Employers.

**10.11**   **Funding:** This Plan is self-funded. All assets through which benefits are provided are accumulated in the Temple-Inland Health and Welfare Benefits Trust. Life Insurance Company of North America does not insure this Plan or guarantee benefits under this Plan in any manner.

**10.12**   **Plan Year:** The Plan Year for purposes of maintaining the Plan's fiscal records is the calendar year (January 1 through December 31).

18

**10.13**    <u>Statement of ERISA Rights:</u> As a participant in the plan named above you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as work sites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor.

Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies.

Receive a summary of the plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

Continue health care coverage for yourself, spouse or dependents if there is a loss of coverage under the plan as a result of a qualifying event. You or your dependents may have to pay for such coverage. Review this summary plan description and the documents governing the plan on the rules governing your COBRA continuation coverage rights.

Reduction or elimination of exclusionary periods of coverage for preexisting conditions under your group health plan, if you have creditable coverage from another plan. You should be provided a certificate of creditable coverage, free of charge, from your group health plan or health insurance issuer when you lose coverage under the plan, when you become entitled to elect COBRA continuation coverage, when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to 24 months after losing coverage. Without evidence of creditable coverage, you may be subject to a preexisting condition exclusion for 12 months (18 months for late enrollees) after your enrollment date in your coverage.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA. If your claim for a welfare benefit is denied in whole or in part you must receive a written explanation of the reason for the denial. You have the right to have the plan review and reconsider your claim. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the plan's decision or lack thereof concerning the qualified status of a medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

TempleInland/Cleiland 256

If you have any questions about your plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

20

TempleInland/Cleiland 257

## TABLE I

### TO THE
### TEMPLE-INLAND SHORT TERM DISABILITY PLAN

## **EMPLOYERS**

Inland Paperboard and Packaging, Inc.

Temple-Inland Forest Products Corporation

Texas South-Eastern Railroad Company

Effective: January 1, 2000

UNDERWRITTEN BY:
**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**a CIGNA Company**

04/2001

508508



CIGNA Group Insurance
Life ● Accident ● Disability

TempleInland/Cleiland 259

# EXHIBIT A
# PART 6

SUMMARY PLAN DESCRIPTION

FOR THE

# TEMPLE-INLAND
# DISABILITY HEALTH AND WELFARE PLAN

**(As Amended and Restated Effective January 1, 2002)**

IMPORTANT NOTE: This Summary Plan Description contains a summary of the Plan only. In the event of any conflict between this Summary and the Plan's full legal plan documents, the full legal plan documents shall control.

**WLF-PKG0006D**

TempleInland/Cleiland 260

# TABLE OF CONTENTS

## ARTICLE I

### DEFINITIONS

| | | |
|---|---|---|
| 1.0 | Active Service | 1 |
| 1.1 | Claims Administrator | 1 |
| 1.2 | COBRA | 1 |
| 1.3 | Code | 1 |
| 1.4 | Collective Bargaining Agreement | 1 |
| 1.5 | Company | 1 |
| 1.6 | Consulting Company | 1 |
| 1.7 | Covered Person | 1 |
| 1.8 | Date of Disability | 1 |
| 1.9 | Dependents | 1 |
| 1.10 | Disabled Person | 1 |
| 1.11 | Effective Date | 2 |
| 1.12 | Employee | 2 |
| 1.13 | Employer | 2 |
| 1.14 | ERISA | 2 |
| 1.15 | Flex Plan | 2 |
| 1.16 | Illness | 2 |
| 1.17 | Injury | 2 |
| 1.18 | Inland | 2 |
| 1.19 | Life Insurance Policy | 2 |
| 1.20 | Long Term Disability Benefits | 2 |
| 1.21 | Long Term Disability Policy | 2 |
| 1.22 | Loss of Coverage Date | 2 |
| 1.23 | Medical Opt Out Election | 2 |
| 1.24 | Medical Plan | 2 |
| 1.25 | Medicare | 2 |
| 1.26 | Notice | 2 |
| 1.27 | Plan | 2 |
| 1.28 | Plan Administrator | 3 |
| 1.29 | Plan Year | 3 |
| 1.30 | Retirement Eligible | 3 |
| 1.31 | Retirement Plans | 3 |
| 1.32 | Social Security Act | 3 |
| 1.33 | Social Security Benefits | 3 |
| 1.34 | Solutions Plan | 3 |
| 1.35 | Solutions Medical Plan | 3 |
| 1.36 | Totally Disabled | 3 |
| 1.37 | Transactions | 4 |

## ARTICLE II

### ELIGIBILITY

| | | |
|---|---|---|
| 2.0 | Disabled Persons | 4 |
| 2.1 | Medical Benefits Eligibility | 5 |
| 2.2 | Dependents | 5 |
| 2.3 | Life Insurance Benefits | 6 |
| 2.4 | Acquisitions | 6 |
| 2.5 | Effect of Enrollment | 6 |
| 2.6 | Additional Provisions | 6 |
| 2.7 | Fraud | 6 |

ARTICLE III

BENEFITS

3.0    Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7
3.1    Social Security Entitlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7
3.2    Medical Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7
3.3    Life Insurance Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7
3.4    Acquisitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

ARTICLE IV

CONTRIBUTIONS

4.0    Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8
4.1    Change in Cost . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8
4.2    Collection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

ARTICLE V

TERMINATION OF PARTICIPATION

5.0    Disability Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8
5.1    Other Termination Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9
5.2    Dependents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10
5.3    Effect of Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

ARTICLE VI

ADMINISTRATION OF PLAN

6.0    Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11
6.1    Liability of Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12
6.2    Claims for Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

ARTICLE VII

AMENDMENT AND TERMINATION OF PLAN

7.0    Amendment and Termination of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13
7.1    Other Changes by Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

ARTICLE VIII

MISCELLANEOUS PROVISIONS

8.0    Limitation of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13
8.1    No Right to Continued Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14
8.2    Rules of Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14
8.3    Governing Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14
8.4    Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

TABLE I

PARTICIPATING MEDICAL PLANS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    T-1

SCHEDULE I

ELIGIBLE HOURLY EMPLOYEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    S-1

**TempleInland/Cleiland 262**

SCHEDULE II

INELIGIBLE EMPLOYEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . S-2

SUMMARY PLAN DESCRIPTION
APPENDIX

IMPORTANT INFORMATION

| 1. | Plan Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-1 |
| 2. | Plan Sponsor and Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-1 |
| 3. | Employer ID Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-1 |
| 4. | Participating Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-1 |
| 5. | Type of Welfare Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-1 |
| 6. | Claims Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-1 |
| 7. | Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-1 |
| 8. | Agent for Service of Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-1 |
| 9. | Plan Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-1 |
| 10. | Sources of Contributions to the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-2 |
| 11. | Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-2 |
| 12. | Plan Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-2 |
| 14. | Statement of ERISA Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-2 |
| 15. | Newborns' and Mothers' Health Protection Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-3 |
| 16. | Reconstructive Surgery Following Mastectomy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPD-3 |

TempleInland/Cleiland 263

# TEMPLE-INLAND
# DISABILITY HEALTH AND WELFARE PLAN

The purpose of the Temple-Inland Disability Health and Welfare Plan is to provide financial protection against certain high medical bills and to provide financial protection through life insurance benefits to eligible Disabled Persons who were Employees of an Employer on their Date of Disability for the period of time beginning on the date of a person's loss of income through termination of employment and lasting until the person would otherwise become eligible for income through new employment or through retirement or Social Security old age insurance benefits, or until participation is otherwise terminated as set forth herein. Except as otherwise noted, this Amendment and Restatement of the Plan shall only apply to persons who are Participants (as hereinafter defined) on or after January 1, 2002.

### ARTICLE I
### DEFINITIONS

The following terms when used in this Plan shall have the meanings set forth below:

1.0 **Active Service:** An Employee will be considered to have been in "Active Service":

    a.    On any of his Employer's scheduled work days if he was performing the regular duties of his work for his regularly scheduled hours on that day either at his Employer's place of business or at some location to which he was required to travel for his Employer's business; or

    b.    On a day that was not one of his Employer's scheduled work days if he was in Active Service on the preceding scheduled work day.

1.1 **Claims Administrator:** means the plan administrator and/or claims administrator of the applicable Medical Plan, Life Insurance Policy, or Long Term Disability Policy.

1.2 **COBRA:** means Title X of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.

1.3 **Code:** means the Internal Revenue Code of 1986, as amended.

1.4 **Collective Bargaining Agreement:** means a collective bargaining agreement entered into by an Employer as set forth in the applicable schedule hereto.

1.5 **Company:** means Temple-Inland Forest Products Corporation.

1.6 **Consulting Company:** means a consulting company that assists people in filing for and obtaining Social Security Benefits and/or Medicare.

1.7 **Covered Person:** means any Disabled Person or Dependent who is eligible to participate in the Plan, who is validly enrolled in the Plan, and whose coverage has not been terminated for any reason. Where the context requires, a reference to a Covered Person shall include a reference to that person's parent or legal guardian.

1.8 **Date of Disability:** means the date the Injury occurred or the Illness began.

1.9 **Dependents:** means a Disabled Person's spouse and/or children who meet the Dependent definition and eligibility criteria under the Medical Plan.

1.10 **Disabled Person:** means a person who meets the eligibility criteria set forth in Section 2.0.

Effective: January 1, 2002        1        WLF-PKG0006D

TempleInland/Cleiand 264

**1.11**  **Effective Date:**  The Plan was originally adopted effective January 1, 1998.  This Amendment and Restatement of the Plan is effective January 1, 2002.

**1.12**  **Employee:**  means a person who met the definition of an Employee under the Solutions Plan and who was a participant in the Solutions Plan on his Date of Disability; provided, however, that "Employee" does not include (i) any person who was an Inland employee compensated on an hourly basis except at designated locations set forth in a Schedule to the Plan, or (ii) any person who was compensated on an hourly basis and who was covered by a Collective Bargaining Agreement entered into by the Company or an Employer unless such agreement, by specific reference to this Plan, provides for coverage under this Plan.  Prior to January 1, 1999, the term Employee does not include any person who was an Inland employee.

**1.13**  **Employer:**  means the Company and each of its affiliates or any business segment, unit, division or subsidiary thereof that is designated a participating Employer under the Solutions Plan.  By adopting the Plan, each Employer shall be deemed to have appointed the Company as its agent to exercise on its behalf all the powers and authorities conferred upon the Company by the terms of the Plan, including, but not limited to, the power to amend and/or terminate the Plan.  Such authority shall continue unless and until the Employer withdraws from the Plan.

**1.14**  **ERISA:**  means the Employee Retirement Income Security Act of 1974, as amended.

**1.15**  **Flex Plan:**  means the Temple-Inland Flexible Benefits Plan, prior to its termination effective December 31, 1997.

**1.16**  **Illness:**  means a physical or mental illness.

**1.17**  **Injury:**  means an accidental bodily injury.

**1.18**  **Inland:**  means Inland Paperboard and Packaging, Inc. and its subsidiaries.

**1.19**  **Life Insurance Policy:**  means an Employee group term life insurance policy sponsored by the Company and offered under the Solutions Plan.

**1.20**  **Long Term Disability Benefits:**  means monthly disability income benefits under the Long Term Disability Policy.

**1.21**  **Long Term Disability Policy:**  means a group long term disability insurance policy sponsored by the Company and offered under the Solutions Plan.

**1.22**  **Loss of Coverage Date:**  means the date the person's participation in the Solutions Plan ceased.

**1.23**  **Medical Opt Out Election:**  means a medical opt out election as defined in the Solutions Plan.

**1.24**  **Medical Plan:**  means a Company-sponsored medical plan listed on Table I hereto from time to time.

**1.25**  **Medicare:**  means the program of medical care benefits provided under Title XVIII of the Social Security Act of 1965, as amended.

**1.26**  **Notice:**  means a notice, application or request in such form (which may be written, telephonic, electronic, or another means of communication) as may be provided or specified by the Plan Administrator, the claims administrator of a benefit plan, or the review organization of a benefit plan for a particular purpose.  To be effective, such Notice must be accurate, truthful, and complete, must meet all of the requirements specified by the party to receive such Notice (including any required information, documentation, consents, or data), must actually be received by such party, and must be received within any specified time limits.

**1.27**  **Plan:**  means the Temple-Inland Disability Health and Welfare Plan, as amended from time to time.

TempleInland/Cleiland 265

**1.28**   **Plan Administrator:** means such person or committee as may be appointed from time to time by the Company to administer the Plan.

**1.29**   **Plan Year:** means the calendar year commencing on January 1 and ending on the following December 31.

**1.30**   **Retirement Eligible:** means the average date on which an Employee would become eligible to draw benefits under the Retirement Plan absent disability (the "Normal Retirement Age" as defined in the Retirement Plan, or, in the case of the Temple-Inland Savings and Retirement Plan, the maximum date until which a terminated employee may defer a distribution) or the average date on which a person would become eligible to draw full, unreduced old age insurance benefits under the Social Security Act absent disability if he were born in 1937 or earlier, notwithstanding the fact that in any particular case a person (i) might have become eligible for (or actually commenced) early retirement benefits (whether or not subsidized or reduced to reflect early commencement) under the Retirement Plan or the Social Security Act, (ii) might have become eligible for (or actually commenced) postponed retirement benefits beyond the "normal retirement age" defined in the Retirement Plan or the earliest eligibility set forth in the Social Security Act, (iii) might be a participant in (or have actually received benefits under) a Retirement Plan that does not have a "normal retirement age", (iv) might have a birth date causing his date for commencement of unreduced Social Security benefits to be age 66 or age 67, or (v) might not be eligible for benefits under the Retirement Plan or the Social Security Act.

**1.31**   **Retirement Plans:** means: the Temple-Inland Salaried Retirement Plan; the Retirement Plan for Nonsalaried Employees of Temple-Inland Forest Products Corporation; or the Temple-Inland Savings and Retirement Plan.  Prior to June 1, 1999, "Retirement Plans" means:  the Retirement Plan for Salaried Employees of Temple-Inland Forest Products Corporation; the Retirement Plan for Nonsalaried Employees of Temple-Inland Forest Products Corporation; the Inland Master Pension Plan; or the Temple-Inland Savings and Retirement Plan.

**1.32**   **Social Security Act:** means the Social Security Act of 1965, as amended.

**1.33**   **Social Security Benefits:**  means monthly disability income benefits under Title II of the Social Security Act.

**1.34**   **Solutions Plan:**  means the Temple-Inland Benefit Solutions Plan, as amended from time to time. For a person whose Date of Disability occurred prior to the original Effective Date, any reference to the Solutions Plan shall be deemed to be a reference to the Flex Plan.

**1.35**   **Solutions Medical Plan:**  means a Company-sponsored medical plan offered under the Solutions Plan.

**1.36**   **Totally Disabled:**

    a.    Prior to certification as described in subsection b. below, a person will be considered "Totally Disabled" or to have a "Total Disability" if, because of an Injury or an Illness:

        i.    He is unable to perform the basic duties of his occupation; and

        ii.    He is not performing any other work or engaging in any other occupation for wage or profit for which he is earning substantially the same compensation as he did prior to his disability.

    b.    Once a person is certified as entitled to receive Social Security Benefits and/or Long Term Disability Benefits for the original Injury or Illness that rendered him Totally Disabled on his Date of Disability, a person will be considered "Totally Disabled" or to have a "Total Disability" only if he continues to meet the requirements under the Long Term Disability Policy to continue receiving Long Term Disability Benefits or the requirements under the Social

TempleInland/Cleiland 266

Security Act to continue receiving Social Security Benefits, as such requirements may change from time to time.

1.37    **Transactions:** means enrollments, status changes, deduction changes, inquiries, elections or coverage changes, or any other action or transaction allowed under the Plan. The Plan Administrator may specify that certain inquiries and Transactions can or must be made through a paper form, a telephone call, an automated or interactive voice response system, the Internet, an intranet, or any other oral, written, digital or electronic means of communication. The Disabled Person (and Dependent, if applicable) may be required to take some action to make a Transaction happen or may be required to take some action to keep a Transaction from happening. A Personal Identification Number (PIN) may or may not be issued for Transaction and inquiry purposes.

<h3 style="text-align:center">ARTICLE II</h3>

<h3 style="text-align:center">ELIGIBILITY</h3>

2.0    **Disabled Persons:** To be eligible to participate (or continue to participate) in this Plan, a person must meet all of the criteria to be considered a "Disabled Person" as set forth below:

a.    The person must have suffered an Injury or an Illness that rendered him Totally Disabled.

b.    The person must have been an Employee of an Employer on his Date of Disability.

c.    The Date of Disability must have been a date when the Employee was in Active Service.

d.    On his Date of Disability, the Employee must have been a participant in one of the Retirement Plans.

e.    On his Date of Disability, the person must have been eligible for benefits under one of the following Employer policies as a result of his Injury or Illness:

    i.    Worker's Compensation;

    ii.    the Temple-Inland Short Term Disability Plan (or any prior plan); or

    iii.    Salary Continuation Policy.

    The person must not have ceased to be eligible to receive benefits under one of the above policies unless the ineligibility was due solely to the fact that the Disabled Person had received the maximum benefits allowable for that Disabled Person.

f.    The person must provide the Plan Administrator with proof that he has filed a claim for Social Security Benefits and, if applicable, for Long Term Disability Benefits, <u>prior to</u> the expiration of twenty-six (26) weeks from his Date of Disability;

g.    On his Date of Disability, the person must have been a participant in the Solutions Plan.

h.    The person must have ceased his participation in the Solutions Plan solely as a result of his inability to work due to his Total Disability. For an Inland Employee, the Loss of Coverage Date must be on or after January 1, 1999.

i.    The events listed in Section 5.0-a. must not have occurred, except as otherwise provided in Section 5.0-b.

j.    The events listed in Section 5.1 must not have occurred.

TempleInland/Cleiland 267

k.     The person must provide the Claims Administrator and Plan Administrator with Notice of his whereabouts, condition, ability to work, and such other information as the Claims Administrator and Plan Administrator may require from time to time.

l.     Additional requirements for eligibility to participate in the benefits offered under this Plan are set forth below and in Article III.

**2.1**  **Medical Benefits Eligibility:**  To be eligible for Medical Benefits, the Disabled Person must meet each of the following conditions:

a.     On his Loss of Coverage Date, the Disabled Person must have been a participant in a Solutions Medical Plan. A Disabled Person who had a Medical Opt Out Election in effect on his Loss of Coverage Date is not eligible for Medical Benefits under this Plan.

b.     The Disabled Person must have ceased his participation in the Solutions Medical Plan on his Loss of Coverage Date solely as a result of his inability to work due to his Total Disability.

c.     The Disabled Person must not be eligible for coverage under any medical plan sponsored or contributed to by the Company or an Employer on the basis of "current employment status" as defined in applicable Medicare law at 42 USC § 1395y(b)(1)(E)(ii) and regulations thereunder.

d.     The Disabled Person must not have continued coverage under any Solutions Medical Plan or any medical plan sponsored or contributed to by the Company or an Employer in any capacity, whether as a participant or a dependent, or under any other provisions of the Solutions Medical Plan, the Solutions Plan, or applicable law; it being the express intention of the Plan to avoid any duplication of benefits or coverage. For example, if a Disabled Person has elected to continue his coverage under the Solutions Medical Plan under COBRA or has converted his coverage to an individual policy, he is not eligible for medical benefits under this Plan.

e.     The Disabled Person must not be enrolled in a Medicare + Choice (Medicare Part C) plan.

f.     The Disabled Person must meet any eligibility requirements contained in the Medical Plan from time to time.

**2.2**  **Dependents:**

a.     Only Dependents who meet the eligibility criteria for coverage under a Medical Plan on the Loss of Coverage Date, or who are conceived by the Loss of Coverage Date, are eligible to participate in this Plan. Within 31 days of his Loss of Coverage Date (including his Loss of Coverage Date), the Disabled Person may enroll any eligible Dependents in the same Medical Plan in which the Disabled Person is enrolled. A Disabled Person may add a Dependent who was conceived on or before his Loss of Coverage Date to his coverage under the Medical Plan within thirty-one (31) days of the Dependent's birth (including the date of birth). No other Dependents are eligible for coverage under this Plan. If a Disabled Person does not enroll his eligible Dependents within the time period specified above, the Dependents will <u>never</u> be eligible to participate in the Medical Plan. If the Disabled Person acquires new Dependents subsequent to his Loss of Coverage Date, such new Dependents are <u>not</u> eligible to participate in a Medical Plan. A Disabled Person may drop a Dependent from his coverage at any time upon notice to the Plan Administrator, but such Dependent will <u>not</u> be eligible to participate in a Medical Plan again at any later date.

b.     Notwithstanding the above, if the spouse of a Disabled Person is an employee of the Company or any of its affiliates and is enrolled for medical coverage as an active employee under a medical plan sponsored by the Company or any of its affiliates immediately prior to

TempleInland/Cleiland 268

his or her retirement or other termination of service from the Company or any of its affiliates, but is <u>not</u> eligible to become a participant in the Temple-Inland Retiree Health and Welfare Plan or this Plan at the time of his or her retirement or termination of service from the Company or any of its affiliates, the employee spouse and any Dependents covered under the employee spouse's coverage at the time of termination of service may be enrolled as Dependent(s) under the Disabled Person's coverage under the Plan at the time of the employee spouse's retirement or other termination of service from the Company or any of its affiliates provided the employee spouse and any dependents meet the definition of a Dependent under the applicable Medical Plan and any other eligibility requirement set forth therein and enroll in the Plan within 31 days of the employee spouse's retirement or other termination of service from the Company or any of its affiliates.

2.3     <u>Life Insurance Benefits:</u> To be eligible for Life Insurance Benefits, the Disabled Person must have had Life Insurance coverage in effect under the Solutions Plan on his Date of Disability. The Disabled Person must continue to meet any eligibility requirements contained in the Life Insurance Policy from time to time.

2.4     <u>Acquisitions:</u> If an Employer acquires another entity and such entity's Employees in Active Service become covered under the Solutions Plan, the Employer may, but is not required to, adopt this Plan on behalf of any former employees of such entity who would otherwise meet the eligibility criteria herein except for the fact that they were not enrolled in the Solutions Plans on the Date of Disability, but only if such former employees have existing medical coverage and/or life insurance coverage that will continue beyond the date of such acquisition. If such former employees do not have existing medical benefits and/or life insurance benefits, no new benefits or rights shall be created hereunder.

2.5     <u>Effect of Enrollment:</u> A Disabled Person must enroll in the Plan within 31 days of his Loss of Coverage Date (including his Loss of Coverage Date). By enrolling or being enrolled (including a deemed enrollment) in the Plan, each person (on behalf of himself and his Dependents):

    a.     agrees to the terms of the Plan;

    b.     agrees to make any payments required under this Plan; and

    c.     authorizes all Transactions and the release of any information in response to such inquiries without the need for any written signature or further action on such person's part.

2.6     <u>Additional Provisions:</u> Additional benefits or additional provisions with respect to any classification of Participants under the Plan may be contained in any Schedule hereto.

2.7     <u>Fraud:</u> Any cards issued by the Plan, the Claims Administrator, or any other entity in connection with this Plan are for identification purposes only. Possession of said card(s) confers no rights to benefits hereunder. The card is not transferable. Any person who receives benefits or other services to which he or she is not then entitled pursuant to the provisions of this Plan must pay for such benefits or other services at non-Plan rates specified by the Claims Administrator. If a Covered Person misrepresents his or her status or coverage, or misuses or permits the misuse of a Plan identification card, the Plan may retain the identification card, terminate the Covered Person's coverage (and, if the Covered Person is the Participant, his Dependents' coverage will also be terminated), and hold the Covered Person responsible for payment of the benefits or services at non-Plan rates specified by the Claims Administrator.

TempleInland/Cleiland 269

**ARTICLE III**

**BENEFITS**

3.0    **Benefits:** A Disabled Person may be eligible for one or more of the benefits described in this Article III.

3.1    **Social Security Entitlement:** The Plan may, but is not required to, retain a Consulting Company to review the status of all Disabled Persons or Employees who (i) have suffered an Injury or Illness, (ii) have been or are expected to be absent from Active Service for five months or longer, and (iii) are expected to become Disabled Persons. If the Consulting Company determines in its sole judgment and discretion that (i) a Disabled Person or Employee who is expected to become a Disabled Person appears to meet the eligibility requirements for Social Security Benefits, and (ii) the Consulting Company can provide meaningful assistance to such person in applications and appeals to establish or continue entitlement to such Social Security Benefits, and if such person agrees to appoint such Consulting Company as his representative, the Plan will pay a fee to such Consulting Company to assist the person. Such fee will be paid directly to the Consulting Company retained by the Plan. If the Consulting Company determines in its sole judgment and discretion that a person does not appear to meet the eligibility requirements for Social Security Benefits or that the Consulting Company cannot provide meaningful assistance to such person in his applications and appeals, or if the person does not agree to appoint such Consulting Company as his representative, or if such person desires to act on his own behalf or retain a different representative, agent, or attorney, or if such assistance is provided through the Long Term Disability Policy, no fees will be payable hereunder, regardless of whether or not the person is subsequently determined to be entitled to Social Security Benefits.

3.2    **Medical Benefits:**

   a.    Medical benefits will be provided under a Medical Plan similar to the Solutions Medical Plan in which the Disabled Person was a participant on his Loss of Coverage Date if a similar plan is available in the Disabled Person's zip code area. In the alternative, the Disabled Person may enroll in a Medical Plan that is a more cost effective (higher managed care) Medical Plan as determined by the Plan Administrator in his sole discretion. If a similar plan is not available, the Disabled Person may enroll in any available Medical Plan offered in his zip code area.

   b.    The Plan Administrator shall designate an annual enrollment period each year during which a Participant may change his enrollment to a more highly managed Medical Plan (as determined by the Plan Administrator) if one is available in his zip code area. Participants are not allowed to change to a less managed Medical Plan except as determined by the Plan Administrator due to changes in the Medical Plans offered. If a Participant does not change his election during the annual enrollment period, his former election shall continue except as determined by the Plan Administrator due to changes in the Medical Plans offered.

   c.    Reference is hereby made to the applicable Medical Plan for a more complete description of the medical benefits and any further eligibility requirements.

3.3    **Life Insurance Benefits:** Life insurance is provided in an amount equal to the lesser of (i) the amount of the Disabled Person's life insurance coverage in effect under the Solutions Plan on the Disabled Person's Date of Disability, or (ii) the amount specified in the applicable Life Insurance Policy. This benefit is provided under the Life Insurance Policy, to which reference is hereby made for a more complete description of said benefit and any further eligibility requirements. The amount of such life insurance may not be increased. No life insurance is provided for Dependents.

3.4    **Acquisitions:** The benefits provided to former employees of an acquired entity shall not exceed the level of benefits provided under any plan or policy of such acquired entity.

**TempleInland/Cleiland 270**

## ARTICLE IV

### CONTRIBUTIONS

**4.0**    **Contributions:**  The Plan Administrator shall determine the amount of contributions (if any) required to be paid by the Disabled Person and his Dependent(s) from time to time to pay for the benefits hereunder.

**4.1**    **Change in Cost:**  If the cost of the coverage increases or decreases during a Plan Year, Participants' required cash contributions may, in the discretion of the Plan Administrator, be automatically increased or decreased to reflect such change in cost.  Any change in a Participant's required cash contributions shall be processed as soon as administratively practicable as determined in the Plan Administrator's sole discretion.

**4.2**    **Collection:**  The Plan Administrator may prescribe rules requiring a Disabled Person to deliver cash or a check or money order to the Company or its designee at such time, locations, and in such form as the Plan Administrator shall prescribe to pay for his required contributions.  In his discretion, the Plan Administrator may also provide for the collection of any amounts that remain unpaid upon a person's termination of coverage or otherwise, or for the offset of such amounts from any benefits otherwise payable under the Plan.

## ARTICLE V

### TERMINATION OF PARTICIPATION

**5.0**    **Disability Certification:**

a.    <u>Before Certification</u>: A Disabled Person's participation shall cease as of the <u>earliest</u> of the following to occur:

   i.    the Disabled Person's <u>initial</u> claim for <u>either</u> Social Security Benefits or Long Term Disability Benefits is denied (even if his claim for the other of such benefits is still pending), unless the Disabled Person files proof with the Plan Administrator within one hundred eighty (180) days after the denial that an appeal of such denial has been filed; or

   ii.    the denial of the Disabled Person's <u>initial</u> claim for <u>either</u> Social Security Benefits or Long Term Disability Benefits is upheld on appeal (even if his claim for the other of such benefits is still pending); or

   iii.    one hundred and four (104) weeks from the Disabled Person's Date of Disability, if he has still not been certified as entitled to receive Social Security Benefits or Long Term Disability Benefits, whether or not his claim for such benefits is pending, or if the Disabled Person has been certified but fails to provide proof of such certification to the Plan Administrator.

b.    <u>After Certification</u>: A Disabled Person's participation shall cease as of the <u>earliest</u> of the follow to occur:

   i.    if the Disabled Person was only certified for Social Security Benefits, the Disabled Person ceases to be entitled to receive Social Security Benefits or his certification expires or is cancelled or revoked for any reason, whether or not his appeal of loss of certification is pending; or

TempleInland/Cleiland 271

    ii.    if the Disabled Person was only certified for Long Term Disability Benefits, the Disabled Person ceases to be entitled to receive Long Term Disability Benefits or his certification expires or is cancelled or revoked for any reason, whether or not his appeal of loss of certification is pending; or

    iii.    if the Disabled Person was certified for both Social Security Benefits and Long Term Disability Benefits, the Disabled Person ceases to be entitled to receive both his Social Security Benefits and his Long Term Disability Benefits or his certifications expire or are cancelled or revoked for any reason, whether or not his appeal of loss of certification is pending. [If the Disabled Person loses his certification for Social Security Benefits, but is still certified for Long Term Disability Benefits, his participation under the Plan will not cease under this section until he also loses his Long Term Disability Benefits certification.  If the Disabled Person loses his certification for Long Term Disability Benefits, but is still certified for Social Security Benefits, his participation under the Plan will not cease under this section until he also loses his Social Security Benefits certification.

c.    <u>Reinstatement</u>: If a Disabled Person's participation terminates solely due to an event described in subsection 5.0-a. or 5.0-b and the Disabled Person is subsequently certified or recertified as entitled to receive either Social Security Benefits or Long Term Disability Benefits for the original Injury or Illness that rendered him Totally  Disabled on his Date of Disability, the Disabled Person may re-enroll for coverage under the Plan upon providing proof of such certification or recertification to the Plan Administrator. The Plan, the Medical Plan, and the Life Insurance Policy shall not have any liability or responsibility whatsoever for expenses, claims, losses, or damages the Disabled Person or his Dependents may have incurred during the interruption of coverage or prior to reinstatement of coverage. Coverage will be reinstated as of the date proof of certification is received by the Plan Administrator.

**5.1**    <u>**Other Termination Events**</u>: A Disabled Person's participation shall cease as of the <u>earliest</u> of the following to occur:

a.    the end of the month during which the Disabled Person recovers or is no longer Totally Disabled;

b.    the Disabled Person is employed by another employer or is re-employed by an Employer, except to the extent that (i) such employment constitutes "rehabilitative employment" as defined by the Social Security Administration or (if applicable) the Company's Long Term Disability Benefits carrier, (ii) the Disabled Person is not eligible for medical benefits or life insurance benefits (whether or not enrolled) as a result of such employment, and (iii) such employment does not extend beyond the maximum term for "rehabilitative employment" under the foregoing definitions;

c.    the Disabled Person fails to pay any required contributions;

d.    the Disabled Person ceases to be eligible to participate under the Plan, the Medical Plan, or the Life Insurance Policy;

e.    the Medical Plan or Life Insurance Policy is terminated or amended to eliminate coverage of persons including the Disabled Person (unless a substitute plan is selected by the Plan Administrator) or the Disabled Person's coverage is terminated thereunder for any reason;

f.    the Plan is terminated;

g.    the first day of the month during which the Disabled Person becomes Retirement Eligible;

h.    the Disabled Person dies;

TempleInland/Cleiland 272

i.      the person (or his physician, other health care provider, family member, guardian, or other agent or representative) fails or refuses to cooperate or provide any required information to the Claims Administrator or the Plan Administrator;

j.      any other date specified in the Medical Plan or Life Insurance Policy;

k.      the date specified by the Plan Administrator in the event of a sale of a business or other divestiture;

l.      the date as of which the Covered Person commits fraud or obtains benefits under the Plan through misrepresentation or otherwise, or fails to comply with Plan rules;

m.     the date as of which an Employer no longer participates in this Plan;

n.      The date specified in the Collective Bargaining Agreement, or the date as of which coverage hereunder is no longer provided for in the Collective Bargaining Agreement; provided, however, that if no date is specified participation shall end on the earliest of the date of termination of employment, the date a lay-off begins, or the date the Collective Bargaining Agreement ends or provides for different coverage;

o.      the date the Disabled Person is enrolled in a Medicare + Choice (Medicare Part C) plan.

5.2    **Dependents:** Coverage under the Medical Plan for any <u>one</u> of a Disabled Person's Dependents will cease on the earlier of (a) the end of the month during which the Dependent no longer qualifies as a Dependent under the Medical Plan, or (b) the earliest date specified below.  Coverage for <u>all</u> of a Disabled Persons' Dependents will cease on the earliest date below:

a.      the date the Disabled Person's coverage ceases;

b.      the date the Disabled Person ceases to be eligible to cover his Dependents;

c.      the last day for which the Disabled Person or Dependent has made any required contributions for the coverage;

d.      the day before the date as of which the Disabled Person has elected a level of coverage that does not include the Dependent(s), drops the Dependent(s) from his coverage, or otherwise fails to enroll or re-enroll the Dependent(s);

e.      the date the Medical Plan is terminated or Dependent coverage is eliminated (unless a substitute plan is selected by the Plan Administrator);

f.      the date specified in the Medical Plan;

g.      the date this Plan is terminated or Dependent coverage is eliminated;

h.      the date specified by the Plan Administrator in the event of a sale of a business or other divestiture;

i.      the date as of which the Covered Person commits fraud or obtains benefits under the Plan through misrepresentation or otherwise, or fails to comply with Plan rules;

j.      the date as of which an Employer no longer participates in this Plan;

k.      The date specified in the Collective Bargaining Agreement, or the date as of which coverage hereunder is no longer provided for in the Collective Bargaining Agreement; provided, however, that if no date is specified participation shall end on the earliest of the date of

TempleInland/Cleiland 273

termination of employment, the date a lay-off begins, or the date the Collective Bargaining Agreement ends or provides for different coverage;

l.      the date the Dependent is enrolled in a Medicare + Choice (Medicare Part C) plan.

**5.3**    **Effect of Termination:** Except as provided in subsection 5.0-c., once a Disabled Person's or Dependent's participation under a Medical Plan ceases, he can <u>never</u> enroll in a Medical Plan again. If a Disabled Person's medical coverage ceases but he is otherwise still qualified to participate in the Plan, he may continue to participate in the Life Insurance Policy until the date specified in Section 5.0 or Section 5.1.

For example:

1.      Mary drops her Medical Plan coverage because she is covered as a dependent under a group health plan offered by her husband's employer. She can continue her Life Insurance Coverage under this Plan. If her husband later loses his job and his group health coverage, Mary cannot re-enroll in a Medical Plan under this Plan.

2.      John enrolls in a Medicare + Choice plan. He is therefore no longer eligible to participate in a Medical Plan, but he is still eligible to continue his Life Insurance coverage. If John decides to drop his Medicare + Choice coverage the next year and re-enroll in traditional Medicare Part A and Part B, he cannot re-enroll in a Medical Plan under this Plan.

**ARTICLE VI**

**ADMINISTRATION OF PLAN**

**6.0**    **Plan Administrator:**

a.      <u>Authority of Plan Administrator:</u>  The Plan Administrator shall be responsible for the administration, operation and interpretation of the Plan. The Plan Administrator shall establish rules and regulations appropriate for the administration of the Plan. The Plan Administrator shall have the exclusive right to interpret the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan in his sole discretion, and all such decisions, actions and records of the Plan Administrator shall be conclusive and binding upon Participants, Dependents, the Company, the Employers, and all persons having or claiming to have any right or interest in or under the Plan. Notwithstanding the foregoing sentence, to the extent that the Claims Administrator has been delegated the authority to administer claims under the Medical Plan, including the determinations of whether expenses are covered expenses, medically necessary, or otherwise eligible for reimbursement hereunder, or to administer claims under the Life Insurance Policy, the Claims Administrator shall be considered the Plan Administrator and shall have the exclusive right to interpret the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan in its sole discretion, and all such decisions, actions and records of the Claims Administrator shall be conclusive and binding upon Participants, Dependents, the Company and all persons having or claiming to have any right or interest in or under the Plan. The Plan Administrator shall have the exclusive authority to determine whether a defect has occurred (or is alleged to have occurred) in the operation of the Plan and, if so, to correct such defect (or alleged defect) inside or outside of the Plan, which may include such equitable remedies (including waivers or modifications of Plan provisions) as he, in his sole discretion, shall deem appropriate.

b.      <u>Outside Assistance:</u> The Plan Administrator may employ such counsel, accountants, claims administrators, utilization or patient care review organizations, consultants, actuaries and other person or persons as it shall deem advisable. To the extent not paid by the Plan, the

TempleInland/Cleiland 274

Company shall pay the compensation of such person or persons and any other reasonable expenses incurred by the Plan Administrator in the administration of the Plan.

c.   Delegation of Authority:  The Plan Administrator may delegate to (i) any agent or agents of the Company or any Employer or (ii) any employee or employees of the Company or any Employer, severally or jointly, the authority to perform any ministerial or routine act in connection with the administration of the Plan.

d.   Records:  The Plan Administrator shall maintain such records as are required under ERISA or under the Code and such additional records as he deems necessary or appropriate showing the fiscal transactions of the Plan.

6.1   **Liability of Plan Administrator:**  The Plan Administrator shall not be liable for any act or omission on its own part, excepting only its own willful misconduct or gross negligence except as is otherwise expressly provided by ERISA.  To the fullest extent permitted by applicable laws, the Company shall indemnify and save harmless the Plan Administrator against any and all claims, demands, suits or proceedings in connection with the Plan that may be brought by  Employees, Participants, Dependents, or their Spouses or dependents or by any other person, corporation, entity, government or agency thereof; provided, however, that such indemnification shall not apply with respect to acts or omissions of willful misconduct or gross negligence.  The Company, at the Company's expense, may settle any such claim or demand asserted or suit or proceeding brought against the Plan Administrator when such settlement appears to be in the best interests of the Company or any Employer.

6.2   **Claims for Benefits:** If the Claims Administrator offers an external review program that has been approved by the Plan Administrator, the decision of the external reviewer shall be final and no further review or appeal shall be offered under the Plan.

a.   Processing of Claims:  Claims for benefits shall be processed by the insurer, Claims Administrator, or other person or entity designated by the plan administrator of the Medical Plan or the Life Insurance Policy. Each Covered Person must follow the claims procedure and review procedure set forth by the Claims Administrator.

b.   Claims Procedure: If any person believes he is being denied any rights or benefits under the Plan, such person may file a claim in writing with the Plan Administrator.  If any such claim is wholly or partially denied, the Plan Administrator will notify such person of its decision in writing.  Such notification will be written in a manner calculated to be understood by such person and will contain (i) specific reasons for the denial, (ii) specific reference to pertinent Plan provisions, (iii) a description of any additional material or information necessary for such person to perfect such claim and an explanation of why such material or information is necessary, and (iv) information as to the steps to be taken if the person wishes to submit a request for review.  Such notification will be given within 90 days after the claim is received by the Plan Administrator (or within 180 days, if special circumstances require an extension of time for processing the claim, and if written notice of such extension and circumstances is given to such person within the initial 90 day period).  If such notification is not given within such period, the claim will be considered denied as of the last day of such period and such person may request a review of his claim.

c.   Review Procedure: Within 60 days after the date on which a person receives a written notice of a denied claim (or, if applicable, within 60 days after the date on which such denial is considered to have occurred) such person (or his duly authorized representative) may (i) file a written request with the Plan Administrator for a review of his denied claim and of pertinent documents and (ii) submit written issues and comments to the Plan Administrator.  The Plan Administrator will notify such person of its decision in writing.  Such notification will be written in a manner calculated to be understood by such person and will contain specific reasons for the decision as well as specific references to pertinent Plan  provisions.  The decision on review will be made within 60 days after the request for review is received by the Plan

TempleInland/Cleiland 275

Administrator (or within 120 days, if special circumstances require an extension of time for processing the request, such as an election by the Plan Administrator to hold a hearing, and if written notice of such extension and circumstances is given to such person within the initial 60 day period). If the decision on review is not made within such period, the claim will be considered denied.

## ARTICLE VII

### AMENDMENT AND TERMINATION OF PLAN

**7.0** **Amendment and Termination of Plan:** The Plan may be amended or terminated at any time by action of the Board of Directors of the Company. In addition to the authority of the Board to amend or terminate the Plan, the Plan Administrator may at any time amend the contents of any appendices, schedules and tables.

**7.1** **Other Changes by Plan Administrator:** If the Plan Administrator determines, before or during any Plan Year, that the Plan may fail to satisfy for such Plan Year any nondiscrimination requirement or benefit limitation imposed by the Code, ERISA, or any applicable federal law, the Plan Administrator may take such action as the Plan Administrator deems appropriate, under rules uniformly applicable to similarly situated Participants and/or Dependents, so as to ensure compliance with such requirements or limitations.

## ARTICLE VIII

### MISCELLANEOUS PROVISIONS

**8.0** **Limitation of Rights:** It is the express purpose and intention of the Plan that, except as otherwise provided by ERISA, no liability whatsoever shall attach to or be incurred by the shareholders, directors, officers or employees of the Company or any Employer or of any representatives appointed hereunder by the Company under or by reason of any of the terms and conditions of the Plan. Neither the establishment and maintenance of the Plan, nor any provision or amendment thereof, nor any act or omission under or resulting from the operation of the Plan, shall be construed:

a. as conferring upon any Employee, former Employee, Disabled Person, Participant, Dependent, Spouse, beneficiary or any other person, firm, corporation or association, any legal or equitable right or claim against the Plan Administrator, the Investment Committee, the Trust, the Trustee, the Trust Fund, or against the Company or any Employer or any of their affiliates, except to the extent that such right or claim shall be specifically and expressly provided in the Plan or provided by law, nor against any shareholder, director, officer, or employee of the Company or any Employer or any of their affiliates. Any and all such rights and claims, whether arising by common law or in equity or created by statute, are hereby expressly waived and released to the fullest extent permitted by law by every Participant and every Employee, former Employee, or Disabled Person, on behalf of himself, his Dependents, his Spouse, dependent or other beneficiary and any and all other persons who might claim through him as a condition of and as a part of the consideration for participation in the Plan;

b. as an agreement, consideration or inducement of employment or affecting in any manner the rights or obligations of the Company or any Employer or of any Employee to continue or to terminate the employment relationship at any time; or

c. as creating any responsibility or liability of the Plan Administrator or the Company or any Employer for the validity or effect of the Plan.

**8.1** **No Right to Continued Employment:** The establishment of the Plan shall not be construed as conferring any rights upon any person for a continuation of employment or for reemployment, nor shall

Effective: January 1, 2002                    13                    WLF-PKG0006D

TempleInland/Cleiland 276

it be construed as limiting in any way the right of the Company or an Employer to discharge any person or to treat him without regard to the effect which such treatment might have upon him as a Participant under the Plan.

8.2   **Rules of Construction:** The masculine pronoun wherever used shall include the feminine pronoun, and the singular shall include the plural unless the context clearly indicates the distinction. The headings contained in the Plan are for convenience of reference only, and shall not be construed as defining or limiting the matter contained thereunder. Any failure to enforce any provision of this Plan in any instance shall not be construed as a waiver of the right to enforce such provision in that instance or any other instance or as a waiver of any other provision of this Plan.

8.3   **Governing Plan:** This Plan is not a stand alone plan; Benefits are provided through the Medical Plan and/or Life Insurance Policy, and it may be funded in whole or in part through the Temple-Inland Health and Welfare Benefits Plan and Trust, all as amended from time to time. In the event of any conflict between a provision in this Plan and a provision in the Medical Plan, Life Insurance Policy, or Temple-Inland Health and Welfare Benefits Plan and Trust, the more restrictive provision shall control unless the Plan Administrator in his sole discretion determines otherwise.

8.4   **Governing Law:** Solely to the extent not preempted by the Code or ERISA (if any), this Plan shall be construed, administered and enforced according to the laws of the State of Texas.

Effective: January 1, 2002                    14                    WLF-PKG0006D

# TABLE I

## TO THE

## TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN

### PARTICIPATING MEDICAL PLANS

| | |
|---|---|
| WLF-MED0159D | AmCare HMO (Dallas) Group No. 301142 |
| WLF-MED0160D | AmCare HMO (Oklahoma) Group No. 600174 |
| WLF-MED0156D | BCBS of Michigan Blue Care HMO For Disabled Persons Group No. 07849-393 |
| WLF-MED0155D | BCBS of Michigan Community Blue PPO 250 for Disabled Persons Group No. 54807-000 |
| WLF-MED0153D | BCBS of NW NY Blue Advantage POS for Disabled Persons Group No. 00315059/ADV |
| WLF-MED0009D | Blue Cross and Blue Shield of Alabama Plan for Disabled Persons - Group No. 42395 |
| WLF-MED0013D | Blue Cross Blue Shield Blue Choice POS for Disabled Persons (d/b/a for HMO Georgia, Inc.) Blue Cross - Policy No. 1002803-000-001 |
| WLF-MED0146D | Blue Cross Blue Shield of Central NY BluePoint POS for Disabled Persons Group No. 645020 |
| WLF-MED0075D | Blue Cross Blue Shield of Maryland for Disabled Persons Group Enrollment No. 900619 |
| WLF-MED0152D | Blue Cross Blue Shield of NW NY Community Blue HMO for Disabled Persons Group No. 00315059/NCB |
| WLF-MED0057D | Exclusive Provider Plan for Disabled Persons - Humana Health Plan of Texas, Inc. Groups L 7248 and L7274 |
| WLF-MED0008D | First Priority Health Active Plan for Disabled Persons - Group Master Contract - Group No. 62558 |
| WLF-MED0048D | Kaiser Foundation Health Plan of Colorado, Inc. for Disabled Persons Contract 853-001; 853-002 |
| WLF-MED0045D | Kaiser Foundation Health Plan, Inc (Northern California) Insurance Policy for Disabled Persons Group No. 35855-0000 |
| WLF-MED0044D | Kaiser Foundation Health Plan, Inc (Southern California) - Insurance Policy for Disabled Persons Group No. 105070 |
| WLF-MED0060D | Medica Choice Select POS for Disabled Persons Group No. 62160 |
| WLF-MED0141D | Medica Elect HMO for Disabled Persons Group No. 84689 |
| WLF-MED0154D | Mohawk Valley Plan Scotia, NY for Disabled Persons  Group No. 23822 |
| WLF-MED0111D | Pacificare Health Systems, Inc. Standard 10 Plan for Disabled Persons Group No. 144796 |
| WLF-MED0018D | Temple-Inland Designated Provider Plan for Disabled Persons • • • |
| WLF-MED0127D | Temple-Inland Exclusive Provider Organization Plan VI for Disabled Persons (Aetna Group 606066-17-978) |

Effective: January 1, 2002

T-1

WLF-PKG0006D

TempleInland/Cleiland 278

WLF-MED0033D    Temple-Inland Exclusive Provider Plan for Disabled Persons • •

WLF-MED0027D    Temple-Inland Fee-For-Service Plan for Disabled Persons • • •

WLF-MED0032D    Temple-Inland GateKeeper Preferred Provider Organization Plan for Disabled Persons • •

WLF-MED0022D    Temple-Inland Preferred Provider Organization Plan for Disabled Persons • • •

WLF-MED0128D    Temple-Inland Preferred Provider Organization Plan VI for Disabled Persons (Aetna Group No. 606066-17-977) • • •

WLF-MED0103D    Temple-Inland's Exclusive Provider Plan I for Disabled Persons (Benefit Planners Group No. 99041-B) • • •

WLF-MED0129D    Temple-Inland's Exclusive Provider Plan V for Disabled Persons (Benefit Planners Group No. 99041-F) • •

WLF-MED0114D    Temple-Inland's Fee-For-Service Plan I for Disabled Persons (Benefit Planners Group No. 99041-C) • • •

WLF-MED0106D    Temple-Inland's Preferred Provider Organization Plan I for Disabled Persons (Benefit Planners Group No. 99041-A) • • •

WLF-MED0113D    Temple-Inland's Preferred Provider Organization Plan II for Disabled Persons (Benefit Planners Group No. 99041-A) • • •

WLF-MED0063D    Wellcom Health Plan of Indiana For Disabled Persons - Group No. 4492

**• •**    **Prescription Drug Benefits:**

–    Participants who elect and remain covered by a plan marked with ( • ) will also be covered under the Temple-Inland Prescription Drug Plan for Disabled Persons or the Temple-Inland's Prescription Drug Plan I for Disabled Persons to which reference is hereby made for a more complete description of said benefit.  This Benefit is not available to Employees who elect a Medical Plan option that provides its own prescription drug benefits.

–    Copayments and other amounts paid by Employees and/or Dependents under the Temple-Inland Prescription Drug Plan for Disabled Persons or the Temple-Inland's Prescription Drug Plan I for Disabled Persons do not count toward deductibles, copayment limits, out-of-pocket limits, or any other payments required under any of the Medical Plans.  Likewise, copayments and other amounts paid by Employees and/or Dependents under a Medical Plan do not count toward deductibles, copayments, or any other payments required under the Temple-Inland Prescription Drug Plan for Disabled Persons or the Temple-Inland's Prescription Drug Plan I for Disabled Persons.

**• •**    **Behavioral Health Benefits:**

–    Participants who elect and remain covered by a plan marked with ( • ) will also be covered under the Temple-Inland Behavioral Health Plan for Disabled Persons or Temple-Inland's Behavioral Health Plan I for Disabled Persons, to which reference is hereby made for a more complete description of said benefit.  This Benefit is not available to Employees who elect a Medical Plan option that provides its own mental health/substance abuse benefits.

Effective: January 1, 2002                                T-2                                WLF-PKG0006D

TempleInland/Cleiland 279

- Copayments and other amounts paid by Employees and/or Dependents under the Temple-Inland Behavioral Health Plan for Disabled Persons or Temple-Inland's Behavioral Health Plan I for Disabled Persons do not count toward deductibles, copayment limits, out-of-pocket limits, or any other payments required under any of the Medical Plans. Likewise, copayments and other amounts paid by Employees and/or Dependents under a Medical Plan do not count toward deductibles, copayments, or any other payments required under the Temple-Inland Behavioral Health Plan for Disabled Persons or Temple-Inland's Behavioral Health Plan I for Disabled Persons.

## Employee Assistance Program:

- Disabled Persons are also eligible to participate in the Temple-Inland Employee Assistance Program for Disabled Persons, to which reference is hereby made for a more complete description of said benefit. The cost of such coverage is included in the rates for the applicable Medical Plan and it cannot be separately elected or rejected.

Effective: January 1, 2002

T-3

WLF-PKG0006D

TempleInland/Cleiland 280

**SCHEDULE I**

TO THE

TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN

**ELIGIBLE HOURLY EMPLOYEES**

Hourly employees at the following Inland locations are eligible to participate in the Plan:

Crawfordsville, Indiana
Maysville, Kentucky
Harrington, Delaware
Streetsboro, Ohio

Effective: January 1, 2002                S-1

**SCHEDULE II**

TO THE

TEMPLE-INLAND DISABILITY HEALTH AND WELFARE PLAN

**<u>INELIGIBLE EMPLOYEES</u>**

Employees who were employees of Gaylord Container Corporation on February 28, 2002 are not eligible to participate in the Plan.

TempleInland/Cleiland 282

**SUMMARY PLAN DESCRIPTION**
**APPENDIX**

**IMPORTANT INFORMATION**

1.  <u>**Plan Name:**</u>  The name of the Plan is Temple-Inland Disability Health and Welfare Plan.

2.  <u>**Plan Sponsor and Employer:**</u>  The name and address of the Plan Sponsor and Employer is:

> Temple-Inland Forest Products Corporation
> P.O. Drawer N
> 303 South Temple Drive
> Diboll, Texas  75941

> A complete list of the employers sponsoring the Plan may be obtained by participants and beneficiaries upon written request to the Plan Administrator, and is available for examination by participants and beneficiaries at the office of the Plan Administrator.  A list will also be made available at any employer facility at which at least 50 employees customarily work within 10 days of a request to the Plan Administrator or Human Resources representative at such facility. Participants and beneficiaries may receive from the Plan Administrator, upon written request, information as to whether a particular employer is a sponsor of the Plan and, if the employer is a Plan Sponsor, the Sponsor's address.

3.  <u>**Employer ID Number:**</u>  The Employer identification number assigned by the Internal Revenue Service to the Plan Sponsor is 75-1462427.

4.  <u>**Participating Plan:**</u>  This plan is a participating plan in the Temple-Inland Health and Welfare Benefits Plan, a voluntary employees' beneficiary association, and its plan number is 515.

5.  <u>**Type of Welfare Plan:**</u>  Group health.

6.  <u>**Claims Administration:**</u> Medical claims and life claims are administered by the Claims Administrator of the applicable Medical Plan or Life Insurance Policy.  <u>For fastest service, participants should send any claims to the claims office whose address appears on their member identification card or in the summary plan description of the applicable Medical Plan or Life Insurance Policy.</u>

7.  <u>**Plan Administrator:**</u>  The name, business address and business telephone number of the Plan Administrator is:

> Temple-Inland Inc. Benefits Administration Committee
> Temple-Inland Forest Products Corporation
> P. O. Drawer N
> 303 South Temple Drive
> Diboll, Texas  75941
>
> (936) 829-1422

8.  <u>**Agent for Service of Process:**</u>  Service of legal process may be made upon the Plan Administrator at the address above or upon the Plan Trustee.

9.  <u>**Plan Trustee:**</u>  The Trustee of the Temple-Inland Health and Welfare Benefits Trust is:

> State Street Bank and Trust Company
> One Enterprise Drive
> North Quincy, Massachusetts 02171-2197

Effective: February 28, 2002                    SPD-1                    WLF-PKG0006D

10. **Sources of Contributions to the Plan:** The Plan Administrator calculates the amount of contributions required from Participants and/or Employers.

11. **Funding:** Certain of the Medical Plans are insured, while other Medical Plans are self-funded, as described in the summary plan description for the applicable Medical Plan. All assets through which benefits are provided are accumulated in the Temple-Inland Health and Welfare Benefits Trust. A Claims Administrator of a self-funded Medical Plan does not insure this Plan or guarantee benefits under this Plan in any manner. The Life Insurance Policy is insured.

12. **Plan Year:** The Plan Year for purposes of maintaining the Plan's fiscal records is the calendar year (January 1 through December 31).

13. **Qualified Medical Child Support Orders:** A description of the Plan's procedures governing qualified medical child support order (QMCSO) determinations is included in the summary plan description volume under the heading "Temple-Inland Qualified Medical Child Support Order Procedures." You may also obtain a copy of these procedures from the Plan Administrator free of charge.

14. **Statement of ERISA Rights:** As a participant in the Plan named above, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

**Receive Information About Your Plan and Benefits**

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

**Continue Group Health Plan Coverage**

Continue health care coverage for yourself, spouse or dependents if there is a loss of coverage under the Plan as a result of a qualifying event. You or your dependents may have to pay for such coverage. Review this summary plan description and the documents governing the Plan on the rules governing your COBRA continuation coverage rights.

Reduction or elimination of exclusionary periods of coverage for preexisting conditions under your group health plan, if you have creditable coverage from another plan. You should be provided a certificate of creditable coverage, free of charge, from your group health plan or health insurance issuer when you lose coverage under the Plan, when you become entitled to elect COBRA continuation coverage, when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to 24 months after losing coverage. Without evidence of creditable coverage, you may be subject to a preexisting condition exclusion for 12 months (18 months for late enrollees) after your enrollment date in your coverage.

TempleInland/Cleiland 284

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

15. **Newborns' and Mothers' Health Protection Act:** Group health plans and health insurance issuers generally may not, under Federal law, restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, Federal law generally does not prohibit the mother's or newborn's attending provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours as applicable). In any case, plans and issuers may not, under Federal law, require that a provider obtain authorization from the plan or the insurance issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours).

16. **Reconstructive Surgery Following Mastectomy:** When a covered individual receives benefits for a mastectomy and decides to have breast reconstruction, based on consultation between the attending physician and the patient, the health plan must cover:

   a.    Reconstruction of the breast on which the mastectomy was performed;

Effective: February 28, 2002                    SPD-3                    WLF-PKG0006D

b.    Surgery and reconstruction of the other breast to produce a symmetrical appearance; and

c.    Prostheses and treatment of physical complications in all stages of mastectomy, including lymphedema.

This coverage is subject to the same deductibles, copayments, and coinsurance provisions that apply to other benefits under the Plan.

Effective: February 28, 2002              SPD-4              WLF-PKG0006D

TempleInland/Cleiland 286

# TEMPLE-INLAND SALARIED RETIREMENT PLAN

## Amended and Restated June 1, 1999

## SUMMARY PLAN DESCRIPTION

## Publication Date:  December 1, 2001

TempleInland/Cleiland 287

**Summary Plan Description**
**Temple-Inland Salaried Retirement Plan**                    **TABLE OF CONTENTS**

| <u>Section</u> | | <u>Page</u> |
|---|---|---|
| 1 | Introduction ................................................................................ 1 | |
| 2 | Plan Administration ..................................................................... 2 | |
| 3 | How the Plan Works..................................................................... 3 | |
| 4 | Special Terms - What They Mean................................................ 4 | |
| 5 | Becoming a Participant of the Plan ............................................. 7 | |
| 6 | Retirement Benefits..................................................................... 9 | |
| 7 | Accrued Benefit.......................................................................... 16 | |
| 8 | Vested Benefits .......................................................................... 16 | |
| 9 | Payment of Retirement and Termination Benefits.................... 17 | |
| 10 | Death Benefits.......................................................................... 20 | |
| 11 | Claim Procedures...................................................................... 22 | |
| 12 | Leaves of Absence and Military Service.................................... 23 | |
| 13 | Rights Upon Reemployment ..................................................... 24 | |
| 14 | Loss of Benefit ......................................................................... 26 | |
| 15 | Investment of the Trust Fund ................................................... 27 | |
| 16 | Plan Amendment and Termination............................................ 28 | |
| 17 | Your Legal Rights...................................................................... 30 | |
| 18 | Top-Heavy Rules....................................................................... 32 | |
| 19 | Social Security Benefits............................................................ 33 | |
| 20 | Special Provisions Applicable to Inland Employees Who Were Participants Prior to June 1999................................ 33 | |
| 21 | Schedule of Participating Employers......................................... 34 | |

TempleInland/Cleiland 288

# SECTION 1 - INTRODUCTION

Your Employer is aware of the need for a comprehensive employee benefits program. It is an important factor in obtaining and keeping qualified people. Because financial security after retirement is important, your Employer adopted the Temple-Inland Salaried Retirement Plan to provide retirement benefits for certain of its salaried employees as included on the attached "Schedule of Participating Employers".

This Summary Plan Description explains the Plan as it applies to all such salaried employees in active service who end their employment on or after June 1, 1999.

Former employees whose employment ended before June 1, 1999, may have certain rights under this Plan. This Summary Plan Description, however, is not intended to explain the Plan as it applies to these employees.

We recommend that you take the time to read this Summary Plan Description carefully. Your retirement plan includes several options from which you may select in your retirement planning. These options will affect such things as when and how your benefits are paid. In order to make full use of these options, it is important that you fully understand them.

Your retirement benefits can only be paid to you if you can be located. Therefore, be sure your Human Resources Department always has your current address. Also, you should read your legal rights in Section 17.

This Summary Plan Description has been prepared as accurately as possible. It outlines a complex and technical legal document (the Plan itself). The resolution of any specific question depends upon the precise terms of the Plan document rather than the explanation in this Summary Plan Description. The information in this booklet describes the major aspects of the Plan as amended and restated as of June 1, 1999, including all amendments made through the date of publication. **In the event of any discrepancy between the terms of the Plan document and this Summary Plan Description, the Plan document, as in effect at the relevant time, will control.**

Copies of the Plan document are available for your inspection and you are encouraged to examine them at the Corporate Benefits office. If you have any questions after reading this Summary Plan Description or if you would like to discuss the details further, your Human Resources Department or the Retirement Committee will be glad to help you.

TempleInland/Cleiland 289

## SECTION 2 - PLAN ADMINISTRATION

**Sponsor:**

This plan is maintained by:

Temple-Inland Forest Products Corporation
303 S. Temple Drive
Diboll, TX  75941
(936) 829-1422

**Plan Administrator:**

The Retirement Committee is the Plan Administrator.  The Retirement Committee is appointed by the Board of Directors of Temple-Inland Forest Products Corporation.

c/o:

Temple-Inland Forest Products Corporation
303 S. Temple Drive
Diboll, TX  75941
(936) 829-1422

**Plan Name:**

Temple-Inland Salaried Retirement Plan

**Identification Numbers:**

Employer Number:          75-1462427

Plan Number:               002

**Plan Trustee:**

State Street Bank and Trust Company
P.O. Box 1389
Boston, MA  02104

**Type of Plan:**

Defined Benefit Pension Plan

**Type of Administration:**

Employer Administered

**Agent for Legal Process:**

Service of legal process should be made on the Retirement Committee at the address shown above. Service of legal process may also be made upon the Plan Trustee at the address shown above.

**Other Sponsors:**

See attached "Schedule of Participating Employers" (Employer).

– 2 –

TempleInland/Cleiland 290

## SECTION 3 - HOW THE PLAN WORKS

### Normal Retirement Benefit

The Normal Retirement Benefit is payable to each Participant of the Plan who retires on or after age 65. See Section 6 for details.

### Postponed Retirement Benefit

You may continue to work after your Normal Retirement Date and be entitled to receive a Postponed Retirement Benefit. See Section 6 for details.

### Early Retirement Benefit

Early Retirement Benefits are payable if you are a Participant who retires on or after the date you have both (1) attained the age of 55 and (2) completed at least 5 years of Vesting Service. This date will be referred to as your Early Retirement Eligibility Date. See Section 6 for details.

### Disability Benefit

A Disability Benefit is provided to all actively employed Participants who become totally disabled, prior to their Normal Retirement Date. See Section 6 for details.

### Termination of Employment

Employees who leave the Employer prior to Normal Retirement Age of 65 but after completing at least 5 years of Vesting Service are eligible to receive a Vested Benefit. See Section 8 for details.

### Death Benefit in Service

A Death Benefit is payable to the spouse of a vested Participant who dies while still working or to the beneficiary of an unmarried vested Participant who (1) is at least age 55 or (2) has children under age 21, and who dies while still in active employment. See Section 10 for details.

### Cost

Your Employer pays the entire cost of the Plan. Contributions are made to the trust fund based on information furnished annually by an independent actuary. Employees are not required nor permitted to contribute to this Plan.

TempleInland/Cleiland 291

## SECTION 4 - SPECIAL TERMS - WHAT THEY MEAN

**It is important to understand the following terms, which are used throughout this booklet.**

### Break in Service

A Break in Service occurs when you leave your Employer, and then are reemployed and your period of termination lasts 12 consecutive months or more. Any approved leave of absence will not cause a Break in Service provided you return to work on or before the date your approved leave ends. An approved leave of absence may not exceed 24 months. A leave of absence for military duty will not cause a Break in Service as long as you return to work while you have reemployment rights under the law. If you do not return to your Employer at the end of an approved leave, you will be considered terminated as of the earliest of:

    (a)  the date on which your leave expired;

    (b)  the first anniversary of the date your leave began; or

    (c)  the date of your retirement, termination, discharge, resignation, or death.

In determining the length of your Break in Service for the above purposes, you should exclude up to the first two years of any absence that is due to maternity or paternity leaves. (Note: You may be required to provide proof of these absences.)

If you are reemployed after you become a Participant or after you have completed one year of Eligibility Service, you will be eligible to participate upon reemployment.

If you are reemployed after a one-year Break in Service, you will not lose credit for your prior Credited and Vesting Service if you were entitled to any vested benefits prior to reemployment. If you were not entitled to any vested benefits, you will lose credit for prior Credited and Vesting Service if the number of your consecutive Breaks in Service equal or exceed 5 years.

### Compensation

Compensation means your earnings from your Employer for services rendered during the calendar year, as reported on your Form W-2 but exclusive of severance pay, stock option income, payments made with respect to performance units, restricted stock, any form of non-cash compensation, allowances, fringe benefits (cash or non-cash), moving expenses, welfare benefits, excess cafeteria plan or solutions credits, insured weekly disability pay, industrial injury compensation, and such other payments or income designated by the Employer. Compensation also includes amounts you contribute to the Section 125 Plan (cafeteria plan) or 401(k) Plan as pretax contributions.

**TempleInland/Cleland 292**

Compensation in excess of $200,000 (indexed after 2002 for cost of living) is not included.

It should be noted that sales representatives whose aggregate Compensation is based only on commissions are limited in the amount of earnings used under the Plan based upon certain maximum salary grade assumptions.

### Final Average Monthly Compensation

Final Average Monthly Compensation is used to calculate the amount of your retirement benefit. Your Final Average Monthly Compensation is the average of the highest 5 years of your Compensation during the 10 calendar years before your termination of service.

### Average Social Security Wage Base

Average Social Security Wage Base is determined as the average of the Social Security maximum taxable wage base over the 35 year period before your termination of service. This amount is used to calculate the amount of your retirement benefit.

### Credited Service

Credited Service is used to calculate your benefit. Generally speaking, Credited Service is the number of years and completed months from your last date of hire by your Employer to your date of termination or retirement. Nonpaid leaves of absence are excluded, although absences of less than one month and certain absences due to military service will be included.

If you leave your Employer and are later reemployed, you may or may not lose the Credited Service that you had when you left. See Section 13 for your rights upon reemployment.

### Eligibility Service

Eligibility Service determines if you have met the requirements to participate in the Plan. You will receive a year of Eligibility Service for each Eligibility Computation Period in which you complete 1,000 or more Hours of Service. "Eligibility Computation Period" means the 12-month period beginning on your date of hire. If you do not complete 1,000 hours of service in the initial Eligibility Computation Period, the Eligibility Computation Period will become the 12-month period beginning on the first day of each Plan Year (January 1), starting with the Plan Year in which the first anniversary of your date of hire occurs.

TempleInland/Cleiland 293

### Hour of Service

Hour of Service means each hour for which you are paid or entitled to payment by your Employer.

### Participant

You become a Participant of the Plan on the date you become eligible as explained in Section 5 of this booklet.

### Plan Year

The Plan Year is the calendar year beginning on January 1 and ending on December 31.

### Retirement Committee

Retirement Committee means the individuals who are appointed by the Board of Directors of Temple-Inland Forest Products Corporation and are responsible for the administration and interpretation of the Plan.

### Vesting Service

Vesting Service is used to determine if you are eligible for a benefit and will not necessarily be the same as your Credited Service. Once you have completed 5 or more years of Vesting Service, you have earned the right to receive a retirement benefit. Vesting Service generally means your total period of service in years from your last date of hire. Up to the first 12 months of any approved leave of absence is included as Vesting Service. The portion of any absence that exceeds 12 months is not included in your Vesting Service unless it was included in your Credited Service.

If you leave your Employer without having 5 years of Vesting Service and are later reemployed, you will lose the Vesting Service you had when you left if you are gone longer than 5 years. See Section 13 for your rights upon reemployment.

TempleInland/Cleiland 294

# SECTION 5 - BECOMING A PARTICIPANT OF THE PLAN

## Eligible Employees

You are eligible to become a Participant of the Plan if you are a salaried employee of your Employer. However, you are not eligible if you are: (1) a leased employee, (2) an employee covered by a collective bargaining agreement and such agreement does not provide that you are eligible to be a Participant of the Plan, (3) a Participant (or will be a Participant) in any other qualified defined benefit plan maintained by the Employer, or (4) a nonresident alien with no U.S. source income.

Please note that if you are with a newly acquired branch or division, you may not be covered under the Plan. Check with the Retirement Committee to see if your branch or division is covered under the Plan.

## Becoming a Participant

Eligible employees become Participants after completing a year of Eligibility Service without incurring a Break in Service.

Participation begins automatically on the first day of the month on or next following the date the requirements are met, provided you are in active service of your Employer at that time. If you are not in active service, your participation will not begin until the first day of the month on or after your return. You are not required to take any action in order to participate.

For example, you will become a Participant in the Plan on the first day of the month after your first anniversary of your date of hire provided you worked 1,000 or more Hours of Service in that year. Otherwise you will become a Participant as of January 1 next following the 12-month period ending December 31 that you completed 1,000 or more Hours of Service.

## Change in Status

If you are not an eligible employee when you are hired but later become an eligible employee, you will become a Participant of the Plan if you have completed a year of Eligibility Service without incurring a Break in Service. A Participant who becomes an ineligible employee will stop earning benefits under the Plan during the period of ineligibility.

## Transfers While Employed

**Transfers Between Participating Sponsors**: If you transfer directly between any of the Sponsors that have adopted and are participating in this Plan, you will continue to be a Plan Participant as if you had not transferred.

**Transfers Out of the Plan:** If you transfer directly to a subsidiary or other controlled group member of **Temple-Inland Inc.** that has not adopted this Plan, you will no longer be an active Plan Participant. In this case, you will be eligible for a retirement plan benefit that equals the vested Accrued Benefit you have earned to your date of transfer. If you are not 100% vested on your date of transfer, your later service will count toward your Vesting Service, but not your Credited Service.

**Transfers Into the Plan:** If you were a salaried employee of a subsidiary or other controlled group member of Temple-Inland Inc. that is not a Participating Employer under this Plan, generally, the time you worked for the subsidiary or other controlled group member will count toward your Vesting and Credited Service. However, any benefits, which you may be entitled to receive under any retirement plan of the non Participating Employer, will be subtracted from your benefits under this Plan.

## SECTION 6 - RETIREMENT BENEFITS

### Normal Retirement

Your Normal Retirement Date is the first day of the month falling on or next following the date you reach age 65.

**Normal Retirement Benefit:** If you retire on your Normal Retirement Date, you will receive a monthly benefit equal to the larger of the amounts determined under Formula 1 or Formula 2 shown below:

### Normal Retirement Formula 1

| | |
|---|---|
| **Part A** | .95% x Final Average Monthly Compensation x years of Credited Service *up to 35 years* |
| | plus |
| **Part B** | .65% x Final Average Monthly Compensation in excess of Average Social Security Wage Base x years of Credited Service *up to 35 years* |
| | plus |
| **Part C** | .80% x Final Average Monthly Compensation x years of Credited Service *over 35 years* |
| | equals |
| | Your monthly benefit amount |

### Normal Retirement Formula 2

$16 x total years of Credited Service

equals

Your monthly benefit amount

### Normal Retirement Benefit Example:

Suppose you were hired on January 1, 1971, and retired at age 65 effective December 31, 2000 with a Final Average Monthly Compensation of $3,000. Your Monthly Average Social Security Wage Base would be $2,925.

### Formula 1 Calculation

| | |
|---|---|
| **Part A** | .95% x $3,000 x 30 years of Credited Service --- $855.00 |
| | plus |
| **Part B** | .65% x $75* x 30 years of Credited Service --- $14.70 |
| | equals |
| | monthly benefit amount --- $869.70 |

– 9 –

*This $75 is the difference between Final Average Monthly Compensation and the Average Social Security Wage Base ($2,925 for 2000).

*Please note*, since you did not work in excess of 35 years in our example, Part C of the plan formula does not apply; therefore, it is not used to calculate your retirement benefit.

**Formula 2 Calculation**

$16 x 30 years of Credited Service

equals

monthly benefit amount --- $480.00

**Larger of Formula 1 and Formula 2 = $869.70**

**If you are not married when you retire** and do not choose another method of benefit payment, your monthly Normal Retirement Benefit (as calculated under the above example) payable for your lifetime would be $869.70.

**If you are married when you retire** and do not choose another method of benefit payment with your spouse's consent, your monthly Normal Retirement Benefit would be payable under the Qualified Joint and 50% Survivor Option. Your life only benefit would be modified using the Qualified Joint and 50% Survivor Option factor. Let us assume a factor of 90% in our example:

| Your Monthly Life Only Benefit | | Qualified Joint and 50% Survivor Option Factor | | Your Monthly Age 65 Qualified Joint and 50% Survivor Benefit |
|---|---|---|---|---|
| $869.70 | X | .90 | = | $782.73 |

You would receive $782.73 per month for the rest of your life. After your death, your qualified surviving spouse would receive 50% of the monthly benefit, or $391.37.

**Postponed Retirement**

If you continue working past your Normal Retirement Date, your monthly Postponed Retirement Benefit will be equal to the benefit you have accrued as of your date of termination of service which includes any additional benefits earned beyond your Normal Retirement Date.

–10–

### Early Retirement

Your Early Retirement Eligibility Date is the first day of the month on or following the date you have both (1) attained age 55 and (2) completed 5 years of Vesting Service.

### Early Retirement Benefit

If you elect to receive your Early Retirement Benefit immediately on or after your Early Retirement Eligibility Date, you will receive a monthly benefit equal to the larger of the amounts determined under Formula 1 or Formula 2 shown below:

### Formula 1 Calculation

**Part A**    .95% x Final Average Monthly Compensation x years of Credited Service *up to 35 years*, multiplied by the Early Retirement Adjustment Factor specified in Schedule A below based upon your attained age (in years and months) on your Early Retirement Date and based upon your number of years of Vesting Service as of your Early Retirement Date

plus

**Part B**    .65% x Final Average Monthly Compensation in excess of Average Social Security Wage Base x years of Credited Service *up to 35 years*, multiplied by the Early Retirement Adjustment Factor specified in Schedule B below based upon your attained age (in years and months) on your Early Retirement Date and based upon your Social Security Retirement Age

plus

**Part C**    .80% x Final Average Monthly Compensation x years of Credited Service *over 35 years*, multiplied by the Early Retirement Adjustment Factor specified in Schedule A below based upon your attained age (in years and months) on your Early Retirement Date and based upon your number of years of Vesting Service as of your Early Retirement Date

equals

Your monthly benefit

TempleInland/Cleiland 299

### Formula 2 Calculation

$16 x total years of Credited Service multiplied by the Early Retirement Adjustment Factor specified in Schedule A below based upon your attained age (in years and months) on your Early Retirement Date and based upon your number of years of Vesting Service as of your Early Retirement Date

equals

Your monthly benefit amount

**TempleInland/Cleland 300**

SCHEDULE A

| Attained Age on Early Retirement Date | Early Retirement Adjustment Factor If Vesting Service on Early Retirement Date Is: | |
|---|---|---|
| | Less than 20 Years | 20 Years or More |
| 65 | 1.000 | 1.000 |
| 64 | .970 | 1.000 |
| 63 | .940 | 1.000 |
| 62 | .910 | 1.000 |
| 61 | .880 | .940 |
| 60 | .850 | .880 |
| 59 | .790 | .820 |
| 58 | .730 | .760 |
| 57 | .670 | .700 |
| 56 | .610 | .640 |
| 55 | .550 | .580 |

SCHEDULE B

| Attained Age on Early Retirement Date | Early Retirement Adjustment Factor If Your Social Security Retirement Age Is: | | |
|---|---|---|---|
| | 65 | 66 | 67 |
| 65 | 1.000 | 1.000 | 1.000 |
| 64 | 1.000 | 1.000 | .923 |
| 63 | 1.000 | .923 | .846 |
| 62 | .923 | .846 | .769 |
| 61 | .846 | .769 | .730 |
| 60 | .769 | .730 | .692 |
| 59 | .730 | .692 | .653 |
| 58 | .692 | .653 | .615 |
| 57 | .653 | .615 | .576 |
| 56 | .615 | .576 | .529 |
| 55 | .576 | .529 | .486 |

Straight line interpolation between the next higher age and the next lower age shall be used in Schedules A and B above to determine the factor that applies to a Participant whose attained age in years and months on his Early Retirement Date is not a whole number of years.

– 13 –

TempleInland/Cleiland 301

**If you are not married when you retire** and do not choose another method of payment, your monthly Early Retirement Benefit (as calculated under the above formulas) will be payable for your lifetime.

**If you are married when you retire** and do not choose another method of payment with your spouse's consent, a Joint and 50% Survivor Option factor based on your age and the age of your spouse will reduce your lifetime benefit. See Section 9 for other payment options.

If your Early Retirement Benefit does not start immediately, you may have death benefit protection for your beneficiary in the event that you should die before your payments are scheduled to start. See **Death After Termination and Before Payments Start** in Section 10.

### Disability Retirement

If you become disabled while you are employed by your Employer after you have become a participant in the Plan, you may apply for Disability Retirement. To be considered totally disabled, you must provide medical proof, satisfactory to the Retirement Committee, that you are prevented from engaging in any regular remunerative employment or occupation for the Employer and that you have been certified as totally disabled by the Social Security Administration or the Employer's insured long term disability program. Also, you must make written application for the payment of a Disability Benefit.

No disability benefit is payable if your disability results from any of the following causes:

1. use or misuse of alcohol, drugs, intoxicants or other controlled substances;

2. injury or disease contracted, suffered or incurred while engaged in, or which resulted from having engaged in, a criminal enterprise;

3. an intentionally self-inflicted injury;

4. injury or disease sustained while serving in any armed forces and which results in receiving any governmental pension or other regular governmental allotment for such disability and prevented a return to employment with the Employer; or

5. injury or disease sustained which was diagnosed or discovered subsequent to the date your employment was terminated.

– 14 –

TempleInland/Cleiland 302

**Disability Retirement Benefit:** If your employment ended as a result of disability, you will be eligible to receive a Disability Retirement Benefit payable on your Normal Retirement Date. You will not be eligible for an Early Retirement Benefit.

Your monthly Disability Retirement Benefit is equal to the anticipated monthly retirement income you would have been eligible to receive if you had continued working until your Normal Retirement Date at the same rate of Compensation you received in the calendar year prior to your termination of service.

Your monthly Disability Retirement Income is payable for your lifetime. However, other forms of payment are available, including the Qualified Joint and 50% Survivor Option for married Participants.

If you become eligible for a Disability Retirement Benefit but die before your Normal Retirement Date and before you have recovered from your disability, **Death After Disability and Before Payments Start** in Section 10 describes the death benefit that may be payable on your behalf.

### Recovery from Disability

If you recover from disability prior to your Normal Retirement Date, you will not be entitled to a Disability Retirement Benefit. If you do not return to the active service of the Employer, you will still qualify for a retirement benefit if you meet the necessary requirements to qualify for a Vested Benefit (as described in Section 8) at the date of your recovery from disability, assuming you had worked until the date of your recovery. Your Vested Benefit will begin at age 65 or you may elect a reduced amount beginning after you have met the eligibility requirements for an Early Retirement Benefit.

TempleInland/Cleiland 303

## SECTION 7 - ACCRUED BENEFIT

Your **Accrued Benefit** is equal to the benefit you have accrued as of your date of termination of service.

Your Accrued Benefit is payable in the form of a monthly Life Only Option subject to certain requirements if you are married (see Section 9.) This benefit commences on your Normal Retirement Date.

## SECTION 8 - VESTED BENEFITS

If you leave your Employer for any reason before your Normal Retirement Age of 65, you may receive a **Vested Benefit**. The Vested Benefit is the portion of your Accrued Benefit (as described in Section 7), which is vested (owned by you). Your Accrued Benefit will vest according to the following schedule:

| Years of Vesting Service | Percentage Vested |
|---|---|
| Less than 5 | 0% |
| 5 or more | 100% |

Your monthly Vested Benefit will normally start on your Normal Retirement Date. However, you may elect to start receiving your Vested Benefit after termination of your service beginning as early as age 55. If your payments start early, your benefit will be reduced to take into account the early commencement of payments as described in Section 6 under **Early Retirement Benefit**.

If your Vested Benefit does not start immediately, you may be entitled to death benefit protection for your beneficiary in the event that you should die before your payments are scheduled to start. See **Death After Termination and Before Payments Start** in Section 10.

Your vested benefit is payable under the Life Only Option, subject to certain requirements if you are married. See Section 9 for other payment options.

– 16 –

## SECTION 9 - PAYMENT OF RETIREMENT AND TERMINATION BENEFITS

The amount of your Accrued Benefit is payable under the Life Only Option if you are single, and the Joint and 50% Survivor Option if you are married, as described below. Other forms of payment are available. The amount of retirement income that is payable under each form of payment is different. This is because payments may be spread out over different periods of time under each of the forms of payment. Naturally, the longer the time period over which the retirement income is expected to be paid, the smaller the monthly amount will be.

In determining the amount of retirement income that is payable under each form of payment, it is assumed that each person who may receive payments is in good health and has a normal remaining life expectancy. Based on this assumption, all of the forms of payment have the same starting value based upon the average time that each person is expected to live.

### Available Forms of Payment

You may elect to receive your retirement benefit in one of the following forms of payment. The Plan specifies the assumptions to be used to convert to these alternative forms of payment. You can check with the Retirement Committee for the specific factors that apply to you. You, and your spouse if you are married, must waive the automatic form of payment in order to choose one of the other options.

**Life Only Option:** *(This is the automatic form for single participants.)* Under this form of payment, you receive a monthly benefit that will be payable to you for as long as you live. No additional payments will be paid after your death even if you should die after receiving only one payment.

**5 Years Certain and Life Option:** Under this form of payment, you receive a monthly benefit that will be payable to you for as long as you live, but your retirement income payments will be made for a minimum of 5 years. That is, if you die before you have received payments for 5 years, the same monthly benefit that you were receiving will be continued to a person that you designate as your beneficiary for the remainder of the 5 years. If you die after you have received payments for 5 years, no additional payments will be made after your death. You may also elect this option with payments guaranteed for a period certain of either 10, 15 or 20 years.

**Joint and Survivor Option:** Under this form of payment, you receive a monthly benefit that will be payable to you for as long as you live. If the person that you have named as your joint pensioner is still living at the time of your death, 50%, 75% or 100% (specified by your election) of the monthly income that you were receiving will be paid to that person for as long as he or she lives. If your joint pensioner is not living at the time of your death, no additional payments will be made after your death. When the percentage you elected is 50% and the joint pensioner is your spouse, this form is known as the Qualified Joint and 50% Survivor Annuity and is the automatic form of payment to married participants.

– 17 –

TempleInland/Cleiland 305

The following summary lists some of the advantages and disadvantages of each method of payment:

| Method | Advantages | Disadvantages |
|--------|-----------|---------------|
| Life Only | Usually the largest income. | No additional payments after death. |
| 5 Years Certain and Life<br><br>(You may also elect a period certain of 10, 15, or 20 years and monthly payments are adjusted accordingly.) | Provides for payments for at least 5 years. | Payments are usually smaller than under Life Only method.<br><br>Payments stop at the end of 5 years if your death occurs before you have received payments for 5 years.<br><br>No additional payments if your death occurs after you have received payments for 5 years. |
| Joint and Survivor<br><br>(A percentage of the amount that you were receiving, which is either 50%, 75% or 100% specified by you, is payable to your joint pensioner after your death.) | Payments will be made for as long as either you or your designated joint pensioner is living. | Payments are usually smaller than under Life Only method.<br><br>If you elect a percentage less than 100%, only a portion of the amount you were receiving is payable to your joint pensioner after your death. |

### Important Factors in Deciding Upon the Form of Payment

Before choosing the way you want to receive your retirement income, you need to give serious consideration to your own special circumstances. You should consider such things as your own health and, if applicable, the health of your wife or husband, and what will happen to your dependents after your death. You should also consider any additional money that will be available to provide for the security of your family after your death from sources such as other employer-sponsored plans, Social Security, and your own savings and insurance.

### Electing Form of Payment

Before your payments start, you will be given information to help you decide on the form of payment that you want. If you have questions regarding the forms of payment or want additional information, you may request the Retirement Committee to provide you with additional information. Requests for any specific detailed information should be made in writing.

After you make your decision, your election must be properly completed and filed with the Retirement Committee no earlier than 90 days before the date your retirement income payments actually start and no later than your filing deadline date. Your filing deadline date is the date your retirement income payments are scheduled to start or, if later, the date 90 days after the date you were furnished with a description of the benefits you are entitled to receive. If you should request any specific detailed

– 18 –

additional information concerning your benefits, your filing deadline date will be extended, if applicable, to the date that is 90 days after the date you are furnished such information.

If you do not file your election with the Retirement Committee before the date your retirement benefits are scheduled to start, the commencement of your retirement benefit payments will be delayed until your election is completed and filed with the Retirement Committee. If you do not indicate a specific form of payment, you will be considered to have elected the **Joint and 50% Survivor Option** if you are married or the **Life Only Option** if you are not married.

### Protected Rights of Your Spouse

Under federal law, your husband or wife has a protected right to receive a benefit payable for life if you die after your benefit payments have started. He or she may waive this protected right, however. What this means is that, if you are married, you must have the consent of your husband or wife before you can receive payment of your benefit in the form that you want. This consent will not be required if at least 50% of the monthly payments you were receiving will be continued after your death to your surviving husband or wife for as long as he or she lives. If the consent of your husband or wife is required, it must be in writing, must be witnessed by a notary public or a Plan representative, and must be filed with the Retirement Committee at the same time you file your election as described above. If you elect an option and have the proper consent of your husband or wife, but you later want to change the person or persons you had named as your beneficiary or joint pensioner under that option or want to make any other changes in the option, it will normally be necessary for you to again obtain the consent of your husband or wife.

### Changing Election

You may change your option election at any time before payments begin. No changes are permitted once your retirement income payments have commenced.

### Small Benefits

If the lump-sum value of your vested Accrued Benefit is $10,000 or less, you may elect to receive the value of your vested benefit in a single lump-sum cash payment. If the lump-sum value of your vested Accrued Benefit is $5,000 or less, the Plan will automatically pay the value of your vested benefit in a single lump-sum cash payment.

– 19 –

## SECTION 10 - DEATH BENEFITS

### Benefit If You Die While Employed

If you are a married employee of your Employer who is vested in the plan and you die prior to the date that your benefit payments commence, a death benefit will be payable to your surviving spouse. The amount of benefit payable to your spouse under these circumstances would be the same amount she or he could have received if you had terminated employment on the day before death occurred and you had elected the Joint and 50% Survivor Option as your form of payment with your spouse as the designated beneficiary to begin (i) on your earliest retirement date under the Plan, or (ii) immediately after your death, if later.

**Please note** that this benefit only applies if you are married and vested at the date of your death.

If you are an unmarried employee of your Employer who is vested at date of death and has attained age 55 and you die prior to the date that your benefit payments commence, your designated beneficiary will receive a monthly income payable for a period certain of 5 years with payments beginning on the first day of the month following your death. The amount of the monthly payments is an amount equal to the monthly retirement income that would have been payable as your Early Retirement Benefit (see Section 6) if you had elected the 5 Years Certain and Life Option. If you are an unmarried employee of your Employer who is vested and you die before age 55, a monthly death benefit is also payable for a period certain of 5 years to any surviving children who have not attained age 21 prior to the date you would have attained age 55.

**Please note** that this benefit only applies if you are unmarried and vested at the date of your death.

### Death After Disability and Before Payments Start

If you leave your Employer because of disability and are eligible for a Disability Retirement Benefit under Section 6 and you die before your Normal Retirement Date and before you have recovered from your disability, a death benefit may be payable on your behalf. Your death benefit will be determined and payable in the same manner as though you had been an active employee working during the time of your disability and you had died as an active employee.

### Death After Termination and Before Payments Start

If you leave your Employer with a vested right to your Accrued Benefit and payment of your Vested Benefit will not start until some later date, you may be entitled to death benefit protection during the period after you left your Employer and before payment of

–20–

your Vested Benefit starts. If you die during this period and have a surviving spouse at the date of your death or have attained age 55, the amount which would have been used to provide your Vested Benefit will be used to provide your beneficiary with a benefit at the date of your death.

This death benefit will be payable in the same manner as the death benefit that is payable to the beneficiary of a Participant whose death occurs while actively employed. Of course, if you receive a lump-sum settlement at termination, no death benefit protection will be available.

### Death After Retirement

Whether or not a benefit will be payable to your beneficiary upon your death after retirement depends on the form of retirement income you were receiving. Each form provides different protection for your spouse or other beneficiary. In many cases there will not be any additional payments due after your death. See Section 9 for a description of the different forms of payment that are available.

TempleInland/Cleiland 309

## SECTION 11 - CLAIM PROCEDURES

If you wish to file a claim for benefits under the Plan, the Retirement Committee will supply you with all the forms necessary for the proper filing of your claim. You should contact your Human Resources Department for these forms.

It is your responsibility to inform the Retirement Committee of any change in address.

If you apply for a benefit and all or part of it is denied, the Retirement Committee will notify you by written statement within 90 days after the receipt of your claim of either (1) reasons for such denial, or (2) a statement indicating that an extension of time to 180 days is needed to process your claim. This statement will be mailed by certified or registered mail to the Participant's last known mailing address.

When you receive this initial statement from the Retirement Committee, it will contain:

- the specific reason(s) for the denial of benefits;

- a specific reference to the pertinent provisions of the Plan upon which the denial is based;

- a description of any additional material or information that is needed to process your claim, if any; and

- an explanation of any further review or appeal procedure on your part.

If you decide to appeal the Retirement Committee's decision, you must do so by written application within 60 days after the receipt of the above written statement from the Retirement Committee. You may request to appear personally to give further evidence and to review the documents.

The Retirement Committee will notify you by written statement within 60 days of the receipt of your appeal of either (1) a final decision on the matter, or (2) a statement indicating that an extension to 120 days is needed to process your claim. This notice will be sent by certified or registered mail and delivered to the participant's known address.

The Retirement Committee's decision on an appeal will be final. Once the above appeal process has been followed, there will be no further appeal on any ruling by the Retirement Committee.

**TempleInland/Cleiland 310**

## SECTION 12 - LEAVES OF ABSENCE AND MILITARY SERVICE

Any leave of absence approved by your Employer will not terminate your employment if you return to work on or before the date that your approved leave time ends. Your leave of absence cannot exceed 24 months except for military service as described below. If you do not return to work before the end of your leave time, your employment will be considered terminated as of the earlier of: (1) date that your leave time ends or (2) the first anniversary of the date your leave began. However, if you should retire, resign, be discharged, or terminate your employment for any other reason before the end of your leave time, your employment will be considered terminated as of the date of your retirement, resignation, discharge, or other termination.

If you leave your Employer because of military service, your employment will not be terminated if you return to work with your Employer within the period of time that you have reemployment rights under Federal law. Contributions, benefits and service credit with respect to qualified military service will be provided as required by law.

## SECTION 13 - RIGHTS UPON REEMPLOYMENT

If you leave your Employer and are later reemployed, you may be treated under the Plan as a new employee or you may start participating immediately and have your prior years of Credited Service and Vesting Service restored. Your rights depend upon the length of your prior service and the length of your absence. Briefly, the rules which apply to absences are:

- If you return to work within one year after you left, you will be treated as though you had been on an approved leave of absence.

- If it is longer than a year before you return to work, you will become a Participant immediately and your prior years of Credited Service and Vesting Service will be restored if either of the following conditions apply:

  - You are a vested participant when you leave (see Section 8),

  - You had not completed 5 years of Vesting Service when you left but you were gone for less than 5 years.

- If neither of the above conditions applies, you will be treated as a new employee and only your Credited Service and Vesting Service after you return to work will be counted.

### Reemployment After Receiving Distribution

If you were vested in your Accrued Benefit when you left and you received the value of your Accrued Benefit in a lump-sum payment, your prior years of Credited and Vesting Service will still be restored but the value of your Accrued Benefit when you later retire or terminate your employment will be reduced by the value of the lump-sum payment that you received.

If you are rehired and are receiving monthly retirement benefit payments at the time of your reemployment, your payments will normally be suspended during your period of full-time reemployment. Your prior years of Credited Service and Vesting Service will be restored, but your Accrued Benefit at your later retirement or termination will be reduced to reflect the payments you have already received.

TempleInland/Cleiland 312

### Special Rules for Maternity and Paternity Absences

A Qualified Maternity or Paternity Leave refers to an approved absence from work because:

- You are pregnant,
- You or your spouse give birth to a child,
- You adopt a child, or
- You need to care for your child for a period of time following birth or adoption.

A part (up to 12 months) of a Qualified Maternity or Paternity Leave may be included as Vesting Service. If your employment should be terminated before you return to work, you may exclude up to the first two years of such absence in determining the length of your absence.

For example: You have been with your Employer for 3 years. On March 1, 1999, you go on Qualified Maternity or Paternity Leave. You do not return to work until December 1, 2005. The first 2 years of your absence, that is, the period beginning March 1, 1999, and ending March 1, 2001, is not counted when determining the length of time that you were absent. When you return on December 1, 2005, the length of your absence is considered to be only 4 years and 9 months, which is less than 5 years, so you do not lose your prior Credited Service and Vesting Service.

TempleInland/Cleland 313

## SECTION 14 - LOSS OF BENEFIT

The Plan is a valuable tool in planning for your retirement years. As you work for your Employer, you continue to build years of Credited Service and Vesting Service. Obviously, the longer you work for your Employer, and receive more pay, the greater your Accrued Benefit becomes.

### Termination

If your employment with your Employer ends before your benefit is vested, you will not receive any benefits under the Plan.

### Change of Address

If you leave your Employer and have a Vested Benefit under the Plan, you need to keep the Retirement Committee informed of your current mailing address so your checks may be mailed to you. If there is any doubt as to whether or not you are receiving your checks, you will be notified by mail at your last known address in the Retirement Committee's records that your checks will be stopped until you provide evidence you are still alive and your checks are being sent to the proper mailing address. If your checks are stopped but are started again at a later date, you will be entitled to a make-up payment equal to the sum of the checks you did not receive.

### Loss of Service

You may lose the Credited Service and Vesting Service you have earned if you leave your Employer after becoming a Participant in the Plan and are later reemployed. Section 13 describes the conditions that may cause you to lose this service.

### Death

If you die while an active Participant and before you (1) have a Vested Benefit or (2) attain age 55 if you are single without any children under age 21, no benefits are payable from the plan.

### Non-Assignability of Benefits, Qualified Domestic Relations Orders (QDROs)

The Plan's assets are used exclusively to provide benefits to you and your survivors while the Plan continues. They cannot be used for any other purpose. This applies both to your Employer and to you, because you cannot assign, transfer or encumber your benefits nor use them as collateral for a loan.

However, plans such as ours must obey certain court orders (such as divorce decrees) that require a percentage of your benefits to be paid to your spouse, former spouse, child, or dependent. If such an order is a **"Qualified Domestic Relations Order"**

– 26 –

(QDRO) from a court, any such payments will not violate this rule.  In order to be "qualified," the court order has to meet certain standards.  You should understand that the Plan has no discretion in these matters.  The Plan must obey the order of the court.  You may obtain a free copy of the Plan's QDRO procedures from the Corporate Benefits office.

## SECTION 15 - INVESTMENT OF THE TRUST FUND

The contributions to the Plan are deposited and held in the Temple-Inland Master Retirement Trust.  Current contributions by your Employer to the Plan are being deposited with the Plan Trustee, and are invested under the terms of a trust agreement between your Employer and the Trustee. Benefit payments are currently being paid by the Trustee from the assets held in the trust fund.

TempleInland/Cleiland 315

## SECTION 16 - PLAN AMENDMENT AND TERMINATION

No amendment to this Plan can retroactively reduce benefits already accrued by you, except when required to comply with an act of Congress or an Internal Revenue Service rule. Although your Employer intends the Plan to be permanent, it reserves the right to amend or to terminate the Plan at any time. Upon termination of the Plan, you will become 100% vested in your current Accrued Benefit. However, benefits will be provided only by the assets of the Trust Fund at the time of Plan termination and ordinarily no further contributions will be made. The assets will be distributed in a manner approved by the Internal Revenue Service and in accordance with rules administered by the Pension Benefit Guaranty Corporation (PBGC).

### Distributions in Event of Plan Termination

In the event that the Plan should be terminated, annuities may be purchased from an insurance company to provide the benefit to which you are entitled. However, small benefits with a value of $5,000 or less may be paid in a lump sum.

The Retirement Committee expects the assets of the Plan to be sufficient to fund your retirement benefits. However, if, on termination, there are not sufficient assets to fund the Accrued Benefits of all Participants, the assets will be allocated according to the following priorities:

First, to that portion of the Accrued Benefits derived from voluntary contributions, if any;

Next, to that portion of the Accrued Benefits derived from mandatory contributions, if any;

Next, equally to:

(1) Retired or terminated participants who started receiving benefits at least three years prior to Plan termination; and

(2) Beneficiaries of any deceased, retired or terminated participants who started commencement of benefits at least three years prior to Plan termination; and

(3) Participants who could have retired (i.e., met eligibility requirements for Normal or Early Retirement) but did not receive payment of benefits at least three years prior to Plan termination or beneficiaries of such participants who could have retired but did not at least three years prior to Plan termination;

Next, all benefits guaranteed by the Pension Benefit Guaranty Corporation (PBGC), if any (see next subsection);

Next, all vested (determined prior to termination) benefits not guaranteed by PBGC.

Lastly, all other Accrued Benefits.

If there are assets remaining after all the benefits in the above priorities have been paid in full, the remaining assets will be distributed to the Employer.

### Benefits Insured by PBGC

Your pension benefits under this plan are insured by the Pension Benefit Guaranty Corporation (PBGC), a federal insurance agency. If the plan terminates (ends) without enough money to pay all benefits, the PBGC will step in to pay pension benefits. Most people receive all of the pension benefits they would have received under their plan, but some people may lose certain benefits.

The PBGC guarantee generally covers: (1) Normal and early retirement benefits; (2) disability benefits if you become disabled before the plan terminates; and (3) certain benefits for your survivors.

The PBGC guarantee generally does not cover: (1) Benefits greater than the maximum guaranteed amount set by law for the year in which the plan terminates; (2) some or all of benefit increases and new benefits based on plan provisions that have been in place for fewer than 5 years at the time the plan terminates; (3) benefits that are not vested because you have not worked long enough for the company; (4) benefits for which you have not met all of the requirements at the time the plan terminates; (5) certain early retirement payments (such as supplemental benefits that stop when you become eligible for Social Security) that result in an early retirement monthly benefit greater than your monthly benefit at the plan's normal retirement age; (6) non-pension benefits, such as health insurance, life insurance, certain death benefits, vacation pay, and severance pay.

Even if certain of your benefits are not guaranteed, you still may receive some of those benefits from the PBGC depending on how much money your plan has and on how much the PBGC collects from employers.

For more information about the PBGC and the benefits it guarantees, ask your plan administrator or contact the PBGC's Technical Assistance Division, 1200 K Street N.W., Suite 930, Washington, D.C. 20005-4026 or call 202-326-4000 (not a toll-free number). TTY/TDD users may call the federal relay service toll-free at 1-800-877-8339 and ask to be connected to 202-326-4000.

Additional information about the PBGC's pension insurance program is available through the PBGC's website on the Internet at http://www.pbgc.gov.

TempleInland/Cleiland 317

## SECTION 17 - YOUR LEGAL RIGHTS

If you believe that your rights under the Plan have been violated, you have the right to bring legal action against the Plan in a court of law. The Retirement Committee is the agent named to receive service of legal process. The Trustee may also receive service of legal process.

As a participant in the Temple-Inland Salaried Retirement Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

### Receive Information About Your Plan and Benefits

Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure room of the Pension and Welfare Benefit Administration.

Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies.

Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

Obtain a statement telling you whether you have a right to receive a pension at normal retirement age (age 65) and if so, what your benefits would be at normal retirement age if you stop working under the plan now. If you do not have a right to a pension, the statement will tell you how many more years you have to work to get a right to a pension. This statement must be requested in writing and is not required to be given more than once every twelve (12) months. The plan must provide the statement free of charge.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise

discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a pension benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits, which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the plan's decision or lack thereof concerning the qualified status of a domestic relations order or medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

TempleInland/Cleiland 319

# SECTION 18 - TOP-HEAVY RULES

The Internal Revenue Code contains a test that must be performed every year on qualified plans such as this one. The test was designed to ensure that all employees benefit from the Plan on a fair and equitable basis. In general, if key employees (owners, shareholders, highly compensated employees, etc.) are entitled to more than 60% of the benefits, the Plan is determined to be "Top Heavy".

This Plan is not currently top-heavy but could become top-heavy in some future year. Therefore, the Department of Labor requires that these top-heavy rules be included in this booklet.

### Minimum Benefit

If the Plan is top-heavy, your Accrued Benefit can never be less than your Minimum Benefit. Your Minimum Benefit is 2% of your highest 5-year average monthly compensation multiplied by the number of your years of Vesting Service, up to a maximum of 10 years, that you earned during Plan Years that the Plan is top-heavy.

If you are a participant in another plan maintained by your Employer, the Minimum Benefit may be provided in or combined with the benefit under that plan. If the other plan is a defined contribution plan, a contribution equal to 5% of compensation will equal the 2% per year benefit accrual.

### Minimum Vesting

In the first year this Plan becomes top-heavy, the vesting schedule will switch from the one described in Section 8 to the one below:

| Years of Vesting Service | Percentage Vested |
|---|---|
| Less than 2 years | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 or more | 100% |

This vesting schedule will remain in effect until the Plan is no longer top-heavy. However, if you have three or more years of Vesting Service when the Plan ceases to be top-heavy, the above Minimum Vesting schedule will continue to apply to you. If you have two but less than three years of Vesting Service, you will continue to be 20% vested until your vested percentage under Section 8 is greater.

TempleInland/Cleiland 320

## SECTION 19 - SOCIAL SECURITY BENEFITS

Retired participants can start receiving Social Security benefits as early as age 62. Your retirement income under the Plan will not in any way limit the amount of Social Security benefit that you are eligible to receive.

Social Security changes from time to time, so it is impossible to tell exactly how much you will receive until you apply for benefits. Your nearest Social Security Administration Office can estimate what your benefit may be when you retire.

It is best to apply for Social Security three months in advance of your retirement, or if later, within three months of the date you want payments to commence. When you apply, you should take your birth certificate as proof of your age. You might need to show your marriage certificate. It is also helpful to take your W-2 form from the year before. Do not put off applying because you do not have these three things. Social Security will accept other proof of your age, marriage, and earnings.

If you are married when you start receiving your Social Security check, your spouse may be able to receive a check also, if he or she has turned 62. In addition, if you have eligible dependent children, additional benefits may be payable on their behalf.

## SECTION 20 - SPECIAL PROVISIONS APPLICABLE TO INLAND PAPERBOARD AND PACKAGING, INC. EMPLOYEES WHO WERE PARTICIPANTS IN THE INLAND MASTER PENSION PLAN PRIOR TO JUNE 1, 1999

In order to protect those employees who are nearing retirement age at the time of the adoption of the amended and restated Plan and to assure that no employee's Accrued Benefit at that time is being reduced, the following minimum benefits are being provided on behalf of Inland Paperboard and Packaging, Inc. employees who were participants in The Inland Master Pension Plan prior to June 1, 1999.

### Minimum Accrued Benefit

If you were a Participant in the above superseded retirement plan prior to June 1, 1999, the amount of your Accrued Benefit determined as of any given date after June 1, 1999, will not be less than the amount of the monthly benefit that you had earned as of May 31, 1999.

### Special Early Retirement Eligibility

If you were a Participant in the above-superseded retirement plan prior to June 1, 1999 and you were also employed on January 1, 1987, by your Employer, you shall be eligible for early retirement if you have completed at least 25 years of vesting service.

– 33 –

## SECTION 21 – SCHEDULE OF PARTICIPATING EMPLOYERS

Guaranty Bank:    employees of the former Kilgore Federal Savings and Loan Association hired prior to January 1, 1991 only (excluding employees of Kilgore branches or operations managed by Guaranty Federal Bank prior to January 1, 1991)

Inland Paperboard & Packaging, Inc.

Lumbermen's Investment Corporation and its subsidiaries:    employees hired prior to January 1, 1991 only

Sabine Investment Company of Texas, Inc.

Temple-Inland Forest Products Corporation

Temple-Inland Inc.

Guaranty Residential Lending, Inc.:  employees of the former Lumbermen's Investment Corporation of Texas hired prior to January 1, 1991 only

Texas South-Eastern Railroad Company

Guaranty Insurance Managers, Inc.:  employees hired prior to January 1, 1991 only

Temple-Inland Land and Timber, Inc.

**TempleInland/Cleland 322**