# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| CATHY CLEILAND; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | 2:07-CV-00486-MEF-SRW |
| LIFE INSURANCE COMPANY OF | ) | |
| NORTH AMERICA; | ) | |
| TEMPLE-INLAND DISABILITY | ) | |
| HEALTH AND WELFARE PLAN; and | ) | |
| TEMPLE INLAND FOREST PRODUCTS | ) | |
| CORPORATION; | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND REPLY TO DEFENDANTS' RESPONSES IN OPPOSITION TO PLAINTIFF'S MOTIONS TO COMPEL AND OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

COMES NOW the Plaintiff, Cathy Cleiland, and files this Opposition to Defendants' Motion to Strike, Reply to Defendants' Responses in Opposition to Plaintiff's Motions to Compel[1] and Opposition to Defendants' Motion for Protective Order.  The Motions addressed herein raise far reaching public policy concerns because Defendants' position is essentially that they, as insurers, have the

---

[1] Because each of these Motions are closely related and in an effort to conserve this Honorable Court's valuable time and resources, this filing addresses Defendants' Motion to Strike (Doc. # 30), Response to Plaintiff's First Motion to Compel (Doc. # 37), Response in Opposition to Plaintiff's Second Motion to Compel (Doc. # 40) and Response in Opposition to Plaintiff's Third Motion to Compel and Motion for Protective Order (Doc. # 41).

1

sole power to determine what is discoverable in ERISA actions. Defendants' extreme position, which includes that they do not even have to produce their own manuals, policies and procedures in actions in which those very policies and procedures are at issue, is a dangerous one because it leaves insureds completely unprotected by judicial safeguards. Such a result is clearly contrary to the legislative intent behind ERISA. For these reasons, the issues raised in the motions before this Honorable Court, which boil down to the difference between *discoverable* and *admissible* evidence in ERISA cases, are of great significance to all insureds.

## Discoverable versus Admissible:  The Window and the Target

Defendants argue that the scope of review and deference shown to their claims decision means <u>no discovery</u> is appropriate in an ERISA case, but offer no explanation for this conclusion. The error in their conclusion becomes evident in the analysis of their argument. The Rules of Civil Procedure create a discovery window through which a plaintiff must show he or she is requesting documents or things the Rules of Evidence consider "reasonably calculated" to lead to the discovery of  admissible evidence. The window is not closed in an ERISA case, not by the statute itself, nor by the case law. Even a cursory review of the ERISA opinions in this Circuit reveal the opinions address evidence discovered in the discovery process whose admissibility must be determined using the Rules of

Evidence. So the fact that this is an ERISA case doesn't modify the Rules of Civil Procedure that create the discovery window. What is modified by the case law on ERISA is the "admissibility target" created by the Rules of Evidence. <u>Modified</u>, but not removed altogether from the field as Defendants would argue. Therefore discovery requests are still measured by the same standard, they must be "reasonably calculated" to lead to the discovery of admissible evidence, and since the "admissibility target" is smaller, Plaintiff's requests must be more focused. Requesting the service agreement, claims manual, and other insurance benefit documents is focused enough to be "reasonably calculated" to hit ERISA's smaller target of admissible evidence.

Defendants' filings attempt to obfuscate the distinction between what is ***discoverable*** and what this Honorable Court may ultimately deem ***admissible*** in this ERISA action. Moreover, Defendants' bad faith in failing to disclose *discoverable* documents and their refusal to produce the same should result in the preclusion of their ability to obtain a protective order over these documents. The bottom line is that Defendants have consistently refused to provide, over the entirety of the year plus that this action has been pending, documents to which Plaintiff is clearly entitled, including Plaintiff's own life insurance policy, the policies and procedures that govern the manner Defendants are to review her claim, documents supporting Plaintiff's disability obtained by Defendants' agent

and the service agreements that Plaintiff believes will provide *discoverable* and potentialy lead to *admissible* evidence of the agency relationship between Defendants and A2K. These documents are not "red herrings" as Defendants assert, but are rather documents that Defendants themselves should have produced as part of the "Administrative Record" or are documents whose production may lead to the discovery of admissible evidence.

## Introduction

Exhibit H to Plaintiff's Motion for Summary Judgment, consisting of documents provided by Advantage 2000 Consultants (A2K) is not only properly discoverable in this ERISA action but Defendants should have produced these documents as part of their own "Administrative Record." Moreover, the service agreements between Defendants and A2K, which Plaintiff believes may provide additional evidence of agency, are properly discoverable in this action and should not now be subject to a protective order due to Defendants' actions throughout the entirety of this action to thwart Plaintiff's attempts to obtain the same and their refusal to meet their burden in demonstrating the necessity of such a protective order. Defendants' manuals, documents, and guidelines outlining the manner in which they are to investigate or handle claims for long term disability benefits should have been produced by Defendants long ago and Defendants likewise cannot obtain a protective order over these documents because they have failed to

make the requisite showing.  Finally, Defendants must produce the documents related to Plaintiff's ancillary benefits, including but not limited to, her group life insurance policy.

## Argument

### A. Defendants' Motion to Strike Should Be Denied.

Defendants' Motion to Strike (Doc. # 30) should be denied.  A2K's records, as records garnered by Defendants' agent at Defendants' direction, should have been produced by Defendants as part of the "Administrative Record."  Defendants' argument is essentially that because they did not submit the A2K documents as part of the so-called "Administrative Record", those documents should be struck from the record.  Defendants' argument is flawed at the outset because Defendants should have submitted these documents as part of their "Administrative Record."  Moreover, Plaintiff requested that Defendants obtain these documents in their review of Plaintiff's claim.  *See* Exhibit B.

In Defendants' Motion to Strike, they assert that A2K is not their agent and that the information contained in A2K's files was not properly submitted to Defendants by Plaintiff and therefore should be stricken from the record in this ERISA case.  As Plaintiff fully sets forth in her Reply to Defendants' Response (Doc. # 38), A2K is Defendants' agent and therefore all information obtained by A2K and the representations made by A2K are binding upon Defendants.  Perhaps

5

most telling is Defendants' insistence that they alone can determine what constitutes the "Administrative Record" at the same time that they refuse to produce key documents necessary for this Honorable Court's review. A2K's record is properly before this Court though not produced by Defendants, who assert that they alone control what is contained in the so-called "Administrative Record", but by Plaintiff, who only found out about the additional medical records and service agreements through her own extensive efforts.

**1.    A2K's Records Should Have Been Produced as Part of Defendants' "Administrative Record."**

Defendants' argument is essentially that because they did not submit the A2K documents as part of the so-called "Administrative Record", those documents should be struck from the record. Defendants' argument is flawed at the outset because Defendants should have submitted these documents as part of their "Administrative Record." Moreover, Plaintiff requested that Defendants obtain these documents in their review of Plaintiff's claim. *See* Exhibit B.

Defendants define the "Administrative Record" as those "documents before the claims administrator when it made its decision." Doc. # 41 at 1. As Plaintiff fully sets forth in her Reply to Defendants' Response (Doc #38), the knowledge of A2K's documents is imputed to Defendants and therefore those documents were properly before them when they made their decision to deny Plaintiff's claim for

benefits.  As a result, Defendants, rather than Plaintiff, should have produced the A2K documents as part of the Administrative Record.  Defendants' insistence that they alone can determine what constitutes the "Administrative Record" at the same time that they refuse to produce key documents necessary for this Honorable Court's review is one example of the bad faith they have utilized throughout their entire review of Plaintiff's claim for benefits.  A2K's record is properly before this Court and Defendants' Motion to Strike should be denied.

Ensuring the completeness of the administrative record, and that the Defendants complied with certain production requirements, is an essential part of the ERISA procedural safeguards.  Without these procedural safeguards, the Court is left to having the claims administrator, who pays claims out of the claims administrator's funds, determine what it is the Court will review when reviewing the claims administrator's decision to deny benefits. In the present case, the Defendants have now admitted they are withholding documents from the administrative record production[2].  Plaintiff therefore respectfully requests this Honorable Court not allow Defendants, who are operating under a clear conflict of interest, to withhold A2K's documents from its review and DENY Defendants' Motion to Strike and preserve the integrity of the ERISA record.

---

[2] Plaintiff is aware that Defendants are at least withholding the service agreements between Defendants and A2K, the documents obtained by A2K in its representation of Plaintiff in her claim for SSDI, a life insurance policy under which Plaintiff may be entitled benefits and Defendants' own internal policies, procedures and manuals.

### 2.   Defendants' Motion to Strike Should be Denied as a Matter of Public Policy.

Defendants' Motion to Strike should also be denied as a matter of public policy.   Defendants should not be permitted to employ an agent to represent Plaintiff in her claim for SSDI benefits and not be attributed with the knowledge of the documents obtained by its agent, especially where Plaintiff requested Defendants obtain a copy of these very documents.   *See* Exhibit B.   Allowing Defendants to act in such clear bad faith to its insured in this matter will only provide a precedent for insurers to continue such impermissible actions in the future.   *See Chaachou v. American Cent. Ins. Co.*, 241 F.2d 889, 893 (5th Cir. 1957) (noting that an insurer is required to employ "the utmost of honest, good faith dealing" with its insured.).

The public policy concerns implicated here are far reaching, especially where Defendants assert that they have no duty to garner Plaintiff's medical records.   Unwary insureds who are aware that their insurer provided them with an agent such as A2K to represent them in their SSDI claim for disability will likely come to the logical conclusion that their insurer will also have the documents obtained by the agent.   Little will these insureds realize that their insurer will build a veritable wall around the documents obtained by the agent while at the same time

reaping the benefit of the documents supportive of disability by demanding payment in full of any Social Security award obtained.

Defendants should not be permitted to engage in this shell game at the Plaintiff's expense, especially where Plaintiff specifically requested in writing that Defendants obtain A2K's documents.   Moreover, Defendants should not be permitted to wipe the record clean of evidence of its agency relationship with A2K by striking all of A2K's documents from the record and refusing to produce its service agreements with A2K.   Plaintiff respectfully requests this Honorable court DENY Defendants' Motion to Strike.

**B.**      **Plaintiff's First Motion to Compel Should be Granted.**

First, Defendants cannot claim that Plaintiff's <u>second</u> request for production is excessive and beyond the number contemplated by the parties.    Secondly, Defendants cannot assert that Plaintiff has failed to prove agency while contemporaneously refusing to produce the very service agreements that may evidence the agency relationship.  Finally, it is Defendants' fault, not Plaintiff's, that these service agreements have not been produced at this late date and after the close of summary judgment briefing.

As Plaintiff has extensively briefed in her Motion for Summary Judgment (Doc. # 24) and Response to Defendants' Motion for Summary Judgment (Doc. # 32), Advantage 2000 Consultants ("A2K") was clearly Defendants agent in its

representation of Plaintiff in her claim for SSDI benefits.  Defendants should not be permitted to withhold its service agreements with A2K from this Honorable Court's review in a last-ditch effort to bar what may constitue additional evidence of agency from the record.

> **1.     Defendants' Challenge to Plaintiff's Assertion of Agency Requires the Service Agreements Be Produced.**

In Defendants' Motion to Strike, they assert that A2K is not Defendants' agent and that the information contained in A2K's files was not properly submitted to Defendants by Plaintiff and therefore should be stricken from the record in this ERISA case.  As Plaintiff fully sets forth in her Reply to Defendants' Response (Doc. # 38), and therefore will not reproduce herein, Defendants' assertion that A2K is not Defendants' agent requires Defendants to produce the service agreements between those two entities.

> **2.     Defendants Incorrectly Assert that the Discovery Window is Closed in this ERISA Proceeding.**

Defendants essentially assert that the discovery window in this ERISA action is completely closed and that they alone can determine what this Honorable Court may consider.  Although ERISA case law does make smaller the "admissibility target", it certainly does not affect the discovery window nor does it, as Defendants assert, place the power of determining what is "admissible" in the hands of only one party.  Rather, courts have held that service agreements, such as

the service agreements Plaintiff is seeking, are not only reasonably calculated to lead to the discovery of admissible evidence, they are admissible evidence. *See Anderson v. Unum Life Ins. Co. of America*, 414 F. Supp. 2d 1079 (M.D. Ala 2006) (citing to a services agreement produced in discovery to determine what entity denied Plaintiff's claim for benefits). Therefore, in this case, Plaintiff may still "obtain discovery regarding any matter, not privileged, that is ***relevant*** to the claim or defense of any party[.]" Fed. R. Civ. P. Rule 26(b)(1). (Emphasis added). Whether there is an agency relationship between A2K and Defendants is clearly at issue in this matter for two reasons, first the question of estoppel and secondly what constitutes the "documents before the administrator at the time of their decision."

If the service agreements evidence an agency relationship between Defendants and A2K, as Plaintiff believes they will, then the service agreements and all of A2K's records and representations to the SSA should be deemed part of the "administrative record" because they would arguably be "documents before the claims administrator when it made its decision." *See* Doc. # 41 at 1 (Defendants' definition of Administrative Record as the "documents before the claims administrator when it made its decision.").

Regardless of whether this Honorable Court chooses to consider the service agreements "admissible evidence" in its determination, which Plaintiff respectfully

asserts that it should, the service agreements are clearly *discoverable* and should therefore be ordered produced.

### 3. Defendants Cannot Claim that Plaintiff's Requests for Production Are Excessive and Beyond the Number Contemplated by the Parties.

Defendants' first argument against producing the service agreements with A2K is that Plaintiff has "exceeded the allowed number of requests for production." Doc. #37 at 2. Defendants assert that the parties agreed to a maximum of thirty (30) requests for production per party and that Plaintiff has served thirty-six (36) requests for production on Defendants. Defendants' argument is fruitless because Plaintiff's <u>second</u> request for production sought the A2K service agreements:

> 2. Please produce any and all correspondence, memoranda ***or service agreements***, or agreements known by any other name wherein Advantage 2000 and you agreed to certain compensation and/or consideration in exchange for certain services to be provided in the administration and/or adjudication of the Plaintiff's Social Security claim. This request for production is to encompass any service agreements and/or agreements wherein you contracted with Advantage 2000 to perform any administrative duties.

Doc. # 37-2 (emphasis added).

Defendants reference to excessive requests refers to Plaintiff's Second Request for Production to Defendants, which requested the following:

1.  Please produce the "services agreement" executed by CIGNA/LINA and Advantage 2000 Consultants, Inc., dated January 1, 2002.
2.  Please produce a second Amendatory Agreement executed by these parties, dated July 1, 2005.
3.  Please produce "an Addendum Request for Proposal submitted by Advantage 2000 Consultants, Inc., dated September 21, 2001."

Doc. # 37-3.

These requests, Plaintiff's thirty-fourth, fifth and sixth requests, respectively, were necessitated by Defendants failure to disclose or produce the service agreements pursuant to request for production number 2, which is quoted above. Rather than produce these agreements pursuant to Plaintiff's First Request for Production, Defendants asserted the following objection: "[Defendants] objects to this Request on the grounds that it is overly broad and seeks irrelevant, confidential and proprietary documents not related to Plaintiff's claim for long-term disability benefits under the heightened arbitrary and capricious standard of review." *See* Exhibit D, Defendants' Responses to Plaintiff's First Request for Production. It was only after A2K responded to Plaintiff's non-party subpoena that Plaintiff was made aware of the existence of those agreements.[3]

Defendants should not benefit from their willful refusal to produce or ever disclose the existence of the service agreements, which are responsive to Plaintiff's

*second* Request for Production.  Even if this Honorable Court chooses to strike the six Requests for Production over the parties' agreed upon limit of thirty (30), Defendants are required to produce the same service agreements pursuant to Plaintiff's second Request.

### C. Plaintiff's Second Motion to Compel Should be Granted.

Plaintiff's Second Motion to Compel seeks an Order from this Honorable Court "requiring Defendants to produce all plan documents related to any ancillary benefit plans which may provide benefits to Plaintiff."  Doc. # 33.  Defendants erroneously assert that Plaintiff "fails to identify a <u>single</u> Plan document which Defendants have not produced[.]"  Doc. # 40, p. 2.  Defendants are well aware that Plaintiff has specifically identified a life insurance policy as one of the documents which Defendants have refused to produce.  *See* Doc. # 38 at 11.  Moreover, and contrary to Defendants' assertions, Plaintiff still has not received a copy of this life insurance policy.  Finally, Defendants are in a better position than Plaintiff to know any additional documents they are withholding, as Plaintiff may be enrolled in additional insurance plans provided by her employer of which she is not currently aware and therefore cannot identify.

### D. Plaintiff's Third Motion to Compel Should be Granted.

---

[3] A2K provided a privilege log related to the service agreements to Plaintiff by letter dated January 11, 2008.  *See* Exhibit A.  Plaintiff served her Second Requests for Production, identifying the already-requested service agreements with greater specificity, a mere five days later, on January 16, 2008.

14

Defendants cannot in good faith assert that the manuals, documents and guidelines outlining the manner in which they are to investigate or handle claims for long term disability benefits are not discoverable in this action. If Defendants position was accepted then insureds *will never know how their claims for benefits are supposed to be determined.* Defendants' assertion is that even when their claims practices are challenged, their internal policies and procedures are not to be reviewed even by this Honorable Court. Such a result would leave Defendants' manner in which they are to investigate and handle their insureds' claims completely unchecked. Contrary to Defendants' assertions, these documents are properly part of the "Administrative Record" pursuant to even the Defendants' definition of such and are clearly discoverable in this heightened arbitrary and capricious ERISA case where Plaintiff has articulated a clear conflict of interest on behalf of Defendants.

## 1.      These Documents are Part of the "Administrative Record"

Defendants main argument against producing the manuals, documents, and guidelines outlining the manner in which it is to investigate or handle claims for long term disability benefits is that the allowable discovery in this ERISA action is purportedly limited to "the Administrative Record" which Defendants defines as the "documents before the claims administrator when it made its decision." *See* Doc. # 41 p. 1. Defendants cannot argue that its own manuals, documents and

15

guidelines were not "before it" when it made the decision to deny Plaintiff's claim for LTD benefits. Therefore according to Defendants' own proffered definition of what constitutes "the Administrative Record", its own manuals, documents and guidelines are included.

In *Hamall-Desai v. Fortis Benefits Ins. Co.*, 370 F. Supp. 1283 (N.D. Ga. 2004), the Court held that an insurer's refusal to provide the insured copies of its "claims manual and other training/policy/procedural manuals" constituted a violation of 29 U.S.C. § 1132(c) and fined the insurer $100 per day.

**E. Public Policy Supports that Plaintiff's Motions be Granted and Defendants' be Denied.**

Public policy and the legislative intent of ERISA mandate that Defendants produce the requested documents and that Defendants' Motions be denied. The issue embodied in the present motions is whether an insurer may completely disavow any knowledge of those documents supportive of its insured's disability gathered by the insurers agent and used to obtain social security benefits that the insurer demands.

**1.    The Legislative Intent of ERISA is to Protect and Promote the Interests of Employees Like Plaintiff.**

Contrary to Defendants' assertions, ERISA was enacted to protect employees like Plaintiff, not to protect the interests of insurance companies. Pursuant to this legislative intent and considerations of public policy, Plaintiff's

16

Motions to Compel should be granted and Defendants' Motion to Strike should be denied.

The Defendants attempt to manipulate the legislative intent behind ERISA to their favor in the assertion that "the legislative mandate of ERISA … was to promote the inexpensive and expedient handling of claims."  Doc. # 41, p. 4. "ERISA was enacted to ***promote the interests of employees*** [such as the Plaintiff] and their beneficiaries in employment benefit plans and to protect their contractually defined benefits."  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113, 109 S. Ct. 948 (1989). (internal citation omitted).  Moreover, in enacting ERISA the legislature attempted to "strike a balance between ***protecting employees*** and encouraging employers to voluntarily establish pension and benefit plans." *Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991) (citing H.R.Rep. No. 98-807, 93d Cong., 2d Sess., *reprinted in*, 1974 U.S. Code Cong. & Admin. News 4639, 4670, 4678.). (Emphasis added).

ERISA should therefore be interpreted pursuant to the clear legislative intent to protect and promote the interests of employees such as Plaintiff.  *See Solis-Ramirez v. U.S. Dept. of Justice*, 758 F.2d 1426, 1431 (11th Cir. 1985) ("The court's first duty in construing a statute is to give effect to the intent of Congress.").

17

### 2.    Public Policy Related to an Insurer's Duty to Act in Good Faith and Fair Dealing

An insurer is required to employ "the utmost of honest, good faith dealing" with its insured.  *Chaachou v. American Cent. Ins. Co.*, 241 F.2d 889, 893 (5th Cir. 1957).  Defendants have not employed honest, good faith dealing with Plaintiff in this case, as the Motions pending before this Court make clear.  Defendants' motions attempt to 1) strike all of its agent's documents, which support Plaintiff's clear inability to work, from the record; 2) disavow its agency relationship with A2K and at the same time keep all evidence of such agency from the record; 3) keep even its own policies and procedures as to how it was supposed to evaluate Plaintiff's claim from the record; and 4) keep Plaintiff's other insurance policies, even Plaintiff's life insurance policy, from the record.

Allowing Defendants to act in such clear bad faith to its insured in this matter will only provide a precedent for insurers to continue such impermissible actions in the future.  An insurer who hires an agent to represent its insured in a claim for SSDI benefits must be bound by the knowledge and documents obtained by that agent, especially where the insurer benefits by demanding every penny of its insured's social security award and where its insured actually requests it to obtain its agent's records.  An insurer also must be required to produce its policies and procedures in an ERISA matter.  Finally, an insurer must be required to abide

by the mandates of ERISA and provide all of its insured's plan documents to it, especially where as is the case here, one such policy, a life insurance policy, may provide an additional waiver of premium benefit should the insured be deemed "disabled."

### F. Defendants' Motion for Protective Order Is Not Only Inappropriate, It Is Untimely and Unsupported.

Defendants request this Honorable Court enter a Protective Order related to the service agreements between themselves and A2K (Doc. # 37) and their internal procedures, guidelines and manuals (Doc. #41) yet fail to make even an attempt at showing good cause for such protective orders.  Because Defendants have failed to make even a cursory attempt to meet their burden in showing "good cause" for a protective order pursuant to Fed. R. Civ. P. 26(c)[4], their Motions for a Protective Order should be denied.  *See BCI Communication Systems, Inc. v. Bell Atlanticom Systems, Inc.*, 112 F.R.D. 154, 159 (N.D. Ala. 1986) (Noting the "burden of showing good cause under Rule 26(c)(5), Fed. R. Civ. P.").  In order to obtain a protective order, "the movant must either show good cause why the objected-to discovery would be unduly burdensome or expensive, oppressive, embarrassing, annoying, or show that the subject matter sought to be discovered is privileged." *Ex parte Pate*, 678 So. 2d 762, 764 (Ala. 1996).  Although it is not readily

apparent, Defendants appear to request a protective order over both their service with agreements with A2K and Defendants' own manuals, policies and procedures on the grounds that the requested information is confidential and proprietary information. Defendants, however, have made no attempt to meet their burden in establishing the allegedly confidential and proprietary nature of the requested documents and therefore their requests for protective orders must be denied.

Defendants' complete lack of effort to show cause for the issuance of a protective order cannot be overlooked here where Defendants ignored Plaintiff's attempts to rectify this very issue. *See* Exhibit C. Plaintiff's counsel took it upon themselves to provide a reasonable resolution to Defendants' belated assertion that the requested materials are commercially sensitive by suggesting that they redact what information they consider to be commercially sensitive before providing the documents pursuant to Plaintiff's proper discovery requests. *See* Exhibit C. ("I would respectfully request you consider redacting what you would consider commercially sensitive information and forwarding the agreement to my office for review."). Rather than provide redacted copies, Defendants continued to improperly refuse to produce the documents at all. Plaintiff therefore respectfully requests, based upon Defendants' complete refusal to provide even a redacted copy

---

[4] Plaintiff can only assume Defendants seek a protective order pursuant to Fed. R. Civ. P. 26(c) since Defendants fail to even cite to Rule 26 in either of their requests for a protective order. *See* Doc. # 37 and Doc. # 41.

of the documents, that this Honorable Court deny their belated request for a Protective Order.

## CONCLUSION

Defendants attempt to have the best of all worlds, and in the process irreparably harm and defraud Plaintiff. Defendants assert that they have no duty to garner medical records in support of Plaintiff's claim for LTD benefits, no duty to consider those medical records garnered by their own agent, no duty to notify Plaintiff of its agency relationship with A2K and no duty to produce *any* documents other than those they personally hand-pick for this Honorable Court's review. Defendants' arguments are wholly unsupportable as a matter of both law and public policy.

Plaintiff therefore respectfully requests this Honorable Court GRANT her First, Second and Third Motions to Compel and DENY Defendants' Motion to Strike and Motion for Protective Order.


/s/ Thomas O. Sinclair
One of the Attorneys for Plaintiff


/s/ Jenifer Champ Wallis
One of the Attorneys for Plaintiff

**OF COUNSEL:**

CAMPBELL, GIDIERE, LEE, SINCLAIR & WILLIAMS
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
T: (205) 803-0051
F: (205) 803-0053

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned attorney certifies that on the 11th day of March, 2008, a copy of the foregoing was filed electronically using this Court's electronic filing system.  Notice of this filing is due to be served by operation of the Court's electronic filing system to the following parties indicated on the electronic filing receipt as participants in the Courts CM/ECF system:

**Attorneys for Defendants**
William B. Wahlheim, Jr.
John David Collins
Grace Robinson Murphy
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203-2602


            /s/Jenifer Champ Wallis
            Of Counsel

# EXHIBIT A

LAW OFFICES OF

# Wimmer, Stiehl and McCarthy

2 Park Place Professional Centre
Belleville, Illinois 62226

William L. Wimmer, III
William D. Stiehl, Jr.
Brian T. McCarthy

Area Code 618
234-9900
FAX
234-9933
brianmccarthy@peaknet.net

January 11, 2008

Thomas O. Sinclair
Campbell, Gidere, Lee, Sinclair & Williams
2100-A Southbridge Parkway, Suite 450
Birmingham, AL   35209

Re:    *Cleiland v. LINA et al.*, Case No.  2:07-CV-00486 (M.D. Alabama)

Dear Mr. Sinclair:

As a supplement to the response of Advantage 2000 Consultants, Inc. to the subpoena issued in the above matter, I am hereby providing a log of the documents for which a claim of privilege is asserted.

(1) A Services Agreement executed by CIGNA/LINA and Advantage 2000 Consultants, Inc., dated January 1, 2002, (2) a Second Amendatory Agreement executed by these parties, dated July 1, 2005, and (3) an Addendum Request for Proposal submitted by Advantage 2000 Consultants, Inc., dated September 21, 2001, contain the terms of agreement as between these parties relative to representation services.  Copies of these documents are maintained in the possession of Advantage 2000 Consultants, Inc.  These documents are withheld from production under a claim of privilege for proprietary and/or confidential information therein contained.

Please confirm receipt of this letter as a log of privileged documents.  Thank you.

Very truly yours,

Brian T. McCarthy
Attorney at Law

BTM/wp.095
Enclosures
cc:    Richard Smith

# EXHIBIT B



2100-A Southbridge Pc    ay • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR

October 27, 2006

Ms. Karol Johnson
Senior Appeal Specialist
CIGNA Group Insurance
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

Re:                          **Cathy Cleiland**
Plan/Policy Holder:          **TEMPLE INLAND CORPORATE SERVICES**

Dear Ms. Johnson:

I am in receipt of your October 23, 2006 correspondence providing a copy of the long term disability claim file for Ms. Cleiland. I need the following information in addition to what you have produced:

1.  Copies of any other policies administered. Please be advised that this claim is not limited to simply the long term disability or the short term disability policies provided through Temple Inland Corporate Services. I understand there to be life insurance policies, which may in fact include life premium waivers, and as such those claims need to be processed as well.

2.  I need copies of the information provided to the Social Security Administration by your agent Advantage 2000. I understand they collected substantial medical records in an effort to assist you in off-setting the amount of liability under the terms of the policy. Given the vast amount of correspondence back and forth between your offices and Advantage 2000, it appears to me that Advantage 2000 does a lot of work for you folks and it would seem more than reasonable that you would want to get hold of the medical records that your agent used to assist Ms. Cleiland in obtaining Social Security disability benefits.

3.  I need a copy of the claims manual in order to assist me in assessing the manner in which this claim is be administered under the terms of the policy and the manner in which any parties may be exercising any specifically assigned discretion under the terms of the policy.

I look forward to receiving your production in the near future.

Sincerely yours,

Thomas O. Sinclair

TOS/me
Enclosures
cc:    Ms. Cathy Cleiland
       Terry G. Key, Esquire

# EXHIBIT C



**CGL** | Campbell, Gidiere, Lee
Sinclair & Williams
ATTORNEYS AT LAW

THOMAS O. SINCLAIR
tsinclair@cgl-law.com

February 26, 2008

Grace R. Murphy, Esquire
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203

Re:    *Cleiland, Cathy v. Life Insurance Co. of North America, et al.*

Dear Ms. Murphy:

It was a pleasure speaking with you yesterday. As you know we have filed a Motion to Compel the service agreement between the defendants and A2K. I understand your clients don't want to produce that document on the claim of commercially sensitive information being contained within those agreements. I would respectfully request you consider redacting what you would consider commercially sensitive information and forwarding the agreement to my office for review. In conjunction with those redactions please describe in your own words the nature of each redaction so I can ensure we are not in disagreement over your client's claim of commercially sensitive information being contained within the agreements.

In the alternative, as I have offered, I am willing to provide a non-sharing, non-burden shifting, protective order. If your clients really believe that they need the protective order then they should have forwarded that protective order to me in their responses so that we could negotiate on those terms.

If it is necessary for us to go to Court and to have the Court spend its time dealing with our Motion to Compel then I am going to take the position that the agreement, once redacted, should be within the public purview. I do not believe that public and other claimants to be denied access to this document once the commercially sensitive information has been removed.

I look forward to hearing from you.

Sincerely,

Thomas O. Sinclair

TOS/kh
cc:    Jenifer Champ Wallis, Esquire
       William B. Walheim, Jr., Esquire

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CATHY CLEILAND, | ) | JAN  9  2008 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LIFE INSURANCE COMPANY OF NORTH | ) | CIVIL ACTION NO. : |
| AMERICA, TEMPLE INLAND | ) | 2:07-CV-00486-MEF-SRW |
| DISABILITY HEALTH AND WELFARE | ) | |
| PLAN, and TEMPLE INLAND FOREST | ) | |
| PRODUCTS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT LIFE INSURANCE COMPANY OF NORTH AMERICA'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

Defendant Life Insurance Company of North America (hereinafter referred to as "Defendant" or "LINA"), by and through its attorneys, submits the following responses to Cathy Cleiland's (hereinafter referred to as "Plaintiff") First Request for Production. LINA's objections are made without waiving or intending to waive, but on the contrary, intending to preserve and preserving:

1.      Any additional objections that LINA may make.  All such objections are expressly preserved;

2.      All questions as to competency, relevancy, materiality, and admissibility of any documents produced or information provided by LINA;

3.      LINA expressly objects to providing any documents protected from discovery by the attorney/client privilege, work-product immunity, self-evaluative privilege, or any other

1

applicable privilege or immunity. Any inadvertent production of privileged materials does not constitute a waiver.

4. The right of any party to object on any grounds to the use of the information and documents, or the subject matter thereof, produced in response to these requests in any subsequent proceeding in, or the trial of, this or any other action; and

5. The right of any party to object on any ground at any time to a demand for further response to these or any other discovery procedures involving or related to the subject matter of the discovery requests herein answered.

## GENERAL OBJECTIONS

1. LINA objects to the discovery requests to the extent that they are overly broad, unduly burdensome, irrelevant, vague, and not reasonably calculated to lead to the discovery of admissible evidence.

2. LINA objects to the discovery requests to the extent that they call for the production of documents or information that contain confidential, trade or business data, or other nonpublic, confidential or proprietary information.

3. LINA objects to the discovery requests to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence in this ERISA preempted lawsuit subject to a "heightened" arbitrary and capricious review. The issue before the Court is whether the claims decision was "arbitrary and capricious" and the appropriate scope of "discoverable" information is limited to the administrative record and Plan documents.

## II.    SPECIFIC RESPONSES AND OBJECTIONS

1.    Produce any and all agreements or service agreements wherein you have agreed to certain terms governing the responsibilities in relation to the insurance policies purchased by the Plaintiff or the Plaintiff's employer.  This request for production is to encompass any service agreements whereby you agree to provide or had another entity agree to provide service relative to the Plaintiff's policies or the Plaintiff's employer's policies.

**RESPONSE: LINA objects to this Request on the grounds that it is vague, overly broad and seeks irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence in this ERISA preempted action subject to a heightened arbitrary and capricious standard of review.  LINA further objects to this Request on the grounds that it seeks confidential and proprietary information and documents without a sufficient showing of need.  Without waiver of the foregoing objections, LINA states that it has previously produced Policy No. FLK-020104 and amendments thereto, LINA/Cleiland 480-515, which is the agreement between policyholder Temple-Inland Forest Products Corporation and LINA.**

2.    Please produce any and all correspondence, memoranda or service agreements, or agreements known by any other name wherein Advantage 2000 and you agreed to certain compensation and/or consideration in exchange for certain service to be provided in the administration and/or adjudication of the Plaintiff's Social Security claim.  This request for production is to encompass any service agreements and/or agreements wherein you contracted with Advantage 2000 to perform any administrative duties.

01552447.1                                        3

**RESPONSE:** LINA objects to this Request on the grounds that it is overly broad and seeks irrelevant, confidential and proprietary documents not related to Plaintiff's claim for long-term disability benefits under the heightened arbitrary and capricious standard of review.

3. Produce and identify by Bates numbers those documents within your possession, custody or control that reference or pertain to the Plaintiff's claim for benefits, the Plaintiff's application for insurance, to include any claim file, the application file, independent medical examination file, or any other related file referencing or pertaining to the Plaintiff's claim or claims for benefits. This request includes any files pertaining to any other policies or coverage purchased by the Plaintiff or the Plaintiff's employer.

**RESPONSE:** In response to Request No. 3, LINA states that it has previously produced documents responsive to this request, including the claims files for Plaintiff's short and long-term disability claims. *See* LINA/Cleiland 0001-1088.

4. Produce and identify by Bates number every medical report (to include any generic medical reports not specifically pertaining to the Plaintiff but used in referencing the restrictions and limitations pertaining to the Plaintiff's disability) considered or available for consideration in the process of evaluating the Plaintiff's application for benefits. This response should include any internal memorandum regarding the Plaintiff's claims, to include any documentation generated by your agents or employees reviewing information pertaining to the Plaintiff's application for benefits.

**RESPONSE:** LINA objects to this Request on the grounds that it is vague and overly broad. Without waiver and without limitation, LINA states that the following bates-

stamp pages previously produced in connection with LINA's Rule 26 Initial Disclosures reflect documents responsive to this request: LINA/Cleiland 14-15, 16-17, 61, 64-66, 70-73, 93, 154, 163, 167, 245-46, 339-41, 392-426, 429-31, 600, 680-82, 693, 698-99, 739-41, 744-45, 781-82, 849-50, 903, 947, 954, 959, 975, 1012, 1019, 1035, and 1062.

5.    Produce and identify by Bates number every report other than medical reports (for example, without limitation, the reports of rehabilitation services or any other such similar service) considered in or generated in the process of evaluating the Plaintiff's claim for benefits.

**RESPONSE:** LINA objects to this Request on the grounds that it is vague and overly broad. Without waiver and without limitation, LINA states that the following bates-stamp pages previously produced in connection with LINA's Rule 26 Initial Disclosures reflect documents responsive to this request: LINA/Cleiland 99-100, 134, 164, 366-89, 826-29, 835-38, 903, and 928-29.

6.    Produce and identify by Bates number any other reports or opinions received or discovered in any manner that the Defendant received or relied upon in the evaluation of the Plaintiff's claim for benefits.

**RESPONSE:** LINA objects to this Request on the grounds that it is duplicative of Requests Nos. 4 and 5, vague and overly broad. Without waiver and without limitation, LINA states that the following bates-stamp pages previously produced in connection with LINA's Rule 26 Initial Disclosures reflect documents responsive to this request: LINA/Cleiland 817-25, 905.

7.    Produce each rule, guideline, criteria, law, regulation, or other document considered by you in any way in your administration of Plaintiff's claim for benefits.

01552447.1                                      5

RESPONSE: LINA objects to this Request on the grounds that it is overly broad and seeks irrelevant, confidential and proprietary documents and documents not reasonably calculated to lead to the discovery of admissible evidence in Plaintiff's claim for long-term disability benefits under the heightened arbitrary and capricious standard of review. LINA further objects to this Request to the extent it seeks information protected by the attorney client privilege and attorney work product doctrine.

8.      Produce, and reference by Bates number, each and every policy ever purchased by the Plaintiff from you or any of your subsidiaries, to include group policies purchased by Plaintiff's employer.

RESPONSE: LINA objects to this Request on the grounds that it is overly broad and seeks irrelevant documents in this ERISA-preempted lawsuit subject to a heightened arbitrary and capricious standard of review. Without waiver of the foregoing objections, LINA states that it previously produced the applicable long-term disability policy, Policy No. FLK-020104. *See* LINA/Cleiland 480-515.

9.      Produce any correspondence, emails, or memorandum between you and the Plaintiff's employer regarding administration or interpretation of policy terms for any policy purchased by Plaintiff or Plaintiff's employer. This response should include any correspondence between the Plaintiff's employer and any entity, subsidiary, broker, predecessor in interest, or your agents.

RESPONSE: LINA objects to this Request on the grounds that it is vague, overly broad and seeks irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence in this ERISA preempted action subject to a heightened arbitrary and

capricious standard of review. LINA further objects to this Request on the grounds that it seeks confidential and proprietary information without a sufficient showing of need. Without waiver of the foregoing objections, LINA states that it has previously produced documents responsive to this request, *i.e.* correspondence between Plaintiff's former employer and LINA regarding the adjudication of Plaintiff's claim for benefits, in connection with its Rule 26 Initial Disclosures.

10.    Produce any and all internal memorandum, correspondence, email or guidelines detailing the manner in which the Plaintiff's claim was to be investigated, including any and all documents of your subsidiaries, or predecessors in interest, detailing the steps to be undertaken in the investigation of the Plaintiff's claim.

RESPONSE: LINA objects to this Request on the grounds that it is vague, overly broad and seeks irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence in this ERISA preempted action subject to a heightened arbitrary and capricious standard of review. LINA further objects to this Request on the grounds that it seeks confidential and proprietary information without a sufficient showing of need. Without waiver of the foregoing objections, LINA states that it previously produced the applicable policy in this action. *See LINA/Cleiland 480-515.*

11.    Produce documents detailing the organizational structure of the claims handling departments to include appellate departments, investigational departments, reference departments, medical departments or any other departments which played any role in the adjudication, administration and/or investigation of the Plaintiff's claim, or provided any

services in relation to the administration of the Plaintiff's claims. These documents should identify, among others, those persons who were involved in the adjudication of Plaintiff's claims.

**RESPONSE: LINA objects to this Request on the grounds that it is vague, overly broad and seeks irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence in this ERISA preempted action subject to a heightened arbitrary and capricious standard of review. LINA further objects to this Request on the grounds that it seeks confidential and proprietary information without a sufficient showing of need. Without waiver of the foregoing objections, LINA states that its claims filed produced previously in connection with its Rule 26 Initial Disclosures identified those persons involved in the adjudication of Plaintiff's claim. _See also_ LINA's Response to Interrogatory No. 2.**

12.    Produce all electronically stored information referencing or pertaining to the Plaintiff's claim.

**RESPONSE: LINA objects to this Request to the extent it seeks information protected by the attorney-client privilege or attorney work product doctrine. Without waiver of the foregoing objections, LINA states that it previously produced electronically stored information generated as part of the process of reviewing Plaintiff's claim, including but not limited to e-mail and the electronic claims diary, LINA/Cleiland 0001-0227.**

13.    Produce curriculum vitae for any medical personnel, to include nurses, doctors, surgeons, whether RNs, LPNs, or MD's, or Ph.D.'s who reviewed and/or consulted on the Plaintiff's claim, medical records or any other materials related to the Plaintiff's claim for benefits.

01552447.1                                          8

RESPONSE: LINA objects to this Request on the grounds that it is overbroad and to the extent it seeks irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence in this ERISA preempted action subject to a heightened arbitrary and capricious standard of review. Without waiver of the foregoing objections, LINA states that it is producing contemporaneously herewith the curriculum vitae for its medical professionals currently within its possession. *See* LINA/Cleiland 1089-1099.

14.    Produce any and all documentation, to include checks, authorizations for payment, or any other documentation detailing the amount paid or that may be paid to the Plaintiff under any policy purchased by the Plaintiff or in which the Plaintiff is a designated beneficiary.

RESPONSE: LINA objects to this Request on the grounds that it is overly broad and seeks irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence in this ERISA preempted action subject to a heightened arbitrary and capricious standard of review. Without waiver of the foregoing objections, LINA states that it previously produced in connection with its Rule 26 Initial Disclosures both the applicable policy and benefit information for Plaintiff's claim. *See, e.g.,* LINA/Cleiland 480-515, 468.

15.    Produce all file folders, adjacent exhibit folders, documents, communications, and/or investigator reports pertaining to the Plaintiff.

RESPONSE: Upon information and belief, all documents responsive to this Request have been previously produced in connection with LINA's Rule 26 Initial Disclosures. *See* LINA/Cleiland 0001-1088.

16.    Produce all "administrative messages", emails, or any other form of internal communication, reflecting or relating to any communications referencing or pertaining to the Plaintiff's claim for benefits.

**RESPONSE: LINA objects to this Request on the grounds that it is overly broad and to the extent it seeks information protected by the attorney-client privilege or attorney work product doctrine. Without waiver of the foregoing objections and upon information and belief, LINA states that all documents responsive to this Request have been previously produced, including but not limited to e-mails and LINA's electronic claims diary for this claim.** *See* **LINA/Cleiland 0001-0227.**

17.    Produce all documents referencing or regarding the Plaintiff prepared by or provided to any physician or medical professional employed by or retained by you or any person or entity acting on your behalf.

**RESPONSE: Upon information and belief, all documents responsive to this Request have been previously produced in connection with LINA's Rule 26 Initial Disclosures.**

18.    Produce all documents created by or provided by you, your consultants, employees, subsidiaries, or predecessors or successors in interest, regarding the assessment of the Plaintiff's medical condition and how that condition may affect the Plaintiff's ability to work.

**RESPONSE: Upon information and belief, all documents responsive to this Request have been previously produced in connection with LINA's Rule 26 Initial Disclosures.**

19.    Produce all documents reflecting financial bonuses, incentives, stock options, honors, awards, or any other type of compensation or program available to company personnel

working with the departments directly responsible for the adjudication or assessment of the Plaintiff's claims.

**RESPONSE: LINA objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks personal information. LINA further objects to this Request on the grounds that it seeks confidential and proprietary information without a sufficient showing of need.**

20.    Produce all documents relating to rewards, bonuses, awards, incentives, or remuneration, whether financial or not, given to any of your employees who handled the Plaintiff's claims.

**RESPONSE: LINA objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks personal information. LINA further objects to this Request on the grounds that it seeks confidential and proprietary information without a sufficient showing of need.**

21.    Produce any internal audit reports, or any document evidencing said internal audit of the files handled by your employees who worked on the Plaintiff's claim. This request for production is intended to garner those documents within your possession, custody or control, that document any internal audit conducted of the Plaintiff's claim files.

**RESPONSE: LINA objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks personal information. LINA further objects to this Request on the grounds that it seeks confidential and proprietary information without a sufficient showing of need. Without waiver of the foregoing objections and upon information and belief, LINA states that it possesses no documents responsive to this request.**

22.    Produce all documentation prepared by you or on your behalf that reflects, refers, or establishes those duties of the Plaintiff's occupation before the Plaintiff filed a claim.

**RESPONSE: LINA objects to this Request on the grounds that it is vague. Without waiver of the foregoing objections, LINA states that it previously produced documents responsive to this request.** *See, e.g.*, **LINA/Cleiland 99-100, 134, 164, 826-29, 835-38, 905, and 928-29.**

23.    Produce any statement, telephone recording or tape conversation which reflects Plaintiff's conversations or communications with you, your employees, agents, or representatives.

**RESPONSE: Upon information and belief, all documents responsive to this Request have been previously produced in connection with LINA's Rule 26 Initial Disclosures. In further response, LINA states that it possesses no telephone recordings or taped conversations with Plaintiff.**

24.    Produce any tapes or recordings in unedited format, by whatever media, including any surveillance tapes, of the Plaintiff.

**RESPONSE: Upon information and belief, LINA states that it possesses no documents responsive to this request.**

25.    Produce a complete customer care center claims manual or claims manual or customer care manual and procedure manuals to include any additions, revisions, deletions, or other changes that have been made to said manuals which were used or available for use in the adjudication and/or administration of the Plaintiff's claims.

RESPONSE: LINA objects to this Request on the grounds that it is overly broad and seeks irrelevant, confidential and proprietary documents not related to Plaintiff's claim for long-term disability benefits under the heightened arbitrary and capricious standard of review.

26.    Produce documents that in any way refer, reflect, or relate to the proper method of handling claims involving those medical conditions specified with the Plaintiff's claim and those conditions assessed by your or your employees or consultants.  This response should include those documents used by your employees to evaluate the Plaintiff's medical condition; and studies you have undertaken with respect to the nature, treatment and care of the Plaintiff's medical condition.

RESPONSE: LINA objects to this Request on the grounds that it is overly broad and seeks irrelevant, confidential and proprietary documents not related to Plaintiff's claim for long-term disability benefits under the heightened arbitrary and capricious standard of review.  Without waiver of the foregoing objections, LINA states that any documents "used by [its] employees to evaluate the Plaintiff's medical condition" have been previously produced in connection with LINA's Rule 26 Initial Disclosures.

27.    Produce the customer profiles/account management database documents referring or relating in any way to the Plaintiff's claim or the group policies.

RESPONSE: LINA objects to this Request on the grounds that it is vague, overly broad and seeks irrelevant, confidential and proprietary documents not related to Plaintiff's claim for long-term disability benefits under the heightened arbitrary and capricious standard of review.

01552447.1                                    13

28.    Produce any and all documents referring or relating in any way to the Plaintiff's claim or the manner in which the Plaintiff's claim is to be managed.

**RESPONSE: LINA objects to this Request on the grounds that it is overly broad and to the extent it seeks information protected by the attorney client-privilege or attorney work product doctrine. Without waiver of the foregoing objections, LINA states that it previously produced its claims file in connection with its Rule 26 Initial Disclosures.**

29.    Produce and identify by Bates number every medical report referencing or referring to the Plaintiff. This response should include any internal memorandum regarding the Plaintiff's claims to include any documentation generated by your agents or employees reviewing information pertaining to the Plaintiff's application for benefits.

**RESPONSE: LINA objects to this Request on the grounds that it is overly broad, compound and duplicative of Request No. 4.  *See* LINA's Response to Request No. 4.**

30.    Produce any documentation detailing the amount of reserves assigned to the Plaintiff's claim to include any documentation of the amount of benefits to be paid on the Plaintiff's claims.

**RESPONSE: LINA objects to this Request on the grounds that it seeks confidential and proprietary information and information protected by the attorney–client privilege and attorney work product doctrine. LINA further objects to this Request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence in this ERISA preempted lawsuit subject to a heightened arbitrary and capricious standard of review.**

31.    Produce copies of all computer database documents that refer or relate to Plaintiff and were not placed into the Plaintiff's claim file, especially those documents that indicate policies and procedures to be utilized in the adjudication of the Plaintiff's claim.

**RESPONSE: LINA objects to this Request on the grounds that it seeks to impose obligations beyond those agreed to by the parties in their Report of Parties Planning Meeting filed on August 17, 2007 and expressly incorporated in the Court's Uniform Scheduling Order of August 21, 2007. LINA reserves the right to assert further objections.**

32.    Produce all records detailing your document retention policy with regard to what documents are to be maintained with the claim file, what documents are to be maintained in other databases, or other files, what documents are to be produced in response to requests for production, and what documents are to be destroyed.

**RESPONSE: LINA objects to this Request on the grounds that it seeks to impose obligations beyond those agreed to by the parties in their Report of Parties Planning Meeting filed on August 17, 2007 and expressly incorporated in the Court's Uniform Scheduling Order of August 21, 2007. LINA reserves the right to assert further objections.**

33.    In responding to these requests for production, if you have, by way of reference to a general objection or by offering a specific objection to any individual request, claimed a right to protection from discovery of certain documents by operation of the attorney-client privilege, the work product doctrine, or any other privilege afforded under law, please state the following with respect to each such document for which said privilege is asserted:

(a)    The date of the document;

RESPONSE: LINA objects to this Request on the grounds that it seeks to impose obligations beyond those agreed to by the parties in their Report of Parties Planning Meeting filed on August 17, 2007 and expressly incorporated in the Court's Uniform Scheduling Order of August 21, 2007. LINA reserves the right to assert further objections.

    (b)    The author(s) of the document;

RESPONSE: LINA objects to this Request on the grounds that it seeks to impose obligations beyond those agreed to by the parties in their Report of Parties Planning Meeting filed on August 17, 2007 and expressly incorporated in the Court's Uniform Scheduling Order of August 21, 2007. LINA reserves the right to assert further objections.

    (c)    Each addressee or recipient of the document including carbon copy and blind copyholders;

RESPONSE: LINA objects to this Request on the grounds that it seeks to impose obligations beyond those agreed to by the parties in their Report of Parties Planning Meeting filed on August 17, 2007 and expressly incorporated in the Court's Uniform Scheduling Order of August 21, 2007. LINA reserves the right to assert further objections.

    (d)    The factual basis for your privilege claimed;

RESPONSE: LINA objects to this Request on the grounds that it seeks to impose obligations beyond those agreed to by the parties in their Report of Parties Planning Meeting filed on August 17, 2007 and expressly incorporated in the Court's Uniform Scheduling Order of August 21, 2007. LINA reserves the right to assert further objections.

    (e)    The specific privilege claimed; and

01552447.1

16

RESPONSE: LINA objects to this Request on the grounds that it seeks to impose obligations beyond those agreed to by the parties in their Report of Parties Planning Meeting filed on August 17, 2007 and expressly incorporated in the Court's Uniform Scheduling Order of August 21, 2007. LINA reserves the right to assert further objections.

(f)    The location of the document.

RESPONSE: LINA objects to this Request on the grounds that it seeks to impose obligations beyond those agreed to by the parties in their Report of Parties Planning Meeting filed on August 17, 2007 and expressly incorporated in the Court's Uniform Scheduling Order of August 21, 2007. LINA reserves the right to assert further objections.


William B. Wahlheim, Jr
John David Collins
Grace Robinson Murphy

Attorneys for Defendant Life Insurance
Company of North America


OF COUNSEL:
MAYNARD, COOPER & GALE, P.C.
1901 6th Avenue, North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203
(205) 254-1000

01552447.1                               17

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following listed persons via U.S. Mail this the 4th day of January, 2008.

Thomas O. Sinclair, Esq.
Jenifer Champ Wallis, Esq.
Campbell, Gidiere, Lee, Sinclair, & Williams
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209


*Grace R. Murphy*
Of Counsel